## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| FTX TRADING LTD., | |
| Plaintiff, | |
| -against- | |
| DENG JUN, SHEN LING, TU JING, DENG DINGYUAN, DENG LAN, DENG JIAN, TU FAN, PAN YANG LIAN, HU JINGMING, HU SIFENG, YANG YUHUA, QIN YONG QIANG, HUANG YAO, DAI FUYANG, FU LING, CHEN CHAO, SHEN LIUGEN, LIN GUODONG, YANG YIBO, XU MIN, XU HONG, WAN JIAN, WU QIAO, WU TIANMING, LI PING, JIA SHUYUN, and JOHN DOES 1-20 | Adv. Pro. No. 24-_____(JTD) |
| Defendants. | |

### COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS AND OBLIGATIONS PURSUANT TO 11 U.S.C. §§ 105, 547, AND 550, FOR DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502, AND FOR EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C § 510(c)(1)

Plaintiff FTX Trading Ltd. ("FTX" or "Plaintiff"), through its undersigned

counsel, for its Complaint against Deng Jun, Shen Ling, Tu Jing, Deng Dingyuan, Deng Lan,

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Deng Jian, Tu Fan, Pan Yang Lian, Hu Jingming, Hu Sifeng, Yang Yuhua, Qin Yong Qiang,

Huang Yao, Dai Fuyang, Fu Ling, Chen Chao, Shen Liugen, Lin Guodong, Yang Yibo, Xu Min,

Xu Hong, Wan Jian, Wu Qiao, Wu Tianming, Li Ping, Jia Shuyun (together, the "Named

Defendants"), and John Does 1-20 (together with the Named Defendants, "Defendants") alleges

the following based upon personal knowledge and upon its investigation to date as to itself and

its own acts, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.      Defendants are members of an international criminal syndicate who used FTX to

launder billions of dollars in criminal proceeds.  In the months leading up to the filing of

Debtors' bankruptcy petitions, Defendants withdrew millions of dollars of their criminal profits

from FTX, at the expense of other customers of the FTX.com exchange.

2.      Plaintiff brings this adversary proceeding, on behalf of itself and its affiliated

Debtors, pursuant to Sections 105, 502, 547, and 550 of Title 11 of the United States Code, 11

U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), to avoid as preferential transfers all transfers of

property to Defendants during the ninety-day period (the "Preference Period") prior to

commencement of the above-captioned actions (collectively, the "Chapter 11 Cases" and each a

"Chapter 11 Case"), and to disallow any claims related thereto.

3.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the

Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court")

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  No trustee has been

appointed for the Plaintiff or any other Debtor in the Chapter 11 Cases, and the Debtors continue

to operate their businesses and manage their properties as debtors-in-possession pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Chapter 11

Cases was authorized by the Court by an order entered on November 22, 2022 [D.I. 128].

Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter prosecute, this adversary proceeding.

4.      Based on currently available information, Defendants[2] made the withdrawals of digital and fiat assets set forth in Exhibit A (the "Exchange Withdrawals") and *infra* ¶ [75] from their FTX.com exchange accounts during the Preference Period.  The value of the withdrawn assets was at least $468 million in cash and/or cryptocurrency[3] as of the Petition Date.  These withdrawals constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.

5.      During the course of this proceeding, Plaintiff may learn (through formal discovery or otherwise) of additional withdrawals made by Defendants that are avoidable under the Bankruptcy Code.  Indeed, because of the state of the Debtors' records and the criminal nature of Defendants' conduct, the Debtors expect to discover additional avoidable transfers and obligations, as well as other claims, and expressly reserve the right to amend this complaint or file additional actions against Defendants, as appropriate, to protect the interests of their estates.

## THE PARTIES

6.      Plaintiff FTX is a corporation registered in Antigua and Barbuda.  Its principal place of business was in Nassau, Bahamas.  FTX did business as "FTX.com," a global exchange that offered customers the ability to trade cryptocurrencies and cryptocurrency-related

---

[2]      As explained in detail below, based on information and belief, John Does 1-20 registered and controlled FTX accounts registered in the names of the Named Defendants in concert with some or all of the Named Defendants.  While there were FTX accounts registered to each of the Named Defendants, given the criminal nature of Defendants' conduct, these names may be fake names, aliases, or stolen identities.  Nonetheless, for ease of reference, Plaintiff names the account owners as they were registered with FTX and refers to the account as each Named Defendant's account.  Because Plaintiff has access to the IP addresses used to access the relevant FTX accounts, Plaintiff expects to be able to identify the true identities of Defendants, to the extent they are different from the identities used to register for FTX accounts, with limited pre-service discovery.  Plaintiff expressly reserves its rights to amend the complaint.

[3]      The balance in U.S. dollars of all cryptocurrency referenced herein is calculated using the Court's *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order").

derivatives.  FTX is 80% owned by Paper Bird Inc., a Delaware corporation that is wholly

owned by Sam Bankman-Fried.  The remaining 20% is owned by hundreds of minority

shareholders, including FTX Group employees and various investment funds.

7.      Defendant Deng Jun is a Chinese citizen who lives in the Donghu District of

Nanchang City, Jiangxi Province.  Deng Jun and his wife, Defendant Shen Ling, own two

apartments in a residential complex located in Shenzhen City, Guangdong Province, and one

apartment in a luxury apartment residential project located in Nanchang City, Jiangxi Province.

On March 29, 2020, Deng set up his first trading account on FTX.  On May 4 and May 6, 2021,

Deng Jun opened two additional FTX trading accounts.  Deng Jun deposited the equivalent of at

least $6,059,788.58 in cash and/or cryptocurrency into his FTX accounts and withdrew the

equivalent of at least $44,696,159.44 in cash and/or cryptocurrency from the accounts.  As

explained below, Deng Jun made 42 transfers to various co-conspirators.  Deng Jung's FTX

account had a balance of $0 as of the Petition Date.  Between 2015 and 2019, Deng Jun was the

general manager and 33% shareholder of Baocang (Shenzhen) Insurance Consulting Service Co.,

Ltd., a software company in Shenzhen, Guangdong Province, China.

8.      Defendant Shen Ling is a Chinese citizen who, according to her FTX Know Your

Customer ("KYC") information, lives in Shenzhen City, Guangdong Province.  She is Deng

Jun's wife.  On March 21, 2021, Shen Ling opened her first trading account on FTX.  In May

2021, Shen Ling opened two additional FTX trading accounts.  Between March 2021 and

October 2022, Shen Ling deposited the equivalent of more than $1.79 billion in cash and/or

cryptocurrency into her first FTX account and withdrew nearly the same amount in cash and/or

cryptocurrency from the account.  As explained below, Shen Ling made 662 transfers to various

co-conspirators.  Shen Ling's FTX account had a balance equivalent to $0.70 in cash and/or

cryptocurrency as of the Petition Date.  According to her social media profile, Shen Ling is employed by Xicheng Group, a staff training and consultancy company with offices across China.

9.      Defendant Tu Jing is Deng Jun's mother.  Tu Jing is a Chinese citizen living in Nanchang, Jiangxi Province.  On April 4, 2021, Tu Jin opened her first trading account on FTX.  On May 4, 2021, Tu Jing opened an additional FTX account.  Tu Jing deposited the equivalent of at least $27,456,845.00 in cash and/or cryptocurrency into her first FTX account and withdrew the equivalent of at least $28,081,484.00 in cash and/or cryptocurrency from the same account.  As explained below, Tu Jing made 8 transfers to various co-conspirators.  Tu Jing's FTX account had a balance of $0 as of the Petition Date.

10.      Defendant Deng Dingyuan is Deng Jun's father.  Deng Dingyuan is a Chinese citizen who lives in Nanchang, Jiangxi Province.  On April 4, 2021, Deng Dingyuan opened his first trading account on FTX.  On May 4, 2021, Deng Dingyuan opened an additional FTX account.  Deng Dingyuan deposited the equivalent of at least $358,844.30 in cash and/or cryptocurrency into and withdrew the equivalent of at least $ $29,025,390.67 in cash and/or cryptocurrency from these accounts.  As explained below, Deng Dingyuan made 33 transfers to various co-conspirators.  His FTX account had a balance equivalent to $0.06 in cash and/or cryptocurrency as of the Petition Date.

11.      Defendant Deng Lan is a relative of Defendants Deng Jun, Tu Jing, and Deng Dingyuan.  Deng Lan is a Chinese citizen who lives in Nanchang, Jiangxi Province.  On May 4, 2021, Deng Lan opened an FTX trading account.  Deng Lan deposited the equivalent of at least $19,952.02 in cash and/or cryptocurrency into her FTX account and withdrew the equivalent of at least $19,958.02 in cash and/or cryptocurrency from the account.  As explained below, Deng

Lan made 7 transfers to various co-conspirators. Deng Lan's FTX account had a balance equivalent to $0.14 in cash and/or cryptocurrency as of the Petition Date.

12.     Defendant Deng Jian is Deng Lan's husband and also a member of the Deng family. Deng Jian is a Chinese citizen who lives in Nanchang, Jiangxi Province. On May 4, 2021, Deng Jian opened an FTX trading account. Deng Jian deposited the equivalent of at least $23,105.00 in cash and/or cryptocurrency into his FTX account but did not make any withdrawals from the account. As explained below, Deng Jian made 7 transfers to various co-conspirators. Deng Jian's FTX account had a balance of $0 as of the Petition Date.

13.     Defendant Tu Fan is a Chinese citizen and member of the Tu family. On May 4, 2021, Tu Fan opened an FTX trading account. Tu Fan deposited the equivalent of at least $25,912.00 in cash and/or cryptocurrency into his FTX account but did not make any withdrawals from the account. As explained below, Tu Fan made 12 transfers to various co-conspirators. Tu Fan's FTX account had a balance of $0 as of the Petition Date.

14.     Defendant Pan Yang Lian is a Chinese citizen who lives in the Jiangxi Province of China. On May 4, 2021, Pan Yang Lian opened an FTX trading account. Pan Yang Lian deposited the equivalent of at least $3,995,621.00 in cash and/or cryptocurrency into her FTX account and withdrew nearly the same amount in cash and/or cryptocurrency from the account. As explained below, Pan Yang Lian made 7 transfers to various co-conspirators. Pan Yang Lian's FTX account had a balance of $0 as of the Petition Date.

15.     Defendant Hu Jingming is a Chinese citizen who lives in Nanchang City, Jiangxi Province. On August 14, 2022, Hu Jingming opened an FTX trading account. He deposited the equivalent of at least $47,391.87 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $49,173.63 in cash and/or cryptocurrency from his FTX

account.  As explained below, Hu Jingming made 24 transfers to various co-conspirators. Hu

Jingming's FTX account had a balance of $0 as of the Petition Date.  Hu Jingming was a

shareholder in an aquaculture and poultry company in Nanchang County, prior to its dissolution

in May 2021.

16.     Defendant Hu Sifeng is a Chinese citizen who lives in the Donghu District of

Nanchang, Jiangxi Province.  On April 2, 2022, Hu Sifeng opened her first trading account on

FTX.  On August 11, 2022, Hu Sifeng opened an additional FTX account.  Hu Sifeng deposited

the equivalent of at least $1,481,500.00 in cash and/or cryptocurrency into her second FTX

account and withdrew the equivalent of at least $1,214,339.00 in cash and/or cryptocurrency

from the same account.  As explained below, Hu Sifeng made 46 transfers to various co-

conspirators.  Hu Sifeng's FTX account had a balance equivalent to $0.01 in cash and/or

cryptocurrency as of the Petition Date.

17.     Defendant Yang Yuhua is a Chinese citizen who lives in the Donghu District of

Nanchang, Jiangxi Province.  On August 6, 2022, Yang Yuhua opened her first trading account

on FTX.  On August 10, 2022, Yang Yuhua opened an additional FTX account.  Yang Yuhua

deposited the equivalent of at least $47,644.96 in cash and/or cryptocurrency into her second

FTX account and withdrew the equivalent of at least $22,473.70 in cash and/or cryptocurrency

from the same account.  As explained below, Yang Yuhua made 36 transfers to various co-

conspirators.  Yang Yuhua's FTX account had a balance of $0 as of the Petition Date.

18.     Defendant Qin Yong Qiang is a Chinese citizen who lives in the Donghu District

of Nanchang, Jiangxi Province.  On May 11, 2022, Qin Yong Qiang opened an FTX trading

account.  He deposited the equivalent of at least $1.5 million in cash and/or cryptocurrency into

his FTX account and withdrew the equivalent of at least $336,353.05 in cash and/or

cryptocurrency from the account.  As explained below, Qin Yong Qiang made 117 transfers to various co-conspirators.  Qin Yong Qiang's FTX account had a balance equivalent to $0.29 in cash and/or cryptocurrency as of the Petition Date.  Qin Yong Qiang owns a noodle shop in Fuzhou City, Fujian Province.

19.     Defendant Huang Yao is a Chinese citizen who lives in Shaoyang City, Hunan Province.  Huang Yao opened an FTX trading account on January 25, 2021.  He deposited the equivalent of more than $581 million in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of more than $514 million in cash and/or cryptocurrency from the account.  As explained below, Huang Yao made 834 transfers to co-conspirators.  Huang Yao's FTX account had a balance equivalent to $11.73 in cash and/or cryptocurrency as of the Petition Date.  According to his KYC information, Huang Yao works at the local Cunshi village central school in Shaoyang.

20.     Defendant Dai Fuyang is a Chinese citizen who lives in Shaoyang City, Hunan Province.  She is Huang Yao's wife.  On May 5, 2021, Dai Fuyang opened an FTX trading account.  She deposited the equivalent of at least $5,491.47 in cash and/or cryptocurrency into her FTX account and withdrew the equivalent of at least $70,877,710.42 in cash and/or cryptocurrency from the account.  As explained below, Dai Fuyang made 456 transfers to various co-conspirators.  Dai Fuyang's FTX account had a balance equivalent to $0.81 in cash and/or cryptocurrency as of the Petition Date.

21.     Defendant Fu Ling is a Chinese citizen who lives in Nanchang City, Jiangxi Province.  On October 6, 2022, Fu Ling opened an FTX trading account.  Fu Ling deposited the equivalent of at least $101.37 in cash and/or cryptocurrency into her FTX account and withdrew the equivalent of at least $45,722,072.55 in cash and/or cryptocurrency from the account.  As

explained below, Fu Ling made 122 transfers to various co-conspirators.  Fu Ling's FTX account had a balance of $0 as of the Petition Date.  Based on information and belief, Fu Ling was the director and sole shareholder of Kat Technology HK Limited, a Chinese technology company that was established in May 2016 and dissolved in October 2019.  Fu Ling's KYC information stated that her source of funds came from "mining."

22.     Defendant Chen Chao is a Chinese citizen who lives in Nanchang City, Jiangxi Province.  On March 22, 2022, Chen Chao opened his FTX account.  Between April 27 and October 17, 2022, he deposited the equivalent of at least $68,248,903.22 in cash and/or cryptocurrency into his FTX account, and between April 1 and October 21, 2022, he withdrew the equivalent of at least $7,474,616.22 in cash and/or cryptocurrency from the account.  As explained below, Chen Chao made 715 transfers to various co-conspirators.  Chen Chao's FTX account had a balance equivalent to $40,464.92 as of the Petition Date.

23.     Defendant Shen Liugen is a Chinese citizen who lives in Yingtan City, Shangxi Province.  On October 6, 2022, Shen Liugen opened an FTX trading account.  Shen Liugen deposited the equivalent of at least $51,348,817.97 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $6,029,147.21 in cash and/or cryptocurrency from the account.  As explained below, Shen Liugen made 71 transfers to various co-conspirators.  Shen Liugen's FTX account had a balance equivalent to $6.70 in cash and/or cryptocurrency as of the Petition Date.  According to a public Chinese corporate database, Shen Liugen is the largest shareholder of a partially state-owned Chinese company that manufactures bamboo products.

24.     Defendant Lin Guodong is a Chinese citizen who lives in Quzhou City, Zhejiang Province.  On March 6, 2021, Lin Guodong opened an FTX trading account.  Lin Guodong

deposited the equivalent of at least $26,083,606.92 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $27,753,886.50 in cash and/or cryptocurrency from the account.  Lin Guodong's FTX account had a balance of $0 on the Petition Date.

25.     Defendant Yang Yibo is a Chinese citizen who lives in Tangshan City, Hebei Province.  On January 16, 2021, Yang Yibo opened an FTX account.  He opened five additional FTX accounts in 2021 and 2022.  Yang Yibo deposited the equivalent of at least $82,319,839.82 in cash and/or cryptocurrency into one of his FTX accounts and withdrew the equivalent of at least $82,725,763.77 in cash and/or cryptocurrency from the same account.  As explained below, Yang Yibo made 16 transfers to various co-conspirators.  Yang Yibo's FTX account had a balance of $0 as of the Petition Date.

26.     Defendant Xu Min is a Chinese citizen.  In May 2022, Xu Min opened an FTX account.  Xu Min deposited the equivalent of at least $1,413,925.19 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent in cash and/or cryptocurrency of at least $93,260,052.15 from the account.  As explained below, Xu Min made 183 transfers to various co-conspirators.  Xu Min's FTX account had a balance equivalent to $5.39 in cash and/or cryptocurrency as of the Petition Date.

27.     Defendant Xu Hong is a Chinese citizen.  In July 2022, Xu Hong opened an FTX account.  Xu Hong deposited the equivalent of at least $3,365,912.91 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $987,323.38 in cash and/or cryptocurrency from the account.  As explained below, Xu Hong made 108 transfers to various co-conspirators.  Xu Hong's FTX account had a balance equivalent to $7.21 in cash and/or cryptocurrency as of the Petition Date.

28.    Defendant Wan Jian is a Chinese citizen.  In February 2020, Wan Jian opened an FTX account.  Wan Jian deposited the equivalent of at least $526,799,913.36 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $376,856,944.99 in cash and/or cryptocurrency from his FTX account.  As explained below, Wan Jian made 1,104 transfers to various co-conspirators.  Wan Jian's FTX account had a balance equivalent to $415,228.71 in cash and/or cryptocurrency as of the Petition Date.

29.    Defendant Wu Qiao is a Chinese citizen.  In August 2022, Wu Qiao opened an FTX account.  Wu Qiao deposited the equivalent of at least $387,364.59 in cash and/or cryptocurrency into her FTX account and withdrew the equivalent of at least $5,345,292.10 in cash and/or cryptocurrency from the account.  As explained below, Wu Qiao made 7 transfers to various co-conspirators.  Wu Qiao's FTX account had a balance equivalent to $1.97 in cash and/or cryptocurrency as of the Petition Date.

30.    Defendant Wu Tianming is a Chinese citizen.  Wu Tianming opened his FTX account in July 2022.  Wu Tianming deposited the equivalent of at least $34,886,318.79 in cash and/or cryptocurrency into his FTX account and withdrew the equivalent of at least $2,598,466.40 in cash and/or cryptocurrency from the account.  As explained below, Wu Tianming made 98 transfers to various co-conspirators.  Wu Tianming's FTX account had a balance equivalent to $1.97 in cash and/or cryptocurrency as of the Petition Date.

31.    Defendant Li Ping is a Chinese citizen who lives in Nanchang City, Jiangxi Province.  Li Ping opened his first FTX trading account on August 16, 2020.  He deposited the equivalent of at least $156,262,605.45 in cash and/or cryptocurrency into his account and withdrew the equivalent of at least $120,802,069.93in cash and/or cryptocurrency from the account.  As explained below, Li Ping made 448 transfers to various co-conspirators.  Li Ping's

FTX account had a balance equivalent to $70,601.98 in cash and/or cryptocurrency as of the Petition Date.

32.     Defendant Jia Shuyun is a Chinese citizen who lives in the Jiangxi Province.  Jia Shuyun deposited the equivalent of at least $4,979,169.47 in cash and/or cryptocurrency into her FTX account and withdrew the equivalent of at least $124,619,900.84 in cash and/or cryptocurrency from the account.  As explained below, Jia Shuyun made 212 transfers to various co-conspirators.  Jia Shuyun's FTX account had a balance equivalent to $535,192.79 in cash and/or cryptocurrency as of the Petition Date.

33.     Defendants John Does 1-20 are additional individuals who were involved in and controlled accounts that were part of the criminal money laundering scheme.

## OTHER RELEVANT PERSONS AND ENTITIES

34.     Alameda Research LLC ("Alameda LLC") is a Delaware limited liability company that is 90% owned by Samuel Bankman-Fried and 10% owned by Zixiao Wang.

35.     Alameda Research Ltd. ("Alameda") is a British Virgin Islands company limited by shares.  It is a wholly owned subsidiary of Alameda LLC.

36.     North Dimension Inc. ("North Dimension") is a Delaware corporation.  It is a wholly owned subsidiary of Alameda LLC.

37.     Samuel Bankman-Fried, often referred to as "SBF," is one of the founders of the FTX Group.  He co-founded Alameda LLC in 2017 and served as its Chief Executive Officer through late 2021.  During 2019, he founded FTX.  At all relevant times, Bankman-Fried was the ultimate majority owner, and effectively controlled the operations, of Plaintiff and its affiliated Debtors.

38.     Zixiao "Gary" Wang was a co-founder of FTX and its former Chief Technology Officer.  Wang was also the Chief Technology Officer of West Realm Shires, Inc., a Delaware

company that is 52.99% owned by Bankman-Fried, 16.93% owned by Wang, 7.83% owned by

Nishad Singh, and 22.25% owned by other minority shareholders, including West Realm Shires,

Inc. employees and outside investors.

39.     Nishad Singh was the Director of Engineering at FTX.  Singh was also the Chief

Security Officer and Chief Engineer of West Realm Shires, Inc.

40.     Caroline Ellison was the Co-Chief Executive Officer of Alameda LLC from

August 2021 until September 2022, when she was named the sole CEO and director.  From

September 6, 2022 to the Petition Date, Ellison also served as a director of Alameda.

### JURISDICTION AND VENUE

41.     This is a proceeding commenced pursuant to Rule 7001 of the Federal Rules of

Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or

property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

42.     This proceeding relates to the Chapter 11 Cases filed with this Court on the

Petition Date.

43.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(a), 1334(a) and 1367(a), and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012.

44.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b),

and the Court may enter final orders herein.

45.     Venue of this adversary proceeding in this District is proper pursuant to

28 U.S.C. § 1409, and is consistent with the interests of justice, judicial economy, and fairness.

46.     The statutory predicates for the relief requested herein are Sections 105(a), 502,

547, and 550 of the Bankruptcy Code.

47.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **FACTUAL ALLEGATIONS**

## I.     **FTX Insiders Defrauded Investors, Creditors, and Customers of the FTX Exchange.**

48.     Prior to the Petition Date, the FTX Group operated cryptocurrency exchanges and trading businesses.  As explained in the First Day Declarations (defined below), the FTX Group faced a severe liquidity crisis that necessitated the filing of these Chapter 11 Cases on an emergency basis on November 11 and 14, 2022.  Additional factual background relating to the FTX Group's businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

49.     As detailed in the First Day Declarations, the FTX Group's pre-filing operations were characterized by a complete failure of corporate controls and a total absence of trustworthy financial information.  *See* Decl. John J. Ray III, D.I. 24, at 2.  Bankman-Fried, Ellison, Singh, and Wang (collectively, the "FTX Insiders") used this deficient control environment, and their domination over the FTX Group's systems, to perpetrate a massive fraud—squandering the FTX Group's assets on, among other things, luxury homes, political and "charitable" contributions,

and various investments that would inure to the benefit of the FTX Insiders rather than the corporate entities that had paid for them.

50.     The FTX Insiders funded much of this spending through Alameda, which, at the FTX Insiders' direction, unlawfully commingled and diverted billions of dollars in assets belonging to FTX.com, the principal international cryptocurrency exchange operated by the FTX Group, to the Defendants' pet projects.  In doing so, the FTX Insiders defrauded FTX.com's customers, creditors, and shareholders, and violated their fiduciary duties and numerous laws.

51.     The FTX Insiders' conduct is currently the subject of criminal proceedings initiated by federal prosecutors and actions brought by the Securities and Exchange Commission, the Commodity Futures Trading Commission, and investigations by a host of regulators.  All of the FTX Insiders, except for Bankman-Fried, have pleaded guilty to crimes perpetrated through FTX.  On December 19, 2022, Wang and Ellison pleaded guilty to multiple felonies, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, and conspiracy to commit securities fraud; Ellison also pleaded guilty to conspiracy to commit money laundering.  *See* Min. Entry, Dec. 19, 2022, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022).  On February 28, 2023, Singh pleaded guilty to the same felonies as Ellison as well as conspiracy to make unlawful political contributions and defraud the Federal Election Commission.  *See* Min. Entry, Feb. 28, 2023, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022).

52.     In connection with his plea, Wang admitted that in 2019 he made "certain changes to the [FTX.com] code" to give Alameda "special privileges on the FTX platform," including to allow Alameda unfettered use of assets on the FTX.com exchange, even while Alameda maintained negative balances on its own holdings of fiat (*i.e.*, government-issued) currencies and

cryptocurrencies.  Plea Tr. 24:6-10, *United States* v. *Wang*, 22-cr-00673 (S.D.N.Y. 2022), ECF

No. 21.  Using these "special privileges," Defendants frequently caused Alameda to spend large

amounts of Debtors' funds for their own personal benefit.

53.    Despite making public representations that Alameda operated as a wholly separate

entity from FTX.com, the FTX Insiders routinely, and secretly, used Alameda to loot "several

billion dollars" from FTX.com using their "special privileges," thereby defrauding FTX.com's

creditors.  Plea Tr. 28:23-29:2, *United States* v. *Singh*, 22-cr-00673 (S.D.N.Y. 2022), ECF

No. 102; Plea Tr. 24:6-10, *United States* v. *Wang*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 21.

54.    Bankman-Fried also conspired with Ellison and others to divert funds to Alameda

that were intended to be deposited at FTX.com before they reached the exchange, so that

Defendants could use those funds to benefit themselves.  Beginning in 2019 and continuing

through 2022, Bankman-Fried caused FTX.com customers to deposit funds into bank accounts

controlled by Alameda and then North Dimension, without disclosing to the banks that held

those accounts or to FTX.com customers the nature of the arrangement between FTX.com,

Alameda, and North Dimension.  *See* Superseding Indictment ¶ 18, *United States* v. *Bankman-

Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 115.

55.    In the days leading up to the Petition Date, Bankman-Fried supplied potential

investors with a purported Alameda Research balance sheet that included a liability of $8 billion

in a "Hidden, poorly internally labled [*sic*] 'fiat@' account."  *See* Superseding Indictment ¶ 56,

*United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 115.  However,

Bankman-Fried "well knew" that this liability reflected "FTX customer fiat deposits accepted

into Alameda Research's bank accounts that had not been maintained for the benefit of

customers or repaid to FTX[.]"  *Id.* ¶ 57.  The FTX Insiders used these funds "to make

investments in the name of Bankman-Fried and his associates, rather than in the name of Alameda." *Id.* ¶ 26.

56.     Ellison "understood that FTX would need to use customer funds" to make many of its investments, Plea Tr. 28:1-4, *United States* v. *Ellison*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 19, and admitted that many investments "were done in the name of Alameda instead of FTX in order to conceal the source and nature of those funds," *id.* at 28:22-29:1.

57.     The FTX Insiders were aware at all relevant times of the "special privileges on the FTX platform" that allowed Alameda Research to "borrow" billions of dollars from FTX.com in order to, inter alia, finance "loans" from Alameda Research to the FTX Insiders.  Ellison admitted that from 2019 through 2022 she was aware of this arrangement, which she described as "permit[ting] Alameda access to an unlimited line of credit without being required to post collateral . . . pay interest . . . or be[] subject to margin calls of FTX.com's liquidation protocol." *Id.* at 27:11-15.

58.     In the days leading up to the Petition Date, Ellison messaged Bankman-Fried that she "had an increasing dread of this day that was weighing on [her] for a long time, and now that it's actually happening it just feels great to get it over with[,] one way or another." *See* Superseding Indictment ¶ 53, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 115.

## II.    Defendants' Criminal Money Laundering Syndicate.

59.     Defendants are a conglomerate of Chinese nationals who used FTX to execute a years-long money laundering scheme beginning on or about March 29, 2020.  The scheme lasted

until FTX shut down most of the accounts on November 3, 2022—but not before Defendants had deposited and withdrawn billions of dollars in criminal proceeds from FTX.

60.     Defendants acted in concert to operate a network of accounts through which billions of dollars were laundered.  As explained below, Defendants barely tried to hide their scheme.  The Named Defendants' FTX accounts were created using nearly identical email addresses and, at times, the same phone number.  And the accounts registered to the names of the Named Defendants were accessed on the same devices using the same IP addresses.

61.     Plaintiff has identified the Named Defendants based on information provided to FTX when the FTX account registered under each Named Defendants' name was created.  Given the criminal nature of Defendants' conduct and the highly suspect nature of Defendants' deposit, withdrawal, and transfer activities described below, it is likely that at least some of the accounts were made using fake names, aliases, and/or stolen identifies by one or more individuals (*i.e.*, John Does 1-20) whose identities are currently unknown to FTX despite diligent investigation, in concert with the Named Defendants.

62.     The scheme began on or about March 29, 2020, when Deng Jun set up his first trading account on FTX.  Over the three-and-a-half years that his account was active, Deng Jun made 106 deposits in cash and/or cryptocurrency into his FTX account totaling more than $6 million and made approximately 1,800 withdrawals in cash and/or cryptocurrency from his FTX account totaling more than $44.6 million.

63.     Over the course of the next year, Li Ping, Huang Yao, and Shen Ling each opened their first FTX accounts on August 16, 2020, January 25, 2021, and March 21, 2021, respectively.

64.    Over time, Shen Ling became one of the most prolific members of the criminal syndicate.  In the two-and-a-half years in which her account was active, she made more than 8,000 deposits in cash and/or cryptocurrency into her FTX account totaling approximately $1.79 billion, and more than 9,000 withdrawals in cash and/or cryptocurrency from her FTX account also totaling approximately $1.83 billion.

65.    In addition to the hundreds of transfers among Defendants detailed below, there is substantial evidence that the Defendants worked in concert to effectuate their money laundering scheme.  For example:

    a.    Deng Jun, Shen Ling, Deng Dingyuan, Deng Lan, Deng Jian, and Tu Fan all registered their FTX accounts using email addresses that followed the exact same format:  "skin" followed by three numbers, "@163.com."  For example, Deng Jun registered with the email addresses "skin022@163.com" and skin032@163.com"; Shen Ling registered with the email addresses "skin024@163.com" and "skin033@163.com"; Deng Lan registered with the email address "skin026@163.com"; Deng Jian registered with the email address "skin028@163.com"; Deng Dingyuan registered with the email address "skin010@163.com"; and Tu Fan registered with the email address "skin002@163.com."

    b.    Hu Jingming, Hu Sifeng, Yang Yuhua, Qin Yong Qiang, and Hu Sifeng all registered their FTX accounts using outlook email addresses that followed the exact same format: "steven" followed by a number, the letter "s," and another number.  For example, Qin Yong Qiang registered with the email addresses "steven12s12@outlook.com" and

"steven14s14@outlook.com," and Hu Jingming registered with the email
address "steven8s8@outlook.com."

    c.    Many Defendants shared public IP addresses, often accessing the same IP
addresses on the same day or within mere days of each other.

    d.    Deng Jun and Fu Ling used the same phone number to register their
accounts.

    e.    Of the 19 devices that Huang Yao used to log into his accounts, five were
also used by Dai Fuyang.

    f.    Multiple Defendants opened FTX accounts on the same day.  For
example, on April 4, 2021, Tu Jing and Deng Dingyuan opened FTX
accounts. On May 4, 2021, Deng Jun, Shen Ling, Deng Lan, Deng Jian,
Tu Fan, Pan Yang Lian, Tu Jing, and Deng Dingyuan each opened FTX
accounts.  And on May 6, 2021, Deng Jun and Shen Ling opened FTX
accounts.

66.    Based on information and belief, none of the Named Defendants had sufficient
net worth to fund the massive deposits they were making.  As detailed above, Named Defendants
worked jobs that do not pay anywhere near the amounts that they were depositing.  For example,
Qin Yong Qiang is the owner of a small noodle shop in Fuzhou City, but he deposited over $1.5
million into his FTX account.  And Huang Yao is a school teacher, but he deposited over $581
million into his FTX account.  The mysterious sources of wealth indicate that the funds deposited
by Defendants were proceeds from criminal activity.

67.    FTX itself and third-party law enforcement identified Defendants as suspected
money launderers.

68.     In September 2022, FTX's compliance team identified Deng Jun, Shen Ling, Tu Jing, Deng Dingyuan, Deng Lan, Deng Jian, Tu Fan, Pan Yang Lian, Hu Jingming, Hu Sifeng, Yang Yuhua, and Qin Yong Qiang as affiliates and began investigating their activity on FTX. When questioned by FTX compliance personnel about the source of their massive deposits, Defendants gave circular answers.  For example, Tu Jing (Deng Jun's mother) told FTX the money was from her son and daughter-in-law.  But when FTX asked Deng Jun and Shen Ling (Deng Jun's wife) about their source of funds, they pointed to Tu Jing (Deng Jun's mother) and Deng Dingyuan (Deng Jun's father).  At the conclusion of its investigation, FTX determined that the accounts were being controlled by the same individual or entity and shut down the accounts on or about November 3, 2022.

69.     On October 14, 2022, a team of law enforcement investigators dedicated to cryptocurrency-related crimes contacted FTX to request information about Li Ping, Huang Yao, Dai Fuyang, Fu Ling, Chen Chao, Shen Liugen, Lin Guodong, and Yang Yibo.  The investigators reported to FTX that they were looking into a money laundering syndicate that was using FTX to "clean" "dirty" funds.

70.     Defendants knew what they were doing and intended to use the FTX exchange to launder their criminal riches.  For example, Huang Yao—a schoolteacher—publicly bragged on his QQ biography[4] of his riches:  "1. Purchase a 500-square-meter house in Beijing (completed); 2. Get a Range Rover Evoque (completed); 3. Open a coffee shop (completed); 4. Have two model class partners (completed); 5. Realize a gain of 300% in the stock market (completed); 6. Earn an annual income of RMB 6 million (completed)."  The only goal Huang had not achieved? "7. Correct my old habit of bragging."

---

[4]     QQ is a Chinese instant messaging service that provides games, music, shopping, blogging, movies, and group and voice chat capabilities.

71.    Defendants effectuated their criminal money laundering scheme by (1) depositing large sums of "dirty" criminal proceeds in the form of cash and/or cryptocurrency into their FTX accounts, (2) transferring (at times nearly identical amounts of) funds to each other's FTX accounts, and (3) withdrawing massive amounts of "cleaned" cash and/or cryptocurrency from their FTX accounts.

72.    Collectively, Defendants deposited billions of dollars of cash and/or cryptocurrency into their respective FTX accounts:

a.    Between March 29, 2020 and November 3, 2022, Deng Jun made 106 deposits into his FTX account totaling $6,059,788.58.

b.    Between January 16, 2021 and November 3, 2022, Yang Yibo made 397 deposits into his FTX account totaling $82,319,839.82.

c.    Between January 25, 2021 and November 3, 2022, Huang Yao made 7,327 deposits into his FTX account totaling $581,283,729.34.

d.    Between March 21, 2021 and November 3, 2022, Shen Ling made 8,191 deposits into her FTX account totaling $1,795,134,690.81.

e.    Between April 4, 2021 and November 3, 2022, Tu Jing made 53 deposits into her FTX account totaling $27,456,845.00.

f.    Between April 4, 2021 and November 3, 2022, Deng Dingyuan made 9 deposits into his FTX account totaling $358,844.30.

g.    Between May 4, 2021 and November 3, 2022, Deng Lan made 3 deposits into her FTX account totaling $19,952.02.

h.    Between May 4, 2021 and November 3, 2022, Deng Jian made 9 deposits into his FTX account totaling $23,105.00.

i.      Between May 4, 2021 and November 3, 2022, Tu Fan made 12 deposits into his FTX account totaling $25,912.00.

j.      Between May 4, 2021 and November 3, 2022, Pan Yang Lian made 25 deposits into her FTX account totaling $3,955,621.00.

k.      Between August 31, 2021 and November 3, 2022, Lin Guodong made 102 deposits into his FTX account totaling $26,083,606.92.

l.      Between May 5, 2021 and November 2, 2022, Dai Fuyang made 3 deposits into her FTX account totaling $5,491.47.

m.      Between May 11, 2022 and November 3, 2022, Qin Yong Qiang made 104 deposits into his FTX account totaling $1,503,315.01.

n.      Between May 28, 2022 and August 27, 2022, Xu Min made 20 deposits into his FTX account totaling $1,413,925.19.

o.      Between July 18, 2022 and October 18, 2022, Xu Hong made 51 deposits into his FTX account totaling $3,365,912.91.

p.      Between July 20, 2022 and November 7, 2022, Wu Tianming made 140 deposits into his FTX account totaling $34,866,318.79.

q.      Between August 10, 2022 and November 3, 2022, Yang Yuhua made 2 deposits into her FTX accounts totaling $47,644.96.

r.      Between August 11, 2022 and November 3, 2022, Hu Sifeng made 110 deposits into her FTX accounts totaling $1,481,500.00.

s.      Between August 14, 2022 and November 3, 2022, Hu Jingming made 4 deposits into his FTX account totaling $47,391.87.

    t.      Between August 27, 2022 and August 30, 2022, Wu Qiao made 4 deposits into her FTX account totaling $387,364.59.

    u.      Between October 6, 2022 and November 3, 2022, Shen Liugen made 129 deposits into his FTX account totaling $51,348,817.97.

    v.      Between October 8, 2022 and November 2, 2022, Fu Ling made 2 deposits into her FTX account totaling $101.37.

73.    Plaintiff is aware of at least the following transfers between Defendants and other members of the syndicate:

    a.      Chen Chao made 18 transfers from his FTX account to Li Ping's FTX account, 152 transfers from his FTX account to Xu Min's FTX account, 138 transfers from his FTX account to Wan Jian's FTX account, 119 transfers from his account to Xu Hong's FTX account, four transfers from his FTX account to Wu Qiao's FTX account, and 40 transfers from his FTX account to Wu Tianming's FTX account.

    b.      Dai Fuyang made 48 transfers from her FTX account to Huang Yao's FTX account and 408 transfers from her FTX account to Dai Fuyang's FTX account.

    c.      Deng Dingyuan made nine transfers from his FTX account to Shen Ling's FTX account and one transfer from his FTX account to Pan Yang Lian's FTX account.

    d.      Deng Jian made three transfers from his FTX account to Shen Ling's FTX account.

e.  Deng Jun made 26 transfers from his FTX account to Shen Ling's FTX account, and one transfer from his FTX account to each of the FTX accounts of Deng Dingyuan, Pan Yang Lian, Tu Fan, Tu Jing, Deng Lan, and Deng Jian.

f.  Deng Lan made three transfers from his FTX account to Shen Ling's FTX account.

g.  Fu Ling made nine transfers from her FTX account to Shen Liugen's FTX account.

h.  Hu Jingming made one transfer from his FTX account to Qin Yong Qiang's FTX account and 23 transfers from his FTX account to Hu Sifeng's FTX account.

i.  Hu Sifeng made seven transfers from her FTX account to Qin Yong Qiang's FTX account, 15 transfers from her FTX account to Yang Yuhua's FTX account, and 24 transfers from her FTX account to Hu Jingming's FTX account.

j.  Huang Yao made 186 transfers from his FTX account to Dai Fuyang's FTX account and 18 transfers from his FTX account to Shen Ling's FTX account.

k.  Jia Shuyun made 19 transfers from her FTX account to Li Ping's FTX account, three transfers from her FTX account to Chen Chao's FTX account, 176 transfers from her FTX account to Wan Jian's FTX account, and two transfers from her FTX account to each of the FTX accounts of Xu Min, Xu Hong, Wu Qiao, and Wu Tianming.

l.      Li Ping made 13 transfers from his FTX account to Chen Chao's FTX account, 131 transfers from his FTX account to Jia Shuyun's FTX account, one transfer from his FTX account to Xu Min's FTX account, 72 transfers from his FTX account to Wan Jian's FTX account, two transfers from his FTX account to Xu Hong's FTX account, and 12 transfers from his FTX account to Wu Tianming's FTX account.

m.     Pan Yang Lian made three transfers from her FTX account to Shen Ling's FTX account.

n.      Qin Yong Qiang made one transfer from her FTX account to Shen Ling's FTX account, 58 transfers from her FTX account to Hu Sifeng's FTX account, and 17 transfers from her FTX account to Yang Yuhua's FTX account.

o.      Shen Ling made 15 transfers from her FTX account to Huang Yao's FTX account, 46 transfers from her FTX account to Tu Ling's FTX account, 72 transfers from her FTX account to Deng Dingyuan's FTX account, 114 transfers from her FTX account to Deng Jun's FTX account, 17 transfers from her FTX account to Pan Yang Lian's FTX account, and two transfers from her FTX to each of the FTX accounts of Tu Fan, Deng Jian, Deng Lan, and Wan Jian.

p.      Shen Liugen made 71 transfers from his FTX account to Fu Ling's FTX account.

q.      Tu Fan made four transfers from her FTX account to Shen Ling's FTX account

r.      Tu Jing made four transfers from his FTX account to Shen Ling's FTX account.

s.      Wan Jian made three transfers from her FTX account to Shen Ling's FTX account, 114 transfers from her FTX account to Li Ping's FTX account, 94 transfers from her FTX account to Chen Chao's FTX account, 232 transfers from her account to Jia Shuyun's FTX account, four transfers from her FTX account to Xu Min's FTX account, seven transfers from her FTX account to Xu Hong's FTX account, and 27 transfers from her FTX account to Wu Tianming's FTX account.

t.      Wu Qiao made three transfers from his FTX account to Wan Jian's FTX account and one transfer from his FTX account to each of the FTX accounts of Chen Chao and Xu Min.

u.      Wu Tianming made 26 transfers from her FTX account to Li Ping's FTX account, 19 transfers from her FTX account to Chen Chao's FTX account, two transfers from her FTX account to Xu Min's FTX account, and 47 transfers from her FTX account to Wan Jian's FTX account.

v.      Xu Hong made 36 transfers from his FTX account to Chen Chao's FTX account, 33 transfers from his FTX account to Xu Min's FTX account, nine transfers from his FTX account to Wan Jian's FTX account, one transfer from his FTX account to Wu Qiao's FTX account, and 5 transfers from his FTX account to Wu Tianming's FTX account.

w.      Xu Min made two transfers from her FTX account to Li Ping's FTX account, 23 transfers from her FTX account to Chen Chao's FTX account,

eight transfers from her FTX account to Wan Jian's FTX account, one

transfer from her FTX account to each of the FTX accounts of Xu Hong

and Wu Qiao, and 12 transfers from her FTX account to Wu Tianming.

x.      Yang Yuhua made three transfers from his FTX account to Qin Yong

Qiang's FTX account, 30 transfers from his FTX account to Hu Sifeng's

FTX account, and three transfers from his FTX account to Hu Jingming's

account.

74.      Discovery is likely to uncover additional shuffling of criminal proceeds between

Defendants and their co-conspirators.

75.      Multiple Defendants also created subaccounts, allowing them to further obfuscate

the moving of funds through FTX.

76.      By transferring funds to each other and through subaccounts, Defendants mixed

their cryptocurrency with others' cryptocurrency, thereby "cleaning" the "dirty" cryptocurrency

(*i.e.*, the proceeds of their criminal enterprise).

77.      Once their criminal profits were "cleaned," Defendants withdrew billions of

dollars in cash and/or cryptocurrency from FTX over the life of their accounts.  Specifically:

a.      Chen Chao withdrew the equivalent in cash and/or cryptocurrency of

$7,474,616.22.

b.      Dai Fuyang withdrew the equivalent in cash and/or cryptocurrency of

$70,877,710.42.

c.      Deng Dingyuan withdrew the equivalent in cash and/or cryptocurrency of

$29,025,390.67.

d.     Deng Jun withdrew the equivalent in cash and/or cryptocurrency of $44,696,159.44.

e.     Deng Lan withdrew the equivalent in cash and/or cryptocurrency of $19,958.02.

f.     Fu Ling withdrew the equivalent in cash and/or cryptocurrency of $45,722,072.55.

g.     Hu Jingming withdrew the equivalent in cash and/or cryptocurrency of $49,173,63.

h.     Hu Sifeng withdrew the equivalent in cash and/or cryptocurrency of $1,214,339.

i.     Huang Yao withdrew the equivalent in cash and/or cryptocurrency of $514,684,530.35.

j.     Jia Shuyun withdrew the equivalent in cash and/or cryptocurrency of $124,619,900.84.

k.     Li Ping withdrew the equivalent in cash and/or cryptocurrency of $120,802,069.93.

l.     Lin Guodong withdrew the equivalent in cash and/or cryptocurrency of $27,753,886.50.

m.     Pan Yang Lian withdrew the equivalent in cash and/or cryptocurrency of $3,940,321..

n.     Qin Yong Qiang withdrew the equivalent in cash and/or cryptocurrency of $336,353.05.

o.      Shen Ling withdrew the equivalent in cash and/or cryptocurrency of $1,838,492,776.62.

p.      Shen Liugen withdrew the equivalent in cash and/or cryptocurrency of $6,029,147.21.

q.      Tu Jing withdrew the equivalent in cash and/or cryptocurrency of $28,081,484.02.

r.      Wan Jian withdrew the equivalent in cash and/or cryptocurrency of $376,856,944.99.

s.      Wu Qiao withdrew the equivalent in cash and/or cryptocurrency of $5,345,292.10.

t.      Wu Tianming withdrew the equivalent in cash and/or cryptocurrency of $2,598,466.40.

u.      Xu Hong withdrew the equivalent in cash and/or cryptocurrency of $987,323.38.

v.      Xu Min withdrew the equivalent in cash and/or cryptocurrency of $93,260,052.15.

w.      Yang Yibo withdrew the equivalent in cash and/or cryptocurrency of $82,725,763.77.

x.      Yang Yuhua withdrew the equivalent in cash and/or cryptocurrency of $22,473.70.

78.      Many of these withdrawals occurred during the Preference Period.[5]  Specifically:

---

[5]    Defendants withdrew a combination of cash and cryptocurrency during the Preference Period.  Plaintiff has converted all cryptocurrency withdrawn during the Preference Period to U.S. Dollars using the Court's Estimation Order.  The breakdown of each Defendants' Preference Period withdrawals by coin type is appended hereto as Appendix A.

a.      Chen Chao withdrew the equivalent in cash and/or cryptocurrency of at least $1,371,431.50 during the Preference Period.

b.      Dai Fuyang withdrew the equivalent in cash and/or cryptocurrency of at least $68,225,967.76 during the Preference Period.

c.      Deng Dingyuan withdrew the equivalent in cash and/or cryptocurrency of at least $28,892,043.69 during the Preference Period.

d.      Deng Jian withdrew the equivalent in cash and/or cryptocurrency of at least $5.12 during the Preference Period.

e.      Deng Jun withdrew the equivalent in cash and/or cryptocurrency of at least $27,017,632.27 during the Preference Period.

f.      Deng Lan withdrew the equivalent in cash and/or cryptocurrency of at least $19,958.02 during the Preference Period.

g.      Fu Ling withdrew the equivalent in cash and/or cryptocurrency of at least $45,325,427.37 during the Preference Period.

h.      Hu Jingming withdrew the equivalent in cash and/or cryptocurrency of at least $49,173.63 during the Preference Period.

i.      Hu Sifeng withdrew the equivalent in cash and/or cryptocurrency of at least $1,191,285.27 during the Preference Period.

j.      Huang Yao withdrew the equivalent in cash and/or cryptocurrency of at least $8,140,142.27 during the Preference Period.

k.      Li Ping withdrew the equivalent in cash and/or cryptocurrency of at least $20,389,873.42 during the Preference Period.

l.      Lin Guodong withdrew the equivalent in cash and/or cryptocurrency of at least $25,536,103.67 during the Preference Period.

m.      Pan Yang Liang withdrew the equivalent in cash and/or cryptocurrency of at least $3,920,537.75 during the Preference Period.

n.      Qin Yong Qiang withdrew the equivalent in cash and/or cryptocurrency of at least $76,942.59 during the Preference Period.

o.      Shen Ling withdrew the equivalent in cash and/or cryptocurrency of at least $142,214,465.83 during the Preference Period.

p.      Shen Liugen withdrew the equivalent in cash and/or cryptocurrency of at least $6,028,866.56 during the Preference Period.

q.      Tu Fan withdrew the equivalent in cash and/or cryptocurrency of at least $5.12 during the Preference Period.

r.      Tu Jing withdrew the equivalent in cash and/or cryptocurrency of at least $27,153,898.94 during the Preference Period.

s.      Wan Jian withdrew the equivalent in cash and/or cryptocurrency of at least $32,387,826.29 during the Preference Period.

t.      Wu Qiao withdrew the equivalent in cash and/or cryptocurrency of at least $5,342,698.36 during the Preference Period.

u.      Wu Tianming withdrew the equivalent in cash and/or cryptocurrency of at least $2,598,466.40 during the Preference Period.

v.      Xu Hong withdrew the equivalent in cash and/or cryptocurrency of at least $253,647.77 during the Preference Period.

w.      Xu Min withdrew the equivalent in cash and/or cryptocurrency of at least $67,783,520.48 during the Preference Period.

x.      Yang Yibo withdrew the equivalent in cash and/or cryptocurrency of at least $52,260,727.66 during the Preference Period.

y.      Yang Yuhua withdrew the equivalent in cash and/or cryptocurrency of at least $22,473.70 during the Preference Period.

79.    Because of the state of the Debtors' records and the criminal nature of Defendants' conduct, the Debtors expect to discover additional avoidable transfers made during the Preference Period to other Defendants and/or their co-conspirators.

\*      \*      \*

## CAUSES OF ACTION

### COUNT ONE
### PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT DAI FUYANG)

80.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

81.    Plaintiff transferred $68,225,967.76 worth of cash and/or cryptocurrency to Defendant Dai Fuyang from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

82.    These transfers were made to the benefit of Defendant Dai Fuyang.

83.    With respect to these transfers, Dai Fuyang was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Dai Fuyang received such transfers for the benefit of a creditor or creditors of Plaintiff.

84.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Dai Fuyang the cash and/or cryptocurrency balances in Dai Fuyang's FTX.com account.

85.     The transfers were made within 90 days of the Petition Date.

86.     The transfers were made while Plaintiff was insolvent.

87.     The transfers enabled Dai Fuyang to receive more than she would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Dai Fuyang on account of the debt were determined by the Bankruptcy Code.

88.     Dai Fuyang has not returned any portion of the $68,225,967.76 or the cryptocurrency valued at $68,225,967.76.

89.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

90.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Dai Fuyang the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT TWO**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT DENG DINGYUAN)**

91.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

92.     Plaintiff transferred $28,892,043.69 worth of cash and/or cryptocurrency to Defendant Deng Dingyuan from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

93.     These transfers were made to the benefit of Defendant Deng Dingyuan.

94.     With respect to these transfers, Deng Dingyuan was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Deng Dingyuan received such transfers for the benefit of a creditor or creditors of Plaintiff.

95.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Deng Dingyuan the cash and/or cryptocurrency balances in Deng Dingyuan's FTX.com account.

96.     The transfers were made within 90 days of the Petition Date.

97.     The transfers were made while Plaintiff was insolvent.

98.     The transfers enabled Deng Dingyuan to receive more than he would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Deng Dingyuan on account of the debt were determined by the Bankruptcy Code.

99.     Deng Dingyuan has not returned any portion of the $28,892,043.69 or the cryptocurrency valued at $28,892,043.69.

100.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

101.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Deng Dingyuan the full amount of the

transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT THREE
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT DENG JUN)

102.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

103.    Plaintiff transferred $27,017,632.27 worth of cash and/or cryptocurrency to Defendant Deng Jun from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

104.    These transfers were made to the benefit of Defendant Deng Jun.

105.    With respect to these transfers, Deng Jun was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Deng Jun received such transfers for the benefit of a creditor or creditors of Plaintiff.

106.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Deng Jun the cash and/or cryptocurrency balances in Deng Jun's FTX.com account.

107.    The transfers were made within 90 days of the Petition Date.

108.    The transfers were made while Plaintiff was insolvent.

109.    The transfers enabled Deng Jun to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Deng Jun on account of the debt were determined by the Bankruptcy Code.

110.    Deng Jun has not returned any portion of the $27,017,632.27 or the cryptocurrency valued at $27,017,632.27.

111.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

112.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Deng Jun the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT FOUR
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT DENG LAN)

113.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

114.     Plaintiff transferred $19,958.02 worth of cash and/or cryptocurrency to Defendant Deng Lan from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

115.     These transfers were made to the benefit of Defendant Deng Lan.

116.     With respect to these transfers, Deng Lan was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Deng Lan received such transfers for the benefit of a creditor or creditors of Plaintiff.

117.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Deng Lan the cash and/or cryptocurrency balances in Deng Lan's FTX.com account.

118.     The transfers were made within 90 days of the Petition Date.

119.     The transfers were made while Plaintiff was insolvent.

120.     The transfers enabled Deng Lan to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Deng Lan on account of the debt were determined by the Bankruptcy Code.

121.     Deng Lan has not returned any portion of the $19,958.02 or the cryptocurrency valued at $19,958.02.

122.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

123.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Deng Lan the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT FIVE**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT FU LING)**

124.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

125.     Plaintiff transferred $45,325,427.37 worth of cash and/or cryptocurrency to Defendant Fu Ling from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

126.     These transfers were made to the benefit of Defendant Fu Ling.

127.     With respect to these transfers, Fu Ling was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Fu Ling received such transfers for the benefit of a creditor or creditors of Plaintiff.

128.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Fu Ling the cash and/or cryptocurrency balances in Fu Ling's FTX.com account.

129.    The transfers were made within 90 days of the Petition Date.

130.    The transfers were made while Plaintiff was insolvent.

131.    The transfers enabled Fu Ling to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Fu Ling on account of the debt were determined by the Bankruptcy Code.

132.    Fu Ling has not returned any portion of the $45,325,427.37 or the cryptocurrency valued at $45,325,427.37.

133.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

134.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Fu Ling the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT SIX
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT HU JINGMING)

135.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

136.    Plaintiff transferred $49,173.63 worth of cash and/or cryptocurrency to Defendant Hu Jingming from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

137.    These transfers were made to the benefit of Defendant Hu Jingming.

138.    With respect to these transfers, Hu Jingming was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Hu Jingming received such transfers for the benefit of a creditor or creditors of Plaintiff.

139.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Hu Jingming the cash and/or cryptocurrency balances in Hu Jingming's FTX.com account.

140.    The transfers were made within 90 days of the Petition Date.

141.    The transfers were made while Plaintiff was insolvent.

142.    The transfers enabled Hu Jingming to receive more than he would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Hu Jingming on account of the debt were determined by the Bankruptcy Code.

143.    Hu Jingming has not returned any portion of the $49,173.63 or the cryptocurrency valued at $49,173.63.

144.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

145.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Hu Jingming the full amount of the

transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT SEVEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT HU SIFENG)

146.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

147.    Plaintiff transferred $1,191,285.27 worth of cash and/or cryptocurrency to Defendant Hu Sifeng from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

148.    These transfers were made to the benefit of Defendant Hu Sifeng.

149.    With respect to these transfers, Hu Sifeng was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Hu Sifeng received such transfers for the benefit of a creditor or creditors of Plaintiff.

150.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Hu Sifeng the cash and/or cryptocurrency balances in Hu Sifeng's FTX.com account.

151.    The transfers were made within 90 days of the Petition Date.

152.    The transfers were made while Plaintiff was insolvent.

153.    The transfers enabled Hu Sifeng to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Hu Sifeng on account of the debt were determined by the Bankruptcy Code.

154.    Hu Sifeng not returned any portion of the $1,191,285.27 or the cryptocurrency valued at $1,191,285.27.

155.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

156.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Hu Sifeng the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT EIGHT
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT HUANG YAO)

157.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

158.     Plaintiff transferred $8,140,142.27 worth of cash and/or cryptocurrency to Defendant Huang Yao from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

159.     These transfers were made to the benefit of Defendant Huang Yao.

160.     With respect to these transfers, Huang Yao was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Huang Yao received such transfers for the benefit of a creditor or creditors of Plaintiff.

161.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Huang Yao the cash and/or cryptocurrency balances in Huang Yao's FTX.com account.

162.     The transfers were made within 90 days of the Petition Date.

163.     The transfers were made while Plaintiff was insolvent.

164.    The transfers enabled Huang Yao to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Huang Yao on account of the debt were determined by the Bankruptcy Code.

165.    Huang Yao has not returned any portion of the $8,140,142.27 or the cryptocurrency valued at $8,140,142.27.

166.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

167.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Huang Yao the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT NINE
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT LIN GUODONG)

168.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

169.    Plaintiff transferred $25,536,103.67 worth of cash and/or cryptocurrency to Defendant Lin Guodong from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

170.    These transfers were made to the benefit of Defendant Lin Guodong.

171.    With respect to these transfers, Lin Guodong was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Lin Guodong received such transfers for the benefit of a creditor or creditors of Plaintiff.

172.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Lin Guodong the cash and/or cryptocurrency balances in Lin Guodong's FTX.com account.

173.    The transfers were made within 90 days of the Petition Date.

174.    The transfers were made while Plaintiff was insolvent.

175.    The transfers enabled Lin Guodong to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Lin Guodong on account of the debt were determined by the Bankruptcy Code.

176.    Lin Guodong has not returned any portion of the $25,536,103.67 or the cryptocurrency valued at $25,536,103.67.

177.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

178.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Lin Guodong the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT PAN YANG LIAN)

179.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

180.    Plaintiff transferred $3,920,537.75 worth of cash and/or cryptocurrency to Defendant Pan Yang Lian from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

181.    These transfers were made to the benefit of Defendant Pan Yang Lian.

182.    With respect to these transfers, Pan Yang Lian was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Pan Yang Lian received such transfers for the benefit of a creditor or creditors of Plaintiff.

183.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Pan Yang Lian the cash and/or cryptocurrency balances in Pan Yang Lian's FTX.com account.

184.    The transfers were made within 90 days of the Petition Date.

185.    The transfers were made while Plaintiff was insolvent.

186.    The transfers enabled Pan Yang Lian to receive more than she would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Pan Yang Lian on account of the debt were determined by the Bankruptcy Code.

187.    Pan Yang Lian has not returned any portion of the $3,920,537.75 or the cryptocurrency valued at $3,920,537.75.

188.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

189.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Pan Yang Lian the full amount of the

transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT ELEVEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT QIN YONG QIANG)

190.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

191.    Plaintiff transferred $76,942.59 worth of cash and/or cryptocurrency to Defendant Qin Yong Qiang from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

192.    These transfers were made to the benefit of Defendant Qin Yong Qiang.

193.    With respect to these transfers, Qin Yong Qiang was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Qin Yong Qiang received such transfers for the benefit of a creditor or creditors of Plaintiff.

194.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Qin Yong Qiang the cash and/or cryptocurrency balances in Qin Yong Qian's FTX.com account.

195.    The transfers were made within 90 days of the Petition Date.

196.    The transfers were made while Plaintiff was insolvent.

197.    The transfers enabled Qin Yong Qiang to receive more than he would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Qin Yong Qiang on account of the debt were determined by the Bankruptcy Code.

198.    Qin Yong Qiang has not returned any portion of the $76,942.59 or the cryptocurrency valued at $76,942.59.

199.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

200.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Qin Yong Qiang the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TWELVE
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT SHEN LING)

201.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

202.    Plaintiff transferred $142,214,465.83 worth of cash and/or cryptocurrency to Defendant Shen Ling from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

203.    These transfers were made to the benefit of Defendant Shen Ling.

204.    With respect to these transfers, Shen Ling was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Shen Ling received such transfers for the benefit of a creditor or creditors of Plaintiff.

205.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Shen Ling the cash and/or cryptocurrency balances in Shen Ling's FTX.com account.

206.    The transfers were made within 90 days of the Petition Date.

207.    The transfers were made while Plaintiff was insolvent.

208.    The transfers enabled Shen Ling to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Shen Ling on account of the debt were determined by the Bankruptcy Code.

209.    Shen Ling has not returned any portion of the $142,214,465.83 or the cryptocurrency valued at $142,214,465.83.

210.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

211.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Shen Ling the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT THIRTEEN
### PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT SHEN LIUGEN)

212.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

213.    Plaintiff transferred $6,028,866.56 worth of cash and/or cryptocurrency to Defendant Shen Liugen from August 13, 2022 to November 11, 2022. These transfers were transfers of property of Plaintiff.

214.    These transfers were made to the benefit of Defendant Shen Liugen.

215.    With respect to these transfers, Shen Liugen was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Shen Liugen received such transfers for the benefit of a creditor or creditors of Plaintiff.

216.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Shen Liugen the cash and/or cryptocurrency balances in Shen Liugen's FTX.com account.

217.     The transfers were made within 90 days of the Petition Date.

218.     The transfers were made while Plaintiff was insolvent.

219.     The transfers enabled Shen Liugen to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Shen Liugen on account of the debt were determined by the Bankruptcy Code.

220.     Shen Liugen has not returned any portion of the $6,028,866.56 or the cryptocurrency valued at $6,028,866.56.

221.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

222.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Shen Liugen the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT FOURTEEN**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT TU JING)**

223.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

224.     Plaintiff transferred $27,153,898.94 worth of cash and/or cryptocurrency to Defendant Tu Jing from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

225.     These transfers were made to the benefit of Defendant Tu Jing.

226.     With respect to these transfers, Tu Jing was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Tu Jing received such transfers for the benefit of a creditor or creditors of Plaintiff.

227.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Tu Jing the cash and/or cryptocurrency balances in Tu Jing's FTX.com account.

228.     The transfers were made within 90 days of the Petition Date.

229.     The transfers were made while Plaintiff was insolvent.

230.     The transfers enabled Tu Jing to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Tu Jing on account of the debt were determined by the Bankruptcy Code.

231.     Tu Jing has not returned any portion of the $27,153,898.94 or the cryptocurrency valued at $27,153,898.94.

232.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

233.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Tu Jing the full amount of the transfers,

plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of

Debtors' bankruptcy estate.

## COUNT FIFTEEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT WU QIAO)

234.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if

fully set forth here.

235.    Plaintiff transferred $5,342,698.36 worth of cash and/or cryptocurrency to

Defendant Wu Qiao from August 13, 2022 to November 11, 2022.  These transfers were

transfers of property of Plaintiff.

236.    These transfers were made to the benefit of Defendant Wu Qiao.

237.    With respect to these transfers, Wu Qiao was a creditor of Plaintiff (within the

meaning of 11 U.S.C. § 101(10)), or, alternatively, Wu Qiao received such transfers for the

benefit of a creditor or creditors of Plaintiff.

238.    Each of these transfers was made on account of an antecedent debt, namely

Plaintiff's obligation to deliver to Wu Qiao the cash and/or cryptocurrency balances in Wu

Qiao's FTX.com account.

239.    The transfers were made within 90 days of the Petition Date.

240.    The transfers were made while Plaintiff was insolvent.

241.    The transfers enabled Wu Qiao to receive more than she would have received if:

(i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the

transfers had not been made; and (iii) the amount paid to Wu Qiao on account of the debt were

determined by the Bankruptcy Code.

242.    Wu Qiao has not returned any portion of the $5,342,698.36 or the cryptocurrency

valued at $5,342,698.36.

243.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

244.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Wu Qiao the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT SIXTEEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT WU TIANMING)

245.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

246.    Plaintiff transferred $2,598,466.40 worth of cash and/or cryptocurrency to Defendant Wu Tianming from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

247.    These transfers were made to the benefit of Defendant Wu Tianming.

248.    With respect to these transfers, Wu Tianming was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Wu Tianming received such transfers for the benefit of a creditor or creditors of Plaintiff.

249.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Wu Tianming the cash and/or cryptocurrency balances in Wu Tianming's FTX.com account.

250.    The transfers were made within 90 days of the Petition Date.

251.    The transfers were made while Plaintiff was insolvent.

252.    The transfers enabled Wu Tianming to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Wu Tianming on account of the debt were determined by the Bankruptcy Code.

253.    Wu Tianming has not returned any portion of the $2,598,466.40 or the cryptocurrency valued at $2,598,466.40.

254.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

255.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Wu Tianming the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT SEVENTEEN**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT XU HONG)**

256.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

257.    Plaintiff transferred $253,647.77 worth of cash and/or cryptocurrency to Defendant Xu Hong from August 13, 2022 to November 11, 2022. These transfers were transfers of property of Plaintiff.

258.    These transfers were made to the benefit of Defendant Xu Hong.

259.    With respect to these transfers, Xu Hong was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Xu Hong received such transfers for the benefit of a creditor or creditors of Plaintiff.

260.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Xu Hong the cash and/or cryptocurrency balances in Xu Hong's FTX.com account.

261.    The transfers were made within 90 days of the Petition Date.

262.    The transfers were made while Plaintiff was insolvent.

263.    The transfers enabled Xu Hong to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Xu Hong on account of the debt were determined by the Bankruptcy Code.

264.    Xu Hong has not returned any portion of the $253,647.77 or the cryptocurrency valued at $253,647.77.

265.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

266.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Xu Hong the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT EIGHTEEN**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT XU MIN)**

267.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

268.    Plaintiff transferred $67,783,520.48 worth of cash and/or cryptocurrency to Defendant Xu Min from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

269.    These transfers were made to the benefit of Defendant Xu Min.

270.    With respect to these transfers, Xu Min was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Xu Min received such transfers for the benefit of a creditor or creditors of Plaintiff.

271.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Xu Min the cash and/or cryptocurrency balances in Xu Min's FTX.com account.

272.    The transfers were made within 90 days of the Petition Date.

273.    The transfers were made while Plaintiff was insolvent.

274.    The transfers enabled Xu Min to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Xu Min on account of the debt were determined by the Bankruptcy Code.

275.    Xu Min has not returned any portion of the $67,783,520.48 or the cryptocurrency valued at $67,783,520.48.

276.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

277.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Xu Min the full amount of the transfers,

plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT NINETEEN
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT YANG YIBO)

278.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

279.   Plaintiff transferred $52,260,727.66 worth of cash and/or cryptocurrency to Defendant Yang Yibo from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

280.   These transfers were made to the benefit of Defendant Yang Yibo.

281.   With respect to these transfers, Yang Yibo was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Yang Yibo received such transfers for the benefit of a creditor or creditors of Plaintiff.

282.   Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Yang Yibo the cash and/or cryptocurrency balances in Yang Yibo's FTX.com account.

283.   The transfers were made within 90 days of the Petition Date.

284.   The transfers were made while Plaintiff was insolvent.

285.   The transfers enabled Yang Yibo to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Yang Yibo on account of the debt were determined by the Bankruptcy Code.

286.   Yang Yibo has not returned any portion of the $52,260,727.66 or the cryptocurrency valued at $52,260,727.66.

287.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

288.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Yang Yibo the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TWENTY
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT YANG YUHUA)

289.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

290.    Plaintiff transferred $22,473.70 worth of cash and/or cryptocurrency to Defendant Yang Yuhua from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

291.    These transfers were made to the benefit of Defendant Yang Yuhua.

292.    With respect to these transfers, Yang Yuhua was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Yang Yuhua received such transfers for the benefit of a creditor or creditors of Plaintiff.

293.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Yang Yuhua the cash and/or cryptocurrency balances in Yang Yuhua's FTX.com account.

294.    The transfers were made within 90 days of the Petition Date.

295.    The transfers were made while Plaintiff was insolvent.

296.    The transfers enabled Yang Yuhua to receive more than she would have received if:  (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Yang Yuhua on account of the debt were determined by the Bankruptcy Code.

297.    Yang Yuhua has not returned any portion of the $22,473.70 or the cryptocurrency valued at $22,473.70.

298.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

299.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Yang Yuhua the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TWENTY-ONE
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT CHEN CHAO)

300.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

301.    Plaintiff transferred $1,371,431.50 worth of cash and/or cryptocurrency to Defendant Chen Chao from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

302.    These transfers were made to the benefit of Defendant Chen Chao.

303.    With respect to these transfers, Chen Chao was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Chen Chao received such transfers for the benefit of a creditor or creditors of Plaintiff.

304.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Chen Chao the cash and/or cryptocurrency balances in Chen Chao's FTX.com account.

305.    The transfers were made within 90 days of the Petition Date.

306.    The transfers were made while Plaintiff was insolvent.

307.    The transfers enabled Chen Chao to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Chen Chao on account of the debt were determined by the Bankruptcy Code.

308.    Chen Chao has not returned any portion of the $1,371,431.50 or the cryptocurrency valued at $1,371,431.50.

309.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

310.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Chen Chao the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TWENTY-TWO
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT DENG JIAN)

311.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

312.    Plaintiff transferred $5.12 worth of cash and/or cryptocurrency to Defendant

Deng Jian from August 13, 2022 to November 11, 2022.  These transfers were transfers of

property of Plaintiff.

313.    These transfers were made to the benefit of Defendant Deng Jian.

314.    With respect to these transfers, Deng Jian was a creditor of Plaintiff (within the

meaning of 11 U.S.C. § 101(10)), or, alternatively, Deng Jian received such transfers for the

benefit of a creditor or creditors of Plaintiff.

315.    Each of these transfers was made on account of an antecedent debt, namely

Plaintiff's obligation to deliver to Deng Jian the cash and/or cryptocurrency balances in Deng

Jian's FTX.com account.

316.    The transfers were made within 90 days of the Petition Date.

317.    The transfers were made while Plaintiff was insolvent.

318.    The transfers enabled Deng Jian to receive more than he would have received if:

(i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the

transfers had not been made; and (iii) the amount paid to Deng Jian on account of the debt were

determined by the Bankruptcy Code.

319.    Deng Jian has not returned any portion of the $5.12 or the cryptocurrency valued

at $5.12.

320.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence

under the circumstances of the case and has taken into account known or reasonably knowable

affirmative defenses and believes these transfers are avoidable.

321.    Accordingly, these transfers should be avoided as preferential transfers pursuant

to 11 U.S.C. § 547(b), and Plaintiff may recover from Deng Jian the full amount of the transfers,

plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of

Debtors' bankruptcy estate.

## COUNT TWENTY-THREE
## PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
## (AGAINST DEFENDANT LI PING)

322.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if

fully set forth here.

323.     Plaintiff transferred $20,389,873.42 worth of cash and/or cryptocurrency to

Defendant Li Ping from August 13, 2022 to November 11, 2022.  These transfers were transfers

of property of Plaintiff.

324.     These transfers were made to the benefit of Defendant Li Ping.

325.     With respect to these transfers, Li Ping was a creditor of Plaintiff (within the

meaning of 11 U.S.C. § 101(10)), or, alternatively, Li Ping received such transfers for the benefit

of a creditor or creditors of Plaintiff.

326.     Each of these transfers was made on account of an antecedent debt, namely

Plaintiff's obligation to deliver to Li Ping the cash and/or cryptocurrency balances in Li Ping's

FTX.com account.

327.     The transfers were made within 90 days of the Petition Date.

328.     The transfers were made while Plaintiff was insolvent.

329.     The transfers enabled Li Ping to receive more than she would have received if:

(i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the

transfers had not been made; and (iii) the amount paid to Li Ping on account of the debt were

determined by the Bankruptcy Code.

330.     Li Ping has not returned any portion of the $20,389,873.42 or the cryptocurrency

valued at $20,389,873.42.

331.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

332.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Yang Yuhua the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

### COUNT TWENTY-FOUR
### PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT TU FAN)

333.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

334.    Plaintiff transferred $5.12 worth of cash and/or cryptocurrency to Defendant Tu Fan from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

335.    These transfers were made to the benefit of Defendant Tu Fan.

336.    With respect to these transfers, Tu Fan was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Tu Fan received such transfers for the benefit of a creditor or creditors of Plaintiff.

337.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Tu Fan the cash and/or cryptocurrency balances in Tu Fan's FTX.com account.

338.    The transfers were made within 90 days of the Petition Date.

339.    The transfers were made while Plaintiff was insolvent.

340.    The transfers enabled Tu Fan to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Tu Fan on account of the debt were determined by the Bankruptcy Code.

341.    Tu Fan has not returned any portion of the $5.12 or the cryptocurrency valued at $5.12.

342.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

343.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Tu Fan the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

## COUNT TWENTY-FIVE
### PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)
### (AGAINST DEFENDANT WAN JIAN)

344.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

345.    Plaintiff transferred $32,387,826.29 worth of cash and/or cryptocurrency to Defendant Wan Jian from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

346.    These transfers were made to the benefit of Defendant Wan Jian.

347.    With respect to these transfers, Wan Jian was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Wan Jian received such transfers for the benefit of a creditor or creditors of Plaintiff.

348.     Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Wan Jian the cash and/or cryptocurrency balances in Wan Jian's FTX.com account.

349.     The transfers were made within 90 days of the Petition Date.

350.     The transfers were made while Plaintiff was insolvent.

351.     The transfers enabled Wan Jian to receive more than he would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amount paid to Wan Jian on account of the debt were determined by the Bankruptcy Code.

352.     Wan Jian has not returned any portion of the $32,387,826.29 or the cryptocurrency valued at $32,387,826.29.

353.     Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

354.     Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Wan Jian the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT TWENTY-SIX**
**PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(B)**
**(AGAINST DEFENDANT JIA SHUYUN)**

355.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth here.

356.    Plaintiff transferred millions of dollars in cash, cryptocurrency, and/or fiat currency to Defendant Jia Shuyun from August 13, 2022 to November 11, 2022.  These transfers were transfers of property of Plaintiff.

357.    These transfers were made to the benefit of Defendant Jia Shuyun.

358.    With respect to these transfers, Jia Shuyun was a creditor of Plaintiff (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, Jia Shuyun received such transfers for the benefit of a creditor or creditors of Plaintiff.

359.    Each of these transfers was made on account of an antecedent debt, namely Plaintiff's obligation to deliver to Jia Shuyun the cash and/or cryptocurrency balances in Jia Shuyun's FTX.com account.

360.    The transfers were made within 90 days of the Petition Date.

361.    The transfers were made while Plaintiff was insolvent.

362.    The transfers enabled Jia Shuyun to receive more than she would have received if: (i) Plaintiff's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the amounts paid to Jia Shuyun on account of the debt were determined by the Bankruptcy Code.

363.    Jia Shuyun has not returned any portion of the millions in cryptocurrency and/or fiat currency transferred to her.

364.    Pursuant to 11 U.S.C. § 547(b), Plaintiff has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes these transfers are avoidable.

365.    Accordingly, these transfers should be avoided as preferential transfers pursuant to 11 U.S.C. § 547(b), and Plaintiff may recover from Jia Shuyun the full amount of the

transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT TWENTY-SEVEN**
**PROPERTY RECOVERY PURSUANT TO 11 U.S.C. § 550(A)(1)**
**(AGAINST ALL DEFENDANTS)**

366.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 365 as if fully set forth here.

367.   As alleged above, Plaintiff is entitled to avoid each of these transfers addressed herein under §§ 547 and 548 of the Bankruptcy Code.

368.   Because Defendants are the initial transferees for whose benefit such transfers were made, Plaintiff may recover from all Defendants the full value of the transfers pursuant to 11 U.S.C. §§ 550(a)(1), plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of Debtors' bankruptcy estate.

**COUNT TWENTY-EIGHT**
**DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(D)**
**(AGAINST ALL DEFENDANTS)**

369.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 368 as if fully set forth here.

370.   As alleged above, Defendants are transferees of transfers and recipients of obligations avoidable under 11 U.S.C. §§ 547 and 548 and persons from whom property is recoverable under 11 U.S.C. §§ 550.

371.   By reason of the foregoing facts and pursuant to 11 U.S.C. § 502(d), any claims of Defendants that have been or will in the future be asserted in these Chapter 11 Cases should be disallowed unless and until Defendants have relinquished to Plaintiff the property transferred, or have paid Plaintiff the value of such transferred property, for which and to the extent the Court has determined Defendants are liable pursuant to 11 U.S.C. § 550.

**COUNT TWENTY-NINE**
**OBJECTION TO CLAIM NO. 78340**
**(AGAINST DEFENDANT CHEN CHAO)**

372.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 371 as if fully set forth here.

373.     On September 28, 2023, Claim No. 78340 was filed under the name "##."  The Claim was completed and signed with the name "##."  The Claim was filed with the email address used to register Defendant Chen Chao's FTX account (min503322302@163.com) and Chen Chao's FTX account number (100567721).  Claim No. 78340 lists the creditor's address as "#############2#6##512#" in the city "##" and country "##."

374.     Claim No. 78340 asserts a right to payment of $40,459.53 in cash and cryptocurrency allegedly owed to Chen Chao by Plaintiff.

375.     Bankruptcy Rule 3001(a) requires that proofs of claim "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a).

376.     The burden of persuasion for claims brought in bankruptcy always rests with the claimant.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).  A claim is only considered *prima facie* valid if the claimant files his claim in accordance with Rule 3001, including by alleging facts to support a legal liability owed by the debtor to the claimant.  *Id.*; Fed. R. Bankr. P. 3001(f); *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016).  Accordingly, where the claimant fails to allege any facts supporting legal liability or does not file his claim in accordance with Rule 3001, the claim is not entitled to *prima facie* validity, and the claimant must prove the validity of his claim by a preponderance of the evidence.  *See* Fed. R. Bankr. P. 3001(f); *In re Trib. Media Co.*, 2017 WL 2622743, at *7 (D. Del. June 16, 2017), *aff'd*, 902 F.3d 384 (3d Cir. 2018); *In re Cath. Diocese of Wilmington, Inc.*, 513 B.R. 639, 643 (Bankr. D. Del. 2014); *In re Allegheny Int'l, Inc.*, 954 F.2d at 173-74.

377.    Claim No. 78340 does not set forth any facts to support Chen Chao's claim.

378.    Claim No. 78340 also does not comply with Bankruptcy Rule 3001(a).  Chen Chao failed to fill in the required fields on the proof of claim form, namely:  (i) the creditor's name, (ii) the creditors address, (iii) the name of the person completing the claim; (iv) the e-signature of the person completing the claim; and (v) the address of the person completing the claim.  In all instances, these fields were either left blank or filled in with "#" symbols.

379.    Accordingly, Claim No. 78340 is not entitled to *prima facie* validity.  Instead, the burden of proof reverts to Chen Chao, who must prove the validity of the claim by a preponderance of the evidence.

380.    Further, as alleged above and on information and belief, the FTX account registered under the name Chen Chao was controlled by one or more individuals who used the fake name, alias, and/or stolen identity "Chen Chao" to register an FTX account through which the individual(s) could launder criminal proceeds.

381.    The actual name of an account holder is a material fact on which FTX relied when permitting individuals to open FTX accounts.

382.    By using a fake name, alias, and/or stolen identity to register an FTX account, the individual(s) who registered and controlled Chen Chao's FTX account made a material misrepresentation to FTX that induced FTX to enter into a contract with the individual(s).

383.    Fraud in the inducement renders a contract legally invalid.  *See Schiavello* v. *Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 114 (D. Del. 1999).  Any contract between FTX and Chen Chao or the individual(s) who operated and controlled an FTX account registered to the name Chen Chao from which Claim No. 78340 would purport to arise is thus invalid.

384.     Claim No. 78340 should thus be disallowed pursuant to 11 U.S.C. § 502(b)(1) as it is unenforceable against FTX under applicable law.

385.     Plaintiff reserves any and all other defenses and rights to object to Claim No. 78340 on any other grounds.

### COUNT THIRTY
### OBJECTION TO CLAIM NO. 38115
### (AGAINST DEFENDANT WAN JIAN)

386.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 385 as if fully set forth here.

387.     On August 12, 2023, Defendant Wan Jian filed Claim No. 38115.

388.     Claim No. 38115 asserts a right to payment of $228,202.54 and €0.13 in cash and cryptocurrency allegedly owed to Wan Jian by Plaintiff.

389.     Bankruptcy Rule 3001(a) requires that proofs of claim "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a).

390.     The burden of persuasion for claims brought in bankruptcy always rests with the claimant. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). A claim is only considered *prima facie* valid if the claimant files his claim in accordance with Rule 3001, including by alleging facts to support a legal liability owed by the debtor to the claimant. *Id.*; Fed. R. Bankr. P. 3001(f); *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016). Accordingly, where the claimant fails to allege any facts supporting legal liability or does not file his claim in accordance with Rule 3001, the claim is not entitled to *prima facie* validity, and the claimant must prove the validity of his claim by a preponderance of the evidence. *See* Fed. R. Bankr. P. 3001(f); *In re Trib. Media Co.*, 2017 WL 2622743, at *7 (D. Del. June 16, 2017), *aff'd*, 902 F.3d 384 (3d Cir. 2018); *In re Cath. Diocese of Wilmington, Inc.*, 513 B.R. 639, 643 (Bankr. D. Del. 2014); *In re Allegheny Int'l, Inc.*, 954 F.2d at 173-74.

391.     Claim No. 38115 does not set forth any facts to support Wan Jian's claim.

392.     Accordingly, Claim No. 38115 is not entitled to *prima facie* valid. Instead, the burden of proof reverts to Wan Jian, who must prove the validity of the claim by a preponderance of the evidence.

393.     Plaintiff reserves any and all other defenses and rights to object to Claim No. 38115 on any other grounds.

### COUNT THIRTY-ONE
### OBJECTION TO SCHEDULED CLAIM NO. 7452960
### (AGAINST DEFENDANT JIA SHUYUN)

394.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 394 as if fully set forth here.

395.     Scheduled Claim No. 7452960 is a claim for $535,192.79, comprised of the cash and/or cryptocurrency that was in Jia Shuyun's FTX account on the Petition Date.

396.     Jia Shuyun transferred Scheduled Claim No. 76452960 to Svalbard Holdings Limited.  Svalbard Holdings Limited, in turn, transferred Scheduled Claim No. 76452960 to Svalbard II Holdings Limited.

397.     None of Jia Shuyun, Svalbard Holdings Limited, or Svalbard II Holdings Limited has filed a proof of claim.

398.     Scheduled Claim No. 76452960 is not contingent, unliquidated, or disputed, so is deemed filed pursuant to 11 U.S.C. § 1111(a).

399.     Although a debtor's schedule of liabilities "constitute[s] prima facie evidence of the validity and amount of the claims of creditors," Fed. R. Bankr. P. 3003(b)(1), scheduled claims may be disallowed pursuant to Section 502(b) of the Bankruptcy Code, *In re Mallett, Inc.*, 2024 WL 150628, at *8 (S.D.N.Y. Jan. 12, 2024).

400.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of a claim.  *Id.* § 502(b). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  *Id.* § 502(b)(1).  "[T]he effect of § 502 is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004).

401.     As alleged above and on information and belief, the FTX account registered under the name Jia Shuyun was controlled by one or more individuals who used the fake name, alias, and/or stolen identity "Jia Shuyun" to register an FTX account through which the individual(s) could launder criminal proceeds.

402.     The actual name of an account holder is a material fact on which FTX relied when permitting individuals to open FTX accounts.

403.     By using a fake name, alias, and/or stolen identity to register an FTX account, the individual(s) who registered and controlled Jia Shuyun's FTX account made a material misrepresentation to FTX that induced FTX to enter into a contract with the individual(s).

404.     Fraud in the inducement renders a contract legally invalid.  *See Schiavello* v. *Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 114 (D. Del. 1999).  Any contract between FTX and Jia Shuyun or the individual(s) who operated and controlled an FTX account registered to the name Jia Shuyun from which Scheduled Claim No. 7452960 would purport to arise is thus invalid.

405.    Scheduled Claim No. 7452960 should thus be disallowed pursuant to 11 U.S.C.

§ 502(b)(1) as it is unenforceable against FTX under applicable law.

### COUNT THIRTY-TWO
### OBJECTION TO SCHEDULED CLAIM NO. 7459381
### (AGAINST DEFENDANT LI PING)

406.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 405 as if
fully set forth here.

407.    Scheduled Claim No. 7459381 is a claim for $70,601.98, comprised of the cash
and/or cryptocurrency that was in Li Ping's FTX account on the Petition Date.

408.    Li Ping has not filed a proof of claim.

409.    Scheduled Claim No. 7459381 is not contingent, unliquidated, or disputed, so is
deemed filed pursuant to 11 U.S.C. § 1111(a).

410.    Although a debtor's schedule of liabilities "constitute[s] prima facie evidence of
the validity and amount of the claims of creditors," Fed. R. Bankr. P. 3003(b)(1), scheduled
claims may be disallowed pursuant to Section 502(b) of the Bankruptcy Code, *In re Mallett, Inc.*,
2024 WL 150628, at *8 (S.D.N.Y. Jan. 12, 2024).

411.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim
or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a
party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the
Court, after notice and hearing, shall determine the allowed amount of a claim.  *Id.* § 502(b).
Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be
allowed to the extent that it is "unenforceable against the debtor and property of the debtor,
under any agreement or applicable law."  *Id.* § 502(b)(1).  "[T]he effect of § 502 is to provide a
bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to
bankruptcy."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004).

412.    As alleged above and on information and belief, the FTX account registered under the name Li Ping was controlled by one or more individuals who used the fake name, alias, and/or stolen identity "Li Ping" to register an FTX account through which the individual(s) could launder criminal proceeds.

413.    The actual name of an account holder is a material fact on which FTX relied when permitting individuals to open FTX accounts.

414.    By using a fake name, alias, and/or stolen identity to register an FTX account, the individual(s) who registered and controlled Li Ping's FTX account made a material misrepresentation to FTX that induced FTX to enter into a contract with the individual(s).

415.    Fraud in the inducement renders a contract legally invalid under Delaware law. *See Schiavello* v. *Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 114 (D. Del. 1999).  Any contract between FTX and Li Ping or the individual(s) who operated and controlled an FTX account registered to the name Li Ping from which Scheduled Claim No. 7459381 would purport to arise is thus invalid.

416.    Scheduled Claim No. 7459381 should thus be disallowed pursuant to 11 U.S.C. § 502(b)(1) as it is unenforceable against FTX under applicable law.

### COUNT THIRTY-THREE
### OBJECTION TO SCHEDULED CLAIM NO. 6836726
### (AGAINST DEFENDANT HUANG YAO)

417.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 416 as if fully set forth here.

418.    Scheduled Claim No. 6836726 is a claim for $11.73, comprised of the cash and/or cryptocurrency that was in Huang Yao's FTX account on the Petition Date.

419.    Huang Yao has not filed a proof of claim.

420.    Scheduled Claim No. 6836726 is not contingent, unliquidated, or disputed, so is deemed filed pursuant to 11 U.S.C. § 1111(a).

421.    Although a debtor's schedule of liabilities "constitute[s] prima facie evidence of the validity and amount of the claims of creditors," Fed. R. Bankr. P. 3003(b)(1), scheduled claims may be disallowed pursuant to Section 502(b) of the Bankruptcy Code, *In re Mallett, Inc.*, 2024 WL 150628, at *8 (S.D.N.Y. Jan. 12, 2024).

422.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of a claim.  *Id.* § 502(b). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  *Id.* § 502(b)(1).  "[T]he effect of § 502 is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004).

423.    As alleged above and on information and belief, the FTX account registered under the name Huang Yao was controlled by one or more individuals who used the fake name, alias, and/or stolen identity "Huang Yao" to register an FTX account through which the individual(s) could launder criminal proceeds.

424.    The actual name of an account holder is a material fact on which FTX relied when permitting individuals to open FTX accounts.

425.     By using a fake name, alias, and/or stolen identity to register an FTX account, the individual(s) who registered and controlled Huang Yao's FTX account made a material misrepresentation to FTX that induced FTX to enter into a contract with the individual(s).

426.     Fraud in the inducement renders a contract legally invalid under Delaware law. *See Schiavello* v. *Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 114 (D. Del. 1999).  Any contract between FTX and Huang Yao or the individual(s) who operated and controlled an FTX account registered to the name Huang Yao from which Scheduled Claim No. 6836726 would purport to arise is thus invalid.

427.     Scheduled Claim No. 6836726 should thus be disallowed pursuant to 11 U.S.C. § 502(b)(1) as it is unenforceable against FTX under applicable law.

## COUNT THIRTY-FOUR
## EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C. 510(C)(1)
## (AGAINST DEFENDANT CHEN CHAO)

428.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 427 as if fully set forth here.

429.     By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy Code, the proofs of claim of Chen Chao in these Chapter 11 Cases should be equitably subordinated to the claims of innocent creditors who did not use the FTX exchange to engage in criminal and fraudulent behavior.

430.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

**COUNT THIRTY-FIVE**
**EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C.**
**510(C)(1)**
**(AGAINST DEFENDANT WAN JIAN)**

431.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 430 as if

fully set forth here.

432.    By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy

Code, the proofs of claim of Wan Jian in these Chapter 11 Cases should be equitably

subordinated to the claims of innocent creditors who did not use the FTX exchange to engage in

criminal and fraudulent behavior.

433.    Equitable subordination as requested herein is consistent with the provisions and

purposes of the Bankruptcy Code.

**COUNT THIRTY-SIX**
**EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C.**
**510(C)(1)**
**(AGAINST DEFENDANT JIA SHUYUN)**

434.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 433 as if

fully set forth here.

435.    Because Scheduled Claim No. 7452960 is scheduled as an undisputed,

noncontingent, and liquidated claim, it is deemed filed.  11 U.S.C. § 1111(a).  And because it is

deemed filed, Scheduled Claim No. 7452960 is "subject to equitable subordination, regardless of

the fact that" Jia Shuyun did not actually "file[] a proof of claim."  *In re Midnight Madness*

*Distilling, LLC*, 2024 WL 3517620, at *28 (E.D. Pa. July 23, 2024).

436.    By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy

Code, scheduled Scheduled Claim No. 7452960 should be equitably subordinated to the claims

of innocent creditors who did not use the FTX exchange to engage in criminal and fraudulent

behavior.

437.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

## COUNT THIRTY-SEVEN
## EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C. 510(C)(1)
## (AGAINST DEFENDANT LI PING)

438.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 437 as if fully set forth here.

439.     Because Scheduled Claim No. 7459381 is scheduled as an undisputed, noncontingent, and liquidated claim, it is deemed filed.  11 U.S.C. § 1111(a).  And because it is deemed filed, Scheduled Claim No. 7459381 is "subject to equitable subordination, regardless of the fact that" Li Ping did not actually "file[] a proof of claim."  *In re Midnight Madness Distilling, LLC*, 2024 WL 3517620, at *28 (E.D. Pa. July 23, 2024).

440.     By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy Code, Scheduled Claim No. 7459381 should be equitably subordinated to the claims of innocent creditors who did not use the FTX exchange to engage in criminal and fraudulent behavior.

441.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

## COUNT THIRTY-EIGHT
## EQUITABLE SUBORDINATION OF CLAIMS PURSUANT TO 11 U.S.C. 510(C)(1)
## (AGAINST DEFENDANT HUANG YAO)

442.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 441 as if fully set forth here.

443.     Because Scheduled Claim No. 6836726 is scheduled as an undisputed, noncontingent, and liquidated claim, it is deemed filed.  11 U.S.C. § 1111(a).  And because it is deemed filed, Scheduled Claim No. 7459381 is "subject to equitable subordination, regardless of

the fact that" Li Ping did not actually "file[] a proof of claim." *In re Midnight Madness Distilling, LLC*, 2024 WL 3517620, at *28 (E.D. Pa. July 23, 2024).

444.    By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy Code, Scheduled Claim No. 6836726 should be equitably subordinated to the claims of innocent creditors who did not use the FTX exchange to engage in criminal and fraudulent behavior.

445.    Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully pray that this Court:

446.    Enter an order that the transfers addressed herein are avoidable preferences under 11 U.S.C. § 547;

447.    Award Plaintiff the return of property to the Debtors' estate that is the subject of the avoidable preferential transfers alleged herein, subject to any offset for the valid conveyance by Defendants of subsequent new value to Plaintiff;

448.    Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants have turned over to Plaintiff the amount ordered as an award;

449.    Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by Defendants Chen Chao, Wan Jian, Jia Shuyun, Li Ping, and Huang Yao in these Chapter 11 cases for failure to establish the validity of any and all claims filed or held by Chen Chao, Wan Jian, Jia Shuyun, Li Ping, and Huang Yao by a preponderance of the evidence;

450.    Enter an order under 11 U.S.C. § 510(c)(1) subordinating any and all claims filed or held by Chen Chao, Wan Jian, Jia Shuyun, Li Ping, and Huang Yao in these Chapter 11 Cases

to the claims of innocent creditors who did not use the FTX exchange to engage in criminal and fraudulent behavior;

451.    Award Plaintiff its attorneys' fees, pre- and post-judgment interest, and costs of suit; and

452.    Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated: November 10, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        cobb@lrclaw.com
        mcguire@lrclaw.com
        robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Stephen Ehrenberg (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
        ehrenbergs@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*