**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                       Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date:  Dec. 12, 2024 at 1:00 P.M. (ET)<br>Objection Deadline:  Nov. 26, 2024 at 4:00 P.M. (ET) |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER**
**(A) AUTHORIZING THE DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER,**
**THE SETTLEMENT AGREEMENT WITH JOHN SAMUEL TRABUCCO**
**(B) APPROVING THE SETTLEMENT AGREEMENT AND**
**(C) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX.com") and its affiliated debtors and debtors-in-possession (each, a "Debtor", and collectively the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (1) authorizing the Debtors' entry into, and performance under, the settlement agreement attached as Exhibit 1 to the Order (the "Settlement Agreement")[2] between the Debtors, FTX Digital Markets Ltd., acting through its Joint Official Liquidators ("FTX DM") and John Samuel Trabucco ("Trabucco") in the above-captioned chapter 11 proceedings, (2) approving the terms of the Settlement Agreement, and (3) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

**Preliminary Statement**

1. Following constructive, arm's length negotiations, the Debtors, FTX DM and Trabucco have reached an agreement that delivers significant value for the Debtors' and FTX DM's stakeholders without the delay and cost of litigation.

2. This settlement relates to the Debtors' and FTX DM's potential claims against Trabucco, who was employed by Debtor Alameda Research Ltd. ("Alameda") in various roles from 2018 through 2022, including as co-CEO from August 2021 until August 2022. In particular, the Debtors have determined that during his tenure at Alameda, Trabucco received the benefit of approximately $40 million in potentially avoidable transfers from the Debtors. Trabucco also has filed several proofs of claim against the Debtors, including customer claims totaling approximately $70 million.

3. The parties have engaged in good faith negotiations regarding these claims, and ultimately reached a settlement reflected in the Settlement Agreement, which provides, among other things:[3]

- Trabucco will transfer to the Debtors legal title to two apartments in San Francisco, California that Trabucco purchased in June 2021 for a total of $8.7 million;

- Trabucco will transfer to the Debtors legal title to a 53-foot HCB Suenos yacht that he purchased in March 2022 for $2.51 million; and

- Trabucco will transfer to the Debtors all rights and interests represented in and asserted through his claims filed against the Debtors, including with respect to his customer claims totaling approximately $70 million, and all of his claims against the Debtors will be disallowed and expunged.

---

[3] Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

4. The proposed settlement likely would generate more value to the Debtors' estates on a risk-adjusted basis than the Debtors could recover if they were to initiate an adversary proceeding against Trabucco and obtain a favorable judgment against him. The Settlement Agreement also allows the Debtors to secure this significant recovery for their stakeholders while avoiding the expense, uncertainty and burden of litigation.

5. The Debtors' entry into, and performance under, the Settlement Agreement is in the best interests of the Debtors' estates and all of their stakeholders, and is well within the range of reasonableness. The Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved.

**Background**

6. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[4] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

---

[4] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires, Inc.

-3-

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

8. Trabucco began his employment at Alameda in October 2018, and by 2020, Trabucco was managing Alameda's day-to-day operations alongside Caroline Ellison ("Ellison"). *See* Trial Tr. 977:11-15, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Oct. 10, 2023). In August 2021, Samuel Bankman-Fried ("Bankman-Fried") named Trabucco and Ellison Co-CEOs of Alameda. Trabucco ultimately departed Alameda in August 2022.

9. During his tenure at Alameda, Trabucco received cash compensation totaling approximately $20 million, as well as compensation in the form of FTT, SRM and FTX.com equity. Between July 2020 and October 2021, Trabucco also sold a portion of his FTT for approximately $30 million in proceeds. In total, between cash compensation paid directly to Trabucco, withdrawals from his FTX.com accounts, and other transfers made by the Debtors for his benefit, Trabucco received the benefit of transfers totaling approximately $40 million during the two year period prior to the Petition Date.

10. In and around June 2021, Trabucco purchased two apartments in San Francisco for a total of $8.7 million (the "Residences"), with those purchases funded by his compensation from Alameda. Trabucco currently holds legal title to the Residences.

11. On February 23, 2022, Trabucco executed a purchase agreement to acquire a 53-foot HCB Suenos yacht (the "Yacht") for $2.51 million. This purchase was also funded by Trabucco's compensation from Alameda—shortly after signing the purchase agreement, Trabucco transferred 2.51 million USDC from his FTX.com exchange account to one of Alameda's FTX.com exchange accounts, and that same day, Alameda sent a wire transfer of $2.51 million to the seller of the Yacht. Trabucco currently holds legal title to the Yacht.

12. On November 11 and November 14, 2022, the Debtors filed voluntary petitions for relief under the Bankruptcy Code, commencing the Chapter 11 Cases in the Bankruptcy Court.

13. On June 29, 2023, Trabucco filed proofs of claim 5193, 5267, 5270, 5469, and 5481 (collectively, the "Trabucco Filed Proofs of Claim") against FTX.com, West Realm Shires Services Inc. ("FTX US"), Alameda Research LLC, Alameda, and Alameda Research(Bahamas) Ltd., respectively.  The Trabucco Filed Proofs of Claim include customer claims for the balances of certain FTX.com and FTX US customer accounts as of the Petition Date, with those asserted customer claims collectively totaling $69,176,447.13 against FTX.com and $140,252.40 against FTX US, and with those balances including compensation that Trabucco received from Alameda and other assets that Trabucco had acquired using such compensation.

14. Based on their investigation, the Debtors believe that they have meritorious claims against Trabucco, including to recover amounts previously paid to Trabucco as compensation, and to disallow the Trabucco Filed Proofs of Claim unless and until Trabucco has relinquished all property received in transfers that are determined by the Court to be avoidable or subject to turnover.  At the same time, the Debtors' potential claims are disputed, carry some degree of risk, and in any event would be time-consuming and expensive to litigate.  It also is not clear that the Debtors ultimately would be able to recover the full amount of any award that the Debtors would seek in litigation.

15. Following extensive, arm's length negotiations, the Debtors, FTX DM and Trabucco agreed to the Settlement Agreement, dated as of November 3, 2024, which contemplates, among other things (i) Trabucco's prompt transfer of the Residences and Yacht to the Debtors; (ii) the disallowance and expungement of the Trabucco Filed Proofs of Claim, including Trabucco's customer claims totaling approximately $70 million; and (iii) the release of any claims

the Debtors or FTX DM may have against Trabucco, and any claims Trabucco may have against the Debtors or FTX DM.

## Jurisdiction

16. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

17. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A (1) authorizing the Debtors to enter into the Settlement Agreement, (2) approving the Settlement Agreement, and (3) granting certain related relief.

## Basis for Relief

**I.   The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests.**

18. Resolution of the Debtors' potential claims against Trabucco by means of the Settlement Agreement is in the best interests of the Debtors because the Debtors will receive approximately $80 million in value without the need for potentially costly and time-consuming litigation. Specifically, the Debtors will receive legal title to the Residences (purchased for $8.7 million) and the Yacht (purchased for $2.51 million), and also will secure the disallowance and

expungement of the Trabucco Filed Proofs of Claim totaling at least $70 million. Although the Debtors believe that their potential claims against Trabucco are strong, those claims are disputed and would be time-consuming and expensive to litigate, and it also is not clear that the Debtors ultimately would be able to recover through a judgment significantly more value than they will receive through the Settlement Agreement. Accordingly, the proposed settlement will likely generate more value to the Debtors' estates on a risk-adjusted basis than the Debtors could obtain by initiating an adversary proceeding against Trabucco. Settlement on the proposed terms is thus a reasonable exercise of the Debtors' business judgment satisfying Bankruptcy Rule 9019.

19. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements are "generally favored in bankruptcy" as they "minimize litigation and expedite the administration of the estate." *In re World Health Alts., Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

20. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise

and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

21. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (citations omitted).

22. The terms of the Settlement Agreement fall well within the range of reasonableness and should be approved by the Court. The Settlement Agreement provides material value to the Debtors' estates, including: (i) the prompt transfer to the Debtors of legal title to the Residences (purchased for $8.7 million); (ii) the prompt transfer to the Debtors of legal title to the Yacht (purchased for $2.51 million); and (iii) the disallowance and expungement of the Trabucco Filed Proofs of Claim totaling at least $70 million. The Settlement Agreement also avoids the need to file costly and time-consuming litigation, and eliminates the risks of any unfavorable outcome. Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

    **a.**  **The Probability of Success in Litigation and Subsequent Collection**

    23.  The Debtors maintain that they have meritorious claims and would prevail against Trabucco in an adversary proceeding. However, the Debtors would need to spend significant time and resources proving their claims and obtaining a favorable judgment against Trabucco. If forced to litigate, Trabucco likely would assert various defenses to the claims, contesting, among other things, culpability for any wrongdoing and defenses specific to the facts surrounding the potentially avoidable transfers. As a result, the outcome of litigation involving numerous claims and defenses is uncertain.

    24.  Moreover, even if the Debtors pursued litigation and prevailed on every claim against Trabucco at trial, it is possible that the Debtors' ultimate recovery from Trabucco would not exceed the value that the Debtors' estates will realize through the Settlement Agreement. The settlement set forth in the Settlement Agreement provides certainty to the Debtors through a fair and final resolution without having to incur the cost and risk of litigation.

    **b.**  **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted**

    25.  Litigation of the Debtors' potential claims would be complex, expensive and involve a significant amount of time and resources. Settlement negotiations were vigorous and it was clear that, in the absence of a deal, the parties were prepared to litigate these issues. Pursuit of the claims would require document and testimonial discovery, expert reports and briefing on numerous legal and factual issues and defenses. The Settlement Agreement eliminates these costs.

    **c.**  **The Paramount Interests of Creditors**

    26.  The Settlement Agreement is in the best interests of the Debtors and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the parties that otherwise would have required costly and time-consuming

litigation with uncertain net recovery by providing for the consensual resolution of all disputes between the parties through a settlement that will deliver approximately $80 million in value for the Debtors. As such, in the Debtors' business judgment, the value of entering into the Settlement Agreement exceeds the net benefits that the Debtors and their estates likely would obtain from litigating their potential claims.

27. The Debtors submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders. As a result, the Debtors respectfully submit that the Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Settlement Agreement and authorize the Debtors to enter into it.

### Waiver of Bankruptcy Rule 6004(h)

28. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

29. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice,

waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

### Notice

30. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the Ad Hoc Committee of Non-U.S. Customers of FTX.com; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to Trabucco, (i) counsel for FTX DM; and to the extent not listed herein, (j) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: November 10, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Richard S. Cobb (No. 3157)<br>Matthew B. McGuire (No. 4366)<br>Howard W. Robertson IV (No. 6903)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>　　　　cobb@lrclaw.com<br>　　　　mcguire@lrclaw.com<br>　　　　robertson@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Stephanie G. Wheeler (admitted pro hac vice)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>　　　　gluecksteinb@sullcrom.com<br>　　　　wheelers@sullcrom.com<br>　　　　dunnec@sullcrom.com<br>　　　　crokej@sullcrom.com<br><br>*Counsel for the Debtors* |