**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**ORDER (A) AUTHORIZING THE DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE SETTLEMENT AGREEMENT WITH JOHN SAMUEL TRABUCCO, (B) APPROVING THE SETTLEMENT AGREEMENT AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[5] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (each, a "Debtor", and collectively the "Debtors") for entry of an order (this "Order") (a) authorizing the Debtors' entry into, and performance under, the Settlement Agreement, a copy of which is attached hereto as Exhibit 1; (b) approving the Settlement Agreement; and (c) granting certain related relief; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits;

---

[5]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

and upon the record of the Motion and supporting documents; and this Court having found and determined that the relief set forth in this Order is in the best interests of the Debtors and their estates; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized to enter into, and perform their obligations under, the Settlement Agreement.

3. The terms of the Settlement Agreement are approved in their entirety.

4. The failure to specifically include or reference any particular term or provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such term or provision.

5. The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

6. The requirements set forth in Bankruptcy Rule 6004(a) are waived.

7. This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

8. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated: _____
      Wilmington, Delaware

_____
THE HONORABLE JOHN T. DORSEY
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Settlement Agreement**

Execution Version

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is made and entered into as of November 3, 2024, by and among (i) Alameda Research Ltd. ("Alameda") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), (ii) FTX Digital Markets Ltd., acting through its Joint Official Liquidators ("FTX DM"), and (c) John Samuel Trabucco ("Trabucco").  The Debtors, FTX DM and Trabucco (each a "Party" and together, the "Parties") hereby agree as follows:

## RECITALS

WHEREAS, on November 11 and 14, 2022 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing Chapter 11 proceedings (the "Chapter 11 Cases");

WHEREAS, Trabucco was employed by Alameda in various roles from 2018 through 2022, receiving cash compensation totaling approximately $20 million as well as certain compensation in the form of FTT, SRM, and equity of FTX Trading Ltd. ("FTX.com");

WHEREAS, in and around June 2021, Trabucco purchased ███████████ ██████████████████████████████████, together with the chattels therein, and the separately deeded parking space (the "Residences") for $8,700,000, with the purchases of the Residences funded by Trabucco's compensation from Alameda;

WHEREAS, on February 23, 2022, Trabucco executed a purchase agreement with the American Yacht Group ("AYG") to purchase a 53-foot HCB Suenos yacht (the "Yacht") for $2,513,000;

WHEREAS, on March 11, 2022, Trabucco transferred 2,513,000 USDC from his FTX.com exchange account to one of Alameda's FTX.com exchange accounts, and Alameda then wired $2,513,000 to AYG to pay the purchase price for the Yacht, with the purchase of the Yacht having been funded by Trabucco's compensation from Alameda;

WHEREAS, on June 29, 2023, Trabucco filed proofs of claim 5193, 5267, 5270, 5469, and 5481 against Debtors FTX.com, West Realm Shires Services Inc. ("FTX US"), Alameda Research LLC, Alameda, and Alameda Research (Bahamas) Ltd., respectively (collectively, the "Trabucco Filed Proofs of Claim");

WHEREAS, the Trabucco Filed Proof of Claims include customer claims against FTX.com and FTX US for the balances of certain FTX.com and FTX US customer accounts as of the Petition Date, and with those balances including compensation that Trabucco received from Alameda and other assets that Trabucco had acquired using such compensation;

WHEREAS, the Debtors believe they have meritorious claims against Trabucco, including to recover amounts previously paid to Trabucco as compensation, and are prepared to commence an adversary proceeding in the Bankruptcy Court asserting such claims against Trabucco (the "Debtors' Claims"), and Trabucco disputes the Debtors' Claims;

WHEREAS, the Parties have engaged in good faith, arm's-length negotiations about consensually resolving the Debtors' Claims;

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Debtors' Claims; and

WHEREAS, the Debtors have worked diligently to pursue the Debtors' Claims against Trabucco with the intent to maximize recovery for the Debtors' estates, and have concluded, in their reasonable judgment, that final settlement and resolution of the Debtors' Claims in accordance with the terms of this Settlement Agreement is in the best interest of the Debtors, their creditors and other stakeholders.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Recitals Incorporated.  The recitals set forth above are hereby incorporated in full and made a part of this Settlement Agreement.

2.      Bankruptcy Court Approval Required.  This Settlement Agreement among the Parties is subject in all respects to the approval of the Bankruptcy Court.   Pending approval of this Settlement Agreement by the Bankruptcy Court, and subject to the occurrence of the Settlement Effective Date (as defined below), each of the Parties agrees that it is, and will be, bound by this Settlement Agreement and waives any right to object to approval by the Bankruptcy Court.   The Debtors shall file a motion seeking approval of the Settlement Agreement   (the   "Approval Motion") within seven (7) days following execution of this Settlement Agreement by all Parties.  In the event that the Bankruptcy Court declines to approve this Settlement Agreement, or the order approving the Settlement Agreement (the "Approval Order") does not become final and non-appealable, this Settlement Agreement shall become null and void and of no further force and effect, and the Parties will be returned to the *status quo ante* as if this Settlement Agreement had never been entered.

3.      Settlement Effective Date.  The terms of this Settlement Agreement shall be effective upon the Approval Order becoming final and non-appealable (the "Settlement Effective Date").

4.      Transfer of the Residences and Yacht.  Within fourteen (14) calendar days of the Settlement Effective Date, Trabucco shall transfer or cause to be transferred to the Debtors legal title to the Yacht.  Within sixty (60) calendar days of the Settlement Effective Date, Trabucco shall transfer or cause to be transferred to the Debtors legal title to the Residences.  If additional documentation is subsequently required to transfer or cause to be transferred the Residences or the Yacht, Trabucco agrees to execute and deliver to the Debtors any documents, instruments, conveyance and assurances as are reasonably necessary.

5.    <u>Disallowance of Claims.</u>   As of the Settlement Effective Date, Trabucco shall be deemed to have transferred to the Debtors all rights and interests represented in and asserted through the Trabucco Filed Proofs of Claim, and, in connection therewith, the Trabucco Filed Proofs of Claim shall be disallowed and expunged in their entirety without further order of the Bankruptcy Court.   The Debtors, or their claims agent, shall be authorized to reflect such disallowance on the claims registry.

6.    <u>Releases of Claims by Trabucco</u>.   Effective on the Settlement Effective Date, Trabucco shall be deemed to have waived, discharged, settled, compromised and released any and all claims, demands, obligations, duties, liabilities, damages, expenses, indebtedness, debts, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description or character whatsoever, whether known or unknown, liquidated or unliquidated, contingent or non-contingent, that Trabucco has, had or may have against the Debtors or FTX DM, including but not limited to all claims that were or could have been asserted in the Trabucco Filed Proofs of Claim; <u>provided</u>, <u>however</u>, that the foregoing shall not release any obligations under or claim for breach of this Settlement Agreement.

7.    <u>Release of Claims by the Debtors and FTX DM</u>.   Upon the Debtors' receipt of legal title to the Residences and Yacht, the Debtors and FTX DM shall be deemed to have waived, discharged, settled, compromised and released any and all claims, demands, obligations, duties, liabilities, damages, expenses, indebtedness, debts, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description or character whatsoever, whether known or unknown, liquidated or unliquidated, contingent or non-contingent, that they have, had or may have against Trabucco; <u>provided</u>, <u>however</u>, that the foregoing shall not release any obligations under or claim for breach of this Settlement Agreement.

8.    <u>Bahamas Property</u>.    As of the Settlement Effective Date, Trabucco also acknowledges and confirms that he does not now have, and never has had, any right, title or interest in and to the condominium unit Charles 4A in Albany Bahamas ("<u>Charles 4A</u>"), which was paid for by FTX DM, and Trabucco further disclaims, waives and releases any and all legal or equitable right, title, interest, claim or demand, present, future or contingent, at law or in equity in and to Charles 4A, and this clause shall be binding upon Trabucco and his heirs or assigns.

9.    <u>California Civil Code § 1542</u>.   Without suggesting that California law is applicable, each Party expressly waives and relinquishes any and all provisions, rights and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542 with respect to rights, claims, and interests released pursuant to this Agreement. Section 1542 provides that:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release

and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

10.     No Admission of Liability.  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of disputed claims and defenses.  Neither this Settlement Agreement nor the fact of its execution shall constitute an admission or acknowledgement of liability or wrongdoing by any Party.

11.     Binding Effect and Authorization.  Each Party represents and warrants that this Settlement Agreement is entered into in good faith and acknowledges that this Settlement Agreement is not the product or result of any duress, economic or otherwise.  Each individual signing this Settlement Agreement on behalf of a Party or Parties has the power and authority (i) to enter into this Settlement Agreement on behalf of the Party or Parties on whose behalf he or she has signed and (ii) to sign the Settlement Agreement.  This Settlement Agreement shall be binding upon the Parties hereto and their predecessors, successors, and assigns.

12.     Entire Agreement.  This Settlement Agreement constitutes the entire agreement among the Parties with respect to the matters addressed herein, and may not be changed, modified or altered in any manner, except in writing, signed by each Party.

13.     Execution in Counterparts.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Any signature delivered by a Party electronically shall be deemed an original signature.

14.     Agreement Cooperation.  Each Party shall cooperate with each other Party and take such actions as are reasonably necessary to obtain approval of this Settlement Agreement by the Bankruptcy Court and entry of the Approval Order, and to effectuate its terms.

15.     Interpretation and Rules of Construction.  This Settlement Agreement is the product of arm's-length negotiations among the Parties and, in the enforcement or interpretation hereof, shall be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Settlement Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.  Each Party was represented by counsel during the negotiations and drafting of this Settlement Agreement and continues to be represented by counsel.  All references to dollars or "$" in this Settlement Agreement refer to United States dollars.  In addition, this Settlement Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

16.     Jurisdiction/Choice of Law.  The Bankruptcy Court shall retain, and each of the Parties irrevocably consents to, jurisdiction with respect to all matters arising from or related to this Settlement Agreement, including, without limitation, for purposes of enforcing the terms and conditions of this Settlement Agreement.  This Settlement Agreement shall be governed by the laws of the State of Delaware, without giving effect to any choice of law or conflict of law

provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

17.    <u>No Presumption/Advice of Counsel</u>.  The Parties acknowledge: (a) they have carefully read and fully understand the terms of this Settlement Agreement; (b) that this Settlement Agreement shall be construed in all respects as jointly drafted, and shall not be construed in any way against any other Party hereto on the grounds that the Party was the drafter of this Settlement Agreement, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Settlement Agreement; (c) they are fully satisfied with all of the terms of this Settlement Agreement; and (d) they discussed this Settlement Agreement with counsel and understand this Settlement Agreement fully and completely.

18.    <u>No Waiver</u>.  No failure or delay by any Party in exercising any right, power, or privilege under this Settlement Agreement or applicable law shall operate as a waiver by that Party of any such right, power, or privilege.

19.    <u>Severability</u>.  If, after the Settlement Effective Date, any term, clause, or provision of this Settlement Agreement is invalidated or unenforceable by operation of law or otherwise, the Parties shall attempt in in good faith to negotiate a replacement, but legally valid, term, clause, or provision that best meets the intent of the Parties.  The remaining provisions of this Settlement Agreement shall remain in full force and effect.

20.    <u>Costs</u>.  Each Party shall bear its own attorneys' fees and costs incurred in connection with this Settlement Agreement and completion of the transfers and other matters contemplated herein.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed by their respective authorized representatives.

Dated:                          John J. Ray III, solely in his capacity as Chief Executive
New York, NY                    Officer of the Debtors,


                                By: _____
                                    John J. Ray III



Dated:                          John Samuel Trabucco
San Francisco, CA


                                By: _____
                                    John Samuel Trabucco



Dated:                          Brian Simms, solely in his capacity as Joint Official
Nassau, The Bahamas             Liquidator of FTX Digital Markets

                                By: _____

                                    Brian Simms

Dated:                                  John J. Ray III, solely in his capacity as Chief Executive
New York, NY                            Officer of the Debtors,


                                        By: _____
                                            John J. Ray III



Dated: 11/02/2024                       John Samuel Trabucco
San Francisco, CA


                                        By: _____
                                            John Samuel Trabucco



Dated:                                  Brian Simms, solely in his capacity as Joint Official
Nassau, The Bahamas                     Liquidator of FTX Digital Markets

                                        By: _____

                                            Brian Simms

Dated:  
New York, NY

John J. Ray III, solely in his capacity as Chief Executive Officer of the Debtors,

By: _____
     John J. Ray III

Dated:  
San Francisco, CA

John Samuel Trabucco

By: _____
     John Samuel Trabucco

Dated:  
Nassau, The Bahamas

Brian Simms, solely in his capacity as Joint Official Liquidator of FTX Digital Markets

By: _____
     Brian Simms