## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :    Chapter 11
In re:                                                  :
                                                        :    Case No. 22-11068 (JTD)
FTX TRADING LTD., et al.,¹                              :
                                                        :    (Jointly Administered)
                Debtors.                                :
                                                        :    Obj. Deadline: November 13, 2024 at 4:00 p.m. ET
------------------------------------------------------- x    Hearing Date: November 20, 2024 at 2:00 p.m. ET
```

## MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS
## CAPITAL, LTD. (IN LIQUIDATION) FOR LEAVE TO AMEND PROOF OF CLAIM

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized

joint liquidators (the "**Joint Liquidators**") appointed in the British Virgin Islands' ("**BVI**")

liquidation of Three Arrows Capital, Ltd. (in liquidation) (the "**3AC Debtor**") and foreign

representatives of the 3AC Debtor, as recognized pursuant to chapter 15 of the Bankruptcy Code

in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y.

2022), respectfully file this motion (the "**Motion**") seeking entry of an order, substantially in the

form attached hereto as Exhibit A (the "**Proposed Order**"), granting the Joint Liquidators leave

to amend their timely-filed proof of claim against FTX Trading Ltd. ("**FTX**").  In support of this

Motion, the Joint Liquidators refer to and incorporate herein (i) the *Declaration of Russell

Crumpler in Support of the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (in

liquidation) for Leave to Amend Proof of Claim*, attached hereto as Exhibit B (the "**Crumpler

Declaration**") and (ii) the *Declaration of Adam J. Goldberg in Support of the Motion of the Joint*

---

¹     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
      4063 respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of FTX
      debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list
      of such information may be obtained on the website of FTX's claims and noticing agent at
      https://cases.ra.kroll.com/FTX.

*Liquidators of Three Arrows Capital, Ltd. (in Liquidation) for Leave to Amend Proof of Claim*,
attached hereto as Exhibit C (the "**Goldberg Declaration**").  In further support of this Motion, the
Joint Liquidators respectfully submit as follows:

## PRELIMINARY STATEMENT

1.      The Joint Liquidators file this Motion for authorization to amend the 3AC Debtor's
proof of claim to assert liquidated and non-contingent claims of approximately $1.53 billion based
on information obtained after the Bar Date (as defined below) following diligent discovery and
investigation.

2.      Like FTX, the 3AC Debtor has been undergoing its own insolvency proceedings
for over two years.  As part of that process, the Joint Liquidators undertook, and continue to pursue,
significant asset recovery efforts including the preparation of litigation claims against many
counterparties, some of which are chapter 11 debtors in the United States like FTX.  Greatly
hampering that process, however, was the fact that (due to the misconduct of the 3AC Debtor's
founders) the 3AC Debtor had essentially no comprehensive books and records, and also lacked
sufficient cooperation from anyone with firsthand knowledge of the 3AC Debtor's pre-liquidation
affairs.  Crumpler Decl. ¶ 25.

3.      At the same time, the resources available to the Joint Liquidators were occupied by
the high level of complexity of the 3AC liquidation.  Prior to the FTX non-customer claims bar
date on June 30, 2023 (the "**Bar Date**"), the Joint Liquidators were actively investigating and
litigating claims against not only FTX, but also other chapter 11 debtors, the 3AC Debtor's
founders, and a number of other counterparties in multiple countries around the world.  As a result
of this sweeping multi-front effort, the Joint Liquidators' resources were under significant pressure
in the period leading up to the Bar Date and were focused on what was known, at the time, to be
the highest value issues for the 3AC estate.  Crumpler Decl. ¶ 8.

2

4.      The Joint Liquidators timely filed a proof of claim against FTX on June 30, 2023 (the "**Original POC**") based on the limited information then available.[2]  In the months after the 3AC liquidation and before FTX filed for bankruptcy, the Joint Liquidators made numerous requests for information from FTX, but the limited information provided was insufficient to determine what assets the 3AC Debtor historically had on the FTX platform at various times, when those assets were liquidated or transferred, and what happened to those assets and any proceeds thereof.  Crumpler Decl. ¶¶ 28-34.  Instead, the only information the Joint Liquidators had available indicated that an apparent $120 million loan from FTX to the 3AC Debtor had been satisfied after May 31, 2022, *i.e.* shortly before the 3AC Debtor's liquidation proceedings, but the 3AC Debtor lacked supporting documentation.  *Id*. ¶¶ 36,37.  When asked to provide such documents prior to Bar Date, FTX's counsel failed to do so and instead summarily responded that FTX was not aware that the 3AC Debtor has any claims against FTX.  Goldberg Decl. ¶ 10.  Based on the apparent satisfaction of a loan, just two weeks before the 3AC Debtor's liquidation proceeding, the Original POC asserted, *inter alia*, claims in the nature of preference, conversion, and other avoidance actions under BVI, New York, Delaware, and other applicable law, as well as all other claims subsequently revealed through discovery.[3]

5.      After the filing of the Original POC, the Joint Liquidators made repeated attempts to obtain information and documents from FTX that were necessary to develop their claims.  As outlined in the Goldberg Declaration, the Joint Liquidators did not gain access to any information from FTX until December 2023.  Goldberg Decl. ¶ 14.  Since then, FTX (whether intentionally

---

[2]    The Joint Liquidators also timely filed proofs of claim against each of FTX's debtor affiliates.  Based on discovery received to-date, including FTX's statement that the only debtor entity with any contractual relationship with the 3AC Debtor was FTX, the Joint Liquidators believe that the 3AC Debtor's claims are against FTX only. Accordingly, this Motion seeks leave to amend only proof of claim no. 5319, and the Joint Liquidators expect to withdraw in short order any claims filed against other debtor entities.

[3]    *See* proof of claim no. 5319.

nor not) "slow-rolled" the delivery of critical information to the Joint Liquidators. *Id.*, at ¶¶ 13-36. The delays included taking weeks and at times months to respond to information requests, ignoring follow-up communications, producing documents in the form of millions of lines of raw data requiring extensive time and effort to process (rather than providing answers that FTX already knew), filing a claim objection in response to proposed Rule 2004 discovery requests, failing to adequately prepare its corporate witness to answer basic questions during a Rule 30(b)(6) deposition, and repeatedly failing to conduct appropriate searches and produce responsive documents. *Id.* Cumulatively, these failings delayed the Joint Liquidators' ability to formulate the scope and factual bases for their claims by at least several months. *Id.*

6. Nevertheless, the information and documents obtained so far have enabled the Joint Liquidators to prepare an amendment to the Original POC, which is attached to the Proposed Order as Exhibit 1 (the "**Amended POC**"). The Amended POC is based on the same factual situation— the June 2022 transactions that resulted in the closure of the $120 million line of credit—as the Original POC. The Amended POC asserts the same claims as the Original POC for preference, conversion, and other avoidance claims (*i.e.*, undervalue transaction), and adds similar claims for unjust enrichment, turnover, breach of trust and fiduciary duty, breach of contract, and proprietary restitution claims under BVI, U.S., English, and other applicable law, now that the 3AC Debtor has more (but still not perfect) clarity into the facts. The claims amount to approximately $1.53 billion, representing the value of assets on the FTX platform that it is now apparent were liquidated, sold, or otherwise transferred in transactions between June 12 and June 15, 2022. These transfers occurred just ***two weeks*** before the 3AC Debtor's liquidation proceedings, by or for the benefit of FTX, in satisfaction of approximately $1.3 billion in alleged liabilities of the 3AC Debtor. These transfers are classic avoidable preferences, in addition to being subject to other claims.

7.      The Joint Liquidators file this Motion at this stage, although discovery into the 3AC Debtor's claims against FTX remains ongoing, in light of FTX's forthcoming motion to establish a disputed claims reserve, as anticipated by FTX's plan confirmation order.[4]  The size of the reserve may impact the 3AC Debtor's ability to recover on the ultimate allowed amount of its claims.  Allowing the Amended POC to be filed on a timely basis would better enable the Joint Liquidators to defend the 3AC Debtor's interests in connection with the adjudication of the amount of the disputed claims reserve, based on the size of the 3AC Debtor's claim using information obtained to date.

8.      Because the discovery process is still ongoing, the Joint Liquidators reserve the right to further amend the Amended POC.  Indeed, between October 28 and November 1, 2024, the 3AC Debtor (i) served FTX with certain document requests, interrogatories, and a deposition notice of a previously-undisclosed FTX employee that FTX's representative consulted to prepare for the FTX deposition, and (ii) requested that FTX produce unredacted copies of a September 2024 A&M presentation (discussed in further detail below) and a privilege log, and reconduct a thorough search in light of apparent deficiencies in FTX's search process.   Goldberg Decl. ¶¶ 35,36.  On November 4, FTX responded by email refusing to produce unredacted copies of the presentation on alleged work product grounds, and, other than confirming receipt of the deposition notice, announcing that it will not conduct any re-searches or provide further any discovery until this Motion is decided.  *Id*., at ¶ 35.  The Joint Liquidators are also seeking to depose former FTX

---

[4]      *See Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan Of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404], ¶ 168 ("Distributions under the Plan shall not occur until after entry by the Bankruptcy Court of an order determining the amount of a Disputed Claims Reserve (the "Disputed Claims Reserve Amount"), which order shall be entered following a motion by the Debtors or the Plan Administrator, subject to notice and a hearing. All partiers' rights are reserved as to the Disputed Claims Reserve Amount.")

US-DOCS\154736726.19

employees who, based on FTX's testimony and communications produced by FTX, have firsthand knowledge of transactions involving the 3AC Debtor's assets.

9.    On October 4, 2024, the Joint Liquidators provided a draft of the Amended POC to FTX and requested that FTX consent to its filing.   Goldberg Decl. ¶ 37.   FTX declined approximately two weeks later.  *Id.*  The Joint Liquidators therefore file this Motion requesting leave to file the Amended POC without FTX's consent.

## JURISDICTION & VENUE

10.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Joint Liquidators confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11.    Venue of these proceedings is proper under 28 U.S.C. § 1408 and § 1409.

12.    The statutory and legal predicates for the relief requested herein are Bankruptcy Rules 7015 and 9006(b).

## BACKGROUND

13.    The 3AC Debtor was incorporated in the BVI and operated a hedge fund with a focus on trading and investing in cryptocurrency and other digital assets.

14.     The 3AC Debtor's business collapsed in May and June 2022 in the wake of extreme fluctuations in the cryptocurrency markets.  On June 27, 2022, it commenced a liquidation proceeding (the "**BVI Proceeding**") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division), and that court issued an order appointing Russell Crumpler and Christopher Farmer as the Joint Liquidators of the 3AC Debtor.

15.     On July 1, 2022, the Joint Liquidators, acting as the foreign representatives of the 3AC Debtor, commenced Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of New York (*In re Three Arrows Capital Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y.)).  On July 28, 2022, that court granted recognition of the 3AC Debtor's foreign main proceeding pending in the BVI.

16.     Pursuant to BVI law, the Joint Liquidators are fiduciaries of the 3AC Debtor's estate created in the BVI Proceeding, with an obligation to conduct an orderly, fair liquidation of the 3AC Debtor and to maximize the value of its assets for the benefit of creditors.  In furtherance of those duties, BVI law empowers the Joint Liquidators, *inter alia*, with the sole authority to take possession and control of the 3AC Debtor's assets, carry on its business and manage its affairs, and investigate the causes of its insolvency and any potential causes of action the estate may have.

17.     At the time of the filing of the Original POC, the Joint Liquidators had access to extremely limited information concerning the relationship between the 3AC Debtor and FTX. Indeed, the Joint Liquidators faced extensive challenges obtaining documents and information necessary to conduct a comprehensive evaluation of the 3AC Debtor's claims against FTX and other entities.  These challenges were due to the destruction or other loss of the 3AC Debtor's books and records, and the complete failure of the 3AC Debtor's founders—who maintained day-to-day control over the 3AC Debtor prior to its collapse—to meaningfully cooperate with the Joint

7

Liquidators. Crumpler Decl. ¶¶ 9,10. As just one example, when the Joint Liquidators gained access to the 3AC Debtor's offices in Singapore, they found that hard drives had been removed from desktop computers, and that the offices contained no laptops and very few other records. *Id.*, at ¶ 9. The Joint Liquidators essentially had no books or records, emails, or employees (former or current) to consult. *Id.*, at ¶ 25. As a result, the Joint Liquidators could only tediously recreate the 3AC Debtor's books and records from whole cloth, including through the pursuit of discovery from numerous parties in multiple jurisdictions. *Id.*

18.     At the time the Original POC was filed, the information reasonably available to the Joint Liquidators indicated that FTX or its affiliates appeared to have seized or foreclosed upon the 3AC Debtor's assets to satisfy a $120 million line of credit provided by FTX to 3AC. Crumpler Decl. ¶ 36. Other than that, the Joint Liquidators lacked significant material information, including such critical information as what assets the 3AC Debtor possessed on the FTX platform; what contracts governed that trading relationship; when, how and why those assets were liquidated; where the proceeds from those liquidations went; the amounts of its borrowings if any on the FTX platform; and what contracts governed that apparent lending relationship. *Id.*, at 37. Prior to the FTX bankruptcy filing the Joint Liquidators made repeated information requests to FTX but never received comprehensive data sufficient to determine 3AC's assets and transaction history. Crumpler Decl. ¶¶ 28-34. And after the FTX bankruptcy but prior to the Bar Date, the Joint Liquidators' counsel requested that FTX produce any documents concerning the apparent lending relationship between the parties. Goldberg Decl. ¶ 10. FTX did not do so, and instead its counsel simply responded that they were not aware of any claims that the 3AC Debtor had against FTX. *Id.*

19.     On June 30, 2023, consistent with the Joint Liquidators' duty to maximize value for the estate, the 3AC Debtor filed the Original POC based on the information available to it.  The Original POC asserted, *inter alia*, claims in the nature of preference, conversion, and other avoidance actions under BVI, New York, Delaware, and other applicable law, as well as all other claims, whether known or unknown, based on acts, omissions, and transactions between the 3AC Debtor, FTX, and FTX's affiliated Debtors.

20.     To remedy their information deficit, the Joint Liquidators embarked on a lengthy discovery process and ultimately obtained various documents and information after the filing of the Original POC that were until then in FTX's possession.  Goldberg Decl. ¶¶ 11-36.  That discovery (which was in FTX's possession and therefore known to FTX, but not to the 3AC Debtor) revealed that the "preference, conversion, and other avoidance actions" cited in the Original POC are not limited to the apparent satisfaction of a $120 million loan owed to FTX.  Rather, they are based on the liquidation, between June 12 and June 15, 2022 (*i.e.*, approximately ***two weeks*** before the 3AC Debtor's liquidation proceedings began), by or for the benefit of FTX, of approximately $1.53 billion in the 3AC Debtor's assets in satisfaction of approximately $1.3 billion in alleged liabilities to FTX.  Crumpler Decl. ¶ 42.  The discovery also revealed facts showing that the 3AC Debtor has viable breach of contract, breach of trust, proprietary restitution, turnover, and unjust enrichment claims against FTX based on the same transactions.

21.     Pursuant to Federal Rule of Civil Procedure 15, made applicable to this matter pursuant to Bankruptcy Rule 7015, the Joint Liquidators requested that FTX consent to the filing of the Amended POC on October 4, 2024.  FTX declined approximately two weeks later.

## **RELIEF REQUESTED**

22.     The Joint Liquidators respectfully request that the Court grant them leave to file the Amended POC, a copy of which is attached to the Proposed Order as <u>Exhibit 1</u>, pursuant to Federal

9

Rule of Civil Procedure 15, made applicable to this matter pursuant to Bankruptcy Rule 7015.  In

the alternative, the Joint Liquidators request that the Court permit the filing of the Amended POC

on the basis of the excusable neglect standard set forth in Bankruptcy Rule 9006(b).

## BASIS FOR RELIEF REQUESTED

I.    **THE 3AC DEBTOR SHOULD BE PERMITTED TO AMEND THE ORIGINAL POC PURSUANT TO RULE 15 OF THE FEDERAL RULE OF CIVIL PROCEDURE**

    **A.**    <u>Standard for Post-Bar Date Amendments</u>

23.    The Third Circuit has held that "Bankruptcy Rule 7015 provides that amendments

to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P.

7015, which commits the decision to grant or deny leave to amend to the trial court's sound

discretion." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998).  Federal Rule of

Civil Procedure 15 provides that "[t]he Court should freely give leave when justice so requires."

Fed. R. Civ. P. 15(a)(2).

24.    Consistent with the text of the rule, courts that have addressed Rule 15 in the context

of amendments to proofs of claim have been clear that such amendments should be "liberally

allowed." *See In re Orion Ref. Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004) ("[A]mendments

to timely proofs of claim are liberally allowed"); *see also In re Edison Bros. Stores, Inc.*, No. 99-

529 (JCA), 2002 WL 999260, at *3 (Bankr. D. Del. May 15, 2002) (permitting post-bar date

amendment and stating that "[i]t is a well settled principle that, absent contrary equitable

considerations or prejudice to the opposing party, amendments to proofs of claim should be freely

permitted.").

25.    In particular, claim amendments are permissible "to cure defects in a claim already

filed, to describe a claim with greater particularity, or to plead a new theory of recovery on the

facts of the original claim." *Edison Bros. Stores*, 2002 WL 999260, at *3; *Orion Ref. Corp.*, 317

US-DOCS\154736726.19

B.R. at 664 (same).  Courts also allow post-bar date amendments to revise the claim amount asserted in the original proof of claim.  *Edison Bros* Stores, 2022 WL 999260,  at \*4 ("Courts have generally held that a post-bar date proof of claim seeking to increase the amount of a timely-filed claim is not the assertion of a new claim"); *Orion Ref. Corp.*, 317 B.R. at 664 ("While courts allow post-bar date amendment to claim amounts, courts do not allow post-bar amendment to change [priority] status of the claim."); *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301 (3d Cir. 1999) (affirming bankruptcy court's decision to allow a post-confirmation claim amendment increasing the amount of damages asserted and adding a new theory of recovery).

26.     Indeed, leave to amend should *only* be denied upon a "showing by the non-moving party of one of the following grounds for denial: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; or (5) futility of the amendment." *Plains Mktg., L.P. v. Bank of Am., N.A. (In re Semcrude, L.P.)*, 443 B.R. 472, 476 (Bankr. D. Del. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Edison Bros. Stores*, 2002 WL 999260, at \*3 ("[A] court will deny leave to amend *only if* there is undue delay, motivated by bad faith, or it would be prejudicial to the opposing party.") (internal citations and quotation marks omitted) (emphasis added).

27.     Allowing the 3AC Debtor to amend the Original POC is consistent with these principles.  The Original POC was based on transfers of the 3AC Debtor's assets in or around June 2022 to satisfy liabilities ostensibly owed to FTX.  The factual basis for the Amended POC is exactly the same (only that discovery has revealed that the magnitude of claims is greater).  This is confirmed by internal presentations prepared by FTX's financial advisor, Alvarez & Marsal ("**A&M**"), in response to the Original POC, which describe the transactions addressed in the

Amended POC.  The theories of recovery are also largely in the same nature in the Original POC

and the Amended POC, *i.e.*, preference, conversion, and other avoidance actions (*i.e.*, undervalue

transactions) (Claim No. 5319, at ¶ 6), while adding related theories of recovery based on new

information about those transactions.  Accordingly, the Amended POC appropriately describes the

claims asserted in the Original POC with greater particularity and cures any potential defects

thereunder by identifying the amount of such claims, and a greater scope of the facts giving rise

thereto, as revealed through the discovery obtained from FTX since the filing of the Original POC.

28.    And as explained in detail below, none of the factors justifying denial of a claim

amendment apply here.

**B.**    The Joint Liquidators' Requested Amendment is Neither Unduly Delayed nor Unduly Prejudicial to FTX

29.    The mere passage of time between the original proof of claim and a proposed

amendment does not make the delay "undue."  *See, e.g.*, *Adams v. Gould, Inc.*, 739 F.2d 858, 868

(3d Cir. 1984) (holding that "the mere passage of time, without more, does not require that a

motion to amend a complaint be denied"); *In re Stone & Webster, Inc.*, 547 B.R. 588, 606 (Bankr.

D. Del. 2016) (allowing amendment 11 years after the original proof of claim was filed because

the trustee delayed the proceedings); *In re Burlington Motor Carriers, Inc.*, No. CIV.A. 99–157,

1999 WL 1427683, at *9 (D. Del. Dec. 30, 1999) (holding that a motion to amend filed 10 months

after the complaint was not, in the absence of any other prejudicial factors, undue delay); *Coca–*

*Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.*, 668 F. Supp. 906, 921 (D. De1.

1987) (holding that a passage of six and one-half years, when not motivated by bad faith, was not

undue delay).  Instead, "[t]he question of undue delay . . . requires that we focus on the [movant's]

motives for not amending their complaint to assert this claim earlier.".  *Adams*, 739 F.2d at 868.

In doing so, the undue delay factor focuses on "the gap between when amendment becomes

possible and when it is actually sought." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *See also In re Woodbridge Grp. of Companies, LLC*, No. 17-12560, 2021 WL 5774217, at *4 (Bankr. D. Del. Dec. 6, 2021) ("The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend.") (citing *Mullin*, 875 F.3d at 151).

> a.   *There Has Been No "Undue" Delay Because Discovery is Ongoing and any "Delay" was Caused by FTX*

30.     Here, the Joint Liquidators only recently received sufficient discovery from FTX that provided the factual basis for the Amended POC.  Before the FTX bankruptcy, the Joint Liqudators made numerous requests for complete account data including all historic transactions, but they never received complete information.   Crumpler Decl. ¶¶ 28-34.  Instead, the only information Joint Liquidators possessed indicated that a $120 million liability was satisfied in June 2022, but when before the Bar Date the 3AC Debtor's counsel asked for the relevant documents, FTX's counsel did not produce any.   *Id.*, at ¶ 36; Goldberg Decl. ¶ 10.   Since the filing of the Original POC, the Joint Liquidators spent significant time seeking discovery from FTX, processing and analyzing such discovery and following up on the many holes and deficiencies therein.   Crumpler Decl. ¶¶ 39-45.   And amendment only became possible after the Joint Liquidators' receipt and analysis of the discovery materials produced by FTX in the period leading up to its deposition on September 19, 2024, and after that deposition itself when FTX explained the basis for its assertions and confirmed it had no other documentation or reasons to support the purported liquidations that occurred between June 12 and 15, 2022.   Under these circumstances, and where the 3AC Debtor has been diligent in pursuing information and discovery is ongoing, there is no undue delay or prejudice to FTX.   *In re Fleming Companies, Inc.*, 347 B.R. 163, 167 (Bankr. D. Del. 2006) ("The Defendant also argues that the Plaintiff unduly delayed filing its [amendment

motion]. The Court disagrees. The Plaintiff's Motion was filed eight months after the Complaint, at which time discovery had not yet been completed."); *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, 651 B.R. 477, 488 (Bankr. D.N.J. 2023) ("Here, there is no undue prejudice to Topoint in allowing the amendment. As noted, the parties are still in the discovery phase, so there is no undue prejudice on this basis alone.").

31.     This is particularly the case because FTX's own slowness is the reason discovery has lasted for this long and remains ongoing. As set forth in the Crumpler Declaration, before the FTX bankruptcy the 3AC Debtor made repeated requests for compete transaction information but never received it. Crumpler Decl. ¶¶ 28-34. And as set forth in the Goldberg Declaration, after the FTX bankruptcy but before the Bar Date the 3AC Debtor requested supporting documents from FTX on June 28, 2023, but did not receive documents in response. Goldberg Decl. ¶ 10. After the Original POC was filed, on October 10, 2023, the 3AC Debtor and FTX entered into an information sharing agreement in exchange for the withdrawal of the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts*, which was filed on September 29, 2023 [D.I. 2754]. Goldberg Decl. ¶ 12. Pursuant to that agreement, the 3AC Debtor promptly made a document request to FTX on October 27, 2023. *Id*., at ¶ 13. It was not until almost three months later (and six months after the first request) that the Joint Liquidators first obtained meaningful information from FTX (when FTX produced documents in four separate rounds on December 14, 2023, January 8, 2024, January 12, 2024, and January 20, 2024). *Id*., at ¶ 14.

32.     The documents FTX provided in these first production rounds were largely in the form of an enormous data dump. Instead of producing a comprehensive set of the communications shedding light on the relationship and transactions between the 3AC Debtor and FTX or the legal

documents governing the parties' dealings, much less revealing the facts that it already knew (as shown by an internal presentation prepared by A&M in October *2023*, as described in further detail below), FTX chose to produce a voluminous amount of raw data in a format requiring extensive further work by the 3AC Debtor's liquidation team.  FTX's productions contained vast volumes of raw and semi-raw data reflecting millions of line items that were too voluminous to be processed even in Microsoft Excel (which is capable of operating spreadsheets with up to 1,048,576 rows and 16,384 columns), in addition to 13,663 pages of more typical materials.  Crumpler Decl. ¶ 40.

33.    Analyzing a document production of this size and nature on an efficient basis and within the resources available to the Joint Liquidators required several months of extensive efforts, even just to be able to process and organize the raw data.  Crumpler Decl. ¶ 41.  Nevertheless, this effort enabled the Joint Liquidators to identify several issues that merited further investigation. Those issues included the identification of key information concerning the transactions that was, until then, in FTX's possession.

34.    Accordingly, on June 3, 2024, the 3AC Debtor sent additional information requests to FTX.  Goldberg Decl. ¶ 18.  FTX did not respond.  *Id.*, at ¶ 19.  After a month of silence, on July 2, 2024, the 3AC Debtor sent FTX proposed formal discovery requests pursuant to Bankruptcy Rule 2004.  *Id.*  Another month passed.  Rather than respond to the discovery, on July 8, 2024, FTX filed the *Debtors' Objection to Proof of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd.* (the "**Objection**") [D.I. 19797].  In the Objection, FTX argued that the claims in the Original POC should be disallowed and expunged on the ground that the 3AC Debtor purportedly failed to allege sufficient facts and provide adequate support for them.  The Objection does not explain, of course, that FTX had failed to produce critical information and documents at the time of the filing of the Original POC and Objection.

35.    Following FTX's Objection, on July 10, 2024, the 3AC Debtor re-served its July 2, 2024 discovery requests to FTX pursuant to Federal Rules of Civil Procedure 33 and 34, and noticed the deposition of FTX pursuant to Federal Rule of Civil Procedure 30(b)(6).  Goldberg Decl. ¶ 21.  In response, on July 26, 2024, FTX produced four documents purporting to govern the relationship between the 3AC Debtor and FTX.  *Id.*, at ¶ 22.  On August 7, 2024, the 3AC Debtor served additional interrogatories, requests for production, and requests for admission on FTX.  *Id.*, at ¶ 23.  FTX served written discovery responses on September 3, 2024.  *Id.*, at ¶ 25. Those responses revealed new assertions by FTX, including that FTX purported to have owned the 3AC Debtor's assets on its platform, and that FTX did not in fact liquidate the vast majority of the assets shown as sold or liquidated in the dataset it had previously produced.

36.    On September 19, 2024, FTX finally produced a witness—Robert Gordon of Alvarez & Marsal (FTX's financial advisor)—to testify on FTX's behalf at a deposition.  Goldberg Decl. ¶ 28.  While this testimony clarified certain of FTX's positions reflected in their responses to interrogatories and requests for admission, it failed to answer basic questions—including, to mention a few of many glaring examples, who supposedly lent $1.3 billion to the 3AC Debtor on the FTX platform (since FTX asserted it was not FTX) (Goldberg Decl., Exhibit 14, at pages 148:6–14; 211:3–215:8); what was the source of more than $700 million of the alleged $1.3 billion liabilities that the 3AC Debtor owed to FTX (*Id.,* at pages 255:25–256:17); where the 3AC Debtor's over $1.5 billion of digital assets were located on June 12, 2022 (*Id.*, at pages 94:12–95:20); and whether FTX had sufficient digital assets to satisfy all claims against it on that date (*Id.*, at page 184:20–24).  Importantly, these questions were all within the scope of the agreed-upon topics for the deposition.  *Id.*, at Exhibit 8 (*Notice of Deposition of the Debtors Pursuant to Fed. R. Civ. P. 30(B)(6)*), at pages 6–8; Exhibit 14 at pages 16:16–21.

16

37.    Contrary to Rule 30(b)(6)'s mandate that "[t]he persons designated must testify about information known or reasonably available to the organization," FTX's witness was not properly prepared: he had no personal knowledge and made no effort to speak with anyone who had personal knowledge of the deposition topics, even though FTX had identified several former employees who had personal knowledge of the 3AC Debtor's relationship with FTX.  Goldberg Decl., Exhibit 14, at pages 51:3– 52:14; 61:23–62:23.

38.    The FTX deposition thus highlighted several additional issues for further development of the factual record, as well as key information and documents that had not been searched for or produced by FTX.  Accordingly, the Joint Liquidators kept FTX's deposition open and requested on September 20, 2024 that FTX produce the missing information and documents.  Goldberg Decl. ¶¶ 28-29.  FTX ignored that request and multiple follow-up communications for *three weeks*.  FTX did not substantively engage until October 10, 2024, when the Joint Liquidators' counsel informed them of their intention to imminently file a motion to compel discovery production.  *Id*., at ¶ 31.  Only after this threat, FTX was capable of making a further production the following day on October 11, 2024.

39.    To this day, the Joint Liquidators continue to press FTX to produce relevant information and documents, as FTX's productions often revealed issues requiring further requests from the 3AC Debtor (including requested served upon FTX as recently as November 1, 2024).  In an email to the 3AC Debtor's counsel on November 4, 2024, FTX announced that it will not produce further discovery until this Court resolves the 3AC Debtor's amendment request.

40.    In sum, the record shows that the 3AC Debtor has acted diligently and has not unduly delayed its claim amendment but rather has acted as quickly as FTX's discovery compliance allowed.

b.    *The POC Amendment is not Prejudicial to FTX*

41.    Neither can FTX credibly argue that allowing a claim amendment based on information that was exclusively in FTX's possession unduly prejudices it.  When considering prejudice, courts focus on the burden to the non-moving party if the amendment is allowed: the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989); *see also Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017) ("[A] defendant that possesses an explosive document unknown to the plaintiff may use the legitimate litigation strategies at hand to delay disclosure of that document until absolutely necessary, but that delay cannot thereafter form that defendant's argument for prejudice if it leads to a belated request to amend").  Indeed, courts have found that "no prejudice will result" when "neither [defendant] will be deprived of the chance to present facts or evidence since this case is still in the initial stages of discovery." *Bechtel*, 886 F.2d at 653.

42.    As explained above, the Original POC asserted preference, other avoidance, and conversion claims based on apparent transfers of the 3AC Debtor's assets to satisfy what appeared at the time to be a $120 million loan by FTX.  After the filing of the Original POC, information and documents ultimately produced by FTX revealed that the assets transferred by or for the benefit of FTX in fact amounted to approximately $1.53 billion, ostensibly sold to satisfy a liability of $1.3 billion.  Crumpler Decl. ¶ 42.  That information was in FTX's exclusive possession and thus known to it.  *See Mullin v. Balicki*, 875 F.3d at 156 (finding no prejudice where the basis for the amendment was in the non-movant's possession).

43.    In fact, this knowledge was not just constructive but actual.  As early as October 2023, in response to the Original POC, FTX's financial advisor, A&M, prepared a presentation showing that more than $1 billion in the 3AC Debtor's assets were "sold" on June 13, 2022, a

18

further approximately $300 million were "sold" on June 14, 2022 , and that they satisfied 3AC's ostensible liabilities of over $1.3 billion.  Goldberg Decl. Exhibit 18 at pp 21,22.  FTX did not reveal the existence of this presentation voluntarily; it was only after the 3AC Debtor discovered during FTX's deposition that the witness had used it to prepare himself, and the 3AC Debtor then repeatedly requested its production, that FTX finally produced this analysis.  And most relevant here is that instead of providing these available figures to the Joint Liquidators in 2023 in response to the October 27, 2023 information request, FTX instead provided them with millions of line items of raw and semi raw data approximately two months later, forcing the Joint Liquidators to spend several additional months processing that data dump to arrive at similar numbers.

44.    Under these facts, FTX may not claim the Amended POC is prejudicial to it on the basis that it raises "new facts" or "new theories" requiring additional discovery, cost, and preparation to defend against.  Regarding the facts, any "new facts" raised in the Amended POC were exclusively derived from information and documents produced by FTX.  Moreover, FTX has been aware of the transactions giving rise to the Amended POC and their magnitude for more than a year now.  And the A&M analyses (both of which were prepared when FTX had only the Original POC) confirm that the Original POC provided FTX with sufficient notice of the factual basis of 3AC Debtor's claim.  More specifically, in response to the Original POC, FTX had A&M prepare (i) the October 2023 presentation which described the exact transactions identified in the Amended POC, and (ii) A&M's "Updated Analysis" from September 4, 2024 (*i.e.*, still before ever seeing the draft Amended POC), which is called "Summary of 3AC Claims and Line of Credit" and again describes those exact transactions.  *See* Goldberg Decl., Exhibit 18 and Exhibit 19 at pages 1,5; *Id.*, at ¶ 32; *see also In re TWA Inc. Post Confirmation Est.*, 305 B.R. 228, 233-34 (Bankr. D. Del. 2004) (permitting amendment where "[d]efendants have already been put on notice of the essential

issues involved and they are surely fully informed regarding their business dealings with [plaintiff]").

45.     And regarding the theories, the Amended POC continues to assert preference, other avoidance, and conversion claims.  The only new theories (*e.g.*, breach of contract, breach of trust, turnover, and proprietary restitution theories) could not have been pled without the discovery received after the Original POC was filed.[5]  *See, e.g.*, *Semcrude,* 443 B.R. at 480 (holding that "additional claims asserted by [the claimant] in the Amended Complaint are not 'new' claims because such claims are incorporated in the extant proofs of claims timely filed by [the claimant]").  And of course, because discovery is still ongoing, no prejudice will result to FTX, as it will not be deprived of the chance to present facts or evidence to support its defenses.

---

[5]     As explained above and in the Amended POC, the information available to the Joint Liquidators at the time the Original POC was filed indicated that an apparent $120 million FTX loan facility was satisfied approximately two weeks before the 3AC Debtor's liquidation and without supporting documentation.  Documents and information produced by FTX after the Original POC was filed provided the 3AC Debtor with key facts—which were not in its possession before—that support its additional claims for undervalue transaction (although this is in fact an avoidance claim as already mentioned in the Original POC), turnover, unjust enrichment, breach of trust and fiduciary duty, breach of contract, conversion, and proprietary restitution.  More specifically:

- The 3AC Debtor's claims for breach of contract, breach of trust and fiduciary duty, and proprietary restitution claims are based FTX's recent assertion that the parties' relationship was governed by the May 2022 Terms of Service (and recent production of it).  Yet contrary to those Terms of Service which make clear that the 3AC Debtor, and not FTX, owned the assets deposited on the FTX exchange, FTX now asserts that it destroyed that ownership by commingling the 3AC Debtor's digital assets with other assets and depositing them into wallets "owned and controlled" by FTX.  If FTX's actions deprived the 3AC Debtor of its ownership in its assets or FTX improperly liquidated or seized the 3AC Debtor's assets, then FTX is liable for breach of the Terms of Service, breach of trust and fiduciary duty, and conversion and proprietary restitution for depriving the 3AC Debtor of its rights to its assets.

- The 3AC Debtor's undervalue transaction claim and breach of contract claim are based on new evidence showing that FTX appropriated approximately $701 million in the 3AC Debtor's assets purportedly in satisfaction of a liability in that amount.  Yet FTX admitted at its deposition that it has no evidence that (i) the 3AC Debtor owed any such $701 million unknown liability, (ii) the 3AC Debtor received any value in exchange for FTX's taking of those assets, and (iii) the 3AC Debtor was in violation of any margin or collateral requirements at the time.

- The 3AC Debtor's turnover claims under BVI and U.S. law and unjust enrichment claim are based on these same recently-disclosed facts—that the 3AC Debtor owned $1.53 billion in assets as of June 12, FTX did not have a valid and enforceable security interest over those assets, and FTX's purported foreclosure, seizure, or liquidation of them means that FTX took possession or control of assets to which the 3AC Debtor is entitled, and that FTX was unjustly enriched as a result.

**C.** The Joint Liquidators' Request to Amend the Original POC is not Motivated by Bad Faith or Dilatory Motives

46.     Since the filing of the Original POC, the Joint Liquidators have diligently sought and processed discovery materials from FTX to permit the present amendment.  In doing so, the Joint Liquidators acted in good faith and without dilatory motive.  *See, e.g.*, *Edison Bros. Stores*, 2002 WL 999260, at *5 (finding no evidence of bad faith exists where claimant did not know what would be the amount of its claimed damages).  To the contrary, the Joint Liquidators continuously pressed FTX to produce relevant materials without delay, only to be met with considerable delay by FTX at nearly every turn.

**D.** The Joint Liquidators did not Fail to Cure Deficiencies by Amendments Previously Allowed

47.     This factor is not applicable here because the Amended POC is the first proposed amendment to the Original POC.

**E.** The Amendment is not Futile

48.     Futility of amendment exists when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.  *Rouge Steel Co. v. OmniSource Corp. (In re Rouge Industries, Inc.),* No. ADV.A. 05–52242, 2006 WL 148946, at *5 (Bankr. D. Del. Jan.19, 2006).  A trial court therefore may only deny a motion to amend on futility grounds where the amendment would not withstand a motion to dismiss.  *See Rouge Steel Co.,* No. ADV.A. 05–52242, 2006 WL 148946, at *2 (Bankr. D. Del. Jan.19, 2006); *see also In re Mortg. Lenders Network, USA, Inc.*, 395 B.R. 871, 879 (Bankr. D. Del. 2008) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.").

49.    As explained in detail in the Amended POC attached hereto, the facts pled therein, if assumed true, satisfy all elements of each of the claim theories asserted.  Accordingly, the Joint Liquidators submit that the amendment requested herein is not futile.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD PERMIT THE REQUESTED AMENDMENT UNDER THE EXCUSABLE NEGLECT STANDARD

50.    The Joint Liquidators submit that the Amended POC should be permitted under Rule 15 of the Federal Rules of Civil Procedure, as explained above.  To the extent the Court determines that the Amended POC is a late-filed claim (rather than an appropriate amendment to the Original POC), the Joint Liquidators submit that its filing should nevertheless be permitted under the "excusable neglect" standard set forth in Bankruptcy Rule 9006(b).

51.    Bankruptcy Rule 9006(b) provides that the court "for cause shown may at any time in its discretion" grant an enlargement of time to act "where the failure to act was the result of excusable neglect."  FED. R. BANKR. P. 9006(b).  "The 'excusable neglect' standard of [Bankruptcy] Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993).

52.    The United States Supreme Court has enumerated four factors to consider in determining whether neglect is excusable:

(i)    danger of prejudice to the debtor;

(ii)    the length of the delay and the resulting potential impact on judicial proceedings;

(iii)    the reason for the delay, including whether the delay was within the reasonable control of movant; and

(iv)    whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395.  "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*  The analysis must also include

an evaluation of how the debtor may have contributed to any delay. *Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995) (holding that the district court fell short of the analysis required under *Pioneer* in part because it "failed to consider the role that [the debtor] might have played in contributing to the delay.").

### A.    Prejudice to FTX

53.    The first factor, danger of prejudice to the debtor, "is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence." *O'Brien*, 188 F.3d at 127.   Relevant considerations regarding whether prejudice to the debtors is present include:

> (i)    whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated;
>
> (ii)    whether the payment of the claim would force the return of amounts already paid out under a confirmed plan or affect the distribution to creditors;
>
> (iii)    whether payment of the claim would jeopardize the success of the debtor's reorganization;
>
> (iv)    whether allowance of the claim would adversely impact the debtor actually or legally; and
>
> (v)    whether allowance of the claim would open the floodgates to other future claims.

*Id.*, at 126.   Notably, harm to other creditors in the form of a reduced recovery is not a consideration. *Id.* (citing *See Manousoff v. Macy's Ne., Inc. (In re R.H. Macy & Co.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994) (holding that depletion of resources otherwise available for timely filed claims is not prejudice)).

54.    Here, there is no prejudice to FTX if the filing of the Amended POC is permitted. The Original POC asserted claims in the nature of preference, conversion, and other avoidance actions under BVI, New York, Delaware, and other applicable law, as well as all other claims,

whether known or unknown, based on acts, omissions, and transactions between the 3AC Debtor

and FTX.  And as explained above, FTX certainly was not "surprised or caught unaware" of the

assertion of these claims.  Instead, the Original POC was sufficiently clear to cause FTX to work

with its advisors to analyze these exact transactions when the Original POC was filed in 2023.

FTX likewise was aware of the magnitude of the transactions giving rise to the 3AC Debtor's

claims at all relevant times, as further shown by that October 2023 A&M analysis.  And FTX knew

of the 3AC Debtor's intent to amend its Original POC well in advance of the confirmation hearing.

Goldberg Decl. ¶ 37.  *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188

F.3d 116, 128 (3d Cir. 1999) (finding that debtor's counsel being informed prior to the plan's

effective date of the "nature" and "intent to pursue" a claim weighed against finding prejudice).

Accordingly, FTX cannot claim surprise with regards to either the nature or the amount of the

claims set forth in the Amended POC.

55.    Nor would allowing the Amended POC force the return of amounts already paid to

any creditor under a confirmed plan or affect distributions to creditors.  Indeed, the Court's order

confirming FTX's chapter 11 plan explicitly provides that "Distributions under the Plan shall not

occur until after entry by the Bankruptcy Court of an order determining the amount of a Disputed

Claims Reserve."[6]  No such order has been entered as of the date hereof, and the size of any

disputed claims reserve will in fact depend in part on the quantum of the claims set forth in the

Amended POC.

56.    And FTX is not attempting to reorganize.  As such, payment of the claims set forth

in the Amended POC would not jeopardize any contemplated reorganization.  *Id.*, at 615 ("[S]ince

---

[6]    *See Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404], paragraph 168.

the Debtors' plan is a liquidating plan, allowance of the [] claim would have no effect on the Debtors' ability to successfully complete their plan."). There is no reason to believe that allowing the Amended POC would adversely impact FTX "actually or legally".

57.     Finally, the Joint Liquidators are not aware that any similarly-situated creditors exist such that allowance of the Amended POC would "open the floodgates" to such claimants.

58.     In sum, FTX may not credibly argue that the Amended POC is prejudicial to it.

**B.     Length of Delay and Impact of the Delay on Judicial Proceedings**

59.     The second factor is the length of the delay in asserting the claim and the impact of the delay on the judicial proceedings. As explained in detail above and in the Goldberg Declaration and the Crumpler Declaration, the 3AC Debtor seeks leave to amend its Original POC shortly after the facts supporting the amendment were discovered (and any delay in bringing the Amended POC is due to FTX's own delay throughout the discovery process). As also noted above, courts in this jurisdiction have permitted amendments after even longer periods of time because of delays caused by the bankruptcy trustee, as noted above. And in any event, permitting the filing of the Amended POC will not delay FTX's chapter 11 proceedings. Instead, it will simply factor into the determination of the size of disputed claims reserve, which will clear the way for creditor distributions under the terms of the FTX plan and confirmation order. The Amended POC will then be fully adjudicated on its merits as part of FTX's ongoing claims administration process.

**C.     Reason for the Delay**

60.     The third factor is the reason for the delay, including whether the delay was within the reasonable control of movant. *See Chemetron*, 72 F.3d at 350 (stating that the district court erred in failing to consider the debtor's role in the creditor's delay); *O'Brien*, 188 F.3d at 129 (finding excusable neglect "since it was caused at least in part by [the debtor's] own failure"). Here, the reason for the delay was outside of the 3AC Debtor's control and was instead largely

due to FTX's own delay, as explained in detail above and in the Goldberg Declaration and the Crumpler Declaration.

### D.  Good Faith of the Movant

61.     The fourth factor is the movant's good faith in seeking to file a late proof of claim. Here, the record demonstrates that the 3AC Debtor has acted in good faith.  Despite facing severe information asymmetry vis-à-vis FTX, the 3AC Debtor filed the Original POC to preserve its claims and put FTX on notice thereof, and then proceeded to diligently pursue discovery from FTX to permit the present amendment.  *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 235 F.3d 176, 184 (3d Cir. 2000) (citing reasonable haste to remedy a problem with a proof of claim as evidence of good faith).

## NOTICE

62.     Notice of this Motion has been given to: (i) counsel for FTX, Sullivan & Cromwell LLP and Landis Rath & Cobb LLP, (ii) the United States Trustee, and (iii) any creditor that has filed a notice of appearance in these bankruptcy cases.  The Joint Liquidators submit that such notice is sufficient, and no other or further notice need be provided.

## CONCLUSION

63.     For the foregoing reasons, the Joint Liquidators respectfully request that this Court enter the Proposed Order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as may be just and proper.


*[Remainder of page intentionally left blank.]*

Dated: November 6, 2024
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ John W. Weiss*
John W. Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
       jbarsalona@pashmanstein.com
       agambale@pashmanstein.com

– and –

Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
       adam.goldberg@lw.com
       nacif.taousse@lw.com

– and –

Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators of Three Arrows
Capital, Ltd. (in Liquidation)*