**Exhibit B**

**Crumpler Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FTX Trading, Ltd, *et al.*,[1] | ) | Case No. 22-11068 (JTD) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**DECLARATION OF RUSSELL CRUMPLER IN SUPPORT OF THE MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. (IN LIQUIDATION) FOR LEAVE TO AMEND PROOF OF CLAIM**

I, Russell Crumpler, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief.

1. I am a Senior Managing Director of Teneo (BVI) Limited in the British Virgin Islands ("**BVI**"). I, along with my colleague Christopher Farmer (also of Teneo (BVI) Limited) are the duly appointed joint liquidators and foreign representatives (together, the "**Joint Liquidators**") of Three Arrows Capital Ltd. (in liquidation) (the "**3AC Debtor**").

2. I respectfully submit this declaration in support of the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (in Liquidation) for Leave to Amend Proof of Claim.*

3. I am over the age of 18, and I am duly authorized to make this declaration acting in my capacity as one of the Joint Liquidators of the 3AC Debtor. Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/ftx.

3AC Debtor. If called upon to testify, I could and would testify competently to the facts set forth herein.

I.  **Background on the 3AC Debtor**

4.  The 3AC Debtor was incorporated in the BVI and operated a hedge fund with a focus on trading and investing in cryptocurrency and other digital assets. The 3AC Debtor's physical office was in Singapore. It was operated and controlled by Kyle Davies and Su Zhu, the company's founders (the "**Founders**"). Until August 2, 2021, the 3AC Debtor's Investment Manager was Three Arrows Capital Pte Ltd ("**TACPL**"), a Singapore company which was also controlled by the Founders. Beginning August 2, 2021, the 3AC Debtor's Investment Manager was ThreeAC Ltd, a BVI company owned by Mr. Zhu and Mr. Davies' wife, Kelly Kaili Chen.

5.  The 3AC Debtor's business, which at December 31, 2021 had a Net Asset Value of $3.177 billion (assets of $6.146 billion and liabilities of $2.968 billion), collapsed in May and June 2022 in the wake of extreme declines in the cryptocurrency markets. On June 27, 2022, the 3AC Debtor commenced a liquidation proceeding (the "**BVI Proceeding**") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division), and the Honorable Justice Jack (Ag) issued an order appointing Mr. Farmer and me as the Joint Liquidators of the 3AC Debtor. Claims of $3.568 billion have either been admitted by the Joint Liquidators or are in the process of being adjudicated. Presently, the Joint Liquidators estimate the assets available to creditors of the 3AC Debtor at $867,079,536 (including distributions to creditors that have already been made), noting that many of these assets are digital and subject to significant fluctuations in value.

6.  On July 1, 2022, Mr. Farmer and I, acting as the foreign representatives of the 3AC Debtor, commenced Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of New York (*In re Three Arrows Capital Ltd.*, Case No. 22-10920 (MG) (Bankr.

S.D.N.Y.)) (the "**3AC Ch. 15 Case**").  On July 28, 2022, that court granted recognition of the BVI Proceeding as a foreign main case and ordered that the Joint Liquidators be recognized as foreign representatives pursuant to section 1517 of the Bankruptcy Code.

## II. The Joint Liquidators' Investigation

7. Pursuant to BVI law, Mr. Farmer and I, as Joint Liquidators, are fiduciaries of the 3AC Debtor's estate created in the BVI Proceeding, with an obligation to conduct an orderly and fair liquidation of the 3AC Debtor and to maximize the value of its assets for the benefit of creditors.  In furtherance of those duties, BVI law empowers us as Joint Liquidators with, *inter alia*, the sole authority to take possession and control of the 3AC Debtor's assets, carry on its business and manage its affairs, and investigate the causes of its insolvency and any potential causes of action the estate may have.

8. As part of that process, Mr. Farmer and I have undertaken significant asset recovery efforts internationally against multiple counterparties, including chapter 11 debtors in the U.S.  These efforts have been very difficult because of three challenges:  (i) the lack of any books and records; (ii) the lack of any cooperation from the Founders; and (iii) the wide scope of counterparties around the globe.  As a result, our resources were both limited and spread thin in the period leading up to and following the filing of the Original Proofs of Claim (as defined below) against FTX.  Nevertheless, we have pursued these efforts on the basis of the limited information then available to us, and we have required extensive discovery from the 3AC Debtors' counterparties in order to effectively prosecute our claims.  In doing so, we focused on what was known, at the time, to be the highest value issues for the 3AC estate.

### A. The Lack of any Books and Records

9. Regarding the first challenge, we have faced extensive headwinds in obtaining documents and information necessary to conduct a comprehensive evaluation of the 3AC Debtor's

3

claims against the 3AC Debtor's pre-liquidation counterparties, including FTX Trading Ltd. and its affiliated Debtors (collectively, "**FTX**"). These challenges were due to the destruction or other loss of the 3AC Debtor's books and records. Upon our appointment, we were provided with no meaningful assistance from the 3AC Debtor or its Founders, were denied access to its office and given exceedingly limited disclosure (initial disclosure from the 3AC Debtor amounted to, in effect, a two page list of assets the company still held). Indeed, with the assistance of the Singapore Court, we finally gained access to the 3AC Debtor's primary trading office in Singapore on October 21, 2022 and made an inventory of hard copy files and electronic devices. Of note, hard drives had been removed from desktop computers, no laptops were found, and very few other records were available. Similarly, further Singapore Court orders were required to gain access to the 3AC Debtor's email servers (where we found that there had been widespread deletion of the Founder's emails), and web-based servers (some of which we did not even become aware of until February 1, 2023). And even email access itself would prove to be of limited use, given the apparent deletion of emails and the fact that the 3AC Debtor appeared to use primarily non-preserved communication methods such as Telegram. At the outset of the liquidation, therefore, we effectively had no books and records to determine the assets and liabilities of the 3AC Debtor, and there still remains a real dearth of documentation with respect to parts of 3AC's activities.

        B.     *Attempts to Examine Founders*

        10.     Regarding the second challenge, the 3AC Debtor's Founders (who maintained day-to-day control over the 3AC Debtor prior to its collapse) refused to cooperate with us in any meaningful sense. Since being appointed as Joint Liquidators, as part of our investigation into the 3AC Debtor and our efforts to obtain control over its assets in accordance with our duties under BVI law, Mr. Farmer and I, and those working at our direction, have repeatedly attempted to

contact the Founders directly and through representatives in the BVI, Singapore, and elsewhere to facilitate basic steps to preserve the 3AC Debtor's assets.

11. Our requests to the Founders included (i) specific information regarding the 3AC Debtor's assets and accounts, such as documents bearing directly on the location and value of the 3AC Debtor's assets and the causes of the 3AC Debtor's insolvency; and (ii) the Founders' cooperation in obtaining access to, and control over, such assets and accounts.

12. The Founders did not make themselves available for meaningful discussions or interviews with us following these requests, except for two brief discussions, the first of which took place with Mr. Zhu on August 11, 2022 and lasted less than 90 minutes. Following that initial discussion, we provided the Founders with an itemized list of high-priority information requests. The second discussion was with Mr. Davies on August 26, 2022 and lasted for approximately one hour. At this second discussion, we requested to discuss the outstanding information requests, but Singapore counsel to the Founders, who were in attendance at each meeting, stated that the discussion would be confined to providing the means for electronic access to certain cryptocurrency exchanges at which the 3AC Debtor has accounts, and that their client was not open to discussing the outstanding information requests at that time.

13. Because the Founders refused to cooperate in a meaningful manner, the Joint Liquidators were ultimately forced to seek court assistance in multiple jurisdictions. For example, on October 14, 2022, after months of attempting to secure the Founders' basic cooperation to obtain documents and information that would facilitate locating and securing the 3AC Debtor's assets, and determining any prior transfers of those assets, the Joint Liquidators filed a motion in the 3AC Ch. 15 Case requesting an order authorizing the issuance of subpoenas on the Founders, as well as a motion authorizing alternative service of process and discovery via the Founders'

known email addresses and social media accounts (which the Founders were actively using). Those motions were granted on December 29, 2022, with the latter motion for authorization of alternative service being granted with respect to Kyle Davies only (for jurisdictional reasons). On January 5, 2023, Mr. Davies was served with the subpoena in accordance with the Court's order. He failed to comply by the deadline of January 26, 2023. On March 30, 2023, the Court in the 3AC Ch. 15 Case granted our motion to compel, requiring Mr. Davies to comply with the subpoena within 14 days.[2] To date, the Founders have not produced any documents in response to the subpoenas.

14. On October 15, 2022, Mr. Farmer and I filed a summons in Singapore seeking, among other things, an order that the Founders disclose information and documents relating to the 3AC Debtor.

15. On November 17, 2022, the Joint Liquidators' Singapore lawyers, the Wong Partnership LLP ("**WongPartnership**"), wrote to Solitaire LLP ("**Solitaire**") who were acting for TACPL (the former Investment Manager of the 3AC Debtor until August 2021) and the Founders. WongPartnership's letter asked that TACPL and the Founders provide information and documents including, among other things (i) documents prepared by TACPL relating to the company's assets managed by TACPL; (ii) trades executed using the company's assets; (iii) internal documents exchanged by employees and/or directors relating to the company's assets; (iv) statements of accounts for the period January 1, 2019 to October 1, 2022, for cryptocurrency exchange accounts in the Company's name or for its benefit; and (v) login details for cryptocurrency exchange accounts in the Company's name or for its benefit.

---

[2] On August 11, 2023, however, our motion for contempt against Mr. Davies was denied after he opposed the motion on the ground that he had renounced his U.S. citizenship.

16. TACPL and the Founders failed to provide this information and/or documents. Accordingly, on November 30, 2022, Justice Vinodh Coomaraswamy of the Singapore High Court made an Order (the "**Singapore Information Order**") (i) against TACPL requiring it, among other things, to file an affidavit exhibiting books, papers, and other records relating to the business, dealings, affairs, and property of the Company, including those listed in WongPartnership's letter to Solitaire of November 17, 2022; and (ii) against the Founders, requiring them to exhibit all documents in their possession and control.

17. On December 19, 2022, Justice Tana'ania Small Davis KC (Ag) made orders against the Founders, requiring them to (i) be examined by Zoom on March 14 and 16, 2023, respectively; and (ii) provide the Joint Liquidators with, among other things, the 3AC Debtor's accounting records; books, papers and records relating to accounts on centralized exchanges (which would include FTX); and contracts the 3AC Debtor had entered into (which would include contracts the 3AC Debtor had entered into with FTX) (together the "**BVI Disclosure**").

18. On February 6, 2023, the BVI Court relisted the examinations of the Founders to take place on March 22 and March 23, 2023, respectively.

19. Neither TACPL nor the Founders responded to the Singapore Information Order. The Founders failed to attend their examinations on March 22 and 23, 2023, and failed to provide the BVI Disclosure.

20. On March 22 and 23, 2023, the Honorable Justice Mangatal (Ag) made further orders (the "**Adjournment Orders**") against the Founders respectively, requiring them to (i) attend an adjourned examination on May 22, 2023; and (ii) provide the Joint Liquidators with the BVI Disclosure by April 14, 2023, failing which their adjourned examinations would be relisted for April 27, 2023.

21. The Founders failed to provide the BVI Disclosure by April 14, 2023, and the examinations were relisted for April 27, 2023.

22. On April 27, 2023, the Honorable Justice Mangatal (Ag) made Orders against the Founders, among other things, declaring that they had adequate notice of the Adjournment Orders but chose not to comply with them. By failing to attend their examination hearings in the BVI, the Founders (i) committed a criminal offence under section 288(1) of the BVI Insolvency Act 2003; and (ii) were in breach of two Court Orders endorsed with a penal notice.

23. Ultimately, the Founders' failure to cooperate with our investigation and liquidation efforts resulted in the Singapore High Court's issuance of a committal order on September 25, 2023. That order committed the Founders to prison for 4 months as a result of their intentional non-compliance with the Singapore Information Order. Mr. Zhu was arrested on September 29, 2023 at Singapore's Changi Airport while he was attempting to leave the country, while Mr. Davies' location remains unknown.

24. On December 12 and 13, 2023, whilst on home detention, Mr. Zhu was examined by WongPartnership at a hearing in Singapore. I attended both days of the examination remotely via Zoom from the BVI. On December 13, 2023, Mr. Zhu stated that FTX had unexpectedly sold off all the Bitcoin belonging to the 3AC Debtor (valued at $711 million on June 12, 2022 according to FTX's own records), and that the 3AC Debtor sold perpetual positions (but not spot Bitcoin) to avoid liquidation on the FTX platform.

25. In sum, Mr. Farmer and I essentially had no comprehensive books or records, emails, or employees (former or current) to consult, and no cooperation from anyone with firsthand knowledge of the 3AC Debtor's pre-liquidation affairs. As a result, we (with the support of our colleagues at Teneo (BVI) Limited) could only tediously recreate the 3AC Debtor's books and

records from whole cloth, including through the pursuit of discovery against third parties including Acuutech Pte Ltd and Amazon Web Services, which provided cloud services to the 3AC Debtor in Singapore, and the 3AC Debtor's counterparties in multiple jurisdictions. The information recovered from Acuutech Pte Ltd and Amazon Web Services shed no light on the 3AC Debtor's dealings with FTX. In other words, because we did not have books and records from the 3AC side or where we did have such records, they were often materially deficient, we had to access the records of our counterparties to identify the accounts and transactions from their side, in order to reconstruct 3AC's books and records.

C. *Worldwide Discovery on Counterparties*

26. Regarding the third challenge, the 3AC Debtors had dozens of counterparties around the globe that the Joint Liquidators needed to contact to reconstruct the 3AC Debtor's books and records and to investigate whether any claims existed. For example:

   a. On July 1, 2022, the Joint Liquidators initiated a Chapter 15 proceeding in the United States. With the assistance of our U.S. counsel, we have now served over 45 information gathering subpoenas on various third parties in the United States.

   b. On July 9, 2022 (following a letter of request issued by the Honorable Justice Jack (Ag) dated July 8, 2022), the Joint Liquidators commenced proceedings in the High Court of Singapore (the "**Singapore Court**") for recognition of the BVI Proceeding.

   c. On August 22, 2022, the Singapore Court ordered, among other things, that (i) the BVI Proceeding be recognized by the Singapore courts and in Singapore as a foreign main proceeding within the meaning of the UNCITRAL Model Law on Cross Border Insolvency (the "**Model Law**") as adopted in Singapore; (ii) the Joint Liquidators be recognized by the Singapore courts and in Singapore as foreign representatives within the meaning of Article 2(i) of the Model Law; and (iii) the administration or realization of all of the property and assets of the 3AC Debtor in Singapore be entrusted to the Joint Liquidators including, without limitation, the power, in the name of and on behalf of the 3AC Debtor to request access to and take delivery from any person in Singapore of electronic and other assets in Singapore, including in the Singapore office of the 3AC Debtor, and any documents in whatever form belonging to the 3AC Debtor.

9

      d.      On October 14, 2022, the Joint Liquidators commenced proceedings in the Ontario Superior Court of Justice for (i) recognition as foreign representatives and recognition of the BVI Proceeding as a foreign main proceeding in Canada under section 45 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"); and (ii) an order that, among other things, the Joint Liquidators be authorized, permitted and empowered to obtain information, records and/or documents regarding the affairs of the 3AC Debtor under sections 46 and 49 of the CCAA. Orders in those terms were made by the Honorable Justice Conway on October 19, 2022.

      e.      On November 2, 2022, the Joint Liquidators commenced proceedings in the Supreme Court of Seychelles (the "**Seychelles Court**") seeking the recognition and enforcement of their appointment in Seychelles. On February 3, 2023, Judge Dodin of the Seychelles Court granted declarations that (i) the Joint Liquidators' appointment order in the BVI be registered as a judgment of the Supreme Court of Seychelles under the provisions of the Foreign Judgments (Reciprocal Enforcement) Act Cap 85; and (ii) the said judgment be made executory and enforceable in Seychelles and that Mr. Farmer and I be joint liquidators of the 3AC Debtor.

      f.      By application dated November 18, 2022, the Joint Liquidators applied to the Grand Court of the Cayman Islands (Financial Services Division) for an order recognizing their right to act in the Cayman Islands on behalf of, or in the name of, the 3AC Debtor. On January 25, 2023, the Honorable Justice Doyle made an order recognizing the Joint Liquidators as the only persons entitled to act in the Cayman Islands on behalf of and in the name of the 3AC Debtor.

27.    Thus, Mr. Farmer and I needed to triage and focus on claims as information became available through these worldwide discovery efforts and as deadlines approached. These deadlines were particularly acute with respect to certain other chapter 11 debtors against which we had, and have, material claims. For example, we engaged in litigation and ultimately settled claims involving chapter 11 debtor Genesis Global Capital, LLC and its non-debtor affiliate Digital Currency Group, and chapter 11 debtor BlockFi, Inc. We continue to be involved in asserting claims involving chapter 11 debtors, TerraForm Labs Pte. Ltd. and Celsius Network LLC.

I.      **The Original Proofs of Claim and the Joint Liquidators' Discovery Efforts**

28.     The Joint Liquidators' investigation efforts included FTX. Upon our appointment as Joint Liquidators, Mr. Farmer and I worked diligently to gain information concerning the 3AC Debtor's accounts from FTX. On July 1, 2022, we notified FTX of our appointment as Joint Liquidators of the 3AC Debtor and requested that FTX provide information to assist with the liquidation. At our direction, members of the Teneo team had a call with FTX representatives on July 7, 2022. During that call, FTX stated that 3AC held an account with FTX which had been frozen and that the value of that account was around $3.4 million in cryptocurrencies. Over the next week, our team exchanged several communications with FTX in an effort to gain access to the 3AC Debtor's accounts, including all associated sub-accounts on the FTX platform, and to seek to obtain all transactional records associated with the 3AC Debtor's accounts on the FTX platform.

29.     On July 14, 2022, FTX provided us with what was understood to be the deposit, withdrawal, and transactional history of the 3AC Debtor. Upon further review, we identified that the transactional data provided related only to twelve of the sub-accounts contained within the 3AC Debtor's main account on the FTX platform under ID 2338882. We understand that the main account under ID 2338882 acted as the parent account, and that all trading activities were undertaken via the sub-accounts. Importantly, no transactional history was provided for the most important trading accounts—the confusingly named thirteenth sub-account, which shared the same ID (2338882) as the main parent account, and through which the 3AC Debtor conducted most of

its trades. In addition, the transactional data for even those twelve sub-accounts only contained the last 200 executed "trades"[3] (as a maximum).

30. And we have since learned that not only were the accounts drastically incomplete, but even the data for those twelve sub accounts was woefully incomplete. Of the twelve, the data indicated that only six contained any trades executed in 2022 (the "**2022 Sub Accounts**"); those trades were only between June 14, 2022 and July 4, 2022; and there were only 1,200 trades. But the comprehensive trading details Alvarez and Marsal ultimately provided (starting in December 2023) revealed that there had been 16,092 trades across the 2022 Sub Accounts between June 14, 2022 and July 4, 2022, 12,584 of which occurred on June 14, 2022 alone (*i.e.*, approx. 78 percent). Additionally, the sub-account with ID 2338882, for which FTX did not provide any transactional data, conducted 107,055 trades during that same period, none of which had been previously disclosed by FTX. Whether it was intentional or not, the striking date and account limitations excluded almost all of the relevant trades from the June 12-14 liquidation period, and thus drastically hindered our ability to analyze the 3AC Debtor's claims based on the liquidations.

31. On July 19, 2022, we gained read-only (frozen) access to the 3AC Debtor's accounts. On July 26, 2022, we gained full access to the 3AC Debtor's accounts on the FTX platform. From our teams' review of the 3AC Debtor's accounts on the FTX platform, it was noted that we were only able to download a high-level summary of withdrawal and deposit details dating back to May 22, 2022, and May 11, 2022, respectively, although we understood that account to have been active from September 2020. We were also unable to download the full trading

---

[3] By "trades," I refer to the use of FTX's global cryptocurrency exchange to execute spot, derivatives, and leveraged trading for cryptocurrencies via what FTX's records refer to as an "order type." I further note that some of the "trades" relate to the unlocking of tokens; these are listed as "sell" on the "order type" and are technically just tokens unlocking on the platform to the control of 3AC's account (*i.e.*, those tokens become liquid).

history for the 3AC Debtor's accounts on the FTX platform, due to the sheer volume of data. On September 16, 2022, we therefore wrote to FTX requesting that they advise as to how we could obtain further transactional records from their team and/or the FTX platform. By response on September 16, 2022, FTX provided what we understood to represent the full withdrawal, deposit, and transfer history for the account.

32.     Upon further review, we noted that the information provided on September 16, 2022, was not a complete download of the 3AC Debtor's accounts on the FTX platform as it did not include any data in respect of historic trades, and only included withdrawal, deposit, and transfer data from January 2021. The data available via the FTX platform and as provided by FTX was incomplete and did not allow us to determine what assets the 3AC Debtor had, at what times, when those assets were transferred, and what happened to those assets or the proceeds thereof.

33.     Accordingly, throughout September, October, and November 2022, our team continued to request account information from FTX, including historic trade data and fiat bank withdrawal account information, and transactional data relating to AVAX tokens.

34.     On November 11, 2022, FTX filed for bankruptcy and the Joint Liquidators' access to the FTX platform was revoked. As of that date, the only material information produced by FTX related to the deposit, withdrawal, and limited transactional data received on July 14, 2022, certain historical data in respect of withdrawals, deposits, and transfers which had been received on September 16, 2022, information in respect of a limited number of fiat bank withdrawals, and the "trade/fills" order data for AVAX tokens. We have now learned that this trade data represents only 0.00003% of the 3AC Debtor's spot trades[4] on the FTX platform across June 13, 2022 and

---

[4]     Spot trading is the method of buying and selling assets at the current market rate, called the spot price, with the intention of taking delivery of the underlying asset immediately. When a market spot order has been completed, it is often referred to as "filled", *i.e.*, as the order has been executed.

June 14, 2022. To put it bluntly, we did not have anywhere near the data needed to understand these liquidations and the claims related to them. Importantly, we did not have access to the 3AC Debtor's complete historic trade data which was required for the Joint Liquidators to:

    a.    confirm the value of assets held for the benefit of the 3AC Debtor on the FTX platform both at the date of and at various dates prior to our appointment (aside from the aforementioned $3.4 million in cryptocurrency tokens);

    b.    identify the liabilities of 3AC on the FTX platform;

    c.    identify any movements in the 3AC Debtor's asset position prior to our appointment, for example the seizure of or foreclosure upon such assets by FTX; and

    d.    determine where any transferred assets and the proceeds thereof went (we now understand that FTX applied the proceeds of the liquidated assets to satisfy the 3AC Debtor's alleged liability position on the FTX platform).

    35.    On June 30, 2023, the 3AC Debtor timely filed proofs of claim (collectively, the "**Original Proofs of Claim**") against FTX and each of its affiliated Debtors. The Original Proofs of Claim asserted, *inter alia*, "claims under BVI, New York, Delaware, and other applicable law, including without limitation claims in the nature of preference, conversion, and other avoidance actions, arising from, on information and belief, a purported foreclosure by [FTX] on collateral securing an approximately $120 million purported loan that [the 3AC Debtor] owed [FTX] as of June 1, 2022", as well as "additional causes of action against [FTX] based on conduct, acts, omissions, and transactions between and among 3AC, [FTX], and [FTX's] affiliates."[5]

    36.    The only relevant information that we possessed at the time indicated that FTX or its affiliates appeared to have seized or foreclosed upon an unknown amount of the 3AC Debtor's assets to satisfy a $120 million line of credit made by FTX to 3AC. For context, the Joint Liquidators had retained Ascent Fund Services (Singapore) Pte. Ltd. ("**Ascent**"), the 3AC Debtor's

---

[5]   *See* claim no. 5319, at ¶¶ 6,7.

pre-liquidation fund administrator, to prepare NAV packs from February through June 2022 (they had not been previously prepared). These NAV packs were largely based on information that was provided to Ascent by non-debtor ThreeAC Ltd (BVI), as the Investment Manager for the 3AC Debtor (the "**IM**"), prior to our appointment as Joint Liquidators, together with some information that was obtained directly from counterparties' application programming interfaces ("**API**") when those APIs were available to Ascent. With respect to FTX, we understand that Ascent relied on summary information of balances held by the 3AC Debtor on the FTX platform provided to it by the IM and/or the 3AC Debtor as well as some limited access Ascent may have been granted to FTX's API. On April 24, 2023, over five months after FTX commenced its chapter 11 cases, Ascent provided the Joint Liquidators with a May 2022 NAV pack that showed the 3AC Debtor owed $120 million to FTX as of May 31, 2022 (this ultimately turned out to be incorrect as we recently learned). We also knew that FTX had not registered a creditor claim in the 3AC Debtor's liquidation. Those two pieces of data led Mr. Farmer and me to believe that the 3AC Debtor had repaid the loan to FTX in June 2022, shortly before the 3AC Debtor commenced liquidation proceedings and at a time when our broader analysis showed that the 3AC Debtor was hopelessly insolvent. Importantly, and to reiterate, Ascent's analysis was limited by the fact that, to my understanding, it (like us) never received full transaction data from FTX, so Ascent only used deposit, withdrawal, and transfer data to prepare the NAV pack.

37. Other than that, we lacked significant material information, including such critical information as:

- what assets the 3AC Debtor historically possessed on the FTX platform;
- what contracts governed that trading relationship;
- when, how, and why those assets were liquidated;
- whether the 3AC Debtor received the proceeds of any such liquidations;
- the amounts of its borrowings (if any) on the FTX platform; and
- what contracts governed that apparent lending relationship.

15

38. I understand that prior to the filing of our Original POC, our United States counsel requested that FTX provide any documents concerning the apparent lending relationship between the parties, but FTX did not do so, instead simply stating that they were not aware of any claims that the 3AC Debtor had against FTX.

39. Between the filing of the Original Proofs of Claim and the date hereof, Mr. Farmer and I sought discovery from FTX and analyzed the results of such discovery. Our first access to comprehensive data from FTX was obtained pursuant to an information sharing agreement reached with FTX in exchange for the withdrawal of the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. For Coordination Among Courts*, which was filed on September 29, 2023 [ECF No. 2754]. That agreement was reached on October 10, 2023. The Joint Liquidators promptly sent diligence requests to FTX on October 27, 2023. FTX did not begin providing documents responsive to that request until approximately two months later. FTX produced documents in four separate rounds on December 14, 2023, January 8, 2024, January 12, 2024, and January 20, 2024.

40. Instead of producing a comprehensive set of the communications shedding light on the relationship and transactions between the 3AC Debtor and FTX or the legal documents governing the parties' dealings, FTX's first document production consisted of an enormous amount of raw data in a format requiring extensive further work by the 3AC Debtor's liquidation team. FTX's productions contained vast volumes of raw and semi-raw data reflecting millions of line items that were too voluminous to be processed even in Microsoft Excel (which is capable of operating spreadsheets with up to 1,048,576 rows and 16,384 columns), in addition to 13,663 pages of more typical materials.

41. Analyzing a document production of this size and nature on an efficient basis and within the resources available for the 3AC Debtor's liquidation required several months of

extensive and costly efforts, just to be able to process and organize the raw data. However, by August 2024, this effort ultimately revealed that as of June 12, 2022, the 3AC Debtor had approximately $1.53 billion of assets on the FTX platform. The scale of the 3AC Debtor's assets on the FTX platform, when those assets were liquidated, and what happened to the proceeds of those assets was not previously known to the Joint Liquidators, because we did not have access to the complete "trades/fills" data for the 3AC Debtor until FTX produced its response to our discovery requests.

42. Our analysis (with support from our colleagues at Teneo (BVI) Limited) further revealed that, between the close of business on June 12, 2022 and the close of business on June 14, 2022, nearly all of those assets were liquidated. Our analysis also showed that the 3AC Debtor had a purported liability (called a "negative USD balance") of approximately $1.3 billion at the close of business on June 12, 2022, and that apparently the 3AC Debtor's assets were liquidated to eliminate that purported $1.3 billion liability. In other words, approximately *two weeks* before the commencement of the 3AC Debtor's liquidation proceedings, approximately $1.53 billion of the 3AC Debtor's assets on the FTX platform were liquidated to satisfy approximately $1.3 billion in alleged liabilities to FTX.

43. In contrast to FTX's apparent recovery of the full face amount of its claims (plus a potential surplus of up to approximately $230 million), projected creditor recoveries in the 3AC Debtor's liquidation proceedings are substantially less than par.

44. This discovery and analysis effort also enabled Mr. Farmer and me to identify several issues that merited further investigation, notably including, among other things, which documents governed the legal relationship between the 3AC Debtor and FTX, which FTX entities had engaged in transactions with the 3AC Debtor, and what legal basis FTX had for the liquidation

17

of the 3AC Debtor's assets. Accordingly, the Joint Liquidators sent additional document requests to FTX on June 3, 2024 and July 2, 2024 seeking such information.

45. After several rounds of information and document requests, as well as a deposition of FTX, this discovery process remains ongoing as of the date hereof. Indeed, as of the date hereof, FTX has yet to provide answers (including during its deposition on September 19, 2024) to basic questions, such as the basis for approximately $700 million out of the $1.3 billion of the 3AC Debtor's alleged liabilities, and the identity of the entities to which such alleged liabilities were owed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 6, 2024

                                                  */s/ Russell Crumpler*
                                                  Russell Crumpler