Honourable Judge John T. Dorsey
United States Bankruptcy Court District of Delaware
824 Market Street North,
3rd Floor Wilmington,
DE 19801
United States of America

In re: FTX TRADING, LTD., et al., Debtors.
Case No. 22-11068 (JTD)

**OBJECTION OF ANDREW COWIE, ADRIEN HERISSE, CHAO LIU, FRANCES JONES, JAMES WHITE, JONATHAN LI, LAURA GILBERTI, LIDIA FAVARIO, OLIVIER PONCHAUT, VICTOR CURY SIMIONATO AND ROBERT SHEARER, TO EXAMINER'S MOTION FOR ENTRY OF AN ORDER DISCHARGING THE EXAMINER AND GRANTING RELATED RELIEF**

Andrew Cowie, Adrien Herisse, Chao Liu, Frances Jones, James White, Jonathan Li, Laura Gilberti, Lidia Favario, Robert Shearer, Andrew Cowie, Victor Cury Simionato, and Olivier Ponchaut (collectively, the "FTX Creditor Group"), by and through undersigned counsel, hereby submit this objection (the "Objection") to the Examiner's Motion for Entry of an Order Discharging the Examiner and Granting Related Relief (the "Examiner Motion") and in support thereof state as follows:

**INTRODUCTORY STATEMENT**

1. As creditors and retail customers impacted by the financial collapse of FTX, the FTX Creditor Group respectfully asserts its right to be heard in these proceedings, with a vested interest in ensuring full transparency and access to records generated by the Examiner's investigation. Given the unprecedented scale of FTX's collapse and its repercussions on customers, stakeholders, and the public at large, the FTX Creditor Group opposes Sections B and C of the Examiner Motion, which seek to relieve the Examiner from third-party discovery obligations and to authorise the disposal of investigative records.

2. The Bankruptcy Code, specifically Section 1106(a)(4), mandates that Examiners disclose findings related to "fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity" in the debtor's conduct. Congress included this provision to ensure that creditors receive adequate information concerning potential malfeasance that impacts the estate. Additionally, Bankruptcy Rule 2004 grants broad discovery rights to interested parties, including creditors, allowing them to examine the debtor's actions and financial affairs to assess potential claims. These statutory rights affirm the need for transparency, which the Examiner's Motion seeks to curtail through sweeping restrictions on discovery and premature record disposal.

**JURISDICTION AND STANDING**

3. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157, which govern bankruptcy proceedings in federal courts.

4. The Objectors, as customers and creditors of FTX, are entitled to raise objections under 11 U.S.C. § 1109(b), which grants parties in interest a voice in the administration of bankruptcy cases.

**FACTUAL BACKGROUND**

5. On November 11 and 14, 2022, FTX Trading Ltd. and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.

6. On December 1, 2022, the U.S. Trustee submitted a motion requesting the appointment of an Examiner (Doc. 176), which was initially denied by the Court on February 21, 2023 (Doc. 746). Subsequently, the U.S. Trustee filed an appeal, leading the United States Court of Appeals for the Third Circuit to reverse this decision on January 19, 2024.

7. Following the appellate ruling, the U.S. Trustee appointed Robert J. Cleary as the Examiner on February 27, 2024 (Doc. 8047). The Court approved Mr. Cleary's appointment and established the scope and costs associated with the examination on March 20, 2024 (Docs. 9882 and 9883). The Scope Order framed the Examiner's task as summarising and assessing investigations completed by others, rather than conducting a de novo investigation into issues concerning the collapse of the FTX Group. This directive is illustrated in Exhibit A, which contains relevant excerpts from the Scope Order.

8. On May 23, 2024, the Examiner publicly filed the Phase I Report (Doc. 15545), which identified areas requiring additional investigation.

9. The Court subsequently authorised the Examiner to proceed with a second phase of investigation on June 26, 2024 (Doc. 19061), culminating in the public filing of the Phase II Report on September 25, 2024 (Doc. 25679).

**ARGUMENT**

**A. Objection to Relief from Third-Party Discovery**

10. *Precedents Supporting Creditor Access to Examiner Findings:* Bankruptcy courts have consistently affirmed creditors' rights to access Examiner findings, especially in complex cases involving potential fraud or mismanagement. In *In re Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985), the court underscored the necessity of transparency in allowing creditors to review critical findings to understand the implications of an Examiner's work. Additionally, in *In re Refco, Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006), the court preserved Examiner records in a large bankruptcy case, recognizing that transparency is vital for creditor trust in complex bankruptcy proceedings. The sweeping restrictions on discovery sought by the Examiner in this Motion would contravene these precedents.

11. *Bankruptcy Rule 2004 and Broad Discovery Rights:* Under Bankruptcy Rule 2004, interested parties, including creditors, have a broad right to discovery on matters relevant to the debtor's conduct, assets, and financial practices to protect their interests. Given the substantial resources used to conduct the Examiner's investigation, creditors are entitled to understand the findings and how estate assets were allocated. Blanket prohibitions on third-party discovery contradict the purpose of Rule 2004, which aims to ensure that stakeholders have full information to assess the debtor's estate and the Examiner's findings.

12. *Statutory Mandate for Examiner Disclosure under 11 U.S.C. § 1106(a)(4):* Section 1106(a)(4) mandates that an Examiner disclose any findings of "fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity." This statutory provision exists to prevent concealment of Examiner findings behind claims of privilege or confidentiality, ensuring that creditors receive critical information concerning potential mismanagement or malfeasance. By requesting broad immunity from third-party discovery, the Examiner risks undermining this statutory duty and obstructing the full disclosure intended by Congress.

13. *Balancing Confidentiality and Transparency:* While confidentiality is appropriate in certain contexts, limited protective orders or confidentiality agreements can sufficiently safeguard sensitive information without denying creditors access to essential records. This approach aligns with the integrity and accountability mandated by both Rule 2004 and Section 1106(a)(4) and is preferable to a complete restriction on discovery. Given the substantial creditor and public interest in this case, a blanket restriction on third-party discovery is excessive. Allowing creditors access under controlled conditions would better serve both transparency and confidentiality.

**B. Objection to Disposal of Investigative Records:**

14. *Unresolved Questions on Key Findings:* According to the Examiner's statement, there are no conclusive findings regarding when the asset discrepancies or "shortfalls" in customer accounts began or whether they existed before November 2022, as shown in Exhibit B. The Examiner's investigation represents a substantial undertaking, with fees amounting to approximately $4 million, as shown in Exhibit C. Given that creditors are directly funding this cost, it is in the interest of transparency, fairness, and public interest to preserve the complete investigative record. Disposing of these records would undermine the very purpose of this extensive and costly investigation, which was to provide clarity and accountability for the estate's stakeholders and the public at large.

15. *Importance of Record Retention for Creditors and the Public:* The Examiner's investigation involved significant resources and produced a comprehensive record detailing the Debtors' operations and financial irregularities. Given the potential for ongoing civil, criminal, and regulatory actions, as well as the historical significance of this case, allowing disposal of the investigative record would defeat the purpose of the examination. The Bankruptcy Code under Section 105(a) grants the Court authority to issue orders to protect creditor interests, which in this case means ensuring that these records remain accessible.

16. *Public and Regulatory Interest in Record Preservation:* The Department of Justice and other regulatory bodies are currently investigating FTX's role in what has been described as one of the most significant financial collapses in recent history. Premature destruction of these records would deprive creditors, regulatory bodies, and the public of essential information that could impact recovery efforts and broader regulatory actions. As noted by U.S. Attorney Damian Williams, the FTX collapse represents "one of the biggest financial frauds in American history." The scale of the alleged fraud justifies the need to preserve records for full accountability, rather than erasing them under claims of efficiency.

17. *Case Law on Record Preservation in Complex Bankruptcies:* Courts have consistently emphasised the importance of preserving records in complex bankruptcy cases to facilitate transparency. In *In re Baldwin*

*United Corp.*, the court maintained that creditor access to Examiner records was essential, especially in cases involving large-scale fraud. This Court should similarly deny the Examiner's request to dispose of investigative records to maintain transparency and fulfil the statutory obligations under Section 1106(a)(4).

***18. Risk of Irreparable Harm to Creditors and Public Trust:*** The Examiner's cooperation with government agencies, particularly the Department of Justice, underscores the significance of the investigative records. Given the resources creditors have already expended, including substantial legal fees, preserving these records is critical for transparency and trust. Allowing premature disposal could conceal information essential for creditors to pursue further claims, diminishing their potential for recovery. Moreover, approving record disposal in this case could set a troubling precedent, weakening public confidence in the bankruptcy process as a tool designed to ensure equitable outcomes for affected creditors.

***19. Additional Harm to Creditors Given Financial Burden of Investigation:*** Creditors have effectively borne the financial burden of this examination, which reportedly involved millions of dollars in fees. Therefore, they are entitled to understand how these resources were used, as well as to access records detailing the findings. Disposing of these records without creditor access would hinder the essential transparency expected in a case of this magnitude and could unjustly deprive creditors of necessary information for potential claims.

**CONCLUSION**

For the reasons stated herein, the FTX Creditor Group respectfully requests that the Court deny approval of Sections B and C of the Examiner Motion for Entry of an Order Discharging the Examiner and Granting Related Relief. Given the unprecedented nature of this bankruptcy and the Examiner's critical role, the FTX Creditor Group requests that the Court order the Examiner to preserve these records indefinitely or, at a minimum, until all relevant criminal, civil, and regulatory matters have been fully resolved. This preservation will ensure that creditors, regulators, and the public retain access to essential materials and uphold the integrity of the bankruptcy process.

By signing below, each participant confirms their agreement to join this objection.

| PRINTED NAME | SIGNATURE | DATE | EMAIL ADDRESS | ADDRESS |
|---|---|---|---|---|
| Andrew Cowie | *[signature]* | 11/05/2024 | | Edinburgh, Scotland, U.K. |
| Adrien Herisse | Adrien Herisse | 11/04/2024 | | Germany |
| Frances Jones | Frances Jones | 11/03/2024 | | Sydney, NSW, Australia |
| Laura Gilberti | laura gilberti | 11/03/2024 | | Italy |
| Lidia Favario | *[signature]* | 11/03/2024 | lidia@lidialidia.com | 54 Peregrine House Hall Street London EC1V 7PQ United Kingdom |
| Jonathan Li | Jonathan Li | 11/04/2024 | | Hong Kong SAR |
| Robert Shearer | *Robert Shearer* | 11/04/2024 | | Singapore |
| Olivier Ponchaut | *[signature]* | 11/05/2024 | olivier.ponchaut@gmail.com | Belgium |
| Victor Cury Simionato | *Victor Cury Simionato* | 11/07/2024 | player.vitinho@hotmail.com | Brazil, São Paulo, Marília |
| James White | *James White* | 11/06/2024 | | United Kingdom |

| Chao Liu | *Chao Liu* | 11/07/2024 | lisaliu1020@live.fr | France |

<u>Exhibit A</u>
from REPORT OF ROBERT J. CLEARY, Examiner (Doc 15545)

On remand, the Bankruptcy Court held a hearing,[16] and subsequently directed the U.S. Trustee to appoint an examiner.[17] The U.S. Trustee appointed Robert J. Cleary as the Examiner,[18] and in an order dated March 20, 2024, the Bankruptcy Court approved that appointment.[19]

On March 20, 2024, the Bankruptcy Court also issued an order concerning the scope of the Examiner's investigation (the "Scope Order").[20] The Scope Order instructed the Examiner to issue a report that:

---

[10] Dkt. No. 622.

[11] Dkt. No. 746.

[12] Before appealing the Bankruptcy Court's order, the U.S. Trustee successfully moved in the United States District Court for the District of Delaware for an order certifying a direct appeal to the Third Circuit. *Vara v. FTX Trading Ltd. (In re FTX Trading Ltd.)*, No. 22-bk-11068 (JTD), 2023 WL 3721527 (D. Del. May 30, 2023).

[13] *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024).

[14] *Id.* at 153.

[15] *Id.* at 157.

[16] Dkt. No. 6366.

[17] Dkt. No. 7909.

[18] Dkt. No. 8048.

[19] Dkt. No. 9882.

[20] Dkt. No. 9883 (the "Scope Order").

6

> (i) summarizes the investigations of the Debtors conducted by the Debtors, the [Unsecured Creditors'] Committee, and any third parties (including any governmental units, to the extent such information is made available to the Examiner) which are pending or have concluded (the '<u>Investigations</u>'), (ii) summarizes the findings or status of such Investigations, and (iii) makes recommendations for additional investigations.[21]

The Bankruptcy Court also directed the Examiner to undertake the following tasks, which the Third Circuit expressly enumerated in its opinion:

> a.  An examination of the Court's ruling on the Debtors' application to employ Sullivan & Cromwell (respectively, "S&C" and the "Employment Application"), including whether there are potential conflicts of interest involving S&C which were not adequately addressed by the Court's hearing and ruling on the Employment Application;[22]
>
> b.  An examination of whether the Investigations adequately addressed fraud by the Debtors' employees and whether employees involved in such fraud are still working for the Debtors;[23] and
>
> c.  An examination of whether the Investigations adequately addressed the Debtors' use of its cryptocurrency, FTT, to inflate the value of FTX and Alameda Research.[24]

5

Case 22-11068-JTD    Doc 15545    Filed 05/23/24    Page 25 of 225

questions, but only did so when the providers of unsolicited information identified themselves. The Examiner did not communicate with individuals who did not reveal their identities, nor did he respond to every named individual or entity who provided unsolicited information. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Many percipient witnesses were previously interviewed by the Debtors' counsel and/or the government. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**Exhibit B**
**from PHASE II REPORT OF ROBERT J. CLEARY, Examiner (Doc 25679)**

Part IV examines the balance sheet shortfalls, or "holes," in FTX.US customer assets. It analyzes the facts surrounding FTX.US's operations, the initial detection of an apparent hole in November 2022, and potential causes or contributors to balance sheet discrepancies. It concludes that FTX.US, like other components of the FTX Group, maintained an egregiously poor internal control environment, including with regard to the maintenance, management, and reconciliation of customer assets. Because of these fundamentally deficient practices, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬ The Examiner did not find evidence that FTX.US customer assets were misappropriated in the same manner as FTX.com customer assets. That said, as discussed in this Part, the Examiner's investigation determined that, due in large part to these systemic deficiencies, FTX.US customer assets were at grave risk of loss and misuse and the business was wholly

2

Case 22-11068-JTD   Doc 25679   Filed 09/25/24   Page 10 of 126

unprepared to confirm that customer assets were sufficient to satisfy customer liabilities in a time of crisis.

**Exhibit C**
from SECOND, THIRD, FOURTH AND FIFTH MONTHLY FEE STATEMENTS OF
PATTERSON BELKNAP WEBB & TYLER LLP AS COUNSEL TO THE
Examiner FOR COMPENSATION FOR PROFESSIONAL SERVICES (Docs 22119 - 24038 - 26038 - 27489)

### SUMMARY OF BILLING BY PROJECT CATEGORY MAY 1, 2024 THROUGH AND INCLUDING JUNE 30, 2024

| PROJECT CATEGORY | HOURS | FEE AMOUNT |
|---|---|---|
| Examiner Time | 160.20 | $358,047.00 |
| Court Hearings | 3.80 | $6,925.00 |
| Report Preparation and Drafting | 858.50 | $900,147.50 |
| General Case Administration | 138.20 | $182,070.00 |
| Examiner Investigation Work | 84.40 | $106,461.00 |
| Communications with Parties in Interest | 55.40 | $87,484.00 |
| Billing and Fee Applications | 80.60 | $62,470.00 |
| **TOTAL** | | **$1,703,604.50** |
| **Less 10% Discount** | | **($170,360.45)** |
| **TOTAL PRIOR TO JUNE 26, 2024**[3] | | **$1,521,909.45** |
| **TOTAL FROM JUNE 26, 2024 THROUGH JUNE 30, 2024**[4] | | **$11,334.60** |
| **TOTAL AMOUNT DUE** | | **$1,533,244.05** |

### SUMMARY OF ACTUAL AND NECESSARY EXPENSES MAY 1, 2024 THROUGH AND INCLUDING JUNE 30, 2024

| EXPENSE CATEGORY | SERVICE PROVIDER, IF APPLICABLE | AMOUNT |
|---|---|---|
| Local Travel and Fares | N/A | $466.02 |
| PBWT - Overtime | N/A | $383.73 |
| Meals - Overtime | N/A | $305.01 |
| Conference Room Dining | N/A | $491.25 |
| Reproduction – Copies ($0.10 per standard page; $0.25 per page for color copies) | N/A | $30.60 |
| Online Research | N/A | $857.35 |
| Litigation Support Vendor | Deloitte | $7,946.38 |
| **TOTAL** | | **$10,480.34** |

---

[3] These amounts are subject to the budget set forth in the *Order Amending the Cost of Phase I Examination*. ECF No. 22029.
[4] These amounts are subject to the budget set forth in the *Order (I) Granting the Examiner Authority to Conduct Additional Investigations and (II) Establishing the Scope, Cost, Degree, and Duration of the Second Phase of the Examination and Granting Related Relief*. ECF No. 19061.

3

## SUMMARY OF BILLING BY PROJECT CATEGORY JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024

| PROJECT CATEGORY | HOURS | FEE AMOUNT |
|---|---|---|
| Examiner Time | 46.3 | $103,480.50 |
| Report Preparation and Drafting | 13.5 | $18,431.00 |
| General Case Administration | 55.6 | $65,375.50 |
| Examiner Investigation Work | 223.6 | $287,973.00 |
| Communications with Parties in Interest | 33.0 | $52,986.00 |
| Billing and Fee Applications | 30.2 | $35,271.00 |
| **TOTAL** | | **$575,756.00** |
| Less 10% Discount | | ($57,575.60) |
| **TOTAL AMOUNT DUE** | | **$518,180.40** |

## SUMMARY OF ACTUAL AND NECESSARY EXPENSES JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024

| EXPENSE CATEGORY | SERVICE PROVIDER, IF APPLICABLE | AMOUNT |
|---|---|---|
| Reproduction – Copies ($0.10 per standard page; $0.25 per page for color copies) | N/A | $16.40 |
| Litigation Support Vendor | Deloitte | $16,171.79 |
| **TOTAL AMOUNT DUE** | | **$16,188.19** |

## PRIOR MONTHLY FEE STATEMENTS FILED

| Date Filed | Period Recovered | Requested Fees | Requested Expenses | Paid Fees | Paid Expenses |
|---|---|---|---|---|---|
| May 16, 2024 | March 20, 2024 through April 30, 2024 | $1,709,349.30 | $826.05 | $1,367,479.44 | $826.05 |
| August 1, 2024 | May 1, 2024 through June 30, 2024 | $1,533,244.05 | $10,480.34 | $1,226,595.24 | $10,480.34 |

3

15221473v.3

**SUMMARY OF BILLING BY PROJECT CATEGORY**
**AUGUST 1, 2024 THROUGH AND INCLUDING AUGUST 31, 2024**

| PROJECT CATEGORY | HOURS | FEE AMOUNT |
|---|---|---|
| Examiner Time | 60.90 | $136,111.50 |
| Court Hearings | 0.20 | $380.00 |
| Report Preparation and Drafting | 69.80 | $97,243.50 |
| Document Requests and Formal Discovery | 18.80 | $27,790.50 |
| Non-Working Travel | 4.90 | $4,215.25 |
| General Case Administration | 40.40 | $53,223.50 |
| Examiner Investigation Work | 336.90 | $423,556.50 |
| Communications with Parties in Interest | 88.10 | $132,118.50 |
| Billing and Fee Applications | 41.20 | $35,556.50 |
| TOTAL | | $910,195.75 |
| Less 10% Discount | | ($91,019.58) |
| TOTAL AMOUNT DUE | | $819,176.18 |

**SUMMARY OF ACTUAL AND NECESSARY EXPENSES**
**AUGUST 1, 2024 THROUGH AND INCLUDING AUGUST 31, 2024**

| EXPENSE CATEGORY | SERVICE PROVIDER, IF APPLICABLE | AMOUNT |
|---|---|---|
| Reproduction – Copies ($0.10 per standard page; $0.25 per page for color copies) | N/A | $227.50 |
| Overtime Meals | | $20.00 |
| TOTAL AMOUNT DUE | | $247.50 |

11

4

**SUMMARY OF BILLING BY PROJECT CATEGORY**
**SEPTEMBER 1, 2024 THROUGH AND INCLUDING SEPTEMBER 30, 2024**

| PROJECT CATEGORY | HOURS | FEE AMOUNT |
|---|---|---|
| Examiner Time | 123.50 | $276,022.50 |
| Court Hearings | 0.40 | $760.00 |
| Report Preparation and Drafting | 434.80 | $539,232.50 |
| Document Requests and Formal Discovery | 1.70 | $2,522.00 |
| General Case Administration | 25.60 | $36,405.00 |
| Examiner Investigation Work | 71.90 | $94,691.50 |
| Communications with Parties in Interest | 35.50 | $52,172.00 |
| Billing and Fee Applications | 36.40 | $31,677.00 |
| Retention Work | 3.00 | $4,520.00 |
| TOTAL | | $1,038,002.50 |
| Less 10% Discount | | ($103,800.25) |
| TOTAL AMOUNT DUE | | $934,202.25 |

**SUMMARY OF ACTUAL AND NECESSARY EXPENSES**
**SEPTEMBER 1, 2024 THROUGH AND INCLUDING SEPTEMBER 30, 2024**

| EXPENSE CATEGORY | SERVICE PROVIDER, IF APPLICABLE | AMOUNT |
|---|---|---|
| Overtime Meals | N/A | $40.00 |
| Local Travel & Fares | N/A | $270.85 |
| TOTAL AMOUNT DUE | | $310.85 |

4

12