**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF STEVEN P. COVERICK IN SUPPORT OF
THE MOTION OF DEBTORS FOR ENTRY FOR AN ORDER ESTABLISHING
THE AMOUNT OF THE DISPUTED CLAIMS RESERVE**

I, Steven P. Coverick, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

**I.     Personal Qualifications**

1.     I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.

2.     I have more than ten years of restructuring and financial advisory experience across various industries, including energy, technology, media, telecommunications, logistics, and healthcare.  I have a Bachelor's Degree from the Kelley School of Business at Indiana University, am a CFA® charterholder, and am recognized as a Certified Turnaround Professional by the Turnaround Management Association.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

3. Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Seadrill Limited, iHeart Media Inc., White Star Petroleum Holdings, LLC, Templar Energy LLC, and Expro International Group Holdings Limited. I am the co-lead of the A&M engagement with the Debtors.

4. I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of an Order Establishing the Amount of the Disputed Claims Reserve* (the "Motion").[2] Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and the Debtors' books and records, information provided to me by professionals at A&M working under my supervision or other employees or advisors of the Debtors, and my opinions are based upon my experience and knowledge related to the Debtors' operations, businesses, and financial condition. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

5. I am not being compensated separately for this testimony other than through payments received by A&M as financial advisor retained by the Debtors.

## II. The Debtors' Claims Reconciliation Efforts

6. Since the occurrence of the Non-Customer Bar Date and the Customer Bar Date, the Debtors have been working to analyze over 95,000 Customer Entitlement Claims and over 2,500 non-Customer Entitlement Claims that were filed, on their face, in amounts in excess of $1.187 sextillion. To reconcile claims, the Debtors and their advisors (including counsel) have, among other things, been reviewing each claim against the Debtors' books and records to determine the validity of such Claims, seeking and analyzing supporting documentation associated

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Plan, as applicable.

...

with Claims, evaluating applicable law implicated by Claims, and, where appropriate, objecting to Claims.

7.  To date, the Debtors have filed 129 omnibus claims objections seeking to disallow and expunge, reclassify, or reduce over 28,100 asserted claims in excess of $27 quintillion. The Debtors' reconciliation process is significant and remains ongoing.

8.  Given both the large number of Allowed Claims and the large number and nominal asserted value of Disputed Claims, it would unreasonably delay the administration of the Debtors' estates and prejudice holders of Allowed Claims if the Debtors were to delay distributions until all Disputed Claims were resolved.

9.  Further, it would similarly delay the administration of the Debtors' estates and be prejudicial to creditors to undertake the time-consuming exercise of individually estimating each and every Disputed Claim. Thus, the Debtors, together with their advisors (including counsel), determined that an aggregate Disputed Claims Reserve to provide for an adequate reserve for Disputed Claims is necessary and appropriate.

### III. The Establishment of the Disputed Claims Reserve

10.  Currently, the Debtors project having over $12 billion of cash available for distribution to creditors on the Initial Distribution Date. Many of the remaining Disputed Claims are likely overstated wholly or in part. The Debtors used a rigorous process to determine the appropriate amount of the Disputed Claims Reserve. The Debtors did not start with any "target" number in mind. Rather, the Debtors and their advisors (including counsel) developed the Disputed Claims Reserve from the ground up based on (i) an analysis of the Debtors' books, records, and accounting systems; (ii) scheduled Claims; (iii) filed proofs of claim and their supporting documentation; (iv) communications and agreements, if any, with claimants; (v) legal considerations associated with the Claims; and (vi) other relevant factors.

11. Informed by this work, the Debtors in their business judgment calculated $6.533 billion of Disputed Claims as a reasonable, aggregate initial Disputed Claims Reserve (the "Reserve Amount"). The Reserve Amount is based on intentionally conservative assumptions and, as described below and detailed in Exhibit 1 hereto, includes approximately $3.4 billion of Disputed Claims over and above the amounts that the Debtors project will ultimately become Allowed Claims. The Debtors believe the Reserve Amount strikes a careful and reasonable balance between enabling the Debtors to make meaningful initial distributions to the holders of all Allowed Claims while not jeopardizing the potential recoveries to claimants holding Disputed Claims in the event such claims subsequently become Allowed Claims.

12. All Disputed Claims will have recourse to the Disputed Claims Reserve and the entirety of the Reserve Amount, subject to the terms and provisions of the Plan.

13. My conclusion, based on all of the information currently available to the Debtors, is that an initial Reserve Amount that includes $3.4 billion over and above the Debtors' Financial Projections with respect to liability for Disputed Claims is conservative and reasonable under the circumstances.

A. **Customer Entitlement Claims as a Component of the Reserve Amount**

14. The Reserve Amount includes reserves for the full amount of all liquidated Disputed Customer Entitlement Claims, scheduled or timely filed prior to entry of the Confirmation Order on October 8, 2024 that (i) are not subject to a pending objection or (ii) will not be subject to a pending objection as of December 12, 2024. For these Claims, if a discrepancy exists between a customer's filed proof of claim and the Debtors' books and records, the Debtors are including in the Reserve Amount an amount consistent with the as filed or otherwise modified Customer Entitlement Claim.

15. For both liquidated and unliquidated Disputed Customer Entitlement Claims that are subject to objections that the Debtors expect will remain pending before the Court as of December 12, 2024, the Reserve Amount generally includes proposed modified amounts set forth by the Debtors in their objections, subject to increased amounts in certain circumstances. Claims subject to filed objections that the Debtors expect to be resolved by December 12, 2024 are excluded from the Reserve Amount, and any amounts determined to be Allowed by Final Order of the Bankruptcy Court on account of such Claims will be eligible to receive Distributions, pursuant to the terms and provisions of the Plan.

16. The Debtors and their advisors (including counsel) reviewed unliquidated Customer Entitlement Claims that were filed and that are not currently subject to a pending objection. Based on this review, the Debtors estimated an appropriately conservative amount for such claims in the aggregate.

B. **Non-Customer Claims as a Component of the Estimated Amount**

17. The Reserve Amount includes reserves for the full amount of the overwhelming majority of the nominal asserted value of liquidated Disputed non-Customer Entitlement Claims. For most liquidated Disputed non-Customer Entitlement Claims, if a discrepancy exists between a filed proof of claim and the Debtors' books and records, the Debtors are including in the Reserve Amount an amount consistent with the as filed non-Customer Entitlement Claim.

18. The Debtors have, however, concluded that it would be unreasonable to reserve the full amount stated in the proof of claim for a small number of liquidated Disputed non-Customer Entitlement Claims where the filed amounts are grossly inflated and not likely to be reflective of the merits of the claim. For this limited set of Claims, the Debtors either have agreement with the claimant not to reserve with respect to the Claim or are including in the Reserve

Amount a lesser amount based on the Debtors' and their advisors' (including counsel) assessment of the Claim.

19. The Debtors and their advisors have also reviewed all unliquidated non-Customer Entitlement Claims. Based on this review, the Debtors identified the unliquidated non-Customer Entitlement Claims which provided sufficient detail to estimate the value of the Claim. For these Claims, the Debtors estimated and reserved an appropriately conservative amount.

20. Lastly, notwithstanding the conservative assumptions made with respect to the Disputed Claims, the Debtors are nonetheless including an additional $500 million in the Reserve Amount to provide additional cushion to further protect those claims that are unliquidated or included at less than the full asserted Claim amount.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 20, 2024                  */s/ Steven P. Coverick*
                                          Steven P. Coverick
                                          Alvarez & Marsal North America, LLC
                                          Managing Director