## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: January 23, 2025 at 10:00 a.m. ET<br>Objection Deadline: December 18, 2024 at 4:00 p.m. ET |

### DEBTORS' ONE HUNDRED THIRTIETH (NON-SUBSTANTIVE) OMNIBUS OBJECTION TO UNVERIFIED CUSTOMER ENTITLEMENT CLAIMS

> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN CUSTOMER ENTITLEMENT CLAIMS. CLAIMANTS RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND LOCATE THEIR CLAIMS ON <u>SCHEDULE 1</u> OF <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION AND, IF APPLICABLE, COMMENCE THE KYC SUBMISSION PROCESSS BY MARCH 1, 2025, SUBMIT ALL REQUESTED KYC INFORMATION BY JUNE 1, 2025 OR FILE A RESPONSE TO THIS OBJECTION BY THE RESPONSE DEADLINE.**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") hereby submit this one hundred thirtieth omnibus claims objection (this "<u>Objection</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>"), pursuant to sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), disallowing and expunging in its entirety each Unverified Claim (as defined below) set

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

forth in Schedule 1 attached to the Order if the Original Holder (as defined below) of such

Unverified Claim does not commence the KYC submission process by March 1, 2025.  In

support of this Objection, the Debtors submit the *Declaration of Kumanan Ramanathan in*

*Support of Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified*

*Customer Entitlement Claims* (the "Ramanathan Declaration") and respectfully state as follows:

## Preliminary Statement

1.      These Chapter 11 Cases have revealed that prepetition management failed

to maintain adequate records and vet the identities of customers of the FTX exchanges, and

failed to follow best practices for requesting, handling, storing and assessing customer

information.  In particular, prepetition management failed to consistently collect adequate

"know-your-customer" ("KYC") information, failed to perform basic due diligence on customers

who opened and held accounts on the FTX exchanges, and often failed to collect information

about the source of funds sent to FTX and the FTX exchanges.

2.      The inadequate prepetition practices and recordkeeping increase the risk

that the Debtors might allow claims of, and ultimately make distributions to, customers in

violation of contractual protections and applicable law, including without limitation U.S.

sanctions and money laundering laws and regulations.  The Debtors also believe that the

continuing magnitude of unverified customer claims adds complexity and uncertainty to the

claims trading market.  To address these concerns, the Debtors proactively implemented certain

guidelines for the collection of KYC information from holders of Customer Entitlement Claims[2]

---

[2]    "Customer Entitlement Claims" as defined in the Plan, means any claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any person or entity against any of the Debtors that compensates the holder of such claim for the value as of the Petition Date of cash or digital assets held by such person or entity in an account on any FTX exchange.

as of the Petition Date (the "<u>Original Holder</u>") in connection with the submission of customer proofs of claim.  These guidelines were set forth and approved in the Court's *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "<u>Customer Bar Date Order</u>").

3.      The Customer Bar Date Order approved the use of the Debtors' online customer claims portal, which, among other things, streamlined the KYC submission process for customers.  As of November 12, 2024, 159,237 customers have completed the KYC submission process (excluding scheduled *De Minimis* Claims[3]).  However, 451,735 customers have not yet commenced the KYC submission process and 30,154 customers have commenced but not yet completed the KYC submission process (both excluding scheduled *De Minimis* Claims).  As a result, these Customer Entitlement Claims remain "unverified."

4.      The Debtors are moving swiftly toward the effective date of the Plan.  To maximize initial distributions to holders of Allowed Customer Entitlement Claims after the Plan effective date, the Debtors must determine whether holders of Unverified Claims were properly customers of the FTX exchanges, and whether distributions in respect of claims of such holders would violate applicable sanctions and money laundering laws and regulations.  The Debtors cannot hold reserves in perpetuity for customers that still have not commenced the KYC submission process or who fail to complete the KYC submission process in a reasonably timely manner.  Doing so would delay distributions to all other customers and creditors and decrease the quantum of each distribution, harming all customers and creditors and prolonging these Chapter

---

[3]      "<u>*De Minimis* Claims</u>" as defined in the Plan, means any Claim in an amount equal to or less than $10.00.  *De Minimis* Claims will not receive any Distribution under the Plan.  There are approximately 1.2 million Customer Entitlement Claims that are *De Minimis* Claims under the Plan.  (Ramanathan Decl. ¶ 6.)

11 Cases unnecessarily.  Accordingly, the Debtors believe that requiring all Original Holders of

Unverified Claims to commence the KYC submission process by no later than **March 1, 2025**

and complete all requested KYC submissions by no later than **June 1, 2025**, and disallowing and

expunging the Unverified Claims where the Original Holders do not meet those required

deadlines, is in the best interests of the Debtors, their estates and all stakeholders.

5.      To the extent the KYC submissions are complete but rejected or deemed

deficient by the Debtors, all parties' rights are reserved and unaffected by this Objection.

**Background**

6.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order

on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States

Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of

Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I.

231].

7.      On October 7, 2024, the Court confirmed the *Debtors' Second Amended

Joint Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the

"Plan"),  and on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order

Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd.

and Its Debtor Affiliates* [D.I. 26404].

8.      Additional factual background relating to the Debtors' businesses and these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

## I.      The Customer Bar Date and KYC Submission Process

9.      The Debtors have approximately 1.9 million Customer Entitlement Claims (including scheduled *De Minimis* Claims) which have net positive balances as of the Petition Date.  (Ramanathan Decl.  ¶ 6.)  To help streamline the proof of claim and KYC submission process, the Debtors created an online customer claims portal (the "Customer Claims Portal") to efficiently manage claims in a user-friendly manner.  The Customer Claims Portal provided, among other features, a three-step proof of claim submission process for holders of Customer Entitlement Claims:  (i) after verifying user credentials, holders were requested to submit KYC information of the Original Holders, (ii) holders were able to view historical transaction information and account balances and (iii) holders were directed to an electronic proof of claim platform maintained by the Debtors' claims agent, Kroll Restructuring Administration, LLC (the "Claims Agent").

10.      On June 28, 2023, the Court entered the Customer Bar Date Order, which established, among other things, a deadline of September 29, 2023 to file proofs of claim on account of Customer Entitlement Claims against the Debtors (such date, the "Customer Bar Date").  The Customer Bar Date Order provided that, whether or not a Holder submitted a proof

of claim, Customer Entitlement Claims of a holder who did not submit the requested KYC information by the Customer Bar Date would not be immediately deemed disallowed, but would be deemed "unverified" (such claims, "Unverified Claims").  (Customer Bar Date Order ¶ 18.)

11.     The Customer Bar Date Order also permitted, but did not require, the Debtors to object to the allowance of Unverified Claims on an omnibus basis, including on the grounds of insufficient documentation, and to request such holders submit the requested KYC information.  Such holders would then have a final opportunity to submit the requested KYC information to the Debtors to resolve any such objection.  (*Id.*)

12.     The KYC submission process and the information requested from Original Holders depended on the type and risk profile of the claimant and the size of a particular Customer Entitlement Claim.  (Ramanathan Decl.  ¶ 7.)  For example, the KYC information collected from individual customers may include, among other things, full name, date of birth, address, identification and identification-related documents, nationality, occupation, source of funds documents, social security number (for U.S. citizens) and facial liveness.  (*Id.* ¶ 8.)  The KYC information collected from institutional customers may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners ("UBO"), identity of directors and or members of management, source of funds documents for any UBOs, directors or members of management, similar identification information and records as are collected for individual customers who are natural persons. (*Id*.  ¶ 8.)  In certain cases, once an Original Holder

submitted KYC information, the Debtors' KYC vendors may request additional verification information from such Original Holder.  (*Id.* ¶ 9.)

13.     The KYC submission process and information requests are reasonably standardized and designed for the purposes of ensuring compliance with generally recognized KYC/AML standards as recommended by the Financial Action Task Force.  (*Id.* ¶ 7.)

**II.     KYC Notices**

14.     Notice of the Customer Bar Date Order was served on each known holder of a Customer Entitlement Claim via email and, if applicable, postcard, in accordance with this Court's order.  *See Affidavit of Service of Aqeel Ahmed Regarding Notice of Deadlines Requiring Filing of Customer Proofs of Claim* [D.I. 2431].  Notice of the Customer Bar Date was also published in *The New York Times* and *Coindesk*.  *See Certificate of Publication of Liz Santodomingo Regarding Notice of Deadlines Requiring Filing of Customer Proofs of Claim* [D.I. 2243].  Each of these notices contained information regarding the KYC submission process, including information on how to commence the KYC submission process.

15.     Although not required by the terms of the Customer Bar Date Order, to further ensure that all known Original Holders of Customer Entitlement Claims received information and reminders to commence the KYC submission process, both institutional and retail customers received multiple notices from the Debtors' Claims Agent and the Debtors' KYC vendors, Sum and Substance Ltd. ("Sumsub") and BitGo, Inc. ("BitGo").  The Debtors also published several posts on X (f/k/a Twitter), reminding customers of the upcoming bar date and to submit the requested KYC information.

16.     Institutional customers received the following notices:

- On July 19 and 20, 2023, BitGo emailed each institutional
  customer who pre-registered on BitGo's website prior to July 19,

2023, confirming the pre-registration and reminding them to commence the KYC submission process. (Ramanathan Decl. ¶ 10.)

- On September 29, 2023 (the Customer Bar Date), BitGo sent an email to each institutional investor who had not commenced the KYC submission process explaining that the Customer Claims Portal would remain open for KYC submission after the Customer Bar Date. (*Id.* ¶ 10.)

17.    Retail customers received the following notices:

- On the following dates, Sumsub sent emails reminding customers who had commenced but not yet completed the KYC submission process to return and complete the KYC process (a total of 19 communications): July 28, 29, and 30, 2023; August 13, 14 and 29, 2023; September 20, 2023; October 5, 10, 17 and 31, 2023; January 23 and 24, 2024; February 28 and 29, 2024; March 1, 2024; April 9, 2024; May 7, 2024; and August 8, 2024. (*Id.* ¶ 11.)

- The Debtors' KYC document review team sends periodic targeted reminders to customers who have not submitted sufficient KYC information or documentation such as source of funds documents. These reminders are sent on a rolling basis based on the last time that a KYC application was reviewed. (*Id.*)

18.    All customers received the following notices:

- On September 21, 2023, the Claims Agent sent an email to all customers notifying them of the upcoming Customer Bar Date and to commence the KYC submission process. (*Id.* ¶ 12.)

- On August 21 and 31, 2023, September 18 and 27, 2023 and October 11, 2023, the Claims Agent sent targeted reminders to customers who filed a claim through the Claims Agent's website to commence the KYC submission process on the Customer Claims Portal. (*Id.*)

- On October 21, 2024, the Debtors sent email reminders to all customers who either (i) had not commenced KYC; or (ii) have commenced but have not yet completed the KYC submission process, reminding them of the need to complete KYC. (*Id.*)

- Most recently on November 21, 2024, the Debtors sent another email reminder to all customers who either (i) had not commenced

KYC; or (ii) have commenced but have not yet completed the KYC submission process, reminding them of the need to complete KYC.  (*Id.*)

19.     On July 21, 2023, the Debtors posted on X notifying customers of the launch of the Customer Claims Portal, which contained instructions on the KYC submission process, and on September 21, 2023, the Debtors posted on X notifying all customers to commence the KYC submission process.  On October 29, 2024, the Debtors posted another reminder on X notifying all customers to complete the KYC submission process. (*Id.*  ¶ 13.) Since the noticing of the Customer Bar Date Order by the Claims Agent, customers have had over 16 months to date to complete the KYC submission process and have been sent numerous reminders of the requirement to do so.

20.     Based on a review of the Debtors' books and records, as of November 12, 2024 approximately 451,735 customers have not commenced the KYC process or submitted *any* requested KYC information, and 30,154 customers have commenced, but have not completed, the KYC submission process (both excluding scheduled *De Minimis* Claims).  (*Id.*  ¶ 14.)

### Jurisdiction and Venue

21.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1.  Pursuant to rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection to the extent it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United

States Constitution.

**Basis for Relief**

I.      **Cause Exists to Approve the Proposed KYC Deadlines Pursuant to
         Sections 105(a) and 502(b) of the Bankruptcy Code.**

22.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, as

follows:  "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy

Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an

objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed

amount of the claim.  11 U.S.C. § 502(b).  Section 502(b)(1) of the Bankruptcy Code provides,

in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b).

23.     Further, Local Rule 3007-1(d) provides that a debtor may object on a

non-substantive basis to a "claim that does not have a basis in the debtor's books and records and

does not include or attach sufficient information or documentation to constitute *prima facie*

evidence of the validity and amount of the claim, as contemplated by [Bankruptcy Rule]

3001(f) . . . ."  Local Rule 3007-1(d)(vi); *see also In re FBI Wind Down, Inc.*, 2015 WL

1181890, at *1 (Bankr. D. Del. Mar. 3, 2015) (expunging and disallowing insufficient

documentation claims); *In re Exide Technologies*, 2013 WL 12579684, at *1 (Bankr. D. Del.

Mar. 7, 2013) (same).

24.     While a properly filed proof of claim is *prima facie* evidence of the

claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima

facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance

of evidence.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the

claimant must allege facts sufficient to support the claim.  If the averments in his filed claim

meet this standard of sufficiency, it is '*prima facie*' valid.").  The burden of persuasion with

respect to the claim is always on the claimant, *id.* at 174, and the failure to allege facts and to

provide adequate support for a claim eliminates the claim's *prima facie* validity.  *See, e.g.*, *In re*

*Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements

and burden of proof with respect to the allowance of claims).

       25.     Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent

part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

       26.     As this Court noted at the October 24, 2023 hearing in connection with the

*Order Granting (I) Leave from the Local Rule 3007-1(f) to Permit the Filing of Substantive*

*Omnibus Objections and (II) Granting Related Relief*  [D.I. 3429], "the know your customer

issue, I think, is a separate issue that is something that we have to do in this case given the nature

of the business we're involved with here."  (Oct. 24, 2023 H'rg Tr. 84:13-16.)

       27.     Where the Original Holder of a Customer Entitlement Claim has not

commenced the KYC submission process, or has failed to submit all requested KYC

information, the Debtors are missing a critical element of such Customer Entitlement Claim.

*First*, the Debtors cannot determine whether a Customer Entitlement Claim is valid unless and

until the Debtors are able to assess whether such claimant was properly a customer of the

applicable FTX exchange.

       28.     *Second*, distributing to holders of Unverified Claims (even if such claims

were purchased from Original Holders) would increase the risk that the Debtors make

distributions to parties or on account of claims in violation of U.S. law.  For example, the Office

of Foreign Assets Control ("OFAC") administers and enforces economic sanctions against

targeted foreign countries and regimes, terrorists, international narcotics traffickers and those

engaged in threats to U.S. national security.[4]  Assets subject to OFAC sanctions are "blocked"

and U.S. persons are generally prohibited from dealing with them.  U.S. sanctions laws apply to

both U.S. and non-U.S. persons when there is a U.S. connection and include "anyone engaging

in virtual currency activities in the United States, or that involve U.S. individuals or entities."[5]

Enforcement of OFAC sanctions is based on a strict liability legal standard, with substantial

penalties for violations.  Accordingly, the Debtors cannot make distributions on account of

Unverified Claims (even if such claims are sold to a non-sanctioned person) given the risk of

violating OFAC sanctions.

29.     In addition, the Money Laundering Control Act of 1986 (the "AML Act")

prohibits certain financial transactions connected to unlawful activity.  Among other provisions,

the money laundering laws make it a crime to knowingly conduct a financial transaction that

involves the proceeds of "specified unlawful activity" with one of four specific intents or to

knowingly engage in a monetary transaction in property derived from specified unlawful activity

with a value greater than $10,000.[6]  As with claims subject to OFAC sanctions, the Debtors

cannot make distributions on account of Unverified Claims given the risk of violating the AML

---

[4]    OFAC publishes lists of certain individuals and entities subject to various sanctions programs.  *See* ALPHABETICAL LISTING OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS, U.S. DEP'T OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, https://www.treasury.gov/ofac/downloads/sdnlist.txt; Specially Designated Nationals (SDNs) and the SDN List: Frequently Asked Questions, U.S. DEP'T OF TREASURY: OFFICE OF FOREIGN ASSETS CONTROL, https://hometreasury.gov/policy-issues/financialsanctions/faqs/topic/1631.

[5]    *See* SANCTIONS COMPLIANCE GUIDANCE FOR THE VIRTUAL CURRENCY INDUSTRY, OFAC (October 2021), https://ofac.treasury.gov/media/913571/download?inline.

[6]    18 U.S.C. §§ 1956(a)(1), 1957(a); *see also* 31 C.F.R. § 1022.210(a). Under the U.S. AML laws, a "financial institution" includes money service businesses and "currency exchange[s] or . . . business[es] engaged in the exchange of . . . value that substitutes for currency or funds." *Id.* § 5312(a)(2).

Act.  Courts in this district have recognized the unique nature of anti-sanctions and money laundering risks associated with digital asset exchanges, and have prohibited distributions holders of claims who reside in sanctioned or restricted nations.  *See, e.g., In re Bittrex, Inc.*, Case No. 23-10598 (BLS) (Bankr. D. Del. Oct. 31, 2023) [D.I. 517] (confirming plan, where, among other things, the debtors were prohibited from disbursing cryptocurrency or fiat currency to any foreign national of a blocked, restricted or sanctioned nation).

30.    As set forth in the Ramanathan Declaration, based upon a review of the Unverified Claims and the Debtors' books and records, the Debtors have identified that the Unverified Claims listed on <u>Schedule </u>1 to <u>Exhibit A</u> lack the requisite supporting documentation at this time to properly verify the validity of a claim against the Debtors and are therefore not *prima facie* valid.  Accordingly, the Debtors request that such Unverified Claims be disallowed and expunged in their entirety from the claims register, unless the Original Holder of an Unverified Claim commences the KYC submission process with respect to such Unverified Claim by March 1, 2025 and submits all requested KYC information by June 1, 2025.

**<u>Deadlines to Submit KYC Information to Resolve This Objection</u>**

31.    To resolve the Debtors' objection with respect to an Unverified Claim included herein, a claimant must commence the KYC submission process with respect to the Original Holder of such Unverified Claim no later than March 1, 2025 at 4:00 p.m. (ET) (the "<u>KYC Commencing Deadline</u>") and must submit all requested KYC information (including additional information the Debtors, Sumsub or BitGo, as applicable, may determine to be necessary and may request from the Original Holder of an Unverified Claim after the KYC Commencing Deadline or the submission of initial KYC information) no later than June 1, 2025 at 4:00 p.m. (ET) (the "<u>KYC Submission Deadline</u>").  "Commencing" the KYC submission

process involves logging into the Customer Claims Portal and beginning "Step 3 – Provide Know Your Customer (KYC) Information."

32.     If an Original Claimant fails to either (a) timely commence the KYC submission process by the KYC Commencing Deadline or (b) submit all requested KYC information by the KYC Submission Deadline, the Debtors maintain that any Unverified Claims attributable to such claimant must be disallowed and expunged in their entirety.  Upon expiration of the KYC Commencing Deadline and the KYC Submission Deadline, as applicable, the Debtors will file a notice of expungement with the Court with a schedule of all Unverified Claims that are disallowed and expunged in their entirety.

33.     The Debtors may file and serve a reply to any response filed to this Objection in accordance with the Local Rules.  The Debtors reserve the right to seek an adjournment of the hearing on any response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

34.     For the avoidance of doubt, this Objection applies only to Customer Entitlement Claims to the extent the Original Holders of such claims have (i) not commenced the KYC submission process by the KYC Commencing Deadline or (ii) failed to provide all KYC information requested by the Debtors, Sumsub or BitGo, as applicable, by the KYC Submission Deadline.  The Debtors at this time are ***not*** seeking to disallow Customer Entitlement Claims of any holders who have submitted all requested KYC information to the Debtors, Sumsub and BitGo, as applicable, even if such information was unable to be validated and was therefore rejected by Sumsub or BitGo, as applicable, or otherwise rejected by the Debtors.  The Debtors reserve all rights with respect to such Customer Entitlement Claims, including the right to object to such claims at a later date on the basis of the KYC information provided.

35.     For the further avoidance of doubt, nothing in this Objection or the Order shall amend, supersede, or otherwise modify any of the requirements or deadlines with respect to any aspect of section 7.14 of the Plan, including the Pre-Distribution Requirements.

## **Reservation of Rights**

36.     Nothing in this Objection:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors; or (e) is intended to deem any claim as an Allowed (as such term is defined in the Plan) claim against the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

37.     The Debtors retain their rights to later object on any basis to any Unverified Claim, including on the basis of the KYC information later provided (if any).

## **Separate Contested Matters**

38.     To the extent a Response is filed regarding any claim listed in this Objection and the Debtors are unable to resolve the Response, the objection by the Debtors to such claim shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim subject thereto.

**<u>Limited Waiver of Local Rule 3007-1</u>**

39.     The Debtors acknowledge that Local Rule 3007(e)(iii) requires that

<u>Schedule 1</u> attached to the Order contain, at a minimum, the (i) name of the claimant; (ii) claim

number; (iii) claim amount; and (iv) reason for disallowance.  However, pursuant to this Court's

*Fifth Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of*

*Customers* [D.I. 24588], the Debtors have withheld the customer names from Unverified Claims

and have instead listed the unique customer code associated with each Unverified Claim on

<u>Schedule 1</u>.

40.     In addition, the Debtors have not listed the claim amounts (including the

type and quantity of each digital asset) associated with each Unverified Claim, because such

amounts are not relevant to the grounds underlying this Objection and it would be unduly

burdensome to do so.  The Debtors submit that not including the claim amounts promotes

judicial efficiency and reduces the Debtors' costs and administrative burden.

41.     Subject to the foregoing, to the best of the Debtors' knowledge and belief,

this Objection and all related exhibits and schedules comply with Local Rule 3007-1.  To the

extent this Objection does not comply in all respects with the requirements of Local Rule 3007-1,

the undersigned believes that such deviations are not material to the relief requested and

respectfully requests that any such requirement be waived.

**<u>Notice</u>**

42.     Notice of this Objection has been provided to:  (a) the U.S. Trustee;

(b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal

Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for

the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) each holder of an

Unverified Claim as of the date of this Objection; and (i) to the extent not listed herein, those

parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### No Prior Request

43.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: November 22, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*