# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF KUMANAN RAMANATHAN IN SUPPORT OF DEBTORS' ONE HUNDRED THIRTIETH (NON-SUBSTANTIVE) OMNIBUS OBJECTION TO UNVERIFIED CUSTOMER ENTITLEMENT CLAIMS

I, Kumanan Ramanathan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Senior Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operation restructuring.

2. I have more than 14 years of restructuring and financial advisory experience across various industries, including oil & gas, manufacturing, pharmaceutical, retail, mining, lending, industrials, healthcare, and consumer products. I have a Bachelor's Degree from the University of Toronto and am a Chartered Accountant (CA).

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

3. Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Philadelphia Energy Solutions (2019), Endo International, Gibson Brands, Inc., M&G USA Corporation and USA Discounters Ltd.

4. I submit this declaration (this "Declaration") regarding the *Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* (the "Objection").[2] I am not being compensated separately for this testimony other than through payments received by A&M as financial advisor retained by FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors").

5. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by A&M professionals involved in advising the Debtors in the above-captioned cases or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

**I.   The Customer Bar Date and KYC Submission Process**

6. The Debtors have approximately 1.9 million Customer Entitlement Claims (including scheduled *De Minimis* Claims[3]) which have net positive balances as of the Petition Date.

7. The KYC submission process and the information requested from Original Holders depended on the type and risk profile of the claimant and the size of a particular Customer Entitlement Claim. The KYC submission process and information requested are reasonably

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Objection.
[3]   There are approximately 1.2 million Customer Entitlement Claims that are *De Minimis* Claims under the Plan.

standardized and designed for the purpose of ensuring compliance with generally recognized KYC/AML standards as recommended by the Financial Action Task Force.

8. For example, the KYC information collected from individual customers may include, among other things, full name, date of birth, address, identification and identification-related documents, nationality, occupation, source of funds documents, social security number (for U.S. citizens) and facial liveness. The KYC information collected from institutional customers may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners ("UBO"), identity of directors and or members of management, source of funds documents for any UBOs, directors or members of management, similar identification information and records as are collected for individual customers who are natural persons.

9. In certain cases, once an Original Holder submitted KYC information, the Debtors' KYC vendors may request additional verification information from such Original Holder.

**II.   KYC Notices**

10. Institutional customers received the following notices:

- On July 19 and 20, 2023, BitGo emailed each institutional customer who pre-registered on BitGo's website prior to July 19, 2023, confirming the pre-registration and reminding them to commence the KYC submission process.

- On September 29, 2023 (the Customer Bar Date), BitGo sent an email to each institutional investor who had not commenced the KYC submission process explaining that the Customer Claims Portal would remain open for KYC submission after the Customer Bar Date.

11. Retail customers received the following notices:

- On the following dates, Sumsub sent emails reminding customers who had commenced but not yet completed the KYC submission process to return and complete the KYC process (a total of 19 communications): July 28, 29, and 30, 2023; August 13, 14 and 29, 2023; September 20, 2023; October 5, 10, 17 and 31, 2023; January 23 and 24, 2024; February 28 and 29, 2024; March 1, 2024; April 9, 2024; May 7, 2024; and August 8, 2024.

- The Debtors' KYC document review team sends periodic targeted reminders to customers who have not submitted sufficient KYC information or documentation such as source of funds documents. These reminders are sent on a rolling basis based on the last time that a KYC application was reviewed.

12. All customers received the following notices:

- On September 21, 2023, the Claims Agent sent an email to all customers notifying them of the upcoming Customer Bar Date and to commence the KYC submission process.

- On August 21 and 31, 2023, September 18 and 27, 2023 and October 11, 2023, the Claims Agent sent targeted reminders to customers who filed a claim through the Claims Agent's website to commence the KYC submission process on the Customer Claims Portal.

- On October 21, 2024, the Debtors sent email reminders to all customers who either (i) had not commenced KYC; or (ii) have commenced but have not yet completed the KYC submission process, reminding them of the need to complete KYC.

- Most recently on November 21, 2024, the Debtors sent another email reminder to all customers who either (i) had not commenced KYC; or (ii) have commenced but have not yet completed the KYC submission process, reminding them of the need to complete KYC.

13. On July 21, 2023, the Debtors posted on X notifying customers of the launch of the Customer Claims Portal, which contained instructions on the KYC submission process, and on September 21, 2023, the Debtors posted on X notifying all customers to commence the KYC submission process. On October 29, 2024, the Debtors posted another reminder on X notifying all customers to complete the KYC submission process.

### III. Unverified Claims Review Process

1. The Debtors and their advisors have spent more than a year reviewing and analyzing Unverified Claims and evaluating the KYC information submitted through the Customer Claims Portal. These efforts resulted in, among other things, identifying the Unverified Claims listed on Schedule 1 to Exhibit A of the Objection.

14. Based on a review of the Debtors' books and records, as of November 12, 2024, approximately 451,735 customers have not commenced the KYC process or submitted *any* requested KYC information, and 30,154 customers have commenced, but have not completed, the KYC submission process (both excluding scheduled *De Minimis* Claims).

15. Based upon a review of the Unverified Claims, the KYC information submitted through the Customer Claims Portal and the Debtors' books and records, as well as the Debtors' and their advisors' ongoing analysis and review, it is my opinion that the Unverified Claims listed on Schedule 1 to Exhibit A lack the requisite KYC documentation at this time to properly verify the validity of a claim against the Debtors, including because the Original Holder of such Unverified Claim did not commence the KYC submission process, or commenced but did not complete the KYC submission process.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  November 22, 2024         */s/ Kumanan Ramanathan*
                                  Kumanan Ramanathan
                                  Alvarez & Marsal North America, LLC
                                  Senior Director