**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- x

In re:

FTX TRADING LTD., *et al*.,[1]

Debtors.

------------------------------------------------------- x

: Chapter 11
:
: Case No. 22-11068 (JTD)
:
: (Jointly Administered)
:
: **Hearing Date: December 12, 2024**
:
: **Re: D.I. 27755, 28587, 28603**

## REPLY IN SUPPORT OF MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. (IN LIQUIDATION) FOR LEAVE TO AMEND PROOF OF CLAIM

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized joint liquidators (the "**Joint Liquidators**") appointed in the British Virgin Islands' ("**BVI**") liquidation of Three Arrows Capital, Ltd. (in liquidation) (the "**3AC Debtor**") and foreign representatives of the 3AC Debtor, as recognized pursuant to chapter 15 of the Bankruptcy Code in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022), respectfully submit this reply (the "**Reply**") in support of the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (in Liquidation) for Leave to Amend Proof of Claim* (the "**Motion**")[2] [D.I. 27755] and in response to the *Debtors' Objection to the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. (In Liquidation) for Leave to Amend Proof of Claim*

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of FTX debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of FTX's claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   Capitalized terms or phrases not otherwise defined shall have the definition ascribed to them in the Motion and the Objection, as applicable.

(the "**Objection**") and the Joinder submitted by the Committee of Unsecured Creditors [D.I. 28603]. In support of this Reply, the Joint Liquidators respectfully submit as follows:

## PRELIMINARY STATEMENT

1.     The picture that FTX paints in the Objection is entirely divorced from the factual record. In FTX's version of events, the Joint Liquidators had access before the Bar Date to information that could have enabled them to timely assert a $1.53 billion claim. Instead, they neglected to do so and chose to file the Original POC in the amount of $120 million. Approximately 16 months later, the Joint Liquidators suddenly realized the true magnitude of their claims and are now asserting, to FTX's utter surprise, a claim 12 times larger that what was set forth in the Original POC.

2.     To believe this story, one must turn a blind eye to reality. The facts here are clear and they belie every element of FTX's narrative.

3.     *First*, the Joint Liquidators did not have access before the Bar Date to any information that could have enabled the assertion of a preference (or any other) claim in the amount of $1.53 billion, as now liquidated in the Amended POC. As support, FTX points only to (i) the Joint Liquidators' ability to "access" the 3AC Debtor's FTX accounts before FTX's bankruptcy, and (ii) the May 2022 NAV Pack showing that the 3AC Debtor had $700 million in assets on the FTX.com exchange at the end of May 2022. These facts are meaningless.

4.     Prepetition "access" to the 3AC Debtor's FTX accounts—access that was cut off when FTX filed for bankruptcy—does not mean the Joint Liquidators were negligent, much less inexcusably so, for several reasons. First, the data contained in such accounts could only be downloaded in rounds of approximately 100 transactions each. But the Joint Liquidators would have had to download more than 6.3 million transactions (*i.e.*, approximately 63,000 manual

US-DOCS\156093061.9

downloads) just to cover the six-month BVI preference period, and over 49.2 million for the full transaction history as would be needed to accurately reconstruct the overall account balances of the 3AC Debtor on a rolling basis from inception. Second, there was no reason for the Joint Liquidators to undertake this monumental task *before FTX had even filed for bankruptcy*, when (i) the only deadline they were facing was the BVI's 6 year (at minimum) statute of limitations on avoidance claims,[3] (ii) the Joint Liquidators were dealing with the far more pressing imperative of identifying what assets the 3AC Debtor had and how they could assert control over them, and (iii) they had little funds to do so (upon the Joint Liquidators' appointment, there were no immediately available liquid assets and, indeed, fees being incurred in managing the 3AC Debtor's estate were materially in excess of early realizations until October 2022).

5.      Indeed, the Joint Liquidators are unaware of any court decision denying an amendment because the creditor failed to investigate a claim *before* the debtor's bankruptcy filing.

6.      As for the May 2022 NAV Pack, the knowledge that the 3AC Debtor potentially had, at some point in time, $700 million in assets on the FTX platform in no way would have sufficed to articulate a $1.53 billion preference claim. To have a valid basis to assert that claim, the Joint Liquidators also needed to know (among other things) what *happened* to those assets (*i.e.*, that FTX retained the proceeds of those assets), and that the 3AC Debtor had liabilities beyond the $120 million that the May 2022 NAV Pack stated. In fact, the May 2022 NAV Pack does not accurately reflect the nature of the $120 million line of credit or other purported liabilities arising from transactions on the FTX platform. The Joint Liquidators did not know these facts before the Bar Date, and had no reason to suspect them or divert critical and constrained resources to investigate them.

---

[3]      BVI Limitation Ordinance 1961, § 4.

US-DOCS\156093061.9

7.      ***Second***, the Amended POC does not claim an amount 12 times larger than the Original POC, not least because the Original POC was *unliquidated*.  The Original POC never asserted a claim for $120 million, as FTX itself has admitted.  When FTX wanted to object to the Original POC on the alleged basis that it is unsubstantiated, it used that exact fact, arguing that "3AC did not indicate the alleged factual predicates, ***amount***, priority, or character of the 3AC Claims."  *Debtors' Objection to Proofs of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd.* [D.I., 19797], at ¶ 17 (emphasis added).  FTX's blatant flip-flop is inappropriate.  Instead, the Original POC asserted a claim for the lost "collateral" that secured an apparent $120 million loan.  This is a critical distinction.  It is the value of that lost purported "collateral" that was (and is) the 3AC Debtor's damages, not the amount of the purported loan.  And that purported "collateral" was the 3AC Debtor's *entire account*, as the loan documents state[4] and FTX's internal documents admit.  Now that the amount of that lost collateral is known, the Amended POC liquidates that claim.

8.      ***Third***, we know that the Original POC provided adequate notice of the "occurrence" or "general factual situation" that supports the Amended POC, because we can see FTX's analysis of the Original POC.  As highlighted in the Motion, FTX's financial advisor (A&M) prepared an October 25, ***2023*** presentation following the filing of the Original POC.  And that presentation discusses the exact facts articulated in the Amended POC: the sale between June 12 and 14, 2022 of approximately $1.3 billion of the 3AC Debtor's assets (almost all before the closing of the $120 million line of credit) in satisfaction of $1.3 billion of purported liabilities (not

---

[4]      The Joint Liquidators at the time had not seen the loan agreements (and FTX did not respond to the request for them) and so did not know what the collateral was.  Since then the agreements have been produced, and purport to give FTX a security interest over all assets in the 3AC Debtor's FTX account.

4

just the $120 million line of credit).[5]  FTX does not deny any of that.  So to claim surprise 14 months later at claims of the same magnitude and based on the same transactions, when FTX knew the Original POC involved those exact transactions, and then slow-rolled providing information that they had agreed to provide to facilitate resolution of another bankruptcy estate, is simply not credible.

9.      When the Joint Liquidators were appointed, they were in an almost untenable situation:  they had no books and records, no computer systems, no access to offices, no idea what assets the 3AC Debtor had (much less control over them), and no access to prior management (the 3AC Debtor's Founders, Kyle Davies and Su Zhu and their employees) who went to such great lengths to evade providing information that they were sentenced to prison.  Lacking the most basic information, the Joint Liquidators sent information requests to over 20 global crypto exchanges, including FTX, in an effort to identify what assets the 3AC Debtor had and where.  Starting in July 2022, just days after their appointment, they requested that FTX provide "records of transaction history and withdrawals"; FTX responded with what it said was "the deposit, withdrawal and transaction history of Three Arrows Capital" (Beller Decl. Ex. D, at FTX_3AC_000001234); but it turns out that "transactional history" was so incredibly deficient that it included almost no transactions in the crucial early June 2022 period.  *See* Crumpler Decl. at ¶¶ 29-30.  Notably FTX does not (and could not) claim that this paltry prepetition information was sufficient to allege the claims as liquidated in the Amended POC.  Instead, the first real information the Joint Liquidators received was the receipt in late April 2023 of the May 2022 NAV Pack from the 3AC Debtor's pre-liquidation fund administrator, which indicated that as of May 31, 2022, the 3AC Debtor owed

---

[5]      For the avoidance of doubt, $1.53 billion was the value of the 3AC Debtor's collateral as of June 12, 2022, whereas $1.3 billion was the amount that FTX credited the 3AC Debtor to decrease its alleged liabilities. Discovery will be needed to determine what caused the difference, and whether FTX is liable for that difference.

a $120 million liability to FTX and had $700 million in assets at FTX. That information, combined with the knowledge that FTX had not submitted a claim for that $120 million liability in the 3AC Debtor's liquidation initiated a month later, led the Joint Liquidators to believe that FTX foreclosed on assets to satisfy the 3AC Debtor's liability, and thus enabled them to timely file the Original POC for any dissipation of collateral.

10.    While FTX now criticizes the Joint Liquidators for not pursuing more discovery sooner, in reality there was less than two months between when there was first any obligation to do so—the filing of the bar date motion on May 3, 2023 (at the earliest)—and the June 30, 2023 Bar Date. And it is incredible to think that the Joint Liquidators would have received sufficient information, and then processed it, to enable it to file the more detailed Amended POC even had it immediately served discovery on May 3, 2023, given that in reality it took FTX months to respond to discovery requests, and then yet more months for the 3AC Debtor's liquidation team to be able to process and understand the resulting data dumps. Even if the 3AC Debtor had immediately filed a discovery motion under Bankruptcy Rule 2004 after seeing the May 3, 2023 bar date motion and obtained an order at the next omnibus hearing date on June 8, 2023, there would have been only 22 days to obtain discovery, complete an analysis, and file a proof of claim. To suggest that the 3AC Debtor should lose its claims because it did not undertake such a Herculean effort is manifestly unjust. The Joint Liquidators acted diligently—reviewing and relying upon the information the 3AC Debtor's administrator provided in the May 2022 NAV Pack; then asking FTX for any document about the apparent loan disclosed in that May 2022 NAV Pack, which request was effectively denied; then requesting information informally pursuant to a process to which FTX *agreed*; and following that with formal discovery when FTX started ignoring informal requests, and threatening motions to compel when formal requests were ignored.

6

What is most disturbing is that FTX actually had complete knowledge of the transactions underlying the 3AC Debtor's claims (as evidenced by the October 2023 A&M presentation). But rather than provide that information pursuant to what was supposed to be an informal information sharing protocol, FTX provided a very slow and largely incomprehensible data dump and then slow-rolled the delivery of additional information to the Joint Liquidators.

11.     And most critically, there is no prejudice—the "touchstone" or "critical consideration" (Objection, at ¶ 47) for denying leave to amend—to FTX from the amendment. FTX fails to articulate any way in which it is in any different position than if the Original POC had liquidated the claim at $1.53 billion in June 2023. FTX provides *zero* evidence that their Chapter 11 plan would have been constructed any differently, that creditors would have voted any differently, or that an amendment would jeopardize a successful reorganization in any way. Indeed, FTX recently heralded that the aggregate amount of claims filed in these chapter 11 cases was over $1.187 *sextillion*, which makes the 3AC Debtor's claim relatively insignificant.[6] Furthermore, prejudice to FTX or its creditors as a result of this amendment seems impossible because, as a disputed claimant, the 3AC Debtor's recovery under the Amended POC is still limited to the $6.5 billion disputed claims reserve (which FTX seeks to establish via separate motion before this Court, and which the 3AC Debtor has not objected to). Notably FTX proposed the amount of that reserve weeks *after* it reviewed the draft Amended POC, and so was calculated with full knowledge of it. As a result of the Reserve Motion, undisputed creditors cannot be affected by the amendment; FTX has assured the Court that the reserve will be sufficient to pay

---

[6]     *See Motion of Debtors for Entry of an Order Establishing the Amount of the Disputed Claims Reserve* [D.I. 28102] (the "**Reserve Motion**"), at ¶ 8.

all disputed creditors; and regardless, no distributions will need to be clawed back and the plan will not be prevented from being fully complied with if leave to amend is granted.

12.    In sum, what the Original POC alleges (*inter alia*), and the Amended POC articulates further, is a classic preference based on essentially uncontested facts: in the days before the 3AC Debtor's liquidation, its assets were sold in satisfaction of alleged liabilities, achieving a greater recovery on those liabilities than would have been received in that liquidation.  It is not surprising that FTX does not make even a token attempt at arguing the futility of that claim, and instead is doing everything it can to avoid having it decided on the merits.

## **REPLY**

## I.    **FTX CONCEDES THE 3AC DEBTOR'S CLAIMS ARE NOT FUTILE**

13.    Before addressing the arguments FTX makes, it is important to highlight one they do not make: futility.[7]  In waiving that argument, FTX concedes (for purposes of the Motion) that the claims set forth in the Amended POC would survive a motion to dismiss, and so would prevail if the Joint Liquidators can ultimately prove the facts alleged at trial.  Indeed, the Amended POC sets forth a classic preference based on ***almost entirely undisputed facts***: on June 12 and 14, 2022, just days before its liquidation proceeding, over $1.3 billion of the 3AC Debtor's assets were liquidated; the proceeds were applied to pay the 3AC Debtor's alleged liabilities; which resulted in a greater creditor recovery to FTX than in the 3AC Debtor's liquidation.

14.    While FTX makes scattered criticisms of the claims based on its assertion that FTX did not direct the asset sales (Objection, at ¶¶ 5, 13, 88), that token argument is legally irrelevant and factually unproven.  It is legally irrelevant because: (i) the 3AC Debtor's preference and

---

[7]        Specifically, FTX only mentions futility in passing in a footnote, with zero support in law or in fact.  *See* Obj. at ¶ 77, n. 10.

US-DOCS\156093061.9

undervalue transaction claims are valid regardless of who directed the transfers; (ii) who directed the transfers is likewise irrelevant to the breach of contract and breach of trust claims asserted on the basis that FTX's commingling (well before the sales) may have destroyed the 3AC Debtor's ownership interest; and (iii) the conversion, unjust enrichment, turnover, proprietary restitution and breach of contract and trust claims may be asserted based on FTX's improper retention of the proceeds of the sales, regardless of who directed the transfers.

15.     And it is factually unproven because FTX has not offered any credible, admissible evidence that the 3AC Debtor directed the transfers.  FTX cites only self-serving presentations by its *own* advisor A&M, which was not at FTX at the time and so lacks any personal knowledge, and which is based solely on a conversation with an FTX developer who also has no personal knowledge of the 3AC Debtor's transactions, and who FTX has refused to allow the Joint Liquidators to depose (until after the present Motion is decided).

## II.     THE AMENDED POC RELATES BACK TO THE ORIGINAL POC

16.     Rather than attempting to challenge the claim, FTX falsely asserts that the Amended POC impermissibly changes the claimed amount, relates to entirely different facts, and adds impermissible new claims.  These are all incorrect.

       A.     *The Amended POC liquidates, rather than increases, the unliquidated amount sought in the Original POC*

17.     Despite FTX's new insistence that the Original POC was asserted in the amount of $120 million, the claim was filed as unliquidated.  FTX admitted and used this fact in its unsubstantiated claim objection to the Original POC, stating that "3AC did not indicate the alleged factual predicates, ***amount***, priority, or character of the 3AC Claims."  *Debtors' Objection to Proofs of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd.* [D.I., 19797], at ¶ 17 (emphasis added).  FTX cannot credibly take the opposite position in two pending motions.

18.     And that admission (as to the lack of an amount) is clearly correct.  The Original

POC only mentioned the $120 million loan to identify what property was sold: "collateral securing

an approximately $120 million purported loan" (Original POC, at ¶ 6).  In fact, as the loan

documents assert, that purported "collateral" was **all** of the 3AC Debtor's assets in its FTX

account.[8]  The amount of the claim was the value of the collateral purportedly foreclosed upon

(which was then unknown, hence the "unliquidated" nature of the claim), not the amount of the

loan.  After discovery, the Joint Liquidators learned that the lost "collateral" amounted to $1.53

billion, and that those assets satisfied what FTX is asserting to be $1.3 billion of loans.

19.     Accordingly, the Amended POC liquidates the amount of a previously unliquidated

claim, which is appropriate as FTX's own cases admit.  *See In re Maxus Energy Corp.,* No. 16-

11501, 2023 WL 5543612, at *7 (Bankr. D. Del. Aug. 28, 2023) ("To the extent a claim that was

otherwise contingent or unliquidated has become concrete, it is appropriate to update the proof of

claim to provide that additional factual detail").

B.      *Contrary to FTX's assertions the Amended POC is not "premised on wholly new facts and theories"*

20.     The Amended POC is also based on the same "occurrence" or "general factual

situation" as the Original POC, which is the standard under Rule 15(c) of the Federal Rules of

Civil Procedure and the Third Circuit precedent.  *See FRCP 15(c); In re Glover v. F.D.I.C.,* 698

F.3d 139, 146 (3d. Cir. 2012); *Bensel v. Allied Pilots Ass'n,* 387 F.3d 398, 310 (3d Cir. 2004).  The

Original POC asserts that FTX "purportedly foreclosed," -- *i.e.* sold to satisfy a liability -- an

unspecified amount of purported "collateral"—which as noted above was all of the 3AC Debtor's

---

[8]      *See* FTX Institutional Customer Margin and Line of Credit Agreement, Section 3.  The Joint Liquidators at the time had not seen the loan agreements (and FTX did not respond to the request for them) and so did not know what the collateral was.  Since then the agreements have been produced, and purport to give FTX a security interest over all assets in the 3AC Debtor's FTX account.

assets in its FTX account—after June 1, 2022.  While those facts are more fleshed out in the

Amended POC, and the relevant amounts of both the assets sold and the liabilities purportedly

satisfied are now liquidated with the benefit of discovery, they are not "new"; they are in fact the

exact same facts.  To the extent there was any ambiguity, FRCP 15(c) directs the court to consider

not just what occurrence was "set out," but also what was "attempted to be set out," in the original

pleading.  FRCP 15(c)(1)(B).

21.     Here, we do not have to guess or argue whether the Original POC put FTX on notice

of the "occurrence" or "general factual situation" that the Amended POC is based upon, because

FTX's own internal analysis of the Original POC clearly shows it did.  The A&M presentations

from October 2023 and September 2024 analyzing the Original POC (both prepared when FTX

had *only* the Original POC) demonstrate that FTX understood the 3AC Debtor's claim to be about

the June 2022 disposition of all of its assets on the FTX platform; they described the exact facts,

*i.e.* the "occurrence" or "general factual situation," that the Amended POC is based upon.  First,

FTX understood that the Original POC was about the sale of purported collateral, not just the $120

million purported line of credit.  *See* Goldberg Decl., Ex. 19 (A&M October 23 Presentation) at p.

5 ("[the 3AC Debtor] has asserted 'undefined' claims relating to, among other things, an FTX

exchange Line of Credit ('LOC') ***and the collateral that was used to secure the LOC***") (emphasis

added).  Second, FTX understood that the purported collateral was all assets in the 3AC Debtor's

account, not just $120 million.  Goldberg Decl., Ex. 18 at p. 8 ("Assets in 3AC's FTX.com

exchange account were collateral for the LOCs");  *id.*, Ex. 19 at p. 14 (same).  Third, FTX

understood that the Original POC was addressing the sales of all of those assets in early June 2022,

not just $120 million; the presentations examine in detail the entire set of asset sales occurring on

June 13 and 14 2022, not just the June 14 closing of the $120 million line of credit.   Goldberg

Decl. Ex. 18 at 5, 12, 21, 22; Goldberg Decl. Ex. 19 at 5, 6, 7, 11 ("drilling down" on June 13 and June 14 sales before the closing of the line of credit).[9]  And fourth, FTX understood that these sales of purported collateral satisfied the 3AC Debtor's purported liabilities *other than the LOC*. Goldberg Decl., Ex. 19 at p. 18 ("3AC's USD borrow balance was eliminated via these sales of non-fiat assets and futures positions **and** the liquidation of the account."); *id*. at p. 7 ("From June 12 to June 14, 3AC reduced its fiat borrowing balance by over $1.01B, excluding the LOC"), *id*. at p. 11 ("6/13/22.  Throughout the day:  3AC sells spot assets and futures for $1.071B to reduce its accounts USC borrow balance"), *id*. at p. 21 (same).  In other words, to analyze the Original POC, FTX's advisers analyzed the exact facts that are the basis for (and are fleshed out in) the Amended POC.  It is thus clear that the Original POC put FTX on notice that those facts were the basis for its claim.

22.    On any fair read, the Original POC involves the same "occurrence" or "general factual situation" as the Amended POC, as FTX's own internal documents show.

C.    *The Amended POC's assertion of an unsecured claim (as opposed to a secured claim) is not prejudicial and may not serve as the basis to deny the amendment*

23.    FTX remarkably argues that it was improper for the 3AC Debtor to now recognize that its claim is unsecured.  In fact, before the bar date, the Joint Liquidators asked FTX to produce any documentation of the apparent loan relationship, which would have helped inform this issue, but FTX declined. Goldberg Decl. Ex. 1 at page 1.  So the Joint Liquidators filed the Original POC

---

[9]    Those presentations also describe how the transactions in June 13 and June 14, 2022 resulted in the "collateral" decreasing.  *See* Goldberg Decl., Ex. 19 at p. 6 ("The account value was likely much less than 3AC's required collateral at the time of the liquidation. This is supported by the account activity on June 13-14"); *Id.* at p. 11 ("3AC withdraws 35.0M USDC and 195 BTC from account [on June 13]. Possibly causing the account to become undercollateralized"); *Id*. at p. 18 (showing that FTX had a collateral "deficiency" of $209.5 million and explaining that "3AC sold out of its positions held in non-fiat spot, reducing the USD value held in these positions by $1.015bn" and "reduced its futures positions (primarily BTC-PERP and ETH-PERP) by $575.9M").

as a secured claim (and included the reservation of rights in the attachment) because they lacked substantial information about their claims at the time and could not simply forfeit, in light of their fiduciary duties, their potential secured status.  Now that the Joint Liquidators have obtained sufficient discovery to learn that their claims are unsecured, they amended them to concede any claims to security interests.  There is nothing inappropriate about such an amendment.  *See, e.g., Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997) (upholding bankruptcy court decision permitting amendment of a secured claim into an unsecured one).  In that case, the First Circuit rejected the argument that the amendment should not be allowed because unsecured creditors would receive less were the claim to be allowed, noting such a standard would preclude virtually any amendment, since it dispenses with the requirement that the debtor or trustee show "unfair" prejudice.  The alternative would have been to continue claiming secured status in the Amended POC, which FTX surely would have opposed as unsupported by available facts (and which would have been contrary to the Joint Liquidators' duties under BVI law to only pursue claims which they reasonably believe to have merit and to not act speculatively).

24.    In contrast, the cases cited by the FTX Debtors on this point are readily distinguishable, as they involve either a still-secured creditor adding a new deficiency claim, or an unsecured creditor seeking to move up to secured status.  In *In re Matthews*, 313 B.R. 489 (Bankr. M.D. Fla. 2004), a creditor, whose original secured claim had already been satisfied by the debtor's surrender of collateral, filed a new unsecured deficiency claim more than a year after confirmation and urged the court to treat its second claim as an amendment to its original secured claim.  Likewise, *In re McBride*, 337 B.R. 451 (Bankr. N.D.N.Y. 2006) also involved a secured creditor, whose claim was satisfied by surrender of the collateral, seeking an amendment to assert an unsecured deficiency claim and capture additional recoveries.

25.     And all the other cases cited by the FTX Debtors involve a change from unsecured to secured status, which raises prejudice and waiver issues not applicable here.  *See, e.g., In re National Merchandise Co., Inc.*, 206 B.R. 993, 1000 (Bankr. M.D. Fla. 1997) (not permitting an amendment from unsecured to secured); *In re Brown*, 159 B.R. 710, 717 (Bankr. D. N.J. 1993) (analyzing proposed amendment from unsecured to secured, and finding equity favors permitting the amendment).  And despite that, courts still often grant such amendments to achieve secured status.  *See id.*; *In re Quesos Del Pais La Esperanza, Inc.*, No. 18-06529, 2020 Bankr. LEXIS 1109, at *17 (Bankr. D.P.R. Apr. 23, 2020).

26.     Moreover, when FTX wanted to argue that the Original POC is unsubstantiated, it actually took the position that the claim did *not* indicate its priority or character: "3AC did not indicate the alleged factual predicates, *amount, priority, or character of the 3AC Claims*." *Debtors' Objection to Proofs of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd.* [D.I., 19797], at ¶ 17.  Just as with changing its position about whether the Original POC was liquidated, FTX should be estopped from changing this position as well.

## III.    FTX HAS NOT SHOWN THAT EQUITABLE FACTORS DO NOT SUPPORT THE AMENDMENT

A.     *FTX does not dispute that the Amended POC's new legal theories all relate to facts the Joint Liquidators did not know before the Bar Date*

27.     As explained in the Motion, the new legal theories asserted in the Amended POC all arise from information that FTX produced, and legal positions it took, after the filing of the Original POC.  Notably FTX does not dispute this.  These new legal theories are appropriate because they are based on newly-discovered facts.

28.     The 3AC Debtor's claims for breach of contract, breach of trust and fiduciary duty, and proprietary restitution claims are based FTX's assertion that its commingling of the 3AC

Debtor's assets destroyed its ownership interest in such assets, which FTX contractually promised in the May 2022 Terms of Service that FTX claims governs the parties' legal relationship.

29.     The 3AC Debtor's undervalue transaction claim[10] and the corresponding breach of contract claim are based on new evidence showing that FTX appropriated the proceeds from approximately $701 million of the 3AC Debtor's assets purportedly in satisfaction of a liability in that amount.  Yet FTX admitted at its deposition that it has no evidence that (i) the 3AC Debtor owed any such $701 million unknown liability, R. Gordon Depo. Tr. at 254:15-256:17, (ii) the 3AC Debtor received any value in exchange for FTX's taking of those assets, *id.* at 209:10-211:15, and (iii) the 3AC Debtor was in violation of any margin or collateral requirements at the time of appropriating these assets, *id.* at 113:20-114:17, 115:5-18, 145:14–18.

30.     Importantly, FTX does not dispute *any* of these facts.

B.      *The Joint Liquidators did not have the information necessary to file the Amended POC before the Bar Date, so there was no unjustifiable delay*

31.     Any "delay" in amending the POC is justifiable.  Before FTX's bankruptcy, the Joint Liquidators asked FTX for the critical transaction history, *i.e.* "records of transaction history" (Beller Decl. Ex. D, at FTX_3AC_000001234). FTX responded with information it claimed was the "transaction history of Three Arrows Capital".  *Id.* In fact, despite the Joint Liquidators asking for the relevant information, it turns out FTX did not provide it.   Shortly after that the Joint Liquidators started to learn there were deficiencies in the data provided and began asking targeted questions to find out what was missing, FTX filed for bankruptcy and blocked the Joint Liquidators' access to the 3AC Debtor's accounts.  Crumpler Decl. at ¶¶ 32-34.  Notably FTX does not claim that the data FTX actually sent to the Joint Liquidators before FTX's bankruptcy

---

[10]     For the avoidance of doubt, because the Original POC did plead claims in the nature of "avoidance" actions, the Joint Liquidators dispute any contention that the undervalue transaction, which is the BVI law equivalent of a constructive fraudulent transfer claim, is based on a new legal theory not mentioned in the Original POC.

US-DOCS\156093061.9

suffced to assert the claims liquidated in the Amended POC.  It is undisputed that the data was vastly deficient, incomplete, and did not provide information sufficient to assert these claims. Crumpler Decl. at ¶¶ 29-33.

32.     FTX focuses instead on the Joint Liquidators' *access* to their FTX accounts before FTX's bankruptcy, suggesting that the Joint Liquidators should (and could) have downloaded that vast transaction history themselves.  But this argument fails to demonstrate "neglect" for two reasons.  First, access on the platform was essentially meaningless here, because it would have taken months if not years to download the transaction history, as data could only be downloaded in increments of 100 transactions.  Beller Decl., Ex. G at FTX_3AC_000008193 ("I am only able to download 100 transactions at a time. . . ."); *id.*, Ex. N ("[T]here is a limit to the number of data points we return per query."); *Downloading Your Transaction History*, https://support.ftx.com/hc/en-us/articles/24862737408532-Downloading-Your-Transaction-History ("You can download files with up to 200 lines of transactions . . . . Trades are listed as 2-3 line items to show the 2 sides of the order and the fee.").  The Joint Liquidators would have needed to access that entire history, as at that time they had no idea that any particular dates or transactions were particularly meaningful; and because the available data was in the form of discrete transactions, the Joint Liquidators needed the entire account history to reliably and fully reconstruct the 3AC Debtor's account position by asset and by day, and to determine what happened to those assets and when.  Crumpler Decl. at ¶¶ 32-33.  Even if the Joint Liquidators had undertaken this monumental task, they would have found themselves in the same position as the one FTX placed them in when FTX produced its gargantuan, undecipherable data dump of tens of millions of rows beginning in December 2023: *i.e.*, spending additional months to decipher the data.  Undertaking review of such vast volume of documents would certainly not be undue delay.

US-DOCS\156093061.9

*See In re Woodbridge Grp. Of Companies, LLC*, No. 17-12560, 2021 WL 5774217, at *11 (Bankr. D. Del. Dec. 6, 2021) (finding "the volume of records in [the claimant's] possession" as "persuasive" in accounting for the claimant's delay).

33.     Second, there was no reason for the Joint Liquidators to undertake this monumental task at that time because FTX had not filed for bankruptcy.  The only deadline the Joint Liquidators were facing at the time was the BVI's (at least) 6 year statute of limitations on avoidance claims.[11] At this time, the Joint Liquidators' overwhelming priority was identifying the 3AC Debtor's assets (without any books and records, or support from former management), securing them, and stabilizing the estate they were entrusted with as fiduciaries, where upon their appointment it appeared the 3AC Debtor had no liquid assets remaining.  The Joint Liquidators only had the luxury of turning to litigation claims as the estate stabilized, assets were brought into the estate, time permitted, and litigation deadlines approached.  Diverting critical resources to the task of manually downloading millions of lines of transaction data over months, without any reason to suspect there were meaningful claims against FTX, when the deadline to bring such claims was years away, would have made no sense.  Given that the fees being incurred in the 3AC liquidation were already well in excess of realizations, the Joint Liquidators could not have pursued this onerous project consistent with duty to act in the best interest of the 3AC Debtor's creditors.

34.     Indeed, the Joint Liquidators are unaware of any court decision denying an amendment because the creditor failed to investigate a claim *before* the debtor's bankruptcy filing. (In fact, as discussed below, there is no duty to investigate until a bar date is set.)

35.     FTX also points to a $700 million asset figure found in the May 2022 NAV Pack, which became available to the Joint Liquidators shortly before the Bar Date.  But the May 2022

---

[11]     *See* BVI Limitation Ordinance 1961, § 4.

NAV Pack failed to provide details to allege a $1.53 billion avoidance claim (or any liquidated claim amount) for at least three reasons. First, it did not identify what happened to the $700 million of assets, *i.e.*, whether they were properly transferred, whether these highly volatile assets had declined in value, or whether instead something wrongful occurred. Second, the $700 million was nowhere near the ultimate amount of assets sold in June 2022, such that any claim filed for this amount would have required an amendment to liquidate it regardless. Instead, the $700 million figure was only a snapshot of assets at an earlier time. Third and most critically, the NAV pack did not identify any liabilities other than the $120 million line of credit. The May 2022 NAV Pack did not identify the $1.3 billion of liability that FTX now asserts was satisfied by the sale of the assets at issue; instead it only identified $120 million of liability. It would have been impossible for the 3AC Debtor to properly allege a $1.53 billion preference claim based on that document.

36.    Instead, to liquidate the claim as done in the Amended POC, the Joint Liquidators needed to know what amount of assets (or their proceeds) were taken by FTX, and that those assets were used to satisfy liabilities. The May 2022 NAV Pack did not provide that information. And if the 3AC Debtor had so alleged, FTX would of course be arguing the exact opposite of its position today, asserting that the May 2022 NAV Pack were insufficient to allege a claim.

C.    *The Joint Liquidators only had a duty to investigate claims after FTX's filing of the claims bar date motion*

37.    FTX filed its motion to establish the Bar Date on May 3, 2023 (D.I. 1416), less than two months before the Bar Date. Prior to that filing, the Joint Liquidators had no obligation to spend their limited resources investigating theoretical litigation claims, as the only relevant deadline was BVI's 6-year statute of limitations. *See, e.g., In re Harbor Tank Storage Co.*, 385 F.2d 111, 114 (3d Cir. 1967) (finding creditor had "absolute right to file and prove its claim in the proceeding, despite the fact that the bar date had passed and the plan was confirmed" when creditor

had actual knowledge of the reorganization but did not have notice of the bar date); *accord In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 (1st Cir. 1974); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835 (11th Cir. 1989). *See also In re Twins, Inc.*, 295 B.R. 568, 573 (Bankr. D.S.C. 2003) (allowing a late-filed claim because the creditor was not served with notice of the bar date, despite having actual notice of the bankruptcy filing); *In re Maya Constr. Co.*, 78 F.3d 1395, 1399 (9th Cir. BAP 1996) ("The creditor who is not given notice [of the bar date], even if he has actual knowledge of the reorganization proceeding, does not have a duty to investigate and inject himself into the proceedings.").

38.     The Joint Liquidators were not facing any deadline (other than the six-year BVI statute of limitations) until the motion to establish the Bar Date was filed in May 2023.  In fact, in the months immediately after the FTX bankruptcy filing, there was no reason to believe FTX was even capable of immediately providing reliable information.[12]  FTX's then-newly appointed CEO, John Ray, declared shortly after the bankruptcy filing that "[n]ever in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here". (D.I. 24, at ¶ 5).  FTX's professionals were focused at the time on stabilizing their estate and establishing reliable books and records.  It is ironic that FTX is now asserting that the Joint Liquidators should have conducted early and aggressive discovery against FTX before there was any bar date, when FTX would have surely complained and resisted had they done so.

---

[12]     Indeed, FTX has admitted that there have been numerous discrepancies between its prepetition records and its customers' records (R. Gordon Depo. Tr. at 100:23-103:1); that its prepetition database has been shut down and that certain features are no longer available (*id.* at 25:13-26:25); that postpetition it has been unable to determine certain prepetition collateral criteria for the 3AC Debtor (*id*. at 108:20-25, 112:2-13); and that "3AC's FTX.com exchange account value and LOC balance in use at the time of the liquidation [*i.e.*, July, 14, 2022] is not readily determinable from the FX Exchange Data" (Goldberg Decl., Ex. 19, at p. 7).

US-DOCS\156093061.9

39.     Once the Bar Date motion was filed, the Joint Liquidators had less than two months to investigate claims against FTX.  They had just received the May 2022 NAV Pack, which provided a sufficient basis to allege that some preference had happened after the date of those packs.  As explained above, the Joint Liquidators had no compelling reason to initiate aggressive discovery in the limited time available given the lack any reason to suspect claims beyond the subject of the Original POC.  What they did instead was to email FTX describing the apparent situation to FTX and ask for "any documentation describing this purported lending relationship".  Goldberg Decl., Ex. 1 at page 1.  Nevertheless, even had the Joint Liquidators immediately served discovery on May 3, 2023, it is not credible that they would have received and then processed the vast information required to file the more detailed Amended POC.  If the Joint Liquidators immediately sought discovery under Bankruptcy Rule 2004 and obtained an order compelling discovery at the next omnibus hearing on June 8, 2023, the Joint Liquidators would have had precious little time to complete their investigation before the June 30, 2023 bar date.  FTX notably does not dispute that the data dump took enormous effort to process and was not understandable on its face.  In fact, its own corporate 30(B)(6) representative—a highly experienced Certified Public Accountant and financial advisor from A&M—admitted that he could not understand the data his own team produced to the 3AC Debtor without consulting an FTX developer.  Goldberg Decl., Ex. 14, 51:3-25.

40.     We do not need to guess whether the under-two-month window provided sufficient time for aggressive discovery, as we know how long it actually took FTX to respond to discovery. The reality is that it took FTX months to respond to discovery requests, and then even more months for the 3AC Debtor's liquidation team to be able to process and understand the resulting data dumps.

- On October 27, 2023, the Joint Liquidators' counsel emailed FTX with diligence requests pursuant to the parties' information sharing agreement. Goldberg Decl. at ¶ 13, Ex. 3.  FTX waited 52 days, until December 14, 2023, to begin producing documents, and did not complete that production until January 20, 2024 (85 days after the requests were sent).  *Id.* at ¶ 14.

- On January 19 and 22, 2024, the Joint Liquidators' counsel emailed FTX and requested a teleconference with FTX's financial advisor, and on February 7, 2024, the Joint Liquidators' counsel provided a list of specific questions to be discussed on the call concerning how to decipher the vast amounts of data that were produced.  Goldberg Decl. at ¶ 15, Ex. 4.  FTX said it could not meet in February because they "have a significant number of things happening in our cases".  *Id.*  Instead, FTX did not respond with their availability until a month later, on March 4, 2024, and the call finally took place on March 19, 2024, two months after the Joint Liquidators' request for a call.  Goldberg Decl. at ¶¶ 16-17, Ex. 5.

41.    There is thus simply no basis to believe (and FTX provides no evidence to support) that even if the 3AC Debtor had acted with lighting speed in requesting discovery in early May that it could have articulated the claims in the Amended POC by the very quick bar date.[13]

---

[13]    The history of FTX's other responses to document requests shows a similar timeframe, taking a couple of months to actually produce documents.  For example, on June 3, 2024, the Joint Litigator's counsel emailed FTX with additional document requests.  Goldberg Decl. ¶ 18, Ex. 6.  FTX did not respond at all.  *Id.* at ¶ 19. After a month of silence, on July 2, 2024, the Joint Liquidators' counsel followed up proposed Bankruptcy Rule 2004 requests.  Goldberg Decl. at ¶ 19, Ex. 7.  After FTX filed an objection to the Original POC, the Joint Liquidators re-served the July 2 discovery requests on July 10, 2024.  FTX only began producing documents nearly two months after the original requests, on July 26, 2024.

US-DOCS\156093061.9

42.     In fact, even today the Joint Liquidators are still in the process of seeking information from key individuals, including FTX and third parties.  For example:

- Despite the fact that FTX's corporate witness testified at deposition that he relied on a conversation with an FTX developer as the bases for FTX's testimony on several key topics, FTX's counsel—who represents that FTX developer—has refused to allow him to sit for a deposition until after the Court issues a ruling on this Motion.

- The Joint Liquidators have a pending motion for leave to seek discovery from three key witnesses—Sam Bankman-Fried, Caroline Ellison, and Ryan Salame—who FTX identified as having personal knowledge of the relationship between FTX and the 3AC Debtor.  [D.I. 28586].  Because all three individuals are in federal prison, leave is required to take their depositions.

- The Joint Liquidators also have a pending motion in the District of Colorado to serve by substitute service another key witness, Zane Tackett, who the FTX Debtors indicated has personal knowledge of the June 2022 transactions.   Gordon Depo. Tr. at 62:15-64:17, 241:9-24; *Debtors' Responses and Objections to The Joint Liquidators of Three Arrows Capital, Ltd.'s (i) Third Set of Interrogatories and (ii) Third Set of Requests for The Production of Documents*. At page 10..  During their repeated attempts to serve Mr. Tackett with a subpoena at his home—an address that was provided by FTX—the Joint Liquidators were informed by Mr.

22

Tackett's stepfather than Mr. Tackett is currently traveling abroad with no known return date.

- Finally, with respect to Nishad Singh, the only person with knowledge identified by FTX who is not incarcerated or out of the country, the Joint Liquidators have a pending request to Mr. Singh's counsel to accept service of a subpoena on his behalf.

43.     It is ironic that FTX complains that the Joint Liquidators did not act promptly enough, when in 2023 it had at its fingertips the answers to the Joint Liquidators' questions, but intentionally withheld it and instead dripped out a massive data dump.  In October 2023, in exchange for the 3AC Debtor agreeing to withdraw its pending coordination motion, FTX agreed to what was supposed to be an "informal information sharing period," where FTX would provide "reasonably available information" with respect to "(i) transactions between the FTX Debtors and 3AC, and (ii) trading history of the 3AC ftx.com customer accounts".  *See* Goldberg Decl., Ex. 3. A&M's October 2023 deck, and the information in it, were certainly readily available, and covered these exact topics.  But rather than providing this information through the informal information sharing process the parties agreed to, FTX waited months to provide a data dump instead; then slow-walked arranging a meeting needed to understand the data; then responded slowly to further informal and then formal discovery requests, withholding productions until threatened with motions to compel.  Whether intentional or not, FTX itself is the reason this claim amendment did not happen sooner.

D.     *FTX has not demonstrated prejudice by the amendment*

44.     Most importantly, FTX utterly fails to demonstrate prejudice, which FTX admits is "the critical consideration" for denying leave to amend.  *See Objection*, at ¶ 77.  FTX asserts, in conclusory fashion, that the requested amendment is prejudicial to it because it filed and negotiated

23

its plan without knowledge of the claims asserted in the Amended POC. But even if true (which it is not, as explained below), FTX provides no evidence of any resulting *prejudice*: it provides no evidence that the plan would have been formulated any differently if the Amended POC was instead filed on the Bar Date; no evidence that creditors would have voted any differently; and no evidence that allowing an amendment would affect a successful reorganization or the effectiveness of the plan in any way.

45.     Indeed, in its recent Reserve Motion seeking the establishment a disputed claims reserve, FTX stresses that more than a "sextillion" dollars in non-customer claims were filed (D.I. 28102, at ¶ 8), so it is not credible that another billion dollar disputed claim being filed a year earlier would have changed anyone's analysis. That is particularly so when FTX was assuring creditors in the press that this particular claim "has no merit and is desperate" and is "baseless".[14]

46.     Moreover, prejudice is further disproved here because FTX knew about the nature and magnitude of the transactions giving rise to Amended POC for over a year before confirmation, as evidenced by the October 2023 A&M presentation. And beyond that, FTX and the creditor body certainly knew the general magnitude of the claims by June 5, 2024, when the 3AC Debtor publicly filed its *Limited Objection and Reservation of Rights of the Foreign Representatives of Three Arrows Capital, Ltd.'s (in Liquidation) to the FTX Debtors' Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement* [D.I. 16817] (the "**Limited Objection**"). The 3AC Debtor's proposed disclosure therein was that it may amend its claims to be "hundreds of millions **or more**". Limited Objection, ¶ 5. "More" than "hundreds of millions" by definition is at least a billion. FTX notably did not mention the phrase "or more" when it discussed the

---

[14]     James Nani, *Three Arrows Ups Bankruptcy Claim Against FTX to $1.5 Billion*, Bloomberg Law (Nov. 13, 2024, 5:56 PM EST), https://news.bloomberglaw.com/bankruptcy-law/three-arrows-ups-bankruptcy-claim-against-ftx-to-1-5-billion ("The claim from the Three Arrows Capital liquidators has no merit and is desperate . . . . The FTX Debtors will address the baseless allegations with the Bankruptcy Court.").

Limited Objection.  *See* Objection, at ¶ 46 ("In their [Limited Objection], the Joint Liquidators stated, for the first time, that they had 'identified facts that may be the basis for the 3AC Claims to be asserted in the *hundreds of millions of dollars.*'") (emphasis in original).

47.      To be clear, the mere fact that creditor recoveries may go down if a claim is amended is not enough to constitute undue prejudice, or every claim amendment (presumably proposed because it will increase the change or amount of that creditor recovering) would be denied.  *See, e.g., Gens v. Resolution Trust Corp.*, 112 F.3d at 575 (1st Cir. 1997) ("Thus, something more than mere creditor disappointment is required to preclude amendment.").  Even FTX's own cases admit this.  *See In re Enron Corp*, 419 F.3d 115, 130  (2d Cir. 2005) (merely increasing the claim is not enough, but rather the amendment must jeopardize the reorganization, or require the return of distributed funds, or open a floodgate); *In re Brown*, 159 B.R. 710, 719 (Bankr. D.N.J. 1993)  (prejudice requires that other parties have changed their position in reliance on the original proof of claim).

48.      But even if decreased recoveries were enough, that type of "prejudice" is in fact impossible here.  Pursuant to the Reserve Motion (D.I. 28102), as a holder of a disputed claim the 3AC Debtor's recoveries on account of the Amended POC would be limited to the reserve amount, so the amendment cannot affect undisputed creditors.  As to disputed creditors, FTX set that reserve amount *after* FTX saw the draft Amended POC claims.  And with that knowledge, FTX has still assured the Court that the reserve will be sufficient to cover disputed claims with a substantial cushion.  See Reserve Motion, ¶ 13 ("The Reserve Amount is based on intentionally conservative assumptions and, as detailed in Exhibit 1 to the Coverick Declaration, includes approximately $3.4 billion of Disputed Claims over and above the amounts that the Debtors project

US-DOCS\156093061.9

will ultimately become Allowed Claims.").  The 3AC Debtor takes FTX at its word (and so has not objected to the Reserve Motion), but FTX's word must be true for both motions.

## IV.  THERE IS NO THIRD CIRCUIT RULE FOR A HEIGHTENED STANDARD FOR POST-CONFIRMATION AMENDMENTS

A.  *The Third Circuit Has Not Adopted a Heightened standard for Post-Confirmation Amendments*

49.  FTX's contention that post-confirmation amendments are subject to a heightened standard is not supported by the only two Third Circuit cases addressing applications for leave to amend proofs of claim.  Those cases are *In re Ben Franklin Hotel Associates*, 186 F.3d 301 (3d Cir. 1999) and *In re Trans World Airlines, Inc.*, 145 F.3d 124 (3d Cir. 1998).  The Third Circuit authorized the post-bar date amendments sought in both cases.  It stated that Rule 15 of the Federal Rules of Civil Procedure is the applicable standard to proof of claim amendments.  *In re Trans World Airlines, Inc.*, 145 F.3d at 141 ("Bankruptcy Rule 7015 provides that amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P. 7015, which commits the decision to grant or deny leave to amend to the trial court's sound discretion."). And to explain that Rule 15 standard, the *In re Trans World Airlines* court cited *Coventry v. United States Steel Corp.,* 856 F.2d 514 (3d Cir. 1988), which found that denial of leave to amend was an abuse of discretion when no prejudice was shown.  The Third Circuit court did not identify any heightened barriers for post-confirmation claim amendments, including in *In re Ben Franklin* where it approved a *post-confirmation* (indeed, apparently a post-effective date) claim amendment.

B.  *FTX's Cases do not support any heightened standard for post-confirmation but pre-effective date amendments*

50.  The FTX Debtors cite two decisions from the Seventh Circuit and Eleventh Circuit both of which (even if they applied) are readily distinguishable, including because both are actually about post-effective date (indeed post-consummation) amendments.

26

51.     In *Holstein v. Brill*, the Seventh Circuit reasoned that a claim filed four years after confirmation, five and a half years after the bar date, and after "substantial consummation" of the plan, is problematic because it "may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors." *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). Its analysis about confirmation being "equivalent to final judgment in ordinary civil litigation," and its references to a "substantially consummated plan," *id.* at 1271, make clear it was considering a post-effective date amendment. Likewise, in *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1057 (11th Cir. 2011), the court dealt with a post-effective date amendment, after the debtor had begun distributions, and the claims were released under the terms of the plan.[15]

52.     In other words, these courts reasoned that post-effective date amendments are more likely to cause *prejudice* by making a plan infeasible revoking claim releases, or clawing back distributions. But not only has the effective date (much less consummation) not occurred here, prejudice is simply non-existent under the present facts as discussed above, not least because the 3AC Debtor, as holder of a disputed claim, can only proceed against the disputed claims reserve FTX seeks to establish. According to FTX itself, that reserve includes "approximately ***$3.4 billion of Disputed Claims over and above*** the amounts the Debtors' project will ultimately become Allowed Claims." D.I. 28102, at ¶ 2 (emphasis in original). We know, based on FTX's assurances in the Reserve Motion, that amendment here would not make the plan infeasible or prevent any creditor from receiving less than a full recovery.

---

[15]     In addition, in *Winn-Dixie*, the creditor who was "in sole possession of the information regarding the amount of their claims" and offered "no reason for delay in amending those claims." *Id.* By contrast, in this case, the information regarding the amount of the claims set forth in the Amended POC was entirely in FTX's hands and not otherwise available to the Joint Liquidators for all practical purposes.

53.     The other cases FTX cites for the proposition that the Amended POC faces a heightened standard post-confirmation are also readily distinguishable. FTX cites *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022) for the proposition that post-bar date amendments are only permissible if (i) there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," and (ii) "it would be equitable to allow the amendment."  And in further reliance on *Mallinckrodt*, FTX argues that "a failure to pursue discovery with sufficient rigor—including bringing disputes to the court if necessary—is consistent with undue delay" sufficient to warrant denial of a post-bar date claim amendment.

54.     *Mallinckrodt* is readily distinguishable.  That case did not decide a motion for leave to amend a proof of claim.  *See* July 26, 2021 Hearing Tr. at 145:12-16, *In re Mallinckrodt Plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. July 23, 2021) ("[G]iven that no claims were asserted against the debtors in the proofs of claim that I am dismissing, any amendment at this point would in fact be a new claim against those debtors.  Because it's a new claim, it would require use of the excusable neglect standard in *Pioneer*.").  Instead, *Mallinckrodt* applied the excusable neglect standard to late-filed claims, and denied those claims on the basis of impact on the debtor's estate and, importantly, a finding of bad faith on the part of the claimants.[16]  These facts are plainly not present in the case at hand, where

- the Joint Liquidators are seeking leave to amend their claims;

---

[16]     *Id*. at 142:1-12. ("The strategy was obviously: file proofs of claim against as many debtors as possible in a corporate structure, assert that the proofs of claim constitute prima facie evidence of the validity of the claims, force the debtors to object due to the destruction caused to the debtors' plan of reorganization process, thereby gaining leverage against the debtors, then seek discovery on the claims in the hope of finding facts to support them. Those actions constitute bad faith and an abuse of the claims process established by the bankruptcy code and the bankruptcy rules. Therefore, I will sustain the objections to the claims and they will all be dismissed.").

28

- the Joint Liquidators (as fiduciaries of an estate) alleged those claims that the facts then known to them supported, and did *not* allege claims where they had not yet found such facts;

- it is FTX who is ironically suggesting that the Joint Liquidators should have stretched to allege broader claims than the available facts supported; and

- the Joint Liquidators vigorously pursued discovery from FTX in good faith to liquidate their claims, both before *and* after FTX filed its objection to the Original POC.

55.     In *In re Exide Technologies*, 601 B.R. 271 (Bankr. D. Del. 2019), cited by FTX, the court did address a post-effective date amendment.  The creditor argued that its third amended complaint related back to the original proof of claim such that the claims would not be subject to the plan's discharge injunction.  The amended complaint was based on admissions of guilt regarding violations of environmental laws, which admissions were made by the debtor pursuant to a non-prosecution agreement approved by the court prior to the assertion of the third amended complaint.  The court (i) found the amendment did not relate back (which as discussed above, the Amended POC does), and (ii) the amendment after the *effective date* would prejudice the debtor and its creditors for entering into the court-approved non-prosecution agreement without prior knowledge of the creditor's intent to bring further claims based on that agreement. *Id.* at *3. This kind of prejudice is simply not present here, as discussed above.

56.     FTX also cites *In re NextMedia Group Inc.*, 2011 WL 4711997, at *3 (D. Del. 2011).  But the court there discussed the standard for post-*effective* date amendments; even then said the standard was only "good cause"; noted that the Third Circuit "does not appear to have addressed the issue"; was concerned about res judicata because the plan itself provided that upon

effectiveness all claims are waived even if a proof of claim had been filed; and claimant's reason for not amending by the effective date was "basically, that they forgot about it". These are plainly not the facts before the court in this case.

57.     Likewise, *In re G-I Holdings, Inc.*, 514 B.R. 720, 760-1 (Bankr. D.N.J. 2014) was actually about amendment after a plan has been *consummated*. *Id.* at 760.   There, the court found that the amendment did not relate back, and that the creditor was filing with a three year delay without articulating *any* explanation for such delay. *Id.* at 761.  Again, this is a far cry from the situation here, where FTX had in its hands a presentation providing the exact information the 3AC Debtor had just requested, but instead of providing the information slow-rolled a massive and hard to comprehend data dump, which is *the* reason the Amended POC was filed after the confirmation hearing.  That is hardly a basis to deny the Motion, particularly based on the absence of prejudice to any other party.

## CONCLUSION

58.     For the foregoing reasons and those set forth in the Motion, the Joint Liquidators respectfully request that that the Court overrule the Objection and grant the relief requested by the Motion together with such other relief as the Court deems just and proper.

*[intentionally left blank]*

Dated: December 9, 2024
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ John W. Weiss*
John W. Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
       jbarsalona@pashmanstein.com
       agambale@pashmanstein.com

– and –

Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
       adam.goldberg@lw.com
       nacif.taousse@lw.com

– and –

Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:   tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators of Three Arrows
Capital, Ltd. (in Liquidation)*

US-DOCS\156093061.9