IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF HENRY ANTHONY CHAMBERS IN SUPPORT OF DEBTORS' AMENDED OBJECTION TO PROOFS OF CLAIM FILED BY SETH MELAMED AND MOTION FOR SUBORDINATION**

I, Henry Anthony Chambers, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

**Qualifications**

1. I am a Managing Director employed by Alvarez & Marsal ("A&M"), part of a global professional services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, financial and operational restructuring.

2. I have over 14 years' experience in professional services, including disputes, investigations, restructuring and insolvency matters. I am a chartered accountant with the Institute of Chartered Accountants England and Wales and I hold a BSc in Economics.

3. Since joining A&M, I have been involved in numerous restructuring and insolvency matters, including Genting Hong Kong, Noble Resources, China Evergrande and Sino-Forest.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Background**

4. I submit this declaration (the "Declaration") in support of *Debtors' Amended Objection to Proofs of Claim Filed by Seth Melamed and Motion for Subordination* (the "Objection"), filed concurrently herewith, to place before the Court certain documents and information referred to in the Objection.

5. I am not being compensated separately for this testimony other than through payments received by A&M as financial advisor retained by FTX Trading Ltd. ("FTX") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors").

6. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and/or information provided to me by A&M professionals involved in advising the Debtors in the above-captioned cases (the "Chapter 11 Cases"). If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

7. Prior to the commencement of the Chapter 11 Cases, Seth Melamed was the Chief Operating Officer ("COO") and a representative director of FTX Japan Holdings K.K. ("FTX Japan Holdings"), and a director of Quoine Pte Ltd. ("Quoine"). Prior to becoming COO of FTX Japan Holdings, Melamed was COO and a shareholder of Liquid Group, Inc. ("Liquid"). FTX acquired Liquid on April 4, 2022, following which, it was renamed FTX Japan Holdings in June 2022. FTX Japan Holdings, through its wholly owned subsidiaries FTX Japan K.K. and Quoine, operated FTX Japan, Liquid Japan, and Liquid Global cryptocurrency exchanges.

**The Liquid Exchange Security Breaches and FTX's Loan to Liquid**

8. Liquid Japan and Liquid Global (operating together as the "Liquid Exchange") suffered multiple security breaches while Melamed was a leader in the operations function, including while he was Chief Operating Officer.

9. For example, whilst Melamed was Chief Operating Officer, on or about August 18-19, 2021, hackers took control of the Liquid Exchange's cryptocurrency warm wallet. The hackers were able to access the wallet because Liquid executives, including Melamed, had not implemented adequate controls to ensure the security of the wallet's back up key. As a result of this failure, hackers compromised the Liquid Exchange's cryptocurrency warm wallet and stole over $95 million in digital assets. The Liquid Exchange subsequently recovered approximately $15 million.

10. In order to cover this loss, on August 20, 2021, Melamed approached FTX's founder and Chief Executive Officer Samuel Bankman-Fried for a possible investment or acquisition of Liquid. After discussions on or about August 21, 2021 and August 22, 2021 Bankman-Fried and Melamed agreed on short-term financing. Less than two weeks after the hack, Liquid entered into a loan agreement with FTX in the amount of $120 million. A true and correct copy of the loan agreement is attached hereto as Exhibit 1. While negotiating the short-term financing, Bankman-Fried and Melamed also began discussing the terms of an acquisition of Liquid by FTX.

**Melamed's Transfer of $11 Million in Cryptocurrency Assets to FTX**

11. In the summer of 2022, Quoine and FTX developed a plan to, amongst other things, migrate certain Quoine customer accounts to FTX.com. The plan did not mention sending

a customer's cryptocurrency assets to FTX.com before the customer account was migrated.

12. Between October 22 and November 1, 2022, Melamed directed the transfer of almost $11 million[2] of cryptocurrency assets to FTX.com in advance of the migration of Quoine customer accounts. A true and correct copy of the asset transfer records are attached hereto as Exhibit 2.

13. However, Melamed did not transfer custody of the majority of Quoine's customer accounts to FTX, nor do I understand that Melamed informed Quoine's customers that he was transferring cryptocurrency assets that backed their accounts to FTX in advance of the migration of their customer account. As a result, Quoine remained responsible for the majority of customer liabilities despite no longer holding the cryptocurrency assets transferred to FTX.com.

14. Melamed's transfer of cryptocurrency assets to FTX.com prior to the customer account migration separated cryptocurrency assets from the legal entity that held the customer liabilities. If Melamed had instead transferred customers' assets only when the customer's account was migrated to the FTX.com exchange, Quoine would likely not have been left with a mismatch between cryptocurrency assets and customer liabilities.

**FTX Japan K.K. Forced to Suspend Business by the Japan Financial Services Agency**

15. On or about November 10, 2022, the Japanese Financial Services Agency required FTX Japan K.K to suspend business as a result of, amongst other things, the cessation of withdrawals from its exchange and concern over the credit status of FTX.

---

[2] The $11 million value is calculated using this Court's *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order").

16. The withdrawal suspension lasted until late February 2023. The first day it was lifted, FTX Japan users withdrew over $20 million[3] in cryptocurrency and fiat assets from the exchange.

17. Ultimately, the Debtors decided it was not a prudent use of estate assets to restart FTX Japan's operations. The Debtors sold FTX Japan K.K. in a competitive process for a small fraction of what FTX paid Melamed and others for their interests in Liquid.

\*     \*     \*

18. In addition to the documents referenced above, attached hereto as Exhibit 3 is a true and correct copy of the Agreement for the Sale and Purchase of Shares, Stock Options, and Warrants in Liquid (Majority Shareholders) between Melamed and FTX, et al., dated November 19, 2021.

19. Attached hereto as Exhibit 4 is a Side Letter Agreement between Melamed and FTX dated November 19, 2021.

20. Attached hereto as Exhibit 5 is the Management Agreement between FTX Japan Holdings and Melamed, dated October 19, 2022.

21. Attached hereto as Exhibit 6 is an English translation of an email chain between Melamed, Jen Chan, and others, dated September 15 to September 28, 2022.

\*     \*     \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

---

[3] The $20 million value is calculated using the Estimation Order.

Executed on:  December 09, 2024        */s/ Henry Anthony Chambers*
                                                    Henry Anthony Chambers
                                                    Alvarez & Marsal
                                                    Managing Director