# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| MACLAURIN INVESTMENTS LTD., f/k/a ALAMEDA VENTURES LTD.,<br><br>    Plaintiff,<br><br>- against -<br><br>WORKPLAY VENTURES LLC and QL VENTURES LLC,<br><br>    Defendants. | Adv. Pro. No. 24-_____(JTD) |

### COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, AND PROMISSORY ESTOPPEL

Plaintiff Maclaurin Investments Ltd., f/k/a Alameda Ventures Ltd. ("Maclaurin Investments"), through its undersigned counsel, for its complaint against Workplay Ventures LLC ("Workplay") and QL Ventures LLC ("QL Ventures") (together, "Defendants"), alleges the following based upon personal knowledge and its investigation to date as to itself and its own acts, and upon information and belief as to all other matters:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**NATURE OF THE CASE**

1.  This adversary proceeding relates to the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case"), by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor").

2.  Plaintiff Maclaurin Investments, a Debtor in the above-captioned Chapter 11 Cases, brings claims against Defendant Workplay for breach of contract and, in the alternative, promissory estoppel, and against Defendant QL Ventures for tortious interference with contract.

3.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). No trustee has been appointed for Plaintiff or any other Debtor in the Chapter 11 Cases, and the Debtors continue to operate their businesses and to manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Chapter 11 Cases was authorized by the Court by an order entered on November 22, 2022 [D.I. 128]. Accordingly, Plaintiff has the authority to file this complaint to commence, and thereafter to prosecute, this adversary proceeding.

4.  This complaint concerns a contract formed between Plaintiff and Workplay in October 2024 during a competitive auction of certain cryptocurrency assets owned by Plaintiff. Galaxy Digital Capital Management LP ("Galaxy"), on behalf of Plaintiff, invited Workplay and others to submit a bid for certain locked Worldcoin tokens ("WLD Tokens"), subject to specific written terms and conditions. On October 23, 2024, Workplay accepted the written terms and conditions and submitted a bid to purchase 4,065,041 WLD Tokens for $1.23 per token, for a total of $5 million (the "Binding Workplay Bid" or the "Bid"), which Plaintiff accepted on October 24,

2024. Following Plaintiff's acceptance of the Binding Workplay Bid, the market price of unlocked Worldcoin tokens declined.[2] On October 25, 2024, Workplay asked Galaxy if it could "change [its] bid" from $5 million to $2 million. The terms and conditions did not permit any such modification of the Binding Workplay Bid, and instead provided that the Bid remained valid until accepted or until a date certain that had not yet passed. Through Galaxy, Plaintiff immediately informed Workplay the Bid could not be "changed at this stage." Later that same day Workplay then purported to "withdraw" its Binding Workplay Bid, in clear breach of the terms and conditions Workplay had accepted when it submitted the Bid, and Workplay did not perform its remaining contractual obligations.

5. Plaintiff undertook to mitigate its damages caused by Workplay's breach of contract and, on October 25, 2024, sold the 4,065,041 WLD Tokens to the next highest bidder for $1.155 per token (as compared with the $1.23 per token price of the Binding Workplay Bid) for a total of $4,695,122.36, which was $304,878.08 less than the $5 million Workplay was obligated to pay Plaintiff in accordance with its contractual obligations.

6. Plaintiff later learned QL Ventures would have been the purchasing party if Workplay had not withdrawn its Binding Workplay Bid and breached its contractual obligations. Upon information and belief, QL Ventures directed Workplay to breach its contractual obligations to Plaintiff and thereby tortiously interfered with the contract between Plaintiff and Workplay.

---

[2]   Token unlocks refer to the release of previously locked tokens into circulation, making the tokens available for trading and selling. The price of locked Worldcoin tokens, as were bid for here, is correlated to, and moves directionally the same way as, the price of unlocked Worldcoin tokens. On October 23, 2024, the day Workplay submitted its Binding Workplay Bid, the closing price of unlocked Worldcoin tokens was $2.2071 per token. The closing price on October 24, 2024, after Plaintiff accepted the Binding Workplay Bid, was $2.1929. And on October 25, 2024, when Workplay attempted to lower its Binding Workplay Bid from $5 million to $2 million, and then withdrew its Binding Workplay Bid, the price hit a daily low of $1.8398 and closed at $1.9205.

7. Accordingly, Plaintiff seeks to recover $304,878.08 in damages it suffered in connection with the events described above.

## THE PARTIES

8. Plaintiff Maclaurin Investments is an International Business Company organized under the Laws of the Republic of Seychelles, and is a Debtor in the above-captioned Chapter 11 Cases.

9. Defendant Workplay is a California limited liability company.

10. Defendant QL Ventures is a Delaware limited liability company.

11. Defendants share a registered agent and principal address at 3450 Sacramento St. #722, San Francisco, CA 94118. Upon information and belief, Defendants operate as investment firms.

## OTHER RELEVANT PERSONS

12. Galaxy is a limited partnership organized and existing under the laws of Delaware. Galaxy is a registered broker-dealer and investment advisor authorized to stake, hedge, and sell Debtors' cryptocurrency assets.

13. BitGo, Inc. ("BitGo") is a company incorporated in Delaware. BitGo is a digital asset trust company providing custodial services for Debtors' cryptocurrency assets.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

15. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(2)(A), (E), and/or (O), and the Court may enter final orders herein.

16. Venue in this District is proper pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in, or relates to, cases commenced under Chapter 11 of the Bankruptcy Code, and is consistent with the interests of justice, judicial economy, and fairness.

17. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL ALLEGATIONS

**I. Defendant Workplay Submits a Binding Bid for WLD Tokens.**

18. On September 13, 2023, the Court entered the *Order Authorizing FTX Trading Ltd. to Enter Into, and Perform Its Obligations Under, the Investment Services Agreement* [D.I. 2504] (the "IMA Order") authorizing and approving procedures for the sale or transfer of certain coins, tokens, and other digital assets by Galaxy on behalf of Debtors. On February 8, 2024, the Bankruptcy Court entered into the *Order Authorizing FTX Trading Ltd. to Enter Into, and Perform Its Obligations Under, the Letter Agreement to Second Amended and Restated Services Agreement* [D.I. 7136] (the "Amended IMA Order").

19. On October 22, 2024, Workplay received an e-mail invitation from Galaxy to participate in a bidding process (the "Bid Solicitation") related to the sale of certain locked WLD Tokens owned by Plaintiff.

20. The Bid Solicitation contained in the body of the email set forth numerous terms and conditions related to the submission of bids for the WLD Tokens, and also referenced and attached a form Cryptocurrency Purchase and Sale Agreement (the "CPSA") and BitGo's

Custodial Services Agreement (the "Custodial Services Agreement"), both of which contained additional terms and conditions. The terms and conditions set forth in the body of the email, the CPSA, and the Custodial Services Agreement are referred to collectively herein as the "WLD Sale Procedures." *See* **Exhibits A**, **B** and **C**.

21.     Pursuant to the terms and conditions in the body of the email, any bidder was required to indicate in writing its acceptance of the terms of the CPSA at the time of submitting a bid, by stating "Yes" next to the phrase "Acceptance of the Form CPSA" in a template bid information table provided for the purpose of submitting bids. Prospective bidders were also required to submit their bids by no later than 8:00 p.m. on October 23, 2024. Any party submitting a bid for WLD Tokens had to acknowledge and agree that its bid remained binding until the earlier of (i) acceptance of the bid by the Debtors; or (ii) October 24, 2024 at 6:00 p.m.

22.     The CPSA terms required successful bidders to cooperate with Plaintiff, BitGo, and Galaxy in the completion of any procedures the parties may reasonably request to facilitate: (i) the "know-your customer" process (the "KYC Process"), and (ii) the settlement of the transfer of the WLD Tokens to the bidder's cryptocurrency wallet. Pursuant to the CPSA terms, the successful bidder was obligated to pay Plaintiff the successful bid price (the "Purchase Price") by transfer of immediately available funds within five days following the later of (i) the date of execution of the CPSA, and (ii) notification to each of BitGo and Galaxy of the completion of all applicable KYC Procedures.

23.     Over the course of October 22 and 23, 2024, Galaxy and Workplay engaged in discussions about the bidding process, and Galaxy answered questions Workplay had about the process. On October 23, 2024 at 7:40 p.m., Workplay submitted a bid in accordance with the WLD Sale Procedures for the purchase of 4,065,041 WLD Tokens at a bid price of $1.23 per token

for a total consideration of $5 million. As part of that submission, Workplay confirmed its acceptance of the form CPSA by indicating "Yes" in the bid information table.

24. On October 24, 2024 at 11:24 a.m., Galaxy, on behalf of Plaintiff, accepted the Binding Workplay Bid in writing. Once accepted, the Binding Workplay Bid, together with the WLD Sale Procedures, formed a binding contract (the "Binding Contract"), and Workplay was obligated under the CPSA to complete any procedures reasonably requested by Plaintiff, Galaxy, and BitGo to facilitate the KYC process and the settlement of the transfer of WLD Tokens to Workplay. The acceptance email outlined these next steps, which included (i) confirming the legal name of the purchasing entity; (ii) executing and returning the CPSA by October 25, 2024; (iii) executing the Custodial Services Agreement; (iv) completing the Galaxy KYC process; (v) completing the BitGo KYC process, and (vi) submitting payment within five calendar days after execution of the CPSA and the completion of all KYC processes (collectively, the "WLD Closing Procedures").

25. The WLD Closing Procedures requested by Plaintiff, Galaxy, and BitGo were reasonable. In fact, the WLD Closing Procedures were common for Galaxy's cryptocurrency purchase and sale transactions.

26. On October 24, 2024, after accepting the Binding Workplay Bid, Galaxy emailed all other prospective bidders to inform each one that its "bid was not selected by the FTX Debtors as a winning bid" because the bids were "below other accepted bid prices."

**II.   As Market Prices of WLD Tokens Decline, Workplay Tries to Lower Its Binding Workplay Bid and Then Withdraws It Altogether.**

27. On October 25, 2024, at 4:44 p.m., Workplay responded to Galaxy by asking if it could "edit" the CPSA, which Galaxy informed Workplay it could not do. Workplay then asked

if it could "change [its] bid" from $5 million to $2 million. Galaxy denied Workplay's attempt to unilaterally modify its already accepted bid. Workplay then declared, without any basis in the WLD Sale Procedures or any other basis, that it was "withdrawing" the Binding Workplay Bid.

28. Between October 23, 2024, when Workplay submitted its Binding Workplay Bid for $5 million, and October 25, 2024, when it attempted to unilaterally modify the bid to $2 million, the price of unlocked Worldcoin had trended downward from a closing price of $2.2071 per token to $1.9205 per token.

29. Workplay did not perform its remaining contractual obligations pursuant to the WLD Sale Procedures to complete any of the several WLD Closing Procedures: Workplay did not confirm the legal name of the purchasing entity; Workplay failed to execute the CPSA by October 25, 2024, and Workplay did not complete either BitGo's or Galaxy's KYC processes.

30. As a result of Workplay's breach of the Binding Contract, on October 25, 2025, Plaintiff sold the WLD Tokens to the next highest bidder for $4,695,122.36, which was $304,878.08 less than Workplay was obligated to pay Plaintiff in accordance with its contractual obligations.[3]

31. On October 28, 2024, Plaintiff's consultant informed Workplay via email that Workplay was in breach of the WLD Sale Procedures and asked Workplay to confirm it would remit a wire transfer in the amount of $284,552.87.[4] On November 2, 2024, Plaintiff's counsel followed that email with a letter to Workplay explaining that Workplay was in breach of the WLD

---

[3] Amount calculated as the difference between the Binding Workplay Bid of $1.23 and the price paid by the next highest bidder of $1.155 *multiplied by* 4,065,041 WLD Tokens (i.e. ($1.23-$1.155) * 4,065,041) = $304,878.08.

[4] At the time this email was sent, Plaintiff's consultant had calculated the difference based on a rounded-up purchase price of $1.16 per token.

Sale Procedures, and Plaintiff would commence an action against Workplay if it did not remit $304,878.08 to the Debtors by November 8, 2024.[5] Workplay did not remit the payment by that date.

32. Instead, on November 8, 2024, QL Ventures' counsel responded to Plaintiff's counsel by email. Through this communication, Plaintiff became aware that QL Ventures "would have been the purchasing entity" for the WLD Tokens for which Workplay had submitted a Binding Workplay Bid to purchase. Upon information and belief, QL Ventures directed Workplay to withdraw its Binding Workplay Bid on October 25, 2024 and to not complete the WLD Closing Procedures, in violation of the WLD Sale Procedures.

**COUNT ONE
BREACH OF CONTRACT
UNDER DELAWARE COMMON LAW
(AGAINST WORKPLAY)**

33. Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 as if fully set forth herein.

34. On October 23, 2024, Workplay submitted a Binding Workplay Bid pursuant to the WLD Sale Procedures to purchase 4,065,041 WLD Tokens for $5 million. As part of the Bid, Workplay indicated that it assented to the terms and conditions of the CPSA.

35. Galaxy, on behalf of Plaintiff, accepted Workplay's Binding Workplay Bid on October 24, 2024, forming the Binding Contract.

---

[5] By the time this letter was sent, Plaintiff's consultant had calculated the difference based on the actual purchase price, $1.155 per token. This accounts for the difference between the $284,552.87 number originally cited as damages and the ultimate claim for $304,878.08.

36. On October 25, 2024, Workplay purported to "withdraw" its Binding Workplay Bid and later refused to fulfill its remaining contractual obligations pursuant to the WLD Sale Procedures to complete any of the several WLD Closing Procedures.

37. Plaintiff promptly took steps to mitigate its damages by selling the WLD Tokens to the next highest bidder for $304,878.08 less than Workplay had agreed to pay. Under its Binding Contract, Workplay should have purchased the WLD Tokens at a price of $1.23 per token for a total of $5 million. Plaintiff ultimately sold the WLD Tokens at a price of $1.155 per token for a total of $4,695,122.36. As a direct and proximate result of Workplay's breach of contract, Plaintiff has been damaged in the amount of $304,878.08.

### COUNT TWO
### TORTIOUS INTERFERENCE WITH CONTRACT
### UNDER DELAWARE COMMON LAW
### (AGAINST QL VENTURES)

38. Plaintiff repeats and realleges the allegations in paragraphs 1 through 37 as if fully set forth here.

39. A valid, binding contract exists between Plaintiff and Workplay.

40. When QL Ventures committed the acts set forth herein, it knew of the existence of the Binding Contract between Plaintiff and Workplay, because QL Ventures "would have been the purchasing entity" of the WLD Tokens under the executed CPSA.

41. QL Ventures knowingly and intentionally interfered with Plaintiff's contractual business relationship when it, upon information and belief, directed Workplay to withdraw its Binding Workplay Bid and to not perform its remaining contractual obligations pursuant to the WLD Sale Procedures to complete any of the several WLD Closing Procedures. QL Ventures has no legal right, privilege, or valid justification for its conduct. Workplay did in fact breach its

Binding Contract when it withdrew its Binding Workplay Bid and refused to perform its remaining contractual obligations pursuant to the WLD Sale Procedures to complete any of the several WLD Closing Procedures.

42. As a direct and proximate result of QL Ventures' intentional interference, Plaintiff has suffered monetary damages in the amount of $304,878.08, which Plaintiff is entitled to recover.

## COUNT THREE
## PROMISSORY ESTOPPEL
## UNDER DELAWARE COMMON LAW
## (AGAINST WORKPLAY)

43. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth here.

44. If the Court finds that there was no valid and binding contract, Plaintiff claims promissory estoppel in the alternative.

45. Workplay's submission of a bid pursuant to the WLD Sale Procedures constituted a material promise to Plaintiff that Workplay would, should its bid be accepted by Plaintiff, complete the WLD Sale Procedures, including the WLD Closing Procedures.

46. Workplay should have reasonably expected Plaintiff to rely on its promise. Workplay submitted a bid in an auction pursuant to, and in the form specified in, the WLD Sale Procedures. Workplay is a sophisticated party and had full knowledge that, under the WLD Sale Procedures, should its bid be accepted, Plaintiff would rely on the bid submission and expect it to complete the WLD Closing Procedures.

47. Plaintiff did in fact rely on Workplay's representation in the form of a bid submission, and this reliance was reasonable. Galaxy accepted Workplay's bid from among those

submitted and outlined the WLD Closing Procedures in its acceptance email to Workplay. Galaxy informed all other prospective bidders by email that their bids had not been selected as the winning bid. Based on Workplay's representation, Plaintiff reasonably believed Workplay intended to fulfill its promise to complete the WLD Sale Procedures, including the WLD Closing Procedures.

48. Workplay did not fulfill its promise to complete the WLD Closing Procedures and failed to close the transaction. As a result of Plaintiff's reliance on Workplay's promise, and on Workplay's failure to fulfill that promise, Plaintiff promptly took steps to mitigate its damages by selling the WLD Tokens to the next highest bidder for a lesser amount than Workplay had agreed to pay, and Plaintiff suffered direct and foreseeable damages in the amount of $304,878.08.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

49. Enter an order requiring Defendant Workplay to pay Plaintiff compensatory damages for breach of the Binding Contract, in the amount of $304,878.08;

50. In the alternative, enter an order against Defendant Workplay for damages in the amount of $304,878.08 pursuant to the doctrine of promissory estoppel;

51. Enter an order that Defendant QL Ventures tortiously interfered with the Binding Contract between Plaintiff and Defendant Workplay, and award damages to be paid in an amount to be determined by this Court;

52. Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

53. Award Plaintiff all other relief, at law or equity, to which it may be entitled.

| | |
|---|---|
| Dated: December 17, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Richard S. Cobb (No. 3157)<br>Matthew B. McGuire (No. 4366)<br>Howard W. Robertson IV (No. 6903)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>cobb@lrclaw.com<br>mcguire@lrclaw.com<br>robertson@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Stephanie Wheeler (admitted *pro hac vice*)<br>Stephen Ehrenberg (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: wheelers@sullcrom.com<br>ehrenbergs@sullcrom.com<br>gluecksteinb@sullcrom.com<br>dunnec@sullcrom.com<br>crokej@sullcrom.com<br><br>*Counsel for Plaintiff* |