**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket No. 28225 |
| | ) Hearing Date: January 23, 2025, at 10:00 a.m. (ET) |
| | ) Objection Deadline: December 18, 2024, at 4:00 p.m. (ET) |

**RESPONSE OF CLAIMANTS TO
DEBTORS' ONE HUNDRED THIRTIETH (NON-SUBSTANTIVE)
OMNIBUS OBJECTION TO UNVERIFIED CUSTOMER ENTITLEMENT CLAMS**

Customers with the unique ID codes of 00219293, 00526399, 09995619, 10199478 (superseding 10184444), and 01219970 (collectively, the "Claimants"), through their undersigned counsel, file this response (this "Response") to the *Debtors' One-Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [Docket No. 28225] (the "Claim Objection").[2] In support of this Response, the Claimants state as follows:

**Preliminary Statement**

1. Each Claimant was a customer of the Debtors as of the Petition Date and timely filed a valid proof of claim for its respective claim that appears in the Claim Objection (each, a "Subject Claim" and, collectively, the "Subject Claims"). Each Subject Claim was scheduled by the Debtors, is not unliquidated, contingent, disputed, or otherwise subject to an objection or

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Claim Objection.

avoidance action, and was stipulated for purposes of Plan voting. There is no dispute that each of the Subject Claims represents a valid claim against the Debtors.

2. The Claim Objection should be overruled as to the Subject Claims or, in the alternative, the proposed deadlines in the Claim Objection should be extended as they are not reasonable under the circumstances. Through the Claim Objection, the Debtors seek to impose burdens on valid creditors with uncontested claims that cannot be achieved in the timeframe set forth in the Claim Objection and which would result in the punitive consequence of the complete expungement of those valid claims. Liquidated, uncontested, and undisputed claims should not be expunged as a result of (a) a valid claimholder's inability to access or failure to navigate—within a very short timeframe after the effective date of the Plan—the portal system designed by the Debtors and their advisors (the "Portal") and/or (b) the delays and difficulties in processing and confirming a claimholder's "know-your-customer" ("KYC") information by the Debtors' hand-picked vendor, BitGo, particularly where no alternative is provided.

3. To access the Portal, a claimant must have both the original account log-in credentials and access to a device or application that can confirm what is known as a 2-factor authentication ("2FA") code. Without both the log-in credentials and the 2FA code, a claimant cannot access the Portal and complete KYC. Unlike the processes for filing claims and submitting ballots on the Plan, the Debtors have provided no alternate path to commence and complete KYC outside of the Portal. Even if a claimant gains access to the Portal and submits its KYC information by the proposed deadlines, a claim still could be expunged under the Claim Objection if BitGo fails to confirm KYC status in a timely manner, which is outside of the control of the creditor. Such an outcome is unfair to creditors generally and runs contrary to the core principles of the Bankruptcy Code.

4.      Such an outcome is also inequitable to the Claimants under these specific circumstances. The expungement of any Subject Claim is inequitable because the Claimants have nearly identical KYC information with affiliates that have Portal access and have already passed KYC for other claims. If the Portal were accessible to the Claimants or an alternative method of confirming KYC were provided, the Claimants are confident they could submit all required KYC information. That would, at minimum, start the KYC confirmation process in respect of the Subject Claims, although, as noted above, timely KYC clearance would still be reliant on BitGo, meaning the Subject Claims would unfairly remain at risk of expungement based on the conduct of a third-party.

5.      Moreover, one of the Claimants already has submitted KYC status for one of the Subject Claims, which submission currently remains pending with BitGo. Once KYC status is confirmed for that Subject Claim, that KYC confirmation should apply to every claim owned by the same Claimant, including those listed in the Claim Objection, without requiring that the same KYC submission for the same Claimant is repeated for each Subject Claim. To do otherwise would be unfair, prejudicial, and serve no purpose.

## Factual Background

6.      Each Claimant maintained a customer account with the Debtors as of the Petition Date. As such, each Claimant held a Customer Entitlement Claim as set forth in the table below. Each Subject Claim was scheduled and not unliquidated, contingent, disputed, or otherwise subject to an objection or avoidance action, and was stipulated for purposes of Plan voting purposes. There is no dispute that each of the Subject Claims represents a valid claim against the Debtors.

| Customer ID Number | Subject Claim Number | Page Number in Claim Objection |
|---|---|---|
| 00219293 | 71124 | Exhibit 2; Page 69 |
| 00526399 | 56084 | Exhibit 2; Page 235 |
| 09995619 | 84648 | Exhibit 2; Page 2,725 |
| 10199478 (superseding 10184444) | 80025 (superseding 71128) | Exhibit 2; Page 2,864 |
| 01219970 | 80024 | Exhibit 2; Page 534 |

7. To access the Portal, one must enter the pre-petition account login credentials. The Portal then sends a numeric code to a device or application that must then be entered into the Portal. This second step is referred to as 2FA. A claimant cannot access the Portal without both the log-in credentials and 2FA code. Once a claimant enters the correct log-in credentials and 2FA code, the Portal directs the claimant to a separate BitGo login page outside of the Portal where the claimant can submit KYC information.

8. Despite repeated, good faith efforts, including subsequent to the filing of the Claim Objection, the Claimants have been unable to access the Portal for three of the Subject Claims (numbers 71124, 80024, and 80025). For these Subject Claims, the Claimants do not have access to the necessary log-in credentials or 2FA code. The inability to access the Portal means the Claimants cannot submit or verify KYC in respect of these three Subject Claims.

9. The process for resetting the log-in credentials and 2FA device is difficult and time-consuming. Even if Portal access is eventually obtained and KYC information promptly submitted, it may still take months for BitGo to review and approve the KYC information. The proposed deadlines in the Claim Objection do not offer sufficient time under these circumstances, especially when many thousands of claims appeared in the Claim Objection as "Unverified Claims," presumably a significant number of which will, as a result of the Claim Objection, be pursuing KYC confirmation from BitGo simultaneously in the short period of time proposed in the Claim

Objection. Claims cannot be expunged on the sole ground that a third-party failed to verify KYC by a deadline imposed by the Debtors.

10. For Subject Claim numbers 56084 and 84648, which are owned by the same Claimant, the Claimant has been able to access the Portal. According to the Portal and a message received from BitGo, KYC was successfully submitted by the Claimant in respect of Subject Claim number 56084. However, BitGo has not confirmed the KYC information has been verified and accepted for Subject Claim number 56084. Although Subject Claim number 84648 relates to a different account, the Claimant holding that Subject Claim is identical to Subject Claim number 56084. Since these two Subject Claims are owned by the same Claimant, the KYC information and BitGo verification process would be identical.

11. Once KYC information is submitted, the timetable for BitGo to confirm KYC status is unclear.

**Argument**

12. The Claim Objection should be overruled as to the Subject Claims or, in the alternative, the proposed deadlines to complete KYC should be extended as they are not reasonable under the circumstances. Through the Claim Objection, the Debtors seek to impose burdens on valid, lawful creditors, including the Claimants, that cannot be achieved and are doomed to fail. The Debtors own specially designed Portal presents access challenges if log-in credentials are not locatable and/or need to be reset. Moreover, the KYC confirmation process involves a third-party vendor selected by the Debtors—BitGo—which can result in delays outside the control of the creditor. Valid claims should not and cannot be expunged as a result of a failure to navigate or inability to access the Portal, particularly where no alternative is provided.

13.     No Claim should be expunged due to BitGo's failure to timely confirm KYC status by June 1, 2025, when BitGo currently has the information it needs and BitGo's timeliness is outside the control of creditors. The Debtors must either extend the proposed deadlines or provide an alternative method of completing KYC verification to account for the continued delays with the Debtors' designed and mandated system.

14.     Despite repeated, good faith efforts, the Claimants have been unable to access the Portal for three of the Subject Claims (numbers 71124, 80024, and 80025) because of a failure to locate log-in credentials and the 2FA code. As a result, at this time it is not possible for the Claimants to verify KYC in respect of these three Subject Claims through the Portal. The Debtors must provide an alternative method of confirming KYC status in such circumstance.

15.     For Subject Claim numbers 56084 and 84648, which are owned by the same Claimant, the Claimants have been able to access the Portal. According to the Portal and a message received from BitGo, KYC was successfully submitted in respect of Subject Claim number 56084, however, to date BitGo has not confirmed that the KYC information has been verified and accepted for Subject Claim number 56084. Although Subject Claim number 84648 relates to a different account, the Claimant holding Subject Claim number 84648 is identical to that holding Subject Claim number 56084. Once KYC is verified for Subject Claim number 56084, the KYC verification should apply equally to Subject Claim number 84648, but the Portal does not indicate that would be the case.  The same is true for Subject Claim number 80025 (superseding 71128), meaning the Claimant holding such Subject Claim is the same as the Claimant holding Subject Claim number 560684 and 84648. It would serve no purpose for the same Claimant to make multiple identical submissions of KYC information, to be reviewed by BitGo on different cycles.

16. An expungement of any Subject Claim under these circumstances is further inequitable because the Claimants have the same beneficial ownership and would be submitting nearly identical KYC information. The Claimants have already confirmed KYC status for other claims that are not Subject Claims. Completed KYC status should apply to all of the Claimants' claims, including the Subject Claims, since the KYC information is the same. But the Portal does not account for any circumstance where one Claimant owns multiple claims, and for KYC information to flow through to each of Claimant's claims.

17. The Debtors are unfairly seeking to use the Portal to harm creditors by expunging valid claims like the Subject Claims that cannot be verified solely as a result of the design and mechanics of the very Portal system the Debtors created and required creditors to use and the lack of any alternative method of confirming KYC status. The Claimants stand ready to provide the necessary KYC information as they have for other of their claims.

18. This is not like other cases where, after lengthy and varied efforts to make distributions to creditors, estate fiduciaries seek authority to disallow claims. Here, the Debtors constructed exactly one method that does not work very well or very quickly. The Claimants have all KYC information and are confident they will satisfy all requirements set forth in the Portal. However, their access has been unreasonably blocked. That should not give rise to the expungement of their claims. The Claim Objection should be overruled as to the Subject Claims and the Debtors should take alternate steps to ensure the Claimants (holders of valid claims subject to no substantive challenge) receive their distributions without unreasonable impediments.

**Conclusion**

WHEREFORE, the Claimants respectfully request that the Court overrule the Claim Objection as to the Subject Claims and grant such other relief as the Court finds just and appropriate.

Dated: December 18, 2024

        **SAUL EWING LLP**

By:   */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
Peter A. Siddiqui (admitted *pro hac vice*)
Elliott Bacon (admitted *pro hac vice*)
Ethan D. Trotz (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
peter.siddiqui@katten.com
elliott.bacon@katten.com
ethan.trotz@katten.com

*Attorneys for Claimants*