**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: January 23, 2025 at 10:00 a.m. ET<br>Obj. Deadline: January 6, 2025 at 4:00 p.m. ET |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER**
**AUTHORIZING THE DEBTORS' ASSUMPTION OF CERTAIN AGREEMENTS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors to assume the Master Loan Agreement, dated August 12, 2020 (the "Master Loan Agreement") and Initial Loan Confirmation-2 thereunder (the "Loan Confirmation," and together with the Master Loan Agreement, the "Agreements") between Alameda Research Ltd. ("Alameda") and Tai Mo Shan Limited ("Tai Mo Shan"), effective as of the date of entry of the Order (the "Assumption Date") and (b) granting related relief. In support of the Motion, the Debtors submit the *Declaration of Kumanan Ramanathan* (the "Ramanathan Decl."), and respectfully state as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Background**

1.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.  Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

**I.    Overview of the Master Loan Agreement**

3.  On August 12, 2020, Tai Mo Shan and Alameda entered into the Agreements. Under the Agreements, Alameda agreed to loan Tai Mo Shan a total of 800,000,000 Serum ("SRM") tokens on a specified schedule, with tokens "deliverable at a constant portion per day of approximately 547,945 tokens," starting on August 1, 2023 and running until August 1, 2027 (the "Loan"). Pursuant to the Loan Confirmation, Tai Mo Shan could repay the Loan at any time, either by providing SRM tokens in kind, or by paying a repayment price of $0.12 per borrowed

2

SRM token (the "Repayment Option Price").  Tai Mo Shan is obligated to repay the Loan to Alameda by August 12, 2027.

## II.   Tai Mo Shan's Claim

4.   On June 28, 2023, Tai Mo Shan filed Claim No. 5475 against Alameda.  Tai Mo Shan amended Claim No. 5475 in Claim No. 94967 on May 15, 2024, and again in Claim No. 95768 on July 3, 2024.  As amended, Tai Mo Shan's claim seeks damages in the amount of $289,675,711 from a purported breach of contract, which Tai Mo Shan alleges occurred when Alameda failed to begin delivering SRM to Tai Mo Shan on a daily basis beginning on August 1, 2023.

5.   Tai Mo Shan arrives at its purported $289,675,711 damages figure by using an "options model with the following inputs/assumptions:  the Petition Date price of SRM,[2] the Repayment Option Price, SRM's implied volatility, the time period at issue, and the risk-free rate at the Petition Date." *See* Claim No. 95768, at 2.

6.   Tai Mo Shan's purported "damages" bear no relation to any actual loss or opportunity cost that Tai Mo Shan has suffered.  During the period August 1, 2023 through the present, the price[3] of SRM has not exceeded $0.09849, and has averaged $0.043997—far below the strike price on the Loan Confirmation.  (Ramanathan Decl. ¶ 12.)  In other words, if Tai Mo Shan had received (and continued to receive) the SRM on the schedule set forth in the Agreements,

---

[2]   Tai Mo Shan's damages analysis uses $0.4063157 as the price of SRM as of the Petition Date, as opposed to the $0.3307410 price specified in the Court's Order. *See Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession (Solicitation Version) (related document(s)19068, 19139) Filed by FTX Trading Ltd.* [D.I. 19143] at 668; *Memorandum Opinion and Order regarding Estimation of Digital Asset Claims* [D.I. 19069]. Tai Mo Shan's damages analysis does not explain the basis for using this price, other than to note that it was at "Counsel's instruction." (Claim No. 95768, Exhibit A at 5, 11, 14.)

[3]   All SRM pricing referenced herein is based off the Coin Metrics Reference Rate, which represents the price of an asset as calculated by a pricing methodology developed by Coin Metrics

3

the value of that loaned SRM would at no point have exceeded the $0.12 Repayment Option Price set forth in the Agreements.

7. The Debtors possess sufficient SRM to comply with their obligations under the Agreements. (Ramanathan Decl. ¶ 14). Indeed, the Debtors are prepared to deliver all 800,000,000 SRM to Tai Mo Shan promptly upon assumption of the Agreements, which Tai Mo Shan would be free to transfer or otherwise use subject to the unlocking schedule set forth in the Loan Confirmation, thereby putting Tai Mo Shan in a better position than it would have been in if the Debtors had performed according to the Agreements' terms.

## Jurisdiction

8. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6006. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

9. By this Motion, the Debtors request entry of an Order, substantially in the form attached hereto as Exhibit A, (a) authorizing Debtor Alameda, in its sole discretion, to assume the

Master Loan Agreement and Loan Confirmation on the Assumption Date and (b) granting related relief.

### Basis for Relief

**III. Assumption and Assignment of the Contracts Reflects the Debtor's Business Judgment.**

10. Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365 "enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000).

11. The Bankruptcy Code does not define the term "executory contract," but the Third Circuit has characterized an executory contract as one "under which the obligation of both the bankrupt and the other party . . . are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (quoting Countryman, *Executory Contracts in Bankruptcy, Part 1*, 57 Minn. L. Rev. 439, 460 (1973)). In short, executory contracts are those contracts "on which performance is due to some extent on both sides." *N.L.R.B.* v. *Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6 (1984) (quoting H.R. Rep. No. 95-595, p. 347 (1977)). The Agreements constitute an executory contract because both the Debtors and Tai Mo Shan continue to have performance obligations under the Agreements.[4]

---

[4] To the extent the Agreements might be categorized as loan agreements, they are for the benefit of Tai Mo Shan, not the Debtors, and therefore are not prohibited from assumption under § 365(c)(2).

5

12. The assumption or rejection of an executory contract is subject to review under the business judgment standard. If a debtor has exercised "reasonable" business judgment, the court should approve the proposed assumption or rejection. *See*, *e.g.*, *NLRB* v. *Bildisco and Bildisco*, 465 U.S. at 523 (1984). Under the business judgment standard, a court should approve a debtor's business decision unless the decision is the product of "bad faith, or whim or caprice." *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (citations omitted).

13. Assumption of the Agreements is a valid exercise of the Debtors' business judgment. Tai Mo Shan's claim seeks a massive windfall based on a strained interpretation of an Agreement that would have never delivered such economic benefit to Tai Mo Shan. (*See* Claim No. 95768.) From the time of the first scheduled delivery in August 2023 through present, SRM tokens are and have been worth significantly less than the Repayment Option Price set forth in the Agreements (and just a small fraction of the price that this Court set for SRM tokens as of the Petition Date). The Debtors are able to satisfy the terms of the Agreements now, at almost no cost to the estate. By assuming the Agreements, the Debtors can deliver to Tai Mo Shan exactly what it was promised (and more) while avoiding costly litigation over the claimed $289,675,711 in damages. Accordingly, the Debtors submit that assumption of the Agreements is an appropriate exercise of the Debtors' business judgment and should be approved.

**IV.     The Requirements of Section 365 of the Bankruptcy Code are Satisfied.**

14. A debtor-in-possession may generally assume any executory contract or unexpired lease of the debtor, subject to court approval, if it (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, any applicable defaults and (b) provides adequate assurance of future performance under such contract or lease, including by its assignee. 11 U.S.C. § 365(b).

15. Bankruptcy Code section 365(b)(1) provides, in pertinent part, that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

16. Courts have held that "'[a]dequate assurance of future performance' are not words of art," but are "to be given practical, pragmatic construction." *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001). "What constitutes 'adequate assurance' is to be determined by factual conditions." *Id.* "[I]t is not intended, however, that any non-debtor party should acquire greater rights in a case under the [Bankruptcy Code] than he has outside the [Bankruptcy Code]." *Id.*

17. The Debtors recognize that they must cure or provide adequate assurance that they will cure any defaults under the Agreements (other than excepted defaults described in sections 365(b)(1)(A) and 365(b)(2) of the Bankruptcy Code) in order to assume and assign the Agreements. The Debtors are prepared to deliver the full 800,000,000 SRM contemplated under the Loan Confirmation upon assumption, which will fulfill all of the Debtors' obligations under the Agreements and cure any default.

18. By delivering the SRM tokens in full to Tai Mo Shan, no "pecuniary loss" exists. As of the Petition Date, the Debtors were not obligated to have delivered any SRM to Tai Mo

7

Shan. Under the terms of the Agreements, the Debtors were obligated to begin delivering SRM starting on August 1, 2023, at which time SRM was trading at approximately $0.09176. (Ramanathan Decl. ¶ 10.) At no point since August 1, 2023 has SRM's trading price exceeded (or even approached) the Repayment Option Price of $0.12, and as of the date of this motion, SRM is trading at approximately $0.04 (approximately 67% below the Repayment Option Price). (Ramanathan Decl. ¶ 11.) The Debtors submit that Tai Mo Shan has not suffered any pecuniary losses from the Debtors' failure to begin delivering SRM on August 1, 2023, and therefore that no cure payment is required to assume the Agreements.

19. Lastly, the Debtors possess sufficient SRM to make the Loan in full immediately, irrespective of the delivery schedule set forth in the Loan Confirmation. The Debtors are prepared to deliver the full 800,000,000 SRM contemplated under the Loan Confirmation upon assumption. This satisfies all of the Debtors' obligations under the Agreements, and is therefore more than adequate assurance of future performance under Section 365 of the Bankruptcy Code.

## Notice

20. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to the Ad Hoc Committee; (h) Tai Mo Shan; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

## No Prior Request

21. No prior motion for the relief requested herein has been made to this or any other Court.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an Order, substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as is just and proper.

Dated: December 23, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

<u>*/s/ Kimberly A. Brown*</u>
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Christian P. Jensen (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com
       jensenc@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*