# EXHIBIT 1

# MASTER LOAN AGREEMENT

This Master Loan Agreement ("***Agreement***") is made by and between  Alameda Research Ltd  ("***Lender***"), a British Virgin Islands company, and Tai Mo Shan Limited ("***Borrower***"), a Cayman Islands exempted company. Lender and Borrower are each individually a "***Party***," and collectively the "***Parties***."

## I.    Definitions.

"***Business Day***" means any weekday other than a U.S. Federal Reserve Bank holiday.

"***Central Time***" means, on a given date, Central Standard Time or Central Daylight Time, as applicable on such date.

***"Close of Business"*** means 7:00 pm Central Time.

"***Governmental Authority***" means any nation or government, any state or other political subdivision thereof, and any supra national, governmental, federal, state, provincial, local governmental or municipal entity and any SRO or other self-regulatory or quasi-governmental organization (including any exchange with authority over a Person pursuant to the listing of such Person's securities or VC) exercising executive, legislative, judicial, regulatory or administrative functions or pertaining to government (including, in each case, any branch, department or official thereof).

"***Late Fee***" has the meaning given in Section III(b).

"***Law***" means any and all (a) federal, territorial, state, local and foreign laws, ordinances, or regulations, (b) codes, standards, rules, requirements, orders and criteria issued under any federal, territorial, state, local or foreign laws, ordinances or regulations, (c) rules of an SRO (including the rules of any national securities or commodities exchange or foreign equivalent), and (d) any and all judgments, orders, writs, directives, rulings, decisions, injunctions, decrees, assessments, settlement agreements, or awards of any governmental, judicial, legislative, executive, administrative or regulatory authority of the United States of America, or of any state, local, foreign, or multinational government, or any government of any possession or territory of the United States of America, or any subdivision, agency, commission, office or authority of any of the foregoing.

"***Loan***" means a loan of VC or other assets made pursuant to and in accordance with this Agreement and as documented in a Loan Confirmation.

"***Loan Balance***" means, with respect to a given Loan, the sum of all outstanding amounts of Loaned VC, Loaned Assets, Loan Fees, and outstanding Late Fees, as defined and to the extent provided for in Section III.

"***Loan Confirmation***" means documentation of the Parties' agreement to the particular terms of a Loan, which shall be memorialized in a confirmation executed and delivered by each of the

Parties and which, (a) with respect to the initial Loan, is attached hereto as <u>Exhibit</u> and (b) with respect to any subsequent Loan hereunder, if any, shall be in a form agreed by the Parties.

"***Loan Documents***" means this Master Loan Agreement and any Loan Confirmation.

"***Loan Effective Date***" means, with respect to a given Loan, the date upon which the applicable Loaned VC and, if applicable, Loaned Assets are first delivered to Borrower, as set forth in the applicable Loan Confirmation.

"***Loan Fee***" has the meaning given in <u>Section III(a)</u>.

"***Loan Term***" means, with respect to a given Loan, the period from and including the Loan Effective Date for such Loan through and including the Maturity Date for such Loan.

"***Loaned Assets***" means, with respect to a given Loan, any assets (other than VC) transferred in such Loan by Lender to Borrower hereunder until such assets are repaid to Lender hereunder.

"***Loaned VC***" means, with respect to a given Loan, any VC transferred in such Loan by Lender to Borrower hereunder until such VC is repaid to Lender hereunder.

"***Maturity Date***" means, with respect to a given Loan, the date upon which such Loan becomes due and payable as set forth in a Loan Confirmation.

"***New VC***" means any VC distributed as a result of any fork, airdrop, or other subdivision of the VC protocol with respect to the VC that constitutes Loaned VC that occurs while a Loan of such Loaned VC is outstanding.

"***Person***" shall mean any individual, corporation, partnership, trust, limited liability company, association or other entity.

"***Prepayment Right***" means, with respect to a given Loan, the Borrower's option to repay the Loaned VC and/or Loaned Assets prior to the Maturity Date without incurring any additional fees.

"***SRO***" means a non-governmental entity that has been granted, pursuant to Law or by a Governmental Authority, executive, legislative, judicial, regulatory or administrative functions.

"***VC***" means a virtual currency.

"***VC Address***" means an identifier of alphanumeric characters that represents a digital identity or destination for a transfer of VC.

**II.    General Loan Terms.**

    (a)    <u>Loans of VC or Other Assets</u>.

2

(i) The Parties hereby agree to enter into the Loans set forth in the Loan Confirmation attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>.

(ii) The Parties may enter into one or more additional Loans as and when agreed by the Parties, as set forth with respect to each such Loan in a Loan Confirmation agreed to by the Parties pursuant to <u>Section II(b)</u>.

(b) <u>Additional Loan Procedure</u>. During the term of this Agreement, the Parties may agree to enter one or more additional Loans by executing and delivering applicable Loan Confirmations for such Loans. A Loan will only commence when Lender delivers the VC and other assets as specified in an agreed Loan Confirmation. Borrower may void any Loan Confirmation, and shall have no obligations thereunder, if Lender fails to deliver the VC and other assets by the deadline specified in the applicable Loan Confirmation.

(c) <u>Loan Confirmations and Precedence</u>. The Parties may agree to terms in any Loan Confirmation that are in addition to, or alter and change, any of the terms in this Agreement. The terms of a Loan Confirmation with respect to a given Loan shall take precedence over the terms of this Agreement in the event of any conflict or inconsistency between such Loan Confirmation and this Agreement.

(d) <u>Loan Repayment Procedure</u>.

(i) <u>Loan Repayment Upon Maturity Date</u>. Unless otherwise previously paid, including in accordance with <u>Section II(d)(ii)</u> or <u>Section II(d)(iii)</u> below, no later than the first Business Day that occurs on or after the Maturity Date with respect to a particular Loan, Borrower shall repay the entirety of the Loaned VC and Loaned Assets with respect to such Loan to Lender by the Close of Business on that day. Lender shall provide repayment delivery instructions in writing upon request.

(ii) <u>Prepayment Right</u>.

(A) For each Loan, Borrower shall have a Prepayment Right that Borrower may exercise in whole or in part. The date on which the Borrower repays all or a portion of the Loaned VC and/or Loaned Assets with respect to the applicable Loan shall be referred to as the "***Prepayment Day.***" There shall be no additional fees for exercise of a Prepayment Right.

(B) In the event of a prepayment of only a portion of the Loaned VC or Loaned Assets for a particular Loan, Borrower shall repay the relevant portion of the Loaned VC and/or Loaned Assets on the Prepayment Day and the remaining portion of the Loaned VC or Loaned Assets, as applicable, on the earlier of the Maturity Date or a subsequent Prepayment Day with respect to such portion of the Loan Balance, as applicable.

(iii) <u>Repayment Procedure Generally</u>. Loan repayments shall be made in the same type of Loaned VC and Loaned Assets that were borrowed and, with respect to Loaned VC, shall be repaid directly to a wallet address designated by Lender in writing.

    (e)    <u>Termination of Loan</u>.

        (i)    A Loan will terminate upon the earlier of:

            (A)    the Maturity Date;

            (B)    the repayment of the Loan Balance in its entirety by Borrower prior to the Maturity Date; or

            (C)    the occurrence of an Event of Default as defined in <u>Section VI</u>, if Lender elects to terminate the Loan as a result thereof.

        (ii)    In the event of a termination of a Loan, any Loaned VC and Loaned Assets shall be repaid immediately and any fees owed shall be payable immediately to Lender as specified herein.

## III. <u>Loan Fees and Transaction Fees</u>.

    (a)    <u>Loan Fee</u>. If agreed in the applicable Loan Confirmation, Borrower agrees to pay Lender simple, non-compounding interest on the applicable Loan (the "***Loan Fee***"). Borrower shall pay the Loan Fee with respect to a particular Loan as agreed to in this Agreement and the applicable Loan Confirmation. Loan Fees shall accrue from and include the date on which the Loaned VC and Loaned Assets are transferred to Borrower to but excluding the date on which such Loaned VC and Loaned Assets are repaid to Lender. Lender shall calculate any Loan Fees owed and provide Borrower with the calculation upon request. The Loan Fee will be calculated based on all outstanding portions of the Loaned VC and Loaned Assets, as applicable.

    (b)    <u>Late Fee</u>. For each calendar day after the Maturity Date on which Borrower has not repaid the entirety of the Loaned VC or Loaned Assets or failed to timely pay any outstanding Loan Fee in accordance with <u>Section III(c)</u>, Borrower shall incur an additional fee (the "***Late Fee***") of 3.3 basis points per day on all outstanding portions of the Loaned VC or Loaned Assets, as the case may be.

    (c)    <u>Payment of Loan Fees and Late Fees</u>. Any Loan Fee or Late Fees payable with respect to a Loan hereunder shall be paid by Borrower by the later of (i) five (5) Business Days after receipt of an invoice from Lender or (ii) ten (10) days after the earlier of the applicable Maturity Date or the date on which all Loaned VC and Loaned Assets related to such Loan are repaid in full pursuant to the exercise of the Prepayment Right. Any Loan Fee shall not be due and payable earlier than such date.

    (d)    <u>Form of Loan Fees and Late Fees</u>. The Loan Fee and Late Fees for a particular Loan shall be payable, (i) with respect to Loaned VC, in the same type of Loaned VC that were borrowed and (ii) with respect to Loaned Assets, in the same type of Loaned Assets that were borrowed.

  (e) <u>Taxes and Fees</u>. Neither Borrower nor Lender shall have any liability to the other Party for any taxes due under this Agreement or any Loan Confirmation.

## IV. Forks and Airdrops.

Unless the Parties agree otherwise in writing, Lender shall not have the right to any New VC resulting from any fork, airdrop, or other subdivision of the relevant VC protocol that occurs while any Loan is outstanding, and any such New VC shall constitute property of the Borrower and shall not constitute Loaned VC.

## V. Representations, Warranties and Covenants.

  (a) Each Party hereby make the following representations, warranties and covenants to the other Party, which representations, warranties and covenants shall continue during the term of this Agreement and any Loan hereunder:

    (i) Such Party is duly organized, validly existing, and in good standing under the Laws of the jurisdiction of its organization and has all requisite power and authority to carry on its business as now conducted. Such Party is duly qualified to transact business and is in good standing in each jurisdiction in which the failure to so qualify would have a material adverse effect on its business or properties.

    (ii) (A) Such Party has the power to execute and deliver this Agreement, to enter into the Loans contemplated hereby and to perform its obligations hereunder, (B) such Party has taken all necessary action to authorize such execution, delivery and performance of this Agreement, and (C) this Agreement constitutes a legal, valid, and binding obligation enforceable against such Party in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, or similar Laws relating to or affecting the enforcement of creditors' rights.

    (iii) Neither the authorization, execution and delivery of this Agreement or any Loan Confirmation shall constitute or result in a material default or violation of any Law applicable to such Party, any term or provision of such Party's constitutive documents, or any agreement or instrument by which such Party is bound or to which its properties or assets are subject.

    (iv) Such Party has not relied on the other Party for any tax or accounting advice concerning this Agreement, and such Party has made its own determination as to the tax and accounting treatment of any Loan, any Loaned VC, any Loaned Assets, and any funds received or provided hereunder.

    (v) Such Party is acting for its own account, and not as a nominee or agent for any other Person.

    (vi) Such Party is a sophisticated party and fully familiar with the inherent risks involved in the transactions contemplated in this Agreement and each Loan

5

Confirmation, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the price of the Loaned VC, and such Party voluntarily takes full responsibility for any risk to that effect.

(vii) Such Party is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable Laws.

(viii) No proceedings are pending or, to such Party's knowledge, threatened, which could reasonably be anticipated to have any adverse effect on the transactions contemplated by this Agreement or any Loan Confirmation or the accuracy of the representations and warranties hereunder or thereunder.

(ix) No consent, approval or authorization of or registration, qualification, designation, declaration or filing with any Governmental Authority or other third Person on the part of such Party is required in connection with the valid execution and delivery of this Agreement or any Loan Confirmation, or the performance of the transactions contemplated by hereby or thereby (including, in the case of Lender, the delivery of Loaned VC and Loaned Assets to Borrower).

(x) Such Party shall conduct all activity under this Agreement and each Loan Confirmation in compliance with all applicable Laws.

(b) Lender hereby makes the following additional representations, warranties and covenants to Borrower, which shall continue during the term of this Agreement and any Loan hereunder: Lender has, or will have at the time of the loan of any VC or other assets, the right to lend such Loaned VC and Loaned Assets subject to the terms and conditions hereof, free and clear of all liens, encumbrances and other third party rights.

## VI. Default.

Any of the following events shall constitute an event of default with respect to a Loan, and shall be herein referred to as an "*Event of Default*" or "*Events of Default*":

(a) the failure of the Borrower to repay any and all Loaned VC or Loaned Assets with respect to such Loan on the Maturity Date; provided, that Borrower shall have one (1) Business Day following notice by Lender of such default to cure such default;

(b) the failure of Borrower to pay any and all Loan Fees or Late Fees with respect to such Loan when due in accordance with Section III(c); provided, that Borrower shall have five (5) Business Days following notice by Lender of such default to cure such default; or

(c) with respect to either Party, any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings that are instituted by or against such Party are not dismissed within thirty (30) days of the initiation of said proceedings.

6

**VII.** **Remedies.**

(a) Upon the occurrence and during the continuation of any Event of Default on a Loan by Borrower, the Lender may, at its option, do any or all of the following: (1) declare the entire Loan Balance outstanding for the Loan immediately due and payable; (2) exercise all other rights and remedies available to the Lender hereunder, under applicable Law, or in equity; or (3) terminate this Agreement and any Loan hereunder upon notice to Borrower and declare all Loan Balances immediately due and payable.

(b) Upon the occurrence and during the continuation of any Event of Default on a Loan by Lender, the Borrower may, at its option: (1) withhold repayment of the Loaned VC and Loaned Assets and any outstanding Loan Fees, Late Fees or other amounts claimed by Lender; (2) exercise all other rights and remedies available to the Borrower hereunder, under applicable Law, or in equity; or (3) terminate this Agreement and any Loan hereunder upon notice to Lender and repay all Loan Balances.

**VIII.** **Indemnification.**

(a) Borrower shall indemnify and hold harmless the Lender and its affiliates (and each of their respective employees, shareholders, directors, and representatives) from and against any and all losses, damages, costs, charges, reasonable counsel fees, payments, expenses and liabilities (collectively, "*Damages*") in connection with any legal or arbitral proceeding instituted by a Person not a Party to this Agreement, whether groundless or meritorious (a "*Third Party Claim*"), caused by or arising out of (i) any breach of any of the representations, warranties, covenants or obligations of the Borrower under this Agreement or (ii) the Borrower's gross negligence, willful misconduct or fraud in connection with this Agreement; provided, however, that the Borrower will not be liable to the extent that any loss, claim, damage or liability found in a final judgment by a court or arbitrator to have resulted primarily from (x) the fraud, gross negligence or willful misconduct of the Lender or (y) any breach of any of the representations, warranties, covenants or obligations of the Lender under this Agreement.

(b) Lender shall indemnify and hold harmless Borrower and its affiliates (and each of their respective employees, shareholders, directors, and representatives) from and against any and all Damages in connection with any Third Party Claim caused by or arising out of (i) any breach of any of the representations, warranties, covenants or obligations of the Lender under this Agreement or (ii) the Lender's gross negligence, willful misconduct or fraud in connection with this Agreement; provided, however, that the Lender will not be liable to the extent that any loss, claim, damage or liability found in a final judgment by a court or arbitrator to have resulted primarily from (x) the fraud, gross negligence or willful misconduct of the Borrower or (y) any breach of any of the representations, warranties, covenants or obligations of the Borrower under this Agreement.

**IX.** **Rights and Remedies Cumulative.**

No delay or omission by a Party in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder.

All rights of each Party stated herein are cumulative and in addition to all other rights provided by Law or in equity.

X.  **Survival of Rights and Remedies**

All remedies hereunder and all obligations with respect to any Loan, including but not limited to indemnification obligations, shall survive the termination of the relevant Loan, repayment of Loaned VC and Loaned Assets, and termination of this Agreement.

XI.  **Governing Law; Dispute Resolution.**

This Agreement is governed by, and shall be construed and enforced under the laws of the State of Illinois without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and the dispute cannot be settled through negotiation, then the dispute shall be finally resolved by binding arbitration administered in Chicago, Illinois by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing Party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

XII.  **Notices.**

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by internationally recognized overnight courier or electronic mail to the respective address set forth below. Notwithstanding the foregoing, to be valid, all notices or demands relating to this Agreement sent to Borrower must be sent to the email address provided below.

If to Lender:

Alameda Research Ltd
Tortola Pier Park
Road Town, BVI
Attn: Alameda Research
Email: info@alameda-research.com

If to Borrower:

Tai Mo Shan Limited
600 West Chicago, Suite 600
Chicago, IL 60654
Attn: Jump Operations, LLC Legal Department
Email: legal@jumptrading.com

Either Party may change its address by giving the other Party written notice of its new address as herein provided.

### XIII.    Modifications.

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

### XIV.    Single Agreement.

Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder constitute a single business and contractual relationship and have been entered into in consideration of each other. Accordingly, Borrower and Lender hereby agree that payments, deliveries, and other transfers made by either of them in respect of any Loan shall be deemed to have been made in consideration of payments, deliveries, and other transfers in respect of any other Loan hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted. In addition, Borrower and Lender acknowledge that, and have entered into this Agreement in reliance on the fact that, all Loans hereunder have been entered into in consideration of each other.

### XV.    Entire Agreement.

This Agreement, each exhibit referenced herein, and all Loan Confirmations constitute the entire Agreement among the parties with respect to the subject matter hereof and supersede any prior negotiations, understandings and agreements with respect to the subject matter of this Agreement. Nothing in this Section XV shall be construed to conflict with or negate Section XIV above.

### XVI.    Successors and Assigns.

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither Party may assign this Agreement or any Loan Confirmation or any rights or duties hereunder or thereunder without the prior written consent of the other Party (such consent to not be unreasonably withheld), except that no consent of the other Party shall be required for an assignment to any entity that controls, is controlled by, or is under common control with, the assigning Party. Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required for the assignment by a Party to a Person that acquires control of such Party pursuant to a change of control; provided, that such Party provides the other Party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "*change of control*" shall mean a transaction or series of related transactions in which a Person, or a group of affiliated (or otherwise related) Persons acquires from equity holders of a Party equity interests representing more than fifty percent (50%) of the outstanding voting equity of such Party. Neither this Agreement nor any provision hereof, nor any Exhibit hereto or document executed or delivered herewith, or Loan Confirmation hereunder, shall create any rights in favor of or impose any obligation upon any Person other than the Parties and their respective successors and permitted assigns.

### XVII. Severability of Provisions.

Each provision of this Agreement and any Loan Confirmation shall be viewed as separate and distinct, and in the event that any provision shall be deemed by an arbitrator or a court of competent jurisdiction to be illegal, invalid or unenforceable, the arbitrator or court finding such illegality, invalidity or unenforceability shall modify or reform the applicable Loan Document to give as much effect as possible to such provision. Any provision which cannot be so modified or reformed shall be deleted and the remaining provisions of the applicable Loan Document shall continue in full force and effect.

### XVIII. Counterpart Execution.

This Agreement and each Loan Confirmation may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement. Delivery of an executed counterpart of this Agreement or any Loan Confirmation by email or other electronic method of transmission, including DocuSign, shall be equally as effective as delivery of an original executed counterpart.

### XIX. Relationship of Parties.

Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

### XX. No Waiver.

The failure of or delay by either Party to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent such Party from subsequently requiring compliance with the obligation or exercising the right or remedy in the future. No waiver or modification by either Party of any provision of this Agreement or any Loan Confirmation shall be deemed to have been made unless expressed in writing and signed by both parties.

### XXI. Term and Termination.

Either Party may terminate this Agreement by providing written notice to the other Party. Except as specified in Section VII, termination of this Agreement shall not affect any outstanding Loans entered before the effective date of such termination.

### XXII. Miscellaneous.

Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders where necessary and appropriate. The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement. The Parties acknowledge that the Loan Documents are the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Loan Documents' provisions will be construed against the drafter.

*[Signature page follows]*

IN WITNESS WHEREOF, the Parties have caused this Master Loan Agreement to be executed and delivered as of the dates set forth below

LENDER:

Alameda Research Ltd

By: *Sam Bankman-Fried*
Name: Sam Bankman-Fried
Title: CEO
Date: 12 August 2020

BORROWER:

TAI MO SHAN LIMITED

By: *M. Hinerfeld*
Name: Matthew Hinerfeld
Title: Authorized Signatory
Date: 12 August 2020