# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) <br> ) <br> FTX TRADING LTD., *et al.*, ) <br> ) <br> Debtors. ) <br> ) | Chapter 11 <br><br> Case No. 22-11068 (JTD) <br> (Jointly Administered) <br><br> **Re: D.I. Nos. 16815 & 19795** |

## MEMORANDUM OPINION AND ORDER

Celsius Network LLC and its affiliated debtors (collectively "**Celsius**") filed over 100 proofs of claim prior to the bar date asserting more than $2 billion in damages against FTX Trading Ltd. and its affiliated debtors (collectively "**Debtors**"). The original proofs of claim ("**Original POCs**")[1] alleged that the Debtors' officers made "unsubstantiated and disparaging statements about Celsius" and that Celsius "may" have claims against the Debtors for causes of action that "include, but are not limited to, libel, slander, tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy" (the "**Disparagement Claims**").[2] The proofs of claim further stated that "Celsius is also investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions."[3]

---

[1] A list of the Original POCs is attached to the Debtors' Objection to Proofs of Claim filed by Celsius ("**Objection**"), D.I. 19795.
[2] See, e.g., Proof of Claim Number 3021, available at https://restructuring.ra.kroll.com/ftx/EPOC-Index.
[3] *Id.*

More than a year later, Celsius filed amended proofs of claim (without moving for amendment) (the "**Amended POCs**") dropping the $2 billion Disparagement Claims and instead asserting avoidance claims of not less than $444,457,844 against the Debtors for alleged preferential transfers (the "**Preference Claims**").

Debtors have objected to Celsius's proofs of claim,[4] asserting that the Original POCs were not sufficient to put them on notice of the nature and amount of the alleged preference actions, and that the amendments came too late and should be disallowed. Celsius counters that the Original POCs were sufficient to put the Debtors on notice of alleged avoidance claims, and at a minimum constitute protective proofs of claim sufficient to meet the requirements of the Bankruptcy Code.

For the reasons discussed below, I find that the single sentence in the Original POCs stating that Celsius was investigating possible avoidance actions was not sufficient to put the Debtors or the Court on notice of the existence or nature of the alleged Preference Claims. Because I find that the Original POCs failed to properly assert the Preference Claims, Celsius's attempt to assert them by its Amended POCs fails as a matter of law.

## BACKGROUND

On June 29, 2023, Celsius filed the Original POCs against each of the Debtors. The Original POCs were timely, having been filed the day before the applicable bar date of June 30, 2023 (the "**Bar Date**").[5]

---

[4] Debtors' Objection, D.I. 19795.
[5] *See* Non-Customer Claims Bar Date Order, D.I. 1519.

Approximately one year later, on June 5, 2024, Celsius filed a Motion for Relief from the Automatic Stay ("**Lift Stay Motion**"),[6] by which it sought leave to commence adversary proceedings against certain FTX Debtors in the Celsius bankruptcy case (pending before the United States Bankruptcy Court for the Southern District of New York) to assert its Preference Claims.

On July 7, 2024, Celsius filed the Amended POCs with the FTX claims register.[7] It did not seek leave to amend its Original POCs or otherwise bring the Amended POCs to the attention the Debtors, other parties in interest, or the Court. In its Amended POCs, Celsius stated:

> The Original Proofs of Claim asserted two categories of causes of action, which were both subject to ongoing investigation: (i) causes of action "based upon unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius' balance sheet and financial condition" and (ii) causes of action ". . . under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions" (the "Avoidance Claims"). Since the filing of the Original Proofs of Claim and based on his investigation, the Celsius Litigation Administrator identified the following additional details regarding the Avoidance Claims asserted in the Original Proofs of Claim.
>
> *First*, [Celsius] identified certain avoidable transfers . . . received by Debtor Quoine Pte Ltd. ("Quoine") as initial transferee in an amount not less than $67,038,496. *Second*, [Celsius] identified certain avoidable transfers . . . received by FTX as subsequent transferees in an amount not less than $377,419,348. [Celsius] asserts that all of these transfers constitute "causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code" as asserted in the [Original POCs].
>
> Accordingly,[Celsius] amends the asserted amount of claim against FTX to be not less than $444,457,844, which includes (i) claims against [debtor] Quoine [Pte Ltd] for an amount not less than $67,038,496 in connection with avoidable transfers made to Quoine during the Celsius Preference Period and (ii) claims against the FTX debtors for an amount not less than $377,419,348 in connection with avoidable transfers made to customers during the Celsius Preference Period for which FTX debtors were subsequent transferees.[8]

---

[6] Celsius Motion for Relief from the Automatic Stay, D.I. 16815.
[7] *See* D.I. 22774, Ex. A.
[8] *Id*.

3

On July 8, 2024, Debtors filed this Objection seeking to have the Original POCs, which they then believed to be asserting only the Disparagement Claims, disallowed as unsubstantiated and barred by the doctrine of unclean hands. Though they were unaware at the time that Celsius had filed the Amended POCs with the claims register, given the assertions made by Celsius in its Lift Stay Motion, the Debtors also sought to have disallowed any amendments to the Original POCs made for the purpose of asserting the Preference Claims.

Since the Objection was filed, Celsius has indicated it has abandoned its Disparagement Claims and is only moving forward with its Preference Claims.[9] Accordingly, the only issues before me today are (1) whether the Original POCs and Amended POCs are allowed; and (2) if so, whether Celsius is entitled to relief from the Automatic Stay to pursue its Preference Claims in the Celsius bankruptcy case.

## JURISDICTION

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## ANALYSIS

I.   **Did the Original POCs Preserve the Preference Claims?**

The bar date is an important deadline in bankruptcy cases. *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *5 (D. Del. Aug. 18, 2022). "Claims not filed by the bar date are typically discharged, meaning the claimant

---

[9] Celsius Response to Debtors' Objection, D.I. 22774 at n.10.

4

cannot recover from the debtor or the reorganized debtor." *Ellis v. Westinghouse Elec. Co.*, 11 F. 4th 221, 232 (3d Cir. 2021).

The Original POCs filed by Celsius were filed in advance of the bar date but lacked detail about the Preference Claims. Celsius argues that the one sentence in the Original POCs that vaguely refers to the possibility that preference claims might exist is sufficient to provide notice of its claims and points out that it simply completed the form crafted by the Debtors themselves, which asked for very little information. Celsius argues that since it filed its proofs of claim by the bar date, the Original POCs are entitled to *prima facie* validity, thereby shifting the burden to the Debtors to submit evidence that would refute the legal sufficiency of the claims. I disagree.

Section 502(a) of the Bankruptcy Code provides, in relevant part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). As the Third Circuit has explained, the burden of proof for a claim asserted in a bankruptcy case is a shifting one:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim.

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted) (emphasis added). Thus, while a properly filed proof of claim is *prima facie* evidence of the claim's validity and amount, a claimant's failure to allege facts and provide adequate support for a claim deprives the claim of *prima facie* validity. *Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*, 501 B.R. 44, 62 (Bankr. D. Del. 2013) ("Pursuant to Federal Rule of Bankruptcy 3001, where a proof of claim does not provide the facts and documents necessary to support the

claim, it is not entitled to the presumption of *prima facie* validity."). Consequently, where a proof of claim is not entitled to *prima facie* validity, the debtor objecting to such claim "has no evidentiary burden to overcome." *eCast Settlement Corp.* v. *Teresa Tran* (*In re Tran*), 369 B.R. 312, 318 (Bankr. S.D. Tex. 2007).

I find that Celsius's Original POCs do not allege facts sufficient to support its Preference Claims. The single sentence in the Original POCs stating that "Celsius is also investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions,"[10] does not provide the Debtors or the Court with notice of either the nature or amount of such claims.[11] Nowhere in the Original POCs are there any facts that could conceivably relate to an avoidance claim of any type. A complete recitation of all the facts set forth in the Original POCs is as follows:

> As of FTX's petition date, Celsius's claims against FTX are based upon unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius' balance sheet and financial condition. Notably, periodicals have reported that FTX claimed publicly that Celsius was "difficult to deal with" and that "Celsius had a $2 billion hole in its balance sheet." Celsius is further investigating whether certain of FTX customers or investors manipulated the value of Celsius's products and assets. Such statements and overt acts not only damaged Celsius's brand, reputation, and business prospects, but contributed to Celsius's need to file for chapter 11.[12]

There is nothing in this paragraph that would be remotely relevant to – let alone be supportive of – an avoidance action under chapter 5 of the Bankruptcy Code. Accordingly, Celsius' inclusion

---

[10] *Id.*

[11] While courts will sometimes determine that a facially insufficient proof of claim is nevertheless entitled to *prima facie* validity based on information otherwise available in the bankruptcy record that demonstrates a debtor's knowledge of the claim, s*ee, e.g.*, *In re O'Brien*, 440 B.R. 654, 667-68 (Bankr. E.D. Pa. 2010) (discussing same), Celsius has not pointed to anything other than its Original POCs that would serve as notice of its Preference Claims.

[12] Proof of Claim Number 3021, available at https://restructuring.ra.kroll.com/ftx/EPOC-Index.

of a sentence in the next paragraph indicating that it was investigating possible preference and fraudulent transfer actions has no effect.

Celsius argues that even if the Original POCs do not meet the standards for a formal proof of claim, Celsius has, "at the very least met the modest standard applied for preserving a claim through a 'protective' filing."[13] In support of this position, Celsius relies primarily on the District Court's statement in *Mallinckrodt*, that "[t]he burden to comply with the bar date is not high, and "[p]rotective proofs of claim are permitted, so a creditor who is uncertain of the amount or validity of its claim can still comply with the bar date without conceding any issues." *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *5 (D. Del. Aug. 18, 2022).

Neither *Mallinckrodt*, nor any of the other decisions cited by Celsius, offer any specifics regarding what is sufficient to constitute a protective proof of claim. *See, e.g.*, *Ellis v. Westinghouse Elec. Co., LLC,* 11 F.4th 221, 238 (3d Cir. 2021); *In re Trocom Constr. Corp.*, No. 1-15-42145-nhl, 2016 Bankr. LEXIS 3212, at *4 (Bankr. E.D.N.Y. Sep. 1, 2016)*; Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (BRL), 2009 Bankr. LEXIS 446, at *6 (Bankr. S.D.N.Y. Feb. 24, 2009). The Third Circuit has, however, offered some guidance on what are sometimes referred to as "informal proofs of claim." An informal proof of claim arises when a claimant asserts a claim against a debtor without using the formal proof of claim process. Importantly, the Third Circuit has explained, "[t]he distinction between formal and informal proofs of claim refers only, as the terms suggest, to their form, not their substance." *Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127,

---

[13] Celsius Opposition Brief, D.I. 22774 at 13.

7

132 (3d Cir. 2005). "[T]he substantive requirements of a proof of claim, including the notice requirement, cannot be significantly relaxed for 'informal' proofs of claims." *Id.*

In *Hefta*, the Third Circuit adopted a five-part test to determine whether an informal proof of claim is sufficient to permit a claimant to avoid a discharge of the claim. The test requires that the informal proof of claim: (i) be in writing; (ii) contain a demand on the bankruptcy estate; (iii) express an intent to hold the debtor liable for the debt; and (iv) be filed with the bankruptcy court. *Id.* at 131. If it meets the first four requirements, the court must then determine whether, given the surrounding facts and circumstances of the case, it would be equitable to treat the document as a proof of claim. *Id.* Applying this test, the Court concluded that a letter sent from claimant's counsel to the debtor was not sufficient to constitute an informal proof of claim. Specifically, the Court found that the letter failed to meet the second requirement of making a demand on the bankruptcy estate. "To state a demand, it was not sufficient for the [claimant] to merely state that he had a claim against the Debtors arising from a work injury. 'Mere notice of a claim alone is not to be called an informal proof of claim.'" *Id.* quoting *Horizons, Inc.*, 751 F. 2d 1213, 1217 (11th Cir. 1985), and citing *A.H. Robbins Co., Inc.*, 862 F. 2d 1092, 1095 (4th Cir. 1988), and *Wilkens v. Simon Bros., Inc.* 731 F. 2d 462, 465 (7th Cir. 1984). As the *Hefta* Court concluded, "[i]n order to constitute an informal proof of claim, the alleged demand must be sufficient to put the debtor and/or the court on notice of the 'existence, nature and amount of the claim (if ascertainable).'" *Id.* (quoting *Charter Co. v. Dioxin Claimants*, 876 F. 2d 861, 863 (11th Cir. 1989)).

It is axiomatic that an alleged protective proof of claim should comply with the same standards. Indeed, courts have long held that to constitute *prima facie* evidence of a claim a proof of claim must be sufficient to put a debtor and the court on notice as to the existence,

nature and amount (if ascertainable) of a claim. *See In re Thompson*, 227 F. 981, 983 (3d Cir. 1915) ("Whether formal or informal, a claim must show (as the word itself implies) that a demand is made against the estate, and must show the creditor's intention to hold the estate liable."); *In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 44, at *15-16 (Bankr. N.D. Tex. Jan. 12, 2005) ("A bankruptcy claim must contain sufficient information to put the representative of the estate (here Debtors) on notice as to what occurred that would create the estate's liability."); *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999) ("A claim in a bankruptcy need not meet the [ ] tests of litigation pleading under the Federal Rules of Civil Procedure. A claim need only 'provide adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.'") (quoting *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir.1997)).

The cases on which Celsius relies are not inconsistent with this conclusion. *See e.g., In re Sullivan*, 36 B.R. 771, 773 (Bankr. E.D.N.Y. 1984) ("It is not essential that a document be styled a 'proof of claim,' or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required.'") (quoting *In re Lipman,* 65 F.2d 366, 368 (2d Cir. 1933)); *In re Chateaugay Corp.,* 94 F.3d 772, 776-77 (2d Cir. 1996) (concerning the preservation of the right of setoff under section 553, not preservation of a claim itself); *In re Lampe*, 665 F.3d 506, 515 (3d Cir. 2011) (considering only the applicability of Rule 3001(c) to the claim at issue). While Celsius points to language from at least one court noting that "the amount of detail required in a proof of claim as a procedural matter is actually quite low[,]" when the context of the quote is considered it is clear that the Court was not speaking about proofs of claim in isolation, but rather was making a comparison between the evidentiary requirements for proofs of claim and a complaint in civil litigation:

> To be sure, in some instances, the requirements for a proof of claim can be more exacting than a complaint in a civil litigation because the former is intended to serve both as the statement of the claim and its evidentiary support. Comparing the requirements for each pleading is therefore somewhat of an apples-and-oranges exercise. However, because the definition of a "claim" in bankruptcy is so much broader than a "claim upon which relief may be granted" under Federal Rule of Civil Procedure 12(b)(6) - with the bankruptcy claim encompassing, for example, contingent and unmatured claims that would be dismissed in civil litigation on ripeness or case-or-controversy grounds — the amount of detail required in a proof of claim as a procedural matter is actually quite low, as Official Form 410 suggests.  As Judge Gleeson noted previously, "a claim may have arisen for purposes of a bankruptcy discharge even if it could not yet be asserted as a viable claim in a non-bankruptcy proceeding." DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 871 F. Supp. 2d 143, 151 (E.D.N.Y. 2012), remanded on other grounds, DPWN, 747 F.3d 145.

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 690 (E.D.N.Y. 2017).  But the fact that a creditor does not need to have the same level of detail in a proof of claim as it would in a complaint does not alter the fundamental requirement that the creditor provide enough information to notify the debtor about the nature of the claim and the facts on which such claim is based.  The single sentence contained in the Original POCs does not meet this standard.  *See Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc),* No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *9 (D. Del. Aug. 18, 2022) (affirming disallowance of claims where proofs of claim "failed to allege any conduct by any of the non-defendant Debtors, and it appears that proofs of claim were filed out of an abundance of caution").

II.     **Are the Amended POCs Sufficient to Preserve the Preference Claims?**

Celsius next argues that even if its Original POCs failed to preserve the preference claim, its Amended POCs do.[14]

---

[14] Celsius argues that Debtors did not formally raise an objection to its Amended POCs until three days before the hearing when they filed their reply brief.  Celsius argues this violates Rule 3007 which requires a claim objection be filed 30 days before the hearing. Debtors respond that they had no knowledge of the Amended POCs until Celsius filed its opposition because Celsius neither sought leave to amend nor served Debtors with the Amended POCs.  Celsius offered no reply to Debtors' claim of lack of service.  Accordingly, I find it appropriate that Debtors raised their objection for the first time in their reply.

The Third Circuit has held that amendments to proofs of claim should be freely allowed, but "once the deadline to file claims has passed, 'an amendment to a claim filed post bar-date must be scrutinized to assure that it is not an attempt to file a new claim.'" *Plains Mktg., L.P. v. Bank of Am., N.A. (In re Semcrude, L.P.)*, 443 B.R. 472, 477 (Bankr. D. Del. 2011) (quoting *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993)). "Thus, a creditor may not use the claims amendment process to circumvent the claims bar date." *Id.* See also In re Ben Franklin Hotel Associates, 186 F.3d 301, 309 (3d Cir. 1999).

"Courts typically apply a two-pronged inquiry when considering whether to allow post-bar-date amendments to proofs of claim." *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *6-7 (D. Del. Aug. 18, 2022). "First, they must determine whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Id.* (quoting *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)). "A post-bar-date claim satisfies this prong if it: (1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* The focus of this prong is whether the initial proof of claim provided the debtor with reasonable notice of the later claim. *Id.*

"If the first prong is satisfied, the court must then determine whether it would be equitable to allow the amendment." *Id.* "Among the factors considered in deciding this issue are undue delay, bad faith, or a dilatory motive." *Id.* See also *Valley Media Inc. v. Borders, Inc. (In re Valley Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003). "To avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if it shows 'excusable neglect.'" *Id.*; Fed. R. Bankr. P. 9006(b)(1). An equitable analysis, excusable neglect considers the

circumstances of the movant's delayed filing, including "(1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith." *Id.* citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

      The Amended POCs filed by Celsius here should not be allowed for several independent reasons. First, the Amended POCs are improper because Celsius did not seek leave to amend. While counsel for Celsius argued at the hearing that he believed it was not the practice in this Court to require motions for leave to amend proofs of claim, he cited to nothing in support of that conclusion. In failing to file a motion or anything else on the docket Celsius failed to provide either the Debtors or the Court with any notice of the fact that its Original POCs were being amended.

      Second, even if the Amended POCs were properly filed, they would still not be allowed because they are not sufficiently related to the Original POCs. *See In re Ben Franklin Hotel Associates*, 186 F.3d 301, 309 (3d Cir. 1999). Though Celsius attempts to frame its amendment as merely "clarifying" claims it previously asserted, this position strains credulity.[15] Celsius's admission that the original description of its claims required clarification at all is perhaps the best evidence of its deficiency. *See* Merriam-Webster Dictionary (defining "clarify" as "to make understandable" or "to free of confusion").[16] Celsius's suggestion that the Amended POCs are simply "providing additional color" can only be described as a vast overstatement. As noted above, there is not a single fact in the Original POCs that could reasonably be read as forming

---

[15] Celsius Opposition Brief at 16.
[16] *See* https://www.merriam-webster.com/dictionary/clarify#:~:text=1,purify.

the basis of a preference claim. Celsius's failure to include any facts relevant to its Preference Claims in the Original POCs is fatal to its claim.

Lastly, Celsius has offered no explanation for its neglect in failing to file the Amended POCs until more than a year after the bar date. Instead, Celsius simply suggests that because it has reduced the overall dollar value of its claim, that the Debtors "are actually benefited rather than prejudiced by the Amended Proofs of Claim."[17] I am not persuaded. The Debtors would likely suffer considerable prejudice if the Amended POCs were allowed. In addition to the fact that this alleged $444 million liability was not provided for in the Debtors' Plan of Reorganization, the remedies sought by Celsius are far from straightforward. In one scenario, Celsius seeks to prevent the Debtors from making distributions to any creditors that Celsius considers to be potential initial transferees even before it has obtained judgments against them. Such a remedy (assuming it is even lawful) would cause a significant delay in the Debtors' distribution process that is wholly unnecessary. For these reasons, I find that Celsius has not met the standard for excusable neglect.

## CONCLUSION

For the reasons set forth above, Debtors' Objection is SUSTAINED and the Original POCs and Amended POCs are therefore disallowed.[18]

It is SO ORDERED.

Dated: December 18, 2024

JOHN T. DORSEY, Chief Judge
United States Bankruptcy Court

---

[17] Celsius Opposition Brief, D.I. 22774 at 16.
[18] Celsius' Motion for Relief from the Automatic Stay, D.I. 16815, which seeks to allow Celsius to commence and liquidate alleged avoidance actions against the FTX Debtors, is therefore also denied as moot.