**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: 3409, 3737** |
| | **Hearing Date: February 27, 2025 at 10:00am (ET)** |

**STIPULATION OF UNDISPUTED FACTS
RELATING TO ROSS RHEINGANS-YOO'S FDU CLAIM**

Alameda Research (Bahamas) Ltd. ("Alameda Bahamas") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") and Ross Rheingans-Yoo ("Rheingans-Yoo") hereby stipulate to the following undisputed facts in connection with the Court's determination of the Debtors' Objection to Ross Rheingans-Yoo's Foundation Direction Unit ("FDU") Claim 5166 [D.I. 3409]:

**Original Ross Terms**

1.      Attached hereto as **Exhibit A** is a true and correct copy of a document produced by the Debtors (the "Original Ross Terms").

2.      Attached hereto as **Exhibit B** is a true and correct copy of an export of the metadata associated with the Original Ross Terms.

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in the above-captioned chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

3.    The Original Ross Terms is a Google document created at 6:55 AM UTC (1:55 AM ET) on December 30, 2021 by Samuel Bankman-Fried ("Bankman-Fried").  (Ex. B.) Bankman-Fried created the Original Ross Terms on the FTX Group's[2] Google Drive, which is accessible to the Debtors.  (Ex. B.)  Rheingans-Yoo does not have access to the private Google Drive of the Debtors.

4.    Bankman-Fried shared the Original Ross Terms with Rheingans-Yoo, who the metadata reflects was a viewer and collaborator of the document.  (Ex. B.)

5.    The Original Ross Terms concerns the proposed terms of Rheingans-Yoo's employment.

6.    The Original Ross Terms states as follows:

1)    Employed by Alameda Research

2)    Also supporting FTX Foundation

3)    Work could be any combination of trading infrastructure/ops/etc., and foundation work; we would decide dynamically, and it would mostly be Ross[ Rheingans-Yoo]'s decision. We anticipate that it would likely be > 50% foundation work, and possibly up to 100%.

    a)    You should chat with Nick [Beckstead ("Beckstead"), the CEO of the FTX Foundation,] about foundation stuff before this is finalized to confirm that you'd be excited to work together

4)     Economics:

    a)    Base salary: $200k/year

    b)    Bonus: discretionary; minimum of $1m/year, but with upside significantly beyond that.

        i)    To the extent that Ross's work is for the foundation, there would be an equally sized bonus in "foundation direction", i.e. choosing what the foundation does with its money (in addition to the cash bonus). This could be directed for any [Effective Altruism ("EA")] purposes at Ross's discretion;

---

[2]    The term "FTX Group" means, collectively, the Debtors and all affiliates of the Debtors that have not filed voluntary Chapter 11 petitions in the United States under Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

the only oversight would be that it's plausibly EA, and e.g. it wouldn't need to be to a 501c3.

c)      Signing bonus of $500k.

d)      All cash bonuses could be converted to FTX equity at prevailing market rates if desired (or, obviously, tokens etc.)

5)      Start date: asap, but no later than january 10th.

6)      We would work on housing/immigration/etc.

7)      Anticipated to be in The Bahamas full time, although there is potentially some flexibility in that if desired.

8)      Manager: likely Caroline [Ellison ("Ellison")] + SBF [Bankman-Fried] + Nick [Beckstead] depending on the task

(Ex. A)

**Revised Ross Terms**

7.      Attached hereto as **Exhibit C** is a true and correct copy of a document produced by Rheingans-Yoo (the "Revised Ross Terms"), printed without comments. Attached hereto as **Exhibit D** is a true and correct copy of the Revised Ross Terms that reflects Bankman-Fried's and Rheingans-Yoo's comments on Revised Ross Terms.

8.      Attached hereto as **Exhibit E** is a true and correct copy of a screenshot of the Google Docs "Activity" for the Revised Ross Terms from Rheingans-Yoo's personal computer.

9.      The Revised Ross Terms is a Google document Rheingans-Yoo created at 2:15 PM PT on December 30, 2021. (Ex. E.)

10.      Rheingans-Yoo created the Revised Ross Terms on Rheingans-Yoo's private Google Drive. The Debtors do not have access to the private Google Drive of Rheingans-Yoo, nor is there a copy of the Revised Ross Terms in the database of FTX Group documents.

11.    On January 1, 2022, Rheingans-Yoo shared the Revised Ross Terms through Google documents with Samuel Bankman-Fried ("Bankman-Fried").  (Ex. E.)  Bankman-Fried was made an "Editor" of the Revised Ross Terms.  (Ex. E.)  Only Rheingans-Yoo edited the Revised Ross Terms, and only Rheingans-Yoo and Bankman-Fried commented on the Revised Ross Terms.  (Ex. E.)

12.    The Revised Ross Terms concerns the proposed terms of Rheingans-Yoo's employment.

13.    The Revised Ross Terms states as follows:

1)    Employment, base terms:

   a)    35% employed by Alameda Research as trader, reporting to CE [Ellison].

      i)    $100k/yr base salary.

      ii)    Anticipate that this time may be seconded to FTXF [FTX Foundation], in discussion with CE [Ellison].

   b)    35% employed by FTX Foundation as Director of Special Projects, reporting to NB [Beckstead].

      i)    $100k/yr base salary.

   c)    30% independent, reporting to SBF [Bankman-Fried].

      i)    Anticipate that some of this will involve being Director of a 1-person standalone foundation that can move without directly involving the FTX brand.

      ii)    Also anticipate that it will often involve doubling down on 1a or 1b when needed.

2)    Economics, variable and one-off:

   a)    Bonus discretionary from AR [Alameda Research] & FTXF [FTX Foundation]; minimum $1mln/yr combined, but with upside significantly beyond that.

   b)    FTXF bonus computed in terms comparable to AR bonus, but distributed as a 50/50 split between cash and "foundation direction units" (FDU).

      i)    FDUs held/rolled over are indexed to equity or cash, by agreement between Ross/SBF.

      ii)    FDUs can be directed to plausibly-EA things at Ross's discretion with NB[ Beckstead]/SBF oversight for not damaging the FTXF/etc brand.

      iii)   Anticipate that FDUs could be granted to the 1c.i foundation if that helps with branding / control somehow.

  c)    All cash can be convertible to FTX / FTX US equity or tokens at employee terms.

  d)    $1mln cash incentive signing bonus, convertible at cash terms.

  e)    One-time startup grant: $2mln cash + $2mln FDU, vesting linearly over 7mo.

  f)    $2.3mln loan against Edgar funds, 1.5%/ann rate, payable at min(2yr, Edgar payback + 90day). Convertible at cash terms, equity immediately vested.

3)    Logistics, other:

  a)    Start date: ASAP, but no later than Jan 10.

  b)    Startup logistics, short term including travel: fully expensed.

  c)    Startup logistics, medium term including housing, immigration: supported by AR, FTX, and/or FTXF.

  d)    Reporting to CE (for 1a), NB (for 1b), or SBF (for 1c), depending. i) SBF will set final bonus comp semesterly.

  e)    Payroll received from whatever entity operationally convenient.

  f)    Anticipate to be in The Bahamas 70%+ time, with possible flexibility.

(Ex. C.)

    14.    Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of a January 1, 2022 Google Docs notification (the "<u>SBF Comment</u>") that Bankman-Fried received on one of his personal cell phones.  Bankman-Fried abandoned this particular personal cell phone in the Bahamas, and the Bahamian Joint Official Liquidators recovered the device and shared with the Debtors an image of the device in or around January 2024.

    15.    The SBF Comment reflects that Bankman-Fried commented on sections 2(a)-(c) of Revised Ross Terms (i.e., the sections discussing Rheingans-Yoo's bonus), *see supra* ¶ 13, and wrote "sgtm"—an acronym meaning "sounds good to me."  (Ex. F.)

**Final Ross Terms**

16.     Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of the document with the file name "2022-03-24 Ross terms" (the "<u>Final Ross Terms</u>"), printed without comments. Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of the Final Ross Terms that reflects Bankman-Fried's and Rheingans-Yoo's comments on Final Ross Terms.

17.     Attached hereto as **<u>Exhibit I</u>** is a true and correct copy of a screenshot of the Google Docs "Activity" for the Final Ross Terms from Rheingans-Yoo's personal cell phone.

18.     The Final Ross Terms is a Google document that Rheingans-Yoo created on March 24, 2022.  (Ex. I.)  Rheingans-Yoo created Final Ross Terms on his private Google Drive.  The Debtors do not have access to the private Google Drive of Rheingans-Yoo, nor is there a copy of the Final Ross Terms in the database of FTX Group documents.

19.     On March 24, 2022, Rheingans-Yoo shared the Final Ross Terms with Bankman-Fried.  (Ex. I.)  Bankman-Fried was made an "Editor" of the Final Ross Terms.  (Ex. I.)  Only Rheingans-Yoo and Bankman-Fried commented on and edited the Final Ross Terms.  (Ex. I.)

20.     The Final Ross Terms concerns the proposed terms of Rheingans-Yoo's employment.

21.     The Final Ross Terms state as follows:

1)     Employment, base terms:

    a)     35% employed by Alameda Research as trader / investment associate, reporting to CE [Ellison].

        i)     $100k/yr base salary.

        ii)     Anticipate that this time may be seconded to FTXF [the FTX Foundation], in discussion with CE.

    b)     35% employed by FTX Foundation as Program Officer, reporting to SBF.

        i)     $100k/yr base salary.

        ii)     Anticipate that this will involve leading Latona Bio + allied efforts, but also some things outside of biorisk when appropriate.

   c)    30% independent, reporting to SBF.

        i)     Anticipate independent projects that don't necessarily fit into the FTXF framework/brand.

        ii)     Also anticipate that this time can be used to double down on 1a or 1b when needed.

        iii)    Comp for truly independent projects set at SBF's discretion.

2)    Economics, variable and one-off:

   a)    Bonus discretionary from AR [Alameda Research] & FTXF; minimum $1mln/yr combined, but with upside significantly beyond that.

   b)    FTXF bonus computed in terms comparable to AR employee bonus, but distributed as a 50/50 split between cash and "foundation direction units" (FDU).

        i)     FDUs held/rolled over are indexed to equity or cash, by agreement between Ross[ Rheingans-Yoo]/SBF [Bankman-Fried].

        ii)     FDUs can be directed to plausibly-EA things at Ross's discretion with NB[ Beckstead]/SBF oversight for not damaging the FTXF/etc brand.

        iii)    Anticipate that FDUs could be granted to a Ross-controlled personal foundation if that helps with branding / control somehow.

   c)    All cash can be convertible to FTX / FTX US equity or tokens at employee terms.

   d)    $0.5mln signing bonus, convertible at cash terms.

   e)    $2.3mln loan against Edgar funds, 1.5%/ann rate, payable at min(2yr, Edgar payback + 90day). Convertible at cash terms (2022-01-04 valuation), equity immediately vested.

3)    Logistics, other:

   a)    Start date: 2022-01-04

   b)    Startup logistics, including housing, immigration: as per FTX employee policies.

   c)    Reporting to CE (for 1a) or SBF (for 1b+1c).

        i)     SBF will set final bonus comp semesterly.

   d)    Payroll received from whatever entity operationally convenient.

e)    Anticipate to be in The Bahamas 70%+ time, with possible flexibility.

(Ex. G.)

**The Employment Agreement**

22.    Attached hereto as **<u>Exhibit J</u>** is a true and correct copy of the signed employment agreement between Rheingans-Yoo and Alameda Bahamas dated April 11, 2022 (the "<u>Employment Agreement</u>").

23.    The Employment Agreement was drafted by the FTX Group. Neither the Debtors nor Rheingans-Yoo have located any communications in which Rheingans-Yoo attempted to negotiate the terms of the Employment Agreement.

24.    On April 11, 2022, Darnell Davis of FTX Digital Markets emailed the Employment Agreement for signature by DocuSign to Caroline Ellison at her Alameda Research email address and Ross Rheingans-Yoo at his FTX Foundation email address.  Ellison signed the Employment Agreement by DocuSign on behalf of Alameda Bahamas, while Rheingans-Yoo printed it out and signed it by wet ink.

25.    The Employment Agreement provided that "[Alameda Bahamas] will employ [Rheingans-Yoo] as a Trader & Investment Associate."  Employment Agreement § 2(a).

26.    The Employment Agreement provided that "[Rheingans-Yoo] may be requested to, and by entering into this Agreement you agree to, work for an affiliate of [Alameda Bahamas], or for any other entity as [Alameda Bahamas] may request."  *Id.* § 2(c).

27.    The Employment Agreement provided that: "[Alameda Bahamas] may require [Rheingans-Yoo] to undertake additional duties of another position, either in addition to or instead of [Rheingans-Yoo's] normal duties, it being understood that [Rheingans-Yoo] will not be

required to perform duties which are not reasonably within [his] skill, experience or capabilities."

*Id.* § 2(d).

28.    The Employment Agreement provides:

> ***Bonus***.  [Rheingans-Yoo] may be eligible to receive a discretionary bonus from time to time in an amount as may be determined by [Alameda Bahamas] in its sole and absolute discretion and subject to applicable withholdings.  Payment of a discretionary bonus in any given period does not entitle [Rheingans-Yoo] to any such bonus in any subsequent period.  Any discretionary bonus awarded to [Rheingans-Yoo] in writing by [Alameda Bahamas] will generally be paid to [Rheingans-Yoo] on the same date such bonuses are paid to all employees generally, so long as [Rheingans-Yoo] remain[s] an active employee in compliance with [his] agreements with [Alameda Bahamas] and have neither given nor received notice of termination prior to the bonus payment date.  Nothing herein shall be construed to obligate [Alameda Bahamas] to give [Rheingans-Yoo] or otherwise guarantee a bonus for any period.

*Id.* § 4(b).

29.    There is no mention of FDUs or directed grants in the Employment Agreement.

30.    The Employment Agreement contains an integration clause that provides:

> This Agreement, the Invention Assignment Agreement and the policies and procedures referred to in paragraph 1 contain the entire understanding of the parties in respect of the subject matter contained herein and therein.  In executing this Agreement, [Rheingans-Yoo] represent[s] that [he has] not relied on any representation or statement not set forth in this Agreement, the Invention Assignment Agreement and the said policies and procedures, and [he] expressly disavow[s] any reliance upon any such representation or statements.

*Id.* § 14(a).

31.    The Employment Agreement is enforceable according to its terms.

**The Incorporation of Latona**

32.    Non-Debtor Latona Biosciences Group ("Latona") is a Bahamian non-profit company.

33.    Latona's Certificate of Incorporation is dated May 20, 2022.

34.    Latona's Memorandum and Articles of Association are also dated May 20, 2022.

35.    According to Latona's Memorandum and Articles of Association, Rheingans-Yoo, Bankman-Fried, and Valdez Russell were the initial directors of Latona.

36.    Rheingans-Yoo held himself out as the "Director" or "Executive Director" of Latona and, in that role, reported directly to Bankman-Fried.  [D.I. 1881 ¶ 19]; Answer to Complaint Filed by Latona and Rheingans-Yoo ¶ 19, *Alameda Research Ltd.* v. *Platform Life Sciences Inc.,* Adv. Pro. No. 23-50444 (Bankr. D. Del.), ECF No. 63.

37.    Latona Bioscience Group was an entity under the umbrella of the FTX Foundation "brand."

**The Bonus Memo**

38.    Attached hereto as **<u>Exhibit K</u>** is a true and correct copy of a September 1, 2022 memorandum created by Bankman-Fried and shared with Rheingans-Yoo with the file name "Ross Rheingans-Yoo Review 2022S1 -- SBF -> RRY" ("<u>Bonus Memo</u>").

39.    Attached hereto as **<u>Exhibit L</u>** is a true and correct copy of the metadata associated with the Bonus Memo.

40.    Bankman-Fried was the author of the Bonus Memo, and Rheingans-Yoo was a viewer of the Bonus Memo.  (*See* Ex. L.)

41.    Under the heading "[b]onus information," Bankman-Fried wrote:

Your bonus for the first half of 2022 is any linear combination of:

a) $650,000

Or

b) Both:

        i) 12,600 options on FTX Trading LTD, the parent company of FTX International

        ii) 268,000 options on West Real Shires, the parent company of FTX US

(E.g. you could take half of (a) and half of (b).)

On top of the above, you [Rheingans-Yoo] get another $650k of directed grants to any EA-driven cause if you want [(the "<u>FDU Bonus</u>")[3]].

(Ex. K.)

**Rheingans-Yoo's Employment**

42.     Rheingans-Yoo began working for the FTX Group on or about January 4, 2022.

43.     Prior to the execution of his Employment Agreement, with the knowledge and consent of Bankman-Fried and Beckstead, Rheingans-Yoo held himself out as a representative of the FTX Foundation and used a variety of different titles, including "program officer," "project officer," and "special projects lead" of the FTX Foundation.

44.     With the knowledge and consent of Bankman-Fried, who controlled the FTX Group, and Ellison, the CEO of Alameda Bahamas and Rheingans-Yoo's manager at Alameda Bahamas under the Employment Agreement, Rheingans-Yoo did not perform the duties typical of a Trader or Investment Associate for Alameda Bahamas.

45.     Rheingans-Yoo was not employed by the FTX Foundation.

46.     Rheingans-Yoo's salary and cash bonus were paid from bank accounts of non-Debtor FTX Digital Markets Ltd.

---

[3]     The term "<u>FDU Bonus</u>" refers to this portion of Rheingans-Yoo's Semester 1, 2022 bonus award.

47.     Attached hereto as **Exhibit M** is a true and correct copy of an Alameda Bahamas payslip for Rheingans-Yoo dated May 13, 2022 (according to the document's metadata), showing that FTX Digital Markets Ltd. paid Rheingans-Yoo "March & April 2022 salary" in addition to a "2-month bonus for remote work done in January & February 2022 prior to formal contract."

48.     Rheingans-Yoo did not inform anyone at the FTX Group prepetition that he had designated an EA-driven cause to receive the $650,000 directed grant.

49.     The Bonus Memo did not provide a specified mechanism for Rheingans-Yoo to inform the FTX Group of the EA-driven cause he had designated to receive the FDU Bonus.

50.     The Debtors have not identified any communications with Rheingans-Yoo in which the FTX Group provided a specified mechanism for Rheingans-Yoo to inform the FTX Group of the EA-driven cause he could designate to receive the FDU Bonus.

51.     The Bonus Memo did not provide any deadline by which Rheingans-Yoo had to inform the FTX Group as to the EA-driven cause he had designated to receive the FDU Bonus.

52.     The Debtors have not identified any communications with Rheingans-Yoo that provided Rheingans-Yoo with a deadline by which Rheingans-Yoo had to inform the FTX Group as to the EA-driven cause he had designated to receive the FDU Bonus.

**Rheingans-Yoo's Claim**

53.     Attached hereto as **Exhibit N** is a true and correct copy of the proof of claim form (the "Claim Form") associated with the non-customer claim numbered 5166 that Rheingans-Yoo asserted against Alameda Bahamas on June 29, 2023 ("Rheingans-Yoo's Claim").

On June 29, 2023, Rheingans-Yoo filed a second non-customer claim numbered 89710 against Alameda Bahamas that is duplicative of Rheingans-Yoo's Claim.

54.     In Part 3 of the Claim Form, Rheingans-Yoo checked the box that said, "I am the creditor."  (Ex. N.)

55.     In Part 3 of the Claim Form, Rheingans-Yoo did not check the box that said: "I am the creditor's attorney or authorized agent."  (Ex. N.)

56.     In filing the Claim Form, Rheingans-Yoo declared "under penalty of perjury that the foregoing is true and correct."  (Ex. N.)

57.     The Debtors are not aware of any documents or communications in their possession relating to the FDU Claim aside from those that the Debtors have already produced to Rheingans-Yoo.

58.     Rheingans-Yoo is not aware of any documents or communications in his possession relating to the FDU Claim aside from those that he has already produced to the Debtors.

**The Settlement Stipulation**

59.     Attached hereto as **<u>Exhibit O</u>** is a true and correct copy of the Stipulation of Settlement, dated April 11, 2024, that was entered into by Alameda Research Ltd., FTX Trading Ltd., Alameda Bahamas, Latona, and Rheingans-Yoo to resolve the claims against Rheingans-Yoo and Latona in the adversary proceeding captioned *Alameda Research Ltd.* v. *Platform Life Sciences Inc.,* Adv. Pro. No. 23-50444 (Bankr. D. Del.), and Rheingans-Yoo's Claim (inclusive of the duplicative claim), with the exception of the FDU Claim ("<u>Settlement Stipulation</u>").

60.     In the Settlement Stipulation, the parties agreed to "sever[]" the FDU Claim "for determination by the Bankruptcy Court at a later date."  Settlement Stipulation at 4.

61.    In the Settlement Stipulation, the "Parties agree[d]" that the FDU Claim "is

primarily legal in nature."  Settlement Stipulation at ¶ 6 n.5.

62.    On May 22, 2024, the Bankruptcy Court entered an order approving the

Settlement Stipulation.

Dated: January 15, 2025

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone: (302) 467-4400
landis@lrclaw.com
mcguire@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted pro hac vice)
Brian D. Glueckstein (admitted *pro hac vice*)
Keila M. Mayberry
125 Broad Street
New York, NY  10004
Telephone: (212) 558-4000
wheelers@sullcrom.com
glueckstein@sullcrom.com
mayberryk@sullcrom.com

*Counsel for the Debtors*

**JOYCE, LLC**

*/s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone: (302) 388-1944
mjoyce@mjlawoffices.com

-and-

**GOETZ FITZPATRICK LLP**
Scott D. Simon (admitted *pro hac vice*)
One Penn Plaza
Suite 3100
New York, NY 10119
Telephone: (212) 695-8100
ssimon@goetzfitz.com

*Counsel to Ross Rheingans-Yoo*