# EXHIBIT B



## CERTIFICATE OF TRANSLATION

I, Myoung Sun Lim, am fluent in the Korean and English languages. I have been a court certified interpreter for 20 years and, in accordance with Rule 604 of the Federal Rules of Evidence, am competent to translate documents from Korean into English. I hereby certify that the attached translation of the document identified below was translated by me from Korean into English, and is, to the best of my knowledge and belief, a true and accurate translation.

**Reference: <u>2022-06-27 [IA] Altcore (Blocore) 4,409,000 USDC (2022.6.27~2023.6.27)</u>**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____  ___Myoung Sun Lim_____
Court Interpreter Signature                                      Court Interpreter Name - Printed

___01/10/2025_____                              Certificate No.: 301030
Date

**Linguist Employer:** Independent Contractor / Hired by TransPerfect Translations, Inc.
**Employer Address:** 1250 Broadway, 7th Floor, New York, NY 10001
**Phone Number:** 1-212-689-5555

TransPerfect Translations Ltd. is a professional translation agency and international communications firm located at 1250 Broadway, 7th Floor, New York, NY 10001. I, Jacqueline Yorke, am a project manager employed by TransPerfect who oversaw the translation process and hereby certify the included document has been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best of my professional knowledge and belief, a true and accurate translation.

_____          Jacqueline Yorke
TransPerfect PM Signature                                  _____
                                                                                TransPerfect PM Name - Printed

Sworn to before me this
10th day of January 2025

_____
Signature, Notary Public

```
WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27
```

Stamp, Notary Public

# Discretionary Investment Agreement

**Altcore Co., Ltd.** (hereinafter referred to as "Party A") and **Bang Junho** (hereinafter referred to as "Party B") enter into the following discretionary cryptocurrency investment agreement.

### Article 1 (Purpose)
The purpose of this agreement is for Party B to provide discretionary investment services for the cryptocurrency assets of Party A, and for Party A to pay discretionary investment fees to Party B as compensation for such services.

### Article 2 (Scope and Contents of Discretionary Investment)
Party B is entrusted by Party A with investment decisions regarding financial investment products (such as the type, item, acquisition/disposition, method, quantity, price, and timing of acquisition/disposition), and the content of the discretionary investment services provided by Party B to Party A includes the following:
1. Management of discretionary investment assets amounting to **4,409,000 USDC** in accordance with the contract.
2. Reporting on the results of managing discretionary investment assets.
3. Other necessary matters related to the management of discretionary investment assets.

### Article 3 (Prevention of Conflicts of Interest)
Party B provides discretionary investment services to Party A in accordance with the principle of good faith. Party B maintains a system to prevent conflicts of interest that may arise during the course of performing discretionary investment services between Party A and Party B or between Party A and other clients.

### Article 4 (Discretionary Investment Fees and Payment Schedule)
1. Party A shall pay Party B 30% of the profits as performance-based compensation for the discretionary investment services provided by Party B.
2. Party A may request the payment of the principal and profits at any time after the contract period, and Party B shall complete the payment within three days of Party A's request.
3. After the contract period, Party B shall transfer the principal and profits to the cryptocurrency address designated by Party A.
4. Party A may request repayment of the principal and profits even during the contract period, and Party B must comply.
5. Performance-based compensation shall be collected every six months. The timing may be adjusted by up to two weeks depending on the size of the entered position and market conditions.
6. When collecting performance-based compensation, Party B shall return the total principal and profits of the investment assets, excluding performance-based compensation, to Party A. After confirming this, Party A shall reinvest the funds with Party B. Party A may adjust the principal amount upwards or downwards during this process.

7. (High-Water Mark System) Party B shall collect performance-based compensation only for excess profits that exceed the highest performance achieved during the performance-based compensation period.

### Article 5 (Increase and Decrease of Investment Funds)
Party A may request an increase or decrease (partial withdrawal) of investment funds from Party B. Any increase or decrease of the investment amount later shall be conducted in writing without a separate contract and shall have the same effect as this agreement under the same terms and conditions.

### Article 6 (Deposit and Refund Address for Investment Funds)
Party A shall remit the investment funds to Party B's cryptocurrency address specified in item 1 below. Party B shall remit the investment funds and profits to Party A's cryptocurrency address specified in item 2 below. Changes to the cryptocurrency addresses of Party A and Party B may be made via email.
1. Party B's cryptocurrency address (ERC20): 0xa668268d6b9D5f69Adb83418A2DA2C542Cf28c1c
2. Party A's cryptocurrency address (ERC20): 0xba913FA6B703ddF7349B59cd697aCBa456c20c3e

### Article 7 (Restriction on Exchanges for Depositing Investment Funds)
Party B may use only the exchanges listed below for depositing Party A's investment assets for management purposes. Any additional exchanges may only be used upon agreement with Party A.
1. BITMEX (https://www.bitmex.com/)
2. FTX (https://ftx.com/)
3. BINANCE (https://www.binance.com/)
4. BYBIT (https://www.bybit.com/)
5. UPBIT (https://upbit.com/)
6. BITHUMB (https://www.bithumb.com/)

### Article 8 (Party B's Responsibility for Cryptocurrency Remittance and Transfer)
Party B shall bear responsibility for any loss arising from the return of cryptocurrency invested by Party A or the transfer of cryptocurrency for operational reasons, such as rebalancing among exchanges. Party B shall notify Party A of such losses. Losses shall include issues such as the rejection or non-reflection of deposits by the exchange or incorrect addresses. If such losses occur, Party B shall compensate for the loss to ensure the preservation of Party A's investment funds and profits.

**Article 9 (Contract Period)**
The contract period shall be until June 27, 2023.

**Article 10 (Valuation of Contract Assets)**
Unless otherwise agreed between Party A and Party B, the valuation of cryptocurrency discretionary investment assets shall be based on the disposal price at the time of investment suspension or contract termination, the contract date for the contract signing date, and the contract expiration date for the contract expiration. The valuation shall be based on the cryptocurrency standard market price as per Article 238 of the Capital Markets Act (Evaluation of Collective Investment Asset and Calculation of Standard Price, etc.). The standard market price of cryptocurrency shall be based on BINANCE, and if the cryptocurrency is not listed on BINANCE, the market price of FTX shall be used. The standard time shall be 12:00 o'clock daily.

**Article 11 (Evaluation of Investment Performance)**
Investment performance shall be evaluated based on unrealized profits and losses of futures positions at operating exchanges and wallet balances, using the market price of the respective exchanges.

**Article 12 (Notification of Investment Performance and Efforts to Enhance Transparency)**
1. Party B shall notify Party A of the investment profits and losses by email every Monday and Thursday at 2:00 PM.
2. Party A may request a full transfer of the principal and profits, including performance-based compensation, at any time for the notified investment performance. Party B must comply within three business days. Party A must then confirm and retransfer the entire amount to Party B.
3. If Party B's key operators are changed, this shall be notified to Party A.
4. Party B shall conduct trades using an absolute return strategy. If other types of trading methods are used, prior notification shall be provided. Any additional strategies shall be decided in consultation with Party A in advance.

**Article 13 (Confidentiality Obligation)**
1. Party A shall not jointly use Party B's discretionary investment services with third parties without Party B's prior consent during the performance of discretionary investment services.
2. Party B shall not disclose to third parties any information related to Party A's discretionary investment assets, management matters, or personal information learned during the contract without Party A's prior consent.

**Article 14 (Jurisdiction)**

In the event of a dispute arising from this agreement that requires litigation between Party A and Party B, the court with jurisdiction shall be determined in accordance with the Civil Procedure Act.

June 27, 2022

Party A
- Company Name: Altcore Limited
- Representative: Yanis Caceres Yarelis Yissel
- Business Registration Number: 2078362
- Email Address: contact@altcore.org
- Address: 2nd Floor, Ellen L. Skelton Building, Fishers Lane, Road Town, Tortola, British Virgin Islands, VG 1110
- Signature: (Seal) [signature]

Party B
- Name: Bang Junho
- Resident Registration Number: 940626-1188229
- Email Address: apooapooar@gmail.com
- Address: 2404, 106 Dong, 651 Samseong-ro, Gangnam-gu, Seoul, South Korea
- Signature: (Seal) [stamp affixed]