IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered) |

## DECLARATION OF JI WOONG CHOI IN SUPPORT OF MOTION FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144

I, Ji Woong Choi hereby declare that:

1.  I am a citizen of the Republic of Korea, reside in Seoul, Korea and am over the age of 18 years. I am a Managing Director and majority shareholder of Mosaic Co., Ltd. ("**Mosaic**"), a corporation organized under the laws of Korea.

2.  I submit this Declaration in support of the *Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte,, Ltd., Ji Woong Choi, and Mosaic Co., Inc, For an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), For Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name* (this "**Motion**").[2] The facts set forth in this declaration are based on my personal knowledge.

3.  I first learned about Junho Bang ("**Bang**") when I was searching for a skilled fund manager to replace my previous fund manager. I was introduced to Joon Song ("**Song**") by a CEO of a well-known blockchain company who was a trusted acquaintance of mine.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Motion.

1


4.  After meeting with both Bang and Song, in June 2022, I executed three Investment Agreements with Bang's authorized representative, Joon Song, one on my behalf, personally, and two on behalf of Mosaic. Translated copies of the Investment Agreements are attached hereto as **Exhibits A**, **B**, and **C**, respectively.

5.  At the time I caused the Investment Agreements to be executed, and throughout the term of the Investment Agreements, I intended to create, and believed I had created, a principal/agent relationship with Bang. I understood that I and/or Mosaic would entrust with Bang certain digital assets that I owned or controlled (the "**Entrusted Assets**"), that he would maintain or track these Entrusted Assets separately from any other investors, and that he would invest them on my and Mosaic's behalf on certain specified exchanges in accordance with an express investment strategy that I chose for a limited period of time.

6.  At all times, I intended that I and Mosaic would keep sole ownership of the Entrusted Assets, including all profits derived therefrom and all rights and claims arising out of them or related to them, subject only to being obligated to pay a management fee to Bang. At no time did I intend to transfer, or believe I had transferred, any ownership interest in my or Mosaic's Entrusted Assets or any claims arising out of these digital assets to Bang.

7.  On November 7, 2022, Bang told me over the telephone that he was concerned about public reports of Alameda's financial instability and its impact on my Entrusted Assets invested using the FTX exchange and that he thought it might be a good idea to transfer seventy percent (70%) of my and Mosaic's Entrusted Assets then being managed on the FTX exchange to the Binance exchange and keep the remaining amount of my Entrusted Assets at FTX. I listened to his suggestion but do not recall agreeing to that proposal at the time.

8.	I understand that, on or about November 7, 2022, Mosaic received a Telegram message (the "**November 7, 2022 Telegram**") from Bang stating the same concerns. Mosaic sent me the November 7, 2022 Telegram and I am attaching a copy of it as **Exhibit D** hereto. In the November 7, 2022 Telegram, Bang states "[if]FTX's structural issues prevent withdrawals or cause a loss of funds, we will cover these losses with internal funds to ensure there is no loss to our investors."

9.	By Telegram message, dated November 8, 2022 (the "**November 8, 2022 Telegram**"), Bang informed me that he had transferred seventy percent (70%) of my and Mosaic's Entrusted Assets from the FTX exchange to the Binance exchange and that I can "rest assured" because our Entrusted Assets were safe. A translated copy of the November 8, 2022 Telegram is attached hereto as **Exhibit E.**

10.	By Telegram message, dated November 10, 2022 (the "**November 10, 2022 Telegram**"), Bang stated, "we are currently considering it difficult to recover the assets currently in FTX and are planning to process them as losses. And as we have mentioned online, we plan to deduct the amount of loss tied up in FTX from the assets of the operator, Bang Jun-ho, currently in operation." A translated copy of the November 10, 2022 Telegram is attached hereto as **Exhibit F.** I understood from Bang's November 10, 2022 Telegram that I would be deemed the owner of that portion of Bang's digital assets that corresponded to any loss of Entrusted Assets that I might sustain due to Bang's inability to withdraw assets from the FTX exchange.

11.	I had no reason to believe that Bang had not transferred at least seventy percent (70%) of my and Mosaic's Entrusted Assets from the FTX exchange to the Binance exchange. I now know that, by November 8, 2022, trading of digital assets on the FTX exchange was frozen

and that Bang had transferred none of my or Mosaic's digital assets from FTX, but I did not know that at the time.

12. Subsequent to the Petition Date, Bang provided me with investment reports twice per week, showing me the alleged then current amount and value of my and Mosaic's Entrusted Assets managed by Bang and the return on those assets over the relevant investment period. The format of these investment reports was consistent with the investment reports Bang had provided prior to November 8, 2022. I had no reason to believe that Bang was falsely representing the amount or value of my and Mosaic's Entrusted Assets at that time.

13. Based on the false weekly reports I was receiving from Bang, I deposited additional digital assets with Bang after the Petition Date, but the additional digital assets are not the subject of the Motion or part of the Claim.

14. On the evening of June 3, 2023, Song reported to me over the telephone that Bang had lost all my and Mosaic's Entrusted Assets. The next day, on June 4th, I had an in-person meeting with Bang. At this meeting, Bang informed me that neither my nor Mosaic's Entrusted Assets had been transferred to the Binance exchange and he confessed to me that they were frozen in FTX and I had lost all of them. This was the first time that Bang disclosed that he had not transferred my or Mosaic's Entrusted Assets from the FTX exchange to the Binance exchange and that his twice-weekly investment statements to me were false.

15. In June 2023, unbeknownst to me, Bang made inquiries into selling the Claim and initiated a bidding process with several investment funds, including Svalbard/Attestor. Later, I was told that Svalbard had bid the highest price but required additional due diligence.

16. At no time did I authorize Bang to execute a trade confirmation or any other binding agreement to trade the Claim with Svalbard or with any other third party.

17. Following my initial discovery of Bang's fraud, on June 23, 2023, Bang and his counsel and I, Mr. Namho Do, Mosaic's Investment Advisor ("**Do**"), and Mosaic's Korean counsel attended a meeting at which time Bang signed a Statement of Fact (the "**June 2023 Statement of Fact**") regarding his prior misrepresentations. A translated copy of the June 2023 Statement of Fact is attached hereto as **Exhibit G**. According to the Statement of Fact, Bang confirmed that (i) his authority under the Investment Agreements was limited to investment decision-making for my Entrusted Assets, (ii) at any time, the principals under the Investment Agreement could withdraw the invested principal and profits, (iii) the Entrusted Assets were currently held in an FTX account, (iv) the Entrusted Assets had been "reported to" (i.e., a proof of claim had been filed with) the Bankruptcy Court,[3] (v) Bang was in the process of trying to sell the Claim, and (vi) because the ownership of the Entrusted Assets remained with the Principals, any distributions from the FTX bankruptcy case would be made to the Principals. *Statement of Fact* **Exhibit G** at ¶¶ 1-5.

18. Subsequently, on June 26, 2023, I, Do, and Mosaic's Korean counsel attended a meeting (the "**June 26, 2023 Meeting**") with Bang and his Korean counsel at Bang's offices in Seoul, Korea. Mr. Hyung Cheol Lim ("**Lim**") and Mr. Lim's counsel were also present at the meeting. This was the first time that I had met Mr. Lim and learned that Mr. Lim had similarly engaged Bang as an investment adviser.

19. At the June 26, 2023 Meeting, Bang disclosed in more detail to us that that he would make his best efforts to recover investors' assets and would follow investors' opinions on

---

[3] Upon information and belief, by Assignment Agreement, dated January 18, 2023, Bang assigned his rights, title, and interests in his FTX accounts (including the right to file proofs of claim in any FTX bankruptcy proceeding) to Lemma Technologies, Inc., a Panamanian company in which Bang is the sole shareholder. Based on the Statement of Fact and Confirmation of Fact and certain public records, I understand from Venable that Lemma may have filed a Proof of Claim on account of the Claim. I also understand that, on October 6, 2023, Bang signed a customer portal-generated Proof of Claim evidencing the Claim and accepting the Debtors' schedules with respect to the Claim.

dealing with the FTX claims. Bang also explained his plan to support the sale of FTX claims with the help of his attorney, Han Ko ("**Ko**"). Ko told us that he had already contacted potential buyers and suggested that Svalbard/Attestor's offer was probably the best among the offers he had received. Ko never said to us that a binding contract with any of the potential buyers, including Attestor, had already been signed. Bang assured us that he would consult with us and respect our decision regarding any contract to sell the Claim.

20.     Following the June 26, 2023 Meeting, Lim and I agreed to work with each other to obtain a recovery of our respective Entrusted Assets, and we have cooperated with each other on this matter ever since.

21.     On June 30, 2023, I sent a text message to Ko, Bang's attorney, stating that executing a trade confirmation without my prior approval was a violation of the Investment Agreements, and I requested detailed information regarding Bang's efforts sell my FTX claim. Article 12(4) of the Investment Agreements prohibits Bang from investing my Entrusted Assets using any trading method other than investing my assets on certain specified exchanges using an absolute return strategy without my prior consent.

22.     At no time did Bang ask me for permission to sign trade confirmations with Svalbard for the sale of our FTX claims, including the Claim,[4] before he signed the Svalbard Trade Confirmation, nor have I authorized him to do so at any time. I first learned about the existence of the Svalbard Trade Confirmation in early August 2023, and in late August or early September 2023, I was told it was allegedly a legally binding contract. At the same time, Lim

---

[4] Bang had two FTX accounts and he and/or Lemma filed a proof of claim for both accounts. The Proof of Claim that is the subject of this Motion relates only to the $59 million FTX Account and evidences the Claim that is owned by me, Mosaic, Lim, Aimed, and Blocore.

6

and I were also told about certain terms of a sale to Svalbard that we found unacceptable and which we later communicated to Bang.

23. On September 26, 2023, Bang supplemented the Statement of Fact with a Confirmation of Fact, a translated copy of which is attached hereto as **Exhibit H**. According to the Confirmation of Fact, Bang had two accounts on the FTX exchange, one for approximately $59 million (corresponding to the Claim) (the "**FTX Account**"),[5] which he confirmed was entirely owned by me/Mosaic and Lim, and the other for approximately $106 million which he confirmed was owned partly by me/Mosaic and Lim and partly by other investors. *Confirmation of Fact,* **Exhibit H** at ¶¶ 3-4. The second account (which corresponds to claim number 50458) is not the subject of the Motion, and while, based on the Confirmation of Fact and Statement of Fact, I understand that Mosaic, Lim and I have a combined 28.81% ownership interest in this account, at this time, we are simply reserving our rights with respect to that claim.

24. Either in October or November 2023, with the assistance of my counsel's comparing published lists of FTX customer creditors, I became aware that Bang had assigned his rights and claims related to his FTX account to Lemma. I never authorized Bang to assign any of his or my rights under my Investment Agreements or otherwise to any third party and 13(2) of the Investment Agreements prohibits Bang from disclosing any details of my Entrusted Assets (including management or personal information related to my Entrusted Assets) to any third party without my prior consent.

25. Towards the end of October 2024, Mosaic and I, along with Lim and his wholly-owned entities, Aimed and Blocore, engaged the legal services of the Venable LLP to represent us in the Debtors' chapter 11 cases including in connection with the Claim and the Proof of

---

[5] The value of this claim is an estimate based on the prevailing asset prices of digital assets as of the Petition Date.

7

Claim and retained Xclaim to provide claim analytics, claim validation, and market valuation services. and the cryptocurrency investigative firm of CF Investigators, Inc. [6]

26. Lim, Mosaic, and I, through our professionals, Xclaim and CF Investigators, have confirmed that (a) Bang caused all of my Entrusted Assets to be deposited directly on the FTX exchange within minutes or hours of Bang's initial receipt of the Entrusted Assets and (b) consistent with Bang's obligations in the Investment Agreements, at no point between the time he received the Entrusted Assets and the time he caused such assets to be deposited with FTX did Bang trade, exchange, convert, divide, or manipulate the Entrusted Assets or cause such assets to become comingled with his own assets or the assets of third parties. *Declaration of Andrew Glantz In Support of Motion for Leave to Amend Proof of Claim No. 87144*, ("**Glantz Declaration**") at ¶ 13.

27. Based on the FTX Account data and Bang's own internal records provided by Bang to me, Lim, and Mosaic, which data we provided to Venable and Xclaim on or about January 13 2025, including account balances and derivative positions as of the Petition Date for Bang's main account and all subaccounts and historical transaction data such as deposits, withdrawals, and on-exchange transactions to, from, and within his main account and subaccounts, I understand that Xclaim was able to verify that Bang deposited all of my Entrusted Assets in the FTX Account that relates to the Proof of Claim. Glantz Declaration at ¶ 15.

28. I also understand that Xclaim has verified that Bang deposited the following amounts into the FTX Account that relates to the Proof of Claim: (a) deposits of approximately $4.7 million of digital assets from a third party ("**Investor A**") (priced as of the Petition Date), (b) deposits of approximately $2.0 million of digital assets from another third party ("**Investor**

---

[6] Contemporaneously with the filing of my Declaration, I understand that Venable filed a Bankruptcy Rule 2019 Statement disclosing its representation of me and the other Principals in the Debtors' bankruptcy cases.

**B**") (priced as of the Petition Date), and (c) deposits of approximately $18.3 million of digital assets (priced as of the Petition Date) which, upon information and belief based on Bang's books and records, represent Bang's own digital assets. Glantz Declaration at ¶ 17.

29.     Finally, Xclaim has informed me that Bang's records from FTX show that Bang withdrew approximately $35 million in digital assets (valued as of the Petition Date) in the months prior to the Petition Date. Glantz Declaration at ¶ 18. Because Bang informed me on June 4, 2023 (and again at the June 26, 2023 Meeting) that none of *my* Entrusted Assets were transferred off the FTX exchange, and in the June 23, 2023 Statement of Fact and the September 26, 2023 Confirmation of Fact, Bang stated that he considered me, Lim, and Mosaic to be entitled to at least 100% of the Claim, I understand that it is likely Bang withdrew, prior to the Petition Date, all of Investor A's assets (who I understand from Xclaim has been paid in full), a portion of Bang's own assets, and potentially some or all of Investor B's assets.

30.     I understand that Bang accessed the FTX claims portal on October 6, 2023 to accept the amount of the Claim then listed on the Debtors' schedules and that, by accessing the portal, a customized proof of claim was automatically generated which Bang signed in his own name, checking the box marked "I am the creditor," even though he should have checked the box marked "I am the creditor's authorized agent".

31.     I understand that the Debtors' Plan and Confirmation Order require customer creditors to complete a KYC process to receive Plan distributions. I also understand that, on November 22, 2024, the Debtors' filed the KYC Objection, objecting to the Claim solely because it is, as yet, unverified, and scheduling March 1, 2025 as the deadline for commencing the KYC process and June 1, 2025 as the deadline for completing the KYC process. Neither I nor Mosaic received notice of the filing of the KYC Objection.

32. Bang remains incarcerated in South Korea. Accordingly, I understand that it is likely to be impossible for Bang to timely or satisfactorily complete the KYC process related to the Claim, but I and Mosaic (as the principals under the Investment Agreements) can timely satisfy the Debtors' KYC process, and I understand that Lim and his wholly-owned entities can satisfy the KYC process as well. As I, Mosaic, Lim and Lim's wholly-owned companies are the true holders of the Claim, and the Proof of Claim that Bang filed should have reflected that he was our agent and not the creditor, I respectfully submit that it would be appropriate for this Court to grant us leave to amend the Proof of Claim to correct the identity and notice and payment addresses of the creditor on the Proof of Claim and commence, as soon as possible, the Debtors' KYC process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief,

Dated: January 20, 2025
Seoul, Korea

*/s/ Ji Woong Choi*
Ji Woong Choi