**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD.,[1]<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>Re: Proof of Claim No. 87144 |

**DECLARATION OF ANDREW GLANTZ IN SUPPORT OF MOTION FOR
LEAVE TO AMEND PROOF OF CLAIM NO. 87144**

I, Andrew E. Glantz, hereby declare that:

1.　　　I reside in the State of New York and am over the age of 18 years. I am the Chief Strategy Officer (CSO) and Counsel of XClaim Inc. ("**Xclaim**"), a company that operates a global online marketplace and brokerage platform for the trading of bankruptcy claims (including cryptocurrency-related claims), receivables, litigation claims and other forms of distressed debt. I am also admitted to practice before, and am in good standing with, the bar of the State of New York. Prior to joining Xclaim, I practiced as a bankruptcy attorney at two global law firms, and prior to that was employed as a management consultant. I have more than a decade of experience representing creditors and other parties-in-interest in complex restructurings and claims-related transactions.

2.　　　Approximately $1 billion of claims notional in nearly 100 bankruptcy cases have traded on the Xclaim's platform, including in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" or "**FTX**"). Xclaim has closed

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

1

hundreds of trades of claims against the Debtors, including trades of customer claims, with more than 60 unique buyers. Xclaim has also traded claims or advised the holders of customer and general unsecured claims in other crypto insolvency proceedings, including, but not limited to, BlockFi, Celsius, CRED, Genesis, Mt. Gox, Three Arrows Capital, Vauld and Voyager. In connection with these activities, Xclaim regularly engages in the analysis of digital asset movements on and off centralized cryptocurrency exchanges.

3.  As CSO at Xclaim, I am experienced in, among other things, tracking deposits, withdrawals and the movement of digital assets to and from individual wallets and centralized cryptocurrency exchanges using public blockchain explorers and other software tools. I am also familiar with the Debtors' chapter 11 cases and the procedure for filing customer claims and complying with the Know Your Customer process (the "**KYC process**") required for customer claimants to obtain allowance of their claims and become eligible to receive distributions under the Debtors' Joint Chapter 11 Plan of Reorganization (the "**Plan**")[2]. I am also familiar with the functionality of the FTX customer claims portal (https://claims.ftx.com/welcome) (the "**Claims Portal**") and the format by which the Debtors have provided historical account information to customer claimants, including, with respect to each FTX account, main and subaccount balances as of the Petition Date and prepetition deposits, withdrawals and other transactions within, to and from the main account and all subaccounts.

4.  In October 2024, Hyung Cheol Lim ("**Lim**"), Blocore Pte., Ltd. ("**Blocore**"), Aimed, Inc. ("**Aimed**"), Ji Woong Choi ("**Choi**"), and Mosaic Co. Ltd. ("**Mosaic**") (collectively, the "**Principals**") retained Xclaim to assist them in determining the status of their claims against the Debtors (the "**Principals' Claims**"), identifying the steps they might need to take to preserve

---

[2] The Plan was confirmed by order of the Court dated October 8, 2024 [Dkt. No. 26404] (the "**Confirmation Order**") and became effective January 3, 2025.

2

and receive their distributions under the Plan and assessing the value of their claims based on trading prices in the secondary FTX claims market, in which Xclaim is a leading participant.

5. I understood from the Principals that they had executed investment agreements in South Korea with Junho Bang ("**Bang**") or his authorized representative, Joon Song, pursuant to which the Principals would entrust certain digital assets that they owned or controlled with Bang and that Bang would invest their digital assets on the Principals' behalf on certain specified exchanges, including the FTX exchange, in accordance with an express investment strategy chosen by the Principals (the "**Investment Agreements**"), and that the Principals did in fact entrust these digital assets (the "**Entrusted Assets**") with Bang in the months and weeks prior to November 11, 2022, when the Debtors first commenced their chapter 11 cases (the "**Petition Date**"). I understood that, pursuant to these Investment Agreements, as described more fully in the Motion, Bang was obligated to maintain or track the Entrusted Assets separately from any other investors, both to avoid conflicts with other investors and so that Bang could determine the agency commission to which he might be entitled based on the performance of each digital asset so invested, and that at any time during the term of the Investment Agreements, the Principals could request a return of the principal of and profits on the Entrusted Assets, and Bang was obligated to comply with the request.

6. I also understood that, after the Petition Date, Bang caused the filing of a proof of claim—that failed to identify himself as agent for the Principals in connection with the investment of the Entrusted Assets on the FTX exchange—in the approximate amount of $59 million based on the Petition Date value of the digital asset balances and open positions in the corresponding FTX account opened in his name.[3]  I also understood that, on January 18, 2023,

---

[3] I understand that Bang also filed a second proof of claim, related to certain other digital assets in a separate account managed by Bang on the FTX exchange, in the approximate amount of $106 million based on the Petition

3

Bang purportedly assigned all of his rights against FTX to Lemma Technologies, Inc. ("**Lemma**"), a Panamanian entity in which, upon information and belief, Bang is the sole shareholder; and that on June 16, 2023, Bang secretly, and without the Principals' consent or authorization, caused his lawyer to execute a trade confirmation on behalf of Lemma with Svalbard Holdings, Limited ("**Svalbard**")[4] to sell the Principals' claims against the Debtors to Svalbard, but that the trade was never consummated and that the trade confirmation is currently the subject of a breach of contract lawsuit in New York state court.

7. I understand that Bang was sentenced to 10 years in prison and is currently incarcerated in South Korea following his conviction for fraudulent acts undertaken after the Petition Date (which he has appealed) and, as such, it is likely impossible for him to timely and satisfactorily complete the Debtors' KYC process, or timely file pleadings with this Court to amend the proof of claim he filed on the Principals' behalf.

8. I submit this Declaration in support of the *Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte,, Ltd., Ji Woong Choi, and Mosaic Co., Inc, For an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), For Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* (this "**Motion**").[5]

---

Date value of the digital asset balances and open positions in the account. Although my analysis does not indicate that the Entrusted Assets comprise part of this second claim, the Principals understand they may also have an ownership interest in the second claim.

[4] Although Xclaim has facilitated trades to Svalbard in these chapter 11 cases, Xclaim has never marketed the Principals' Claims to Svalbard or any other claim buyer.

[5] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Motion.

9. To assist the Court in granting the relief requested in the Principals' Motion, the Principals have asked me to: (i) track their digital assets from the time they were entrusted with Bang pursuant to the Investment Agreements until such funds arrived at FTX to be managed by Bang, and (ii) identify how Bang managed their digital assets once deposited on FTX.

### i. Bang Deposited 100% of the Entrusted Assets on the FTX Exchange

10. Digital asset transactions executed on public blockchain networks (on-chain transactions) are recorded on public transaction ledgers. The digital asset transfers from the Principals, to Bang, to FTX were executed on the Ethereum blockchain (ETH) network and the Bitcoin blockchain (BTC) network.

11. The public transaction ledgers for these blockchain networks may be reviewed using a blockchain explorer (e.g. Etherscan or Blockchair). Each verified blockchain transaction is assigned a "transaction hash" (or "transaction ID"), which is a unique string of characters used to identify the transaction on the blockchain network. All on-chain transactions (including transfers between public wallet addresses, such as the wallets controlled by Bang) as well as deposits and withdrawals from centralized platforms (such as the FTX exchange) have a unique transaction hash that can be found in the transaction details recorded at the time of the transaction. Every public wallet address is unique. By entering a valid transaction hash in the search function of a blockchain explorer, one can identify the public wallet address (or addresses) from which the subject digital assets were sent and received in the transaction. Blockchain explorers commonly identify public wallet addresses associated with the most prominent centralized exchanges, like FTX, Binance, Coinbase and Kraken by name. Proprietary blockchain analytics software applications such as TRM Labs investigation software ("**TRM Forensics**") and Chainalysis investigation software ("**Chainalysis**") not only connect

cryptocurrency transactions to real-world entities, automatically "tagging" or labeling wallets by owner when such information is readily ascertainable, they also allow investigators to identify connections between wallet addresses to determine common ownership and/or control of related private wallets (known as "wallet clustering analysis") and visualize the movement of cryptocurrency between wallets and wallet clusters.

12. After reviewing each transfer of the Entrusted Assets and all associated wallet addresses, I have concluded that (a) Bang caused all of the Entrusted Assets to be deposited on the FTX exchange, and (b) consistent with Bang's obligations in the Investment Agreement detailed in the Motion, at no point between the time he received the Entrusted Assets and the time he caused such assets to be deposited with FTX, did Bang trade, exchange, convert, divide or manipulate such assets, or cause such assets to become comingled with his own assets or the assets of third parties.

13. In each case, Bang caused the Entrusted Assets to be deposited directly on the FTX exchange within minutes or hours of his initial receipt of such assets.[6] Further, during the short time that the Principals' digital assets remained on wallets controlled by Bang, public blockchain records indicate that no digital assets of third parties were contemporaneously on balance at such wallets.[7]

---

[6] In only one instance, Bang transferred Entrusted Assets to FTX by way of an intermediary wallet address not identified in the Investment Agreements as controlled by him (the "**Intermediary Wallet**"). Based on a review of historical activity at the Intermediary Wallet and other wallets known to be controlled by Bang, the Intermediary Wallet is most likely also controlled by Bang.

[7] The same holds true for the Intermediary Wallet, which is also likely controlled by Bang.

### ii. Bang Deposited 100% of the Entrusted Assets in the FTX Account Corresponding to Proof of Claim 87144

14. FTX account holders can, via the Claims Portal, securely view and download account data including account balances and derivative positions as of the Petition Date for their main account and all subaccounts, and historical transaction data including deposits, withdrawals and on-exchange transactions to, from and within their main account and all subaccounts (the "**FTX Account Data**"). Accessing the Claims Portal requires a user to log in using the same username and password used to create their FTX account and completing multi-factor authentication and email verification. Each FTX main account is identified by a unique customer code assigned by the Debtors and used to anonymously relate the account to any corresponding scheduled claims and proofs of claim.

15. On January 13, 2025, Bang made available to the Principals the FTX Account Data related to the FTX account corresponding to Proof of Claim 87144 (the "**Client Account**") in .csv format.[8] The FTX Account Data identifies each transfer of digital assets between the Client Account and accounts or wallets external to the FTX exchange by its transaction hash. The FTX Account Data for the Client Account also provides a record of intra-account asset transfers (between subaccounts or between the main account and subaccounts) and a record of other transactions executed on platform (e.g., origination of derivative positions, token air drops) from the Client Account. These intra-account and on-platform transactions are not identified by a transaction hash as they occurred entirely within the FTX exchange and not between public wallet addresses. The FTX Account Data provided for the Client Account includes all of transaction hashes corresponding to Bang's transfers of the Entrusted Assets to wallet addresses

---

[8] Bang provided the Principals access to these records without any restrictions on confidentiality or otherwise.

7

associated with the FTX exchange. This confirms that Bang deposited all of the Entrusted Assets to the Client Account.

16. Using daily closing prices from https://coinmarketcap.com, I estimate that Bang caused approximately $141.1 million of the Principals' digital assets (priced as of the date of each transfer) (or $121.4 million priced as of the Petition Date) to be deposited into the Client Account between June 23, 2022 and the Petition Date.

17. The FTX Account Data also shows that Bang deposited certain digital assets other than the Entrusted Assets to the Client Account prior to the Petition Date. As described more fully in the Motion, these deposits include (a) deposits of approximately $4.7 million of digital assets owned by a third-party investor ("**Investor A**") (priced as of the Petition Date), (b) deposits of approximately $2.1 million of digital assets from another third-party investor ("**Investor B**") (priced as of the Petition Date); and (c) deposits of approximately $18.4 million of digital assets which, upon information and belief based on Bang's books and records, represent Bang's own personal digital assets (priced as of the Petition Date).

18. The FTX Account Data also shows that Bang withdrew approximately $34.9 million in digital assets from the Client Account in the months leading up to the Petition Date. Bang's own records, provided to the Principals, show that Investor A and Investor B have recovered payments from Bang on account of their investments and that Investor B has been repaid in full.

    iii. **My analysis is based on a robust review of all relevant transaction data**

19. My analysis[9] of on-chain transactions is based on a review of each Investment

---

[9] If requested by the Court, Xclaim will provide a copy of the detailed analysis, including all transaction data and asset flow visualizations, to the Court in camera.

Agreement, Bang's wallet addresses designated for the deposit of the Principals' digital assets identified therein, and every transaction hash and wallet address associated with the Principals' digital assets starting from the first transfer of digital assets from the Principals to Bang to the time such digital assets were caused to be deposited to FTX. Using public blockchain explorers, including Etherscan (https://www.etherscan.io), Arkham Intelligence (https://intel.arkm.com), Blockchain.com (https://blockchain.com/explorer), and Blockchair.com (https://blochair.com), I traced the flow of the Entrusted Assets to FTX deposit addresses. I also reviewed visualizations of these digital asset flows modeled at my direction by CF Investigators Inc. ("**CFI**"), a cryptocurrency investigations firm, using FTM Forensics and Chainalysis,

20. At my direction, CFI also used TRM Forensics and Chainalysis to confirm that certain deposit addresses that received the Entrusted Assets are associated with the FTX exchange. At my direction, CFI also used TRM Forensics to conduct a wallet clustering analysis on the Intermediary Wallet; this analysis showed that the Intermediary Wallet (a) was used on multiple occasions to pay Ethereum "gas fees" (blockchain network fees) when other Bang wallet addresses needed Ethereum to complete a digital asset transfer on the Ethereum blockchain network and (b) was used on other occasions to deposit digital assets to a unique Binance deposit address that had also received digital assets from public wallet addresses known to be controlled by Bang. These facts that strongly support the inference that Bang also controlled the Intermediary Wallet.

21. My analysis of transactions on the FTX exchange is based on a review of the FTX Account Data for the Client Account downloaded from the FTX Claim Portal and made available to the Principals by Bang. I reviewed the 'balances', 'downloads', 'withdrawals' and

'core_transactions' .csv files for the main account and subaccounts associated with the Client Account.

22. I have also reviewed Bang's internal records, which, as described in the Declarations of Choi and Lim, Bang provided to the Principals in August 2023, documenting transfers of assets between Bang and his investors leading up to and following the Petition Date, including transfers between Bang and the Principals, Bang and Investor A, Bang and Investor B, and Bang and others.

23. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 21, 2025
New York, New York

_____
Andrew E. Glantz