IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., et al., | ) Case No. 22-11068 (JTD) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Re: D.I. 29196 |

**LIDIA FAVARO'S OBJECTION TO THE FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM NOVEMBER 13, 2022, THROUGH AND INCLUDING OCTOBER 8, 2024**

Lidia Favario ("The Objector"), a customer of FTX Trading, specifically FTX.com, submits this objection (the "Objection") to the fee application submitted by Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel") [D.I. 29196], and in support of her objection respectfully states as follows:

## I. INTRODUCTORY STATEMENT

1. As a creditor directly impacted by the financial collapse of FTX, I respectfully assert my right to be heard in these proceedings, with a vested interest in ensuring transparency and accountability in the administration of the bankruptcy estate.
2. This Objection focuses on the significant issues raised by the Final Fee Application of Quinn Emanuel Urquhart & Sullivan, LLP. Specifically, the failure to perform their duties as conflict counsel, undisclosed conflicts of interest, and disproportionate fees for limited creditor recoveries, which at a minimum undermine the integrity of the bankruptcy process.

## II. JURISDICTION AND STANDING

3. This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334, as well as the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.
4. As a creditor and customer of FTX, I have standing to raise objections under 11 U.S.C. § 1109(b), which grants parties in interest the right to be heard on matters relating to the administration of bankruptcy cases.

## III. FACTUAL BACKGROUND

5. In 2019, Binance's founder and largest shareholder, Changpeng Zhao ("CZ") invested $80 million in FTX, becoming its second-largest shareholder.
6. On July 15, 2021, FTX paid Binance $2.275 billion to repurchase such shares —funds later traced largely to FTX customer deposits, with expert witness Professor Easton showing at least $1.2 billion came directly from FTX customer accounts during SBF's trial.
7. On November 2, 2022 CoinDesk published a leaked Alameda balance sheet. Four days later, on November 6, CZ announced on Twitter that Binance would sell its FTT holdings, triggering FTX's eventual collapse.
8. On November 11, 2022, FTX, its affiliated crypto trading firm Alameda Research, and about 130 of its other companies have commenced voluntary Chapter 11 bankruptcy proceedings following a run on the bank
9. On December 21, 2022, [D.I. 280], the Debtors filed an application to retain and employ Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as special counsel for the Debtors, nunc pro tunc to November 13, 2022. That same day, William Burck of Quinn Emanuel declared under penalty of perjury that:

   "Quinn Emanuel will review its client database periodically during the course of its engagement in these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Quinn Emanuel will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a)."

10. On January 20, 2023, [D.I. 548], the Court approved the retention of Quinn Emanuel as special counsel for the Debtors, nunc pro tunc to November 13, 2022. The Court's order included the following provision:
    "For the duration of these Chapter 11 Cases, Quinn Emanuel shall not represent a party in a matter in which Quinn Emanuel's representation is directly adverse to the Debtors."
    However, court filings reveal that William Burck of Quinn Emanuel represented CZ in the USA v. Binance case before the Department of Justice from November 16, 2023, to April 30, 2024.

11. On April 5, 2024, [D.I. 11323], William Burck omitted to declare to the Delaware Bankruptcy Court his and Quinn Emanuel's updated relationship with Binance, Changpeng Zhao ("CZ"), and related parties, despite prior assurances of periodic conflict reviews and compliance with disclosure obligations under Bankruptcy Rule 2014(a).

12. On August 21, 2024, William Burck filed to represent CZ in the *SEC v. Binance* case. As of January 2025, five months have passed, and Burck has yet to declare this updated relationship to the Delaware Bankruptcy Court.

## IV. LEGAL STANDARDS

13. Professionals retained in bankruptcy cases are held to stringent standards to ensure transparency, integrity, and the maximization of the estate's value for the benefit of creditors. The Bankruptcy Code and Rules establish clear guidelines for professional conduct, disclosure, and compensation.

### A. Disclosure Obligations Under Bankruptcy Rule 2014(a)

14. Under Bankruptcy Rule 2014(a), professionals seeking employment in bankruptcy cases must disclose "all connections with parties in interest in the case," not just those that appear to implicate disinterestedness. See In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005). Courts strictly enforce this disclosure requirement because it is indispensable to their duty to ensure the professional's eligibility for employment and safeguard the best interests of the estate. See In re Jore Corp., 298 B.R. 703, 725 (Bankr. D. Mont. 2003).

15. This disclosure obligation is continuing and requires the professional to update the court as new connections arise. Courts have made it clear that professionals cannot selectively withhold information they deem irrelevant. See In re Southmark Corp., 181 B.R. 291, 296 (Bankr. N.D. Tex. 1995). A failure to disclose even trivial connections can result in denial of fees or disqualification. See In re Hathaway Ranch Partnership, 116 B.R. 208, 219-20 (Bankr. C.D. Cal. 1990).

### B. Conflicts of Interest and Adverse Interests Under 11 U.S.C. §§ 327 and 328(c)

16. Pursuant to 11 U.S.C. § 327(a), professionals employed by the estate must be "disinterested persons" who do not hold or represent an interest adverse to the estate. This disinterestedness requirement is fundamental to the integrity of bankruptcy proceedings. See In re Marvel Entm't Grp., Inc., 140 F.3d 463, 476 (3d Cir. 1998).

17. Under 11 U.S.C. § 328(c), the court has the authority to deny fees and expense reimbursements if, at any time during employment, the professional holds or represents an interest adverse to the estate. See In re BH & P, Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991). The Third Circuit has emphasized that the court must root out even the appearance of impropriety to maintain the integrity of the bankruptcy process.

### C. Reasonableness of Fees Under Bankruptcy Rule 2016(a) and Section 330

18. Bankruptcy Rule 2016(a) requires that fee applications include a detailed disclosure of the services rendered, the time expended, and the expenses incurred, along with an explanation of how these services benefited the estate. See In re Fleming Cos., Inc., 304 B.R. 85, 92 (Bankr. D. Del. 2003).

19. Section 330(a)(3) of the Bankruptcy Code requires courts to evaluate the reasonableness of fees by considering factors such as:

- The necessity and value of the services to the estate.
- The time spent and whether it was commensurate with the results achieved.
- Whether the services were performed in a cost-effective manner.

20. Courts may deny or reduce fees if the services rendered were unnecessary or failed to provide a meaningful benefit to creditors. See In re Wireless Tel. Servs., Inc., 449 B.R. 228, 232 (Bankr. M.D. Pa. 2011); In re Quigley Co., Inc., 500 B.R. 347, 361 (Bankr. S.D.N.Y. 2013).

### D. Fiduciary Duty to Maximize the Estate

21. Professionals retained in bankruptcy cases owe a fiduciary duty to the estate and its creditors to act in their best interests. This includes a duty to avoid unnecessary litigation and to pursue actions that will maximize recoveries for creditors. See In re Kids Creek Partners, L.P., 248 B.R. 554, 560 (Bankr. N.D. Ill. 2000).

22. If a professional prioritizes its own interests or those of other clients over the estate, it breaches this fiduciary duty and may be subject to disqualification or denial of fees. See In re Bidermann Indus. U.S.A., Inc., 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997).

### E. Prevention of Fee Churning and Abuse

23. Courts have a duty to scrutinize professional fees to ensure that they are proportionate to the value provided to the estate and to prevent abusive billing practices, known as "fee churning." See In re United Artists Theatre Co., 315 F.3d 217, 230 (3d Cir. 2003); In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994).

24. Excessive billing without commensurate results undermines the estate and is contrary to the principles of the Bankruptcy Code. See In re Fleming Cos., Inc., 304 B.R. 85, 92 (Bankr. D. Del. 2003).

### F. Equitable Powers Under Section 105(a)

25. Finally, 11 U.S.C. § 105(a) grants courts broad equitable powers to take actions necessary to prevent abuse of process and ensure that bankruptcy cases are administered in a manner consistent with the Code's purposes. See Marrama v. Citizens Bank of Mass., 549 U.S. 365, 375 (2007).

26. This section empowers the court to deny or adjust professional fees if doing so is necessary to protect creditors' interests and maintain fairness in the administration of the case.

## V. ARGUMENT

### A. Failure to Fulfill the Role of Conflict Counsel

27. As conflict counsel, Quinn Emanuel was retained to conduct investigations and pursue clawbacks, particularly in instances where Sullivan & Cromwell ("S&C") faced potential conflicts of interest. However, Quinn Emanuel's actions indicate that it has failed to act independently or prioritize the best interests of the creditors. Specifically, rather than targeting entities or individuals whose actions could yield substantial financial recovery for creditors, Quinn Emanuel appears to have disproportionately focused on pursuing adversary actions against critics of S&C, such as Dan Friedberg and Sam Bankman-Fried's parents. This selective approach raises concerns about whether Quinn Emanuel is acting as an independent fiduciary or simply shielding S&C from scrutiny.

28. Furthermore, as Conflict Counsel, Quinn Emmanuel was directly responsible for the investigations into transactions where S&C had a pre-petition engagement with the Debtors. Specifically, Quinn Emmanuel failed to investigate any of the pre-petition activities of Debtor Ledger Holdings, Inc. ("LHI") and its Non-Debtor subsidiary, LedgerX. As was outlined by the Examiner in his report filed with the court [D.I. 15545]:

"The Court specifically contemplated the possibility that one or more of the transactions that S&C advised the Debtors on prepetition could become the subject of a postpetition investigation. The Court held that, if 'any investigation would be required of those transactions with which Sullivan & Cromwell might have been involved . . . debtors have retained conflict counsel to conduct any investigation that might touch on those issues.' Thus, the Court approved S&C's retention on the basis that, if a postpetition investigation were required into any transaction that S&C was involved in, conflicts counsel would be retained for that work. As a result, no later than when S&C determined that there might a potential clawback action, the investigation into WRS' prepetition purchase of LHI should have been handed over to Quinn Emanuel as conflicts counsel. Quinn Emanuel attorneys have confirmed that they were not involved in any such investigation."

29. The conduct of bankruptcy proceedings not only should be right but must seem right. This failure casts doubt on the impartiality and independence of Quinn Emmanual in these cases.

### B. Failure to Pursue High-Value Clawback Opportunities

30. Despite its mandate, Quinn Emanuel has notably failed to initiate a clawback action against Binance. Publicly available court filings reveal that a Binance clawback could result in one of the most significant financial recoveries for the creditors. While an adversary proceeding was filed for this matter, it notably was only filed by White & Case, counsel for the Joint Official Liquidators ("JOLs") of the Bahamas for FTX Digital Markets. Specifically, on November 10, 2024, the JOLs filed adversary actions against Binance on behalf of the Debtors, seeking to "recover, for the benefit of FTX's creditors, at least $1.76 billion that was fraudulently transferred to Binance and its executives at the FTX creditors' expense, as well as compensatory and punitive damages to be determined at trial." [D.I. 27852]

The decision by the Debtors not to pursue this avenue is particularly troubling given the following:

- William Burck from Quinn Emanuel represented Binance's founder and largest shareholder, Changpeng Zhao ("CZ"), before the Department of Justice ("DOJ") from November 16, 2023, to April 30, 2024. (Exhibit A)
- On April 5, 2024, William Burck declared under penalty of perjury that "Quinn Emanuel does not have any active relationship with any of the Potential Parties in Interest." This statement is contradicted by Quinn Emanuel's undisclosed representation of CZ and Binance. (Exhibit B)
- William Burck from Quinn Emanuel has also represented CZ and Binance before the Securities and Exchange Commission ("SEC") since August 2024. (Exhibit C)
- William Burck, a partner at Quinn Emanuel, personally billed the Debtor estate $550,000 while simultaneously

representing Binance and CZ and failing to disclose this conflict of interest before the Bankruptcy Court of Delaware. (Exhibit D)

31. These representations suggest a potential conflict of interest that may have influenced Quinn Emanuel's decision-making, undermining its duty to maximize financial recoveries for creditors.

C. **Exorbitant Fees Without Meaningful Recoveries**

32. As of October 8, 2024, Quinn Emanuel has billed an astounding $46,411,031.77. Despite this substantial expenditure, the results achieved for creditors have been minimal and largely unrelated to financial recoveries. A notable example is Quinn Emanuel's prolonged litigation against Dan Friedberg, which has been ongoing since June 2023 and focuses on clawing back a $3 million bonus. This effort, while aggressive, is disproportionate given the firm's significant billing on this matter and the potential recovery amount. Notably, this stands in stark contrast to the inaction taking to recover a similar bonus of $1,200,000 [D.I. 3410] reportedly paid to Ryne Miller by Alameda Research, critically not only within the avoidable preference period pre-petition but also from an entity to which Mr. Miller had no pre-petition contractual relationship to award such bonus. The incongruous treatment of these similar potential adversary proceedings gives rise to an appearance of impropriety, which continues to undermine public trust in the bankruptcy process.

D. **Purely Retaliatory Actions**

33. Quinn Emanuel's work appears to be heavily focused on retaliatory litigation rather than pursuing actions that would yield significant financial returns. This strategic misalignment has not only failed to serve the best interests of the creditors but also diverted substantial estate resources away from more productive efforts.

VI. **CONCLUSION**

34. In light of the above standards, the Court should carefully scrutinize Quinn Emanuel's fee application. Their failure to disclose connections with Binance and Changpeng Zhao, as well as the disproportionate focus on low-value litigation, raise serious concerns under Bankruptcy Rules 2014(a) and 2016(a) and Sections 327, 328, and 330 of the Bankruptcy Code. Additionally, the Court's equitable powers under Section 105(a) empower it to take corrective action to safeguard the interests of creditors and preserve the integrity of the bankruptcy process.

35. Considering these significant issues and the legal standards outlined above, I respectfully request that the Court carefully scrutinize Quinn Emanuel's fee application to ensure it meets the strict requirements of the Bankruptcy Code and Rules. Specifically, I urge the Court to:

- Require a detailed accounting of how the billed hours and fees have directly benefited the creditors.
- Examine the firm's decision-making process in determining which adversary actions to pursue and whether conflicts of interest influenced these decisions.
- Consider a reduction or denial of fees for work that has not demonstrably advanced the creditors' interests.

36. For these reasons, I respectfully urge the Court to act in the best interests of the creditors by addressing the concerns outlined in this Objection.

Sincerely,
Lidia Favario

Dated: January 20, 2025

*Lidia Favario*
*54 Peregrine House*
*Hall Street*
*London EC1V 7PQ*
*UK*
*Phone 0044 (0) 7536051757*
*lidia@lidialidia.com*

# Exhibit A

Case 2:23-cr-00179-RAJ   Document 6   Filed 11/16/23   Page 2 of 4



United States District Court
Western District of Washington

| UNITED STATES OF AMERICA | |
|---|---|
| Plaintiff(s) | Case Number: CR23-179 JHC |
| V. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| CHANGPENG ZHAO, aka "CZ," | |
| Defendant(s) | |

Pursuant to LCR 83.1(d) of the United States District Court for the Western District of Washington,

William A. Burck hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the following party or parties:

Changpeng Zhao, aka "CZ"

The particular need for my appearance and participation is:

I am one of the lead counsel for the Defendant.

2:23-cr-00179-RAJ All Defendants USA v. Zhao
Date filed: 11/14/2023
Date terminated: 04/30/2024
Date of last filing: 05/09/2024

## Attorneys

| | | |
|---|---|---|
| **Beau Barnes**<br>US DEPARTMENT OF JUSTICE (7700 CIVIL RIGHTS)<br>950 PENNSYLVANIA AVE NW<br>SUITE 7700<br>WASHINGTON, DC 20530<br>202-305-4679<br>beaudre.barnes@usdoj.gov<br>*Assigned: 11/20/2023*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | representing | **USA**<br>*(Plaintiff)* |
| **Mark N Bartlett**<br>DAVIS WRIGHT TREMAINE (SEA)<br>920 FIFTH AVE<br>STE 3300<br>SEATTLE, WA 98104-1610<br>206-622-3150<br>206-757-7700 (fax)<br>MarkBartlett@dwt.com<br>*Assigned: 11/14/2023*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | representing | **Changpeng Zhao (1)**<br>*TERMINATED: 04/30/2024*<br>*(Defendant)* |
| **William A Burck**<br>QUINN EMANUEL URQUHART & SULLIVAN LLP (DC)<br>1300 I STREET NW STE 900<br>WASHINGTON, DC 20005<br>202-538-8265<br>202-538-8100 (fax)<br>williamburck@quinnemanuel.com<br>*Assigned: 11/17/2023*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | representing | **Changpeng Zhao (1)**<br>*TERMINATED: 04/30/2024*<br>*(Defendant)* |

## Exhibit B

The New Parties together with the parties identified on the schedules to the Prior Declarations are hereinafter referred to as the "Potential Parties in Interest."

8.  Based on the review protocol described in the Initial Declaration, the relationships with the New Parties are identified on Schedule 2 attached hereto.

9.  Based on the results of its review, to the best of my knowledge, except as set forth herein or in the Prior Declarations, Quinn Emanuel does not have an active relationship with any of the Potential Parties in Interest in matters relating to the Debtors' chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 5, 2024.

/s/ William A. Burck
William A. Burck
Partner
Quinn Emanuel Urquhart & Sullivan, LLP

Case 22-11068-JTD    Doc 11323-2    Filed 04/05/24    Page 2 of 4

| Name of Entity Searched | Relationship to Debtors | Name of Entity and/or Affiliate of Entity that is Client | Quinn Emanuel Relationship |
|---|---|---|---|
| Abu Dhabi Investment Council Company P.J.S.C. | Interested Parties | Abu Dhabi Investment entities | Current Client |
| Altimeter | Investments/ Acquisition | Altimeter | Former Client |
| Apex Fintech Solutions Inc. | Interested Parties | Apex Fintech Solutions Inc. | Former Client |
| Apollo Capital Opportunities Fund Ltd | Other Significant Creditors | Apollo Capital Opportunities Fund Ltd | Current Client |
| Avalanche (Bvi), Inc. | Other Significant Creditors | Avalanche (Bvi), Inc. | Former Client |
| ▊▊▊▊▊▊▊ | Customers | ▊▊▊▊▊▊▊ | Current Client |
| Bittrex, Inc. | Banks/ Lenders/ UCC Lien Parties/ Administrative Agents | Bittrex, Inc. | Current Client |
| Blackrock Inc | Investments/ Acquisition | Blackrock Inc | Current Client |
| Cantor Fitzgerald Technology Markets LLC | Interested Parties | Cantor Fitzgerald Technology Markets LLC | Former Client |
| Changpeng Zhao | Other Significant Creditors | Changpeng Zhao | Current Client |



# Exhibit C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO <br><br> Defendants. | Civil Action No. 1-23-cv-01599 |

**NOTICE OF APPEARANCE**

To the clerk of court and all parties of record:

PLEASE enter the appearance of William A. Burck as counsel in the above-captioned matter on behalf of Defendant Changpeng Zhao. I certify that I am admitted or otherwise authorized to practice in this Court.

Dated: August 21, 2024

Respectfully submitted,

/s/ William A. Burck
William A. Burck
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW
Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
williamburck@quinnemanuel.com

*Counsel for Defendant*

# Exhibit D

Case 22-11068-JTD    Doc 29196    Filed 01/10/25    Page 5 of 21

**SUMMARY OF FEES BY INDIVIDUAL FOR THE FINAL FEE PERIOD
(NOVEMBER 13, 2022 THROUGH AND INCLUDING OCTOBER 8, 2024)**

| Timekeeper Name | Position | Year of Admission | Year of Law School Graduation | Hourly Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| K. John Shaffer | Partner | 1991 | 1989 | $1,917.00 | 840.50 | $1,611,238.50 |
| | | | | $2,025.00 | 200.10 | $405,202.50 |
| Thomas Werlen | Partner | 1991 | 1989 | $1,777.50 | 1.00 | $1,777.50 |
| John B. Quinn | Partner | 1978 | 1976 | $1,917.00 | 8.60 | $16,486.20 |
| | | | | $2,025.00 | 5.30 | $10,732.50 |
| William A. Burck | Partner | 2001 | 1998 | $1,917.00 | 215.30 | $412,730.10 |
| | | | | $2,025.00 | 70.00 | $141,750.00 |