IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., et al., | ) Case No. 22-11068 (JTD) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Re: D.I. 29197 |

**LIDIA FAVARIO'S OBJECTION TO THE FINAL FEE APPLICATION OF SULLIVAN & CROMWELL LLP**

Lidia Favario ("The Objector"), a customer of FTX Trading, specifically FTX.com, submits this objection (the "Objection") to the fee application submitted by Sullivan & Cromwell LLP ("S&C") [D.I. 29197], and in support of her objection respectfully states as follows:

## I. INTRODUCTORY STATEMENT

1. As a creditor directly impacted by the financial collapse of FTX, I assert my right to be heard in these proceedings, with a vested interest in ensuring transparency and accountability in the administration of the bankruptcy estate.

2. This Objection highlights significant issues with S&C's Final Fee Application, including conflicts of interest, failure to adhere to its mandate, and excessive fees that undermine creditor confidence and the integrity of these proceedings.

## II. JURISDICTION AND STANDING

3. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. As a creditor and FTX customer, I have standing under 11 U.S.C. § 1109(b) to raise objections regarding the administration of these cases.

## III. FACTUAL BACKGROUND

5. In October 2021, FTX acquired LedgerX for a reported $300 million. LedgerX was thereafter renamed FTX US Derivatives. S&C advised the transaction and served as liaison to the CFTC, vouching for FTX, including statements affirming that Alameda did not have any "special privileges" on FTX.

6. In spring/summer 2022, LedgerX Chief Risk Officer, Julie Schoening, ("Schoening") discovered the code that Alameda Research allegedly used to withdraw billions of dollars of FTX customer funds and reported this to Zach Dexter, the CEO of LedgerX. Consequently, Schoening was fired.

7. On February 17, 2023, FTX CEO John Ray, along with S&C's Stephanie Wheeler and Schoening's attorney, engaged in a marathon 13.5-hour mediation session (Exhibit A). By February 18th, Schoening agreed to a settlement, and S&C promptly informed LedgerX CFO J. Markou to arrange payment (Exhibit B).

8. When FTX.US President Brett Harrison resigned in September 2022, Zach Dexter was chosen to lead FTX.US.

9. On November 9, 2022 (after FTX halted all payments), Mark Wetjen (Head of FTX US Government and Policy) was paid $1.9 million.

10. Beginning in July 2022, S&C represented FTX US in its bid to acquire the assets of Voyager Digital LLC during Voyager's bankruptcy proceedings. The asset purchase agreement was scheduled for approval by the United States Bankruptcy Court for the Southern District of New York on October 19, 2022.

11. FTX debtors "pursued" a $445.8 million clawback from Voyager, related to loans repaid by Alameda using FTX customer funds in the months leading up to FTX's bankruptcy [D.I. 596]. Filed in January 2023, the claim was settled by April 2024, with FTX debtors waiving the full amount [D.I. 11548].

12. On January 20, 2023, this Court approved the retention of Sullivan & Cromwell LLP as counsel for the Debtors, subject to safeguards against potential conflicts of interest. During the hearing, it was stated that, "[if] any investigation would be required of those transactions with which Sullivan & Cromwell might have been

involved… debtors have retained conflict counsel to conduct any investigation that might touch on those issues." On the same date/hearing, Mr. James Bromley stated, "Now, to the extent that anything comes out that there's a transaction that we may have been involved in might have an issue that needs to be investigated, we of course will not be involved in that. The Quinn firm is here, the Landis firm is here, and Paul Hastings is here. This is the standard way that large firms deal with these types of issues in cases of this magnitude." (Exhibit C)

**13.** Despite these explicit conditions, S&C has billed substantial fees for work on matters where it had significant prepetition involvement, such as the LedgerX transaction and the Voyager settlement. These issues are precisely the type of matters that should have been handled by independent conflict counsel to ensure impartiality and maintain the confidence of creditors in the bankruptcy process.

**14.** Furthermore, the estate has borne significant fees petitioned by S&C on behalf of a non-Debtor, LedgerX, without proper authorisation. This appears to contravene 11 U.S.C. § 503(b), which mandates that administrative expenses must benefit the estate to be allowable. The basis for excluding LedgerX as a debtor at the beginning of these cases remains unclear, raising further questions about compliance with the Bankruptcy Code and the justification for these expenses.

## IV. LEGAL STANDARDS

**15.** Professionals retained in bankruptcy cases must adhere to stringent standards under the Bankruptcy Code and Rules to ensure transparency, disinterestedness, and the maximisation of value for creditors. Relevant provisions include:
a. **Disclosure Obligations**: Bankruptcy Rule 2014(a) requires disclosure of all connections with parties in interest, and this obligation is continuing throughout the engagement. Failure to disclose can result in disqualification or denial of fees. See *In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991).
b. **Conflicts of Interest**: Under 11 U.S.C. § 327(a), professionals must be disinterested and avoid representing interests adverse to the estate. Section 101(14) defines a "disinterested person" as one who is not a creditor, equity holder, insider, or otherwise materially adverse to the estate. Non-compliance can lead to fee denial under § 328(c). See *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).
c. **Reasonableness of Fees**: Section 330 of the Bankruptcy Code requires that fees be reasonable, necessary, and commensurate with the value provided to the estate. Courts may deny fees where services were excessive or unnecessary. See *In re Wireless Tel. Servs., Inc.*, 449 B.R. 228, 232 (Bankr. M.D. Pa. 2011).
d. **Fiduciary Duty**: Professionals owe a fiduciary duty to act in the best interests of the estate and its creditors. Breach of this duty may result in fee reduction or disqualification. See *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997).

## V. ARGUMENT

### A. Improper Billing for Prepetition-Related Matters

**16.** S&C's involvement in the LedgerX transaction directly contradicts the Court's guidance. S&C provided prepetition advisory services to the Debtors regarding LedgerX (Exhibit D). Yet, it has billed substantial fees for work on the postpetition sale of LedgerX, including failing to address the $1.9 million preference payment made to Mark Wetjen after FTX halted all payments (Exhibit E) two days before the bankruptcy filing. The lack of action to recover this preference undermines creditor recoveries and raises questions about impartiality. See *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (failure to disclose conflicts warrants fee denial).

**17.** Similarly, S&C's work on the Voyager settlement is problematic (Exhibit F). Internal communications, including dismissive comments referring to key concerns as "just Binance silliness" (Exhibit G) further undermine confidence in S&C's handling of this matter. Independent conflict counsel should have overseen this settlement to ensure creditor interests were prioritised.

### B. Broader Concerns of Shielding Key Individuals

**18.** S&C appears to have shielded key insiders from accountability:
a. Ryne Miller's $1.2 Million Bonus: Within 90 days of filing, it appears Miller received a $1.2 million bonus from Alameda despite having no contractual relationship with the company (Exhibit H) [D.I. 3410]. No recovery action has been initiated.
b. Mark Wetjen's $1.9 Million Payment: As noted, Wetjen's payment was made under questionable circumstances but remains unchallenged.

**19.** These omissions highlight the need for independent conflict counsel to ensure transparency and maximise creditor recoveries. See *In re Fleming Cos., Inc.*, 304 B.R. 85 (Bankr. D. Del. 2003).

### C. Exorbitant Fees Without Proportional Results

**20.** The substantial fees charged by S&C are disproportionate to the results achieved for creditors. Billing for matters where it had prepetition involvement is contrary to the Court's directives and undermines the integrity of these proceedings. See *In re Quigley Co., Inc.*, 500 B.R. 347, 361 (Bankr. S.D.N.Y. 2013) (excessive fees without benefit to creditors warrant reduction).

### VI. CONCLUSION

**21.** In light of the above, I respectfully request that the Court:
a. Review and disallow fees charged by S&C for work on matters where it had prepetition involvement, including the LedgerX transaction and the Voyager settlement.
b. Require a detailed accounting of how S&C's billed hours and fees have directly benefited creditors.
c. Consider appointing independent conflict counsel to review S&C's conduct and ensure compliance with its fiduciary obligations.

**22.** Transparency, accountability, and adherence to the Court's directives are paramount to maintaining the integrity of these proceedings and restoring creditor confidence. I urge the Court to act in the best interests of creditors by addressing the concerns outlined in this Objection.

Sincerely,
Lidia Favario

*[signature: Lidia]*

Dated: January 27, 2025

**Lidia Favario**
**54 Peregrine House**
**Hall Street**
**London EC1V 7PQ**
**UK**
**Phone 0044 (0) 7536051757**
**lidia@lidialidia.com**

## Exhibit A

**FOURTH MONTHLY FEE STATEMENT OF SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM FERUARY 1, 2023 THROUGH AND INCLUDING FEBRUARY 28, 2023**

Case 22-11068-JTD    Doc 1221-2    Filed 04/04/23    Page 504 of 721

**Project: 00033 - GENERAL INVESTIGATIONS**

| Date | Name | Hours | Description |
|---|---|---|---|
| | | | presentation workstream (1.0). |
| 02/16/2023 | Benjamin Zonenshayn | 0.70 | Call with R. Gordon (A&M), K. Ramanathan (A&M), S. Ehrenberg, B. Harsch, F. Weinberg Crocco, E. Downing, and D. Hisarli re: flows of funds at Turkish entities. |
| 02/17/2023 | Stephanie Wheeler | 13.50 | Participate in employee mediation with J. Ray (FTX), T. Rogers, M. Strand, D. Jansenson (JAMS), M. Kulkin (WilmerHale), and L. Banks (Katz Banks Kumin) (12.0); Continued participation in mediation and negotiation and execution of settlement agreement for employee matter (1.50). |

## Exhibit B

## ORDER (I) APPROVING THE LEDGERX BUSINESS PURCHASE AGREEMENT, (II) APPROVING THE SALE OF THE LEDGERX BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND (IV) GRANTING RELATED RELIEF

LedgerX LLC
Notes to the Financial Statements
December 31, 2022

The Company is a single-member limited liability company and was structured as a disregarded entity for U.S. federal, state and local income tax purposes. As a subsidiary of Ledger Holdings, LedgerX's activity is included in the U.S. federal, state and local income tax returns of its Parent. Accordingly, no provision for taxes is currently made in the Company's financial statements and there are no uncertain tax positions as of December 31, 2022.

**13. SUBSEQUENT EVENTS**

Management has evaluated events and transaction that may have occurred since December 31, 2022 through March 28, 2023, the date that the financial statements were available to be issued, and noted no material events requiring either recognition as of December 31, 2022 or disclosure herein for LedgerX, other than the below:

- On January 12, 2023, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved bidding procedures for the potential sale of LedgerX by FTX Trading Ltd. and its affiliate debtors (the "Debtors"). On February 21, 2023, the Debtors filed (i) the proposed form of Sales Order and (ii) the form of the Interest Purchase Agreement, including the form of Disclosure Schedules, for the LedgerX business. On each of March 6, 2023 and March 18, 2023, the Debtors filed notices to revise the bidding process schedule for LedgerX previously filed in the Debtors' bid procedures with respect to LedgerX.

- 

- On February 18, 2023, the former employee dispute was resolved, and the reserve was relieved.

## Exhibit C

**TRANSCRIPT OF JANUARY 23, 2023 HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE**

33

1  of which touch on any of the issues that have been raised to
2  date.
3          Now, to the extent that anything comes out that
4  there's a transaction that we may have been involved in might
5  have an issue that needs to be investigated, we of course
6  will not be involved in that.  The Quinn firm is here, the
7  Landis firm is here, and Paul Hastings is here.  This is the
8  standard way that large firms deal with these types of issues
9  in cases of this magnitude.

### Exhibit D
### SUPPLEMENTAL DECLARATION OF ANDREW G. DIETDERICH IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

46.     The first matter that S&C worked on for any Debtor was the acquisition of non-Debtor LedgerX LLC ("LedgerX"), a matter for Debtor West Realm Shires Inc. ("WRS") that began July 22, 2021. S&C was introduced to the Debtors for this matter by Mr. Miller, who was leaving S&C to join WRS as the General Counsel of FTX US. Mr. Miller, who had been a partner of the firm from January 2019 gave notice of his departure to join WRS on July 1, 2021 and after a brief transition period formally resigned as a partner at the

-11-

end of July 2021. S&C had no client relationship with the Debtors (or any non-Debtor affiliates) before Mr. Miller's introduction and the LedgerX matter.

**Exhibit E**
**D.I. 407, CASE #1:22-cr-00673, UNITED STATES V. BANKMAN-FRIED**



**Exhibit F**

**SUPPLEMENTAL DECLARATION OF ANDREW G. DIETDERICH IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

48. The three matters involving fees and expenses over USD $1,000,000 were the following, ranked by aggregate amount of fees and expenses:

- S&C was bankruptcy and M&A counsel to Debtor West Realm Shires Services Inc. ("WRSS"), the proposed asset purchaser, and Debtor Alameda Research LLC ("Alameda"), as a prepetition creditor and counterparty, in connection with a proposed acquisition by WRSS of the business of Voyager pursuant to a chapter 11 plan of reorganization. The transaction is no longer proceeding. S&C also assisted Alameda in filing a proof of claim and appearing in bankruptcy court on behalf of WRSS and Alameda. S&C did not represent the Debtors in connection with Voyager prior to Voyager's chapter 11 filing – this work was performed by Latham & Watkins LLP. Total fees and expenses received for this matter were approximately USD $3,128,000. The primary client contacts were Can Sun, Ramnik Arora and Rahul Sharma.

- S&C advised WRS in the acquisition of LedgerX. Total fees and expenses received for this matter were approximately USD $1,513,000. The primary client contact was Dan Friedberg.

- S&C advised Debtor FTX Trading ("FTX Trading") in responding to information requests from the Commodity Futures Trading Commission ("CFTC") regarding the availability of FTX Trading's cryptocurrency exchange to persons in the United States and Know Your Customer policies and procedures. Total fees and expenses received for this matter were approximately USD

-12-

Case 22-11068-JTD    Doc 510    Filed 01/17/23    Page 13 of 34

$1,405,000. The primary client contacts were Dan Friedberg and Ryne Miller.

**Exhibit G**

**D.I. 937, CASE#22-10943, VOYAGER DIGITAL HOLDINGS, INC., ET AL.**

22-10943-mew    Doc 937-13    Filed 02/01/23    Entered 02/01/23 00:45:39    Exhibit 13 - November 7   2022 E-mail    Pg 2 of 2

**From:** Dietderich, Andrew G. <dietdericha@sullcrom.com>
**Date:** Monday, Nov 07, 2022, 1:55 PM
**To:** Azman, Darren <Dazman@mwe.com>
**Subject:** RE: [EXTERNAL] Re: Town Hall

That's just Binance silliness. FTX is rock solid, doesn't use customer funds or take credit risk at all. It cannot have "liquidity" issues because it doesn't lend.

I'll get back to you on town hall. Discussing calendar and sequence for closing with debtor later this week.

**From:** Azman, Darren <Dazman@mwe.com>
**Date:** Monday, Nov 07, 2022, 1:09 PM
**To:** Dietderich, Andrew G. <dietdericha@sullcrom.com>
**Subject:** RE: [EXTERNAL] Re: Town Hall

We are getting a lot of inbounds regarding liquidity issues at FTX/Alameda. We also had a lot of leftover questions from the last town hall. I'm thinking we'd like to do another one next week and would like you for your team to be a part of it. We can't be silent on these issues and I don't want to speak for FTX. Let me know your thoughts on timing and who on your side would be best to join and handle FTX-related questions.

DARREN AZMAN
Partner
McDermott Will & Emery LLP  One Vanderbilt Avenue, New York, NY 10017-3852
Tel +1 212 547 5615    Mobile +1 410 409 7591    Email dazman@mwe.com
Biography [mwe.com] [nam10.safelinks.protection.outlook.com] | Website [mwe.com] [nam10.safelinks.protection.outlook.com] | vCard [dynasend.com] [nam10.safelinks.pro

## Exhibit H
### DECLARATION OF STEPHANIE G. WHEELER IN SUPPORT OF DEBTORS' OBJECTION TO ROSS RHEINGANS-YOO PROOF OF CLAIM

| Name | $ Bonus | FTX Options | FTX US Options |
|---|---|---|---|
| Aaron Hawkins | 38,000 | 700 | 15,000 |
| Allen Clark | 12,000 | 200 | 5,000 |
| Collin Sheehan | 18,000 | 300 | 7,000 |
| Felix Okocha | 14,000 | 300 | 6,000 |
| Jacob Halter | 16,000 | 300 | 6,000 |
| Maria Shaikh | 140,000 | 2,500 | 54,000 |
| ShawnDea Dunzy | 14,000 | 300 | 6,000 |
| Sherwayne Allen | 16,000 | 300 | 6,000 |
| Karim Claros | 4,000 | 100 | 2,000 |
| Cheryl Chen | 30,000 | 900 | 6,000 |
| Elizabeth Lee | 69,000 | 2,000 | 14,000 |
| Dicky Hung | 52,000 | 1,500 | 11,000 |
| Cody Li | 52,000 | 1,500 | 11,000 |
| Tracy Hung | 21,000 | 600 | 4,000 |
| Adonis Fernander | 16,000 | 500 | 3,000 |
| Alexis Delancy | 32,000 | 900 | 6,000 |
| Chade Farrington | 37,000 | 1,100 | 7,000 |
| Delaney Ornelas | 46,000 | 900 | 19,000 |
| Fabrizio Cecchettini | 150,000 | 2,900 | 61,000 |
| Tristan Yver | 180,000 | 3,400 | 72,000 |
| Lynn Nguyen | 90,000 | 1,600 | 34,000 |
| Alfarida Mohammed | 190,000 | 3,700 | 77,000 |
| Morgan Eattock | 11,000 | 200 | 4,000 |
| Nate Clancy | 110,000 | 2,000 | 42,000 |
| Mikael Knaussen | 140,000 | 2,700 | 57,000 |
| Ivana Milicic | 100,000 | 1,900 | 40,000 |
| Kiernan Fitzsimmons | 130,000 | 2,500 | 53,000 |
| Stephanie Lennox | 59,000 | 1,100 | 24,000 |
| Andra North | 13,000 | 200 | 5,000 |
| Gonzalo Gutierrez Schoenmakers | 80,000 | 1,600 | 33,000 |
| Chase Branham | 80,000 | 1,500 | 31,000 |
| Sebastian Ramirez | 130,000 | 2,500 | 53,000 |
| Ryan Mendel | 25,000 | 500 | 10,000 |
| Savannah Alberty | 52,000 | 1,000 | 21,000 |
| Megan Mason | 31,000 | 600 | 13,000 |
| Luis Guinand McKinstry | 13,000 | 200 | 5,000 |
| Venu Palaparthi | 13,000 | 200 | 5,000 |
| **Ryne Miller** | **1,250,000** | **0** | **0** |