## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>FTX TRADING, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

## MOTION OF WINCENT INVESTMENT FUND PCC
## LIMITED FOR ENTRY OF AN ORDER ALLOWING AN
## ADMINISTRATIVE EXPENSE CLAIM AND GRANTING RELATED RELIEF

Wincent Investment Fund PCC Limited ("Wincent"), by and through its undersigned counsel, files this *Motion of Wincent Investment Fund PCC Limited for Entry of an Order Allowing an Administrative Expense Claim and Granting Related Relief* (this "Motion"), pursuant to sections 503(b) and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") for allowance of an administrative expense claim in the amount of $2,863,284.78 (the "Administrative Claim") against the above-captioned debtors, the debtors' estates, and their respective wind down entities (collectively, the "Debtors") and related relief.  In support of this Motion, Wincent relies on the *Declaration of Charles Melvin in Support of the Motion of Wincent Investment Fund PCC Limited for Entry of an Order Allowing an Administrative Expense Claim and Granting Related Relief* (the "Melvin Declaration"), attached hereto as **Exhibit B**, and respectfully states as follows:

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the Debtors' claims and noticing agent's website at https://cases.ra.kroll.com/FTX.

## PRELIMINARY STATEMENT

1.      Wincent is seeking allowance of the Administrative Claim on account of postpetition trades Wincent executed on the Debtors' FTX.com exchange (the "Exchange").  Since its founding in 2018, Wincent has operated as a successful algorithmic crypto trader on dozens of exchanges across the world.

2.      The Debtors filed voluntary petitions for relief under the Bankruptcy Code on November 11, 2022 at approximately 10:00 a.m. (prevailing Eastern Time) (the "Petition Filing"). Without actual notice of the Petition Filing or any wrong intent, Wincent continued its ordinary course trading for approximately 12 hours until 10:28 p.m. (prevailing Eastern Time) when the Exchange became inaccessible to customers (the "Shutdown"). *See* Melvin Declaration at Para. 5. In the interim period—between the Petition Filing and the Shutdown—Wincent made numerous trades (the "Postpetition Trades"), which resulted in an increase in Wincent's FTX.com account balance of $2,863,284.78 (the "Postpetition Profit"). *See* Melvin Declaration at Para. 4.

3.      The Debtors benefited from the Postpetition Profit as the assets in Wincent's Exchange accounts were or will be liquidated to make distributions to the Debtors' creditors at large. Indeed, it is difficult to imagine a clearer benefit to the Debtors' estates than a victimized customer's trading strategies resulting in an increase of assets available to fund estate administration and distributions to the Debtors' creditors. Consequently, Wincent is entitled to allowance of the Administrative Claim.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

5.      The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

6.     The statutory basis for the relief requested herein is sections 503(b) and 507(a) of the Bankruptcy Code.

## BACKGROUND

7.     On the Petition Filing, the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases was authorized by the Court by entry of an order on November 22, 2022 [Docket No. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 231].

8.     Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [Docket No. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [Docket No. 93].

9.     The Debtors anticipated and intended to turn off trading capabilities on the Exchange as of the Petition Filing.  *See Declaration of Sabrina T. Howell in Support of the Motion of Debtors to Estimate Claims Based on Digital Assets* [Docket No. 5203]. They did not. Instead, the trading capabilities on the Exchange were not shut down until approximately 10:28 p.m. (prevailing Eastern Time).

51766249.12

10.     Attached as **Exhibit C** hereto is the balance Wincent believes were in its accounts as of the Petition Filing and at the time of the Shutdown, which demonstrate the Postpetition Profit.

11.     On September 27, 2023, Wincent filed Proof of Claim No. 90847 (the "Claim") asserting its entitlement to, among other things, the Postpetition Profit.

12.     On May 10, 2024, the Debtors filed the *Debtors' Thirty-Sixth (Substantive) Omnibus Objection to Certain Overstated And/or Partially Unliquidated Proofs of Claim (Customer Claims)* [Docket No. 14599] (the "Objection"). The Objection sought to reduce the Claim by the amount of the Postpetition Profit since the Postpetition Profit accrued after the Petition Filing.

13.     On January 29, 2025, the Court entered the *Order Sustaining Debtors' Thirty-Sixth (Substantive) Omnibus Objection to Certain Overstated Proofs of Claim (Customer Claims)* [Docket No. 29423] (the "Objection Order"). Wincent agreed to entry of the Objection Order in exchange for an express reservation of rights to an administrative expense claim for the Postpetition Profit, which provided:

> [N]othing in this [Objection Order] shall be construed as a determination of the Debtors' liability with respect to the amount of $3,218,136.90 being reduced from the "Asserted Claim" identified in Schedule 1 for Proof of Claim No. 90847 (the "Asserted Administrative Claim") as a postpetition administrative claim and all rights, defenses, and remedies at law and equity of the holder of Proof of Claim No. 90847 with respect to the Asserted Administrative Claim are expressly preserved[.] (Objection Order at 8.)

14.     On September 30, 2024, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 26029] (as may be amended from time to time, the "Plan").

15.     The Plan became effective on January 3, 2025 (the "Effective Date"). *See* Docket No. 29127.

16.     Pursuant to section 2.1.4 of the Plan, the deadline for any holder to file an administrative expense claim against the Debtors shall be at 4:00 p.m. on the 30th day after the Effective Date (the "<u>Administrative Claims Bar Date</u>").

**RELIEF REQUESTED**

17.     By this Motion, Wincent seeks the entry of an order allowing the Administrative Claim against the Debtors, pursuant to section 503(b) of the Bankruptcy Code, in the amount of the Postpetition Profit, and granting related relief, substantially in the form attached hereto as **Exhibit A**.

**ARGUMENT**

**I.     Wincent is Entitled to an Administrative Expense Claim on Account of the Postpetition Profit.**

18.     Section 503(b)(1) of the Bankruptcy Code provides that, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U. S. C. § 503(b)(1)(A). Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full under a plan pursuant to section 1129(a)(9). *See id*. §§ 507(a)(2), 1129(a)(9).

19.     To establish an administrative claim, a claimant must show that "(1) there was a post-petition transaction between the claimant and the estate; and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021); *see In re O'Brien Env't Energy, Inc.*, 181 F. 3d 527, 532–33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business."). The United States Court of Appeals for the Third Circuit (the "<u>Third Circuit</u>") has recognized that the actual

5

and necessary costs and expenses of preserving the estate "*include costs ordinarily incident to operation of a business*, and not be limited to costs without which rehabilitation would be impossible." *Pennsylvania Dep't. of Envtl. Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 689-90 (3d Cir. 1999) (emphasis added) (quoting *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968)). "The drafters of the Code recognized that to achieve [its] purpose, the debtor has to continue to operate between the filing of the petition and the adjudication of bankruptcy. This can result in additional expenses that are necessary to the continued operation of the business or to successfully winding it down." *Pennsylvania Dep't of Envtl. Res.*, 178 F.3d at 690.

### A.    Wincent Engaged in Postpetition Transactions with the Debtors.

20.    For a claim to be allowed as an administrative expense, it must arise from a postpetition transaction and must directly benefit the estate. *See* 11 U. S. C. 503(b)(1)(A). Postpetition trades of a customer on an exchange operated by a debtor that undeniably increased the debtors' assets made available for distribution to creditors satisfies the requirements of section 503(b) of the Bankruptcy Code.

21.    By analogy, this Court has held that actions of debtors that began prepetition yet continued postpetition give rise to postpetition claims for the postpetition period. *See In re Mallinckrodt PLC*, 2021 Bankr. LEXIS 2887 (JTD) (Bankr. D. Del. Oct. 19, 2021). In *Mallinckrodt*, this Court determined that certain insurers' claims arose postpetition because the postpetition component of the transactions at issues is "when the claimants were exposed to the product/conduct." *Id.* at * 16. Similarly in *In re Bluestem Brands, Inc.*, Judge Walrath held that a creditor's claims for goods which were physically received by the debtor after the petition date were entitled to administrative expense status, as such goods "actually benefited or preserved the

estate." *In re Bluestem Brands, Inc.*, 2021 Bankr. LEXIS 1980 (MFW) (Bankr. D. Del. Jul. 27, 2021).

22.     Here, it is undisputed that the Debtors permitted Wincent to execute numerous transactions on the Exchange after the Petition Filing and received the benefit of the Postpetition Trades in the amount of at least $2,863,284.78. Like in *Mallinckrodt* and *Bluestem*, the transactional agreement with the estates began prepetition but continued thereafter. As such, this element is satisfied.

### B.       Each Postpetition Trade Is a Separate Transaction.

23.     The applicable standard for separateness of transactions is the receipt of goods or services by the debtors. In the Third Circuit, a transaction occurs when the seller is no longer able to stop the delivery. *In re World Imports*, 862 F.3d 338, 342 (3d Cir. 2017). There is no requirement that there be a postpetition contract or understanding between the parties. *See, e.g., Bluestem*, 2021 Bankr. LEXIS 1980, at *14.

24.     Here, Wincent, unaware of the Petition Filing, continued to trade on the Exchange in the ordinary course. After execution of each of the Postpetition Trades, Wincent was unable to stop delivery of funds to the Debtors. Therefore, the requirements to treat each Postpetition Trade as separate have been satisfied.

### C.       The Debtors' Estates Benefited from the Postpetition Trades.

25.     When a third party transacts with a debtor postpetition on ordinary commercial terms, such party is entitled to an administrative priority claim under section 503(b)(1) of the Bankruptcy Code. *See, e.g., Pennsylvania Dep't of Envtl. Res.*, 178 F.3d at 690; *In re MTE Holdings LLC,* 2021 Bankr. LEXIS 1490, at *16-17 (CTG) (Bankr. D. Del. Jun. 2, 2021).

26.     Here, it is indisputable that the Postpetition Trades were in the ordinary course of the Debtors' business—the operation of the Exchange. There was nothing different about the Postpetition Trades from any other trades executed by Wincent on the Exchange except that they occurred after the Petition Filing.

27.     The Postpetition Profit from the Postpetition Trades benefited the Debtors' estates because such account assets were allowed to be retained by the Debtors for distribution to creditors at large.

28.     Finally, fundamental fairness and equity require the allowance of the Administrative Claim in the amount of the Postpetition Profit. To deny the Administrative Claim would be to allow the Debtors to have received at least $2,863,284.78 in value for distribution to creditors—which are receiving an estimated 129% to 143% on their claims—that was generated solely by the algorithmic trading strategies that Wincent put into place. As such, Wincent should receive the benefit of the Postpetition Profit through allowance of the Administrative Claim.

## **RESERVATION OF RIGHTS**

29.     The filing of this Motion shall not be construed as a waiver or release of any of Wincent's claims, rights, or remedies that are not specifically identified in this Motion and/or claims that may become due and owing to Wincent by the Debtors subsequent to the filing of this Motion. Wincent reserves the right to supplement or amend this Motion in any manner and for any purpose including without limitation to assert additional administrative claims for any additional period.

*[Remainder of page intentionally left blank]*

8

## CONCLUSION

30.    Wincent respectfully requests the Court enter the Order, substantially in the form attached as **Exhibit A** hereto, allowing Wincent's Administrative Claim in the amount of $2,863,284.78 and granting such other relief as the Court may deem appropriate.


Dated: February 3, 2025
Wilmington, Delaware

*/s/ Matthew B. Harvey*
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Matthew B. Harvey (No. 5186)
Jonathan M. Weyand (No. 6959)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
mharvey@morrisnichols.com
jweyand@morrisnichols.com

-and-

**EVERSHEDS SUTHERLAND (US) LLP**
Erin E. Broderick
Michael A. Rogers
Andrew Polansky
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com
michaelrogers@eversheds-sutherland.com
andrewpolansky@eversheds-sutherland.com

*Counsel for Wincent Investment Fund PCC Limited*