IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FTX TRADING LTD., et al., | : | Case No. 22-11068 (JTD) |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |

**REQUEST OF ASTTERIA (HK) LIMITED FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

Astteria (HK) Limited ("Astteria"), by and through undersigned counsel, moves this Honorable Court for the entry of an order (i) granting Astteria an allowed administrative expense claim in the amount of ninety thousand USDC (90,000 USDC) (the "Astteria Administrative Expense Claim") pursuant to Section 503(b)(1)(A) of the Bankruptcy Code and (ii) directing the Debtors to pay the Astteria Administrative Expense Claim as soon as reasonably possible after the effective date of the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 26404] (as may be amended or modified, the "Plan"). In support of this Request, Astteria respectfully states as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Astteria consents to the entry of final orders or judgments of the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 503(b)(1)(A).

## Background

5.On November 11, 2022 and November 14, 2022 (the "Petition Dates"), FTX Trading Ltd. and 101 affiliated debtors (collectively, the "Debtors) each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

6.Prior to the Petition Dates, on May 25, 2022, Astteria became a customer of Liquid, which is a cryptocurrency exchange platform that, upon information and belief, owned and operated by Quoine Pte Ltd ("Debtor Quoine"), one of the Debtors in these bankruptcy cases. Upon information and belief, Liquid is a Debtor Quoine-owned exchange facilitating digital asset trading, custody, and fiat on/off-ramping services for its users.

7.Following the Petition Dates, Liquid suspended all withdrawals on November 15, 2022, and halted all trading operations on November 20, 2022. Despite this, one of Astteria's customers unknowingly transferred 90,000 USDC into Astteria's Liquid account wallet on December 9, 2022, after trading had ceased. However, this deposit never appeared in Astteria's Liquid account wallet balance. The transactions followed as: on December 9, 2022, 90,000 USDC was transferred from wallet ending 10c0[1] into Astteria's wallet ending 920d[2] on Liquid. This transaction was confirmed by the transaction hash and block confirmations[3] as shown on **Exhibit A**.

8.Subsequently, on February 7, 2023, 90,000 USDC was transferred from Astteria's wallet ending 920d to a Liquid 9 wallet ending 9a98 without Astteria's knowledge or consent.[4]

---

[1] The full wallet number is ▮▮▮▮▮.
[2] The full wallet number is ▮▮▮▮▮.
[3] Transaction hash - ▮▮▮▮▮. Block confirmations – ▮▮▮▮ and ▮▮▮▮.
[4] The full wallet number is ▮▮▮▮▮. The Liquid 9 wallet number can be found at the bottom left corner of **Exhibit B**.

Since Liquid had already halted trading, it remains unclear how the 90,000 USDC was later transferred out of Astteria's Liquid account wallet to Liquid 9 on February 7, 2023. This transaction was confirmed by the transaction hash and block confirmations[5] as shown on **Exhibit C**.[6]

9.  Prior to these transactions, Astteria had regularly transacted on Liquid platform, and every previous transfer made from Astteria's Liquid account is reflected in the Astteria's Liquid account deposits history from the Liquid website as shown on **Exhibit E** (the "Deposits History")—with the exception of the 90,000 USDC, which does not appear despite being transferred from wallet ending 10c0 to Astteria's wallet ending 920d on December 9, 2022 and was subsequently the subject of an unauthorized transfer from Astteria's wallet to the Liquid 9 wallet ending 9a98 on February 7, 2023.

10. On December 9, 2022, one of Astteria's customers informed Astteria that they had deposited 90,000 USDC into Astteria's Liquid wallet ending in 920d. However, as noted above, this deposit did not appear in Astteria's Liquid wallet balance due to the trading halt. Astteria then checked its Deposits History but it did not show that 90,000 USDC was deposited into Astteria's wallet ending 920d. Astteria did further research and found the transaction hashes and block confirmations attached as Exhibits A and C showing the transfers of 90,0000 USDC from its customer's wallet to its wallet on December 9, 2022 and the unauthorized transfer from its wallet to Liquid 9's wallet on February 7, 2023.

---

[5] Transaction hash - ███████████████████████████████████████████. Block confirmations – ███████ and ███████.

[6] The first two transactions identified on **Exhibit D** provide further evidence of the transfer of 90,000 USDC to Astteria's wallet on December 9, 2022 and the transfer of 90,000 USDC from Astteria's wallet to Liquid 9 on February 7, 2023.

11. Since November 20, 2022, when Liquid halted all trading, no user could access or transfer funds from their wallets. Given that Liquid users could no longer initiate transactions, it follows that only Debtor Quoine, the Liquid platform owner, or another Debtor entity had the ability to move funds. Any transactions made after this date on the Liquid platform, including the February 7, 2023 transfer to Liquid 9, could only have been executed by Debtor Quoine or an affiliated Debtor.

12. To date, the 90,000 USDC, which was deposited in Astteria's Liquid account, and then transferred without authorization from Astteria's liquid wallet into Liquid 9's wallet has not appeared on the Liquid account Deposits History and remains unaccounted for. Since Liquid halted all trading, Astteria could not access or transfer funds from their Liquid wallet. Astteria never authorized any transfer of the 90,000 USDC into Liquid 9's wallet, and Astteria never authorized Debtor Quoine, or any other Debtor, to transfer or withdraw these funds. However, given that the Liquid 9 wallet is affiliated with the Debtors, it follows that the Debtors likely have, or had, possession and control over the 90,000 USDC.

13. To date, Astteria has no knowledge as to the current whereabouts of the 90,000 USDC after suffering the unauthorized transfer to the Liquid 9 wallet on February 7, 2023, and Astteria has no access to the 90,000 USDC. Further, Astteria has absolutely no ability to trace where the 90,000 USDC went after it was transferred from Astteria's wallet to Liquid 9's wallet.

14. Given that the 90,000 USDC was undisputedly transferred to Liquid 9 after the trade halt, it seems more than reasonable to conclude that said funds were transferred to Liquid 9 by Debtor Quoine, and they either remain in the possession and control of Debtor Quoine or disbursed pursuant to another unauthorized transaction.

15. Subsequently, on February 6, 2024, Astteria filed Customer Claim Form which reflected the missing 90,000 USDC.

16. Then, on September 9, 2024, Astteria filed a second Customer Claim Form which again reflected the missing 90,000 USDC.

## RELIEF REQUESTED AND BASES THEREFORE

17. By this Motion, Astteria respectfully requests that this Court enter an order (i) allowing the Astteria Administrative Expense Claim in the amount of 90,000 USDC pursuant to Section 503(b)(1(A) of the Bankruptcy Code and (ii) directing the Debtors to pay to Astteria the amount of the Administrative Expense Claim as soon as reasonably practicable

18. Bankruptcy Code § 503(b)(1)(A) provides in pertinent part as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate….

11 U.S.C. § 503(b)(1)(A). Administrative expenses of a debtor's bankruptcy estate under § 503(b) rank second among all priority claims the estate may incur. *Id.* § 507(a)(2). A post-petition claim against a bankruptcy estate ordinarily qualifies as an administrative expense under § 503(b)(1) if: 1) it arises out of a transaction between the creditor and the debtor's estate post-petition, and 2) the consideration supporting the claimant's right to the expense was supplied to and benefits the debtor's estate. *In re Energy Future Holdings Corp.,* 990 F.3d 728, 741 (3d Cir. 2021).

19. These two criteria are satisfied here. The deposit of 90,000 USDC into Astteria's wallet ending 920d on December 9, 2022 clearly arose out of a transaction between Astteria and the Debtors after the Petition Dates. And the Debtors received a benefit from the transactions because they received the value of the 90,000 USDC when it was transferred into Liquid 9's wallet on February 7, 2023.

20. Moreover, Astteria is entitled to an administrative expense claim because, upon inform and belief, the February 7, 2023 transfer of 90,000 USDC from Astteria's wallet to the Liquid 9 wallet resulted from either the Debtors' negligence or conversion of the 90,000 USDC for the Debtors' benefit. Damages resulting from the negligence of a trustee or debtor in possession in the operation of debtor's business give rise to "actual and necessary costs" for the purpose of an allowable claim of administrative priority for damages. *See Reading Co. v. Brown,* 391 U.S. 471, 482-84 (1968); *Yorke v. N.L.R.B.,* 709 F.2d 1138, 1143 (7th Cir. 1983), *cert. denied,* 465 U.S. 1023 (1984) (the 7th Circuit relied upon *Reading* in holding that those injured during the trustee's administration of an estate are entitled to an administrative priority regardless of whether their injury was caused by a tort or other wrongdoing). As the First Circuit concisely stated:

> It is only when the debtor-in-possession's actions themselves -- that is, considered apart from any obligation of the debtor -- give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration. When the debtor-in-possession commits a tort . . . or accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority.

*In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976).

21. Here, it appears that the transfer of 90,000 USDC from Astteria's wallet to the Liquid 9 wallet without Astteria's consent was a result negligence or conversion and resulted in the unjust enrichment of the Debtors' estates. As noted above, since November 20, 2022 when Liquid halted all trading, no user could access or transfer funds from their wallets. Given that Liquid users could no longer initiate transactions, it follows that only Debtor Quoine, the Liquid platform owner, or one of the other Debtors, had the ability to move funds. Any transactions made after this date on Liquid platform, including the February 7, 2023, transfer to Liquid 9, could only have been executed by Debtor Quoine or another Debtor.

22. Astteria respectfully submits that allowing this administrative claim will not prejudice the Debtors as claims continue to be allowed in this case. There is no undue burden placed upon the estate by granting the relief requested herein. If the motion is not granted, Astteria will be wholly deprived of its rights and prejudiced, whereas the Debtor will be unjustly enriched by retaining the benefit of the transferred funds without justification.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Astteria respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto as **Exhibit F**, (i) allowing the Astteria Administrative Expense Claim in the amount of ninety-thousand USDC (90,000 USDC), (ii) directing the Debtors to pay the Astteria Administrative Expense Claim as soon as practicable, and granting to Astteria such other and further relief as is just and proper.

Date: January 31, 2025
Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

/s/ William A. Hazeltine
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: whazeltine@sha-llc.com

*Attorneys for Astteria (HK) Limited*