# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>                            Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Re: D.I. Nos. 3409, 29218 |

## ROSS RHEINGANS-YOO'S SUPPLEMENTAL RESPONSE TO DEBTORS' OBJECTION TO CLAIM NO. 5166

Ross Rheingans-Yoo ("Rheingans-Yoo"), by and through his co-counsel Goetz Platzer LLP and Joyce, LLC, hereby submits this supplemental response[1] to the Debtors' objection (D.I. 3409, "Objection") to Proof of Claim number 5166 ("Claim") filed by Rheingans-Yoo. This supplemental response is supported by the *Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim Between FTX Trading Ltd. and Ross Rheingans-Yoo* (D.I. 29218, "Stipulation").[2] In further response to the Objection, Rheingans-Yoo respectfully states as follows:

## PRELIMINARY STATEMENT

1. This is a straightforward wage claim. The Debtors tie themselves in knots trying to avoid paying it.

2. Rheingans-Yoo and the Debtors negotiated the economic terms of Rheingans-Yoo's employment before Rheingans-Yoo joined the FTX Group's charitable-giving arm, the FTX

---

[1] On May 22, 2024, the Court entered an order in Adversary Proceeding No. 23-50444 (Adv. Pro. D.I. 106) approving the Debtors' settlement of that action with, among others, Rheingans-Yoo. Paragraph 5 of the settlement stipulation between the Debtors and Rheingans-Yoo (Adv. Pro. D.I. 106-1, "Settlement") authorizes Rheingans-Yoo to file this supplemental response 10 days before the omnibus hearing at which the Objection will be heard. In light of the Settlement, Rheingans-Yoo no longer seeks administrative priority treatment for his FDU Claim.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Stipulation.

Foundation. The agreed outcome of those negotiations was a shared Google Document, "Final Ross Terms." *See* Stipulation at ¶¶ 16-21; Exs. G-I.

3. Final Ross Terms provided for Rheingans-Yoo to receive a discretionary bonus of at least $1 million, "distributed as a 50/50 split between cash and 'foundation direction units' (FDU)." *Id.* at ¶ 21; Ex. G ¶ 2(b). That is, Rheingans-Yoo demonstrated his commitment to charitable giving by requiring the Debtors to donate half of his bonus to a charity or charities that Rheingans-Yoo will designate.

4. In September 2022, the Debtors delivered the Bonus Memo to Rheingans-Yoo. *See* Stipulation at ¶¶ 38-41; Exs. K-L. The Bonus Memo granted Rheingans-Yoo a bonus of $650,000, distributed among cash and options at Rheingans-Yoo's election, *plus*: "On top of the above, you get another $650k of directed grants to any EA-driven cause if you want." *Id.* at ¶ 41. The Stipulation defines this "$650k of directed grants" to an effective altruism charity as the "FDU Bonus." *Id.*

5. The Bonus Memo mirrors Final Ross Terms. Rheingans-Yoo was awarded a bonus of at least $1 million (he was awarded $1.3 million), and the bonus was evenly distributed between cash and FDUs.

6. The Debtors did not object to Rheingans-Yoo's right to receive the cash portion of his bonus pursuant to the Bonus memo.[3]

7. The Debtors objected to Rheingans-Yoo's right to direct payment of the FDU Bonus pursuant to the Bonus Memo.

---

[3] To be precise, the Debtors previously objected to Rheingans-Yoo's Claim to the extent it sought a portion of his cash bonus. That objection was asserted on the ground that Rheingans-Yoo purportedly elected to receive a fraction of his cash bonus as options. The cash aspect of the Claim was resolved in the Settlement. The point is that the Debtors never asserted a wholesale objection to Rheingans-Yoo's entitlement to the cash bonus like they are trying to do with Rheingans-Yoo's entitlement to direct payment of the FDUs.

8. These facts are not in dispute.

9. By not objecting to the cash portion of Rheingans-Yoo's bonus (and by objecting to the FDU Claim only on technical grounds), the Debtors admit that the Bonus Memo represents a binding commitment by the Debtors to pay the bonus described therein.

10. Rheingans-Yoo, therefore, has a valid wage claim for the portion of his bonus that has not been paid, namely his right to direct the Debtors to donate $650,000 in FDUs. Rheingans-Yoo's right to direct this FDU donation is, to date, an unpaid part of his Employment Agreement.

11. The Debtors object to paying the FDU portion of Rheingans-Yoo's bonus on the spurious ground that they "never incurred an obligation to make this directed grant." Objection at ¶ 27. Yet, the Debtors' Objection does not dispute that the Debtors' bonus award to Rheingans-Yoo included FDUs as part of his compensation package.

12. Instead, the Debtors argue that they did not incur an obligation to pay the FDU claim for two reasons. First, they argue that Rheingans-Yoo waived the FDU claim by not identifying the FDUs' recipient prior to the Petition Date. *See* Objection at ¶ 28. Second, they argue that Rheingans-Yoo lacks standing to assert the FDU Claim because he "personally" would not receive the funds. *Id.* at ¶ 29. The Debtors' objections are both meritless.

13. The Debtors' first argument, that Rheingans-Yoo did not timely select a charitable cause to receive the FDUs, is self-refuting. A contention that Rheingans-Yoo's failure to identify a charity prepetition destroys his FDU Claim is an admission that Rheingans-Yoo would have been entitled to the FDUs had he directed their payment before the bankruptcy case was filed. The Debtors admit that Rheingans-Yoo had a property right – the right to direct payment of FDUs – as of the Petition Date, and it survives as a valid prepetition claim.

14. The Debtors' argument that Rheingans-Yoo waived the FDU claim by not selecting charities prior to the Petition Date is also refuted by the Bonus Memo and Employment Agreement, neither of which imposed a deadline for Rheingans-Yoo to select a recipient of the FDUs, nor a mechanism for doing so. *See* Stipulation at ¶¶ 49, 51. Nor, after issuing the Bonus Memo, did the Debtors communicate with Rheingans-Yoo about a deadline for selecting a charity or a mechanism for doing so. *Id.* at ¶¶ 50, 52. The Debtors cannot ex post facto impose a deadline that was not communicated to Rheingans-Yoo in the Employment Agreement, the Bonus Memo, Final Ross Terms, or otherwise. The Debtors cannot manufacture an illusory deadline to deny Rheingans-Yoo his right to designate a charity now.

15. Additionally, the Debtors' position is refuted by Final Ross Terms. The agreement provides, in relevant part, that "FDUs held/rolled over are indexed to equity or cash…" Stipulation Ex. G. ¶ 2(b)(1). The plain language "held/rolled over" evidences Rheingans-Yoo's right to maintain and (in certain situations) even increase the value of an FDU Bonus award until he was ready to designate its recipient. The intervening chapter 11 filing does not affect Rheingans-Yoo's property interest in FDUs that were being held or rolled over, nor does it terminate his right to designate the charitable recipient. The Debtors cited no law in the Objection to the contrary.

16. Just as the "timeliness" thrust of the Objection lacks merit, so does the Debtors' assertion that Rheingans-Yoo lacks standing to assert the FDU Claim because he would not receive the donation personally.

17. To make this argument, the Debtors avoid an essential distinction: Rheingans-Yoo is not asserting a claim to be paid $650,000 in cash. His FDU Claim seeks to enforce *his property right* to direct the Debtors to pay $650,000 to a charity of his choice. The Bonus Memo states that

"you get another $650k of directed grants to any EA-driven cause if you want." Stipulation Ex. K at 2. That is, the Debtors awarded to Rheingans-Yoo the right to direct grants.

18. This property right to direct the grants was negotiated in Final Ross Terms and earned when it was awarded in the Bonus Memo.

19. That the Debtors and Rheingans-Yoo negotiated an unusual bonus structure – one consistent with Rheingans-Yoo's longstanding interest in improving the world through charitable donations – does not change the fact that the Debtors indeed awarded Rheingans-Yoo a bonus that, among other things, provided him a property right to direct a charitable grant.

20. Ultimately, the Debtors' argument about standing is self-defeating just like their argument about timeliness. Since the Bonus Memo conferred upon Rheingans-Yoo the right to direct a grant to a charity that only Rheingans-Yoo could identify, there is nobody *other* than Rheingans-Yoo with standing to assert the FDU Claim or identify the beneficiary of it.

21. One thing the Debtors and Rheingans-Yoo agree upon is that allowance of the FDU Claim "is primarily legal in nature." Stipulation at ¶ 61. As a matter of law, the Court should allow the FDU Claim and direct the Debtors to pay the allowed amount of the claim as a general unsecured claim in accordance with the Debtors' plan.

## BACKGROUND

22. The Court is respectfully referred to the Stipulation for a complete recitation of the relevant facts.

## ARGUMENT

23.     Only three paragraphs in the Objection relate to the FDU Claim. None of those paragraphs cites case law. The Debtors' ipse dixit argument does not merit a ruling that the FDU Claim should be disallowed.

**A. Rheingans-Yoo has a valid property interest in directing the FDU grant to charity.**

24.     Rheingans-Yoo did not have a mere expectancy interest in the FDUs; he had an enforceable property interest in them as of the September 2022 Bonus Memo.

25.     The fact that a bonus is not approved for payment until later does not alter the time when it is earned. *See* [In re Eutsler](), No. 11–31133, 2012 WL 27499, *2 (Bankr.W.D.N.C. Jan. 5, 2012). Wages and bonuses are not "earned when the employer finally acknowledge[s] its obligation to pay the wage." [In re Idearc, Inc.](), 442 B.R. 513 (Bankr.N.D.Tex.2010). If the right to wages arises at "a particular point in time but payment is deferred until a later date, the salary is earned when the right to receive payment occurred." 4 Collier on Bankruptcy ¶ 507.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2010). *See also* [3 Norton Bankr.L. & Prac.3d]() § 49:45 (2010) ("employee earns wages … at the time that the services are performed, rather than at the time that the right to payment vests.").

26.     Collier on Bankruptcy gives the following example to illustrate this rule:

> If a bonus is awarded in December, but not payable until the following March, the bonus was earned in December.

4 Collier on Bankruptcy ¶ 507.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2010).

27.     Indeed, "[i]f an employee's right to wages arises at a particular point in time but payment is deferred until a later date, the wages are 'earned,' … when the right to receive payment occurs regardless of when, if ever, actual payment takes place." *In re Idearc Inc.*, 442 B.R. at 513; [9D Am. Jur. 2d Bankruptcy § 3308 (August 2017)](); *see also* [In re Cardinal Indus., Inc.](), 160 B.R.

83, 85 (Bankr.S.D.Ohio 1993) (holding that an employee's commissions were earned when he performed the services that gave rise to the right to the commissions, even where half of the commissions were payable when the sale was made, and the remaining half were payable on the contingency that the customer made future payments to the debtor-company").

28. Where property rights are created prepetition, it is well established that the presence of contingencies does not necessarily defeat a claim to the property. *See In re Brown*, 601 B.R. 514 (Bankr.C.D.Ill.2019).

29. A bonus earned prepetition, to the extent it is not entitled to priority, is allowable as a general unsecured claim. *Matter of Eye Contact, Inc.*, 97 B.R. 990, 993 (Bankr. W.D.Wis.1989) (remaining amount of bonus after priority applied "would be allowable as a general unsecured claim").

30. Based on the foregoing, Rheingans-Yoo earned the FDU bonus from the Debtor as of June 30, 2022. *See* Stipulation at ¶ 41; Ex. K ("Your bonus for the first half of 2022 is…").

31. At the latest, Rheingans-Yoo earned the FDU bonus from the Debtor as of the date it was awarded in the Bonus Memo, September 1, 2022 – 71 days before the Petition Date. *See* Stipulation at ¶ 38 ("September 1, 2022 [bonus] memorandum").

32. The fact that the amount of the FDU Claim was payable to charity following Rheingans-Yoo designating recipients makes no difference to the outcome: The property right vested when the Debtors awarded the bonus, and the FDU Claim is allowable as a general unsecured claim.

**B. Rheingans-Yoo did not waive his right to the FDUs.**

33. A waiver is the "intentional relinquishment or abandonment of a known right or privilege." *In re Communication Dynamics, Inc.*, 382 B.R. 219, 238 (Bankr.D.Del.2008). "Waiver

7

is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those [] rights." *Bantum v. New Castle C'ty Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011).

34. The Debtors seem to argue that because Rheingans-Yoo did not identify the charitable recipient of the FDUs between the September 1, 2022 date of the Bonus Memo and the November 11, 2022 Petition Date, he somehow waived his right to direct payment of the FDUs. *See* Objection at ¶ 28 ("The Debtors have identified no evidence that Rheingans-Yoo ever directed a grant of $650,000 to any Effective Altruist cause prior to the Petition Date.").

35. Rheingans-Yoo did not voluntarily and intentionally relinquish his right to direct payment of the FDUs. He did not even involuntarily or unintentionally do so. Rheingans-Yoo timely filed the FDU Claim prior to the bar date in the Debtors' chapter 11 case, demonstrating a willingness to enforce his rights. No waiver occurred; the Objection should be overruled.

**C. The FDUs are a material and binding term of Rheingans-Yoo's employment.**

36. The Debtors will seek to exclude the Court from considering Final Ross Terms. They will say it is inadmissible parol evidence because the Employment Agreement contains an integration clause. *See* Stipulation at ¶ 30. However, for the parol evidence rule to apply, one must first present a "fully integrated agreement." *Taylor v. Jones*, 2002 WL 31926612, at *3 (Del. Ch. Ct. Dec. 17, 2002).

37. An agreement is partially integrated if evidence of prior negotiations suggests that a contract is not a final or complete expression of the parties' understanding. *See* Restatement (Second) of Contracts § 209(3) (1981).

38. In other words, some written contracts are executed after parties to the contract have given assurances, made promises, and reached understandings. Under such circumstances,

the writing may not address certain questions that would naturally arise out of the subject matter. "Where a written agreement is final and incomplete, it is a partially integrated contract." *Carrow v. Arnold*, 2006 WL 3289582, at *4 (Del. Ch. Oct. 31, 2006), aff'd, 933 A.2d 1249 (Del. 2007).

39. Here, Rheingans-Yoo executed his Employment Agreement in material reliance upon the understandings reached by the parties and memorialized in Final Ross Terms, including questions on which the Employment Agreement was silent. It was of clear importance to both parties to reach agreement on these understandings, as evidenced by their repeated exchange of drafts of Ross Terms prior to final agreement. *See* Stipulation at ¶¶ 1-21 (describing Original Ross Terms, Revised Ross Terms, and Final Ross Terms); Exs. A-J.

40. Although the parol evidence rule bars the Court's consideration of evidence that would contradict a complete agreement, the rule does not "prohibit the *supplementation of partially* integrated contracts by evidence of an oral agreement that is consistent with, and does not contradict the writing." *Taylor v. Jones*, *supra* (emphasis in original). The parties' conduct in the course of performance of the contract may also supplement the terms of a partially integrated agreement. *See Artesian Water Co. v. State, Dept. of Highways and Trasnp.*, 330 A.2d 441, 443 (Del.1974).

41. Here, the Employment Agreement is silent on the structure of Rheingans-Yoo's bonus. Although the Employment Agreement provided the Debtors with discretion as to whether to issue a bonus and the amount of any bonus (*see* Stipulation at ¶ 28), the Employment Agreement fails to discuss the structure of a bonus once awarded. *See id.* at ¶ 29. This makes the Employment Agreement only partially integrated with respect to the structure of a bonus the Debtors may award.

42. Final Ross Terms refers to the bonus and evidences the parties' prior negotiations concerning it. The Bonus Memo reflects the parties' actual performance rendered after execution

of the Employment Agreement. The Bonus Memo's bonus structure is identical to that of Final Ross Terms. *See generally* Stipulation.

43. Neither Final Ross Terms nor the Bonus Memo contradict the Employment Agreement. Those documents supplement the Employment Agreement with detail about how the Debtors and Rheingans-Yoo agreed any awarded bonus would be structured. Final Ross Terms and the Bonus Memo are evidence of prior negotiations and course of performance, respectively. These documents are consistent with the Employment Agreement – a bonus is awarded at the Debtors' discretion – and supplement the partially integrated Employment Agreement to show that if the Debtors did award Rheingans-Yoo a bonus, it would be awarded as half cash/options, and half FDUs.

44. Given this undisputed evidence, the Court should find that the parties intended to incorporate their prior understanding of Final Ross Terms into the Employment Agreement. Because the parties did not do so, the Employment Agreement is an incomplete expression of the parties' agreement and a partial integration.[4] The contract's terms may therefore be supplemented by evidence of the parties' prior understandings and course of performance, namely by Final Ross Terms, which clearly described how Rheingans-Yoo was to receive a bonus if one was awarded to him, and the Bonus Memo, which indisputably mirrors Final Ross Terms.

45. This, too, requires a finding that any bonus awarded by the Debtors under the Employment Agreement would be structured pursuant to Final Ross Terms, which did not make an FDU award contingent upon Rheingans-Yoo accepting it "if he wants."

---

[4] In the alternative, should the Debtors nevertheless maintain that the Employment Agreement is fully integrated, then the Debtors should not be heard to argue that the Bonus Memo added a material term – that Rheingans-Yoo was entitled to FDUs only "if he wants." The Debtors agreed that the Employment Agreement is silent on FDUs. *See* Stipulation at ¶ 29. Therefore, the Debtors could not add a contingency to Rheingans-Yoo's bonus in the Bonus Memo.

D. **Rheingans-Yoo has standing to assert the FDU Claim.**

46. Rheingans-Yoo is the only person with standing to assert the claim that the Bonus Memo awarded him a property right to designate a charity or charities to which the Debtors must grant $650,000. The yet-unidentified charities cannot assert the claim. And as described in the preceding sections and evidenced in the Stipulation, the Bonus Memo did not impose a deadline on Rheingans-Yoo to identify the charitable recipients, nor did the Debtors.

47. Companies routinely enter into agreements that bind a party to make charitable donations. *See*, *e.g.*, *Power v. Tyco Intern. (US), Inc.*, No. 02 Civ. 6444(GEL), 2007 WL 1574044 at *11 (S.D.N.Y. May 30, 2007) (reciting company making contribution to employee's charity); *Hanrahan v. Bakker*, 151 A.3d 195 (Sup. Ct. Pa. 2016) (reciting lawyer's charitable contributions pursuant to agreement with his law firm). They can also agree to make charitable donations where the charity will be selected by someone else. *See Seinfeld v. Robinson*, 676 N.Y.S.2d 579, 581 (App. Div. N.Y. 1st Dep't 1998) (reciting American Express's agreement to donate $8 million to a charity designated by Edmond J. Safra).

48. Employees can agree with their employer that the employees will contribute to charity as a material condition of their employment. A prominent example of a company making such agreements is the Atlanta Braves in Major League Baseball. They sign players to contracts in which the players agree to donate 1% of their salary to charity. *See, e.g.,* ESPN, *Atlanta Braves sign catcher Travis d'Arnaud to replace Brian McCann*, https://www.espn.com/mlb/story/_/id/28155510/atlanta-braves-sign-catcher-travis-darnaud-replace-brian-mccann (last visited February 4, 2025) ("He gets $8 million in each of the next two seasons and agreed to donate $80,000 annually to charity."); The Associated Press, *Profar agrees to $42M, 3-year contract with Braves, a year after getting $1M deal with Padres*,

https://wtop.com/sports/2025/01/profar-agrees-to-42m-3-year-contract-with-braves-a-year-after-getting-1m-deal-with-padres/ (last visited February 4, 2025) ("Profar will make $12 million in 2025 and $15 million in each of the following two seasons. He will donate 1% of his salary to the Atlanta Braves Foundation.").

49. Because employers can agree that employees will make a charitable donation as a term of employment, it stands to reason that employers can also agree with employees that the employers will donate money to charity as a material condition of employment, as indeed Final Ross Terms provides. Thus, Rheingans-Yoo holds an enforceable property interest under his Employment Agreement.

## CONCLUSION

The Debtors do not dispute that they awarded Rheingans-Yoo a prepetition bonus that granted him the right to direct $650,000 in charitable donations. That property right did not disappear when the Debtors filed a chapter 11 petition. The right survives as a general unsecured claim the amount of which shall be directed by Rheingans-Yoo to a charitable recipient.

**WHEREFORE**, for the foregoing reasons, Rheingans-Yoo respectfully requests that the Court overrule the Objection, allow Rheingans-Yoo's FDU Claim, and grant such other and further relief as the Court deems just and proper.

[*Signature Page to Follow*]

Dated: February 12, 2025
Wilmington, DE

/s/ *Michael J. Joyce*
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
mjoyce@mjlawoffices.com

-and-

Scott Simon (*pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, NY 10119
Telephone: (212) 695-8100
ssimon@goetzplatzer.com

*Counsel to Ross Rheingans-Yoo*