**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. No. 29345**<br><br>**Hearing Date: February 27, 2025 at 10:00 a.m. ET**<br>**Obj. Deadline:  February 14, 2025 (by agreement)** |

**OBJECTION OF THE FTX RECOVERY TRUST TO THE MOTION OF HYUNG
CHEOL LIM, AIMED, INC., BLOCORE PTE., LTD., JI WOONG CHOI, AND MOSAIC
CO. LTD. FOR AN ORDER, PURSUANT TO RULES 3001 AND 3020(D) OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE AND 11 U.S.C. §§ 105(A) AND
1142(B), FOR LEAVE TO AMEND PROOF OF CLAIM NO. 87144 TO
CORRECT CLAIMANT'S NAME AND ADDRESS**

The FTX Recovery Trust[2] hereby submits this objection (this "Objection"), to the

*Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte., Ltd., Ji Woong Choi, and Mosaic Co. Ltd.*

*for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure*

*and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct*

*Claimant's Name and Address* [D.I. 29345] (the "Motion").  For the reasons set forth below, the

Motion should be denied, or, in the alternative, the Court should direct the parties to meet and

confer regarding a schedule for discovery and further proceedings to resolve the complex disputes

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of post-effective date debtor entities in these chapter 11 cases, a complete list of the post-effective date debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the FTX Recovery Trust's claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established through the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Effective Date").

implicated by the Motion.  In support of the Objection, the FTX Recovery Trust respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Motion is the latest in a series of efforts by multiple parties to obtain control of all or part of $160 million worth of purported claims related to FTX.com Exchange accounts maintained by Junho Bang, an individual imprisoned in the Republic of Korea because of his role in a sizeable fraud involving a now-defunct cryptocurrency yield platform.  The FTX Recovery Trust takes no position at this time on who, if anyone, should ultimately be entitled to receive any distributions that might be made on claims filed with respect to Bang's accounts.  It is, however, apparent that the Motion should be denied because there is no legal or evidentiary basis presented to take the drastic step of replacing the claim holder of record, and the Motion is not the proper vehicle to resolve a complex web of disputes among various parties scattered across the globe.

2.     In short, sorting out the saga of these Claims will be anything but a "ministerial" act as the Movants misleadingly assert.  (Mot. ¶ 20.)  As an initial matter, the entire premise for the Movants seeking immediate relief is the Debtors' omnibus KYC objection (the "KYC Objection")[3] and the deadlines contained therein for completing the KYC process.  (Mot. ¶ 6.)  Following discussion with the Movants' counsel, the FTX Recovery Trust removed the pending claims associated with Bang from the KYC Objection, and will separately address them. As a result, there is no exigency to the situation.  The FTX Recovery Trust did this, among other reasons, due to the combination of Bang facing serious impediments to ever satisfying the Original

---

[3]   The KYC Objection refers to the *Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [Dkt. No. 28225], which was sustained by an order entered on February 3, 2025 [Dkt. 29464] (the "KYC Order").

Customer[4] KYC requirements, and the complex issues presented by the asserted competing interests in the Claims.

3.  Bang was a high-volume trader on the FTX.com Exchange who maintained two accounts: one associated with Customer Account No. 82284765 (the "765 Account") and one associated with Customer Account No. 1806799 (the "799 Account" and together with the 765 Account, the "Accounts").

4.  In the fall of 2023, Bang filed two customer proofs of claim based on these Accounts:  (i) Claim No. 50458 regarding the 799 Account on September 11, 2023, and (ii) Claim No. 87144 regarding the 765 Account on October 6, 2023 (the "Superseded Claim"), which is the claim that is the subject of the instant Motion.[5]

5.  On July 18, 2024, Bang amended and superseded both claims by filing amended operative claims with respect to the 765 Account, Claim No. 96401 (the "Operative Claim") and the 799 Account, Claim No. 96400 (together the "Amended Claims").  (*See* Glueckstein Decl. Exs. C-D.)  Bang filed each of these superseding claims on behalf of Lemma Technologies Inc. ("Lemma"), asserting that, "in his capacity as president of Lemma," he "inadvertently filed the [initial claims] under his individual name" although the claims had previously been transferred to Lemma pursuant to an agreement signed on January 18, 2023. (Glueckstein Decl. Ex. C.)

6.  Through the Motion, Hyung Cheol Lim, Aimed, Inc., Blocore Pte. Ltd. (collectively, the "Lim Parties"), and Ji Woong Choi, and Mosaic Co. Ltd. (collectively, the "Choi

---

[4]  Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan.

[5]  Exhibits A-B to the *Declaration of Brian D. Glueckstein in Support of the FTX Recovery Trust's Objection to the Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte., Ltd., Ji Woong Choi, and Mosaic Co. Ltd. for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* (the "Glueckstein Decl."), filed contemporaneously herewith.

Parties," and together with the Lim Parties, the "Movants") seek to obtain control of the now-Superseded Claim No. 87144 and any Distributions made on account of that Claim.  (Motion ¶ 1-2.)  Despite Bang's contrary representations made when filing the Operative Claim, the Movants assert that "Bang mistakenly filed the Proof of Claim" No. 87144 "in his own name and failed to check the box on the Proof of Claim form" to indicate that he was filing the claim in his capacity as their agent.  (Motion ¶ 1.)  Accordingly, the Movants assert that their motion to substitute themselves for Bang on the Superseded Claim is intended to "rectify Bang's error" (Motion ¶ 1)— despite the fact Bang only seven months ago amended Claim No. 87144 by filing the Operative Claim in this Court in the name of Lemma and not the Movants.  (*See* Glueckstein Decl. Ex. C.)  Thus, it is apparent that the Motion is not, as the Movants claim, an effort to address a "ministerial defect" in a claim that "can be easily remedied."  (Motion ¶ 60.)

7.      Rather, the Motion appears to be an attempt to grab the upper hand as part of part of a scramble for Bang's assets in the wake of the collapse of Korean cryptocurrency platform Haru Invest, which implicates Haru United Pte., Ltd. and certain of its affiliates (collectively "Haru") and Delio Co., Ltd. ("Delio").  Haru, now in liquidation in South Korea, previously attempted to seize control of Bang's FTX Accounts by serving FTX Trading Ltd. with a civil order purportedly from a Korean court.  (Glueckstein Decl. Ex. E.)  Further, although the Motion studiously avoids mention of Haru, the Motion concedes that Bang and two vaguely identified additional investors, "Investor A" and "Investor B," may have interests in any claim related to the 765 Account because they also deposited funds into the account.  (Motion ¶ 38.)  This concession forecloses the relief requested in the Motion since the Movants could not have been the beneficial owner of the 765 Account at all times.  Nor does the Motion provide evidence that any other parties' claims for amounts held in the 765 Account were ever satisfied.

8.    Any efforts by the Movants, Bang, Haru, or others to obtain the benefit of the Operative Claim will be complicated by Bang's aborted sale of Lemma's Amended Claims to Svalbard Holdings Limited ("Svalbard"), in June 2023.  (Glueckstein Decl. Ex. F.)  In January 2024, Svalbard filed suit against Lemma in New York Supreme Court seeking specific performance of alleged contracts conveying to Svalbard any rights to claims related to the Accounts.  (*Id.*)  The Movants concede the relevance of the Svalbard litigation (Motion ¶ 30), but ignore the merits of those claims.  Svalbard has filed an objection to this Motion in which it disputes that the Movants have any right to the Operative Claim and alleges the Movants are seeking to circumvent the pending New York action.[6]  This demonstrates why the Motion must fail.

9.    The FTX Recovery Trust takes no position at this time as to who, if anyone, may have any interest in Distributions if either or both of the Amended Claims become Allowed Claims.  To be clear, despite false assertions by the Movants to the contrary (Mot. ¶ 43), neither the Superseded Claim nor either of the Amended Claims have been Allowed and the FTX Recovery Trust reserves all rights to object to the merits of those Claims.[7]  In addition, to become Allowed Claims, Bang would need to satisfy Original Customer KYC, which may prove impossible.  In the absence of a negotiated resolution, the FTX Recovery Trust may need to commence proceedings in this Court to adjudicate the competing assertions to the beneficial

---

[6]    *Svalbard Holding Limited's Objection to Motion of Hyung Cheol Lim, Aimed, Inc., Blocore Pte, Ltd., Ji Woong Choi, and Mosaic Co. Ltd. for an Order, Pursuant to Rules 3001 and 3020(d) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105(a) and 1142(b), for Leave to Amend Proof of Claim No. 87144 to Correct Claimant's Name and Address* (the "Svalbard Objection") [D.I. 29518].

[7]    The Superseded Claim that is the subject of the Motion was filed late on October 6, 2023, after the Customer Bar Date occurred on September 29, 2023, among other issues.

interest in the Amended Claims in a manner that permits all relevant parties an opportunity to be heard.[8]

10.     The Motion itself should, however, be denied without further proceedings for at least three independent reasons.  *First*, the Movants seek relief only with respect to the Superseded Claim that is moot and failed to commence an adversary proceeding to do so.  *Second*, the agency theory advanced in the Motion fails on its face based on the allegations made by the Movants themselves.  As a result, the Motion could not be granted even if the Movants' defective evidence was credited.  *Third*, the evidence proffered by the Movants is inadmissible and fails to address critical competing facts.

11.     The notion that "Bang mistakenly filed" (Motion ¶ 1) proofs of claim intended to be filed on behalf of the Movants is fanciful.  Rather, it appears the Movants are at best alleged creditors of a creditor who are impermissibly seeking to transform these Chapter 11 proceedings into a "collection forum for third-party claims."  *See In re Logan*, 2010 WL 1286651, at *2 (Bankr. E.D. Va. Mar. 29, 2010) (describing how efforts to obtain pre-judgement garnishment of payments owed to creditors are disfavored).

12.     Accordingly, if the Court does not deny the Motion outright (and it should), the Court should direct the parties to meet and confer to establish a schedule for discovery and an evidentiary hearing to address the various disputes regarding interests in the Operative Claim.

---

[8]     The Svalbard Objection asserts that this Court is not the appropriate forum to decide issues related to interests in the Claims.  The FTX Recovery Trust disagrees and reserves all rights to commence any appropriate action in this Court consistent with the Plan and the FTX Recovery Trust Liquidating Trust Agreement.

## RELEVANT BACKGROUND[9]

### I. Bang's Accounts on the FTX.com Exchange

13.     Bang allegedly maintained two accounts on the FTX.com Exchange. (Glueckstein Decl. Exs. C-D.)  The Accounts were opened in Bang's own name and, according to the Motion, included assets he obtained from multiple different parties.  (Motion ¶ 38.)  On January 18, 2023, Bang reportedly executed a contract transferring any claims related to his Accounts to Lemma Technologies Inc., a Panamanian company.  (Glueckstein Decl. Ex. F (Svalbard Compl. Ex. 1).)

### II. Bang's Involvement with Haru and Delio

14.     According to news reports, Bang was entrusted with assets by Haru and Delio, which operated at least one consumer-facing cryptocurrency platform promising to provide customers with guaranteed returns on deposited cryptocurrency.[10]   Bang has allegedly acknowledged that Haru's assets were deposited into his Accounts.  (Choi Decl. Ex. G ¶ 7.)

15.     In June 2023, Haru and Delio reportedly froze customer withdrawals and then collapsed.[11]   Haru and Delio are being liquidated in the Republic of Korea.  [D.I. 29346-9 at 2-4 (certifying an attempt to serve trustees for Haru and Delio).]

---

[9]     The FTX Recovery Trust's investigation regarding the Accounts and the Amended Claims is ongoing.  Unless otherwise indicated, the "facts" summarized in this background section are based on news reports, allegations made in the Motion, or other parties' court filings.  The FTX Recovery Trust recites this background only to demonstrate that the Motion is not supported by evidence sufficient to resolve all actual and potential disputes regarding the Accounts and the Operative Claim.  The FTX Recovery Trust reserves all rights with respect to the Accounts and any claims related to the Accounts, including the Operative Claim, and to submit evidence at the appropriate time.

[10]    Judith Bannermanquist, *Haru Invest Files Criminal Complaint Against Consignment Operator*, COINTELEGRAPH (June 14, 2023), https://cointelegraph.com/news/haru-invest-files-criminal-complaint-against-consignment-operator; *Court Sentences B&S Holdings Majority Shareholder to 10 Years in Prison for 60 Billion KRW Cryptocurrency Fraud*, COINHUBKOREA (Aug. 23, 2024), https://coinhubkorea.com/court-sentences-bs-holdings-majority-shareholder-to-10-years-in-prison-for-60-billion-krw-cryptocurrency-fraud/.

[11]    Zhiyuan Sun, *Crypto Yield Platform Haru Suspends Transfers After Investigation*, COINTELEGRAPH (June 13, 2023), https://cointelegraph.com/news/crypto-yield-platform-haru-suspends-transfers-after-investigation; Judith

### III.   Bang's Sale of Claims Related to His Accounts

16.     On June 16, 2023, amid Haru's collapse, Lemma allegedly entered into contracts to sell any claims related to Bang's Accounts to Svalbard, a company organized under the laws of the Cayman Islands, which is affiliated with Attestor Limited, a company based in the United Kingdom.  (Glueckstein Decl. Ex. F (Svalbard Compl. Exs. 2-3); *see also* Motion ¶ 30.)  The contracts purport to convey one claim valued at $106,269,300 and one claim valued at $59,391,855.  (*Id*.)  But the transaction between Lemma and Svalbard never closed.  (*Id.* (Svalbard Compl. ¶¶ 26-36).)

17.     As a result, on January 29, 2024, Svalbard brought an action against Lemma in the New York Supreme Court, *Svalbard Holdings Limited* v. *Lemma Technologies Inc.*, Index No. 650457/2024.  Svalbard's complaint against Lemma alleges that trade confirmations between Lemma and Svalbard are enforceable contracts for the sale of claims and requests specific performance.  (Glueckstein Ex. F (Svalbard Compl. ¶¶ 38-48).)  According to filings made by Svalbard, it is in the process of serving Lemma with the complaint pursuant to a letters rogatory process.  (Glueckstein Decl. Ex. G.)

### IV.   The Claims Bang Filed

18.     Bang filed proofs of claim relating to the Accounts in these Chapter 11 proceedings:  a timely claim in September 2023 (Claim No. 50458), and an untimely claim in October 2023 (Claim No. 87144).  (*See* Glueckstein Decl. Exs. A-B.)  Notwithstanding the prior agreement transferring any claims related to his Accounts to Lemma, Bang initially listed himself as the claimant on each claim.  (*Id.*)

---

Bannermanquist, *South Korean Bitcoin Leading Platform Delio Pauses Withdrawals*, COINTELEGRAPH (June 14, 2023), https://cointelegraph.com/news/south-korean-bitcoin-lending-platform-delio-pauses-withdrawals

19.     On July 18, 2024, Bang amended his claims by filing Claim Nos. 96400 and 96401, identifying Lemma as the claimant.  (Glueckstein Decl. Exs. C-D.)  Each of these Amended Claims included a similarly worded attached addendum.  (*Id*.)  The addendum for the Operative Claim, Claim No. 96401, states as follows:

> This Amended Proof of Claim amends the proof of claim identified on the Kroll claims registry as Claim Number 87144 filed on October 6, 2023 (the "<u>Initial Claim</u>").
>
> Lemma is the transferee of the customer claim against the Debtors associated with the FTX Account ID 82284765. The underlying claim was originally held by Lemma's president, Junho Bang ("<u>JB</u>"), in his individual capacity. On January 18, 2023, JB, in his individual capacity, transferred the claim to Lemma.
>
> On October 6, 2023, JB, in his capacity as president of Lemma, inadvertently filed the Initial Claim under his individual name. The Initial Claim was intended to have been filed in Lemma's name—not in the individual name of Lemma's president. Therefore, Lemma amends its claim solely to correct the same. This Amended Proof of Claim does not amend the holdings asserted in the Initial Claim.

(Glueckstein Decl. Ex. C.)

## V.     Haru's Efforts to Obtain Control of Bang's Accounts

20.     On June 17, 2024, the Debtors' Antiguan agent was served with a purported order from the Seoul Central District Court (the "<u>Haru Order</u>.").  (Glueckstein Decl. Ex. E.)  The Haru Order lists "Haru United Pte. Ltd." as a creditor of Bang, the "Debtor," and lists FTX Trading Ltd. as a "Third-Party Debtor."  (*Id.* at 3.)  The Haru Order identifies both of Bang's Accounts as subject to "provisional seizure" to satisfy a claim of 148,380,000,000 Korean Won.  (*Id.* at 4.)  The Haru Order demanded that "[t]he receivable held by the Debtor against the Third-Party Debtor . . . shall be provisionally seized" and "[t]he Third-Party Debtor shall not pay for the receivable to the Debtor."  (*Id.* at 4.)

21.     The FTX Recovery Trust reserves all rights with respect to the Haru Order, which appears to have been entered in contravention of the automatic stay, but nonetheless has classified the Operative Claim as a Disputed Claim.

## VI.     Criminal Proceedings Against Bang

22.     Bang was reportedly arrested in February 2024 for his role in the collapse of Haru and Delio.[12]  In August 2024, Bang was reportedly sentenced to 10 years in jail based on charges that he defrauded Haru and Delio.[13]  There are reportedly additional criminal proceedings still ongoing against Bang.  In connection with those proceedings, on or about January 23, 2025, Bang reportedly argued that he should be granted bail so that he can complete the KYC process in relation to Lemma's pending claims and respond to Svalbard's lawsuit.

## VII.     The Instant Motion

23.     On January 21, 2025, the Movants filed the instant Motion.  [D.I. 29345.] The Motion argues that Bang was the Movants' agent and that "approximately 95%" of the assets in the 765 Account were invested by Bang on the Movants' behalf.  (Motion ¶ 1.)  According to the Movants, Bang "mistakenly" filed Claim No. 50458 under his own name rather than that of the Movants.  (*Id.*)  Thus, the Movants "seek leave of the Court to amend the Proof of Claim and substitute their name[s] for Bang's name as the initial holder of the Claim."  (*Id.*)  Although styled as a straight-forward motion to correct "ministerial defects" in a claim, the Motion was accompanied by a raft of supporting declarations attaching translations of various documents and

---

[12]   Helen Partz, *Haru Invest Execs Arrested in South Korea on Embezzlement Charges*, COINTELEGRAPH (Feb. 6, 2024), https://cointelegraph.com/news/haru-invest-execs-arrested-south-korea

[13]   *Court Sentences B&S Holdings Majority Shareholder to 10 Years in Prison for 60 Billion KRW Cryptocurrency Fraud*, COINHUBKOREA (Aug. 23, 2024), https://coinhubkorea.com/court-sentences-bs-holdings-majority-shareholder-to-10-years-in-prison-for-60-billion-krw-cryptocurrency-fraud/.

was purportedly noticed to seven different apparent parties-in-interest who reside outside the United States with no proof of proper service that provided actual notice.

24. ***Translations of Alleged Investment Agreements***.  In support of the Motion, the Movants submitted declarations from Choi and Lim.  [D.I. 29346 ("Lim Decl."); D.I. 29347 ("Choi Decl.").]  Attached to those declarations are purported translations of six alleged Investment Agreements that are not accompanied by copies of the original documents.  (Lim Decl. Exs. A-C; Choi Decl. Exs. A-C.)  Three of the translations contain no mention of Bang.  Instead, they describe Investment Agreements dated June 27, 2022 between the Choi Parties and an individual named Joon Song.  (Choi Decl. Exs. A-C.)  The other three translations describe undated Investment Agreements between the Lim Parties and Bang.  (Lim Decl. Exs. A-C.)  None of the translations reference any of Bang's Accounts on the FTX.com Exchange.  (Lim Decl. Exs. A-C; Choi Decl. Exs. A-C.)

25. ***Translations of Alleged Fact Confirmation Statements***.  To connect their alleged Investment Agreements to Bang and his Accounts, the Movants rely upon translations of "Fact Confirmation Statements" purportedly signed by Bang on June 23, 2023 and September 26, 2023 for other reasons.  The translations of these Fact Confirmation Statements attached to the Lim and Choi Declarations are not accompanied by copies of the original statements allegedly signed by Bang.  (Lim Decl. Exs. G-H, Choi Decl. Exs. G-H.)  Nor do the translations suggest the original statements contain any sort of oath.  (*Id.*)  The Fact Confirmation Statements are in any event hearsay inadmissible under the Federal Rules of Evidence.

26. ***Expert Declarations***.  Bang's two-year-old Fact Confirmation Statements do not contemplate the filing of the Motion or being used in these proceedings.  In an attempt to

fill this gaping hole in their story, the Movants supplement these statements with two declarations from purported experts.

27.    *First*, the Movants submitted a declaration from Professor Soogeun Oh [D.I. 29349 (the "Oh Declaration")], a professor emeritus at Ewha Womans University in Seoul, South Korea.  (*Id.* ¶ 1.)  Professor Oh purports to interpret the Investment Agreements under Korean law. (*Id.* ¶¶ 4, 50.)

28.    *Second*, the Movants submitted a declaration from Andrew Glantz, the Chief Strategy Officer and Counsel of XClaim Inc., a claims trading broker.  [D.I. 29348 ("Glantz Decl.").][14]  The Glantz declaration asserts that, based on "FTX Account Data" provided by Bang on January 13, 2025, "Bang caused approximately $141.1 million of the Principals' digital assets (priced as of the date of each transfer) (or $121.4 million priced as of the Petition Date) to be deposited into the [765 Account] between June 23, 2022 and the Petition Date."  (Glatz Decl. ¶¶ 15-16.)  The Glantz Declaration states that Bang also deposited digital assets from multiple other investors into the 765 Account.  (*Id.* ¶ 17.)

## ARGUMENT

### I.    The Motion Should Be Denied Because Claim No. 87144 Has Been Superseded by Claim No. 96401 and the Motion Is Facially Deficient.

29.    The Motion is based on the fatally flawed premise that the Movants merely seek to "correct a ministerial defect" in "Proof of Claim No. 87144"—the Superseded Claim. (Mot. ¶ 1.)  This argument fails for multiple procedural and substantive reasons.  *First*, the Superseded Claim is irrelevant because it was previously amended and is expunged pursuant to section 8.3.1 of the Plan.  Thus, no relief can be granted with respect to the Superseded Claim.

---

[14]    The FTX Recovery Trust reserves all rights with respect to the Oh Declaration and the Glantz Declaration, including but not limited to whether Mr. Glantz qualifies as an expert pursuant to Federal Rule of Evidence 702.

*Second*, the Movants plainly request the Court to determine the validity of their and Bang's asserted interests in a proof of claim, which requires the commencement of an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2).

30.     *Third*, the Motion on its face belies any argument that "[r]ather than file the Proof of Claim as the Principals' agent, identifying the Principals as the creditors, Bang mistakenly filed the [Claim No. 87144] in his own name and failed to check the box on the Proof of Claim form marked 'I am the creditor's authorized agent.'"  (Mot. ¶ 1.)  Nothing in the Motion or the inadmissible and otherwise defective evidence submitted (*see* Section II, *infra*) could support such a theory.  Neither of Bang's supposed Fact Confirmation Statements state Bang made any such mistake.  (Lim Decl. Exs. G-H; Choi Decl. Exs. G-H.)  The purported June 23, 2023 Fact Confirmation Statement stated that "if the assets entrusted to FTX Trading Ltd. become eligible for withdrawal, the confirmer [Bang] will immediately proceed with the return procedure for the entrusted assets to" the Choi Parties and "other entrusting parties," who are not identified.  (Lim Decl. Ex. G ¶ 6; Choi Decl. Ex. G ¶ 6.)  That is a far cry from Bang saying he was the Movants' agent and that they actually are the claim holder with respect to the Superseded Claim or any other claim.  In the September 26, 2023 Fact Confirmation Statement, Bang supposedly stated he will return the remainder of the 765 Account assets to the Movants which, at best, suggests that Bang at one time acknowledged he owed a debt to the Movants.  (*See* Lim Decl. Ex. H ¶ 4; Choi Decl. Ex. H ¶ 4.)

31.     Bang's only relevant statement about this matter made in connection with these Chapter 11 proceedings directly contradicts the premise of the Motion.  When Bang filed the Operative Claim, Claim No. 96401 in July 2024—more than year after allegedly providing the Fact Confirmation Statements—Bang re-affirmed his interest in the Accounts through the

Amended Claims and stated that the Superseded Claim at issue, Claim No. 87144, should have been filed in the name of his Lemma entity because he "transferred the claim to Lemma" on January 18, 2023. (Glueckstein Decl. Ex. C.)

32.     Furthermore, none of the Movants' Investment Agreements reference the 765 Account. (Lim Decl. Exs. A-C; Choi Decl. Exs. A-C.) And the Oh Declaration never once states that the Movants' Investment Agreements gave them ownership rights as to the whole of the 765 Account. Rather, the Oh Declaration speaks to the Movants' supposed right to "request the return" of their "property." (*See, e.g.*, Oh Decl. ¶ 48.) All of this simply suggests the Movants may be a creditor of Bang, but nothing supports an agency or other argument that they are beneficiaries of the FTX Recovery Trust.

33.     The Movants assert that it is "reasonable to assume the digital assets [Bang] withdrew prepetition were predominately his own assets, all the assets of Investor A . . . and potentially all of Investor B's assets such that, as of the Petition Date, the Principals owned 100% of the Claim." (Motion ¶ 40.) But they provide nothing to support this remarkable assertion. Indeed, it is likely that they never could provide any such evidence because, as this Court well knows, digital assets and fiat currency are generally fungible and, therefore untraceable once commingled.

34.     While the FTX Recovery Trust has serious concerns about the Glantz Declaration, taken at face value even that declaration identifies $4.1 million of digital assets in the 765 Account originating from an unnamed "Investor A," $2.1 million of digital assets from an unnamed "Investor B," and $18.4 million of "Bang's own personal digital assets" that were identified "upon information and belief based on Bang's books and records." (Glantz Decl. ¶ 17.)

Thus, the Movants' own submissions preclude their argument that Bang simply checked the wrong box acting as their agent because they never owned the entirety of the 765 Account or its contents.

35.     Nor does the Oh Declaration even attempt to explain how the Investment Agreements the Choi Parties signed with Song gave rise to an agency relationship with Bang. Instead, the Oh Declaration analyzes each of the Investment Agreements as though they have identical terms and were each signed by Bang—which they were not. (*Compare* Oh Decl. ¶ 4, *with* Oh Decl. ¶¶ 7-9.)  Accordingly, even if the assertions in the Motion and all the defective supposed evidence submitted in support of the Motion were credited and taken at face value, the Motion should be denied because it is facially deficient and lacks any basis to provide the requested relief.

## II.     The Motion Fails to Address the Competing Claims to the Accounts and Prejudices the FTX Recovery Trust.

36.     Although the Motion's facial defects are reason enough for it to be denied, it is apparent that this Court should also exercise its discretion to deny the Motion because it would prejudice the FTX Recovery Trust and multiple other parties, and it is not supported by admissible evidence.

37.     A motion to amend a claim after the bar date may be denied where, among other reasons, "the debtor, or other creditors, would be unduly prejudiced by the amendment." *In re B456 Sys., Inc.*, 2017 WL 6603817, at *15 (Bankr. D. Del. Dec. 22, 2017).  The Motion argues that the FTX Recovery Trust will not be prejudiced by the Motion because "[a]mending the Proof of Claim to correct the identity of the creditor will neither change the existence, nature or amount of the Claim, assert a new claim, nor affect the Debtors or their estates in any way." (Motion ¶¶ 52-53 (citing *In re Unioil, Inc.*, 962 F.2d 988, 992-93 (10th Cir. 1992).)  This is wrong and misses the point.

38.     The FTX Recovery Trust has a duty to investigate claims so that only valid claims whose holders can satisfy KYC requirements become Allowed Claims under the Plan. Section 8.1 of the Plan makes clear that Objections to any Claims can be interposed before the Claims Objection Deadline (which itself is subject to extension). Moreover, section 7.4.2 of the Plan and section 4.6 of the Liquidating Trust Agreement provide that the FTX Recovery Trust is empowered to refuse to comply with conflicting demands to a Claim. The Movants' efforts to short circuit a process for sorting out these issues through this Motion is inappropriate and would prejudice the FTX Recovery Trust and its stakeholders.

39.     Moreover, the Movants completely ignore the impact of their Motion on the rights of other parties who have asserted interests in the Accounts who are not currently before this Court and, in the case of Svalbard, has pending litigation in another court relating to these issues. The Svalbard Objection demonstrates that the relief requested in the Motion would prejudice other parties. And long before this Motion was filed, the Haru Order was served on the Debtors, is still being investigated, and cannot be ignored.

40.     There is also no evidence that the Movants properly provided notice of the Motion to the trustees of Haru and Delio or any other relevant parties in the Republic of Korea who have not previously appeared in these proceedings. The Movants assert that they served the Motion on seven different parties outside of the United States via "First-Class Package International Service": Svalbard, Sangtaek Ryu, Wang Min Lee (the "Trustee for Haru Invest"), Dong Hung Jeon (the "Trustee for Delio"), Bang (at two different detention centers in Seoul, South Korea), DooMin Kim, and Lemma. [D.I. 29345-4 at 2-3.] The Motion provides no explanation of why Lee and Jeon were served as trustees for Haru and Delio. Further, the Motion does not identify Ryu and Min, but it implies they may be the unnamed "Investor A" and "Investor B"

referenced in the Motion and Glantz Declaration.  (*See* Motion ¶ 41 ("the [Movants] have served

notice of this Motion on both Investor A and Investor B").)  Furthermore, the Movants fail to

explain why this purported service satisfies this Court's notice requirements or provided any

meaningful opportunity for those parties to respond under the circumstances.  After all, the

Movants, at best, provided English language documents by mail to parties in South Korea and

afforded no more than fourteen days to respond.  If the Movants had commenced an adversary

proceeding, as required, they would have needed to provide actual service of process in compliance

with Rule 4 of the Federal Rules of Civil Procedure and the Hauge Convention.[15]

>       41.     The Motion must be denied for the additional reason that it is not supported

by admissible evidence.  The Movants disregarded black letter law by only submitting translations

of the purported Investment Agreements and Fact Confirmation Statements that underpin the

Motion.  Rule 1002 of the Federal Rules of Evidence requires "[a]n original writing . . . in order

to prove its content unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.

"[B]ecause a translation is offered to prove the content of an original writing, the rule requires that

the original writing be introduced in evidence along with a translation."  *Abiomed, Inc.* v. *Maquet*

*Cardiovascular LLC*, 2023 WL 4038564, at *18 (D. Mass. June 15, 2023).  Accordingly, the

translations of purported Investment Agreements and Fact Confirmation Statements attached to

the Choi Declaration, Lim Declaration, and Oh Declaration are inadmissible.  *See, e.g.*, *Magriz-*

*Marrero* v. *Union de Tronquistas de Puerto Rico, Local 901*, 933 F. Supp. 2d 234, 244 n.12

(D.P.R. 2013) (holding translations violated "the best evidence rule and [were] not properly

---

[15] Article 10 of the Hauge Convention permits service by postal channels "[p]rovided the State of destination does not object" or is not "opposed to such service within its territory."  Hague Convention, Arts. 8, 10.  The Republic of Korea has formally objected to service through postal channels.

admitted as evidence" when "the original Spanish language sworn statements were not provided to the Court").

42.     Further, the Movants cannot use testimony from Lim, Choi or Oh to prove the contents of the Investment Agreements.  *See, e.g.*, *Acumed LLC* v. *Advanced Surgical Servs., Inc.*, 561 F.3d 199, 222-23 (3d Cir. 2009) (holding that the trial court "did not abuse its discretion in barring [witness] testimony regarding the contents of contracts not submitted into evidence or even produced for review at trial"); *Munich Reinsurance Am., Inc.* v. *Am. Nat'l Ins. Co.*, 936 F. Supp. 2d 475, 489-90 (D.N.J. 2013) (holding that "testimony could not be admitted at trial to prove [an] agreement's terms").   Accordingly, there is no admissible evidence of the Investment Agreements that are a cornerstone of the Motion.

43.     The proffered evidence from Bang that the Movants had an interest in the assets that allegedly remained in the 765 Account on the Petition Date is likewise inadmissible hearsay bolstered by unsubstantiated conjecture.   Apart from saying so, the only evidence connecting the Choi Party's Investment Agreements—which were allegedly signed by Song and make no mention of Bang—to Bang and his Accounts is Bang's supposed September 26, 2023 Fact Confirmation Statement, which is hearsay pursuant to Federal Rules of Evidence 801 and 802 not covered by any exception.   Bang's inadmissible hearsay statements and some unspecified "books and records" of Bang's—which have not been submitted to the Court—also form the basis for the the Movants' argument that other parties, including Bang, Haru, and Investors A and B, do not have interests in the 765 Account or their assets have been returned despite those parties' own assertions to the contrary.   (Motion ¶¶ 39-41; Gantz Decl. ¶ 18.)   Thus, the Motion should be denied.

III.   **In the Alternative, the Court Should Enter An Order Setting a Litigation Schedule to Permit the FTX Recovery Trust to Develop the Factual Record.**

44.   If the Court does not deny the Motion (and it should), the FTX Recovery Truest respectfully requests that the Court direct the parties to meet and confer about a schedule for discovery and further evidentiary proceedings to adjudicate the Motion. The Movants have known that Bang had claims for assets held on the FTX.com Exchange since May 2023 (Lim) or June 2023 (Choi). (Lim Decl. ¶ 15; Choi Decl. ¶ 14.) Despite waiting more than 18 months to file anything in this Court, the Movants wrongly assert that the KYC process deadlines necessitate resolution of this Motion. (Motion ¶ 6; *see also* Motion ¶¶ 7, 45-47, 55, 63-67.) As noted, following discussion with the Movants' counsel, the FTX Recovery Trust removed the Amended Claims from the KYC Objection and will separately address them at a later date. As a result, there is no need for immediate action on these matters.

45.   Even assuming KYC can successfully be completed—which is highly uncertain—litigating the merits of the issues presented in the Motion would require the development of a detailed factual record, as well as opinions on Korean and English law questions, and testimony from multiple expert witnesses. Thus, if the Motion is not denied, the FTX Recovery Trust requests that the parties be directed to meet and confer regarding an appropriate schedule for discovery because it is apparent that extensive discovery of individuals located around the world will likely be required to resolve the merits of the Motion. Specifically, the FTX Recovery Trust believes that discovery would likely include, but not limited to, the following:

- Comprehensive KYC and anti-money laundering review of each of the competing claimants, including source of funds and legal compliance;

- The documents supporting (i) the Choi and Lim Declarations (including original versions of the Investment Agreements and Fact Confirmation Statement, and the context of the alleged Telegram

messages between Bang and the Movants), (ii) the Gantz
Declaration (including the FTX Account Data that Bang allegedly
provided, the analysis of that FTX Account Data allegedly
conducted by XClaim, and the chain analysis allegedly conducted
by XClaim), and (iii) the Oh Declaration;

- Depositions of Choi, Lim, Gantz, and Oh;

- Document discovery from the Movants, including communications
  between the Movants, with Bang, and with other parties who have
  or may assert interests in the Accounts;

- Non-party document discovery, including from Bang, Haru, Delio,
  Svalbard, "Investor A," and "Investor B";

- Non-party depositions, including of depositions of Bang, the
  liquidator of Haru, the liquidator of Delio, a representative of
  Svalbard, "Investor A," and "Investor B"); and

- Expert reports on behalf of the FTX Recovery Trust to address the
  issues raised in the Oh Declaration and the Gantz Declaration, and
  to address issues of English law related to Bang's accounts and the
  FTX.com Terms of Service.

Although such discovery would be a meaningful endeavor under any circumstances, it will no

doubt be complicated by the fact that many relevant parties are located outside the United States

and much of the relevant documents and testimony will likely need to be translated from Korean.

46.     As a result, the discovery necessary to evaluate the issues surrounding the

claims related to Bang's Accounts underscores the fact that adjudication of complex disputes

regarding competing interests in claims allegedly worth more than $160 million should not be

rushed.  Thus, if the Motion is not denied outright, a schedule should be set to permit parties in

interest to develop the necessary record.

## CONCLUSION

For the reasons set forth above, the FTX Recovery Trust respectfully requests that the Court deny the Motion.  In the alternative, to the extent the Court does not deny the Motion outright, the FTX Recovery Trust respectfully requests that the Court direct the parties to meet and confer to set a schedule for discovery and further evidentiary proceedings.

Dated:  February 14, 2025
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*