# Exhibit G

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

---

SVALBARD HOLDINGS LIMITED,

                 *Plaintiff*,

   vs.

LEMMA TECHNOLOGIES INC.,

                 *Defendant*.

Index No. 650457/2024

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SECOND EX-PARTE MOTION
FOR AN EXTENSION OF THE 120-DAY PERIOD FOR SERVICE UNDER N.Y. CPLR § 306-b**

DB1/ 151613165.2

Plaintiff Svalbard Holdings Limited ("Plaintiff") respectfully submits this memorandum of law in support of its second motion for a 180-day extension to serve defendant Lemma Technologies Inc. ("Defendant") pursuant to N.Y. § CPLR 306-b (the "Motion").

## I.      INTRODUCTION

On June 3, 2024, this Court granted Plaintiff's motion for a 180-day extension of time to serve Defendant at its Panama address via letters rogatory. *See Decision and Order on Motion* [NYSCEF Doc. No. 13] (the "Order").  While Plaintiff has commenced the process of serving the Summons and Complaint on Defendant, as of the date of the filing of this Motion, service of process is not yet complete.  Pursuant to the Order, the current deadline to serve the Summons and Complaint on Defendant is November 30, 2024.  However, service via letters rogatory is a length and multi-step process.  Affirmation of Joshua Dorchak in Support of Plaintiff's Second Motion for an Extension of the 120-Day Period for Service under N.Y. CPLR § 306-b, dated October 28, 2024 ("Dorchak Aff.") ¶ 6.  Therefore, out of an abundance of caution, Plaintiff requests that this Court extend the deadline to serve Defendant by an additional six months to allow time for service to be completed.

## II.      FACTUAL BACKGROUND

On January 29, 2024, Plaintiff filed this action.  *See* Ex. A (Summons and Complaint).  On information and belief, Defendant is a company organized under the laws of Panama, with its principal place of business located at Via Espana, Delta Bank Building, 6th Floor, Suite 640D, Panama City, PA-8 Panama.  Dorchak Aff. ¶ 3.  Defendant appears to have no address in the state of New York.  *Id.* ¶ 4.

The United States and Panama are parties to the Inter-American Convention on Letters Rogatory ("IASC"), which sets forth a multi-step procedure for serving parties who reside in its

member countries. *Id.* ¶ 5. Specifically, service via letters rogatory under the IASC requires that Plaintiff hire a translator to translate the letters rogatory, Complaint, and Summons into Spanish and send multiple copies of the translated documents (as well as English copies and the original letters rogatory signed by this Court) to a contracting agent for the Department of Justice that assists with ingoing and outgoing foreign service requests. *Id.* ¶ 6. The contractor then sends the documents to the Central Authority in Panama for processing service requests, who will then contact a Panamanian court to serve Defendant. *Id.* After Defendant has been served, the Panamanian court will sign a certificate confirming service has been made, and then a copy of this certificate will be sent to the Central Authority in Panama who will then send it to the Panamanian Embassy. *Id.* The Panamanian Embassy will then send the document to the U.S. Embassy in Washington D.C., who will send the certificate to the Department of Justice contracting agent, who will then send the certificate to Plaintiff. Only at that point may Plaintiff file a notice in this Court that service upon Defendant has been properly made. *Id.*

On June 3, 2024, this Court granted Plaintiff's motion for a 180-day extension of time to serve Defendant at its Panama address via letters rogatory in accordance with the procedure set forth in the IASC. *See Decision and Order on Motion* [NYSCEF Doc. No. 13]. Following entry of the Court's Order, Plaintiff commenced service pursuant to the requirements under the IASC. Dorchak Aff. ¶ 7. While Plaintiff does not know the exact stage service of the Summons and the Complaint are at as of the date of the filing of this Motion, upon information and belief, the documents are currently with the Panamanian Courts and have been or are in the process of being served on Defendant at its Panama address. *Id.* ¶ 8.

Case 22-11068-JTD    Doc 29583-7    Filed 02/14/25    Page 5 of 38

As summarized above, however, even after the documents have been served on Defendant, there are still multiple channels that the certificate of service must pass through before Plaintiff can file a notice in this Court that service has been made.

## III.   ARGUMENT

### A.   There is Good Cause to Grant a 180-day Extension to Serve Defendant and Doing So is in the Interest of Justice

To ensure that Plaintiff's interests are protected, Plaintiff respectfully submits that a 180-day extension to continue the process of serving Defendant via letters rogatory is warranted.

Under Section 306-b, a court shall extend the time for service "upon good cause shown or in the interest of justice." N.Y. CPLR § 306-b. An extension for good cause requires "reasonable diligence in attempting to effect service upon a defendant," which may be established where circumstances beyond the plaintiff's control cause an inability to otherwise timely serve the defendant. *See Henneberry v. Borstein*, 91 A.D.3d 493, 496 (1st Dep't 2012). An extension in the interest of justice, by contrast, allows a court to consider any relevant factor in its judicial discretion. *See Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 106 (2001). The interest of justice standard requires a careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties. *Id.* at 96. A plaintiff needs only to satisfy either the good cause test or the interest of justice test. *Henneberry*, 91 A.D.3d at 496. Good cause is a broader standard, but the interest of justice standard is more flexible. *Id.*

There is good cause to extend the time for Plaintiff to serve Defendant. As explained above, compliance with the IASC is a lengthy, multi-step process that contributes to Plaintiff's inability to timely serve Defendant in this matter beyond Plaintiff's control. Plaintiff intends to comply with all of the steps under the IASC but requires additional time to complete the process. Upon entry of the Order granting Plaintiff a 180-day extension to serve Defendant entered on June 3,

4

2024, Plaintiff promptly initiated the service process by contacting a third-party vendor to translate the documents and the Department of Justice contracting agent to facilitate service in accordance with the IASC. Dorchak Aff. ¶ 7. However, given the multiple steps involved, it is likely the process to properly serve Defendant will take several additional months, if not a year or more to complete. *Id.* ¶ 9. Therefore, there is good cause to issue an additional 180-day extension for Plaintiff to serve Defendant.

A 180-day extension is also in the interest of justice when considering the factual setting of the case and the competing interests presented by the parties. First, New York courts recognize a "strong preference for deciding cases on the merits." *See Figueroa v. Beth Israel Med. Ctr.*, 836 N.Y.S.2d 498 at 2 (Sup. Ct. 2007); *see also DFI Commc'ns, Inc. v. Golden Penn Theatre Ticket Serv.*, 87 A.D.2d 778 (1982). Second, Defendant will not be prejudiced by an extension of time for Plaintiff to serve the Summons and Complaint. Defendant had the opportunity to consent to its counsel accepting service on its behalf, but chose not to. Plaintiff requests that the Court allow Plaintiff additional time to properly serve Defendant at its address in Panama through the established method prescribed by the IASC.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court grant an additional 180-day extension to complete service on Defendant via letters rogatory.

*[signatures on following page]*

5

DATED: October 28, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

Respectfully submitted,

/s/ *Joshua Dorchak*
Joshua Dorchak
101 Park Avenue
New York, NY 10178
1.212.309.6700
joshua.dorchak@morganlewis.com


John C. Goodchild, III
2222 Market Street
Philadelphia, PA 19013-3007
215.830.6883
john.goodchild@morganlewis.com


*Attorneys for Plaintiff*
*Svalbard Holdings Limited*

6

## PRINTING SPECIFICATIONS STATEMENT

1.      Pursuant to 22 N.Y.C.R.R. § 202.70(g), Rule 17, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. A proportionally spaced typeface was used as follows:

> Name of Typeface: Times New Roman
> Point Size: 12 (footnotes in 10)
> Line Spacing: Double

2.      The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, signature block, and this Certification, is 1,228 words. By operation of Microsoft Word's word count function, this number includes legal citations and certain forms of punctuation.

DATED: October 28, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

Respectfully submitted,

/s/ *Joshua Dorchak*
Joshua Dorchak
101 Park Avenue
New York, NY 10178
1.212.309.6700
joshua.dorchak@morganlewis.com


John C. Goodchild, III
2222 Market Street
Philadelphia, PA 19013-3007
215.830.6883
john.goodchild@morganlewis.com


*Attorneys for Plaintiff*
*Svalbard Holdings Limited*

7

**EXHIBIT A**

Case 22-11068-JTD   Doc 29583-7   Filed 02/14/25   Page 10 of 38

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

<table>
<tr><td>

SVALBARD HOLDINGS LIMITED,

    *Plaintiff,*

   -against-

LEMMA TECHNOLOGIES INC.,

    *Defendant.*

</td><td>

Index No. _____

**SUMMONS**

Basis for venue:  CPLR 503(a):
County designated by Plaintiff

</td></tr>
</table>

TO THE ABOVE-NAMED DEFENDANT:

   YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorneys within (20) days after service of this summons, exclusive of the date of service, or within thirty (30) days after service is complete if the summons is not personally delivered to you within the State of New York.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

As set forth in the complaint, Plaintiff designates New York County as the place of venue pursuant to Sections 503 and 509 of the New York Civil Practice Law and Rules.

Dated:  New York, New York
        January 29, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Joshua Dorchak*
Joshua Dorchak
101 Park Avenue
New York, NY 10178
1.212.309.6700
joshua.dorchak@morganlewis.com

John C. Goodchild, III
2222 Market Street
Philadelphia, PA 19013-3007
215.830.6883
john.goodchild@morganlewis.com

*Attorneys for Plaintiff*
*Svalbard Holdings Limited*

TO:

LEMMA TECHNOLOGIES INC.
Via Espana, Delta Bank Building,
6th Floor, Suite 604D, Panama City
PA-8 Panama

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x
                              :

SVALBARD HOLDINGS LIMITED,        :
                              :

                  *Plaintiff,*    :   Index No. _____/2024
                              :

        -against-           :

                              :   **COMPLAINT**

LEMMA TECHNOLOGIES INC.,      :
                              :

                *Defendant.*    :

-------------------------------------------------------------------- x

       Plaintiff, Svalbard Holdings Limited, by and through its undersigned counsel, as and for

its Complaint against Defendant, Lemma Technologies Inc., alleges as follows.

## INTRODUCTION

       1.     Plaintiff brings this action to remedy Defendant's breach of two written and

expressly binding trade confirmations whereby Defendant sold to Plaintiff certain claims that

Defendant holds against FTX Trading Limited in that company's bankruptcy proceeding.  Each

trade confirmation contains all the material terms relevant to the transaction, was signed by both

Plaintiff and Defendant, and expressly states it "shall constitute a binding agreement between

them, in accordance with the terms hereof."  Since the trade confirmations were executed, despite

Plaintiff's extensive efforts, Defendant has demonstrated that it has no intention of fulfilling its

obligation to consummate the transactions at the prices it agreed to under the binding trade

confirmations.  Accordingly, Plaintiff now seeks specific performance of the parties' contracts or,

in the alternative, money damages based on Defendant's failure to perform.

## PARTIES

       2.     Plaintiff, Svalbard Holdings Limited, is a company organized under the laws of the

Cayman Islands, with its registered office in Georgetown, Grand Cayman, Cayman Islands.

1

3.      On information and belief, Defendant, Lemma Technologies Inc., is a company

organized under the laws of Panama, with its principal place of business unknown to Plaintiff.

4.      On information and belief, nonparty Junho Bang is an individual who is a citizen

and resident of South Korea and who is the majority owner and President of Defendant.

5.      On information and belief, nonparty Han Ko is an individual who is a citizen and

resident of South Korea and who is a director of Defendant.

## JURISDICTION AND VENUE

6.      In this action, this Court has personal jurisdiction over Defendant based upon N.Y.

G.O.L. section 5-1402, as this action "arises out of or relates to a contract, agreement, or

undertaking for which a choice of New York law has been made in whole or in part pursuant to

section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in

consideration of, or relating to any obligation arising out of a transaction covering in the aggregate,

not less than one million dollars, and (b) contains a provision or provisions whereby such foreign

corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."

7.      In this action, venue is proper in this Court pursuant to N.Y. C.P.L.R. sections

503(a) and 509, as this County has been designated by Plaintiff.

## FACTUAL ALLEGATIONS

### A.      The Transferred Claims

8.      On and after November 11, 2022 (the "FTX Commencement Date"), FTX Trading

Limited ("FTX") and over one hundred of its affiliates (collectively with FTX, the "FTX Debtors")

filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware, in a

case styled *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Jointly Administered) (the "FTX

Bankruptcy").

9.      Prior to the FTX Commencement Date, FTX operated a cryptocurrency exchange known as FTX.com, whose accountholders were located outside the U.S.

10.     Junho Bang held two accounts with FTX.com (the "Accounts"), through which he deposited, withdrew, and otherwise transacted in cryptocurrencies and fiat currencies on behalf of himself and various business associates.

11.     As of the FTX Commencement Date, Junho Bang held two claims against FTX in the FTX Bankruptcy based on the assets in the Accounts, which on information and belief were valued by Junho Bang at $59,391,855 and $106,269,300, respectively (the "Account Claims").

12.     Pursuant to a written "Assignment Agreement" dated as of January 18, 2023 and duly executed by Junho Bang and Defendant (by its Secretary), Junho Bang assigned and transferred to Defendant the Account Claims and all related claims against FTX or the other FTX Debtors or any other person, and all proceeds thereof (the "Assigned Claims"). A true and correct copy of this contract, as provided by Defendant to Plaintiff, is annexed hereto as Exhibit 1.

13.     In May 2023, Plaintiff and Defendant (together, the "Parties") began discussing a potential transaction whereby Defendant would sell the Assigned Claims to Plaintiff.

14.     The Parties spent substantial time and effort negotiating concerning price, due diligence, closing conditions, and other material terms of this potential transaction. Ultimately, Defendant held an open auction of the Assigned Claims, at which Plaintiff was the winning bidder.

**B.      The Trade Confirmations**

15.     Accordingly, on or about June 16, 2023, the Parties duly executed two contracts (the "Trade Confirmations"), whereby Defendant sold and assigned to Plaintiff, for the purchase price reflected in Plaintiff's winning bid in the auction, the Assigned Claims that Defendant had acquired from Junho Bang (as subject to the Trade Confirmations, the "Transferred Claims"). True

3

and correct copies of the Trade Confirmations, as executed by the Parties, are attached hereto as
Exhibits 2 and 3.

    16.      The two Trade Confirmations correspond to Junho Bang's two Accounts.  Other
than the Claim amount and the Purchase Price, the terms of the Trade Confirmations, including
the Purchase Rate (a percentage of the Claim amount), are the same.  As an example, one of the
Trade Confirmations provides as follows:

    We are pleased to confirm the following transaction subject to the terms set forth herein:

| | |
|---|---|
| **Trade Date** | June 16, 2023 |
| **Seller** | Lemma Technologies Inc. |
| **Principals** | Junho Bang and other economic interest holders [scope to be agreed] |
| **Buyer** | Svalbard Holdings Limited (company ultimately managed by Attestor Limited) |
| **Debtors** | FTX Trading Limited or any of its affiliates including but not limited to third parties, non-debtors and debtors under Case No. 22-11068 in the US Bankruptcy Court of Delaware and FTX Digital Markets Limited (the "Case") |
| **Claim**: | $ 106,269,300 of valid and enforceable, undisputed, liquidated, non- contingent general unsecured claim against Debtors |
| **Purchase Rate** | 35% (payable in two instalments: Upfront Purchase price of 33% and Back-End Purchase Price of 2% based on the Claim) |
| **Purchase Price**: | Upfront Purchase Price: $ 35,068,869, payable by Buyer to Seller following closing of the Assignment of Claim Agreement. Payable in stablecoin as agreed between Seller and Buyer.<br><br>Back-End Purchase Price: $ 2,215,386, payable by Buyer upon receipt of final distribution in the Case provided that Seller has complied with all representations, warranties and other any other ongoing obligations under the purchase contract, and Buyer has not received proportionately less in payments or distributions under, or less favourable treatment (including the timing of payments or distributions) for, the Claim than is received by other creditors in the same class of claims in the Case |

| Form of purchase | Assignment of Claim Agreement (if the Claim and related rights cannot be assigned, Parties shall enter into a participation agreement). |
|---|---|
| Payments and distributions | All payments, fees or other distributions made on account on or after the Trade Date are for the account of Buyer at no additional consideration. |
| Closing Conditions | <ul><li>Seller having provided to Buyer true, correct and complete copies of (i) all agreements, notices, statements and other documentation relating to the Claims; and (ii) any proofs of claim or claim forms filed in connection with the Claims (collectively, "Supporting Documents");</li><li>Satisfactory completion of confirmatory due diligence with respect to the Claims and Supporting Documents, including review of due diligence information as set out in Appendix 1;</li><li>Transaction Documents executed between both Parties, in satisfaction to the Buyer, which will contain<ul><li>customary representations and warranties, including but not limited to: no withdrawals from Seller from Debtors or other transfers to or for the benefit of Seller by Debtors within 91 days of the petition date of Debtors (other than the ones as disclosed during the confirmatory due diligence)</li><li>ongoing obligation by the Seller and Principals to co-operate with the Buyer to receive recovery entitlements arising from the Claims, to the extent required</li><li>Principals to guarantee performance of the Seller's obligation, representations and warranties under the Transaction Documents</li></ul></li></ul> |
| Settlement Date | Ultimately within 5 business days following execution of the Assignment Agreement |
| Confidentiality: | This Trade Confirmation is strictly private and confidential and subject to the non-disclosure agreement, dated 15 June 2023, between Buyer and Seller |
| Governing Law; Jurisdiction; | This Trade Confirmation and the Assignment of Claim shall be governed by the laws of the State of New York. The parties hereto submit to the exclusive jurisdiction of the courts of appropriate jurisdiction sitting in the Borough of Manhattan in the State of New York for any claims or counterclaims arising in connection with this Trade Confirmation. EACH OF THE PARTIES HEREBY |

5

| | |
|---|---|
| | WAIVES THE RIGHT TO TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW FOR ANY CLAIM OR COUNTERCLAIM ARISING IN CONNECTION WITH THIS TRADE CONFIRMATION. |
| ***Binding Effect*** | **Upon execution by both Parties, this Trade Confirmation shall constitute a binding agreement between them, in accordance with the terms hereof**; *provided, however,* that to the extent there is any conflict between this Trade Confirmation and the Assignment of Claim Agreement, the Assignment of Claim Agreement shall govern. |

*[Plaintiff's signature]*

*[Defendant's signature]*

*[*"Appendix 1 – Minimum Diligence Requirements" *follows]*

Ex. 2 (italicized comments in brackets are edits; bold emphasis added).

17.    Christopher Guth, Director, signed the Trade Confirmations on behalf of Plaintiff.

18.    Junho Bang, President of Defendant and original owner of the Transferred Claims, signed the Trade Confirmations on behalf of Defendant.

19.    The Parties exchanged fully executed versions of the Trade Confirmations.

20.    Upon the Parties' exchange of signatures, each of the Trade Confirmations by its explicit terms became a "binding agreement between them." Exs. 2–3 ("Binding Effect").

21.    Each of the Trade Confirmations includes all material terms of the transaction that it memorializes (together, the "Transactions").

22.    Notwithstanding that each Trade Confirmation included all material terms, the closing of each Transaction is subject to three conditions, all of them explicitly for the benefit of Plaintiff (as buyer), not Defendant (as seller). *See id.* ("Closing Conditions").

23.    The first and second conditions to closing relate to Plaintiff having received all documentation related to the Transferred Claims and Plaintiff being satisfied with its due diligence

with respect to that documentation and those claims. *See id.* ("Closing Conditions," first and second bullet points).

24.     The third condition to closing is an "Assignment of Claim Agreement" (the "Assignment Agreement") to be "executed between both Parties, in satisfaction to the Buyer" and to include certain listed terms. *See id.* ("Closing Conditions," third bullet point).

25.     The Trade Confirmations do not provide Defendant any option to nullify or even modify their terms.

### C.     Defendant Breaches the Trade Confirmations

26.     For a few months after executing the Trade Confirmations, the Parties made progress on due diligence and drafting the Assignment Agreement.

27.     After a few months, however, Defendant began to assert that complications had arisen concerning Defendant's right or authority to sell the Transferred Claims and that as a result Junho Bang could be exposed to liability to his business associates if the Transactions closed.

28.     At this point in time, the prevailing market price for customer claims against the FTX Debtors had reportedly risen substantially by comparison with the Purchase Price in the Trade Confirmations.

29.     Plaintiff, at substantial expense and effort, committing internal resources and even hiring outside counsel licensed in Panama and South Korea, actively engaged with Defendant in an attempt to resolve the complications that Defendant asserted had arisen.

30.     In response to Plaintiff's repeated inquiries, Defendant never provided any concrete evidence of any material impediment to closing the Transactions or any material risk to Junho Bang of liability arising from closing the Transactions.

31.     At the same time, however, Defendant began to attempt to renegotiate the Purchase Rate in the Trade Confirmations.

32.     Plaintiff concludes that Defendant's alleged complications are a pretext for Defendant's attempt to renegotiate the binding terms of the Trade Confirmations.

33.     Plaintiff further concludes that:  Defendant holds title to the Transferred Claims; it lies within Defendant's power to convey title to the Transferred Claims to Plaintiff; and the only complication delaying closing of the Transactions is seller's remorse.

34.     On information and belief, Defendant will not proceed with the Transactions or otherwise honor the Trade Confirmations unless compelled by force of law to do so.

35.     Plaintiff has never agreed to modify any of the material terms in the Trade Confirmations.

36.     Notwithstanding that the due diligence has not been completed and the Assignment Agreement has not been finalized, Plaintiff is willing to waive those conditions to closing and to immediately consummate the Transactions, including paying Defendant the Purchase Price in exchange for transfer of title to the Transferred Claims.

37.     Plaintiff has never breached any term of the Trade Confirmations.

**D.      Specific Performance**

38.     Since the FTX Commencement Date, a secondary market has developed in which claims against the FTX Debtors are bought and sold.

39.     Plaintiff has extensive experience in this secondary market for FTX claims.  In fact, through trades in this market Plaintiff has become one of the most substantial creditors of FTX.

40.     In the case of customer claims against FTX, each claim is unique, and some are more desirable than others, in that (i) each reflects the particular combination of cryptocurrency

and fiat currency assets that were in that customer's account on the FTX Commencement Date,
and (ii) the FTX Debtors have recently proposed valuations of cryptocurrency assets that in some
cases are higher or lower than the market price of such assets on the FTX Commencement Date.

41.     The Transferred Claims are also unique in that, on information and belief, based on
Plaintiff's experience, they are, taken together, among the top ten largest customer claims against
FTX based on dollar value.

42.     Plaintiff participates in the secondary market for claims against FTX Debtors
exclusively as a buyer.  Because Plaintiff buys claims against the FTX Debtors with the intention
of holding them for the duration of the FTX Bankruptcy, the value of such claims to Plaintiff is
the aggregate amount that Plaintiff will recover on the claims at the end of the FTX Bankruptcy,
which is impossible to predict with certainty.  Put another way, because Plaintiff does not engage
in sales of claims against the FTX Debtors, the price at which a claim held by Plaintiff could be
sold in this market at any given time does not represent the value of the claim to Plaintiff.

43.     Unlike on a public exchange, sales of claims within the secondary market for FTX
claims are virtually all negotiated privately between the seller and buyer (with or without a broker).
Certain market makers periodically publish prices at which they are potentially willing to buy and
sell claims of given types.  But actual prices paid when transactions close are not generally
disclosed.  Thus, other than recent, first-hand experience closing transactions, the participants in
this market have a sense of the prevailing price for given types of claims at a given time based
generally on second-hand information, which may not be accurate.  In short, there is no definitive
market price for any type of claim against the FTX Debtors as of any given time, as there would
be for a stock listed on the New York Stock Exchange.

9

44.     On information and belief as to other persons, based on Plaintiff's experience, the prevailing price being paid for claims originally held by FTX.com customers fluctuates and has generally trended upward since the FTX Commencement Date, but it is uncertain whether (or to what extent) it will continue to do so.

45.     On information and belief as to other persons, based on Plaintiff's experience, buyers of claims in the FTX Bankruptcy, like buyers of bankruptcy claims generally, pay less to acquire claims than they believe the present value of the recovery on the claims to be, in order to make a profit.

46.     For all of the foregoing reasons, the actual value of the Transferred Claims to Plaintiff will not be known with reasonable certainty until the final distribution in satisfaction of customer creditor claims has been made in the FTX Bankruptcy.

47.     In these circumstances, the only way to put Plaintiff in the position it would have been in if Defendant had not breached is specific performance of the Trade Confirmations.

48.     Plaintiff seeks specific performance in order to avoid being undercompensated for the value of the Transferred Claims by an award of money damages.

## FIRST CAUSE OF ACTION
### Breach of Contract – Specific Performance

49.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50.     The Trade Confirmations are valid and binding contracts.

51.     Defendant has breached the Trade Confirmations by refusing to consummate the Transactions agreed to therein.

52.     Plaintiff has not breached the Trade Confirmations.

53.     Defendant holds title to the Transferred Claims.

10

54.     It lies within Defendant's power to convey title to the Transferred Claims to Plaintiff or, in the alternative, it lies within Defendant's power as supplanted by that of this Court to enable itself to convey title to the Transferred Claims to Plaintiff.

55.     Plaintiff is prepared to pay Defendant the Purchase Price agreed by the Parties in the Trade Confirmations in exchange for the transfer of title of the Transferred Claims.

56.     The Transferred Claims are unique in that they reflect a combination of assets particular to Defendant's Accounts and in that together they constitute one of the largest customer claims against FTX.

57.     Money damages for Plaintiff's breach of the Trade Confirmations cannot be calculated with reasonable certainty because there is no definitive market price for claims like the Transferred Claims at any given time; the pricing observable in the secondary market for such claims is based on unreliable information and fluctuates over time; buyers pay less for claims than buyers believe they will ultimately be worth; and prices have been trending upward since the commencement of the FTX bankruptcy case and presumably will continue to do so.

58.     Money damages for Plaintiff's breach of the Trade Confirmations would carry a substantial risk of undercompensating Plaintiff because the current market value of the Transferred Claims, even if determinable, would not reflect their value to Plaintiff, which is based on the outcome of the FTX Bankruptcy.

59.     Plaintiff does not have an adequate remedy at law for Defendant's breach of the Trade Confirmations.

60.     Plaintiff would face substantial challenges executing on a money judgment against Defendant, which is a Panama company with principals in South Korea and no known assets (other than the Transferred Claims) within the U.S.

11

61.     In these circumstances, the benefit of specific performance to Plaintiff outweighs the burden, if any, that specific performance would impose on Defendant.

62.     Plaintiff is entitled to an order compelling specific performance of the Trade Confirmations.

## SECOND CAUSE OF ACTION
### In the Alternative:  Breach of Contract – Money Damages

63.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     The Trade Confirmations are valid and binding contracts.

65.     Defendant has breached the Trade Confirmations by refusing to consummate the Transactions agreed to therein.

66.     Plaintiff has not breached the Trade Confirmations.

67.     Defendant's breach of the Trade Confirmations has caused Plaintiff economic injury.

68.     In the event that this Court should find that specific performance of the Trade Confirmations is inappropriate or impracticable, Plaintiff is entitled to money damages for Defendant's breach of the Trade Confirmations, in an amount to be proven at trial, but in no event less than the difference between (a) the aggregate amount that Plaintiff ultimately would have recovered on account of the Transferred Claims in the FTX Bankruptcy and (b) the price agreed by the Parties in the Trade Confirmations for the Transferred Claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court issue judgment:

(i)  with respect to the First Cause of Action, ordering Defendant to perform its obligations, including effecting the transfer of the Transferred Claims to Plaintiff in exchange for Plaintiff's payment of the Purchase Price, as set forth in the Trade Confirmations;

(ii)  with respect to the Second Cause of Action, in the alternative, awarding Plaintiff money damages in an amount to be determined at trial, along with prejudgment interest at the statutory rate for breach of contract; and

(iii)  awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         January 29, 2024

                              **MORGAN, LEWIS & BOCKIUS LLP**

                              By: _____
                              Joshua Dorchak
                              101 Park Avenue
                              New York, New York 10178
                              212.309.6000
                              joshua.dorchak@morganlewis.com

                              John C. Goodchild, III
                              2222 Market Street
                              Philadelphia, PA 19103-3007
                              215.840.6883
                              john.goodchild@morganlewis.com

                              *Attorneys for Plaintiff*
                              *Svalbard Holdings Limited*

13

# **Exhibit 1**

FILED: NEW YORK COUNTY CLERK 01/29/2024 02:26 PM
INDEX NO. 650457/2024
NYSCEF DOC. NO. 27
RECEIVED NYSCEF: 01/29/2024

# ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "<u>Agreement</u>") is entered into as of January 18, 2023 by and between Junho Bang, an individual domiciled in the Republic of Korea (the "<u>Assignor</u>"), and Lemma Technologies Inc., a company duly registered with number 155724970 under the Laws of the Republic of Panama (the "<u>Assignee</u>").

**WHEREAS**, the Assignor, is owner of trading accounts referenced by the email addresses: melon1919@naver.com; and jhbaang@gmail.com (each an "<u>Account</u>") and registered with the cryptocurrency exchange FTX.com (the "<u>FTX Exchange</u>"), which exchange was at all relevant times owned and operated by FTX Trading Ltd. ("<u>FTX Trading</u>") or its affiliates;

**WHEREAS**, on or about November 11, 2022, FTX Trading and approximately 130 affiliates (the "<u>Debtors</u>") filed voluntary petitions for relief under Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") captioned under lead case number 22-bk-11068 in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>");

**WHEREAS**, the Court's November 22, 2022 *Order (I) Authorizing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Certain Related Relief* (Dkt. No. 128) identifies the Debtors and provides for the procedural consolidation and joint administration of the Debtors' bankruptcy proceedings;

**WHEREAS**, in connection with the Debtors' bankruptcy proceedings, the Assignor wishes to assign, transfer, convey and deliver the entirety of his legal and beneficial ownership interest in and to the Account, along with any related rights and claims with respect thereto (including, but not limited to, claims in any bankruptcy, insolvency, or restructuring proceeding relating to the Debtors), to the Assignee, and the Assignee desires to accept such assignment, transfer, conveyance and delivery;

**NOW, THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>Assignment</u>. The Assignor hereby assigns and transfers to the Assignee all the Assignor's right, title, and interest in and to the Account including, but not limited to:

(a) all consents and financial rights now or hereafter existing and associated with ownership of the Account;

(b) any and all claims and causes of action (collectively, "<u>Claims</u>") against any Debtor, including without limitation any and all claims in any bankruptcy, insolvency, or restructuring proceeding for any Debtor or its affiliate that is presently pending or otherwise come into existence, or any other third party with respect to the Account, that the Assignor may hold by virtue of the Assignor's ownership of the Account;

48402092.1

(c) all rights and benefits of the Assignor relating to the Claims, including without limitation:

> (i)     any right to receive digital assets, cash, securities, instruments, principal, interest, damages, penalties, fees, expenses, and/or other amounts or other property, which may be paid or distributed with respect to the Claims;

> (ii)    any actions, claims (including, without limitation, "claims" as defined in section 101(5) of the Bankruptcy Code), rights or lawsuits of any nature whatsoever, whether against any Debtor or any other party, arising out of or in connection with the Claims;

> (iii)   any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Claims; and

> (iv)    any and all of Assignor's right, title and interest in, to and under the transfer agreements, if any, under which the Assignor or any prior Assignor acquired the rights and obligations underlying or constituting a part of the Claim.

(d) any and all proceeds of any of the foregoing, whether against the Debtors or affiliates, any guarantor, or any other third party liable in respect thereof (collectively, as described in clauses (a), (b), (c), and (d) of this paragraph 1, the "Transferred Assets").

2.    Representations and Warranties of the Assignor. The Assignor hereby represents, warrants and covenants to the Assignee that:

(a) the Assignor is duly authorized and empowered to execute, deliver and perform his obligations under this Agreement and this Agreement is legal, valid, binding and enforceable against Assignor in accordance with its terms;

(b) the making and performance by the Assignor of this Agreement does not and will not violate any law, rule, or regulation of the jurisdiction under which the Assignor exists, any other law applicable to the Assignor, or any other agreement to which the Assignor is a party or by which the Assignor is bound;

(c) no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with the execution, delivery and performance of this Agreement and the transactions contemplated herein;

(d) that the Assignor has not previously sold, assigned, participated, pledged or otherwise conveyed the Transferred Assets, in whole or in part, to any party; and

2

(e) the Assignor is not, and has never been, an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code.

For the avoidance of doubt, and without diminishing the representations of the Assignor explicitly set forth herein, the Assignor does not represent or warrant to Assignee the amount in which any proof of claim filed in respect of the Transferred Assets (a "<u>Proof of Claim</u>") has been or may be allowed or the amount of any given distribution to be made by the Debtors in connection with the Transferred Assets.

3.    <u>Waiver of Notice of Hearing</u>. The Assignor hereby waives any objection to, and expressly approves of, the transfer of the Transferred Assets, including but not limited to the Account, to the Assignee on the books and records of the Debtors and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of the Assignor by the Assignee for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Assets. The Assignor acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to the Assignor transferring to the Assignee the Transferred Assets, recognizing the Assignee as the sole owner and holder of the Transferred Assets, and directing that all payments or distributions of money or property in respect of the Transferred Assets be delivered or made to the Assignee.

4.    <u>Transfer of Proceeds</u>. The Assignor agrees that if he receives any payments, distributions or proceeds in respect of the Transferred Assets, whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Assignee to which the Assignee has an absolute right. The Assignor shall hold such property in trust and will deliver to the Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to the Assignee as soon as reasonably practicable.

5.    <u>Performance</u>. The Assignor agrees to: (a) promptly forward to the Assignee all notices received from the Debtors, the Court or any third party with respect to the Transferred Assets assigned herein, (b) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (c) take or cause to be taken all such other and further actions as the Assignee may reasonably request to carry out the terms of this Agreement

6.    <u>Acceptance by Assignee</u>. The Assignee: (a) accepts the assignment of all Assignor's right, title, and interest in and to the Account; and (b) agrees to be bound by all the terms, covenants, and conditions of this Agreement. The Assignee hereby indemnifies and holds the Assignor harmless against any and all losses, costs, and expenses (including reasonable attorneys' fees) arising out of any obligations of Assignee relating to the Account which occur on or after, or arise from events occurring on or after, the date hereof.

3

Case 22-11068-JTD    Doc 29583-7    Filed 02/14/25    Page 29 of 38

7. <u>Compliance with Automatic Stay</u>. The Assignor and the Assignee expressly confirm that this Agreement is not intended and shall not be construed to provide for or require any act or omission prohibited by section 362 of the Bankruptcy Code or any analogous provision of foreign law applicable to the Transferred Assets.

8. <u>Heirs, Successors, and Assigns</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

9. <u>Governing Law</u>. This Agreement and all other instruments referred to herein shall be governed by, and shall be construed according to, the laws of the State of Delaware of the United States of America without regard to conflict of law rules.

10. <u>Notices</u>. Any notice, demand or request required or permitted to be given under this Agreement will be in writing and will be deemed sufficient when delivered personally, by mail or overnight courier, or sent by email as follows: (a) three (3) business days after being mailed by first class mail as certified or registered mail with postage prepaid, (b) one (1) business day after being sent by an internationally recognized overnight delivery service with postage prepaid or (c) upon the date delivered by personal delivery or electronic mail transmission. For purposes of this section, "business days" shall mean and refer to all days other than (i) Saturdays; (ii) Sundays or legal public holidays. All notices to any other party must be addressed to the address set forth below such other party's signature hereto (or at such other address as may be designated in writing by notice given hereunder).

11. <u>Amendments and Modifications</u>. This Agreement may not be amended or modified in any manner other than by a written agreement signed by the parties to this Agreement.

12. <u>Severability</u>. If any provision of this Agreement is deemed to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. If the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision will be excluded from this Agreement, (ii) the balance of the Agreement will be interpreted as if such provision were so excluded and (iii) the balance of the Agreement will be enforceable in accordance with its terms to the extent permitted by applicable law.

13. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original for all purposes, and all such counterparts shall together constitute but one and the same instrument.

[*Signature Page Follows*]

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**Assignor**:

*Junho Bang*

DocuSigned by:

*Junho Bang*

50D7E8013D4B4FC...

Junho Bang

Agreed to and accepted by:

**Assignee**:

*Lemma Technologies Inc.*

DocuSigned by:

*Hanseok Ko*

By: 326980D0ED314D4...

Name: Han Ko

Title: Secretary

5

# **Exhibit 2**

# Attestor

7 Seymour Street ¦ London W1H 7JW
Tel: +44(0) 207 074 9610

London, 16 June 2023
Strictly private and confidential

To: JunHo Bang
From: Svalbard Holdings Limited

We are pleased to confirm the following transaction subject to the terms set forth herein:

| | |
|---|---|
| **Trade Date** | 16 June 2023 |
| **Seller** | Lemma Technologies Inc. |
| **Principals** | Junho Bang and other economic interest holders [scope to be agreed] |
| **Buyer** | Svalbard Holdings Limited (company ultimately managed by Attestor Limited) |
| **Debtors** | FTX Trading Limited or any of its affiliates including but not limited to third parties, non-debtors and debtors under Case No. 22-11068 in the US Bankruptcy Court of Delaware and FTX Digital Markets Limited (the "Case") |
| **Claim** | $ 106,269,300 of valid and enforceable, undisputed, liquidated, non-contingent general unsecured claim against Debtors |
| **Purchase Rate** | 35% (payable in two instalments: Upfront Purchase Price of 33% and Back-End Purchase Price of 2% based on the Claim) |
| **Purchase Price:** | Upfront Purchase Price: $ 35,068,869, payable by Buyer to Seller following closing of the Assignment of Claim Agreement. Payable in stablecoin as agreed between Seller and Buyer.<br><br>Back-End Purchase Price: $ 2,215,386, payable by Buyer upon receipt of final distribution in the Case provided that Seller has complied with all representations, warranties and other any other ongoing obligations under the purchase contract, and Buyer has not received proportionately less in payments or distributions under, or less favourable treatment (including the timing of payments or distributions) for, the Claim than is received by other creditors in the same class of claims in the Case |
| **Form of purchase** | Assignment of Claim Agreement (if the Claim and related rights cannot be assigned, Parties shall enter into a participation agreement). |
| **Payments and distributions** | All payments, fees or other distributions made on account on or after the Trade Date are for the account of Buyer at no additional consideration. |
| **Closing Conditions:** | • Seller having provided to Buyer true, correct and complete copies of (i) all agreements, notices, statements and other documentation relating to the Claims; and (ii) any proofs of claim or claim forms filed in connection with the Claims (collectively, "Supporting Documents");<br>• Satisfactory completion of confirmatory due diligence with respect to the Claims and Supporting Documents, including review of due diligence information as set out in Appendix 1; |

|  | • Transaction Documents executed between both Parties, in satisfaction to the Buyer, which will contain<br>    o customary representations and warranties, including but not limited to: no withdrawals by Seller from Debtors or other transfers to or for the benefit of Seller by Debtors within 91 days of the petition date of Debtors (other than the ones as disclosed during the confirmatory due diligence)<br>    o ongoing obligation by the Seller and Principals to co-operate with the Buyer to receive recovery entitlements arising from the Claims, to the extent required<br>    o Principals to guarantee performance of the Seller's obligation, representations and warranties under the Transaction Documents |
|---|---|
| *Settlement Date* | Ultimately within 5 business days following execution of the Assignment Agreement. |
| *Confidentiality:* | This Trade Confirmation is strictly private and confidential and subject to the non-disclosure agreement, dated 15 June 2023, between Buyer and Seller. |
| *Governing Law; Jurisdiction;* | This Trade Confirmation and the Assignment of Claim shall be governed by the laws of the State of New York. The parties hereto submit to the exclusive jurisdiction of the courts of appropriate jurisdiction sitting in the Borough of Manhattan in the State of New York for any claims or counterclaims arising in connection with this Trade Confirmation. EACH OF THE PARTIES HEREBY WAIVES THE RIGHT TO TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW FOR ANY CLAIM OR COUNTERCLAIM ARISING IN CONNECTION WITH THIS TRADE CONFIRMATION. |
| *Binding Effect* | Upon execution by both Parties, this Trade Confirmation shall constitute a binding agreement between them, in accordance with the terms hereof; *provided, however*, that to the extent there is any conflict between this Trade Confirmation and the Assignment of Claim Agreement, the Assignment of Claim Agreement shall govern. |

Svalbard Holdings Limited

By:
Name: Christopher Guth
Title: Director

LEMMA TECHNOLOGIES INC.

By:
Name: Junho Bang
Title: President

2

## Appendix 1 – Minimum Diligence Requirements

| Item No. | Description | Status | Notes |
|---|---|---|---|
| **1.** | **Underlying positions** | | |
| a. | - Kroll email with customer ID and position schedule - *Received*<br>- All withdrawals and deposits from/into the account from August 11, 2022 *Received*<br>- FTX wallet ID (hash)<br>- Open derivative or trading positions as of filing date. Any termination notices sent thereafter | Partly Received | |
| **2.** | **Proof of claim** | | |
| a. | - Proof of holdings as of petition date (eg screen shots, video confirmation)<br>- History of any withdrawals/deposits from August 11, 2022: bank statements for fiat withdrawals and/or deposits<br>- Confirmation that customer was a general user under the [FTX Trading Ltd] terms of service<br>- Proof of Claim (if filed) and any supporting documents<br>- Recognition of the Claim by FTX (Buyer's counsel can assist Seller, if needed) | Open<br><br>[to discuss scope if any information not available] | |
| **3.** | **Seller Information** | | |
| a. | Minimum KYC documents including the following:<br>- Two forms of ID (i.e. passport and driving license)<br>- Residential address confirmation dated within the last 3 months (i.e. electric or gas bill OR a redacted bank statement are the only acceptable forms of confirmation)<br>- Signed Sophisticated Investor Statement<br><br>Any additional required information to establish Sellers unencumbered rights to the Claims<br><br>Certain information on the Principals as required, including to assess creditworthiness in satisfaction of Buyer | Open | |

3

# **Exhibit 3**

# Attestor

7 Seymour Street ¦ London W1H 7JW
Tel: +44(0) 207 074 9610

London, 16 June 2023
Strictly private and confidential

To: JunHo Bang
From: Svalbard Holdings Limited

We are pleased to confirm the following transaction subject to the terms set forth herein:

| | |
|---|---|
| *Trade Date* | 16 June 2023 |
| *Seller* | Lemma Technologies Inc. |
| *Principals* | Junho Bang and other economic interest holders [scope to be agreed] |
| *Buyer* | Svalbard Holdings Limited (company ultimately managed by Attestor Limited) |
| *Debtors* | FTX Trading Limited or any of its affiliates including but not limited to third parties, non-debtors and debtors under Case No. 22-11068 in the US Bankruptcy Court of Delaware and FTX Digital Markets Limited (the "Case") |
| *Claim* | $ 59,391,855   of valid and enforceable, undisputed, liquidated, non-contingent general unsecured claim against Debtors |
| *Purchase Rate* | 35% (payable in two instalments: Upfront Purchase Price of 33% and Back-End Purchase Price of 2% based on the Claim) |
| *Purchase Price*: | Upfront Purchase Price: $ 19,599,312, payable by Buyer to Seller following closing of the Assignment of Claim Agreement. Payable in stablecoin as agreed between Seller and Buyer.<br><br>Back-End Purchase Price: $ 1,187,837, payable by Buyer upon receipt of final distribution in the Case provided that Seller has complied with all representations, warranties and other any other ongoing obligations under the purchase contract, and Buyer has not received proportionately less in payments or distributions under, or less favourable treatment (including the timing of payments or distributions) for, the Claim than is received by other creditors in the same class of claims in the Case |
| *Form of purchase* | Assignment of Claim Agreement (if the Claim and related rights cannot be assigned, Parties shall enter into a participation agreement). |
| *Payments and distributions* | All payments, fees or other distributions made on account on or after the Trade Date are for the account of Buyer at no additional consideration. |
| *Closing Conditions*: | • Seller having provided to Buyer true, correct and complete copies of (i) all agreements, notices, statements and other documentation relating to the Claims; and (ii) any proofs of claim or claim forms filed in connection with the Claims (collectively, "Supporting Documents");<br>• Satisfactory completion of confirmatory due diligence with respect to the Claims and Supporting Documents, including review of due diligence information as set out in Appendix 1; |

| | |
|---|---|
| | • Transaction Documents executed between both Parties, in satisfaction to the Buyer, which will contain<br>  o customary representations and warranties, including but not limited to: no withdrawals by Seller from Debtors or other transfers to or for the benefit of Seller by Debtors within 91 days of the petition date of Debtors (other than the ones as disclosed during the confirmatory due diligence)<br>  o ongoing obligation by the Seller and Principals to co-operate with the Buyer to receive recovery entitlements arising from the Claims, to the extent required<br>  o Principals to guarantee performance of the Seller's obligation, representations and warranties under the Transaction Documents |
| *Settlement Date* | Ultimately within 5 business days following execution of the Assignment Agreement. |
| *Confidentiality:* | This Trade Confirmation is strictly private and confidential and subject to the non-disclosure agreement, dated 15 June 2023, between Buyer and Seller. |
| *Governing Law; Jurisdiction;* | This Trade Confirmation and the Assignment of Claim shall be governed by the laws of the State of New York. The parties hereto submit to the exclusive jurisdiction of the courts of appropriate jurisdiction sitting in the Borough of Manhattan in the State of New York for any claims or counterclaims arising in connection with this Trade Confirmation. EACH OF THE PARTIES HEREBY WAIVES THE RIGHT TO TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW FOR ANY CLAIM OR COUNTERCLAIM ARISING IN CONNECTION WITH THIS TRADE CONFIRMATION. |
| *Binding Effect* | Upon execution by both Parties, this Trade Confirmation shall constitute a binding agreement between them, in accordance with the terms hereof; *provided, however*, that to the extent there is any conflict between this Trade Confirmation and the Assignment of Claim Agreement, the Assignment of Claim Agreement shall govern. |

Svalbard Holdings Limited

By:
Name: Christopher Guth
Title: Director

LEMMA TECHNOLOGIES INC.

By:
Name: Junho Bang
Title: President

2

Case 22-11068-JTD   Doc 29583-7   Filed 02/14/25   Page 38 of 38

## Appendix 1 – Minimum Diligence Requirements

| Item No. | Description | Status | Notes |
|---|---|---|---|
| **1.** | **Underlying positions** | | |
| a. | - Kroll email with customer ID and position schedule - *Received*<br>- All withdrawals and deposits from/into the account from August 11, 2022 *Received*<br>- FTX wallet ID (hash)<br>- Open derivative or trading positions as of filing date. Any termination notices sent thereafter | Partly Received | |
| **2.** | **Proof of claim** | | |
| a. | - Proof of holdings as of petition date (eg screen shots, video confirmation)<br>- History of any withdrawals/deposits from August 11, 2022: bank statements for fiat withdrawals and/or deposits<br>- Confirmation that customer was a general user under the [FTX Trading Ltd] terms of service<br>- Proof of Claim (if filed) and any supporting documents<br>- Recognition of the Claim by FTX (Buyer's counsel can assist Seller, if needed) | Open<br><br>[to discuss scope if any information not available] | |
| **3.** | **Seller Information** | | |
| a. | Minimum KYC documents including the following:<br>- Two forms of ID (i.e. passport and driving license)<br>- Residential address confirmation dated within the last 3 months (i.e. electric or gas bill OR a redacted bank statement are the only acceptable forms of confirmation)<br>- Signed Sophisticated Investor Statement<br><br>Any additional required information to establish Sellers unencumbered rights to the Claims<br><br>Certain information on the Principals as required, including to assess creditworthiness in satisfaction of Buyer | Open | |

3