# EXHIBIT E

DocuSign Envelope ID: A0D44505-4BCS-4130-9EA6-E9D45E795125

## AMENDMENT TO RESTRICTED TOKEN GRANT AGREEMENT

This Amendment to Restricted Token Grant Agreement (this "***Amendment Agreement***") is made and entered into by and between Tribal Invest Corp, a Panamanian corporation (the "***Company***"), and the undersigned (the "***Consultant***") (collectively, the "***Parties***"). Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Token Agreement (as defined below).

### RECITALS

**WHEREAS,** the Parties previously entered into that certain Restricted Token Grant Agreement (the "***Token Agreement***") pursuant to which the Company granted Tokens (as defined therein) to the Consultant, subject to the terms and conditions set forth therein.

**WHEREAS,** the Parties desire to amend the Token Agreement as set forth herein.

**NOW THEREFORE,** in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

### AGREEMENT

1. **Amendment to Section 4.1.** Section 4.1 of the Token Agreement, including all references thereto in the Token Agreement, is hereby amended and restated in its entirety to read as follows:

"**4.1   Unlock Schedule.** Until the Restricted Tokens are "***Unlocked***", as described below, Consultant agrees that it will not, without the prior written consent of the Company, offer, sell, contract to sell, pledge, grant any option to purchase, make any short sale or otherwise dispose of (collectively, "***Transfer***") any Restricted Tokens, any options to purchase any Restricted Tokens, or any instruments convertible into, exchangeable for, or that represent the right to receive Restricted Tokens. The Restricted Tokens shall be considered to be "***Unlocked***" as follows: (a) prior to the six (6) month anniversary of the First Closing Date (as defined below) (the "***First Unlock Date***"), no Tokens will be Unlocked; and (b) starting on the First Unlock Date and ending on the three (3) year anniversary of the First Unlock Date, the Tokens shall become Unlocked on a linear basis (annually) beginning with 25% of the Tokens Unlocked on the First Unlock Date and ending with 100% of the Tokens Unlocked on the three (3) year anniversary of the First Unlock Date. As used herein, "***First Closing Date***" means the date the Tokens are first usable in the Pyth Protocol, as determined by the Sellers in their reasonable discretion.

Notwithstanding the foregoing, Consultant may Transfer Tokens, any options to purchase any Tokens, or any instruments convertible into, exchangeable for, or that represent the right to receive Tokens; *provided* that (a) such transferred Tokens remain subject to the unlock schedule set forth in this Section 4.1 and the Transfer Restrictions set forth in Sections 3.8 and 9.6 herein to the same extent as if the transferee were the Consultant under this Agreement; and (b) after such Transfer, such transferee shall not Transfer any Tokens until the Tokens are Unlocked."

2.    **Miscellaneous**.

2.1    **Integration.**  This Amendment Agreement and the documents referred to herein and therein constitute the entire agreement and understanding of the Parties with respect to the subject matter hereof, and supersede all prior understandings and agreements, whether oral or written, between or among the Parties hereto with respect to the specific subject matter hereof.

2.2    **Successors and Assigns.**  Except as otherwise provided in this Amendment Agreement, this Amendment Agreement, and the rights and obligations of the Parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

2.3    **Counterparts; Electronic Signatures.**  This Amendment Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.  This Amendment Agreement may be executed and delivered by facsimile or electronic mail (including .pdf or any electronic signature) and upon such delivery the signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Amendment Agreement as of _____.

**TRIBAL INVEST CORP**

By: _____

Name: _____

Title: _____

Date: _____

**CONSULTANT NAME:** Do Hyeong Kwon _____

By: _____

Name: Do Hyeong Kwon _____

Title: _____

Date: 23 May 2022 _____

# EXHIBIT F

To: Pyth Data Association Board of Directors

Dear Sirs,

I hereby request that I be removed as president and member of the board of directors of the Pyth Data Association, in Baar (CHE-325.103.020), with immediate effect.

Sincerely,

Do Hyeong Kwon: _____

Date: _____
      17 May 2022

# EXHIBIT G

Case No        : HC/PA 1680/2023

Filed          : 11-Apr-2023 12:11 PM

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

**The following document(s) have been deposited in the Registry of the High Court of Singapore under Section 48 of the CLPA (Cap 61).**

**POWER OF ATTORNEY granted by KWON DO HYEONG, Foreign Passport: M86114634**



**POWER OF ATTORNEY**

NAVINDRARAM NAIDU

DENTONS RODYK & DAVIDSON LLP

80 RAFFLES PLACE #33-00 UOB PLAZA 1 SINGAPORE 048624

TEL: 6562252626

FAX: 6562251838

Ref: NN/JZH/SLHM/44774.11

TAN BOON HENG

REGISTRAR

SUPREME COURT

SINGAPORE

## POWER OF ATTORNEY

**A POWER OF ATTORNEY** ("**POA**") granted on **14ᵗʰ December, 2022** by **Kwon Do Hyeong** (Passport No. M86114634) of 8 Ardmore Park #19-01 Singapore 259963 (the "**Principal**") to **Lee Daeun** (Passport No. M71255303), an individual having his/her residential address at 8 Ardmore Park #19-01 Singapore 259963 (the "**Attorney**").

Now, the Principal **HEREBY IRREVOCABLY APPOINTS** the Attorney to be the true and lawful attorney of the Principal with full power to substitute, appoint and discharge from time to time one or more attorneys in the name of the Principal and on the Principal's behalf to execute or do all or any of the following acts, deeds and things:-

1. to take any action the Attorney deems necessary with any businesses that the Principal may own or have an interest in as at the date of this POA, including, but not limited to execute, seal and deliver any instrument; participate in any legal business of any kind, to execute any agreements and amendments thereto, to incorporate, reorganise, consolidate, merge, sell, or dissolve any business, to elect or employ officers, directors and agents, and to exercise voting rights with respect to any shares the Principal may own, either in person or by proxy and to do everything incidental thereto and generally in every way to transact the affairs of the said businesses;

2. to deal with any interest the Principal may have in any immovable property and sign all documents on the Principal's behalf concerning the Principal's interest in such immovable property the Principal may subsequently acquire or receive, including, but not limited to:

   a. purchasing, selling, exchanging, accepting as gifts, placing as security on loans, conveying with or without covenants, renting, collecting rent, suing for and receiving rents, ejecting and removing tenants or other persons, to pay or contest taxes or assessments, controlling any legal claim in favour of or against the Principal, partitioning or consenting to partitioning, mortgaging, charging, leasing, surrendering, managing or otherwise dealing with any immovable property and any interest therein; and

   b. executing and delivering deeds, transfers, mortgages, charges, leases, assignments, surrenders, releases and other instruments required for any such purpose;

3. to acquire, dispose of, hire, lend, charter, give on charter, manage, mortgage, charge, pledge, grant liens and rights over and exercise all and every right that the Principal may now or hereafter have in connection with any movable properties (including moneys, choses in action, securities, digital assets and investments) in which the Principal may at any time be interested and to enter into agreements to carry out any such transactions;

4. to retain any assets owned by the Principal at the date of this POA, and to reinvest those assets in investments that the Attorney may decide in his or her absolute discretion;

5. to do any act that the Principal can perform or transact with any banking or financial institution including, but not limited to:

   a. opening, maintaining or closing bank accounts (including, but not limited to, current accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with any banking or financial institutions;

   b. conducting any business with any banking or financial institution with respect to any of the Principal's accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any cheques or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to the Principal by any person, firm, company, or political entity;

(Seal of Milena Kovačević)

IVANA
IKODINOVIĆ

*(Seal illegible)*

    c.  borrowing money from any banking or financial institution if deemed necessary by the Attorney, and to manage all aspects of the loan process, including the placement of security and the negotiation of terms;

    d.  performing any act necessary to deposit, negotiate, sell or transfer any note, security, or draft;

    e.  having access to any safe deposit box that the Principal might own, including its contents; and

    f.  creating and delivering any financial statements necessary to or from any banking or financial institution;

6.    to do any act that the Principal can do through the Attorney with any insurance policy including, but not limited to, the power to pay premiums, start, modify or terminate policies, manage all cash pay-outs, borrow from insurers and third parties using insurance policies as collateral, and to change the beneficiaries on any insurance policies on the Principal's life;

7.    to institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against the Principal including, but not limited to, the power to appear on the Principal's behalf, and to settle any claim against the Principal in whichever forum or manner the Attorney deems prudent, and to receive or pay any resulting settlement;

8.    to engage, remunerate and dispense with the services of every manner of person, professional or otherwise, in any way in connection with any of the Principal's affairs in such manner and on such terms as the Attorney shall think fit;

9.    to make every kind of arrangement and agreement with and to make and give every kind of application, undertaking and return to every manner of financial, permit issuing, fiscal, foreign exchange, revenue and preventive authority and official;

10.    to act for the Principal in all matters that affect the Principal's taxes and to prepare, sign, and file documents with any governmental body or agency, including, but not limited to:

    a.  prepare, sign and file income and other tax returns with governmental bodies, and to receive any refund payments; and

    b.  obtain information or documents from any government or its agencies, and represent the Principal in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

11.    to act on the Principal's behalf in all matters that affect the Principal's right to allowances, compensation and reimbursements properly payable to the Principal by any governmental body, agency or department thereof including, but not limited to, the power to prepare, file, claim, defend or settle any claim on the Principal's behalf and to receive and manage, as the Attorney sees fit, any proceeds of any claim.

12.    to act for the Principal and represent the Principal's interests in all matters affecting any retirement savings or pension plans the Principal may have including, but not limited to, the power to continue contributions, change contribution amounts, change investment strategies and options, move assets to other plans, receive and manage pay-outs, and add or change existing beneficiaries;

13.    to make whatever expenditures are required for the maintenance, education, benefit, medical care and general advancement of the Principal, the Principal's spouse and dependent children, and other persons who the Principal has chosen or whom the Principal is legally required to support, any of whom may include the Attorney;

14.    to do any act that the Principal can do through the Attorney with regard to all matters that affect any trust, probate estate, conservatorship, or other fund from which the Principal may receive payment as a beneficiary, including, but not limited to, the power to disclaim any interest which

*(Seal illegible)*

might otherwise be transferred or distributed to the Principal from any other person, estate, trust, or other entity, as may be appropriate;

15. to transfer any of the Principal's assets including, but not limited to real property, shares, bonds, accounts, insurance policies or digital assets to the trustee of any revocable trust created by the Principal, if such trust is in existence at the time of such transfer;

16. to make gifts to the Principal's spouse, children, grandchildren, great grandchildren, and other family members, any of whom may include the Attorney on special occasions, including birthdays and seasonal holidays, including cash gifts, and to such other persons with whom the Principal has an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), in such amounts as the Attorney may decide in his or her absolute discretion;

17. to continue to make gifts to charitable organisations with which the Principal has established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), in such amounts as the Attorney may decide in his or her absolute discretion;

18. generally to do all such acts and things as may be necessary or expedient in connection with the aforesaid matters;

19. to generally do on the Principal's behalf anything which can lawfully be done by an attorney in connection with the aforesaid matters;

20. to register this or any other instrument in such manner as the Attorney may think fit and to bind the Principal by any covenant or declaration which may be necessary in order to carry out the purpose of this Power of Attorney; and

21. generally to do all such other acts and things and sign, seal and deliver or execute all other documents, deeds, assurances and agreements as the Attorney may consider necessary or expedient in connection with any of the matters and things aforesaid as fully and effectually as the Principal would do them.

AND THE PRINCIPAL HEREBY RATIFIES AND CONFIRMS and agrees at all times to ratify and confirm all and whatsoever the Attorney shall lawfully do or cause to be done or purport to do by virtue of this power of attorney.

This POA shall be effective as of the date of its execution and sealing by the Principal and shall remain valid unless otherwise terminated by the Principal in writing.

This POA shall be governed by, and construed in accordance with, the laws of the Republic of Singapore.

*(Signature: illegible)*

*(Seal illegible)*

**IN WITNESS WHEREOF** the Principal has executed this Power of Attorney as a deed on the day and year first above written

SIGNED SEALED AND DELIVERED                    )
by **[INSERT NAME]**                            )
in the presence of:                             )

_____

Name of Witness:

On this            day of                 2022 before me,

a Notary Public practicing in **[COUNTRY]** personally appeared **[INSERT NAME]** who of my own personal knowledge I know to be the identical person whose name "_____" is subscribed to the within written instrument and acknowledged that he/she had voluntarily executed this instrument in **[COUNTRY]**.

    Witness My Hand

The end of translation

The court authorized translator for the Slovenian, English and Swedish language, appointed by the decision of the Ministry of Justice of the Republic of Serbia no. 760- 06-197/2002-04 dated 02.10.2002, hereby certifies that this translation fully corresponds to the English original.

                                                Milena Kovačević
                                                Belgrade, 14/12/2022

*(Seal and signature of Milena Kovačević)*

**NOTARY PUBLIC**
**Katarina Zrilić**
**Belgrade, Stari Grad**
**5/1, Đure Daničića Str.**

**UOP-III:2385-2022**
Page 1 (one)

*(Round stamp: illegible)*

-----------------------------------------------------------------------------------------------
---------- CLAUSE ON THE NOTARIZATION OF THE SIGNATURE ON THE DOCUMENT ----------
-----------------------------------------------------------------------------------------------
It is hereby confirmed that on 15/12/2022 (December the fifteenth two thousand and twenty-second) at 10:28 (ten hours and twenty-eight minutes) a.m.: -------------------------------------------------------------
-----------------------------------------------------------------------------------------------
DO HYEONG KWON, born on 06/09/1991 (September the sixth one thousand nine hundred and ninety-first), with place of residence in, personally signed this document. --------------------------------------
The identity of the document submitting party was determined based on his passport no. M86114634 issued by the Republic of Korea on 11/07/2014 (July the eleventh two thousand and fourteenth). --------
which was prepared bilingually in Serbian and English, given that the notary trainee is familiar with the content of the document by inspection of the translation of the document prepared by the authorized sworn translator for the English language, Milena Kovačević, based on the decision of the Ministry of Justice of the Republic of Serbia No. 760-06-197/2002- 04 of October 2, 2022, who confirmed that the translation is completely faithful to the original in English----------------------------------------------------------
-----------------------------------------------------------------------------------------------
The document of the party/parties is written with a computer printer, in Latin script and consists of 10 (ten) pages, and is notarized in 1 (one) copy for the needs of the party/parties, and 1 (one) notarized copy remains with the acting notary public.---------------------------------------------------------------------
By certifying this document, the notary public confirms the signature of the parties, and shall not be responsible for the content of the document, in accordance with Article 11, paragraph 2, of the Law on Certification of Signatures, Manuscripts and Transcripts. ------------------------------------------------------------
The fee for the notarization of 1 (one) copy was collected in the total amount of RSD 360.00 (three hundred and sixty) including VAT based on Article 21, Tariff No. 8, of the Notary Public Tariff.----------
In Belgrade, on15/12/2022 (December the fifteenth two thousand and twenty-second), at 10:28 a.m.-----
**UOP-III:2385-2022** -------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------------

**Notary Public**
**Katarina Zrilić**
**Belgrade, Stari Grad**
**5/1, Đure Daničića Str.**

**For the notary public**
**notary public trainee**
**Aleksandra Marjanović**
**according to decision no**
**3123-3-IV-6/2021**
**of 20/09/2021**

*(Signature illegible)*

*(Round stamp: REPUBLIC OF SERBIA, BELGRADE-CITY MUNICIPALITY STARI GRAD, KATARINA ZRILIĆ, NOTARY PUBLIC, II)*

**NOTARY PUBLIC**
**Katarina Zrilić**
**Belgrade, Stari Grad**
**5/1, Đure Daničića Str.**

**UOP-III:2396-2022**
**Page 1 (one)**

-----------------------------------------------------------------------------
-----------------------------**CLAUSE ON THE NOTARIZATION OF THE COPY**-----------------------------
-----------------------------------------------------------------------------

It is hereby confirmed that this copy is identical to the copied document which is written by the computer printer in Latin script and which consists of 11 (eleven) page/pages. -------------------------------------

The notary public fee for notarization of 4 (four) copies was collected in the total amount of RSD 15,840.00 (fifteen thousand eight hundred and forty) with calculated VAT on the basis of Article 21, tariff number 10 of the Notary Public Tariff. -----------------------------------------------------------
-----------------------------------------------------------------------------
-----------------------------------------------------------------------------

In Belgrade, on 16/12/2022 (December the sixteenth two thousand and twenty-second), at 10:32 a.m ----
-----------------------------------------------------------------------------

**UOP-III:2396-2022**------------------------------------------------------------------
-----------------------------------------------------------------------------

**Notary Public**
**Katarina Zrilić**
**Belgrade, Stari Grad**
**5/1, Đure Daničića Str.**

**For the notary public**
**notary public trainee**
**Aleksandra Marjanović**
**according to decision no**
**3123-3-IV-6/2021**
**of 9/20/2021**

*(Round stamp: REPUBLIC OF SERBIA, BELGRADE-CITY MUNICIPALITY STARI GRAD, KATARINA ZRILIĆ, NOTARY PUBLIC, II)*

*(Signature: illegible)*

**(signature)**            **(stamp)**

-The end of translation-

I, the undersigned court authorised translator, appointed by the decision of the Ministry of Justice of the Republic of Serbia no. 740-06-747/2006-03, hereby certify that this translation fully corresponds to the Serbian original.

Belgrade, 16 December 2022

No. 4371/2022

Court Authorised English Translator/Interpreter,

Ivana Ikodinović

*(Round stamp: SUDSKI PREVODILAC ZA ENGLESKI JEZIK, IVANA IKODINOVIĆ, BEOGRAD)*

**PUNOMOĆJE**

**PUNOMOĆJE** dato **14.12.2022. godine**, od strane **Kvon Do Hjeonga(Kwon Do Hyeong)** (br. pasoša M86114634) sa prebivalištem na adresi 8 Ardmore Park #19-01 Singapur 259963 (u nastavku „**Davalac punomoćja**"), za **Li Daeuna(Lee Daeun)** (br. pasoša M71255303), lice sa prebivalištem na adresi 8 Ardmore Park #19-01 Singapur 259963 (u nastavku „**Punomoćnik**").

Davalac punomoćja **OVIM PUTEM NEOPOZIVO IMENUJE** Punomoćnika za svog pravog i ovlašćenog predstavnika sa punim ovlašćenjima da menja, imenuje i otpušta, s vremena na vreme, jednog ili više predstavnika u ime Davaoca punomoćja te da u ime Davaoca punomoćja izvršava ili obavlja bilo koju od sledećih radnji, dela ili stvari:-

1.  da preduzima bilo koje mere koje Punomoćnik smatra neophodnim u vezi sa poslovanjem koje je u vlasništvu Davaoca punomoćja ili u kom Davalac punomoćja može imati interes na dan ovog Punomoćja, uključujući, ali ne i ograničeno na potpisivanje, overu i uručivanje bilo kog instrumenta; učestvovanje u bilo kom pravnog poslu bilo koje vrste, u vezi sa zaključivanjem bilo kog ugovora i izmena i dopuna istog, osnivanjem, reorganizacijom, konsolidacijom, spajanjem, prodajom ili likvidacijom bilo kog poslovanja, imenovanjem ili angažovanjem službenika, direktora i zastupnika, kao i u vezi sa primenom glasačkih prava u vezi sa bilo kojim akcijama koje Davalac punomoćja poseduje, bilo lično ili preko zastupnika, kao i da obavlja sve potrebne radnje u vezi sa tim i generalno da na svaki mogući način vodi računa o dotičnom poslovanju;

2.  da preduzima potrebne radnje u vezi sa bilo kojim interesom koji Davalac punomoćja može imati u bilo kojoj nepokretnoj imovini i potpisuje svu dokumentaciju u ime Davaoca punomoćja u vezi sa interesom Davaoca punomoćja u toj nepokretnoj imovini koju Davalac punomoćja može naknadno pribaviti ili dobiti, uključujući, ali ne i ograničeno na:

    a.  kupovinu, prodaju, razmenu, prihvatanje u vidu poklona, korišćenje kao sredstva obezbeđenja kredita, prenos sa ili bez zakonskih obaveza, davanje u zakup, uzimanje zakupnine, tužbu u vezi sa zakupninama, izbacivanje i uklanjanje zakupaca/stanara ili drugih lica, plaćanje ili osporavanje poreza ili procena, upravljanje bilo kojim pravnim postupkom u korist ili na štetu Davaoca punomoćja, deobu, upis hipoteke, upis tereta, iznajmljivanje, predaju, upravljanje ili drugo postupanje sa bilo kojoj nepokretnom imovinom i bilo kojim interesom u istoj; i

    b.  potpisivanje/zaključivanje i dostavljanje vlasničke dokumentacije, prenosa, hipoteka, opterećenja, zakupa, dodela, predaja, oslobađanja opterećenja i drugih instrumenata koji su potrebni u bilo koje svrhe;

3.  da kupuje, prodaje, uzima u zakup, daje u zakup, upravlja, upisuje hipoteku, opterećuje, upisuje založno pravo, odobrava druge zaloge i prava nad nepokretnom imovinom i primenjuje sva prava koja prava koja Davalac punomoćja može trenutno ili u budućnosti imati u vezi sa bilo kojom pokretnom imovinom (uključujući novac, vlasnička prava na nematerijalnoj imovini, hartije od vrednosti, digitalna sredstva i investicije) za koju Davalac punomoćja može u bilo kom trenutku biti zainteresovan i da stupa u ugovore za izvršenje bilo kojih takvih transakcija;

4.  da zadrži sva sredstva koja su u vlasništvu Davaoca punomoćja da dan ovog Punomoćja i da reinvestira ta sredstva u investicije za koje se Punomoćnik opredeli prema apsolutnom sopstvenom nahođenju.

5.  da izvršava bilo koje radnje koje u redovnom poslovanju izvršava Davalac punomoćja ili da obavlja bilo koje poslove sa bilo kojom bankarskom ili finansijskom institucijom, uključujući, ali ne i ograničeno na:





   a.  otvaranje, održavanje ili zatvaranje bankovnih računa (uključujući, ali ne i ograničeno na, tekuće račune, štedne račune i kamatonosne štedne depozite), posredničkih računa, računa za penzijske planove i druge slične račune kod bilo koje bankarske ili finansijske institucije;

   b.  obavljanje bilo kojih poslova sa bilo kojom bankarskom ili finansijskom institucijom u vezi sa bilo kojim računima Davaoca punomoćja, uključujući, ali ne i ograničeno na, deponovanje i povlačenje sredstava sa računa, pregovaranje ili potpisivanje bilo kojih čekova ili drugih instrumenata u vezi sa bilo kojim takvim računima, preuzimanje bankovnih izvoda, štednih knjižica, draftova (bankarskih čekova), novčanih naloga, garancija i potvrda ili vaučera koji su plativi Davaocu punomoćja od strane bilo kog lica, firme, kompanije ili političke organizacije;

   c.  pozajmljivanje novca od bilo koje bankarske ili finansijske institucije ukoliko to Punomoćnik smatra neophodnim i upravljanje svim aspektima procesa uzimanja kredita, uključujući nabavku sredstava obezbeđenja i pregovaranje o uslovima;

   d.  sprovođenje svih neophodnih radnji za deponovanje, pregovaranje, prodaju ili prenos bilo koje menice, sredstva obezbeđenja ili drafta (bankarskog čeka);

   e.  pristupanje bilo kom depozit sefu u vlasništvu Davaoca punomoćja, uključujući i njegov sadržaj; i

   f.  pripremu i slanje bilo kojih finansijskih izveštaja koji se potrebni bilo kojoj bankarskoj ili finansijskoj instituciji;

6.  da obavlja bilo koje radnje koje Davalac punomoćja može obavljati preko Punomoćnika u vezi sa bilo kojom polisom osiguranja, uključujući, ali ne i ograničeno na, ovlašćenje za isplate premija, zaključivanje, izmenu ili gašenje polisa, upravljanje svim novčanim isplatama, pozajmljivanje od osiguravajućih kuća i trećih strana koristeći polise osiguranja kao kolateral i izmenu korisnika osiguranja na bilo kojoj polisi životnog osiguranja Davaoca punomoćja;

7.  da pokreće, održava, brani, pronalazi kompromisno rešenje, arbitrira ili na drugi način upravlja svim i bilo kojim radnjama, tužbama, zaplenama ili drugim pravnim postupcima u korist ili na štetu Davaoca punomoćja, uključujući, ali ne i ograničeno na, ovlašćenje pojavljivanja u ime Davaoca punomoćja, kao i da pristaje na nagodbe u vezi sa bilo kojom tužbom protiv Davaoca punomoćja pred bilo kojim sudom ili na način koji Punomoćnik smatra odgovarajućim, kao i da prima uplate ili isplaćuje iznose na osnovu konačnog rešenja sporova;

8.  da angažuje, određuje naknade i isplaćuje za pružene usluge, bilo koje osobe, stručna lica ili druga lica, na bilo koji način u vezi sa bilo kojim poslovima Davaoca punomoćja, na način ili prema uslovima koje Punomoćnik smatra odgovarajućim;

9.  da dogovara i ulazi u sporazume i da priprema i šalje sve vrste zahteva, izjava i prijava bilo kojima organima i zvaničnicima zaduženim za finansijske poslove, izdavanje dozvola, fiskalne poslove, devizno poslovanje, upravljanje prihodima i poslove preventive;

10.  da postupa u ime Davaoca punomoćja po svim pitanjima koje utiču na poreze Davaoca punomoćja kao i da priprema, potpisuje i vodi dokumentaciju za sva državna tela ili agencije, uključujući, ali ne i ograničeno na:

   a.  pripremu, potpisivanje i podnošenje poreskih prijava u vezi sa prihodima i po drugim osnovama, državnim organima, kao i primanje bilo kojih povraćaja sredstava; i

   b.  pribavljanje informacija ili dokumentacije od bilo kog državnog tela ili njegove agencije i zastupanje Davaoca punomoćja po svim poreskim pitanjima, uključujući

ovlašćenje za pregovaranje, postizanje kompromisa ili rešavanje bilo kog pitanja pred državnim organom ili agencijom.

da postupa u ime Davaoca punomoćja u vezi sa svim pitanjima koja utiču na pravo Davaoca punomoćja na olakšice, kompenzacije i naknade, koje su uredno plative Davaocu punomoćja od strane bilo kog državnog tela, agencije ili ministarstva, uključujući, ali ne i ograničeno na, ovlašćenje za pripremu, podnošenje, zahtevanje, odbranu ili razrešenje bilo kog spora/tužbe/potraživanja u ime Davaoca punomoćja 'i za primanje i upravljanje, kako to Punomoćnik smatra odgovarajućim, svih sredstava koja proisteknu iz tih sporova/tužbi/potraživanja.

12. da postupa u ime Davaoca punomoćja i zastupa interese Davaoca punomoćja u svim pitanjima koja utiču na bilo koje potencijalne štedne ili penzijske planove Davaoca punomoćja, uključujući, ali ne i ograničeno na, ovlašćenje za dalju uplatu doprinosa, promenu iznosa doprinosa, promenu strategija i opcija investiranja, prenos sredstava u druge planove/fondove, primanje i upravljanje isplatama i dodavanje ili izmenu postojećih korisnika planova/fondova;

13. da obavlja sva plaćanja koja su potrebna za održavanje, edukaciju, beneficije, medicinsku negu i opšti napredak Davaoca punomoćja, supruge Davaoca punomoćja i dece Davaoca punomoćja, i drugih lica koje odredi Davalac punomoćja ili koja je Davalac punomoćja zakonski dužan da podržava, a koja mogu biti i Punomoćnik;

14. da obavlja sve radnje koje Davalac punomoćja može izvršavati preko Punomoćnika u vezi sa svim pitanjima koja mogu uticati na bilo koje povereništvo/trast, ostavinsku imovinu, konzervatorstvo ili drugi fond iz kog Davalac punomoćja može primati isplate kao korisnik, uključujući, ali ne i ograničeno na, ovlašćenje za odricanje od bilo koje kamate koja se može na drugi način prenositi ili dodeljivati Davaocu punomoćja od strane bilo kog drugog lica, organizacije, povereništva/trusta ili drugog pravnog lica, u zavisnosti od slučaja;

15. da obavlja prenos bilo koje imovine Davaoca punomoćja, uključujući, ali ne i ograničeno na, nekretnine, akcije, obveznice, račune, polise osiguranja ili digitalnu imovinu, na poverenika bilo kog opozivog poverеništva koje je oformio Davalac punomoćja, ukoliko to povereništvo postoji u trenutku tog prenosa;

16. da šalje poklone supruzi, deci, unucima, praunucima i drugim članovima porodice Davaoca punomoćja, od kojih bilo ko može biti Punomoćnik, u posebnim prilikama, uključujući rođendane i praznike, uključujući novčane poklone, kao i drugim licima sa kojima Davalac punomoćja ima uspostavljen obrazac davanja poklona (ili ukoliko je podesno slati takve poklone u svrhe planiranja imovine i/ili poreske svrhe), u vrednosti koju Punomoćnik odredi prema apsolutnom sopstvenom nahođenju;

17. da nastavi da šalje poklone dobrotvornim organizacijama sa kojima Davalac punomoćja ima uspostavljen obrazac davanja poklona (ili ukoliko je podesno slati takve poklone u svrhe planiranja imovine i/ili poreske svrhe), u vrednosti koju Punomoćnik odredi prema apsolutnom sopstvenom nahođenju;

18. uopšteno da obavlja sve one radnje i stvari koje mogu biti neophodne ili svrsishodne u vezi sa navedenim stavkama;

19. uopšteno da u ime Davaoca punomoćja obavlja sve što Punomoćnik zakonski može raditi u vezi sa navedenim stavkama;

20. da ovaj ili bilo koji drugi pravni instrument evidentira na način koji Punomoćnik smatra odgovarajućim i da obaveže Davaoca punomoćja bilo kojom obavezom ili izjavom koja može biti neophodna za izvršenje svrhe Punomoćja; i

21.    uopšteno da obavlja sve one radnje i stvari i da potpisuje, overava i zaključuje svu drugu dokumentaciju, vlasničku dokumentaciju, garancije i sporazume koje Punomoćnik može smatrati neophodnim ili svrsishodnim u vezi sa bilo kojom navedenom stavkom i stvarima u obimu i pravnom dejstvu u kojima bi ih Davalac punomoćja obavio.

DAVALAC PUNOMOĆJA OVIM PUTEM RATIFIKUJE I POTVRĐUJE i saglasan je da u svakom trenutku ratifikuje i potvrđuje sve i bilo koje stavke koje Punomoćnik zakonski obavlja ili naloži njihovo obavljanje na osnovu ovog punomoćja.

Ovo Punomoćje će stupiti na snagu na dan njegovog potpisivanja i overe od strane Davaoca punomoćja i ostaće na snazi sve dok ne bude ukinuto od strane Davaoca punomoćja pismenim putem.

Ovo Punomoćje će biti uređeno i tumačeno u skladu sa zakonodavstvom Republike Singapur.

**POTVRĐUJUĆI   GORENAVEDENO** Davalac punomoćja je potpisao ovo Punomoćje kao ispravu/dokument na dan koji je naveden na početku dokumenta

POTPISANO, OVERENO I ZAKLJUČENO              )
od strane **[UNETI IME]**                              )
u prisustvu:                                       )

_____

Ime svedoka:

Dana        2022. godine, se preda mnom,

Javnim beležnikom koji svoju delatnost obavlja u **[ZEMLJA]**, lično pojavio **[UNETI IME]** za koga potvrđujem da je ista osoba čije je ime „_____" navedeno na pisanom instrumentu i potvrđujem da je on/ona svojevoljno potpisao/potpisala ovaj instrument u **[ZEMLJA]**.

        Overeno potpisom

............................................ kraj prevoda ......................................................
Da je prevod u potpunosti veran originalu na engleskom jeziku, svojim potpisom i pečatom potvrđuje sudski prevodilac za slovenački, engleski i švedski jezik na osnovu rešenja Ministarstva pravde Republike Srbije br. 760-06-197/2002-04 od 02.10.2002. god.

                                        Kovačević Milena
                                        U Beogradu,  14.12.2022.



## POWER OF ATTORNEY

A **POWER OF ATTORNEY** ("**POA**") granted on **14ᵗʰ December, 2022** by **Kwon Do Hyeong** (Passport No. M86114634) of 8 Ardmore Park #19-01 Singapore 259963 (the "**Principal**") to **Lee Daeun** (Passport No. M71255303), an individual having his/her residential address at 8 Ardmore Park #19-01 Singapore 259963 (the "**Attorney**").

Now, the Principal **HEREBY IRREVOCABLY APPOINTS** the Attorney to be the true and lawful attorney of the Principal with full power to substitute, appoint and discharge from time to time one or more attorneys in the name of the Principal and on the Principal's behalf to execute or do all or any of the following acts, deeds and things:-

1.  to take any action the Attorney deems necessary with any businesses that the Principal may own or have an interest in as at the date of this POA, including, but not limited to execute, seal and deliver any instrument; participate in any legal business of any kind, to execute any agreements and amendments thereto, to incorporate, reorganise, consolidate, merge, sell, or dissolve any business, to elect or employ officers, directors and agents, and to exercise voting rights with respect to any shares the Principal may own, either in person or by proxy and to do everything incidental thereto and generally in every way to transact the affairs of the said businesses;

2.  to deal with any interest the Principal may have in any immovable property and sign all documents on the Principal's behalf concerning the Principal's interest in such immovable property the Principal may subsequently acquire or receive, including, but not limited to:

    a.  purchasing, selling, exchanging, accepting as gifts, placing as security on loans, conveying with or without covenants, renting, collecting rent, suing for and receiving rents, ejecting and removing tenants or other persons, to pay or contest taxes or assessments, controlling any legal claim in favour of or against the Principal, partitioning or consenting to partitioning, mortgaging, charging, leasing, surrendering, managing or otherwise dealing with any immovable property and any interest therein; and

    b.  executing and delivering deeds, transfers, mortgages, charges, leases, assignments, surrenders, releases and other instruments required for any such purpose;

3.  to acquire, dispose of, hire, lend, charter, give on charter, manage, mortgage, charge, pledge, grant liens and rights over and exercise all and every right that the Principal may now or hereafter have in connection with any movable properties (including moneys, choses in action, securities, digital assets and investments) in which the Principal may at any time be interested and to enter into agreements to carry out any such transactions;

4.  to retain any assets owned by the Principal at the date of this POA, and to reinvest those assets in investments that the Attorney may decide in his or her absolute discretion;

5.  to do any act that the Principal can perform or transact with any banking or financial institution including, but not limited to:

    a.  opening, maintaining or closing bank accounts (including, but not limited to, current accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with any banking or financial institutions;

    b.  conducting any business with any banking or financial institution with respect to any of the Principal's accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any cheques or other instruments with respect

to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to the Principal by any person, firm, company, or political entity;

c. borrowing money from any banking or financial institution if deemed necessary by the Attorney, and to manage all aspects of the loan process, including the placement of security and the negotiation of terms;

d. performing any act necessary to deposit, negotiate, sell or transfer any note, security, or draft;

e. having access to any safe deposit box that the Principal might own, including its contents; and

f. creating and delivering any financial statements necessary to or from any banking or financial institution;

6. to do any act that the Principal can do through the Attorney with any insurance policy including, but not limited to, the power to pay premiums, start, modify or terminate policies, manage all cash pay-outs, borrow from insurers and third parties using insurance policies as collateral, and to change the beneficiaries on any insurance policies on the Principal's life;

7. to institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against the Principal including, but not limited to, the power to appear on the Principal's behalf, and to settle any claim against the Principal in whichever forum or manner the Attorney deems prudent, and to receive or pay any resulting settlement;

8. to engage, remunerate and dispense with the services of every manner of person, professional or otherwise, in any way in connection with any of the Principal's affairs in such manner and on such terms as the Attorney shall think fit;

9. to make every kind of arrangement and agreement with and to make and give every kind of application, undertaking and return to every manner of financial, permit issuing, fiscal, foreign exchange, revenue and preventive authority and official;

10. to act for the Principal in all matters that affect the Principal's taxes and to prepare, sign, and file documents with any governmental body or agency, including, but not limited to:

a. prepare, sign and file income and other tax returns with governmental bodies, and to receive any refund payments; and

b. obtain information or documents from any government or its agencies, and represent the Principal in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

11. to act on the Principal's behalf in all matters that affect the Principal's right to allowances, compensation and reimbursements properly payable to the Principal by any governmental body, agency or department thereof including, but not limited to, the power to prepare, file, claim, defend or settle any claim on the Principal's behalf and to receive and manage, as the Attorney sees fit, any proceeds of any claim.

12. to act for the Principal and represent the Principal's interests in all matters affecting any retirement savings or pension plans the Principal may have including, but not limited to, the power to continue contributions, change contribution amounts, change investment strategies and options, move assets to other plans, receive and manage pay-outs, and add or change existing beneficiaries;



13.  to make whatever expenditures are required for the maintenance, education, benefit, medical care and general advancement of the Principal, the Principal's spouse and dependent children, and other persons who the Principal has chosen or whom the Principal is legally required to support, any of whom may include the Attorney;

14.  to do any act that the Principal can do through the Attorney with regard to all matters that affect any trust, probate estate, conservatorship, or other fund from which the Principal may receive payment as a beneficiary, including, but not limited to, the power to disclaim any interest which might otherwise be transferred or distributed to the Principal from any other person, estate, trust, or other entity, as may be appropriate;

15.  to transfer any of the Principal's assets including, but not limited to real property, shares, bonds, accounts, insurance policies or digital assets to the trustee of any revocable trust created by the Principal, if such trust is in existence at the time of such transfer;

16.  to make gifts to the Principal's spouse, children, grandchildren, great grandchildren, and other family members, any of whom may include the Attorney on special occasions, including birthdays and seasonal holidays, including cash gifts, and to such other persons with whom the Principal has an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), in such amounts as the Attorney may decide in his or her absolute discretion;

17.  to continue to make gifts to charitable organisations with which the Principal has established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), in such amounts as the Attorney may decide in his or her absolute discretion;

18.  generally to do all such acts and things as may be necessary or expedient in connection with the aforesaid matters;

19.  to generally do on the Principal's behalf anything which can lawfully be done by an attorney in connection with the aforesaid matters;

20.  to register this or any other instrument in such manner as the Attorney may think fit and to bind the Principal by any covenant or declaration which may be necessary in order to carry out the purpose of this Power of Attorney; and

21.  generally to do all such other acts and things and sign, seal and deliver or execute all other documents, deeds, assurances and agreements as the Attorney may consider necessary or expedient in connection with any of the matters and things aforesaid as fully and effectually as the Principal would do them.

AND THE PRINCIPAL HEREBY RATIFIES AND CONFIRMS and agrees at all times to ratify and confirm all and whatsoever the Attorney shall lawfully do or cause to be done or purport to do by virtue of this power of attorney.

This POA shall be effective as of the date of its execution and sealing by the Principal and shall remain valid unless otherwise terminated by the Principal in writing.

This POA shall be governed by, and construed in accordance with, the laws of the Republic of Singapore.

**IN WITNESS WHEREOF** the Principal has executed this Power of Attorney as a deed on the day and year first above written

SIGNED SEALED AND DELIVERED )
by **[INSERT NAME]** )
in the presence of: )

_____

Name of Witness:

On this            day of              2022 before me,
a Notary Public practicing in **[COUNTRY]** personally appeared **[INSERT NAME]** who of my own personal knowledge I know to be the identical person whose name "_____" is subscribed to the within written instrument and acknowledged that he/she had voluntarily executed this instrument in **[COUNTRY]**.

Witness My Hand







ЈАВНИ БЕЛЕЖНИК
Катарина Зрилић
Београд, Стари град
Ђуре Даничића 5/1

УОП-III:2385-2022
Страна 1 (један)



----------------------------------------------------------------
------------------------КЛАУЗУЛА О ОВЕРИ ПОТПИСА НА ИСПРАВИ --------------------
----------------------------------------------------------------
Потврђује се да је дана 15.12.2022. (петнаестог децембра двехиљададвадесетдруге
године) године у 10:28 (десет и двадесетосам) часова:----------------------------------
----------------------------------------------------------------
DO    HYEONG    KWON,    рођен    дана    06.09.1991.    (шестог    септембра
хиљадудеветстодеведесетпрве године), са пребивалиштем у месту, својеручно потписао
ову исправу. ----------------------------------------------------------
Идентитет подносиоца исправе утврђен је увидом у пасош бр. M86114634 издат од
стране Republik of Korea дана 11.07.2014. (једанаестог јула двехиљадечетрнаесте
године).-------------------------------------------------------------
која је сачињена двојезично на српском и енглеском језику, пошто је јавнобележнички
приправник упознат са садржином исправе увидом у превод исправе сачињен од стране
овлашћеног судског преводиоца за енглески језик Милене Ковачевић по основу
решења Министарства правде Републике Србије бр.760-06-197/2002-04 од 02.10.2012.
године, која је потврдила да је превод у потпуности веран оргиналу на енглеском језику
----------------------------------------------------------------
Исправа странке/странака, написана је компјутерским штампачом, латиничним писмом
и састоји се од 10 (десет) стране/страна, оверена је у 1 (један) примерку за потребе
странке/странака, а 1 (један) оверен примерак, остаје код поступајућег јавног
бележника.---------------------------------------------------------
Јавни бележник овером ове исправе потврђује потпис странака, и не одговара за
садржину исправе сходно члану 11 став 2 Закона о оверавању потписа, рукописа и
преписа. ----------------------------------------------------------
Накнада за оверу 1 (један) примерку наплаћена је у укупном износу од 360,00
(тристашездесет динара) са урачунатим ПДВ-ом на основу члана 21 тарифног броја 8
Јавнобележничке тарифе. -------------------------------------------------
У Београду, дана 15.12.2022. (петнаестог децембра двехиљададвадесетдруге године)
године, у 10:28 часова.-----------------------------------------------------
**УОП-III:2385-2022**----------------------------------------------------
----------------------------------------------------------------

Јавни бележник
Катарина Зрилић
Београд, Стари град
Ђуре Даничића 5/1

За јавног бележника
јавнобележнички
приправник
Александра Марјановић
по решењу број
3123-3-IV-6/2021
од 20.09.2021.године

(потпис)        (печат)

**ЈАВНИ БЕЛЕЖНИК**
**Катарина Зрилић**
**Београд, Стари град**
**Ђуре Даничића 5/1**

**УОП-III:2396-2022**
Страна 1 (један)

----------------------------------------------------------------------------
---------------------------------------КЛАУЗУЛА О ОВЕРИ КОПИЈЕ-------------------------
----------------------------------------------------------------------------

Потврђује се да је ова копија истоветна са копираном исправом која је написана компјутерским штампачом, латиничним писмом, и која се састоји од 11 (једанаест) стране/страна.------------------------------------------------------------------

----------------------------------------------------------------------------

Накнада за оверу копије 4 (четири) примерка наплаћена је у укупном износу од 15.840,00 (петнаестхиљадеосамсточетрдесет динара) са урачунатим ПДВ-ом на основу члана 21 тарифног броја 10 Јавнобележничке тарифе. ----------------------------------

----------------------------------------------------------------------------

У Београду, дана 16.12.2022. (шеснаестог децембра двехиљадедвадесетдруге године) године, у 10:32 часова.----------------------------------------------------------

----------------------------------------------------------------------------
**УОП-III:2396-2022**-------------------------------------------------------------
----------------------------------------------------------------------------

**Јавни бележник**
**Катарина Зрилић**
**Београд, Стари град**
**Ђуре Даничића 5/1**

**За јавног бележника**
**јавнобележнички**
**приправник**
**Александра Марјановић**
**по решењу број**
**3123-3-IV-6/2021**
**од 20.09.2021.године**
**(потпис)      (печат)**

**A P O S T I L L E**
(Convention de La Haye du 5 octobre 1961)

1. Земља: РЕПУБЛИКА СРБИЈА

Да је ова јавна исправа

2. потписана од стране

3. у својству

4. снабдевена печатом жигом

5. у Београду

6. на дан                    26.12.2022.ГОДИНЕ

7. (назив органа власти)
   ПРВИ ОСНОВНИ СУД У БЕОГРАДУ

8. под. бр.    Ов-X.19284/2022

9. Печат(жиг)                    10. Потпис

ОВЕРА ПРЕПИСА
АЛЕКСАНДРЕ МАРЈАНОВИЋ
ЈАВНОБЕЛЕЖНИЧКОГ ПРИПРАВНИКА

РЕПУБЛИКА СРБИЈА БЕОГРАД–ГРАДСКА ОПШТИНА СТАРИ ГРАД
КАТАРИНА ЗРИЛИЋ ЈАВНИ БЕЛЕЖНИК

тврди

20



# EXHIBIT H

**From:** Jetton, Allison <allison.jetton@dentons.com>
**Sent:** Tuesday, November 28, 2023 5:21 PM
**To:** synaps
**Cc:** support@synaps.io
**Subject:**                                    RE: FW: Important - Claim process for Replacement
                                         PYTH Tokens

Thank you. Daeun Lee is acting pursuant to a power of attorney on behalf of her husband, Do Hyeong Kwon, who is in jail. His face is not available. He has no access to a smart phone in jail.  Still, Daeun is going to be the second person in the transaction because the transfer is to her. If you have to have two distinct people/faces, I'm happy to provide my passport information and face for a liveness check for Do as his attorney. Obviously, I'm not Do Kwon and my passport will not say Do Kwon. Still, would that work for your system to have two people for the transaction? Thanks again!


Allison


Allison Jetton
Partner

My pronouns are: She/Her/Hers
⊙ +1 202 496 7362   |   ⊕ +1 703 853 7999
Washington, DC


**From:** synaps <support@synaps-support.freshdesk.com>
**Sent:** Wednesday, November 22, 2023 10:46 AM
**To:** Jetton, Allison <allison.jetton@dentons.com>
**Cc:** support@synaps.io
**Subject:** Re: FW: Important - Claim process for Replacement PYTH Tokens

**[WARNING: EXTERNAL SENDER]**

Hi Allison,

Thank you for reaching out to us.

I can see that 2 KYC sessions have been opened for Daeun Lee for Pyth.
- a first one with the email address terramommy703@naver.com which has been validated with her face and passport.
- a second one with the email giselle703@gmail.com which has been rejected has the person who passed the Liveness was not Daeun Lee but also because only one session can be done by the same person. The second session created will automatically be rejected.

I hope it answers to your question. We remain available if needed.

Best regards,

Synaps Support

On Tue, 21 Nov at 9:19 PM , Jetton, Allison <allison.jetton@dentons.com> wrote:

Hi,

I am a partner at Dentons. Our law firm represents both Do Hyeong Kwon and his wife Daeun Lee, who has a fully executed power of attorney to act on her husband's behalf. As you may have read in the news, Mr. Kwon has been detained by Montenegrin authorities and is in jail. It is not possible for him to access a smart phone to go through the Synaps process (or indeed handle many of his personal affairs, which is a key reason why his wife has the power of attorney to act on his behalf). Even though Ms. Lee has a power of attorney to act on her husband's behalf, it is not possible for Ms. Lee to pass the liveness check for Do Kwon because her face is not the same as her husband's. We asked the PYTH Foundation if there was another way aside from the Synaps process, but we were told that was the only way. So, I am reaching out for your assistance to see if there is a way that we can submit the necessary documents for Mr. Kwon, including the power of attorney he granted to Ms. Lee, and then have Ms. Lee complete the Synaps process for herself. Thank you in advance for your help in troubleshooting for this unique application of the Synaps process.

Best,

Allison

Allison Jetton
Partner

My pronouns are: She/Her/Hers
⊕ +1 202 496 7362  |  ⊘ +1 703 853 7999

Washington, DC

From: PYT Foundation <management@pyt.foundation>
Sent: Friday, October 06, 2023 4:45 PM

**To:** Jetton, Allison <allison.jetton@dentons.com>
**Subject:** Re: Important - Claim process for Replacement PYTH Tokens

**[WARNING: EXTERNAL SENDER]**

Dear Allison,

Please be advised that Kwon Do Hyeong must also submit to Synaps verification process in addition to Lee Daeun which has already been submitted appropriately/

Thank you for your understanding.


On Wed, Sep 13, 2023 at 9:28 PM Jetton, Allison <allison.jetton@dentons.com> wrote:

> Hello,
>
> For the Token Delivery Agreement:
>
> - Name: Lee Daeun for Kwon Do Hyeong
> - Title: Attorney for Principal
> - Physical address: 8 Ardmore Park #19-01 Singapore 25963
> - Email address of the signatory: giselle703@gmail.com
>
> Please see the power of attorney attached for Do's wife to act on his behalf, such as being the signatory for this Token Delivery Agreement.
>
> We note the Synaps step outlined below.
>
> Thank you,
>
> Allison
>
>
> Allison Jetton
>
>
> My pronouns are: She/Her/Hers
>
> +1 202 496 7362   |   +1 703 853 7999

Assistant: Brenda Harold

Washington, DC

---

**From:** PYT Foundation <management@pyt.foundation>
**Sent:** Thursday, September 07, 2023 10:39 AM
**Cc:** ciaran@pyth.network; steve@pyth.network; abhimanyu@pyth.network
**Subject:** Important - Claim process for Replacement PYTH Tokens

**[WARNING: EXTERNAL SENDER]**

Hello - hope this email finds you well.

We are emailing you with important information pertaining to the tokens adopted as the native token for the Pyth Network (the "**Replacement PYTH Tokens**").

Holders of the original PYTH Tokens ("**Existing Token Holders**") will receive an equivalent entitlement to Replacement PYTH Tokens ("**Token Entitlement**"). The original PYTH Tokens have become unavailable due to unforeseen circumstances.  The Replacement PYTH Tokens are not materially different from the original PYTH Tokens.

Existing Token Holders have until 11:59 PM Eastern Standard (UTC -5) time on Thursday, December 7th, 2023 (the "**Deadline**") to exercise their Token Entitlement and claim the Replacement PYTH Tokens.

There are two steps Existing Token Holders must take to receive their Token Entitlements:

1. **Synaps Process for KYC/KYB and Wallet Set up**

   1. Complete the Synaps identification and authentication process here: *https://pyth.synaps.me/signup*. To avoid delays or issues, be sure to use the exact legal entity/person that is the Existing Token Holder.
   2. Provide a Solana wallet address which will receive the Replacement PYTH Tokens. To facilitate future governance, this wallet should allow

for Web3 interaction via Wallet Connect. Note this wallet address will be collected by Synaps as part of the application form.

3. Please reach out if you want more information on how to take delivery of the Replacement Pyth Tokens, including introductions to wallet service providers.  Existing Token Holders acknowledge and agree that PYT Foundation, its affiliates and service providers and the Pyth Data Association, its affiliates and services providers make no representations or warranties, express or implied, with respect to any providers of custody solutions ("**Custody Providers**") or their compatibility with Wallet Connect and disclaim any and all liability with respect to Custody Providers and Wallet Connect.

2. **Token Delivery Agreement (TDA)**

1. Please see the attached TDA for your review and let us know if you have any questions. Please reply back to this email with the name, title, physical address, and email address of the signatory so that a TDA DocuSign (along with additional details) can be sent to such signatory for execution.

Note that any Existing Token Holder who fails to complete the two steps above to claim their Token Entitlement by the Deadline will forfeit their Token Entitlement and the Replacement PYTH Tokens will be reallocated and delivered to the Pyth Data Association.

There are 10,000,000,000 Replacement PYTH Tokens and this total supply will not increase. 85% of the Replacement PYTH Tokens will initially be contractually locked. The locked Replacement PYTH Tokens will gradually unlock 6, 18, 30, and 42 months after the Replacement Pyth Token launch. The remaining 15% of Replacement PYTH Tokens will initially be unlocked.

Thank you,

--

**PYT Foundation**

This email is for the confidential use of the named addressee(s) only and may contain proprietary, confidential, or privileged information and/or personal data. If you are not the intended recipient, you are hereby notified that any review, dissemination, or copying of this email is strictly prohibited, and requested to notify the sender immediately and destroy this email and any attachments. Email transmission cannot be guaranteed to be secure or error-free. The Foundation, therefore, does not make any guarantees as to the completeness or accuracy of this email or any attachments. This email is for informational purposes only and does not constitute a recommendation, offer, request, or solicitation of any kind to buy, sell, subscribe, redeem, or perform any type of transaction of a financial product. Personal data, as

defined by applicable data protection and privacy laws, contained in this email may be processed by the Foundation, and any of its affiliated or related companies, for legal, compliance, and/or business-related purposes. You may have rights regarding your personal data; for information on exercising these rights or the Foundation's treatment of personal data, please email [management@pyt.foundation](mailto:management@pyt.foundation).

--

**PYT Foundation**

This email is for the confidential use of the named addressee(s) only and may contain proprietary, confidential, or privileged information and/or personal data. If you are not the intended recipient, you are hereby notified that any review, dissemination, or copying of this email is strictly prohibited, and requested to notify the sender immediately and destroy this email and any attachments. Email transmission cannot be guaranteed to be secure or error-free. The Foundation, therefore, does not make any guarantees as to the completeness or accuracy of this email or any attachments. This email is for informational purposes only and does not constitute a recommendation, offer, request, or solicitation of any kind to buy, sell, subscribe, redeem, or perform any type of transaction of a financial product. Personal data, as defined by applicable data protection and privacy laws, contained in this email may be processed by the Foundation, and any of its affiliated or related companies, for legal, compliance, and/or business-related purposes. You may have rights regarding your personal data; for information on exercising these rights or the Foundation's treatment of personal data, please email [management@pyt.foundation](mailto:management@pyt.foundation).

# EXHIBIT I

**From:** Jetton, Allison <allison.jetton@dentons.com>
**Sent:** Thursday, November 30, 2023 4:49 PM
**To:**                                          PYT Foundation; abhimanyu@pyth.network;
                                                  ciaran@pyth.network; steve@pyth.network
**Cc:**                                          De Roux, Maria del Rosario; Henkin, Douglas W.;
                                                  giselle703@gmail.com
**Subject:**                                    RE: FINAL NOTICE: Replacement PYTH Token Claims
                                                  Process - Mandatory KYC Deadline

As counsel for Do Kwon, we dispute this request and hereby reserve all rights under the Restricted
Token Grant Agreement, as amended.

We have repeatedly contacted the Pyth Foundation for information to assist in voluntarily responding
to the token claims process described below.

We dispute the unilateral assertion by the Pyth Foundation that a second KYC/KYB check is required
for token delivery, and, even if such a check is necessary or prudential, we dispute that the Synaps
process is the only way to accomplish a reasonable KYC/KYB check.  Do Kwon previously completed a
KYC/KYB process with respect to the tokens. In response to your recent request related to token claim
delivery, we advised you of the impossibility of Do Kwon utilizing Synaps before December 7.
Specifically, there is no reasonable way that Do Kwon can complete a "liveness check" as part of the
Synaps process, because he does not have liberty to access a smart phone or laptop with a connection
to the Internet at this time or for the foreseeable future.

Do's wife, Daeun Lee, acting under a full power of attorney on her husband's behalf, voluntarily
submitted to a KYC/KYB process through Synaps, as requested. To that end, we provided copies of
both Daeun Lee's passport and the power of attorney. Daeun Lee passed Synaps' KYC/KYB check, but
the Synaps process does not allow her to stand in as herself and as Do Kwon, even though she is
acting on his behalf. We have contacted Synaps to seek alternate means of completing this Pyth-
imposed third-party process, but do not currently have a technical path forward from Synaps, and no
alternate path offered by Pyth.

We further dispute Pyth's claim to be able to cause forfeiture of the tokens (or equivalent
Replacement Tokens) owed to Mr. Kwon, and we do not agree that the tokens (or equivalent
Replacement Tokens) may be reallocated and delivered to the Pyth Data Association. We would
appreciate your assistance in swiftly facilitating completion of the token claim through reasonable
means in the current circumstances for all tokens due to Do Kwon. However, I reiterate again that, on
behalf of Do Kwon, we reserve all rights. All necessary measures will be taken to preserve his rights.

We look forward to your prompt reply. Thank you.


Best,


Allison

Allison Jetton
Partner

My pronouns are: She/Her/Hers
⊙ +1 202 496 7362  |  ⊙ +1 703 853 7999
Washington, DC

---

**From:** PYT Foundation <management@pyt.foundation>
**Sent:** Thursday, November 30, 2023 2:29 PM
**Subject:** FINAL NOTICE: Replacement PYTH Token Claims Process - Mandatory KYC Deadline

**[WARNING: EXTERNAL SENDER]**

---

Dear All,

This correspondence serves as the final notice to complete the Synaps KYC/KYB verification process as soon as possible.

There is **only 1 week left** to complete the claims process and receive your Token Entitlement.

Remember that Existing Token Holders have until 11:59 PM Eastern Standard (UTC -5) time on **Thursday, December 7th,** 2023 (the "**Deadline**") to exercise their Token Entitlement and claim the Replacement PYTH Tokens.

Any Existing Token Holder who fails to complete the process to claim their Token Entitlement by the Deadline will forfeit their Token Entitlement and the Replacement PYTH Tokens will be reallocated and delivered to the Pyth Data Association.

Reminder of instructions:

**Synaps Process for KYC/KYB and Wallet Set up**

1. Complete the Synaps identification and authentication process here: *https://pyth.synaps.me/signup*. To avoid delays or issues, be sure to use the exact legal entity/person that is the Existing Token Holder.
2. Provide a Solana wallet address which will receive the Replacement PYTH Tokens. To facilitate future governance, this wallet should allow for Web3 interaction via Wallet Connect. Note this wallet address will be collected by Synaps as part of the application form.

Thank you,
--
**PYT Foundation**

This email is for the confidential use of the named addressee(s) only and may contain proprietary, confidential, or privileged information and/or personal data. If you are not the intended recipient, you are hereby notified that any review, dissemination, or copying of this email is strictly prohibited, and requested to notify the sender immediately and destroy this email and any attachments. Email transmission cannot be guaranteed to be secure or error-free. The Foundation, therefore, does not make any guarantees as to the completeness or accuracy of this email or any attachments. This email is for informational purposes only and does not constitute a recommendation, offer, request, or solicitation of any kind to buy, sell, subscribe, redeem, or perform any type of transaction of a financial product. Personal data, as defined by applicable data protection and privacy laws, contained in this email may be processed by the Foundation, and any of its affiliated or related companies, for legal, compliance, and/or business-related purposes. You may have rights regarding your personal data; for information on exercising these rights or the Foundation's treatment of personal data, please email management@pyt.foundation.