**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD, *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
|  | Related to Docket Nos. 1632, 1683, 1693, and 2235 |
|  | **Hearing Date: March 13, 2025** |

**TERRAFORM PLAN ADMINISTRATOR'S JOINDER TO DO HYEONG KWON'S MOTION TO ENFORCE ORDER GRANTING MOTION OF PYTH DATA ASSOCIATION FOR RELIEF FROM THE AUTOMATIC STAY**

Todd R. Snyder, as the plan administrator (the "Terraform Plan Administrator") of the jointly-administered estates of Terraform Labs Pte. Ltd. ("Terraform"),[2] *et al.* (Bankr. D. Del., Case No. 24-10070), hereby files this joinder (this "Joinder") to the *Motion to Enforce Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay* [Docket No. 29773] (the "Motion") filed by Do Hyeong Kwon (the "Movant").[3]  The Terraform Plan Administrator joins in, adopts as its own, and hereby incorporates by reference the arguments made in the Motion. In further support of the Motion, the Terraform Plan Administrator states as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Terraform and Terraform Labs Limited are referred to as the "Terraform Debtors," and the chapter 11 cases for the Terraform Debtors are referred to as the "Terraform Chapter 11 Cases."

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or later in this Joinder.

**JOINDER**

1. The Motion and its accompanying exhibits detail why the relief sought in the Motion should be granted. The Terraform Plan Administrator joins the Motion and submits this Joinder to explain the Motion's importance to the Terraform Chapter 11 Cases pending before Judge Shannon in this District.

2. This Court's Lift Stay Order requires that the customer identification process (the "Customer Identification Process") for the reminting process of the PYTH tokens be "reasonable and customary." It was not, at least with respect to the Movant (and perhaps others as well). Instead, Pyth Data Association ("PDA") employed an unreasonable, non-customary, and arbitrary process that required live face verification as part of the customer identification procedures (the "Customer Identification Procedures"). Although the Movant tried to complete the Customer Identification Process, he was unable to do so because he was detained at the time. In addition to being one of the largest holders of the PYTH tokens, the Movant was undeniably known to PDA as he is also a former director and president of the PDA, and although the Movant's representatives repeatedly attempted over a period of almost *three months* to engage with PDA on the Customer Identification Process (including by proposing multiple ways to confirm his identity either individually or through his authorized representatives), these requests were simply ignored, as detailed in the exhibits to the Motion. PDA ultimately—and wrongfully—denied the reminting and delivery of any tokens to the Movant. This is a violation of the Lift Stay Order. The TFL Plan Administrator respectfully submits that the Court should enforce its own order and direct that an appropriate Customer Identification Process be run for the Movant to allow for the identity verification and subsequent delivery of the 500 million PYTH tokens.

3. PDA's motivation for denying the delivery of these tokens to the Movant is now

clear—though it was not disclosed to this Court in PDA's Lift Stay Motion. Specifically, PDA unilaterally (and belatedly) decided that any FTX creditor who failed to complete the Customer Identification Process would have its reminted tokens delivered to PDA. In doing so, PDA unjustly enriched itself at the Movant's expense—and likely at the expense of others who likewise could not comply with PDA's unreasonable Customer Identification Process.

4. If PDA had disclosed in the Lift Stay Motion its self-interest in denying customer identification for holders—that PDA would take for itself any tokens belonging to FTX creditors who failed the Customer Identification Process—parties may well have objected to the motion on the basis that the Customer Identification Process should have more guardrails other than merely being "reasonable and customary," given PDA's obvious conflict of interest. Instead, PDA kept other parties and the Court in the dark about its true intentions. Ultimately, PDA failed to abide by the requirements of the Lift Stay Order and ran a process that was not reasonable or customary, and PDA did not even engage with the Movant—one of the largest holders of PYTH tokens in the world—despite repeated outreach offering potential solutions to validate the identity of the Movant or his representatives.

5. PDA's failure to remint these tokens for the Movant substantially prejudices the creditors in the Terraform Chapter 11 Cases. Indeed, the Movant's 500 million PYTH tokens are the principal assets in a settlement between the Movant and the Securities and Exchange Commission (the "SEC"). These tokens, worth $215 million when they were taken by PDA, have a present market value of approximately $100 million—a material asset in the Terraform Debtors' estates that should be available for distributions to creditors. The confirmed chapter 11 plan in the Terraform Chapter 11 Cases provides that the Terraform Plan Administrator shall distribute these settlement assets, including the proceeds of these 500 million PYTH tokens, to creditors in the

Terraform Chapter 11 Cases who were the victims of securities fraud. But because PDA did not deliver these reminted PYTH tokens to their rightful owner, the creditors in the Terraform Chapter 11 Cases will receive substantially lower recoveries.

6.     PDA's complete failure to engage with the Movant on how he could validate his identification is deeply troubling, and it raises serious questions about how many others were similarly affected. Just as troubling is PDA's failure to disclose to the Court its intent to seize for itself any PYTH tokens belonging to holders who did not complete the Customer Identification Process. The Terraform Plan Administrator intends to serve discovery in connection with the Motion and this Joinder in order to further develop the record and pursue the relief that is owed to the Movant for PDA's violation of the Lift Stay Order.

**I.     The Terraform Plan Administrator's Role in the Terraform Chapter 11 Cases.**

7.     Before initiating the Terraform Chapter 11 Cases, the Movant, as Terraform's founder, former director, and former Chief Executive Officer,[4] marketed Terra USD ("UST") as an "algorithmic stablecoin," which purportedly would remain "pegged" to the U.S. Dollar by means of an algorithm designed by the Movant and his collaborators. However, in May of 2022, the UST "de-pegged" from the U.S. Dollar, and the UST price quickly collapsed from $1 per token to nearly zero. Once UST failed, the SEC commenced an action[5] against the Terraform Debtors and the Movant for recklessly violating (a) Section 17 of the Securities Act, and (b) Rule 10b-5 of the Exchange Act. Terraform and the Movant both reached settlements with the SEC[6] to compensate harmed investors (the "SEC Settlements"). The terms of the SEC Settlements were

---

[4]   The Movant is also the former president of PDA and a former director of PDA.

[5]   S*EC v. Terraform Labs Pte. Ltd., et al., Case No. 1:23-cv-013460-JSR* (the "SEC Enforcement Action").

[6]   *See Consent of Defendant Terraform Labs Ptd. Ltd.* [Terraform Docket No. 271-1] and *Consent of Defendant Do Kwon* [Terraform Docket No. 271-2] filed in the SEC Enforcement Action.

4

incorporated into the Terraform chapter 11 plan, which created a class of "Crypto Loss Claims" to compensate creditors who were harmed by the actions described in the SEC Enforcement Action (such creditors, the "Crypto Loss Claimants").

8. The Terraform Plan[7] appointed the Terraform Plan Administrator and created a wind down trust (the "Terraform Wind Down Trust") to administer the remaining assets of the Terraform Debtors, monetize assets, pursue litigation, and ultimately make distributions to the creditors of the Terraform Debtors in accordance with the Terraform Plan.  Specifically, pursuant to the Terraform Plan, the Terraform Plan Administrator has the authority to carry out and implement all provisions of the Plan on behalf of the Terraform Debtors, including, among other things:  (a) controlling and effectuating the claims reconciliation process; (b) making distributions in accordance with the Terraform Plan; (c) investigating any assets of the Terraform Wind Down Trust and any other potential causes of action; and (d) reviewing and compelling turnover of the property of the Terraform Debtors or the Terraform Wind Down Trust.  *See* Terraform Plan § 5.4.

## II. The SEC Settlement Fund and the 500 Million PYTH Tokens.

9. The SEC Settlements are a key component of the Terraform Plan and the Terraform Plan Administrator's distributions to the Crypto Loss Claimants.  The SEC Settlements contemplate that the Movant turn over the 500 million PYTH tokens to the Terraform Wind Down Trust—specifically, the SEC Settlements require that the Movant transfer assets totaling no less than $204,320,196, including (a) $7,000,000 in cash; (b) all crypto assets of Luna Foundation

---

[7] On September 18, 2024, the Terraform Debtors filed the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Terraform Docket No. 717] (the "Terraform Plan"), and the Bankruptcy Court for the District of Delaware (the "Court") entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Terraform Docket No. 734] (the "Terraform Confirmation Order") confirming the Plan on September 20, 2024.  The effective date of the Terraform Plan occurred on October 1, 2024 (the "Terraform Effective Date").

5

Guard Ltd.; and (c) *the Movant's ownership interest in all PYTH tokens he obtained pursuant to a May 18, 2021 token grant agreement (the "<u>Token Grant Agreement</u>") between the Movant and Tribal Invest Corp.* ((a) to (c) collectively, the "<u>SEC Settlement Fund</u>").[8] As described in greater detail in the Motion, the Movant is entitled to the 500 million PYTH tokens (with a market value of approximately $215 million when taken by PDA, $100 million as of the date hereof)[9] under the Token Grant Agreement and is thus obliged to transfer the same to the Terraform Wind Down Trust under the SEC Settlements. *See* Motion ¶ 19.

10. Since his appointment in October 2024, the Terraform Plan Administrator has been actively engaged with the SEC and the Movant regarding the transfer of the SEC Settlement Fund, including the 500 million PYTH tokens, which would be ultimately sold, with the proceeds distributed to the Crypto Loss Claimants pursuant to the Terraform Plan. The Terraform Plan Administrator is engaged in various litigations and monetizations of existing assets for the benefit of the Terraform Debtors and their creditors, but the SEC Settlement Fund is presently the principal source of recovery for thousands of potential Crypto Loss Claimants that are victims of securities fraud.[10] Accordingly, not only is the transfer of 500 million PYTH tokens to the Terraform Wind Down Trust mandated by the SEC Settlements, but it is also critical to the recoveries of the Crypto Loss Claimants under the Terraform Plan. Thus, the relief requested in the Motion is of the utmost

---

[8] For a more detailed description of the terms of the SEC Settlements, see the *Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 569] (the "<u>Terraform Disclosure Statement</u>").

[9] These 500 million PYTH tokens are subject to a vesting schedule.

[10] The Crypto Loss Claimants are entitled to receive *pro rata* distribution from the "Crypto Loss Claim Pool," which comprises the SEC Settlement Fund and any remaining fund from the "GUC Pool" after all general unsecured claims are paid in full. *See* Terraform Plan §§ 1.40, 1.70, 4.5.

importance to the Terraform Plan Administrator, the Terraform Wind Down Trust, and the Crypto Loss Claimants.

### III. PDA Violated the Lift Stay Order and Severely Prejudiced Terraform and Its Creditors by Unjustifiably Appropriating the Unclaimed PYTH Tokens.

11. As the Motion describes in greater detail, because the original PYTH tokens were trapped in FTX wallets and unusable, PDA sought relief from the automatic stay to remint replacement PYTH tokens to be distributed to holders of the original tokens, including the Movant. *See generally* Docket No. 1632 (the "Lift Stay Motion," and order granting such relief at Docket No. 1693, the "Lift Stay Order"); *see also* Motion ¶ 8–9.  The Lift Stay Order required that PDA use a "reasonable and customary customer identification procedures".  As detailed in the Motion, PDA declined to transfer any replacement PYTH tokens to the Movant, apparently on the basis that he failed to complete a live face verification as part of the Customer Identification Process required by PDA.  Although the Movant and his representatives repeatedly contacted PDA regarding how he could validate his identity pursuant to the Customer Identification Process while the Movant was detained in Montenegro (because he could not complete a face verification while in prison), and offered alternatives including having his wife (who had a power of attorney) and his outside counsel complete the face verification, the exhibits attached to the Motion illustrate PDA's complete lack of engagement on this matter.

12. Based on the information currently available, the Terraform Plan Administrator agrees with the Movant that PDA's required Customer Identification Process was unreasonable and non-customary (at least with respect to the Movant and perhaps with respect to other parties as well).  Despite its knowledge that the Movant, the former president of PDA, was in detention at the time of the Customer Identification Process and could not have accessed a smart phone and submitted a face verification, PDA simply refused to engage with the Movant's representatives on

7

any alternative solutions. From September 7, 2023 (when PDA first informed holders of the Customer Identification Process) to December 7, 2023 (the deadline to complete the Customer Identification Process), the Movant's representatives reached out to both PDA and Synaps (the platform for the Customer Identification Process) repeatedly, (a) explaining that the Movant was physically detained and could not have completed the face verification process, but was willing to coordinate on alternative means of verification that satisfied the Customer Identification Process; (b) providing the Movant's wife, Lee Daeun, as authorized signatory for the Token Grant Agreement and the holder of a power of attorney for the Movant; (c) offering the representative's own passport information and face to satisfy the face verification process; and (d) following up multiple times on the above. All of the foregoing was met with no constructive engagement from PDA and Synaps.

13.    The reason that PDA insisted on this rigid Customer Identification Process is clear—PDA stood to unjustifiably benefit from the unclaimed new PYTH tokens from holders who failed to complete the Customer Identification Process. In its September 7, 2023 email—disclosed for the first time—PDA announced that any existing token holder who fails to complete the Customer Identification Process by the December 7 deadline will "forfeit their token entitlement and ***the replacement PYTH tokens will be reallocated and delivered to the Pyth Data Association***." Motion Ex. B at 3–4 (emphasis added). Importantly, PDA included *no* reference to the forfeiture of the replacement PYTH tokens and the ultimate enrichment of itself in the Lift Stay Motion. *See generally* Docket No. 1632. Such significant omission is an abuse of the judicial process for purposes of self-enrichment. Had PDA properly disclosed its intention to appropriate all unclaimed replacement PYTH tokens, parties in interest may have objected, and the Lift Stay Motion may not have been granted, or the Customer Identification Process would have been

subject to more definitive restrictions than the "reasonable and customary" restrictions in the Lift Stay Order. *See* Motion ¶¶ 44–46. Contrary to the alleged "reasonable and customary customer identification procedures," the Customer Identification Process was unreasonable, non-customary, and promoted PDA's self-interest at the expenses of other parties in interest, including the Crypto Loss Claimants. It is particularly galling that PDA redirected these tokens for its own benefit (PDA could have burned or abandoned the tokens that were not delivered to holders whose identities were not verified; PDA's seizure of the tokens for itself makes plain the impropriety of its actions). There is absolutely no legitimate justification for PDA failing to now turn over these 500 million PYTH tokens to which Mr. Kwon was entitled—the parties could work out whatever customer identification procedures the Court deems appropriate to ensure identity verification of the Terraform Wind Down Trust and the Terraform Plan Administrator.

14.     The Terraform Plan Administrator expects that PDA will complain that the Movant could have filed the Motion earlier and that this Court should not be adjudicating this dispute regarding the Customer Identification Process. There are reasons explaining the delay—since the appointment of the Terraform Plan Administrator in October 2024, the parties have been discussing this matter with both the SEC and PDA in the hopes of resolving the matter without Court intervention. Failure to reach a resolution necessitated the filing of the Motion and the Joinder.

15.     The Terraform Plan Administrator respectfully submits that this Court should examine the facts underlying the Motion and determine whether its Lift Stay Order was violated and if there should be any consequences for PDA failing to disclose a material fact in its Lift Stay Motion. These actions have led to the unjust enrichment of PDA by taking these PYTH tokens for itself, presently worth approximately $100 million, $215 million at the time they were taken

by PDA, to the detriment of the Crypto Loss Claimants in the Terraform Chapter 11 Cases. Accordingly, the Court should grant the relief requested in the Motion to enforce its own order, uphold the integrity of the judicial process, and protect the interests of the Crypto Loss Claimants, who are themselves victims of securities fraud.

## Conclusion

16.     For the foregoing reasons, the Terraform Plan Administrator hereby joins the Motion and respectfully requests that the Court approve the relief requested therein and enforce its own Lift Stay Order.

Dated: February 28, 2025
Chicago, Illinois

*/s/ Christopher S. Koenig*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher S. Koenig (*pro hac vice* forthcoming)
Casey McGushin (*pro hac vice* forthcoming)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
                      chris.koenig@kirkland.com
                      casey.mcgushin@kirkland.com

-and-

Christopher T. Greco, P.C. (*pro hac vice* forthcoming)
Elizabeth Helen Jones (*pro hac vice* forthcoming)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            christopher.greco@kirkland.com
                      elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (*pro hac vice* forthcoming)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:     (202) 389-5000
Facsimile:      (202) 389-5200
Email            michael.williams@kirkland.com

*Counsel for the Terraform Plan Administrator*