**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JOSEPH J. FARNAN, JR. IN SUPPORT OF
THE MOTION TO AUTHORIZE PAYMENT OF INCENTIVE FEE
AND COMPLETION FEE TO DEBTORS' CHIEF EXECUTIVE OFFICER**

I, Joseph J. Farnan, Jr., declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am currently a partner at Farnan LLP, a law firm focused on complex commercial matters, including chapter 11 proceedings, securities litigation, antitrust litigation and patent litigation. I received my Juris Doctor Degree from the University of Toledo College of Law in 1970 and was admitted to the Delaware and New Jersey bars in 1972 and 1970, respectively. In 1976, after engaging in private practice and serving as an Assistant Public Defender, I was appointed to several positions in local and state government. In 1981, I was appointed as the United States Attorney for the District of Delaware, a position I held until 1985, when I was appointed as a United States District Judge for the District of Delaware. I served as a United States District Judge from 1985 until 2010 and was the Chief Judge from 1997-2001. During my tenure on the bench, I presided over numerous bench and jury trials involving complex commercial disputes. Since my retirement from the bench in 2010 I have had a successful private practice in Delaware. Since my retirement, I have also served as an independent director of many businesses or acted as a trustee of businesses' litigation trusts or

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

wind down trusts. Such roles have included Maxus Energy, Takata, Central European Distribution Corp., and Zohar Funds, all businesses involved in legal proceedings in this Court.

2. In November 2022, I was appointed the Lead director for FTX.com as part of the newly constituted independent board (the "**Independent Board**") and served in that role until January 3, 2025 (the "**Effective Date**"). Since January 2025, I have served as Chairman of the Wind Down Board (as defined in the Plan).

I.    **The Incentive Fee**

3. On November 10, 2022, FTX Trading Ltd. and Owl Hill entered into an engagement letter (the "**Engagement Letter**") in connection with John J. Ray III's work as Chief Executive Officer of FTX.

4. The Engagement Letter, which was designed to engage and instill Mr. Ray with necessary executive powers to stabilize the FTX business as quickly as possible, provided for his compensation on an hourly basis, subject to more comprehensive arrangements being put in place once the chaotic nature of the early days of the Chapter 11 Cases eased. Additionally, at the outset of the Chapter 11 Cases, risks were very high for all of management and Mr. Ray. It was difficult for the company to obtain D&O insurance at the beginning of these Chapter 11 Cases. The Independent Board recognized that Mr. Ray assumed substantial reputational risk and faced the prospect of litigation claims in view of the magnitude and consequences of the decisions he would need to make given the nature of the case.

5. During a Board meeting held on December 20, 2022, the Independent Board determined that, in addition to his hourly compensation, Mr. Ray should be paid an incentive compensation fee (the "**Incentive Fee**") and a completion fee of $3 million (the "**Completion Fee**") as both an important component of any CEO compensation but also to appropriately incentivize Mr. Ray to take calculated risks with the best interests of the Debtors' creditors in mind as he began the task of guiding FTX through the bankruptcy process. The decisions to,

for example, sell the Debtors' assets or enter into settlement agreements in the various proceedings commenced by or against the Debtors, required significant diligence and countless meetings with stakeholders.

6. On December 21, 2022, the Debtors filed the *Motion for an Order Authorizing and Approving (I) The Employment and Retention of Owl Hill Advisory, LLC and (II) The Designation of John J. Ray III as Chief Executive Officer Nunc Pro Tunc to The Petition Date* [Docket No. 269] (the "**Owl Hill Application**"). Prior to approval of the Owl Hill Application, the Debtors, through counsel, engaged in negotiations with the Official Committee[2] and the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") to consider the appropriate metrics for the Incentive Fee. At that time, the potential incentive fee construct discussed by these parties was a multiplier of 30 basis points applied to all distributions to unsecured creditors through a confirmed chapter 11 plan over $1 billion. This construct was supported by a review of incentive fees awarded in similar chapter 11 proceedings conducted by Alvarez & Marsal North America, LLC ("**A&M**"), the Debtors' financial advisors, which they presented to the Independent Board at the time. Ultimately, the Debtors, the Committee, the U.S. Trustee and Mr. Ray all agreed not to lock in the metrics for the Incentive Fee until after the conclusion of the Chapter 11 Cases. The Retention Order approving the Owl Hill Application thus memorialized the Independent Board's authorization to determine an Incentive Fee at the conclusion of the Chapter 11 Cases, subject to Bankruptcy Court oversight and a determination that the fee was "reasonable." The Retention Order specified that "[s]uccess fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order," which captures approval of the Completion Fee as well.

---

[2] Capitalized terms used but not defined in this Declaration shall have the meaning ascribed to them in the *Motion to Authorize Payment of Incentive Fee and Completion Fee to Debtors' Chief Executive Officer*, filed contemporaneously herewith.

7. In my view, and in the view of the Independent Board and the Wind Down Board, Mr. Ray's significant efforts on behalf of FTX creditors and his leadership in shepherding every aspect of the Debtors' businesses was essential to a successful outcome beyond what the Independent Board expected at the outset of these Chapter 11 Cases. Among other things, Mr. Ray presided over the commencement of these Chapter 11 Cases and, in partnership with the Independent Board, established appropriate corporate governance for the first time at the Debtors. Mr. Ray further led the Debtors in the marketing and sale or liquidation of several major FTX businesses, the marketing and sale of billions of dollars of assets, and the estimation and monetization of several billion dollars' worth of digital assets. Mr. Ray also led the Debtors in negotiating the consensual turnover of assets in the possession or control of third parties, recovering assets through adversary proceedings and negotiations with regulatory authorities, and negotiating the FTX DM Global Settlement Agreement, which created a joint distribution process between the Chapter 11 Cases and FTX DM Liquidation. In addition, Mr. Ray guided the Debtors in drafting the Plan and negotiating the Plan's terms with key stakeholders, resulting in the Plan being largely uncontested at confirmation, despite the complexities of these Chapter 11 Cases. Many of these responsibilities are typical responsibilities of a chief restructuring officer.

8. Mr. Ray also carried out responsibilities that the CEO of a multi-billion-dollar enterprise would be expected to carry out in a chapter 11 case, including initiating negotiations and leading related meetings with key creditor constituencies, proposing unique and case-specific relief for Court approval, driving plan negotiations, and being the ultimate decision-maker for the business including whether it would reorganize or liquidate. While ultimately the Debtors did not seek to reopen the business as a going concern, this decision – like all others – was not made lightly and after exhaustive consideration. In summary, Mr. Ray was tasked with creating a process to oversee and overseeing the controlled liquidation of the Debtors

assets through chapter 11. On October 8, 2024, the Court confirmed the Plan. See *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [Docket No. 26404].

9. Following confirmation, the Debtors, through the Independent Board, retained White & Case LLP ("**W&C**") and A&M to provide financial and legal analysis regarding the appropriate amount of the Incentive Fee.

10. On December 16, 2024, the Independent Board convened a special board meeting to consider the appropriate amount of the Incentive Fee to be awarded to Mr. Ray as compensation for his services as CEO of the Debtors (the "**December 2024 Board Meeting**"). At the meeting, the Independent Board obtained legal and financial advice regarding the Incentive Fee, including an analysis of comparable compensation arrangements. The Independent Board was provided with a review of Mr. Ray's performance during the Chapter 11 Cases and the achievements and successes of the Debtors under Mr. Ray's leadership. After deliberation and based on our business judgment, the Independent Board unanimously approved an Incentive Fee of $38.1 million. With the inclusion of the Completion Fee, Mr. Ray's total incentive compensation being sought in the Motion is $41.1 million.

11. On the Effective Date, the Plan went effective, and the Independent Board was dissolved and replaced by the Wind Down Board (as defined in the Plan) pursuant to the terms of the Plan. On February 24, 2025, the FTX Recovery Trust conferred with the Advisory Committee with respect to the Independent Board's approval of the Incentive Fee. On February 27, 2025, the Wind Down Board convened a meeting at which W&C and A&M presented substantially the same analysis that was presented at the December 2024 Board Meeting. The Wind Down Boad unanimously ratified the Independent Board's decision and approved the Incentive Fee and the Completion Fee.

12. In sum, both the Independent Board and the Wind Down Board believe that the incentive compensation sought, while considerable, appropriately reflects the truly outstanding results in a remarkably complex and in my experience, unique bankruptcy proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 2, 2025
       Wilmington, Delaware

*/s/ Joseph J. Farnan, Jr.*
Joseph J. Farnan, Jr.
Chairman of the Wind Down Board