**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 17, 2025 at 10:00 a.m. (ET)** |
| | **Objection Date: March 24, 2025 at 4:00 p.m. (ET)** |

**SUMMARY OF FIRST AND FINAL ATTORNEYS' FEES AND EXPENSES
STATEMENT FOR APPLICATION OF ADVERSARY CLASS ACTION
PLAINTIFFS UNDER SECTIONS 503(b)(3)(D) AND 503(b)(4) OF THE
BANKRUPTCY CODE FOR ALLOWANCE OF AN ADMINISTRATIVE
EXPENSE FOR ATTORNEYS' FEES AND EXPENSES FOR THE
<u>PERIOD FROM DECEMBER 1, 2022 TO DECEMBER 31, 2024</u>**

| | |
|---|---|
| Name of Applicant: | Entwistle & Cappucci LLP ("Entwistle & Cappucci") |
| Authorized to Provide Professional Services to: | The Adversary Class Action Plaintiffs |
| Date of Retention: | December 1, 2022 |
| Period for which compensation and reimbursement is sought: | December 1, 2022 to December 31, 2024 |
| Total Amount of Compensation sought as actual, reasonable and necessary:[2] | $2,539,252 |
| 80% of Compensation sought as actual, reasonable and necessary: | $2,031,401 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $36,693 |

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of Debtors in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the Debtors' claims and noticing agent's website at https://cases.ra.kroll.com/FTX.

[2] The amount of compensation and expenses requested are a fraction of the total time and expenses expended by Entwistle & Cappucci and local counsel Chimicles Schwartz Kriner & Donaldson-Smith LLP ("CSKDS") in pursing the Adversary Action and related matters. Entwistle & Cappucci intends to compensate CSKDS out of any award it receives in connection with this matter.

This is the first and final application.  Entwistle & Cappucci and CSKDS are not requesting attorneys' fees for the time expended preparing this application.

### COMPENSATION BY INDIVIUAL DURING FEE PERIOD[3]

| Name | Title | Practice Group and Admission | Rate | Hours | Amount |
|------|-------|------------------------------|------|-------|--------|
| Andrew Entwistle | Senior Partner | Litigation/Bankruptcy, 1985 | $1,639.36 | 613.00 | $1,004,925 |
| Josh Porter | Partner | Litigation/Bankruptcy, 2003 | $1,333.39 | 800.70 | $1,120,980 |
| | | | **Partner Total** | | |
| Sal Lee | Associate | Litigation, 2020 | $866.80 | 318.50 | $276,075 |
| | | | **Associate Total** | 318.50 | $276,075 |
| Kristie Amann | Paralegal | Litigation | $275.00 | 259.60 | $71,390 |
| Faith Fleming | Paralegal | Litigation | $408.50 | 161.80 | $66,095 |
| | | | **Paralegal Total** | 421.40 | $137,485 |

**Blended Hourly Rate: $1,179.34**                 **Total**  **2,153.10**  **$2,539,252**

### STATEMENT OF FEES BY PROJECT CATEGORY[4]

| Project Category | Hours Billed | Fee Amount |
|------------------|--------------|------------|
| Litigation and Motion Practice Related to the Customer Claims in Adversary Proceeding | 715.30 | $647,482 |
| Client and Customer Representation in Chapter 11 Cases | 420.50 | $570,159 |
| Negotiate PSA for Customers and Input on Disclosure and Plan Issues | 343.30 | $532,330 |
| Research Property Issues, Claim Development and Complaint Drafting | 281.70 | $364,187 |
| Litigation and Motion Practice for Customer Claims in MDL/Venue Issues | 247.30 | $267,067 |
| Communications with Clients, Customer Inquiries and Case Notices | 124.70 | $125,885 |

---

[3] Timekeeping records related to this application of Entwistle & Cappucci are attached as Exhibit A.

[4] The subject matter of certain time entries may be appropriate for more than one project category. In such instances, time entries generally have been included in the most appropriate category. Time entries do not appear in more than one category

## SUMMARY OF EXPENSES[5]

| Expense Category | Amount |
|---|---:|
| Online Legal Research (Westlaw) | $23,697.64 |
| Press Releases | $8,630.00 |
| Transportation and Travel | $3,129.78 |
| Telephone & Video Conferencing | $600.00 |
| FedEx & Messenger Service | $461.89 |
| Copying | $174.26 |
| **Total** | **$36,693.57** |

[5] The relevant expense records are attached as Exhibit B.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 17, 2025 at 10:00 a.m. (ET)** |
| | **Objection Deadline: March 24, 2025 at 4:00 p.m. (ET)** |

### APPLICATION OF ADVERSARY CLASS ACTION PLAINTIFFS UNDER SECTIONS 503(b)(3)(D) AND 503(b)(4) OF THE BANKRUPTCY CODE FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE FOR ATTORNEYS' FEES AND EXPENSES

Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar, plaintiffs in the class action adversary proceeding (the "Adversary Class Action Plaintiffs") before this Court on behalf of former customer-depositors of FTX Trading Ltd. ("FTX.com"), West Realm Shires Services Inc. (d/b/a "FTX.US"), and their affiliated debtors (collectively, the "FTX Group" or "Debtors"), entitled *Onusz et al. v. West Realm Shires, Inc. et al.*, Adv. Pro. No. 22-50513 (the "Adversary Class Action"), hereby submit this application (the "Application") under sections 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code") seeking allowance of an administrative expense for reimbursement of professional fees and expenses incurred providing a substantial contribution to the efficient administration of Debtors' estates, ultimate confirmation of the Plan, and settlements benefitting the estates.[6]

### Introduction

1.      On January 3, 2025, Debtors filed a notice announcing the effective date of the

---

[6] The Plan is the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26029] that was confirmed by the Court on October 8, 2024 [D.I. 26404].

Plan.  Debtors have estimated that customers of FTX.com and FTX.US will receive at least 118% of the value in their accounts as of the date that members of the FTX Group first filed for bankruptcy.  This astonishing outcome is the result of more than 26 months of extraordinary work by Debtors, their professionals, and Debtors' Chief Executive Officer John J. Ray III, made possible, in no small way, through extensive good-faith negotiations among major constituencies such as the UCC, U.S. Trustee, Bahamian Joint Provisional Liquidators (all as defined below), Ad Hoc Committee, and the Adversary Class Action Plaintiffs to resolve complex customer property disputes (*i.e.*, determining who owned the assets on deposit, the customers, the FTX Group, or FTX Digital Markets Ltd.),  the resolution of which was a gating issue to reach Plan confirmation.

2.     The Adversary Class Action Plaintiffs file this Application now because the effective date of the Plan has occurred and they have reached settlements (the latest of which on January 21, 2025), in conjunction with the Debtors, of their tort claims in the Adversary Class Action against Caroline Ellison, Nishad Singh, and Gary Wang that will provide real benefits to the estates.[7]

3.     Sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code operate in tandem to promote meaningful creditor participation in the reorganization process by allowing payment of an administrate expense—including for reasonable attorneys' fees and necessary expenses—incurred by creditors in making a "substantial contribution" in chapter 11 cases.  *See* 11 U.S.C. §§ 503(b); *In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) ("Compensation

---

[7] Caroline Ellison, Nishad Singh, and Gary Wang, along with Samuel Bankman-Fried (collectively, the "FTX Insiders") are the only individuals against whom the Adversary Class Action Plaintiffs brought claims on behalf of the customers.  Only the claims against Defendant Bankman-Fried remain unresolved.  That litigation is ongoing.

based on substantial contribution is designed to promote meaningful participation in the reorganization process, but at the same time, discourage mushrooming administrative expenses").

4.    While negotiations toward plan confirmation generally do not constitute a substantial benefit, in certain circumstances negotiations that avoid costly litigation or consensually resolve crucial issues leading to confirmation will constitute a substantial benefit to the estates (and in this case, in particular, customers, who collectively made up the Debtors' largest creditor group). *See, e.g., In re M&G USA Corporation*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) ("some arguably expected or routine activities may, depending on the circumstances, confer a significant and demonstrable benefit upon the reorganization *process*. Reorganizations that proceed with a minimum of litigation keep costs low and hasten reorganizations.") (internal quotations and citations omitted).

5.    Those circumstances are present here. By this Application, the Adversary Class Action Plaintiffs seek award of an administrative expense of $2,575,945—consisting of attorneys' fees and expenses—incurred in making a substantial contribution to the estates reaching a point where confirmation of the Plan and the extraordinary results to all stakeholders were possible.

6.    Specifically, the Adversary Class Action Plaintiffs advanced the reorganization process and provided other direct benefits to the estates by:

- Filing the first (and the only customer class action) adversary proceeding framing the customer property issues on behalf of both FTX.com (foreign) and FTX.US (domestic) customers against FTX Group. That action hastened consideration and resolution of those issues;[8] and

- Participating in months of heavily contested negotiations as the *de facto* voice of FTX.US (domestic) customers to resolve the customer property and related issues, that led to the major constituencies executing the PSA

---

[8] The later filed complaint by the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") also sought resolution of the customer property issues, but only on behalf of its constituency of foreign customers.

that resolved the customer property issues, that led to the creation of an enormous benefit for customers, and that facilitated confirmation of the Plan incorporating the PSA.

7.     In addition to participating in the extensive negotiations that led to the PSA and Plan, the Adversary Class Action Plaintiffs have also resolved their class action tort claims against three FTX Insiders in conjunction with Debtors' resolution of their similar tort claims, the resolution of which will provide tangible benefits to the estates.  Specifically, the Adversary Class Action Plaintiffs:

- Filed the only class action adversary proceeding that asserted tort claims against the FTX Insiders and, in conjunction with Debtors, have reached settlements with Caroline Ellison, Nishad Singh and Gary Wang which will provide real benefits to the estates in terms of cooperation with ongoing litigation, as well as potential monetary settlement consideration back to the estates for distribution through these chapter 11 cases; and

- Defeated efforts by the plaintiffs in the FTX MDL (as defined below) to transfer the Adversary Class Action tort claims against the FTX Insiders on behalf of customers for consolidation with the claims against third parties in the multi-district litigation in the United States District Court for the Southern District of Florida,[9] thereby enabling the customer claims against the FTX Insiders to be efficiently resolved and administered in this Court in conjunction with the Debtors' similar claims, and any benefit derived to be administered through the estates pursuant to the Plan.

8.     This Court has recognized that under the unique circumstances of these chapter 11 cases, advocating for customers, working with the Debtors to recover misappropriated customer assets and participation in the negotiations that resolved the customer property issues provided a substantial benefit to the estates.  During the November 15, 2023 hearing on Debtors' motion to reimburse the Ad Hoc Committee's attorneys' fees, counsel for both the Debtors and the official committee of unsecured creditors (the "UCC") cited the negotiations among the constituencies,

---

[9] The FTX MDL is *In re: FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076, Case No. 1:23-md-03076-KMM (S.D. Florida).

including the Ad Hoc Committee and Adversary Class Action Plaintiffs, and resulting execution of the PSA, as enabling the extraordinary result achieved on behalf of the estate and stakeholders. (D.I. 4019 at 21:11-22:2; 33:19-24; 34:9-13). The Court, recognizing the unique circumstances of the negotiations and PSA, found the process was not merely the Ad Hoc Committee "acting on behalf of itself and having an incidental benefit on the estate"—incidental benefits being insufficient to constitute as substantial contribution—and thus approved reimbursement of their fees. (D.I. 4019 at 58:4-23).

9.     The Adversary Class Action Plaintiffs played a similarly crucial role in the negotiations on behalf of FTX.US (domestic) customers that led to the PSA and attendant resolution of the crucial customer property issues. The Adversary Class Action Plaintiffs' significant efforts were not designed to only serve their own interests but rather benefited the estates and stakeholders overall. The threshold question of whether the assets customers deposited at FTX Group (and were misappropriated) were estate property or were owned by customers and to which they had priority was a gating issue that could have delayed these chapter 11 cases for years. And the Adversary Class Action Plaintiffs' efforts were not duplicative of the Ad Hoc Committee and UCC, which were focused on FTX.com (foreign) customers and general unsecured creditors, respectively.

10.    The Debtors do not object to the relief sought in this Application.

### Background Facts

**A.     The Adversary Class Action Plaintiffs' Complaint Raising the Customer Property Issues**

11.    In the weeks following the FTX Group's initiation of these chapter 11 cases on November 11, 2022, each of the Adversary Class Action Plaintiffs contacted and retained undersigned counsel to investigate, draft a complaint, and ultimately file the Adversary Class

Action on December 27, 2022.  The Adversary Class Action Plaintiffs ardently believed the digital assets and fiat currency deposited at the FTX Group was their property—rather than the property of Debtors—to which they had priority in these chapter 11 cases.

12.     Accordingly, Count I of the complaint in the Adversary Class Action sought a declaratory judgment that, among other things: (i) fiat currencies or digital assets deposited by customers at FTX.com and FTX.US were not property of the estate of any Debtors and (ii) alternatively, if the Court determined that fiat currency or digital assets deposited by customers at FTX.com and FTX.US are property of any Debtor, customers were entitled to priority payment from such customer property before it could be used to pay any non-customer expenses, claims or creditors.  (Adversary Class Action D.I. 1, ¶¶188-193).

13.     The Adversary Class Action was the only class action adversary complaint filed on behalf of both FTX.com and FTX.US customers that asserted claims for declaratory judgment and other common law claims on the customer property issues—*i.e.*, the deposited (and misappropriated) customer assets were not property of the estates, but rather customer property to which customers had priority.

14.     The next day, the Ad Hoc Committee filed a direct adversary proceeding similarly asserting, on behalf of the FTX.com (international) customers it represented, a claim for "Declaratory Judgment That Assets in Customer Accounts or Otherwise Identifiable as Customer Assets Are Not Property of the Estate."[10]

15.     From February 2023 to October 2024, the Court approved nine stipulations between the Adversary Class Action Plaintiffs and named Debtors to extend the deadline to respond to the

---

[10] *Ad Hoc Committee of Non-US Customers of FTX.com v. FTX Trading, Ltd. et al.*, Adv. Pro. No. 22-50514 (the "<u>AHC Adversary Proceeding</u>") (D.I. 1¶¶ 53-58).

complaint in the Adversary Class Action. (D.I. 23, 30, 37, 43, 60, 70, 89, 110, 123) all while the parties conducted due diligence, and investigated the issues.  This enabled the parties to continue to negotiate and to ultimately resolve the customer property issues through the PSA.

16.    Separately, the complaint in the Adversary Class Action also asserted tort claims against the FTX Insiders on behalf of a proposed class of customers of FTX.com and FTX.US who deposited fiat and/or digital assets and were unable to withdraw, use, or otherwise access those assets following the collapse of the FTX Group due to the criminal conduct of the FTX Insiders. As set forth below, the claims against FTX Insiders Ellison, Singh and Wang have been resolved together with the similar claims brought by Debtors.

**B.    Resolution of the Customer Property Issues Through the PSA and Plan**

17.    The Adversary Class Action Plaintiffs' goal in bringing the Adversary Class Action was to recover the misappropriated customer assets on behalf of themselves and all others similarly situated by, among other things, resolving the customer property issues.

18.    To that end, leading up to a series of full-day meetings on September 11 and 12, 2023—during which counsel for the Adversary Class Action Plaintiffs uniquely advocated for the interests of customers of FTX.US, whose interests were not perfectly aligned with the Ad Hoc Committee or UCC—counsel for the Adversary Class Action Plaintiffs reviewed extensive documents and diligence materials provided by Debtors.  Additional documents and diligence materials were provided at the meetings.

19.    The meetings involved heavily contested negotiations to resolve the customer property issues and related gating issues in these chapter 11 cases.  The parties continued to review diligence materials and related documents and negotiated these issues over the next month, resulting in another two-day negotiation session on October 11 and 12, 2023.  Following these

extensive, arms'-length negotiations, the various parties, including the Adversary Class Action Plaintiffs, executed the PSA, which was announced on October 16, 2023 and memorialized the customer property settlement.

20.     Among other things, the customer property settlement—as incorporated into the Plan—provided that all assets held by the FTX.com and FTX.US exchanges are property of Debtors' estates but that, upon Plan confirmation, holders of allowed Class 5A FTX.com customer claims and/or allowed Class 5B FTX.US customer claims shall receive payment in cash in an amount equal to (i) 100% of such allowed claims; (ii) interest at the Consensus Rate on such allowed claims from the Petition Date through the applicable distribution date to the extent of available funds, plus (iii) any proceeds from the Supplemental Remission Fund.[11]   *See* Plan ¶¶ 4.3.6, 4.3.7.

21.     Debtors have estimated that customers will receive at least 118% of the value in their accounts as of the date that the company filed for bankruptcy.  Not surprisingly, the Plan received overwhelming support from customers.

### C.     The Court Approved Reimbursement of the Ad Hoc Committee's Fees

22.     On October 25, 2023, the FTX Group filed the *Amended Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* (D.I. 3373) (the "Reimbursement Motion") seeking permission to reimburse the professional fees of the Ad Hoc Committee "[g]iven the complexity of the customer-related issues in these Chapter 11 Cases, the importance of the settlement of the customer property disputes in the PSA, and the incremental expense that will be avoided if consensus with such large groups of creditors can be reached." (*Id.* at ¶5).  The United States Trustee (D.I. 3715) and two *pro se* parties (D.I. 3708, 3780) filed

---

[11] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

objections to the Reimbursement Motion.

23.     During the November 15, 2023 hearing on the Reimbursement Motion, the Court questioned Debtors' counsel on whether the benefit to the estate provided by the Ad Hoc Committee's negotiations with the Debtors leading the PSA was merely incidental to their own self-interests:

> THE COURT: Let me ask you some questions because I am struggling with how the ad hoc committee – in their own papers they say what we did was we sued the debtors, we negotiated with the debtors, we settled that lawsuit through our plan support agreement which includes providing that our clients and other similarly situated parties have a separate class and receive priority payment over other general unsecured creditors. That sounds to me like they were acting in their own self-interest and maybe it had an incidental benefit to the estate, but they certainly weren't acting for the benefit of the estate in that context.

(D.I. 4019 at 18:21-19:6).

24.     In response, Debtors' counsel noted the critical role the customer representatives' participation in the negotiation and resolution of the two adversary proceedings asserting customer property claims played in reaching consensus for the Plan:

> [DEBTORS' COUNSEL]: "[W]e are resolving the litigation and I understand that simply resolving the litigation is not enough for reimbursement. We wouldn't be proposing that, but that is an important milestone in the case to have that litigation resolved. There is two [sic] adversary proceedings filed on this issue through our plan support agreement; both of now have been resolved on this issue.
>
> The issues that flow out of that, in terms of plan formation, to know that there is a critical mass of customers holding a significant value in claims, in excess of $1.2 billion that has been subject to NDA, that has been at the negotiating table, that has looked at the issues, has had arm's length negotiations with the debtor, with the creditor's [sic] committee, and has looked at all of the different permutations that we have been contemplating before we bring a plan forward is helping to build critical consensus that we need for this plan.

(D.I. 4019 at 21:11-22:2).

25.     Counsel for the UCC agreed that the PSA resulting from the negotiations with the

Ad Hoc Committee and the "other class representative" (the Adversary Class Action Plaintiffs)

was a significant development and an important part of the process:

> [UCC COUNSEL]: The committee can negotiate and in fact has
> negotiated with the ad hoc committee, with the debtors, with the
> other class representative the plan support agreement, which we
> think is a significant development in the case, but all of the positions
> can, should be, and have been evaluated and addressed in a real way
> by our committee.
>
> *       *       *
>
> So we don't see any conflict, but I do want to emphasize -- and I
> know I said this just a second ago -- that the plan support agreement
> is a significant development, and the Ad hoc committee and the
> other stakeholders around the table were important parts in getting
> us to where we are now.

(D.I. 4019 at 33:19-24; 34:9-13).

26.     Ultimately, the Court accepted the arguments of counsel for Debtors and the UCC

that the substantial benefit provided by the Ad Hoc Committee on behalf of the FTX.com (foreign)

customers warranted reimbursement of the Ad Hoc Committee's professional fees:

> THE COURT: All right. I was a little bit concerned about approving
> this, given what I asked [Debtors' counsel] about at the beginning
> about whether or not this wasn't just the ad hoc committee acting on
> behalf of itself and having an incidental benefit on the estate as a
> whole, but I'm satisfied under the unique facts and circumstances of
> this case, not least of which is the millions of customers that are
> involved here, that it makes sense that there be at least one voice --
> or in this case 66, I guess, voices -- who can act through counsel to
> help steer this process to a plan of reorganization, given the diversity
> of the interests, as [Debtors' counsel] pointed out and [Ad Hoc
> Committee's counsel] pointed out, there's this diversity of interests
> between those who are creditors and also customers and those who
> are just creditors.
>
> And I think having the ad hoc committee involved in that process is
> beneficial to the estate as a whole and, therefore, I will overrule the

> objections and will approve the debtors, agreeing to pay the fees as
> outlined in their reimbursement agreement with the ad hoc
> committee.

(D.I. 4019 at 58:4-23).

27.    The Adversary Class Action Plaintiffs and their counsel played an essentially identical role in the due diligence and negotiations as the *de facto* voice of the FTX.US (domestic) customers that the Ad Hoc Committee played foreign customers.  The benefit to the estates was equally critical to confirmation and far outweighed any individual benefit to the named plaintiffs in the Adversary Class Action.

### D.    The Adversary Class Action Plaintiffs' Settlement of Tort Claims Against FTX Insiders Ellison, Singh and Wang

28.    The Court's October 8, 2024 confirmation of the Plan, which included the customer property settlement in the form of the PSA, resolved all the Adversary Class Action Plaintiffs' claims against Debtors, but not their contract, tort, and aiding and abetting claims against the FTX Insiders.

29.    On September 23, 2024, November 25, 2024, and January 21, 2025, the Adversary Class Action Plaintiffs and Debtors, working together and resulting from lengthy negotiations, reached favorable settlements with, respectively, FTX Insiders Ellison, Singh and Wang.  These settlements, which resolve the adversary proceedings against the FTX Insiders other than Bankman-Fried, have provided or will provide substantial additional benefits for the estates and stakeholders that will be administered and distributed through these chapter 11 cases pursuant to the Plan.  Specifically, the settlements require these FTX Insider to transfer or assign to the estates "any and all of [their] assets (net of taxes and expenses associated with the transfer) included on the Asset Statement that are not subject to forfeiture" in the criminal proceedings—*i.e.*,

substantially all of their assets (including the rights to any crypto assets) not otherwise forfeited to the government or used to pay certain eligible legal fees.[*See, e.g.*, D.I. 26364-2, Ex. 1 at 2].

30.     Even in the event these FTX Insiders have no significant assets to transfer to the estates, the settlements include valuable cooperation provisions requiring that they voluntarily cooperate with the Debtors, including by (a) providing, reviewing, clarifying, and authenticating documents and other materials, and (b) answering questions and attending proffer sessions, or interviews, depositions, hearings and other proceedings.

31.     On October 7, 2024, Debtors moved the Court for an order approving the Ellison Adversary Settlement Agreement, which was granted by the Court on October 23, 2024 [D.I. 26364, 27184].  We anticipate Debtors will shortly seek approval of their settlements with Singh and Wang.  On December 10, 2024, Plaintiffs voluntarily dismissed their claims against Ellison (Adversary Class Action D.I. 125) and intend to do so following Debtors' applications for approval of the Singh and Wang Settlements.

32.     The favorable settlements with FTX Insiders Ellison, Wang and Singh and the attendant benefits to be administered and distributed through these chapter 11 cases pursuant to the Plan were made possible in part due to the Adversary Class Action Plaintiffs' defeat of efforts by the plaintiffs (the "MDL Plaintiffs") in *In re: FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076, Case No. 1:23-md-03076-KMM (S.D. Florida) (the "FTX MDL") to transfer the Adversary Class Action tort claims against the FTX Insiders on behalf of customers for consolidation into the FTX MDL with the claims against third-party spokespeople, lawyers and banks.

33.     On December 22, 2023, the MDL Plaintiffs filed their *Motion for Transfer of Related Action to the Southern District of Florida for Consolidation into MDL No. 3076 and*

*Incorporated Brief Memorandum of Law* [MDL 3076, ECF No. 227], arguing the Adversary Class Action is "fully subsumed within the FTX MDL Plaintiffs' class against the Insiders" on behalf of a class including, not just customers, but anyone who "invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT." Additionally, the MDL Plaintiffs claimed the PSA "prejudice[d] the FTX MDL Plaintiffs and the proposed overlapping class they all seek to represent" (*Id.* ¶ 12) because the MDL Plaintiffs could no longer negotiate to resolve all the claims against the FTX Insider Defendants. (*Id.* ¶ 13).

34.     At our request, the MDL Panel rejected those arguments in denying the MDL Plaintiffs' motion to transfer on grounds "(1) whether customer deposits are property of the FTX debtors' estates, a central issue in the FTX bankruptcy; and (2) if so, what priority FTX customers have in the distribution of the estates' assets"—were questions "that the Delaware Bankruptcy Court likely will resolve . . . in the context of the proposed Chapter 11 Plan." (*Order Denying Transfer*, dated April 11, 2024, ECF No. 278).

35.     This Court likewise denied motions to sever by FTX Insider Defendants Ellison, Wang, and Singh that "[t]he most convenient and expeditious means to adjudicate [the Adversary Class Action Plaintiffs' claims] is to litigate them within the adversary proceeding before this Court." (Adversary Class Action, *Letter Ruling Denying Motions to Sever* dated May 2, 2024, D.I. 116).

36.     The Debtors and Adversary Class Action Plaintiffs are currently engaged in ongoing negotiations to resolve their respective claims against FTX Insider Bankman-Fried.

## Jurisdiction and Venue

37.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding and this

Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

38.    By this Application, the Adversary Class Action Plaintiffs respectfully request that

the Court enter an order allowing an administrative claim for attorneys' fees and expenses of

$2,575,945 incurred making substantial contribution under 11 U.S.C. §§ 503(b)(3)(D) and

503(b)(4).

## Basis for Relief

39.    Section 503(b) of the Bankruptcy Code provides, in relevant part, that:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than
claims allowed under section 502(f) of this title, including—

*        *        *

(3) the actual, necessary expenses, other than compensation and reimbursement
specified in paragraph (4) of this subsection, incurred by—

*        *        *

(D) a creditor . . . in making a substantial contribution in a case under chapter 9
or 11 of this title . . .

(11 U.S.C. § 503(b)(3)(D)). Further, Section 503(b)(4) of the Bankruptcy Code permits this Court

to order "reasonable compensation for professional services rendered by an attorney or an

accountant of an entity whose expense is allowable under," among other provisions, Section

503(b)(3)(D). 11 U.S.C. § 503(b)(4).

40.    If Section 503(b)(3)(D)'s "substantial contribution" is satisfied, this Court

determines whether reasonable fees are warranted "based on the time, the nature, the extent, and

the value of such services, and the cost of comparable services other than in a case under this title,

and reimbursement for actual, necessary expenses incurred by such attorney or accountant."  11

U.S.C. § 503(b)(4).

I.      **Section 503(b) of the Bankruptcy Code Contemplates Payment of Fees and Expenses Incurred in Making a "Substantial Contribution" in a Chapter 11 Case**

41.     While the Bankruptcy Code does not define what constitutes a "substantial contribution," the United States Court of Appeals for the Third Circuit has held that "the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). "Services which substantially contribute to a case are those which foster and enhance the progress of reorganization." *Id.*

42.     Courts in this District have considered several factors in determining whether an applicant made a substantial contribution, including "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others." *E.g.*, *In re Summit Metals, Inc.*, 379 B.R. 40, 51 (Bankr. D. Del. 2007). While inherent in the concept of "substantial contribution" is that the benefit to the estate "must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests . . . [m]ost activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." *Lebron*, 27 F.3d at 944.

II.     **The Adversary Class Action Plaintiffs, Through Their Undesigned Counsel, Have Made a Substantial Contribution to the Debtors' Chapter 11 Cases**

        A.      **The Adversary Class Action Plaintiffs' Efforts Conferred Direct Benefits to the Estates**

43.     While it is well settled that "expected or routine activities in a chapter 11 case— such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents—generally do not constitute a substantial contribution"

(*In re RS Legacy Corp.*, No. 15–10197 (BLS), 2016 WL 1084400, at*4 (Bankr. D. Del. Mar. 17, 2016)), "in some limited circumstances, creditor activities which result in meaningful settlements and a consensual process may constitute a substantial contribution to reorganization" such as in "[r]eorganizations that proceed with a minimum of litigation keep costs low and hasten reorganizations" (*In re M&G*, 599 B.R. at 262-263).

44.     Here the Court has ruled—in evaluating the circumstances of Debtors' Reimbursement Motion for the Ad Hoc Committee's fees—that "under the unique facts and circumstances of this case, not least of which is the millions of customers that are involved here, that it makes sense that there be at least one voice [the Ad Hoc Committee] who can act through counsel to help steer this process to a plan of reorganization, given the diversity of the interests, as [Debtors' counsel] pointed out and [Ad Hoc Committee's counsel] pointed out, there's this diversity of interests between those who are creditors and also customers and those who are just creditors."

45.     Here the Adversary Class Action Plaintiffs and their counsel provided a comparable benefit to the estate in guiding the process on behalf of the FTX.US (domestic) customers as the Ad Hoc Committee did on behalf of foreign customers.   The Adversary Class Action Plaintiffs acted not solely in their own interests, but rather on behalf of all customers—and, in particular, as the *de facto* voice of the customers of FTX.US—in negotiating the PSA that memorialized the customer property settlement that benefitted the estates and all stakeholders.   The Adversary Class Action Plaintiffs, cognizant of the potential costs, length, and uncertainty of litigation, worked with the other stakeholders and avoided a scorched earth litigation strategy that would have impeded resolution of the customer property issues, confirmation of the Plan, and extent of distributions to the victims of the FTX Insiders' wrongdoing.

46.     The Adversary Class Action Plaintiffs' efforts and contributions were demonstrably not duplicative of services rendered by other stakeholders or Debtors, or their counsel.    The Ad Hoc Committee was acting on behalf of its constituency of FTX.com (international) customers, the UCC was acting on behalf of unsecured creditors, and the Debtors were acting on behalf of the estates.  Only the Adversary Class Action Plaintiffs were working on behalf of the FTX.US (domestic) customers to resolve the crucial issues while protecting their interests.

47.     The Plan represents the best possible outcome for customers and certain creditor constituencies alike, given that it maximizes value for all stakeholders, makes the recovery and distribution of customer funds a priority, provides recovery for customers in excess of their allowed claims, and avoids costly and time-consuming litigation that would otherwise be necessary to resolve the critical question of whether commingled customer assets are part of the Debtors' estates.

48.     The $2,575,945 administrative claim sought by the Adversary Class Action Plaintiffs in the form of attorneys' fees and expenses are *de minimis* compared to the Adversary Class Action Plaintiffs' contribution to fostering the reorganization and reflect only the fees incurred in conducting necessary and reasonable work to provide the substantial benefits to the estates, namely the fees and expenses incurred by counsel for the Adversary Class Action Plaintiffs in investigating and participating in the resolution of the customer property issues (including negotiating the PSA and prosecuting and settling the tort claims against the FTX Insiders).

**B.     The Adversary Class Action Plaintiffs' Settlements with Certain FTX Insiders Have or May Provide Benefits to the Estates**

49.     On December 22, 2022, approximately seven weeks after Debtors filed these chapter 11 cases, the Adversary Class Action Plaintiffs initiated the only class action adversary

proceeding that, in addition to claims against Debtors concerning the customer property issues, included claims against the FTX Insiders. Since then, the Adversary Class Action Plaintiffs have diligently pursued their class action tort claims against the FTX Insiders, subject to the realities of the intervening criminal prosecutions and the process of attempting to negotiate, along with Debtors, consensual resolutions with the FTX Insiders.

50.     To date, the Adversary Class Action Plaintiffs have settled their tort claims against FTX Insiders Ellison, Singh and Wang in conjunction with Debtors' settlement of their similar tort claims and are pursuing discussions with FTX Insider Bankman-Fried. The settlements with FTX Insiders Ellison and Singh have or may bring additional assets into the estates for distribution to stakeholders. Moreover, these settlements contain substantial and material cooperation obligations that will assist Debtors in other litigation and estate administration.

51.     The Adversary Class Action Plaintiffs are not attempting to allocate any recoveries to the class of customers on whose behalf they brought the Adversary Class Action, but rather any assets recovered from FTX Insiders will be distributed to all stakeholders pursuant to the Plan. Put another way, these settlements demonstrably provide a direct benefit to the estates, not just the Adversary Class Action Plaintiffs or the putative class of customers. *See, e.g., In re Syntax-Brillian Corp.*, No. 08–11407 (BLS), 2009 WL 1606474 at *2 (Bankr. D. Del. June 5, 2009) ("When determining whether a movant's activities amount to a substantial contribution, courts have examined whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others.").

52.     Significantly, the Adversary Class Action Plaintiffs' efforts also successfully prevented the MDL Plaintiffs from taking control of the tort claims against the FTX Insiders and

settling them outside the supervision of this Court and administration of the estates. Several months after the FTX Debtors filed a notice to the Court of the PSA resolving the customer property issues in the relevant adversary proceedings pending approval of the Plan, the MDL Plaintiffs filed a notice with the Judicial Panel on Multidistrict Litigation (the "MDL Panel" or "JPML") identifying the Adversary Class Action as a potential "tag-along" action (MDL 3076, ECF No. 223) On December 22, 2023, the MDL Plaintiffs filed their *Motion for Transfer of Related Action to the Southern District of Florida for Consolidation into MDL No. 3076 and Incorporated Brief Memorandum of Law*. (MDL 3076, ECF No. 227). The MDL Panel agreed with the Adversary Class Action Plaintiffs' opposition to the motion to transfer and denied the motion, acknowledging that the questions raised by the Adversary Class Action—namely, "(1) whether customer deposits are property of the FTX debtors' estates, a central issue in the FTX bankruptcy; and (2) if so, what priority FTX customers have in the distribution of the estates' assets"—were questions "that the Delaware Bankruptcy Court likely will resolve . . . in the context of the proposed Chapter 11 Plan." (MDL 3076, ECF No. 278)

53.    This Court likewise agreed with the Adversary Class Action Plaintiffs' oppositions to motions to sever by FTX Insider Defendants Ellison, Wang, and Singh so the claims could be transferred to the MDL, ruling that "[t]he most convenient and expeditious means to adjudicate [the Adversary Class Action Plaintiffs' claims] is to litigate them within the adversary proceeding before this Court." (Adversary Class Action, *Letter Ruling Denying Motions to Sever* dated May 2, 2024, D.I. 116).

## Conclusion

54.    For the foregoing reasons, the Adversary Class Action Plaintiffs respectfully request that the Court grant the Application and enter the proposed order attached as Exhibit A

awarding the Adversary Class Action Plaintiffs an administrative expense of $2,575,945.

Dated:  March 3, 2025
        Wilmington, Delaware

**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**

*/s/ Scott M. Tucker*
Robert K. Kriner, Jr. (No. 2546)
Scott M. Tucker (No. 4925)
2711 Centerville Rd, Suite 201
Wilmington, Delaware 19808
Tel: (302) 656-2500
robertkriner@chimicles.com
scotttucker@chimicles.com

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (512) 710-5960
aentwistle@entwistle-law.com

-and-

Robert N. Cappucci (*pro hac vice*)
Joshua K. Porter (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel: (212) 894-7200
Fax: (212) 894-7272
rcappucci@entwistle-law.com
jporter@entwistle-law.com

*Counsel for Adversary Class Action Plaintiffs
Austin Onusz, Cedric Kees van Putten,
Nicholas J. Marshall and Hamad Dar*