**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

**SUMMARY OF THE**
**APPLICATION OF THE AD HOC COMMITTEE**
**OF NON-US CUSTOMERS OF FTX.COM UNDER**
**SECTIONS 503(b)(3)(D) AND 503(b)(4) OF THE BANKRUPTCY**
**CODE FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE**
**EXPENSE CLAIM FOR REASONABLE PROFESSIONAL FEES AND EXPENSES**

| | |
|---|---|
| Name of applicants: | Eversheds Sutherland (US) LLP ("Eversheds Sutherland") and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") |
| Authorized to provide professional services to: | Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") |
| Effective date of retention: | December 2 and 4, 2022 |
| Period for which compensation and reimbursement is sought: | December 2, 2022, through and including April 30, 2023 |
| Amount of final compensation sought as actual, reasonable, and necessary: | $2,631,852.00 |
| Amount of final expense reimbursement sought as actual, reasonable, and necessary: | $127,484.80 |
| Blended rate in this Application for all attorneys: | $889.52 |
| Blended rate in this Application for all professionals: | $849.75 |
| Number of professionals included in this Application: | 36 |

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the Debtors' claims and noticing agent's website at https://cases.ra.kroll.com/FTX.

### EVERSHEDS SUTHERLAND
### COMPENSATION BY INDIVIDUAL DURING THE FEE PERIOD

| Name | Title | Practice Group; Date of First Admission | Hourly Rate | Hours Billed | Amount Billed |
|---|---|---|---|---|---|
| Ivanick, Peter A. | Partner | Insurance Transactions & Products, 1983 | 1,481.39 | 177.30 | 262,650.00 |
| Nolan, Frank | Partner | Litigation, 2008 | 850.00 | 9.30 | 7,905.00 |
| Paul, Sarah | Partner | Litigation, 2004 | 1,065.30 | 287.80 | 306,594.00 |
| Pollet, Adam | Partner | Litigation, 2011 | 775.00 | 2.00 | 1,550.00 |
| Sherrill, Mark | Partner | Energy, 1999 | 933.27 | 81.10 | 75,688.00 |
| Wender, David A. | Partner | Finance, 2003 | 1,050.00 | 49.20 | 51,660.00 |
| Winters, Ed | Partner | Corporate, 2004 | 900.00 | 3.20 | 2,880.00 |
| | **Partner Total** | | | **609.90** | **708,927.00** |
| Broderick, Erin E. | Senior Counsel | Finance, 2008 | 880.00 | 716.80 | 630,784.00 |
| Ehrlich, Philip H. | Senior Counsel | Insurance Transactions & Products, 1987 | 1,004.96 | 68.40 | 68,739.00 |
| | **Senior Counsel Total** | | | **785.20** | **699,523.00** |
| Gordon, Andrea | Counsel | Litigation, 2014 | 744.89 | 145.80 | 108,605.00 |
| Holbert, Lynn W. | Counsel | Insurance Transactions & Products, 1988 | 1,003.50 | 146.50 | 147,013.00 |
| | **Counsel Total** | | | **292.30** | **255,618.00** |
| DeLoatch, Nathaniel T. | Associate | Finance, 2019 | 670.00 | 167.50 | 112,225.00 |
| Lindsey, Zack W. | Associate | Litigation, 2020 | 506.99 | 51.20 | 25,958.00 |
| Rodgers, Jessica | Associate | Litigation, 2020 | 500.00 | 16.80 | 8,400.00 |
| Sowers, Dane N. | Associate | Litigation, 2021 | 482.35 | 58.80 | 28,362.00 |
| Thielen, Kristi K. | Associate | Corporate, 2021 | 550.00 | 1.70 | 935.00 |
| | **Associate Total** | | | **296.00** | **175,880.00** |
| Hirsch, Devorah | Paralegal | Litigation | 236.30 | 171.90 | 40,620.00 |
| Keating, Stephanie | Paralegal | Litigation | 250.00 | 1.10 | 275.00 |
| | **Paralegal Total** | | **173.00** | | **40,895.00** |
| Oszakiewski, Robert | Admin Staff | Tax | 85.00 | 3.30 | 280.50 |
| | **Admin Staff Total** | | | **3.30** | **280.50** |
| Chambers, Dianne | Library Staff | Administrative | 350.00 | 1.10 | 1.10 |
| Simms, Katherine | Library Staff | Administrative | 350.00 | 1.00 | 1.00 |
| Wells, Antoinette | Library Staff | Administrative | 350.00 | 0.80 | 0.80 |
| | **Library Staff Total** | | | **2.90** | **2.90** |
| **Grand Total** | | | | **2,162.60** | **$1,882,138.50** |

**MORRIS NICHOLS**
**COMPENSATION BY INDIVIDUAL DURING THE FEE PERIOD**

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Schwartz, Eric D. | Partner | 138.6 | 1,195.00 | 165,627.00 |
| Schwartz, Eric D. | Partner | 46.3 | 1,150.00 | 53,245.00 |
| Culver, Donna L. | Partner | 1.0 | 1,075.00 | 1,075.00 |
| Harvey, Matthew B. | Partner | 163.7 | 1,045.00 | 171,066.50 |
| Culver, Donna L. | Partner | 5.9 | 1,025.00 | 6,047.50 |
| Harvey, Matthew B. | Partner | 81.8 | 995.00 | 81,391.00 |
| **Partner Total** | | **437.3** | | **$478,452.00** |
| Topper, Paige | Associate | 38.5 | 710.00 | 27,335.00 |
| Topper, Paige | Associate | 27.9 | 650.00 | 18,135.00 |
| Weyand, Jonathan | Associate | 33.6 | 595.00 | 19,992.00 |
| Murray, Travis | Associate | 9.6 | 550.00 | 5,280.00 |
| Loughnane, Brian | Associate | 187.3 | 550.00 | 103,015.00 |
| Ingrassia, Michael | Associate | 86.0 | 505.00 | 43,430.00 |
| Weyand, Jonathan | Associate | 0.2 | 505.00 | 101.00 |
| Loughnane, Brian | Associate | 28.4 | 485.00 | 13,774.00 |
| Ingrassia, Michael | Associate | 74.6 | 485.00 | 36,181.00 |
| **Associate Total** | | **486.1** | | **$267,243.00** |
| Poland, Byron | Litigation Support | 0.1 | 395.00 | 39.50 |
| **Litigation Support Total** | | **0.1** | | **$39.50** |
| Lawrence, John | Paralegal | 0.5 | 375.00 | 187.50 |
| Weidman, Rebecca | Paralegal | 0.6 | 375.00 | 225.00 |
| Lawrence, John | Paralegal | 3.5 | 360.00 | 1,260.00 |
| Weidman, Rebecca | Paralegal | 2.2 | 360.00 | 792.00 |
| **Paralegal Total** | | **6.8** | | **$2,464.50** |
| Walker, Valerie | Case Clerk | 2.5 | 355.00 | 887.50 |
| Freeman, Wel | Case Clerk | 0.6 | 355.00 | 213.00 |
| Walker, Valerie | Case Clerk | 1.0 | 345.00 | 345.00 |
| Hall, Mary C. | Case Clerk | 0.2 | 345.00 | 69.00 |
| **Case Clerk Total** | | **4.3** | | **$1,514.50** |
| **Grand Total** | | **931.4** | | **$749,713.50** |

### EVERSHEDS SUTHERLAND
### STATEMENT OF FEES BY PROJECT CATEGORY

| Task Code | Project Category | Hours Billed | Amount Billed |
|-----------|------------------|--------------|---------------|
| B110 | Case Administration | 38.8 | 14,316.50 |
| B112 | General Creditor Inquiries | 185.6 | 142,306.00 |
| B113 | Case Analysis/Pleading Review | 143.7 | 128,478.00 |
| B155 | Court Hearings | 24.9 | 27,215.50 |
| B160 | Fee/Employment Applications | 15.5 | 12,358.00 |
| B190 | Contested Matters (excluding assumption/rejection motions) | 1,153.30 | 1,025,342.50 |
| B260 | Corporate Governance and Board Matters | 147.3 | 116,180.50 |
| B270 | AHC Member Communications & Meetings | 184.5 | 159,711.00 |
| B310 | Claims Administration and Objections | 20.8 | 16,534.50 |
| B320 | Plan and Disclosure Statement (including Business Plan) | 44.1 | 42,619.50 |
| B410 | General Case Strategy | 204.1 | 197,076.50 |
| **Grand Total** | | **2,162.60** | **$1,882,138.50** |

### MORRIS NICHOLS
### STATEMENT OF FEES BY PROJECT CATEGORY

| Task Code | Project Category | Hours Billed | Amount Billed |
|-----------|------------------|--------------|---------------|
| BK110 | Case Administration | 4.00 | 1,898.00 |
| BK112 | General Creditor Inquiries | 0.60 | 597.00 |
| BK113 | Case Analysis/Pleading Review | 45.30 | 45,348.00 |
| BK140 | Automatic Stay Matters | 1.90 | 2,041.50 |
| BK150 | External Stakeholder Communications | 15.50 | 16,014.00 |
| BK155 | Court Hearings | 46.50 | 41,444.50 |
| BK190 | Contested Matters | 154.60 | 116,257.50 |
| BK191 | General Litigation | 294.30 | 233,876.00 |
| BK260 | AHC Committee Governance | 160.10 | 120,175.50 |
| BK270 | AHC Member Communications & Meetings | 81.10 | 64,139.50 |
| BK310 | KYC Process and Claims Administration | 4.50 | 3,736.50 |
| BK320 | Plan and Disclosure Statement (Including Business Plan) | 1.90 | 1,967.50 |
| BK410 | General Case Strategy | 120.60 | 97,943.00 |
| BK450 | Section 1104 Examiner Related Issues | 3.70 | 4,275.00 |
| **Grand Total** | | **934.60** | **$749,713.50** |

**EVERSHEDS SUTHERLAND**
**EXPENSES BY CATEGORY**

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Outside Reproduction | Southern District Reporters | 203.40 |
| Out-of-Town Travel | | 2,446.76 |
| Outside Counsel | Eversheds Sutherland International | 85,397.01 |
| | 3VB | 31,590.00 |
| **Grand Total:** | | **$119,637.17** |

**MORRIS NICHOLS**
**EXPENSES BY CATEGORY**

| Description | Amount |
|---|---|
| In-House Printing - black & white | 205.30 |
| Pacer | 642.30 |
| In-House Printing - color | 769.25 |
| Computer Research - Westlaw | 3,533.30 |
| Courier/Delivery Service | 214.23 |
| Transcripts | 408.00 |
| Travel | 23.00 |
| Meals | 44.95 |
| Photos/Art/Spec Duplicating-Out of Office | 1,472.10 |
| Court Costs | 525.00 |
| Postage | 10.20 |
| **Grand Total:** | **$7,847.63** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**APPLICATION OF THE AD HOC COMMITTEE**
**OF NON-US CUSTOMERS OF FTX.COM UNDER**
**SECTIONS 503(b)(3)(D) AND 503(b)(4) OF THE BANKRUPTCY**
**CODE FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE**
**EXPENSE CLAIM FOR REASONABLE PROFESSIONAL FEES AND EXPENSES**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee")
hereby submits this application (this "Application")[2] for entry of an order, substantially in the form
attached hereto as **Exhibit A**, pursuant to sections 503(b)(3)(D) and 503(b)(4) of title 11 of the
United States Code (the "Bankruptcy Code"), for the allowance and reimbursement of reasonable
professional fees and actual necessary expenses in the aggregate amount of $2,759,336.80
(the "Substantial Contribution Claim")[3] incurred in making substantial contributions to the
Debtors' chapter 11 cases (these "Chapter 11 Cases").

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and
4063, respectively. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and
the last four digits of their federal tax identification numbers is not provided herein. A complete list of such
information may be obtained on the Debtors' claims and noticing agent's website at https://cases.ra.kroll.com/FTX.

[2]  This Application is submitted on behalf of Eversheds Sutherland (US) LLP ("Eversheds") and Morris, Nichols,
Arsht & Tunnell LLP ("Morris Nichols" and together, with Eversheds "Counsel").

[3]  The Substantial Contribution Claim included fees and expenses incurred by Counsel from December 2, 2022,
through and including April 30, 2023 (the "Substantial Contribution Period"). Eversheds' detailed timekeeping
records for the Substantial Contribution Period are attached hereto as **Exhibit B** and Morris Nichols' detailed
timekeeping records for the Substantial Contribution Period are attached hereto as **Exhibit C**.

## PRELIMINARY STATEMENT[4]

1.     The Debtors' plan of reorganization has now been consummated, with approximately 98% of creditors in number having received a 118% recovery on their claims, and non-convenience class creditors expected to receive an initial distribution by May 30, 2025.[5]  The extensive collaboration among multiple stakeholder groups, including the Ad Hoc Committee, has been crucial for achieving these favorable outcomes for creditors—without protracted and value-destructive litigation.  In representing over two-thirds of the entire foreign customer creditor class (the "Dotcom Creditors"), the Ad Hoc Committee significantly contributed to the effective and efficient administration of the estates by uniting the Dotcom Creditors, reducing potential litigation, and advancing resolution of key case issues.[6]

2.     Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code authorize administrative expense claims for creditors that make a "substantial contribution" to a chapter 11 case and permit reimbursement of professional fees incurred in making such a contribution. *See Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). Courts find that a substantial contribution is made where creditors "foster and enhance the administration of the estate," that results in a "direct, significant, and demonstrable benefit" to creditors not undertaken solely to advance the creditor's self-interest. *See In re M&G USA Corp.*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) ("M&G"); *In re Bayou Grp., LLC*, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010).

---

[4]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26029] (the "Plan").

[5]  *See FTX Commences Initial Distributions to Convenience Class and Sets Next Distribution*, PR NEWSWIRE, Feb. 18, 2025, https://www.prnewswire.com/news-releases/ftx-commences-initial-distributions-to-convenience-class-and-sets-next-distribution-302379212.html.

[6]  *See Verified Ninth Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 26058].

3.       The Ad Hoc Committee easily satisfies this standard. ***First***, the Ad Hoc Committee was able to organize a critical mass of Dotcom Creditors early in these cases, bridging divisions that could have otherwise fractured the Dotcom Creditor base and led to infighting, deadlock, and protracted litigation. Indeed, unlike other major crypto bankruptcies—such as *Celsius* and *Genesis*, where multiple competing ad hoc groups emerged and resulted in costly litigation—the Ad Hoc Committee was able to unify a broad and diverse constituency to reduce and resolve potentially value-destructive litigation.[7] The Ad Hoc Committee represented Dotcom Creditors from dozens of countries—from small retail holders to large institutional holders, those with significant preference exposure and those with none, holders with fiat-denominated claims and those with claims based solely on appreciating tokens. Through this collective representation, the Ad Hoc Committee streamlined creditor participation to reduce inefficiencies and costs to the estates, while resolving key issues in a manner that balanced competing interests both within the Dotcom Creditor base and across other creditor groups.

4.       ***Second***, the Ad Hoc Committee spearheaded legal arguments regarding the ownership of assets on the FTX.com exchange (the "Dotcom Exchange"). The resolution of this issue was foundational to the Plan and provided much-needed clarity for customer recoveries. On December 29, 2022, the Ad Hoc Committee filed an adversary proceeding seeking a determination on customer property ownership issues.[8] After additional analysis and thorough review of case developments after that filing, the Ad Hoc Committee filed a motion for partial summary judgment

---

[7]  *See, e.g.*, *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.) (Among the many competing factions of Celsius' creditors, three separate Ad Hoc Groups emerged: the Ad Hoc Group of Withhold Account Holders, the Ad Hoc Group of Custodial Account Holders, and the Ad Hoc Group of Borrowers.) and *In re Genesis Global Holdco, LLC.*, Case No. 23-10063 (Bankr. S.D.N.Y.) (Five separate Ad Hoc Groups emerged among Genesis' creditors: the Crypto Creditors Ad Hoc Group, the Ad Hoc Group of Genesis Lenders, the Ad Hoc Group of Dollar Lenders, the Ad Hoc Group of Claimants, and the Ad Hoc Group of Creditors.).

[8]  *See Complaint for Declaratory Judgment* [A.D.I. 1].

seeking a determination on the existence of an express, constructive, or implied trust over the Dotcom Exchange assets.[9]

5.    Ultimately, in April 2023, after good-faith arms-length negotiations, the Ad Hoc Committee and the Debtors agreed to stay all litigation to focus on the development of a consensual plan of reorganization. In these negotiations, the Ad Hoc Committee advocated for positions important to all Dotcom Creditors. After months of continued cooperative, but hard-fought, negotiations with the Debtors, the Official Committee, and the Class Action Plaintiffs,[10] the Ad Hoc Committee entered into the Plan Support Agreement (the "PSA"),[11] resolving the customer property ownership disputes and laying the foundation for the Debtors' Plan.

6.    Indeed, in approving the Amended Reimbursement Motion,[12] this Court recognized that the Ad Hoc Committee was not "acting on behalf of itself and having an incidental benefit on the estates," but instead the Ad Hoc Committee provided a unique benefit to the estates as a whole.[13] Without the Ad Hoc Committee's tireless work during the Substantial Contribution Period, such a benefit would have been impossible.

7.    The Debtors do not object to the relief sought in this Application.

8.    Given this record, allowance of the Substantial Contribution Claim is warranted.

---

[9] *See Ad Hoc Committee of Non-US Customers of FTX.com's Motion for Partial Summary Judgment* [A.D.I. 10].

[10] As used herein, "Class Action Plaintiffs" shall mean the plaintiffs in the adversary proceeding styled as *Onusz, et al. v. West Realm Shires Inc., et al.*, Adv. Pro. No. 22-50513 (JTD) [D.I. 321].

[11] *See* Settlement and Plan Support Agreement [Ex. A, D.I. 3291].

[12] As used herein, "Amended Reimbursement Motion" shall mean the *Amended Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3373].

[13] *See* Hr'g Tr. at 58:4-23, *In re FTX Trading Ltd.*, (Bankr. D. Del. Nov. 15, 2023) (the "Reimbursement Agreement Hearing Transcript").  The Reimbursement Agreement Hearing Transcript is attached hereto as **Exhibit D**.

**JURISDICTION AND VENUE**

9.    The Court has jurisdiction over these Chapter 11 Cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334.

10.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.    The statutory predicate for the relief requested herein is sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

**FACTUAL BACKGROUND**

12.    On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

**I.    The Ad Hoc Committee's Formation.**

13.    On December 2, 2022, just three weeks after the commencement of these Chapter 11 Cases, and thirteen days before the appointment of the Official Committee, the Ad Hoc Committee was formed.  Individual Dotcom Creditors were limited in their ability to collectively organize at the outset of these Chapter 11 Cases given the redaction of Dotcom Creditors' contact information on the docket, the language barriers inherent with an entirely foreign customer base, and the general unfamiliarity with the chapter 11 bankruptcy process.  The Ad Hoc Committee grew its membership organically, solely from inbound interest from Dotcom Creditors and referrals to Counsel.  This approach by Counsel required considerable time, diligence, and effort during the Substantial Contribution Period.[14]

---

[14] *See* Reimbursement Agreement Hearing Transcript at 13:23-14:1 (Debtors counsel: "The ad hoc committee was formed very early on in these cases and has continued to both grow and evolve to be representative of the vast and diverse group of FTX.com customers.").

14.     Membership of the Ad Hoc Committee steadily grew from one member in early December 2022 to approximately thirty-five members and approximately $2 billion in aggregate claims[15] at the end of the Substantial Contribution Period. Over the course of the Chapter 11 Cases, the Ad Hoc Committee represented approximately 100 individual members holding over $6 billion in aggregate claims against the Debtors.[16]

## II.     The Ad Hoc Committee's Adversary Proceeding.

15.     On December 29, 2022, the Ad Hoc Committee filed an adversary proceeding against the Debtors styled as the *Ad Hoc Committee of Non-US Customers of FTX.com v. FTX Trading Ltd.,* Adv. Pro. No. 22-50514 (JTD) (the "Adversary Proceeding") to resolve the preeminent gating issue in these Chapter 11 Cases, ownership of assets held on the Dotcom Exchange. On March 24, 2023, the Ad Hoc Committee filed the *Ad Hoc Committee of Non-US Customers of FTX.com's Motion for Partial Summary Judgment* [A.D.I. 10] seeking a limited determination from the Court regarding the existence of a trust over assets on the Dotcom Exchange.

16.     On April 21, 2023, through a stipulation and agreed order by and between the Ad Hoc Committee and the Debtors, the Adversary Proceeding was stayed for a period of three months to permit good-faith negotiations between the parties. [A.D.I. 18]. On August 2, 2023, given the progress of the negotiations, the Adversary Proceeding was stayed indefinitely [A.D.I. 23].

---

[15] *See Verified First Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1580].

[16] *See Verified Ninth Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 26058].

17.     After staying the Adversary Proceeding and nearly six months of negotiating towards a resolution, on October 16, 2023, the Debtors, the Ad Hoc Committee, the Class Action Plaintiffs, and the Official Committee executed the PSA. The Ad Hoc Committee was able to leverage its large membership base, and the arguments advanced in the Adversary Proceeding to secure cost-saving resolutions on a global preference settlement, a priority distribution to Dotcom Creditors, and consent rights over material agreements in the PSA.  The PSA also importantly resolved the threshold customer property ownership disputes raised by the Adversary Proceeding. The Debtors acknowledged the Ad Hoc Committee's role in reaching this important resolution:

> "The ad hoc committee commenced, as Your Honor knows and will recall, an adversary proceeding early on in these cases asserting property interest in the debtor's digital assets. The fair resolution of those claims has been an important issue for the debtors to discuss and resolve as part of this plan formation process."[17]

**III.     The Reimbursement Agreement.**

18.     Given the critical role of the Ad Hoc Committee, on August 23, 2023, the Debtors filed the *Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 2238] seeking authorization to reimburse the Ad Hoc Committee's professionals on a go-forward basis. After resolving initial concerns from the Official Committee and the U.S. Trustee, the Debtors filed the Amended Reimbursement Motion. The Amended Reimbursement Motion was supported by the *Declaration of John J. Ray III in Support of Amended Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3700] (the "Ray Declaration"), which is attached hereto as **Exhibit F** and incorporated herein by reference.

---

[17] *See* Reimbursement Agreement Hearing Transcript at 14:1-14:6.

19.     On November 15, 2023, the Court found that the Ad Hoc Committee provided a substantial benefit to these cases and approved the Amended Reimbursement Motion.

> THE COURT: . . . I'm satisfied under the unique facts and circumstances of this case, not least of which is the millions of customers that are involved here, that it makes sense that there be at least one voice -- or in this case 66, I guess, voices -- who can act through counsel to help steer this process to a plan of reorganization, given the diversity of the interests, as [Debtors' counsel] pointed out and [Ad Hoc Committee's counsel] pointed out, there's this diversity of interests between those who are creditors and also customers and those who are just creditors.
>
> And I think having the ad hoc committee involved in that process is beneficial to the estate as a whole and, therefore, I will overrule the objections and will approve the debtors, agreeing to pay the fees as outlined in their reimbursement agreement with the ad hoc committee.

Reimbursement Agreement Hearing Tr. at 58:9-23.

## IV.    The Plan.

20.     On September 30, 2024, the Debtors filed the Plan.  The Plan was approved by over 95% of Dotcom Creditors in number and amount. The PSA required signatories to vote in favor of a Plan consistent with the PSA.  Over fifty members of the Ad Hoc Committee signed the PSA, which led to over $5 billion in aggregate claims of Ad Hoc Committee members voting in support for the Plan. The Ad Hoc Committee was, thus, significant in ensuring the Plan's approval and avoiding potential objections to the Plan.

21.     On October 7, 2024, the Court held a hearing to consider confirmation of the Plan (the "Confirmation Hearing").  On October 8, 2024, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404].  On January 3, 2025, the effective date of the Plan occurred. [D.I. 29127].

**RELIEF REQUESTED**

22.     The Ad Hoc Committee seeks, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) allowing the Substantial Contribution Claim; (ii) authorizing and directing the Debtors to pay the Substantial Contribution Claim to Eversheds and Morris Nichols, respectively; and (iii) granting such other relief as the Court deems just, proper, and necessary.

**BASIS FOR RELIEF**

I.    **The Bankruptcy Code Permits Payment of Fees and Expenses Incurred by an Ad Hoc Committee in Making a "Substantial Contribution" in a Chapter 11 Case.**

23.     The Ad Hoc Committee submits this Application pursuant to section 503(b) of the Bankruptcy Code, Bankruptcy Rule 2016, and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

24.     Section 503(b) of the Bankruptcy Code provides for the allowance of administrative expenses generally, and sections 503(b)(3)(D) and 503(b)(4) operate in tandem to require the payment of reasonable fees and actual necessary expenses incurred in making a substantial contribution to a chapter 11 case.[18]   Section 503(b)(3)(D) of the Bankruptcy Code aims to balance two objectives: encouraging meaningful creditor participation in the chapter 11 process while keeping administrative expenses to a minimum to enhance creditor recoveries. *Lebron*, 27 F.3d at 944.

25.     Although the term "substantial contribution" is not defined in the Bankruptcy Code, in determining whether a party has made a "substantial contribution," courts have found that "the

---

[18] Section 503(b)(3)(D) of the Bankruptcy Code provides that "there shall be allowed administrative expenses, including . . . the actual, necessary expenses, other than compensation and reimbursement specified in [Section 503(b)(4)], incurred by . . . a committee representing creditors . . . other than a committee appointed under section 1102 of this title, in making a substantial contribution" in a chapter 11 case. 11 U.S.C. § 503(b)(3)(D).

applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944 (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).

26.     Among the factors typically considered are whether the services benefited the creditor body as a whole and whether they were duplicative of services rendered by the debtor's or official committee's professionals. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 121 (Bankr. D. Del. 2005).  Courts evaluate contributions in hindsight to determine an applicant's actual benefit to the case. *See Worldwide Direct*, 334 B.R. at 121 (citing *In re Granite Partners, L.P.*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997)).  Said differently, here, the Ad Hoc Committee must demonstrate that it provided an actual benefit that fostered the Debtors' reorganization without duplicating the efforts of the Debtors or Official Committee.

**II.     The Ad Hoc Committee Provided an Actual and Demonstrable Benefit to the Estates.**

   **A.     The Ad Hoc Committee Collectively Organized the Dotcom Creditors.**

27.     As discussed above, the Ad Hoc Committee was able to efficiently and effectively mobilize a critical mass of Dotcom Creditors during the Substantial Contribution Period.  Starting with just one member in December 2022, the Ad Hoc Committee was able to grow through referrals and inbound interest to thirty five members holding over $2 billion in aggregate claims against the Debtors by the end of the Substantial Contribution Period.  Courts in this district have found a substantial contribution when a party "eases the burden on the estate" by identifying, uniting, and coordinating a disparate group of creditors, whose coordination ultimately led to a consensual restructuring. *M&G*, 599 B.R at 264–65. Like in *M&G*, the Ad Hoc Committee, provided a valuable coordinating function for the estates, amassing a sizeable group of Dotcom

Creditors from nearly three dozen countries with varied interests, and ultimately, helping attain the consensual confirmation of the Plan.

**B.    The Ad Hoc Committee's Efforts Assisted in Resolution of Customer Property Rights and Avoidance of Litigation.**

28.    The Ad Hoc Committee effectively acted as the singular point of contact with the Debtors and other constituencies on key issues to Dotcom Creditors. Without the Ad Hoc Committee serving this role, the Debtors would have been relegated to the untenable position of individually negotiating or litigating with hundreds—if not thousands—of Dotcom Creditors. *See In re Celsius Network, LLC*, 2024 Bankr. LEXIS 493, at *50 (Bankr. S.D.N.Y. Feb. 29, 2024) (granting a substantial contribution claim to an ad hoc group on account of "their role as representative for a numerous and diffuse class of creditors who could not otherwise be bargained with collectively"). In bringing and ultimately resolving the Adversary Proceeding, the Ad Hoc Committee advanced the resolution of the largest gating issue in these Chapter 11 Cases without the Debtors having to address ownership claims on an individual basis. The very existence of the Ad Hoc Committee, and the value-maximizing resolution of the Adversary Proceeding, allowed for "the possibility of settlement discussions, and the ultimate effectuation of the resulting settlements, rather than the Debtors burning through estate resources by playing whack-a-mole with thousands of individual creditors." *Id.* at *45.

29.    Here, the settlement of the Adversary Proceeding ensured that Dotcom Creditors received a priority distribution of estate assets, reflecting the issues stemming from ownership of customer property. Courts have found that "services that substantially contributed to the proper allocation of Debtors' value among stakeholders" are eligible for compensation under section 503(b) of the Bankruptcy Code. *In re Mirant Corp.*, 354 B.R. 113, 132 (Bankr. N.D. Tex. 2006), *aff'd* F. App'x 824 (5th Cir. 2009).

**C.    Uncontroverted Testimony Demonstrates the Ad Hoc Committee's Substantial Benefit to these Chapter 11 Cases.**

30.    "Corroborating testimony by a disinterested party... has proven to be a decisive factor in awarding compensation." *M & G*, 599 B.R. at 262 (citing *In re KiOR, Inc.*, 567 B.R. 451, 459 (D. Del. 2017)). In the Ray Declaration—filed in support of the Amended Reimbursement Motion—the Debtors' CEO's uncontroverted testimony provides support for the unique contributions made by the Ad Hoc Committee during the Chapter 11 Cases.

31.    The Debtors' CEO noted that "the Debtors have derived substantial benefits of the Ad Hoc Committee's support and cooperation to date . . ." Ray Decl. ¶ 14. And that "it is critical to have a centralized source representing the interests of FTX.com customers in the Debtors' plan process. There are millions of individual FTX.com customers and negotiating with all of them, or even a large subset of them, would be impracticable." Ray Decl. ¶ 15. Finally, the Debtors' CEO stated that "[t]he existence of the Ad Hoc Committee has streamlined the consensus-building process." Ray Decl. ¶ 16.

32.    In addition to the Ray Declaration, the representations of key constituencies at the Confirmation Hearing corroborates, and further demonstrates, the Ad Hoc Committee's benefits to these Chapter 11 Cases and the unique, significant, and beneficial role that the Ad Hoc Committee performed during the Substantial Contribution Period (and throughout these cases).

> Counsel to the Debtors: "We included in the disclosure statement an unusual amount of background . . . [including] the comprehensive work done by the debtors, the creditors committee, the ad hoc committee of customers to explore strategic alternatives to the plan . . ." [19]

---

[19] *See* Hr'g Tr. at 14:4-10, *In re FTX Trading Ltd.*, (Bankr. D. Del. Oct. 7, 2024) (the "Confirmation Hearing Transcript"). The Confirmation Hearing Transcript is attached hereto as **Exhibit E**.

Counsel for the Class Action Plaintiffs: "None of [the Plan's beneficial compromises] could have been accomplished without the cooperation of the [Official] Committee, Mr. Ray, the Debtors, and the Ad Hoc Committee as we worked through that process . . . in order to get an equitable resolution for all customers, the U.S. customers and the dot com customers."[20]

D.    **The Ad Hoc Committee's Services Were Not Duplicative.**

33.    The Ad Hoc Committee's services were not duplicative of other constituencies in these Chapter 11 Cases. The Official Committee was mandated to represent the interests of all unsecured creditors.[21] Contrastingly, the Ad Hoc Committee was focused on the interests of the Dotcom Creditors.

34.    In addition, during the Substantial Contribution Period, the Ad Hoc Committee alleged that the Dotcom Creditors were not unsecured creditors and instead had a property interest in the assets on the Dotcom Exchange.  As such, during the applicable period, the interests represented by the Ad Hoc Committee were different from, and served as an important counterpoint, to the interests represented by the Official Committee.[22]

35.    Indeed, at the Amended Reimbursement Motion hearing, counsel to the Official Committee acknowledged the significant role of the Ad Hoc Committee in negotiating with the Official Committee and executing the PSA: "the Plan Support Agreement is a significant development, and the Ad Hoc Committee and the other stakeholders around the table were important parts in getting us to where we are now." Reimbursement Agreement Hearing Tr. at 34:11-13.  Debtors' counsel echoed that sentiment stating that "[t]he Debtors believe that there's

---

[20] *Id*. at 59:6-11.

[21] *See In re Kensington Int'l, Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[I]t is established that a Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole[.]").

[22] *See* Reimbursement Agreement Hearing Tr. at 24:3-10 (Counsel to the Debtors: "I don't view it as a conflict, I just view it as [the Ad Hoc Committee's] representing different interests and to the extent that the ad hoc committee is bringing forward and pressing their interest as property holders, and that is the dynamic that we faced in the negotiation of coming up with the structure for the plan where the committee is representing the interests very well of all unsecured creditors of not only FTX.com, but of the other debtors.").

been a collective benefit to the estates by organizing this plan formation process, by having a counterparty [the Ad Hoc Committee] to speak based on a representative group of the ftx.com creditors to negotiate these issues with and, in doing so, come to a resolution of the pending adversary proceedings, which are the pending litigation on these questions." *Id.* at 52.

36.     The efforts of the Ad Hoc Committee were also not duplicative of the Debtors' efforts; they were complimentary. Due to the Ad Hoc Committee's diverse and large membership base, the Ad Hoc Committee was able to efficiently and effectively keep a pulse on the day-to-day experiences of Dotcom Creditors. This information-gathering role provided an immense benefit to the estates by providing representative feedback to the estates necessary to adapt processes and protocols.

37.     Lastly, the Ad Hoc Committee was not duplicative of the efforts of the Class Action Plaintiffs, as the Class Action Plaintiffs also represented the interests of customers of the FTX.US exchange, and given the limited number of named plaintiffs, served different functions than the Ad Hoc Committee did during the Substantial Contribution Period and during the Chapter 11 Cases.

38.     Simply put, the Ad Hoc Committee's services were demonstrably not duplicative of the services rendered by any other party in these Chapter 11 Cases.

**III.     The Costs and Expenses Incurred by the Ad Hoc Committee Were Reasonable, Necessary, and Beneficial to the Estates.**

39.     After making a finding of substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code, "the Court must determine whether an applicant's expenses were actual and necessary. The applicant must provide sufficient details of each expense incurred for which reimbursement is sought." *In re Summit Metals, Inc.*, 379 B.R. 40, 54 (Bankr. D. Del. 2007). "[A] request for an administrative claim under section 503(b) requires the same level of documentation

Case 22-11068-JTD    Doc 29860    Filed 03/04/25    Page 20 of 21

and substantiation as a request for compensation under section 330." *In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr. D. Del. 2005)

40.     Here, the Ad Hoc Committee submits that the professional fees and expenses submitted by Eversheds and Morris Nichols are reasonable, necessary and beneficial to the Debtors' estates.  The fees and expenses incurred by Counsel commensurate with each of the firm's standard billing rates and comply with section 330 of the Bankruptcy Code. Eversheds and Morris Nichols' timekeeping records for the Substantial Contribution Period are attached hereto as **Exhibit B** and **Exhibit C**, respectively, and are compliant with the Local Rules of the United States Bankruptcy Court for the District of Delaware, including Local Rule 2016-1 and applicable fee standards.

### NOTICE

41.     Notice of this Application will be served on the following parties or, in lieu of, to their counsel, if known: (a) the U.S. Trustee, (b) the Debtors, (c) the Plan Administrator, (d) the FTX Recovery Trust, (e) the Fee Examiner, and (f) all parties required to be given notice under the Interim Compensation Order. The Ad Hoc Committee submits that no other or further notice is necessary.

### CONCLUSION

42.     WHEREFORE, the Ad Hoc Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**; (i) allowing the Substantial Contribution Claim in the aggregate amount of $2,759,336.80; (ii) authorizing and directing the Debtors and/or the Plan Administrator to pay the Substantial Contribution Claim to Eversheds and Morris Nichols, respectively; and (iii) granting such other and further relief as the Court deems just, proper and equitable under the circumstances.

Dated: March 4, 2025
Wilmington, Delaware

*/s/ Jonathan M. Weyand*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Matthew B. Harvey (No. 5186)
Jonathan M. Weyand (No. 6959)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
mharvey@morrisnichols.com
jweyand@morrisnichols.com

-and-

**EVERSHEDS SUTHERLAND (US) LLP**
Erin E. Broderick
Andrew J. Polansky
Michael A. Rogers
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com
andrewpolansky@eversheds-sutherland.com
michaelrogers@eversheds-sutherland.com

Sarah E. Paul
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
sarahpaul@eversheds-sutherland.com

*Counsel for the Ad Hoc Committee of Non-US
Customers of FTX.com*