IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FTX TRADING LTD., *et al.*, | ) | Case No. 22-11068 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: D.I. 27755** |

## MEMORANDUM OPINION AND ORDER

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized joint liquidators (the "**Liquidators**") in the British Virgin Islands' liquidation of Three Arrows Capital, Ltd. ("**3AC**"),[1] have moved for leave to amend the proof of claim filed by 3AC in this case.[2] The original proof of claim ("**Original POC**") asserted claims for preference, conversion, and other avoidance actions totaling $120 million.[3] More than a year later, the Liquidators moved to file an amended proof of claim (the "**Amended POC**") expanding the claims asserted by 3AC to include claims for breach of contract, turnover, unjust enrichment, breach of fiduciary duty, restitution, and other similar claims under the laws of the British Virgin Islands (the "**BVI**"), in addition to the claims asserted in the Original POC. The claims asserted in the Amended POC total $1.53 billion.[4]

---

[1] The Joint Liquidators also serve as foreign representatives of the 3AC debtor, as recognized pursuant to chapter 15 of the Bankruptcy Code in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920(MG) (Bankr. S.D.N.Y. 2022).
[2] Motion of the Joint Liquidators for Leave to Amend Proof of Claim (the "**Motion**"), D.I. 27755.
[3] Declaration of Benjamin S. Beller ("**Beller Decl.**"), D.I. 28588, Ex. O.
[4] Motion, Ex. A.

Debtors have objected to the Motion, asserting that the Original POC was not sufficient to put them on notice of the nature and amount of the claims asserted in the Amended POC, and that the amendment came too late and should be disallowed.[5]

For the reasons discussed below, the Motion is granted.

## BACKGROUND

3AC was a hedge fund with a focus on trading and investing cryptocurrency and other digital assets. It was incorporated in the BVI with an office in Singapore. It was operated and controlled by its founders, Kyle Davies and Su Zhu (together the "**3AC Founders**").[6] 3AC's business, which had a net asset value of over $3 billion as of December of 2021, collapsed in May and June of 2022 in the wake of extreme declines in the cryptocurrency markets.

On June 27, 2022, 3AC commenced liquidation proceedings (the "**3AC Liquidation**") in the BVI and the Liquidators were appointed.[7] Much like a trustee in bankruptcy, the Liquidators were charged with conducting an orderly and fair liquidation of the 3AC debtor and maximizing the value of its assets for the benefit of creditors. As one of the Liquidators testified, there were several roadblocks they needed to overcome before they could make any meaningful progress on these tasks.

First, 3AC had virtually no books or records. The Liquidators were initially denied access to 3AC's office and once they gained access (which required the help of the court in Singapore), they discovered that hard drives had been removed from desktop computers, laptops were missing, and very few other records existed. Essentially, the Liquidators were left with little more than a two-page list of assets that the company still held.[8]

---

[5] Debtors' Objection, D.I. 19795.
[6] Declaration of Russell Crumpler, D.I. 27755-3 ("**Crumpler Decl**.") at 2.
[7] *Id.*
[8] *Id.* at 4.

Second, the Liquidators' attempts to obtain information from the 3AC Founders themselves were mostly futile. After multiple requests, the Founders each made themselves available for a brief discussion, in the presence of their individual counsel, which was limited to explaining how the Liquidators could obtain access to the cryptocurrency exchanges at which 3AC had accounts. The lack of cooperation from the Founders forced the Liquidators to proceed through the court system in multiple countries to obtain orders compelling cooperation, a process that continues to date and has yielded little more than criminal charges against the Founders for non-compliance. Accordingly, the Liquidators needed to recreate the books and records of 3AC through discovery with third parties across the globe.[9]

Despite the lack of information, the Liquidators did know early on that 3AC had accounts on the Debtors' exchange ("**FTX**"). On July 1, 2022, the Liquidators notified FTX (not yet in bankruptcy itself) of their appointment and requested that FTX provide information to assist with the liquidation. A representative of FTX informed the Liquidators on July 7, 2022, that 3AC held an account with FTX that had been frozen and that the value of the account was approximately $3.4 million in cryptocurrencies.[10] Over the next several months, the Liquidators worked with FTX to obtain the transactional records needed to understand the scope of 3AC's business with FTX. However, while the Liquidators were given broad access to the FTX platform, the lack of contextual information available to them hampered their ability to learn much from searching the platform alone.[11] Their attempts continued until November 11, 2022 (the "**Petition Date**"), when FTX itself filed for bankruptcy and the Liquidators' access to the FTX platform was revoked.[12]

---

[9] *Id*. at 5-9.
[10] *Id.* at 11.
[11] Crumpler Decl. at 11-13.
[12] *Id.* at 13.

Following their loss of access to the FTX exchange, the Liquidators retained 3AC's pre-liquidation fund administrator, Ascent Fund Services (Singapore) Pte, Ltd. ("**Ascent**"), to provide them with an overview of 3AC's finances for February 2022 through June of 2022. Having never received full transaction data from FTX, Ascent's analysis was based primarily on deposit, withdrawal, and transfer data.[13]

On April 24, 2023, Ascent provided the Liquidators with a set of documents commonly referred to as a Net Asset Value Pack (or "NAV Pack") for May 2022 (the "**May 2022 NAV Pack**") which suggested that 3AC may have owed $120 million to FTX as of May 31, 2022. This, along with the fact that FTX had not filed a creditor claim in 3AC's Liquidation, led the Liquidators to conclude that 3AC must have repaid the loan to FTX in June of 2022, just before 3AC commenced its Liquidation. Based on this information, the Liquidators filed their Original POC on June 30, 2023, which was the applicable bar date in these cases.[14]

The Original POC described the ongoing status of the investigation and then stated the following:

> Based on the information that the Joint Liquidators have been able to uncover to date in their investigation, the Three Arrows estate has certain claims against the Debtors and their non-debtor affiliates (the "Known Claims"). The Known Claims comprise claims under BVI, New York, Delaware, and other applicable law, including without limitation claims in the nature of preference, conversion, and other avoidance actions, arising from, on information and belief, a purported foreclosure by the Debtors on collateral securing an approximately $120 million purported loan that Three Arrows owed the Debtors as of June l, 2022.
>
> Three Arrows may have additional causes of action against the Debtors based on conduct, acts, omissions, and transactions between and among Three Arrows, the Debtors, and the Debtors' affiliates (including, without limitation, causes of action arising from the Known Claims as asserted against any of the Debtors, as deemed appropriate by the Joint Liquidators based on their ongoing investigation, and as permitted under applicable law). Any such additional claims

---

[13] Crumpler Decl. at 15.
[14] Crumpler Decl. at 14-15; Beller Decl. Exs. J and O.

  remain subject to the Joint Liquidators' ongoing evaluation and investigation. The Joint Liquidators hereby preserve such claims and reserve all rights with respect thereto.[15]

After the Original POC was filed, the Liquidators and the Debtors began to engage in discovery.

  On October 10, 2023, the parties entered into an information sharing agreement, which was followed by diligence requests from the Liquidators to the Debtors at the end of October.

  In mid-December 2023, the Debtors began producing documents to 3AC which consisted primarily of enormous volumes of raw and semi-raw data regarding 3AC's accounts.[16]

  On February 7, 2024, counsel for 3AC reached out to counsel for the Debtor seeking guidance from the Debtor's financial advisor, Alvarez and Marsal ("**A&M**") as to how to decipher the data produced. On March 8, 2024, 3AC's counsel sent a second message to Debtor's counsel, with additional requests. On March 19, 2024, counsel for both parties, along with representatives from A&M, met to discuss 3AC's requests.

  On June 3, 2024, counsel for 3AC reached out to Debtor's counsel again with new requests, but Debtor's counsel stopped responding.[17] On July 2, 2024, after a month of silence, 3AC's counsel emailed FTX's counsel attaching proposed discovery requests in advance of filing a motion for discovery pursuant to Bankruptcy Rule 2004.[18]

  On July 8, 2024, FTX filed their Objection to the Original POC.[19]

---

[15] Declaration of Adam J. Goldberg ("**Goldberg Decl**."), D.I. 27755-4 at 5.
[16] Crumpler Decl. at 16.
[17] Goldberg Decl. at 5-6.
[18] Goldberg Decl. at 6.
[19] Debtors' Objection to Proof of Claim Filed by the Joint Liquidators of Three Arrows Capital Ltd., D.I. 19797.

5

On July 10, 2024, 3AC formally served its discovery requests and notice of deposition. The parties then spent the next few months engaged in discussions regarding the requested discovery.[20]

In the meantime, the Liquidators continued to process and organize the raw data and other information they received. By August of 2024, the Liquidators had learned that as of June 12, 2022, 3AC had approximately $1.53 billion of assets on the FTX platform, and that between the close of business on June 12, 2022, and the close of business on June 14, 2022, nearly all of those assets were liquidated. The Liquidators' analysis further showed that as of the close of business on June 12, 2022, 3AC had a purported liability (called a "negative USD balance") of approximately $1.3 billion which, in the Liquidators' view, 3AC's assets were liquidated to eliminate. In other words, the information obtained by the Liquidators in the year since they filed their Original POC led them to the new conclusion that just two weeks before the commencement of the 3AC Liquidation, the $1.53 billion of assets that 3AC had on the FTX platform were liquidated to satisfy $1.3 billion in liabilities to FTX.[21]

By September 3, 2024, Debtors agreed to make their corporate witness available for deposition and on September 19, 2024, a 30(b)(6) deposition was held. Believing that the Debtors' witness was not properly prepared, and that Debtors had not produced all documents responsive to 3AC's requests, counsel for 3AC indicated that the deposition would remain open.

On September 20, 2024, counsel for 3AC emailed Debtors' counsel formally requesting the missing documents.[22] On October 10, 2024, having still not received the requested documents (or any response to 3AC's multiple requests other than that they were "taken under

---

[20] Goldberg Decl. 6-8.
[21] Crumpler Decl. at 17.
[22] Goldberg Decl. at 8-9.

6

advisement"), counsel for 3AC notified Debtors' counsel of the Liquidators' intention to file a motion to compel production of the documents. The Debtors began producing the requested documents the next day.[23]

The documents produced on October 11, 2024 included two versions of a presentation prepared by A&M for the Debtors regarding 3AC's claims: one dated October 25, 2023, and another dated September 4, 2024 (together the "**A&M Presentations**").[24] The A&M Presentations contain summaries of what happened with respect to 3AC's accounts between June 12, 2022 and June 14, 2022 and were interpreted by the Liquidators as confirming the conclusions they had reached in sorting through the raw data produced by Debtors: "that the $1.59 [ ] billion of assets that [3AC] had on the platform on June 12 were effectively reduced to zero by the 14th of June, and that $1.3 billion of FTX liability was also effectively reduced to zero by that time."[25]

Nevertheless, believing that the production they received from the Debtors remained incomplete, counsel for 3AC made additional requests for information on October 11, October 28, and November 1, 2024.[26]

On November 6, 2024, 3AC filed this Motion, along with its proposed Amended POC. The Amended POC asserts two categories of claims: (1) preference claims under BVI law; and (2) turnover, conversion, unjust enrichment, breach of trust/fiduciary duty, breach of contract, proprietary restitutionary, and undervalue transaction claims under BVI, U.S., Bahamian, and English law, as applicable.

---

[23] Goldberg Decl. at 9.
[24] Goldberg Decl. Exs. 18 and 19.
[25] Transcript of December 12, 2024 Hearing ("**Hearing Transcript**"), D.I. 28807, at 37-38.
[26] Goldberg Decl. at 10-11.

## JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## ANALYSIS

The bar date is an important deadline in bankruptcy cases.  *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *5 (D. Del. Aug. 18, 2022).  "Claims not filed by the bar date are typically discharged, meaning the claimant cannot recover from the debtor or the reorganized debtor."  *Ellis v. Westinghouse Elec. Co.*, 11 F. 4th 221, 232 (3d Cir. 2021).

The Third Circuit has held that amendments to proofs of claim should be freely allowed, but "once the deadline to file claims has passed, 'an amendment to a claim filed post bar-date must be scrutinized to assure that it is not an attempt to file a new claim.'"  *Plains Mktg., L.P. v. Bank of Am., N.A. (In re Semcrude, L.P.)*, 443 B.R. 472, 477 (Bankr. D. Del. 2011) (quoting *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993)).  "Thus, a creditor may not use the claims amendment process to circumvent the claims bar date."  *Id.  See also In re Ben Franklin Hotel Associates*, 186 F.3d 301, 309 (3d Cir. 1999).

"Courts typically apply a two-pronged inquiry when considering whether to allow post-bar-date amendments to proofs of claim."  *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 147924, at *6-7 (D. Del. Aug. 18, 2022).  "First, they must determine whether there was a "timely assertion of a similar claim or demand

8

evidencing an intention to hold the estate liable." *Id.* (quoting *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)).  Second, assuming the first prong is satisfied, "the court must then determine whether it would be equitable to allow the amendment." *Id.*

### First Prong – Timely Assertion of a Similar Claim

"A post-bar-date claim satisfies this prong if it: (1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.*  The focus of this prong is whether the initial proof of claim provided the debtor with reasonable notice of the later claim.  *Id.*

With respect to the first prong, the Debtors assert that the proposed amendment does not sufficiently relate back to the original claim.  Specifically, Debtors argue that the Amended POC asserts claims that are fundamentally different from those raised in the Original POC in every material way.  I disagree.

While the scope of the claims asserted in the Amended POC is certainly larger than that asserted in the Original POC, the facts and circumstances that form the basis for the claims are essentially unchanged.  Specifically, the claims in both the Original POC and the claims in the Amended POC all arise out of the same event: the liquidation of 3AC's account on the FTX platform between June 12 and June 14, 2022, and the simultaneous satisfaction of a liability from 3AC to FTX in roughly the same amount that was liquidated.  Debtors argue that the Original POC describes the transaction at issue more narrowly than this and contend that 3AC should be limited to the Original POC's description of the claims as arising from "a purported foreclosure

9

by the Debtors on collateral securing an approximately $120 million purported loan."[27] But the record before me does not support that result.

The evidence makes clear that the description of the facts contained in the Original POC was based on the limited information that the Liquidators had available to them at that time. The testimony offered by 3AC, explaining the dearth of information at the start of the 3AC Liquidation, the difficulties encountered in gathering the information, and the absence of sufficient context to make sense of any of it, was credible. Further, the evidence also makes clear that while the Liquidators did not have enough data to fully understand 3AC's potential claims until just weeks before they filed their Amended POC, the Debtors had the information necessary to do so nearly a year before and simply failed to share it with the Liquidators. By October 2023, the Debtors had the first of the A&M Presentations in their possession, which included a nearly complete picture of the parties' relationship and the scope of 3AC's potential claims. Yet they gave the Liquidators only the raw data regarding the individual 3AC transactions on the FTX platform, and restricted access to the individuals who might be able to help put the puzzle together. The Debtors' assertion now that the Liquidators should be penalized for failing to assemble the puzzle faster is not well taken.

The overriding purpose of proofs of claim and the rules of law that require their timely submission is to provide a debtor's creditors and other parties in interest with notice of the claims against the estate. The fact that the purportedly limited description in the Original POC prompted the Debtors to evaluate the full scope of the relationship between 3AC and FTX and resulted in the A&M Presentations outlining the Debtors' potential liability demonstrates that the Original POC served its intended purpose. In other words, even if I accepted the Debtors'

---

[27] Original POC.

description of the technical differences between the two proofs of claim, the evidence makes clear that the Original POC had the effect of notifying the Debtors of the possibility of the later asserted claims, which is sufficient to establish that the claims relate back.

Though the Debtors vigorously argue that the A&M Presentations can only be read to mean that Debtors' potential liability to 3AC would be limited to $82 million (as opposed to the more than $1 billion that 3AC now claims), there is nothing in the record to support this position. Debtors did not submit any testimony or other evidence regarding their interpretation of the A&M Presentations or their understanding of the scope of 3AC's claims. The absence of such evidence is particularly telling given that the Debtors withheld producing the A&M Presentations for so long and did not file a claim in the 3AC Liquidation (which the 3AC witness testified would have prompted the earlier filing of an amended proof of claim).[28]

Viewing the circumstances in their entirety, I find that the first prong is satisfied.[29]

**Second Prong – Consideration of the Equities**

The Court must next consider whether it would be equitable to allow the Amended POC. Among the factors considered in deciding this issue are undue delay, bad faith, or a dilatory motive." *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc),* 2022 U.S. Dist. LEXIS 147924 at *7. *See also Valley Media Inc. v. Borders, Inc. (In re Valley Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003). "To avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if it shows 'excusable-neglect.'" *Acthar*, 2022 U.S. Dist. LEXIS 147924

---

[28] Hearing Transcript at 37-38.
[29] It is worth noting the ways in which the proposed amended proofs of claim at issue here are distinguishable from those asserted in this case by Celsius, which I recently disallowed. *See* Memorandum Opinion and Order, D.I. 28891. Unlike the claims asserted here, the original and amended proofs of claim filed by Celsius arose out of completely different facts, Celsius offered no explanation for its delay in filing the amended proof of claim long after the bar date, and Celsius had all facts related to its claims in its possession at all relevant times.

at *7 (citing Fed. R. Bankr. P. 9006(b)(1)). "This also is an equitable determination; it takes into account all of the relevant circumstances regarding the movant's omission, including (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Debtors make several arguments in support of their position that the equitable factors weigh in favor of denying leave to amend but again offer little evidence. First, Debtors argue the Amended POC would impose significant prejudice on the Debtors, pointing to the outsized scale of the new claims and noting that "much, much smaller amounts have been found to be prejudicial in other large bankruptcies."[30] Debtors further argue that they negotiated and filed their plan of reorganization without any knowledge of the substantial new claims, and that the new claims would disrupt plan implementation.[31] But while these arguments may be sound in theory, the Debtors have failed to put forth any evidence to support them. "To establish prejudice, the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Plains Mktg., L.P. v. Bank of Am., N.A. (In re Semcrude, L.P.)*, 443 B.R. 472, 481 (Bankr. D. Del. 2011) (citations omitted). The Debtors have not made this showing here.

Debtors next argue that the Liquidators unduly delayed pursuing the new claims, pointing to the fact that the Liquidators had full access to the 3AC accounts on the FTX platform by late July 2022, and were informed by the May 2022 NAV Pack that there were at least $700 million

---

[30] Debtor's Objection, D.I. 28587 at 35 (citing cases).
[31] *Id.* at 37-39.

in assets on the exchange. Debtors argue that they produced thousands of pages of data to the Liquidators and made their advisors available to answer any questions. Therefore, they contend, any delay was due to the Liquidators' own failure to promptly analyze the data produced and the Liquidators' own strategic choices. I disagree.

As noted above, the evidence submitted suggests that the information in the Liquidators' possession was both incomplete and lacked the context needed for interpretation. The evidence also suggests that the Liquidators were diligent in attempting to obtain the information and that despite having the complete information in their possession, the Debtors repeatedly delayed giving it to them. In other words, the evidence suggests that the delay in filing the Amended POC was, in large part, caused by the Debtors themselves.

Finally, Debtors argue that the Amended POC should not be allowed due to the Liquidators' bad faith and dilatory motive, but again they do not offer any support for these positions. For example, Debtors argue that the parties' differing opinions about why and at whose request the 3AC account was liquidated is proof that the new claims are specious, but they do not cite to any case law or otherwise attempt to demonstrate that the claims are futile as a matter of law. Similarly, Debtors suggest that the Liquidators' failure to inform the Debtors of the magnitude of the amended claims until October (two months after they learned of their scale) is evidence of the Liquidators' dilatory motive. But the Debtors explain neither how they were prejudiced by such purported maneuvering nor what the Liquidators might have gained by further delay.

Having considered all the evidence presented, I find that the balance of the equities is in favor of allowing the Amended POC.[32]

---

[32] I am cognizant of Debtors' argument that post-confirmation amendments are held to a higher standard, *i.e.* that the creditor must offer a "compelling reason" to allow an amendment. Debtors' Objection at 48

13

**CONCLUSION**

For the reasons set forth above, the Motion is GRANTED and the Amended POC is allowed.

It is SO ORDERED.

Dated: March 13, 2025

                                                JOHN T. DORSEY, U.S.B.J.

---

(relying on *Holstein* v. *Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993) ("Confirmation of the plan of reorganization is a second milestone, equivalent to final judgment in ordinary civil litigation. Once that milestone has been reached, further changes [to claims] should be allowed only for compelling reasons."); *IRT Partners L.P.* v. *Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056-57 (11th Cir. 2011) (holding post-confirmation amendment is "not favored, and only the most compelling circumstances justify it.").). Although the Third Circuit has not addressed this issue, Debtors do cite to several cases from courts within this Circuit denying post-confirmation motions to amend that failed to demonstrate compelling reasons for allowance. These cases, however, are distinguishable on their facts. *See, e,g.*, *In re Exide Techs.*, 601 B.R. 271, 294 (Bankr. D. Del. 2019) (noting that "[t]here is nothing to indicate that Exide or its creditors had any reason to believe that the District's claim would increase by more than $40 million dollars after the bar date, much less after Plan confirmation and the effective date"); *CBS Outdoor Inc. v. NextMedia Grp. Inc. (In re NextMedia Grp. Inc.)*, No. 10-1109-SLR, 2011 U.S. Dist. LEXIS 115541, at *10 (D. Del. Oct. 6, 2011) ("CBS's justification for missing the 18-month deadline (basically, that they forgot about it), is not compelling."); *N.Y.C. Hous. Auth. v. G-I Holdings, Inc. (G-I Holdings, Inc.)*, 514 B.R. 720, 760 (Bankr. D.N.J. 2014) ("NYCHA offers no reason — much less a compelling one — for waiting three years after Plan confirmation to purport to amend its Proof of Claim.").