## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket No. 29773 |
| | ) Hearing Date: April 17, 2025, at 10:00 a.m. (ET) |
| | ) Objection Deadline: April 3, 2025, at 4:00 p.m. (ET) |

**OBJECTION OF THE PYTH DATA ASSOCIATION TO
MOTION TO ENFORCE ORDER GRANTING MOTION OF PYTH DATA
ASSOCIATION FOR RELIEF FROM THE AUTOMATIC STAY (ECF 1693)**

The Pyth Data Association (the "PDA"), through its undersigned counsel, files this objection (this "Objection") to the *Motion to Enforce Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay (ECF 1693)* [Docket No. 29773] (the "Motion"). In support of this Objection, the PDA relies on the Declaration of Michael Cahill (the "Cahill Declaration," a copy of which is attached hereto as Exhibit A), and respectfully states as follows:

**Preliminary Statement**[2]

1.      The Motion should be denied. The Court granted the PDA relief from the automatic stay to allow it to remint New PYTH. In granting that relief, the Court gave discretion to the PDA to execute on a Reminting Plan subject to three conditions, one of which is applicable to the Motion: that the Reminting Plan include "reasonable and customary customer identification

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Defined terms used in the Preliminary Statement are defined in the sections that follows. Defined terms used throughout this Objection but not otherwise defined herein shall have the meanings ascribed to such terms in the Stay Relief Motion (as defined below).

procedures that holders of Original PYTH will be required to satisfy in order to receive New PYTH." Stay Relief Order at ¶ 3. The Reminting Plan did exactly that.

2.      The PDA's Board adopted the Reminting Plan, which was submitted to it by the PYT Foundation on August 16, 2023. In accordance with the Stay Relief Order, the Reminting Plan conditioned a party's ability to receive New PYTH on "that [p]arty's completion, satisfactory to PYT Foundation, of any KYC requirements and anti-money laundering due diligence, required by PYT Foundation in its reasonable discretion." Reminting Plan, Annex 2 ¶ 7. To effectuate those KYC/AML requirements, the PYT Foundation hired Synaps, an industry-leading provider of KYC/AML screening.

3.      Synaps deployed a reasonable and customary process that included a liveness test, identity verification, face-matching, anti-money laundering ("AML"), and adverse media screening. No person or entity was exempted from that process, but Do Kwon maintains in the Motion that he should have been given an exception to the liveness test.

4.      In doing so he seeks this Court to act in equity to solve a problem of his own creation. During the three-month period in which parties could satisfy the Synaps-administered KYC/AML process, Kwon was in a detention center in Montenegro, having been arrested and convicted of trying to travel through Montenegro with a fraudulent passport. At the time of his arrest, Kwon was the subject of a South Korean arrest warrant and a defendant in a civil securities fraud enforcement action brought by the U.S. Securities and Exchange Commission and, by the time the three-month period began, Kwon had also been indicted in the United States District Court for the Southern District of New York. The charges that Kwon faced were for a variety of fraudulent conduct stemming from the collapse of the Terra cryptocurrency ecosystem, which he founded.

2

5.      Kwon apparently was unable to pass the threshold liveness test of the Synaps KYC/AML process because of his detention, though the Motion provides no indication that Kwon made any attempt while in jail to seek permission from the relevant authorities in Montenegro so he could access a device for this limited purpose. Instead, through his attorneys, he engaged in some letter writing seeking exceptions to the KYC/AML process and one of his attorneys and his wife made attempts to pass the liveness test on his behalf but were told that their proposed end-around to the liveness test was not permitted. Of course, had Kwon passed the liveness test, he would not have satisfied the AML and adverse media screening components of the KYC/AML process due to his current incarceration (including ongoing AML concerns while detained), conviction, and the pending criminal and civil enforcement charges that he was facing.

6.      The three-month period to complete the KYC/AML process ran from September 7 to December 7, 2023. Kwon made no effort to seek relief from this Court during that wide window of time. Thereafter, on December 14, 2023, as had been communicated numerous times during the KYC/AML process, New PYTH that was allocated to any persons or entities that did not complete the KYC/AML process—which consisted of Kwon and six others—was reallocated to the PDA, a not-for-profit association dedicated to the advancement of the Pyth Network.

7.      The events relevant to the Stay Relief Order conclude as of then, but much of the Motion is devoted to describing subsequent events that have nothing to do with the PDA, let alone the Stay Relief Order. Following the completion of the KYC/AML process, (i) Terraform filed a chapter 11 case on January 21, 2024; (ii) Kwon was found liable in the SEC's securities fraud civil enforcement action on April 5, 2024; (iii) Kwon entered into a settlement relating to the damages phase of that enforcement action in which he agreed to transfer to the Terraform bankruptcy estate "his ownership interest in all PYTH crypto asset tokens" on June 12, 2024; and (iv) the Terraform

3

estate noted its awareness of Kwon's lack of right to any New PYTH in its Disclosure Statement filed on August 8, 2024.[3] The Motion attempts to frame these events to assert that the PDA is somehow enriching itself while preventing Kwon's ability to comply with a settlement agreement with the SEC for the benefit of the Terraform bankruptcy estate. Those insinuations could not be further from the truth: the PDA is a not-for-profit association founded by Pyth Network participants to advance the development of the Pyth Protocol and Network, and the tokens it holds are used for that purpose.

8.     What the Motion makes plain is that Kwon wants this Court to solve another problem of his own making. In entering into an agreement with the SEC to give any PYTH he had to the Terraform bankruptcy estate, he promised to give PYTH that he knew he had already forfeited. The Motion is utterly silent on what, if any, representations and disclosures Kwon made to the SEC when entering into the settlement agreement. That silence is telling, as he now effectively seeks this Court to make good on what at the time was an illusory promise.

## Factual Background

### I.     The Pyth Protocol, the Pyth Network, the PDA, and the Reminting Plan.

9.     The Pyth Protocol is a public blockchain-based software system that aggregates pricing data for various financial assets, such as digital assets and stocks, to provide a realtime public blockchain based feed of prices for such assets.[4] The protocol operates through its native token, PYTH.[5]

---

[3] *See Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited*, Case No. 24-10070 (Bankr. D. Del. 2024) [Docket No. 569] (the "Terraform Disclosure Statement").

[4] *Motion of the Pyth Data Association for Relief from the Automatic Stay* [Docket No. 1632] (the "Stay Relief Motion") Stay Relief Motion ¶ 2.

[5] Stay Relief Motion ¶ 5.

10.     Market data providers and consumers use the Pyth Protocol to provide and receive this financial market data.[6] Together, these users and the technology makeup the Pyth Network, participants of which founded the PDA, a Swiss not-for-profit association created to advance the development of the Pyth Protocol and grow the Pyth Network.[7] The PDA has three primary responsibilities: (1) to develop technology to promote the mission of the Pyth Network; (2) to promote general education and awareness of the Pyth Network; and (3) to encourage Pyth Network development through a grants program.[8]

11.     The ability of the Pyth Protocol to develop and the Pyth Network to grow was jeopardized when the Debtors' filed their bankruptcy petitions on November 11, 2022, and November 14, 2022,[9] as 99.25% of Original PYTH[10] was held in accounts at FTX.[11] To avoid the abandonment of the Pyth Protocol, in coordination with Debtors, who were also holders of Original PYTH, the PDA filed a motion to lift the automatic stay so that it could execute on a reminting plan, pursuant to which Original PYTH would cease to operate in the protocol and New PYTH would be distributed to existing holders and would become the new native token of the protocol, allowing the Pyth Protocol to continue to operate.[12]

---

[6] Stay Relief Motion ¶ 2.

[7] Id. ¶ 3.

[8] Id. ¶ 3.

[9] On November 11, 2022, and with respect to Debtor West Realm Shires, Inc., on November 14, 2022 (collectively, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases" and the "Petition Date").

[10] The originally minted version of PYTH is referred to as "Original PYTH" and the reminted version of PYTH is referred to as "New PYTH").

[11] Id. ¶ 4. The remaining 0.75% of Original PYTH was held in self-custodied wallets by holders and not at FTX. Id. ¶ 4 n.4.

[12] See, e.g., id. ¶ 9. As noted in the Stay Relief Motion, the PDA sought stay relief because Original PYTH were trapped on the FTX exchange and arguably constituted as property of the estate and because the Debtors themselves owned a certain amount of Original PYTH, the value of which would have been affected by any reminting.

12.     On June 23, 2023, the Court entered an order permitting the PDA to execute on the Reminting Plan. [13] The Stay Relief Order required, among other things, that the reminting plan "include reasonable and customary identification procedures that holders of Original PYTH will be required to satisfy in order to receive New PYTH." [14]

13.     On August 16, 2023, the PDA's Board approved the reminting plan submitted to it by the PYT Foundation, a member of the Pyth Network (the "Reminting Plan Resolutions," which include the "Reminting Plan," a copy of which is attached hereto as Exhibit B). [15] The Reminting Plan provided that a party entitled to Original PYTH would receive New PYTH subject to two conditions: (1) execution of a Token Delivery Agreement and (2) "that party's completion, satisfactory to PYT Foundation, of any KYC requirements and anti-money laundering due diligence, required by PYT in its reasonable discretion." Reminting Plan, Annex 2 ¶ 7. [16] If a party entitled to Original PYTH did not complete these requirements by the proposed three-month deadline, then the Reminting Plan provided that the corresponding New PYTH would be provided to the PDA. Reminting Plan, Annex 2 ¶ 8.

14.     With the Reminting Plan having been approved by the PDA Board, the PDA complied with the Court's order and notified the Court that the PDA had endorsed New PYTH and that Original PYTH no longer had any functionality in the Pyth Protocol. *Supplemental*

---

[13] *Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay* [Docket No. 1693] (the "Stay Relief Order") ¶ 2.

[14] Stay Relief Order ¶ 3.

[15] Contrary to the Motion, the PYT Foundation is not an affiliate of the PDA, but a member of the Pyth Network that submitted the Reminting Proposal that was later adopted by the PDA Board. Cahill Decl. ¶ 6.

[16] *See also* Reminting Plan Resolutions § 1.1(c) ("under the Token Remint Proposal each holder of original PYTH token must complete, satisfactory to the PYT Foundation, KYB/KYC requirements and anti-money laundering due diligence which the PYT Foundation conducts in accordance with best industry standards in order to receive replacement PYTH tokens from the PYT Foundation. Where the requirement is not completed within 3 calendar months after the date the replacement PYTH tokens are minted the replacement PYTH token of the respective token holder are reallocated and delivered to the Association").

*Declaration of Michael Cahill in Support of Motion of Pyth Data Association for Relief from the Automatic Stay* [Docket No. 2235].[17]

15.    On August 28, 2023, PYT Foundation and Synaps entered into an agreement ("Synaps Agreement," a copy of which is attached hereto as Exhibit C) whereby Synaps was to develop and administer the KYC and anti-money laundering ("KYC/AML") requirements of the Stay Relief Order. Synaps is a well-known and reputable third-party vendor specializing in KYC/AML procedures that has supported over 600 customers around the world, many of which are the largest operators in the cryptocurrency industry.[18] Synaps's process included a customary liveness test, identity verification, face-matching, and AML and adverse media screening. Exhibit C, App'x 1; Cahill Decl. ¶ 9.

16.    The liveness test, identity verification, and face-matching components of the KYC/AML process required any person that was allocated Original PYTH to submit valid identification, appear live on screen, and have the photo in the valid identification match the person's on-screen appearance. Synaps Agreement App'x 1; Screenshots of the Synaps Platform, attached here to as Exhibit D; Cahill Decl. ¶ 9.

17.    The AML and adverse media screening included, among other things, (i) searching various sanctions and regulatory lists (e.g., lists maintained by national and international bodies) and (ii) searching various media sources to identify adverse media relating to the person undergoing KYC/AML screening (e.g., search media sources for news relating to topics such as fraud, regulatory issues, and other legal and financial difficulties). *See* Exhibit C, App'x 3; Cahill Decl. ¶ 10.

---

[17] Pursuant to the Court's order, the PDA was to submit a declaration upon adoption of the Reminting Plan, the removal of Original PYTH's functionality, and the creation of New PYTH.

[18] *See generally* Synaps, https://synaps.io/about#clients.

## II. **Kwon Is Charged With Fraudulent Activity and Arrested.**

18.     About six months earlier, on or about March 23, 2023, Kwon was arrested in Montenegro for trying to use a fraudulent passport to travel internationally.[19] When he was arrested, he was the subject of a South Korea arrest warrant issued on September 14, 2022,[20] and an Interpol "red notice" issued shortly thereafter.[21]

19.     He was also facing a securities fraud enforcement action at the time of his arrest brought by the Securities and Exchange Commission on February 16, 2023, in connection with the collapse of the Terra ecosystem, which he founded. *See* Complaint, *SEC v. Terraform Labs Pte Ltd.*, No. 23-1346 (S.D.N.Y. Feb. 16, 2023), ECF No. 1. Just after his arrest, Kwon was indicted in the United States District Court for the Southern District of New York, and both South Korea and the United States requested that he be extradited from Montenegro.[22] The civil enforcement and criminal charges that Kwon faced in the United States and the criminal charges that Kwon faced in South Korea were for a variety of fraudulent activity in connection with the Terra

---

[19] *See* Yoonjung Seo, CNN, *Interpol Confirms Arrest of Crypto Fugitive Do Kwon in Montenegro* (Mar. 23, 2023), https://www.cnn.com/2023/03/23/tech/south-korea-do-kwon-terra-fraud-arrest-hnk-intl/index.html; U.S. Dep't of Justice, Press Release, Do Kwon Extradited To The United States From Montenegro To Face Charges Relating to Fraud Resulting In $40 Billion In Losses (Jan. 2, 2025), https://www.justice.gov/usao-sdny/pr/do-kwon-extradited-united-states-montenegro-face-charges-relating-fraud-resulting-40#:~:text=On%20or%20about%20March%2023,Indictment%20on%20March%2023%2C%202023.

[20] Sam Meredith, CNBC, *South Korea Courts Reportedly Issues Arrest Warrant for Terraform Founder Do Kwon* (Sept. 14, 2022), https://www.cnbc.com/2022/09/14/south-korea-court-issues-arrest-warrant-for-terraform-founder-do-kwon.html.

[21] Jin Yu Young, The New York Times, *Interpol Issues 'Red Notice' for South Korean Crypto Founder Do Kwon*, https://www.nytimes.com/2022/09/26/business/interpol-do-kwon-korea-crypto.html (Sept. 26, 2022).

[22] Predrag Milic, AP News, *Montenegro: South Korea, US Seek Extradition of Do Kwon* (Mar. 29, 2023), https://apnews.com/article/montenegro-do-kwon-korea-crypto-extradition-7852c0f9327c0bbbba9aea5dafc4a5aa.

cryptocurrency ecosystem, the crash of which in May 2022 resulted in approximately $40 billion of losses.[23]

20.     Prior to the revelations of fraud and crash of the Terra ecosystem, Kwon had been the President of the PDA's Board, but he resigned from the PDA's Board about a week after the crash. Cahill Decl. ¶ 8.

21.     At about the time when he joined the Board, Kwon and Tribal Invest Corp. ("Tribal"),[24] a member of the Pyth Network and a non-Debtor affiliate of the Debtors, entered into a consulting agreement on May 18, 2021. Pursuant to that agreement, in exchange for providing defined services such as "promotion, marketing and strategic advice relating to the Pyth network," Kwon was to receive 500,000,000 Original PYTH subject to an unlocking schedule set forth in a restricted token grant agreement executed that same day.[25] As amended, that unlocking schedule provided that 125,000,000 Original PYTH would unlock on an annual basis over a four-year period, which was to start six months after Original PYTH was first used in the PYTH protocol (as determined by Tribal in its reasonable discretion). Token Grant Agreement § 4.1. Original PYTH was never useable in the Pyth Protocol, but New PYTH first was usable in the Pyth Protocol on November 20, 2023—which would have made the first unlocking date May 19, 2024, about two years after Kwon resigned from the Board and ceased providing what, if any, services he had

---

[23] Krizstian Sandor and Ekin Genc, Coindesk, *The Fall of Terra: A Timeline of the Meteoric Rise and Crash of UST and LUNA* (Apr. 14, 2024), https://www.coindesk.com/learn/the-fall-of-terra-a-timeline-of-the-meteoric-rise-and-crash-of-ust-and-luna.

[24] Tribal is a non-debtor entity ultimately owned by the Debtors. Neither it nor the Pyth Data Foundation are affiliates of the PDA. Cahill Decl. ¶ 16.

[25] Hereinafter (i) that consulting agreement (as amended, modified, supplemented or restated from time to time) is referred to as the "Consulting Agreement", a copy of which is attached hereto as Exhibit E; (ii) that restricted token grant agreement (as amended, modified, supplemented or restated from time to time, including pursuant to a June 29, 2022 amendment) if referred to as the "Token Grant Agreement", a copy of which is attached hereto as Exhibit F; and (iii) and the Consulting Agreement and Token Grant Agreement are collectively referred to as the "Agreements".

been providing in connection with the service agreement he needed to comply with to receive the tokens granted to him—and the last unlocking date would have been on May 19, 2027. Cahill Decl. ¶ 7.[26]

22.    On June 19, 2023, Kwon was convicted by a Montenegro court for attempting to travel through Montenegro using a fraudulent passport.[27]

## III.    The KYC/AML Process of the Reminting Plan Begins and Kwon Forfeits Any Right He Had to New PYTH.

23.    On September 7, 2023, those entitled to Original PYTH were notified by email of the Reminting Plan. Sept. 7, 2023 Email from PYT Foundation, a copy of which is attached hereto as Exhibit G. This communication stated that to receive New PYTH, those allocated Original PYTH must execute a Token Delivery Agreement and complete the KYC/AML process administered by Synaps no later than December 7, 2023. *Id.* The email also noted that "any Existing Token Holder who fails to complete the two steps above to claim their Token Entitlement by the Deadline will forfeit their Token Entitlement and the Replacement PYTH Tokens will be reallocated and delivered to the Pyth Data Association." *Id.*

24.    On September 13, 2023, Kwon's counsel emailed the PYT Foundation and said that Kwon gave his wife, Daeun Lee, a power of attorney to act on his behalf. *Id.* On September 20, 2023, Kwon's counsel apparently attempted to verify Kwon's identity using her face and Ms. Lee's passport, which was rejected. *See* Kwon Counsel Liveness Test Submission, a copy of which is attached hereto as Exhibit H. Later on September 20, 2023, Ms. Lee apparently attempted to verify

---

[26] At various points in the Motion, Mr. Kwon asserts that the value of the 500,000,000 token was $215 million, presumably based on valuing all 500,000,000 tokens at a given market price. As noted, however, allocated new PYTH was subject to an annual unlocking schedule that did not begin until May 30, 2024.

[27] Reuters, *Montenegro Court Jails "Cryptocurrency King" Do Kwon for Four Months, Media Report* (June 19, 2023), https://www.reuters.com/world/europe/montenegro-court-jails-cryptocurrency-king-do-kwon-four-months-media-2023-06-19/.

Kwon's identity using her face and passport. While Ms. Lee's was able to demonstrate that her face matched her passport, that did not meet the requirements of the liveness test for Kwon. *See* Daeun Lee Liveness Test Submission, a copy of which is attached hereto as <u>Exhibit I</u>.

25.     On October 6, 2023, the PYT Foundation emailed Kwon's counsel and informed her that Kwon himself must complete the liveness test. Exhibit G. Kwon's counsel responded by saying that Kwon was unable to complete the liveness test because he was detained in Montenegro and requested an exception to the proce**ss**. *Id.*

26.     On October 13, 2023, a reminder email was sent to those entitled to Original PYTH advising them "to please complete the Synaps process for KYC/KYB verification as soon as possible." *See* Oct. 13, 2023 Email from PYT Foundation, a copy of which is attached hereto as <u>Exhibit J</u>.

27.     On October 20, 2023, the PYT Foundation again informed Kwon's counsel by email that Kwon himself must complete the KYC process, and that there were no exceptions to that process. Exhibit. G.

28.     On November 21, 2023, Kwon's counsel emailed Synaps saying that Kwon was detained in Montenegro and unable to complete the liveness test. *See* Nov. 21, 2023 Email from A. Jetton to Synaps, a copy of which is attached hereto as <u>Exhibit K</u>. Kwon's counsel also stated that Ms. Lee's attempts to complete the liveness test on behalf of Kwon were not being accepted. *Id.* Synaps responded the next day by confirming Ms. Lee completed a liveness test for herself. *Id.* Kwon's counsel responded by repeating the same message that Kwon was unavailable to complete the liveness test and asking for an exception. *Id.*

29.     On November 30, 2023, the PYT Foundation sent another email to those entitled to Original PYTH noting that "[t]here is **only 1 week left** to complete the claims process and receive

your Token Entitlement," and explaining that "[a]ny Existing Token Holder who fails to complete the process to claim their Token Entitlement by the Deadline will forfeit their Token Entitlement and the Replacement PYTH Tokens will be reallocated and delivered to the Pyth Data Association." *See* Nov. 30, 2023 Email from PYT Foundation, a copy of which is attached hereto as <u>Exhibit L</u>.

30.     On November 30, 2023, Kwon's counsel emailed the PYT Foundation stating that it "dispute[d] Pyth's claim to be able to cause forfeiture of the tokens . . . and d[id] not agree that the tokens (or equivalent Replacement Tokens) may be reallocated and delivered to the Pyth Data Association." *See* Exhibit L. On December 6, 2023, the PYT Foundation again stated to Kwon's counsel that everyone "must pass this standard process and no exceptions can be made." Dec. 6, 2023 Email from PYT Foundation to A. Jetton, a copy of which is attached hereto as <u>Exhibit M</u>. On December 6, 2023, Kwon's counsel again contacted the PYT Foundation, but sought no relief from this Court either from the Synaps-administered KYC/AML process or the impending deadline. *Id.*

31.     On December 7, 2023, the deadline to complete the KYC/AML process ran without Kwon completing its requirements. On December 14, 2023, PYTH that was allocated to any persons or entities that did not complete the KYC process or decided not to participate in the reminting process—which consisted of Kwon and six others—was reallocated to the PDA to be used for the benefit of the Pyth community as previously communicated to the Pyth community numerous times.[28] Cahill Decl. ¶¶ 13-15. Through counsel, Kwon would not reach out again regarding the New PYTH he forfeited until after being found liable for securities fraud, as discussed below.

---

[28] *See* Exhibits G, J, and L.

IV.    **Kwon in Found Liable For Securities Fraud and Agrees to Transfer to the Terra Bankruptcy Estate Already Forfeited PYTH.**

32.    Following the December 14, 2023 transfer of New PYTH to the PDA, Terraform Labs Pte. Ltd. ("Terraform Labs"), which was an entity that had been controlled by Kwon and was also a defendant in the SEC's securities fraud enforcement action,[29] filed a chapter 11 case on January 21, 2024. *In re Terraform Labs Pte. Ltd.*, No. 24-10070 (Bankr. D. Del.) (BLS).

33.    On April 5, 2024, Kwon and Terraform Labs were found liable on securities fraud charges. *See* Verdict, *SEC v. Terraform Labs Pte Ltd.*, No. 1:23-cv-1346 (S.D.N.Y. June 12, 2024), ECF No. 229. On June 12, 2024, the United States District Court for the Southern District of New York entered final judgment against Kwon and Terraform Labs, reflecting Kwon's settlement with the SEC relating to the damages phase of that enforcement action. Despite knowing he already had forfeited any allotment of New PYTH to which he may have been entitled, Kwon agreed to transfer to the Terraform bankruptcy estate "his ownership interest in all PYTH crypto asset tokens that Kwon obtained pursuant to a 2021 token grant agreement." *See* Letter in Support of Proposed Judgment and Final Judgment, *SEC v. Terraform Labs Pte Ltd.*, No. 1:23-cv-1346 (S.D.N.Y. June 12, 2024), ECF Nos. 272, 273 (together, the "SEC Settlement").

34.    On August 8, 2024, the Terraform estate filed the Terraform Disclosure Statement wherein it recognized that Kwon failed to complete the KYC/AML process by the December 7, 2023 deadline and that the consequence for such failure was forfeiture of any right to New PYTH. *See* Terraform Disclosure Statement § IV(G)(c)(ii).

35.    On February 27, 2025, Kwon filed the Motion. On February 28, 2025, Todd R. Snyder, in his capacity as the plan administrator of the jointly administered estates of Terraform,

---

[29] *See* Complaint, *SEC v. Terraform Labs Pte Ltd.*, No. 23-1346 (S.D.N.Y. Feb. 16, 2023), ECF No. 1.

filed the *Terraform Plan Administrator's Joinder to Do Hyeon Kwon's Motion to Enforce Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay* [Docket No. 29808] (the "Joinder").

**Argument**

I.    **Kwon Failed the Reasonable and Customary KYC Process.**

36.    Pursuant to the Stay Relief Order, the Reminting Plan needed to "include reasonable and customer identification procedures that holders of Original PYTH will be required to satisfy in order to receive New PYTH." Stay Relief Order ¶ 3. Such procedures were required by the Reminting Plan approved by the PDA's Board and were implemented by Synaps, an industry leading vendor of KYC/AML screening. The Stay Relief Order did not require particular customer identification procedures to be deployed, just that they be "reasonable and customary," which the Synaps-administered process was. The KYC/AML screening process deployed by Synaps included a liveness test, identity verification, face-matching, and AML and adverse media screening. Synapse Agreement App'x 1; Cahill Decl. ¶ 9.

37.    Kwon argues that requiring him to undergo a liveness test was neither reasonable nor customary. In doing so, he asks for an exception to a requirement from which no one else was exempted (Cahill Decl. ¶ 12), and, contrary to his assertions, he asks for an exception from a standard, customary, and ubiquitous KYC/AML screening practice, and certainly a reasonable one. Should there be an evidentiary hearing in this matter, the PDA will submit further evidence, but the Court need to look no further than the Debtors in these Chapter 11 Cases to determine that it is reasonable and customary to include a liveness test as part of the KYC process—as that is a requirement that individual customers needed to satisfy to receive a distribution in these Chapter

14

11 Cases.[30] The same is true for those submitting claims in the FTX Digital Market Ltd. insolvency case.[31]

38.    Aside from these Chapter 11 Cases, the liveness test is commonplace and certainly customary and reasonable. The Financial Action Task Force, an independent, inter-governmental body that develops and promotes policies to protect the global financial system against money laundering and other crimes, has put forth recommendations that are "recognized as the global anti-money laundering (AML)" standard.[32] Those recommendations, which have been endorsed by over 180 countries, include, among other things, "high-resolution video transmission (allowing for remote identification and verification and proof of 'liveness')."[33]

39.    The Motion focuses on how a power of attorney is a common document used to allow third parties to act on behalf of others; that identification procedures are unnecessary when a person's identify is known to another entity, as Kwon would have been to the PDA; and that the failure to deviate from the liveness test that a detained person being apparently unable to meet was unreasonable. These arguments all miss the point. A power of attorney is used to allow a third party to make a decision on behalf of another, but that has nothing to do with a liveness test. Likewise, just because the PDA is familiar with who Kwon is, that familiarity does not substitute for a person appearing on camera to confirm that they are that known person through a liveness

---

[30] FTX, *KYC Guidelines for Individual Customers*, https://support.ftx.com/hc/en-us/articles/17964384447124-KYC-Guidelines-for-Individual-Customers.

[31]  FTX Digital Markets Ltd., *Claims User Guide*, page 14, https://www.pwc.com/bs/en/services/business-restructuring-ftx-digital-markets/assets/ftx-digital-markets-claim-user-guide.pdf.

[32]  *See* FATF, *Guidance on Digital Identity* (2020), www.fatf-gafi.org/publications/documents/digital-identity-guidance.html

[33]  *See* FATF, *Guidance on Digital Identity* (2020), www.fatf-gafi.org/publications/documents/digital-identity-guidance.html; FATF, *International Standards on Combating Money Laundering and the Financing of Terrorism & Proliferation*, at 7 (Feb. 2025), https://www.fatf-gafi.org/content/dam/fatf-gafi/recommendations/FATF%20Recommendations%202012.pdf.coredownload.inline.pdf.

test. That is, a liveness test is about verifying that the proper person is physically present, a need that does not go away just because the person may be "known." And utilizing a KYC/AML process that includes a reasonable component like a liveness test and not deviating from that component is merely following a reasonably adopted KYC/AML policy.

40.     Having failed the liveness test, Kwon never advanced to the further stages of the KYC/AML process, specifically the AML and adverse media screening components. Even if Kwon passed or was given an exception to the liveness test, he would have failed these further stages, which, like liveness, are ubiquitous in the KYC/AML process. And, again, the Court need to look no further than these Chapter 11 cases for confirmation of that point—as customers must pass the KYC/AML/sanctions screening process performed by Sumsub to receive a distribution in these Chapter 11 Cases.[34] The importance of such procedures is clear, as the Debtors have recognized that "KYC procedures are also needed to implement anti-money laundering controls. These anti-money laundering controls are necessary for the FTX Debtors to mitigate the risk that the Customer Claims process could be used to facilitate money laundering, fund terrorism or result in violations of economic sanctions, thereby limiting regulatory risks and to help ensure a legitimate claims trading market."[35] Such screening is not limited to cryptocurrency platforms or

---

[34]  FTX, *KYC Statuses Explained*, https://support.ftx.com/hc/en-us/articles/17964456562068-KYC-Statuses-Explained (Mar. 5, 2025) ("What happens if my KYC status says "Failed"? It means that we were not able to verify the documentation you provided to us or otherwise you have not passed our KYC / AML / Sanction screening process."); FTX, *KYC Service Providers and Information Security*, https://support.ftx.com/hc/en-us/articles/17964134185236-KYC-Service-Providers-and-Information-Security (Aug. 3, 2023) ("KYC for personal retail accounts will be performed by our third-party partner Sumsub. Sumsub is a highly experienced third-party KYC and AML screening vendor. KYC for institutional accounts will be performed by our third-party partner BitGo. BitGo is a highly experienced vendor that is able to provide KYC services for institutions.").

[35]  FTX, *FTX Claims KYC*, https://support.ftx.com/hc/en-us/articles/17964036797204-FTX-Claims-KYC (Aug. 3, 2023).

bankruptcy proceedings, but is the standard process for financial institutions and others holding or distributing funds.[36]

41.    While the KYC process was ongoing, Kwon was incarcerated in Montenegro after having been convicted of attempting to travel on a fraudulent passport (while he was the subject of a South Korean arrest warrant and Interpol "red notice"),[37] was in the midst of a SEC enforcement action for securities fraud,[38] and was facing extradition to South Korea and the United States to face criminal charges.[39] The criminal charges for which Kwon was originally indicted in the United States were for a variety of fraudulent conduct relating to the Terra cryptocurrency ecosystem.[40] That indictment was superseded in January 2025 to include a money laundering charge relating to Kwon's conduct during the period in which he was evading arrest.[41] But even during the period of Kwon's incarceration in Montenegro, there were reports of the movement of at least $25 million worth of assets from crypto wallets linked to Kwon or that Kwon was believed

---

[36] *See, e.g.*, Debra Roberts, JPMorgan Chase & Co. Global Anti-Money Laundering Compliance Program (Feb. 2025), https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/documents/global-aml-program.pdf (JPMorgan Chase & Co.'s AML program consists of a KYC program plus additional due diligence and an AML risk assessment at the customer level).

[37] CoinTelegraph, *Do Kwon gets 4 months in prison in Montenegro on fake passport charges* (June 19, 2023), https://cointelegraph.com/news/do-kwon-sentenced-to-4-months-in-prison-in-montenegro-on-fake-passport-charges. The official statement from the Montenegro Court can be found here: https://sudovi.me/ospg/sadrzaj/D264.

[38] *See* No. 23-cv-1346 (S.D.N.Y. filed Feb. 16, 2023).

[39] Predrag Milic, AP News, *Montenegro: South Korea, US Seek Extradition of Do Kwon* (Mar. 29, 2023), https://apnews.com/article/montenegro-do-kwon-korea-crypto-extradition-7852c0f9327c0bbbba9aea5dafc4a5aa.

[40] *United States v. Kwon*, No. 23-cr-151 (S.D.N.Y. Mar. 23, 2023), ECF. No. 1.

[41] *United States v. Kwon*, No. 23-cr-151 (S.D.N.Y. Jan. 2, 2025), ECF. No. 10 ¶¶ 5, 44-51, 110-113.

to control.[42] Under these circumstances, any reasonable and customary KYC/AML process, including Synaps's, would have found such conduct disqualifying.[43]

42.    Since the Reminting Plan included reasonable and customary customer identification procedures as required by the Stay Relief Order, the Motion should be denied.

## II.    Kwon Sat on His Rights, Has Not Acted Equitably, and His Belated Requests in the Motion are Untimely and Should be Denied.

43.    "Bankruptcy courts . . . are courts of equity and 'apply the principles and rules of equity jurisprudence.'" *Young v. United States*, 535 U.S. 43, 50 (2002) (quoting *Pepper v. Litton*, 308 U.S. 295, 304 (1939)). Putting aside Kwon's failure to pass the KYC/AML screening, he also sat on and forfeited any rights he had and now seeks this Court to act in equity to undo a self-inflicted wound. Where a movant's alleged harm, like Kwon's here, "is largely self-inflicted, that fact severely undermines a claim for equitable relief." *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024) (internal citations omitted); *accord State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (same and collecting cases). And in order for this Court to afford Kwon equitable relief, Kwon must come before it having himself acted equitably. *Ramirez v. Collier*, 595 U.S. 411, 434 (2022) ("[A] party's inequitable conduct can make equitable relief inappropriate. When a party seeking equitable relief 'has violated conscience, or good faith, or other equitable principle,

---

[42]    DLNews, *A Wallet Likely Linked to Do Kwon Moves $7m while crypto king in jail*, http://dlnews.com/articles/people-culture/a-wallet-likely-linked-to-do-kwon-moves-7m-while-crypto-king-in-jail (May 11, 2023); Yahoo! Finance, Ddanny Park, *How did Do Kwon move $18 mln in stablecoins to "unfreezable" tokens while in Montenegro jail?* (July 6, 2023), https://finance.yahoo.com/news/did-kwon-move-us-18-025550769.html ("'It seems [Kwon] had an aide outside of jail — [moving funds] is possible if he had previously handed over his private keys when he got out on bail the last time or by some other means,' Cho said").

[43]    For example, Bank of America's AML policy notes that it may "terminate customer relationships based on suspicion of criminal activity or based upon a determination that a customer presents financial crimes risk." Bank of Am., Anti-Money      Laundering,      https://investor.bankofamerica.com/corporate-governance/governance-library/anti-money-laundering#:~:text=It%20is%20the%20policy%20of,conducting%20investigations%20of%20financ%20crime.

in his prior conduct, then the doors of the court will be shut against him.'" (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)). He has not.

44.     For starters, the Motion is void of any reference to Kwon seeking permission from any applicable authority in Montenegro so that he could have access to a device for the limited purpose of complying with the liveness test. Instead, through counsel, he tried to go around the liveness test. With his letters and other attempts having been rebuffed, instead of seeking relief from this Court, Kwon did nothing despite having ample opportunity to seek relief. Kwon could have sought relief from the Court in June 2023 when the PDA filed the Stay Relief Motion and knowing that he needed to complete the KYC/AML process to receive New PYTH; or in August 2023 when the PDA Board adopted the Reminting Plan; or in September 2023, October 2023, November 2023, or December 2023 when Kwon was reminded about the consequences of failing to complete the KYC/AML process by December 7, 2023. But he chose not to. Instead, he sat on whatever rights he had.

45.     Then he made things worse. About six months later, Kwon entered into the SEC Settlement, effectively agreeing to deliver New PYTH tokens to the Terra Plan Administrator that he had already forfeited. Kwon sought no relief from this Court before entering into the SEC Settlement, but now asks this Court to act in equity to help him make good on his promises. The Court should not oblige him. It is axiomatic that "[h]e who seeks equity must do equity." *Manufacturers' Fin. Co. v. McKey*, 294 U.S. 442, 449 (1935). Kwon seeks equity, but he has not done it.

46.     Even now, Kwon makes no argument that excuses his neglect of not seeking prior relief. While the Joinder attempts to explain the delay, it merely seeks to offer an explanation as to why the Motion went unfiled between October 2024 and the present, but by October 2024,

Kwon was already nearly a year past the deadline to complete the KYC/AML process and months past entering into the settlement agreement with the SEC.

47.     Accordingly, the Motion should also be denied as a result of Kwon's conduct and his failure to seek timely relief.

**III.    There was No Abuse of Process Warranting Relief Under Section 105(a).**

48.     There was no abuse of process in connection with the Stay Relief Motion as the PDA has always complied with its obligations. Section 105(a) does not empower bankruptcy courts with a "roving commission to do equity," *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004), but that is precisely what the Motion seeks with its scattershot attempts to frame its sought-after relief as appropriate pursuant to § 105(a).

49.     The Motion argues that the requirement that forfeited New PYTH would be reallocated to the PDA was concealed from the Court. Where forfeited New PYTH would come to rest simply was not an issue before the Court in the Stay Relief Motion. The Stay Relief Order imposed three conditions on the Reminting Plan, that it must:

> (i) provide that the Debtors and their affiliates shall receive, for no payment, New PYTH in an amount equal to the percentage of Original PYTH that the Debtors and their affiliates owned as of the Petition Date, (ii) include reasonable and customary customer identification procedures that holders of Original PYTH will be required to satisfy in order to receive New PYTH, and (iii) provide that the New PYTH to be received by the Debtors and their affiliates shall not be subject to any trading restrictions or contractual lock-ups that are more restrictive than the trading restrictions or contractual lock-ups applicable to the Original PYTH owned by the Debtors and their affiliates in effect as of the Petition Date.

50.     There is no contention that the first and third conditions, which relate to the Debtors and their affiliates, were satisfied, and the second condition was satisfied for the reasons detailed in this Objection. Outside of those conditions, the PDA was given discretion in how to implement the Reminting Plan.

—

51.     Here, everyone allocated Original PYTH, including Kwon, were notified again and again that per the Reminting Plan any forfeited New PYTH would default to the PDA. *See, e.g.*, Exhibits G, J, and L. That extensive notice is hardly concealment.

52.     Kwon's argument that the PDA concealed the effect of failing to satisfy KYC/AML to enrich itself is flat wrong and absurd. The PDA's purpose is to advance the Pyth Network and Protocol and it will use all reallocated New PYTH for that purpose. Cahill Decl. ¶ 15. If any party is seeking to enrich itself unfairly, it is Kwon, who is looking to obtain rights he knowingly forfeited and to which he has no right.

53.     Lastly, in no way is the PDA "obstruct[ing] Kwon's ability to comply" with the SEC Settlement. Mot. ¶ 5. As recounted above, the KYC/AML process was completed nearly six months before Kwon entered into the SEC Settlement. While the Motion tries to obfuscate sequence of events, the timeline speaks for itself: The PDA filed the Stay Relief Motion in June 2023, adopted the Reminting Plan in August 2023, and set a December 2023 deadline to pass the KYC/AML. Kwon and the SEC did not enter into the SEC Settlement until June 2024. Kwon agreeing to give away tokens he forfeited six months earlier is unfortunate, but the blame lies with Kwon and Kwon alone.

## Conclusion

WHEREFORE, the PDA respectfully requests that the Court deny the Motion as set forth herein and grant such other relief as the Court finds just and appropriate.

Dated: April 3, 2025     **SAUL EWING LLP**

     By: */s/ Mark Minuti*
        Mark Minuti (DE Bar No. 2659)
        1201 N. Market Street, Suite 2300
        P.O. Box 1266
        Wilmington, DE 19899
        Telephone: (302) 421-6800
        Fax: (302) 421-6813
        mark.minuti@saul.com

        -and-

        **KATTEN MUCHIN ROSENMAN LLP**
        Peter A. Siddiqui (admitted *pro hac vice*)
        Elliott M. Bacon (admitted *pro hac vice*)
        Ethan D. Trotz (admitted *pro hac vice*)
        525 W. Monroe Street
        Chicago, IL 60661
        Telephone: (312) 902-5200
        peter.siddiqui@katten.com
        elliott.bacon@katten.com
        ethan.trotz@katten.com

        *Attorneys for the Pyth Data Association*