# EXHIBIT E

CONSULTING AGREEMENT

This Consulting Agreement ("*Agreement*") is entered into as of May 18, 2021 (the "*Effective Date*"), between Tribal Invest Corp, a Panamanian corporation ("*Company*"), and Do Hyeong Kwon ("*Consultant*").

Company and Consultant desire to have Consultant perform services for Company, subject to and in accordance with the terms and conditions of this Agreement.

THEREFORE, the parties agree as follows:

**1.      SERVICES**

1.1      Statement of Work.  Company and Consultant have executed (or will execute) a statement of work, substantially in the form attached hereto as Exhibit A, that describes the specific services to be performed by Consultant (as executed, the "*Statement of Work*").  The Statement of Work will expressly refer to this Agreement, will form a part of this Agreement, and will be subject to the terms and conditions contained herein.  The Statement of Work may be amended only by written agreement of the parties.

1.2      Performance of Services.  Consultant will perform the services described in the Statement of Work (the "*Services*") in accordance with the terms and conditions set forth in the Statement of Work and this Agreement.

1.3      Consultant Personnel.  Consultant will perform all Services only through its regular, full-time employees and through subcontractors approved in advance in writing by Company (Consultant's employees and approved subcontractors, if any, are referred to collectively as the "*Consultant Personnel*").  Consultant acknowledges and agrees that all Consultant Personnel are subject to Company's continuing acceptance and that Company expressly reserves the right at any time to reject any Consultant Personnel for any reason.  To the extent that any Consultant Personnel are required to perform Services at a Company facility, Consultant will first ensure that such Consultant Personnel have been informed of Company's workplace, computer and security policies and procedures, and will comply with such policies and procedures at all times.

1.4      Delivery.  Consultant will deliver to Company the deliverables, designs, modules, software, products, documentation and other materials specified in the Statement of Work (individually or collectively, "*Deliverables*") in accordance with the delivery schedule and other terms and conditions set forth in the Statement of Work.

**2.      PAYMENT**

2.1      Fees.  As Consultant's sole compensation for the performance of Services, Company will pay Consultant the fees specified in the Statement of Work in accordance with the terms set forth therein. Without limiting the generality of the foregoing, Consultant acknowledges and agrees that, if specified in

the Statement of Work, Company's payment obligation will be expressly subject to Consultant's completion or achievement of certain milestones to Company's reasonable satisfaction.

2.2     Expenses.  Unless otherwise specified in the Statement of Work, Company will not reimburse Consultant for any expenses incurred by Consultant in connection with performing Services.

2.3     Payment Terms.  Unless otherwise provide in the Statement of Work, all fees and other amounts set forth in the Statement of Work, if any, are stated in and are payable in U.S. dollars.  Unless otherwise provided in the Statement of Work, Consultant will invoice Company on a monthly basis for all fees and expenses payable to Consultant.  Company will pay the full amount of each such invoice within thirty (30) days following receipt thereof, except for any amounts that Company disputes in good faith.  The parties will use their respective commercially reasonable efforts to promptly resolve any such payment disputes.

**3.     RELATIONSHIP OF THE PARTIES**

3.1     Independent Contractor.  Consultant is an independent contractor and nothing in this Agreement will be construed as establishing an employment or agency relationship between Company and Consultant or any Consultant Personnel.  Consultant has no authority to bind Company by contract or otherwise.  Consultant will perform Services under the general direction of Company, but Consultant will determine, in Consultant's sole discretion, the manner and means by which Services are accomplished, subject to the requirement that Consultant will at all times comply with applicable law.

3.2     Taxes and Employee Benefits.  Consultant will report to all applicable government agencies as income all compensation received by Consultant pursuant to this Agreement.  Consultant will be solely responsible for the payment of all compensation to all Consultant Personnel, as well as for the payment of all withholding taxes, social security, workers' compensation, unemployment and disability insurance or similar items required by any government agency.  Consultant Personnel will not be entitled to any benefits paid or made available by Company to its employees, including, without limitation, any vacation or illness payments, or to participate in any plans, arrangements or distributions made by Company pertaining to any bonus, stock option, profit sharing, insurance or similar benefits.  Consultant will indemnify and hold Company harmless from and against all damages, liabilities, losses, penalties, fines, expenses and costs (including reasonable fees and expenses of attorneys and other professionals) arising out of or relating to any obligation imposed by law on Company to pay any withholding taxes, social security, unemployment or disability insurance or similar items in connection with compensation received by Consultant pursuant to this Agreement.

3.3     Liability Insurance.  Consultant acknowledges that Company will not carry any liability insurance on behalf of Consultant.  Consultant will maintain in force adequate liability insurance to protect Consultant from (i) claims under workers' compensation and state disability acts, and (ii) claims of personal injury (or death) or tangible or intangible property damage (including loss of use) that arise out of any act or omission of Consultant or any Consultant Personnel.

**4.     OWNERSHIP**

4.1     Disclosure of Work Product.  Consultant will, as an integral part of the performance of Services, disclose in writing to Company all inventions, products, designs, drawings, notes, documents, information,

documentation, improvements, works of authorship, processes, techniques, know-how, algorithms, specifications, biological or chemical specimens or samples, hardware, circuits, computer programs, databases, user interfaces, encoding techniques, and other materials of any kind that Consultant may make, conceive, develop or reduce to practice, alone or jointly with others, in connection with performing Services, or that result from or that are related to such Services, whether or not they are eligible for patent, copyright, mask work, trade secret, trademark or other legal protection (collectively, "***Consultant Work Product***"). Consultant Work Product includes without limitation any Deliverables that Consultant delivers to Company pursuant to Section 1.4.

4.2     Ownership of Consultant Work Product.  Consultant and Company agree that, to the fullest extent permitted by applicable law, Consultant hereby grants or will cause to be granted to Company a non-exclusive, royalty-free, irrevocable, perpetual, transferable, worldwide license (with the right to sublicense) to each item of Consultant Work Product.  Consultant hereby grants or will cause to be granted to Company a non-exclusive, royalty-free, irrevocable, perpetual, transferable, worldwide license (with the right to sublicense) to  all right, title and interest in and to the Consultant Work Product, including all worldwide patent rights (including patent applications and disclosures), copyright rights, mask work rights, trade secret rights, know-how, and any and all other intellectual property or proprietary rights (collectively, "***Intellectual Property Rights***") therein.

4.3     Moral Rights.  To the fullest extent permitted by applicable law, Consultant also hereby irrevocably transfers and assigns to Company, and agrees to irrevocably transfer and assign to Company, and waives and agrees never to assert, any and all Moral Rights (as defined below) that Consultant or any Consultant Personnel may have in or with respect to any Consultant Work Product, during and after the term of this Agreement.  "***Moral Rights***" mean any rights to claim authorship of a work, to object to or prevent the modification or destruction of a work, to withdraw from circulation or control the publication or distribution of a work, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is called or generally referred to as a "moral right."

4.4     Related Rights.  To the extent that Consultant owns or controls (presently or in the future) any patent rights, copyright rights, mask work rights, trade secret rights, or any other intellectual property or proprietary rights that may block or interfere with, or may otherwise be required for, the exercise by Company of the rights assigned to Company under this Agreement (collectively, "***Related Rights***"), Consultant hereby grants or will cause to be granted to Company a non-exclusive, royalty-free, irrevocable, perpetual, transferable, worldwide license (with the right to sublicense) to make, have made, use, offer to sell, sell, import, copy, modify, create derivative works based upon, distribute, sublicense, display, perform and transmit any products, software, hardware, methods or materials of any kind that are covered by such Related Rights, to the extent necessary to enable Company to exercise all of the rights assigned to Company under this Agreement.

5.     **CONFIDENTIAL INFORMATION**

For purposes of this Agreement, "***Confidential Information***" means and will include: (i) any information, materials or knowledge regarding Company and its business, financial condition, products, programming techniques, customers, suppliers, technology or research and development that is disclosed to Consultant or to which Consultant has access in connection with performing Services; (ii) the Consultant Work

Product; and (iii) the terms and conditions of this Agreement. Confidential Information will not include any information that: (a) is or becomes part of the public domain through no fault of Consultant; (b) was rightfully in Consultant's possession at the time of disclosure, without restriction as to use or disclosure; or (c) Consultant rightfully receives from a third party who has the right to disclose it and who provides it without restriction as to use or disclosure. Consultant agrees to hold all Confidential Information in strict confidence, not to use it in any way, commercially or otherwise, except in performing Services, and not to disclose it to others. Consultant further agrees to take all actions reasonably necessary to protect the confidentiality of all Confidential Information, including, without limitation, implementing and enforcing procedures to minimize the possibility of unauthorized use or disclosure of Confidential Information.

**WARRANTIES**

5.1      <u>No Pre-existing Obligations</u>.  Consultant represents and warrants that Consultant has no pre-existing obligations or commitments (and will not assume or otherwise undertake any obligations or commitments) that would be in conflict or inconsistent with or that would hinder Consultant's performance of its obligations under this Agreement.

5.2      <u>Performance Standard</u>.  Consultant represents and warrants that Services will be performed in a thorough and professional manner, consistent with high professional and industry standards by individuals with the requisite training, background, experience, technical knowledge and skills to perform Services.

5.3      <u>Non-infringement</u>.  Consultant represents and warrants that the Consultant Work Product will not infringe, misappropriate or violate the rights of any third party, including, without limitation, any Intellectual Property Rights or any rights of privacy or rights of publicity, except to the extent any portion of the Consultant Work Product is created, developed or supplied by Company or by a third party on behalf of Company.

5.4      <u>Non-Solicitation of Personnel</u>.  During the term of this Agreement and for a period of one (1) year thereafter, Consultant will not directly or indirectly solicit the services of any Company employee or consultant for Consultant's own benefit or for the benefit of any other person or entity.

5.5      <u>Agreements with Consultant Personnel</u>.  Consultant represents and warrants that all Consultant Personnel who perform Services are and will be bound by written agreements with Consultant under which: (i) Consultant owns or is assigned exclusive ownership of all Consultant Work Product, including all Intellectual Property Rights therein; and (ii) Consultant Personnel agree to limitations on the use and disclosure of Confidential Information no less restrictive than those provided in Section 5.

**6.      INDEMNITY**

Consultant will defend, indemnify and hold Company harmless from and against all claims, damages, liabilities, losses, expenses and costs (including reasonable fees and expenses of attorneys and other professionals) arising out of or resulting from:

(a)      any action by a third party against Company that is based on a claim that any Services performed under this Agreement, or the results of such Services (including any Consultant Work Product), or

Company's use thereof, infringe, misappropriate or violate such third party's Intellectual Property Rights; and

(b) any action by a third party against Company that is based on any act or omission of Consultant or any Consultant Personnel and that results in: (i) personal injury (or death) or tangible or intangible property damage (including loss of use); or (ii) the violation of any statute, ordinance, or regulation.

**7. TERM AND TERMINATION**

7.1 Term. This Agreement will commence on the Effective Date and, unless terminated earlier in accordance with the terms of this Agreement, will remain in force and effect for as long as Consultant is performing Services pursuant to the Statement of Work.

7.2 Termination for Breach. Either party may terminate this Agreement (including the Statement of Work) if the other party breaches any material term of this Agreement and fails to cure such breach within thirty (30) days following written notice thereof from the non-breaching party.

7.3 Termination for Convenience. Company may terminate this Agreement (including the Statement of Work) at any time, for any reason or no reason, upon at least ten (10) days written notice to Consultant.

7.4 Effect of Termination. Upon the expiration or termination of this Agreement for any reason: (i) Consultant will promptly deliver to Company all Consultant Work Product, including all work in progress on any Consultant Work Product not previously delivered to Company, if any; (ii) Consultant will promptly deliver to Company all Confidential Information in Consultant's possession or control; and (iii) Company will pay Consultant any accrued but unpaid fees due and payable to Consultant pursuant to Section 2.

7.5 Survival. The rights and obligations of the parties under Sections 2, 3.2, 3.3, 4, 5.3, 5.5, 5.6, 6, 7.4, 7.5, and 8 will survive the expiration or termination of this Agreement.

**8. GENERAL**

8.1 Assignment. Consultant may not assign or transfer this Agreement, in whole or in part, without Company's express prior written consent. Any attempt to assign this Agreement, without such consent, will be void. Subject to the foregoing, this Agreement will bind and benefit the parties and their respective successors and assigns.

8.2 No Election of Remedies. Except as expressly set forth in this Agreement, the exercise by Company of any of its remedies under this Agreement will not be deemed an election of remedies and will be without prejudice to its other remedies under this Agreement or available at law or in equity or otherwise.

8.3 Equitable Remedies. Because the Services are personal and unique and because Consultant will have access to Confidential Information of Company, Company will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without

having to post a bond or other consideration, in addition to all other remedies that Company may have for a breach of this Agreement at law or otherwise.

8.4     Attorneys' Fees.  If any action is necessary to enforce the terms of this Agreement, the substantially prevailing party will be entitled to reasonable attorneys' fees, costs and expenses in addition to any other relief to which such prevailing party may be entitled.

8.5     Governing Law.  This Agreement will be governed by and construed in accordance with the laws of the State of California, excluding its body of law controlling conflict of laws.  Any legal action or proceeding arising under this Agreement will be brought exclusively in the federal or state courts located in the Northern District of California and the parties irrevocably consent to the personal jurisdiction and venue therein.

8.6     Severability.  If any provision of this Agreement is held invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect, and the provision affected will be construed so as to be enforceable to the maximum extent permissible by law.

8.7     Waiver.  The failure by either party to enforce any provision of this Agreement will not constitute a waiver of future enforcement of that or any other provision.

8.8     Notices.  All notices required or permitted under this Agreement will be in writing, will reference this Agreement, and will be deemed given: (i) when delivered personally; (ii) one (1) business day after deposit with a nationally-recognized express courier, with written confirmation of receipt; or (iii) three (3) business days after having been sent by registered or certified mail, return receipt requested, postage prepaid.  All such notices will be sent to the addresses set forth above or to such other address as may be specified by either party to the other party in accordance with this Section.

8.9     Entire Agreement.  This Agreement, together with the Statement of Work, constitutes the complete and exclusive understanding and agreement of the parties with respect to its subject matter and supersedes all prior understandings and agreements, whether written or oral, with respect to its subject matter.  In the event of a conflict, the terms and conditions of the Statement of Work will take precedence over the terms and conditions of this Agreement.  Any waiver, modification or amendment of any provision of this Agreement will be effective only if in writing and signed by the parties hereto.

8.10    Counterparts.  This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

| **COMPANY:** | **CONSULTANT:** |
|---|---|
| **TRIBAL INVEST CORP** | **DO HYEONG KWON** |
| By: *[signature]* | By: *Do Kwon* |
| Name: Diana Muñoz | Name: Do Kwon |
| Title: Director | Title: |
| Date: | Date: 5/20/2021 |

[*Signature Page to Consulting Agreement*]

**EXHIBIT A**

**STATEMENT OF WORK**

This Statement of Work is issued under and subject to all of the terms and conditions of the Consulting Agreement dated as of May 18, 2021, between Tribal Invest Corp ("***Company***") and Do Hyeong Kwon ("***Consultant***").

1. **Description of Services**

Consultant shall provide product and business development services to the Company from time to time as reasonably requested by the Company or its representatives, including but not limited to promotion, marketing and strategic advice relating to the Pyth network. Consultant shall provide such other services as are reasonably requested by the Company, and are within the field of knowledge and expertise of Consultant, on an as-needed basis. (collectively, the "***Services***")

2. **Payment Terms**

As sole and exclusive compensation for the Services, Consultant shall be entitled to receive 500,000,000 PYTH tokens, pursuant to the Company's standard form of Restricted Token Grant Agreement.

Consultant shall be responsible for reporting and paying any current and future taxes that it may incur resulting from the receipt of the Token Grant.

AGREED AS OF May 18, 2021

| **COMPANY:** | **CONSULTANT:** |
|---|---|
| **TRIBAL INVEST CORP** | **DO HYEONG KWON** |
| By: *[signature]* | By: |
| Name: Diana Muñoz | Name: |
| Title: Director | Title: |
| Date: | Date: |