## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) (Jointly Administered) |
| Debtors. | RE: Doc. No. 28643 |

### DECLARATION OF TAKANE HORI

**Takane Hori**, being duly sworn, hereby states as follows:

1.      I am a licensed attorney in Tokyo, Japan. I am a partner at Mori

Hamada & Matsumoto, a Japanese law firm, which has its offices at Marunouchi

Park Building, 2-6-1 Marunouchi, Chiyoda-ku, Tokyo, 100-8222, Japan.

### Introduction and Scope of Opinion

2.      I make this declaration at the request of Seth Melamed ("**Melamed**")

in connection with the Amended Claim Objection filed on December 9, 2024 (D.I.

28643) ("**Amended Objection**") and the Declaration Of Taro Tanaka (D.I. 28646)

("**Tanaka Declaration**"; collectively the "**Amended Claim Objection**") filed in

the Chapter 11 cases of FTX Trading Ltd. ("**FTX**" or "**Purchaser**"; collectively

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

with Melamed, the ("**Parties**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

3.     In preparing this Declaration,  I have reviewed: (i) the Claim Objection dated July 10, 2024, (ii) the Declaration of Seth Melamed executed on August 16, 2024; (iii) the Amended Claim Objection (including the Tanaka Declaration); (iv) the Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc. (Major Shareholders) dated November 19, 2021 (the "**SPA**" or the "**Liquid Transaction**"), by and among FTX, Melamed and other Sellers as defined in the preamble therein, and Liquid Group Inc. ("**Liquid**") and the Side Letter Agreement dated November 19, 2021 by and between Melamed and FTX (the "**Side Letter**"); and (v) selected portions of the Report of Examiner  Robert J. Cleary filed on May 23, 2024 (D.I. 15545) ("**Examiner's Report**"). Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the SPA or the Side Letter, as applicable.

4.     I make this declaration to provide my opinions ("**Opinions**") regarding Japanese law on the following issues: (i) a Japanese court (or arbitral panel applying Japanese law) would conclude that under the SPA and Side Letter, the Retained Consideration was required to be paid on the Completion Date and the failure to do so was a breach of contract for which an award of money damages

should be issued in an amount equal to the value of the Retained Consideration as of the time FTX made a clear refusal to pay, with certain interest; and (ii) separately, assuming that Melamed demonstrated that FTX committed fraud under the Japanese Civil Code, a Japanese court would award damages that, depending on the statute under which the fraud claims are made, either seek to compensate Melamed for the difference in value of the consideration received and the consideration paid, or to restore Mr. Melamed to his original position, each with certain interest, and in either such case, a Japanese court would consider evidence of the value of his interest in Liquid other than that which is reflected in the SPA.

5.      My Opinions consider Japanese law only and do not take into account the laws of any jurisdiction other than those of Japan.

## Qualifications

6.      I have been practicing law in Japan for approximately 22 years.  As a partner at Mori Hamada & Matsumoto, I specialize in corporate and commercial litigation, mergers and acquisitions and other general corporate matters.

7.      I speak, read, and write English and Japanese.

8.      I have no prior relationship with FTX, Mr. Melamed, or legal counsel representing either party in this proceeding.

## Background on the Civil Court System in Japan

9.     Japan's legal system is primarily based on codified statutes, meaning laws are written down in a comprehensive code, unlike common law systems that rely heavily on case precedents.  Unlike common law jurisdictions, Japan does not formally follow the principle of *stare decisis* where courts are bound to follow previous decisions in similar cases.  That said, it should be noted that the Supreme Court of Japan's decisions are *de facto* binding authority by which lower courts are in effect bound in Japanese civil actions.

10.     Japan adopts a principle that judges in civil lawsuits can determine at their discretion what evidence is permitted to be produced and admitted, and how such evidence is evaluated. In line with this principle, the Supreme Court of Japan has held that even hearsay evidence without cross-examination is not categorically inadmissible, and judges can take into account the nature of such evidence in its fact-finding process. Finally, professional judges alone try cases and make factual findings, with no juries available for civil cases.

### Opinion #1 – A Japanese Court (or Arbitration Panel Applying Japanese Law) Would Conclude that the Side Letter Amended the SPA and Required the Payment of the Retained Consideration On the Completion Date and the Failure to Make that Payment was a Breach of the Agreement for Which a Money Damages Award Should Be Issued

11.     The SPA and the Side Letter are both governed by Japanese law. (SPA cl. 19.1; Side Letter cl. 8.1; Tanaka Declaration, ¶9.)

4

12.     Clause 2.4 of the SPA provides that: "[a]t Completion, the Purchaser shall withhold . . . the Crypto Consideration, in a manner to be agreed in good faith by the Purchaser and the Management Shareholders."  Schedule 5 to the SPA, Section 2.3 states that: "[a]t Completion, the Purchaser shall . . .  (c) withhold the Crypto Consideration in a manner to be agreed in good faith in accordance with Clause 2.4 of this Agreement. I have been advised that the Completion Date occurred on April 4, 2022.

13.     Clause 2.1(d) of the Side Letter addresses the open issue in Clause 2.4 of the SPA as to the "manner" of withholding and provides that FTX pay the Retained Consideration on the Completion Date: "[t]he total amount of consideration to be paid by the Purchaser to Mr. Melamed…shall be paid ratably on the Completion Date, the Second Completion Date and the Last Completion Date, **provided**, **that the total amount of Crypto Consideration of Mr. Melamed, which shall be withheld in its entirety by the Purchaser as Retained Consideration in accordance with clause 4 of the [SPA]**, **shall be paid on the Completion Date**. Detailed allocation of the Consideration is set forth in Schedule 1 hereto." (Side Letter cl. 2.1(d) (emphasis added).)

14.     In turn, Schedule 1, Item 4 of the Side Letter ("**Side Letter Schedule**") reflects that the payment of the Retained Consideration is to occur on the Completion Date, as reproduced below.

**4.      Retained Consideration**

| Date | Bitcoin (BTC) | Ether (ETH) | Solana (SOL) | FTX Token (FTT) |
|---|---|---|---|---|
| **Completion Date** | BTC 39.132 | ETH 560.48 | SOL 11,884.98 | FTT 47,532 |
| **Total** | BTC 39.132 | ETH 560.48 | SOL 11,884.98 | FTT 47,532 |

15.     I understand that Parties agree that the Retained Consideration was not paid on the Completion Date.

16.     *In my opinion, if  a Japanese court (or arbitral panel applying Japanese law) were to examine Clause 2.1(d) of the Side Letter and the Side Letter Schedule, it would conclude that there was a modification to Clause 2.4(d) of the SPA.  Accordingly, it is my opinion that a Japanese court (or arbitral panel applying Japanese law) would conclude that by not paying the Retained Consideration to Melamed on the Completion Date, FTX was in breach of the SPA and Side Letter.*

17.     In addition, if FTX were determined to have breached the SPA and Side Letter, *it is my opinion that a Japanese court (or an arbitral panel applying Japanese law) would award money damages in an amount equal to the value of the Retained Consideration as of the date of the breach along with interest of 3% per annum on the overdue sum with interest accruing daily (pursuant to Clause 15.4 of the SPA) and a statutory late penalty of 3% per annum on such foregoing capitalized amount pursuant to Article 404(2) of the Japanese Civil Code.*

6

### Mr. Tanaka's Analysis is Flawed

18.    Although I agree with the statement of Mr. Tanaka that "[a]ccording to the Supreme Court of Japan, when interpreting the meaning and content of specific provisions in a contract, the interpretation should be determined by comprehensively considering the wording and structure of the provision, its consistency with other provisions, and the circumstances leading to the conclusion of the contract" (Tanaka Declaration, ¶9), I do not believe that his analysis is correct.

19.    Initially, Mr. Tanaka ignores the requirement to agree in good faith regarding the withholding of the Crypto Consideration in Clause 2.4(d) of the SPA and how that obligation was manifested in Clause 2.1(d) of the Side Letter. Second, in his analysis, Mr. Tanaka simply ignores the "paid on Completion Date" requirement imposed in Clause 2.1(d) of the Side Letter and the Side Letter Schedule.   As a result, I disagree with each of his conclusions that it was "clear" that: (a)  FTX was not required to pay Melamed the Retained Consideration on the Completion Date (Tanaka Declaration,  ¶15); (b)  FTX did not breach the SPA and Side Letter by retaining the Crypto Consideration beyond the Completion Date (Tanaka Declaration,  ¶17); (c) FTX was not required to pay Mr. Melamed any of the Crypto Consideration until April 2023 (Tanaka Declaration, ¶17); and (d) the SPA and the Side Letter gave Mr. Melamed a contractual right to delivery of

7

specific amounts of the Crypto Consideration on April 4, 2023 and April 4, 2024 (Tanaka Declaration, ¶18).

**Opinion #2 - Damages on Account of Fraud Would Compensate Melamed for the Difference in Value of the Consideration Received and Paid or Seek to Restore the Plaintiff to its Original Position and Consider all Evidence Reflecting the Value of Melamed's Interest in Liquid**

20.     Generally, a claim of fraud can be pleaded under not only Article 709, as mentioned in the Tanaka Declaration, but also Article 96 of the Japanese Civil Code, which is not discussed in the Tanaka Declaration. A plaintiff can make both claims simultaneously.

21.     Melamed's damages for his fraud claims, if he successfully prevailed, would be calculated (i) if under Article 709, by determining the difference between the consideration Mr. Melamed received for the Liquid Transaction and the value of his interests that he conveyed to FTX pursuant to the SPA,[2] with a statutory late penalty of 3% per annum to accrue from the date the parties entered into the SPA and Side Letter,[3] and (ii) if under Article 96, by seeking to restore him to his original position before the wrongdoing occurred, which would be determined based on the value of Melamed's interests in Liquid at the time that he was defrauded by FTX and FTX benefitted from such fraud (i.e., the date the parties entered into the SPA and the Side Letter), with a statutory late penalty of 3% per

[2] Tokyo District Court, May 30, 2005, *Westlaw Japan* 2005WLJPCA05300004, p. 10, as cited by the Tanaka Declaration, ¶21.
[3] Taishinin (current Supreme Court), June 24, 1914, Minji Hanketsuroku 20, p. 493.

annum which will accrue from the date notice of Melamed's claim was made to FTX, pursuant to Article 404(2) of the Japanese Civil Code.

22.    A Japanese court or an arbitral panel applying Japanese law would consider the value ascribed by the parties in the transaction to be probative of actual value, in line with precedent cases in Japan involving mergers and acquisitions.[4] In addition, the trier of fact may consider evidence from other sources to be relevant in determining whether the actual value is greater or less than the value ascribed by the parties.

23.    In that regard, I note that according to the Examiner's Report, there was a valuation analysis performed by FTX's counsel ("**S&C Report**") after the bankruptcy was filed in which it concluded that the Liquid Transaction provided "substantial value":

> S&C's investigation also found that the FTX Group acquired Liquid, a Japanese cryptocurrency exchange, in April 2022 for approximately $185 million. The acquisition came after the FTX Group had extended Liquid an emergency loan of $120 million prompted by the fact that Liquid had been victimized by a hack. Liquid subsequently operated as FTX Japan.

> S&C investigated potential claims arising out of the FTX Japan acquisition and decided against pursuing litigation. **S&C concluded that the Debtors had received substantial value from the FTX Japan acquisition**, as the company was a successful cryptocurrency exchange that had a difficult-to-obtain Japanese license.

(Examiner's Report at 161 (emphasis added).)

---

[4] "In the case of transactions between independent parties, each party pursues economic rationality, so it is normal for a reasonable price to be formed." (Tokyo High Court, Feb 27, 2019, *Kinyu Shoji Hanrei* No. 1564, p. 14).

24.     *It is my opinion that all evidence, including the S&C Report, would be probative on the issue of the actual value of the property conveyed by Melamed in the Liquid Transaction. Finally, it is my opinion that interest and a statutory late penalty each at 3% per annum would accrue on a fraud claim in this case from (i) November 19, 2021, under Article 709 of the Japanese Civil Code, or (ii) the date Melamed delivered notice of his claim, whether formally or informally, to FTX, under Article 96 of the Japanese Civil Code.*

*[Signature page follows]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _February 21_, 2025

/s/ Takane Hori
Takane Hori
Partner, Mori Hamada & Matsumoto
Tokyo, Japan