**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

In re:
FTX TRADING LTD., et al.,
**Debtors.**
**Chapter 11**
**Case No. 22-11068 (KBO)**



## CREDITOR'S EMERGENCY MOTION FOR CLARIFICATION REGARDING DISTRIBUTION AGENT TERMS OF SERVICE AND POTENTIAL WAIVER OF LEGAL RIGHTS

TO THE HONORABLE KAREN B. OWENS, UNITED STATES BANKRUPTCY JUDGE:

**INTRODUCTION**

Laura Gilberti and Olivier Ponchaut creditors in the above-captioned case, respectfully submits this Emergency Motion for Clarification regarding the Terms of Service imposed by Kraken and BitGo in the claim distribution process.

Specifically, we request that the Court clarify whether agreeing to these terms could result in an unintended waiver of legal rights, including rights preserved by creditors who opted out of the Third-Party Releases in the confirmed Plan of Reorganization.

Given the imminent commencement of distributions, I respectfully request expedited consideration of this motion prior to, or at, the next scheduled hearing on April 17, 2025.

**BACKGROUND**

1. On October 7, 2024, the Court confirmed the Chapter 11 Plan of Reorganization, which included an opt-out provision for Third-Party Releases, allowing creditors to preserve potential future claims against certain non-debtor parties.

2. As part of the claim distribution process, creditors must select a distribution agent, either Kraken or BitGo, and agree to their respective Terms of Service in order to receive distributions under the Plan.

3. These Terms of Service include provisions requiring creditors to:
   a. Irrevocably release and discharge FTX from any further obligations or liabilities related to their claim distributions, including in cases of negligence;
   b. Waive rights under Section 1542 of the California Civil Code, which ordinarily protects individuals from unknowingly waiving future claims;
   c. Submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware for any disputes.

4. Creditors who opted out of the Third-Party Releases did so specifically to preserve their legal rights, including the right to pursue future actions should new facts or claims arise. However, the Kraken/BitGo Terms of Service are ambiguous as to whether they override that opt-out selection, potentially stripping creditors of the very legal recourse they intentionally retained.

5. Repeated Requests for Clarification Have Been Ignored or Met with Vague Responses.
   - We have sent multiple emails to the Debtors seeking clear confirmation on whether accepting these Terms of Service would waive future legal rights, including those preserved by opting out of the Third-Party Releases.

- The Debtors have consistently failed to provide a direct answer, instead issuing vague and fail to address the core concern: whether agreeing to Kraken/BitGo's Terms of Service waives legal rights beyond the distribution process itself.
- This lack of transparency contradicts Rule 2002 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 521, which require debtors to cooperate with creditors and disclose relevant information in a clear and forthright manner.

6. The FTX Plan of Reorganization itself contains provisions that may further undermine future legal actions.
   - The Anti-Double Dip Clause (Plan § 7.12) restricts creditors from seeking compensation from multiple sources and may prevent participation in future lawsuits or class actions.
   - The Plan's Third-Party Releases and Injunction Provisions (Plan § 10.5-10.9) could bar creditors from filing lawsuits, even against non-debtor parties, depending on their enforcement.
   - The U.S. Trustee's Amicus Brief, filed in the Third Circuit (Case No. 1:24-cv-01175-TLA, Document 34, January 17, 2025), raises serious concerns about the Plan's opt-out mechanism. It argues that silence does not constitute affirmative consent under state contract law and warns that creditors who did not explicitly opt out should not be deemed to have released their claims involuntarily. (Select pages of the U.S. Trustee's Amicus Brief -Pages 9, 10, 12-14, and 18- are attached as Exhibit A to illustrate these concerns)

7. Given the urgency of ongoing distributions and the next available hearing being on April 17, 2025, judicial clarification is necessary to prevent creditors from unknowingly waiving legal rights through procedural ambiguity and non-disclosure.

**LEGAL BASIS FOR RELIEF**

Pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 521, debtors are required to provide clear communication and cooperate with creditors to address legitimate inquiries. Additionally, 11 U.S.C. § 1106(a)(1) requires the estate to disclose relevant information in a transparent and forthright manner.

The Debtors' failure to directly answer whether Kraken and BitGo's Terms of Service override opt-outs or waive future legal rights constitutes a breach of these duties. Given the legal significance of these releases, creditors should not be required to retain U.S. legal counsel simply to obtain a clear and truthful explanation of their rights.

**RELIEF REQUESTED**

In light of the issues outlined above, we respectfully request that the Court clarify the following:

1. Do the release, waiver, and jurisdiction clauses contained in Kraken and BitGo's Terms of Service apply exclusively to the claims distribution process, or do they extend to broader legal claims, including those previously preserved by opting out of Third-Party Releases under the Plan?
2. If a creditor has opted out of the Third-Party Releases, does acceptance of Kraken or BitGo's Terms of Service override that opt-out and nullify the creditor's preserved legal rights?
3. If these Terms of Service do extend beyond the distribution process, what alternative mechanisms are available for creditors to receive their entitled distributions without relinquishing their legal rights?

**CONCLUSION**

Given the imminent commencement of distributions and the potential for irreparable harm to creditors' rights, we respectfully request that the Court address this motion at the hearing scheduled for April 17, 2025, or as soon as practicable.

We appreciate the Court's attention and consideration. I am available to provide any further information as needed.

07/04/2025

Respectfully submitted,

Laura Gilberti
Claim number: **93874**

Olivier Ponchaut
Claim number: **00425513**

## Exhibit A

1.1  Excerpted Pages from the Amicus Curiae Brief of Andrew R. Vara, United States Trustee, in Support of Reversal

    1.1.1  *Filed in* **Case No. 1:24-cv-01175-TLA,** *Document 34 (January 17, 2025)*

Trading Ltd. and affiliated entities (collectively, "FTX"). FTX's confirmed plan

2

imposes a nonconsensual third-party release and an accompanying injunction on the "Releasing Parties," defined to include:

- holders of claims whose vote is solicited but who do not opt out, regardless of whether they vote to accept or reject the plan or abstain from voting; and

- holders of claims that are not entitled to vote on the plan because their claims are deemed unimpaired, meaning the plan does not alter their claims, and associated rights, against FTX, 11 U.S.C. §§ 1124(1); 1129(a)(8)(B).

A.0094[1] (Plan § 2.1.172(c) – (f)). Holders of claims deemed to reject the plan, however, are only bound by the third-party release if they opt in to it. *Id.* (Plan § 2.1.172(g)); *see* 11 U.S.C. § 1126(g) (claimants who do not receive any distribution from the estate are deemed to reject the plan and are not entitled to vote on it).

The non-debtor "Released Parties" include, among others: (1) FTX Digital Markets, Ltd. ("FTX DM"), a Bahamian subsidiary that is not a chapter 11 debtor in these cases; (2) FTX DM's Bahamian joint official liquidators; (3) an ad hoc group whose members hold certain claims against the FTX.com exchange; and (4) a long list of related parties. A.0077; A.0079; A.0087; A.0094.

The third-party release states that the Releasing Parties "shall be deemed" to have released the Released Parties from, among many other things, any claim relating to FTX, the estates, FTX's business, or the chapter 11 case if the conduct occurred after the petition date.[2] A.0149. The plan also includes an injunction barring the released claims. A.0151.

II.  **The Court Confirms FTX's Plan with the Third-Party Release.**

The United States Trustee and the appellants in two of these consolidated appeals (24-1176 and 24-1178) objected to confirmation of the plan in part because the third-party release is nonconsensual and therefore impermissible under *Purdue*.

FTX argued the bankruptcy court should impose the third-party release on those who fail to opt out because the judicial system often binds parties when they fail to act. *See, e.g.*, Debtors' Omnibus Reply (ECF 26039 at 37). FTX also urged that the procedure used to impose the release was "akin" to that used in class actions because there were "extensive negotiations with many constituencies," extensive notice, and an opportunity to opt out. *Id.* at 40-41.

In contrast to those "deemed" to release non-debtor claims based on a failure to opt out, FTX tellingly argued that it "ensured that the Voluntary Release is *in fact*

*Purdue*, 603 U.S. at 209, 227. But the FTX confirmation order does exactly that. Instead of acknowledging a release agreement entered between non-debtors, it utilizes the power of the court to "deem" FTX claimants to have released third-party claims, impermissibly altering the relations between non-debtors.

Bankruptcy courts look to state law to determine parties' property rights, including whether they have agreed to give up those rights by releasing claims. No provision of the Bankruptcy Code preempts state law on this question. No Code provision defines when non-debtors have consented to release claims against each other. Thus, applicable state law governs whether there is valid consent to a third-party release. The bankruptcy court did not find, and FTX did not argue, that such consent exists here under Delaware (or any other state's) law. Nor would any such argument have merit. Under black-letter contract law, silence is not consent except in narrow circumstances inapplicable here.

Neither the bankruptcy court nor FTX explained how the unimpaired claimants, who were given no ability to opt out or opt in, consented to the third-party release.

For those who were entitled to vote and did not opt out, the bankruptcy court, forsaking state law, deemed the release consensual because class members may be bound by a court-approved class-action settlement if they do not opt out. This holding disregards the Supreme Court's admonition that "[c]ourts may not 'recognize a common-law kind of class action' or 'create *de facto* class actions at will.'" *United*

6

*States v. Sanchez-Gomez*, 584 U.S. 381, 389 (2018) (cleaned up). Nor does the analogy show consent. A class-action settlement is binding not because the class members have consented to it but because members of a certified class action are considered parties for purposes of being bound by the class-action judgment—and that is equally true of adverse judgments as it is of judgments on settlements.

FTX additionally argued that these creditors consented the same way a party purportedly "consents" by failing to timely object in litigation. Again, this analogy does not show consent. When parties fail to timely respond in litigation, they are not bound because they have actually consented to the resulting court order, but because of the forfeiture rules that apply to litigating parties. Further, litigation default rules do not permit relief that is not potentially available in contested litigation. They are thus not a back door to imposing the nonconsensual third-party releases prohibited by *Purdue*.

## ARGUMENT

The parties and the court below suggested three inconsistent tests for determining whether a third-party release included in a bankruptcy court order is consensual: (1) it is only consensual when there is valid consent under applicable state contract law; (2) parties who do not opt out can be deemed to have consented because class-action settlements are binding on those who do not opt out; and (3) parties can be deemed to have consented based on a default theory, the same way that a litigant may forfeit rights by failing to timely respond in litigation.

7

The first test is the correct one. State law governs whether non-debtors have agreed to release each other. *See infra* Part I. Nothing in the Bankruptcy Code allows parties to disregard state law when debtors seek to impose third-party releases in their plans. Under Delaware law, as in other states, silence is not acceptance of an offer other than in limited circumstances inapplicable here. FTX thus cannot "deem" those who fail to opt out or those who are unimpaired to have released claims, A.0149, because neither type of claimant has agreed to the third-party release. Indeed, if there were actual consent, the plan would not need to "deem" the release to exist.

I.  **No One Has Argued the Unimpaired Creditors Have Consented to the Third-Party Release.**

The FTX plan imposes the third-party release on claimants deemed to accept the chapter 11 plan because their claims against FTX are "unimpaired," meaning those claims, and associated rights, are unaltered. 11 U.S.C. § 1124(1). There was no ability for these claimants to opt out of the release. FTX does not argue that these claimants consented in any manner. Nor did the bankruptcy court find that these claimants consented. Imposition of the third-party release on these claimants to extinguish their state-law property rights is impermissible under *Purdue*.

II. **Failure to Opt Out Is Not Consent to a Third-Party Release.**

A.  **State Law Governs Whether Parties Have Agreed to a Release.**

"[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443,

8

cmt. a (1981). *See also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 CORBIN ON CONTRACTS § 3.19 (2018); 4 WILLISTON ON CONTRACTS § 6:67 (4th ed.); *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022); *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002); *Patterson*, 636 B.R. at 686.

There are only very limited exceptions to that principle. "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance. Even in those cases the contract may be unenforceable under the Statute of Frauds." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to

12

remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686; *Jacques*, 886 F. Supp. 2d at 433 n.3.