## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  TBD** |

### FTX RECOVERY TRUST'S REPLY IN SUPPORT OF DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY NORTH FIELD TECHNOLOGY LTD.

The Consolidated Wind Down Trust (the "FTX Recovery Trust"), as defined in the confirmed and effective *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* (the "Plan") entered in the above-captioned proceeding, hereby submits this reply (the "Reply") in further support of *Debtors' Objection to Proofs of Claim Filed by North Field Technology Ltd.* [D.I. 20017] (the "Objection")[2], and in response to the *Response of North Field Technology Ltd. to Debtors' Objection to Proofs of Claim Filed by North Field Technology Ltd.* [D.I. 25076] (the "Response"), including the September 9, 2024 *Declaration of Roman Bieda* [D.I. 25101-1] (the "Bieda 9/9/24 Decl."). In connection with the Objection and this Reply, the FTX Recovery Trust submits the concurrently filed *Declaration of Kumanan Ramanathan in Further Support of Debtors' Objection to Proofs of Claim Filed by North Field Technology Ltd.* (the "Ramanathan Decl.") and *Declaration of Bruno Requiao da Cunha in Further Support of Debtors' Objection to Proofs of Claim Filed by North Field Technology Ltd.*

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Objection.

(the "<u>4/10/25 Cunha Decl.</u>").

## PRELIMINARY STATEMENT

North Field Technology Ltd. ("<u>North Field</u>") has filed two sets of claims against the FTX Recovery Trust: one set of claims regarding the purported transfer through a protocol operated by certain non-debtor entities (the "<u>Ren Entities</u>") of approximately 685 BTC as to which North Field purports to have had some sort of interest (the "<u>Ren Claims</u>"), and another set of claims regarding the purported transfer to FTX Trading Ltd. ("<u>FTX Trading</u>") of approximately 35 BTC as to which North Field purports to have had some sort of interest (the "<u>FTX Claims</u>"). But North Field acknowledges that the Ren Claims are not properly before this Court because the Ren Entities that are the object of those claims are non-Debtors. With respect to the FTX Claims, although North Field purports to contend that the 35 BTC in question are somehow traceable to the Cryptsy fraud, none of the FTX exchange accounts to which North Field purports to have traced 35 BTC have any apparent connection to Cryptsy or the perpetrator of the fraud. And in any event, North Field fails to demonstrate that any such connection would give North Field a viable claim against the FTX Recovery Trust. In short, North Field's Response confirms that all of its claims are meritless and should be disallowed and expunged in their entirety.

## REPLY

I.  <u>North Field's Purported Claims Against Non-Debtors Do Not Give Rise to Claims Against the FTX Recovery Trust.</u>

A.    <u>North Field Concedes That the Ren Claims Do Not Belong In This Court.</u>

1.    To the extent North Field has claims against any of the non-Debtor Ren Entities, such claims do not give rise to claims against the FTX Recovery Trust. North Field in fact acknowledges that its Ren Claims are not properly before this Court. North Field's Ren Claims are premised on the purported transfer of certain Cryptsy funds to ChipMixer in March

and April 2022, and the purported subsequent transfer of 685 BTC from ChipMixer to RenBridge. Based on these pre-petition transactions, North Field purports to assert a claim as to 438 BTC (the "Dappbase BTC") that were transferred post-petition from the Ren Entities to the FTX Debtors' cold storage wallets in April 2023, and that belong to Dappbase Ventures Ltd. ("Dappbase Ventures"). As explained in the Objection, the Dappbase BTC did not belong to the Debtors—it was held in custody for the Ren Entities that transferred it. (Objection at ¶¶ 13, 34-36.) North Field acknowledges that the Dappbase BTC "is not the property of the Debtors" and is not "property of its bankruptcy estate." (Response ¶¶ 35-37.) North Field further acknowledges that any proceeding against the non-Debtor Ren Entities with respect to the Dappbase BTC "does not belong in this Court, as Ren is not a Debtor." (Response ¶ 2.)

2.     To the extent North Field wishes to assert any claims with respect to the Dappbase BTC, the proper forum for those claims is Dappbase Ventures' liquidation proceedings in the British Virgin Islands ("BVI"). Dappbase Ventures is a BVI company whose sole member and director is Debtor Maclaurin Investments Ltd. (Ramanathan Decl. ¶ 6.) Pursuant to a resolution adopted on October 15, 2024, Dappbase Ventures is being liquidated under the BVI Business Companies Act, 2004, with Grant Thornton (British Virgin Islands) Limited and Grant Thornton UK LLP acting as Joint Liquidators (the "Joint Liquidators"). (*Id.*) The Joint Liquidators issued public notices of the Dappbase Ventures liquidation on October 24, 2024. (*Id.*) To the extent North Field believes it has any claim with respect to the Dappbase BTC, the BVI liquidation proceeding is the proper place to bring it.

3.     Despite agreeing that the Dappbase BTC does not belong to the Debtors, North Field nonetheless contends that "if one or more of the Debtors is in possession of the [Dappbase BTC], then that Debtor (or those Debtors) should turn over the [Dappbase BTC] to

North Field" because the Dappbase BTC supposedly "is the sole property of North Field." (Response ¶¶ 31, 33.) North Field is wrong. North Field's claim to the Dappbase BTC must be weighed against the claims of other creditors in the BVI liquidation. In any event, this question is moot because Dappbase Ventures' Joint Liquidators now possess the Dappbase BTC, not the FTX Recovery Trust. (Ramanathan Decl. ¶ 7.) The Debtors and FTX Recovery Trust therefore could not turn the Dappbase BTC over to North Field even if it were proper to do so (and it is not).

> **B.      North Field's Tracing Does Not Establish That Any of the Dappbase BTC Constitutes Cryptsy Funds.**

4.      Even if North Field were entitled to pursue its claims against the FTX Recovery Trust with respect to the purported pre-petition transfers to the Ren Entities, those claims should be expunged because North Field's tracing analysis (which is the sole basis for its claims) does not show that any of the Dappbase BTC is traceable to the Cryptsy fraud. As explained in the Objection, Mr. Bieda's analysis is conclusory because he provides no details on how his tracing was performed and never explains how his methodologies work. (Objection ¶ 29.) His analysis also included several indicia of unreliability, including that he purported to trace assets to a RenBridge administrative wallet not associated with RenBridge users; that he uses an unreasonably long time period to trace outputs from ChipMixer; and that many of those transactions were sourced through services that are unrelated to ChipMixer. (Objection ¶¶ 30-32.)

5.      Mr. Bieda's September 9, 2024 Declaration only underscores the conclusory nature of his analysis. Mr. Bieda attempts to justify his prior failure to explain his methodology because "companies like Coinfirm . . . do not typically disclose or even provide an explanation as to the precise algorithms and methodologies they use when performing such investigations." (Bieda 9/9/24 Decl. ¶ 12.) Thus, exactly how he arrived at his initial conclusions

remains a mystery.  Indeed, Mr. Bieda states that he *cannot* explain his analysis because he is no longer employed by the firm that owns the proprietary algorithms, and thus lacks access to its investigatory file.  (*Id*. ¶¶ 8-10.)  Mr. Bieda also professes to be precluded from disclosing any additional detail regarding his methodology, stating:  "as I am no longer employed by Coinfirm, I am bound not to disclose any additional details of Coinfirm's highly confidential methodologies."  (*Id*. ¶ 24.)  Moreover, Mr. Bieda now appears to be employed by Token Recovery, which is owned by Themis Recovery AG—the same entity that owns North Field.

6.     Mr. Bieda's analysis has other flaws.  *First*, Mr. Bieda assumes that funds can be traced from ChipMixer with one hundred percent certainty, even though the purpose (and often the effect) of ChipMixer is to thwart any efforts at tracing by mixing crypto assets together. Mr. Bieda's analysis contains no probability weighting to reflect the inherent uncertainty of attempting to trace assets through ChipMixer.  (4/10/25 Cunha Decl. ¶ 5.)  *Second*, ChipMixer users were required to withdraw funds within a 14-day period after depositing them.  The last deposit of stolen Cryptsy funds sent to ChipMixer occurred on April 4, 2022, but the vast majority of outgoing transfers that Mr. Bieda attributes to Cryptsy occurred outside ChipMixer's 14-day withdrawal window, including withdrawals from May through November 2022.  (*Id*. ¶ 6.)  *Third*, Mr. Bieda purports to trace numerous transfers through Virtual Asset Service Providers ("VASPs") even though he has attested that "[o]nce tainted funds are received by a VASP [Virtual Asset Service Provider, aka a "service"], they can no longer be traced . . . ."  (12/27/22 Bieda Declaration ¶ 6; *see also* 4/10/25 Cunha Decl. ¶ 7.)  *Fourth*, because the Ren protocol issued wrapped renBTC tokens almost immediately after a deposit of BTC to RenBridge, it is highly unlikely that any of the BTC that Mr. Bieda purports to have traced to RenBridge is the same

Dappbase BTC that the Ren Entities transferred to cold storage in April 2023, which belongs to Dappbase Ventures.  (4/10/25 Cunha Decl. ¶ 8.)

7.     Mr. Bieda's conclusory opinions, failure to explain his analysis, and glaring errors mean that his proffered opinions do not meet the standard for reliability under Fed. R. Evid. 702.  *Calhoun* v. *Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (Rule 702 embodies a "trilogy of restrictions on expert testimony:  qualification, reliability, and fit"); *Pineda* v. *Ford Motor Co.,* 520 F.3d 237, 247 (3d Cir.2008) (expert testimony is "admissible so long as the process or technique used in formulating the opinion is reliable").

**C.     The Florida Contempt Order Does Not Create a Claim Against FTX Recovery Trust.**

8.     Although North Field claims that the Dappbase BTC belongs to it by virtue of the contempt order it obtained from the district court in the *Cryptsy* litigation, that argument at best could provide a basis for a claim against Dappbase Ventures, not against the FTX Recovery Trust.  Neither the Debtors nor the FTX Recovery Trust has ever been subject to the contempt order issued in the *Cryptsy* litigation.  Moreover, that order was the product of an uncontested default judgment rather than any hearing on the merits, and was premised entirely on the same deeply flawed tracing analysis discussed above.  The order also was directed to "the Ren Project," which does not exist as a corporate entity, and is not binding on either Dappbase Ventures or the FTX Recovery Trust.  And North Field merely emailed the order to various "Ren" addresses rather than effect valid service of process on Dappbase Ventures, which is a foreign BVI entity, and which did not appear in the Florida district court or submit to its jurisdiction.  (*See* Claim No. 3357, Exhibit C.)

9.     Because North Field cannot pursue claims with respect to the Dappbase BTC against the FTX Recovery Trust, Claims 3310, 3321, 3328 and 3357 should be expunged.

## II.  North Field's FTX Claims Fail Because No FTX Exchange Account Received Cryptsy Funds

10.    The Court also should expunge North Field Claims 3285, 3496 and 3800, which concern 34.595 BTC that North Field claims to have traced to various FTX Trading accounts.  As set forth in the Objection, North Field has failed to establish that any of these FTX accounts received funds traceable to the 2014 Cryptsy fraud, or that any such pre-petition transfers (without more) would give North Field a valid claim against the FTX Recovery Trust.

11.    North Field's FTX Claims rest entirely on Mr. Bieda's flawed methodology. As discussed above, Mr. Bieda's opinions are conclusory and his methodology contains glaring errors, such as his assumption that funds can be traced from ChipMixer with complete certainty, and his inclusion of transfers outside of ChipMixer's 14-day withdrawal window.  Moreover, although Mr. Bieda claims that *all* of the Cryptsy funds were funneled through ChipMixer, 85% of the transfers to FTX accounts that Mr. Bieda claims constitute Cryptsy funds cannot actually be traced indirectly or directly to ChipMixer.  (7/9/24 Cunha Decl. ¶ 27.)  Only 6% are deposits directly from ChipMixer withdrawals, and another 9% are deposits that are only indirectly sourced from ChipMixer after a considerable number of intermediate transactions.  (*Id.*)  Thus, even without accounting for Cryptsy's 14-day window and the lack of probability weighting, the vast majority of transfers to FTX accounts that Mr. Bieda attributes to Cryptsy have no apparent connection to ChipMixer.

12.    In his September 9, 2024 Declaration, Mr. Bieda does not contest that fully 85% of the transfers he attributes to Cryptsy cannot be traced to ChipMixer.  (Bieda 9/9/24 Decl. ¶¶ 31-33.)  This concession should invalidate Mr. Bieda's analysis completely, since he had previously claimed that *all* of the transfers were traceable to Cryptsy funds.  As to the five accounts that received transfers directly from ChipMixer, Mr. Bieda tries to change the subject by arguing

that they received an amount of BTC that is higher than the amount he claims to be Cryptsy funds. (*Id*. ¶ 31.)  But that point is irrelevant precisely because he does not claim that those other BTC constitute Cryptsy funds.

13.    Not surprisingly given the fundamental flaws in North Field's tracing, FTX's exchange and Know-Your-Customer data further demonstrates that none of the FTX.com accounts to which North Field purports to have traced Cryptsy funds have any plausible connection to the perpetrators of the Cryptsy fraud.  (Objection ¶ 32.)  The FTX Recovery Trust reviewed user information and Know-Your-Customer data for each of the 39 accounts to which North Field claims to have traced stolen Cryptsy BTC.  (Ramanathan Decl. ¶ 10.)  The user account information includes, among other things, names, email addresses, display names, and jurisdictions.  (*Id*.)  Available KYC data typically includes photocopies of passports or other government-issued identification; self-taken photographs; source of funds documentation such as bank account statements; and personal data submitted by the users such as names and addresses. (*Id*.)  Despite the extensive data available concerning these FTX exchange accounts, none appear to be connected to Cryptsy or Paul Vernon.  (*Id*. ¶ 11.)

14.    Moreover, the accounts were held by a wide variety of individuals and entities in several different jurisdictions, which further decreases the likelihood that any are connected to the Cryptsy fraud.  The four accounts that received the majority of the BTC that Mr. Bieda purported to trace to Cryptsy funds (*see* Bieda 9/9/24 Decl. ¶ 33), belong to three individuals located in China, Singapore, and Thailand, and to an institution located in the British Virgin Islands.  (*Id*.)  The remaining 35 accounts belong to individual and institutional users located in Nigeria (6), The Philippines (3), Belarus (2), Singapore (2), Hong Kong (2), the United Kingdom (2), Russia (2), Vietnam (2), Thailand, The British Virgin Islands, The Seychelles,

Ireland, India, Taiwan, Malta, The Dominican Republic, Pakistan, China, Australia, Italy, Poland, and Turkey.  (*Id*.)

15.     The lack of any connection to the Cryptsy fraud in the exchange and KYC data belies North Field's claim that "the person(s) involved [in the Cryptsy fraud] have, on a daily basis, been actively transferring the Stolen Bitcoin . . . in a continuous effort to hide the Stolen Bitcoin" and "have been moving the Stolen Bitcoin . . . onto various cryptocurrency changes to be liquidated."  (12/30/22 Bieda Declaration ¶ 10.)

## Conclusion

For the foregoing reasons, the Court should enter the Order, attached as Exhibit A to the Objection, disallowing and expunging North Field's Claims in their entirety.

Dated:  April 10, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew R. Pierce
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      dunnec@sullcrom.com
      crokej@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*