IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 29197, 29430 & 30064 |

**REPLY IN SUPPORT OF THE FINAL FEE APPLICATION
OF SULLIVAN & CROMWELL LLP**

Sullivan & Cromwell LLP ("S&C") hereby submits this reply (this "Reply"), in support of the *Final Fee Application of Sullivan & Cromwell LLP* [D.I. 29197] (the "Application")[2] and in response to *Lidia Favario's Objection to the Final Fee Application of Sullivan & Cromwell LLP* [D.I. 29430] (the "Objection"), filed by Lidia Favario ("Favario") on January 28, 2025.  S&C respectfully requests this Court to overrule the Objection and grant the Application.

**REPLY**

1. The question before the Court in approving the Application is whether S&C is requesting the approval of reasonable compensation based on actual and necessary services pursuant to section 330 of the Bankruptcy Code.  The Court need not start from scratch in answering that question.  Far from it, because the Fee Examiner appointed by this Court has conducted an exhaustive review of all of the fees and expenses incurred for the Application Period

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of post-effective date debtor entities in these chapter 11 cases, a complete list of the post-effective date debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the FTX Recovery Trust's claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

and sought as Period Compensation. With the significant consensual adjustments S&C has agreed to, the Fee Examiner stated in her recent report with respect to the Application that she "is satisfied that the fees recommended for Court approval on a final basis satisfy all applicable reasonableness standards outlined in the Fee Examiner Order." *Fee Examiner's Summary Report on Final Fee Applications* [D.I. 30064 at 6.]

2. Nonetheless, a single pro-se creditor objects to the Application. Favario argues that the Period Compensation requested by S&C should be re-reviewed and some unspecified amount "disallowed" due to perceived conflicts of interest and a "disproportionate" relationship to the results achieved in these Chapter 11 Cases. (Obj. ¶¶ 20-21). The stated concerns are completely unfounded. The Court, consistent with the Fee Examiner's conclusions, should overrule the Objection and approve the Application in its entirety, as modified by S&C's voluntary fee and expense reductions agreed with the Fee Examiner.

## I. S&C Has Delivered Substantial Value to the Estates, and the Period Compensation Has Been Confirmed as Reasonable by an Independent Fee Examiner

3. Bankruptcy Code section 330 authorizes a bankruptcy court to award reasonable compensation to a fee applicant based on actual, necessary services, and to reimburse it for actual, necessary expenses. 11 U.S.C. § 330(a)(1) (2012). The relevant criteria include (a) the time spent on the services; (b) the rates charged for the services; (c) whether the services were necessary to the administration of the estate, or beneficial at the time they were rendered toward the completion of the case; (d) whether the services were performed within a reasonable amount of time in light of the complexity, importance, and nature of the problem, issue, or task; and (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in non-bankruptcy matters. 11 U.S.C. § 330(a)(3). There is "[a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable

rate—represents a 'reasonable' fee." *Pennsylvania* v. *Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *accord Blum* v. *Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("When ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled).

4. The unprecedented facts and circumstances of these Chapter 11 Cases are well documented in the record of these proceedings. S&C has played a central and critical role in virtually every material aspect of these cases, and the Period Compensation requested in the Application reflects both the complexity of the task and the breadth of the experience and expertise necessary across numerous disciplines to deliver what this Court has called "a model case for how to deal with a complex, very complex Chapter 11 bankruptcy proceeding." October 7, 2024 Hr'g Tr. 183:1-4 [D.I. 26412].

5. The unique scale and complexity of these Chapter 11 Cases presented immense challenges involving a range of subject matter areas in addition to typical restructuring issues, including, among others, cybersecurity, digital asset recovery and protection, cross-border transactions, regulatory and criminal investigations and untested issues related to treatment and valuation of digital assets in a chapter 11 plan. Despite these challenges, less than two years after a precipitous "free fall" filing, the Debtors were able to obtain confirmation of a nearly consensual plan of reorganization that achieved overwhelming support from their millions of stakeholders. The conclusion of these cases was the culmination of a remarkable effort to build consensus, negotiate a series of settlements resolving novel and complex issues, and recover and monetize assets such that customers and non-governmental creditors are projected to receive recoveries which were inconceivable when the Debtors collapsed—in excess of 100% of Petition Date claim

value. This result would not have been possible without the diligent efforts of S&C, and the requested Period Compensation reflects S&C's pivotal contribution to this success.

6. Throughout these Chapter 11 Cases, S&C's fee applications have been timely filed and reviewed by the independently appointed Fee Examiner, setting out in each case a detailed account of the tasks completed, time spent, and rate charged. The Period Compensation has thus already been scrutinized and approved by the Fee Examiner and the U.S. Trustee appointed in these Chapter 11 Cases. In connection with such review, S&C has voluntarily agreed to waive over $5.5 million of Period Compensation in the aggregate. With these consensual reductions, the Fee Examiner has reported to the Court that she "is satisfied that [S&C's] fees recommended for Court approval on a final basis satisfy all applicable reasonableness standards outlined in the Fee Examiner Order." *Fee Examiner's Summary Report on Final Fee Applications* [D.I. 30064 at 6]. Further unspecified reduction in Period Compensation as proposed by Favario would be arbitrary and duplicative with the agreed adjustments, and inconsistent with the level of services rendered by S&C during the Application Period in driving these cases to an exceptional resolution.

7. In light of the scrutiny to which the Period Compensation has already been subject and the complexity and outcome of the Chapter 11 Cases, S&C submits that the Period Compensation is reasonable, and the Application should be approved without further adjustment.

## II. Allegations of Conflict Are Unfounded

8. Favario's insinuations of conflicts are also without merit, as both this Court and an independent examiner has already found S&C to be properly retained in these Chapter 11 Cases. As a threshold matter, this Court conducted an extensive review and determined S&C to be free of conflicts at the time it was retained in these Chapter 11 Cases.

9. Nonetheless, Favario first suggests that S&C's work on the 2023 sale of LedgerX LLC ("LedgerX") impeded creditor recoveries. This is false. There was no conflict of interest in S&C assisting the Debtors with the LedgerX sale transaction. S&C fully disclosed its work on the original acquisition of LedgerX by Debtor West Realm Shires Inc. in connection with S&C's retention in the chapter 11 cases. *See Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to the Petition Date* [D.I. 510] (11-12). Work on the original acquisition transaction did not create any conflict of interest that prevented S&C from capably representing the Debtors in their efforts to monetize assets and make distributions to creditors.

10. Furthermore, the *Report of Robert J. Cleary, Examiner* [D.I. 15545] (the "Phase I Report") and the *Phase II Report of Robert J. Cleary, Examiner* [D.I. 25679] (the "Phase II Report") each examined S&C's involvement in the LedgerX transaction. In the Phase I Report, the independently appointed Examiner concluded that S&C's work on the transaction could not be found to have had any negative impact on the estates. (Phase I Report at 47.) The negotiated inclusion of causes of action against LedgerX officers and directions in the sale transaction, including claims against Mark Wetjen, "was ultimately beneficial for the estates because…without it, the Debtors could not have consummated this sale of LedgerX." (*Id.*)

11. The Examiner further concluded that a preference claim under Bankruptcy Code section 547 would not be viable given the lapse of the applicable preference period. (Phase II Report at 43.) Regarding a potential fraudulent transfer claim, the Examiner found that "on the facts available to him, WRS (or another designated plaintiff) [would be] unlikely to have an intentional fraudulent transfer claim that would survive a motion to dismiss, or further stages of

litigation" and that "it [would be] unlikely that a constructive fraudulent transfer claim could survive summary judgment or prevail at trial." (*Id*. at 76). After due analysis, the Debtors properly judged it imprudent to expend estate resources on such a low probability of recovery. There is no basis to reduce S&C's fees with respect to any aspect of this work on the basis of Favario's disproven conjecture.

12. Favario also questions S&C's work on the 2024 settlement with Voyager Digital Holdings, Inc. and its various affiliates (collectively, "Voyager"). That settlement provided significant benefits to the Debtors and their estates, and was reviewed and approved by this Court pursuant to Bankruptcy Rule 9019 after the filing and notice of a motion. [*See* D.I. 11548, 13123.] Among other things, the settlement of the Debtors' preference claims against Voyager facilitated the resolution of Voyager's claims arising from loans to the Debtors and from the failed 2022 asset sale without payment, obviating the need for costly litigation, as described in more detail in the motion seeking its approval. [D.I. 11548]. Favario provides no evidence of a conflict other than a reference to a prepetition email sent by an S&C attorney. In the Phase I report, the Examiner investigated and discussed the circumstances around this email, and specifically concluded that no further investigation was warranted. (Phase I Report at 58.) Favario presents no basis for a reduction of S&C's Period Compensation relating to the Voyager Settlement. Those fees and expenses, like the remainder of the fees and expenses sought through the Application, are reasonable and should be approved.

13. Finally, Favario argues that S&C inappropriately "shielded" Ryne Miller and Mark Wetjen, including by failing to commence litigation against them. (Obj. ¶¶ 18). This is fanciful and untrue. All decisions to commence or forego material litigation were ultimately made by the Debtors' post-petition management led by Mr. John Ray and the independent Board of

Directors. Moreover, all matters concerning Mr. Miller, Mr. Wetjen, and other former FTX employees, including the investigation of potential claims, were handled by S&C's co-counsel at Quinn Emanuel Urquhart & Sullivan, LLP at the direction of Mr. Ray and the Debtors' Board of Directors. As such, Favario's assertions are particularly misguided and unfounded.

## CONCLUSION

For these reasons, the Court should overrule the Objection and approve the Application, as adjusted by agreement with the Fee Examiner.

| | |
|---|---|
| Dated: April 14, 2025<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Benjamin S. Beller (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         bellerb@sullcrom.com |