**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: May 14, 2025 at 9:30 a.m. (ET)** |
|  | **Ref. Nos. 1584, 30083 and 30085** |

**OBJECTION OF THE FTX RECOVERY TRUST TO (A) D1 VENTURES LTD.
MOTION FOR THE ENTRY OF AN ORDER (I) AUTHORIZING AND
DIRECTING THE DEBTORS TO RETURN CERTAIN POSTPETITION
CRYPTOCURRENCY DEPOSITS TO D1 VENTURES AND (II) GRANTING
RELATED RELIEF AND (B) ADMINISTRATIVE CLAIM OF D1 VENTURES LTD.**

The FTX Recovery Trust[2] hereby submits this objection (this "Objection"), to

(A) *Motion for the Entry of an Order (I) Authorizing and Directing the Debtors to Return Certain*

*Postpetition Cryptocurrency Deposits to D1 Ventures and (II) Granting Related Relief* [D.I. 1584]

(the "Motion") filed by D1 Ventures Ltd. ("D1 Ventures") and (B) the administrative claim

asserted by D1 Ventures in the Motion.  In support of the Objection, the FTX Recovery Trust

submits the *Declaration of Michael Leto in Support of the Objection of the FTX Recovery Trust to*

*(A) D1 Ventures Ltd. Motion for the Entry of an Order (I) Authorizing and Directing the Debtors*

*to Return Certain Postpetition Cryptocurrency Deposits to D1 Ventures and (II) Granting Related*

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of post-effective date debtor entities in these chapter 11 cases, a complete list of the post-effective date debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the FTX Recovery Trust's claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]  The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established through the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Effective Date").

*Relief and (B) Administrative Claim of D1 Ventures Ltd.* (the "Leto Declaration" or "Leto Decl.")

and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      D1 Ventures seeks an order from this Court compelling the estate to make a distribution to D1 Ventures on account of funds deposited postpetition into the FTX.com account of a third-party customer of the Debtors, Jasmine De Villa (the "De Villa Account").  [Mot. ¶¶ 7-10.]  D1 Ventures further asserts an administrative expense claim in respect of such deposits (the "Administrative Claim"). [Mot. ¶¶ 17-20.][3]

2.      D1 Ventures cannot be permitted to walk-off with assets of the FTX Recovery Trust that should remain available for legitimate creditors based on nothing but a self-serving declaration stating that it owns the De Villa Account despite no evidence to support that assertion.  To allow such a result would invite any bad actor to circumvent the safeguards in place to ensure only legitimate creditors receive distributions from the FTX Recovery Trust.

3.      Furthermore, even if D1 Ventures were able to establish a link between itself and the customer account in question, the account holder of record, Ms. De Villa, has not completed any of the necessary know-your-customer ("KYC") verifications that are required of all creditors, thus precluding allowance of the Administrative Claim in any event.  The Debtors and the FTX Recovery Trust have consistently maintained throughout these Chapter 11 Cases that an established KYC protocol is essential to the effort to validate and reconcile claims and make distributions to creditors.  Verification of KYC materials ensures that the FTX Recovery Trust does not violate the law, including economic sanctions enforced by the Office of Foreign Assets

---

[3]      D1 Ventures also argues the amounts deposited into the De Villa Account are not the Debtors' property.  This is wrong, as the Court subsequently determined in confirming the Plan that all assets held by the Debtors are estate property.  (*See* Confirmation Order ¶ 20.)

Control ("OFAC") and the Money Laundering Control Act of 1986 (the "AML Act"), when making distributions.  [*See, e.g.*, D.I. 28225 ¶¶ 28-29.]  It also ensures that these Chapter 11 Cases do not become a forum for scammers, fraudsters and other opportunists seeking to pick the pockets of the many legitimate beneficiaries of the FTX Recovery Trust.  [*Id.* ¶¶ 26-27.]  Allowing D1 Ventures (or any other purported creditor) to receive distributions on claims arising from a FTX.com exchange account without KYC verification of the actual account holder of record would undermine the process and expose the FTX Recovery Trust to unacceptable risks.  Accordingly, the FTX Recovery Trust respectfully requests that the Court deny D1 Ventures' Motion and disallow and expunge the Administrative Claim.

## RELEVANT BACKGROUND

### I.   Jasmine De Villa Account and Deposits

4.   In 2021, Jasmine De Villa opened the De Villa Account on FTX.com under the username singthings@outlook.com.  Nothing in the account opening documentation or history indicates any connection between the De Villa Account and D1 Ventures.  (Leto Decl. ¶ 6.)

5.   Yuchen Shi, identified as the Managing Director of D1 Ventures, alleges without any supporting documentary evidence that Ms. De Villa opened the De Villa Account at the direction of and as an agent of D1 Ventures.  [D.I. 30083, the "Shi Declaration" ¶ 6.]  The Shi Declaration provides no insight into *why* D1 Ventures would have proceeded in this manner.

6.   On December 20 and 21, 2022, despite the chapter 11 filing, several deposits of USDC and USDT totaling $251,000.00 were made into the De Villa Account.  (Leto Decl. ¶ 8.)  D1 Ventures alleges that these deposits were the result of D1 Ventures inadvertently instructing some unidentified "investors" to deposit funds into the De Villa Account.  (Shi Decl. ¶ 11.)  This raises another unsolved mystery as to the identity of these investors who D1 Ventures represents are the true beneficial owners.

7.      D1 Ventures does not provide any corroborating evidence of any relationship, contractual or otherwise, with Ms. De Villa other than Ms. Shi's self-serving declaration.   Furthermore, D1 Ventures claims it is unable to provide any evidence of any communications between D1 Ventures, or any of its employees or representatives, and Ms. De Villa at any point in time.  (*Id.* ¶¶ 7-8.)

8.      Ms. De Villa has never logged into the FTX Customer Claims Portal established in these Chapter 11 Cases nor completed any of the postpetition Debtors' KYC requirements with respect to her customer account.  (Leto Decl. ¶ 9.)  Nor has Ms. De Villa contacted the Debtors or the FTX Recovery Trust or verified anything asserted by Ms. Shi.  (*Id.* ¶ 7.)

## II.    KYC Process

9.      These Chapter 11 Cases have revealed that prepetition management of the Debtors failed to maintain adequate records and vet the identities of customers of the FTX exchanges, and failed to follow best practices for requesting, handling, storing and assessing customer information.   In particular, prepetition management failed to consistently collect adequate KYC information, failed to perform basic due diligence on customers who opened and held accounts on the FTX exchanges, and often failed to collect information about the source of funds sent to FTX and the FTX exchanges.

10.      The inadequate prepetition practices and recordkeeping increase the risk that FTX Recovery Trust might allow claims of, and ultimately make distributions to, customers in violation of contractual protections and applicable law, including without limitation U.S. sanctions and money laundering laws and regulations.  To address these concerns, nearly two years ago, the Debtors proactively implemented certain guidelines for the collection of KYC information

from holders of Customer Entitlement Claims[4] as of the Petition Date (the "Original Holder") in connection with the submission of customer proofs of claim. These guidelines were set forth and approved in the Court's *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order").

11.    To help streamline the proof of claim and KYC submission process, the Debtors also created an online customer claims portal (the "Customer Claims Portal") to efficiently manage claims in a user-friendly manner. The Customer Claims Portal provided, among other features, a three-step proof of claim submission process for holders of Customer Entitlement Claims: (i) after verifying user credentials, holders were requested to submit KYC information of the Original Holder, (ii) holders were able to view historical transaction information and account balances and (iii) holders were directed to an electronic proof of claim platform maintained by the Debtors' claims agent, Kroll Restructuring Administration, LLC (the "Claims Agent"). The De Villa Account was provided access to the Customer Claims Portal.

12.    On June 28, 2023, the Court entered the Customer Bar Date Order, which established, among other things, a deadline of September 29, 2023 to file proofs of claim on account of Customer Entitlement Claims against the Debtors (such date, the "Customer Bar Date"). The Customer Bar Date Order provided that, whether or not a holder submitted a proof of claim, Customer Entitlement Claims of a holder who did not submit the requested KYC information by

---

[4]    "Customer Entitlement Claims" as defined in the Plan, means any claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any person or entity against any of the Debtors that compensates the holder of such claim for the value as of the Petition Date of cash or digital assets held by such person or entity in an account on any FTX exchange.

the Customer Bar Date would not be immediately deemed disallowed, but would be deemed "unverified" (such claims, "Unverified Claims"), and thereafter subject to disallowance. [Customer Bar Date Order ¶ 18.]

13.     The KYC verification process and information requests are reasonably standardized and designed for the purposes of ensuring compliance with generally recognized KYC/AML standards as recommended by the Financial Action Task Force. *See Declaration of Kumanan Ramanathan in Support of Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 28227 ¶ 7.]

14.     On February 3, 2025, the Court entered the *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Order"), pursuant to which the Court ordered that any Unverified Claims where the Original Holder had not yet started to commence KYC on or prior to March 1, 2025 at 4:00 p.m. (ET) (the "KYC Commencing Deadline") be disallowed and expunged in their entirety and any Unverified Claims that have not fully completed the KYC process on or prior to June 1, 2025 at 4:00 p.m. (ET) (the "KYC Submission Deadline") be disallowed and expunged in their entirety.

15.     On April 2, 2025, the FTX Recovery Trust filed the *Notice of Expungement of Unverified Customer Entitlement Claims* [D.I. 30042] (the "Notice of Expungement"), pursuant to which the Unverified Claims that failed to comply with the KYC Commencing Deadline were disallowed and expunged in their entirety.

**ARGUMENT**

**I.    D1 Ventures Has No Basis to Compel Immediate Payment of the Administrative Claim.**

16.     The Debtors' *Second Amended Joint Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan") delineates as between Allowed Claims and Disputed Claims.  The Plan defines "Allowed" as "with respect to any Claim or Interest, that the amount, priority and/or classification of such Claim or Interest has been," in relevant part, "in the case of an Other Administrative Claim, subject to a request for payment timely filed and served in accordance with Section 3.1 and no objection to such Claim has been timely filed and served pursuant to Article 3."  (Plan § 2.1.8(e).)  In contrast, the Plan defines a "Disputed Claim" as "any Claim that has not been Allowed and is not subject to a valid and timely Bahamas Opt-In Election."  (Plan § 2.1.57.)

17.     Only Allowed Claims are potentially eligible for distributions.  D1 Ventures' Administrative Claim is a Disputed Claim.  As a Disputed Claim, the Administrative Claim is not eligible for any distribution at this time, even if D1 Ventures was able to establish an interest in Ms. De Villa's account (which it has not).  For that reason alone, D1 Ventures' Motion should be denied.

**II.    D1 Ventures Has Not Established It Has a Valid Administrative Claim.**

18.     Section 502(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") provides, in pertinent part, that:  "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim.  11 U.S.C. § 502(b).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to

the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b).

19.     Further, rule 3007-1(c) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") provides that a debtor may object on a non-substantive basis to a "claim that does not have a basis in the debtor's books and records and does not include or attach sufficient information or documentation to constitute *prima facie* evidence of the validity and amount of the claim, as contemplated by [Bankruptcy Rule] 3001(f) . . . ." Local Rule 3007-1(c)(vi); *see also In re FBI Wind Down, Inc.*, 2015 WL 1181890, at *1 (Bankr. D. Del. Mar. 3, 2015) (expunging and disallowing insufficient documentation claims); *In re Exide Technologies*, 2013 WL 12579684, at *1 (Bankr. D. Del. Mar. 7, 2013) (same).

20.     While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid."). The burden of persuasion with respect to the claim is always on the claimant, *id.* at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity. *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

21.     The Debtors' books and records show no connection between the De Villa Account and D1 Ventures. (*See* Leto Decl. ¶ 7.) D1 Ventures, on the other hand, has not offered any evidence to prove that it has a claim based on amounts allegedly deposited into the De Villa

Account by unidentified investors.  In order to have a valid claim, D1 Ventures would need to actually establish ownership of the De Villa Account, which it has failed to do.  Moreover, D1 Ventures itself asserts that there are unidentified fourth-parties that are alleged to beneficially own the original funds.

22.    The only evidence D1 Ventures offers is the self-serving, conclusory declaration of Ms. Shi.  The Shi Declaration simply alleges that D1 Ventures is the owner of the De Villa Account and once had a relationship with Ms. De Villa without offering any supporting evidence for those assertions.  For example, there is no evidence offered as to the nature of the relationship, any rights of D1 Ventures in the De Villa Account, or, importantly, any legitimate explanation for D1 Ventures and its "investors" transacting on the FTX.com exchange through the De Villa Account or why D1 Ventures was investing funds from other parties.

23.    This Court should not permit entirely unsupported allegations to establish ownership of a FTX.com exchange account when in conflict with the Debtors' books and records. Setting such an extremely low bar would be unfair to verified claim holders, and risk the introduction of chaos to the ongoing claims reconciliation and allowance process.  D1 Ventures has offered no contemporaneous evidence that would give it entitlement to claims based on deposits made into the De Villa Account (and in fact offer contradictory assertions that other investors hold the beneficial interests).  Allowing claim ownership to be shifted from an FTX exchange customer to a third party on the basis of nothing other than such third party's assertion would upend the orderly administration of claims in these Chapter 11 Cases.

III.    **D1 Ventures' Administrative Claim Should be Disallowed and Expunged.**

24.    Even if D1 Ventures had offered evidence sufficient to establish ownership of the De Villa Account, the Administrative Claim should still be expunged due to Ms. De Villa's failure to provide KYC information permitting verification.

25.     The *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Confirmation Order"), conclusively established that:

> The factual record establishes that all Digital Assets and Cash held by the FTX Exchanges on or after the Petition Date ("Exchange Assets") are property of the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code and can be distributed pursuant to the Plan. Further, to the extent that any Exchange Assets are not property of the Debtors' Estates, this Court has jurisdiction to direct their equitable distribution pursuant to the Plan and in accordance with the terms of the Customer Priority Settlement (as defined in the Disclosure Statement) incorporated therein."

(Confirmation Order ¶ 20.)

26.     Therefore, if the Administrative Claim were to be Allowed, it would be satisfied out of FTX Recovery Trust assets. As a result, the same concerns underlying the collection of KYC information for prepetition Customer Entitlement Claims apply equally to the Administrative Claim. The FTX Recovery Trust must be able to verify the Original Holder or otherwise would be subject to the same risks the Debtors and the Court have sought to avoid by implementing the KYC process for prepetition Customer Entitlement Claims.

27.     As explained in the Debtors' sustained omnibus objection to Claims that have not been KYC verified [D.I. 28225], where the Original Holder of a Customer Entitlement Claim has not commenced the KYC submission process, or has failed to submit all requested KYC information, the Debtors are missing a critical element of that Customer Entitlement Claim. Specifically, the FTX Recovery Trust cannot determine whether a claim is valid unless and until the FTX Recovery Trust is able to assess whether such claimant was properly a customer of the applicable FTX exchange.

28.     Moreover, making distributions to holders of Unverified Claims would increase the risk that the FTX Recovery Trust makes distributions to parties or on account of claims

in violation of U.S. law.  For example, OFAC administers and enforces economic sanctions against targeted foreign countries and regimes, terrorists, international narcotics traffickers and those engaged in threats to U.S. national security.[5]  Assets subject to OFAC sanctions are "blocked" and U.S. persons are generally prohibited from dealing with them.  U.S. sanctions laws apply to both U.S. and non-U.S. persons when there is a U.S. connection and include "anyone engaging in virtual currency activities in the United States, or that involve U.S. individuals or entities."[6]  Enforcement of OFAC sanctions is based on a strict liability legal standard, with substantial penalties for violations.  Accordingly, the FTX Recovery Trust cannot make distributions on account of Unverified Claims (even if such claims are transferred) given the risk of violating OFAC sanctions.

29.    In addition, the AML Act prohibits certain financial transactions connected to unlawful activity.  Among other provisions, money laundering laws make it a crime to knowingly conduct a financial transaction that involves the proceeds of "specified unlawful activity" with one of four specific intents or to knowingly engage in a monetary transaction in property derived from specified unlawful activity with a value greater than $10,000.[7]  As with claims subject to OFAC sanctions, the FTX Recovery Trust cannot make distributions on account of Unverified Claims given the risk of violating the AML Act.  Courts in this district have recognized the unique nature of anti-sanctions and money laundering risks associated with digital

---

[5]    OFAC publishes lists of certain individuals and entities subject to various sanctions programs.  *See* ALPHABETICAL LISTING OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS, U.S. DEP'T OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, https://www.treasury.gov/ofac/downloads/sdnlist.txt; Specially Designated Nationals (SDNs) and the SDN List: Frequently Asked Questions, U.S. DEP'T OF TREASURY: OFFICE OF FOREIGN ASSETS CONTROL, https://hometreasury.gov/policy-issues/financialsanctions/faqs/topic/1631.

[6]    *See* SANCTIONS COMPLIANCE GUIDANCE FOR THE VIRTUAL CURRENCY INDUSTRY, OFAC (October 2021), https://ofac.treasury.gov/media/913571/download?inline.

[7]    18 U.S.C. §§ 1956(a)(1), 1957(a); *see also* 31 C.F.R. § 1022.210(a). Under the U.S. AML laws, a "financial institution" includes money service businesses and "currency exchange[s] or . . . business[es] engaged in the exchange of . . . value that substitutes for currency or funds." *Id*. § 5312(a)(2).

asset exchanges, and have prohibited distributions holders of claims who reside in sanctioned or

restricted nations. *See, e.g., In re Bittrex, Inc.*, Case No. 23-10598 (BLS) (Bankr. D. Del. Oct. 31,

2023) [D.I. 517] (confirming plan, where, among other things, the debtors were prohibited from

disbursing cryptocurrency or fiat currency to any foreign national of a blocked, restricted or

sanctioned nation).

        30.     These laws make no distinction whether the distribution is on account of a

prepetition or postpetition claim.  As a result, it is imperative that Ms. De Villa, as the account

holder of record, be KYC verified.  Absent that, the FTX Recovery Trust would be potentially at

risk of making a distribution in violation of applicable law.  D1 Ventures' Administrative Claim

should thus be disallowed and expunged for failure to provide necessary KYC documentation just

as this Court has already ordered for hundreds of thousands of Customer Entitlement Claims.

        31.     For all of these reasons, the Motion should be denied and the Administrative

Claim disallowed and expunged.

Dated: April 22, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christian P. Jensen (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        jensenc@sullcrom.com

*Counsel for the FTX Recovery Trust*