**Exhibit 1**

**Token Delivery Agreement**

*Terraform Wind Down Trust*

# PYTH DATA ASSOCIATION

## TOKEN DELIVERY AGREEMENT

This Token Delivery Agreement (this "***Agreement***") is made and entered into as of the effective date specified on the signature page hereto (the "***Effective Date***") by and between the Pyth Data Association, a Swiss association ("***Association***"), and the recipient identified herein and signatory hereto ("***Recipient***").

WHEREAS, a community of developers is building a decentralized oracle network designed to publish high fidelity financial market data on the Solana blockchain and other blockchains (the "***Pyth Protocol***");

WHEREAS, tokens were previously minted (the "***Original Tokens***") by Pyth Data Foundation, a Republic of Panama foundation ("***Pyth Data Foundation***") and adopted by the Association which supports and fosters the development and growth of the Pyth Protocol, to become the native tokens for the Pyth Protocol;

WHEREAS, the majority of the Original Tokens are currently unavailable due to unforeseen circumstances;

WHEREAS, Association has determined that it is in the best interests of the Pyth Protocol to approve a proposal (the "***Proposal***") for the PYT Foundation, a Republic of Panama foundation ("***Foundation***") to deploy a token minting smart contract to mint replacement native tokens for the Pyth Protocol (the "***Replacement Tokens***") to replace the Original Tokens, this token minting has been completed by Foundation and Association has adopted the Replacement Tokens as the native token of the Pyth Protocol;

WHEREAS, the Proposal has been approved by the United States Bankruptcy Court for the District of Delaware in respect of *In re: FTX Trading Ltd., et al* (Case No. 22-11068 (JTD)) at Docket #1693;

WHEREAS, Association received from Foundation and desires to deliver to Recipient a number of Replacement Tokens specified on the signature page hereto as the "Delivery Amount" (the "***Delivery Amount***");

WHEREAS, the United States Bankruptcy Court for the District of Delaware has ordered Association to deliver to Recipient the Delivery Amount of Replacement Tokens (the "***Restricted Tokens***"), without requiring any payment from Recipient, on the terms and conditions set forth in this Agreement (the "***Order***");

NOW THEREFORE, BE IT RESOLVED, that in consideration of the mutual representations, warranties, releases, and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Association and Recipient agree as follows:

1. **TOKEN ENTITLEMENT.**

    1.1 **Automatic Right to Receive.** Subject to the terms and conditions of this Agreement, Association hereby provides Recipient, the right to receive, automatically and without requiring any future payment an aggregate of the Restricted Tokens.

2. **CLOSING.**

    2.1 **Deliveries by Recipient.** Recipient hereby delivers a duly executed copy of this Agreement to Association. Recipient shall provide to Association a wallet address(es) ("***Wallet(s)***") to which the Restricted Tokens shall be delivered.

**2.2 Deliveries by Association.** Association will deliver the Restricted Tokens to Recipient within seven (7) days of the later of Recipient (1) delivering a duly executed copy of this Agreement to Association, (2) delivering the AML and KYC forms set forth in Section 2.3, and (3) providing delivery instructions sufficient to accept the Restricted Tokens. It is understood, acknowledged, and agreed by Recipient that all Restricted Tokens provided to Recipient by Association pursuant to this Agreement will be subject to the Lock-Up set forth in Section 4 below.

**2.3 AML and KYC Forms.** In connection with, as a condition to, and prior to the delivery of Restricted Tokens to Recipient pursuant to this Agreement (and unless waived in writing by Association), Recipient will complete and deliver to the Association (1) Recipient's constitutional and governing documents, and (2) a completed Form T.

**3. REPRESENTATIONS AND WARRANTIES OF RECIPIENT.** Recipient hereby represents and warrants to Association as follows.

**3.1 Authorization.** Recipient has full power and authority to enter into this Agreement. This Agreement constitutes a valid and legally binding obligation of Recipient, enforceable against Recipient in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

**3.2 AML and KYC; Sanctions.** Recipient makes the following additional representations, warranties and agreements, to the best of its knowledge as of the date hereof:

(a) Neither Recipient, nor, if applicable, any affiliate or direct or indirect beneficial owner of Recipient: (i) appears on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury ("**OFAC**"), nor are they otherwise a party with which Association is prohibited to deal under the laws of the United States; (ii) is a person identified as a terrorist organization on any other relevant lists maintained by any Governmental Authority; or (iii) unless otherwise disclosed in writing to Association prior to the date of this Agreement, is a senior foreign political figure, or any immediate family member or close associate of a senior foreign political figure;

(c) Neither the provision nor the delivery of Restricted Tokens hereunder shall cause Association to be in violation of applicable U.S. federal or state or non-U.S. laws or regulations, including, without limitation, anti-money laundering, economic sanctions, anti-bribery or anti-boycott laws or regulations, the Patriot Act, or the various statutes, regulations and executive orders administered by OFAC ("**OFAC Regulations**"), nor is Recipient otherwise a party with which Association is prohibited to deal under the laws of the United States;

(d) Recipient will use reasonable efforts to provide to Association any information that Association from time to time determines to be necessary or appropriate (i) to comply with Money Laundering Laws, anti-terrorism laws, rules and regulations and or any other laws and regulations of any applicable jurisdiction, and (ii) to respond to requests for information concerning Recipient's identity or its source of funds from any Governmental Authority, self-regulatory organization or financial institution in connection with its anti-money laundering compliance procedures, or to update that information. Recipient authorizes and directs Association and any cryptocurrency exchange where the Restricted Tokens or Wallet(s) is held to cooperate and share any information that Recipient has provided about its identity or otherwise. Recipient understands and acknowledges that Association may be required to report any action or failure to comply with information requests and to disclose Recipient's identity to Governmental Authorities, self regulatory organizations and financial institutions, in certain circumstances without notifying Recipient that such information has been so provided; and

(e) Recipient further understands and agrees that, even if Association is not obligated to comply with any U.S. anti-money laundering requirements, Association may nevertheless choose to voluntarily comply with such requirements as it deems appropriate in its reasonable discretion. Recipient agrees to use reasonable efforts to cooperate with Association as

2

may be required in the reasonable opinion of Association in connection with such compliance.

**3.3 Waiver and Release.** Recipient agrees that its receipt of the tokens will satisfy the relief sought through the *Motion to Enforce Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay (ECF 1693)* [Bankr. Del. Case No. 22-11068, Dkt. 29773].

## 4. LOCK-UP.

Recipient acknowledges and agrees that (a) 125,000,000 Replacement Tokens are unlocked as of the Effective Date; (b) 125,000,000 Replacement Tokens will unlock on each of May 19, 2025, May 19, 2026, and May 19, 2027; and (c) technological lockups or restrictions may be imposed on the Replacement Tokens and/or Recipient's Wallet(s) to ensure compliance therewith.

## 5. CERTAIN DEFINITIONS

**5.1** "*Governmental Authority*" means any nation or government, any state or other political subdivision thereof, any entity exercising legislative, judicial or administrative functions of or pertaining to government, including, without limitation, any government authority, agency, department, board, commission or instrumentality, and any court, tribunal or arbitrator(s) of competent jurisdiction, and any self-regulatory organization.

**5.2** "*Money Laundering Laws*" means the applicable laws, rules and regulations of all jurisdictions in which Association or Recipient is located, resident, organized or operates concerning or related to anti money laundering, including but not limited to those contained in the Bank Secrecy Act of 1970 and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "***Patriot Act***") and the Swiss Anti-Money Laundering Act and related Ordinance, each as amended and including the rules and regulations thereunder, and any related or similar rules, regulations or guidelines, issued, administered or enforced by any Governmental Authority.

## 6. GENERAL PROVISIONS.

**6.1 Notices.** All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt, or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, or (c) three (3) business days after having been sent by registered or certified mail, return receipt requested, postage prepaid. All notices not delivered personally will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address set forth below the signature lines of this Agreement or at such other address as such other party may designate by one of the indicated means of notice herein to the other party hereto. A "***business day***" shall be a day, other than Saturday or Sunday, when the banks in Switzerland are open for business.

**6.2 Further Assurances.** The parties agree to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**6.3 Titles and Headings.** The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement. Unless otherwise specifically stated, all references herein to "sections" and "exhibits" will mean "sections" and "exhibits" to this Agreement.

**6.4 Governing Law; Dispute Resolution.** Any controversy or dispute which arises out of or is related to this Agreement, including its existence, interpretation, application, performance, breach and termination thereof, must be decided by arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution in force on the date when the Notice of Arbitration is submitted in accordance with those Rules. The seat of the arbitration shall be Zug, Switzerland. The language of the arbitration shall be English. When deciding upon evidentiary issues, including document production, the arbitral tribunal shall take guidance from the IBA Rules on the Taking of Evidence in International Arbitration in force at the time that any evidentiary issue arises. This Agreement and the acquisition and loss of the Rights to Tokens will be governed by and construed and enforced in accordance

with the laws of Switzerland, without regard to conflict of law rules or principles (whether of Switzerland or any other jurisdiction) that would cause the application of the laws of any other jurisdiction, irrespective of whether the Rights to Tokens qualify as right or property under the applicable laws. Any dispute between the Parties arising out of or relating to this Agreement or its subject matter or formation (including non-contractual disputes or claims) that cannot be subject to arbitration due to applicable law will be resolved in the courts of Switzerland.

**6.5 Assignments; Successors and Assigns.** Association or Recipient may assign any of its rights and obligations under this Agreement; provided that any assignee of Recipient's rights shall be required to execute an token delivery agreement substantially similar to this Agreement. Any assignment of rights and obligations by Recipient or any other party to this Agreement requires Association's prior written consent. This Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

**6.6 Entire Agreement.** This Agreement constitutes the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof. For the avoidance of doubt, other than the rights to the Restricted Tokens expressly contemplated by this Agreement, Recipient acknowledges and agrees that it is not entitled to any additional Original Tokens or other Replacement Tokens.

**6.7 Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this Section 6.7 will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**6.8 Severability.** If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the foregoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court or arbitrator of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

**6.9 Counterparts; Facsimile Signatures.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile or electronic mail (including .pdf or any electronic signature) and upon such delivery the signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

[Signature page follows]

**IN WITNESS WHEREOF**, Association and Recipient have each caused this Token Delivery Agreement to be executed as of the Effective Date.

By signing below, Recipient hereby further agrees to the following amount of Replacement Tokens as the Delivery Amount:

| **Delivery Amount:** | 500,000,000 **Replacement Tokens** (of which 125,000,000 Replacement Tokens are fully unlocked as of the date hereof) |
|---|---|

Effective Date:_____

**ASSOCIATION:**                                **RECIPIENT:**

PYTH DATA ASSOCIATION                     TERRAFORM WIND DOWN TRUST

By: _____              By: _____

Name: _____              Name: _____

Title: _____             Title: _____

Address: _____              Address: _____

Email: _____              Email: _____