# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br>Hearing Date: June 25, 2025 at 9:30 a.m. (ET)<br>Objection Deadline: June 16, 2025 at 4:00 p.m. (ET) |

**MOTION OF FOLKVANG LTD. FOR ENTRY OF AN ORDER
(I) AUTHORIZING REPURCHASE OF EQUITY INTEREST IN FOLKVANG LTD.
HELD BY DEBTOR ALAMEDA RESEARCH LTD., (II) AUTHORIZING
FOLKVANG LTD.'S REPAYMENT OF LOAN MADE BY DEBTOR
MACLAURIN INVESTMENTS LTD., (III) ALLOWING SETOFF OF REPURCHASE
AND REPAYMENT AMOUNTS, AND (IV) GRANTING RELATED RELIEF**

Folkvang Ltd. ("Folkvang"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto, pursuant to §§ 105 and 553 of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing the repurchase by Folkvang of Debtor Alameda Research Ltd.'s 15% equity interest in Folkvang (the "Repurchase"), (ii) authorizing the repayment by Folkvang of the Maclaurin Loan (as defined in paragraph 9 below) made to Folkvang by Debtor Maclaurin Investments Ltd. prior to the filing of these chapter 11 cases, (iii) allowing the Repurchase and repayment of the Maclaurin Loan to be effected by way of setoff against amounts currently held by the Debtors on the FTX Exchange, and (iv) granting related relief.  In support of this Motion, Folkvang submits the *Declaration of*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

1

*Michael Laurens van Rossum*, attached hereto as <u>Exhibit A</u> (the "<u>van Rossum Declaration</u>"), and respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, and this Motion pursuant to 28 U.S.C. § 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Pursuant to Local Rule 9013-1(f), Folkvang consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND TO THESE CHAPTER 11 CASES

4. On November 11 and November 14, 2022 (as applicable, the "<u>Petition Date</u>"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

5. Joint administration of the Debtors' cases (the "<u>Chapter 11 Cases</u>") was authorized by the Court by entry of an order on November 22, 2022 (Doc. No. 128).

6. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* (Doc. No. 24), the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* (Doc. No. 57), the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* (Doc. No. 92) and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* (Doc. No. 93).

7. On October 8, 2024, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* (Doc. No. 26404) (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Doc. No. 26404-1) (the "Plan").[2] The Effective Date of the Plan occurred on January 3, 2025 (Doc. No. 29127).

8. Of relevance to this Motion, the Plan provides that "…no….Person or Entity holding a Claim or Interest shall…(b) take, without the written consent of the Plan Administrator or order of the Court, any action with respect to a Wind Down Entity or a Plan Asset if such action would not have been permitted to be taken by such Person or Entity with respect to a Debtor or its property under section 362 of the Bankruptcy Code." Plan at § 5.13.[3] In light of this provision, and in light of Folkvang's intent to effect the Repurchase and repayment of the Maclaurin Loan via setoff as described herein, Folkvang seeks this Court's approval for such actions.

**INFORMATION RESPECTING THE PARTIES AND RELIEF REQUESTED**

9. Folkvang is a cryptocurrency trading firm validly existing as an exempted limited company under the laws of the Cayman Islands. Like many such firms, Folkvang had numerous business relationships with the Debtors. Three aspects of those relationships are relevant to this Motion:

- Folkvang has a substantial unwithdrawable USD balance on the FTX Exchange, which is the subject of a timely-filed proof of claim with the Debtors that has not

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Plan.
[3] The Plan and the Confirmation Order further provide that automatic stay terminates as of the Effective Date or as otherwise provided in the Confirmation Order. *See* Plan at § 13.5, Confirmation Order at ¶ 143. To the extent the Debtors take the view that the automatic stay continues to apply by operation of Plan § 5.13 notwithstanding these provisions, Folkvang intends for this Motion to constitute a motion for relief from the automatic stay for cause under section 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Rule of the United States Bankruptcy Court for the District of Delaware 4001-1.

3

been objected to[4] and has been classified by the Debtors under the Plan as a Class 5A – Dotcom Customer Entitlement Claim entitled to be paid in full in Cash plus applicable interest as set forth in the Plan;[5]

- Debtor Maclaurin Investments Ltd. (f/k/a Alameda Ventures Ltd.) ("Maclaurin") has extended a ▮▮▮▮▮▮▮ fixed interest loan to Folkvang on the FTX Exchange (the "Maclaurin Loan"), which remains fully drawn and accrued ▮▮▮▮▮▮▮ in interest prior to the Petition Date; and

- Debtor Alameda Research Ltd. ("Alameda") holds a 15% equity interest (1,500 shares) in Folkvang.

*See* van Rossum Declaration at ¶ 3.

10. These business relationships have taken a substantial toll on Folkvang's business since the Petition Date. Folkvang has been unable to secure a large portion of its assets, resolve the Maclaurin Loan described above, and/or address Alameda's equity stake in Folkvang, all as a result of the Debtors' ongoing bankruptcy cases and the attendant freezing of many aspects of the Debtors' affairs. Folkvang has reached out to the Debtors and representatives of the Plan Administrator on multiple occasions during the pendency of these cases in an attempt to resolve these matters. While the Debtors and Folkvang are continuing to pursue those discussions, and Folkvang hopes they will lead to a consensual resolution of all outstanding matters between Folkvang and the Debtors, those efforts have not to date been successful. *See* van Rossum Declaration at ¶ 15. Folkvang accordingly submits this motion for authority to (i) provide notice and effect the Repurchase in accordance with Folkvang's Second Amended and Restated Articles of Association (the "Articles of Association"), (ii) repay the Maclaurin Loan, and (iii) effect the

---

[4] The Debtors appear to have recently designated Folkvang's proof of claim as "Disputed" in FTX's claims portal. Folkvang is not aware of any basis for this designation by the Debtors, nor have the Debtors articulated any objections to Folkvang's claim, let alone filed an objection to the allowance of such claim.

[5] The precise amount of Folkvang's Class 5A – Dotcom Customer Entitlement Claim is confidential and hence not detailed in this Motion. However, the amount of such claim is substantially in excess of the combined amount of the Repurchase and repayment of the Maclaurin Loan sought to be effected by this Motion. The Debtors will as a result continue to hold substantial amounts claimed by Folkvang following entry of an order granting this Motion. The Debtors have access to the amount of Folkvang's claim and can accordingly verify this representation with their records. *See* van Rossum Declaration at ¶ 4.

Repurchase and repayment of the Maclaurin Loan by way of setoff against amounts owed to Folkvang, as set forth in Folkvang's proof of claim.[6]

### A. Repurchase of Alameda's Minority Interest in Folkvang

#### 1. *Folkvang's Articles of Association*

11.     Folkvang intends for the Repurchase to be completed in accordance with the Articles of Association.[7]  A copy of the Articles of Association is attached to this Motion as <u>Exhibit B</u>.  The Articles of Association provide, in relevant part and so long as it is in the best interests of Folkvang as a whole, for a compulsory redemption or purchase of the shares of any Defaulting Member, which is defined as any member:

- Who commits a breach of the Articles of Association;

- Who commits an act or fails to act in a manner that may result in Folkvang incurring or suffering any pecuniary, legal, regulatory, administrative, operational or reputational disadvantage or liability or loss or negative publicity which Folkvang might not otherwise have incurred or suffered; or

- Whose shareholdings adversely affect Folkvang.

*See* Articles of Association at ¶ 24, van Rossum Declaration at ¶ 7.  The determination of whether these circumstances are present is made in each case in the reasonable opinion of Folkvang's directors.  *See id*.

12.     The compulsory share repurchase can be made on ten (10) days' written notice to the relevant member and must specify the grounds on which the member is a Defaulting Member and how the price for the shares being repurchased is to be computed.  *See* Articles of Association

---

[6] Folkvang reserves its rights to seek additional relief as necessary from the Court respecting any aspect of its business arrangements with the Debtors.

[7] As a shareholder in Folkvang, Alameda was provided with e-mail and hard copy notices of the general meeting of Folkvang's shareholders at which the Articles of Association were adopted.  Alameda did not respond to those notices, nor did it complete a proxy form despite being given the option to do so and/or attend or otherwise participate in the general meeting.  *See* van Rossum Declaration at ¶ 6.

at ¶ 25.  The Defaulting Member is entitled to receive the fair value of its shares as determined by a recognized international third-party business valuer.  *See id*. at ¶ 31.  No discount shall be applied to the minority stake of a Defaulting Member (if any) unless Folkvang's directors determine in good faith that it is in the best interests of Folkvang to do so, acting upon the advice of counsel.  *See id*.

### 2. *Factual Basis for the Repurchase*

13. Folkvang's directors have formed the opinion in good faith that Alameda is a Defaulting Member with respect to its minority stake in Folkvang for multiple reasons.  The first reason is that Alameda's shareholding creates an "operational or reputational disadvantage or liability or loss or negative publicity" for Folkvang.  As the Court is well aware, the Debtors – including Alameda – operated as a "disorganized jumble" of entities whose management misappropriated billions of dollars of investments that ultimately resulted in criminal penalties for many of the Debtors' senior management and devastating consequences for many thousands of the Debtors' customers and other stakeholders.  *See, e.g.*, Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. at Its Affiliated Debtors and Debtors-in-Possession (Doc. No. 19143) at 1.  The Debtors themselves have likened their business and affairs to those of Enron and Bernie Madoff – two of the most notorious examples of financial misdealing in history.  *See id*. at 2-3.

14. The Debtors' own statements about their business establish that any business association with Alameda – or any of the other FTX entities – presents a substantial operational or reputational disadvantage or liability.  This is particularly true where an FTX entity like Alameda remains a part-owner of a business such as Folkvang.  Put simply, and notwithstanding the efforts in the Debtors' chapter 11 cases to stabilize the Debtors' business and affairs, the Debtors' brand

is a permanent liability in the cryptocurrency space. Folkvang's ongoing association with Alameda through its minority shareholding is, in the reasonable opinion of Folkvang's directors, a drag on Folkvang's reputation and its ability to operate. *See* van Rossum Declaration at ¶ 9. As a result, Folkvang's directors have clear grounds to support the repurchase of Alameda's interest, which is in the best interests of Folkvang as a whole.

15. Alameda's minority stake has additional adverse effects specifically on Folkvang. For example, in circumstances where Folkvang is required to provide anti-money laundering or "know your customer" information about its shareholders to third parties, it is essentially unable to provide more information about Alameda than what is publicly available, and it is unable to obtain information from Alameda about its stakeholders (*e.g.*, "know your customer" documentation such as photo identification from Alameda's directors/officers). For their part, the Debtors have expressly rejected Folkvang's requests for such documentation. This has effectively prevented Folkvang from being able to open bank or brokerage accounts that are necessary to its business. *See* van Rossum Declaration at ¶ 10.

16. Moreover, Folkvang has been unable to engage certain important counterparties (such as cryptocurrency exchanges, lenders, and prime brokers) because Alameda has an ultimate beneficial owner based in the United States. This has limited Folkvang's efforts to explore new business lines or use leverage in its business. *See id.* at ¶ 11.

17. Each of these adverse effects standing alone provides ample justification for Folkvang's directors to conclude that Alameda – which has taken no action in respect of its shareholdings – is a Defaulting Member. Taken together, the factual and business justification for the Repurchase is overwhelming, and the Court should permit Folkvang to exercise its right to repurchase Alameda's minority stake in Folkvang.

18. The proposed Repurchase also should not materially affect the Debtors. Alameda has taken no actions with respect to its shareholdings in Folkvang since the commencement of these cases over two-and-a-half years ago. Indeed, Alameda neither participated in nor even acknowledged the recent meeting of Folkvang's shareholders to approve the Articles of Association. *See id.* at ¶ 6. Folkvang will repurchase Alameda's illiquid minority stake in Folkvang at fair value as determined by an internationally recognized business valuer and disclosed in advance to Alameda, all in accordance with Folkvang's Articles of Association. Given that Alameda will eventually need to liquidate its shareholdings in Folkvang as part of its own wind-down, no good cause exists to delay that process further.

**B. Repayment of Maclaurin Loan**

19. Folkvang also seeks by this Motion to repay ▮▮▮▮▮▮▮▮ it owes to Maclaurin under that certain Loan and Security Agreement dated as of June 5, 2020 (the "LSA"). A copy of the LSA is attached as Exhibit C hereto.

20. Maclaurin advanced ▮▮▮▮▮▮▮▮ to Folkvang on the FTX Exchange under the LSA on or about June 23, 2020. Interest on that advance accrued prior to the Petition Date in the aggregate amount of ▮▮▮▮▮▮▮▮ pursuant to clause 2 of the LSA. That interest has been credited by Folkvang to the "Pool" under that certain Master Loan Agreement dated October 18, 2022 between Folkvang and Maclaurin (the "MLA"), and Maclaurin's claim to such interest under the LSA has therefore been extinguished. As a result, Folkvang owes a total of ▮▮▮▮▮▮▮▮ to Maclaurin under the LSA. *See* van Rossum Declaration at ¶ 14.

21. Folkvang further submits that no amounts are payable by it on account of post-petition interest on the Maclaurin Loan. The amount advanced by Maclaurin to Folkvang was credited to Folkvang's FTX account. That account was abruptly and permanently frozen as a result

of FTX's collapse, and completely and entirely inaccessible following the onset of FTX's bankruptcy proceedings.  There can be no dispute that the purpose of the LSA - *i.e.*, to provide a loan to Folkvang to trade digital assets on the FTX Exchange – was frustrated as a result of the FTX Exchange ceasing to operate and the advanced funds becoming inaccessible as a matter of law.

22. Hong Kong law, as the governing law of the LSA, recognizes the common law doctrine of frustration.[8]  Stated succinctly, the doctrine of frustration arises under Hong Kong law where it appears from the nature of the contract and from the surrounding circumstances that the parties have contracted on the basis that a certain state of things shall continue, but through no fault of either party, an event occurs which makes performance of the contract impossible or only possible in a very different manner from what was contemplated when the contract was entered into.  *See Chinachem Investment Co Ltd v. Wong Lai-Ying and Others [1978] HKCA 217* (at §35).

23. The applicable test under Hong Kong law as to whether the doctrine of frustration applies is to (i) determine whether the contract itself provides for the situation that has arisen, and, if not, (ii) compare the new situation to that contemplated by the contract.  If, in the new situation, it would be "positively unjust" to bind the parties to the contract, then the doctrine of frustration applies.[9]

---

[8] Common law as applied in the United States also recognizes and applies the doctrine of frustration where, as here, "a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made…" Restatement (Second) of Contracts § 265.

[9] The test to be applied is the same as that under English law and is succinctly stated by Lord Denning in *"The Eugenia" (1964) 2 Q.B. 227* at 239 as follows:

> To see if the doctrine applies, you have first to construe the contract and see whether the parties have themselves provided for the situation that has arisen. If they have provided for it, the contract must govern. There is no frustration. If they have not provided for it, then you have to compare the new situation with the situation for which they did provide. Then you must see how different it is. The fact that it has become more onerous or more expensive for one party than he thought is not sufficient to bring about a frustration. It must be more than merely more onerous or more expensive. It must

24. The purpose of the LSA and the amounts advanced under it were to provide a loan to Folkvang to trade digital assets on the FTX Exchange. Although the advance by Maclaurin was made less than six months before the Petition Date, the unforeseen nature of the Debtors' chapter 11 cases meant that no provisions in the LSA (or any of its related documents) contemplated what would occur in the event the FTX Exchange ceased operating and the loaned funds became inaccessible. There can be no debate that neither the LSA nor any other Loan Document (as defined in the LSA) between Folkvang and Maclaurin addressed this situation.

25. The Debtors' collapse, the FTX Exchange's cessation of operations, and the freezing of the funds advanced under the LSA created a new situation in which allowing the further accrual of interest on the advanced amount would be positively unjust. Folkvang would be required to pay 2 ½ years (and counting) in interest on amounts that it has had no ability to utilize or even access. Requiring Folkvang to confer a windfall on the Debtors as a result of the Debtors' own amply-documented malfeasance would be patently absurd.[10] The Court should accordingly conclude that no additional interest should be payable by Folkvang on account of the Maclaurin Loan.

**C. Effecting the Repurchase and Repayment of the Maclaurin Loan by Setoff and Related Relief**

---

be positively unjust to hold the parties bound. It is often difficult to draw the line. But it must be done. And it is for the courts to do it as a matter of law.

[10] *See Bank Line Ltd v. Arthur Capel & Co (1919) A.C. 435*, which has been applied by the Hong Kong Courts. As per Lord Haldine:

What is clear is that where people enter into a contract which is dependent for the possibility of its performance on the continued availability of the subject-matter, and that availability comes to an unforeseen end by reason of circumstances over which its owner had no control, the owner is not bound unless it is quite plain that he has contracted to be so.

26. Folkvang proposes to satisfy both the Repurchase and repayment of the Maclaurin Loan by setting off such amounts against amounts owing to Folkvang that remain held by the Debtors on the FTX Exchange. Folkvang has a proof of claim on file with the Debtors for amounts substantially in excess of the combined amount of the Repurchase and repayment of the Maclaurin Loan. That proof of claim has not been objected to, and although the Debtors have recently - and for the first time – characterized Folkvang's claim as "disputed," Folkvang is not aware of any substantial disagreement that the Debtors have with the amounts set forth therein. There is accordingly no dispute that the Debtors are indebted to Folkvang for amounts substantially in excess of the proposed setoff, and that the Debtors will remain so following such setoff.

27. Folkvang additionally requests that that order approving this Motion direct the Debtors and/or the Consolidated Wind Down Trust to enter into releases customary under Hong Kong law (as the governing law of the LSA) to the LSA and any other Loan Documents (as defined in the LSA). For the avoidance of doubt, such releases would be provided by the Debtors only after repayment of the Maclaurin Loan is effected by setoff as described herein.

## BASES FOR RELIEF REQUESTED

a. **Authorization for the Repurchase and Repayment of the Maclaurin Loan**

28. The Court should authorize the Repurchase and repayment of the Maclaurin Loan under section 105(a) of the Bankruptcy Code and Section 5.13 of the Plan. As noted in paragraph 8 above, the Plan provides that no party may take, absent a Court order or agreement of the Plan Administrator, any action with respect to a Wind Down Entity or a Plan Asset if such action would not have been permitted to be taken by such Person or Entity with respect to a Debtor or its property under section 362 of the Bankruptcy Code. Folkvang accordingly submits that the Court should

consider its request for relief herein in a similar manner to a request for relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).

29. "Cause" for relief under section 362(d) of the Bankruptcy Code is not defined or otherwise described in the Bankruptcy Code, but it is a "flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.,* 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)). A court determines whether cause exists by looking at three considerations: (i) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting of the stay; (ii) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the probability of the movant prevailing on the merits. *In re Downey Financial Corp.*, 428 B.R. 595, 608-09 (Bankr. D. Del. 2010).

30. Analysis of the requirements constituting cause favors granting the relief requested herein. Alameda's minority interest in Folkvang is a *de minimis,* illiquid asset of the Debtors' bankruptcy estates that will inevitably need to be liquidated as part of the Debtors' wind down process. Alameda has not participated as a shareholder in Folkvang since the commencement of these chapter 11 cases, including in the April 2025 general meeting adopting the updated Articles of Association. The Debtors cannot plausibly maintain that they have a need to retain their interest in Folkvang any longer than they already have, nor can they have any future use for it. These facts and circumstances demonstrate that little to no prejudice will result to the Debtors by permitting the Repurchase.

31. In contrast, Alameda's continued shareholding in Folkvang presents considerable prejudice to Folkvang. Folkvang's association with one of the Debtors as a shareholder presents

obvious reputational issues for Folkvang, as detailed earlier in this Motion. Moreover, the presence of a minority shareholder and the need to comply with reporting, "know your customer," and similar requirements respecting that shareholder present ongoing operational burdens on Folkvang that will exist for as long as Alameda retains its interest. In sum, the Debtors realize little or no benefit from continuing to hold an interest in Folkvang, while Folkvang will realize a substantial benefit from exercising its rights to repurchase that interest as provided in the Articles of Association. This Court should accordingly permit the Repurchase.

32. Permitting repayment of the Maclaurin Loan is similarly justified. Folkvang proposes to repay an amount owed to the Debtors as a part of unwinding the various arrangements between it and the Debtors. The Debtors are not prejudiced by receiving that repayment, while Folkvang receives the benefit of addressing a remaining liability on its books. The proposed repayment should likewise be authorized.

### b. Setoff

33. The Court should also permit Folkvang to effect the Repurchase and repayment of the Maclaurin Loan through a setoff against the amounts owed to Folkvang on account of its proof of claim in these cases. Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A." *Citizens of Maryland v. Stumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)).

34. "Section 553, which governs setoff in bankruptcy, does not create a right of setoff but rather preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law, and imposes additional restrictions on a creditor seeking setoff that must be met to impose a setoff against a debtor in bankruptcy." *Miller v. D&M Holdings US Inc. (In re*

*Digital Networks N. Am., Inc.)*, 2021 Bankr. Lexis 3080, at *13-14 (Bankr. D. Del. Nov. 8, 2021) (citing *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009)). To be eligible for setoff under section 553, "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y. 2010). "Debts are considered mutual only when they are due to and from the same persons in the same capacity." *SemCrude*, 399 B.R. at 393. The Plan also provides that no holder of a Claim shall be entitled to exercise a right of setoff absent the filing of a proof of claim with the Court and an order of the Court authorizing and approving such setoff. *See* Plan at § 7.10.[11]

    35.    The requirements for setoff are met with respect to the Repurchase and proposed repayment of the Maclaurin Loan. There is no dispute that all of the claims on both sides in this matter arose prior to the Petition Date. With respect to mutuality, although the obligations sought to be setoff hereunder were owed from or to different Debtors prior to the Petition Date, the Plan substantively consolidated all of the Debtors (with certain exceptions not relevant here) into a single entity as of the Effective Date. See Plan at § 5.7. This substantive consolidation included, without limitation, consolidating all property of the Consolidated Debtors in the Consolidated Wind Down Trust, making all joint obligations of the Consolidated Debtors and multiple claims against the Consolidated Debtors a single Claim against the Consolidated Wind Down Trust, and

---

[11] "In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff." Plan at § 7.10.

making all Claims filed or scheduled in the Debtors' chapter 11 cases a single obligation of the Consolidated Wind Down Trust.  See *id.*[12]

36. The substantive consolidation of the Debtors under the Plan eliminates any mutuality issue with respect to the proposed setoff.  Folkvang's claim against the Debtors has been classified by the Debtors as a Class 5A – Dotcom Customer Entitlement Claim.  No objection has been filed to Folkvang's proof of claim, and it is entitled to be paid in full in Cash with interest, as set forth in Section 4.3.6 of the Plan.  By operation of Section 5.7 of the Plan, Folkvang's claim is treated as a single claim against the Consolidated Wind Down Trust.  The Repurchase and the repayment of the Maclaurin Loan are both likewise payable in full to the Consolidated Wind Down Trust.  Accordingly, no mutuality issue is present, and Folkvang should be authorized to effect the Repurchase and repay the Maclaurin Loan by way of setoff.

37. The proposed setoff also avoids the absurdity described in *Strumpf*.  There is no serious argument that the mutual debts at issue here are due and owing between the parties and are entitled to be paid in full in cash.  Resolving those debts now through the requested setoff promotes the efficient administration of the Debtors' estates, does not prejudice the Debtors or their stakeholders, and will result in the Debtors continuing to hold a substantial amount of Cash that remains to be distributed to Folkvang.  The setoff should be approved.

## NOTICE

38. Notice of this Motion has been provided to: (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) the Plan Administrator; and (d) all parties who filed a

---

[12] The Plan further provides in § 5.7 that the substantive consolidation shall not "constitute or give rise to any…right of netting or setoff with respect to any Cause of Action vesting in the Consolidated Wind Down Trust that could not have been asserted against the Consolidated Debtors."  Whatever the intended effect of that provision, it should not prevent the setoff requested in this Motion, as all claims at issue are prepetition in nature and all claims held by Folkvang against the Debtors are to be paid in full under the Plan.

request for service of notices under Bankruptcy Rule 2002(i). Folkvang submits that, in light of the nature of the relief requested, no other or further notice need be provided.

### **NO PRIOR REQUEST**

39.     No prior request respecting the relief sought herein has been made to this or any other Court.

WHEREFORE, for the reasons set forth herein, Folkvang Ltd. respectfully requests entry of an order (i) authorizing the Repurchase, (ii) authorizing the repayment by Folkvang of the Maclaurin Loan, (iii) authorizing and allowing the Repurchase and repayment described herein to be effected by way of setoff as described herein, and (iv) granting related relief.

| | |
|---|---|
| Dated:  June 2, 2025<br>Wilmington, Delaware | BARNES & THORNBURG LLP<br><br>*/s/ Amy E. Tryon*<br>Mark R. Owens (DE No. 4364)<br>Amy E. Tryon (DE No. 6945)<br>222 Delaware Ave., Suite 1200<br>Wilmington, DE 19801<br>(302) 300-3434<br>mark.owens@btlaw.com<br>amy.tryon@btlaw.com<br><br>and<br><br>Kenneth P. Kansa (*pro hac vice pending*)<br>Barnes & Thornburg LLP<br>One N. Wacker Drive, Suite 4400<br>Chicago, IL 60606-2833<br>Telephone: (312) 214-4583<br>Email:  kkansa@btlaw.com<br><br>and<br><br>Leah Anne O'Farrell (pro hac vice pending)<br>Barnes & Thornburg LLP<br>One Marina Park Drive, Suite 1530<br>Boston, MA 02210<br>Telephone: (781) 888-1516<br>Email:  LOFarrell@btlaw.com |