# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 3409, 3737 & 29572 |

## REPLY OF FTX RECOVERY TRUST IN FURTHER SUPPORT OF DEBTORS' OBJECTION TO ROSS RHEINGANS-YOO'S CLAIM

The FTX Recovery Trust[2] hereby submits this reply (the "Reply") to *Ross Rheingans-Yoo's Response to Debtors' Objection to Claim No. 5166* (the "Response") [D.I. 3737] and *Ross Rheingans-Yoo's Supplemental Response to Debtors' Objection to Claim No. 5166* (the "Supplemental Response" or "Suppl. Resp.") [D.I. 29572]. The parties agree that there are no material facts in dispute in connection with the Objection. Accordingly, in support of this Reply, the FTX Recovery Trust incorporates by reference the *Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim* [D.I. 29218] ("Undisputed Facts"),[3] which the parties agree obviates any need for a hearing on the remaining portion of his Claim[4] (the "FDU Claim") relating

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The objection to Rheingans-Yoo's claim was originally submitted by the Debtors. The FTX Recovery Trust was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1].

[3] To the extent Rheingans-Yoo's Response or Supplemental Response asserts facts that contradict the Undisputed Facts to which he agreed, those purported facts should be disregarded.

[4] Pursuant to the settlement stipulation attached as Exhibit O to the Undisputed Facts, "Rheingans-Yoo filed a non-customer claim against Alameda Bahamas [Alameda Research (Bahamas) Ltd.], claim no. 5166, and a duplicative claim, claim no. 89710 [(together, with claim no. 5166, the "Claim")], seeking, . . . a claim for $650,000 in unpaid bonus in the form of a donation to be made to a charity of Rheingans-Yoo's choosing."

to the $650,000 donation to an Effective Altruist cause of Rheingans-Yoo's choosing "if he wants" (the "FDU Bonus").  In further support of this Reply, the FTX Recovery Trust respectfully states as follows:

**Preliminary Statement**

1. Since the Debtors filed their Objection to Rheingans-Yoo's Claim in October 2023, the landscape relating to the Claim has simplified dramatically.  On April 11, 2024, the parties settled all aspects of Rheingans-Yoo's Claim except the FDU Claim, the portion of Rheingans-Yoo's Claim relating to his purported entitlement to recover $650,000 in "directed grants" (*i.e.*, a charitable donation) to an Effective Altruist charity "if [he] want[s]." [Adv. D.I.[5] 106-1 ¶ 4.]  In that settlement, the parties agreed that the FDU Claim is "primarily legal in nature." (*Id.* ¶ 6 n.5.) The parties subsequently stipulated to Undisputed Facts with respect to the FDU Claim.  In light of the settlement with respect to portions of the Claim, the FTX Recovery Trust has revised the proposed form of order ("Revised Order"), attached hereto as **Exhibit A**.

2. Rheingans-Yoo does not have standing to recover on the FDU Claim and, in any event, the FDU Claim is not valid.  First, Rheingans-Yoo has no standing to recover on the FDU Claim as he is neither a creditor, with a personal entitlement to be paid in connection with the FDU Claim, nor an authorized agent of a creditor.  Second, it is undisputed that Rheingans-Yoo did not accept the offer of the FDU Bonus pre-petition.  Third, Rheingans-Yoo cannot rely on parol evidence that predates the entry into his Employment Agreement (as defined herein) to alter the terms of his Employment Agreement, which contains a clear integration clause but no mention of any entitlement to an FDU Bonus.

---

[5] Citations to "Adv. D.I. 106-1" refer to *FTX Trading Ltd.* v. *Platform Lifesciences Inc.*, Ch. 11 Case No. 22-11068, Adv. No. 23-50444 (Bankr. D. Del. July 19, 2023) (the "Latona Adversary Proceeding").

3. The ultimate irony of Rheingans-Yoo's FDU Claim is that he seeks to compel the FTX Recovery Trust to make a $650,000 donation to an undisclosed charity from funds recovered for the benefit of FTX Group[6] creditors. Had Rheingans-Yoo timely designated an Effective Altruist charity pre-petition to receive the donation and had the FTX Group in fact made that donation pre-petition, the Debtors would have sought to claw back that donation as a fraudulent transfer. Indeed, since the Chapter 11 Cases were filed, the Debtors have clawed back over $94 million from charities (and others) that received pre-petition donations made by the FTX Group. Rheingans-Yoo's failure to timely designate a charity to receive the donation pre-petition should not serve to advantage an undisclosed charity over the other charities that were required to return their pre-petition donations.

**Background**

**Rheingans-Yoo's Employment Agreement and Bonus Memo**

4. Rheingans-Yoo held himself out as the "Executive Director" of non-Debtor Latona Biosciences Group ("Latona"), a Bahamian non-profit company "under the umbrella of the FTX Foundation 'brand'" of which Samuel Bankman-Fried was also a director. (Undisputed Facts ¶¶ 35-37.) Using funds from Alameda Research Ltd., Latona made investments in various life sciences companies. [*See* Adv. D.I. 1 (Complaint in Latona Adversary Proceeding).]

5. On April 11, 2022, Rheingans-Yoo executed an employment agreement (the "Employment Agreement") with Alameda Bahamas, which the parties agree is "enforceable according to its terms." (Undisputed Facts ¶¶ 22, 31.) The Employment Agreement provided that Rheingans-Yoo "*may be eligible to receive a discretionary bonus* from time to time in an amount

---

[6] The term "FTX Group" means, collectively, the Debtors and all affiliates of them that have not filed voluntary Chapter 11 petitions in the United States under Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

as may be determined by [Alameda Bahamas] *in its sole and absolute discretion.*" (*Id.* ¶ 28 & Ex. J § 4(b) (emphasis added).) It also stated that "[n]othing herein shall be construed to obligate [Alameda Bahamas] to give [Rheingans-Yoo] or otherwise guarantee a bonus for any period." (*Id.* ¶ 28 & Ex. J § 4(b).)

6. The Employment Agreement contained a clear integration clause, providing that "[t]his Agreement . . . contain[s] the entire understanding of the parties in respect of the subject matter contained herein" and that "[i]n executing this Agreement, [Rheingans-Yoo] represent[s] that [he has] not relied on any representation or statement not set forth in this Agreement . . . and [he] expressly disavow[s] any reliance upon any such representation or statements." (*Id.* ¶ 30 & Ex. J § 14(a).)

7. On or about September 1, 2022, Bankman-Fried created Rheingans-Yoo's Bonus Memo, a copy of which Bankman-Fried shared with Rheingans-Yoo. (*Id.* ¶¶ 38, 40 & Ex. L.) For purposes of the FDU Claim, the only portion of the Bonus Memo that is relevant is the statement: "On top of the above, you [Rheingans-Yoo] get another $650k of directed grants to any EA [Effective Altruist]-driven cause *if you want.*" (*Id.* ¶¶ 38, 41 & Ex. K (emphasis added).)

8. It is undisputed that Rheingans-Yoo "did not inform anyone at the FTX Group prepetition that he had designated an EA-driven cause to receive the $650,000 directed grant" (*id.* ¶ 48), and he has never designated a recipient of the FDU Bonus. (*See* Suppl. Resp. ¶ 46 ("The yet-unidentified charities cannot assert the claim.").)

**The Ross Terms Predate the Employment Agreement**

9. After the Debtors filed their initial Objection to Rheingans-Yoo's Claim, Rheingans-Yoo produced, for the first time,[7] a copy of the Final Ross Terms, a document that he negotiated with Bankman-Fried *prior to* the signing of his Employment Agreement. (Undisputed Facts Ex. G.) The Final Ross Terms and two related documents, Original Ross Terms and Revised Ross Terms (together, with the Final Ross Terms, the "Ross Terms"), pre-dated the execution of his Employment Agreement. (*Id.* ¶¶ 3, 9, 18, 20, 24).

10. In his Response and Supplemental Response, Rheingans-Yoo relies on the Final Ross Terms to argue that the FDU Bonus was not contingent on Rheingans-Yoo accepting it (Suppl. Resp. ¶ 45), despite the "if you want" language in the Bonus Memo. But while the Ross Terms reflected the "*proposed* terms of Rheingans-Yoo's employment" (Undisputed Facts ¶¶ 5, 12, 20 (emphasis added)), the *actual terms* of Rheingans-Yoo's employment are reflected in his executed Employment Agreement, which contains a clear integration clause. Not only does the Employment Agreement contain *no mention* of any FDU Bonus, but it also states that *any bonus* is entirely within the discretion of Alameda Bahamas. (*Id.* ¶¶ 28-29 & Ex. J §§ 4(b), 14(a).)

**The Parties Narrow Rheingans-Yoo's Original Claim to the FDU Claim**

11. The original Claim that Rheingans-Yoo filed requested pre-petition salary, post-petition salary, a pre-petition cash bonus, and the pre-petition FDU Bonus. (*Id.* Ex. N.) As part of the resolution of the Latona Adversary Proceeding (in which Rheingans-Yoo was a defendant), the Debtors settled all aspects of Rheingans-Yoo's Claim *except* the FDU Claim. (*Id.* ¶¶ 59-60.)

---

[7] The Final Ross Terms was never saved to the FTX Group document repository and instead existed only on Rheingans-Yoo's and Bankman-Fried's personal Google Drives to which the Debtors had no access. (*Id.* ¶ 18.)

In the stipulation memorializing the settlement of the other aspects of Rheingans-Yoo's Claim, the "Parties agree[d]" that the FDU Claim "is primarily legal in nature." (*Id*. ¶ 61.)

12. Consistent with the FDU Claim being "primarily legal in nature," the parties subsequently stipulated to Undisputed Facts regarding the FDU Claim. [D.I. 29218.] The parties agree that all material facts are undisputed and that the resolution of the FDU Claim turns solely on legal issues that do not require any live witness testimony.

**Legal Standard**

13. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). A claim is only allowed to the extent it is "enforceable against the debtor and the property of the debtor." *In re Okla. Merge*, 2022 Bankr. LEXIS 1923, at *15 (Bankr. D. Del. July 13, 2022) (citing 11 U.S.C. § 502).

14. "The burden of proof for claims brought in the bankruptcy court under 11 U.S.C. § 502(a) rests on different parties at different times." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). For a claim to be considered *prima facie* valid and "go forward," a claimant "must allege facts sufficient to support the claim"—*i.e.*, the claimant must "allege[ ] facts sufficient to support a legal liability to the claimant." *In re FTX Trading Ltd.*, 2024 Bankr. LEXIS 3024, at *9-10 (Bankr. D. Del. Dec. 18, 2024) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d at 173). "[A] claimant's failure to allege facts and provide adequate support for a claim deprives the claim of *prima facie* validity," such that a "debtor objecting to such claim 'has no evidentiary burden to overcome.'" *Id*. at *10 (citations omitted). Further, for a claim to be considered *prima facie* valid, it must adhere to the requirements of Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each, a "Bankruptcy Rule"); in relevant part, Bankruptcy Rule 3001(b) provides that "[o]nly a creditor or the creditor's agent may sign a proof of claim." Fed. R. Bankr.

P. 3001(b), (f); *see In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008) ("[W]here the proof of claim does not adhere to the requirements of Rule 3001 . . . , it is not entitled to the presumption of *prima facie* validity").

15. If a claim meets the standard for *prima facie* validity, the objecting party must "present evidence to overcome the presumed validity of the claim that is 'of probative force equal to that of the allegations of the creditor's proof of claim.'" *In re NNN 400 Cap. Ctr. 16, LLC)*, 2020 Bankr. LEXIS 2134, at *55 (Bankr. D. Del. Aug. 10, 2020). If the objecting party submits "sufficient evidence to place the claimant's entitlement at issue" and "negate the *prima facie* validity" of the claim, the burden reverts to the claimant, who must prove the validity of the claim by a preponderance of the evidence. *In re Catholic Diocese of Wilmington, Inc.*, 513 B.R. 639, 643 (Bankr. D. Del. 2014) (citation omitted). The ultimate burden of persuasion is always on the claimant asserting a claim against the estate. *In re Allegheny Int'l*, 954 F.2d at 174.[8]

## Argument

16. Rheingans-Yoo lacks standing to recover on the FDU Claim as he is neither a creditor nor a creditor's authorized agent with respect to the FDU Claim. In any event, Rheingans-Yoo has failed to meet his burden of proving the validity of his FDU Claim by a preponderance of the evidence because (i) he did not accept the FDU Bonus pre-petition, and (ii) he cannot rely on parol evidence to alter the terms of the fully integrated Employment Agreement.

---

[8] Rheingans-Yoo suggests that, at this stage, the FTX Recovery Trust must "cite[ ] case law" and provide proof (*i.e.*, more than an "ipse dixe argument") that the FDU Claim should be disallowed. (Suppl. Resp. ¶ 23.) Rheingans-Yoo misstates the burden of proof at this stage. Because the Debtors' Objection included evidence capable of placing Rheingans-Yoo's entitlement to the FDU Claim at issue [*see e.g.*, D.I. 3410 Exs. 1 (Employment Agreement providing for discretionary bonuses), 10 (Bonus Memo from Bankman-Fried to Rheingans-Yoo representing to Rheingans-Yoo that he would "get another $650k of directed grants to any EA-driven cause *if you want*" (emphasis added)], Rheingans-Yoo is required to prove the validity of his proofs of claim by a preponderance of the evidence. *In re Allegheny Int'l*, 954 F.2d at 173-74; *In re NNN 400 Capital*, 2020 Bankr. LEXIS 2134, at *55. He has failed to do so.

**I.      RHEINGANS-YOO LACKS STANDING TO ASSERT THE FDU CLAIM, BECAUSE HE IS NEITHER A CREDITOR NOR A CREDITOR'S AUTHORIZED AGENT WITH RESPECT TO THAT CLAIM.**

17.     Rheingans-Yoo is neither a creditor nor a creditor's authorized agent with respect to the FDU Claim. He therefore lacks standing to assert and recover on the FDU Claim. *See In re Worldspace, Inc.*, 2014 Bankr. LEXIS 3978, at *6 (Bankr. D. Del. Sep. 17, 2014) (holding that a proof of claim must comply with Fed. R. Bankr. P. 3001(b) "[a]s a threshold matter" in order for the claimant to have "creditor standing"), *aff'd*, 717 F. App'x 113 (3d Cir. 2017).

18.     "While the Bankruptcy Code's definition of claim is undeniably broad, it is not without limit." *In re Exide Techs.*, 2013 WL 85193, at *5 (Bankr. D. Del. Jan. 8, 2013). "[S]uch definition may not confer the status of a claimant upon a petitioning creditor who has no right to payment." *In re First Energy Leasing Corp.*, 38 B.R. 577, 581 (Bankr. E.D.N.Y. 1984); *see also In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir. 1995) ("However broadly 'claim' is understood, it is clear that the existence of a valid bankruptcy claim depends on . . . whether the claimant possessed a right to payment"); *In re Abeinsa Holding Inc.*, 2021 WL 3909984, at *5 (3d Cir. Sep. 1, 2021) (affirming the disallowance of a claim because the claimant did not have a right to payment per the underlying agreement).

19.     First, Rheingans-Yoo cannot himself recover the FDU Claim, because he is not the "creditor" of the FDU Claim. Although Rheingans-Yoo represented on his proof of claim form, submitted under penalty of perjury, that he was "the creditor" of the FDU Claim (Undisputed Facts ¶¶ 54-56), that representation is false. Rheingans-Yoo impliedly recognizes that he himself has no right to payment on the FDU Claim—which, under the terms of the Bonus Memo, must be paid to an Effective Altruist cause—instead contending that he has a "*right to direct* payment of FDUs" to an Effective Altruist cause. (Suppl. Resp. ¶ 13 (emphasis added); *see also id.* ¶¶ 17-18.) As such, Rheingans-Yoo is not a creditor of the FDU Claim. *See In re Energy Future Holdings Corp.*,

785 F. App'x 945, 946-47 (3d Cir. 2019) (holding that because the defendant had not made the "necessary showing" that he "had a right to payment" on a claim, he had "no enforceable right to payment" for that claim).

20. Second, Rheingans-Yoo is not a "creditor's authorized agent" under Bankruptcy Rule 3001. Rheingans-Yoo not only failed to check the box on the proof of claim form asserting that he is the "creditor's authorized agent," but also failed to identify the supposed creditor of the FDU Claim. (Undisputed Facts ¶¶ 54-56.) Rheingans-Yoo's failure to "indicate his representational capacity much less disclose the identity of the true creditor" makes his FDU Claim defective under Rule 3001(b). *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir.1992); *see also In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *5 (Bankr. E.D. Va. May 28, 2010) (sustaining debtors' objections to proofs of claim filed on behalf of unnamed claimants, in violation of Rule 3001(b), because those who filed the proofs of claim were not authorized to act as agents for the unnamed creditors).

21. Third, Rheingans-Yoo cannot claim to be the creditor's authorized agent for the additional reason that there was no true creditor of the FDU Claim as of the petition date, which is the date on which a claim's validity must be adjudged. *In re Promise Healthcare*, 2023 WL 3026715, at *4. Rheingans-Yoo concedes that he did not designate a recipient of the FDU Bonus pre-petition. (Undisputed Facts ¶ 48.) That there is no identified or identifiable recipient of the $650,000 donation as of the petition date is fatal to Rheingans-Yoo's FDU Claim. "Unknown future claimants who have not had any pre-petition contact with debtor . . . do not fit the definition of a 'creditor' under the Bankruptcy Code." *White* v. *Chance Indus.*, 367 B.R. 689, 705 (Bankr. D. Kan. 2006); *see also Elliott* v. *GM LLC*, 829 F.3d 135, 156 (2d Cir. 2016) ("'[C]laim' cannot be extended to include . . . claimants whom the record indicates were completely unknown and

unidentified at the time [the debtor] filed its petition and whose rights depended entirely on the fortuity of future occurrences" (quoting *Lemelle* v. *Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994)); *In re Piper Aircraft Corp.*, 162 B.R. 619, 623-24 (Bankr. S.D. Fla. 1994) (holding that the definition of claim is "not so broad as to include unidentified, and presently unidentifiable, individuals with no prepetition relationship" to the debtor).

22.  Moreover, Bankruptcy Rule 2019 requires any person seeking to represent more than one creditor in a Chapter 11 case to file a verified statement setting forth the names and addresses of the creditors, the nature and amount of the claims, and the relevant facts and circumstances surrounding the employment of the agent. Bankr. R. 2019(a). Rheingans-Yoo has never filed a Bankruptcy Rule 2019 disclosure identifying the supposed EA-charity creditor whose pecuniary interests he now seeks to represent in these Chapter 11 Cases. The consequences of failing to comply with Bankruptcy Rule 2019 are within the Bankruptcy Court's discretion, and have included the disallowance of claims, including when filed by purported agents. *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 453-54 (Bankr. S.D. Tex. 2009) (sustaining debtors' objection to a claim filed by an "unsecured creditors agent" on behalf of certain unsecured creditors because it was neither the creditor nor an authorized agent under Bankruptcy Rule 3001(b) and had failed to comply with Bankruptcy Rule 2019 disclosure requirements); *Reid* v. *White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) (denying a proof of claim for failure to comply with Bankruptcy Rule 2019 because the purported agent's "unilateral assertion of fiduciary status in his proof of claim was insufficient to satisfy the formal requirements of Rule 2019"); *Gulf States Exploration Co.* v. *Manville Forest Prods. Corp.,* 89 B.R. 358, 376-77 (Bankr. S.D.N.Y. 1988) (disallowing proofs of claim filed by a creditor-class representative who failed to comply with Bankr. R. 2019).

## II.  THE FDU CLAIM IS UNENFORCEABLE BECAUSE RHEINGANS-YOO NEVER ACCEPTED THE FDU BONUS.

23.  Under the Employment Agreement, the FTX Group had absolute discretion to determine Rheingans-Yoo's bonus award. (Undisputed Facts ¶ 28 & Ex. J § 4(b).)  The FTX Group exercised that discretion by conditioning the FDU Bonus on Rheingans-Yoo's express acceptance of it.  Rheingans-Yoo admits that he did not accept the FDU Bonus pre-petition. (*Id.* ¶ 48.)  As such, the FTX Recovery Trust has no obligation to pay the FDU Bonus.

24.  The parties agree that the Employment Agreement is "enforceable according to its terms." (*Id.* ¶ 31.)  The Employment Agreement provided that the FTX Group had "sole and absolute discretion" to determine Rheingans-Yoo's bonus, including whether to award Rheingans-Yoo any bonus at all. (*Id.* ¶ 28 & Ex. J § 4(b).)  Courts have held that virtually identical provisions in employment agreements—such as one that provided that the employee was "eligible for discretionary bonus at the discretion and approval of the [employer]"—gave the employer "unambiguous, absolute discretion over bonuses." *Barker* v. *Bancorp., Inc.*, 2022 WL 595954, at *8 (S.D.N.Y. Feb. 25, 2022).

25.  In the Bonus Memo, Bankman-Fried offered Rheingans-Yoo "$650k of directed grants to any EA-driven cause *if you want*." (Undisputed Facts ¶ 41 & Ex. K (emphasis added).)  In doing so, Bankman-Fried conditioned Rheingans-Yoo's FDU Bonus on Rheingans-Yoo's express acceptance of the offer.  But Rheingans-Yoo never accepted the FDU Bonus pre-petition.  He concedes that he "did not inform anyone at the FTX Group prepetition that he had designated an EA-driven cause to receive the $650,000 directed grant." (*Id.* ¶ 48.)  It is well-settled contract law that "to manifest assent, an offeree must provide unqualified acceptance." *James* v. *Glob. Tel*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017); *see Heiman Aber & Goldlust* v. *Ingram*, 1998 WL 442691, at *2 (Del. Super. Ct. May 14, 1998) (denying plaintiff's motion to enforce a contract

where plaintiff failed to prove "that it [had] unconditionally accepted [Defendant's] [ ]offer, thereby establishing a valid and enforceable contract").

26. Because the validity of a claim—which requires the existence of an "enforceable obligation," *In re Energy Future Holdings Corp.*, 785 F. App'x at 946 (citing *Cohen* v. *de la Cruz*, 523 U.S. 213, 218 (1998))—is adjudged as of the petition date, *In re Promise Healthcare Grp., LLC*, 2023 WL 3026715, at *4 (Bankr. D. Del. Apr. 20, 2023), Rheingans-Yoo's failure to accept the FDU Bonus offer is fatal to the FDU Claim. *See In re SVB Fin. Grp.*, 2024 WL 4222559, at *24-25 (Bankr. S.D.N.Y. Sep. 17, 2024) (holding that a debtor was not bound by a severance agreement, in part, because the terminated employee had not communicated his acceptance of the severance offer pre-petition).

### III. THE FINAL ROSS TERMS ARE INADMISSIBLE PAROL EVIDENCE THAT CANNOT OVERRIDE THE REQUIREMENT THAT RHEINGANS-YOO HAD TO ACCEPT THE FDU BONUS.

27. Seeking to avoid his failure to have accepted the FDU Bonus pre-petition, Rheingans-Yoo relies on the Final Ross Terms—parol evidence that undisputedly pre-dates his entry into the Employment Agreement (*see* Undisputed Facts ¶¶ 18, 20, 24)—to argue that the Final Ross Terms "did not make an FDU award contingent upon Rheingans-Yoo accepting it 'if he wants.'" (Suppl. Resp. ¶ 45.) However, Rheingans-Yoo's argument fails as a matter of law, because the Ross Terms are inadmissible parol evidence that cannot modify the fully integrated Employment Agreement.

28. "An integration clause in a written agreement bars a party from explaining, contradicting, varying, adding to, or subtracting from the terms of the agreement with prior oral agreements or understandings." *Syracuse* v. *Orion Ref. Corp.*, 424 B.R. 156, 168 (Bankr. D. Del. 2010); *see also SodexoMAGIC, LLC* v. *Drexel Univ.*, 24 F.4th 183, 213 (3d Cir. 2022) ("For integrated contracts, the parol evidence rule prevents the use of extrinsic evidence to add to or

modify the contract's terms."); *McKinney Family Ltd. P'ship* v. *Stubbs*, 931 A.2d 1006, 2007 WL 1885121, at *2 (Del. July 2, 2007) (holding that, for completely integrated agreements, the parol evidence rule "bars admission of extrinsic evidence that contradicts or supplements the terms of a contract").

29.    The Employment Agreement, which the parties agree is "enforceable according to its terms," contains a clear integration clause. (Undisputed Facts ¶¶ 30-31.) The integration clause states that the Employment Agreement "contain[s] the entire understanding of the parties in respect of the subject matter contained herein," and that "[i]n executing [the Employment] Agreement, [Rheingans-Yoo] represent[s] that [he had] not relied on any representation or statement not set forth in this Agreement" and "expressly disavow[s] any reliance upon such representation or statement." (*Id.* ¶ 30 & Ex. J at §14(a).)

30.    Courts have found parol evidence inadmissible where the contracts at issue contained virtually identical integration clauses. *See, e.g.*, *Bono Holdings, Inc.* v. *Quaker Steak & Lube Franchising Corp.*, 2009 WL 8556806, at *7, *9, *11 (Bankr. W.D. Pa. Sep. 22, 2009) (excluding parol evidence where a contract stated that it contained the "'entire, full and complete' agreement[ ] of the parties concerning its subject matter" and plaintiff expressly agreed that "he had not relied upon any prior representation" in entering into it); *InfuCare Rx, Inc.* v. *Roy*, 2024 U.S. Dist. LEXIS 192013, at *28-29 (D.N.J. Oct. 22, 2024) (excluding parol evidence where the agreement required the employee to "acknowledge[ ] that in deciding to sign this Agreement he has not relied on any promises, statements, representations or commitments . . . except for what is expressly stated in this Agreement" and stated that the "Agreement constitutes the entire understanding and agreement between the Employee and the Company . . . relating to the matters described herein"); *Morales* v. *Superior Living Prods., LLC*, 2009 WL 3234434, at *7 (E.D. Pa.

Sep. 30, 2009) (excluding parole evidence where "the integration clause makes clear that the [contract] 'constitute[s] the entire Agreement of the parties regarding the subject matter herein' and 'represent[s] the entire understanding of the parties of the subject matter herein'").[9]

31.  "[C]ourts will not rewrite contractual language covering particular topics just because one party failed to extract as complete a range of protections as it, after the fact, claims to have desired during the negotiation process." *Allied Cap. Corp.* v. *GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006).  If Rheingans-Yoo wished to "establish[ ] an enforceable right to a[n] [FDU] bonus, then he should have brought that up prior to signing the [subsequent employment] agreement." *Collins* v. *Associated Pathologists, Ltd.*, 676 F. Supp. 1388, 1409 (C.D. Ill. 1987); *see also Accelerant Twister, LLC* v. *Marjo, LLC*, 2023 WL 4457422, at *3 (D. Del. July 11, 2023) ("Delaware courts have found that a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations made outside of the agreement and then shirk its own bargain [by later arguing] but [I] did rely on those other representations[ ]" (internal quotation marks omitted) (quoting *Prairie Capital III, L.P.* v. *Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015)); *In re Marianni*, 21 B.R. 228, 233 (Bankr. E.D. Pa. 1982) ("[I]f it had been the intent of the parties to provide for [ ] an item" in a contract that was otherwise silent as to that item, "it should have been inserted in the agreement"); *McGuire* v. *Schneider, Inc.*, 534 A.2d 115, 116-20 (Pa. Super. Ct. 1987), *aff'd per curiam*, 548 A.2d 1223 (Pa.

---

[9]  Rheingans-Yoo's argument that, despite the clear integration clause, the Employment Agreement is only partially integrated and therefore the Ross Terms are admissible to supplement the Employment Agreement fails as a matter of law.  (Suppl. Resp. ¶¶ 36-45.)  The law is clear that an integration clause "clearly marks the [Employment] Agreement as fully integrated."  *In re Ryckman Creek Res., LLC*, 2018 WL 4178692, at *3 (Bankr. D. Del. Aug. 29, 2018); *see also 1228 Inv. Grp. LP* v. *IDT Domestic Telecom*, 852 F. App'x 684, 687-88 (3d Cir. 2021) ("An integration clause which states that a writing is meant to represent the parties' entire agreement is [ ] a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.").  Accordingly, where, as here, a subsequent Employment "[A]greement contains a valid integration clause, it supersedes [the] terms of any prior agreement covering the same subject matter," *i.e.*, the Ross Terms.  *Focus Fin. Partners, LLC* v. *Holsopple*, 241 A.3d 784, 823 (Del. Ch. 2020) (internal quotation marks and citation omitted).

1988) (holding that a letter from an employer that preceded an employment agreement and, like the employment agreement, related to "compensation, bonuses, . . . and the terms of employment" was inadmissible parol evidence, notwithstanding that the employment agreement contained terms "less favorable" to the employee).

## Conclusion

32. For the foregoing reasons, the FTX Recovery Trust respectfully requests that the Court sustain the Debtors' Objection to the FDU Claim [D.I. 3409] and enter the Revised Order disallowing and expunging Rheingans-Yoo's FDU Claim in the form attached hereto as **Exhibit A**. A redline of the Revised Order against the proposed form of order attached to the Objection is attached hereto as **Exhibit B**.

Dated: June 12, 2025  
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
E-mail:  landis@lrclaw.com
         mcguire@lrclaw.com
         brown@lrclaw.com
         pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
E-mail:  wheelers@sullcrom.com
         gluecksteinb@sullcrom.com

*Counsel for the FTX Recovery Trust*