# Exhibit E

**CONFIDENTIAL**



# FTX Line of Credit

This Line of Credit Agreement is made as of this 30th day of March 2022 (the "**Line of Credit Agreement**"), by and among Three Arrows Capital Ltd of ABM Chambers 2283, Road Town, Tortola, BVI VG1110 ("**Borrower**") and FTX Trading Limited ("**Lender**"). A line of credit is hereby established in the amount of USD 120,000,000 for the benefit of the Borrower ("**Line of Credit**"), provided, however, that the Lender unilaterally may terminate the Borrower's privilege to request advances hereunder or lower said amount.

The Line of Credit will be subject to the following terms and conditions:

1. Lender reserves the right to request from Borrower, at any time, any information it deems necessary in order to assess the Borrower's continued eligibility to receive and maintain the Line of Credit, and Borrower agrees to provide such information promptly upon request. Such information may include, but is not limited to, information regarding the assets, liabilities and net worth of the Borrower.

2. At any time the Borrower desires for the Lender to advance sums pursuant to this Line of Credit Agreement, the Borrower may request such advance from the Lender, and the Lender, with or without reason, may deny such request.

3. The Lender reserves the right to remove the Line of Credit at any time and for any reason.

4. Funds advanced through the Line of Credit:

    (a) will bear interest at a rate of 5% per annum, payable daily at approximately 00:30 UTC and calculated in respect only of that portion of the Line of Credit then being utilised;

    (b) may not be withdrawn from the FTX exchange; and

    (c) may not be used for spot trading.

5. Throughout the lifetime of the Line of Credit, at least 200% of the Line of Credit ("**Collateral**") must be maintained in the Borrower's FTX account, as opened with the email address kyle@threearrowscap.com. Should the Collateral fall below 200% of the Line of Credit at any time, it must immediately, and by no later than twenty four hours of such fall, be reinstated to 200% of the Line of Credit. Borrower agrees that following any failure by it to return Collateral to 200% of the Line of Credit within one day of it falling below such amount, Lender may apply special interest in respect of outstanding amounts under the Line of Credit at that time at an indicative rate of 10% per day.

6. The occurrence of one or more of the following (herein a "**Default**" or an "**Event of Default**") shall constitute a default by the Borrower hereunder:

(a) any representation or warranty of the Borrower in connection with the Line of Credit is or becomes false;
(b) the failure by the Borrower to pay, when due, any portion of the Line of Credit;
(c) Borrower's insolvency, appointment of a receiver for all or a part of Borrower's property, the making of any assignment by Borrower for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or upon the issuing of any writ of attachment by trustee process or otherwise or a restraining order or injunction affecting any of the Borrower's property; provide, however, if any such proceeding is commenced against the Borrower, the Borrower shall have thirty (30) days in which to cause such proceeding to be dismissed;
(d) the death, dissolution, termination of existence, declared insolvency or failure in business of the Borrower;
(e) the admission in writing of Borrower's insolvency or inability to pay debts generally as they become due, or upon any material deterioration of the financial condition of the Borrower;

7. If any Event of Default occurs, all obligations outstanding from the Borrower to the Lender shall immediately become due and payable without demand, protest or other notice of any kind, all of which are hereby expressly waived. In the event of such Event of Default, the Lender may proceed to enforce the payment of all obligations of Borrower to Lender and to exercise any and all of the rights and remedies afforded to Lender by law of under the terms of this Line of Credit Agreement or otherwise.

8. This Line of Credit Agreement and the covenants and agreements herein contained shall continue in full force and effect until all obligations, liabilities and undertakings made hereunder have been paid or otherwise satisfied in full. No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such rights or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Lender on any future occasion.

9. Borrower hereby certifies that any and all necessary resolutions that may be required to effectuate and validate the terms of this Line of Credit Agreement have been duly made and adopted by the Borrower.

10. This Line of Credit Agreement shall be governed by and construed in accordance with the laws of Antigua and Barbuda, shall be binding upon Borrower's successors and assigns and shall insure to the benefit of Lender's successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Line of Credit Agreement by their duly authorised officers or representatives.

**FTX INSTITUTIONAL CUSTOMER**
**MARGIN AND LINE OF CREDIT AGREEMENT**

This MARGIN AND LINE OF CREDIT AGREEMENT (this "Agreement") is effective as of the date the Customer is provided debt hereunder ("Effective Date") as a deed between the Customer acknowledging acceptance hereto, and FTX Trading Ltd. ("FTX"), a company organized and existing under the laws of Antigua and Barbuda (Customer and FTX are referred to, collectively, as the "Parties" and, individually, as a "Party").

WHEREAS, Customer is a customer of the FTX.com cryptocurrency exchange and FTX desires to afford Customer with access to margin trading and potentially discretionary line of credit facilities (together, the "Indebtedness") as set forth herein;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration,

the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. **Applicable Customer**. Customer represents, warrants and covenants to FTX that this Agreement is binding on both Customer and all of its Affiliated Companies that also have a

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_3AC_000000759

customer account on FTX (the "Affiliates"). For purposes of this Agreement, "Affiliated Companies" shall mean all companies that are controlled by that person. For this purpose, a person is deemed to control a company or entity if it (a) owns, directly or indirectly, at least 50 percent of the capital of the other company, or (b) substantially has the power to direct or cause the direction of the management and set the policies of such company or entity, or (c) has the same majority beneficial shareholder as the other company. Upon an Event of Default (as defined below), FTX may elect to pursue remedies against Customer and/or one or all of its Affiliates, in its discretion, without separate notice to any Affiliates.. Customer and the accounts of its Affiliates shall be aggregated for purposes of all collateral and limitations set forth herein. Customer and its Affiliates are together referred to herein as the "Customer".

2. **Payment upon Demand**. Customer shall at all times be liable for the payment upon demand of the principal (if applicable) plus any debit balance or other obligations owing under this Agreement. At any time, FTX may "call" the Indebtedness upon notice to Customer.
3. **Lien**. All assets in all of the FTX accounts of the Customer (the "Secured Assets") are collateral for the Indebtedness. The Customer hereby pledges and grants a continuing lien on and security interest in, the Secured Assets as continuing security for the full and punctual payment, performance and discharge of the Indebtedness, until the satisfaction of all liabilities and performance of all obligations of Customer to FTX under this Agreement. FTX shall have all the remedies of a chargee under the laws of Antigua and Customer shall not grant any other person a lien against the Secured Assets in or in any right, title or interest in or to the Secured Assets without the prior written consent of FTX.
4. **Maintenance of Collateral**.
    a. Amount Required. Customer will at all times maintain such cash, cryptocurrency, or other property in the accounts of the Customer for collateral and/or margin purposes as FTX shall require from time to time via a margin call or other request. Collateral requirements may be established and changed by FTX in its sole discretion and judgement without notice to Customer.
    b. Collateral Calls. In regard to collateral or margin calls, whether for maintenance or otherwise, in lieu of immediate liquidations, FTX, may permit Customer a period of time to satisfy a call. This time period shall not in any way waive or diminish FTX's right in its sole discretion, to shorten the time period in which Customer may satisfy the call, including one already outstanding, or to demand that a call be satisfied immediately. Nor does such practice waive or diminish the right of FTX to sell out positions to satisfy the call, which can be as high as the full indebtedness owed by Customer.
    c. Liquidation. Customer acknowledges that the Secured Assets may be liquidated without notice to satisfy minimum maintenance, collateral requirements or margin calls. Customer acknowledges that it is not entitled to choose which assets in its account(s) are liquidated or sold by FTX to meet minimum maintenance, collateral requirements or margin calls. To satisfy minimum maintenance, collateral requirements or margin calls, and without further notice, Customer authorizes FTX to sell any assets, top up assets in its discretion, cancel any open order; close any outstanding order; and otherwise take any action deemed necessary to obtain liquidity to comply with collateral requirements with respect to the Indebtedness. Liquidation is conducted in the orderbooks on FTX or using voluntary liquidity providers. FTX does not itself generally take on the user's positions. Customer shall be liable to FTX for any deficiency remaining in any such accounts in the event of the liquidation thereof, in whole or in part, by FTX or by the undersigned; and, the undersigned shall make payments of such obligations and indebtedness upon demand.
5. **Interest Rate**. Customer shall pay interest on all Indebtedness extended under this Agreement. Interest will be charged on Customer's average daily net settled debit balance and will be calculated and assessed in accordance with the schedule and policies set forth by FTX. The interest rate may change without notice to Customer as changes occur in the general credit markets and industry conditions relating to the extension of margin credit. All payments received in your account, including dividends, interest, premiums and principal

payments may be applied to the balance due in your account. The interest rate will vary from time to time without prior notice from FTX. Upon any adjustment of the interest rate by FTX, Customer may elect to terminate this Agreement. Continuation of the Agreement after an interest rate adjustment constitutes consent by Customer to the changed interest rate.

6. **Margin Transactions**.
    a. Requirements for Participation. Margin requirements may be established and changed by FTX in its sole discretion and judgement without notice to the undersigned. All amounts owed under the margin program constitute Indebtedness under this Agreement. In making this determination, FTX may take into account various factors including but not limited to: (i) issues as to the applicable cryptocurrency such as, among others, the liquidity and volatility of such cryptocurrency, (ii) considerations as to the Customer's status, including but not limited to a decline in creditworthiness, and (iii) the general condition of the market.
    b. Permitted Balance. FTX computes the Customer's net account balances on FTX by adding up the total value of all cryptocurrency and other assets it is long, and subtracting the value of assets that the Customer is short. FTX may use a collateral weight of less than 1 to some assets that are less liquid or more volatile. FTX enforces margin limits and enforces that this ratio never drops below a certain value, generally ranging between 10% and 100% depending on the liquidity of the position.
    c. No Negative Balance. FTX generally enforces that the user's net account balances are never negative. If the user drops below initial margin requirements, they may no longer increase their position size. If the user drops far enough below initial margin, FTX may liquidate that user's positions in accordance with Section 4(c).
7. **Discretionary Line of Credit**. FTX may, at its discretion, issue lines of credit (LoCs). All amounts owed under LoCs constitute Indebtedness under this Agreement. An LoC is Indebtedness in the principal amount that is a USD balance granted to Customer's FTX account subject to the following: (i) LoCs may be used as collateral for futures trading; (ii) LoCs may be used as collateral for spot margin; (iii) LoCs may not be withdrawn; (iv) LoCs may not be used as collateral for spot margin borrows which are withdrawn from FTX; and (v) FTX monitors the health of each account with an LoC. Customer required to deposit funds daily such that its net account balance is at least their LoC size ("top up"). LoCs are repayable upon demand of FTX and FTX reserves the right to modify any aspect of the LoC program or requirements at any time.
8. **Lending by Customer**. FTX may permit the Customer to engage in lending programs whereby the Customer lends out assets on FTX platform and may be entitled to receive an interest payment for such lending, all dependent upon the parameters of the program established by FTX. In participating, Customer offers to let others borrow their coins in return for a specified interest payment. By default, all borrowing happens against the public user lending book, but in particular cases FTX may create a bespoke borrowing pool for liquidity providers so long as they abide by the margin limits and maintain sufficiently positive net account balances. The recipient of such lending may, at FTX's discretion, be required to pay interest in the borrowed assets. All such lending programs are in the discretion of FTX, and rules and requirements may be changed at FTX's discretion.
9. **Event of Default**. Any of the following events shall constitute an event of default hereunder, and shall be herein referred to as an "Event of Default" or "Events of Default" by any Party (such Party, the "Defaulting Party"):
    a. the failure of the Defaulting Party to satisfy any payment obligation under this Agreement or any other agreements, instruments, and documents executed in connection with this Agreement that are intended to create, perfect, secure or evidence liens or any other obligations in connection with the Secured Liabilities;
    b. (i) the Defaulting Party stops or suspends payment of any of its debts or is unable to, or admits its inability to, pay its debts as they fall due; (ii) the Defaulting Party commences negotiations, or enters into any composition, compromise, assignment or arrangement, with one or more of its creditors (excluding Customer, in its capacity as a lender) with a view to rescheduling any of its indebtedness (because of actual or

      anticipated financial difficulties); or (iii) a moratorium is declared in respect of any indebtedness of the Defaulting Party;
  c. any action, proceedings, procedure or step is taken in relation to: (i) the suspension of payments, a moratorium of any indebtedness, winding up, dissolution, administration or reorganisation (using a voluntary arrangement, scheme of arrangement or otherwise) of the Defaulting Party; (ii) a composition, compromise, assignment or arrangement with any creditor of the Defaulting Party; or (iii) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of the Defaulting Party or any of its assets; or
  d. the value of the Defaulting Party's assets are less than its liabilities (taking into account contingent and prospective liabilities).
10. **Lender's Remedies**. Upon the occurrence and during the continuation of any Event of Default where Customer is the Defaulting Party, FTX may, at its option: (i) declare any amounts hereunder immediately due and payable with effect upon notice to Customer; (ii) terminate this Agreement upon notice to Customer; and (iii) exercise all other rights and remedies available to FTX hereunder, under applicable law, or in equity, against Customer and/or its Affiliates. On demand, Customer shall pay any balance owing with respect to the Indebtedness, including fees and any costs of collection. The reasonable cost and expense of collection of the debit balance, recovery, and any unpaid deficiency in the accounts of the undersigned with FTX, including, but not limited to attorney's fees, incurred and payable or paid by FTX shall be payable to FTX by Customer.
11. **Further Assurances**. Customer agrees that it shall promptly execute and deliver all instruments and documents, and take all actions, that may be reasonably necessary, or that FTX may reasonably request, in order to perfect and/or protect the assignment and security interest granted or intended to be granted hereby or to enable FTX to exercise and enforce its rights and remedies hereunder with respect to the Customer Assets, all associated financial interests, titles, and rights held therein or credited thereto and all proceeds thereof. Without limiting the generality of the foregoing, Customer hereby authorizes the filing of such financing or continuation statements, or amendments thereto, and shall execute or deliver such other instruments, endorsements or notices, as may be reasonably necessary or desirable or as FTX may reasonably request, in order to perfect and preserve the assignments and security interests granted or purported to be granted hereby.
12. **Governing Law; Jurisdiction**.
  a. This Agreement and all matters relating to this Agreement (whether in contract, statute, tort (including, without limitation, negligence) or otherwise), is governed by, and construed in accordance with the laws of Antigua and Barbuda and all laws applicable therein.
  b. Any dispute, controversy or claim arising out of, relating to, or having any connection with this Agreement, including any dispute as to its existence, validity, interpretation, performance, breach or termination shall be finally settled by binding arbitration under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). The Emergency Arbitrator Provisions of the ICC Rules of Arbitration shall not apply. Such arbitration shall be administered in Antigua.
13. **Prior Agreements and Amendments**. This Agreement supersedes any prior agreements between the parties relating to the subject matter hereof. Any amendments to this Agreement must be in writing and executed by both parties.
14. **Entire Agreement**. This Agreement constitutes the entire Agreement among the Parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements relating to the subject matter of this Agreement.
15. **Successors and Assigns**. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the Parties; provided, that the Customer may not assign this Agreement or any rights or duties hereunder without the prior written consent of the FTX.
16. **Severability of Provisions**. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any

specific provision. In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision; provided that such severability shall be ineffective if it materially changes the economic benefit of this Agreement to any Party.

17. **Counterpart Execution**. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission (ie docusign) shall be equally as effective as delivery of an original executed counterpart of this Agreement.
18. **Relationship of Parties**. Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the Parties hereto other than the relationship of borrower and lender.
19. **No Waiver**. The failure of or delay by any Party to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent such Party from subsequently requiring compliance with the obligation or exercising the right or remedy in the future. No waiver or modification by any Party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by each Party hereto.
20. **Execution as a Deed**. The Parties hereto intend that this Agreement takes effect as a deed notwithstanding that any Party hereto may execute it by electronic signature or other online acceptance or acknowledgement.
21. **Miscellaneous**. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders where necessary and appropriate. This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement. The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement. The word "include", "includes" or "including" will be interpreted on an inclusive basis and be deemed to be followed by the words "without limitation". A reference to any agreement, instrument or document is to be construed as a reference to that agreement, instrument or document as it may have been amended, supplemented, replaced or novated from time to time.

| **FTX TRADING LTD:** | **Three Arrows Capital Ltd** |
|---|---|
| Signature: _____ | Signature: *Kyle Davies* (DocuSigned by) |
| Name: _____ | Name: Kyle Davies |
| Title: _____ | Title: Director |