## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                         :   Chapter 11
In re:                                                   :
                                                         :   Case No. 22-11068 (KBO)
FTX TRADING LTD., et al.,¹                               :
                                                         :   Jointly Administered
                Debtors.                                 :
                                                         :   Related to Docket No. 31148
------------------------------------------------------- :
                                                         x
```

### WEIWEI JI'S OBJECTION TO MOTION OF THE FTX RECOVERY TRUST FOR ENTRY OF AN ORDER IN SUPPORT OF THE CONFIRMED PLAN AUTHORIZING THE FTX RECOVERY TRUST TO IMPLEMENT THE RESTRICTED JURISDICTION PROCEDURES IN POTENTIALLY RESTRICTED FOREIGN JURISDICTIONS

Weiwei Ji ("Mr. Ji"), through his undersigned counsel, hereby objects (the "Objection")

to the *Motion of the FTX Recovery Trust for Entry of an Order in Support of the Confirmed Plan Authorizing the FTX Recovery Trust to Implement the Restricted Jurisdiction Procedures in Potentially Restricted Foreign Jurisdictions*, dated July 2, 2025 [Docket No. 31148] (the "Motion").[2] In support of the Objection, Mr. Ji respectfully represents as follows:

### RELEVANT BACKGROUND

1.      Mr. Ji, who holds a PhD in geophysics, entered the cryptocurrency space in 2017. (Decl., ¶ 3.)[3] Since that time, he has run a fund, worked at an exchange, mined Bitcoin and Ethereum, and even managed a quant trading team, thus experiencing essentially every corner of the industry. (*Id.*) Early on in the Debtors' Chapter 11 Cases, Mr. Ji sought to serve on the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used in this Objection and not otherwise defined herein have the meanings ascribed to them in the Motion.

[3] References to "Decl." are to Mr. Ji's declaration, filed contemporaneously herewith.

official committee of unsecured creditors (the "Committee") because he and others believed Chinese representation on the Committee would be critical. (*Id.*, ¶ 4.) Although Mr. Ji advanced to the second round of the selection process and participated in a phone interview, he was not selected. (*Id.*) Thereafter during the Chapter 11 Cases, a Committee member resigned, and Mr. Ji was asked if he would like to be considered as an alternate. (*Id.*) Although he readily agreed, he was not selected. (*Id.*)

2.      Mr. Ji and/or his family members and/or their affiliated entities (collectively, the "Holders") hold four (4) "Know Your Customer"-verified FTX accounts with aggregate claims exceeding $15 million. (*Id.*, ¶ 6.) The Holders timely filed Proof of Claim Numbers 37373, 45581, 51901, and 60161 in connection therewith (the "Proofs of Claim"), which are not subject to a pending dispute. (*Id.*) Thus, pursuant to section 502(a) of the Bankruptcy Code, the Proofs of Claim currently are *prima facie* valid, allowed claims in the Chapter 11 Cases.

3.      Mr. Ji is currently a tax resident of Singapore, where he also resides and conducts all personal and family affairs. (*Id.*, ¶ 5.) Nonetheless, he holds a Chinese passport and believes that he would or could be categorized as a Chinese creditor under the Restricted Jurisdiction Procedures (referred to herein as the "Procedures"). (*Id.*) China is identified as a Potentially Restricted Foreign Jurisdiction in the Motion, while Singapore is not. (*See* Motion, ¶ 11, Ex. B.)

4.      On October 8, 2024, the Court confirmed the Plan [Docket No. 26404].

5.      On January 3, 2025 (the "Effective Date"), the effective date of the Plan occurred [Docket No. 29127].

6.      On July 2, 2025, the FTX Recovery Trust filed the Motion. Since then, Mr. Ji has communicated with numerous Chinese creditors via social media and other platforms. (Decl., ¶ 7.) In fact, Mr. Ji founded and has informally become the representative figure of a rapidly

growing group of approximately 600 Chinese creditors of the Debtors (though, not all group members are active). (*Id.*) Members of this group have reached out to Mr. Ji seeking coordination, and Mr. Ji has complied and advocated for their shared concerns throughout the Chapter 11 Cases. (*Id.*) Many such creditors are far from wealthy and are suffering or will experience extreme financial hardship in the absence of recovery in the Chapter 11 Cases. (*Id.*) For example, Mr. Ji calculates fifty-eight (58) active creditors' claims as adding up to approximately $9.22 million.[4] (*Id.*)

7.      On or around July 6, 2025, Mr. Ji mailed a *pro se Objection to Motion of FTX Recovery Trust to Implement Restricted Jurisdiction Procedures* to this Court (the "Pro Se Objection"), and emailed copies to counsel for the FTX Recovery Trust and the United States Trustee for the District of Delaware (the "U.S. Trustee"). The Court entered the Pro Se Objection at Docket Nos. 31287 and 31344 in the Chapter 11 Cases.

8.      On or around July 13, 2025, Mr. Ji mailed a *pro se Objection to Motion of FTX Recovery Trust to Implement Restricted Jurisdiction Procedures* to the Court, and emailed copies to counsel for the FTX Recovery Trust and the U.S. Trustee.  That mailing does not yet appear on the Court's docket in the Chapter 11 Cases as of the date hereof.

9.      Over two dozen other objections to the Motion have also been filed [Docket Nos. 31311, 31314, 31315, 31316, 31317, 31318, 31322, 31340, 31341, 31343, 31345, 31346, 31347, 31348, 31349, 31350, 31351, 31353, 31354, 31355, 31356, 31357, 31358, 31359, 31421, 31422, 31423, 31424, 31425].

10.     The Court is scheduled to hear the Motion on July 22, 2025, at 9:30 a.m. (prevailing Eastern Time) (the "Hearing").

---

[4] $9,220,000 divided by 58 equals approximately 158,965.51.

**OBJECTION**

11.     Mr. Ji appreciates the efforts taken by the FTX Recovery Trust to develop protocols addressing the myriad novel legal issues in these Chapter 11 Cases. Indeed, this situation is nothing short of unprecedented. Moreover, Mr. Ji recognizes that under the proposed Procedures, he and the other Holders (and other creditors in Potentially Restricted Foreign Jurisdictions) will have the opportunity to object to any future change in designation from a <u>Potentially</u> Restricted Foreign Jurisdiction to a <u>Restricted</u> Foreign Jurisdiction. (*See* Motion, ¶ 13(c)(ii)-(iii).)

12.     Nevertheless, as discussed below, Mr. Ji submits that the current construct of the Procedures imposes disparate treatment on him, the other Holders, and other creditors in Potentially Restricted Foreign Jurisdictions, as compared to other holders of allowed, unsecured claims. This materially undermines the principles of equal treatment among similarly situated creditors in violation of section 1123(a)(4) of the Bankruptcy Code and the confirmed Plan. At best, this requires the Procedures to be revised to address and remedy these inequalities. If that does not occur, then the Procedures cannot and should not be approved.

13.     Thus, Mr. Ji submits this Objection to the Motion now because the designation of China as even a Potentially Restricted Foreign Jurisdiction is unsupported by any fact or law in the Motion and prohibits the Holders – as well as other Chinese creditors who depend on distributions for their and their families' livelihoods – from recovering for an indeterminate period of time, which is inequitable and discriminatory.

14.     In the alternative, if the Court grants the Motion, it should, at a minimum, require the FTX Recovery Trust to revise the Procedures to correct the disparate treatment currently imposed on certain creditors thereunder, and to clarify certain critical points, discussed in detail

*infra* in Section B.  For example, even if the Court were to authorize a form of such procedures, distributions to creditors in restricted jurisdictions should be held in reserve, without the risk of being forfeited entirely as proposed in the Procedures. Additionally, if necessary, the ultimate question of distribution legality should be posed to a court in the applicable country.

15.     Moreover, the Procedures constitute an impermissible, post-Effective Date Plan modification and should be denied or, at a minimum, revised on that basis as well.

16.     In addition, notwithstanding this Objection, the Hearing on the Motion should be adjourned until a later date to see if any issues raised herein and/or by the dozens of other creditors who have filed objections can be resolved amicably. The Motion does not identify any pressing circumstances mandating the immediate approval of these proposed Procedures.

**A.     The Procedures Should Not be Authorized**

17.     The Court should deny the Procedures for several reasons. First, the Motion suffers from a fundamental mischaracterization of the transactions in question. Distributions from the FTX Recovery Trust are not "cryptocurrency transactions" (Motion, ¶ 1) potentially subject to restrictions or regulations, but rather constitute debt satisfaction. Regardless of whether certain prepetition business activities of FTX may have violated cryptocurrency regulatory rules in some countries, the assets currently being utilized for claim satisfaction by the FTX Recovery Trust were property of the Debtors' estates and transferred to the FTX Recovery Trust pursuant to the confirmed Plan. (*See* Confirmation Order, § P(i)(g), ¶ 34.) The use of those assets is, in nature, an act of debt satisfaction, not cryptocurrency trading, nor a payment of cryptocurrency-derived income. Indeed, the FTX Recovery Trust was established solely "for the purpose of liquidating and distributing the FTX Recovery Trust Assets in accordance with the Plan, for the purpose of making payments to the FTX Recovery Trust Beneficiaries on a consolidated basis … with no objective to continue or engage in the conduct of a trade or

business …" (*Notice of Filing of Second Amended Plan Supplement*, dated October 3, 2024 [Docket No. 26226], Ex. 3 (the "Trust Agreement"), § 2.2.) Thus, the FTX Recovery Trust does not maintain any of the Debtors' prepetition commercial operations and exists solely to satisfy debts.

18.     Moreover, claims against FTX are denominated and settled in United States dollars ("USD"). (*See* Plan, §§ 2.1.26, 7.4.3.) Although such claims may originate from cryptocurrency investments, the Plan explicitly adopts a USD-denominated valuation framework. (*See id*.) Proposed distributions are fiat-based and do not necessarily require engagement with virtual assets, rendering them functionally indistinguishable from traditional monetary distributions. (*Id.*, § 7.) Indeed, the FTX Recovery Trust has announced partnerships with global payment platforms (*e.g.*, Payoneer, BitGo) and distribution agents (*e.g.*, Kraken) to facilitate fiat disbursements. Many Chinese creditors, including Mr. Ji, regularly use Kraken to move USD in and out. (Decl., ¶ 10.) Indeed, Mr. Ji is aware of Chinese creditors having received wire payments in other cryptocurrency bankruptcy cases. (*See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jan. 29, 2024) [Docket No. 4289], Art. VI.G ("…any Cash payment to be made under the Plan may be made by check, wire transfer, or ACH as otherwise required or provided in applicable agreements"); Decl., Ex. A (demonstrating receipt of wire payment from Celsius by Chinese creditor in Hong Kong bank account).)[5]

19.     Second, imposing Procedures that result in the forfeiture of monies owed certain creditors based solely on their nationality or country of residence is inherently unfair and discriminatory. While the FTX Recovery Trust relies on the "catch-all" provisions of the

---

[5]   *See also* https://www.theblock.co/post/303624/mt-gox-creditors-may-have-to-wait-for-up-to-three-months-to-receive-their-bitcoin, accessed July 8, 2025 (discussing Mt. Gox creditors receiving repayments through Kraken in Japanese rehabilitation).

Bankruptcy Code and Bankruptcy Rules, it cites no case where a court permitted withholding distributions from foreign creditors based on a debtor's interpretations of foreign law – let alone one that required a debtor's foreign legal opinion "without exception or qualification" to avoid <u>forfeiting</u> recovery. (Motion, ¶ 13(b)-(c).) Doing so stands in contradiction of the equitable principles of the Bankruptcy Code. *See In re Morristown & Erie R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989) ("Section 105(a) gives the court general equitable powers, but only insofar as those powers are applied in a manner consistent with the Code."); *In re Cybridge Corp.*, 312 B.R. 262, 269 (D.N.J. 2004) (section 105(a) "has been interpreted to mean that while the bankruptcy courts maintain their traditional equitable powers, that jurisdiction 'must and can only be exercised within the confines of the Bankruptcy Code.' That is, courts may not use their Section 105(a) powers 'to authorize any relief that is prohibited by another provision of the Code.'") (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *In re Transit Grp., Inc.*, 286 B.R. 811, 815-16 (Bankr. M.D. Fla. 2002)); *see also In re Lodge Am., Inc.*, 259 B.R. 728, 734-35 (D. Kan. 2001) (affirming bankruptcy court's refusal to exercise equitable powers because doing so "would be inconsistent with the specific provisions of" another Bankruptcy Code section).

20.    <u>Third</u>, China's proposed designation as even a Potentially Restricted Foreign Jurisdiction has already triggered serious and harmful market repercussions. (Decl., ¶ 8.) Indeed, multiple distressed asset funds and claim purchasers have already cited the Motion to pressure Chinese creditors into selling their claims at significant discounts, for fear of receiving no recovery otherwise. (*Id.*) For example, on or around July 4, 2025, a user on the social media platform X (formerly Twitter) published a video in which a representative of one such fund maintained:

> We're telling all Chinese creditors – they should sell now, because
> any delay likely means zero payout … This motion will definitely

> pass, because if 5% of Chinese claims are excluded and flow back
> to the FTX trust, the other 95% of creditors will receive more.
> Ninety-five percent of creditors will support the motion because
> they benefit from that exclusion.

(*Id.*) Thus, the Procedures encourage opportunistic behavior, to wit: original foreign claim holders – individuals and families – may be excluded from recovery, while distressed asset funds purchasing those same claims at a steep discount could potentially receive full distributions. This certainly runs afoul of the fundamental tenets of the Bankruptcy Code.

**B.**     **Alternatively, the Procedures Should be Revised and Clarified**

21.     In the alternative, if the Court is not inclined to deny the Motion, the Procedures should be revised and clarified in at least six (6) critical respects.

22.     <u>First</u>, the Motion proposes that the "FTX Recovery Trust shall retain a qualified attorney in the relevant Potentially Restricted Foreign Jurisdiction to opine on whether distributions pursuant to the Plan on account of Allowed Claims violate applicable local law" and that such attorney will render either an Acceptable Opinion or an Unacceptable Opinion – but provides no deadlines whatsoever for the FTX Recovery Trust or its qualified attorney(s) to do so. (*See* Motion, ¶ 13.) Creditors of certain nationalities should not be forced to wait in indefinite limbo – potentially, for months or years – for a decision on distributions on legitimate, *prima facie* valid proofs of claim. Thus, if the Court grants the Motion, it should impose expedited timeframes for the retention of qualified attorney(s) and the rendering of their opinions. Indeed, the FTX Recovery Trust was established for the very purpose of "making payments…on a <u>consolidated</u> basis …" (Trust Agreement, § 2.2(a) (emphasis added).)

23.     <u>Second</u>, the FTX Recovery Trust argues the "Procedures…provid[e] holds [*sic*] of claims in those jurisdictions an opportunity to object <u>or provide an alternative method for receiving distributions in permitted jurisdictions</u>." (Motion, ¶ 20 (emphasis added).) Yet, the

Motion fails to specify what "an alternative method for receiving distributions" (*id.*) could entail. To the contrary, it suggests that such distributions would be <u>forfeited</u>. (*Id.*, ¶¶ 6, 13.) This violates various Bankruptcy Code sections, including without limitation sections 507, 1123(a)(3), 1123(a)(4) and 1123(a)(5). *See* 11 U.S.C. §§ 507, 1123(a)(3)-(5). The FTX Recovery Trust should be required to: (a) remove any provisions that provide for the forfeiture of funds that should be distributed to holders of allowed claims; and (b) clarify what such an "alternative method" could be in any procedures entered by the Court.

24.     <u>Third</u>, the Motion does not explain the basis on which the Potentially Restricted Foreign Jurisdictions list was developed, nor does it cite any specific legal provisions applicable to each (or any) listed country. While the FTX Recovery Trust claims that the list was formulated based on legal opinions, it has not disclosed the standards, contents or sources of those opinions. It also fails to state whether the process involved any cross-jurisdictional legal review, or whether opposing views or legal evidence submitted by creditors were taken into account. In practice, the entire designation system lacks any transparency or reciprocity and grants the FTX Recovery Trust excessive discretionary authority, to the clear detriment of holders of allowed claims. Procedurally, the process is opaque and offers no meaningful safeguards for affected creditors.

25.     The FTX Recovery Trust should disclose the standard it used to designate a jurisdiction as a Potentially Restricted Foreign Jurisdiction and what its "survey[] of applicable laws and regulations around the world" entailed. (Motion, ¶ 2.) Indeed, it remains a mystery how much time and/or effort, if any, the FTX Recovery Trust put into trying to determine which countries it proposes to deem Potentially Restricted Foreign Jurisdictions. For example, did the FTX Recovery Trust communicate with any qualified attorneys in China prior to filing the

Motion to address whether distributions pursuant to the Plan are permitted in accordance with applicable local law? The Motion explains neither how the list of Potentially Restricted Foreign Jurisdictions was compiled, nor how the FTX Recovery Trust already "confirm[ed]" that it "may legally make distributions to residents" in the non-Potentially Restricted Foreign Jurisdictions. (*Id.*) Rather, the FTX Recovery Trust shifts the burden and cost to creditors of certain countries to demonstrate the legality of their own ability to recover at all.

26.    <u>Fourth</u>, the standard set forth to obtain an "Acceptable Opinion" is astoundingly high and raises more questions than it answers. To be sure, an opinion will only be an Acceptable Opinion if it states that "distributions to residents of the Potentially Restricted Foreign Jurisdiction…are permitted <u>without exception or qualification and fully comply with applicable laws</u> …" (Motion, ¶ 13(b) (emphasis added).) The Motion is unclear as to whether the Procedures require uniform treatment for <u>all</u> underlying assets. By way of example, if a legal opinion was to conclude that distributions of cash on account of an Ethereum claim violate Chinese law,[6] but distributions of cash on account of a USD claim do not, what, if any, distributions are made? The FTX Recovery Trust should be required to clarify this in the event the Motion is granted.

27.    <u>Fifth</u>, the Motion fails to explain why foreign claimants' distributions would or could be <u>forfeited</u>, rather than merely placed into reserve, as is typically done while claims are at issue, if the holder of a claim is determined by the FTX Recovery Trust and/or the Court to be a resident of a Restricted Foreign Jurisdiction. (*See* Motion, ¶¶ 6, 13(c).) If necessary, the ultimate question of distribution legality should be posed to a court in the applicable foreign jurisdiction, with such funds held in reserve until such decision is final. Indeed, the Trust Agreement provides

---

[6] Mr. Ji does not concede that any distributions under the Plan would violate Chinese law, and this example is included for illustrative purposes, only.

that the Court may determine "that a fixed-period extension" from the FTX Recovery Trust's outward expiration date of five (5) years from the Effective Date "is necessary to facilitate or complete the recovery and liquidation of the FTX Recovery Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes)." (Trust Agreement, Art. XII, § 12.1(a).)

28.    Thus, there is no reason for distributions to be forfeited. Yet, the Procedures provide for the forfeiture of certain creditors' distributions, each time a distribution is made.  The bottom line is that there is no valid, good faith reason for distributions to be forfeited.

29.    Sixth, under the Procedures as proposed, the FTX Recovery Trust would enjoy unilateral power to select foreign legal counsel of its choice and rely on that counsel's opinion to determine whether distributions would be made to creditors in certain jurisdictions. This authority is inappropriate and overly broad. Constraints should be placed on the FTX Recovery Trust's unchecked selection of foreign counsel, such as notice of selected counsel to creditors in the applicable Potentially Restricted Foreign Jurisdiction, with opportunity to object and propose alternative counsel to deliver an opinion.

## C.    The Procedures Constitute a Plan Modification

30.    Further, the Motion's proposed treatment of claims held by residents of Potentially Restricted Foreign Jurisdictions as "Disputed" (as defined in the Plan) constitutes an impermissible, post-Effective Date Plan modification. Section 1127(b) of the Bankruptcy Code provides that a plan proponent or reorganized debtor "may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan…"  11 U.S.C. § 1127(b) (emphasis added). "There is no provision allowing modification of a plan after

substantial consummation." *In re NorthEast Gas Generation, LLC*, 639 B.R. 914, 920 (Bankr. D. Del. 2022). Nor can one be extrapolated under section 105(a) of the Bankruptcy Code. *See id.* at 924-25. Here, the Confirmation Order plainly states: "On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code." (Confirmation Order, § QQ, ¶ 151.) On January 3, 2025, the Effective Date occurred. (*See* Motion, ¶ 10.) Thus, the FTX Recovery Trust may not modify the Plan at this time.

31.     The Procedures constitute a material – and injurious – modification to the treatment of claims under the Plan. Indeed, neither the Plan nor Confirmation Order discloses any potential disparate treatment for Chinese creditors, nor gives any notice to holders of customer claims in any jurisdiction that they could be potentially barred from recovery based on the FTX Recovery Trust's interpretation of foreign law. The Procedures substantially modify the Plan's distribution framework for Chinese and other creditors, and thus, the Motion should be denied for this reason as well. *See SCH Corp. v. CFI Class Action Claimants*, 597 Fed. Appx. 143,148 (3d Cir. 2015) (finding that "turning a five-year plan into an eight-year plan constitutes a modification of the plan itself"); *NorthEast Gas Generation*, 639 B.R. at 923 ("[T]he Court concludes that [post-effective date debtor] is not seeking a minor clarification of the Plan necessary to fill a gap or further the intent of the parties. Rather, it is seeking to change the unambiguous terms of the Plan. The parties are sophisticated parties who negotiated and drafted the terms of the Plan.") Here, the Debtors certainly always knew they had Chinese and other foreign creditors.

32.     Moreover, the brand-new introduction of a Potentially Restricted Foreign Jurisdiction list materially undermines the principles of equal treatment among similarly situated creditors, upon which the Confirmation Order was based. (*See* Confirmation Order, § P(i)(d), ¶

30 ("Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan uniformly provides for the same treatment of each Claim or Interest, as the case may be, in a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.").) The Procedures would subject creditors in the same Plan class(es), from certain countries to delay, extra costs to demonstrate their eligibility (and so, ultimately less net recovery), or even <u>forfeiture</u> of distributions on allowed claims – thus rendering the required section 1123(a)(4) confirmation finding no longer true.

33.    Indeed, China's designation as a Potentially Restricted Foreign Jurisdiction has already caused substantive disparities among creditors in the Holders' Plan class. At present, many of the Debtors' creditors have received their first round of distributions, while Chinese creditors, like Mr. Ji potentially is, have received none, solely due to their nationality and/or residence. (Decl., ¶ 9.) Thus, this geographic disparity has already resulted in real-world inequality – including for smaller Chinese creditors suffering extreme financial hardship as a result thereof. (*Id.*) Such creditors – whose English may not be proficient, and/or who lack the means to object to a Restricted Jurisdiction Notice (*id.*) – may unfairly <u>forfeit</u> legitimate distributions under the proposed Procedures. Using place of residence as the basis for differing distribution pathways – or even <u>forfeiting</u> distributions entirely – constitutes a form of systemic inequality in the treatment of similarly situated creditors and violates the principles of uniformity and fairness that bankruptcy proceedings, and bankruptcy courts as courts of equity, are meant to uphold. The Procedures would substantively alter the Plan's treatment of claims by introducing a mechanism through which some creditors – who were otherwise fully eligible to recover under the Plan – may now be entirely denied distributions based on nationality.

**D.**   **Adjourning the Hearing is Reasonable Under the Circumstances**

34.   Finally, notwithstanding this Objection, the initial Hearing on the Motion should be adjourned to give the parties an opportunity to determine whether they can resolve any issues raised herein consensually. Given the complexity and unprecedented nature of the Procedures, and dozens of objectors, it is unlikely that even any potential resolution of the issues raised by the Motion can be adequately explored within the next week, prior to the Hearing. The potential prejudice to creditors impacted by the Motion far outweighs any process concerns the FTX Recovery Trust may have in getting procedures in place immediately.

## CONCLUSION

For the reasons set forth herein, Mr. Ji respectfully requests that the Court deny the Motion and grant such other and further relief as it deems just and proper.

Date:   July 15, 2025
        Wilmington, Delaware

**SULLIVAN HAZELTINE ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
919 North Market Street, Suite 420
Wilmington, DE  19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com

-and-

**WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP**
Thomas A. Draghi, Esq.
Michele L. Angell, Esq.
1201 RXR Plaza
Uniondale, New York 11556
Tel:  (516) 622-9200
tdraghi@westermanllp.com
mangell@westermanllp.com

*Counsel for Weiwei Ji*