Weiwei Ji

916 SIMS AVE #07-78

Singapore, 408974

weiweiji@hotmail.com

July 12, 2025

RECEIVED

2025 JUL 15 A 9: 24

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Honorable Judge Karen B. Owens

United States Bankruptcy Court

District of Delaware

824 North Market Street, 3rd Floor

Wilmington, Delaware 19801

USA

In re: FTX Trading Ltd., et al., Case No. 22-11068 (KBO)

## OBJECTION TO MOTION OF FTX RECOVERY TRUST TO IMPLEMENT RESTRICTED JURISDICTION PROCEDURES

**Honorable Judge Owens:**

I respectfully submit this letter on behalf of myself and over one hundred Chinese creditors of FTX (Claim IDs for 64 of these creditors are listed in Appendix A), to firmly oppose the Motion of the FTX Recovery Trust to implement the so-called "Restricted Jurisdiction Procedures."

Enclosed with this letter is a legal opinion authored by a licensed attorney in the People's Republic of China, which outlines the current regulatory environment regarding digital assets in China. We wish to emphasize that the submission of this legal opinion does not signify our agreement that foreign legal opinions should determine distribution eligibility. On the contrary, our purpose is to demonstrate that the foundation of the FTX Recovery Trust's motion is fabricated and untenable. The Trust is manufacturing a problem where none should exist.

Bankruptcy proceedings should not devolve into debates over the regulatory treatment of digital assets across various jurisdictions; instead, they should remain focused on the fundamental relationship of debt and repayment. Distributions to creditors are protected under the laws of many countries, and there are no actual legal obstacles to such

1

repayments. It is the failure to fulfill repayment obligations that may lead to public and judicial scrutiny—not the act of honoring those obligations.

We must not forget that the essence of FTX's conduct prior to bankruptcy was the unlawful misappropriation of property from us, the creditors. The purpose of the bankruptcy process is to return to creditors what is rightfully theirs. This is not only required by law, but is also morally imperative.

Yet, the FTX Recovery Trust is attempting to delay—or even deny—our legitimate repayment claims by invoking vague and unfounded assertions of so-called "legal risks." Such conduct has already caused us, the victims, severe secondary harm. We respectfully urge the Court to recognize this reality and deny the motion. Doing so would not only uphold the law, but also safeguard justice.

I will elaborate on this objection through the following points.

## I. The Post-Bankruptcy Distributions by FTX Constitute Debt Repayment, Not Cryptocurrency Trading or Payment Services

The distributions currently being made by FTX are, in essence, acts of bankruptcy debt repayment—not cryptocurrency trading or the provision of any financial services. It is true that prior to bankruptcy, FTX, as a global digital asset exchange, may have conducted unlicensed financial activities in certain jurisdictions, potentially in violation of local laws and regulations. However, such past conduct cannot justify restricting the lawful repayment of its bankruptcy estate to creditors.

Under U.S. bankruptcy law, the FTX Recovery Trust—established post-bankruptcy—is not a continuing commercial entity. Rather, it is a court-supervised liquidation trust whose sole function is to equitably and efficiently distribute assets to creditors. Its actions do not represent the ongoing business operations or intentions of the pre-bankruptcy FTX entity, nor do they involve offering crypto trading, exchange, or payment services to the public.

More importantly, the repayments at issue are based on dollar-denominated creditor-debtor relationships. Even if the form of distribution involves digital assets as a payment medium, the legal nature of the distribution remains that of debt satisfaction—not a cryptocurrency transaction.

On this basis, we specifically point to two comparable cases—**Voyager and Celsius**—both U.S.-based crypto companies that underwent bankruptcy. In both cases, the distribution plans successfully provided global creditor repayment in U.S. dollars, including wire transfers to Chinese creditors. Neither case invoked the concept of

2

"Restricted Jurisdiction," nor did they establish exclusionary or discriminatory distribution barriers on the grounds of regulatory uncertainty in any jurisdiction.

The FTX Recovery Trust's unilateral attempt to introduce a "Restricted Jurisdiction" mechanism is unsupported by legal precedent and violates the fundamental principle of equal and fair debt repayment.

## II. The Real Legal Risk Arises from Failing to Satisfy Debts, Not from Lawfully Fulfilling Repayment Obligations

In the current motion, the FTX Recovery Trust seeks to establish a so-called "Restricted Jurisdiction" mechanism under the pretext of "compliance risk," claiming that compensating creditors in certain countries could potentially violate local laws. However, this concern lacks any factual basis or historical precedent, and is purely speculative.

From the perspective of global legal practice, there is no known instance where a country's judicial authorities have taken adverse legal action against a foreign bankruptcy liquidation entity for fulfilling court-approved repayment obligations to that country's citizens. A debtor that pays victims or creditors in accordance with a confirmed bankruptcy plan is engaging in lawful and proper conduct, which cannot reasonably be construed as a violation of law.

In fact, the only genuine legal risk arises when a debtor fails to meet its obligations. If the FTX Recovery Trust refuses to pay creditors in countries such as China under the guise of "legal risk," it is that refusal—not the payment itself—that could draw scrutiny or retaliatory measures from regulatory agencies, courts, creditor groups, or the media in those jurisdictions, thereby triggering real legal and political consequences.

Citing nonexistent legal barriers to obstruct the repayment of otherwise undisputed debts constitutes a distortion of legal reasoning. It also risks delaying the bankruptcy distribution process, generating additional disputes, and undermining the global credibility and legal standing of the Trust itself.

## III. The "Restricted Jurisdiction" Motion Undermines Creditor Equality and Lacks Any Clear, Legitimate Standard for Classification

The creditor base in the FTX bankruptcy case is highly international: approximately 95% of all creditors are from jurisdictions outside the United States, and only about 5% are domestic. To date, the FTX Recovery Trust has already initiated repayments to approximately 90% of these foreign creditors. Only about 5% of overseas creditors remain unpaid.

3

If the "Restricted Jurisdiction" Motion is approved, this last group of foreign creditors will be subjected to an entirely different process—and may even face permanent exclusion from any recovery. This raises critical questions:

- What are the criteria for designating a country as a "Restricted Jurisdiction"?
- Who decides these criteria?
- Is there any independent oversight to ensure the legitimacy and fairness of this classification?

The FTX Recovery Trust has not disclosed the full legal opinions that supposedly support its classification decisions. Nor has it explained how "legal risk" is assessed for each jurisdiction. If this Motion is granted, do creditors have the right to request full disclosure of all legal opinions that confirm the legality of distributions in jurisdictions designated as "Permitted"? Without comparative information or a transparent legal basis, this classification system inevitably results in materially unequal treatment among similarly situated creditors—directly violating the core principle of equal treatment under Section 1123(a)(4) of the U.S. Bankruptcy Code.

As further explained in the legal opinion attached to this letter by a licensed Chinese attorney, the classification of China as a "Restricted Jurisdiction" is not based on judicial precedent or binding statutory law. Rather, it relies on several policy-oriented or advisory documents. These documents do not constitute enforceable legal norms issued by China's legislature or courts, but merely reflect the general policy direction of administrative regulators.

Even more troubling, the FTX Recovery Trust has demonstrably misinterpreted these policy documents. The cited materials do not prohibit Chinese residents from receiving debt repayments from foreign entities. Yet the Trust selectively and inaccurately interprets them as evidence that "Chinese creditors cannot lawfully receive distributions"—a clear distortion of their legal meaning.

If subjective interpretations of non-binding policy documents are allowed to justify creditor exclusion, then by the same logic, many jurisdictions that have already received distributions could also be deemed "restricted." This highlights the arbitrary and selectively discriminatory nature of the classification and its lack of consistent legal standards or procedural safeguards.

## IV. The FTX Recovery Trust Lacks the Legal Authority and Practical Capacity to Designate "Restricted Jurisdictions"

As the FTX Recovery Trust acknowledges in its motion, FTX's pre-bankruptcy business operations extended across more than one hundred countries and jurisdictions, making

4

this one of the most globally complex bankruptcy cases to date. Simultaneously, as an emerging asset class, digital assets remain subject to evolving and inconsistent regulatory regimes worldwide. Legal frameworks, administrative rules, and enforcement policies in different countries are continuously changing and often ambiguous.

In this context, the FTX Recovery Trust lacks the institutional capacity, expertise, and legal authority to make accurate, authoritative, and dynamic assessments of the legal status of digital asset distributions in every jurisdiction. As demonstrated earlier, the Trust's understanding of Chinese law is fundamentally flawed—it relies on a handful of policy-oriented and advisory documents, which are neither judicial precedents nor binding statutory laws enacted by China's legislative authorities.

More concerning is the Trust's misinterpretation and overextension of these policy materials. The cited documents are general administrative guidelines aimed at market access and financial activity regulation. They do not prohibit Chinese citizens from lawfully receiving foreign debt repayments. The Trust, however, construes these materials to mean that "distributions cannot be made to Chinese creditors," which represents a significant misreading of their scope and intent. Using such subjective and erroneous interpretations as a basis to exclude Chinese creditors from compensation contradicts the core principles of legal precision and restraint.

This example highlights a fundamental issue: as a bankruptcy estate fiduciary, the FTX Recovery Trust lacks both the authority to make legal determinations and the capability to assess global legal risk with the necessary accuracy. Nevertheless, its subjective classifications are being used to determine creditor eligibility and payment timing— decisions with enormous financial consequences. Such discretionary conduct, without a legal basis or objective standard, constitutes an irresponsible act against affected creditors and undermines the fairness and legitimacy of the bankruptcy process.

At the same time, the legal fees, expert engagements, and procedural delays associated with the implementation of this mechanism have significantly increased the cost and duration of the bankruptcy process. These expenses directly reduce the value of the estate available for distribution and ultimately harm the collective interests of all creditors.

For the foregoing reasons, we respectfully request that the Court determine that the FTX Recovery Trust lacks the legal authority and the practical capacity to establish "Restricted Jurisdiction" classifications, and that the motion should be denied in its entirety to preserve the integrity, fairness, and efficiency of the bankruptcy process.

**Conclusion:Urging the Court to Return to the Essence of Bankruptcy—Debt Repayment, Not Manufactured Legal Risk**

At the end of this letter, I have attached a legal opinion authored by a licensed attorney in the People's Republic of China, along with the attorney's professional credentials. I do

not submit this opinion with the expectation that the Court must fully adopt its conclusions or treat it as a binding authority. I fully understand that the FTX legal team may submit legal opinions that are entirely different in nature. That, in fact, underscores a critical truth:

Cryptocurrency is a rapidly evolving and highly dynamic domain. Across jurisdictions, policy documents, regulatory frameworks, and even legislative systems are in constant flux.

Against this backdrop, neither I—as an individual creditor—nor the FTX Recovery Trust—as the debtor in bankruptcy—can or should bear the responsibility or possess the authority to definitively interpret the laws and regulations of every country involved. Much less should such interpretations become the basis for making substantive decisions about whether or not to distribute confirmed claims.

If we allow compensation decisions to hinge on conflicting interpretations of various jurisdictions' policies, the result will be an endless tug-of-war—a battle of opinions that ultimately imposes the cost of delay and uncertainty on creditors. This would not only obstruct a timely and orderly bankruptcy process but also deprive creditors of the time and hope they need to rebuild their lives.

We must not forget that behind the FTX bankruptcy lie countless destroyed families and broken trust. Now that the debtor–creditor relationship has been clearly established, it should be recognized for what it is: a dollar-denominated debt to be repaid—not a cryptocurrency transaction or payment. The role of this Court is to facilitate prompt, fair, and transparent debt repayment based on the confirmed claims—not to become entangled in speculative legal uncertainties that distract from this fundamental purpose.

More importantly, it is not the lawful act of honoring debt obligations that triggers legal risk—but rather the debtor's refusal or delay in fulfilling those obligations. No judicial authority anywhere in the world punishes foreign entities for lawfully repaying their debts. It is only the failure to do so that may invite legal or regulatory consequences.

Therefore, I respectfully urge this Court to uphold the core tenets of bankruptcy law—**to protect creditors, promote fairness, and ensure repayment**—and to reject this motion, which is based on exaggerated and manufactured "legal risk." In doing so, the Court will defend the rights and dignity of every creditor entitled to relief under the law.

Respectfully submitted,

Weiwei Ji

Dated: July 12, 2025

**Appendix A: Chinese Legal Expert Introduction**

Xiaowan Tian is a senior attorney with over 15 years of legal practice experience in China. He holds academic credentials in law from both Northwestern University (United States) and China University of Political Science and Law. Tian has substantial expertise in the legal and regulatory aspects of digital assets and cryptocurrency, with two publications in the field: "Legal Compliance of Web3 and Cryptocurrency" and "Crypto Survival Guide: Decoding Chinese Courts Judgements." Tian has frequently provided expert opinions and policy recommendations on cryptocurrency issues to Chinese judicial authorities and academic institutions.

**Appendix B:**

**Legal Memorandum Prepared by Attorney Xiaowan Tian**

**Appendix C:**

The following is a partial list of Claim IDs and Unique IDs of creditors participating in this objection to the Motion.

Claim IDs:

24587,36042,80289,53586,40223,8566,10645,77741,18407,74761,18716,74993,33640,71109,71285,7882,7997,43656,46414,58639,82789,73948,134004,72178,64397,34219,50998,37373,45581,60161,51901

Unique IDs:

153181,1411994,2160828,504627,3105738,3073980,154226,172920,172939,2698543,1247304,6671732,6031923,3502836,1557504,4704041,6845663,1334820,1467667,2589989,341797,2678270,2774015,4375229,1546727,322574,6621968,6998528,4929531,2351504,5155780,1783215,4297923,2339534,209681,238450,964304,1992522,1612010,406650,173949,1915692,1554820

## MEMORANDUM

To: Weiwei Ji

From: Xiaowan Tian, Beijing DHH Law Firm

Date: July 11, 2025

Re: Objection to the Motion of the FTX Recovery Trust to Implement Restricted Jurisdiction Procedures Concerning Creditors in the People's Republic of China (Case No. 22-11068 (KBO))

## QUESTION(S) PRESENTED

Under the laws of the People's Republic of China (hereinafter referred to as "PRC laws"), does the FTX Recovery Trust (the "Trust") face a credible risk of civil or criminal liability for making distributions to creditors located in China, thereby justifying the designation of China as a "Potentially Restricted Foreign Jurisdiction" and the forfeiture of Chinese creditors' claims?

## BRIEF ANSWER

No. The Trust's designation of the China as a "Potentially Restricted Foreign Jurisdiction" is based on a misunderstanding of the PRC laws. The administrative normative document cited as the basis for this designation are primarily policy statements aimed at regulating domestic financial activities and do not render it illegal for Chinese nationals to hold cryptocurrency or to receive distributions from a foreign bankruptcy estate. Furthermore, these administrative normative documents do not create a basis for imposing civil or criminal liability upon a foreign entity like the Trust for making such distributions. Therefore, the Trust's motion to implement procedures that would lead to the forfeiture of claims held by creditors in China is without legal merit and should be denied.

## STATEMENT OF FACTS

On July 2, 2025, the FTX Recovery Trust filed a motion seeking authorization to implement "Restricted Jurisdiction Procedures" (the "Motion"). The Motion proposes a process to designate certain countries as "Restricted Foreign Jurisdictions," which would result in the forfeiture of distributions to creditors residing in those jurisdictions. The Trust has included the People's Republic of China on its list of "Potentially Restricted Foreign Jurisdictions."

The Trust's justification rests on two primary concerns: (1) that the Trust could be held civilly or criminally liable for violating local laws by distributing proceeds from what

1

China might deem illegal cryptocurrency activities; and (2) that the Trust, through the actions of its Distribution Service Providers (DSPs), could be held civilly or criminally liable for violating (or aiding and abetting a violation of) local laws.

The creditors of the FTX estate residing in China object to this Motion. The basis for this objection is that the Trust misinterprets the PRC laws and the legal effect of relevant Chinese regulatory notices. Specifically, the Notice on Further Preventing and Resolving the Risks of Virtual Currency Trading and Speculation (the "2021 Notice"), is a policy document with a low hierarchical standing in the Chinese legal system. It is not a mandatory law or regulation that would be applied by a Chinese court to punish a foreign entity for distributing bankruptcy proceeds to a Chinese national. The notice is aimed at curbing domestic financial speculation, not at preventing Chinese citizens from recovering assets in a foreign bankruptcy.

## DISCUSSION

The Motion to designate China as a "Restricted Foreign Jurisdiction" is legally unsupported. Existing regulatory documents governing cryptocurrency in China do not provide a legal basis for imposing liability on the Trust for making distributions to Chinese creditors. The Trust's concerns are speculative and misapprehend the nature, scope, and purpose of the China's regulatory framework on cryptocurrency.

**I. Existing Regulatory Documents on Cryptocurrency in China Is Not Judicially Binding and Not an Enforceable Law Against Foreign Entities.**

The Trust's primary concern—that it could be held liable for distributing proceeds of "illegal activity"—is unfounded. This conclusion is based on misapprehension on the legal status of the relevant regulatory documents and their substantive content.

Before discussing the specific restriction on cryptocurrency in China, it is necessary to understand the hierarchy of the PRC laws. In terms of legal taxonomy, China's legal system is a civil law jurisdiction, predominantly code based with a clear hierarchy of authority. The PRC Legislation Law[1] identifies laws (法律, in Chinese), promulgated by the National People's Congress, administrative regulations (行政法规, in Chinese), promulgated by China's State Council, local regulations (地方性法规, in Chinese), issued by local People's Congresses and ministry rules (规章, in Chinese), issued by government ministries or local government, as the primary sources of law in China.[2] These can be collectively referred to as "legislative documents". The authority hierarchy is demonstrated as follows:

---

[1] Available at http://en.moj.gov.cn/2023-12/15/c_948358.htm
[2] See Legislation Law of the People's Republic of China, promulgated by the National People's Congress on March 15, 2000, Order No.31 of the President of the People's Republic of China; last amended on and effective from March 15, 2015, Order No.20 of the President of the People's Republic of China. Ex. 3.

| Sources of Law | | Authority Hierarchy |
|---|---|---|
| Constitution | | Highest |
| Laws | | Inferior only to the Constitution |
| Regulations | Administrative Regulations | Inferior only to the Constitution and Laws |
| | Local Regulations | Inferior to the Constitution, Laws and Administrative Regulations; same as Departmental Rules |
| Rules | Departmental Rules | Inferior to the Constitution, Laws and Administrative Regulations; same as Local Regulations |
| | Local Government Rules | Inferior to the Constitution, Laws, Administrative Regulations and Local Regulations at the same level; same as Departmental Rules |

Apart from legislative documents, another important type of regulatory documents in China is "administrative normative documents (规范性文件, in Chinese)", issued by the government that are not formal regulations as regulated by PRC Legislation Law, but still impose binding obligations on individuals and legal entities. Administrative normative documents are not sources of laws, and are inferior to the above-mentioned Laws, Regulations and Rules.

China has not yet formulated any unified special legislative documents for cryptocurrency. There are only four regulatory documents in China regulating cryptocurrency:

| No. | Effective Date | Document Title | Document Type |
|---|---|---|---|
| 1 | 2013.12.03 | "Notice on Preventing the Risks of Bitcoin" (Yin Fa [2013] No. 289)[3] | Administrative normative documents |

---

[3] Issued by the People's Bank of China, Ministry of Industry and Information Technology, China Banking Regulatory Commission, China Securities Regulatory Commission and China Insurance Regulatory Commission.

| No. | Effective Date | Document Title | Document Type |
|-----|----------------|----------------|---------------|
| 2 | 2017.09.04 | "Announcement on Preventing Financial Risks from Initial Coin Offerings"[4] | Administrative normative documents |
| 3 | 2021.09.03 | "Notice on Regulating Virtual Currency 'Mining' Activities" (Fa Gai Yun Xing [2021] No. 1283) | Administrative normative documents |
| 4 | 2021.09.15 | "Notice on Further Preventing and Resolving the Risks of Virtual Currency Trading and Speculation" (Yin Fa [2021] No. 237)[5] | Administrative normative documents |

Among the four documents, only the fourth document, "Notice on Further Preventing and Resolving the Risks of Virtual Currency Trading and Speculation" (the "2021 Notice"), is relevant to the disputing legal issue. The other three administrative normative documents will not be discussed.

1. The 2021 Notice, which is the cornerstone of the China's current cryptocurrency policy, is an administrative normative document issued jointly by several judiciary and administrative authorities. It is neither a source of law or a legislative document. No law, regulation or rule in China now prohibit Chinese individual investors, institutional investors and non-institutional investors (collectively referred to as Chinese investors) from holding and investing in cryptocurrency. The 2021 Notice has only general binding force, which is very limited compared to legislative documents, and its authority is inferior to Rules.

2. The 2021 Notice is a statement of the government and regulatory authorities' policy toward cryptocurrency, intended to guide the actions of domestic financial institutions. China's legislative system often employs administrative normative documents as policy instruments rather than legal enactments. These instruments, including the 2021 Notice, serve declaratory functions for certain economic or social

---

[4] Issued by the People's Bank of China, the Office of the Central Leading Group for Cyberspace Affairs, the Ministry of Industry and Information Technology, the State Administration for Industry and Commerce, the China Banking Regulatory Commission, the China Securities Regulatory Commission, and the China Insurance Regulatory Commission.

[5] Issued by the People's Bank of China, Cyberspace Administration of China, the Supreme People's Court, the Supreme People's Procuratorate, Ministry of Industry and Information Technology, Ministry of Public Security, State Administration for Market Regulation, China Banking and Insurance Regulatory Commission, China Securities,, Regulatory Commission and State Administration of Foreign Exchange. Available at http://www.pbc.gov.cn/en/3688110/3688172/4157443/4353814/index.html

purposes, and are designed with regulatory flexibility. They can be phased out without formal legislative repeal, allowing adaptation to future shifts in regulatory landscape. The 2021 Notice is a temporary policy position, not an immutable or penal code.

It is worth noticing that China's policies on cryptocurrency is gradually diverting from the negative position as demonstrated in the 2021 Notice. Judiciary in Beijing have cooperated with Hong Kong–licensed exchanges to dispose of seized cryptocurrency, returning value to victims.[6] Shanghai government has publicly acknowledged the need to study and understand stablecoins and global cryptocurrency trends.[7]

3. Chinese courts primarily apply Laws and Administrative regulations when adjudicating civil, criminal, or administrative cases. Therefore, the 2021 Notice is not binding authority that courts are required to apply in judicial proceedings. Courts may only refer to administrative normative documents in adjudication only under limited conditions: (1) where they do not conflict with higher-level laws or regulations; and (2) where there is a legal gap that requires reference to regulatory policy. Even then, courts will have to conduct judicial review to examine the legality of such documents before applying them. In practice, however, Chinese courts rarely conduct judicial review of administrative normative documents, and their application as binding authority remains exceptional.

4. The stated purpose of the 2021 Notice was:

"To prevent and handle the risks of speculation in virtual currency transactions, which have disrupted economic and financial order, and contributed to crimes such as gambling, illegal fundraising, fraud, pyramid schemes, and money laundering… in order to safeguard national security and social stability."

The 2021 Notice targets fraudulent, speculative, and unlicensed operations—not passive receipt of lawful property through a U.S. court-supervised liquidation. It is never intended to deny investors' lawful property rights, invalidate civil contractual relationships (e.g., custodial, exchange, or bankruptcy) or prohibit investors from receiving distributions in legal proceedings.

Thus, quoting the 2021 Notice to justify withholding bankruptcy distributions contradicts its underlying purpose—to protect the property of the people. Refusing to return lawful assets to Chinese creditors would itself constitute property deprivation without a legal basis.

## II. The Trust Is Practically Impossible to Be Held Liable for Violating the PRC Laws By Making Distribution to Chinese Investors

---

[6] See https://m.21jingji.com/article/20250606/herald/0bebadaed04645034b9872cc0a8e14fe_zaker.html
[7] See https://mp.weixin.qq.com/s/XLWK6XqFsbamGF7BArGy4g

Whether FTX Recovery Trust could be held civilly or criminally liable is the first concern raised by the Trust. The following discussion will resolve this concern by answering two questions: (1) Whether Chinese investors' holding and trading cryptocurrency in overseas exchanges violate the PRC laws, regulations or rules; (2) What legal risks do overseas exchanges face by facilitating Chinese investors to hold and trade cryptocurrencies?

**A. Chinese investors' holding and trading cryptocurrency in overseas exchanges does not violate the PRC laws, regulations or rules.**

The Motion incorrectly implies that all cryptocurrency activities by Chinese citizens are illegal. A further examination of the 2021 Notice reveals that this is not the case. The 2021 notice does not render it illegal for a Chinese national to hold or trade cryptocurrency on a foreign exchange. Specifically, there are two provisions in the 2021 Notice is of potential relevance:

One provision states that:

"Virtual currency-related business activities are illegal financial activities. Engaging in services such as exchange between legal tender and virtual currencies, exchange between virtual currencies, acting as a central counterparty for virtual currency trades, providing information intermediary or pricing services for virtual currency transactions, initial coin offerings, and virtual currency derivatives trading, are all strictly prohibited and will be firmly suppressed in accordance with the law. Where such activities constitute a crime, criminal responsibility shall be pursued."

The purpose of this article is to prohibit all forms of cryptocurrency business operations within China. It does not evaluate or proscribe the conduct of individual Chinese investors participating on overseas cryptocurrency exchanges. The practical effect of this article was the closure or relocation of cryptocurrency businesses from China.

Another provision states that:

"Participation in virtual currency investment and trading activities carries legal risks. Any legal persons, unincorporated organizations, or natural persons who invest in virtual currencies or related derivatives in violation of public order and good morals shall bear the civil consequences of invalid legal acts, with any resulting losses borne by themselves. Where such conduct disrupts financial order or threatens financial security, it shall be investigated and dealt with by the relevant authorities in accordance with law."

It appears the Trust may have misunderstood this provision to mean that Chinese investors are prohibited from participating in cryptocurrency investment activities.

6

However, a proper legal analysis reveals that such an interpretation is unfounded for the following reasons:

1. As established, the 2021 Notice is an administrative normative document, not a mandatory law or regulation that courts must apply to invalidate a citizen's property claims.

2. The concept of "violating public order and good morals" is an ambiguous legal standard that is not uniformly applied. Chinese courts are particularly cautious in applying it broadly. It does not automatically render all cryptocurrency investments void.

3. The territorial scope of the 2021 Notice is limited to business activities conducted within China's territory. It applies to relationships between Chinese investors and domestic cryptocurrency service providers, not to transactions conducted on overseas cryptocurrency exchanges. Therefore, it has no practical jurisdictional reach to comment on or invalidate investment behavior that takes place entirely outside Chinese borders.

4. A review of public records reveals no instances of a Chinese court or administrative body invalidating the transaction between Chinese investors and overseas cryptocurrency exchanges, or invalidating Chinese investors' holding or trading of cryptocurrency on overseas cryptocurrency exchanges.

B. **No practical risk of liability under the PRC laws for overseas cryptocurrency exchanges facilitating Chinese investors' holding and trading cryptocurrency**

A relevant provision of this question in the Notice 2021 states that:

"Overseas virtual currency exchanges providing services via the internet to residents within the territory of the People's Republic of China likewise constitute illegal financial activities. With respect to domestic personnel of such overseas virtual currency exchanges, as well as legal persons, unincorporated organizations, and natural persons who knowingly or ought to have known that they were engaging in virtual currency-related business and nevertheless provided marketing, payment, or technical support, liability shall be pursued in accordance with the law."

This provision is likely a primary source of concern for the Trust and its DSPs. While we do not argue that foreign cryptocurrency exchanges are entirely free from any conceivable legal exposure under the PRC laws, it is critical to understand that, from a practical legal enforcement perspective, there is no practical risk of civil or criminal liability under the PRC laws for FTX Recovery Trust or its DSPs when making distributions to Chinese creditors.

The reasoning is as follows:

1. No Extraterritorial Enforcement Power by Chinese Authorities

Chinese judicial and administrative authorities lack extraterritorial enforcement jurisdiction over foreign entities that do not operate physically within China's territory. Although the provision suggests theoretical exposure, its primary function is declaratory—serving as a policy deterrent rather than a legally enforced norm.

To date, we have found no recorded instance in which: a foreign cryptocurrency exchange has been sanctioned by Chinese courts or regulators solely for allowing Chinese residents to access its services; any such entity has been subject to civil, administrative, or criminal penalties in China for accepting Chinese users or transactions.

Hence, the legal risk asserted is speculative and has no supporting precedent.

2.    Provision Targets Domestic Personnel and Support Entities, Not Foreign Entities

The relevant clause focuses not on the foreign exchange itself, but on actors within China who assist its operations. Specifically, it criminalizes: China-based individuals working for overseas exchanges, and entities providing marketing, payment, or technical services within Chinese jurisdiction.

The provision contains no operative language specifying standards, penalties, or enforcement mechanisms against the foreign exchange itself. This omission strongly suggests that the regulatory emphasis is on domestic control, not extraterritorial punishment.

3. Legal Status of the 2021 Notice Remains Non-Binding and Policy-Oriented

As previously analyzed, the 2021 Notice is a joint administrative normative document issued by multiple Chinese judicial and administrative authorities. It is not a law, regulation, rule or judicial interpretation. It has lower legal authority than any legislative documents. Administrative normative document is generally understood in Chinese legal practice to serve as a policy statement, not a binding prohibition, and is not automatically or mandatorily applied by Chinese courts in adjudication.

As such, even if the Trust or DSPs were to be evaluated under this administrative normative document (which itself is highly unlikely), the lack of binding legal force further negates the possibility of any real liability.

**III. The Trust Is Practically Impossible to Be Held Liable for Violating (or aiding and abetting a violation of) PRC Laws for the Actions of the DSPs**

8

The Trust raised concern that it could be held liable for violating, or aiding and abetting a violation of PRC laws for the actions of the DSPs. According to publicly available information, the Trust cooperates with three designated DSPs to make distributions in U.S. dollars or U.S. dollar-pegged stablecoins. Given their functional equivalence for the purposes of distribution, this opinion does not separately analyze the legal implications of distributions made in USD versus U.S. dollar-pegged stablecoins.

The following discussion will resolve this concern by answering two questions: i) does the holding of USD or stablecoins by Chinese investors overseas, resulting from overseas cryptocurrency trading, violate the PRC laws; ii) could the bankruptcy distributions made by the Trust through DSPs constitute a violation or aiding and abetting a violation of the PRC Foreign Exchange Regulation.

## A. Domestic Passive Holding of Cryptocurrency Overseas by Chinese Investors May Breach PRC FX Rules, But Liability Lies Solely with Investors

While a Chinese creditor may have violated foreign exchange regulations when initially funding their FTX account, that is a matter between the creditor and Chinese authorities. It does not create liability for FTX or the Trust.

Under the principles established in the Regulations on Foreign Exchange System of the People's Republic of China ("Foreign Exchange Regulations")[8], the free exchange and circulation of RMB and foreign currencies is not permitted except in current account transactions or capital account items specifically approved by the Foreign Exchange Administration.

In practice, both the initial investment by Chinese investors into overseas cryptocurrency exchanges and the final proceeds derived from such investments will involve the conversion or circulation of RMB into foreign currencies or cryptocurrency. Since such activities do not fall under approved current or capital account transactions, Chinese investors holding stablecoins or USD abroad as a result of such activities may be in violation of the Foreign Exchange Regulations.

The direct consequence of such violations is that Chinese investors themselves may be subject to administrative penalties or even criminal prosecution. There are a considerate number of enforcement against investors on record. However, these penalties do not extend to the foreign exchanges. The violation is attributed solely to Chinese investors for breaching capital controls, not to the foreign entities that facilitated passive holdings of cryptocurrency.

The Trust's distribution of U.S. dollars or stablecoins to an overseas account designated by the creditor does not constitute a violation of PRC Foreign Exchange

---

[8] Available at http://www.pbc.gov.cn/english/130721/2832445/index.html

Regulations by the Trust. The Trust is not providing a currency exchange service within China; it is satisfying a debt pursuant to a confirmed bankruptcy plan. There is no legal precedent in China for holding a foreign entity liable for such an action.

**B. The Bankruptcy Distributions Itself Do Not Constitute a Violation or Aiding and Abetting a Violation of PRC Foreign Exchange Regulations**

Article 4 of the Foreign Exchange Regulations provides that:

"These regulations shall govern all activities in relation to receipts and payments in foreign exchange or foreign exchange operations of domestic entities and domestic individuals, and, receipts and payments in foreign exchange or foreign exchange operations of foreign entities and foreign individuals in the People's Republic of China."

This confirms that the regulation **does not apply to foreign institutions operating entirely outside China territory**, including those engaging in cross-border settlements with Chinese nationals.

Thus, there exists no legal basis under Chinese law to conclude that the FTX Recovery Trust could be held civilly or criminally liable for violating, or aiding and abetting the violation of, PRC foreign exchange controls through its DSPs.

**IV. Broader Considerations: If the PRC Laws Were to Apply, Would It Support Denial of Distribution?**

For the sake of argument, even if the Trust were to incorporate PRC law as a factor in determining distribution eligibility, it should consider Chinese law in its entirety rather than selectively citing a handful of documents.

If FTX's conduct were adjudicated under Chinese law, Chinese judicial authorities would likely:

1.  Prosecute FTX's operators for illegal fundraising or unlicensed financial activity;

2.  Impose criminal sentences including imprisonment and fines;

3.  Seize and liquidate assets, returning proceeds to investors as victims of financial crime.

Chinese judicial authorities have never denied restitution to victims of illegal fundraising on the grounds that the victims themselves invested in assets whose issuance or trading is restricted under Chinese regulatory framework. On the contrary,

the judicial focus is always on maximizing investor protection and restoring losses where feasible.

From this perspective, it could even be argued that failing to distribute to Chinese creditors exposes the Trust to the same theoretical legal risks it now seeks to avoid: namely, that its refusal to compensate Chinese investors could be seen under PRC law as a failure to return victim assets, possibly incur civil or criminal liability in China.

While such enforcement may be practically unlikely, it exists in theory to the same extent as the speculative risks raised by the Motion. If the Trust is to weigh legal risk under the PRC laws, it must do so objectively and holistically, not asymmetrically.


## CONCLUSION

The FTX Recovery Trust has failed to establish a credible legal basis for its concern that it will face civil or criminal liability under the PRC laws for making distributions to Chinese creditors. The administrative normative document on which it relies are policy documents that do not prohibit Chinese investors from receiving assets from a foreign bankruptcy estate and does not create liability for a foreign entity like the Trust. Accordingly, the designation of China as a "Restricted Foreign Jurisdiction" is improper. We respectfully request that the Court deny the Motion as it pertains to creditors residing in China.

**CERTIFICATE OF SERVICE**

I, Weiwei Ji, hereby certify that on July 5, 2025, I caused a copy of the foregoing Objection to the Motion of the FTX Recovery Trust to Implement Restricted Jurisdiction Procedures to be served via both electronic mail and physical mail upon the following parties listed below. In addition, I sent a cover letter and copy of this objection to the Office of the United States Trustee.

Sullivan & Cromwell LLP
- James L. Bromley – bromleyj@sullcrom.com
- Alexa J. Kranzley – kranzleya@sullcrom.com
- Andrew G. Dietderich – dietdericha@sullcrom.com
- Brian D. Glueckstein – gluecksteinb@sullcrom.com

Landis Rath & Cobb LLP
- Adam G. Landis – landis@lrclaw.com
- Kimberly A. Brown – brown@lrclaw.com
- Matthew R. Pierce – pierce@lrclaw.com

Office of the United States Trustee
- Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov
- Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
- David Gerardi – david.gerardi@usdoj.gov

I certify under penalty of perjury that the foregoing is true and correct.


Dated: July 12, 2025
Singapore

_____
Weiwei Ji

8

**Domestic Shipments**
- To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed or weighing more than 8 oz. will be billed by weight.

**International Shipments**
The UPS Express Envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.

- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

Note: Express Envelopes are not recommended for shipments of electronic media containing sensitive personal or confidential information.

Visit **theupsstore.com** to find a location near you.

JI WEIWEI
(917) 450-8281
THE UPS STORE #0368
123 TOWN SQUARE PL
JERSEY CITY NJ 07310-1756

0.5 LBS LTR
SHP WT: LTR
DATE: 12 JUL 2025

SHIP  CLERK OF THE COURT
TO:   US BANKRUPTCY COURT, DIST. OF DE
      FL 3
      824 N MARKET ST

WILMINGTON DE 19801

DE 197 9-25



UPS EARLY                          1+
TRACKING #: 1Z 10F E27 15 2497 3418

BILLING: P/P

REF #2: AE

MM2RY78PHNH01 ISH 13.00C ZZP 450 25.5U 06/2025

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
HND 8725

Serving you for more than 100 years
United Parcel Service.

Apply shipping documents on this side.

Do not use this envelope for:

**UPS Ground**®
**UPS Standard**®
**UPS 3 Day Select**®
**UPS Worldwide Expedited**®

Visit **theupsstore.com** to learn more about our Print & Business Services.

OBJECTION TO MOTION
OF FTX
RECOVERY TRUST TO
IMPLEMENT
RESTRICTED JURISDICTION
PROCEDURES
(Case No. 22-11068(KBO))





United Parcel Service

01800250709⁰ 08/21

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road. These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited.