**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Case No. 22-11068 (JTD) |
| FTX TRADING LTD., *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: July 15, 2025** |
| | **Hearing: July 22, 2025 at 9:30 a.m. (ET)** |

**REPLY OF ELD CAPITAL LLC IN FURTHER SUPPORT OF ITS
MOTION FOR ENTRY OF ORDER ESTABLISHING CLAIMS
DETERMINATION SCHEDULE FOR ITS CLAIMS**

ELD Capital LLC ("ELD" or "Claimant"), a customer-claimant in these Chapter 11 Cases of FTX Trading, Ltd. and affiliated debtors and debtors-in-possession (collectively the "Debtors"), by and through its undersigned counsel, respectfully submits this Reply in further support of its Motion for Entry of Order Establishing Claims Determination Schedule for its Claims (the "Motion") seeking the establishment of a claims determination schedule (the "Proposed ELD Claims Determination Schedule") for the ELD Claims.[2] This Reply responds to the *Objection of the FTX Recovery Trust to the Motion of ELD Capital LLC for Entry of Order*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] ELD's Proofs of Claim are available on the claims register as Nos. 87743, 91933, and 96369. Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion. [D.I. 31298.]

#125108957v1

*Establishing Claims Determination Schedule for its Claims* (the "Objection") [D.I. 31442].  For the reasons set forth in the Motion as well as below, the Court should grant the Motion.

## PRELIMINARY STATEMENT

1.Despite the FTX Recovery Trust's piqued rhetoric, the Motion does not seek to "toss aside" the framework approved by the Court or "usurp the process set forth in the Plan[.]" [D.I. 31442 at 2-3.]  Instead, the Motion simply seeks to enforce a commitment the Debtors made to ELD and provide fair and just treatment to a uniquely situated customer-claimant in a manner entirely consistent with the terms of the Reorganization Plan.

2.The FTX Recovery Trust argues that adjudication of the ELD Claims will grind these "vast and complex" proceedings to a halt or otherwise interfere with the "orderly administration of the estates," but its assertions are completely unfounded.  [*Id.*]  The FTX Recovery Trust has offered no basis for such a finding besides bare assertions and innuendo.  The reality, however, is that the FTX Recovery Trust and its professional advisors have more than sufficient resources to address the ELD Claims, which are straightforward by comparison to many of the matters that comprise these Chapter 11 Proceedings.

3.Similarly, granting ELD's Motion would not "open the floodgates to innumerable copycat motions that would quickly render these Chapter 11 Proceedings impossible to administer."  [*Id.* at 3.]  That is because ELD's claim is the only customer claim excluded from the Global Settlement effectuated under the Plan [D.I. 26404], and ELD is, to the best of its knowledge, the only customer-claimant who seeks to enforce a *separate promise* made by the Debtors.

#125108957v1

4.   At bottom, if the FTX Recovery Trust's sincere concern is "continu[ing] the orderly reconciliation of Claims for the benefit of all stakeholders[,]" *see* D.I. 31442, at 4, the relief sought in the Motion would clearly not interfere with its ability to do so.

5.   The Objection also conspicuously fails to address the exigent circumstances underlying the Motion. Specifically, ELD is an investment vehicle through which Mr. Cubitt and his partner invested their life savings using the Debtors' former trading platform and, but for the Debtors' fraudulent representations the day before filing the Petition, those savings would be available to ELD's members. During the pendency of these Chapter 11 Proceedings, ELD has lacked clarity regarding the timing and amount of funds available to support its members and their child, which are desperately needed.

6.   Finally, the Motion was made necessary because the Debtors and their counsel refused to respond to numerous inquiries by ELD's counsel concerning the status of the ELD Claims over the course of the *months* that followed the Effective Date.

## BACKGROUND

7.   ELD Capital LLC is a customer-claimant in these Chapter 11 Cases. ELD's owners are Mr. Cubitt and his partner, who (through ELD) invested their life savings using Debtors' former trading platform. Debtors' fraudulent conduct at issue in the ELD Claims has worked significant hardship on Mr. Cubitt and his family, whose savings are presently unavailable to them and the amount of which remains both uncertain and unavailable based on Debtors' fraudulent conduct. ELD's inability to access these funds has exacted an enormous economic and emotional toll on Mr. Cubitt and his family as he and his partner have been forced to live without access to their savings while struggling economically to support themselves and their child.

3

#125108957v1

8. ELD alleges that Debtors fraudulently induced certain contested exchange transactions that caused the value of assets in its customer account to be drastically reduced as of the Petition Date. The transactions contested by ELD were induced by Debtors' fraudulent misrepresentations and concealment on November 10, 2022, the day before the Petition Date.

9. On August 16, 2024, ELD objected to the Reorganization Plan, expressing concern that the ELD Claims would be extinguished through the Reorganization Plan [D.I. 23140]. To resolve that objection, Debtors reached an agreement with ELD that the ELD Claims are not extinguished by the Reorganization Plan and will be resolved through the claims allowance process [D.I. 26039]. In addition, the Debtors agreed and promised in writing as part of the resolution of ELD's objection to the Reorganization Plan to "make general efforts to reconcile ELD's claims promptly."

10. The FTX Recovery Trust does not acknowledge in its Objection that it made a separate agreement as part of the resolution of the ELD Claims to "reconcile ELD's claims promptly." The FTX Recovery Trust paints this agreement as the same as its obligation to all creditors—but such an interpretation would render its agreement illusory.

11. Moreover, since confirmation of the Reorganization Plan, ELD has attempted to communicate on numerous occasions with Debtors to seek the prompt resolution of the ELD Claims through the claims objection process. Debtors' counsel has failed and refused to respond to numerous messages requesting that the parties meet and confer to ensure that the ELD Claims can be resolved promptly.

#125108957v1

**ARGUMENT**

**I.   The Court has Authority to Enter the Order Sought by the Motion**

12.   The FTX Recovery Trust does not dispute the wide breadth of the Court's inherent power to "issue any order, process, or judgement that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  As ELD previously explained, the Court can approve the Proposed ELD Claims Determination Schedule pursuant to this authority. [D.I. 31298 at 6 (citing cases).]

13.   The relief sought by the Motion is an entirely appropriate exercise of the Court's inherent authority under these principles.  This is because the Motion does not seek to "override the Claims Objection Deadline," but rather enforce a promise that the Debtors made to ELD and provide fair and just relief to ELD under current circumstances.[3]  The FTX Recovery Trust's arguments are premised on its self-serving misconstruction of the effect of establishing the Proposed ELD Claims Determination Schedule.

14.   Considering the unique situation of ELD, granting the Motion would not establish that any other customer-claimants are entitled to the same relief or invite "copycat" motions. Furthermore, the resources of the FTX Recovery Trust and its professional advisors negate any suggestions of prejudice or infeasibility of reconciling the ELD Claim at this time.  The balance of the equities clearly favors an expeditious resolution of the ELD Claims, as continued uncertainty concerning its members' ability to access their life savings and present need to sustain their family outweigh unsupported claims that it is not feasible to devote attention to the

---

[3] The FTX Recovery Trust summarily asserts that the schedule ELD proposes is untenable, even if the relief sought by the Motion is allowed in any respect, because the proposed schedule is too tight.  Notably, the FTX Recovery Trust does not propose an alternative schedule or otherwise indicate the time it would supposedly need to object to and litigate the ELD Claims.

ELD Claims. In addition, ELD reached an agreement with the Debtors that created a reasonable expectation that the parties would make good faith efforts to promptly resolve the ELD Claims.

15. Since the Motion does not seek to alter the Claims Objection Deadline, but rather enforce a promise between ELD and the Debtors, ELD did not have an obligation to challenge the Claims Objection Deadline prior to confirmation of the Reorganization Plan. Thus, the FTX Recovery Trust's citation to a case concerning limitations on challenges that could have been raised before entry of a confirmation order does not address or preclude the request made in the Motion. *See In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018), *as amended* (Oct. 24, 2018). In fact, the promise that the FTX Recovery Trust has broken (*i.e.*, undertaking efforts to promptly resolve ELD's claim), by definition, could not have been enforced before the Reorganization Plan was confirmed. Similarly, the FTX Recovery Trust's citation to *In re Essar Steel Minnesota, LLC* misses the point, as the court simply held that a liability accrued before the effective date of a reorganization plan and subsequently *discharged* could not be enforced against the reorganized debtor. [D.I. 31442 at 10 (citing 652 B.R. 709, 713 (Bankr. D. Del. 2023).] The agreement that ELD seeks to enforce is not a liability that is dischargeable by operation of a reorganization plan, but rather an agreement related to the administration of the estates that was clearly intended to survive beyond the Confirmation Order.

16. The FTX Recovery Trust's arguments fly in the face of basic contract principles that apply equally in the context of bankruptcy proceedings. The agreement between ELD and the Debtors to resolve ELD's objection to the Plan is clearly in the nature of a settlement agreement—that is, "a contract which cannot be unilaterally repudiated by any of the parties." *In re Evanston Beauty Supply, Inc.*, 136 B.R. 171, 177 (Bankr. N.D. Ill. 1992). In addition, the FTX Recovery Trust's suggestion that its separate agreement to undertake efforts to resolve the ELD

Claims promptly is the same as the free-floating obligation it owes to every creditor would render the express provision of its agreement illusory. But "it is a bedrock principle of contract interpretation that courts should not adopt an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless[.]" *In re Celsius Network LLC*, 647 B.R. 631, 658 (Banrk. S.D.N.Y. 2023); *see also In re Tribune Co.*, 472 B.R. 223, 254 (Banrk. D. Del. 2012) (finding that courts applying Delaware law "will not read a contract to render a provision or term meaningless or illusory"); *In re The Containership Co.*, 2016 WL 23411363, at *9 (Banrk. S.D.N.Y. Apr. 29, 2016) ("The courts avoid an interpretation that renders a contract illusory."). Therefore, the express provision should be interpreted to establish an enforceable obligation.

17. In sum, it is necessary and entirely within the Court's authority to establish the Proposed ELD Claims Determination Schedule.

## II. Granting the Motion Would Not Disrupt the Claims Resolution Process or Render These Chapter 11 Proceedings Impossible to Administer

18. The FTX Recovery Trust makes the hyperbolic argument that granting the Motion would disrupt the claims resolution process or render these Chapter 11 Proceedings impossible to administer. [D.I. 31442 at 10-11.] This argument is premised on the notion—already debunked—that the Motion would necessarily invite "scores of other creditors" to seek similar relief. The Motion, however, is premised on a unique agreement between ELD and the Debtors and the exigent circumstances that pertain to the ELD Claims.

19. Notwithstanding its rhetoric, the FTX Recovery Trust fails to acknowledge that the ELD Claims are the *only* customer claims specifically excluded from the General Settlement that was part of the Reorganization Plan and ELD is, to its knowledge, the only customer-claimant with whom the Debtors made a separate agreement to undertake efforts to promptly

reconcile claims.  The FTX Recovery Trust's assertion that there is no reason to "treat ELD differently" cannot withstand the facts underlying this dispute.

20. The only authorities cited by the FTX Recovery Trust on this point relate to requests for courts to lift the automatic stay imposed after a bankruptcy petition.  These cases are inapposite because they involve relief for parallel litigation in other courts, not scheduling requests for the adjudication of a single customer claim in the same court—let alone under circumstances like those present here.  *Contra In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y.), *aff'd,* 411 B.R. 142 (S.D.N.Y. 2009); *In re Nw. Airlines Corp.*, 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar. 10, 2006).  Moreover, even these authorities recognize that relief from the automatic stay may be granted for cause.  *See In re Bally Total Fitness*, 402 B.R. at 623.  In the context of relief from the automatic stay, courts consider factors such as "whether relief would result in a partial or complete resolution of the issues," "lack of . . . interference with the bankruptcy case," and other equitable factors.  *See id.* at 623 n.7.  Even if this standard applied, the circumstances of the ELD Claims would suffice to show cause to lift a stay.

**III.    The Relief Requested by the Motion is Warranted**

21. Bankruptcy courts are courts of equity, and they have broad equitable powers to prevent abuse of the bankruptcy system and fashion appropriate remedies consistent with the Bankruptcy Code.  *See Marrama v. Citizen's Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (citing 11 U.S.C. § 105(a)).  The remedy sought by the Motion—simply, the prompt adjudication of the ELD Claims on the merits—is consistent with the Bankruptcy Code.[4]  The Court should

---

[4] The FTX Recovery Trust points out that the Bankruptcy Code provides for a claims resolution process.  It misses the point, however, that an order establishing a schedule for the resolution of a

#125108957v1

not countenance the FTX Recovery Trust's attempt to dismiss an agreement it made with ELD in order to resolve ELD's objection to the Reorganization Plan or the current circumstances that call for an expedited adjudication of the ELD Claims in the interests of fairness and justice.

22. The FTX Recovery Trust does not even acknowledge the equitable grounds weighing in favor of granting the Motion, including ELD's dire need for certainty and access to its members' life savings, let alone attempt to articulate any countervailing factors. The FTX Recovery Trust's silence on these issues speaks volumes about the balance of the equities that decisively support the Motion.

## **CONCLUSION**

For the foregoing reasons and those described in the Motion, ELD respectfully requests that this Court enter the proposed Order, substantially in the form attached to the Motion as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as the Court deems just and proper.

Dated: July 17, 2025                                       Respectfully submitted,

**DILWORTH PAXSON LLP**

By: */s/ Peter C Hughes*
Peter C. Hughes, Esquire
DE No. 4180
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone: (215) 575-7282
Email: phughes@dilworthlaw.com

---

discrete claim based on an agreement by the Debtors and the equities does not trample on the claims resolution process or offend the Bankruptcy Code in any respect.

9

**MILLER SHAH LLP**

By:/s/ Alec J. Berin
James E. Miller, Esquire
Alec J. Berin, Esquire
1845 Walnut Street
Philadelphia, PA 19103
Telephone: (866) 540-5505
(Admitted *pro hac vice*)
Email: jemiller@millershah.com
　　　　ajberin@millershah.com

*Counsel for ELD Capital LLC*