# EXHIBIT B

**Reply**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 31148** |

**FTX RECOVERY TRUST'S OMNIBUS REPLY IN SUPPORT OF MOTION TO
IMPLEMENT THE RESTRICTED JURISDICTION PROCEDURES IN
POTENTIALLY RESTRICTED FOREIGN JURISDICTIONS**

The FTX Recovery Trust[2] hereby submits this reply (the "Reply") in support of the

*Motion of the FTX Recovery Trust to Implement the Restricted Jurisdiction Procedures in*

*Potentially Restricted Foreign Jurisdictions* [D.I. 31148] (the "Motion")[3] and in response to the

objections to the Motion (each, an "Objection" and collectively, the "Objections").[4]

**PRELIMINARY STATEMENT**

1.     The FTX Recovery Trust seeks only to establish procedures, to aid

implementation of the Plan, which will permit this Court to consider future requests to protect the

Plan Administrator, officers and directors of the FTX Recovery Trust from potential liability for

making Distributions to residents of foreign jurisdictions in violation of local laws or regulations.

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1].

[3]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the relevant objection, as applicable.

[4]   In addition to the docketed Objections, counsel to the FTX Recovery Trust also received additional unfiled Objections that overlap with the filed Objections and are thus addressed through the responses set forth in the Reply.

It is axiomatic that the FTX Recovery Trust can only be expected to make distributions to creditors pursuant to the Plan if it is legally permissible to do so. FTX's infamous prepetition business activities violated cryptocurrency laws and regulations in various countries around the world, and many creditors of the FTX Recovery Trust reside in jurisdictions that continue to have relevant laws and regulations that could trigger fines and penalties if distributions are made by or on behalf of the FTX Recovery Trust. Moreover, the legal landscape in many jurisdictions is unclear and ever changing. Seeking Court intervention as the FTX Recovery Trust wades through the thicket of these oblique foreign laws and regulations is prudent and necessary to protect the interests of all stakeholders.

2.      The issues are complex, and the FTX Recovery Trust continues to evaluate the legal landscape in each of the Potentially Restricted Foreign Jurisdictions in an effort to make Distributions under the Plan to as many creditors as possible. At this point, the FTX Recovery Trust only requests very limited relief to put a transparent process in place, overseen by this Court, to address jurisdictions where there may remain unresolved concerns about a Potentially Restricted Foreign Jurisdiction.

3.      Nonetheless, dozens of mostly *pro se* objectors, most of whom reside in China, have interposed objections to the designation of their country of residence as a Restricted Foreign Jurisdiction. No such designations have been made, and the frantic assertions only underscore the uncertainty of the legal landscapes in these jurisdictions. If the foreign laws are as crystal clear as the Objectors assert, then the FTX Recovery Trust will obtain a consistent unqualified opinion permitting the distributions. When the FTX Recovery Trust is unable to obtain an unqualified opinion, then pursuant to the proposed procedures, the issue will be squarely before this Court after notice and an opportunity to be heard by affected creditors. The designation of

any jurisdiction as a Restricted Foreign Jurisdiction is not before the Court, and thus most of the arguments are not ripe and are irrelevant to the pending Motion.  To be clear, the relief sought in the Motion, to implement the Restricted Jurisdiction Procedures, is purely procedural and ***not*** seeking at this time to designate anywhere as a Restricted Foreign Jurisdiction, forfeit any distributions, or otherwise affect any creditors' rights.  In fact, the FTX Recovery Trust developed and is requesting approval of the Restricted Jurisdiction Procedures for the express purpose of ensuring any and all affected creditors receive notice and have an opportunity to be heard in the future prior to the designation of any jurisdiction as a Restricted Foreign Jurisdiction.

4.      The Objections misconstrue the Motion's limited scope.  The Restricted Jurisdiction Procedures are proposed under section 1142(b) of the Bankruptcy Code to aid implementation of the confirmed and effective Plan, specifically to facilitate making Distributions. Nothing about the Restricted Jurisdiction Procedures that seek to address a purely distributional concern disturb the uniform treatment of similarly situated creditors, disallow claims, or seek to forfeit distributions without due process.  The myriad of accusations leveled at the FTX Recovery Trust in the often hyperbolic Objections—including that the FTX Recovery Trust is breaching its fiduciary duties and that the relief sought violates sections 1123 and 1129 of the Bankruptcy Code, will disrupt matters of international comity and even violate human rights—are unfounded and lack any merit.

5.      In addition, one objector who lacks standing to contest the Motion while also improperly purporting to act on behalf of a 600-member creditor group, asserts that the Restricted Jurisdiction Procedures would affect an unauthorized modification of the Plan.  Far from it, the Restricted Jurisdiction Procedures fall squarely within the Court's retained authority to issue orders in furtherance of implementation of the Plan—here distribution procedures—that

advance the Plan's paramount objective of maximizing creditor recoveries by ensuring distributions are compliant with foreign laws and regulations. As a result, the FTX Recovery Trust respectfully requests that the Court overrule the Objections, grant the Motion and approve the Restricted Jurisdiction Procedures.

## **REPLY**

**I.  The Proposed Restricted Jurisdiction Procedures Are Appropriate.**

6.      Contrary to the allegations in a majority of the Objections, the Motion is purely procedural and **not** seeking to forfeit distributions on account of any Claim or otherwise affect any creditor rights. The FTX Recovery Trust is seeking to safeguard all stakeholders by implementing the Restricted Jurisdiction Procedures pursuant to which, among other things, the FTX Recovery Trust will engage qualified attorneys in Potentially Restricted Foreign Jurisdictions to provide legal opinions addressing whether distributions pursuant to the Plan are permitted to be made to residents in those jurisdictions.

7.      In the event the FTX Recovery Trust does not receive an Acceptable Opinion, all affected creditors will receive notice and have the opportunity to challenge at that time the FTX Recovery Trust's proposed designation of a jurisdiction as a Restricted Foreign Jurisdiction, and no distributions will be forfeited absent a further order of this Court. At all times the issue is a distributional one, and no distributions would be affected prior to occurrence of the applicable Record Date after a jurisdiction is actually designated as a Restricted Foreign Jurisdiction. Nor would a distribution be impacted prior to the applicable Record Date by the transfer of a Claim to a holder in a permitted jurisdiction, or a change in residence to a permitted jurisdiction or to a dual resident of both a Restricted Foreign Jurisdiction and a non-Restricted Foreign Jurisdiction where payment is made to the non-Restricted Foreign Jurisdiction.

8.      Nevertheless, the Objections insist that foreign creditors' rights are being

substantively affected through the Motion.  They mistakenly argue that (i) the FTX Recovery Trust is, in fact, taking a conclusive position on matters of foreign law, (ii) the Restricted Jurisdiction Procedures violate sections 1123 and 1129 of the Bankruptcy Code, and/or (iii) the proposed procedures violate the FTX Recovery Trust's fiduciary duties to creditors.  These Objections are baseless and should be overruled.

      **A.**     **Objections On the Basis of Foreign Law Are Not Properly Before the Court.**

      9.     Nearly all of the objectors mistakenly perceive the Motion as affirmatively seeking to designate China, Macau and other foreign jurisdictions as Foreign Restricted Jurisdictions, and thus affirmatively seeking at this time to forfeit distributions to creditors that reside in these jurisdictions.  These objectors assert that distributions of digital assets are permitted under applicable foreign law.  (*See, e.g.*, D.I. 31359.)  Many objectors also advance the position that because the Plan contemplates distributions in U.S. dollars, foreign laws regarding digital assets do not apply to dollar-denominated proceeds of digital assets.  (*See, e.g.*, D.I. 31490.)  One objector makes arguments regarding the nature of the assets that were transferred to the FTX Recovery Trust on the effective date of the Plan.  (D.I. 31446 ¶ 17.)  Yet other objectors attempt to propose workarounds, such as distributions through Hong Kong or distributions through "escrow arrangements with third-party trustees."  (*See, e.g.*, D.I. 31359.)

      10.    All of these Objections are irrelevant to the pending Motion and should be overruled.  These Objections are not aimed at the proposed Restricted Jurisdiction Procedures; instead, they argue anecdotally that the objector believes, as a matter of applicable foreign law, there would be no basis to designate a particular country as a Restricted Foreign Jurisdiction or that there are potential workarounds.  Such issues of foreign law are not before the Court and would only be if the Court grants the Motion *and* the FTX Recovery Trust later seeks to designate a jurisdiction as a Restricted Foreign Jurisdiction pursuant to the procedures.  In such a scenario

where the FTX Recovery Trust is not able to obtain an Acceptable Opinion, all affected creditors would receive notice and have an opportunity to be heard at a hearing before the Court. It is at this further hearing where issues of foreign law will be relevant for the Court's consideration on an evidentiary record. Accordingly, these Objections fall outside the scope of the relief requested by the Motion and should be overruled.

**B.    The Restricted Jurisdiction Procedures Are in Furtherance of the Plan and Do Not Implicate Sections 1123(a)(4) and 1129(b) of the Bankruptcy Code.**

11.    Many of the Objections argue that the Restricted Jurisdiction Procedures somehow violate the equal treatment and unfair discrimination principles of sections 1123(a)(4) and 1129(b)(1) of the Bankruptcy Code. These provisions are requirements at the plan confirmation stage and are not applicable here. Even if the concepts were applicable, the Restricted Jurisdiction Procedures do not seek to modify or discriminate against any rights of any particular creditor or creditor group. Instead, the procedures are intended to aid the FTX Recovery Trust in making lawful distributions in accordance with, and in furtherance of, the Plan.

12.    As described in the Motion, the FTX Recovery Trust is proposing the Restricted Jurisdiction Procedures as part of the general authority under section 1142(b) of the Bankruptcy Code and the Confirmation Order to facilitate lawful distributions to creditors in furtherance of the Plan. *See* 11 U.S.C. § 1142(b) ("[t]he court may direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan."); *Binder* v. *Price Waterhouse & Co., LLP,* 372 F.3d 154, 165 (3d Cir. 2004) (noting that section 1142(b) "assumes that post-confirmation jurisdiction exists for disputes concerning the consummation of a confirmed plan" and that 28 U.S.C. § 1334 "remains the source of this jurisdiction"). The Motion does *not* seek authority under sections 1123(a)(4) and 1129(b) since those provisions, "by [their] express terms . . . [apply] only to plan confirmations." *In re Energy*

*Future Holding Corp.*, 527 B.R. 157, 167 (D. Del. 2015).

13. In connection with the confirmation of the Plan, the Court held that "[t]he requirements of section 1123(a)(4) of the Bankruptcy Code [were] satisfied." (Confirmation Order ¶ 30.) Section 1123(a)(4) of the Bankruptcy Code requires a plan to provide the same treatment for each claim or interest within a particular class (unless the holder of a particular claim or interest agrees to less favorable treatment of such particular claim or interest). 11 U.S.C. § 1123(a)(4). Article 4 of the Plan, in compliance with section 1123(a)(4), provides that each claimant in any particular class will receive the same treatment on account of its Claim and will receive the same distribution on account of such claim under the Plan, and nothing in the Motion purports to change any treatment set forth in Article 4 of the Plan.

14. Contrary to the arguments in these Objections, the Restricted Jurisdiction Procedures do not "discriminate" against any residents in a particular jurisdiction, nor do they modify the Plan's proposed treatment of any Claim. (*See, e.g.,* D.I. 31348.) The only requirement under section 1123(a)(4) is that the Plan does not discriminate "*on account of particular claims* or interests in a specific class," and does not take into account "the treatment that members of the class may separately receive under a plan on account of the class members' other rights or contributions." *In re Adelphia Communs. Corp.*, 368 B.R. 140, 249-250 (Bankr. S.D.N.Y. 2007) (emphasis in original); *see also In re W.R. Grace & Co.,* 729 F.3d 311, 328 (3d Cir. 2013) ("[D]elayed receipt of distributions to members of a class whose claims remain disputed does not, in and of itself, violate § 1123(a)(4)." (citing *In re New Power Co.,* 438 F.3d 1113, 1122 (11th Cir. 2006))).

15. The Restricted Jurisdiction Procedures do not apply to any particular Claim, nor are they specific to a particular class. Nothing about the classification of a jurisdiction as a

Restricted Foreign Jurisdiction determines allowance of a particular Claim or modifies the Plan's treatment of such Claim. The subjection of any Claim to the Restricted Jurisdiction Procedures is simply distributional with respect to Claims, similar to the pre-distribution requirements set forth in section 7.14 of the Plan. Among other pre-distribution requirements, the Plan Administrator may request from any holder certain tax certifications. (Plan § 7.14.) If a holder does not provide the requested tax certifications, the distributions on account of Claims held by such holder may be forfeited. (*Id.*) The Restricted Jurisdiction Procedures, like section 7.14 of the Plan, do not violate section 1123(a)(4) of the Bankruptcy Code because they do not arise out of the Plan's treatment of a Claim and because they apply equally to all creditors, regardless of class. Accordingly, these Objections should be overruled.

16.    Section 1129(b) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed notwithstanding non-consenting creditor classes as long as the proposed plan "does not discriminate unfairly" and is "fair and equitable" with respect to each class of claims and interests that is impaired and has not accepted the plan. *See* 11 U.S.C. § 1129(b)(1). These "cram down" provisions only apply at the plan confirmation stage and to non-consenting classes. *See In re Dow Corning Corp.*, 255 B.R. 445, 529 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) ("The cram down provisions under § 1129(b) do not apply since both Class 6.1 and Class 6D are accepting classes."). Here, each relevant objector appears to be an international customer whose claims are classified as Class 5A claims under the Plan. Class 5A customers voted overwhelmingly to accept the Plan, and was a consenting class which supported the Plan. *See Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulations of Ballots Cast on the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26045]. Therefore, these

Objections must fail.

17.     The Restricted Jurisdiction Procedures expressly provide that any affected creditor, at the appropriate time, can come forward with competing evidence that distributions are permitted into any jurisdiction that the FTX Recovery Trust requests be designated a Restricted Foreign Jurisdiction.  Thus, the rights of every potentially impacted creditor are preserved.

### C.     The Restricted Jurisdiction Procedures Are Consistent With the FTX Recovery Trust's Fiduciary Duties and Do Not Present Any Conflict.

18.     Certain Objections argue that the implementation of the Restricted Jurisdiction Procedures violates the FTX Recovery Trust's fiduciary duties to all creditors and that these procedures pose a conflict of interest.  These Objections are wrong.  Quite to the contrary, the FTX Recovery Trust is putting this issue before the Court now and availing creditors due process because it has made no such determinations, taken any position or expressed any substantive views on the permissibility of distributions in any jurisdiction.

19.     Under Delaware law, the Plan Administrator owes fiduciary duties, including compliance with all applicable laws, to the FTX Recovery Trust's beneficiaries.  *See Tigani* v. *Tigani*, 2021 WL 1197576, at *13 (Del. Ch. Mar. 30, 2021);[5] *Hynson* v. *Drummond Coal Co.,* 601 A.2d 570, 575 (Del. Ch. 1991) (noting that fiduciary duties "historically spring[] from equity's experience with trusts and trustees."); *In re Massey Energy Co*., 2011 WL 2176479, at *20, *73-74, n. 145 (Del. Ch. May 31, 2011) (holding breaches of fiduciary duties include knowingly "seek[ing] profit by violating the law."); *Guttman* v. *Huang*, 823 A.2d 492, 506 n. 34 (Del. Ch. 2003) (noting that a duty of loyalty includes obeying all applicable laws).

---

[5]     Despite certain objectors' citations to *Commodity Futures Trading Commission Comm'n* v. *Weintraub*, 471 U.S. 343 (1985), that case is irrelevant.  *Weintraub* dealt with whether prepetition privileged communications can be waived by a chapter 7 trustee.  *Id.* at 345.  The fiduciary duties at issue here relate to the duties a statutory trustee owes to the beneficiaries of a trust, not the duties a chapter 7 trustee may owe to creditors or shareholders.

20.     In the event the FTX Recovery Trust were to violate applicable local law by illegally making distributions, the resulting violation could carry significant fines and potential criminal and/or civil liabilities in various foreign jurisdictions.   While the laws of certain jurisdictions apply to certain aspects of digital assets and not others, the FTX Recovery Trust's concern is that the residents of Restricted Jurisdictions, who continue to reside in such jurisdictions and expect to receive distributions, may run afoul of some aspect of applicable laws or regulations that is impermissible, thereby subjecting the FTX Recovery Trust and other creditors with potential fines or penalties.

21.     Responding to, and addressing, such fines and liabilities would expend significant time and resources, further depleting funds available for distribution to all stakeholders. Accordingly, it is entirely consistent with the exercise of the Plan Administrator's business judgment and his fiduciary duties to seek to implement the Restricted Jurisdiction Procedures which ensure that, wherever possible, creditors receive their distributions under the Plan while minimizing the risk that the FTX Recovery Trust violates applicable local law, and no objector has set forth credible evidence indicating otherwise.

22.     Similarly, the allegation that the Motion or the Restricted Jurisdiction Procedures poses a conflict of interest is entirely unfounded rhetoric.  No objector has come forth with a shred of evidence alleging any conflict.  The FTX Recovery Trust is not "financially benefiting" from the Restricted Jurisdiction Procedures, as some objectors have alleged, nor does the FTX Recovery Trust have any "direct relationship" with professionals that could lead to a conflict.  (*See, e.g.*, D.I. 31340 & 31356.)  The FTX Recovery Trust and the Plan Administrator could not benefit from any forfeited Claim amounts—any forfeited amounts will revert to the estates and be available for distribution to other stakeholders in accordance with Article 4 of the

Plan.  Moreover, the FTX Recovery Trust has no interest in any Opinions that would be delivered other than ensuring that any distributions made to stakeholders resident in affected jurisdictions are compliant with applicable local law.  Any Objection alleging anything to the contrary is incorrect and should be overruled.

## II.    The Motion Satisfies Procedural Requirements.

23.    Certain Objections argue that the proposed Restricted Jurisdiction Procedures are procedurally deficient.  First, they argue that mailing the Restricted Jurisdiction Notice to the last known email or mailing address on file with the FTX Recovery Trust does not provide such claimants with sufficient due process.  (*See, e.g.*, D.I. 31443.)  Second, certain Objections contend that the 45-day objection period is insufficient, since the Motion requires foreign creditors to comprehend a "complex legal notice" that is written in English and submit contrary evidence to the Court.  (*See, e.g.*, D.I. 31350.)  Third, some Objections argue that all potentially affected foreign creditors should have received notice of the Motion.  (*See, e.g.,* D.I. 31353.)  Fourth, some objectors argue that requiring creditors to voluntarily submit to the jurisdiction of the Court if such creditors object to a Restricted Jurisdiction Notice is an "unreasonable procedural hurdle."  (*See, e.g.,* D.I. 31443.)  Each of these Objections is meritless and should be overruled.

## A.    Service of the Restricted Jurisdiction Notice to Each Affected Creditor Using the Last Known Mailing Address Satisfies Due Process.

24.    Mailing pleadings to the last known address of a creditor satisfies due process because it is "reasonably calculated" to inform the creditor of the pleading filed.  *In re Freedom Commc'ns Holdings, Inc*., 472 B.R. 257, 262 (Bankr. D. Del. 2012).  The creditor is responsible for notifying the debtor, trustee, or the court of any changes in her mailing address to guarantee that she be given reasonable notice.  *Id*.  If the creditor fails to update her address and

as a consequence does not receive a notice of a pleading that was properly mailed, she cannot later argue that her due process rights were violated.  *See id.*; *see also In re Nutri\*Bevco, Inc*., 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) (due process does not require physical receipt of mail as long as timely notice of the bar date was mailed to creditor's record address).  Moreover, absent a creditor updating her contact information, the FTX Recovery Trust has no other way of ascertaining this information.

25.    Service to the last known address is also compliant with Bankruptcy Rule 2002.  Bankruptcy Rule 2002(g) provides that, in general, a notice mailed to a creditor must be addressed to the last address provided in its last request in the case. Fed. R. Bankr. P. 2002(g).  If no request has been filed, a debtor is authorized to mail a notice to the address shown on the list of creditors or schedule of liabilities, whichever is filed later.  *Id; see also In re Wright*, 300 B.R. 453, 460 (Bankr. N.D. Ill. 2003) ("The address requirements for these notices are in Rule 2002(g), which gives the clerk the following order of addressee preferences: the last requested address filed in the particular case (including a proof of claim designating a specific mailing address), and then the latter of the address shown on the debtor's schedule of liabilities and that shown on his matrix list of creditors.").  In addition, in the context of pre-distribution requirements under the Plan, the Plan Administrator and the DSPs are entitled to rely on the delivery of the notice to the last known address on file with the Claims Agent without obligation to verify such address.  (Plan § 7.14.)

26.    As described in the Restricted Jurisdiction Procedures, if an Unacceptable Opinion is received by the FTX Recovery Trust, the FTX Recovery Trust will use commercially reasonable efforts to send a Restricted Jurisdiction Notice to *all* Holders of Claims who reside in the applicable Potentially Restricted Foreign Jurisdiction.  (Mot. ¶ 13(c)(ii).)  The FTX Recovery Trust will rely on the last known address of record, but to the extent that address information is

not available, the FTX Recovery Trust will use commercially reasonable efforts to ensure that all affected creditors receive notice and opportunity to respond to the Restricted Jurisdiction Notice. (*Id.*)  These efforts go beyond what is required in Bankruptcy Rule 2002 and satisfy due process because they are reasonably calculated to ensure that each affected creditor receives the Restricted Jurisdiction Notice.  If there is a concern about the FTX Recovery Trust using outdated addresses, as certain Objections have alleged (*See* D.I. 31443), any creditor is free to update her service instructions and address on the claims agent's website by submitting a Change of Address Request form.  Accordingly, the FTX Recovery Trust's proposed service of a Restricted Jurisdiction Notice is appropriate.

> **B.**     **The 45-Day Notice Period Is Sufficient.**

27.     The FTX Recovery Trust submits that the 45-day period to respond to a Restricted Jurisdiction Notice is sufficient and satisfies due process.  Forty-five days is a longer notice period than is required under Bankruptcy Rule 2002 for any substantive pleading.  *See* Fed. R. Bankr. P. 2002 (establishing 21-day and 28-day notice periods for certain substantive pleadings, such as notice of bar dates and plan voting).  Forty-five days is also consistent with, or longer than, other key deadlines imposed in these Chapter 11 Cases—such as the Plan voting and objection deadline and the general claims bar date.  *See Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] ("Solicitation Pro. Order") (establishing a period of 45 days between mailing of ballots and the voting and objection deadline); *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (establishing notice period of 38 days).  Accordingly, the FTX

Recovery Trust submits that the proposed 45-day period to respond to a Restricted Jurisdiction Notice is sufficient and satisfies due process.

### C.    Notice of the Motion to All Foreign Creditors Is Not Required.

28.    The FTX Recovery Trust is not required to notice each foreign creditor with this procedural Motion because their rights are not being affected.  Nothing in Bankruptcy Rule 2002 requires notice of a procedural Motion to all foreign creditors, and none of the Objectors have provided any arguments or support to the contrary.  *See* Fed. R .Bankr. P. 2002.  Certainly, having actually interposed Objections, the objectors have actual notice of the Motion.

### D.    Claimants Have Already Agreed to Have Their Claims Reconciled in the U.S.

29.    Certain Objections argue that it is unreasonable to require voluntary submission to the jurisdiction of the Court in connection with contesting a Restricted Jurisdiction Notice.  But many of these claimants have already submitted to the jurisdiction of the Court by filing a proof of claim.  *Travellers Int'l AG.,* v. *Robinson*, 982 F.2d 96, 98 (3d Cir. 1992) ("[B]y submitting a proof of claim to the debtor's estate, [creditor] effectively . . . submitted itself to the equitable jurisdiction of the bankruptcy court.")  Moreover, as international customers, in connection with the Plan process, any class 5A or class 7A claimant was free to elect to have their Claims administered and resolved in FTX Digital Markets Ltd.'s liquidation proceeding in The Bahamas without submitting to the jurisdiction of the Court.  Creditors who did not make the Bahamas opt-in election agreed to have their claims "administered, reconciled . . . resolved and satisfied in the Chapter 11 Cases."  (*See* Solicitation Pro. Order, Ex. 1 at Section 4(iii)(c).) Accordingly, the voluntary submission to this Court's jurisdiction in connection with the issues regarding any Disputed Claims is not "unreasonable," and was, in fact, expected.

**III.    Objector Weiwei Ji Failed to Comply With Bankruptcy Rule 2019 and Lacks Standing To Pursue His Objections.**

30.    Weiwei Ji, a Singaporean resident, filed four separate objections to the Motion. (*See* D.I. 31287, 31344, 31446 & 31466.)  Mr. Ji's first Objection, filed on July 8, claimed that he was the representative "of a rapidly growing group of over 300 Chinese FTX creditors." (D.I. 31287.)   Mr. Ji's second Objection, filed just one day later, claimed that he was the representative "of a rapidly growing group of over 400 Chinese FTX creditors." (D.I. 31344.)  Mr. Ji's third Objection, dated July 12, claimed that he was submitting a letter to the Court on behalf of "over one hundred Chinese creditors of FTX."  (D.I. 31466.)  Mr. Ji's final Objection, filed after the objection deadline, claimed that he "founded" and has "informally become the representative figure of a rapidly growing group of approximately 600 Chinese creditors of the Debtors (though, not all group members are active)."  (D.I. 31446.)  Of note, Singapore, Mr. Ji's home residence, is not currently listed as a Potentially Restricted Foreign Jurisdiction.

31.    Although Mr. Ji purportedly doubled the size of his "group" in the span of only seven days and retained counsel, Mr. Ji should not be heard on the Motion until he files a verified statement in accordance with Bankruptcy Rule 2019.  *See In re Wash. Mut., Inc.,* 419 B.R. 271, 274 (Bankr. D. Del. 2009) (holding that Bankruptcy Rule 2019 requires disclosure from members of a group representing more than one creditor).  The FTX Recovery Trust has no way of verifying the types of creditors that are purportedly represented by Mr. Ji, if any, and whether and to what extent the Motion affects these creditors.  Without a verified 2019 statement, Mr. Ji may not, and should not, be heard by this Court on the Motion.  *See, e.g., In re Gawker Media LLC*, Case No. 16-11700 (SMB) (Bankr. S.D.N.Y. Feb. 8, 2017) [D.I. 743] (enjoining group from being heard or intervening in chapter 11 case due to noncompliance with Bankruptcy Rule 2019); *In re Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Feb. 23, 2011) [D.I.

9405] (ordering group of noteholders to timely comply with the requirements of Bankruptcy Rule 2019 or "the Group's submission will not be considered.").

32.    In addition, since Singapore (Mr. Ji's residence) is not currently a Potentially Restricted Foreign Jurisdiction, nothing in the Motion directly or adversely implicates Mr. Ji's rights or interests.  *See In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (D. Del. 2019) ("[B]ankruptcy standing is its own particular breed of standing" and requires a "statement of or identification of a pecuniary or an economic or property interest before [the] court that is susceptible to redress and as to which parties should be able and afforded an opportunity to address the Bankruptcy Court.").  Courts have long held that "it is important that a bankruptcy court is not too facile in granting applications for standing.  Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization."  *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989) (internal citations omitted).

33.    Mr. Ji attempts to manufacture standing by arguing that he may be subject to the Restricted Jurisdiction Procedures because he possesses a Chinese passport.  (D.I. 31446 ¶ 3.)  But the Motion is clear that the procedures only apply to creditors residing in Potentially Restricted Foreign Jurisdictions as confirmed through the Plan's pre-distribution requirements.  (Mot. ¶ 13(c)(ii).)  Accordingly, Mr. Ji lacks standing and his Objections should not be heard by the Court.[6]

A.    **The Restricted Jurisdiction Procedures Are In Furtherance of the Plan and Do Not Constitute a Plan Modification.**

34.    Mr. Ji argues that the Restricted Jurisdiction Procedures constitutes an

---

[6]    Notwithstanding that Mr. Ji does not have standing to contest the Motion, the FTX Recovery Trust nevertheless addresses why each of Mr. Ji's objections fail.

impermissible modification to the Plan and is not authorized under section 1127(b) of the Bankruptcy Code.  (D.I. 31446 ¶ 30.)  But section 1127(b) of the Bankruptcy Code only prohibits anything that "seek[s] to change the unambiguous terms of the Plan."  *In re Northeast Gas Generation, LLC*, 639 B.R. 914, 923 (Bankr. D. Del. 2022).  Where a plan of reorganization is silent or ambiguous, clarifications that further equitable concerns are permitted without modifying the Plan.  *See SCH Corp.* v. *CFI Class Action Claimants*, 597 Fed. App'x 143, 148 (3d Cir. 2015).  For the avoidance of doubt, the FTX Recovery Trust does not intend, and will not under any circumstances seek, to modify the confirmed, effective, and substantially consummated Plan.

35.     Courts have held that equitable considerations to clarify a plan exist where the proposed clarification "advances the purpose of the Plan, specifically here and of Chapter 11 generally, which is to get value to the creditors."  *In re Northwestern Corp.*, 372 B.R. 684, 687 (D. Del. 2007) (permitting cash proceeds to be invested from a contemplated merger of a reorganized debtor even though the merger was not mentioned in the plan because the investment of cash proceeds advances the purpose of the plan and chapter 11); *see also Beal Bank, S.S.B.* v. *Jack's Marine, Inc.*, 201 B.R. 376, 380 (E.D. Pa. 1996) (holding that a proposed clarification to the plan to require the satisfaction of mortgage after payment of creditor's claim in full was a "necessary variation" that "clarified the Plan on a matter on which it was silent."); *In re Conco, Inc.*, 855 F.3d 703 (6th Cir. 2017) (prohibiting sales of equity to third parties although not explicit in the plan since permitting such sales would undermine the purpose of the plan); *In re SS Body Armor I, Inc.*, 2021 WL 2315177, at *6-7 (Bankr. D. Del. Jun. 7, 2021) (finding change to a plan supplement was envisioned under and permitted by the plan); *In re Hampton Corp., Inc.*, 1992 WL 1482466, at *2 (Bankr. D.N.D. Jul. 7, 1992) (finding modification of claim to reflect payments received from guarantor clarified rather than modified plan that was silent on the issue).

36.     Ensuring that the FTX Recovery Trust does not make distributions that are prohibited by law and open it and those working on its behalf to liability should not be controversial.  The proposed Restricted Jurisdiction Procedures seek to establish a process through which the FTX Recovery Trust can obtain any necessary guidance as to whether distributions into certain jurisdictions can and should proceed.  Thus, the proposed procedures do not contradict or seek to change any unambiguous terms of the Plan but rather further the general principles set forth in section 7 of the Plan ensuring that all Distributions are lawfully made.  These existing provisions include:

- Section 7.13 which authorizes the Plan Administrator and the DSPs to take "all actions reasonably necessary or appropriate to comply with . . . withholding and reporting requirements" to ensure the FTX Recovery Trust does not violate applicable tax laws and regulations.  (Plan § 7.13.)

- Section 7.14 which authorizes the Plan Administrator to request OFAC and sanctions information from claimholders prior to receiving a distribution in order to ensure the FTX Recovery Trust does not violate OFAC regulations or make a distribution in violation of sanctions laws.  (Plan § 7.14.)

- Section 7.4.2 which authorizes the Plan Administrator to withhold distributions when there is an ownership dispute regarding a claims transfer to ensure the Plan Administrator does not make a distribution to a claimholder that is not the legal owner of a Claim.  (Plan § 7.4.2.)

37.     Moreover, the Restricted Jurisdiction Procedures are authorized by paragraph 135 of the Confirmation Order,[7] sections 1142(b) and 105(a) of the Bankruptcy Code, and Bankruptcy Rule 3020(d).  *See, e.g.*, *In re Intermet Corp.*, 2009 WL 2868749, at *13 (Bankr. D. Del. Sept. 2, 2009) (because sections 105 and 1142(b) provide the court with "broad authority to order parties to comply with reorganization plans," the court directed parties to implement

---

[7]     "Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors and the Wind Down Entities hereby are authorized and empowered to take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan." (Confirmation Order ¶ 135.)

confirmed contingency plan provisions); *In re NorthWestern Corp.*, 372 B.R. 684, 687 (D. Del. 2007) (holding that the bankruptcy court's order curing an omission in the confirmed plan was consistent with its authority under section 105 and Bankruptcy Rule 3020(d)).

38.    The only case cited by Mr. Ji in support of his argument, *In re NorthEast Gas Generation, LLC*, 639 B.R. 914 (Bankr. D. Del. 2022), is inapposite.  *In re NorthEast* concerned a plan of reorganization that unambiguously contained provisions reinstating $200 million worth of debt to holders of certain first lien claims.  *Id.* at 923.  When the holders of those first lien claims sought to increase the amount of the reinstated debt to $475 million in the aggregate, the court concluded that "[t]he proposed modification is contrary to the express terms of the Plan."  *Id.* at 924.  By contrast, the Restricted Jurisdiction Procedures are not included in, nor precluded by, the express terms of the Plan, and are sought as a permissible clarification that will ensure the FTX Recovery Trust is able to comply with applicable law when making distributions pursuant the Plan.  Accordingly, this Objection should be overruled.

**B.  The Restricted Jurisdiction Procedures Are Clear and Unambiguous.**

39.    Mr. Ji next seeks "clarification" and substantive changes on a number of points in the Restricted Jurisdiction Procedures.  The proposed Restricted Jurisdiction Procedures are clear and do not need further clarification.  Accordingly, Mr. Ji's proposed changes to the Restricted Jurisdiction Procedures should be rejected.

40.    First, Mr. Ji notes that the Restricted Jurisdiction Procedures do not contain any deadlines for the FTX Recovery Trust to engage qualified attorneys to render Opinions.  (D.I. 31446 ¶ 22.)  No such date is necessary because pursuant to the Plan, the FTX Recovery Trust is permitted to continue to treat all Claims that have not been Allowed as Disputed Claims until the Claims Objection Deadline on January 3, 2026 or "such later date as may be established by order

of the Bankruptcy Court upon a motion by the Plan Administrator." (Plan § 2.1.32.) The FTX Recovery Trust intends to address the Potentially Restricted Foreign Jurisdictions consistent with this framework.

41.     Next, Mr. Ji contends that while the Motion includes a statement about providing an opportunity for claimants who reside in Potentially Restricted Foreign Jurisdictions "to provide an alternate method for receiving distributions," the procedures themselves do not mention any such alternate method. (D.I. 31446 ¶ 23.) The referenced "alternate method" simply means that claimants will have the opportunity to update any relevant resident information while completing their pre-distribution requirements prior to the relevant record date to demonstrate that the holder is no longer a resident in a Restricted Jurisdiction or to monetize their Claims by selling them. Nothing in the Restricted Jurisdiction Procedures prohibits or alters this "alternative method."

42.     Mr. Ji then argues that the forfeiture provisions in the proposed Restricted Jurisdiction Procedures "violates various Bankruptcy Code sections, including *without limitation* sections 507, 1123(a)(3), 1123(a)(4) and 1123(a)(5)." (emphasis added) (*Id.*). However, Mr. Ji does not explain how the forfeiture provisions of the Restricted Jurisdiction Procedures violate section 507 of the Bankruptcy Code (which deals with priority of claims), section 1123(a)(3) of the Bankruptcy Code (which requires a plan to specify which class of claims are impaired), section 1123(a)(5) of the Bankruptcy Code (which deals with plan implementation and feasibility), or any other provision of the Bankruptcy Code.[8] They do not and citations to inapplicable Bankruptcy Code provisions do not constitute an objection.

---

[8]     To the extent Mr. Ji means to repeat his arguments concerning section 1123(a)(3) of the Bankruptcy Code, such arguments are addressed *supra* in Section 1.B of this Reply.

43.     Mr. Ji next argues that the standard to obtain an Acceptable Opinion is "astoundingly high" because receiving an opinion that is unqualified only with respect to certain methods of distribution (*e.g.*, U.S. dollars but not digital assets) may not be acceptable to the FTX Recovery Trust. (*Id.* at ¶ 26.) Mr. Ji then argues that the FTX Recovery Trust "enjoy[s] unilateral power to select foreign legal counsel of its choice" to procure an Opinion and that an "opportunity to object and propose alternative counsel to deliver an opinion" is warranted. (*Id.* at ¶ 29.) To the extent that the FTX Recovery Trust is unable to obtain an Acceptable Opinion, all affected creditors will have the opportunity to procure an opinion of their choosing to challenge any opinion that the FTX Recovery Trust includes with a Restricted Jurisdiction Notice, and no jurisdiction will be so designated or distributions forfeited absent order of the Court.

44.     Finally, Mr. Ji argues that the Restricted Jurisdiction Procedures should instead place all foreign claimants' distributions into a reserve if the holder of a Claim is determined to be a resident of a Restricted Foreign Jurisdiction. (*Id.* at ¶ 27.) This makes no sense. Reserves—like the disputed claims reserve in these Chapter 11 Cases—are designed to set aside funds until a particular dispute is resolved. Here, if a jurisdiction is designated as a Restricted Foreign Jurisdiction by subsequent order of the Court, there is no longer a dispute regarding the FTX Recovery Trust's ability to make accrued distributions into that jurisdiction. Leaving cash in a reserve and holding open these Chapter 11 Cases in perpetuity in the hopes that a jurisdiction may one day change its laws in the future is impractical and would harm all stakeholders.

## IV.     Other Objections Fail

45.     All of the other arguments in the remaining Objections fail and should be overruled for the following additional reasons:

- Nearly all of the Objections argue that in the chapter 15 case of *MtGox Co., Ltd.*, Case No. 14-31229 (SGJ) (Bankr. N.D. Tex.) ("Mt. Gox") and the

chapter 11 cases of *Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.) ("Celsius"), distributions were made to Chinese creditors. (*See, e.g.,* D.I. 31311.) These cases are irrelevant. The FTX Recovery Trust is not privy to any analyses done by the administrators or professionals in those cases regarding the legality of distributions into foreign jurisdictions, and does not wish to opine on matters of foreign law without receiving formal Opinions and granting affected creditors the chance to contest the legal conclusions drawn in such Opinions, as set forth in the Restricted Jurisdiction Procedures. In addition, the business and operating models of those exchanges were considerably less complex than the FTX Group's, which operated in several sophisticated digital asset markets, including prediction markets, tokenized stocks and swap and hedging markets. Whether distributions may be made on account of such activities may not have been considered in the Mt. Gox and Celsius cases. Moreover, the legal landscape of digital asset regulation is ever changing.

- A large portion of Objections argue that the FTX Recovery Trust violates the Fifth Amendment of the United States Constitution by seeking to withhold distributions to creditors who reside in foreign jurisdictions. However, the Objections do not establish any rights under the U.S. Constitution or cite any authority that a bankruptcy court's entry of an order establishes a governmental action. A governmental action is required to state a constitutional claim and a "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the [government] responsible for those initiatives." *Blum* v. *Yaretsky*, 102 S.Ct. 2777, 2786 (1982); *see also In re Dow Corning Corp.,* 255 B.R. 445, 523–24 (E.D. Mich. 2000), *aff'd and remanded,* 280 F.3d 648 (6th Cir. 2002) (discussing and rejecting constitutional challenges to a plan of reorganization). In addition, many of these objectors cite Article 17 of the Universal Declaration of Human Rights. (*See, e.g.,* D.I. 31314.) But these Articles are irrelevant and do not create a right of action against the FTX Recovery Trust (or any party).

- Certain Objections gesture vaguely at the policies of "international bankruptcy cooperation" and argue that the Motion would have a "chilling effect on international commerce." (*See, e.g.,* D.I. 31350.) This is more baseless and unsubstantiated speculation. Of course, the Motion is procedural and does not seek to substantively affect creditors' rights. Beyond that, any such policy concerns are outweighed by the countervailing policy that distributions made are done lawfully.

- Other Objections allege that the FTX Recovery Trust must bear its "compliance burdens" without shifting costs to "innocent creditors." (*See, e.g.,* D.I. 31354.) The FTX Recovery Trust is bearing the costs of compliance with applicable foreign law by implementing the Restricted Jurisdiction Procedures. The procedures require the FTX Recovery Trust

-22-

to engage qualified attorneys in any Potentially Restricted Foreign Jurisdictions and conduct a public process before the Court.  The cost of non-compliance and potential violations of applicable law would be unfairly borne by all innocent stakeholders.

- Numerous Objections seek information regarding the process by which the list of Potentially Restricted Foreign Jurisdictions was compiled.  (*See, e.g.,* D.I. 31446 at ¶ 24.)  Such Objections are irrelevant because the Motion is not seeking to actually designate any jurisdiction as a Restricted Foreign Jurisdiction at this time, and the list of Potentially Restricted Foreign Jurisdiction is subject to change, including if the FTX Recovery Trust is able to resolve its concerns in that jurisdiction.  (*See* Mot. ¶¶ 2, 4.)

- Certain Objections contend that BitGo Inc. ("BitGo"), a DSP to the FTX Recovery Trust, allegedly indicated that distributions would be made to Chinese residents.  (*See, e.g.,* D.I. 31358.)  That communication was sent in error in response to a specific inquiry and was not intended to serve as general guidance to all creditors.  The FTX Recovery Trust ultimately needs to be certain that distributions being made pursuant to the confirmed Plan proceed lawfully.

- Some Objections argue that the Motion was proposed in bad faith in violation of section 1129(a)(3) of the Bankruptcy Code.  (*See, e.g.,* D.I. 31479).  Section 1129(a)(3) of the Bankruptcy Code, like sections 1129 and 1123, only applies to Plan confirmation.  *Supra* ¶ 11.  Moreover, these Objections do not provide any evidence of bad faith, nor can they.  The Restricted Jurisdiction Procedures "fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code," *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000), and "ha[ve] been proposed with honesty and good intentions. . . ." *In re W.R. Grace & Co.*, 475 B.R. 34 at 87-88 (internal quotations and citations omitted).

- One Objection notes that the Motion "disproportionately impacts the vast majority of FTX's global customer base, raising serious concerns about equitable treatment." (*See* D.I. 31359.)  In fact, the Motion only affects claimants representing up to approximately 5% of the projected total value of potentially Allowed Claims. (Mot. ¶ 2.)

## CONCLUSION

For the reasons stated above, the Court should overrule the Objections, grant the

Motion and enter the Order as proposed.

Dated: July 20, 2025              **LANDIS RATH & COBB LLP**
       Wilmington, Delaware

                                            */s/ Matthew R. Pierce*
                                            Adam G. Landis (No. 3407)
                                            Kimberly A. Brown (No. 5138)
                                            Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
            brown@lrclaw.com
            pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail: dietdericha@sullcrom.com
            bromleyj@sullcrom.com
            gluecksteinb@sullcrom.com
            kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*