# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Hearing Date: September 11, 2025 at 1:00 p.m. (ET)**<br>**Objection Deadline: September 4, 2025 at 4:00 p.m. (ET)** |

## FTX RECOVERY TRUST'S ONE HUNDRED NINETY-THIRD (SUBSTANTIVE) OMNIBUS OBJECTION TO CERTAIN NO LIABILITY PROOFS OF CLAIM (NON-CUSTOMER CLAIMS)

> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN CLAIMS. THE CLAIMANTS RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND LOCATE THEIR NAMES AND CLAIMS ON SCHEDULE 1 OF EXHIBIT A ATTACHED TO THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE FOLLOWING THE INSTRUCTIONS SET FORTH HEREIN.**

The FTX Recovery Trust[2] hereby submits this one hundred ninety-third omnibus claim objection (the "Objection") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), disallowing and expunging in their entirety proofs of claim numbers 95770, 95771, 95772, and 95553 (together,

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]  The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) (the "Trust") was established on January 3, 2025, the effective date of the Debtors' (as defined below) confirmed Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates. [D.I. 26404-1.]

the "Proofs of Claim" or "Claims"), as set forth in Schedule 1 attached to the Order.  In support of

this Objection, the Trust submits the *Declaration of Jeffrey Sielinski in Support of FTX Recovery*

*Trust's One Hundred Ninety-Third (Substantive) Omnibus Objection to Certain No Liability*

*Claims (Non-Customer Claims)* (the "Sielinski Declaration"), attached hereto as **Exhibit B**.  In

further support of this Objection, the Trust respectfully states as follows:

## Background

1.    On November 11 and November 14, 2022, FTX Trading Ltd. and its

affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed with the United

States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief

under the Bankruptcy Code (the "Chapter 11 Cases").  On December 15, 2022, the Office of the

United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official

Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.    Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental*

*Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3.    On October 7, 2024, the Court confirmed the *Second Amended Joint*

*Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1]

(the "Plan") and, on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order*

*Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd.*

*and Its Debtor Affiliates* [D.I. 26404].

4.      On January 3, 2025 (the "Effective Date"), the Trust was established and, pursuant to the Plan, all of the Debtors' assets were transferred and assigned to, and vested in, the Trust.  *See Notice of Effective Date of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

5.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519], which established, among other things, the deadline of June 30, 2023 to file 503(b)(9) Non-Customer Claims against the Debtors (as defined in section 101(5) of the Bankruptcy Code).

### Facts Specific to the Relief Requested

6.      The Claims at issue in this Objection were submitted by four claimants: (1) Rikesh Rajput; (2) Bhavika Chunawala; (3) Rupesh Rajput; and (4) Palak Rahevar (the "Claimants").[3]

### I.      Rikesh Rajput (Claim No. 95553)

7.      Rikesh Rajput submitted Claim No. 95553 on June 26, 2024 (the "Rikesh Rajput Claim," Sielinski Decl. Ex. 1).  The Rikesh Rajput Claim seeks $2,750,161.70 based on two purported loan agreements between Rikesh Rajput and Alameda Research Ltd. ("Alameda") for loans of $2,000,000 USD and 550,000 USDC respectively.  (Sielinski Decl. ¶ 12.)  The Proof of Claim also includes the following attachments:  (i) the two purported loan agreements, dated February 1, 2022 and February 22, 2022, respectively, (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total amount claimed, and (iii) a purported email chain

---

[3]     Any reference herein to Rikesh Rajput, Bhavika Chunawala, Rupesh Rajput, and Palak Rahevar as Claimants is for ease of reference only, and shall not be construed as an admission regarding the identity or identities of the individual or individuals who submitted the Proofs of Claim.  The Trust reserves the right to challenge the purported identities of the individuals who submitted the Claims.

between "info@alameda-research.com" and "rikeshja@gmail.com" that appears to confirm the loan amounts and accrued interest on a monthly basis.  (Sielinski Decl. ¶ 12.)

8.      According to the Rikesh Rajput Claim, Rikesh Rajput resides in Vadodara, India.  (Sielinski Decl. ¶ 13.)   Rikesh Rajput has not initiated Know Your Customer ("KYC") documentation to collect on this Claim.  (Sielinski Decl. ¶ 14.)

9.      Rikesh Rajput also held a customer account on the FTX Exchange, which he opened on January 29, 2021.  Rikesh Rajput's (pre-petition) KYC records from this account indicate that he resides in Gujarat, India.[4]  (Sielinski Decl. ¶ 15.)

## II.      Bhavika Chunawala (Claim No. 95770)

10.     Bhavika Chunawala submitted Claim No. 95770 on July 8, 2024 (the "Chunawala Claim," Sielinski Decl. Ex. 2).  The Chunawala Claim seeks $7,004,069.95 based on two purported loan agreements between Chunawala and Alameda for 6,000,000 USDC and 6,500,000 USDC, respectively.  (Sielinski Decl. ¶ 16.)  The Proof of Claim also includes the following attachments:   (i) the two purported loan agreements, dated May 19, 2021 and February 1, 2022, respectively, (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total amount claimed, and (iii) a purported email chain between "info@alameda-research.com,"           "operations@alameda-research.com,"           and "bhavikacr@gmail.com" that appears to confirm the loan amounts and accrued interest on a monthly basis.  (Sielinski Decl. ¶ 16.)

11.     According to the Chunawala Claim, Chunawala resides in Gujarat, India.  (Sielinski Decl. ¶ 17.)  Chunawala has not initiated KYC to collect on this Claim.  (Sielinski Decl. ¶ 18.)

---

[4]    Vadodara, the city of residence listed on the Rikesh Rajput Claim, is a city within the state of Gujarat.

12.     Chunawala does not appear anywhere in the Debtors' books and records, nor does Chunawala appear to have ever opened a customer account on the FTX Exchange. (Sielinski Decl. ¶ 19.)

### III.     Rupesh Rajput (Claim No. 95771)

13.     Rupesh Rajput submitted Claim No. 95771 on July 8, 2024 (the "Rupesh Rajput Claim," Sielinski Decl. Ex. 3).  The Rupesh Rajput Claim seeks $2,586,026.59 based on a purported loan agreement between Rupesh Rajput and Alameda for 2,500,000 USDC.  (Sielinski Decl. ¶ 20.)  The Proof of Claim also includes the following attachments:  (i) the purported loan agreement, dated July 1, 2022, (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total amount claimed, and (iii) a purported email chain between "operations@alameda-research.com" and "rupesh190190@outlook.com" that appears to confirm the loan amounts and accrued interest on a monthly basis.  (Sielinski Decl. ¶ 20.)

14.     According to the Rupesh Rajput Claim, Rupesh Rajput resides in London, England.  (Sielinski Decl. ¶ 21.)  Rupesh Rajput has not completed KYC to collect on this Claim. (Sielinski Decl. ¶ 22.)

15.     Rupesh Rajput also held a customer account on the FTX Exchange, which was opened on Janurary 29, 2021.  (Sielinski Decl. ¶ 23.)  Rupesh Rajput's (pre-petition) KYC records from this account indicate that he resides in Gujarat, India.  (Sielinski Decl. ¶ 23.)

### IV.     Palak Rahevar (Claim No. 95772)

16.     Palak Rahevar submitted Claim No. 95772 on July 8, 2024 (the "Rahevar Claim," Sielinski Decl. Ex. 4).  The Rahevar Claim seeks $2,672,418.70 based on a purported loan agreement between Rahevar and Alameda for $2,500,000.  (Sielinski Decl. ¶ 24.)  The Proof of Claim also includes the following attachments:  (i) the purported loan agreement, dated March 1, 2022, (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total

amount claimed, and (iii) a purported email chain between "info@alameda-research.com" and "palakjayeshbairahevar@gmail.com" that appears to confirm the loan amounts and accrued interest on a monthly basis.  (Sielinski Decl. ¶ 24.)

17.    According to her Proof of Claim, Rahevar resides in London, United Kingdom.  (Sielinski Decl. ¶ 25.)  Rahevar has not completed KYC to collect on this Claim.  (Sielinski Decl. ¶ 26.)

18.    Rahevar does not appear anywhere in the Debtors' books and records, nor does Rahevar appear to have ever opened a customer account on the FTX Exchange.  (Sielinski Decl. ¶ 27.)

*      *      *

19.    The Trust and its advisors have reviewed the Debtor's books and records and have not found any evidence that the loans detailed in the Claims were ever made.  (Sielinski Decl. ¶¶ 8-9.)  As explained in further detail below, the purported loan agreements and email chains attached to the Claims all appear to have been fraudulently doctored—modeled after legitimate loan agreements and email threads between the Debtors and other lenders.[5]  The Trust has therefore determined that the Claims are fraudulent, and that the Trust has no liability with respect to them.

20.    Accordingly, the Trust submits that these Claims, collectively seeking $15,012,676.94, should be disallowed and expunged in their entirety.

---

[5]    18 U.S.C. § 152(4) provides that "knowingly and fraudulently present[ing] any false claim for proof against the estate of a debtor" is a crime punishable by up to five years' imprisonment.

**Jurisdiction and Venue**

21.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.   This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and

1409.   The statutory predicates for the relief requested herein are sections 105(a) and 502(b) of the

Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.   Pursuant to Local Rule 9013-

1(f), the Trust consents to the entry of a final order or judgment by the Court in connection with

this Objection to the extent it is later determined that the Court, absent the consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Objection to Proofs of Claim Nos. 95770, 95771, 95772, and 95553**

22.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a]

claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed

allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).   Once an objection to a claim

is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim.

11 U.S.C. § 502(b).   Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be

allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under

any agreement or applicable law."

23.     While a properly filed proof of claim is *prima facie* evidence of the claim's

allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity,

the claimant bears the burden of proving the claim's validity by a preponderance of evidence.   *In*

*re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992).   "The burden of persuasion is always on

the claimant," and the failure to allege facts and to provide adequate support for a claim eliminates

the claim's *prima facie* validity.   *Id.* at 173-74.

**I.      The Trust Has No Evidence That The Purported Loans Ever Existed.**

24.      As set forth in the Sielinski Declaration, the Trust and its advisors have reviewed the Claims and the Debtors' books and records, but have not been able to independently verify the existence of the loans purportedly giving rise to the Claims.  The Trust and its advisors have not been able to locate the purported loan agreements or confirm that any of the underlying loan amounts were ever transferred to any of the Debtors.  (Sielinski Decl. ¶¶ 8-9.)  Nor has the Trust been able to locate the email chains attached to the Proofs of Claim in the Debtors' records or identify any other evidence that the purported loans ever existed.  (Sielinski Decl. ¶ 9.)

25.      Although the Proofs of Claim attach purported loan agreements and email chains that purport to confirm the loan amounts, the documentation appears to be fraudulent for the reasons discussed *infra*.  The documentation thus fails to provide any support for the purported liabilities asserted in the underlying Claims.

26.      The Trust has therefore concluded that the Proofs of Claim are inconsistent with the Debtors' books and records and contain insufficient supporting documentation to verify the existence and veracity of the Claims.  (Sielinski Decl. ¶ 11.)

**II.      All Documentation Submitted in Support of the Claims Appears to Be Fraudulent.**

27.      As explained further below, the purported loan agreements, email exchanges, and other exhibits attached to the Proofs of Claim appear to be fake or fraudulently altered.  (*See* Sielinski Decl. ¶¶ 10-11.)  Moreover, the Proofs of Claim forms themselves have indicators of fraud.  (Sielinski Decl. ¶¶ 72-73.)  Significantly, all four Claims contain the same or extremely similar indicators of fraud, suggesting that they were submitted by the same person or group of co-conspirators.  (*See, e.g.*, Sielinski Decl. ¶¶ 35, 41, 43, 64, 67, 72-79)

### A. The Purported Loan Agreements Submitted with the Proofs of Claim Appear to Be Fraudulent.

28.     Each of the Proofs of Claim attaches one or more loan agreements that appear to be modeled after the standard loan agreement used by Alameda in its dealings with real lenders.  However, the loan agreements attached to the Proofs of Claim appear to have been fraudulently doctored by the Claimants.  (Sielinski Decl. ¶ 11.)

29.     *First*, the identification numbers stamped on the loan agreements attached to the Proofs of Claim suggest that the loan agreements are fraudulent.

30.     Alameda typically executed its loan agreements via DocuSign, an electronic signature and document management platform that allows users to send, sign, and manage agreements online.  (Sielinski Decl. ¶ 33.)  Consistent with its standard practice, DocuSign assigned a unique string of letters and numbers to each of Alameda's loan agreements (a "DocuSign Envelope ID").  Each DocuSign Envelope ID is unique to a specific document and serves as a digital fingerprint that can be used to identify and track the specific document.  (Sielinski Decl. ¶ 33.)  A DocuSign Envelope ID is typically stamped at the top left corner of a document executed via DocuSign.  (Sielinski Decl. ¶ 33.)

31.     Each of the purported loan agreements attached to the Rikesh Rajput Claim, the Rupesh Rajput Claim, and the Rahevar Claim contains a stamp in the top left corner of every page with a purported DocuSign Envelope ID.  (Sielinski Decl. ¶ 34.)  These purported DocuSign Envelope IDs do not appear in the Debtors' records.  (Sielinski Decl. ¶ 34.)

32.      The Trust's advisors have inspected the PDFs of the purported loan agreements.  Their inspection revealed that, in each of the agreements, a DocuSign Envelope ID appears to be layered on top of a second, hidden DocuSign Envelope ID within the same text box.  When the Trust's advisors moved the visible text boxes containing the displayed DocuSign

Envelope IDs using Adobe Acrobat's "Edit PDF" mode, the text became visually jumbled, revealing additional hidden characters or embedded font data within the same field. (Sielinski Decl. ¶ 35.) The Trust's advisors therefore determined that Rikesh Rajput, Rupesh Rajput, and Rahevar likely fabricated their purported loan agreements by copying PDFs of other creditors' loan agreements and inserting in new text boxes containing fraudulent DocuSign Envelope IDs. (Sielinski Decl. ¶ 32.)

33.     Unlike the agreements attached to the Rikesh Rajput Claim, the Rupesh Rajput Claim, and the Rahevar Claim, the two purported loan agreements attached to the Chunawala Claim do not appear to have DocuSign Envelope IDs stamped on each page. However, there are DocuSign Envelope IDs hidden on the top left corners of both agreements under white text boxes. When the Trust's advisors moved the white boxes on the top left corners of both agreements using Adobe Acrobat's "Edit PDF" mode, DocuSign Envelope IDs were revealed. (Sielinski Decl. ¶ 38.) Put differently, Chunawala attempted to electronically "white out" a DocuSign Envelope ID from another loan agreement and pass that agreement off as his own.

34.     Although DocuSign Envelope IDs are meant to be unique identifiers, both loan agreements attached to the Chunawala Claim—which were purportedly executed at different times—contain the same hidden DocuSign Envelope ID, suggesting that these loan agreements were fraudulently doctored using the same template document. (Sielinski Decl. ¶ 39.)

35.     Moreover, the hidden DocuSign Envelope ID in the loan agreements attached to the Chunawala Claim contains the same characters as the jumbled text in the loan agreement attached to the Rahevar Claim (once the letters and numbers contained in the visible DocuSign Envelope ID are deleted), further suggesting that the loan agreements were fraudulent,

modeled after one another, and likely submitted by the same person or persons in collaboration with one another.  (Sielinski Decl. ¶ 41.)

36.     *Second*, a typographical error in the loan agreement attached to the Chunawala Claim was corrected in a subsequent email to Debtors attaching the same purported agreement, further evidencing that the loan agreement is fraudulent.

37.     Schedule 1 of the May 19, 2021 loan agreement attached to the Chunawala Claim indicates a principal amount of "6,000,00" USDC as collateral.  (Sielinski Decl. ¶ 82.)  In December 2024, Debtors received an email from "bhavikacr@gmail.com" (the "December 2024 Email") attaching the same May 19, 2021 loan agreement, among other documents.  (Sielinski Decl. ¶ 80.)  However, Schedule 1 to the May 19, 2021 loan agreement attached to the December 2024 Email indicates a principal amount of "6,000,00<u>0</u>" USDC, rather than "6,000,00" USDC as collateral.  (Sielinski Decl. ¶ 82.)

38.     *Third*, Schedule 1 to the May 19, 2021 loan agreement attached to the Chunawala Claim indicates that the principal amount of the loan is comprised of 96.3596376 Bitcoin and 3,000,000 USDC.  (Sielinski Decl. ¶ 44.)  However, the purported loan agreement itself indicates that the principal amount of the loan is comprised of 6,000,000 USDC (no Bitcoin). (Sielinski Decl. ¶ 44.)  All other documentation submitted by Chunawala with respect to this purported loan, including the Proof of Claim form, states that the principal amount of the loan is comprised of 6,000,000 USDC.  (Sielinski Decl. ¶ 44.)  This inconsistency further evidences that the purported loan agreement is fraudulent.[6]

---

[6]     Schedule 1 to the May 2021 loan agreement attached to the Chunawala Claim also indicates that "6,000,00" (presumably 6,000,000) USDC was provided from Alameda to Chunawala as collateral in connection with the loan.  (Sielinski Decl. ¶ 45.)  However, there is no logical reason why a loan with a purported principal balance of 6,000,000 USDC would have a required collateral balance in the exact same amount or in the same currency as the loan principal.  (Sielinski Decl. ¶ 45.)  Nor does any other documentation submitted by Chunawala with respect to this purported loan make any mention of collateral.  (Sielinski Decl. ¶ 45.)

**B. The Purported Loan Confirmation Emails Submitted with the Claims Appear to Be Fraudulent.**

39.    In addition to the doctored loan agreements, each of the Proofs of Claim also attaches a purported loan confirmation email (in PDF format) between Alice Zhou, former Vice President of Operations at Alameda, and each of the Claimants.  (Sielinski Decl. ¶ 46.)

40.    These email chains contain language stating the purported loan amounts and interest accrued on a monthly basis, with information corresponding to the doctored loan agreements.  (Sielinski Decl. ¶ 46.)  Like the loan agreements, the email chains attached to the Proofs of Claim appear to be doctored versions of email chains between Alameda and legitimate lenders.

41.    *First*, the "mail to:" hyperlinks embedded in the documents redirect to email addresses that differ from those displayed in the purported email chains.  When the Trust's advisors clicked on certain displayed email addresses, the resulting autogenerated emails were addressed to entirely different recipients than those reflected in the alleged confirmation emails.  (Sielinski Decl. ¶ 55.)  This suggests that the Claimants fraudulently doctored legitimate email chains between Alameda and its lenders by replacing the email addresses of participants on those chains with the email addresses belonging to the Claimants (and other information that would be consistent with the Claimants' fraudulent loan information).

42.    For example, the top email on the chain attached to the Chunawala Claim displays "bhavikacr@gmail.com" as the recipient of the email, which matches the email address listed for Chunawala on his Proof of Claim.  (Sielinski Decl. ¶ 56.)  However, Chunawala's email address includes a clickable "mail to:" hyperlink that autogenerates an email to "cheryl.cyl0329@gmail.com," not "bhavikacr@gmail.com."  (Sielinski Decl. ¶ 56.)

43.     The autogenerated email address, "cheryl.cyl0329@gmail.com," belongs to Cheryl Chen, wife of Zixiao "Gary" Wang.  (Sielinski Decl. ¶ 48.)  Chen filed three non-customer loan claims on the public Kroll claims register.  (Sielinski Decl. Exs. 5, 6, 7.)  In support of those claims, Chen attached an email chain to each proof of claim confirming the loan amounts and interest accrued.   (Sielinski Decl. ¶ 48.)   Chen's proofs of claim and their supporting documentation, including the email chains, are publicly available on the Kroll claims register.  (Sielinski Decl. ¶ 48.)  The email chains attached to Chen's proofs of claim are nearly identical to the email chains attached to the Claims filed by Claimants.  (Sielinski Decl. ¶ 52.)

44.     The clickable "mail to:" hyperlinks in the email chain attached to the Chunawala Claim likely autogenerates emails to "cheryl.cyl0329@gmail.com" because Chunawala copied and edited an email chain involving Cheryl Chen to forge his own fraudulent confirmation email.[7]

45.     The top emails on the chains attached to the Rikesh Rajput Claim and the Rahevar Claim display "info@alameda-research.com" as the sender of the emails.  (Sielinski Decl. ¶¶ 59, 63.)  However, in each Claim, this email address includes a clickable "mail to:" hyperlink that autogenerates an email to "cryptoaiindia@gmail.com," not "info@alameda-research.com." (Sielinski Decl. ¶¶ 59-60, 63, 65.)

46.     Subsequent emails on the chains attached to the Rikesh Rajput Claim and the Rahevar Claim also display "info@alameda-research.com" as the sender of the emails.  (Sielinski Decl. ¶ 61.)  However, these subsequent references to "info@alameda-research.com" include  clickable  "mail  to:"  hyperlinks  that  autogenerate  emails  to  "operations@alameda-

---

[7]   In fact, the precise language used in the email chains attached to the Claimants' Proofs of Claim only appears in three email chains located in the Debtors' database, one of which was between Zhou and Chen.  (Sielinski Decl. ¶ 48.)

research.com," which is the email address that Zhou typically used for these types of loan confirmation emails, instead of "info@alameda-research.com," which is the email address that is displayed as the sender.  (Sielinski Decl. ¶¶ 61-63, 65.)

47.    The top email on the chain attached to the Rupesh Rajput Claim displays "rupesh190190@outlook.com" as the recipient of the email and "operations@alameda-research.com" as the sender.  (Sielinski Decl. ¶ 66.)  However, both email addresses include clickable "mail to:" hyperlinks that autogenerate emails to different email addresses.  (Sielinski Decl. ¶ 66.)  The "rupesh190190@outlook.com" email address autogenerates an email to "rikeshja@outlook.com," which is an email address likely associated with Rikesh Rajput, not "rupesh190190@outlook.com," which is the email address listed for Rupesh Rajput on his Proof of Claim form.  (Sielinski Decl. ¶¶ 66, 68.)  The "operations@alameda-research.com" email address autogenerates an email to "rikeshja@protonmail.com," which is another email address likely associated with Rikesh Rajput.  (Sielinski Decl. ¶¶ 66, 68.)

48.    Similarly, the email chain attached to the Rahevar Claim displays "palakjayeshbairahevar@gmail.com" as the recipient of the email, which matches the email address listed for Rahevar on her Proof of Claim form.  (Sielinski Decl. ¶ 64.)  However, Rahevar's email address includes a clickable "mail to:" hyperlink that autogenerates an email to "rikeshja@outlook.com," not "palakjayeshbairahevar@gmail.com."  (Sielinski Decl. ¶¶ 64-65.)  This further suggests that the Claimants colluded by using each other's fraudulently doctored email chains as templates for their own (e.g., by replacing Rikesh Rajput's email address with Rupesh Rajput's and Rahevar's email addresses).

49.     *Second*, the email chains attached to the Rahevar Claim and the Rikesh Rajput Claim both refer to "new loans" without explanation, and in circumstances that do not make any sense.  (Sielinski Decl. ¶¶ 53-54.)

50.     For example, the email chain attached to the Rahevar Claim includes monthly emails purportedly sent by Zhou between April 2022 and November 2022.  Insofar as the email chain refers to a March 2022 loan, it is consistent with the purported loan agreement attached to the Rahevar Claim, which is dated March 1, 2022.  (Sielinski Decl. ¶ 53.)  However, without explanation, the email purportedly sent by Zhou on September 2, 2022 instead refers to a February 2022 loan.  (Sielinski Decl. ¶ 53.)  Then, in the final email on the chain, dated November 3, 2022, Zhou again refers to the February 2022 loan, but this time refers to it as a "new loan."  (Sielinski Decl. ¶ 53.)

51.     The Rahevar Claim only attaches a March 2022 loan agreement—not a February 2022 loan agreement.  (Sielinski Decl. ¶ 53.)  But even if a February 2022 loan agreement existed (which is not reflected anywhere in the Debtors' records), Zhou would not have begun providing updates with respect to that agreement, which would have predated the March 2022 loan, in September 2022.  This loan would also not have been deemed "new" in November 2022.  The likely explanation for this discrepancy is that the February 2022 date and "new loan" language were inadvertently taken from an email thread with a legitimate lender—possibly the aforementioned chain with Chen, which refers to a "new loan" agreement.  (*See* Sielinski Decl. Ex. 6 at 29.)

52.     The email chain attached to the Rikesh Rajput Claim includes monthly emails purportedly sent by Zhou between March 2022 and November 2022.  (*See* Sielinski Decl. ¶ 54.)  From March 2022 to October 2022, the monthly emails from Zhou refer to these loans as

being entered in February 2022.  (Sielinski Decl. ¶ 54.)  However, the final email on the chain, dated November 3, 2022, refers to each of the February 2022 loans as a "new loan."  (Sielinski Decl. ¶ 54.)  There is no explanation provided for why Zhou suddenly begins referring to these two loans as "new loan[s]" after 7 months of referring to them as the February 2022 loans.

53.     Again, the likely explanation for this discrepancy is that the "new loan" language was mistakenly taken from an email thread with a legitimate lender—possibly the aforementioned chain with Chen, which refers to a "new loan" agreement.  (*See* Sielinski Decl. Ex. 6 at 29.)

54.     *Third*, the emails attached to the Proofs of Claim also contain certain grammatical and formatting issues that are inconsistent with the legitimate loan confirmation emails sent by Zhou, and further indicate that the emails were fraudulently doctored.  (Sielinski Decl. ¶ 69.)  For example, the email chain attached to the Chunawala Claim spells the word "organized" with a "Z," whereas in the emails sent by Zhou to legitimate lenders, the word "organised" is consistently spelled with an "S."  (Sielinski Decl. ¶ 70.)  Exhibit B to the Rupesh Rajput Claim also incorrectly spells the word "interest" as "intrest."  (Sielinski Decl. ¶ 71.)

### C. The Proof of Claim Forms Appear to Be Fraudulent.

55.     There are also certain indicators of fraud in the Proof of Claim forms themselves that further suggest, despite the purported separate identities of the Claimants, that either the same person signed and submitted all four Proofs of Claim or that the Claimants conspired when preparing and submitting the Proofs of Claim.

56.     For instance, each of the Proofs of Claim includes a signature purportedly affixed by each of the respective Claimants.  However, the signatures on the four Proofs of Claim appear suspiciously similar, suggesting that the Proofs of Claim were actually signed by the same individual.  (Sielinski Decl. ¶ 72.)  In addition to the similarities in handwriting, each of the four

signatures are similarly slanted, underlined, and none contain the Claimant's full name.  (Sielinski Decl. ¶ 73.)

57.     Three of the four signatures—contained in the Chunawala Claim, the Rupesh Rajput Claim, and the Rahevar Claim—include only the Claimant's first name.  (Sielinski Decl. ¶ 73.)  These three Proofs of Claim were also submitted on the same date, July 8, 2024, and numbered consecutively (Claim Nos. 95770, 95771, and 95772), meaning that no other proofs of claim were submitted between them.

**D.  Exhibit B to the Proofs of Claim Appear to Be Fraudulent.**

58.     Each of the Proofs of Claim also contains an attachment that is referred to as "Exhibit B."  (Sielinski Decl. ¶ 74.)  Exhibit B to each Proof of Claim lists the amounts of the purported loan(s), accrued interest, and total amount claimed.  (Sielinski Decl. Ex. 1 at 28; Ex. 2 at 30; Ex. 3 at 19; Ex. 4 at 19.)

59.     Exhibit B to the Chunawala Claim and the Rikesh Rajput Claim are nearly identical.  (Sielinski Decl. ¶ 75.)  Both contain tables with rows detailing the monthly interest payments accumulated by Alameda.  (Sielinski Decl. ¶ 75.)  The rows in both tables are drafted using identical language, with the month, year, and interest payment listed in the first column and the dollar value listed in the second column.  (Sielinski Decl. ¶ 75.)  Both tables contain the same exact font type, font case, and font color (a mix of red and black font).  (Sielinski Decl. ¶ 76.)

60.     In Exhibit B to both Claims, the loan amounts, outstanding principal amounts, and schedules of compound interest are in red font and in all capital letters, with all other text in black font and sentence case.  (Sielinski Decl. ¶ 76.)  With the exception of the number of entries, dates of the interest payments, and actual values reflected in the columns, Exhibits B to both the Chunawala Claim and the Rikesh Rajput Claim are identical, further suggesting collaboration between those two Claimants.

61.     Exhibit B to the Rupesh Rajput Claim and the Rahevar Claim are also nearly identical to one other.  (Sielinski Decl. ¶ 77.)  Both contain identical tables with the same headings, columns, rows, and categories of information.  (Sielinski Decl. ¶ 77.)  Both tables contain the exact same font type, font case, and font color, with the outstanding dollar value written in red font and highlighted in yellow.  (Sielinski Decl. ¶ 77.)  Exhibits B to both Proofs of Claim are also formatted identically, with the lender name, loan amount, and loan effective date displayed in the exact same location, in the same font, and with the same underlining.  (Sielinski Decl. ¶ 77.)

62.     In all four Proofs of Claim, the bottom of each Exhibit B includes identical language in the same shade of red font:  "Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience.  I am available to provide any necessary assistance regarding the bankruptcy proceedings."  (Sielinski Decl. ¶ 78.)  This further suggests that the preparation and submission of the four Proofs of Claim was a concerted effort.

### E. The Additional Documents Submitted by Chunawala Appear to Be Fraudulent.

63.     In December 2024, Debtors received an email from bhavikacr@gmail.com, the email address listed on Chunawala's Proof of Claim form, attaching (1) the two purported loan agreements attached to the Chunawala Claim, (2) the email chain attached to the Chunawala Claim confirming the loan amounts, (3) Exhibit B to the Chunawala Claim, (4) a purported email chain dated November 23–27, 2022 in which Chunawala complains to Alameda, without response, that he is concerned about his investment, and (5) an email dated May 6, 2021, which purports to confirm a withdrawal by Chunawala from Binance for 5,585,190 BUSD.[8]  (Sielinski Decl. ¶ 80.)

---

[8] "BUSD" refers to Binance USD, which is a stablecoin pegged to the U.S. Dollar.  (Sielinski Decl. ¶ 84.)

64.     As discussed *supra*, the loan agreements, confirmation email, and Exhibit B attached to the December 2024 Email are identical in all material respects to the documents attached to the Chunawala Claim.  However, in at least one instance, a typographical error in the documentation attached to the Chunawala Claim was corrected in the version attached to the December 2024 Email.  (Sielinski Decl. ¶ 81.)

65.     The Trust and its advisors have not been able to confirm the existence of the November 2022 email chain, which was not attached to the Chunawala Proof of Claim, in its records.  (Sielinski Decl. ¶ 83.)  In fact, the Trust and its advisors have not been able to locate any correspondence with "bhavikacr@gmail.com" whatsoever.  (Sielinski Decl. ¶ 83.)

66.     Finally, Chunawala presumably attached the May 6, 2021 email to his December 2024 Email to suggest that the 5,585,190 BUSD that he purportedly withdrew from Binance was used to fund his May 19, 2021 loan to Alameda.  However, that loan was supposedly for 6,000,000 USDC, not BUSD.  (Sielinski Decl. ¶ 84.)  Thus even assuming the authenticity of this email, it has little if any relevance to the purported loans.

67.     The May 6, 2021 email also appears to be fraudulent because it lists "bavikacr@gmail.com" as the recipient of the email.  This appears to be a typographical error, as the email address listed at the top of the same page is "bhavikacr@gmail.com."  (Sielinski Decl. ¶ 85.)  All other instances of Chunawala's email address (e.g., in his Proof of Claim form, purported loan confirmation email, and in the purported November 2022 email) reflect a spelling of "bhavikacr@gmail.com," which is consistent with the spelling of Chunawala's first name. (Sielinski Decl. ¶ 85.)

## **Reservation of Rights**

68.     Nothing in this Objection:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission

as to the validity of any claim against the Debtors or the Trust; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Trust to contest the validity, priority, or amount of any claim against the Debtors or the Trust; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or the Trust with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the sole discretion of the Trust.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should be construed as an admission as to the validity of any claim or a waiver of the Trust's right to subsequently dispute such claim.

69.     The Trust retains its rights to later object on any basis to any Claim as to which the Court does not grant the relief requested herein.

## Separate Contested Matters

70.     To the extent a response is filed regarding any claim listed in this Objection and the Trust is unable to resolve the response, the objection by the Trust to such claim shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim subject thereto.

## Compliance with Local Rule 3007-1

71.     To the best of the Trust's knowledge and belief, this Objection and the related exhibits comply with Local Rule 3007-1.  To the extent this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the undersigned believes such deviations are not material and respectfully requests that any such requirement be waived.

**Notice**

72.     Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) counsel for the Ad Hoc Committee; (g) each Claimant; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Trust submits that, in light of the nature of the relief requested, no other or further notice need be provided.

**No Existing Request**

73.     The Trust previously objected to Claim No. 95770 in its One Hundred Nineteenth Omnibus Claim Objection [D.I. 25718] and Claim Nos. 95772, 95553, and 95771 in its One Hundred Thirty-Ninth Omnibus Claim Objection [D.I. 28544].  These objections have since been adjourned [D.I. 28883, 29876], and subsequently withdrawn [D.I. 31852].

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Trust respectfully requests that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: July 25, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware  19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Brian D. Glueckstein (admitted *pro hac vice*)
Jake M. Croke (admitted *pro hac vice*)
Chris J. Dunne (admitted *pro hac vice*)
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: gluecksteinb@sullcrom.com
        crokej@sullcrom.com
        dunnec@sullcrom.com

*Counsel for the FTX Recovery Trust*