**<u>EXHIBIT B</u>**

**Declaration of Jeffrey Sielinski in Support of**
**FTX Recovery Trust's One Hundred Ninety-Third (Substantive)**
**Omnibus Objection to Certain No Liability Claims (Non-Customer Claims)**

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.* | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JEFFREY SIELINSKI IN SUPPORT OF FTX RECOVERY
TRUST'S ONE HUNDRED NINETY-THIRD (SUBSTANTIVE) OMNIBUS
OBJECTION TO CERTAIN NO LIABILITY CLAIMS (NON-CUSTOMER CLAIMS)**

I, Jeffrey Sielinski, hereby declare under penalty of perjury:

**Qualifications**

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.

2.      I have more than 16 years of restructuring experience across various industries, including media, retail, energy, oil and gas, telecommunications and manufacturing.

3.      Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Blockbuster, Inc., First Energy Solutions, Visteon Corporation, Lear Corporation, LBI Media, Bristow Group Inc., Haggen Foods, Talen Energy, Verso Corp, and Envision Healthcare Corp.

**Background**

4.      I submit this declaration (the "Declaration") in support of *FTX Recovery Trust's One Hundred Ninety-Third (Substantive) Omnibus Objection to Certain No Liability Proofs of Claim (Non-Customer Claims)* (the "Objection"), filed concurrently herewith, to place before the Court certain documents and information referred to in the Objection.

-2-

5.      I am not being compensated separately for this testimony other than through payments received by A&M as a financial advisor retained by the FTX Recovery Trust (the "Trust").

6.      Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Trust, the Trust's management, and other professionals involved in advising the Trust, including the A&M team.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am authorized to submit this Declaration on behalf of the Trust.

7.      Proofs of claim numbers 95770, 95771, 95772, and 95553 (together, the "Claims" or "Proofs of Claim") collectively seek $15,012,676.94 pursuant to six purported loan agreements. The Proofs of Claim were purportedly submitted by four claimants:  (1) Rikesh Rajput; (2) Bhavika Chunawala; (3) Rupesh Rajput; and (4) Palak Rahevar (the "Claimants").  Although I cannot confirm whether the Proofs of Claim were in fact submitted by Claimants or some other person or persons fraudulently posing as Claimants, for ease of reference I will hereinafter refer to Claimants as having filed the Proofs of Claim.

8.      The Trust and its advisors have conducted a comprehensive review of the books and records belonging to FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") to determine what, if any, amounts are owed to Claimants pursuant to the Claims.

9.      The Trust and its advisors have not identified any evidence that the purported loans ever existed.  The Trust and its advisors have not been able to locate the loan agreements attached to the Claims or confirm that the underlying loan amounts were ever transferred to any of the

Debtors.  The supporting documentation attached to the Proofs of Claim also do not appear in the Debtors' records.

10.     The Trust and its advisors also have significant bases to conclude that the documentation submitted with the Proofs of Claim are fraudulent.

11.     Based on its review, the Trust and its advisors have therefore determined that:  (i) the Claims are not reflected in the Trust's books and records and (ii) the documentation submitted with the Claims were fraudulently doctored and do not reflect legitimate loans to any of the Debtors.

**The Proofs of Claim**

<u>The Rikesh Rajput Claim (Claim No. 95553)</u>

12.     Rikesh Rajput filed Proof of Claim No. 95553 on June 26, 2024 (the "<u>Rikesh Rajput Claim</u>").  The Rikesh Rajput Claim seeks $2,750,161.70 based on two purported loan agreements with Alameda Research Ltd. ("<u>Alameda</u>").  The first purported loan agreement is dated February 1, 2022 and is for $2,000,000 USD.  The second purported loan agreement is dated February 22, 2022 and is for 550,000 USDC.  Both purported loan agreements are attached to the Proof of Claim, along with (i) a purported email chain between "info@alameda-research.com" and "rikeshja@gmail.com" that appears to state the loan amounts and accrued interest on a monthly basis and (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total amount claimed.  A true and correct copy of the Rikesh Rajput Claim, including the documentation attached to the Proof of Claim, is attached hereto as **<u>Exhibit 1</u>**.

13.     The Rikesh Rajput Proof of Claim form lists Rikesh Rajput's residence as Vadodara, India.

14.     Rikesh Rajput has not yet initiated Know Your Customer ("<u>KYC</u>") requirements for the Rikesh Rajput Claim.

15.     Rikesh Rajput also held a customer account on the FTX Exchange, which he opened on January 29, 2021.  According to his KYC records from the FTX Exchange, Rikesh Rajput's residence is listed in Gujarat, India.

The Chunawala Claim (Claim No. 95770)

16.     Bhavika Chunawala filed Proof of Claim No. 95770 on July 8, 2024 (the "Chunawala Claim").  The Chunawala Claim seeks $7,004,069.95 based on two purported loan agreements with Alameda.  The first purported loan agreement is dated May 19, 2021 and is for 6,000,000 USDC.  The second purported loan agreement is dated Februrary 1, 2022 and is for 6,500,000 USDC.  Both purported loan agreements are attached to the Proof of Claim, along with (i) a purported email chain between "info@alameda-research.com," "operations@alameda-research.com," and "bhavikacr@gmail.com" that appears to confirm the loan amounts and accrued interest on a monthly basis and (ii) an "Exhibit B" that lists the amounts of the purported loans, accrued interest, and total amount claimed.  A true and correct copy of the Chunawala Claim, including the documentation attached to the Proof of Claim, is attached hereto as **Exhibit 2**.

17.     The Chunawala Claim lists Chunawala's residence as Gujarat, India.

18.     Chunawala has not initiated KYC for the Chunawala Claim.

19.     There is no record of Chunawala in any of the Debtors' databases.  Chunawala does not appear to have ever opened a customer account on the FTX Exchange.

The Rupesh Rajput Claim (Claim No. 95771)

20.     Also on July 8, 2024, Rupesh Rajput filed Proof of Claim No. 95771 (the "Rupesh Rajput Claim").  The Rupesh Rajput Claim seeks $2,586,026.59 based on a purported loan agreement with Alameda for 2,500,000 USDC, dated July 1, 2022.  The purported loan agreement is attached to the Proof of Claim, along with (i) a purported email chain between

"operations@alameda-research.com" and "rupesh190190@outlook.com" that appears to confirm the loan amounts and accrued interest on a monthly basis and (ii) an "Exhibit B" that lists the amounts of the purported loan, accrued interest, and total amount claimed.  A true and correct copy of the Rupesh Rajput Claim, including the documentation attached to the Proof of Claim, is attached hereto as **Exhibit 3**.

21.     The Rupesh Rajput Claim lists Rupesh Rajput's residence as London, England.

22.     Rupesh Rajput has initiated, but not completed, KYC for the Rupesh Rajput Claim.

23.     Rupesh Rajput also held a customer account on the FTX Exchange, which he opened on January 29, 2021.  According to his pre-petition KYC records from the FTX Exchange, Rupesh Rajput's residence is listed as Gujarat, India.  The KYC documentation submitted with his customer claim also lists Gujarat, India as his residence.

The Rahevar Claim (Claim No. 95772)

24.     Also on July 8, 2024, Palak Rahevar filed Proof of Claim No. 95772 (the "Rahevar Claim").  The Rahevar Claim seeks $2,672,418.70 based on a purported loan agreement with Alameda for $2,500,000 USD, dated March 1, 2022.  The purported loan agreement is attached to the Proof of Claim, along with (i) a purported email chain between "info@alameda-research.com" and "palakjayeshbairahevar@gmail.com" that appears to confirm the loan amounts and accrued interest on a monthly basis and (ii) an "Exhibit B" that lists the amounts of the purported loan, accrued interest, and total amount claimed.  A true and correct copy of the Rahevar Claim, including the documentation attached to the Proof of Claim, is attached hereto as **Exhibit 4**.

25.     The Rahevar Claim lists Rahevar's residence as London, United Kingdom.

26.     Rahevar has initiated, but not completed, KYC for the Rahevar Claim.

27.     There is no record of Rahevar in any of the Debtors' databases.  Rahevar does not appear to have ever opened a customer account on the FTX Exchange.

### There Is No Record of the Loans' Existence on the Debtors' Books

28.     The Trust and its advisors have conducted a comprehensive review of the Debtors' books and records to confirm the existence of the purported loan agreements attached to the Proofs of Claim.

29.     After an extensive review of the Debtors' transaction history, The Trust and its advisors have not found any record of the loan amounts having ever been transmitted.

30.     Nor have the Trust and its advisors been able to locate the loan agreements themselves or the email chains attached to the Proofs of Claim in the Debtors' records.

31.     The Trust and its advisors therefore cannot independently verify the existence of the purported loans.

### The Loan Agreements Are Fraudulent

32.     Based on a review of the purported loan agreements attached to the Proofs of Claim, I conclude that each of the loan agreements are forgeries modeled after publicly available loan agreements between Alameda and its legitimate lenders.

DocuSign Envelope ID Stamps

33.     DocuSign is an electronic signature and document management platform that allows users to send, sign, and manage agreements online.  DocuSign Envelope IDs are unique identifiers that are assigned to each document created through DocuSign and serve as a digital footprint used to track documents.  A finalized version of a document executed via DocuSign will typically have a unique DocuSign Envelope ID stamped on the top left corner of each page.

34.     The purported loan agreements attached to the Rikesh Rajput Claim, Rupesh Rajput Claim, and Rahevar Claim each contain a stamp on the top left corner of every page that reads "DocuSign Envelope ID" followed by a long string of letters and numbers, in a format that is designed to mimic an authentic DocuSign Envelope ID.  (*See* Ex. 1 at 10, 19; Ex. 3 at 10; Ex. 4 at 10.)  These purported DocuSign Envelope IDs do not appear in the Debtors' records.

35.     In each of these agreements, the text box displaying the visible DocuSign Envelope ID is layered on top of a second, hidden DocuSign Envelope ID within the same text box.  This can be observed by moving or expanding the visible text boxes displaying the DocuSign Envelope IDs using Adobe Acrobat's "Edit PDF" mode.  When this is done, the visible text becomes jumbled and reveals additional hidden characters or embedded font data within the same text box.

36.     Below are true and correct snippets of the text boxes on the top left corner of the loan agreements attached to the Rikesh Rajput Claim, the Rupesh Rajput Claim, and the Rahevar Claim after the text boxes have been expanded.

*Rikesh Rajput's Loan Agreements:*



*Rupesh Rajput's Loan Agreement:*



*Rahevar's Loan Agreement:*



37.     The two purported loan agreements attached to the Chunawala Claim do not have visible DocuSign Envelope IDs stamped on the top left corner of each page.  (*See* Ex. 2 at 10, 20.)  However, each of these agreements do in fact contain a string of letters and numbers resembling a DocuSign Envelope ID that is hidden by a white box.

38.     This can be observed by viewing the loan agreements attached to the Chunawala Claim in "Edit PDF" mode on Adobe Acrobat, clicking on the text box at the top left corner of each page (where the DocuSign Envelope ID would typically appear), and moving the white box to reveal the hidden text.

39.     The hidden DocuSign Envelope IDs on both loan agreements attached to the Chunawala Claim are identical, despite being purportedly executed at different times.  This is not consistent with how DocuSign functions.  DocuSign Envelope IDs are unique to a specific document.

40.     Below are true and correct snippets of the DocuSign Envelope IDs on the two purported loan agreements attached to the Chunawala Claim after the white boxes are removed:

DocuSign Envelope ID: 9C767F77-ED6C-409E-B7F6-0C5FD334E8B0
DocuSign Envelope ID: 9C767F77-ED6C-409E-B7F6-0C5FD334E8B0

41.     The hidden DocuSign Envelope in the loan agreements attached to the Chunawala Claim contain the same characters as the jumbled text in the loan agreement attached to the Rahevar Claim once the letters and numbers contained in the visible DocuSign Envelope ID are deleted.

42.     This can be observed by copying the large string of jumbled text in the DocuSign Envelope ID text box in the loan agreement attached to the Rahevar Claim into a separate document and deleting from that string the letters and numbers that appear in the visible DocuSign Envelope ID.

43.     When the letters and numbers from the visible DocuSign Envelope ID are deleted from the larger string of jumbled text, the resulting string includes the exact same characters as the hidden DocuSign Envelope ID in the loan agreements attached to the Chunawala Claim.

<u>Schedule 1 to the Chunawala Loan Agreement</u>

44.    The first purported loan agreement attached to the Chunawala Claim, dated May 19, 2021, denotes a principal amount of 6,000,000 USDC.  (USDC is a stablecoin cryptocurrency designed to maintain a 1:1 value with the U.S. dollar.)  However, Schedule 1 to the May 19, 2021 loan agreement indicates that the principal amount of the loan is comprised of 96.3596376 Bitcoin and 3,000,000 USDC.  (Ex. 2 at 18.)  This is inconsistent with the loan agreement itself, as well as all other documentation submitted by Chunawala with respect to this purported loan, including the Proof of Claim form, which denotes a principal amount of 6,000,000 USDC (no Bitcoin).  (Ex. 2 at 10; *see also* Ex. 8B at 1; Ex. 8E at 5.)  This inconsistency further evidences that the purported loan agreement is fraudulent.

45.    Schedule 1 to the May 19, 2021 loan agreement also indicates that collateral was provided from Alameda to Chunawala in the amount of "6,000,00," USDC (presumably a typographical error intended to be 6,000,000 USDC).  (Ex. 2 at 18.)  However, it defies logic to suggest that a loan with a purported principal balance of 6,000,000 USDC should require collateral balance in the exact same amount or in the same currency as the loan principal.  There is also no mention of the collateral in any other documentation submitted by Chunawala.

**The Loan Confirmation Emails Are Fraudulent**

<u>The Loan Confirmation Emails Model Other Publicly Available Emails</u>

46.    Attached to all four of the Proofs of Claim are purported email chains with Alice Zhou, former Vice President of Operations at Alameda, confirming the loan amounts and interest accrued on a monthly basis.  In each of the email chains, the loan amounts and accrued interest correspond with the information in the corresponding loan agreements.

47.     The Trust and its advisors were unable to locate the email chains attached to the Proofs of Claim in the Debtors' records.

48.     The first email in the chain attached to the Chunawala Claim and the first email in the chain attached to the Rahevar Claim both begin:  "As discussed, you will start receiving email[s] of your loan summary from this month."  (Ex. 2 at 35; Ex. 4 at 22.)  A search in the Debtors' database for this phrase reveals only three email chains with this precise language.  One of those email chains was between Zhou and Yiling "Cheryl" Chen, wife of Zixiao "Gary" Wang, confirming a legitimate loan from Chen to Alameda.  That email chain between Zhou and Chen was attached to Chen's three non-customer loan claims, claim numbers 95773, 2188, and 593.  The email chain is therefore publicly available on the Kroll claims register.

49.     Attached hereto as **Exhibit 5** is a true and correct copy of claim number 95773, filed by Chen on July 9, 2024.  The relevant email chain begins on page 28.

50.     Attached hereto as **Exhibit 6** is a true and correct copy of claim number 2188, filed by Chen on May 25, 2023.  The relevant email chain begins on page 28.  Claim number 95773 amended and superseded claim number 2188, which was therefore expunged.

51.     Attached hereto as **Exhibit 7** is a true and correct copy of claim number 593, filed by Chen on January 23, 2023.  The relevant (but incomplete) email chain begins on page 4.  Claim number 2188 amended and superseded claim number 593, which was therefore expunged.

52.     All of the Proofs of Claim filed by Claimants were submitted after Chen filed claim numbers 2188 and 593.  It is my opinion that Chen's proofs of claim were used as a precedent for Claimants to fraudulently doctor their Proofs of Claim.  In addition to the identical language in the loan confirmation email attached to Chen's proofs of claim, as described in more detail below, the

email chain attached to the Chunawala Claim includes a hyperlink to Chen's email address rather than Chunawala's email address.

Inexplicable References to "New Loans"

53.     The email chain attached to the Rahevar Claim includes monthly emails that were purportedly sent from Zhou to Rahevar between April 2022 to November 2022.  The emails from April 2022 to August 2022 consistently refer to a purported March 2022 loan.  However, without explanation, the September 2, 2022 email for the first time refers to a February 2022 loan.  The final email on the chain, dated November 3, 2022, again refers to a February 2022 loan, but this time refers to it as a "new loan."  Only one purported loan agreement is attached to the Rahevar Claim, and it is dated March 1, 2022—not February 2022.  (Ex. 4 at 10, 20.)

54.     The email chain attached to the Rikesh Rajput Claim reflects monthly emails that appear to have been sent from Zhou between March 2022 and November 2022 that consistently refer to two February 2022 loans.  From March 2022 to October 2022, the monthly emails from Zhou refer to these loans as being entered in February 2022.  However, the final email on the chain, dated November 3, 2022, refers to the February 2022 loans as "new loan[s]."  The Rikesh Rajput Claim contains no documentation explaining why Zhou suddenly began referring to these two loans as "new loans" in November 2022.  (Ex. 1 at 30.)

Hyperlinks in Loan Confirmation Emails

55.     In the email chains attached to the Proofs of Claim, the email addresses listed as senders or recipients include clickable "mail to:" hyperlinks.  In a number of circumstances, these clickable "mail to:" hyperlinks autogenerate to entirely different email addresses than the ones being displayed.  A few examples are detailed below.

56.     The email chain attached to the Chunawala Claim lists "bhavikacr@gmail.com" as a recipient (which matches the email address listed for Chunawala on his Proof of Claim form). (Ex. 2 at 4, 31-35.) However, Chunawala's email address includes a clickable "mail to:" hyperlink that autogenerates an email to "cheryl.cyl0329@gmail.com," not "bhavikacr@gmail.com." The autogenerated email address, "cheryl.cyl0329@gmail.com," belongs to Cheryl Chen.

57.     This can be observed by hovering a cursor over or clicking on the email address listed in the email chain, which reveals the hyperlink to "cheryl.cyl0329@gmail.com." It is my opinion that Chen's proofs of claim and supporting documentation were therefore used as precedents to create the fraudulent Chunawala Claim.

58.     Below is a true and correct snippet of the autogenerated hyperlink in the loan confirmation email attached to the Chunawala Claim.

To: Bhavika <bhavikacr@gmail.com:
mailto:cheryl.cyl0329@gmail.com
Cc: Caroline <caroline@alameda-res

59.     The email chain attached to the Rikesh Rajput Claim lists "info@alameda-research.com" as the sender. (Ex. 1 at 30-34.) However, in the top email on the chain, this email address includes a clickable "mail to:" hyperlink that autogenerates an email to "cryptoaiindia@gmail.com," not "info@alameda-research.com." This can be observed by hovering a cursor over or clicking on the listed email address, which reveals the hyperlink to "cryptoaiindia@gmail.com."

60.    Below is a true and correct snippet of the autogenerated hyperlink in the loan confirmation email attached to the Rikesh Rajput Claim.

# \<info@alameda-research.com\>

mailto:cryptoaiindia@gmail.com

61.    Other emails on the same chain that list "info@alameda-research.com" as the sender include clickable "mail to:" hyperlinks that autogenerate emails to "operations@alameda-research.com" instead of "info@alameda-research.com."

62.    Below is a true and correct snippet of the autogenerated hyperlink in the loan confirmation email attached to the Rikesh Rajput Claim.

# T+8 info@alameda-research.com

mailto:operations@alameda-research.com

63.    The email chain attached to the Rahevar Claim lists "info@alameda-research.com" as the sender.  (Ex. 4 at 20-22.)  Like the email chain attached to the Rikesh Rajput Claim, this email address includes a clickable "mail to:" hyperlink that autogenerates an email to "cryptoaiindia@gmail.com," not "info@alameda-research.com."   Also like the Rikesh Rajput Claim, other emails on the same chain that list "info@alameda-research.com" as the sender include clickable "mail to:" hyperlinks that autogenerate emails to "operations@alameda-research.com" instead of "info@alameda-research.com."

64.    The email chain attached to the Rahevar Claim lists "palakjayeshbairahevar@gmail.com" as the email recipient (which matches the email address listed for Rahevar on her Proof of Claim form).  (Ex. 4 at 4, 20-22.)  However, Rahevar's email

address includes a clickable "mail to:" hyperlink that autogenerates an email to "rikeshja@outlook.com" (which is likely associated with Rikesh Rupesh), not "palakjayeshbairahevar@gmail.com."  It is my opinion that the Rikesh Rajput Claim was therefore used as a precedent to fraudulently doctor the Rahevar Claim.

65.    Below are true and correct snippets of the autogenerated hyperlinks in the loan confirmation email attached to the Rahevar Claim.



66.    The email chain attached to the Rupesh Rajput Claim lists "rupesh190190@outlook.com" as the email recipient (which matches the email address listed for Rupesh Rajput on his Proof of Claim form) and "operations@alameda-research.com" as the sender.  (Ex. 3 at 4, 20-21.)  However, both email addresses include clickable "mail to:" hyperlinks that autogenerate emails to different email addresses.  The "rupesh190190@outlook.com" email address autogenerates an email to "rikeshja@outlook.com," not "rupesh190190@outlook.com," and the "operations@alameda-research.com" email address autogenerates an email to "rikeshja@protonmail.com," not "operations@alameda-research.com."

67.     It is my opinion that the Rikesh Rajput Claim was therefore used as a precedent to fraudulently doctor the Rupesh Rajput Claim.

68.     Below are true and correct snippets of the autogenerated hyperlinks in the loan confirmation email attached to the Rupesh Rajput Claim.



Grammatical/ Formatting Issues in Loan Confirmation Emails

69.     The emails attached to the Proofs of Claim also contain certain grammatical and formatting issues that are inconsistent with the legitimate loan confirmation emails typically sent by Zhou.

70.     The email chain attached to Chunawala's Proof of Claim spells the word "organized" with a "z" (Ex. 2 at 33), whereas in the emails sent by Zhou to legitimate lenders, the word "organised" is consistently spelled with an "s" (*see, e.g.*, Ex. 6 at 30).

71.     Exhibit B to the Rupesh Rajput Claim also incorrectly spells the word "interest" as "intrest."  (Ex. 3 at 19.)

**The Proof of Claim Forms Are Fraudulent**

Proofs of Claim Signatures

72.     Each of the four Proofs of Claim contains the signature of the purported Claimant. (Ex. 1 at 8; Ex. 2 at 8; Ex. 3 at 8; Ex. 4 at 8.)  The signatures on the Proofs of Claim appear very similar to one another, suggesting that the forms were signed by the same individual, rather than the four distinct Claimants.  Below are true and correct snippets of the signatures displayed on the Chunawala Claim, the Rupesh Rajput Claim, the Rahevar Claim, and the Rikesh Rajput Claim.

-16-



73.     Each of the four signatures are similarly slanted and underlined, and none contain the Claimant's full name.  Three of the four signatures—affixed to the Chunawala Claim, the Rupesh Rajput Claim, and the Rahevar Claim—contain only the Claimant's first name.  (Ex. 2 at 8; Ex. 3 at 8; Ex. 4 at 8.)

### **Exhibit B to the Proofs of Claim Are Fraudulent**

74.     Each of the four Proofs of Claim contain an attachment labeled as "Exhibit B," which summarizes the amounts that Claimants assert are due under the loans.

75.     Exhibit B to the Chunawala Claim and the Rikesh Rajput Claim are nearly identical.  Both contain tables with rows detailing the accrued interest for each month of the loan and are drafted using identical language, with the month and year listed in the first column and the dollar value listed in the second column.  (Ex. 1 at 28; Ex. 2 at 30.)

76.     Both tables also use the exact same font type, font case, and font colors (a mix of red and black font).  In both tables, the loan amounts, outstanding principal amounts, and the words "SCHEDULE OF COMPOUND INTEREST ADDED TO PRINCIPAL BALANCE" are all in red font and capital letters, and all other text is in black font and sentence case.  (Ex. 1 at 28; Ex. 2 at 30.)

77.     Exhibit B to the Rupesh Rajput Claim and the Rahevar Claim are also nearly identical to one another.  Both contain identical tables with the same headings, columns, rows, and type of information in the exact same font style and color, with the purported outstanding dollar value written in red font and highlighted in yellow.  Both Exhibits are also formatted identically,

with the lender name, loan amount, and loan effective date displayed in the exact same location, in the same font, with the same underlining.  (Ex. 3 at 19; Ex. 4 at 19.)

78.     The following language is also included at the bottom of Exhibit B to all four Claims, in the same shade of red font:  "Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience.  I am available to provide any necessary assistance regarding the bankruptcy proceedings."  (Ex. 1 at 28; Ex. 2 at 30; Ex. 3 at 19; Ex.  4 at 19.)

79.     For this reason, among others in this Declaration, it is my opinion that either the same person submitted all four Proofs of Claim or that Claimants conspired when preparing and submitting the Proofs of Claim.

### The Additional Documents Submitted by Chunawala Are Fraudulent

80.     In December 2024, Debtors received an email from bhavikacr@gmail.com, attaching the same documentation that was attached to the Chunawala Claim, along with two additional emails purportedly sent by Chunawala (the "December 2024 Email").  Attached hereto as **Exhibit 8** is a true and correct copy of the December 2024 Email, including attachments.

81.     The purported loan agreements, confirmation email, and Exhibit B attached to the December 2024 Email are identical in all material respects to the loan agreements, confirmation email, and Exhibit B attached to the Chunawala Claim.  (*Compare* Exs. 8B, 8C, 8E, 8G *with* Ex. 2 at 10, 20, 30, 31.).  However, the May 19, 2021 loan agreement attached to the Chunawala Claim includes at least one typographical error that was corrected in the loan agreement attached to the December 2024 Email.

82.     Schedule 1 to the May 19, 2021 loan agreement attached to the Chunawala Claim states that the parties to the loan agreement agreed to "6,000,00" USDC as collateral (Ex. 2 at 18),

whereas Schedule 1 of the May 19, 2021 loan agreement attached to the December 2024 Email states that the parties to the loan agreement agreed to "6,000,000" USDC as collateral (Ex. 8B at 9). For this additional reason, it is my opinion that the documents attached to the Chunawala Claim, as well as the documents attached to the December 2024 Email, are fraudulent. Below are true and correct snippets of Schedule 1 to the May 19, 2021 loan agreement.

*Chunawala's Proof of Claim:*

The following is the agreed upon collateral for this loan provided by borrower to the lender.

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,000,00 |

*December 2024 Email:*

The following is the agreed upon collateral for this loan provided by borrower to the lender.

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,000,000 |

83.    The December 2024 Email also attaches a purported email chain dated November 23-27, 2022 in which Chunawala complains to Alameda, without response, that he is concerned about his investment. (Ex. 8D at 1). The Trust and its advisors have not been able to confirm the existence of this email chain—or any correspondence with "bhavikacr@gmail.com"—in the Debtors' records.

84.    Finally, the December 2024 Email also attaches an email dated May 6, 2021, which purports to confirm a withdrawal by Chunawala from the Binance cryptocurrency exchange for 5,585,190 BUSD (BUSD, or Binance USD, is a stablecoin cryptocurrency pegged to the U.S. dollar). (Ex. 8A at 1.) Presumably, Chunawala included this email in his package of documents to the Debtors to suggest that the 5,585,190 BUSD was used to fund his May 19, 2021 loan to Alameda. However, that loan was supposedly for 6,000,000 USDC, not BUSD. (Ex. 2 at 10.)

85.     It is also my opinion that the May 6, 2021 Binance email is fraudulent.  The email address listed as the recipient of the May 6, 2021 email is "bavikacr@gmail.com."  (Ex. 8A at 1.) This appears to be a typographical error, as the email address listed at the top of the same page is "bhavikacr@gmail.com" (with an "h" after the "b").  All other references to Chunawala's email address (e.g., in his Proof of Claim form, purported loan agreements, purported loan confirmation email, and in the purported November 2022 email) spell his email "bhavikacr@gmail.com," which is also consistent with the spelling of his name.  (*See, e.g.*, Ex. 2 at 4 and 31; Ex. 8B at 7; Ex. 8C at 7; Ex. 8D at 1.)

86.     The "5,585,190.00 BUSD" text in the May 6, 2021 email is also in a different font and font size than the rest of the text in the email, which suggests that Chunawala doctored a legitimate email from Binance and overlayed this text.  (Ex. 8A at 1.)

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on July 25, 2025

*/s/ Jeffrey  Sielinski*
Jeffrey Sielinski
Alvarez & Marsal North America, LLC
Managing Director

# Exhibit 1

FTX Non Customer Proof of Claim Form

## FTX Non Customer Proof of Claim Form

Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

> [                                                                ]

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑ Check here to see further instructions on completing your claim form:

Claim Number: 95553

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ● Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
◉ Yes

First Name

| Rikesh |

Middle Name

| |

Last Name

| Rajput |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

⦿ No
○ Yes

From whom?

<br>

**3. Where should notices and payments to the Creditor be sent?**
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

Rikesh Rajput

Address 1 (Street address, "Care of:", or "Attention To:"):

2, Takshashila Soc.-2,

Address 2:

Opp. MGM School

Address 3:

New sama road

Address 4:

Vadodara

City:

Vadodara, India

State or Province (use 2-letter abbreviation if US or Canada):

<br>

Zip Code | Postal Code:

390008

**Is the creditor address outside of the US?**

○ No
⦿ Yes

Country (if outside of the US):

India

Contact phone:

9537776333

Contact email:

rikeshja@gmail.com

**Should payments go to a different address?**

⦿ No
○ Yes

**Would you like to add any additional noticing addresses?**

⦿ No
○ Yes

**4. Does this claim amend one already filed?**

⦿ No
○ Yes

Claim number on court claims registry (if known)

<br>

FTX Non Customer Proof of Claim Form

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

[                                                                                    ]


## Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[                                                                                    ]

# If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

$ [                ]   [ 2,750,161.70                                              ]

Does this amount include interest or other charges?

○ No
◉ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

[                                                                                    ]

(ii) the amount in such currency

[                                                                                    ]

(iii) a conversion rate to U.S. dollars

[                                                                                    ]

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| [        ] | [        ] | [        ] | [        ] |
| Coin List | Count | Coin List | Count |
| [        ] | [        ] | [        ] | [        ] |
| Coin List | Count | Coin List | Count |
| [        ] | [        ] | [        ] | [        ] |


## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

[ Alameda Research Ltd Money Loan (inclusive of principal and interest) as of October 2022. ]

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

FTX Non Customer Proof of Claim Form

☐ Motor vehicle

☐ Other

Describe:

_____

**Basis for perfection:**

_____

**Value of property (all amounts in US $ dollars):**

_____

**Amount of the claim that is secured (all amounts in US $ dollars):**

_____

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

_____

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

_____

Annual Interest Rate (when case was filed) % -
○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

_____

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

_____

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property.

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No
○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case (s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ● I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

### Executed on date (Calculated in UTC)

06/26/2024

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

Rikesh Rajput

Title/Company:

FTX Non Customer Proof of Claim Form

Address 1:

2, Takshashila Soc. - 2, Opp. MGM School,

Address 2:

New sama road, Vadodara, India

City:

Vadodara

State or Province (use 2-letter abbreviation if US or Canada):

Zip Code | Postal Code:

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

India

Contact phone:

+919537776333

Contact email:

rikeshja@gmail.com


## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| combinepdf.pdf | 1 MB |
|---|---|

**Attachment Filename**

combinepdf.pdf

DocuSign Envelope ID: 8JA463P6-3550-240D-AD3I-CC6CE85CDD54



# LOAN AGREEMENT

Principal Amount: 2,000,000 USD                    Effective Date: 1 February 2022

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Rikesh Rajput ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.   TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.  REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

## C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

## ARTICLE III.          REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.          COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.          DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.          CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3)  is independently developed by that other Party; or

    4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.          SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.          MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **2**, Takshashila soc.2 New Sama, Vadodara, Gujarat, India | Rikeshja@gmail.com | Rikesh Rajput |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | trabucco@alameda-research.com | Sam Trabucco |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By: _____

Sam Trabucco, Co-CEO                                Rikesh Rajput

DocuSign Envelope ID: 9JA463P5-3550-240D-AD3J-CC6CE85CDD54

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USD | 2,000,000 |
|  |  |
|  |  |
|  |  |



**LOAN AGREEMENT**

Principal Amount: 550,000 USDC                    Effective Date: 2022/02/22

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Rikesh Rajput ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

**ARTICLE I.    TERMS OF REPAYMENT**

**A. Payment of Principal Amount**

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

**B. Payment of Interest**

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

**C. Interest Rollover**

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

## C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

## ARTICLE III.          REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

DocuSign Envelope ID: ZJA42PDJ-A186-9D49-AB3B-255B6CD3D864

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

1) is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

2) was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

3) is independently developed by that other Party; or

4) the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.          SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.          MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | 2, Takshashila soc.2, Vadodara, Gujarat, India | Rikeshja@gmail.com | Rikesh Rajput |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.         GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD



By: _____
198B1A7CC5A74E7...

Caroline Ellison, Co-CEO


_____
718A93D0DAEE444...

Rikesh Rajput

8

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 550,000 |
|  |  |
|  |  |
|  |  |

EXHIBIT B

RIKESH RAJPUT USD 2,000,000 LOAN TO ALAMEDA RESEARCH LTD
SCHEDULE OF COMPOUND INTEREST ADDED TO PRINCIPAL BALANCE

| | IN USD |
|---|---|
| Interest at 10% per annum | |
| February 01, 2022 US$2,000,000 original principal amount paid to Alameda Research Ltd | 2,000,000.00 |
| February 2022 Interest Payment | 16,027.14 |
| March 2022 Interest Payment | 17,880.45 |
| April 2022 Interest Payment | 17,450.63 |
| May 2022 Interest Payment | 18,180.53 |
| June 2022 Interest Payment | 17,743.49 |
| July 2022 Interest Payment | 18,485.63 |
| August 2022 Interest Payment | 18,642.64 |
| September 2022 Interest Payment | 18,194.49 |
| October 2022 Interest Payment | 18,955.50 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 2,161,560.50 |
| | |
| One cent difference than email correspondence with Alameda Research Ltd | |

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.

| EXHIBIT B | |
| --- | --- |
| RIKESH RAJPUT USDC 550,000 LOAN TO ALAMEDA RESEARCH LTD | |
| SCHEDULE OF COMPOUND INTEREST ADDED TO PRINCIPAL BALANCE | |
| | **IN USDC** |
| Interest at 10% per annum | |
| February 22, 2022 USDC 550,000 original principal amount paid to Alameda Research Ltd | 550,000.00 |
| February 2022 Interest Payment | 1,148.14 |
| March 2022 Interest Payment | 4,610.90 |
| April 2022 Interest Payment | 4,631.30 |
| May 2022 Interest Payment | 4,665.91 |
| June 2022 Interest Payment | 4,708.80 |
| July 2022 Interest Payment | 4,748.04 |
| August 2022 Interest Payment | 4,647.19 |
| September 2022 Interest Payment | 4,710.31 |
| October 2022 Interest Payment | 4,730.61 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 588601.20 |
| | |
| One cent difference than email correspondence with Alameda Research Ltd | |

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.

 **Gmail**

**rikeshja100 <rikeshja@gmail.com>**

## October 2022 Loan balance with Alameda Research

**info@alameda-research.com** <info@alameda-research.com>
Reply-To: info@alameda-research.com
To: rikeshja100 <rikeshja@gmail.com>

Thu, Nov 3, 2022 at 2:19 PM

Cc: jen@alameda-research.com <jen@alameda-research.com>

Hi Rikesh,

We have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the new loan entered in February 2022:
Starting principal for October 2022 interest calculation: USD 2,142,605
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USD 18,955.50
Principal as of 31 October 2022 for next month's interest accrual: USD 2,161,560.50

For the new loan entered on February 2022:
Starting principal for October 2022 interest calculation: USDC 583,870.59
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 4730.61
Principal as of 31 October 2022 for next month's interest accrual: USDC 588,601.20

Please let us know if you have any questions.

Regards,
Alice


On October 3, 2022 at 6:36 PM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
Please see the loan summary below as of 30 September 2022:

For the loan entered in February 2022:
Starting principal for September 2022 interest calculation: USD 2,124,410.51
Agreed interest rate: 10.0% p.a.
Interest for September 2022: USD 18,194.49
Principal as of 30 September 2022 for next month's interest accrual: USD 2,142,605

For the loan entered on February 2022:
Starting principal for September 2022 interest calculation: USDC 579,160.28
Agreed interest rate: 10.0% p.a.
Interest for September 2022: USDC 4,710.31
Principal as of 30 September 2022 for next month's interest accrual: USDC 583,870.59

Please let us know if you have any questions.

Regards,
Alice

On September 2, 2022 at 9:30 PM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 August 2022:

For the loan entered in February 2022:
Starting principal for August 2022 interest calculation: USD 2,105,767.87
Agreed interest rate: 10.0% p.a.
Interest for August 2022: USD 18,642.64
Principal as of 31 August 2022 for next month's interest accrual: USD 2,124,410.51

For the loan entered on February 2022:
Starting principal for Augst 2022 interest calculation: USDC 574,513.09
Agreed interest rate: 10.0% p.a.
Interest for August 2022: USDC 4,647.19
Principal as of 31 August 2022 for next month's interest accrual: USDC 579,160.28

Please let us know if you have any questions.

Regards,
Alice

On August 2, 2022 at 7:49 PM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 July 2022:

For the loan entered in February 2022:
Starting principal for July 2022 interest calculation: USD 2,087,282.24
Agreed interest rate: 10.0% p.a.
Interest for July 2022: USD 18,485.63
Principal as of 31 July 2022 for next month's interest accrual: USD 2,105,767.87

For the loan entered on February 2022:
Starting principal for July 2022 interest calculation: USDC 569,765.05
Agreed interest rate: 10.0% p.a.
Interest for July 2022: USDC 4,748.04
Principal as of 31 July 2022 for next month's interest accrual: USDC 574,513.09

Please let us know if you have any questions.

Regards,
Alice

On July 5, 2022 at 12:36 PM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the June 2022 interest and rolled it into the
principal.
Please see the loan summary below as of 30 June 2022:

For the loan entered in February 2022:
Starting principal for June 2022 interest calculation: USD USD 2,069,538.75
Agreed interest rate: 10.0% p.a.
Interest for June 2022: USD 17,743.49
Principal as of 30 June 2022 for next month's interest accrual: USD 2,087,282.24

For the loan entered on February 2022:
Starting principal for June 2022 interest calculation: USDC 565,056.25
Agreed interest rate: 10.0% p.a.
Interest for June 2022: USDC 4,708.80
Principal as of 30 June 2022 for next month's interest accrual: USDC 569,765.05

Please let us know if you have any questions.

Regards,
Alice

On June 3, 2022 at 11:43 AM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the May 2022 interest and rolled it into
the principal.
Please see the loan summary below as of 30 May 2022:

For the loan entered in February 2022:
Starting principal for May 2022 interest calculation: USD USD 2,051,358.22
Agreed interest rate: 10.0% p.a.
Interest for May 2022: USD 18,180.53
Principal as of 31 May 2022 for next month's interest accrual: USD 2,069,538.75

For the loan entered on February 2022:
Starting principal for May 2022 interest calculation: USDC 560,390.34
Agreed interest rate: 10.0% p.a.
Interest for May 2022: USDC 4,665.91
Principal as of 31 May 2022 for next month's interest accrual: USDC 565,056.25

Please let us know if you have any questions.

Regards,
Alice

On May 3, 2022 at 9:55 AM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the April 2022 interest and rolled
it into the principal.
Please see the loan summary below as of 30 April 2022:

For the loan entered in February 2022:
Starting principal for April 2022 interest calculation: USD 2,033,907.59
Agreed interest rate: 10.0% p.a.
Interest for April 2022: USD 17,450.63
Principal as of 30 April 2022 for next month's interest accrual: USD
2,051,358.22

For the loan entered on February 2022:
Starting principal for April 2022 interest calculation: USDC 555,759.04
Agreed interest rate: 10.0% p.a.
Interest for April 2022: USDC 4,631.30
Principal as of 30 April 2022 for next month's interest accrual: USDC 560,390.34

Please let us know if you have any questions.

Regards,
Alice

On April 6, 2022 at 2:56 AM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

As per the previous month, we have accrued the March 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 March 2022:

For the loan entered in February 2022:
Starting principal for March 2022 interest calculation: USD 2,016,027.14
Agreed interest rate: 10.0% p.a.
Interest for March 2022: USD 17,880.45
Principal as of 31 March 2022 for next month's interest accrual: USD 2,033,907.59

For the loan entered on February 2022:
Starting principal for March 2022 interest calculation: USDC 551,148.14
Agreed interest rate: 10.0% p.a.
Interest for March 2022: USDC 4,610.90
Principal as of 31 March 2022 for next month's interest accrual: USDC 555,759.04

Please let us know if you have any questions.

Regards,
Alice

On March 3, 2022 at 11:36 PM GMT+8 info@alameda-research.com wrote:

Hi Rikesh,

We have accrued the February 2022 interest and rolled it into the principal. Please see the loan summary below as of 28 February 2022:

For the new loan entered in 1 February 2022:
Starting principal for February 2022 interest calculation: USD 2,000,000
Agreed interest rate: 10.0% p.a.
Interest for February 2022: USD 16,027.14
Principal as of 28 February 2022 for next month's interest accrual: USD 2,016,027.14

For the new loan entered on 22 February 2022:
Starting principal for February 2022 interest calculation: USDC 550,000.00
Agreed interest rate: 10.0% p.a.
Interest for February 2022: USDC 1,148.14
Principal as of 28 February 2022 for next month's interest accrual: USDC 551,148.14

Please let us know if you have any questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

ce3f9202750d989152af34208e451060c14a8784

Submitted Date Time

2024-06-26T19:25:01.212Z

Status

Submitted

CONFIRMATION ID

3265-69-FXNKQ-503385632

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

# Exhibit 2

## FTX Non Customer Proof of Claim Form

### Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

### Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑ Check here to see further instructions on completing your claim form:

**Claim Number: 95770**

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ◉ Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
◉ Yes

First Name

| Bhavika |

Middle Name

| |

Last Name

| Chunawala |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

[                                                                    ]

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

[ Bhavika Chunawala                                                  ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ 511, Madanjapa road, Naswadi, Gujarat, India                      ]

Address 2:

[                                                                    ]

Address 3:

[                                                                    ]

Address 4:

[                                                                    ]

City:

[ Naswadi                                                            ]

State or Province (use 2-letter abbreviation if US or Canada):

[                                                                    ]

Zip Code | Postal Code:

[                                                                    ]

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

[ India                                                              ]

Contact phone:

[ 8140501421                                                         ]

Contact email:

[ bhavikacr@gmail.com                                                ]

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

[                                                                    ]

FTX Non Customer Proof of Claim Form

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

[                                                                              ]

## Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[                                                                              ]

## If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

| $ | 7,004,069.95 |

Does this amount include interest or other charges?

○ No
◉ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

[                                                                              ]

(ii) the amount in such currency

[                                                                              ]

(iii) a conversion rate to U.S. dollars

[                                                                              ]

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
|           |       |           |       |
| Coin List | Count | Coin List | Count |
|           |       |           |       |
| Coin List | Count | Coin List | Count |
|           |       |           |       |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

| Alameda Research Ltd Money Loan (inclusive of principal and interest) as of October 2022. |

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

FTX Non Customer Proof of Claim Form

☐ Motor vehicle

☐ Other

Describe:

[                                                                    ]

**Basis for perfection:**

[                                                                    ]

**Value of property (all amounts in US $ dollars):**

[                                        ]

**Amount of the claim that is secured (all amounts in US $ dollars):**

[                                        ]

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

[                                        ]

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

[                                        ]

Annual Interest Rate (when case was filed) % -      Annual Interest Rate (when case was filed) %:
○ Fixed
○ Variable                                          [                                        ]

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

[                                                                    ]

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property.

[                                                                    ]

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No
○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case (s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ◉ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

| 07/08/2024 |

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

| Bhavika Chunawala |

Title/Company:

|  |

FTX Non Customer Proof of Claim Form

Address 1:

511, Madanjapa road, Naswadi, Gujarat, India

Address 2:

City:

Naswadi

State or Province (use 2-letter abbreviation if US or Canada):

Zip Code | Postal Code:

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

India

Contact phone:

8140501421

Contact email:

bhavikacr@gmail.com

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

● I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| 🗋 Alameda_Loan_Documents-merged.pdf | 1 MB |
|---|---|

**Attachment Filename**

Alameda_Loan_Documents-merged.pdf

# Alameda Research

**LOAN AGREEMENT**

Principal Amount: 6,000,000 USDC                    Effective Date: May 19, 2021

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Bhavika Chunawala ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.  REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

2

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

## C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

## ARTICLE III.        REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

3

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.        COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.        NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

    1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

    2) the liquidation or dissolution of the Borrower;

    3) the filing of bankruptcy proceedings by the Borrower;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

    7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

    8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

    9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

   1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

   2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

   3)  is independently developed by that other Party; or

   4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.        SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.        MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **511,** Madanjapa road, Naswadi, Gujarat, India | Bhavikacr@gmail. | Bhavika Chunawala |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | sam@alameda-research.com | Samuel Bankman-Fried |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION**

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution (**"Center"**) in accordance with its International Arbitration Rules (**"Rules"**) in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By: *Samuel Bankman-Fried*                                    *Bhavika Chunawala*
Samuel Bankman- Fried, CEO                              Bhavika Chunawala

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| BTC | 96.3596376 |
| USDC | 3,000,000 |
|  |  |
|  |  |

The following is the agreed upon collateral for this loan provided by borrower to the lender.

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,000,00 |
| BTC | 0 |
|  |  |
|  |  |

9

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c



Audit trail

| | |
|---|---|
| **Title** | Alameda Loan Documents |
| **File name** | Bhavika_Alameda_Loan_Agreement.pdf |
| **Document ID** | 7ja270p85didd0f7f864529e253c64dfa2d8b436c |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **05 / 19 / 2021**<br>10:49:58 UTC | Sent for signature to Bhavika Chunawala (bhavikacr@gmail.com) from sam@alameda-research.com com IP: 104.234.245.255 |
| VIEWED | **05 / 19 / 2021**<br>17:32:31 UTC | Viewed by Bhavika Chunawala (bhavikacr@gmail.com) IP: 152.58.34.203 |
| SIGNED | **05 / 19 / 2021**<br>17:39:14 UTC | Signed by Bhavika Chunawala (bhavikacr@gmail.com) IP: 152.58.34.60 |
| COMPLETED | **05 / 19 / 2021**<br>17:39:14 UTC | The document has been completed. |



**LOAN AGREEMENT**

Principal Amount: 6,500,000 USDC                    Effective Date: February 01, 2022

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Bhavika Chunawala ("**Lender**" and, together with Borrower,the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II. REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

2

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.          REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

3

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.        COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.        NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

## ARTICLE VI.        COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

## ARTICLE VII.        DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

## ARTICLE VIII.        CONFIDENTIALITY

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that theParty's obligations under this Article VIII shall expire on the date falling one (1) year after the expirationor termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

3)  is independently developed by that other Party; or

4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.        SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.        MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out belowand indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | 511, Madanjapa road, Naswadi, Gujarat, India | Bhavikacr@gmail. | Bhavika Chunawala |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that:
(i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (orparts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

## ARTICLE XI.         GOVERNING LAW AND DISPUTE RESOLUTION

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By:_____                                  _____
Caroline Ellison, Co CEO                                              Bhavika Chunawala

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,500,00 |
|  |  |
|  |  |
|  |  |

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

 **HELLOSIGN**

Audit trail

| | |
|---|---|
| **Title** | Bhavika Alameda Loan Agreement 01/02/2022 |
| **File name** | LOAN_AGREEMENT_2_01_02_2022.pdf |
| **Document ID** | a3005j326ap64di4173b306522b3d56cf5ef21db |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**SENT**
**02 / 01 / 2022**
09:34:52 UTC

Sent for signature to Bhavika Chunawala
(bhavikacr@gmail.com) from caroline@alameda-research.com
IP: 104.234.245.255

**VIEWED**
**02 / 01 / 2022**
09:35:14 UTC

Viewed by Bhavika Chunawala (bhavikacr@gmail.com)
IP: 152.59.32.17

**SIGNED**
**02 / 01 / 2022**
09:38:09 UTC

Signed by Bhavika Chunawala (bhavikacr@gmail.com)
IP: 152.59.32.17

**COMPLETED**
**02 / 01 / 2022**
09:38:09 UTC

The document has been completed.

**EXHIBIT B**

| EXHIBIT B | |
| --- | --- |
| **BHAVIKA CHUNAWALA** | |
| BHAVIKA USDC 6,000,000 LOAN TO ALAMEDA RESEARCH LTD | |
| SCHEDULE OF COMPOUND INTEREST ADDED TO PRINCIPAL BALANCE | |
| | **IN USDC** |
| Interest at 10% per annum | |
| May 19, 2021 USDC 6,000,000 original principal amount paid to Alameda Research Ltd | 6,000,000.00 |
| May 2021 Interest Payment | 19,726.02 |
| June 2021 Interest Payment | 50,164.38 |
| July 2021 Interest Payment | 50,582.42 |
| August 2021 Interest Payment | 51,003.94 |
| September 2021 Interest Payment | 51,428.97 |
| October 2021 Interest Payment | 51,857.55 |
| November 2021 Interest Payment | 52,289.69 |
| December 2021 Interest Payment | 52,725.44 |
| January 2022 Interest Payment | 53,164.82 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 6,432,943.24 |
| Important things are Differences of 67,056.76 USDC are paying to Alameda Research on 30/01/2022. | |
| Then After 01/02/2022 New Loan Agreement With ALAMEDA RESEARCH LTD. With 6,500,000 USDC | 6,500,000.00 |
| February 2022 Interest Payment | 54,166.67 |
| March 2022 Interest Payment | 54,618.06 |
| April 2022 Interest Payment | 55,073.21 |
| May 2022 Interest Payment | 55,532.15 |
| June 2022 Interest Payment | 55,994.92 |
| July 2022 Interest Payment | 56,461.54 |
| August 2022 Interest Payment | 56,932.05 |
| September 2022 Interest Payment | 57,406.49 |
| October 2022 Interest Payment | 57,884.88 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 7,004,069.95 |
| | |
| One cent difference than email correspondence with Alameda Research Ltd | |

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.



Gmail - October 2022 Loan balance with Alameda Research

Bhavika Chunawala <bhavikacr@gmail.com>

---

**October 2022 Loan balance with Alameda Research**

**operations@alameda-research.com** <operations@alameda-research.com>                           Fri, May 24, 2024 at 12:00 PM
Reply-To: operations@alameda-research.com
To: Bhavika <bhavikacr@gmail.com>, Alameda Research <info@alameda-research.com>
Cc: Caroline <caroline@alameda-research.com>, Samuel <sam@alameda-research.com>

Hi Bhavika,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in February 2022:
Starting principal for October 2022 interest calculation: USDC 6,946,185.08
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 57,884.88
Principal as of 31 October 2022 for next month's interest accrual: USDC 7,004,069.95

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:36 PM GMT+8 operations@alameda-research.com wrote:
>
> Hi Bhavika,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in February 2022:
> Starting principal for September 2022 interest calculation: USDC 6,888,778.59
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USDC 57,406.49
> Principal as of 30 September 2022 for next month's interest accrual: USDC 6,946,185.08
>
> Please let us know if you have any questions.
>
> Regards,
> Alice
>
>> On September 2, 2022 at 9:39 PM GMT+8 operations@alameda-research.com wrote:
>>
>> Hi Bhavika,
>>
>> As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 August 2022:
>>
>> For the loan entered in February 2022:
>> Starting principal for August 2022 interest calculation: USDC 6,831,846.54
>> Agreed interest rate: 10.0% p.a.
>> Interest for August 2022: USDC 56,932.05
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 6,888,778.59
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice
>>
>>> On August 2, 2022 at 9:22 PM GMT+8 operations@alameda-research.com wrote:
>>>
>>> Hi Bhavika,
>>>
>>> As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 31 July 2022:
>>>
>>> For the loan entered in February 2022:
>>> Starting principal for July 2022 interest calculation: USDC 6,775,384.99
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for July 2022: USDC 56,461.54
>>> Principal as of 31 July 2022 for next month's interest accrual: USDC 6,831,846.54
>>>
>>> Please let us know if you have any questions.
>>>
>>> Regards,
>>> Alice
>>>
>>>> On July 6, 2022 at 3:16 PM GMT+8 info@alameda-research.com wrote:
>>>>
>>>> Hi Bhavika,
>>>>
>>>> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
>>>> Please see the loan summary below as of 30 June 2022:
>>>>
>>>> For the loan entered in February 2022:
>>>> Starting principal for June 2022 interest calculation: USDC 6,719,390.08
>>>> Agreed interest rate: 10.0% p.a.
>>>> Interest for June 2022: USDC 55,994.92
>>>> Principal as of 30 June 2022 for next month's interest accrual: USDC 6,775,384.99

Please let us know if you have any questions.

Regards,
Alice

On June 3, 2022, 12:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 May 2022:

For the loan entered in February 2022:
Starting principal for May 2022 interest calculation: USDC 6,663,857.93
Agreed interest rate: 10.0% p.a.
Interest for May 2022: USDC 55,532.15
Principal as of 31 May 2022 for next month's interest accrual: USDC 6,719,390.08

Please let us know if you have any questions.

Regards,
Alice

On May 3, 2022, 8:14 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
Please see the loan summary below as of 30 April 2022:

For the loan entered in February 2022:
Starting principal for April 2022 interest calculation: USDC 6,608,784.72
Agreed interest rate: 10.0% p.a.
Interest for April 2022: USDC 55,073.21
Principal as of 30 April 2022 for next month's interest accrual: USDC 6,663,857.93

Please let us know if you have any questions.

Regards,
Alice

On April 6, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the March 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 March 2022:

For the loan entered in February 2022:
Starting principal for March 2022 interest calculation: USDC 6,554,166.67
Agreed interest rate: 10.0% p.a.
Interest for March 2022: USDC 54,618.06
Principal as of 31 March 2022 for next month's interest accrual: USDC 6,608,784.72

Please let us know if you have any questions.

Regards,
Alice

On March 3, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

For your new loan executed on 1 February 2022, we have accrued the February 2022 interest and rolled it into the principal.
Please see the loan summary below as of 28 February 2022:

For the loan entered in February 2022:
Starting principal for February 2022 interest calculation: USDC 6,500,000.00
Agreed interest rate: 10.0% p.a.
Interest for February 2022: USDC 54,166.67
Principal as of 28 February 2022 for next month's interest accrual: USDC 6,554,166.67

Please let us know if you have any questions.

Regards,

Alice

On January 31, 2022, 3:04 AM Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

Thank you for your response.

Please let us know if you have any questions.

Regards,
Alice

On January 24, 2022 at 1:18 AM GMT+8 bhavikacr@gmail.com wrote:

Thank you for the update.
I wish to continue lending with Alameda Research under the new terms. Please proceed with organizing the new loan
Agreement for signing at the 10% per annum interest rate starting from February 1, 2022. I' m already discussed it.

Thank you for the clarification.

Best regards,
Bhavika,

On January 24, 2022 2:30 AM GMT+8 Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

The final loan summary as at 31 January 2022 is as follows

For the loan entered in May 2021:
Starting principal for January 2022 interest calculation: USDC 6,379,778.42
Agreed interest rate: 10.0% p.a.
Interest for January 2022: USDC 53,164.82
Principal and accumulated interest as at 31 January 2022: USDC 6,432,943.24

Please confirm your USD wire details or USDC address and we will return the total loan and
accumulated interest of USDC 6,432,943.24 on 31 January 2022.

Regards,
Alice

On January 22, 2022 at 1:18 AM GMT+8 bhavikacr@gmail.com wrote:

Thank you for the update.

I wish to continue lending with Alameda Research under the new terms. Please proceed
with organizing the new loan agreement for signing at the 10% per annum interest rate
starting from February 1, 2022.

Thank you for the clarification.

Best regards,
Bhavika,

On January 18, 2022 12:30 PM GMT+8 Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

Alameda Research has decided to close your outstanding loans on 31 Jan 2022.

Should you wish to continue lending, a rate of 10% p.a. will be offered from 1 Feb 2022  and a new loan
agreement will need to be signed with Alameda Research LTD. This  new loan agreement will replace your
previous loan agreements.

Please respond as soon as possible to this email stating whether you would like to  have your loans and
accumulated interest returned on 31 Jan 2022 or a new loan  agreement organized for signing.

Regards,
Alice

On January 5, 2022, 11:33 AM GMT+8 info@alameda-research.com  wrote:

Hi Bhavika,

As per the previous month, we have accrued the December 2021 interest and rolled it into the principal.
Please see the loan summary below as of 31 December 2021:

For the loan entered in May 2021:
Starting principal for December 2021 interest calculation: USDC 6,327,052.98
Agreed interest rate: 10.0% p.a.
Interest for December 2021: USDC 52,725.44
Principal as of 31 December 2021 for next month's interest accrual: USDC 6,379,778.42

Please let us know if you have any questions.

Regards,
Alice

Gmail - Balance with Alameda-3

On December 6, 2021, 3:15 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the  November 2021 interest and rolled it into the principal.
Please see the loan summary below as of 30 November  2021:

For the loan entered in May 2021:
Starting principal for November 2021 interest calculation: USDC 6,274,763.28
Agreed interest rate: 10.0% p.a.
Interest for November 2021: USDC 52,289.69
Principal as of 30 November 2021 for next month's interest accrual: USDC 6,327,052.97

Please let us know if you have any questions.

Regards,
Alice

On November 3, 2021, 9:38 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued  the October 2021 interest and rolled it into  the principal.
Please see the loan summary below as of 31 October 2021:

For the loan entered in May 2021:
Starting principal for October 2021 interest  calculation: USDC 6,222,905.74
Agreed interest rate: 10.0% p.a.
Interest for October 2021: USDC 51,857.55
Principal as of 31 October 2021 for next month's interest accrual: USDC 6,274,763.28

Please let us know if you have any  questions.

Regards,
Alice

On October 3, 2021 at 9:09 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the September 2021 interest and rolled it into the
principal.
Please see the loan  summary below as of 30 September 2021:

For the loan entered in May 2021:
Starting principal for September 2021 interest Calculation: USDC 6,171,476.76
Agreed interest rate: 10.0%  p.a.
Interest for September 2021: USDC 51,428.97
Principal as of 30 September 2021 for next month's interest accrual: USDC 6,222,905.74

Please let us know if you  have any questions.

Regards,
Alice

On September 2, 2021 at 6:36 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the August 2021 interest and  rolled it into the
principal.
Please see the loan  summary below as of 31 August 2021:

For the loan entered in May 2021:
Starting principal for August 2021 interest Calculation: USDC 6,120,472.82
Agreed interest rate: 10.0% p.a.
Interest for September 2021: USDC 51,003.94
Principal as of 31 August 2021 for next month's interest accrual: USDC 6,171,476.76

Please let us know if you  have any questions.

Regards,
Alice

On August 4, 2021 at 9:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the July 2021 interest and  rolled it
into the principal.
Please see the loan  summary below as of 31 July 2021:

For the loan entered in May 2021:
Starting principal for July 2021 interest Calculation: USDC 6,069,890.40
Agreed interest rate: 10.0%  p.a.

Interest for July 2021: USDC 50,582.42
Principal as of 31 July 2021 for next month's interest accrual: USDC 6,120,472.82

Please let us know if you  have any questions.

Regards,
Alice

On July 2, 2021 at 9:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the June 2021 interest and  rolled it into the principal.
Please see the loan  summary below as of 30 June 2021:

For the loan entered in May 2021:
Starting principal for June 2021 interest Calculation: USDC 6,019,726.02
Agreed interest rate: 10.0%  p.a.
Interest for June 2021: USDC 50,164.38
Principal as of 30 June 2021 for next month's interest accrual: USDC 6,069,890.40

Please let us know if you  have any questions.

Regards,
Alice

On June 4, 2021 at 7:20 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As discussed, you will start receiving emails of your loan summary from this month.
Please see the loan summary below as of 30 May 2021:

For the loan entered in May 2021:
Starting principal for May 2021 interest Calculation: USDC 6,000,000.00
Agreed interest rate: 10.0%  p.a.
Interest for May 2021: USDC 19,726.02
Principal as of 31 May 2021 for next month's interest accrual: USDC 6,019,726.02

Please let us know if you  have any questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

dcd0e508de06b7a5d2ff3bb95cae3d3532d23f18

Submitted Date Time

2024-07-08T19:16:27.532Z

Status

Submitted

CONFIRMATION ID

3265-69-UQFCL-545204469

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

# Exhibit 3

# FTX Non Customer Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

[                                                    ]

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑ Check here to see further instructions on completing your claim form:

**Claim Number: 95771**

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ◉ Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
● Yes

First Name

| Rupesh |

Middle Name

| |

Last Name

| Rajput |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

[                                                                    ]

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

[ Rupesh Rajput                                                     ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ 1, Freeman's Lane, Hayes, London, United Kingdom                  ]

Address 2:

[                                                                    ]

Address 3:

[                                                                    ]

Address 4:

[                                                                    ]

City:

[ London                                                            ]

State or Province (use 2-letter abbreviation if US or Canada):

[                                                                    ]

Zip Code | Postal Code:

[                                                                    ]

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

[ United Kingdom                                                    ]

Contact phone:

[ 7796847562                                                        ]

Contact email:

[ rupesh190190@outlook.com                                          ]

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

[                                                                    ]

FTX Non Customer Proof of Claim Form

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

○ No
○ Yes

Who made the earlier filing?

[ ]

## Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[ ]

## If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

$ [ 2586026.59 ]

Does this amount include interest or other charges?

○ No
◉ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

[ ]

(ii) the amount in such currency

[ ]

(iii) a conversion rate to U.S. dollars

[ ]

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| | | | |
| Coin List | Count | Coin List | Count |
| | | | |
| Coin List | Count | Coin List | Count |
| | | | |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Alameda Research Ltd Money Loan (inclusive of principal and interest) as of October 2022.

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

FTX Non Customer Proof of Claim Form

☐ Motor vehicle

☐ Other

Describe:

[                                                                              ]

**Basis for perfection:**

[                                                                              ]

**Value of property (all amounts in US $ dollars):**

[                                        ]

**Amount of the claim that is secured (all amounts in US $ dollars):**

[                                        ]

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

[                                        ]

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

[                                        ]

Annual Interest Rate (when case was filed) % -                      Annual Interest Rate (when case was filed) %:

  ○ Fixed

  ○ Variable                                                      [                                        ]

**10. Is this claim based on a lease?**

  ◉ No

  ○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

[                                                                              ]

**11. Is this claim subject to a right of setoff?**

  ◉ No

  ○ Yes

Identify the property.

[                                                                              ]

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

  ◉ No

  ○ Yes

  ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

  ☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

  ☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

  ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

  ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

  ☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

  ◉ No

  ○ Yes.

FTX Non Customer Proof of Claim Form

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case (s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ⦿ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

### Executed on date (Calculated in UTC)

07/08/2024

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

Rupesh Rajput

Title/Company:

FTX Non Customer Proof of Claim Form

Address 1:

1, Freeman's Lane, Hayes, London, United Kingdom

Address 2:

City:

London

State or Province (use 2-letter abbreviation if US or Canada):

Zip Code | Postal Code:

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

United Kingdom

Contact phone:

7796847562

Contact email:

rupesh190190@outlook.com

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| | |
|---|---|
| 📄 Rupesh_Alameda Loan Print-merged.pdf | 1 MB |

**Attachment Filename**

Rupesh_Alameda Loan Print-merged.pdf



**LOAN AGREEMENT**

Principal Amount: 2,500,000 USDC                    Effective Date: 1 July 2022

For value received and pursuant to the terms of this loan agreement ("Note"), Alameda Research LTD ("Borrower"), promises to pay to the order of Rupeshkumar Rajput ("Lender" and, together with Borrower, the "Parties" and each a "Party") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("Principal Amount") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("Calculation Date") at the rate of interest of ten per cent (10%) per annum ("Interest").

**ARTICLE I. TERMS OF REPAYMENT**

**A. Payment of Principal Amount**

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

**B. Payment of Interest**

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

**C. Interest Rollover**

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.  REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

2

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.                REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.        COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.        NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1)   is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2)   was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3)   is independently developed by that other Party; or

    4)   the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.          SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.          MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | 81, Freeman's Lane, Hayes, London, United Kingdom | Rupesh190190@outlook.com | Rupeshkumar Rajput |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | trabucco@alameda-research.com | Sam Trabucco |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.        GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By: _Sam Trabucco_
21B28E760228468
Sam Trabucco, Co-CEO                                        Rupeshkumar Rajput

8

DocuSign Envelope ID:

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 2,500,000 |
| | |
| | |
| | |

Name – Rupesh Rajput                                                    **EXHIBIT B**

**Loan Amount USDC**                                              **2,500,000**

**Loan Effective Date**                                          **1 July 2022**


Monthly Interest Rate @ 10% per annum

| Date | Principal | Interest Payment |
|------|-----------|------------------|
| **July 2022 Intrest** | **2,500,000** | **20,833.33** |
| **Aug 2022 Intrest** | | **21,350.69** |
| **Sep 2022 Intrest** | | **21,721.38** |
| **Oct 2022 Intrest** | | **22,121.19** |
| | | |
| **TOTAL UNPAID INTREST** | | **86,026.59** |
| **OUTSTANDING AMOUNT INCLUDING PRINCIPAL AND ACCRUDE UNPAID INTREST OWED TO CLAIMANT** | | **2,586,026.59** |

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.

## October 2022 Loan balance with Alameda Research

operations@alameda-research.com <operations@alameda-research.com>
Thu 3/11/2022 11:00 PM
To: Rupesh Rajput <rupesh190190@outlook.com>

Hi Rupesh,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in July 2022:
Starting principal for October 2022 interest calculation: USD 2,563,905.40
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USD 22,121.19
Principal as of 31 October 2022 for next month's interest accrual: USD 2,586,026.59

Please let us know if you have any questions.

Regards,
Alice


On Monday, October 3, 2022 at 9:50 PM, operations@alameda-research.com
    <operations@alameda-research.com> wrote:

    Hi Rupesh,

    As per the previous month, we have accrued the September 2022 interest and rolled it
    into the principal.
    Please see the loan summary below as of 30 September 2022:

    For the loan entered in July 2022:
    Starting principal for September 2022 interest calculation: USD 2,542,184.02
    Agreed interest rate: 10.0% p.a.
    Interest for September 2022: USD 21,721.38
    Principal as of 30 September 2022 for next month's interest accrual: USD 2,563,905.40

    Please let us know if you have any questions.

    Regards,
    Alice

    On Friday, September 2, 2022 at 9:04 PM, operations@alameda-research.com
    <operations@alameda-research.com> wrote:

        Hi Rupesh,

        As per the previous month, we have accrued the August 2022 interest and rolled it
        into the principal.
        Please see the loan summary below as of 31 August 2022:

        For the loan entered in July 2022:

Starting principal for August 2022 interest calculation: USD 2,520,833.33
Agreed interest rate: 10.0% p.a.
Interest for August 2022: USD 21,350.69
Principal as of 31 August 2022 for next month's interest accrual: USD 2,542,184.02

Please let us know if you have any questions.

Regards,
Alice


On Tuesday, August 2, 2022 at 6:18 PM, Rupesh Rajput
<rupesh190190@outlook.com>  wrote:

Thanks For valuable Information

Thanks
Rupesh

**From:** operations@alameda-research.com <operations@alameda-research.com>
**Sent:** Tuesday, August 2, 2022 1:37 PM
**To:** rupesh190190@outlook.com <rupesh190190@outlook.com>

**Cc:** Caroline<caroline@alameda-research.com>;
Alameda Research <info@alameda-research.com>

Hi Rupesh,

For your new loan executed on 1 July 2022, we have accrued the
July 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 July 2022:

For the loan entered in July 2022:
Starting principal for July 2022 interest calculation: USD
2,500,000.00
Agreed interest rate: 10.0% p.a.
Interest for July 2022: USD 20,833.33
Principal as of 31 July 2022 for next month's interestaccrual: USD
2,520,833.33

Please let us know if you have any questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

cb43b430c0ca4397425e0a5b0ddb60fdbb55e2f5

Submitted Date Time

2024-07-08T19:30:01.676Z

Status

Submitted

CONFIRMATION ID

3265-69-FCXXE-409160369

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

# Exhibit 4

## FTX Non Customer Proof of Claim Form

### Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

_____

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

### Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑  Check here to see further instructions on completing your claim form:

Claim Number: 95772

FTX Non Customer Proof of Claim Form

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ● Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
◉ Yes

First Name

| Palak |

Middle Name

| |

Last Name

| Rahevar |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

[                                                                    ]

**3. Where should notices and payments to the Creditor be sent?**
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

[ Palak Rahevar                                                     ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ 2, 100 Langley Road, Slough, London, SL3 7TB United Kingdom       ]

Address 2:

[                                                                    ]

Address 3:

[                                                                    ]

Address 4:

[                                                                    ]

City:

[ London                                                            ]

State or Province (use 2-letter abbreviation if US or Canada):

[                                                                    ]

Zip Code | Postal Code:

[                                                                    ]

**Is the creditor address outside of the US?**

○ No
◉ Yes

Country (if outside of the US):

[ United Kingdom                                                    ]

Contact phone:

[ 7436960095                                                        ]

Contact email:

[ Palakjayeshbairahevar@gmail.com                                   ]

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

[                                                                    ]

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

[                                                                                      ]


## Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

[                                                                                      ]

## If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

| $ | 2672418.70 |

Does this amount include interest or other charges?

○ No
◉ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

[                                                                                      ]

(ii) the amount in such currency

[                                                                                      ]

(iii) a conversion rate to U.S. dollars

[                                                                                      ]

**7b. List the number of each type and quantity of each coin owed as of the date case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|-----------|-------|-----------|-------|
|           |       |           |       |
| Coin List | Count | Coin List | Count |
|           |       |           |       |
| Coin List | Count | Coin List | Count |
|           |       |           |       |


## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Alameda Research Ltd Money Loan (inclusive of principal and interest) as of October 2022.

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

_____

**Basis for perfection:**

_____

**Value of property (all amounts in US $ dollars):**

_____

**Amount of the claim that is secured (all amounts in US $ dollars):**

_____

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

_____

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

_____

Annual Interest Rate (when case was filed) % -

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

_____

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

_____

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property.

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No
○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case (s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

FTX Non Customer Proof of Claim Form

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ● I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

07/08/2024

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

Palak Rahevar

Title/Company:

FTX Non Customer Proof of Claim Form

Address 1:

2, 100 Langley Road, Slough, London, SL3 7TB

Address 2:

United Kingdom

City:

London

State or Province (use 2-letter abbreviation if US or Canada):

Zip Code | Postal Code:

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

United Kingdom

Contact phone:

7436960095

Contact email:

Palakjayeshbairahevar@gmail.com

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

● I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| Palak_Alameda_Loan_Agreement-merged.pdf | 1 MB |

**Attachment Filename**

Palak_Alameda_Loan_Agreement-merged.pdf



**LOAN AGREEMENT**

Principal Amount: 2,500,000 USD                         Effective Date: 2022/03/01
Two Million Five Hundred Thousand
United States Dollar

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Palak Rahevar ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.  REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.          REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

## ARTICLE VI.          COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

## ARTICLE VII.          DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

## ARTICLE VIII.          CONFIDENTIALITY

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

3)  is independently developed by that other Party; or

4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.        SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.        MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

6

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **2,** 100 Langley Road, Slough, London, SL3 7TB United Kingdom | Palakjayeshbairahevar@gmail.com | Palak Rahevar |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

By: Caroline Ellision
198B1A7CC5A74E7
Caroline Ellison, Co-CEO

Palak Rahevar
77DC6CA2ADFD4E0...
Palak Rahevar

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USD | 2,500,000 |
| | |
| | |
| | |

NAME : PALAK RAHEVAR

**Exhibit - B**

| **Loan Amount USD** | **2,500,000** |
| **Loan Effective Date** | **1 March 2022** |

Monthly Interest Rate @ 10% per annum

| Date | Principal | Interest Payment |
| --- | --- | --- |
| **March 2022 Interest** | **2,500,000** | **20,760.33** |
| **APR 2022 Interest** | | **20,969.48** |
| **May 2022 Interest** | | **21,647.89** |
| **June 2022 Interest** | | **21,320.44** |
| **July 2022 Interest** | | **21,466.69** |
| **Aug 2022 Interest** | | **22,833.63** |
| **Sep 2022 Interest** | | **21,478.96** |
| **Oct 2022 Interest** | | **21,941.28** |

**TOTAL UNPAID INTREST** **172418.70**

**OUTSTANDING AMOUNT INCLUDING PRINCIPAL AND ACCRUDE UNPAID INTREST OWED TO CLAIMANT** **2672418.70**

**INTREST and CAPITAL Calculated by Email Correspondence with Alameda Research Ltd**

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.

 **Gmail**

palak <palakjayeshbairahevar @gmail.com>

---

# October 2022 Loan balance with Alameda Research

---

**info@alameda-research.com** <info@alameda-research.com>
Reply-To: info@alameda-research.com                                   Thu, Nov 3, 2022 at 3:19 PM
To: palak <palakjayeshbairahevar@gmail.com>
Cc: jen@alameda-research.com <jen@alameda-research.com>

Hi Palak,

We have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the new loan entered in February 2022:
Starting principal for October 2022 interest calculation: USD 2,650,477.42
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USD 21,941.28
Principal as of 31 October 2022 for next month's interest accrual: USD 2,672,418.70

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:36 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Palak,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in February 2022:
> Starting principal for September 2022 interest calculation: USD 2,628,998.46
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USD 21,478.96
> Principal as of 30 September 2022 for next month's interest accrual: USD 2,650,477.42
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

> On September 2, 2022 at 6:30 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Palak,
>
> As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 31 August 2022:
>
> For the loan entered in February 2022:

Starting principal for August 2022 interest calculation: USD 2,606,164.83
Agreed interest rate: 10.0% p.a.
Interest for August 2022: USD 22,833.63
Principal as of 31 August 2022 for next month's interest accrual: USD 2,628,998.46

Please let us know if you have any questions.

Regards,
Alice

> On August 2, 2022 at 7:49 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Palak,
>
> As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 31 July 2022:
>
> For the loan entered in March 2022:
> Starting principal for July 2022 interest calculation: USD 2,584,698.14
> Agreed interest rate: 10.0% p.a.
> Interest for July 2022: USD 21,466.69
> Principal as of 31 July 2022 for next month's interest accrual: USD 2,606,164.83
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On July 5, 2022 at 12:36 PM GMT+8 info@alameda-research.com wrote:
>>
>> Hi Palak,
>>
>> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 30 June 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for June 2022 interest calculation: USD 2,563,377.70
>> Agreed interest rate: 10.0% p.a.
>> Interest for June 2022: USD 21,320.44
>> Principal as of 30 June 2022 for next month's interest accrual: USD 2,584,698.14
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On June 3, 2022 at 11:53 AM GMT+8 info@alameda-research.com wrote:
>>>
>>> Hi Palak,
>>>
>>> As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 30 May 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for May 2022 interest calculation: USD 2,541,729.81

Agreed interest rate: 10.0% p.a.
Interest for May 2022: USD 21,647.89
Principal as of 31 May 2022 for next month's interest accrual: USD 2,563,377.70

Please let us know if you have any questions.

Regards,
Alice

On May 3, 2022 at 10:55 AM GMT+8 info@alameda-research.com wrote:

Hi Palak,

As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
Please see the loan summary below as of 30 April 2022:

For the loan entered in March 2022:
Starting principal for April 2022 interest calculation: USD 2,520,760.33
Agreed interest rate: 10.0% p.a.
Interest for April 2022: USD 20,969.48
Principal as of 30 April 2022 for next month's interest accrual: USD 2,541,729.81

Please let us know if you have any questions.

Regards,
Alice

On April 6, 2022 at 3:46 AM GMT+8 info@alameda-research.com wrote:

Hi Palak,

As discussed, you will start receiving email of your loan summary from this month.
Please see the loan summary below as of 31 March 2022:

For the loan entered in 1 March 2022:
Starting principal for March 2022 interest calculation: USD 2,500,000.00
Agreed interest rate: 10.0% p.a.
Interest for March 2022: USD 20,760.33
Principal as of 31 March 2022 for next month's interest accrual: USD 2,520,760.33

Please let us know if you have any questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

2fb8ad3f452ba5fd0e6ed9e3836020bd17e272cb

Submitted Date Time

2024-07-08T19:38:43.411Z

Status

Submitted

CONFIRMATION ID

3265-69-YPDDM-735386260

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

# Exhibit 5

FTX Non Customer Proof of Claim Form

## FTX Non Customer Proof of Claim Form

### Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

### Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☐ Check here to see further instructions on completing your claim form:

**Claim Number: 95773**

FTX Non Customer Proof of Claim Form

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ◉ Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

FTX Non Customer Proof of Claim Form

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
● Yes

First Name

| Yiling |

Middle Name

| |

Last Name

| Chen |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| cheryl.cyl0329@gmail.com |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

[                                                                      ]

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

[ Yiling Chen                                                          ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ P.O. Box 832                                                         ]

Address 2:

[                                                                      ]

Address 3:

[                                                                      ]

Address 4:

[                                                                      ]

City:

[ Manahawkin                                                           ]

State or Province (use 2-letter abbreviation if US or Canada):

[ NJ                                                                   ]

Zip Code | Postal Code:

[ 08050                                                                ]

**Is the creditor address outside of the US?**

◉ No
○ Yes

Contact phone:

[ 609-255-3171                                                         ]

Contact email:

[ cheryl.cyl0329@gmail.com                                             ]

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

○ No
◉ Yes

**Additional Address Block 1**

Name:

[ Yiling Chen                                                          ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ 5-1-1104, GUANGHUA XINGLIN                                           ]

Address 2:

NO. 256 TONGHUI SOUTH RD., QINGYANG DISTRICT

Address 3:

Address 4:

City:

Chengdu

State or Province (use 2-letter abbreviation if US or Canada):

Sichuan Province

Zip Code | Postal Code:

610000

Is the creditor address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

China

Contact phone:

+86 18782935518

Contact email:

cheryl.cyl0329@gmail.com

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

○ No
◉ Yes

Claim number on court claims registry (if known)

2188

Filed on:

5/25/2023

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

FTX Non Customer Proof of Claim Form

**If filing a claim for cryptocurrency, please fill in 7b.**

**7a. How much is the claim?**

| $ | 2051514.12 |

Does this amount include interest or other charges?

⦿ No
◯ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

(ii) the amount in such currency

(iii) a conversion rate to U.S. dollars

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| USDC | 2051514.12 | | |
| **Coin List** | **Count** | **Coin List** | **Count** |
| | | | |
| **Coin List** | **Count** | **Coin List** | **Count** |
| | | | |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Money loaned to Alameda Research Ltd

**9. Is all or part of the claim secured?**

⦿ No
◯ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

**Basis for perfection:**

**Value of property (all amounts in US $ dollars):**

**Amount of the claim that is secured (all amounts in US $ dollars):**

FTX Non Customer Proof of Claim Form

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

Annual Interest Rate (when case was filed) % -

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property.

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No
○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case (s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ◉ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

### Executed on date (Calculated in UTC)

| 07/09/2024 |
|---|

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

| Yiling Chen |
|---|

Title/Company:

| |
|---|

FTX Non Customer Proof of Claim Form

Address 1:

5-1-1104, GUANGHUA XINGLIN

Address 2:

NO. 256 TONGHUI SOUTH RD., QINGYANG DISTRICT

City:

CHENGDU

State or Province (use 2-letter abbreviation if US or Canada):

SICHUAN

Zip Code | Postal Code:

610000

Is this address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

China

Contact phone:

+86 18782935518

Contact email:

cheryl.cyl0329@gmail.com

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| | |
|---|---|
| 📄 merged loan agreements and email records.pdf | 998 KB |

**Attachment Filename**

merged loan agreements and email records.pdf



## LOAN AGREEMENT

Principal Amount: 1,400,000 USDC                    Effective Date: 2022/03/25

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of 1,400,000 USDC ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

**C. Prepayment Right of Borrower**

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

**ARTICLE III.         REPRESENTATIONS AND WARRANTIES**

**A. Lender's Representations**

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

### B. Borrower's Representations

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

### C. Definitions

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

### ARTICLE IV.          COVENANTS

### A. Information Rights

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

### ARTICLE V.          NO WITHHOLDING; TAXES

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

1)   is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

2)   was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

3)   is independently developed by that other Party; or

4)   the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.           SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.           MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **6-1-608,** Chengfei Road No. 383, Chengdu, Sichuan, Mainland China | Cheryl.cyl0329@gmail.com | Chen Yiling |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | trabucco@alameda-research.com | Sam Trabucco |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.        GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

By: _____

DocuSigned by:
*Sam Trabucco*
21B28E760228468...

Sam Trabucco, Co-CEO

DocuSigned by:
*Yiling Chan*
80BC3E91AA4A432...

Chen Yiling

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 1,400,000 |
|  |  |
|  |  |
|  |  |



**LOAN AGREEMENT**

Principal Amount: 545,064 USDC                    Effective Date: 2022/06/22

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Yiling Chen ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.        REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.            COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.            NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

    1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

    2) the liquidation or dissolution of the Borrower;

    3) the filing of bankruptcy proceedings by the Borrower;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

    7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

    8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

    9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1)   is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2)   was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3)   is independently developed by that other Party; or

    4)   the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.              SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.              MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
| --- | --- | --- | --- |
| Lender | Orchid 6, 127 S Ocean Rd, New Providence, Bahamas | cheryl.cyl0329@gmail.com | Yiling Chen |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.        GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

By: _____                    _____
    *Caroline Ellison*                                      *Yiling Chen*
    198B1A7CC5A74E7...                                      80BC3E91AA4A432...

Caroline Ellison, Co-CEO                                  Yiling Chen

DocuSign Envelope ID: 6EB24CA4-D681-498D-933B-675B8DC3D9E4

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 545,064 |
| | |
| | |
| | |

 **Gmail**

Chen Cheryl <cheryl.cyl0329@gmail.com>

## October 2022 Loan balance with Alameda Research
1 封邮件

**operations@alameda-research.com** <operations@alameda-research.com>
回复：operations@alameda-research.com
收件人：Chen Cheryl <cheryl.cyl0329@gmail.com>, Alameda Research <info@alameda-research.com>

Hi Cheryl,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in March 2022:
Starting principal for October 2022 interest calculation: USDC 1,474,093.67
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 12,519.70
Principal as of 31 October 2022 for next month's interest accrual: USDC 1,486,613.37

For the loan entered in June 2022:
Starting principal for October 2022 interest calculation: USDC 560,143.36
Agreed interest rate: 10.0%
Interest for October 2022: USDC 4,757.38
Principal as of 31 October 2022 for next month's interest accrual: USDC 564,900.75

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:32 PM GMT+8 operations@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in March 2022:
> Starting principal for September 2022 interest calculation: USDC 1,462,076.60
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USDC 12,017.07
> Principal as of 30 September 2022 for next month's interest accrual: USDC 1,474,093.67
>
> For the loan entered in June 2022:
> Starting principal for September 2022 interest calculation: USDC 555,576.98
> Agreed interest rate: 10.0%
> Interest for September 2022: USDC 4,566.39
> Principal as of 30 September 2022 for next month's interest accrual: USDC 560,143.36
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On September 2, 2022 at 9:04 PM GMT+8 operations@alameda-research.com wrote:
>>
>> Hi Cheryl,
>>
>> As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 August 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for August 2022 interest calculation: USDC 1,449,763.54
>> Agreed interest rate: 10.0% p.a.
>> Interest for August 2022: USDC 12,313.06
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 1,462,076.60
>>
>> For the loan entered in June 2022:
>> Starting principal for August 2022 interest calculation: USDC 550,898.12
>> Agreed interest rate: 10.0%
>> Interest for August 2022: USDC 4,678.86
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 555,576.98
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On August 2, 2022 at 7:22 PM GMT+8 operations@alameda-research.com wrote:
>>>
>>> Hi Cheryl,
>>>
>>> As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 31 July 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for July 2022 interest calculation: USDC 1,437,554.17
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for July 2022: USDC 12,209.36

Principal as of 31 July 2022 for next month's interest accrual: USDC 1,449,763.54

For the loan entered in June 2022:
Starting principal for July 2022 interest calculation: USDC 546,258.66
Agreed interest rate: 10.0%
Interest for July 2022: USDC 4,639.46
Principal as of 31 July 2022 for next month's interest accrual: USDC 550,898.12

Please let us know if you have any questions.

Regards,
Alice

> On July 6, 2022 at 2:17 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 June 2022:
>
> For the loan entered in March 2022:
> Starting principal for June 2022 interest calculation: USDC 1,425,834.98
> Agreed interest rate: 10.0% p.a.
> Interest for June 2022: USDC 11,719.19
> Principal as of 30 June 2022 for next month's interest accrual: USDC 1,437,554.17
>
> For the new loan entered on 22 June 2022:
> Starting principal for June 2022 interest calculation: USDC 545,064.00
> Agreed interest rate: 10.0%
> Interest for June 2022: USDC 1,194.66
> Principal as of 30 June 2022 for next month's interest accrual: USDC 546,258.66
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On June 3, 2022, 12:02 PM GMT+8 info@alameda-research.com wrote:
>>
>> Hi Cheryl,
>>
>> As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 May 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for May 2022 interest calculation: USDC 1,413,827.13
>> Agreed interest rate: 10.0% p.a.
>> Interest for May 2022: USDC 12,007.85
>> Principal as of 31 May 2022 for next month's interest accrual: USDC 1,425,834.98
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On May 3, 2022, 8:14 AM GMT+8 info@alameda-research.com wrote:
>>>
>>> Hi Cheryl,
>>>
>>> As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 30 April 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for April 2022 interest calculation: USDC 1,402,301.37
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for April 2022: USDC 11,525.76
>>> Principal as of 30 April 2022 for next month's interest accrual: USDC 1,413,827.13
>>>
>>> Please let us know if you have any questions.
>>>
>>> Regards,
>>> Alice

>>>> On April 6, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:
>>>>
>>>> Hi Cheryl,
>>>>
>>>> For your new loan executed on 25 March 2022, we have accrued the March 2022 interest and rolled it into the principal.
>>>> Please see the loan summary below as of 31 March 2022:
>>>>
>>>> For the loan entered in March 2022:
>>>> Starting principal for March 2022 interest calculation: USDC 1,400,000.00
>>>> Agreed interest rate: 10.0% p.a.
>>>> Interest for March 2022: USDC 2,301.37
>>>> Principal as of 31 March 2022 for next month's interest accrual: USDC 1,402,301.37
>>>>
>>>> Please let us know if you have any questions.

Regards,
Alice

On January 31, 2022, 2:20 PM GMT+8 cheryl.cyl0329@gmail.com wrote:

Yes, I have received it. Thanks!

On Mon, Jan 31, 2022 at 1:18 AM Alameda Research <info@alameda-research.com> wrote:
> Hi Cheryl,
>
> You should see this returned to your account by internal transfer.
>
> Please let us know if you did not receive this or have any questions.
>
> Regards,
> Alice
>
>
>
>> On January 26, 2022, 9:34 PM GMT+8 cheryl.cyl0329@gmail.com wrote:
>>
>> hi
>> my erc20 usdc address
>>
>> 0xcE5e3FF91da3E2d646fd8b6171ea6438d06774bC
>>
>> thanks！
>>
>> On Sat, Jan 22, 2022 at 8:28 AM Alameda Research <info@alameda-research.com> wrote:
>>> Hi Cheryl,
>>>
>>> Thank you for your response.
>>>
>>> The final loan summary as at 31 January 2022 is as follows:
>>>
>>> For the loan entered in October 2020:
>>> Starting principal for January 2022 interest calculation: USD 127,982.67
>>> Agreed interest rate: 20.0% p.a.
>>> Interest for January 2022: USD 2,173.95
>>> Principal and accumulated interest as at 31 January 2022: USD 130,156.62
>>>
>>> Please confirm your USD wire details or USDC address and we will return the total loan and
>>> accumulated interest of USD 130,156.62 on 31 January 2022.
>>>
>>> Regards,
>>> Alice
>>>
>>>
>>>
>>>> On January 22, 2022, 2:05 PM GMT+8 cheryl.cyl0329@gmail.com wrote:
>>>>
>>>> Hi,
>>>>
>>>> I would like to close the loan at the end of this month.
>>>>
>>>> Thanks,
>>>> Cheryl
>>>>
>>>> Alameda Research <info@alameda-research.com> 于2022年1月18日周二 下午11:36写
>>>> 道：
>>>>> Hi Cheryl,
>>>>>
>>>>> Alameda Research has decided to close your outstanding loans on 31 Jan 2022.
>>>>>
>>>>> Should you wish to continue lending, a rate of 10% p.a. will be offered from 1 Feb 2022
>>>>> and a new loan agreement will need to be signed with Alameda Research LTD. This
>>>>> new loan agreement will replace your previous loan agreements.
>>>>>
>>>>> Please respond as soon as possible to this email stating whether you would like to
>>>>> have your loans and accumulated interest returned on 31 Jan 2022 or a new loan
>>>>> agreement organised for signing.
>>>>>
>>>>> Regards,
>>>>> Alice
>>>>>
>>>>>
>>>>>
>>>>>> On January 5, 2022, 11:33 AM GMT+8 info@alameda-research.com
>>>>>> wrote:
>>>>>>
>>>>>> Hi Cheryl,
>>>>>>
>>>>>> As per the previous month, we have accrued the December 2021 interest
>>>>>> and rolled it into the principal.
>>>>>> Please see the loan summary below as of 31 December 2021:
>>>>>>
>>>>>> For the loan entered in October 2020:
>>>>>> Starting principal for December 2021 interest calculation: USD
>>>>>> 125,845.02
>>>>>> Agreed interest rate: 20.0% p.a.
>>>>>> Interest for December 2021: USD 2,137.64

Principal as of 31 December 2021 for next month's interest accrual: USD
127,982.67

Please let us know if you have any questions.

Regards,
Alice

On December 6, 2021, 2:15 PM GMT+8 info@alameda-research.com wrote:

Hi Cheryl,

As per the previous month, we have accrued the
November 2021 interest and rolled it into the principal.
Please see the loan summary below as of 30 November
2021:

For the loan entered in October 2020:
Starting principal for November 2021 interest calculation:
USD 123,809.79
Agreed interest rate: 20.0% p.a.
Interest for November 2021: USD 2,035.23
Principal as of 30 November 2021 for next month's interest
accrual: USD 125,845.02

Please let us know if you have any questions.

Regards,
Alice

On November 3, 2021, 9:38 PM GMT+8
info@alameda-research.com wrote:

Hi Cheryl,

As per the previous month, we have accrued
the October 2021 interest and rolled it into
the principal.
Please see the loan summary below as of 31
October 2021:

For the loan entered in October 2020:
Starting principal for October 2021 interest
calculation: USD 121,741.85
Agreed interest rate: 20.0% p.a.
Interest for October 2021: USD 2,067.94
Principal as of 31 October 2021 for next
month's interest accrual: USD 123,809.79

Please let us know if you have any
questions.

Regards,
Alice

On October 4, 2021, 7:25 AM
GMT+8
cheryl.cyl0329@gmail.com
wrote:

Thanks!

On Sun, Oct 3, 2021 at 9:09
PM Alameda Research
<info@alameda-
research.com> wrote:

Hi Cheryl,

As per the previous month,
we have accrued the
September 2021 interest and
rolled it into the principal.
Please see the loan
summary below as of 30
September 2021:

For the loan entered in
October 2020:
Starting principal for
September 2021 interest
calculation: USD 119,772.98
Agreed interest rate: 20.0%
p.a.
Interest for September 2021:
USD 1,968.87
Principal as of 30 September
2021 for next month's

interest accrual: USD 121,741.85

Please let us know if you have any questions.

Regards,
Alice

On September 2, 2021, 6:26 PM GMT+8 info@alameda-research.com wrote:

Hi Cheryl,

As discussed, you will start receiving emails of your loan summary from this month. Please see the loan summary below as of 31 August 2021:

For the loan entered in October 2020:
Starting principal for interest calculation: USD 100,000.00
Agreed interest rate: 20.0% p.a.
Interest from October 2020 to end of July 2021: USD 17,772.46
Interest for August 2021: USD 2,000.52
Principal as of 31 August 2021 for next month's interest accrual: USD 119,772.98

Please let us know if you have any questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

| 3695cd6a26421b8360be07517f2af8e6bd005000 |

Submitted Date Time

| 2024-07-09T02:14:38.514Z |

Status

| Submitted |

CONFIRMATION ID

| 3265-69-RTZDU-425443436 |

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

# Exhibit 6

# FTX Non Customer Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

_____

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑ Check here to see further instructions on completing your claim form:

Claim Number: 2488

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

- ○ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ◉ Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

FTX Non Customer Proof of Claim Form

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund, LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)


## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
● Yes

First Name

| YILING |

Middle Name

| |

Last Name

| CHEN |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

FTX Non Customer Proof of Claim Form

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

_____

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

YILING CHEN

Address 1 (Street address, "Care of:", or "Attention To:"):

P.O. Box 832

Address 2:

_____

Address 3:

_____

Address 4:

_____

City:

Manahawkin

State or Province (use 2-letter abbreviation if US or Canada):

NJ

Zip Code | Postal Code:

08050

**Is the creditor address outside of the US?**

◉ No
○ Yes

Contact phone:

609-255-3171

Contact email:

cheryl.cyl0329@gmail.com

**Should payments go to a different address?**

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

○ No
◉ Yes

**Additional Address Block 1**

Name:

YILING CHEN

Address 1 (Street address, "Care of:", or "Attention To:"):

6-1-608, Chengfei Road No. 383

FTX Non Customer Proof of Claim Form

Address 2:

Sichuan Province, China

Address 3:

Address 4:

City:

Chengdu

State or Province (use 2-letter abbreviation if US or Canada):

Sichuan Province

Zip Code | Postal Code:

610000

Is the creditor address outside of the US?

○ No
◉ Yes

Country (if outside of the US):

China

Contact phone:

+86 18782935518

Contact email:

cheryl.cyl0329@gmail.com

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

○ No
◉ Yes

Claim number on court claims registry (if known)

593

Filed on:

1/23/2023

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

FTX Non Customer Proof of Claim Form

### If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

$ [                                                    ]

Does this amount include interest or other charges?

○ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

[                                                    ]

(ii) the amount in such currency

[                                                    ]

(iii) a conversion rate to U.S. dollars

[                                                    ]

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| USDC | 2051514.12 | | |
| Coin List | Count | Coin List | Count |
| | | | |
| Coin List | Count | Coin List | Count |
| | | | |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Money loaned

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

[                                                    ]

**Basis for perfection:**

[                                                    ]

**Value of property (all amounts in US $ dollars):**

[                                                    ]

**Amount of the claim that is secured (all amounts in US $ dollars):**

[                                                    ]

FTX Non Customer Proof of Claim Form

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

[ ]

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

[ ]

Annual Interest Rate (when case was filed) % -

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

[ ]

**10. Is this claim based on a lease?**

⦿ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

[ ]

**11. Is this claim subject to a right of setoff?**

⦿ No
○ Yes

Identify the property.

[ ]

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

⦿ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

⦿ No
○ Yes.

**Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.**

[ ]

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ⦿ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

### Executed on date (Calculated in UTC)

05/25/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

YILING CHEN

Title/Company:

FTX Non Customer Proof of Claim Form

Address 1:

6-1-608, Chengfei Road No. 383

Address 2:

City:

Chengdu

State or Province (use 2-letter abbreviation if US or Canada):

Sichuan

Zip Code | Postal Code:

610000

Is this address outside of the US?

○ No
● Yes

Country (if outside of the US):

China

Contact phone:

609-255-3171

Contact email:

cheryl.cyl0329@gmail.com

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

● I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| 📄 merged loan agreements and email records.pdf | 998 KB |
|---|---|

**Attachment Filename**

merged loan agreements and email records.pdf



## LOAN AGREEMENT

Principal Amount: 1,400,000 USDC                    Effective Date: 2022/03/25

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of 1,400,000 USDC ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

## C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

## ARTICLE III.    REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.        COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.        NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

    1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

    2) the liquidation or dissolution of the Borrower;

    3) the filing of bankruptcy proceedings by the Borrower;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

    7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

    8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

    9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

   1)   is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

   2)   was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

   3)   is independently developed by that other Party; or

   4)   the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

**ARTICLE IX.          SEVERABILITY OF PROVISIONS**

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

**ARTICLE X.          MISCELLANEOUS**

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **6-1-608,** Chengfei Road No. 383, Chengdu, Sichuan, Mainland China | Cheryl.cyl0329@gmail.com | Chen Yiling |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | trabucco@alameda-research.com | Sam Trabucco |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

By: _____

Sam Trabucco, Co-CEO                                      Chen Yiling

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 1,400,000 |
|  |  |
|  |  |
|  |  |



**LOAN AGREEMENT**

Principal Amount: 545,064 USDC                                    Effective Date: 2022/06/22

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Yiling Chen ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

**ARTICLE I.    TERMS OF REPAYMENT**

**A. Payment of Principal Amount**

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

**B. Payment of Interest**

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

**C. Interest Rollover**

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

2

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.        REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.          COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.          DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.          CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3)  is independently developed by that other Party; or

    4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

**ARTICLE IX.**       **SEVERABILITY OF PROVISIONS**

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

**ARTICLE X.**       **MISCELLANEOUS**

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | Orchid 6, 127 S Ocean Rd, New Providence, Bahamas | cheryl.cyl0329@gmail.com | Yiling Chen |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.**          **GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By: _____            _____
Caroline Ellison, Co-CEO                              Yiling Chen

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 545,064 |
| | |
| | |
| | |

 Gmail

Chen Cheryl <cheryl.cyl0329@gmail.com>

## October 2022 Loan balance with Alameda Research
1 封邮件

**operations@alameda-research.com** <operations@alameda-research.com>
回复：operations@alameda-research.com
收件人：Chen Cheryl <cheryl.cyl0329@gmail.com>, Alameda Research <info@alameda-research.com>

Hi Cheryl,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in March 2022:
Starting principal for October 2022 interest calculation: USDC 1,474,093.67
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 12,519.70
Principal as of 31 October 2022 for next month's interest accrual: USDC 1,486,613.37

For the loan entered in June 2022:
Starting principal for October 2022 interest calculation: USDC 560,143.36
Agreed interest rate: 10.0%
Interest for October 2022: USDC 4,757.38
Principal as of 31 October 2022 for next month's interest accrual: USDC 564,900.75

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:32 PM GMT+8 operations@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in March 2022:
> Starting principal for September 2022 interest calculation: USDC 1,462,076.60
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USDC 12,017.07
> Principal as of 30 September 2022 for next month's interest accrual: USDC 1,474,093.67
>
> For the loan entered in June 2022:
> Starting principal for September 2022 interest calculation: USDC 555,576.98
> Agreed interest rate: 10.0%
> Interest for September 2022: USDC 4,566.39
> Principal as of 30 September 2022 for next month's interest accrual: USDC 560,143.36
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On September 2, 2022 at 9:04 PM GMT+8 operations@alameda-research.com wrote:
>>
>> Hi Cheryl,
>>
>> As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 August 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for August 2022 interest calculation: USDC 1,449,763.54
>> Agreed interest rate: 10.0% p.a.
>> Interest for August 2022: USDC 12,313.06
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 1,462,076.60
>>
>> For the loan entered in June 2022:
>> Starting principal for August 2022 interest calculation: USDC 550,898.12
>> Agreed interest rate: 10.0%
>> Interest for August 2022: USDC 4,678.86
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 555,576.98
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On August 2, 2022 at 7:22 PM GMT+8 operations@alameda-research.com wrote:
>>>
>>> Hi Cheryl,
>>>
>>> As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 31 July 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for July 2022 interest calculation: USDC 1,437,554.17
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for July 2022: USDC 12,209.36

Principal as of 31 July 2022 for next month's interest accrual: USDC 1,449,763.54

For the loan entered in June 2022:
Starting principal for July 2022 interest calculation: USDC 546,258.66
Agreed interest rate: 10.0%
Interest for July 2022: USDC 4,639.46
Principal as of 31 July 2022 for next month's interest accrual: USDC 550,898.12

Please let us know if you have any questions.

Regards,
Alice

> On July 6, 2022 at 2:17 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 June 2022:
>
> For the loan entered in March 2022:
> Starting principal for June 2022 interest calculation: USDC 1,425,834.98
> Agreed interest rate: 10.0% p.a.
> Interest for June 2022: USDC 11,719.19
> Principal as of 30 June 2022 for next month's interest accrual: USDC 1,437,554.17
>
> For the new loan entered on 22 June 2022:
> Starting principal for June 2022 interest calculation: USDC 545,064.00
> Agreed interest rate: 10.0%
> Interest for June 2022: USDC 1,194.66
> Principal as of 30 June 2022 for next month's interest accrual: USDC 546,258.66
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On June 3, 2022, 12:02 PM GMT+8 info@alameda-research.com wrote:
>>
>> Hi Cheryl,
>>
>> As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 May 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for May 2022 interest calculation: USDC 1,413,827.13
>> Agreed interest rate: 10.0% p.a.
>> Interest for May 2022: USDC 12,007.85
>> Principal as of 31 May 2022 for next month's interest accrual: USDC 1,425,834.98
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On May 3, 2022, 8:14 AM GMT+8 info@alameda-research.com wrote:
>>>
>>> Hi Cheryl,
>>>
>>> As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 30 April 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for April 2022 interest calculation: USDC 1,402,301.37
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for April 2022: USDC 11,525.76
>>> Principal as of 30 April 2022 for next month's interest accrual: USDC 1,413,827.13
>>>
>>> Please let us know if you have any questions.
>>>
>>> Regards,
>>> Alice

>>>> On April 6, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:
>>>>
>>>> Hi Cheryl,
>>>>
>>>> For your new loan executed on 25 March 2022, we have accrued the March 2022 interest and rolled it into the principal.
>>>> Please see the loan summary below as of 31 March 2022:
>>>>
>>>> For the loan entered in March 2022:
>>>> Starting principal for March 2022 interest calculation: USDC 1,400,000.00
>>>> Agreed interest rate: 10.0% p.a.
>>>> Interest for March 2022: USDC 2,301.37
>>>> Principal as of 31 March 2022 for next month's interest accrual: USDC 1,402,301.37
>>>>
>>>> Please let us know if you have any questions.

Regards,
Alice

On January 31, 2022, 2:20 PM GMT+8 cheryl.cyl0329@gmail.com wrote:

Yes, I have received it. Thanks!

On Mon, Jan 31, 2022 at 1:18 AM Alameda Research <info@alameda-research.com> wrote:

Hi Cheryl,

You should see this returned to your account by internal transfer.

Please let us know if you did not receive this or have any questions.

Regards,
Alice

On January 26, 2022, 9:34 PM GMT+8 cheryl.cyl0329@gmail.com wrote:

hi
my erc20 usdc address

0xcE5e3FF91da3E2d646fd8b6171ea6438d06774bC

thanks!

On Sat, Jan 22, 2022 at 8:28 AM Alameda Research <info@alameda-research.com> wrote:

Hi Cheryl,

Thank you for your response.

The final loan summary as at 31 January 2022 is as follows:

For the loan entered in October 2020:
Starting principal for January 2022 interest calculation: USD 127,982.67
Agreed interest rate: 20.0% p.a.
Interest for January 2022: USD 2,173.95
Principal and accumulated interest as at 31 January 2022: USD 130,156.62

Please confirm your USD wire details or USDC address and we will return the total loan and accumulated interest of USD 130,156.62 on 31 January 2022.

Regards,
Alice

On January 22, 2022, 2:05 PM GMT+8 cheryl.cyl0329@gmail.com wrote:

Hi,

I would like to close the loan at the end of this month.

Thanks,
Cheryl

Alameda Research <info@alameda-research.com> 于2022年1月18日周二 下午11:36写道：

Hi Cheryl,

Alameda Research has decided to close your outstanding loans on 31 Jan 2022.

Should you wish to continue lending, a rate of 10% p.a. will be offered from 1 Feb 2022 and a new loan agreement will need to be signed with Alameda Research LTD. This new loan agreement will replace your previous loan agreements.

Please respond as soon as possible to this email stating whether you would like to have your loans and accumulated interest returned on 31 Jan 2022 or a new loan agreement organised for signing.

Regards,
Alice

On January 5, 2022, 11:33 AM GMT+8 info@alameda-research.com wrote:

Hi Cheryl,

As per the previous month, we have accrued the December 2021 interest and rolled it into the principal.
Please see the loan summary below as of 31 December 2021:

For the loan entered in October 2020:
Starting principal for December 2021 interest calculation: USD 125,845.02
Agreed interest rate: 20.0% p.a.
Interest for December 2021: USD 2,137.64

Principal as of 31 December 2021 for next month's interest accrual: USD 127,982.67

Please let us know if you have any questions.

Regards,
Alice

On December 6, 2021, 2:15 PM GMT+8 info@alameda-research.com wrote:

Hi Cheryl,

As per the previous month, we have accrued the November 2021 interest and rolled it into the principal. Please see the loan summary below as of 30 November 2021:

For the loan entered in October 2020:
Starting principal for November 2021 interest calculation: USD 123,809.79
Agreed interest rate: 20.0% p.a.
Interest for November 2021: USD 2,035.23
Principal as of 30 November 2021 for next month's interest accrual: USD 125,845.02

Please let us know if you have any questions.

Regards,
Alice

On November 3, 2021, 9:38 PM GMT+8 info@alameda-research.com wrote:

Hi Cheryl,

As per the previous month, we have accrued the October 2021 interest and rolled it into the principal. Please see the loan summary below as of 31 October 2021:

For the loan entered in October 2020:
Starting principal for October 2021 interest calculation: USD 121,741.85
Agreed interest rate: 20.0% p.a.
Interest for October 2021: USD 2,067.94
Principal as of 31 October 2021 for next month's interest accrual: USD 123,809.79

Please let us know if you have any questions.

Regards,
Alice

On October 4, 2021, 7:25 AM GMT+8 cheryl.cyl0329@gmail.com wrote:

Thanks!

On Sun, Oct 3, 2021 at 9:09 PM Alameda Research <info@alameda-research.com> wrote:

Hi Cheryl,

As per the previous month, we have accrued the September 2021 interest and rolled it into the principal. Please see the loan summary below as of 30 September 2021:

For the loan entered in October 2020:
Starting principal for September 2021 interest calculation: USD 119,772.98
Agreed interest rate: 20.0% p.a.
Interest for September 2021: USD 1,968.87
Principal as of 30 September 2021 for next month's

interest accrual: USD
121,741.85

Please let us know if you
have any questions.

Regards,
Alice

On September
2, 2021, 6:26
PM GMT+8
info@alameda-
research.com
wrote:

Hi Cheryl,

As discussed,
you will start
receiving
emails of your
loan summary
from this
month.
Please see the
loan summary
below as of 31
August 2021:

For the loan
entered in
October 2020:
Starting
principal for
interest
calculation:
USD
100,000.00
Agreed interest
rate: 20.0%
p.a.
Interest from
October 2020
to end of July
2021: USD
17,772.46
Interest for
August 2021:
USD 2,000.52
Principal as of
31 August
2021 for next
month's
interest
accrual: USD
119,772.98

Please let us
know if you
have any
questions.

Regards,
Alice

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

38b687ccd1ffa8b8b8b355f9485eecc425bf3417

Submitted Date Time

2023-05-26T00:18:42.733Z

Status

Submitted

CONFIRMATION ID

3265-69-XHNEM-661893828

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE

# Exhibit 7

**United States Bankruptcy Court, District of Delaware**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|

Debtor: Alameda Research LTD

Case Number: 22-11067

[ Received

[JAN 2 3 2023

Kroll Restructuring Administration

## Modified Official Form 410

# Proof of Claim

[ ] Date Stamped Copy Returned
[ ] No Self-Addressed Stamped Envelope
[ ✗ ] No Copy Provided

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Yiling Chen

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Yiling Chen
Name
P.O. Box 832
Number     Street
Manahawkin     NJ     08050
City          State       ZIP Code

Contact phone   609-255-3171
Contact email   cheryl.cyl0329@gmail.com

Where should payments to the creditor be sent? (if different)

Name _____
Number     Street _____
City          State       ZIP Code

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

221106880000660

**Claim Number: 593**

Proof of Claim

page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____ 2051514.12 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No ☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |
| | *Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $_____ |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/19/2023
                    MM / DD / YYYY

Signature    *Yiling Chen*

**Name of the person who is completing and signing this claim:**

| Name | Yiling | | Chen |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | N/A | | |
| Company | N/A | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 6-1-608, Chengfei Road No. 383 | | |
| | Number    Street | | |
| | Chengdu, Sichuan Province, China | | |
| | City | State | ZIP Code |
| Contact phone | 609-255-3171 | Email | cheryl.cyl0329@gmail.com |

 Gmail

Chen Cheryl <cheryl.cyl0329@gmail.com>

---

## October 2022 Loan balance with Alameda Research
1 封邮件

---

**operations@alameda-research.com** <operations@alameda-research.com>
回复: operations@alameda-research.com
收件人: Chen Cheryl <cheryl.cyl0329@gmail.com>, Alameda Research <info@alameda-research.com>

Hi Cheryl,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in March 2022:
Starting principal for October 2022 interest calculation: USDC 1,474,093.67
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 12,519.70
Principal as of 31 October 2022 for next month's interest accrual: USDC 1,486,613.37

For the loan entered in June 2022:
Starting principal for October 2022 interest calculation: USDC 560,143.36
Agreed interest rate: 10.0%
Interest for October 2022: USDC 4,757.38
Principal as of 31 October 2022 for next month's interest accrual: USDC 564,900.75

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:32 PM GMT+8 operations@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in March 2022:
> Starting principal for September 2022 interest calculation: USDC 1,462,076.60
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USDC 12,017.07
> Principal as of 30 September 2022 for next month's interest accrual: USDC 1,474,093.67
>
> For the loan entered in June 2022:
> Starting principal for September 2022 interest calculation: USDC 555,576.98
> Agreed interest rate: 10.0%
> Interest for September 2022: USDC 4,566.39
> Principal as of 30 September 2022 for next month's interest accrual: USDC 560,143.36
>
> Please let us know if you have any questions.
>
> Regards,
> Alice
>
> > On September 2, 2022 at 9:04 PM GMT+8 operations@alameda-research.com wrote:
> >
> > Hi Cheryl,
> >
> > As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
> > Please see the loan summary below as of 31 August 2022:
> >
> > For the loan entered in March 2022:
> > Starting principal for August 2022 interest calculation: USDC 1,449,763.54
> > Agreed interest rate: 10.0% p.a.
> > Interest for August 2022: USDC 12,313.06
> > Principal as of 31 August 2022 for next month's interest accrual: USDC 1,462,076.60
> >
> > For the loan entered in June 2022:
> > Starting principal for August 2022 interest calculation: USDC 550,898.12
> > Agreed interest rate: 10.0%
> > Interest for August 2022: USDC 4,678.86
> > Principal as of 31 August 2022 for next month's interest accrual: USDC 555,576.98
> >
> > Please let us know if you have any questions.
> >
> > Regards,
> > Alice
> >
> > > On August 2, 2022 at 7:22 PM GMT+8 operations@alameda-research.com wrote:
> > >
> > > Hi Cheryl,
> > >
> > > As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
> > > Please see the loan summary below as of 31 July 2022:
> > >
> > > For the loan entered in March 2022:
> > > Starting principal for July 2022 interest calculation: USDC 1,437,554.17
> > > Agreed interest rate: 10.0% p.a.
> > > Interest for July 2022: USDC 12,209.36

Principal as of 31 July 2022 for next month's interest accrual: USDC 1,449,763.54

For the loan entered in June 2022:
Starting principal for July 2022 interest calculation: USDC 546,258.66
Agreed interest rate: 10.0%
Interest for July 2022: USDC 4,639.46
Principal as of 31 July 2022 for next month's interest accrual: USDC 550,898.12

Please let us know if you have any questions.

Regards,
Alice

> On July 6, 2022 at 2:17 PM GMT+8 info@alameda-research.com wrote:
>
> Hi Cheryl,
>
> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 June 2022:
>
> For the loan entered in March 2022:
> Starting principal for June 2022 interest calculation: USDC 1,425,834.98
> Agreed interest rate: 10.0% p.a.
> Interest for June 2022: USDC 11,719.19
> Principal as of 30 June 2022 for next month's interest accrual: USDC 1,437,554.17
>
> For the new loan entered on 22 June 2022:
> Starting principal for June 2022 interest calculation: USDC 545,064.00
> Agreed interest rate: 10.0%
> Interest for June 2022: USDC 1,194.66
> Principal as of 30 June 2022 for next month's interest accrual: USDC 546,258.66
>
> Please let us know if you have any questions.
>
> Regards,
> Alice

>> On June 3, 2022, 12:02 PM GMT+8 info@alameda-research.com wrote:
>>
>> Hi Cheryl,
>>
>> As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 May 2022:
>>
>> For the loan entered in March 2022:
>> Starting principal for May 2022 interest calculation: USDC 1,413,827.13
>> Agreed interest rate: 10.0% p.a.
>> Interest for May 2022: USDC 12,007.85
>> Principal as of 31 May 2022 for next month's interest accrual: USDC 1,425,834.98
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice

>>> On May 3, 2022, 8:14 AM GMT+8 info@alameda-research.com wrote:
>>>
>>> Hi Cheryl,
>>>
>>> As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 30 April 2022:
>>>
>>> For the loan entered in March 2022:
>>> Starting principal for April 2022 interest calculation: USDC 1,402,301.37
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for April 2022: USDC 11,525.76
>>> Principal as of 30 April 2022 for next month's interest accrual: USDC 1,413,827.13
>>>
>>> Please let us know if you have any questions.
>>>
>>> Regards,
>>> Alice

>>>> On April 6, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:
>>>>
>>>> Hi Cheryl,
>>>>
>>>> For your new loan executed on 25 March 2022, we have accrued the March 2022 interest and rolled it into the principal.
>>>> Please see the loan summary below as of 31 March 2022:
>>>>
>>>> For the loan entered in March 2022:
>>>> Starting principal for March 2022 interest calculation: USDC 1,400,000.00
>>>> Agreed interest rate: 10.0% p.a.
>>>> Interest for March 2022: USDC 2,301.37
>>>> Principal as of 31 March 2022 for next month's interest accrual: USDC 1,402,301.37
>>>>
>>>> Please let us know if you have any questions.



**LOAN AGREEMENT**

Principal Amount: 1,400,000 USDC                    Effective Date: 2022/03/25

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of 1,400,000 USDC ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

DocuSign Envelope ID: 6D3B4BA9-0663-420D-A030-4B05DE5B5BB45

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.    REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

DocuSign Envelope ID: 6D3E4BA9-0653-420D-A03D-4BD5DE5B3B45

### B. Borrower's Representations

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

### C. Definitions

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

### ARTICLE IV.        COVENANTS

### A. Information Rights

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

### ARTICLE V.        NO WITHHOLDING; TAXES

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

DocuSign Envelope ID: 6D3B4BA9-0B53-420D-A330-1B15DE5B0BB4B

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

## ARTICLE VI.        COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

## ARTICLE VII.        DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

## ARTICLE VIII.        CONFIDENTIALITY

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1) is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2) was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3) is independently developed by that other Party; or

    4) the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

**ARTICLE IX.**        **SEVERABILITY OF PROVISIONS**

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

**ARTICLE X.**        **MISCELLANEOUS**

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | 6-1-608, Chengfei Road No. 383, Chengdu, Sichuan, Mainland China | Cheryl.cyl0329@gmail.com | Chen Yiling |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands | trabucco@alameda-research.com | Sam Trabucco |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.**        **GOVERNING LAW AND DISPUTE RESOLUTION**

DocuSign Envelope ID: 6D3B4BA9-0B53-420D-A03D-4D35DE5B0BB4B

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


DocuSigned by:

Sam Trabucco

By: _____
21B28E760228468...

Sam Trabucco, Co-CEO


DocuSigned by:

Yiling Chan

80BC3E91AA4A432...

Chen Yiling

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 1,400,000 |
| | |
| | |
| | |



## LOAN AGREEMENT

Principal Amount: 545,064 USDC                    Effective Date: 2022/06/22

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Yiling Chen ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.   REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.          REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

## B. Borrower's Representations

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

## C. Definitions

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

## ARTICLE IV.        COVENANTS

### A. Information Rights

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

## ARTICLE V.        NO WITHHOLDING; TAXES

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

## ARTICLE VI.          COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

## ARTICLE VII.          DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

2) the liquidation or dissolution of the Borrower;

3) the filing of bankruptcy proceedings by the Borrower;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

## ARTICLE VIII.          CONFIDENTIALITY

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1) is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2) was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3) is independently developed by that other Party; or

    4) the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

**ARTICLE IX.**      **SEVERABILITY OF PROVISIONS**

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

**ARTICLE X.**      **MISCELLANEOUS**

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

DocuSign Envelope ID: 6EB34CA4-D681-499D-843B-B7A8BD63D8F3

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | Orchid 6, 127 S Ocean Rd, New Providence, Bahamas | cheryl.cyl0329@gmail.com | Yiling Chen |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.        GOVERNING LAW AND DISPUTE RESOLUTION**

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

DocuSigned by:

*Caroline Ellision*

By: _____
198B1A7CC5A74E7...

Caroline Ellison, Co-CEO

DocuSigned by:

*Yiling Chen*
80BC3E91AA4A432...

Yiling Chen

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 545,064 |
| | |
| | |
| | |

Yiling Chen

P.O. Box 832

Manahawkin, NJ 08050



U.S. POSTAGE PAID
FCM LG ENV
PLEASANTVILLE, NJ
08232
JAN 20, 23
AMOUNT
**$2.16**
R2304M115348-14

RDC 99

11232

FTX Trading Ltd. Claims Processing Center

c/o Kroll Restructuring Administration LLC

850 3rd Avenue, Suite 412

Brooklyn, NY 11232

RECEIVED

JAN 23 2023

KROLL RESTRUCTURING
ADMINISTRATION

# Exhibit 8

**From:** Bhavika Chunawala <bhavikacr@gmail.com>
**Sent:** Friday, December 6, 2024 3:12 PM
**To:** Adam Landis <landis@lrclaw.com>; rosenthald@sullcrom.com; jensenc@sullcrom.com; Kim Brown <brown@lrclaw.com>
**Subject:** In response to the Debtor's inclusion of my claim (#95770) on their 119th Omnibus Objection

FTX Team,

My apologies for the delay. I have been arranging for Delaware counsel and will be filing a Motion to Allow Late Filing of the POC shortly. In response to the Debtor's inclusion of my claim (#95770) on their 119th Omnibus Objection:

The Objection states that "The Claimant did not provide proper documentation to support the asserted customer entitlement claim. Utilizing the information provided within the claim form and following a robust review of the books and records, the Debtors have not identified any liability owing to, or customer entitlement of, the claimant."

However the form and supporting documentation included makes clear that it is not asserting a customer entitlement claim but is rather on account of loans made by me to Alameda in 2021 and 2022. This loan remains outstanding and is a valid liability of the debtor. To my knowledge, I was never sent any notices regarding the bankruptcy filing or bar date so was left in the dark regarding my rights.

The forthcoming Motion to be filed will address the late-filing issues in more depth but in the meantime I hope that this, along with a more thorough review of my documents and FTX' records, will resolve the adjourned objection pending against my claim. I am available to discuss or provide any further information at your convenience.

Best regards,

# Exhibit 8A



**Bhavika Chunawala <bhavikacr@gmail.com>**

---

## [Binance] Withdrawal Successful - 2021-05-06 11:53:42 (UTC)
1 message

---

**Binance** <do-not-reply@post.binance.com>                         Thu, May 6, 2021 at 22:30 PM
To: bavikacr@gmail.com



# Withdrawal Successful

You've successfully withdrawn 5,585,190.00 BUSD to the address .
Your withdrawal address is 0x4ae82e70ef1a998B48F1E2b22AFCCc23E25aa798,txid is
0x158b65bcb178fc6f5154a7ee65fc9364790907302bee8063cabc47c761406265

If you don't recognize this activity, please contact us immediately at https://www.binance.com/en/
support.

Binance Team
This is an automated message, please do not reply.



© 2017 - 2020 Binance.com All Rights Reserved
URL: www.binance.com
E-mail: support@binance.zendesk.com

# Exhibit 8B



**LOAN AGREEMENT**

Principal Amount: 6,000,000 USDC                    Effective Date: May 19, 2021

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Bhavika Chunawala ("**Lender**" and, together with Borrower, the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.    TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II.  REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

### C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

### ARTICLE III.            REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

3

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

### ARTICLE VI.          COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

### ARTICLE VII.          DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

    1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

    2) the liquidation or dissolution of the Borrower;

    3) the filing of bankruptcy proceedings by the Borrower;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

    7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

    8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

    9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

### ARTICLE VIII.          CONFIDENTIALITY

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that the Party's obligations under this Article VIII shall expire on the date falling one (1) year after the expiration or termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

    1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

    2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

    3)  is independently developed by that other Party; or

    4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.              SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.              MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out below and indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
|---|---|---|---|
| Lender | **511,** Madanjapa road, Naswadi, Gujarat, India | Bhavikacr@gmail. | Bhavika Chunawala |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | sam@alameda-research.com | Samuel Bankman-Fried |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that: (i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (or parts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

**ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION**

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:

ALAMEDA RESEARCH LTD

By: *Samuel Bankman-Fried*
Samuel Bankman- Fried, CEO

*Bhavika Chunawala*
Bhavika Chunawala

8

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| BTC | 96.3596376 |
| USDC | 3,000,000 |
|  |  |
|  |  |

The following is the agreed upon collateral for this loan provided by borrower to the lender.

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,000,000 |
| BTC | 0 |
|  |  |
|  |  |

9

Doc ID: 7ja270p85didd0f7f864529e253c64dfa2d8b436c

 **HELLOSIGN**

Audit trail

| | |
|---|---|
| **Title** | Alameda Loan Documents |
| **File name** | Bhavika_Alameda_Loan_Agreement.pdf |
| **Document ID** | 7ja270p85didd0f7f864529e253c64dfa2d8b436c |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **05 / 19 / 2021**<br>10:49:58 UTC | Sent for signature to Bhavika Chunawala (bhavikacr@gmail.com) from sam@alameda-research.com com IP: 104.234.245.255 |
| **VIEWED** | **05 / 19 / 2021**<br>17:32:31 UTC | Viewed by Bhavika Chunawala (bhavikacr@gmail.com) IP: 152.58.34.203 |
| **SIGNED** | **05 / 19 / 2021**<br>17:39:14 UTC | Signed by Bhavika Chunawala (bhavikacr@gmail.com) IP: 152.58.34.60 |
| **COMPLETED** | **05 / 19 / 2021**<br>17:39:14 UTC | The document has been completed. |

# Exhibit 8C



## LOAN AGREEMENT

Principal Amount: 6,500,000 USDC                    Effective Date: February 01, 2022

For value received and pursuant to the terms of this loan agreement ("**Note**"), Alameda Research LTD ("**Borrower**"), promises to pay to the order of Bhavika Chunawala ("**Lender**" and, together with Borrower,the "**Parties**" and each a "**Party**") the number and amount of fiat and cryptocurrencies as set forth in Schedule 1 ("**Principal Amount**") with simple interest on the unpaid Principal Amount calculated from the date the Principal Amount is received by the Borrower ("**Calculation Date**") at the rate of interest of ten per cent (10%) per annum ("**Interest**").

## ARTICLE I.   TERMS OF REPAYMENT

### A. Payment of Principal Amount

Any unpaid Principal Amount shall be payable in full on the date falling one (1) year ("**Loan Period**") after the Calculation Date ("**Due Date**"), except as set forth in Article II below. Payments of Principal Amount shall be paid to Lender within seven (7) days of the Due Date ("**Loan Payment Date**").

### B. Payment of Interest

The rate of interest on this Loan is ten per cent (10%) per annum ("**Interest**").

Interest is payable monthly during the Loan Period (each month, an "**Interest Payment Period**"). The first Interest Payment Period shall calculate Interest from the Calculation Date to the end of the calendar month in which the Calculation Date falls. Each remaining Interest Payment Period shall calculate Interest from the first day of the calendar month to the last day of the calendar month. Interest shall be payable to Lender within seven (7) days after the last day of each calendar month (such date, an "**Interest Payment Date**"). The last Interest Payment Period shall calculate Interest from the first day of the month in which the Due Date falls to and inclusive of the Due Date and the last Interest Payment Date is the Loan Payment Date.

### C. Interest Rollover

By written notice to Borrower seven (7) days prior to any Interest Payment Date ("**Interest Rollover Notice**"), Lender may request that the Interest due and payable on any Interest Payment Date be added to the Principal Amount, with Interest for each subsequent Interest Payment Period to be calculated based on such sum of Interest and Principal Amount. For the avoidance of doubt, any Interest rolled over and summed with the Principal Amount pursuant to this Article I.C becomes due and payable on the Due Date.

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

**D. Payment in Kind**

Lender may, upon written consent by Borrower in its sole discretion, loan the Principal Amount to Borrower in the form of fiat or cryptocurrency or cryptocurrencies, or a combination thereof as set forth on Schedule 1. The same ratio of fiat and cryptocurrency or cryptocurrencies used by Lender to pay to Borrower the Principal Amount on the Calculation Date shall be used to define the ratio of the fiat or cryptocurrencies used to make any payments of any amounts payable or repayable to Lender pursuant to this Note, unless otherwise agreed in writing by the Parties.

**D. Acceleration of Debt**

If any payment obligation under this Note is not paid when due, the remaining unpaid Principal Amount and any accrued Interest shall become due immediately at the option of the Lender by written notice to the Borrower.

**ARTICLE II. REPAYMENT, PREPAYMENT AND ROLLOVER RIGHTS**

**A. Early Repayment Right of Lender**

By written notice to Borrower thirty (30) days in advance of a proposed early prepayment date ("**Early Prepayment Date**"), the Lender may require the early repayment (in whole or in part) of the Principal Amount ("**Early Repayment Amount**") without any prepayment penalty. If Lender requests early repayment for an Early Repayment Date falling between thirty (30) and seven (7) days prior to the Early Prepayment Date, Lender will be required to pay an early prepayment penalty of one per cent (1%). Borrower shall pay the Early Repayment Amount and Interest payable on the Early Repayment Amount (calculated pro rata on the Early Repayment Amount from the beginning of the Interest Payment Period in which the Early Prepayment Date falls to and inclusive of the Early Prepayment Date) ("**Repayment Amount**") within seven (7) days of receipt of the notice of Early Repayment from Lender ("**Repayment Date**").

Notwithstanding the above, Borrower shall remain liable for any amount outstanding on the Note, including any remaining Principal Amount and Interest payable thereon, along with any other obligations under this Note, until this Note terminates by its terms.

**B. Principal Amount Rollover**

Unless Borrower receives a written notice from Lender sixty (60) days prior to the Due Date ("**Loan Termination Notice**"), the Principal Amount shall not be repaid on the Due Date but shall be re-lent to Borrower on the same terms and conditions as set forth in this Note ("**Rollover Loan**"). The day subsequent to the Due Date shall become the first day for the purpose of the calculation of Interest on the Rollover Loan ("**Rollover Calculation Date**"). The Principal Amount of the Rollover Loan shall become due and payable on the date falling one (1) year after the Rollover Calculation Date ("**Rollover Due Date**").

For the avoidance of doubt, except as set forth in any Interest Rollover Notice received in accordance with Article I.C, any Interest due and payable on the Due Date shall not be added to the Principal Amount but paid to Lender on the Due Date. In the event an Interest Rollover Notice is duly received

2

by Borrower, the Interest payable on the Due Date shall be added to the Principal Amount, which such aggregate amount shall form the Principal Amount for the Rollover Loan.

In the event that, at any time before the Rollover Calculation Date, Lender and Borrower have agreed in writing that Lender will extend a loan to Borrower under terms and conditions that differ from the terms and conditions set forth in this Note (such terms being those other than, for the avoidance of doubt, the Calculation Date, Due Date and the sum of the Principal Amount and any Interest rolled over in accordance with this Note), Lender and Borrower shall enter into a new agreement setting forth such terms and conditions ("**New Loan Agreement**"), and this Note shall terminate upon the calculation date set forth in the New Loan Agreement. For the avoidance of doubt, if the Principal Amount due and payable on the Due Date pursuant to this Note is in excess of the principal amount to be lent pursuant to the New Loan Agreement, the excess must be paid to Lender on the Loan Repayment Date in accordance with this Note unless the New Loan Agreement expressly provides otherwise.

## C. Prepayment Right of Borrower

The Borrower reserves the right to prepay the Principal Amount and Interest (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the Principal Amount due under this Note and shall be accompanied by payment of accrued but unpaid Interest on the Principal Amount calculated to and inclusive of the date of prepayment ("**Prepayment Date**"). Interest on any remaining Principal Amount shall be calculated from the day immediately subsequent to the Prepayment Date to and inclusive of the Interest Calculation Date of the relevant Interest Payment Period on the same schedule already established pursuant to this Note.

## ARTICLE III.              REPRESENTATIONS AND WARRANTIES

### A. Lender's Representations

Lender represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Lender represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Lender represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be lent to Buyer pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

Lender further represents and warrants that it has full title over all fiat and cryptocurrencies to be lent to Borrower pursuant to this Note.

3

**B. Borrower's Representations**

Borrower represents and warrants that it has all requisite power and authority to enter into and perform all obligations under this Note and to carry on its business, and that this Note shall constitute valid and legally binding obligations of it, enforceable against it in accordance with its terms.

Borrower represents and warrants that it is not now under any obligation of a contractual or other nature to any person, firm, corporation or other entity which is inconsistent or in conflict with this Note or the performance of its obligations hereunder and that the execution, delivery and performance by the Lender of this Note will not result in it violating or breaching (i) any material contract to which it is a party; or (ii) any judgment, order, writ, decree or law applicable to it.

Borrower represents and warrants, to its knowledge, that the fiat and any cryptocurrencies to be paid by Buyer to Lender pursuant to this Note are not, and have not been, derived from any Prohibited Transaction or accepted from any Prohibited Person or has otherwise been obtained in violation of applicable law.

**C. Definitions**

For the purpose of this Article III:

"**Prohibited Person**" means any person who, whether directly or indirectly through any corporate form, family member, or associate, is engaged in criminal activity, including but not limited to bribery, money laundering, or terrorism.

"**Prohibited Transaction**" means any transfer of any kind whereby any property or economic advantage is derived from the proceeds of a crime, or is involved in money laundering, or is derived from terrorist financing.

**ARTICLE IV.          COVENANTS**

**A. Information Rights**

Borrower shall provide Lender with monthly statements affirming that the Borrower's assets are greater than the sum of its debts.

**ARTICLE V.          NO WITHHOLDING; TAXES**

All payments due and payable to Lender under this Note shall be made in freely transferable funds and exclude any tax ("**Taxes**") payable by Borrower, if any, and shall be made free and clear of all of withholdings, deductions, set-off and counterclaims under whatever circumstances. If any withholding or deduction shall be required by law to be made from any such payment, Borrower shall pay such additional amount as shall be required to ensure that the net amount received by Lender will equal the full amount which would have been received by Lender had no such withholding or deduction been made. Borrower further agrees to indemnify Lender against payment if it is required by law to collect and make payment in respect of such Taxes; provided however, that Lender shall be solely responsible for paying all income taxes resulting from the Interest paid to Lender.

4

Except as otherwise set forth in this Article V, all Taxes payable by Lender in any jurisdiction on any form of Interest paid by Borrower to Lender are the sole responsibility of Lender.

This Article V shall survive termination of this Note.

**ARTICLE VI.        COLLECTION COSTS**

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, accountants fees, valuation fees or such other third party service fees paid by Lender or Borrower in the aid of collection, whether or not a lawsuit is commenced as part of the collection process.

**ARTICLE VII.        DEFAULT**

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become payable within five (5) business days of the event occurring, without demand or notice:

    1) the failure of the Borrower to pay the Principal Amount and any accrued Interest when due;

    2) the liquidation or dissolution of the Borrower;

    3) the filing of bankruptcy proceedings by the Borrower;

    4) the application for the appointment of a receiver for the Borrower;

    5) the making of a general assignment for the benefit of the Borrower's creditors;

    6) the insolvency of the Borrower, meaning the inability of Borrower to pay its financial obligations when due;

    7) a material misrepresentation or omission by the Borrower to the Lender for the purpose of obtaining or extending credit;

    8) the sale of a material portion of the business of the Borrower (excluding any cryptocurrencies or other trading assets); or

    9) the breach of any representation or warranty or covenant provided by Borrower in this Note.

For the avoidance of doubt, event (8) is not intended to include the trading of financial assets.

**ARTICLE VIII.        CONFIDENTIALITY**

Each Party agrees that either Party's oral or written advice, information and reports given to the other Party, as well as communications between both Parties in connection with this Note, are confidential and may not be disclosed to any third party (other than either Party's advisors on a confidential and need-to-know basis, and such advisors may place no reliance on such advice or communications) or

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

discussed in public without the prior written consent of the other Party. Each Party further agrees to keep the terms of this Note confidential.

Each Party agrees to treat all confidential information and documents provided by the other Party in connection with the Note as strictly confidential, and agrees that it will not disclose any such information and documents to any third party (other than the Party's Affiliates and professional advisors on a confidential and need-to-know basis) without the other Party's prior written consent, save that theParty's obligations under this Article VIII shall expire on the date falling one (1) year after the expirationor termination of this Note.

The undertakings in this Article VIII will not apply to confidential information relating to a Party which the other Party can establish:

1)  is, at the time of disclosure to the other Party, or subsequently becomes, public information (other than as a direct or indirect result of the information being disclosed in breach of this Article VIII);

2)  was known to the other Party before the date of this Note, and such person was not under any obligation of confidence in respect of that information;

3)  is independently developed by that other Party; or

4)  the other Party obtained such information from a source not connected with the first Party and such source was not under any obligation of confidence in respect of that information at the time of the relevant disclosure.

Nothing contained in this Article VIII shall prevent any Party from disclosing confidential information if such disclosure is required by any law or regulation of any country with jurisdiction over the affairs of either Party, any stock exchange or competent governmental or regulatory authority or any order of any court of competent jurisdiction; provided that the Party required to make such disclosure will, insofar as it is not prohibited by law from doing so, provide the other Party with written notice prior to disclosing confidential information or portions thereof, so that the other Party may seek an appropriate protective order at its own expense.

Unless otherwise specified, this Article VIII shall survive termination of this Note.

## ARTICLE IX.          SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## ARTICLE X.          MISCELLANEOUS

The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

This Note constitutes the entire and final agreement of both Parties and supersedes any and all prior agreements or understandings between both Parties, whether oral or written, on the subject matter herein.

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

No delay in enforcing any right of the Lender under this Note, or failure to accelerate the debt, shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender rights under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This Note and any rights, agreements or obligations hereunder may not be assigned, by operation of law, merger or otherwise, without the prior written consent of the other Party hereto, and any purported assignment by a Party without prior written consent of the other Party will be null and void and not binding on such other Party. Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties and conditions of this Note are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and assigns.

Any notice, communication or demand to be given or made pursuant to this Note shall be in writing and in English and shall be deemed to have duly given or made (i) when delivered by hand and left at the address set out below; (ii) when sent via a reputable international courier to the address set out belowand indicated to have been delivered by such international courier; and (iii) when sent by email to the e-mail address set out below:

| Name of Party | Address | E-mail address | Marked for the attention of |
| --- | --- | --- | --- |
| Lender | 511, Madanjapa road, Naswadi, Gujarat, India | Bhavikacr@gmail. | Bhavika Chunawala |
| Borrower | Tortola Pier Park, Building 1, Second Floor, Wickhams Cay I, Road Town, Tortola, British Virgin Islands | caroline@alameda-research.com | Caroline Ellison |

The Parties agree that it is not their intention to create a fiduciary relationship between themselves. Nothing contained in this Note, and no action taken by any Party, shall be deemed to constitute a partnership, association, joint venture or other entity. Without limiting the foregoing and irrespective of the receipt of confidential information pursuant to this Note, Lender acknowledges and agrees that:
(i) it is contracting with Borrower on an arm's-length basis; (ii) Borrower has not acted, is not acting and will not act in a fiduciary or similar capacity with respect to Lender or any other third party and neither a previous nor existing relationship between the Lender and the Borrower will be deemed to create a fiduciary relationship; and (iii) Borrower has not assumed and is not assuming any duties or obligations other than those expressly set out in the Note.

Each provision of this Note is severable and, if any provision (or part of a provision) is or becomes invalid or unenforceable or contravenes any applicable regulations or law, the remaining provisions (orparts of a provision) will not be affected notwithstanding such partial invalidity.

This Note may be entered into by each of the Parties signing one or more counterparts which, taken together, shall constitute a complete agreement.

This Note may not be amended without the written approval of both the Borrower and the Lender.

## ARTICLE XI.          GOVERNING LAW AND DISPUTE RESOLUTION

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

The validity, interpretation, construction and performance of this Note, and all acts and transactions pursuant hereto and the rights and obligations of the Parties hereto shall be governed, construed and interpreted in accordance with the laws of the British Virgin Islands, without giving effect to principles of conflicts of law.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution ("**Center**") in accordance with its International Arbitration Rules ("**Rules**") in force when the notice of arbitration is submitted. The law of this arbitration provision shall be British Virgin Islands law. The number of arbitrators shall be one (1) to be appointed by the Centre in accordance with the Rules. The arbitration proceedings shall be conducted in English. The decision of the sole arbitrator to any such dispute, controversy, difference or claim shall be final and binding upon both Parties.

Executed as of the date first set forth above:


ALAMEDA RESEARCH LTD


By:_____              _____
Caroline Ellison, Co CEO                          Bhavika Chunawala

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

**Schedule 1**

The aggregate Principal Amount under the Note is comprised of the following fiat currencies and cryptocurrencies:

| FIAT / Cryptocurrency | Amount |
|---|---|
| USDC | 6,500,00 |
|  |  |
|  |  |
|  |  |

Doc ID: a3005j326ap64di4173b306522b3d56cf5ef21db

 **HELLOSIGN**

Audit trail

| | |
|---|---|
| **Title** | Bhavika Alameda Loan Agreement 01/02/2022 |
| **File name** | LOAN_AGREEMENT_2_01_02_2022.pdf |
| **Document ID** | a3005j326ap64di4173b306522b3d56cf5ef21db |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**SENT**
**02 / 01 / 2022**
09:34:52 UTC

Sent for signature to Bhavika Chunawala
(bhavikacr@gmail.com) from caroline@alameda-research.com
IP: 104.234.245.255

**VIEWED**
**02 / 01 / 2022**
09:35:14 UTC

Viewed by Bhavika Chunawala (bhavikacr@gmail.com)
IP: 152.59.32.17

**SIGNED**
**02 / 01 / 2022**
09:38:09 UTC

Signed by Bhavika Chunawala (bhavikacr@gmail.com)
IP: 152.59.32.17

**COMPLETED**
**02 / 01 / 2022**
09:38:09 UTC

The document has been completed.

# Exhibit 8D

 **Gmail**                                                    Bhavika Chunawala <bhavikacr@gmail.com>

---

## Urgent Inquiry Regarding My Investment in Alameda Research
2 messages

---

**Bhavika Chunawala** <bhavikacr@gmail.com>                    Wed, Nov 23, 2022 at 12:30 AM
To: operations@alameda-research.com, info@alameda-research.com,
Cc: caroline@alameda-research.com, sam@alameda-research.com, trabucco@alameda-research.com

> **Dear Mr. Bankman-Fried and Ms. Caroline Ellison,**
>
>   I am writing to express my deep concern and frustration regarding my investment with Alameda Research. Despite numerous attempts to reach someone over the phone to address my queries,  have not received any response or guidance. I am left with significant uncertainty about the status of my funds, and  hope you can understand the distress this situation has caused.
>
> I invested in Alameda Research at the suggestion of both you, Mr. Bankman-Fried, and Ms. Ellison. I trusted your guidance. As an investor, I entrusted Alameda Research with my hard-earned money and believed in the integrity of the platforms you led. However, recent developments have left me in financial and emotional turmoil.
>
>   would like to understand the following:
>
>   1. **Current Status of My Investment:**
>      What has happened to my investment in Alameda Research?  need clear information about the status of my funds and what steps are being taken to recover them.
>
>   2. **Repayment of Process:**
>      Please provide detailed information on how I can ensure my money are recognized in the ongoing bankruptcy proceedings. Are there formal processes or documents I need to submit?
>
>   3. **Future Course of Action:**
>      What should  do now?  am seeking your guidance on any actions  can take to secure my investments. Who should  expect to hear from, and are there ongoing efforts to facilitate investor repayments?
>
> This situation has caused me significant hardship, and  urgently need transparent communication.  trusted your leadership and the organizations you represented, and I now face an uncertain future.   kindly request that you take this matter seriously and provide a prompt and honest response.
>
> Thank you for your time and understanding.  look forward to your reply.
>
> Sincerely,
>
> Bhavika Chunawala

---

**Bhavika Chunawala** <bhavikacr@gmail.com>                    Sun, Nov 27, 2022 at 12:48 AM
To: operations@alameda-research.com, info@alameda-research.com
Cc: caroline@alameda-research.com, sam@alameda-research.com, trabucco@alameda-research.com

This is my request for immediate clarification regarding my investment status and claim recognition in the ongoing bankruptcy proceedings. Happy to see you Sir/Mam.

Best
Bhavika
[Quoted text hidden]

# Exhibit 8E

 Gmail

Bhavika Chunawala <bhavikacr@gmail.com>

---

**October 2022 Loan balance with Alameda Research**

**operations@alameda-research.com** <operations@alameda-research.com>                                      Fri, May 24, 2024 at 12:00 PM
Reply-To: operations@alameda-research.com
To: Bhavika <bhavikacr@gmail.com>, Alameda Research <info@alameda-research.com>
Cc: Caroline <caroline@alameda-research.com>, Samuel <sam@alameda-research.com>

Hi Bhavika,

As per the previous month, we have accrued the October 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 October 2022:

For the loan entered in February 2022:
Starting principal for October 2022 interest calculation: USDC 6,946,185.08
Agreed interest rate: 10.0% p.a.
Interest for October 2022: USDC 57,884.88
Principal as of 31 October 2022 for next month's interest accrual: USDC 7,004,069.95

Please let us know if you have any questions.

Regards,
Alice

> On October 3, 2022 at 9:36 PM GMT+8 operations@alameda-research.com wrote:
>
> Hi Bhavika,
>
> As per the previous month, we have accrued the September 2022 interest and rolled it into the principal.
> Please see the loan summary below as of 30 September 2022:
>
> For the loan entered in February 2022:
> Starting principal for September 2022 interest calculation: USDC 6,888,778.59
> Agreed interest rate: 10.0% p.a.
> Interest for September 2022: USDC 57,406.49
> Principal as of 30 September 2022 for next month's interest accrual: USDC 6,946,185.08
>
> Please let us know if you have any questions.
>
> Regards,
> Alice
>
>> On September 2, 2022 at 9:39 PM GMT+8 operations@alameda-research.com wrote:
>>
>> Hi Bhavika,
>>
>> As per the previous month, we have accrued the August 2022 interest and rolled it into the principal.
>> Please see the loan summary below as of 31 August 2022:
>>
>> For the loan entered in February 2022:
>> Starting principal for August 2022 interest calculation: USDC 6,831,846.54
>> Agreed interest rate: 10.0% p.a.
>> Interest for August 2022: USDC 56,932.05
>> Principal as of 31 August 2022 for next month's interest accrual: USDC 6,888,778.59
>>
>> Please let us know if you have any questions.
>>
>> Regards,
>> Alice
>>
>>> On August 2, 2022 at 9:22 PM GMT+8 operations@alameda-research.com wrote:
>>>
>>> Hi Bhavika,
>>>
>>> As per the previous month, we have accrued the July 2022 interest and rolled it into the principal.
>>> Please see the loan summary below as of 31 July 2022:
>>>
>>> For the loan entered in February 2022:
>>> Starting principal for July 2022 interest calculation: USDC 6,775,384.99
>>> Agreed interest rate: 10.0% p.a.
>>> Interest for July 2022: USDC 56,461.54
>>> Principal as of 31 July 2022 for next month's interest accrual: USDC 6,831,846.54
>>>
>>> Please let us know if you have any questions.
>>>
>>> Regards,
>>> Alice
>>>
>>>> On July 6, 2022 at 3:16 PM GMT+8 info@alameda-research.com wrote:
>>>>
>>>> Hi Bhavika,
>>>>
>>>> As per the previous month, we have accrued the June 2022 interest and rolled it into the principal.
>>>> Please see the loan summary below as of 30 June 2022:
>>>>
>>>> For the loan entered in February 2022:
>>>> Starting principal for June 2022 interest calculation: USDC 6,719,390.08
>>>> Agreed interest rate: 10.0% p.a.
>>>> Interest for June 2022: USDC 55,994.92
>>>> Principal as of 30 June 2022 for next month's interest accrual: USDC 6,775,384.99

Please let us know if you have any questions.

Regards,
Alice

On June 3, 2022, 12:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the May 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 May 2022:

For the loan entered in February 2022:
Starting principal for May 2022 interest calculation: USDC 6,663,857.93
Agreed interest rate: 10.0% p.a.
Interest for May 2022: USDC 55,532.15
Principal as of 31 May 2022 for next month's interest accrual: USDC 6,719,390.08

Please let us know if you have any questions.

Regards,
Alice

On May 3, 2022, 8:14 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the April 2022 interest and rolled it into the principal.
Please see the loan summary below as of 30 April 2022:

For the loan entered in February 2022:
Starting principal for April 2022 interest calculation: USDC 6,608,784.72
Agreed interest rate: 10.0% p.a.
Interest for April 2022: USDC 55,073.21
Principal as of 30 April 2022 for next month's interest accrual: USDC 6,663,857.93

Please let us know if you have any questions.

Regards,
Alice

On April 6, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the March 2022 interest and rolled it into the principal.
Please see the loan summary below as of 31 March 2022:

For the loan entered in February 2022:
Starting principal for March 2022 interest calculation: USDC 6,554,166.67
Agreed interest rate: 10.0% p.a.
Interest for March 2022: USDC 54,618.06
Principal as of 31 March 2022 for next month's interest accrual: USDC 6,608,784.72

Please let us know if you have any questions.

Regards,
Alice

On March 3, 2022, 2:04 AM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

For your new loan executed on 1 February 2022, we have accrued the February 2022 interest and rolled it into the principal.
Please see the loan summary below as of 28 February 2022:

For the loan entered in February 2022:
Starting principal for February 2022 interest calculation: USDC 6,500,000.00
Agreed interest rate: 10.0% p.a.
Interest for February 2022: USDC 54,166.67
Principal as of 28 February 2022 for next month's interest accrual: USDC 6,554,166.67

Please let us know if you have any questions.

Regards,

Alice

On January 31, 2022, 3:04 AM Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

Thank you for your response.

Please let us know if you have any questions.

Regards,
Alice

On January 24, 2022 at 1:18 AM GMT+8 bhavikacr@gmail.com wrote:

Thank you for the update.
I wish to continue lending with Alameda Research under the new terms. Please proceed with organizing the new loan Agreement for signing at the 10% per annum interest rate starting from February 1, 2022. I`m already discussed it.

Thank you for the clarification.

Best regards,
Bhavika,

On January 24, 2022 2:30 AM GMT+8 Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

The final loan summary as at 31 January 2022 is as follows

For the loan entered in May 2021:
Starting principal for January 2022 interest calculation: USDC 6,379,778.42
Agreed interest rate: 10.0% p.a.
Interest for January 2022: USDC 53,164.82
Principal and accumulated interest as at 31 January 2022: USDC 6,432,943.24

Please confirm your USD wire details or USDC address and we will return the total loan and accumulated interest of USDC 6,432,943.24 on 31 January 2022.

Regards,
Alice

On January 22, 2022 at 1:18 AM GMT+8 bhavikacr@gmail.com wrote:

Thank you for the update.

I wish to continue lending with Alameda Research under the new terms. Please proceed with organizing the new loan agreement for signing at the 10% per annum interest rate starting from February 1, 2022.

Thank you for the clarification.

Best regards,
Bhavika,

On January 18, 2022 12:30 PM GMT+8 Alameda Research <info@alameda-research.com> wrote:

Hi Bhavika,

Alameda Research has decided to close your outstanding loans on 31 Jan 2022.

Should you wish to continue lending, a rate of 10% p.a. will be offered from 1 Feb 2022  and a new loan agreement will need to be signed with Alameda Research LTD. This  new loan agreement will replace your previous loan agreements.

Please respond as soon as possible to this email stating whether you would like to  have your loans and accumulated interest returned on 31 Jan 2022 or a new loan  agreement organized for signing.

Regards,
Alice

On January 5, 2022, 11:33 AM GMT+8 info@alameda-research.com  wrote:

Hi Bhavika,

As per the previous month, we have accrued the December 2021 interest and rolled it into the principal. Please see the loan summary below as of 31 December 2021:

For the loan entered in May 2021:
Starting principal for December 2021 interest calculation: USDC 6,327,052.98
Agreed interest rate: 10.0% p.a.
Interest for December 2021: USDC 52,725.44
Principal as of 31 December 2021 for next month's interest accrual: USDC 6,379,778.42

Please let us know if you have any questions.

Regards,
Alice

On December 6, 2021, 3:15 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the  November 2021 interest and rolled it into the principal.
Please see the loan summary below as of 30 November  2021:

For the loan entered in May 2021:
Starting principal for November 2021 interest calculation: USDC 6,274,763.28
Agreed interest rate: 10.0% p.a.
Interest for November 2021: USDC 52,289.69
Principal as of 30 November 2021 for next month's interest accrual: USDC 6,327,052.97

Please let us know if you have any questions.

Regards,
Alice

On November 3, 2021, 9:38 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued  the October 2021 interest and rolled it into  the principal.
Please see the loan summary below as of 31 October 2021:

For the loan entered in May 2021:
Starting principal for October 2021 interest  calculation: USDC 6,222,905.74
Agreed interest rate: 10.0% p.a.
Interest for October 2021: USDC 51,857.55
Principal as of 31 October 2021 for next month's interest accrual: USDC 6,274,763.28

Please let us know if you have any  questions.

Regards,
Alice

On October 3, 2021 at 9:09 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the September 2021 interest and rolled it into the
principal.
Please see the loan  summary below as of 30 September 2021:

For the loan entered in May 2021:
Starting principal for September 2021 interest Calculation: USDC 6,171,476.76
Agreed interest rate: 10.0%  p.a.
Interest for September 2021: USDC 51,428.97
Principal as of 30 September 2021 for next month's interest accrual: USDC 6,222,905.74

Please let us know if you  have any questions.

Regards,
Alice

On September 2, 2021 at 6:36 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the August 2021 interest and  rolled it into the
principal.
Please see the loan  summary below as of 31 August 2021:

For the loan entered in May 2021:
Starting principal for August 2021 interest Calculation: USDC 6,120,472.82
Agreed interest rate: 10.0%  p.a.
Interest for September 2021: USDC 51,003.94
Principal as of 31 August 2021 for next month's interest accrual: USDC 6,171,476.76

Please let us know if you  have any questions.

Regards,
Alice

On August 4, 2021 at 9:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the July 2021 interest and  rolled it
into the principal.
Please see the loan  summary below as of 31 July 2021:

For the loan entered in May 2021:
Starting principal for July 2021 interest Calculation: USDC 6,069,890.40
Agreed interest rate: 10.0%  p.a.

Interest for July 2021: USDC 50,582.42
Principal as of 31 July 2021 for next month's interest accrual: USDC 6,120,472.82

Please let us know if you  have any questions.

Regards,
Alice

On July 2, 2021 at 9:06 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As per the previous month, we have accrued the June 2021 interest and  rolled it into the principal.
Please see the loan  summary below as of 30 June 2021:

For the loan entered in May 2021:
Starting principal for June 2021 interest Calculation: USDC 6,019,726.02
Agreed interest rate: 10.0%  p.a.
Interest for June 2021: USDC 50,164.38
Principal as of 30 June 2021 for next month's interest accrual: USDC 6,069,890.40

Please let us know if you  have any questions.

Regards,
Alice

On June 4, 2021 at 7:20 PM GMT+8 info@alameda-research.com wrote:

Hi Bhavika,

As discussed, you will start receiving emails of your loan summary from this month.
Please see the loan summary below as of 30 May 2021:

For the loan entered in May 2021:
Starting principal for May 2021 interest Calculation: USDC 6,000,000.00
Agreed interest rate: 10.0%  p.a.
Interest for May 2021: USDC 19,726.02
Principal as of 31 May 2021 for next month's interest accrual: USDC 6,019,726.02

Please let us know if you  have any questions.

Regards,
Alice

# Exhibit 8F



**Bhavika Chunawala <bhavikacr@gmail.com>**

---

## Immediate Action Required on My Alameda Investment

3 messages

---

**Bhavika Chunawala** <bhavikacr@gmail.com>                    Sun, Dec 1, 2024 at 11:49 PM
To: operations@alameda-research.com, info@alameda-research.com, carolinesellison@gmail.com, cebiz2001@aol.com, 11235813sam@gmail.com, sam.bankmanfried@ftexchange.com
Cc: caroline@alameda-research.com, sam@alameda-research.com, trabucco@alameda-research.com

This is my second attempt seeking urgent clarification regarding my investment and its recognition in the bankruptcy process. I expect a prompt and transparent response.

Regards
Bahiva Chunawala

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>              Sun, Dec 1, 2024 at 11:50 PM
To: bhavikacr@gmail.com



### Recipient inbox full

Your message couldn't be delivered to **11235813sam@gmail.com.** Their inbox is full, or it's getting too much mail right now.

**LEARN MORE**

The response was:

```
552 5.2.2 The recipient's inbox is out of storage space and inactive. Please direct the
recipient to https://support.google.com/mail/?p=OverQuotaPerm a1e0cc1a2514c-85b82d844casor903979241.7
- gsmtp
```

Final-Recipient: rfc822; 11235813sam@gmail.com
Action: failed
Status: 5.2.2
Diagnostic-Code: smtp; 552-5.2.2 The recipient's inbox is out of storage space and inactive. Please
552-5.2.2 direct the recipient to
552 5.2.2  https://support.google.com/mail/?p=OverQuotaPerm a1e0cc1a2514c-85b82d844casor903979241.7 - gsmtp
Last-Attempt-Date: Sun, 01 Dec 2024 10:20:01 -0800 (PST)

---------- Forwarded message ----------
From: Bhavika Chunawala <bhavikacr@gmail.com>

To: operations@alameda-research.com, info@alameda-research.com, carolinesellison@gmail.com, cebiz2001@aol.com, 11235813sam@gmail.com, sam.bankmanfried@ftexchange.com
Cc: caroline@alameda-research.com, sam@alameda-research.com, trabucco@alameda-research.com
Bcc:
Date: Sun, 1 Dec 2024 23:49:48 +0530
Subject: Immediate Action Required on My Alameda Investment
This is my second attempt seeking urgent clarification regarding my investment and its recognition in the bankruptcy process. I expect a prompt and transparent response.

Regards
Bahiva Chunawala

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                    Sun, Dec 1, 2024 at 11:50 PM
To: bhavikacr@gmail.com



### Address not found

Your message wasn't delivered to
**sam.bankmanfried@ftexchange.com** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**
⚠ This link will take you to a third-party site

The response from the remote server was:

```
550 Invalid Recipient - https://community.mimecast.com/docs/DOC-1369#550
[Lz08I3N7Oby_q3yDdpfZpQ.usb7]
```

Final-Recipient: rfc822; sam.bankmanfried@ftexchange.com
Action: failed
Status: 5.1.1
Remote-MTA: dns; usb-smtp-inbound-1.mimecast.com. (170.10.150.242, the server
 for the domain ftexchange.com.)
Diagnostic-Code: smtp; 550 Invalid Recipient - https://community.mimecast.com/docs/DOC-1369#550
[Lz08I3N7Oby_q3yDdpfZpQ.usb7]
Last-Attempt-Date: Sun, 01 Dec 2024 10:20:02 -0800 (PST)

---------- Forwarded message ----------
From: Bhavika Chunawala <bhavikacr@gmail.com>
To: operations@alameda-research.com, info@alameda-research.com, carolinesellison@gmail.com, cebiz2001@aol.com, 11235813sam@gmail.com, sam.bankmanfried@ftexchange.com
Cc: caroline@alameda-research.com, sam@alameda-research.com, trabucco@alameda-research.com
Bcc:
Date: Sun, 1 Dec 2024 23:49:48 +0530

Subject: Immediate Action Required on My Alameda Investment
This is my second attempt seeking urgent clarification regarding my investment and its recognition in the bankruptcy process. I expect a prompt and transparent response.

Regards
Bahiva Chunawala

# Exhibit 8G

**EXHIBIT B**

| | IN USDC |
|---|---|
| EXHIBIT B | |
| **BHAVIKA CHUNAWALA** | |
| BHAVIKA USDC 6,000,000 LOAN TO ALAMEDA RESEARCH LTD | |
| SCHEDULE OF COMPOUND INTEREST ADDED TO PRINCIPAL BALANCE | |
| Interest at 10% per annum | |
| May 19, 2021 USDC 6,000,000 original principal amount paid to Alameda Research Ltd | 6,000,000.00 |
| May 2021 Interest Payment | 19,726.02 |
| June 2021 Interest Payment | 50,164.38 |
| July 2021 Interest Payment | 50,582.42 |
| August 2021 Interest Payment | 51,003.94 |
| September 2021 Interest Payment | 51,428.97 |
| October 2021 Interest Payment | 51,857.55 |
| November 2021 Interest Payment | 52,289.69 |
| December 2021 Interest Payment | 52,725.44 |
| January 2022 Interest Payment | 53,164.82 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 6,432,943.24 |
| Important things are Differences of 67,056.76 USDC are paying to Alameda Research on 30/01/2022. | |
| Then After 01/02/2022 New Loan Agreement With ALAMEDA RESEARCH LTD. With 6,500,000 USDC | 6,500,000.00 |
| February 2022 Interest Payment | 54,166.67 |
| March 2022 Interest Payment | 54,618.06 |
| April 2022 Interest Payment | 55,073.21 |
| May 2022 Interest Payment | 55,532.15 |
| June 2022 Interest Payment | 55,994.92 |
| July 2022 Interest Payment | 56,461.54 |
| August 2022 Interest Payment | 56,932.05 |
| September 2022 Interest Payment | 57,406.49 |
| October 2022 Interest Payment | 57,884.88 |
| OUTSTANDING PRINCIPAL AMOUNT INCLUDING ACCRUED UNPAID INTEREST OWED TO CLAIMANT | 7,004,069.95 |
| | |
| One cent difference than email correspondence with Alameda Research Ltd | |

Should you require any additional information concerning this case, please feel free to contact me at your earliest convenience. I am available to provide any necessary assistance regarding the bankruptcy proceedings.