**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |

**MOTION BY CLAIMANT LAWRENCE D. VAN DYN HOVEN
TO RECONSIDER CUSTOMER CLAIM NO. 98560, EXTEND THE APPLICABLE BAR
DATE AND ALLOW THAT CLAIM, OR, IN THE ALTERNATIVE, TO EXTEND THE
APPLICABLE BAR DATE FOR NON-CUSTOMER CLAIM NO. 100112**

Claimant Lawrence D. Van Dyn Hoven, by and through his undersigned counsel, respectfully submits this motion ("Motion") requesting the Court to: (i) reconsider his Customer claim (number 98560), which the Court previously disallowed [D.I. 31109]; (ii) extend the applicable deadline (the "Bar Date") as to that reconsidered claim so that it is deemed timely; and (iii) ultimately allow such claim upon consideration of the merits. In the alternative, Mr. Van Dyn Hoven respectfully asks that the Court extend the Bar Date as to his Non-Customer claim (number 100112) such that it is deemed timely and ultimately allowed, and thereby overrule the FTX Recovery Trust's (the "Trust") objection as to that claim (*see* its one hundred eighty-sixth (non-substantive) omnibus objection to certain late filed customer proofs of claims (the "Objection") [D.I. 31060]). In support of this Motion, Mr. Van Dyn Hoven submits his declaration in support of this Motion and in response to the Trust's Objection.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Preliminary Statement**

1.     Mr. Van Dyn Hoven—a 69-year-old retiree residing in Wisconsin—is the victim of a complex, online social engineering fraud that resulted in over $2,500,000 (most of his life savings) being wrongfully taken from him.  Approximately $1,396,470 of the stolen funds (in the form of USDT, a stablecoin issued by Tether) were traced to a wallet held on FTX Trading Ltd.'s ("FTX") cryptocurrency exchange system.  Through the proofs of claim he has filed in this bankruptcy proceeding, Mr. Van Dyn Hoven seeks return of those assets—which rightfully belong to him—and/or an award for damages for FTX failing (knowingly or through gross negligence) to stop his funds from being further laundered and misappropriated by the Fraudsters.

2.     Mr. Van Dyn Hoven is not an attorney, has no legal education and until just a few weeks ago, was not represented or advised by counsel in this matter.  He never received any notice of any Bar Date to file a proof of claim, whether as a "Customer" [*see* D.I. 1870] or "Non-Customer" [*see* D.I. 1521] claim.

3.     In June 2023 (before the Bar Dates), Mr. Van Dyn Hoven submitted a "demand letter" to FTX outlining the claims he believed he has against FTX and demanding the return of his funds.  Mr. Van Dyn Hoven received no response.

4.     It was not until December 2024 that Mr. Van Dyn Hoven learned he needed to formally submit his claims through this bankruptcy proceeding.  Accordingly, on December 18, 2024, he submitted a formal proof of claim (the "December 2024 Claim").  The December 2024 Claim was assigned claim number 98560.

5.     Following his submission of the December 2024 Claim, Mr. Van Dyn Hoven consulted with the bankruptcy's administrator.  During these conversations, Mr. Van Dyn Hoven received confusing and conflicting advice from the bankruptcy administrator as to whether his

claim was properly a "Customer" or "Non-Customer" claim (since Mr. Van Dyn Hoven had no account or relationship with FTX). The December 2024 Claim is a "Customer" proof of claim. However, at the bankruptcy administrator's suggestion, Mr. Van Dyn Hoven also filed a "Non-Customer" proof of claim in April 2025 (the "April 2025 Claim"). The April Claim was assigned claim number 100112. And because of confusion stemming from statements by the bankruptcy administrator, Mr. Van Dyn Hoven subsequently withdrew the December 2024 Customer Claim (98560) (a withdrawal he now retracts). As discussed below, Mr. Van Dyn Hoven's claims are properly considered as a "Customer" claim, and the Trust appears to agree (as its Objection treats his April 2025 Claim as a Customer claim).

6.      Through its one hundred eighty-sixth (non-substantive) omnibus objection to certain "late filed" customer proofs of claims [D.I. 31060], the Trust objected to Mr. Van Dyn Hoven's April 2025 Non-Customer Claim (100112) on the basis that he filed the claim after the applicable Customer claim Bar Date.[2]

7.      Through this Motion, Mr. Van Dyn Hoven respectfully asks that the Court (i) reconsider his December 2024 Customer Claim, which the Court previously disallowed; (ii) extend the applicable Bar Date as to that reconsidered claim so that it is deemed timely; and (iii) ultimately allow such claim upon consideration of the merits. In the alternative, Mr. Van Dyn Hoven respectfully asks that the Court extend the applicable Bar Date as to his Non-Customer claim (number 100112) such that it is deemed timely and ultimately allowed and thereby overrule the Trust's Objection as to that Claim.

---

[2] The confusion regarding whether Mr. Van Dyn Hoven's claim is a "Customer" or "Non-Customer" claim is further evident in that although the April 2025 Claim is a Non-Customer claim, the Trust objects to it as Customer claim. As explained herein, Mr. Van Dyn Hoven's claim is properly considered as a Customer claim.

## Jurisdiction

8.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The statutory and legal predicate for the relief requested herein is Section 502 of the Bankruptcy Code and Bankruptcy Rules 3008, 9006(b) and 9024.

11.      Pursuant to Local Rule 9013-1(f), Mr. Van Dyn Hoven consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

12.      The factual background of Mr. Van Dyn Hoven's claims is set forth in greater detail in the accompanying Declaration of Lawrence Van Dyn Hoven ("Decl.") and is summarized here.

### A.  The Underlying Fraud, Investigation Efforts and Initial Attempts at Recovery.

13.      Mr. Van Dyn Hoven retired in late 2021 after nearly 35 years in the insurance industry.  Decl. ¶ 4.

14.      In February 2022, Mr. Van Dyn Hoven became the victim of an online fraud executed by purported "crypto investment advisors" (the "Fraudsters").  The Fraudsters represented that they would invest and manage Mr. Van Dyn Hoven's assets for him, ultimately returning the proceeds (as well as the underlying principal funds) to him. *Id.* ¶ 5. Over the course of several months in spring 2022, the Fraudsters convinced and directed Mr. Van Dyn Hoven to

transfer more than $2,500,000 in fiat currency from his bank account to an account at Coinbase (another cryptocurrency exchange), convert nearly all the funds to USDT (a cryptocurrency), and then transfer the USDT to various wallets held by the Fraudsters.  *Id.* ¶¶ 6–7, Ex. A.  Despite many requests, the Fraudsters never returned any of the funds they misappropriated from Mr. Van Dyn Hoven and cut off all contact with him.  To date, and despite significant effort, Mr. Van Dyn Hoven has not recovered any of the more than $2.5 million the Fraudsters stole from him.  *Id.* ¶¶ 5-9, 11.

15.     By May 2022, after the bank froze his bank account, Mr. Van Dyn Hoven realized he had been defrauded.  He thereafter spent much of 2022 working to recover his funds, including by demanding the Fraudsters return them.  The Fraudsters never did, instead cutting off all communication and contact with Mr. Van Dyn Hoven.  *Id.* ¶¶ 8-9.

16.     In the summer of 2022, Mr. Van Dyn Hoven engaged an "asset recovery" and investigation firm called "PayBack."  *Id.* ¶ 10.  Payback is not a law firm but purports to provide services "by and/or under the supervision of licensed attorneys."  *See* https://www.payback.com/faq.  It purports to be "at the forefront of the battle against online fraud," *see* https://www.payback.com, and represents to fraud victims like Mr. Van Dyn Hoven that it will "develop a customized strategy tailored to your specific situation that you can use to get your money back," *see* https://www.payback.com/crypto-asset-tracing.  Mr. Van Dyn Hoven relied on PayBack, believing it to be an expert in asset recovery that would develop a sound strategy to get his money back.  *Id.*

17.     Through PayBack, Mr. Van Dyn Hoven contacted various law enforcement and regulatory authorities, but these efforts, through no fault of Mr. Van Dyn Hoven, have not resulted in any charges or recoveries.  *Id.* ¶¶ 11–12.

**B.  Contact with FTX and the Bankruptcy Administrator.**

18.     In May 2023, PayBack informed Mr. Van Dyn Hoven that they had traced some of the stolen USDT to a wallet held at FTX (presumably by the Fraudsters).  Decl. ¶ 14.  Mr. Van Dyn Hoven has never held any account at or done any business with FTX.  *Id.* ¶ 13.  Mr. Van Dyn Hoven commissioned another cyrpto tracing report by CNC Intelligence Inc., which confirmed that 1,396,470 of the USDT he was misled into sending the Fraudsters had ultimately been transferred to the FTX Wallet in April and May 2022.  *Id.* ¶ 14, Ex. B.  Mr. Van Dyn Hoven understands that those funds remain frozen in that FTX Wallet.  *Id.* ¶ 15.

19.     In June 2023, aided by PayBack, Mr. Van Dyn Hoven prepared a demand letter (the "June 2023 Demand Letter"), and on June 29, 2023, advised by PayBack, Mr. Van Dyn Hoven sent the June 2023 Demand Letter to various publicly available FTX email addresses.  *Id.* at ¶ 16, Exs. C and D.

20.     The June 2023 Demand Letter presented Mr. Van Dyn Hoven's claim that that the Fraudsters used a wallet held on/by FTX to hold, launder and or otherwise disburse USDT they fraudulently misappropriated from him; in other words, that the funds in the FTX Wallet rightfully belong to Mr. Van Dyn Hoven.  The June 2023 Demand Letter further stated Mr. Van Dyn Hoven's belief that FTX was liable for negligently or intentionally failing to take action that would have identified the Fraudsters' FTX Wallet as likely engaged in criminal activity and stopping the transfer of cryptocurrencies in and out of the Wallet until further investigation was completed.  *See id.* ¶ 17.

21.     Mr. Van Dyn Hoven never received a response to his June 29, 2023 email.  He received no "bounce back" email or other indication that the email was not actually received by FTX.  Therefore, Mr. Van Dyn Hoven believed FTX received the email and his June 2023 Demand

Letter but, for whatever reason, had simply not yet responded. *Id.* ¶ 18. He was not informed at that time that he needed to submit his claims through the bankruptcy case.

### C.  Submission of Proofs of Claim

22.    Until June 2024, Mr. Van Dyn Hoven was not specifically aware of FTX's bankruptcy. *Id.* ¶ 19. He never received any notice advising him of any Bar Date or the need to file a proof of claim. *Id.* ¶ 19

23.    It was not until December 2024 that he became specifically aware that FTX's bankruptcy would likely have an impact on his claims against FTX and ability to recover any amounts still held in the Fraudsters' FTX Wallet. *Id.* ¶ 20.

24.    With the aid of Payback, Mr. Van Dyn Hoven prepared another demand letter (the "December 2024 Demand Letter"), and on December 16, 2024, again advised by Payback, Mr. Van Dyn Hoven sent the December 2024 Demand Letter by email to ftxinfo@ra.kroll.com. *Id.* ¶ 21, Exs. E and F. The December 2024 Demand Letter included substantially the same information as his June 2023 Demand Letter, as well as some additional detail, such as the identification number for the Fraudsters' FTX Wallet and the hash codes for the transaction which caused the USDT misappropriated from Mr. Van Dyn Hoven to enter the Fraudsters' FTX Wallet. *Id.*

25.    On December 16, 2024, Mr. Van Dyn Hoven received a response from the email address FTXInfo@duffandphelps.mail.onmicrosoft.com. *Id.* ¶ 22, Ex. G. This was the first response or communication of any kind he received from FTX or anyone acting on its behalf. However, Mr. Van Dyn Hoven believes this email was autogenerated as it did not address, in any fashion, his December 2024 Demand Letter. *Id.* The email directed him to visit a website regarding the FTX bankruptcy, review the Frequently Asked Questions," and reply to the email if he needed further assistance. *Id.*

26.    Mr. Van Dyn Hoven promptly visited the FTX bankruptcy administrator's website—https://restructuring.ra.kroll.com/FTX—and reviewed some of the information therein. *Id.* ¶ 23.  Specifically, for the first time, he learned there was a formal process by which he needed to submit claims against FTX and regarding the funds remaining in the Fraudsters' FTX Wallet. *Id.*

27.    On December 18, 2024, Mr. Van Dyn Hoven submitted a proof of claim (Customer claim) through the formal process set forth on the FTX bankruptcy's website (the "<u>December 2024 Customer Claim</u>").  The December 2024 Customer Claim was assigned claim number 98560.  *Id.* ¶ 24, Exs. H and I.

28.    Also in December 2024, Mr. Van Dyn Hoven called 888-842-0049, a number he found where FTX customers could speak with representatives of the bankruptcy administrator to address questions regarding proofs of claims.  *Id.* ¶ 25.  Over the next several months, Mr. Van Dyn Hoven called this number numerous times (and emailed with various customer support email addresses, *e.g.*, FTXquestions@kroll.com, customersupport@ftx.com, and noncustomersupport@ftx.com) regarding how to ensure his legal claims against FTX and regarding the funds in the Fraudsters' FTX Wallet were submitted such that they would be considered as part of the bankruptcy.  *Id.*  During this time, the bankruptcy administrator gave Mr. Van Dyn Hoven conflicting advice as to whether his Claim was properly submitted as a "Customer" claim, or if it needed to be resubmitted as a "Non-Customer" claim.  *Id.*

29.    Mr. Van Dyn Hoven did not know what to do about the conflicting advice the bankruptcy administrator gave him as to whether his claim should be submitted as a "Customer" or "Non-Customer" claim.  When Mr. Van Dyn Hoven asked the bankruptcy administrator for help because completing the know-your-customer forms necessary for his December 2024 Customer

Claim to be considered required an account with FTX (which he did not have), the bankruptcy administrator told him that this "sounds like a non-customer claim concern." Decl. ¶ 25, Ex. K. This and other similar conversations with the bankruptcy administrator ultimately convinced Mr. Van Dyn Hoven he needed to file his claim as a "Non-Customer" claim, which he did on April 14, 2025 (the "April 2025 Non-Customer Claim"). *Id.*, Ex. J. The April 2025 Non-Customer Claim received claim number 100112. *Id.*

30.    On April 28, 2025, the FTX Recovery Trust (the "Trust") objected to Mr. Van Dyn Hoven's December 2024 Customer Claim (98560) in its one hundred seventy-seventh (substantive) omnibus objection to certain no liability proofs of claim (customer claims) [D.I. 30310]. However, because he now viewed his "active" claim as the April 2025 Non-Customer Claim (100112), Mr. Van Dyn Hoven did not believe he needed to respond to the Trust's objection to his December 2024 Customer Claim. Decl. ¶ 26.

31.    In fact, again due to the advice he received from the bankruptcy administrator, Mr. Van Dyn Hoven subsequently withdrew his December 2024 Customer Claim (98560) on May 28, 2025. Decl. ¶ 25, Ex. L.

32.    Thus, the Trust's objection to the claim went unopposed and, on June 25, 2025, the Court sustained the objection and disallowed the December 2024 Customer Claim [D.I. 31109].

33.    For the reasons stated herein, Mr. Van Dyn Hoven hereby retracts his withdrawal of the December 2024 Customer Claim (98560), as it was indeed properly submitted as a Customer claim.

34.    As a layperson, Mr. Van Dyn Hoven has found the terminology, definitions, processes and procedures related to FTX's bankruptcy very confusing. Decl. ¶¶ 27-28. Despite submitting a demand letter to FTX in June 2023, he never received any response or indication he

needed to engage with/through the bankruptcy process. *Id.* ¶¶ 18, 28. And in consultation with the bankruptcy's administration, he came to believe (erroneously) that his claim was a "Non-Customer" as opposed to a "Customer" claim, causing him to withdraw and not defend his December 2024 Customer Claim (98560). *Id.* ¶¶ 25-27. Nonetheless, he always tried his best to do the correct thing and abide by the relevant processes, procedures, and timelines (to the extent he was aware of them) while pursuing his claims against FTX and regarding the funds in the Fraudsters' FTX Wallet. *Id.* ¶ 28.

## Relief Requested

35.    Through this Motion, Mr. Van Dyn Hoven respectfully requests that the Court issue an order pursuant to Section 502(j) of the Bankruptcy Code and Bankruptcy Rules 3008, 9006(b), and 9024, substantially in the form of the Proposed Order (attached hereto), that (i) reconsiders his Customer claim (number 98560), which the Court previously disallowed [D.I. 31109]; (ii) extends the applicable Bar Date as to that reconsidered claim so that it is deemed timely; and (iii) ultimately allows such claim upon consideration of the merits. If any of the 1,396,470 USDT stolen from Mr. Van Dyn Hoven remains in the Fraudsters' FTX Wallet, they should be returned to him.

36.    In the alternative, Mr. Van Dyn Hoven respectfully asks that the Court extend the Bar Date as to his Non-Customer claim (number 100112) such that it is deemed timely and ultimately allowed, and thereby overrule the FTX Recovery Trust's Objection as to that claim [D.I. 31060].

## Basis for Relief

### I.    Mr. Van Dyn Hoven's Claims Are Properly Categorized As "Customer" Claims.

37.    Mr. Van Dyn Hoven's claim is correctly understood as a Customer Claim. "Customer Claim" is defined as any claim "arising out of or related to (a) any cash,

cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX Exchange as of the Petition Date (the 'Customer Entitlement Claim') or (b) any other investment or trading activities on any FTX Exchange (the 'Other Activity Claim')." [D.I. 1793 at 2.]  The Fraudsters' misappropriation of more than $2.5 million from Mr. Van Dyn Hoven, $1,396,470 of which (as USDT) ended up in the Fraudsters' FTX Wallet, satisfies both definitions of "Customer Claim."  First, the 1,396,470 USDT rightfully belongs to Mr. Van Dyn Hoven, not the Fraudsters.  Thus, this USDT is really "held by" Mr. Van Dyn Hoven in "an account," the Fraudsters' FTX Wallet, on an FTX Exchange.  Moreover, this USDT made its way (fraudulently) to the Fraudsters' FTX Wallet via "investment or trading activities on [a] FTX Exchange."  Either way, Mr. Van Dyn Hoven's claim to this 1,396,470 USDT qualifies as a "Customer" claim.  And the Trust may even agree considering that in its objection [D.I. 11068], it treats the April 2025 Non-Customer Claim (100112) as a "Customer" claim.

## II.    The Court Should Reconsider Mr. Van Dyn Hoven's December 2024 Customer Claim and Ultimately Allow It.

38.    Pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3008 and 9024, the Court should reconsider its order from June 30, 2025 [D.I. 31109], rescind the portion of that order that disallowed Mr. Van Dyn Hoven's December 2024 Customer Claim (98560), and order that Claim reinstated for consideration on the merits.

39.    "A claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).  Because the Bankruptcy Code does not define "cause" or "equities" courts apply "the same analysis that [they] would to alter or amend a judgment under Bankruptcy Rule 9023 (incorporating Fed. Civ. P. 59), or to grant relief from a final judgment, order, or proceeding under Bankruptcy Rule 9024 (incorporating Fed. Civ. P. 60), depending on whether the movant

sought reconsideration within fourteen days after the entry of the order disallowing the claim, or did so only later.…" *Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 2016 U.S. Dist. LEXIS 21204, at *43 (S.D.N.Y. Feb. 22, 2016).  Here, more than fourteen days have passed since the Court, on June 25, 2025, sustained the Trust's objection and disallowed Mr. Van Dyn Hoven's December 2024 Customer Claim.  Thus, Federal Rule of Bankruptcy Procedure 9024—and by incorporation Federal Rule of Civil Procedure 60—applies.

40.     Relevant here, the Court may reconsider the disallowance of Mr. Van Dyn Hoven's December 2024 Customer Order (98560) on the grounds of "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  "The Supreme Court has identified four factors for determining excusable neglect: 'the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Gonzalez v. Green (In re TK Holdings Inc.)*, 2024 U.S. Dist. LEXIS 39770, *24-26 (D.D.E. 2024) (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)).  The circumstances surrounding the disallowance of Mr. Van Dyn Hoven's December 2024 Customer Claim (98560) constitute mistake, inadvertence, and excusable neglect.  Even if they did not, the equity in allowing Mr. Van Dyn Hoven to defend/advocate for his Claim on its merits "justifies relief."

41.     When the Trust filed its objection the December 2024 Customer Claim on April 28, 2025, Mr. Van Dyn Hoven (erroneously, based on the suggestion of the bankruptcy administrator) believed his claim was a "Non-Customer" claim.  *Supra* ¶¶ 28-30.  Based on this belief, and two weeks *before* the Trust filed its objection, he submitted his April 2025 Non-Customer Claim (100112).  *Supra* ¶ 29.  A little more than a month later—again on the erroneous advice of the

bankruptcy administrator and *before* the Court disallowed the December 2024 Customer Claim—he went so far as to withdraw the December 2024 Customer Claim. *Supra* ¶¶ 31-32. Thus, Mr. Van Dyn Hoven never received the opportunity to respond to the Trust's objection, let alone have his December 2024 Customer Claim considered on its merits.

42.     Mr. Van Dyn Hoven was mistaken in believing his claim was not a "Customer" claim when he declined to respond to the Trust's objection to his December 2024 Customer Claim and ultimately withdrew the same. That mistake was inadvertent, especially considering he was arguably misled by the bankruptcy administrator. Mr. Van Dyn Hoven hereby retracts his withdrawal of the December 2024 Customer Claim (98560), as it was indeed properly submitted as a Customer claim.

43.     Any neglect on Mr. Van Dyn Hoven's part was excusable according to the *Pioneer* factors.

**A.     There is no prejudice to FTX/the Trust.**

44.     As the Third Circuit has clarified, "prejudice"—the first factor to be considered in determining whether the neglect is excusable—is "not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *Manus Corp. v. NRG Energy, Inc.* (*In re O'Brien Env't Energy, Inc.*) (*"O'Brien"*), 188 F.3d 116, 127 (3d Cir. 1999). In evaluating prejudice to the debtor, courts consider several relevant factors, including:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims.

*In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020). Notably, the prejudice analysis must "account for more than whether the Plan set aside money to pay the claim at issue" as "[o]therwise, virtually all late filings would be condemned by this factor." *O'Brien*, 188 F.3d at 127 (internal quotation marks and citation omitted). Thus, it is insufficient for the Trust or the Debtors to merely point to the size of the new claims or simply argue that the new claims would "disrupt plan implementation"; they must come forward with evidence of actual prejudice. *See In re FTX Trading Ltd.*, 669 B.R. 298, 307 (Bankr. D. Del. 2025) (rejecting argument that amendments to a proof of claim would cause prejudice and granting motion to amend).

45. Mr. Van Dyn Hoven's December 2024 Customer Claim was accurately filed as a "Customer" claim, with all the information necessary for FTX to understand the heart of Mr. Van Dyn Hoven's allegations and requests, more than four months before the Trust objected to it. *Supra* ¶¶ 27, 30 35. Furthermore, the December 2024 Customer Claim largely reiterated the Demand Letter that Mr. Van Dyn Hoven had sent FTX in June 2023. Thus, the Trust cannot claim surprise. And had the unfortunate confluence of Mr. Van Dyn Hoven's status as a layperson unversed in bankruptcy (including the terms and definitions of this particular matter) and suspect advice from the bankruptcy administrator not caused him to doubt the classification of this Claim, he would have timely challenged the Trust's objection. Decl. ¶¶ 26-27. It is unlikely many other claims like Mr. Van Dyn Hoven's, with similar circumstances surrounding their submission to the bankruptcy, exist and thus there is little risk of "opening the floodgates." And there is no indication allowing the December 2024 Customer Claim to be considered on its merits would jeopardize the success of FTX's reorganization.

**B.      The length of the delay is minimal and the reason for it is justifiable.**

46.      Mr. Van Dyn Hoven brings this Motion just over a month after the Court sustained the Trust's objection and disallowed his December 2024 Customer Claim.  In that time, Mr. Van Dyn Hoven retained counsel, who corrected his misperception (brought on by at least in part by the ill-informed and suspect advice of the bankruptcy administrator) that his claim was a "Non-Customer" claim.  Within mere weeks of retaining counsel, Mr. Van Dyn Hoven brought this Motion.

**C.      At all times, Mr. Van Dyn Hoven acted in good faith.**

47.      Although understandably confused and unfortunately misled, there is no evidence, or even the allegation, that Mr. Van Dyn Hoven did not try his best and act in good faith when submitting his December 2024 Customer Claim, later submitting his April 2025 Non-Customer Claim, not responding to the Trust's objection, and ultimately withdrawing the December 2024 Customer Claim (which he now retracts).  Decl. ¶¶ 20-28.

**D.      Principles of equity favor reconsideration and allowing the December 2024 Customer Claim to be decided on its merits.**

48.      Even if the excusable neglect factors did not allow Mr. Van Dyn Hoven's December 2024 Customer Claim to be reinstated and considered on its merits—they do—basic principles of equity require this outcome.  It would be fundamentally unfair under the circumstances to refuse the December 2024 Customer Claim to be considered and decided on its merits.  That reality is another "reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

**III.     The Court Should Extend the Bar Date to Deem Mr. Van Dyn Hoven's Proof of Claim as Timely.**

49.      For many of the same reasons already discussed, the Court should extend the Bar Date such that at least one of Mr. Van Dyn Hoven's proofs of claim is timely.  As described above,

15

his December 2024 Customer Claim (98560) should be reinstated and decided on its merits, which requires extending the September 29, 2023, Bar Date for Mr. Van Dyn Hoven to December 18, 2024, such that his December 2024 Claim is timely.  Alternatively, if the Court disagrees and believes Mr. Van Dyn Hoven's claim is properly categorized as a "Non-Customer" claim, it should extend the June 30, 2023, Bar Date for Mr. Van Dyn Hoven to April 14, 2025, such his April 2025 Non-Customer Claim (100112) is timely.

50.     Under Federal Rule of Bankruptcy Procedure 9006(b), the Court has authority to grant an enlargement of time after a specified period expires where the failure to act was the result of excusable neglect.  Specifically, Rule 9006(b)(1) provides that the Court "may—at any time and for cause—extend the time to act if . . . (B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect."  Fed. R. Bankr. P. 9006(b).  "The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993).

51.     In *Pioneer*, the United States Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the deadline set by the bar date because its failure to file timely was the result of "excusable neglect" within the meaning of Rule 9006.  *Id.* at 398–99.  In so holding, the Court explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the creditor's reasonable control.  *Id.* at 388.  It stated that determining whether neglect is excusable is an "equitable" determination that "tak[es] account of all relevant circumstances surrounding the party's omission."  *Id.* at 395.  *See also O'Brien*, 188 F.3d at 125 (discussing *Pioneer*).

52.     To make the excusable neglect determination, the Court in *Pioneer* enumerated four factors to consider in determining whether neglect is excusable:

16

(i) danger of prejudice to the debtor;

(ii) the length of the delay and the resulting potential impact on judicial proceedings;

(iii) the reason for the delay, including whether the delay was within the reasonable control of movant; and

(iv) whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395.

53.     Here, the balance of the Pioneer factors favors allowing Mr. Van Dyn Hoven's claims.

**A.  There is no prejudice.**

54.     As the Third Circuit clarified, "prejudice"—the first factor to be considered in determining whether the neglect is excusable under Rule 9006(b)—is "not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."  *In re O'Brien Env't Energy*, 188 F.3d at 127.  In evaluating prejudice to the debtor, courts consider several relevant factors, including:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims.

*In re Energy Future Holdings*, 619 B.R. at 110.  Notably, the prejudice analysis must "account for more than whether the Plan set aside money to pay the claim at issue" as "[o]therwise, virtually all late filings would be condemned by this factor."  *O'Brien*, 188 F.3d at 127 (internal quotation marks and citation omitted).  Thus, it is insufficient for the Trust/Debtors to merely point to the size of the new claims or simply argue that the new claims would "disrupt plan implementation";

they must come forward with evidence of actual prejudice.  *See In re FTX Trading Ltd.*, 669 B.R. at 307 (rejecting argument that amendments to a proof of claim would cause prejudice and granting motion to amend).

55.     Here, there is no prejudice to FTX.  Through the June 2023 Demand Letter, FTX has known about Mr. Van Dyn Hoven's claim since June 2023, *before* the Non-Customer Claim Bar Date of June 30, 2023, and *well before* the Customer Claim Bar Date of September 29, 2023. The June 2023 Demand Letter provided sufficient information such that FTX could identify the funds that rightfully belong to Mr. Van Dyn Hoven, identified the total amounts stolen by the Fraudsters (which is greater than the amounts he claims in his formal proofs of claims), and articulated his entitlement to the funds in the Wallet.  The formal December 2024 Customer Claim and his April 2025 Non-Customer Claim did not expand his claims beyond the June 2023 Demand Letter in any material respect.  Indeed, the amount claimed is less than the total amount stolen, as identified in the June 2023 Demand Letter.  Thus, there is no unfair surprise and no prejudice.

**B.  The impact of the length of delay is minimal.**

56.     There is no dispute that Mr. Van Dyn Hoven did not file a formal proof of claim until more than a year after the Bar Dates (although, as discussed above, he sent FTX his claims via the June 2023 Demand Letter before either Bar Date).  But even if that delay is considered substantial, the potential impact of Mr. Van Dyn Hoven's claims on this case is relatively small. *See, e.g.*, *Boy Scouts of Am.*, No. 20-10343 (LSS), 2024 WL 5133720, at *2 (Bankr. D. Del. Dec. 16, 2024) ("I agree that this delay is substantial. . . . [H]owever, the potential impact on this case is small.  There are over 82,000 Abuse Claims filed in this case.  The Motion represents one more. Even taking all the requests to allow late-filed claims made to date in the aggregate, I find that they would not have made a meaningful impact on the course of this bankruptcy case.  The lateness of

J.C.'s claim is, therefore, offset by its limited impact."). By comparison, according to the Trust's objections, there have been approximately 97,500 Customer proofs of claim filed asserting more than $54,380,000,000 [D.I. 31060], and approximately 2,150 Non-Customer proofs of claim asserting more than $335,855,000 [D.I. 3748].

### C. The reason for the delay was justified.

57.    As discussed above and in his accompanying Declaration, Mr. Van Dyn Hoven is not a lawyer. He is a retiree. He never received notice of either Bar Date, *even after* he sent FTX the June 2023 Demand Letter. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995) (stating that the district court erred in failing to consider the debtor's role in the creditor's delay); *O'Brien*, 188 F.3d at 129 (finding excusable neglect "since it was caused at least in part by [the debtor's] own failure"). He was not even aware of the FTX bankruptcy until June 2024, after the Bar Dates.

58.    Meanwhile, Mr. Van Dyn Hoven (perhaps naively) relied on PayBack, which purports to be "at the forefront of the battle against online fraud," offering services purportedly "provided by and/or under the supervision of licensed attorney." And PayBack represented it would "develop a customized strategy tailored to [Mr. Van Dyn Hoven's] specific situation that [he could] use to get [his] money back." But PayBack never advised Mr. Van Dyn Hoven that FTX had filed for bankruptcy and that he needed to file a formal proof(s) of claim there. Decl. ¶ 10.

59.    As soon as Mr. Van Dyn Hoven realized that he needed to file a formal proof of claim, he did so.

60.    Under the circumstances, Mr. Van Dyn Hoven's failure to meet the Bar Date was justifiable.

**D.  Mr. Van Dyn Hoven acted in good faith.**

61.      It is indisputable that Mr. Van Dyn Hoven has acted in good faith.  There was no gamesmanship behind his failure to meet the Bar Dates.

*[Remainder of page left blank intentionally.]*

## Conclusion

62.     For the foregoing reasons, Mr. Van Dyn Hoven respectfully requests that the Court grant this Motion.  He asks that it (i) reconsider his Customer claim (number 98560), which the Court previously disallowed [D.I. 31109]; (ii) extend the applicable Bar Date as to that reconsidered claim so that it is deemed timely; and (iii) ultimately allow such claim upon consideration of the merits.  In the alternative, Mr. Van Dyn Hoven respectfully asks that the Court extend the Bar Date as to his Non-Customer claim (number 100112) such that it is deemed timely and ultimately allowed, and thereby overrule the FTX Recovery Trust's objection as to that claim [D.I. 31060].

Respectfully submitted,

_/s/ Alexander Chiquoine_____
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
*alec@mcgovernweems.com*
*leif@mcgovernweems.com*
Tel.: (312) 550-6895 (Alec)
         (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*

## CERTIFICATION BY COUNSEL

Pursuant to Local Rule 9010-1(e)(iii), I certify that I am eligible to file the above Motion in this Court and further certify that I am admitted, practicing, and in good standing as a member of the Bar of the State of Minnesota.  I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action.  I also certify that I am generally familiar with the Local Rules of this Court.

_/s/_Alexander Chiquoine_____
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
*alec@mcgovernweems.com*
*leif@mcgovernweems.com*
Tel.: (312) 550-6895 (Alec)
        (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*

## CERTIFICATE OF SERVICE

I, Alexander D. Chiquoine, hereby certify that the foregoing Motion was filed on and served via CM/ECF pursuant to Local Rules 5005-4 and 9036-1.  Courtesy copies were electronically provided to Counsel for Debtors and Debtors-in-Possession at jensenc@sullcrom.com, kranzelya@sullcrom.com, brown@lrclaw.com, and pierce@lrclaw.com. Hard copies of the filed Motion were also hand delivered to Counsel for Debtors and Debtors-in-Possession's law offices at the addresses stated in Debtors' One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Proofs of Claims (Customer Claims) [Dkt. 31060].  Lastly, a hard copy of the filed Motion was hand delivered to the United States Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.  All the aforementioned events took place on August 1, 2025.

By:  _/s/ Alexander Chiquoine_____
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
alec@mcgovernweems.com
leif@mcgovernweems.com
Tel.: (312) 550-6895 (Alec)
       (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*