**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |

**RESPONSE BY CLAIMANT LAWRENCE D. VAN DYN HOVEN
TO THE FTX RECOVERY TRUST'S ONE HUNDRED EIGHTY-SIXTH (NON-SUBSTANTIVE) OMNIBUS OBJECTION TO CERTAIN LATE FILED CUSTOMER PROOFS OF CLAIM**

Claimant Lawrence D. Van Dyn Hoven, by and through his undersigned counsel, respectfully submits this response ("Response") to the FTX Recovery Trust's (the "Trust") one hundred eighty-sixth (non-substantive) omnibus objection to certain late filed customer proofs of claims (the "Objection") [D.I. 31060]. Mr. Van Dyn Hoven respectfully refers the Court and the Trust to his related Motion to Reconsider Customer Claim No. 98560, Extend the Applicable Bar Date, and Allow that Claim, or, In the Alternative, To Extend the Applicable Bar Date for Non-Customer Claim No. 100112 (the "Motion") [D.I. 32061]. Mr. Van Dyn incorporates by reference his Declaration in Support and attached exhibits.

**Preliminary Statement**

1. Mr. Van Dyn Hoven—a 69-year-old retiree residing in Wisconsin—is the victim of a complex, online social engineering fraud that resulted in over $2,500,000 (most of his life savings) being wrongfully taken from him. Approximately $1,396,470 of the stolen funds (in the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

1

form of USDT, a stablecoin issued by Tether) were traced to a wallet held on FTX Trading Ltd.'s ("FTX") cryptocurrency exchange system. Through the proofs of claim he has filed in this bankruptcy proceeding, Mr. Van Dyn Hoven seeks return of those assets—which rightfully belong to him—and/or an award for damages for FTX failing (knowingly or through gross negligence) to stop his funds from being further laundered and misappropriated by the Fraudsters.

2. Mr. Van Dyn Hoven is not an attorney, has no legal education and until just a few weeks ago, was not represented or advised by counsel in this matter. He never received any notice of any Bar Date to file a proof of claim, whether as a "Customer" [*see* D.I. 1870] or "Non-Customer" [*see* D.I. 1521] claim.

3. In June 2023 (before the Bar Dates), Mr. Van Dyn Hoven submitted a "demand letter" to FTX outlining the claims he believed he has against FTX and demanding the return of his funds. Mr. Van Dyn Hoven received no response.

4. It was not until December 2024 that Mr. Van Dyn Hoven learned he needed to formally submit his claims through this bankruptcy proceeding. Accordingly, on December 18, 2024, he submitted a formal proof of claim (the "December 2024 Claim"). The December 2024 Claim was assigned claim number 98560.

5. Following his submission of the December 2024 Claim, Mr. Van Dyn Hoven consulted with the bankruptcy's administrator. During these conversations, Mr. Van Dyn Hoven received confusing and conflicting advice from the bankruptcy administrator as to whether his claim was properly a "Customer" or "Non-Customer" claim (since Mr. Van Dyn Hoven had no account or relationship with FTX). The December 2024 Claim is a "Customer" proof of claim. However, at the bankruptcy administrator's suggestion, Mr. Van Dyn Hoven also filed a "Non-Customer" proof of claim in April 2025 (the "April 2025 Claim"). The April Claim was assigned

claim number 100112.  And because of confusion stemming from statements by the bankruptcy administrator, Mr. Van Dyn Hoven subsequently withdrew the December 2024 Customer Claim (98560) (a withdrawal he now retracts).  As discussed below, Mr. Van Dyn Hoven's claims are properly considered as a "Customer" claim, and the Trust appears to agree (as its Objection treats his April 2025 Claim as a Customer claim).

6. Through its Objection [D.I. 31060], the Trust objected to Mr. Van Dyn Hoven's April 2025 Non-Customer Claim (100112) on the basis that he filed the claim after the applicable Customer claim Bar Date.[2]

7. Through this Response, and his related Motion [D.I. 32061], Mr. Van Dyn Hoven respectfully asserts that, to the extent his April 2025 Non-Customer Claim (100112) is the claim the Trust and Court should consider, the Claim was late filed due to excusable neglect.  Mr. Van Dyn Hoven, through his Motion, has moved for the Bar Date relevant to this Claim to be extended such that the Claim is no longer late filed.  Therefore, the Trust's Objection should be withdrawn or overruled.

**Jurisdiction**

8. The Court has jurisdiction over this Response to the Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The confusion regarding whether Mr. Van Dyn Hoven's claim is a "Customer" or "Non-Customer" claim is further evident in that although the April 2025 Claim is a Non-Customer claim, the Trust objects to it as a Customer claim. As explained herein, Mr. Van Dyn Hoven's claim is properly considered as a Customer claim.

10. The statutory and legal predicate for the relief requested herein is Bankruptcy Rule 9006(b).

11. Pursuant to Local Rule 9013-1(f), Mr. Van Dyn Hoven consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Background

12. The factual background of Mr. Van Dyn Hoven's claims is set forth in greater detail in the accompanying Declaration of Lawrence Van Dyn Hoven ("Decl.") and is summarized here.

**A. The Underlying Fraud, Investigation Efforts and Initial Attempts at Recovery.**

13. Mr. Van Dyn Hoven retired in late 2021 after nearly 35 years in the insurance industry. Decl. ¶ 4.

14. In February 2022, Mr. Van Dyn Hoven became the victim of an online fraud executed by purported "crypto investment advisors" (the "Fraudsters"). The Fraudsters represented that they would invest and manage Mr. Van Dyn Hoven's assets for him, ultimately returning the proceeds (as well as the underlying principal funds) to him. *Id.* ¶ 5. Over the course of several months in spring 2022, the Fraudsters convinced and directed Mr. Van Dyn Hoven to transfer more than $2,500,000 in fiat currency from his bank account to an account at Coinbase (another cryptocurrency exchange), convert nearly all the funds to USDT (a cryptocurrency), and then transfer the USDT to various wallets held by the Fraudsters. *Id.* ¶¶ 6–7, Ex. A. Despite many requests, the Fraudsters never returned any of the funds they misappropriated from Mr. Van Dyn Hoven and cut off all contact with him. To date, and despite significant effort, Mr. Van Dyn Hoven has not recovered any of the more than $2.5 million the Fraudsters stole from him. *Id.* ¶¶ 5-9, 11.

15.     By May 2022, after the bank froze his bank account, Mr. Van Dyn Hoven realized he had been defrauded. He thereafter spent much of 2022 working to recover his funds, including by demanding the Fraudsters return them. The Fraudsters never did, instead cutting off all communication and contact with Mr. Van Dyn Hoven. *Id.* ¶¶ 8-9.

16.     In the summer of 2022, Mr. Van Dyn Hoven engaged an "asset recovery" and investigation firm called "PayBack." *Id.* ¶ 10. Payback is not a law firm but purports to provide services "by and/or under the supervision of licensed attorneys." *See* https://www.payback.com/faq. It purports to be "at the forefront of the battle against online fraud," *see* https://www.payback.com, and represents to fraud victims like Mr. Van Dyn Hoven that it will "develop a customized strategy tailored to your specific situation that you can use to get your money back," *see* https://www.payback.com/crypto-asset-tracing. Mr. Van Dyn Hoven relied on PayBack, believing it to be an expert in asset recovery that would develop a sound strategy to get his money back. *Id.*

17.     Through PayBack, Mr. Van Dyn Hoven contacted various law enforcement and regulatory authorities, but these efforts, through no fault of Mr. Van Dyn Hoven, have not resulted in any charges or recoveries. *Id.* ¶¶ 11–12.

### B. Contact with FTX and the Bankruptcy Administrator.

18.     In May 2023, PayBack informed Mr. Van Dyn Hoven that they had traced some of the stolen USDT to a wallet held at FTX (presumably by the Fraudsters). Decl. ¶ 14. Mr. Van Dyn Hoven has never held any account at or done any business with FTX. *Id.* ¶ 13. Mr. Van Dyn Hoven commissioned another cyrpto tracing report by CNC Intelligence Inc., which confirmed that 1,396,470 of the USDT he was misled into sending the Fraudsters had ultimately been

transferred to the FTX Wallet in April and May 2022. *Id.* ¶ 14, Ex. B. Mr. Van Dyn Hoven understands that those funds remain frozen in that FTX Wallet. *Id.* ¶ 15.

19. In June 2023, aided by PayBack, Mr. Van Dyn Hoven prepared a demand letter (the "June 2023 Demand Letter"), and on June 29, 2023, advised by PayBack, Mr. Van Dyn Hoven sent the June 2023 Demand Letter to various publicly available FTX email addresses. *Id.* at ¶ 16, Exs. C and D.

20. The June 2023 Demand Letter presented Mr. Van Dyn Hoven's claim that that the Fraudsters used a wallet held on/by FTX to hold, launder and or otherwise disburse USDT they fraudulently misappropriated from him; in other words, that the funds in the FTX Wallet rightfully belong to Mr. Van Dyn Hoven. The June 2023 Demand Letter further stated Mr. Van Dyn Hoven's belief that FTX was liable for negligently or intentionally failing to take action that would have identified the Fraudsters' FTX Wallet as likely engaged in criminal activity and stopping the transfer of cryptocurrencies in and out of the Wallet until further investigation was completed. *See id.* ¶ 17.

21. Mr. Van Dyn Hoven never received a response to his June 29, 2023 email. He received no "bounce back" email or other indication that the email was not actually received by FTX. Therefore, Mr. Van Dyn Hoven believed FTX received the email and his June 2023 Demand Letter but, for whatever reason, had simply not yet responded. *Id.* ¶ 18. He was not informed at that time that he needed to submit his claims through the bankruptcy case.

C. **Submission of Proofs of Claim**

22. Until June 2024, Mr. Van Dyn Hoven was not specifically aware of FTX's bankruptcy. *Id.* ¶ 19. He never received any notice advising him of any Bar Date or the need to file a proof of claim. *Id.* ¶ 19

23. It was not until December 2024 that he became specifically aware that FTX's bankruptcy would likely have an impact on his claims against FTX and ability to recover any amounts still held in the Fraudsters' FTX Wallet. *Id.* ¶ 20.

24. With the aid of Payback, Mr. Van Dyn Hoven prepared another demand letter (the "December 2024 Demand Letter"), and on December 16, 2024, again advised by Payback, Mr. Van Dyn Hoven sent the December 2024 Demand Letter by email to ftxinfo@ra.kroll.com. *Id.* ¶ 21, Exs. E and F. The December 2024 Demand Letter included substantially the same information as his June 2023 Demand Letter, as well as some additional detail, such as the identification number for the Fraudsters' FTX Wallet and the hash codes for the transaction which caused the USDT misappropriated from Mr. Van Dyn Hoven to enter the Fraudsters' FTX Wallet. *Id.*

25. On December 16, 2024, Mr. Van Dyn Hoven received a response from the email address FTXInfo@duffandphelps.mail.onmicrosoft.com. *Id.* ¶ 22, Ex. G. This was the first response or communication of any kind he received from FTX or anyone acting on its behalf. However, Mr. Van Dyn Hoven believes this email was autogenerated as it did not address, in any fashion, his December 2024 Demand Letter. *Id.* The email directed him to visit a website regarding the FTX bankruptcy, review the Frequently Asked Questions," and reply to the email if he needed further assistance. *Id.*

26. Mr. Van Dyn Hoven promptly visited the FTX bankruptcy administrator's website—https://restructuring.ra.kroll.com/FTX—and reviewed some of the information therein. *Id.* ¶ 23. Specifically, for the first time, he learned there was a formal process by which he needed to submit claims against FTX and regarding the funds remaining in the Fraudsters' FTX Wallet. *Id.*

7

27.     On December 18, 2024, Mr. Van Dyn Hoven submitted a proof of claim (Customer claim) through the formal process set forth on the FTX bankruptcy's website (the "<u>December 2024 Customer Claim</u>").  The December 2024 Customer Claim was assigned claim number 98560.  *Id.* ¶ 24, Exs. H and I.

28.     Also in December 2024, Mr. Van Dyn Hoven called 888-842-0049, a number he found where FTX customers could speak with representatives of the bankruptcy administrator to address questions regarding proofs of claims.  *Id.* ¶ 25.  Over the next several months, Mr. Van Dyn Hoven called this number numerous times (and emailed with various customer support email addresses, *e.g.*, FTXquestions@kroll.com, customersupport@ftx.com, and noncustomersupport@ftx.com) regarding how to ensure his legal claims against FTX and regarding the funds in the Fraudsters' FTX Wallet were submitted such that they would be considered as part of the bankruptcy.  *Id.*  During this time, the bankruptcy administrator gave Mr. Van Dyn Hoven conflicting advice as to whether his Claim was properly submitted as a "Customer" claim, or if it needed to be resubmitted as a "Non-Customer" claim.  *Id.*

29.     Mr. Van Dyn Hoven did not know what to do about the conflicting advice the bankruptcy administrator gave him as to whether his claim should be submitted as a "Customer" or "Non-Customer" claim.  When Mr. Van Dyn Hoven asked the bankruptcy administrator for help because completing the know-your-customer forms necessary for his December 2024 Customer Claim to be considered required an account with FTX (which he did not have), the bankruptcy administrator told him that this "sounds like a non-customer claim concern."  Decl. ¶ 25, Ex. K.  This and other similar conversations with the bankruptcy administrator ultimately convinced Mr. Van Dyn Hoven he needed to file his claim as a "Non-Customer" claim, which he did on April 14,

2025 (the "April 2025 Non-Customer Claim"). *Id.*, Ex. J. The April 2025 Non-Customer Claim received claim number 100112. *Id.*

30. On April 28, 2025, the FTX Recovery Trust (the "Trust") objected to Mr. Van Dyn Hoven's December 2024 Customer Claim (98560) in its one hundred seventy-seventh (substantive) omnibus objection to certain no liability proofs of claim (customer claims) [D.I. 30310]. However, because he now viewed his "active" claim as the April 2025 Non-Customer Claim (100112), Mr. Van Dyn Hoven did not believe he needed to respond to the Trust's objection to his December 2024 Customer Claim. Decl. ¶ 26.

31. In fact, again due to the advice he received from the bankruptcy administrator, Mr. Van Dyn Hoven subsequently withdrew his December 2024 Customer Claim (98560) on May 28, 2025. Decl. ¶ 25, Ex. L.

32. As set forth in his related Motion, Mr. Van Dyn Hoven rescinds the withdrawal of his December 2024 Customer Claim (98560) and asks that the Court reinstate that Claim, adjust the relevant Time Bar accordingly, consider that Claim on its merits, and ultimately grant that Claim.

33. On June 26, 2025, the Trust filed its one hundred eighty-sixth (non-substantive) omnibus objection to certain late filed proofs of claims (customer claims) (the "Objection") [D.I. 31060]. Mr. Van Dyn Hoven's April 2025 Non-Customer Claim (100112) is one of the claims to which the Trust objects.

34. As a layperson, Mr. Van Dyn Hoven has found the terminology, definitions, processes and procedures related to FTX's bankruptcy very confusing. Decl. ¶¶ 27-28. Despite submitting a demand letter to FTX in June 2023, he never received any response or indication he needed to engage with/through the bankruptcy process. *Id.* ¶¶ 18, 28. And in consultation with

9

the bankruptcy's administration, he came to believe (erroneously) that his claim was a "Non-Customer" as opposed to a "Customer" claim, causing him to withdraw and not defend his December 2024 Customer Claim (98560). *Id.* ¶¶ 25-27. Nonetheless, he always tried his best to do the correct thing and abide by the relevant processes, procedures, and timelines (to the extent he was aware of them) while pursuing his claims against FTX and regarding the funds in the Fraudsters' FTX Wallet. *Id.* ¶ 28.

## Relief Requested

35. Mr. Van Dyn Hoven, through this Response and his related Motion, asks that the Court extend the applicable Bar Date as to his April 2025 Non-Customer Claim (100112) and deny the Objection accordingly.

## Basis for Relief

### I. The Court Should Extend the Bar Date to Deem Mr. Van Dyn Hoven's Proof of Claim as Timely.

36. The Court should extend the Bar Date such that at least one of Mr. Van Dyn Hoven's proofs of claim is timely. As described here and in his related Motion, his December 2024 Customer Claim (98560) should be reinstated and decided on its merits, which requires extending the September 29, 2023, Bar Date for Mr. Van Dyn Hoven to December 18, 2024, such that his December 2024 Claim is timely. Alternatively, if the Court disagrees and believes Mr. Van Dyn Hoven's claim is properly categorized as a "Non-Customer" claim, it should extend the June 30, 2023, Bar Date for Mr. Van Dyn Hoven to April 14, 2025, such his April 2025 Non-Customer Claim (100112) is timely. Either way, the Trust's Objection should be denied.

37. Under Federal Rule of Bankruptcy Procedure 9006(b), the Court has authority to grant an enlargement of time after a specified period expires where the failure to act was the result of excusable neglect. Specifically, Rule 9006(b)(1) provides that the Court "may—at any time and

for cause—extend the time to act if . . . (B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect." Fed. R. Bankr. P. 9006(b). "The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993).

38. In *Pioneer*, the United States Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the deadline set by the bar date because its failure to file timely was the result of "excusable neglect" within the meaning of Rule 9006. *Id.* at 398–99. In so holding, the Court explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the creditor's reasonable control. *Id.* at 388. It stated that determining whether neglect is excusable is an "equitable" determination that "tak[es] account of all relevant circumstances surrounding the party's omission." *Id.* at 395. *See also Manus Corp. v. NRG Energy, Inc. (In re O'Brien Env't Energy, Inc.) ("O'Brien")*, 188 F.3d 116, 125 (3d Cir. 1999) (discussing *Pioneer*).

39. To make the excusable neglect determination, the Court in *Pioneer* enumerated four factors to consider in determining whether neglect is excusable:

>    (i) danger of prejudice to the debtor;
>
>    (ii) the length of the delay and the resulting potential impact on judicial proceedings;
>
>    (iii) the reason for the delay, including whether the delay was within the reasonable control of movant; and
>
>    (iv) whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395.

40. Here, the balance of the Pioneer factors favors allowing Mr. Van Dyn Hoven's claims.

### A. There is no prejudice.

41. As the Third Circuit clarified, "prejudice"—the first factor to be considered in determining whether the neglect is excusable under Rule 9006(b)—is "not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *O'Brien*, 188 F.3d at 127. In evaluating prejudice to the debtor, courts consider several relevant factors, including:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims.

*In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020). Notably, the prejudice analysis must "account for more than whether the Plan set aside money to pay the claim at issue" as "[o]therwise, virtually all late filings would be condemned by this factor." *O'Brien*, 188 F.3d at 127 (internal quotation marks and citation omitted). Thus, it is insufficient for the Trust/Debtors to merely point to the size of the new claims or simply argue that the new claims would "disrupt plan implementation"; they must come forward with evidence of actual prejudice. *See In re FTX Trading Ltd.*, 669 B.R. 298, 307 (Bankr. D. Del. 2025) (rejecting argument that amendments to a proof of claim would cause prejudice and granting motion to amend).

42. Here, there is no prejudice to FTX. Through the June 2023 Demand Letter, FTX has known about Mr. Van Dyn Hoven's claim since June 2023, *before* the Non-Customer Claim Bar Date of June 30, 2023, and *well before* the Customer Claim Bar Date of September 29, 2023. The June 2023 Demand Letter provided sufficient information such that FTX could identify the funds that rightfully belong to Mr. Van Dyn Hoven, identified the total amounts stolen by the

12

Fraudsters (which is greater than the amounts he claims in his formal proofs of claims), and articulated his entitlement to the funds in the Wallet. The formal December 2024 Customer Claim and his April 2025 Non-Customer Claim did not expand his claims beyond the June 2023 Demand Letter in any material respect. Indeed, the amount claimed is less than the total amount stolen, as identified in the June 2023 Demand Letter. Thus, there is no unfair surprise and no prejudice.

### B. The impact of the length of delay is minimal.

43. There is no dispute that Mr. Van Dyn Hoven did not file a formal proof of claim until more than a year after the Bar Dates (although, as discussed above, he sent FTX his claims via the June 2023 Demand Letter before either Bar Date). But even if that delay is considered substantial, the potential impact of Mr. Van Dyn Hoven's claims on this case is relatively small. *See, e.g.*, *Boy Scouts of Am.*, No. 20-10343 (LSS), 2024 WL 5133720, at *2 (Bankr. D. Del. Dec. 16, 2024) ("I agree that this delay is substantial. . . . [H]owever, the potential impact on this case is small. There are over 82,000 Abuse Claims filed in this case. The Motion represents one more. Even taking all the requests to allow late-filed claims made to date in the aggregate, I find that they would not have made a meaningful impact on the course of this bankruptcy case. The lateness of J.C.'s claim is, therefore, offset by its limited impact."). By comparison, according to the Trust's objections, there have been approximately 97,500 Customer proofs of claim filed asserting more than $54,380,000,000 [D.I. 31060], and approximately 2,150 Non-Customer proofs of claim asserting more than $335,855,000 [D.I. 3748].

### C. The reason for the delay was justified.

44. As discussed above and in his accompanying Declaration, Mr. Van Dyn Hoven is not a lawyer. He is a retiree. He never received notice of either Bar Date, *even after* he sent FTX the June 2023 Demand Letter. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995)

13

(stating that the district court erred in failing to consider the debtor's role in the creditor's delay); *O'Brien*, 188 F.3d at 129 (finding excusable neglect "since it was caused at least in part by [the debtor's] own failure"). He was not even aware of the FTX bankruptcy until June 2024, after the Bar Dates.

45. Meanwhile, Mr. Van Dyn Hoven (perhaps naively) relied on PayBack, which purports to be "at the forefront of the battle against online fraud," offering services purportedly "provided by and/or under the supervision of licensed attorney." And PayBack represented it would "develop a customized strategy tailored to [Mr. Van Dyn Hoven's] specific situation that [he could] use to get [his] money back." But PayBack never advised Mr. Van Dyn Hoven that FTX had filed for bankruptcy and that he needed to file a formal proof(s) of claim there. Decl. ¶ 10.

46. As soon as Mr. Van Dyn Hoven realized that he needed to file a formal proof of claim, he did so.

47. Under the circumstances, Mr. Van Dyn Hoven's failure to meet the Bar Date was justifiable.

**D. Mr. Van Dyn Hoven acted in good faith.**

48. It is indisputable that Mr. Van Dyn Hoven has acted in good faith. There was no gamesmanship behind his failure to meet the Bar Dates.

*[Remainder of page left blank intentionally.]*

**Conclusion**

49. For the foregoing reasons, and depending on the Court's ruling on his related Motion, Mr. Van Dyn Hoven respectfully requests that the Court extend the Bar Date as to his April 2025 Non-Customer Claim such that it is timely and deny the Trust's Objection accordingly.

Respectfully submitted,

_/s/ Alexander Chiquoine_____
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
*alec@mcgovernweems.com*
*leif@mcgovernweems.com*
Tel.: (312) 550-6895 (Alec)
       (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*

## CERTIFICATION BY COUNSEL

Pursuant to Local Rule 9010-1(e)(iii), I certify that I am eligible to file the above Response in this Court and further certify that I am admitted, practicing, and in good standing as a member of the Bar of the State of Minnesota.  I submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action.  I also certify that I am generally familiar with the Local Rules of this Court.

       /s/ Alexander Chiquoine
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
*alec@mcgovernweems.com*
*leif@mcgovernweems.com*
Tel.: (312) 550-6895 (Alec)
     (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*

**CERTIFICATE OF SERVICE**

I, Alexander D. Chiquoine, hereby certify that the foregoing Response was filed on and served via CM/ECF pursuant to Local Rules 5005-4 and 9036-1. Courtesy copies were electronically provided to Counsel for Debtors and Debtors-in-Possession at jensenc@sullcrom.com, kranzelya@sullcrom.com, brown@lrclaw.com, and pierce@lrclaw.com. Hard copies of the filed Motion were also hand delivered to Counsel for Debtors and Debtors-in-Possession's law offices at the addresses stated in Debtors' One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Proofs of Claims (Customer Claims) [Dkt. 31060]. Lastly, a hard copy of the filed Motion was hand delivered to the United States Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. All the aforementioned events took place on August 1, 2025.

By: _/s/ Alexander Chiquoine_
Alexander D. Chiquoine (MN #0396420)
Leif T. Simonson (NY #4173316; MN #0389764)
McGOVERN WEEMS LLC
3 Columbus Circle, 15th Floor
New York, NY 10019
*alec@mcgovernweems.com*
*leif@mcgovernweems.com*
Tel.: (312) 550-6895 (Alec)
       (612) 418-4271 (Leif)

*Attorneys for Claimant Lawrence Van Dyn Hoven*