# EXHIBIT D

*June 12, 2023*

**To: FTX US Blockfolio (your "Organization")**

1337 3rd Street,

Sanata Monica,

California, USA

**Via Email**

[Without Prejudice]

**Attn: Complaints/Fraud Dept.**

Dear Sir or Madam,

Re: <u>Demand Letter — Fraud</u>

I hope this letter has correctly found itself within your complaints/fraud department as it is essential to me that you become aware of the ordeal I have had to go through.

Commencing on or around **March 14, 2022,** I fell victim to a multilayered scam operation orchestrated by **"CW-asset"** (the "Fraudsters" or the "Scammers"), with the design, development, manufacturing, promoting, marketing, distributing, labeling, and/or sale of illegal and outright fraudulent "investment services", all of which aim at contributing to the goal of robbing and defrauding clients through a predetermined cycle of client losses to gains.

It should be noted that the Scammers is a client of yours, the owner of the following wallets:

- *0x9d32d6aaae1ffbaa7c3aefbef900241711e3343f*

The scammers were committing financial crimes right under your nose, which involve, among other things, stealing and laundering large sums of money on a regular basis. Money was transferred from my **"Coinbase"** wallet utilizing your services and under your authorization.

| 5/10/2022 5:16:00 | e2o5f2898893F514850977332Ad58C903E9oBc | 0x60fef585d8cf532bf4d1e9oe36b5f52570b1be972e8262b9623df4099do66ee3 | 0xbc044B893AE5d473781106d2124976E56766o948 | 2,099,427 USI |
| | | 0x9d32d6aaae1ffboo7c3aefbef900241711e3343f | SUBTOTAL | 2,099,427 USI |
| | | | USER ASSOCIATED EXCHANGE | ftx.com |
| | | | GRANDTOTAL | 2,581,692 USI |

This, of course, brings forth a plethora of inevitable queries with regard to the robustness of your organization's compliance with statutory and/or regulatory anti-financial crime risk management systems, policies, and procedures.

I do not have a proclivity to blame others for my downfalls, however, I cannot help but link this enormous loss with the trust I had instilled in your institution which is regulated.

## OVERVIEW

- This letter shall thrust into the spotlight, inter alia, the increasingly important role those financial institutions play in the fight against financial crime and fraud, and the pressing need for enhanced supervision and vigilance within your organization.
- Here's an indisputable fact: had you looked at the wider circumstances surrounding the above-referenced transaction, this illicit transfer of wealth could have been prevented.
- Obviously, there is no consensus with respect to the degree and scope to which regulated and licensed financial institutions must intervene and block suspicious transactions, and indeed, in so doing, financial institutions may often cause payments to be slowed down unnecessarily or even some legitimate payments may be rejected, however, please be noted that additional frictions such as slower payments (such as delaying payments or freezing funds to investigate) is beneficial to and welcomed by vulnerable customers and is widely considered to be a positive practice that is necessary in order to maintain market integrity as well as customers' financial safety, particularly for large-value and/or out-of-pattern payments.
- As demonstrated herein, you are undeniably an involved player in the scam's ecosystem, by providing the infrastructure that fraudsters exploit to make their scams more operable. Responsible financial institutions should work hard and be committed to both the future of the market and the security of all customer funds. You must recognize that you play a critical role in the funds you hold as digital assets for your customers. Acting as a custodian requires a high bar

including, but not limited to, appropriate security safeguards that are independently audited and tested on a regular basis.

- As set forth herein, your organization, by its conduct, evidently failed to perform adequate **"Anti-Money Laundering"** and **"Know Your Client"** (combined as **"AML/KYC"**) procedures, as those procedures are commonly known under the applicable guidelines and enforcement rules. Combined with appropriate safeguards, AML/KYC could have the potential to prevent the victimization described herein.

- Upon information and belief, the fraudsters liquidated cryptocurrencies through your services for FIAT money; however, the liquidated cryptocurrencies were not legitimately generated revenues. Instead, those cryptocurrencies were stolen through a sophisticated fraudulent scheme. Unbeknownst to myself and to the public, the fraudsters were misappropriating cryptocurrencies from innocent people while liquidating those cryptocurrencies through your services.

- Against this background, and without derogating any of my rights, I hereby hold you liable for financial and emotional harm as well as medical problems relating to this victimization, and **demand** that you reimburse my account in full within 14 days from the date of this letter.

### **INTRODUCTION**

Financial crimes and fraud investigations often involve a high degree of sophistication, complexity, and sensitiveness to detail. Accordingly, this letter aims to address the issue at hand as profoundly and fairly as possible, by taking into consideration contextual regulations, laws, and bylaws, as well as guidance, standards, and rules promoted by supervisory authorities, relevant codes of practice, and (where suitable) what was good industry practice (GIP) at all times relevant hereto. The allegations contained herein are predicated either upon knowledge with respect to myself and my own experience or upon facts obtained through investigations conducted by qualified third parties. I strongly believe that substantive evidence in support of the allegations set forth herein will be found after an appropriate opportunity for discovery. Key facts supporting the allegations contained herein are known only to the Scammers and/or are exclusively within their control.

The Scammers cleverly orchestrated a prevalent scheme of deception to lead people to invest significant sums while knowing that those would-be investors would ultimately lose the money, they had entrusted to it. The overall purpose of the scheme, in other words, was to target and defraud people who are often inexperienced and naive, in pursuance of illicit wealth through various fraudulent representations. **I did not know, and through the exercise of reasonable diligence could not have discovered, the fraud that was being perpetrated upon me by the Scammers.**

Fraud is commonly conceptualized as withholding from the weaker party in a financial transaction (e.g., an investor) information that is necessary to make an informed, rational or autonomous decision.

In this regard, even access to adequate information is insufficient to achieve complete autonomy. A complication here is that the weaker party, amateur/unseasoned investors in particular, might have trouble analyzing the data at hand sufficiently well to identify fraudulent schemes. Unfortunately, because financial products are often abstract and complex, there is no easy solution to this problem. Therefore, full autonomy of investors might not only require access to sufficient information, but also access to relevant technologies, know-how, processing capabilities, and resources to analyze the information. **A reasonable solution is that financial institutions would be required to promote transparent communication in which they understand the business of its customers and its legality.**

According to the Federal Trade Commission's interpretations of certain terms (like the words deceptive and unfair), the FTC has found that a "deceptive act or practice" encompasses *"a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."*

The federal courts have defined a "deceptive trade practice" [i]as *any act or practice that has the tendency or capacity to deceive consumers* and have defined an "unfair trade practice" as *any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.*

The false representations and omissions made by the Scammers have a tendency or capacity to deceive consumers, such as myself, into unwittingly providing funds that fueled the Scammers' fraudulent scheme and are therefore by their very nature jointly immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

As a result of the Scammers' deceptive trade practices, I was deceived into transferring my funds for investment returns that were never delivered. I will certainly never receive any monetary value for the investments considering the way the Scammers had their scheme rigged thus causing significant economic damage to me. The false statements of material facts and omissions as described above; and the fraudulent transaction the Scammers perpetrated upon me; were unfair, unconscionable, and deceptive practices perpetrated on me which would have likely deceived any reasonable person under the circumstances.

When determining what is reasonable and fair, we should focus on the issue of liability; Common queries include, but are not limited to, the following:

> (i) whether you violated any rule, law, or regulation, and/or breached any material elements
> of the relevant bylaws or codes of conduct, in failing to protect the public's financial safety;

(ii) whether by virtue of your custodianship over the funds or by your control over them, you owed a fiduciary duty to the public and if so, whether that duty was breached;

(iii) whether you promoted the transaction in question despite being aware of the nature of business in question;

(iv) whether you were in compliance with your own policies and procedures;

(v) whether you owed duties to the public, what the scope of those duties was, and whether you breached those duties;

(vi) whether your conduct was unfair or unlawful;

(vii) whether you have been unjustly enriched;

(viii) whether I have sustained damages as a result of your conduct; and

(ix) whether you have within your power the ability to, and should compensate me for the harm that has befallen me.

## EXPOSING YOUR ORGANIZATION'S MISCONDUCT

Having analyzed the circumstances surrounding the transactions in question, I hereby allege that your organization has completely failed to adequately investigate the fraudster's accounts and has willfully blinded itself to obvious red flags. Many suspicions should have arisen at your organization as an issue of great concern, with respect to the unusual and abnormal high volume of activity taking place in the fraudsters' account(s), who have laundered large sums of money under the radar. Despite the regulatory and statutory requirements, your organization should abide by as a licensed and regulated financial institution, and instead of detecting patterns, drawing certain conclusions, and taking actions accordingly, you at best merely and insufficiently performed a minimal hasty and haphazard review of the account(s) held by the fraudsters or possibly asked only a few trivial questions regarding the suspicious activities, and at worst, shut your eyes completely rather than being careful, methodical, and vigilant. Had you bothered, you would probably have realized that the funds were associated with fraud and financial crime, rather than some other legitimate revenue/activity.

**The financial institution should seek further information and/or documentation from the client in order to help create a proper KYC profile, and when the movement of large sums of money is concerned, to verify the legality and legitimacy of its sources.**

**In light of the above, and after conducting a comprehensive review, it has become glaringly obvious to me that no adequate information and/or documentation were sought by your organization, at best, and at worst —no appropriate safeguards were implemented.**

If a financial institution received money knowing it to be *"dishonestly given, shutting its eyes to the obvious fact of the dishonesty or acting recklessly in failing to make such inquiries as an honest and reasonable individual would make",* it would be in breach of its AML/CTF/KYC, even if on the surface

the payment was in a legal manner (which it clearly was not) the financial institution should still be liable for negligence resulting in damages.

Compliance departments should ensure that staff members understand the legal requirements and where there are suspicions that these suspicions be communicated to all relevant personnel whilst being investigated. You have clearly failed to request from the fraudsters' a confirmation transaction to verify the veracity of their default position that they legitimately earned those monies.

For the avoidance of doubt, reasonable grounds should not necessarily be interpreted as proof. **On the basis of various signs, you should have assumed that something fishy was going on and should have suspended the transaction until reasonable inquiries could be made to verify that the transaction was properly executed**. In other words**,** I am a   victim of your negligence for facilitating the misappropriation of funds and doing little to safeguard public financial interests. Any reasonable staff member would have realized that there were *many obvious, even glaring, signs* that funds were being misappropriated and probably laundered (Singularis Holdings Limited (in liquidation) v Daiwa Capital Markets Europe Limited [2019] UKSC 50)[iii].

Had you cursorily audited or reviewed the Blockchain history of the cryptocurrencies in question, it would have been transparent and beyond obvious to you that those transactions were not in any way a result of legitimate business dealings but were rather generated from unlawful and criminal activities.

You knew or should have known that the funds being liquidated through your services did not rightfully belong to the fraudsters. Similarly, you knew or should have known that the assets being liquidated through your services were not profits earned in a legitimate and lawful fashion.

Instead, you knew or should have known, that the assets being liquidated through your services belonged to innocent investors and were being converted by criminals. You turned a blind eye to the crimes that you have facilitated and thus provided an array of essential liquidation services, acting as a vehicle, with the awareness that it was enabling the fraudsters to commit crimes and convert assets of victims.

Your services undoubtedly served as a crucial element in the fraudulent scheme detailed herein, and you were either unaware of your complicity in the fraud, or at worst, completely aware and silent. You knew that you should have disclosed and reported the fraudsters' activities to law enforcement authorities/agencies and regulators. However, to satisfy your financial interests, you conveniently closed your eyes, even though you undeniably had, at all material times, the necessary controls and resources to influence, whether directly or indirectly, those particular transactions.

You also had the duty to stop those crimes, yet you refused to do so because you were more interested in

enriching yourself, even if it meant furthering those crimes and allowing them to cause massive financial losses to plenty of victims — many of whom have suffered immensely as a result of your wrongful conduct. **Therefore, it is clear that you**
**did not have in place adequate security measures to properly safeguard the public assets — hence, you have irreparably harmed me and, if not enjoined, will continue to irreparably harm other victims as well as their loved ones and associated. You have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public which our society deserves better.**

When discussing the responsibilities that a financial institution might incur, it is crucial not to forget the fact that a  legitimate complaint by, or cause of action on the part of, an individual might generate/give rise to a further statutory cause of action and/or additional liabilities beholden by a financial institution to the relevant regulatory authority. Obligations/duties beholden by a financial institution to a regulator are distinct from those beholden to the individual.  Moreover, you may be liable to more than one regulator.

As a regulated and licensed financial institution, you have strict statutory and regulatory obligations to monitor transactions and report any suspicious activities to law enforcement authorities. The importance of implementing robust internal systems to detect and report money laundering and other suspicious activities has been continuously emphasized in the industry in addition to having the appropriate policies, procedures, and internal controls in place in order to ensure ongoing compliance in respect to the aforementioned systems. **You should have analyzed your client's activities and distinguished thereafter between that which may be normal activity as opposed to that which might suggest illegal activity**. This is a well-known industry standard that plays a substantial role in preventing criminals from liquidating and laundering customer funds.

### FRAUD

Actual fraud can be described, inter alia as, *"suppression of that which is true, by one having knowledge or belief of the  fact."* Therefore, due to the fact that you knew or were grossly negligent in not knowing that such scams thrive under your watch — you are liable for committing actual fraud and thus, are responsible for any damages caused to me as a  result.

### UNJUST ENRICHMENT

By engaging in the conduct described herein, you, directly or indirectly, knowingly and/or with severe recklessness, in particular by not doing enough to properly verify the legality of your clients' sources of income, have reaped the benefits from allowing the scammers to steal money from me and likely from many others, thereby causing actual harm to a substantial amount of people. Retaining the said monetary

benefits, as a result of your misconduct alleged herein, is unconscionable and against the fundamental principles of justice.

## VIOLATIONS OF INTERNATIONAL LAW

By reason of this misconduct, you violated, and if not enjoined will continue to violate, many of the international anti-fraud policies, which are established to facilitate the development of controls that aid in the detection and prevention of worldwide fraud.

Your organization's blatant disregard of its obligation to adequately follow a KYC/AML procedure has caused significant, irreparable damage and injury to me. Much of which is clearly a result of negligence or so easily subject to the investigation that it is apparent that you misappropriated the assets either knowingly or with reckless disregard to whether these transactions were lawful or not. You have an independent and non-delegable duty to conduct a reasonable investigation of any and all transactions and the failure to do so is a violation of the law and of the rights of those affected by such negligence.

## AIDING AND ABETTING

By engaging in the conduct described herein, you knowingly or recklessly promoted transactions, practices, and courses of business that unquestionably operate as fraud and deceit upon the purchasers and provided substantial assistance to the commission of the financial crime. By engaging in the conduct described herein, which no doubt is a substantial factor in causing my injuries, you aided and abetted the fraudsters and if not enjoined, will continue to aid and abet violations.

As a direct, foreseeable, and proximate result of your wrongful conduct described herein, I have sustained and continue to sustain substantial injuries, which include, but are not limited to **financial loss, humiliation, embarrassment, severe mental and emotional distress, and discomfort,** which encompass damages which total in excess of initial injuries caused by the monetary loss due to the monies what were transferred to the fraudsters.

## FURTHER POINTS FOR CONSIDERATION

It is well-established that a compensation obligation arises in the circumstances discussed above as contemplated by the standards, and that the regulated and licensed financial institutions, although haven't perpetrated the fraud themselves, should be uniquely placed in the role of an insurer, insofar as reasonable. Granted, the fraud has taken place entirely outside of the domain of the financial institution, nevertheless, both common sense and methodological approaches to problem-solving suggest that the financial institution should have had the investigative powers, the know-how, and the resources not only

to detect and prevent this foreseeable fraud, but also to discover the nature or merits of this claim, and when appropriate, reimburse the client. In the computer age, when access to technology and information is abundant, it is no longer exclusively a matter of law enforcement or government-led action.

Moreover, it is better to seek to protect users, increase costs for users, and even limit choice, than to achieve a  compromised protective environment and in doing so provide fertile ground for criminal organizations to flourish and enrich themselves.

Given that the recordings of all completed transactions on the Blockchain are publicly available, easily accessible, and fully transparent, for example, through https://www.blockchain.com/, it wouldn't be implausible to assert that you utterly failed to satisfy yourself that the cryptocurrencies being presented by the fraudsters actually derived from legitimate sources — as it could have been easily verified and flagged thereafter. Further, you should be aware of the tactics often utilized by fraudsters such as large movements of sums in short periods of time, and thousands of micro-transactions which create a false sense of demand, tumblers, and mixers. You have routinely failed to exercise your clear, nondiscretionary, and indisputable duty to inquire and/or report suspicious activities such as the movement of digital funds; absent appropriate sets of inquiries as to the legitimacy and legality of the transactions, and as a  result, fraudsters will continue to thrive.

## FRAUD DETECTION SERVICES

It is clear that I was injured through the misconduct described above and was subject to the fraudsters' unfair and unlawful practices. It is clear that any rational individual could have been deceived just as easily as I have been under the circumstances, hence I suggest that you adapt yourself, as a respectable and resourceful financial institution, to the technologically rapid-changing financial service environment. **If you are serious about fighting crime, it is upon you to invest in fraud detection services, irrespective of whether or not it is expressly specified in the relevant regulatory requirements.**

Fraud detection services are often predicated on non-PII data (Non-Personally Identifiable Information) thus not robbing individuals of their anonymity. Instead, they utilize digital footprints and behavior analysis. **It is expected of firms to take action within the existing legislative and regulatory framework to *suspend or freeze* payments based on their risk assessment of financial crimes. The standards that financial institutions need to meet include processes – such as the use of technology, rules, and procedures – that help prevent and respond to scams similar to the one described herein.**

## **CONCLUSION**

**If a full refund is not administered within 14 days from the date of this letter, in addition to a refund amount, a  request for reimbursement of attorney's fees, filing fees, and any further costs associated with obtaining the refund amount may be pursued.**

If despite the credibility of this claim, you do not take steps to shut down this lifeline to the fraudster's operation or to expose the illegal activities to law enforcement authorities, you are obviously directly participating in a fraud. No matter how inexplicable and suspicious these transactions were, you executed each and every transaction, thus unlawfully generating immense profits from fraud. In order to perpetrate the fraud, the criminals needed a financial institution that would be friendly and hospitable to scammers, in other words, an institution that would blind itself to and overlook suspicious activity, completely ignore the grossly excessive activities in their accounts, and conveniently ignore its obligations under the law. It was not reasonable during the time the transactions in question were executed, for you to believe that the transactions were a result of anything other than misappropriation of the funds, especially in light of the fact that you were fully aware, at the relevant time period, that such scams are prevalent and could have done more to spot it before the money was handed over.

In the event of non-compliance with the demand mentioned above, your organization, knowingly or unknowingly,  manifestly jeopardizes its business through its association with the criminals: those who are not direct accomplices to the commission of a crime but rather are permissive of the criminal behavior after the crime has been committed can also be charged with a crime. Being permissive, even if not present when the crime was committed, by not reporting the crime to the authorities and not trying to do your part in remedying the situation, makes you an accessory to the crime. In accordance with moral law, if you unknowingly assist criminal behavior and remain impartial after discovering such, you are seen as obstructing justice.

This letter does not realize the full extent of my claims, rights, and remedies against you or any of your affiliates,   parents and subsidiary corporations, including, without limitation, your representative managing partners, officers,  directors, shareholders, employees, agents, attorneys, assigns, successors, servants, insurers, and representatives, in any matter whatsoever, including the present context of this letter, as that will not detract from my rights and claims in any form or manner whatsoever, or constitute any concessions on my behalf against you and against others.

For ease of reference, I have included transaction statements.

Sincerely

*Larry van dyn hoven*

**DEMAND FOR DISCLOSURE**

The individuals who directed and enjoyed the fruits of these illegal and unlawful activities shall be exposed in full. This means that any and all contextual documents and/or information at your disposal shall be disclosed to me in a timely and equitable manner, in a reply to this letter.

Hence, I hereby demand that you disclose the following within 14 days from the date of this letter:

Reports, instructions, transmittal letters, statements, notices, and other documents, related to the relevant participants and beneficiaries, whether involved directly or indirectly, in accordance with the applicable regulations and guidelines.  It also includes the correct and true names of the parties to the lawsuit, their ID NO., addresses, and telephone numbers, as well as information and documents of any potential party or of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case, including information and documentation concerning their beneficiary bank accounts.

[i] The Federal Trade Commission (FTC) Act, 15 U.S.C. §45 (1995)
[ii] Singularis Holdings Limited (in liquidation) v Daiwa Capital Markets Europe Limited [2019] UKSC 50