RECEIVED

2025 AUG -6  PM 1: 51

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Weiwei Ji

916 Sims Ave

Singapore, 408974

weiweiji@hotmail.com

August 4, 2025


Honorable Judge Karen B. Owens

United States Bankruptcy Court

District of Delaware

824 North Market Street, 3rd Floor

Wilmington, Delaware 19801

USA

In re: FTX Trading Ltd., et al., Case No. 22-11068 (KBO)

## MOTION FOR CLARIFICATION REGARDING THE CURRENCY NATURE OF CREDITOR DISTRIBUTIONS UNDER THE CONFIRMED PLAN

### Preliminary Statement

1.  On July 22, 2025, the Court held an omnibus hearing in the above-captioned

Chapter 11 case. I (Claim ID:37373), the undersigned creditor, participated remotely via

Zoom. During the hearing, I attempted to raise a fundamental question directed to the

FTX Recovery Trust team: whether the nature of the claims being distributed under the

Plan is denominated in U.S. dollars or instead treated as cryptocurrency-based obligations.

Unfortunately, my effort to obtain a clear answer was unsuccessful.

2.  This question lies at the heart of the debtor–creditor relationship in this

bankruptcy proceeding. It also forms the foundation of the legal analysis underlying the

1

Trust's recent motion to withhold or delay distributions to creditors located in so-called "Potentially Restricted Jurisdictions." Without a clear and unambiguous statement from the FTX Recovery Trust as to whether these claims are considered U.S. dollar-denominated debt obligations, confusion will persist—and with it, growing concern and dissatisfaction among creditors in the affected jurisdictions.

3. I therefore respectfully submit this Motion to request clarification from the Court or, in the alternative, from the FTX Recovery Trust, as to the legal and financial nature of the obligations being distributed. A definitive answer on this issue is essential not only for transparency, but also for evaluating whether the application of jurisdictional restrictions is legally and factually justified under the Plan.

4. Indeed, legal concerns surrounding cryptocurrency regulation are only relevant if the distributions are actually being made in the form of cryptocurrency. If the distributions are instead U.S. dollar-denominated—whether delivered through bank transfers or stablecoins—then the legal foundation for the "Potentially Restricted Jurisdictions" framework may be misplaced from the outset.

## I. FTX's Bankruptcy Proceedings Are Governed by U.S. Bankruptcy Law, and Creditor Claims Should Be Settled in U.S. Dollars

5. FTX's bankruptcy case is being adjudicated in the U.S. Bankruptcy Court for the District of Delaware and is conducted entirely under Chapter 11 of the U.S. Bankruptcy Code. In this context, the nature of creditor claims should follow the default legal framework under U.S. law—namely, that such claims are to be recognized and satisfied in U.S. legal tender, i.e., U.S. dollars.

6. U.S. courts generally do not treat bankruptcy claims as obligations denominated in cryptocurrency, especially where the plan does not provide for such treatment explicitly. As a fundamental principle, debt repayment in U.S. bankruptcy proceedings should be carried out in U.S. dollars.

## II. The Confirmed Plan and Bankruptcy Code Require Dollar-Denominated Valuation and Distribution

7. Pursuant to Section 502(b) of the U.S. Bankruptcy Code, claims in bankruptcy proceedings must be determined "as of the date of the filing of the petition" and must be converted into U.S. dollar amounts. This principle applies to all forms and types of assets, regardless of their original denomination or nature.

8. During the negotiation of the FTX reorganization plan, some creditors advocated for a "coin-denominated" recovery—meaning a return of the same type and quantity of cryptocurrency originally held by the creditor. However, such proposals were rejected during the plan confirmation process. The final Confirmed Plan explicitly adopts a valuation and distribution mechanism based on U.S. dollars. All claims are to be valued, allowed, and distributed based on their U.S. dollar value as of the petition date.

## III. In Practice, Distributions Are Dollar-Based, with Stablecoins as a Delivery Tool

9. In the actual implementation of the Confirmed Plan, the vast majority of creditor recoveries have been calculated and distributed in U.S. dollars. In certain instances where

stablecoins (such as USDC or GoUSD) were utilized, these digital instruments functioned solely as a payment mechanism to convey dollar value, and did not alter the fundamental nature of the underlying obligation.

10.  The Confirmed Plan expressly authorizes the FTX Recovery Trust to execute distributions using digital means, including stablecoins. However, it simultaneously reaffirms that the legal nature of creditor claims remains denominated in U.S. dollars. Whether payment is made via bank transfer, stablecoin, or other technical methods, these are merely means of performance and do not convert a legal obligation in fiat currency into one in cryptocurrency.

## IV. The Use of Licensed Crypto Platforms Does Not Alter the Dollar-Based Nature of the Debt

11.  The FTX Recovery Trust designated three Distribution Providers (DPS) to facilitate the claims payout process: BitGo, Kraken, and Payoneer. While the first two are crypto asset custodians, their role is strictly limited to the digital transmission of U.S. dollar value and does not alter the legal nature of the claims. Payoneer, a traditional payment platform, further reinforces that the distributions involve U.S. dollars rather than cryptocurrency.

12.  BitGo explicitly states in its official materials that it assists in distributing "U.S. dollar equivalent value" to creditors, using GoUSD—a stablecoin pegged to the U.S. dollar—as a payment instrument. This arrangement is solely for the sake of efficiency

and security, not a redefinition of the underlying obligations. Kraken, as another DPS, similarly facilitates the payout of claims valued in U.S. dollars.

13.  It is worth noting that although BitGo and Kraken hold certain crypto-related licenses, these licenses do not necessarily satisfy regulatory requirements in all distribution jurisdictions. If the distributions were made in actual cryptocurrency, these platforms could face compliance barriers in multiple regions. However, since the distributions are in U.S. dollars (or stablecoin equivalents), they can operate within most jurisdictions without such regulatory complications.

14.  Moreover, the involvement of Payoneer clearly demonstrates that FTX is not relying solely on crypto channels to fulfill its obligations. As a regulated traditional payment provider, Payoneer can only process fiat currency transactions—further confirming that, regardless of which DPS is used, the distributions ultimately reflect U.S. dollar value and not a cryptocurrency-based obligation.

15.  In summary, the choice of DPS does not affect the fundamental nature of the distributions. FTX's repayments constitute the fulfillment of dollar-denominated debt, and whether carried out through digital platforms or traditional payment services, this does not alter the legal character of the claims.

## V. Comparative Precedent: The Celsius Crypto Bankruptcy Demonstrates That Dollar-Denominated Obligations Can Be Paid Globally via Wire Transfers

16.  In another U.S. crypto bankruptcy case—**Celsius Network LLC (Case No. 22-10964 (MG))**—both the debtor and the U.S. Bankruptcy Court fully recognized that distributing dollar-denominated claims to global creditors could present operational or compliance challenges in cross-border payments. In particular, some international creditors raised concerns that checks issued by U.S. banks might be difficult to cash in their local jurisdictions.

17.  Celsius did not impose restrictions or deny payments to creditors in specific countries. Instead, it proactively provided a solution: allowing creditors to receive their U.S. dollar distributions via wire transfer. In court filings, Celsius explicitly stated that this modification was intended to "streamline the distribution process" and address the practical difficulties faced by international creditors[1]. This demonstrates that distributing U.S. dollars internationally is not only legally feasible, but also aligned with the principle of equitable treatment emphasized under Chapter 11 of the U.S. Bankruptcy Code. In fact, during Celsius's actual distributions, a substantial number of Chinese creditors successfully received their compensation in U.S. dollars via bank wire transfers.

[1]See: https://bitcoinleef.com/celsius-pays-lenders-2-billion-in-crypto-after-bankruptcy/

**Relief Requested**

Accordingly, the Movant respectfully requests that the Court grant the following relief:

18.  An order directing the FTX Recovery Trust to clearly and unambiguously state whether distributions under the confirmed plan are to be made in U.S. dollars or in cryptocurrency;

19.  A declaratory judgment or other appropriate relief from the Court affirming that the creditor claims under the confirmed plan constitute U.S. dollar obligations, both in legal nature and in valuation, and are not cryptocurrency-based or cryptocurrency-linked claims;

20.  A clarification from the Debtors as to whether distributions to the relevant creditors—including both past and future distributions—are made in U.S. dollars or cryptocurrency, and whether the nature of such distributions is fundamentally dollar-based or cryptocurrency-based.

Respectfully submitted,

Weiwei Ji
Creditor and Pro Se Party

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

RECEIVED

2025 AUG -6  PM 1: 51

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Weiwei Ji, hereby certify that on August 4, 2025, I caused a copy of this Motion to be served
via email upon the following parties listed below.

- Counsel for the FTX Debtors – Sullivan & Cromwell LLP

  - James L. Bromley – bromleyj@sullcrom.com
  - Alexa J. Kranzley – kranzleya@sullcrom.com
  - Andrew G. Dietderich – dietdericha@sullcrom.com
  - Brian D. Glueckstein – gluecksteinb@sullcrom.com

- Local Counsel – Landis Rath & Cobb LLP

  - Adam G. Landis – landis@lrclaw.com
  - Kimberly A. Brown – brown@lrclaw.com
  - Matthew R. Pierce – pierce@lrclaw.com

- Office of the United States Trustee

  - Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov
  - Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
  - David Gerardi – david.gerardi@usdoj.gov

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 4, 2025

Weiwei Ji

FROM:
Weiwei Ji
916 Sims Ave
Singapore 408974
Email: weiweiji1@hotmail.com

TO: United States Bankruptcy Court, District of Delaware

Attn: Clerk of the Court
824 N. Market Street, 3rd Floor
Wilmington, DE 19801

Re: Motion for Clarification Regarding the Currency Nature of Creditor Distributions — Case No. 22-11068 (KBO)



THE UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE

916 SIMS AVENUE
#07 – 78 SINGAPORE
408974 SINGAPORE
SINGAPORE

To :

WILMINGTON, DE
824 NORTH MARKET STREET, 3RD FLOOR DE DELAWAR

19801 WILMINGTON
UNITED STATES OF AMERICA

US – PHL – NJS DENJ

Origin:
SIN

Contact:
CLERK, US BANKRUPTCY COURT

ADI – 03M

Ref Code Case NO.22 – 11068(KBO)

Content Description

WAYBILL 26 9881 1801

(21)US19801+42000000

PeWSht Weight
/0.3 KG

Day        Time

Piece
1/1

U.S.M.S
X-RAY

Reference

(J) JD01 4600 0121 9913 5892

Por favor
necesari

Introduc
empaca

Please e
and all g

Place th

Placer ic

Veuillez
et les ma

ación
debidamente

complete

plète



NJNA
11
28988 11801
PCS:1

EDD
COMM

100%
RECYCL

S I N
STATION

THE CONTENTS OF TH
FOR SECURITY PURP

FOR DHL (SIGNATUR

FOR DHL (PRINT NAM