RECEIVED
2025 AUG 11  AM 10: 20
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

United States Bankruptcy Court
District of Delaware

August 6, 2025

Honorable Judge Karen B. Owens
United States Bankruptcy Court
824 North Market Street, 3rd Floor
Wilmington, Delaware 19801

RE: Creditor Letter – Supplemental Concerns Regarding the Restricted Jurisdiction Procedures
In re: FTX Trading Ltd., et al., Case No. 22-11068 (KBO)

Dear Judge Owens:

I was born in China in the late 1980s. From a young age, I grew up with a deep admiration for the values that the United States represents—justice, democracy, freedom, and the rule of law. For people like me, raised in a very different legal and cultural environment, America has always been more than just a country. It has been a symbol of fairness, a light in the distance that gave us strength to believe that justice is possible, no matter where you live.

That admiration became personal: it shaped my worldview, inspired my studies and professional goals, and encouraged me to strive to make my own small contribution to human progress—not only in China, but for the broader world.

Of course, I know that no country is perfect. The Motion currently before the Court feels, to many of us, unfair and deeply discouraging. But even as I write this letter of concern, I do so with hope—not anger. Because in my heart, I still believe that the United States is a good country, guided by principle, and made strong by the dedication of judges like Your Honor, who uphold justice not only in letter, but in spirit.

I am submitting this supplemental letter not only because the Motion directly affects me as a Chinese creditor, but also because I believe the central issue has been overshadowed. Much of the discussion to date has centered on whether China should be designated as a "restricted jurisdiction," while the more fundamental question—the legality, fairness, and safeguards of the procedural framework itself—has not received the same level of scrutiny.

As non-native English speakers, I and many other Chinese creditors found during the July 22 hearing that the language barrier made it challenging to respond effectively in real time—especially when the Trust repeatedly emphasized that this Motion is "purely procedural." This framing risked diverting attention from the procedural safeguards that should accompany such authority, and in the absence of transparency and independent oversight, such a framework can too easily be used to justify the exclusion of certain creditors. As a result, certain important concerns about the structure and oversight of the process were left unspoken by many of us.

Through this letter, I wish to place those procedural concerns squarely before the Court, so that they can be considered on their own merits, alongside any jurisdiction-specific debates.

We write respectfully as individual creditors, Sen Wang and his mother, Ms. Yong Ping Hu, to submit this supplemental letter addressing additional concerns regarding the FTX Recovery Trust's Motion to Implement the Restricted Jurisdiction Procedures. We previously submitted an objection, and we respectfully submit this letter to supplement and expand upon the points raised therein.

**1. Procedural Trap and Denial of Due Process**

Although the Motion is framed as procedural, it effectively grants the Trust unilateral authority to exclude creditors from distributions without meaningful court oversight or any opportunity for creditors to challenge such decisions. Once granted, the Trust can determine which jurisdictions are deemed "restricted" based solely on private legal opinions it selects, and those decisions are final. This strips creditors of the basic right to be heard and to contest their exclusion. Granting such exclusionary power without clear procedural safeguards directly violates the principle of due process.

During the July 22 hearing, a significant concern emerged. Your Honor made clear that it would be premature to adjudicate claim disallowance at this stage. Yet counsel for the FTX Recovery Trust expressly stated that, once the procedural framework is established, they plan to raise the issue of forfeiture at a later date. This admission shows that the current Motion—though presented as purely procedural—may later be used as the legal foundation for substantive claim disallowance without fresh judicial scrutiny. Such a framework risks creating a "silent pathway" to remove creditor rights. Once granted, future exclusions could be characterized as mere administrative enforcement, avoiding further court review.

More importantly, this forward-looking intent to pave the way for claim forfeiture is inconsistent with portraying the Motion as a purely good-faith measure to manage distributions. By embedding such authority now, the Trust effectively ensures it will have a streamlined path to eliminate claims later, without the safeguard of renewed judicial review.

Even if the Court assumes that the Trust is acting in good faith, good faith alone cannot replace the need for transparency, checks, and oversight. History has shown that even well-intentioned policies can result in unfair outcomes if implemented without adequate safeguards—especially when the decision-maker holds unilateral power over who is paid and who is excluded. Procedural safeguards are therefore not a sign of distrust, but a structural necessity to protect the rights of all parties.

**2. Fiduciary Duty Conflict**

The Trust was established to protect and advance the interests of creditors. Yet, in this Motion, it places its own protection from perceived regulatory risks above its core fiduciary obligations—going so far as to contemplate the exclusion of entire classes of

creditors. Such prioritization represents a fundamental breach of fiduciary duty and undermines the very purpose for which the Trust was created. This inversion of priorities is not merely a technical flaw—it strikes at the heart of the Trust's mandate. No entity should simultaneously serve as both the administrator of distributions and the authority empowered to disqualify recipients, without robust and independent oversight. This dual role invites conflicts of interest and erodes confidence in the fairness of the process.

### 3. Moral Principle – Hypothetical Enforcement Risk and the Danger of Following Unjust Foreign Laws

Even if certain jurisdictions might theoretically impose penalties on the Trust or its agents for making distributions to local residents, there is currently no concrete precedent or evidence that such enforcement would occur in this case, including in comparable cryptocurrency bankruptcy cases. The risk cited in support of this Motion remains speculative and unsubstantiated, and speculative foreign enforcement should not serve as a valid basis to preemptively deny creditors their rightful payments. American courts have long held that property rights are not to be curtailed based on hypothetical, untested threats.

While we firmly believe that speculative foreign enforcement risk is not a valid basis to preemptively deny payment, we also recognize that, should the Court determine such risk warrants procedural safeguards, any measures must focus on preserving creditor rights through alternative lawful channels rather than outright exclusion. This could include routing payments through offshore accounts, alternative payment methods, or court-supervised holding arrangements until the legal uncertainty is resolved—ensuring that no creditor is permanently deprived without due process.

History offers stark warnings about the dangers of following unjust or authoritarian foreign laws. For example, if during World War II a Nazi-controlled regime ordered foreign banks to confiscate funds from Jewish depositors and transfer them into government-designated accounts—or, fearing such political risk, to redistribute those funds to other depositors—would it be justifiable for a neutral institution, claiming to protect all depositors, to comply? We believe the answer is clearly no.

Similarly, U.S. bankruptcy courts should not endorse procedures that mimic such unjust deference to authoritarian demands—whether by transferring withheld funds to other creditors, diverting them into other accounts, or otherwise denying them to those who rightfully own them. We urge the Court to require that any claimed enforcement risk be substantiated with concrete, verifiable evidence and, even then, should pursue lawful alternatives that uphold creditor rights while addressing genuine operational concerns.

### 4. Economic Harm and Additional Interest Compensation Due to Delayed Distribution

The Trust has already suspended distributions to certain creditors due to jurisdiction-related uncertainty, without meaningful explanation or process oversight. This delay creates unequal treatment among creditors of the same priority and imposes additional burdens on affected claimants. Without corrective measures, these disparities will compound over time, widening the gap between similarly situated creditors.

- **Class 5A claims**

    Under the Plan, Class 5A claims accrue post-petition interest (approximately 9% per annum) on unpaid amounts until paid in full. However, if the Trust calculates payment amounts as of an earlier scheduled distribution date and later withholds payment due to jurisdictional classification, the practical effect may be the loss of additional interest accrual during the deferral period—creating a direct financial disadvantage compared to similarly situated creditors who received timely payment.

- **Class 7A claims**

    Class 7A claims are fixed-entitlement distributions without any ongoing interest accrual. Their value lies entirely in prompt payment. When delayed due to jurisdictional procedures, affected 7A creditors receive neither their principal on time nor any interest or compensatory adjustment, placing them in a materially worse position than other creditors in the same class.

Given these disparities, we respectfully request that the Court, in reviewing any revised procedures or future distribution framework, ensure that:

1. For Class 5A claimants, interest accrual continues without interruption until the actual payment date, and that any calculation of payment amounts accounts for the full deferral period, with additional interest awarded where procedural exclusion has caused further delay.
2. For Class 7A claimants, an equivalent compensatory amount—calculated using the Class 5A post-petition interest rate or another fair benchmark—be applied to cover the economic loss caused by delayed distribution.

These compensatory measures are essential to restoring parity among creditors of the same priority and ensuring that procedural delays do not result in permanent financial harm to affected parties. These losses are the direct result of procedural design choices made by the Trust, not of any action or omission by the affected creditors. As such, the financial burden should not be shifted onto those already subjected to significant delays.

### 5. Lack of Transparency and Clarity in Administration

While the Trust has publicly stated in general terms that customers from "restricted jurisdictions" will not receive distributions, there is no mechanism for individual creditors to confirm whether this is the specific reason they have been excluded. The

customer-facing systems do not allow us to understand, verify, or correct our claim status.

As a concrete example, I contacted both FTX Customer Support and the FTX Recovery Trust multiple times regarding my claim, which has been marked as "Disputed" in the Customer Portal. I asked whether my registered address in mainland China was the cause. The responses I received were vague, repetitive, and contradictory—both parties repeatedly referred me to each other, with neither confirming whether residency is a factor or what steps could resolve the issue. I was told to update my mailing address through the Kroll portal, but also informed that such updates would not necessarily reflect changes in jurisdictional classification. No clear information was offered about how to change tax residence or country status, or how that would affect distribution eligibility.

In essence, despite multiple written requests and even a phone call, I was given no definitive answer—only circular referrals and disclaimers. This reveals a black-box system that effectively prevents creditors from understanding or correcting their own claim standing, leaving us not only helpless, but also exposed to the very real risk of permanent exclusion from rightful distributions.

**Evidence of Communication Attempts**

We have preserved contemporaneous records of our efforts to obtain clarity, including:

• Email correspondence with both FTX Customer Support and the FTX Recovery Trust;

• Screenshots from the Customer Portal showing our claim marked as "Disputed";

• Notes from phone calls in which we sought confirmation of whether residency status was the cause of exclusion.

These records clearly demonstrate repeated attempts to resolve the issue and the consistent failure to provide substantive answers. We stand ready to submit these materials to the Court upon request.

We therefore respectfully request:

• That the Court require the publication of a clear and official policy on how residency, mailing address, and jurisdictional status are assessed;

• That creditors be allowed to submit updated jurisdictional documentation (e.g., relocation or tax residency changes), with appropriate verification;

• That the Trust be required to acknowledge and respond to such updates in a timely and reviewable manner.

We further request that any assessment of "residency" allow creditors to self-declare updated addresses and provide evidence of recent relocation or offshore account access, with appropriate verification to ensure accuracy and security. Many claimants—especially from jurisdictions under scrutiny—have since moved abroad or conduct their finances internationally. They should not be disqualified solely based on outdated KYC data or previously submitted system information, especially when more current, verified updates are available.

Such persistent lack of transparency is not a trivial administrative oversight—it directly affects the ability of creditors to secure their lawful distributions. This is not merely an administrative inconvenience; it is an ongoing procedural failure with potentially irreversible consequences. Once a distribution deadline passes under the current opaque framework, the opportunity to remedy a classification error may be lost forever. Without such corrective action, affected creditors may face permanent exclusion from distributions despite having valid claims.

The constant referral of creditors between departments is inconsistent with the hallmarks of a good-faith process. Without timely disclosure of criteria and the ability for creditors to act on that information, any process—regardless of its stated intentions—can unintentionally harm those it seeks to serve.

### 6. Unreviewable Legal Opinions and Structural Conflict

The Trust relies entirely on legal opinions obtained from counsel it selects and retains. These legal assessments, which may reflect the Trust's preference to minimize liability, form the sole basis for excluding entire groups of creditors. Without independent verification, such opinions effectively become unchallengeable rules that determine creditor eligibility, creating both a conflict of interest and a serious risk of unfair exclusion. Creditors have no opportunity to examine, contest, or respond to these opinions. This structure creates a dangerous precedent—where the party seeking to avoid payment gets to define the rules for who is eligible to receive it.

We respectfully request that the Court not permit any jurisdictional exclusion unless: creditors can review and challenge the legal basis; there is independent or court-appointed oversight of legal assessments; or, alternatively, that the Motion be denied in its entirety.

While our primary position is that no jurisdictional exclusion should occur absent full transparency and independent oversight, we also recognize that, should the Court nonetheless permit such exclusions, additional safeguards must be in place.

We further recommend that any future exclusion decisions be subject to oversight by a neutral expert or review panel appointed by the Court, or alternatively, by a designated creditor representative body, to ensure impartiality and transparency in determining "restricted jurisdiction" status and to maintain creditor confidence in the integrity of the process.

## 7. Disproportionate Legal Burden, Speculative Risk, and Avoidable Harm

This Motion has already consumed extensive court time, creditor energy, and legal resources. The cost is real and measurable. By contrast, the "legal risk" it seeks to avoid is speculative and unsubstantiated—especially in light of precedent bankruptcy cases (e.g., Celsius, Mt. Gox) where distributions to Chinese creditors were executed without incident. The Trust should not invent new procedures to guard against a hypothetical risk, while creating actual cost and exclusion to creditors.

Furthermore, the Trust has complete flexibility in choosing payment methods—whether through overseas bank accounts or secure crypto wallets. If it believes distributing to certain jurisdictions presents reputational or legal risk to its agents, then that is a business risk it must bear. Creditors should not be deprived of rightful distributions based on the Trust's travel concerns or extraterritorial risk avoidance.

We also note that foreign regulations are fluid and can change at any time. Attempting to evaluate the legality of distributions across 49 different jurisdictions is both costly and impractical. Worse, legal assessments commissioned by the Trust are inherently biased toward a conservative outcome and offer no objective safeguard. The result is an unscalable, unnecessary process that creates more uncertainty than clarity.

If the purpose of this Motion were purely protective, as might be assumed under a good-faith view, it would logically seek to minimize disputes and conserve estate resources. Yet this framework, by its very design, invites further challenges, increases litigation cost, and prolongs creditor uncertainty—outcomes that undermine both efficiency and fairness.

In effect, the Motion places an undue burden on creditors while arming the Trust with a procedural mechanism that could facilitate substantive exclusions—including future claim forfeiture—under the guise of administrative caution, and without the procedural safeguards necessary to prevent abuse. Without such safeguards, the risk of procedural tools being repurposed for substantive exclusions is not merely theoretical—it is foreseeable.

## 8. U.S. Law Must Govern Over Foreign Risk Logic

Even if certain foreign jurisdictions impose restrictions on digital assets or cross-border distributions, U.S. bankruptcy law governs this proceeding. Federal courts are not obligated—and should not be permitted—to subordinate domestic due process to foreign legal uncertainty. American precedent clearly protects the supremacy of U.S. law in administering equitable distribution and creditor rights. This bankruptcy is being conducted under the authority of the United States Bankruptcy Code. It is not the role of this Court to enforce or accommodate foreign restrictions that contradict its core mission. The Trust should not weaponize foreign regulatory speculation to override the guiding principles of U.S. insolvency law.

While we firmly maintain that U.S. law should prevail and that all eligible creditors must be paid in full without jurisdictional exclusions, we also recognize that the Court may wish to provide a procedural safeguard only in the rare and exceptional event that legal uncertainty is deemed significant. In such cases, disputed distributions could be temporarily set aside in a segregated, court-supervised disputed claims reserve, with

release conditions clearly defined in advance, rather than cancelled altogether. This would preserve the funds and provide a clear, court-supervised process to address any future disputes, including potential forfeiture actions the Trust may seek under this framework, ensuring that no

creditor loses rights without a fair and transparent adjudication. This approach would also align with the Court's stated goal of reducing repetitive disputes and controlling costs by consolidating any such determinations into a single, organized process.

For the avoidance of doubt, this alternative safeguard is offered solely as a contingency proposal and does not represent any waiver or dilution of our position in any respect that jurisdictional exclusions are fundamentally inconsistent with U.S. bankruptcy law and due process.

### 9. Human Impact and Emotional Harm

Beyond legal theory and procedural design, this Motion has immediate and profound human consequences. In the creditor groups we participate in, several individuals are already facing severe life hardships—some have family members undergoing costly medical treatments, others are elderly, unemployed, or living under significant financial strain. For many, these long-delayed distributions are not mere investments; they are essential financial lifelines. To add further delays, uncertainty, and exclusion through an ambiguous jurisdictional process is to inflict avoidable psychological distress and, in some cases, irreversible harm. We respectfully urge the Court to weigh these urgent human stakes alongside the legal considerations.

### 10. Need for Inclusive and Accessible Implementation Procedures

If the Court permits a revised version of this Motion to proceed, we respectfully request that any future procedures include concrete measures to support creditors in non-English-speaking jurisdictions, including: reasonable timelines to respond to legal notices; official translations of key court documents; and access to basic legal consultation or referral mechanisms. Ensuring that language or geography does not become a barrier to justice is essential to maintaining fairness in a global creditor pool.

We are grateful that during the recent hearing, Your Honor acknowledged the linguistic and procedural challenges faced by non-English-speaking creditors. Such recognition reinforces our belief in the fairness and inclusivity of the American legal process.

We further ask that any future implementation of procedures incorporate the following safeguards:

- Transparent and published eligibility criteria;
- The right for affected creditors to challenge residency classification;
- Judicial review of jurisdiction-based exclusions;
- Clear policy guidance on address changes and eligibility;
- Compensation for creditors whose distributions are delayed.

Regardless of the outcome, we are deeply grateful for the opportunity to be heard. It is this openness to ordinary people that strengthens our belief—more than ever—in the enduring spirit of American justice.

Thank you for your time and consideration.

Respectfully submitted,

**Sen Wang**

FTX Account ID: 77760096

Claim Number: 21470

Email: vincentwangbj@gmail.com

Signature: _____

Dated: August 6, 2025


**Yong Ping Hu**

FTX Account ID: 135752553

Schedule Number: 7446500

Email: huyongping88@hotmail.com

Signature: _____

Dated: August 6, 2025

## CERTIFICATE OF SERVICE

I, Sen Wang, hereby certify that on August 6, 2025, I caused a copy of the foregoing *Creditor Letter – Supplemental Concerns Regarding the Restricted Jurisdiction Procedures* to be served via electronic mail upon the following parties:

Sullivan & Cromwell LLP
- James L. Bromley – bromleyj@sullcrom.com
- Alexa J. Kranzley – kranzleya@sullcrom.com
- Andrew G. Dietderich – dietdericha@sullcrom.com
- Brian D. Glueckstein – gluecksteinb@sullcrom.com

Landis Rath & Cobb LLP
- Adam G. Landis – landis@lrclaw.com
- Kimberly A. Brown – brown@lrclaw.com
- Matthew R. Pierce – pierce@lrclaw.com

Office of the United States Trustee
- Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov
- Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
- David Gerardi – david.gerardi@usdoj.gov

I certify under penalty of perjury that the foregoing is true and correct, on behalf of myself and fellow creditor Yong Ping Hu.

**Sen Wang**

*Signature:* _____

Dated: August 6, 2025

**Yong Ping Hu**

*Signature:* _____

Dated: August 6, 2025

RECEIVED 2025 AUG 11 AM 10: 20 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE



