**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>    Debtors.<br><br>———————————————<br><br>FTX RECOVERY TRUST,<br><br>                    Plaintiff,<br><br>    - against -<br><br>FIND SATOSHI LAB,<br><br>                    Defendant. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br><br><br><br><br><br><br>Adv. Pro. No. 25-_____(KBO) |

**COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 542,
VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362, BREACH
OF CONTRACT, AND FOR DECLARATORY JUDGMENT**

      1.      Plaintiff FTX Recovery Trust, through its undersigned counsel, for its complaint against Defendant FIND SATOSHI LAB ("Defendant"), alleges the following based upon personal knowledge and upon its investigation to date as to itself and its own acts, and upon information and belief as to all other matters:

**NATURE OF THE CASE**

      2.      Plaintiff brings this adversary proceeding ("Adversary Proceeding") pursuant to Sections 105 and 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") to recover $GMT tokens from Defendant. Plaintiff also brings a claim against Defendant for a violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code for Defendant's actions affecting property of the estate, a common law claim for breach of contract, and a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201.

3.  On November 11 and 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D. I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

4.  Debtor Maclaurin Investment Ltd. f/k/a Alameda Ventures Ltd. ("Maclaurin") is a wholly owned subsidiary of Debtor Alameda Research Ltd., which is a wholly owned subsidiary of Debtor Alameda Research LLC. Prior to the filing of the Chapter 11 Cases, Maclaurin engaged in venture investing in early-stage companies in the cryptocurrency, blockchain, and fintech industries.

5.  Upon the Plan Effective Date, all assets of Maclaurin, including all claims and causes of action, were transferred to and vested in Plaintiff, a Delaware statutory trust operated for the benefit of all stakeholders. Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter to prosecute, this Adversary Proceeding.

6.  Defendant is a token issuer that issues the $GMT token.

7.  Before the launch of the $GMT token, Maclaurin purchased the right to receive $GMT tokens through a Token Sale Agreement, which is an investment contract offered by cryptocurrency developers to help fund new ventures including, as here, the development of new tokens.

8.  Pursuant to a Token Sale Agreement between the parties executed on November 8, 2021 (the "TSA"), Maclaurin agreed to pay Defendant $100,000 or the equivalent in agreed-

upon digital assets for the right to receive 40,000,000 $GMT tokens once the token was launched, subject to an applicable delivery schedule.

9. Under the terms of the delivery schedule in the TSA (the "TSA Delivery Schedule"): (i) 4% of the tokens would be delivered five days after the $GMT token launched; and (ii) beginning six months after the $GMT token launched, 8% of the remaining tokens would be delivered on the last day of each calendar month for the next twelve months.

10. On December 7, 2021, Maclaurin paid Defendant $100,000 USDC[1] in satisfaction of its obligation under the TSA.

11. On February 17, 2022, the parties agreed via email to extend the TSA Delivery Schedule (the "Extended Delivery Schedule"). Under the Extended Delivery Schedule: (i) all $GMT tokens would be locked for 12 months after the token launched; (ii) every month for the first nine months thereafter, 3.89% of all $GMT tokens would be delivered; (iii) every month for the next nine months thereafter, 3.33% of all $GMT tokens would be delivered; (iv) every month for the following nine months thereafter, 2.22% of all $GMT tokens would be delivered; and (v) every month for the following nine months thereafter, 1.67% of all $GMT tokens would be delivered.

12. The $GMT tokens launched on March 9, 2022.

13. Under the Extended Delivery Schedule, Defendant was obligated to begin delivering $GMT tokens to Plaintiff on April 9, 2023, and to complete its delivery of all $GMT tokens to Plaintiff by March 9, 2026.

---

[1] USDC is a stablecoin digital currency maintained by Circle Internet Financial, LLC that is pegged to the value of the U.S. Dollar and backed by cash and other liquid assets. USDC is redeemable 1:1 for U.S. dollars. *See, e.g.*, *USDC*, CIRCLE, https://www.circle.com/usdc (last visited Mar. 31, 2025).

14. To date, Defendant has not delivered *any* of the tokens Plaintiff is owed under the TSA.

15. This Adversary Proceeding seeks the turnover of the $GMT tokens owed to Plaintiff to date and held by Defendant, as well as a declaratory judgment requiring Defendant to transfer the $GMT tokens to Plaintiff in accordance with the Extended Delivery Schedule.

16. During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional property of the Plaintiff subject to turnover under Section 542 of the Bankruptcy Code, or of transfers made to Defendant that are avoidable under applicable law. Plaintiff intends to recover all such property. Plaintiff reserves the right to amend this Complaint.

## JURISDICTION AND VENUE

17. This Adversary Proceeding relates to the Plaintiff's Chapter 11 Cases filed with this Court on the Petition Date. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

18. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

19. Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

20. The statutory predicates for the relief requested herein are Sections 105, 362, and 542 of the Bankruptcy Code.

21. This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates. Fed. R. Bankr. P. 7001(1).

22. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

23. Plaintiff FTX Recovery Trust is a Delaware statutory trust created and implemented pursuant to the Plan, and the sole owner by assignment of all rights and assets of Maclaurin under the Plan as confirmed by the Court.

24. Defendant FIND SATOSHI LAB is a company incorporated in the British Virgin Islands. Defendant develops and operates STEPN, a "move-to-earn" fitness game built on the Solana blockchain where users earn rewards by walking, jogging, or running outdoors. STEPN has also partnered with multiple sneaker companies to produce physical sneakers with the STEPN logo available for purchase. In connection with STEPN, Defendant develops, issues, and operates $GMT tokens.

25. At all relevant times, the $GMT tokens have been issued and operated by Defendant.

## OTHER RELEVANT PERSONS

26. Maclaurin is a limited company incorporated in the Seychelles. It is a wholly owned subsidiary of Alameda Research Ltd., a British Virgin Islands company limited by shares.

27. Alameda Research Ltd. is a wholly owned subsidiary of Alameda Research LLC, a Delaware limited liability company.

## FACTUAL ALLEGATIONS

28. Prior to the filing of the Chapter 11 Cases, Maclaurin engaged in venture capital investing in the cryptocurrency, blockchain, and fintech industries. It primarily targeted seed to early-stage investments in companies with a geographic focus on Asia and North America.

29. Between 2020 and 2022, Maclaurin made a number of investments in decentralized finance business ventures.

30. Upon information and belief, by late 2021, Defendant had solicited Maclaurin and other entities to invest in the pre-launch $GMT token.

31. The $GMT token is the currency used in the STEPN metaverse.

**I.    The TSA**

32. On November 8, 2021, Maclaurin entered into the TSA with Defendant.

33. Under the TSA, Maclaurin agreed to make an upfront cash payment or the equivalent in digital assets in exchange for the right to receive $GMT tokens when they launched, subject to a delivery schedule. The $GMT token would launch on the date of the "Token Generation Event" ("TGE"), defined in the TSA as the date on which "[Defendant] in its sole discretion determines that it is in [Defendant's] interest to release the Tokens and the Tokens can be delivered legally under applicable law."

34. On November 8, 2021, Maclaurin paid a total of $100,000 USDC to Defendant in satisfaction of its obligation under the TSA.

35. The TGE occurred on March 9, 2022, when the $GMT token was released on various exchanges.[2]

36. On February 17, 2022—prior to the launch of the $GMT token—Maclaurin and Defendant agreed via email to the Extended Delivery Schedule. Under the Extended Delivery Schedule, the $GMT tokens were subject to a 12-month lockup period following the TGE, such that Defendant was obligated to begin delivering the $GMT tokens to Plaintiff on April 9, 2023 and to delivery $GMT tokens monthly thereafter until March 9, 2026.

37. Under the Extended Delivery Schedule, the $GMT tokens are due to be delivered to Plaintiff according to the following schedule:

| Date | $GMT Tokens |
| --- | --- |
| April 9, 2023 | 1,556,000 |
| May 9, 2023 | 1,556,000 |
| June 9, 2023 | 1,556,000 |
| July 9, 2023 | 1,556,000 |
| August 9, 2023 | 1,556,000 |
| September 9, 2023 | 1,556,000 |
| October 9, 2023 | 1,556,000 |
| November 9, 2023 | 1,556,000 |
| December 9, 2023 | 1,556,000 |
| January 9, 2024 | 1,332,000 |
| February 9, 2024 | 1,332,000 |
| March 9, 2024 | 1,332,000 |
| April 9, 2024 | 1,332,000 |
| May 9, 2024 | 1,332,000 |
| June 9, 2024 | 1,332,000 |
| July 9, 2024 | 1,332,000 |
| August 9, 2024 | 1,332,000 |
| September 9, 2024 | 1,332,000 |
| October 9, 2024 | 888,000 |
| November 9, 2024 | 888,000 |
| December 9, 2024 | 888,000 |
| January 9, 2025 | 888,000 |

---

[2] *See, e.g.*, *GMT Vesting & Utility*, STEPN WHITEPAPER, https://whitepaper.stepn.com/other-modules/gmt-vesting-and-utility (last visited June 23, 2025).

| Date | $GMT Tokens |
|---|---|
| February 9, 2025 | 888,000 |
| March 9, 2025 | 888,000 |
| April 9, 2025 | 888,000 |
| May 9, 2025 | 888,000 |
| June 9, 2025 | 888,000 |
| July 9, 2025 | 668,000 |
| August 9, 2025 | 668,000 |
| September 9, 2025 | 668,000 |
| October 9, 2025 | 668,000 |
| November 9, 2025 | 668,000 |
| December 9, 2025 | 668,000 |
| January 9, 2026 | 668,000 |
| February 9, 2026 | 668,000 |
| March 9, 2026 | 672,000 |

38.  To date, Plaintiff should have received 35,320,000 $GMT tokens under the Extended Delivery Schedule.  Defendant has not transferred any of the $GMT tokens owed to Plaintiff under the TSA.

39.  Between April 9, 2023 and the filing of this Complaint, the token has reached a peak value of $0.40.

**II.  Attempted Communication with Defendant**

40.  After the filing of the Chapter 11 Cases, and on multiple occasions, Plaintiff's advisors and counsel attempted to contact Defendant seeking the $GMT tokens owed to Plaintiff to date.

41.  Between January 11, 2023 and June 24, 2025, Plaintiff's advisors repeatedly contacted Defendant and Defendant's counsel requesting transfer of the $GMT tokens owed to Plaintiff.   To date, Defendant has refused to deliver the $GMT tokens owed to Plaintiff.

**III.  The FTX Recovery Trust Attains Standing to Sue Defendant**

42.  On October 8, 2024, the Court entered an order confirming the Plan, which became effective on the Plan Effective Date.

43. Upon the Plan Effective Date, rights and causes of action of the Debtors, including all claims and causes of action of Maclaurin, were transferred to and vested in Plaintiff FTX Recovery Trust pursuant to sections 5.7 and 5.17 of the Plan and paragraph 51 of the Plan confirmation order.

44. Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

45. As of the Petition Date, the $GMT tokens are property of the Debtors' estate pursuant to section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a).[3]

46. "Congress intended that property of the estate be broadly inclusive of all interests that the debtor has under state law." *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002). "[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to determining property of the estate." *In re NJ Affordable Homes Corp.*, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006). Instead, property belongs to the estate where the debtor controls the property or otherwise indicates its "legal or equitable interests" in the property. *E.g.*, *In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding that bank account not

---

[3] In addition, insofar as Defendant qualifies as a custodian under section 543 of the Bankruptcy Code, it is obligated to "deliver to the [Debtors] any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b).

in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

## CAUSES OF ACTION

### COUNT ONE
### TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542

47. Plaintiff repeats and realleges the allegations in paragraphs 1 through 46 as if fully set forth here.

48. As alleged above, Defendant continues to withhold $GMT tokens owed to Plaintiff, which are Plaintiff's assets, that are not of inconsequential value. Plaintiff seeks an order from the Court directing Defendant to turn over all $GMT tokens owed to Plaintiff to date under the TSA pursuant to Bankruptcy Code Section 542(a), which are Plaintiff's property pursuant to Bankruptcy Code Section 541(a)(1). Plaintiff seeks turnover of the 35,320,000 $GMT tokens owed to it as of the date of the filing of the Complaint.

49. The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code. Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

### COUNT TWO
### VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)

50. Plaintiff repeats and realleges the allegations in paragraphs 1 through 46 as if fully set forth here.

51. Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

52. Plaintiff's $GMT tokens withheld by Defendant comprise property of the Debtors' estate under Section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a)(1) (estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

53. Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [to] recover punitive damages." *See* 11 U.S.C. § 362(k)(1).

54. Defendant's decision to withhold from Plaintiff the $GMT tokens owed to Plaintiff under the TSA warrants both actual and punitive damages to be determined by the Court based on the depletion of estate assets, including any losses in value of the $GMT tokens resulting from Defendant's actions, as well as costs and attorneys' fees.

## COUNT THREE
## COMMON LAW BREACH OF CONTRACT UNDER BRITISH VIRGIN ISLANDS LAW

55. Plaintiff repeats and realleges the allegations in paragraphs 1 through 46 as if fully set forth here.

56. On November 8, 2021, Maclaurin and Defendant entered into the valid and legally binding TSA.

57. The TSA required Defendant to deliver 40,000,000 $GMT tokens to Plaintiff following the TGE, subject to the TSA Delivery Schedule, later modified to the Extended Delivery Schedule.

58. The TGE occurred on March 9, 2022. Per the Extended Delivery Schedule, to date, Defendant was obligated to have delivered to Plaintiff 35,320,000 $GMT tokens.

59. Maclaurin fulfilled its obligation under the TSA when it remitted $100,000 USDC to Defendant on December 7, 2021.

60. To date, Defendant has not delivered *any* of the 35,320,000 $GMT tokens currently owed to Plaintiff under the TSA.

61. Between April 9, 2023 and the date of this filing, the GMT reached a peak value of $0.40 per token.

62. Had Defendant provided to Plaintiff the $GMT tokens currently owed to it under the Extended Delivery Schedule, Plaintiff could have realized up to approximately $8,858,590 by selling the $GMT tokens at the post-delivery date price peaks.

63. As a direct and proximate result of Defendant's breach of the TSA, Plaintiff has been damaged and suffered losses.

## COUNT FOUR
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

64. Plaintiff repeats and realleges the allegations in paragraphs 1 through 46 as if fully set forth here.

65. As alleged above, despite many requests from Plaintiff, Defendant has consistently failed to comply with its obligations to deliver $GMT tokens to Plaintiff under the TSA.

66. Defendant's obligations to deliver $GMT tokens to Plaintiff under the TSA, as amended by the Extended Delivery Schedule, continue through March 9, 2026. Defendant's repeated refusals to transfer to Plaintiff $GMT tokens owed pursuant to the TSA suggest that Defendant does not intend to comply with its future obligations under the TSA.

67. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff is entitled to a judgment declaring that the TSA is valid and in force and that Defendant will transfer to Plaintiff all remaining $GMT tokens as they are owed in the future in accordance with the Extended Delivery Schedule.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

68. Enter an order under 11 U.S.C. §§ 542 and 105(a) directing the turnover of all $GMT tokens owed to Plaintiff to date;

69. Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiff for Defendant's violation of the automatic stay;

70. Enter an order requiring that Defendant specifically perform its obligations under the TSA by transferring all $GMT tokens owed to Plaintiff to date;

71. Enter an order requiring Defendant to pay Plaintiff compensatory damages for breach of the TSA, in an amount to be determined at trial;

72. Enter a judgment declaring that Defendant will transfer to Plaintiff all remaining $GMT tokens as they are owed in the future in accordance with the Extended Delivery Schedule;

73. Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

74. Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated: August 18, 2025
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew B. McGuire
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
cobb@lrclaw.com
mcguire@lrclaw.com
robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
gluecksteinb@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com

*Counsel for Plaintiff FTX Recovery Trust*