## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref No. 32061** |

### FTX RECOVERY TRUST'S OBJECTION TO MOTION BY CLAIMANT LAWRENCE D. VAN DYN HOVEN TO RECONSIDER CUSTOMER CLAIM NO. 98560, EXTEND THE APPLICABLE BAR DATE AND ALLOW THAT CLAIM, OR, IN THE ALTERNATIVE, TO EXTEND THE APPLICABLE BAR DATE FOR NON-CUSTOMER CLAIM NO. 100112

The FTX Recovery Trust[2] hereby submits this objection (the "Objection"), pursuant to section 502(j) of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rules 3008, 9006(b) and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the *Motion by Claimant Lawrence D. Van Dyn Hoven to Reconsider Customer Claim No. 98560, Extend the Applicable Bar Date and Allow that Claim, or, in the Alternative, to Extend the Applicable Bar Date for Non-Customer Claim No. 100112* [D.I. 32061] (the "Motion" or "Mot.") filed by Lawrence D. Van Dyn Hoven ("Van Dyn Hoven").[3]  In support

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

[3]    Van Dyn Hoven was previously represented by counsel who filed the Motion.  The FTX Recovery Trust understands that Van Dyn Hoven is no longer represented by counsel but is nonetheless proceeding with the Motion *pro se*.

of the Objection, the FTX Recovery Trust concurrently filed the *Declaration of Michael S. Leto* (the "Leto Decl.") and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Van Dyn Hoven is an individual who, by his own admission, never had any relationship with the Debtors or the FTX Recovery Trust prior to or after the Petition Date.  Despite this admission, over a year after the Customer Bar Date, Van Dyn Hoven filed a Customer Entitlement Claim against the Debtors.  The FTX Recovery Trust objected to the Customer Entitlement Claim after a review of the books and records showed that Van Dyn Hoven was never a customer of the FTX.com exchanges, and therefore could never hold a Customer Entitlement Claim.  Van Dyn Hoven received notice of the objection but did not respond.  Accordingly, the Court entered an order disallowing and expunging the purported Customer Entitlement Claim in its entirety.

2.      Van Dyn Hoven now asks the Court to reconsider this final order, alleging excusable neglect.  But, Van Dyn Hoven ignores the obvious fact that to hold a Customer Entitlement Claim, he must have been a customer of the Debtors—which, by his own admission, he was not.  Thus, any reconsideration of this Court's prior order would be futile.  Moreover, Van Dyn Hoven does not, and cannot, satisfy the reconsideration standards under Rule 60 of the Federal Rules of Civil Procedure.

3.      In the alternative, Van Dyn Hoven asks the Court to excuse the late filing of his Customer Entitlement Claim—filed over a year after the Customer Bar Date—and the late filing of his non-Customer Entitlement Claim, which was filed almost two years after the Non-Customer Bar Date.  Van Dyn Hoven received constructive notice of both Bar Dates, and does not, and cannot, demonstrate that his failure to timely file his claims is excusable.  Even assuming *arguendo* that his late-filed claims were deemed timely, such claims would still fail.  Van Dyn

4916-8139-5298 v.5

Hoven's purportedly misappropriated funds that were deposited into the FTX.com exchange were withdrawn long before the Petition Date, and any claims asserted on the basis of fraud or commingled assets are expressly barred by the Plan's Global Settlement.

4.  What Van Dyn Hoven really seeks is to obligate the FTX Recovery Trust to compensate him for the alleged fraud perpetrated by third parties. While the FTX Recovery Trust empathizes with Van Dyn Hoven for this harm, Van Dyn Hoven is simply not a legitimate creditor of the FTX Recovery Trust, and it is not the FTX Recovery Trust's obligation to make him whole. The Court should reject Van Dyn Hoven's request to use estate assets at other legitimate creditors' expense and deny the Motion.

## RELEVANT BACKGROUND

### I.     The Debtors and Their Chapter 11 Proceedings

5.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.  On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), and on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Confirmation Order").

7.  On January 3, 2025, the effective date of the Plan occurred, which, among other things, established the FTX Recovery Trust and transferred, assigned, and vested all of the Debtors' assets in the FTX Recovery Trust. *See Notice of Effective Date of the Second Amended*

*Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

## II.   The FTX.com Exchange's Wallet System and the Recipient Account

8.      The FTX.com exchange controlled a limited number of unique deposit addresses on the blockchain associated with individual customer accounts. (Leto Decl. ¶ 6.)  When digital assets were sent to a deposit address, the FTX.com exchange would credit the associated customer's account on the FTX.com exchange platform accordingly, but the digital assets themselves were sent to separate wallets controlled by FTX (the "FTX Wallets").  (Leto Decl. ¶ 6.) These FTX Wallets were used in connection with millions of customer transactions and contained commingled digital assets representing the holdings of multiple customer accounts.  (Leto Decl. ¶ 6.)

9.      The FTX Recovery Trust's books and records show that between May 10 and May 11, 2022, 1,396,470 USDT was sent to an FTX Wallet with a deposit address of 0xbc044B893AE5d473781106d2124976E56766a948 (the "Transferred Amount").  (Leto Decl. ¶ 7.)  The Transferred Amount was then credited to an account (the "Recipient Account") held by a customer of the FTX.com exchange (the "Recipient Account Customer").  (Leto Decl. ¶ 8.) Within hours of receiving the aforementioned deposits, the Recipient Account Customer withdrew nearly all of the USDT in nine different withdrawals to six external non-FTX wallet addresses. (Leto Decl. ¶ 8.)  Between May 11, 2022 and the Petition Date, the Recipient Account Customer withdrew nearly all of the digital assets in the Recipient Account.  (Leto Decl. ¶ 8.)

4916-8139-5298 v.5

10.    As of the Petition Date, the Recipient Account contained less than $0.09 of USDT and under $1,000 in total digital asset value,[4] which amounts the Debtors scheduled as a Customer Entitlement Claim[5] against FTX Trading (the "Scheduled Customer Claim").  (Leto Decl. ¶ 9.)

11.    On February 3, 2025, the Court entered the *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Order"), pursuant to which holders of Customer Entitlement Claims were required to commence the KYC submission process on or prior to March 1, 2025 at 4:00 p.m. (ET).  Pursuant to the KYC Order, the Scheduled Customer Claim was disallowed and expunged in its entirety as the Recipient Account Customer failed to commence the KYC submission process by March 1, 2025.

### III.    The Plan's Global Settlement

12.    As set forth in section 5.2 of the Plan, the Global Settlement provides for, among other things, a "compromise, settlement and resolution . . . of all Claims, Interests and Causes of Action against . . . the Debtors" regarding:

> (a)  the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective

---

[4]    Valuations determined in accordance with the *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090-1].

[5]    "Customer Entitlement Claim," as defined in the Plan, means "any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets held by such Person or Entity in an account on any FTX Exchange."  (Plan § 2.1.47.)

Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

(Plan § 5.2.)  Further, the injunction in section 10.8 of the Plan bars "any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan," or "(b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest." (Plan § 10.8.)

13.      The Global Settlement was the result of protracted, good faith, arm's-length negotiations among the Debtors, the Official Committee of Unsecured Creditors, and other stakeholders. *See Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* ¶ 23 [D.I. 26041] (the "Plan Decl.").  The Global Settlement incorporates, among other things, the customer priority settlement, which prioritized certain customer entitlement claims relative to certain other creditors in exchange for a broad release by all stakeholders of all potential claims relating to the insiders' general mismanagement of the exchanges, including the purported absence of cybersecurity controls and compliance measures on the exchanges.  (Plan Decl. ¶ 22.)  The Global Settlement benefited all parties-in-interest by preserving assets that otherwise would be

expended in complex, burdensome and uncertain litigation that could have greatly delayed the conclusion of these Chapter 11 Cases.  (Plan Decl. ¶ 24.)

14.    The Confirmation Order entered by the Court incorporated the Global Settlement (Confirmation Order ¶¶ 38-40, 93) and expressly provides that "[t]he entry of this Confirmation Order constitutes the Court's approval of the Global Settlement . . . under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest power in the range of reasonableness."  (*Id.* ¶ 41.)  The Confirmation Order also gave full effect to the injunction set forth in Section 10.8 of the Plan.  (*Id.* ¶¶ 49, 143-44.)  This Court recently reaffirmed that the Global Settlement resolved all customer fraud claims.  (*See* Aug. 12, 2025 Hr'g Tr. 39:15-21.)

## IV.    Van Dyn Hoven's Customer and Non-Customer Claims

15.    The Debtors have never had a relationship with Van Dyn Hoven either before or after the Petition Date.  (Leto Decl. ¶ 10.)  Van Dyn Hoven did not hold a customer account on the FTX.com exchange prior to the Petition Date, nor did he have any other contractual relationship with the Debtors.  (Leto Decl. ¶ 10.)

16.    Van Dyn Hoven alleges that he was a victim of "a complex, online social engineering fraud" that took place between March and May 2022 that was completely unrelated to the FTX Group.  [D.I. 32061-3 (the "Van Dyn Hoven Decl.") ¶ 3.]  In May 2023, Van Dyn Hoven alleges that he learned that his allegedly misappropriated funds were traced to "a wallet held at/on FTX."  (*Id.* ¶¶ 10, 14.)  In July 2024, Van Dyn Hoven commissioned a crypto tracing report by CNC Intelligence Inc., which purported to show that 1,396,470 USDT of his allegedly misappropriated funds were transferred to an FTX Wallet in April and May of 2022.  (*Id.* ¶ 14.)

17.     Over five months later, on December 18, 2024, Van Dyn Hoven filed customer proof of claim number 98560 (the "Customer Claim"), which sought to recover 1,396,470 USDT from FTX Trading.  The Customer Claim was filed over a year after the September 29, 2023 bar date for Customer Entitlement Claims (the "Customer Bar Date").[6]  On April 28, 2025, the FTX Recovery Trust objected to the Customer Claim, asserting that the Debtors had no liability for such claims based on its books and records.[7]  The FTX Recovery Trust specifically asserted that Van Dyn Hoven "did not provide proper documentation to support the asserted customer entitlement claim" and that "[u]tilizing the information provided within the claim form and following a robust review of the books and records, the FTX Recovery Trust has not identified any liability owing to, or customer entitlement of, [Van Dyn Hoven]."  [D.I. 30336-2.]

18.     On April 14, 2025, Van Dyn Hoven filed non-customer proof of claim number 100112 (the "Non-Customer Claim"), which sought to recover 1,396,470 USDT, plus 19% interest, from FTX Trading.  On June 26, 2025, the FTX Recovery Trust objected to the Non-Customer Claim on the basis that it was late filed—almost two years after the June 30, 2023 bar date for Non-Customer Entitlement Claims (the "Non-Customer Bar Date" and, together with the

---

[6]     *See Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order").

[7]     *See One Hundred Seventy-Second (Substantive) Omnibus Objection to Certain No Liability Proofs of Claim (Customer Claims)* [D.I. 30336] (the "172nd Objection").

Customer Bar Date, the "Bar Dates")[8] and over 18 months after the Customer Bar Date (the "186th Objection").[9]

19.    Despite receiving notice of the 172nd Objection,[10] Van Dyn Hoven did not file a response to the 172nd Objection or attempt to otherwise contact the FTX Recovery Trust in respect of the 172nd Objection.  Instead, on May 9, 2025, Van Dyn Hoven contacted the FTX Recovery Trust's noticing and claims agent requesting to withdraw the Customer Claim.

20.    On June 30, 2025, the Court entered the *Order Sustaining FTX Recovery Trust's One Hundred Seventy-Second (Substantive) Omnibus Objection to Certain No Liability Proofs of Claim (Customer Claims)* [D.I. 31109] (the "172nd Objection Order"), disallowing and expunging in its entirety the Customer Claim.

21.    On August 1, 2025, Van Dyn Hoven, through his prior counsel, filed the *Response by Claimant Lawrence D. Van Dyn Hoven to the FTX Recovery Trust's One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Customer Proofs of Claim* [D.I. 32062] (the "Response").[11]

22.    Also on August 1, 2025, Van Dyn Hoven, through his prior counsel, filed the Motion.  The Motion seeks to revoke Van Dyn Hoven's previous withdrawal of his Customer Claim, have this Court reconsider its 172nd Objection Order, extend the Customer Bar Date, and

---

[8]    *See Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order").

[9]    *See FTX Recovery Trust's One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Proofs of Claims (Customer Claims)* [D.I. 31077].

[10]    *See Affidavit/Declaration of Mailing of Brian Horman Regarding One Hundred Seventy-Second Omnibus Objection Notice* [D.I. 31420].

[11]    Concurrently herewith, the FTX Recovery Trust is filing an amended objection to Van Dyn Hoven's Non-Customer Claim.

4916-8139-5298 v.5

allow Van Dyn Hoven's previously expunged Customer Claim.  Alternatively, Van Dyn Hoven

asks this Court to extend the Non-Customer Bar Date, overrule the FTX Recovery Trust's 186th

Objection, and allow the Non-Customer Claim.  None of this relief should be granted.

## ARGUMENT

I.    **The Motion Does Not Establish Any Grounds For Reconsideration of the Court's 172nd Objection Order.**

23.    Pursuant to section 502(j) of the Bankruptcy Code, a claim that has been

disallowed can only be "reconsidered for cause."  11 U.S.C. § 502(j).  "A party seeking

reconsideration in bankruptcy court must file a motion to alter or amend judgment under Fed. R.

Bankr. P. 9023 or a motion for relief from judgment under Fed. R. Bankr. P. 9024." *In re Energy

Future Holdings Corp.*, 575 B.R. 616, 627 (Bankr. D. Del. 2017).  Since Van Dyn Hoven filed the

Motion more than 14 days after the Court entered the 172nd Objection Order, Van Dyn Hoven

must demonstrate sufficient "cause" pursuant to Bankruptcy Rule 9024.  *See* Fed. R. Bankr. P.

9023(b) ("A motion . . . to alter or amend a judgment must be filed within 14 days after the

judgment is entered.").  Accordingly, "to establish cause justifying reconsideration," Van Dyn

Hoven "must demonstrate at least one of the grounds set forth in . . . Rule 60(b) of the Federal

Rules of Civil Procedure." *In re Nortel Networks Inc.*, 2017 WL 3141906, at *1 (Bankr. D. Del.

July 24, 2017) (internal quotation marks omitted).

24.    Rule 60(b) of the Federal Rules of Civil Procedure, made applicable by

Bankruptcy Rule 9024, provides very limited bases to seek relief from a final order of this Court,

none of which are applicable here:  (i) mistake, inadvertence, surprise, or excusable neglect;

(ii) newly discovered evidence that, with reasonable diligence, could not have been discovered in

time for a new trial under Rule 59(b); (iii) fraud (whether previously called intrinsic or extrinsic),

misrepresentation, or misconduct by an opposing party; (iv) the judgment is void; (v) the judgment

4916-8139-5298 v.5

has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (vi) any other reason that justifies relief.  Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024.

25.     "[W]hen a court is considering its own judgment, extraordinary circumstances must be present to justify the use of Rule 60(b) to vacate the judgment."  *In re Energy Future Holdings Corp.*, 575 B.R. at 630; *Boughner* v. *Secretary of Health, Ed. and Welfare, U.S.*, 572 F.2d 976, 977 (3d Cir. 1978); *see also In re Vision Metals, Inc.*, 311 B.R. 692, 698 (Bankr. D. Del. 2004) ("Relief is appropriate under Rule 60(b) only upon a showing of exceptional circumstances and where, absent such relief, an extreme and unexpected hardship will result."). Reconsideration "should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court."  *Jester* v. *State Dep't of Safety*, 2016 WL 4497055, at *1 (D. Del. Aug. 26, 2016) (quoting *Ciena Corp.* v. *Corvis Corp.*, 352 F. Supp. 2d 526, 527 (D. Del. 2005)).  Moreover, for Rule 60(b) purposes, "the showing of a meritorious defense is accomplished 'when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'"  *United States* v. *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (quoting *Tozer* v. *Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

## A.     Reconsideration of this Court's 172nd Objection Order Would Be Futile.

26.     "Rule 60(b) [requires] some prospect of succeeding on the merits [and] flows from the basic principle that courts should revive previously-dismissed claims only if they have some reason to believe that doing so will not ultimately waste judicial resources."  *Thomas* v. *Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014).  Accordingly, to obtain relief under Rule 60(b), the movant "must [] show that [the] underlying claims are meritorious and that 'vacating the judgment

will not be an empty exercise'" or futile gesture. *United States* v. *Harris*, 268 F. Supp. 2d 500, 504 (E.D. Pa. 2003) (quoting *Teamsters, Chauffeurs, Warehouseman and Helpers Union, Local No. 59* v. *Superline Transp. Co., Inc.*, 953 F.2d 17, 20 (1st Cir. 1992)).

27.     In its 172nd Objection, the FTX Recovery Trust asserted that Van Dyn Hoven "did not provide proper documentation to support the asserted [Customer Claim]" and that, "following a robust review of the books and records, the FTX Recovery Trust ha[d] not identified any liability owing to, or customer entitlement of, [Van Dyn Hoven]."  [D.I. 30336-2.]  Despite his repeated insistence that the Court consider the Customer Claim "on [the] merits" (Mot. ¶¶ 7, 35, 38, 40-41, 45, 48-49), Van Dyn Hoven has not offered any merits or evidence—neither in the Motion nor elsewhere—explaining why he is a legitimate holder of a Customer Entitlement Claim, much less any evidence that his purported Customer Claim (which was purportedly withdrawn)[12] should be allowed.

28.     Instead, he concedes the exact opposite:  "I have never held an account with, done any business directly with, nor purchased, traded, or sold any cryptocurrency or blockchain-related products on FTX."  (Van Dyn Hoven Decl. ¶ 13.)

29.     Van Dyn Hoven's admission that he does not have, and has never had, a relationship with the Debtors or the FTX Recovery Trust is fatal to his Customer Claim.  A Customer Entitlement Claim, by its very definition, requires the holder to hold an account of any FTX exchange as of the Petition Date because it is a claim "that compensates the Holder of such Claim for the value as of the Petition Date of . . . Digital Assets held by such Person . . . in an

---

[12]  The Motion also seeks to have Van Dyn Hoven's withdrawal of his Customer Claim revoked.  (Mot. ¶ 42.)  But Van Dyn Hoven's attempt to withdraw that Claim was never effective, since the 172nd Objection was pending at the time of such purported withdrawal.  *See* Fed. R. Bankr. P. 3006(a) (prohibiting withdrawal of a proof of claim where, among other things, "an objection to it has been filed.").  Accordingly, the Customer Claim was properly disallowed and expunged in its entirety by the 172nd Objection Order.

account on any FTX Exchange."  (Plan § 2.1.47).  Because Van Dyn Hoven never held digital

assets in any account on any FTX exchange, he does not possess a Customer Entitlement Claim.

Accordingly, any reconsideration of the 172nd Objection Order would be futile and should be

denied.

> **B.**     **Reconsideration of the Court's 172nd Objection Order is Not Warranted Under Rule 60(b).**

30.     In the Motion, Van Dyn Hoven claims that his failure to respond to the FTX

Recovery Trust's 172nd Objection was due to excusable neglect, and that the Court should thus

grant his request for reconsideration pursuant to Rule 60(b)(1).  Van Dyn Hoven's argument rests

on his "status as a layperson" who is "unversed in bankruptcy."  (Mot. ¶ 45.)  Such an argument is

insufficient to satisfy Van Dyn Hoven's "heavy burden" in showing that reconsideration of the

Court's 172nd Objection Order is warranted under any prong of Rule 60(b).  *In re Energy Future*

*Holdings Corp.*, 575 B.R. at 630.

31.     "Neither ignorance nor carelessness on the part of a litigant or his attorney

provide grounds for relief under Rule 60(b)(1)."  *Scott* v. *Children's Hospital of Philadelphia*, 2024

WL 453610, at *5 (E.D. Pa. Feb. 6, 2024) (quoting *Andrews* v. *Time, Inc.*, 690 F. Supp. 362, 364

(E.D. Pa. 1988)).  Further, "[i]gnorance of the rules, mistakes construing rules, and mere ignorance

or carelessness on the part of the complaining party do not constitute bases for relief under Rule

60(b)(1)."  *In re Marinari*, 596 B.R. 809, 822 n.19 (Bankr. E.D. Pa. 2019) (citing *Williams* v. *New*

*York City Dep't of Corrections*, 219 F.R.D. 78, 85 (S.D.N.Y. 2003)).  Accordingly, Van Dyn

Hoven's ignorance regarding the claims process, including whether his claim was a Customer

Entitlement Claim or a non-Customer Entitlement Claim, is not a sufficient basis for relief under

Rule 60(b)(1).

32.     Moreover, Van Dyn Hoven has failed to demonstrate that his failure to respond to the 172nd Objection Motion was due to any excusable neglect.  When determining whether a movant has satisfied the standard for excusable neglect under Rule 60(b)(1), the Court balances the so-called *Pioneer* factors:  "(1) the danger of prejudice [to the opposing party]; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith."  *Hart* v. *Oppman*, 765 F. App'x 644, 647 (3d Cir. 2019) (citing *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 125 n.7 (3d Cir. 1999) (holding that the *Pioneer* analysis of excusable neglect applies in the context of deciding a Rule 60(b)(1) motion).

33.     Reconsideration of the 172nd Objection Order disallowing and expunging the Customer Claim in its entirety would significantly prejudice the FTX Recovery Trust.  The FTX Recovery Trust has already taken the time and expended the resources to investigate Van Dyn Hoven's baseless Customer Claim and filed the 172nd Objection, and there is no justification for requiring the FTX Recovery Trust to repeat that process.  Van Dyn Hoven had notice and every opportunity to defend his Customer Claim, yet failed to do so, and continues to fail to do so on any substantive basis.

34.     Finally, the length of delay and its potential effect on these Chapter 11 Cases weigh against reconsideration.  After filing his Customer Claim *over a year* after the Customer Bar Date, Van Dyn Hoven now asks the Court to reconsider its final 172nd Objection Order over a month after its entry.  Reconsideration of this Court's orders would only serve to "open a floodgate" to other non-responsive claimants whose claims have been disallowed and

4916-8139-5298 v.5

expunged by the Court.  *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 51 (Bankr. D. Del. 2012).

35.     Van Dyn Hoven does not—and cannot—allege any newly discovered evidence, fraud or misconduct on the part of the Debtors or the FTX Recovery Trust, or allege any other basis for this Court's reconsideration of the 172nd Objection under any of the remaining Rule 60(b) factors.  Accordingly, the Court should decline to reconsider its 172nd Objection Order.

## II.     The Court Should Decline to Extend the Applicable Bar Dates.

36.     Van Dyn Hoven next argues, presumably in the alternative, that the Court should extend the Bar Dates for Van Dyn Hoven's late-filed Customer Claim or Non-Customer Claim, as applicable.  This appears to be an argument to permit Van Dyn Hoven to file a late-filed claim.  But, Van Dyn Hoven abjectly fails to meet the necessary standard for this Court to deem either of those claims timely.

37.     Moreover, even if the Court were to deem these claims as timely—which they are not—such extension would be, as noted, pointless because Van Dyn Hoven does not and could not hold a valid claim against the Debtors.  Van Dyn Hoven's purportedly misappropriated funds were withdrawn from the FTX.com exchange before the Petition Date, and any claim asserted on the basis of fraud or commingled assets is barred by the Plan's Global Settlement.

### A.     Van Dyn Hoven Has Not Demonstrated Excusable Neglect.

38.     Bar dates should be enforced because they serve the important purposes of "finality and debtor rehabilitation."  *In re PT-1 Commc'ns, Inc.*, 386 B.R. 402, 409 (Bankr. E.D.N.Y. 2007); *see In re Trans World Airlines, Inc.*, 96 F.3d 687, 690 (3d Cir. 1996) ("The bar date . . . is a 'drop-dead date' that bars all prepetition claimants who received the required notice."); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("[T]he claims bar date operates as a federally created statute of  limitations, after which the claimant loses all of her right to bring

an action against the debtor.").  Therefore, absent demonstrating excusable neglect for the late-filed Customer Claim and Non-Customer Claim, Van Dyn Hoven is barred and estopped, pursuant to each of the Non-Customer Bar Date Order and the Customer Bar Date Order, as applicable, from asserting such claims against the estate or its property and from receiving any distribution on account of such claims.  (Non-Customer Bar Date Order ¶ 13;[13] Customer Bar Date Order ¶ 14.[14])

39.     Pursuant to Bankruptcy Rule 9006(b)(1), a creditor may be excused from filing a claim after the applicable bar date only where the failure to timely file was the result of "excusable neglect."  In evaluating whether there is excusable neglect, courts weigh the following factors:  (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith.  *See Pioneer Inv. Servs. Co.*, 507 U.S. at 395; *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022).  Courts take a "hard line" when applying the *Pioneer* test and have placed the emphasis in their analysis on the "reason" for the delay.  *In re*

---

[13]   Paragraph 13 of the Non-Customer Bar Date Order provides:

Pursuant to Bankruptcy Rule 3003(c)(2), absent further order of this Court, all holders of Non-Customer Claims or equity interests in the Debtor(s) that fail to comply with this Order by timely filing a proof of claim or proof of interest in the appropriate form, if required, shall be forever barred, estopped and enjoined from: (a) asserting the applicable Non-Customer Claim against or equity interest in the Debtors or their estates or property in these Chapter 11 Cases or (b) voting on, or receiving any distribution under, any plan filed in these Chapter 11 Cases, except to the extent that (i) such Claim is identified in the Schedules as an undisputed, non-contingent and liquidated claim (including with respect to the amount, nature or classification of such Claim) or (ii) such equity interest is listed on the Equity Lists.

[14]   Paragraph 14 of the Customer Bar Date Order provides:

Pursuant to Bankruptcy Rule 3003(c)(2), absent further order of this Court, all holders of Customer Claims that fail to comply with this Order by timely filing a proof of claim in the appropriate form, if required, on or before the applicable Customer Bar Date, shall be forever barred, estopped and enjoined from (a) asserting the applicable Customer Claim against the Debtors or their estates or property in these Chapter 11 Cases or (b) voting on, or receiving any distribution under, any Chapter 11 plan in these Chapter 11 Cases, except to the extent that such claim is identified in the Schedules as an undisputed, noncontingent and liquidated claim (including with respect to the quantity or nature of such claim).

*Energy Future Holdings Corp.*, 619 B.R. at 110 (quoting *In re Nortel Networks Inc.*, 573 B.R. 522,

527 (Bankr. D. Del. 2017)). Furthermore, "[t]he burden of proving excusable neglect lies with the

late-claimant." *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000). Van Dyn Hoven

abjectly fails to demonstrate that it would be equitable to excuse the lateness of his Claims, and

each of the *Pioneer* factors weighs against Van Dyn Hoven.

40.     Extending the Bar Dates as to Van Dyn Hoven's Claims would prejudice

the FTX Recovery Trust. The Debtors had no reason to anticipate a $1.4 million claim by Van

Dyn Hoven, who had no relationship or even interaction with the Debtors before the Petition Date.

Investigating, reconciling, objecting to, and litigating (or relitigating) these late-filed Claims on a

substantive basis would incur the FTX Recovery Trust substantial costs. In addition, Van Dyn

Hoven filed his Non-Customer Claim more than 21 months after the Non-Customer Bar Date, and

filed his Customer Claim more than 14 months after the Customer Bar Date. Permitting these

Claims to be late-filed would "open a floodgate" to similar requests brought by other late-filing

claimants. *See In re New Century TRS Holdings, Inc.*, 465 B.R. at 51.

41.     Nor does Van Dyn Hoven's professed ignorance of the bankruptcy process

constitute excusable neglect. *See In re W.R. Grace & Co.*, 563 B.R. 150, 159 (Bankr. D. Del. 2016)

("[I]gnorance of one's own claim does not constitute excusable neglect.").

**B.      Extending the Applicable Bar Dates Would Be Futile.**

42.     Even if Van Dyn Hoven somehow demonstrates excusable neglect, Van Dyn

Hoven has no valid claim, Customer Entitlement Claim or Non-Customer Entitlement Claim,

against the Debtors or the FTX Recovery Trust, and thus permitting the filing of a late claim would

be futile in any event. Van Dyn Hoven was never a customer or had any prepetition relationship

with the Debtors. Contrary to Van Dyn Hoven's assertions, the prepetition Debtors owed no duty

or obligation to Van Dyn Hoven in connection with his allegedly absconded funds. Moreover,

while the FTX Recovery Trust is sympathetic to his situation, the allegedly misappropriated digital assets were transferred out of the FTX.com exchange long before the Petition Date.  There is nothing to return to Van Dyn Hoven, and permitting his Claims to be timely filed would be pointless.

43.    Furthermore, the Global Settlement explicitly bars Van Dyn Hoven's Claims, which arise out of purported fraud on the FTX.com exchange.  The Global Settlement provided for, among other things, a "compromise, settlement and resolution . . . of all Claims, Interests, and Causes of Action against . . . the Debtors" regarding "(j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 cases; and (k) all Causes of Action relating to any of the foregoing."  (Plan § 5.2.)  Van Dyn Hoven's assertion that the Debtors "negligently or intentionally fail[ed] to take action that would have identified the [purported] Fraudsters' FTX Wallet as likely engaged in criminal activity" prior to the Petition Date is exactly the type of claim contemplated by Section 5.2(j) of the Plan and released through the Global Settlement.  (Mot. ¶ 20.)

44.    Accordingly, the Court should deny the Motion.

## **RESERVATION OF RIGHTS**

45.    In filing this Objection, the FTX Recovery Trust has not waived any rights, and the FTX Recovery Trust expressly reserves all of its rights, powers, privileges and remedies under applicable law or otherwise with regards to Van Dyn Hoven.  The FTX Recovery Trust may elect to exercise any or all of its rights, at its sole option without the necessity of any further notice, demand or other action on the part of Van Dyn Hoven.  Nothing contained in this Objection or any delay by the FTX Recovery Trust in exercising any rights, powers, privileges and remedies under

4916-8139-5298 v.5

applicable law against Van Dyn Hoven now existing or hereafter arising shall be construed as a waiver or modification of such rights, powers, privileges or remedies.

## **CONCLUSION**

46.     For the foregoing reasons, the Motion should be denied.

Dated:   August 29, 2025
         Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:    landis@lrclaw.com
           brown@lrclaw.com
           pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:    dietdericha@sullcrom.com
           bromleyj@sullcrom.com
           gluecksteinb@sullcrom.com
           kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*

4916-8139-5298 v.5