## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 23, 2025 at 9:30 a.m. (ET)**<br>**Obj. Deadline: September 29, 2025 at 4:00 p.m. (ET)** |
| | **Ref. Nos. 31077 & 32062** |

## FTX RECOVERY TRUST'S AMENDED OBJECTION TO NON-CUSTOMER PROOF OF CLAIM NO. 100112 FILED BY LAWRENCE D. VAN DYN HOVEN

The FTX Recovery Trust[2] hereby submits this amended objection (the "Amended Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to Non-Customer Proof of Claim No. 100112 (the "Claim") filed by Claimant Lawrence D. Van Dyn Hoven ("Van Dyn Hoven")[3] against Debtor FTX Trading Ltd. ("FTX Trading").  In support of the Amended Objection, the FTX Recovery Trust concurrently filed the *Declaration of Michael S. Leto* (the "Leto Decl.") and respectfully states as follows:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these chapter 11 cases (the "Chapter 11 Cases"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

[3]   Van Dyn Hoven was previously represented by counsel who filed a response to the Original Objection and the Motion (as defined below).  The FTX Recovery Trust understands that Van Dyn Hoven is no longer represented by counsel but is nonetheless proceeding with the Original Objection and the Motion *pro se*.

## RELEVANT BACKGROUND

**A.    The FTX.com Exchange's Wallet System and the Recipient Account**

1.    The FTX.com exchange controlled a limited number of unique deposit addresses on the blockchain associated with individual customer accounts. (Leto Decl. ¶ 6.) When digital assets were sent to a deposit address, the FTX.com exchange would credit the associated customer's account on the FTX.com exchange platform accordingly, but the digital assets themselves were sent to separate wallets controlled by FTX (the "FTX Wallets"). (Leto Decl. ¶ 6.) These FTX Wallets were used in connection with millions of customer transactions and contained commingled digital assets representing the holdings of multiple customer accounts. (Leto Decl. ¶ 6.)

2.    The FTX Recovery Trust's books and records show that between May 10 and May 11, 2022, 1,396,470 USDT was sent to an FTX Wallet with a deposit address of 0xbc044B893AE5d473781106d2124976E56766a948 (the "Transferred Amount"). (Leto Decl. ¶ 7.) The Transferred Amount was then credited to an account (the "Recipient Account") held by a customer of the FTX.com exchange (the "Recipient Account Customer"). (Leto Decl. ¶ 8.) Within hours of receiving the aforementioned deposits, the Recipient Account Customer withdrew nearly all of the USDT in nine different withdrawals to six external non-FTX wallet addresses. (Leto Decl. ¶ 8.) Between May 11, 2022 and November 11, 2022 (the "Petition Date"), the Recipient Account Customer withdrew nearly all of the digital assets in the Recipient Account. (Leto Decl. ¶ 8.)

3.    As of the Petition Date, the Recipient Account contained less than $0.09 of

USDT and under $1,000 in total digital asset value,[4] which amounts the Debtors scheduled as a Customer Entitlement Claim[5] against FTX Trading (the "Scheduled Customer Claim").  (Leto Decl. ¶ 9.)

4.      On February 3, 2025, the Court entered the *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Order"), pursuant to which holders of Customer Entitlement Claims were required to commence the KYC submission process on or prior to March 1, 2025 at 4:00 p.m. (ET).  Pursuant to the KYC Order, the Scheduled Customer Claim was disallowed and expunged in its entirety as the Recipient Account Customer failed to commence the KYC submission process by March 1, 2025.

**B.      The Plan's Global Settlement**

5.      As set forth in section 5.2 of the Plan, the Global Settlement provides for, among other things, a "compromise, settlement and resolution . . . of all Claims, Interests and Causes of Action against . . . the Debtors" regarding:

> (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors'

---

[4]    Valuations determined in accordance with the *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090-1].

[5]    "Customer Entitlement Claim," as defined in the Plan, means "any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets held by such Person or Entity in an account on any FTX Exchange." (Plan § 2.1.47.)

-3-

> Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

(Plan § 5.2.)  Further, the injunction in section 10.8 of the Plan bars "any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan," or "(b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest." (Plan § 10.8.)

6.     The Global Settlement was the result of protracted, good faith, arm's-length negotiations among the Debtors, the Official Committee of Unsecured Creditors, and other stakeholders. *See Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* ¶ 23 [D.I. 26041] (the "Plan Decl.").  The Global Settlement incorporates, among other things, the customer priority settlement, which prioritized certain customer entitlement claims relative to certain other creditors in exchange for a broad release by all stakeholders of all potential claims relating to the insiders' general mismanagement of the exchanges, including the purported absence of cybersecurity controls and compliance measures on the exchanges.  (Plan Decl. ¶ 22.)  The Global Settlement benefited all parties-in-interest by preserving assets that otherwise would be

expended in complex, burdensome and uncertain litigation that could have greatly delayed the conclusion of these Chapter 11 Cases.  (Plan Decl. ¶ 24.)

7.      The Confirmation Order entered by the Court incorporated the Global Settlement (Confirmation Order ¶¶ 38-40, 93) and expressly provides that "[t]he entry of this Confirmation Order constitutes the Court's approval of the Global Settlement . . . under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest power in the range of reasonableness." (*Id.* ¶ 41.) The Confirmation Order also gave full effect to the injunction set forth in Section 10.8 of the Plan. (*Id.* ¶¶ 49, 143-44.) This Court recently reaffirmed that the Global Settlement resolved all customer fraud claims. (*See* Aug. 12, 2025 Hr'g Tr. 39:15-21.)

### C.      Van Dyn Hoven's Customer and Non-Customer Claims

8.      The Debtors have never had a relationship with Van Dyn Hoven either before or after the Petition Date.  (Leto Decl. ¶ 10.) Van Dyn Hoven did not hold a customer account on the FTX.com exchange prior to the Petition Date, nor did he have any other contractual relationship with the Debtors.  (Leto Decl. ¶ 10.)

9.      The Debtors were first contacted by Van Dyn Hoven more than seven months after the Petition Date, when on June 29, 2023, the Debtors received an email from vandynhovenl@gmail.com with the subject line "Fraud Department – ADR Letter." (Leto Decl. ¶ 11.) The email was sent to "support@ftx.com," "contact@ftx.com," "hello@ftx.com," and "info@ftx.com." (Leto Decl. ¶ 11.) Despite the body of the email referencing a "Fraud Demand Letter," there was no attachment to the June 29, 2023 email. (Leto Decl. ¶ 11.)

10.      The Debtors established the bar date for non-Customer Entitlement Claims on June 30, 2023 (the "Non-Customer Bar Date"), and the bar date for Customer Entitlement

Claims on September 29, 2023 (the "Customer Bar Date" and, together with the Non-Customer Bar Date, the "Bar Dates").[6]

11.    On December 16, 2024, Van Dyn Hoven sent a letter, via email, to ftxinfo@ra.kroll.com (the "December Letter").  [D.I. 32062-1 (the "Van Dyn Hoven Decl.") Ex. F.]  In the December Letter, Van Dyn Hoven described an alleged scam in which a third-party absconded with digital assets purportedly belonging to Van Dyn Hoven.  (*Id.*)  According to Van Dyn Hoven, a portion of those digital assets were sent to a deposit address associated with the Recipient Account.  (*Id.*)  The December Letter also alleged certain failures of KYC/AML requirements and cybersecurity controls on the part of the prepetition FTX group that enabled the purported misappropriation of Van Dyn Hoven's digital assets.  (*Id.*)

12.    On December 18, 2024, Van Dyn Hoven filed customer proof of claim number 98560 (the "Customer Claim"), which sought to recover 1,396,470 USDT from Debtor FTX Trading.  The FTX Recovery Trust objected to the Customer Claim on April 28, 2025 on the basis that FTX Trading had no liability for the Customer Claim based on its books and records (the "172nd Objection").[7]  Van Dyn Hoven did not respond to the 172nd Objection, and the Customer Claim was accordingly disallowed and expunged in its entirety pursuant to the Court's *Order Sustaining FTX Recovery Trust's One Hundred Seventy-Second (Substantive) Omnibus Objection to Certain No Liability Proofs of Claim (Customer Claims)* [D.I. 31109] (the "172nd Objection Order").

---

[6]    *See Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* ("Non-Customer Bar Date Order") [D.I. 1519]; *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793].

[7]    *See FTX Recovery Trust's One Hundred Seventy-Second (Substantive) Omnibus Objection to Certain No Liability Proofs of Claim (Customer Claims)* [D.I. 30336].

13.     On April 14, 2025, Van Dyn Hoven filed the Claim.  The Claim sought 1,396,470 USDT, plus 19% interest, from FTX Trading.  The Claim was filed almost two years after the Non-Customer Bar Date and over 18 months after the Customer Bar Date.

14.     On June 26, 2025, the FTX Recovery Trust filed the *One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Proofs of Claims (Customer Claims)* [D.I. 31077] (the "Original Objection").  In the Original Objection, the FTX Recovery Trust sought to disallow and expunge in their entirety certain proofs of claim that were filed after the Customer Bar Date, including the Claim.

15.     On August 1, 2025, Van Dyn Hoven, through his prior counsel, filed the *Response by Claimant Lawrence D. Van Dyn Hoven to the FTX Recovery Trust's One Hundred Eighty-Sixth (Non-Substantive) Omnibus Objection to Certain Late Filed Customer Proofs of Claim* [D.I. 32062] (the "Response").  In the Response, Van Dyn Hoven asserts that his Claim— which was filed almost two years after the Non-Customer Bar Date and over 18 months after the Customer Bar Date—was filed late due to excusable neglect.  [D.I. 32062 ¶ 7.]

16.     Also on August 1, 2025, Van Dyn Hoven, through his prior counsel, filed the *Motion by Claimant Lawrence D. Van Dyn Hoven to Reconsider Customer Claim No. 98560, Extend the Applicable Bar Date and Allow that Claim, or, in the Alternative, to Extend the Applicable Bar Date for Non-Customer Claim No. 100112* [D.I. 32061] (the "Motion").[8]  The Motion seeks to have this Court reconsider its 172nd Objection Order—which disallowed and expunged Van Dyn Hoven's Customer Claim in its entirety—extend the Customer Bar Date, and allow Van Dyn Hoven's previously expunged Customer Claim.  Alternatively, Van Dyn Hoven

---

[8]    Concurrently herewith, the FTX Recovery Trust is filing an objection to the Motion.

asks this Court to extend the Non-Customer Bar Date, overrule the FTX Recovery Trust's Original Objection, and allow the Claim.

**AMENDED OBJECTION**

**I.      The Claim is Untimely and Van Dyn Hoven Cannot Satisfy the Excusable Neglect Standard.**

17.     Van Dyn Hoven filed the Claim over 21 months after the Non-Customer Bar Date and over 18 months after the Customer Bar Date.  While Van Dyn Hoven attempts to argue that his Claim should be deemed timely due to excusable neglect, he fails to carry his burden to justify the late-filed Claim.  Accordingly, pursuant to the Bar Dates, the Claim should be disallowed and expunged as untimely.

**A.      Claims Filed After the Bar Date Should Be Disallowed and Expunged.**

18.     Due process requires that known creditors receive actual written notice of a debtor's bankruptcy filing and claims bar date.  *See Chemetron Corp.* v. *Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *In re Nortel Networks, Inc.*, 531 B.R. 53, 62-63 (Bankr. D. Del. 2015) (citing *Chemetron*); *In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009) (same).  Where a creditor is unknown to the debtor, however, due process requires only that the debtor take reasonable steps, such as notice by publication, to provide constructive notice of the deadline for submitting proofs of claim.  *See, e.g.*, *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 48 (Bankr. D. Del. 2012) (summarizing the long-standing precedent behind constructive notice for unknown creditors); *In re Energy Future Holdings Corp.*, 619 B.R. 99, 120 (Bankr. D. Del. 2020) ("Publication notice of the bar date was adequate for the movants who were 'unknown creditors' of the Debtors.").  As characterized by the Supreme Court, an unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation,

do not in due course of business come to knowledge [of the debtor]."  *See Chemetron*, 72 F.3d at

346 (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

19.     To provide unknown claimants holding non-Customer Entitlement Claims

with constructive notice of the Bar Dates and in accordance with Bankruptcy Rule 2002(a)(7), the

Debtors published notice of the Non-Customer Bar Date in the national edition of *The New York

Times* on May 30, 2023, thirty days ahead of the Non-Customer Bar Date.[9]  Because Van Dyn

Hoven did not have any relationship with the Debtors, he is an "unknown creditor," and

accordingly was notified of the Non-Customer Bar Date through publication notice.  Despite the

publication notice, Van Dyn Hoven did not file a proof of claim against the Debtors until well after

both the Customer Bar Date and the Non-Customer Bar Date.

20.     Bar dates should be enforced because they serve the important purposes of

"finality and debtor rehabilitation."  *In re PT-1 Commc'ns, Inc.*, 386 B.R. 402, 409 (Bankr.

E.D.N.Y. 2007); *see In re Trans World Airlines, Inc.*, 96 F.3d 687, 690 (3d Cir. 1996) ("The bar

date . . . is a 'drop-dead date' that bars all prepetition claimants who received the required notice.");

*In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("[T]he claims bar date operates

as a federally created statute of limitations, after which the claimant loses all of her right to bring

an action against the debtor.").  Therefore, absent demonstrating excusable neglect for the late-

filed Claim—which he cannot—Van Dyn Hoven is barred and estopped, pursuant to the Non-

Customer Bar Date Order, from asserting the Claim against the estate or its property and from

receiving any distribution on account of the Claim.[10]  (Non-Customer Bar Date Order ¶ 13.)

---

[9]     *See Certificate of Publication of Liz Santodomingo Regarding Notice of Entry of Bar Date Order Establishing Deadlines for Filing of Proofs of Claim* [D.I. 1569].

[10]    Paragraph 13 of the Non-Customer Bar Date Order provides:

**B.      Van Dyn Hoven Fails to Demonstrate Excusable Neglect.**

21.      Pursuant to Bankruptcy Rule 9006(b)(1), a creditor may be excused from
filing a claim after the applicable bar date only where the failure to timely file was the result of
"excusable neglect."  Fed. R. Bankr. P. 9006(b)(1)(B).  In evaluating whether there is excusable
neglect, courts weigh the following factors:  (1) the danger of prejudice to the debtor, (2) the length
of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including
whether it was within the movant's control, and (4) whether the movant acted in good faith.  *See
Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *In re
Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022).  Courts take a "hard line"
when applying the *Pioneer* test and have placed the emphasis in their analysis on the "reason" for
the delay.  *In re Energy Future Holdings Corp.*, 619 B.R. at 110 (quoting *In re Nortel Networks
Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017)).  Furthermore, "[t]he burden of proving excusable
neglect lies with the late-claimant." *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).
In his Response, Van Dyn Hoven fails to demonstrate that it would be equitable to excuse the
lateness of his Claim, and each of the *Pioneer* factors weighs against Van Dyn Hoven.

22.      *First*, extending the Non-Customer Bar Date as to Van Dyn Hoven's Claim
would significantly prejudice the FTX Recovery Trust.  The FTX Recovery Trust had no reason
to anticipate a $1.4 million claim by Van Dyn Hoven as the Debtors' books and records did not

---

Pursuant to Bankruptcy Rule 3003(c)(2), absent further order of this Court, all holders of Non-
Customer Claims or equity interests in the Debtor(s) that fail to comply with this Order by timely
filing a proof of claim or proof of interest in the appropriate form, if required, shall be forever barred,
estopped and enjoined from:  (a) asserting the applicable Non-Customer Claim against or equity
interest in the Debtors or their estates or property in these Chapter 11 Cases or (b) voting on, or
receiving any distribution under, any plan filed in these Chapter 11 Cases, except to the extent that
(i) such Claim is identified in the Schedules as an undisputed, non-contingent and liquidated claim
(including with respect to the amount, nature or classification of such Claim) or (ii) such equity
interest is listed on the Equity Lists.

reflect any relationship with, nor any outreach by, Van Dyn Hoven before the Petition Date. Additionally, permitting the Claim to be late-filed would cause the FTX Recovery Trust to incur additional costs to investigate, reconcile, object to and litigate the Claim on a substantive basis.

23.     *Second*, the length of the delay and its potential effect on these Chapter 11 Cases also militates against Van Dyn Hoven.  Van Dyn Hoven did not file his Claim until April 14, 2025, which is more than 21 months following the Non-Customer Bar Date, and more than 6 months after confirmation of the Plan.[11]  That delay is significant.  *See In re New Century TRS Holdings, Inc.*, 2014 WL 842637, at *8 (Bankr. D. Del. Mar. 4, 2014) (denying claimant's motion to consider timely a proof of claim filed over two years after the bar date and six months after plan confirmation, noting that such a delay was "significant").  Although Van Dyn Hoven's Claim is only one among tens of thousands filed in these Chapter 11 Cases, many other claimants could make the same or similar arguments.  Permitting Van Dyn Hoven's significantly late-filed Claim would "open a floodgate" to similar requests brought by other late-filed claimants.  *See In re New Century TRS Holdings, Inc.*, 465 B.R. at 51.

24.     *Third*, the reasons for Van Dyn Hoven's delay are also unavailing.  Van Dyn Hoven justifies his delay based on the fact that he is a layperson unfamiliar with the bankruptcy process.  (Response ¶¶ 34, 44.)  However, "ignorance of one's own claim does not constitute excusable neglect."  *In re W.R. Grace & Co.*, 563 B.R. 150, 159 (Bankr. D. Del. 2016) (quoting *Chemetron Corp.*, 212 F.3d at 205).  Van Dyn Hoven also justifies his delay based on his reliance on PayBack, a quasi-legal service assisting Van Dyn Hoven, who allegedly failed to advise him to file a formal proof of claim.  (Response ¶ 45.)  However, that reliance is unrelated to the FTX Recovery Trust.

---

[11]    On October 8, 2024, the Court entered an order approving the Plan [D.I. 26404].

25.    *Fourth*, Van Dyn Hoven has made no showing that he acted in good faith. Despite having "never held an account with, done any business directly with, nor purchased, traded, or sold any cryptocurrency or blockchain-related products on FTX" (Van Dyn Hoven Decl. ¶ 13), Van Dyn Hoven continues to pursue his Claim, even though his allegedly misappropriated digital assets were transferred out of the FTX.com exchange well before the Petition Date.  (Leto Decl. ¶ 8.)  Although the FTX Recovery Trust empathizes with Van Dyn Hoven for the harm caused to him by third parties, the FTX Recovery Trust has communicated to Van Dyn Hoven (and his former counsel) that the funds are not held by the FTX Recovery Trust, and his dogged pursuit in search of a windfall at other legitimate creditors' expense is misdirected and not justifiable.

26.    Accordingly, Van Dyn Hoven has not carried his burden to justify the late-filed Claim and the Claim should be disallowed and expunged as untimely.

## II.    The FTX Recovery Trust Has No Lability to Van Dyn Hoven on Account of the Claim.

27.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim.  11 U.S.C. § 502(b).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b).

28.    While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence.  *See*

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid."). The burden of persuasion with respect to the claim is always on the claimant, *see id*. at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity, *see, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004).

29.     Van Dyn Hoven's Claim is without merit and should be disallowed and expunged on a substantive basis. Van Dyn Hoven has never had an account on any FTX exchange or any other relationship with the Debtors. Rather, Van Dyn Hoven argues that, because his purportedly misappropriated digital assets were deposited onto the FTX.com exchange at one point in time, the FTX Recovery Trust is somehow responsible for returning those assets to him. This is incorrect. Moreover, to the extent that the purportedly misappropriated digital assets were in fact deposited by the Recipient Account Customer into the Recipient Account on the FTX.com exchange, as of the Petition Date, almost all of the digital assets in the Recipient Account were withdrawn. (Leto Decl. ¶¶ 9-10.)

30.     Additionally, Van Dyn Hoven argues that the FTX Recovery Trust is responsible for the prepetition FTX group's failure to institute adequate controls that would have uncovered suspicious or criminal activity in connection with Van Dyn Hoven's digital assets. (Response ¶ 20.) While the FTX Recovery Trust is sympathetic to Van Dyn Hoven's situation, the Plan's Global Settlement and injunction estop Van Dyn Hoven from advancing any claim in connection with fraud or lack of cybersecurity controls that may have occurred prior to the Petition Date.

31.     For these reasons, and others discussed below, Van Dyn Hoven does not have any claim against the Debtors or the FTX Recovery Trust, and his Claim should be disallowed and expunged in its entirety.

**A.      Van Dyn Hoven Does Not Have an Account or Any Other Relationship with the FTX Recovery Trust.**

32.     Fatal to Van Dyn Hoven's arguments is the fact that he is not, and has never been, a creditor of the Debtors or the FTX Recovery Trust. *See In re Virella*, 661 B.R. 199, 206 n.8 (Bankr. D.N.J. 2024) ("A proof of claim filed by a party who is not a creditor is not a properly filed proof of claim."). A "creditor" is an "entity that has a claim *against the debtor* that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added). For Van Dyn Hoven to possess a claim against the Debtors or the FTX Recovery Trust, "there must exist a legal relationship that gives rise to the asserted right to payment." *In re United Merchants and Mfrs., Inc.*, 166 B.R. 234, 237 (Bankr. D. Del. 1994).

33.     As Van Dyn Hoven himself concedes, Van Dyn Hoven never held an account on any of the FTX exchanges or had any other contractual relationship with the Debtors— "I have never held an account with, done any business directly with, nor purchased, traded, or sold any cryptocurrency or blockchain-related products on FTX." (Van Dyn Hoven Decl. ¶ 13.) All that Van Dyn Hoven alleges is that a third-party defrauded Van Dyn Hoven, absconded with Van Dyn Hoven's assets, and subsequently deposited 1,396,470 USDT onto the FTX.com exchange. (*Id.* ¶ 3.) Nothing about these facts gives rise to any right to payment from the Debtors or the FTX Recovery Trust, nor do they imply any legal relationship between Van Dyn Hoven and the Debtors or the FTX Recovery Trust.

34.     Instead, Van Dyn Hoven asserts that "FTX fail[ed] (knowingly or through gross negligence) to stop his funds from being further laundered and misappropriated by the

[Recipient Account Customer]." (Response ¶ 1.) FTX, prepetition or postpetition, owes no obligation or duties to Van Dyn Hoven. In any event, the Debtors acknowledged and recognized the prepetition failures of the FTX group and the Plan, including the Global Settlement, represents a settlement of, among other things, claims relating to such prepetition failures. As discussed below, Van Dyn Hoven's fraud claim is explicitly barred by the Plan.

### B.    Van Dyn Hoven's Fraud Claim Fails.

35.    In his Response, Van Dyn Hoven argues that "FTX was liable for negligently or intentionally failing to take action that would have identified the [Recipient Account Customer's] FTX Wallet as likely engaged in criminal activity and stopping the transfer of cryptocurrencies in and out of the Wallet until further investigation was completed." (Response ¶ 20.) However, this argument plainly ignores that such claims were expressly released under the Plan's Global Settlement, which was approved by this Court. (*See* Confirmation Order ¶ 41 ("The entry of this Confirmation Order constitutes the Court's approval of the Global Settlement . . .").)

36.    Section 5.2 of the Plan unambiguously bars Van Dyn Hoven's fraud claim. As set forth in section 5.2, the Global Settlement provided for, among other things, a "compromise, settlement and resolution . . . of all Claims, Interests and Causes of Action against . . . the Debtors" regarding "(j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing." (Plan § 5.2.) Van Dyn Hoven's assertion that the Debtors "negligently or intentionally fail[ed] to take action that would have identified the [Recipient Account Customer's] FTX Wallet as likely engaged in criminal activity" prior to the Petition Date is exactly the type of claim contemplated by Section 5.2(j) of the Plan and released through the Global Settlement. Accordingly, Van Dyn Hoven's Claim should be disallowed and expunged in its entirety.

## **CONCLUSION**

37.     Accordingly, the Court should sustain the FTX Recovery Trust's Amended Objection with respect to Van Dyn Hoven's Claim.

Dated:   August 29, 2025
         Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:   landis@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:   dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*