IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |

## DECLARATION OF KIHYUK NAM IN SUPPORT OF MOTION FOR (I) STATUS CONFERENCE AND LIMITED ADMINISTRATIVE RELIEF REGARDING DISPOSITION OF FTT; AND (II) IN THE ALTERNATIVE, ORDER UNDER 11 U.S.C. § 554(b)

I, Kihyuk Nam, declare pursuant to 28 U.S.C. § 1746:

1. I am an FTX customer and holder of an FTT-based claim. I submit this declaration in support of my Motion for (I) Status Conference and Limited Administrative Relief Regarding Disposition of FTT; and (II) in the Alternative, Order under 11 U.S.C. § 554(b) (the "Motion"). I have personal knowledge of the facts stated, or have reviewed the public records cited, and I could competently testify if called.

2. This declaration is confined to factual matters relevant to administrative feasibility: (a) the estates' on-chain custody of FTT; (b) the administrative significance of the BlockFi global settlement; and (c) a Schedule F aggregation that supports the alignment between the "retail" portion and the "FTX: Cold 1" balance. I do not seek to re-value FTT or to modify the Plan's classification or distribution scheme. Post-confirmation administration is

---

[1] Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

governed by the Plan and governing Trust documents; the Court's retained jurisdiction over implementation and administration is set forth at Plan § 12 and Confirmation Order ¶¶ 88, 112.

3. Exhibits to this declaration are true and correct copies: Exhibit A (FTT Token On-Chain Transaction Data and Wallet History—wallet addresses, transaction hashes, and screenshots) and Exhibit B (a true and correct copy of Bankr. D.I. 8676 ¶ 18 (pp. 8–10) from the Debtors' BlockFi global settlement motion).

**On-chain custody of FTT (no shortfall; consolidated in two wallets)**

4. Since the Petition Date, FTT has been continuously held 1:1 in two estate-controlled wallets. First, the "FTX: Cold 1" wallet (0x97f991971a37D4Ca58064e6a98FC563F03A71E5c) holds approximately 45,850,883.3099 FTT. On November 12, 2022, the day after the initial petitions, that amount moved from an FTX exchange hot wallet via an intermediate "FTX 3" wallet into "FTX: Cold 1." It has not moved out since. See Ex. A (A.3; A.4; A.5 Figure 3).

5. Second, the "FTX Bahamas Joint Liquidator" wallet (0x5C9d457374899D67ff10ff5F3ad66aB53E0FB36B) holds approximately 195,869,346.3870 FTT. On April 18, 2024, that amount was transferred in a single on-chain transaction from the "Bahamas Fireblocks" wallet (0x2a4F8d77bAde18256b1BDB3cF8782645037f60d3), which had received the same amount from the "FTX Deployer" address on November 13, 2022. See Ex. A (A.3; A.4 Figure 4; A.5 Figures 4–5).

6. The two wallets together reflect the estates' entire on-chain FTT supply, consolidated 1:1 post-petition. Unlike other assets where shortfalls or commingling were cited, FTT is intact, segregated, and already under estate control. See Ex. A (A.6, points (i)–(v)).

**BlockFi settlement: administrative significance (not revaluation)**

7.      On March 6, 2024, Debtors filed the BlockFi global settlement motion (Bankr. D.I. 8676); the Court approved it on March 25, 2024. Paragraph 18 enumerates assets to be returned/released to the estates—HOOD proceeds, Coinbase-custodied SOL (approximately $100 million), and SRM. FTT is not listed. See Exhibit B (Bankr. D.I. 8676 ¶ 18 (pp. 8–10)).

8.      Read together with on-chain evidence (Ex. A) and the claims schedules, this supports that the very large "~103 million FTT" line was collateral-related (not "retail customer FTT"), and that the retail portion aligns with the approximately 45.85 million FTT now held in "FTX: Cold 1." I offer this to show administrative scope and feasibility only, not to support any revaluation.

**Schedule F aggregation supporting the retail portion (administrative scope)**

9.      To substantiate the scope of the "retail portion," I reviewed the Debtors' Schedule F data for FTT-denominated claims. Using the Schedule F export, I filtered entries that expressly listed FTT balances and aggregated them by "Unique Customer Code."

10.     Upon aggregating all claims with 1,000+ FTT, there were 3,270 total FTT-related Schedule F entries. Excluding a single, very large entry associated with BlockFi (Unique Customer Code 00273817), the remaining 3,269 entries aggregated to 42,861,160.64 FTT. The single large entry itself reflected 103,114,728.90 FTT.

11.     When small-balance items below 1,000 FTT review threshold are included, the retail customer portion aligns to approximately 45.85 million FTT—consistent with the ~45,850,883.3099 FTT currently held in "FTX: Cold 1." See Ex. A (A.4 Figure 1)

12.     This methodology is offered solely to delineate the administrative scope of any opt-in program (finite, consolidated, already-custodied petition-date holdings) and not to support any revaluation or to modify Plan classification.

13.     Taken together—Exhibit A (on-chain) and Exhibit B (Bankr. D.I. 8676 ¶ 18)—

the facts support that an opt-in administrative return would concern a finite, concentrated set of petition-date holdings already segregated in estate-controlled wallets, with no need for market repurchases.

**Further administrative distinctions**

14. The segregation of these amounts on chain supports the premise that there is no FTT shortfall or commingling problem to remedy. It also supports the practicality of an administrative return limited to petition-date holdings.

15. In my view, these facts distinguish FTT from assets where Debtors previously argued that an in-kind return was impractical due to deficits, commingling, or the need for large market repurchases.

16. A one-time, opt-in administrative return—if the Trust elects—could be executed using existing KYC/OFAC protocols with recipients bearing nominal network fees, and would not impact Plan distributions or reserves.

**Context on timing (estimation order then BlockFi motion)**

17. For context, the Estimation Order was entered on February 7, 2024, whereas the BlockFi global settlement motion (clarifying the collateral-related posture and enumerating assets to be released/returned) was filed on March 6, 2024 and approved on March 25, 2024. See Bankr. D.I. 8676 ¶ 18; approval order entered Mar. 25, 2024. I do not rely on this timing to seek reconsideration of any order; it is noted only to explain that the administrative contours relevant to the finite, custodied FTT holdings became clearer after estimation, and the narrow relief sought in the Motion proceeds entirely within the existing Plan framework.

18. I am not asking the Court to re-value FTT, to re-order priorities, or to modify the Plan's classification or distribution scheme.

**Conclusions supported by the foregoing facts**

19. The estates hold FTT 1:1 in two consolidated wallets; there is no shortfall.

20. The retail portion aligns with the ~45.85 million FTT in "FTX: Cold 1." The BlockFi settlement's enumerated returns (HOOD proceeds, SOL, SRM) and omission of FTT are consistent with the conclusion that the "~103 million FTT" line was collateral-related, not a retail customer return.

21. An opt-in administrative return would address a finite, custodied set of petition-date holdings and can be executed under existing KYC/OFAC processes, with recipients bearing network fees, and without impacting Plan distributions or reserves.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 1, 2025
Incheon, South Korea

Respectfully submitted,

**KIHYUK NAM**

/s/ *Kihyuk Nam*
Kihyuk Nam
107 Haedoji-ro, Building 2, 2404
Yeonsu-gu, Incheon 21997
South Korea
Telephone: (+82) 10-2914-4866
Facsimile: (+82) 508-911-8431
E-mail: kihyuknam@hanyang.ac.kr