## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. No. 31846** |

### ROSS RHEINGANS-YOO'S OPPOSITION TO
### FTX RECOVERY TRUST'S MOTION FOR RECONSIDERATION OR
### TO MODIFY ORDER ALLOWING FDU CLAIM

Ross Rheingans-Yoo ("Ross"), by and through his co-counsel Goetz Platzer LLP and Joyce, LLC, hereby opposes *FTX Recovery Trust's Motion For Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* (D.I. 31846, "Motion"). This opposition is supported by the concurrently filed Declaration of Ross Rheingans-Yoo ("Ross Decl."). In opposing the Motion, Ross respectfully states as follows:

### PRELIMINARY STATEMENT[1]

1.      The Court wrongly allowed the FDU Claim. That is the Trust's explicit position: "[T]he FDU Claim never should have been allowed in the first place." Motion ¶ 46.

2.      The Court wrongly held that the FDU Claim was employment compensation. That is the Trust's explicit position: The "FDU Claim is 'compensation' that was obtained without any consideration by Rheingans-Yoo." Motion ¶ 4.

3.      The Trust's rejection of the Court's ruling insults the Court and betrays that this Motion is not about new evidence. Instead, it is a vendetta against Ross and his right to direct the Trust to make a donation to the EA charity of his choice.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

4.      On June 25, 2025, the Court ruled that Ross's FDU Claim was indeed employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company."[2]

5.      The Trust had objected to Ross's FDU Claim on the grounds that he did not timely accept it and he lacked standing to assert it. *See Debtors' Objection to Proof of Claim Filed by Ross Rheingans-Yoo* [D.I. 3409, "Claim Objection"] at ¶¶ 28-29 (emphasis added):

> The Debtors have identified no evidence that Rheingans-Yoo ever directed a grant of $650,000 to any Effective Altruist cause prior to the Petition Date … Moreover, even if Rheingans-Yoo had timely directed a $650,000 grant to an Effective Altruist cause that he had designated—and he made no such election—Rheingans-Yoo himself would not have received the $650,000 that he now seeks from the Debtors as an administrative claim. **Rather, the $650,000 would have gone to the Effective Altruist cause that Rheingans-Yoo designated**.

The Court overruled the Trust's objection. So, as the Trust acknowledged and the Court ordered, the $650,000 FDU Bonus will go to an EA cause that Ross designates.

6.      But when Ross designated Manifold for Charity, the Debtors filed their Motion for Reconsideration, repeatedly placing scare quotes around the words *charitable* and *charity* and *charities* (see Motion at ¶¶ 1, 2, 3, 4, 5, etc.) – even as the Trust proclaims that Manifold for Charity is undeniably an EA cause. *See id.* at ¶¶ 7-11 (Sam Bankman-Fried's "Ties to the Effective Altruist Movement"); ¶¶ 20-29 (FTX made donations to numerous EA charities and estate sought to recover those funds during bankruptcy case) The Motion is a screed shouting that EA is Bad.

---

[2] A certified copy of the transcript from the June 25, 2025 hearing overruling the Trust's objection to Ross's FDU Claim ("Hearing Tr.") is annexed to the accompanying Declaration of Ross Rheingans-Yoo ("Ross Decl.") as **Exhibit A**. See Hearing Tr. at 46:4-7

7.      However, the argument that EA is Bad is not one that can be made in the Motion. At all times, the Trust was aware that the Debtors awarded Ross the exclusive and absolute right to designate *any* EA charity to receive the FDU Claim. *See* Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim [D.I. 29218, "Stipulated Facts"][3] at ¶ 41; *see also* Bonus Memo[4] ("you get another $650k of directed grants to any EA-driven cause if you want"). Yet the Objection to Claim raised only two arguments against allowance of the FDU Claim: that Ross lacked standing and he did not designate an EA cause prior to the petition date. If the Trust believed that "claw[ing] back donations to charities – and in particular Effective Altruist charities" (Motion ¶ 27) was grounds for disallowing the FDU Claim, then the Debtors were required to raise it as part of their claim objection. They cannot do so now.

8.      Stated differently, the Trust conceded that Ross's Employment Agreement is an enforceable contract. *See* Stipulated Facts at ¶ 31. The Employment Agreement gave the Debtors discretion to award Ross a bonus. *See id.* at ¶ 28. The Bonus Memo issued by the Debtors required Ross to choose any EA charity. Now that Ross has done so, the Trust cannot be heard to object on the ground that EA charities are unworthy or fraudulent due to their prior association with FTX. The Debtors admit that Manifold for Charity is an EA cause. That is the end of the inquiry.

9.      The gravamen of the Motion is that Sam Bankman-Fried had ties to the EA movement (Motion, ¶¶ 7-11), Bankman-Fried was convicted of fraud (*id.*, ¶¶ 12-19), Bankman-Fried directed that FTX customer funds be donated to EA charities (*id.*, ¶¶ 20-23), and the Trust has prosecuted avoidance actions against the recipients of those prepetition donations (*id.*, ¶¶ 24-29). None of this is "new evidence" that was unavailable to the Trust in June 2025.

---

[3] A true and correct copy of the Stipulated Facts is annexed to the Ross Decl. as **Exhibit B**.

[4] A true and correct copy of the Bonus Memo is annexed to the Ross Decl. as **Exhibit C**. The Bonus Memo was previously filed as an exhibit to the Stipulated Facts.

10.     No, the "new evidence" is that Ross selected Manifold for Charity as the recipient of the FDU Bonus after the June 2025 hearing, Manifold for Charity has connections with former FTX Group personnel, and Ross sits on Manifold for Charity's board of directors. *See* Motion at ¶¶ 36-41. Respectfully: So what?

11.     The Bonus Memo required Ross to do two things. First, accept the bonus. The Court held that Ross did so by timely filing a proof of claim in the chapter 11 case.[5] Second, designate any EA-driven cause to receive the FDU Bonus. Ross did so, through counsel, on July 2, 2024.[6]

12.     The Trust does not object to Manifold for Charity on the ground that it is not an EA cause. To the contrary, the Trust harps on Manifold for Charity's EA connections, such as its decision to host a conference at a hotel owned by the Centre for Effective Altruism. *See* Motion at ¶ 29. The analysis of the Motion is simple: The Debtors awarded Ross a discretionary bonus. Ross accepted the bonus on its terms by designating Manifold for Charity. There was no contractual or equitable restriction on Ross's right to choose, other than that his choice needed to be any EA cause. The Trust vigorously agrees that Manifold for Charity is an EA cause. There is no ground for reconsideration.

13.     The Motion objects to distributing the FDU Claim to Manifold for Charity because the Trust is currently litigating against that entity. However, that "the Trust is litigating against this EA charity" does not change the fact that Ross properly designated an EA charity. The Trust has no right to object to the distribution of the FDU claim to an EA charity.

---

[5] *See* Hearing Tr. at 45:20 – 46:14.
[6] A true and correct copy of Ross's designation of Manifold for Charity as the recipient of the FDU Bonus is annexed to the Ross Decl. as **Exhibit D**.

14.     Notwithstanding that the Trust's objection is meritless, Ross in good faith voluntarily resolved the Trust's concerns by redesignating as the beneficiary 1Day Sooner Inc. ("1Day Sooner"), an EA charity that is not currently litigating with the Trust. The Trust refused.[7]

15.     In refusing to pay the FDU Claim to 1Day Sooner, Trust counsel asserted that the FDU Order "does not permit" Ross to substitute another charity for the one he originally designated. *See* Ross Decl., Ex. E. Of course, the FDU Order also does not forbid Ross from designating another charity, especially since the FDU Claim has not even been submitted to the Trust's claims administrator, let alone paid.[8] The Trust in bad faith rejected Ross's good-faith attempt to avoid multiplying these proceedings. If the Trust truly had "concerns" about Ross's selection of Manifold for Charity (Motion ¶¶ 47-48), then the Trust should have been pleased to distribute the FDU Bonus to 1Day Sooner.

16.     Numerous allegations in the Motion are materially false and misleading – squarely implicating Brandolini's Law.[9]

17.     The Trust exclaims, for example, that Ross did not disclose that he is a Manifold for Charity board member, implying that he had an obligation to disclose this and he concealed the truth. *See* Motion at ¶¶ 2, 3, 39, 47. Both are wrong. Neither the Bonus Memo nor the FDU Order prohibited Ross from designating an EA charity for which he serves as a director. It is commonplace for charities' board members to be among their organizations' largest donors and staunchest supporters; Ross has donated over $150,000 of his own money to Manifold for Charity. In any event, Ross did not conceal this fact. The Trust admits this by citing a post on Ross's own

---

[7] *See* August 14-15, 2025 correspondence redesignating the FDU Bonus recipient from Manifold for Charity and the Trust's refusal. A true copy is annexed to the Ross Decl. as **Exhibit E**.

[8] Trust counsel refused to confirm that the claims administrator was directed to pay Manifold for Charity, strongly implying that they have not done so, in violation of the FDU Order. *See* Ross Decl., Ex. E.

[9] "The amount of energy needed to refute [a false and misleading claim] is an order of magnitude bigger than that needed to produce it." Wikipedia, Brandolini's Law, available at https://en.wikipedia.org/wiki/Brandolini%27s_law (last accessed August 19, 2025).

public website! *See* Motion, ¶ 2. Likewise false is the Trust's claim that former FTX employee Nishad Singh "now works at Manifold for Charity." Motion, ¶ 46. The Trust claims that Manifold for Charity directors are entitled to be paid. *See id.* at ¶ 47. Yes, but none of them ever have been paid. Refuting each and every instance of the Trust's mudslinging attacks on EA, Ross, and Manifold for Charity[10] is beside the point.

18.     The point is best made in response to the overriding theme of the Trust's pleadings: "The donations to Effective Altruist and other charities were part of an integrated plan by the FTX Insiders to siphon money from FTX Group creditors and enhance their own personal and professional reputations at creditors' expense." Motion, ¶ 23. Here is what the Trust elides: *The knowledge that the Debtors had donated customer funds to EA charities and sued for their return was known to the Debtors at all times.* Ross's obligation to select any EA charity as the FDU Claim's beneficiary was known to the Debtors at all times. This is not newly discovered evidence that merits reconsideration.

19.     Nor can the Trust argue that Ross's selection of an EA cause "must be evaluated in the larger context of these Chapter 11 Cases." Motion, ¶ 4. The larger context of these cases was known to the Trust when they objected to Ross's claim and argued the objection in June 2025.

20.     But even if Ross had designated Manifold for Charity in advance of the June 2025 hearing, and the Trust had objected then, Ross would have made the same change – to 1Day Sooner – that he did in July 2025. Ross respectfully submits that the change would not have affected the Court's determination that the FDU Claim represents employment compensation and Ross timely accepted the FDU Bonus by filing a proof of claim before Judge Dorsey's bar date.

---

[10] *See generally* Ross Decl.

21.     Although the Trust has no basis for objecting to Manifold for Charity because it is undeniably an EA cause, Ross nevertheless resolved the Trust's concern by voluntarily redesignating the beneficiary. See Ross Decl., Ex. E. Ross's prompt change to another EA charity, one that is not litigating with the Trust and one on whose board he does not sit, completely undermines the Trust's theory that Ross could benefit from the donation to Manifold for Charity.

22.     The Trust's objection to paying Manifold for Charity is moot because Ross designated 1Day Sooner, another EA cause, as the FDU Claim's recipient. The Court should overrule the Trust's Motion and direct payment of the FDU Claim to 1Day Sooner.

## JURISDICTIONAL CONSENT

23.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Ross consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL HISTORY

24.     The Court is respectfully referred to the Stipulated Facts (Ross Decl. Ex. B) for an undisputed recitation of Ross's employment history with the Debtors.

25.     The Debtors filed their chapter 11 cases on November 11, 2022. The general non-customer bar date was set as June 30, 2023. Ross timely filed his proof of claim, inclusive of the FDU Claim, on or about June 29, 2023.

26.     On October 30, 2023, the Debtors filed their Claim Objection. The Claim Objection asserted two grounds for disallowance of the FDU Claim. First, Ross did not identify the FDU Claim's beneficiary prior to the Petition Date. *See* Claim Objection at ¶ 28. Second, Ross lacked

standing to assert the FDU Claim. *See id.* at ¶ 29. The Claim Objection recognized that the FDU Claim, if paid, would go "to the Effective Altruist cause that Rheingans-Yoo designated." *Id.* The Claim Objection did not seek disallowance of the FDU Claim on the ground that allowance would require the Debtors to make a charitable donation to an EA cause.

27.    On February 12, 2025, Ross filed his response to the Claim Objection [D.I. 29572, "Ross Response"]. The Ross Response explained that the FDU Claim was part of Ross's earned employment compensation and the Bonus Memo did not obligate Ross to designate a beneficiary between September 2022, when the Debtors awarded the FDU Bonus, and the November 2022 petition date.

28.    On June 12, 2025, the Trust filed its reply on the Claim Objection [D.I. 30712, "Trust Reply"]. The Trust Reply repeated the arguments made in the Claim Objection, namely that Ross lacked standing to assert the FDU Claim since he would not be the ultimate recipient of the FDUs, and Ross's claim was unenforceable because he never accepted the bonus by designating the beneficiary before the petition date.

29.    On June 25, 2025, the Court held oral argument on the Claim Objection. On the record of the hearing, the Court determined that Ross had standing to assert the FDU Claim given his personal interest in the FDU Bonus. *See* Hearing Tr. at 46:2-4. The Court also determined that the Debtors awarded Ross a prepetition discretionary bonus which required the Debtors to make a $650,000 donation to an EA cause, and that Ross timely accepted the bonus by filing a proof of claim pursuant to Judge Dorsey's bar date order. *Id.* at 46:4-14.

30.    On July 2, 2025, Ross's counsel timely emailed Trust counsel to advise that Ross had selected Manifold for Charity. See Ross Decl., Ex. D. The email advised Trust counsel to "[l]et me know if you need any additional information to identify the Designated Beneficiary…" *Id*.

31.     On July 9, 2025, the Court entered the FDU Order. The FDU Order directed the Trust to "make distributions in accordance with the terms of the Plan on account of the Allowed FDU Claim to the Effective Altruism-driven charity identified by counsel for Rheingans-Yoo in writing to counsel for the Trust." FDU Order, ¶ 3. The FDU Order further directed Kroll Restructuring Administration LLC, the Trust's claims and administrative agent, to "update the claims register maintained in these Chapter 11 Cases to reflect the relief granted in this Order." *Id*., ¶ 4.

32.     On July 23, 2025, Trust counsel filed the Motion for Reconsideration. Trust counsel never reached out to Ross's counsel to discuss Ross's July 2 selection of Manifold for Charity before precipitously filing the Motion.

33.     On August 14, 2025, Ross's counsel emailed Trust counsel to advise that Ross believed the Motion lacked merit, but in an effort to "eliminate the parties' ongoing litigation costs and conserve judicial resources," Ross was changing his designation from Manifold for Charity to 1Day Sooner. *See* Ross Decl. Ex. E. The August 14, 2025 email also advised Trust counsel that upon information and belief, the Trust had not complied with the FDU Order by directing its claims administrator to pay the FDU Claim to Manifold for Charity. *See id.* And Ross's counsel also advised Trust counsel that Ross was willing to answer written questions about 1Day Sooner "to prospectively alleviate any concerns that the debtors may have about its philanthropy or relationship to Ross." *Id.*

34.     On August 15, 2025, the Debtors responded that the FDU Order "does not permit Rheingans-Yoo to substitute another charity for the one he originally designated."

35.     Of course, the FDU Order also does not prohibit a substituted EA cause, especially where the FDU Bonus has not been paid or even conveyed to the claims administrator in

compliance with the FDU Order – a fair presumption given Trust counsel's refusal to address the concern that there had been no such direction.

## FACTUAL BACKGROUND[11]

36.     Ross has donated over $700,000 of his own money to charity since 2014. This is *before* considering the FDU Bonus.

37.     Most of Ross's donations were to EA causes. As many EA donors do, Ross has publicly explained why he believes that the recipients of his donations are worthy of support. For example, Ross has given the largest portion of his personal donations – nearly $165,000 – to the organization GiveWell, established in 2007 as a nonprofit dedicated to finding outstanding giving opportunities and sharing the full details of that analysis with everyone for free.

38.     The second-largest portion of Ross's personal donations – over $150,000 – has been to Manifold for Charity. Ross has also personally donated to the Centre for Effective Altruism, COVID-response projects, the Humane League for animal welfare, the Against Malaria Foundation, and many other EA causes.

39.     The Court may recall that Final Ross Terms contemplated that the FDU Bonus could be granted "to a Ross-controlled personal foundation." *See* Stipulated Facts, p. 7. This is because in a technical sense, Ross initially made the vast majority of his over $700,000 in donations to Vanguard Charitable, which administers Ross's donor-advised fund ("DAF").

40.     Vanguard describes DAFs as "a charitable giving vehicle that empowers you to grow your philanthropy with ease and precision." As a 501(c)(3), Vanguard Charitable faces restrictions in how it can invest or direct these funds, to prevent them from being used for the private benefit of individuals connected to the donor.

---

[11] The factual recitation in this section is based upon the Ross Decl.

41.     Once Ross donates funds to Vanguard Charitable, his role is limited to the provision of advice as to how the assets may be invested, or how they may be directed for charitable purposes, which in practice often means Ross advising Vanguard to send the funds to an EA cause.

42.     Vanguard Charitable as a DAF service provider has a legal obligation to ensure that it only makes regrants for charitable purposes, and that its investments comport with all relevant laws that govern charitable investing. It is Vanguard's duty to ensure that following actions advised by a donor-advisor does not illegally inure to private benefit. In this responsibility, the organization, its officers, and its directors are responsible to state and federal authorities under common statutes against misuse of philanthropic funds.

43.     Manifold for Charity is, like Vanguard Charitable, a DAF service provider.

44.     Ross is indeed an independent director of Manifold for Charity. In that role, he is legally obligated to evaluate opportunities to either advise investments that are likely to lead to the growth of philanthropic capital to support future projects, or to advise grants that will have positive impact on the world in the shorter term. In the latter, Ross takes seriously his responsibility to ensure that Manifold for Charity complies with its legal obligations as a 501(c)(3) as it evaluates advice from donor-advisors as to grants and investments.

45.     Importantly, Ross has no property interest in his donations once they are made to Vanguard Charitable, Manifold for Charity, or any other DAF. Indeed, when Ross advises Manifold for Charity about how he wishes to regrant funds that he donated, Ross recuses himself from board oversight and the remaining directors confirm that Ross's donations are used only for charitable purposes and not to benefit himself.

46.     It is true that Manifold for Charity's bylaws provide that directors can be paid for serving on the board. However, since Manifold for Charity's founding, directors have never been paid, and there is no expectation or plan for that to change.

47.     The Trust asserted that Nishad Singh, who participated in the underlying FTX fraud, "now works at Manifold for Charity." Motion, ¶ 39. That is false. Singh was an independent contractor who had a 4-6 week trial position as an engineer. His trial term ended before the Trust filed its Motion on July 23, 2025.

48.     Manifold for Charity never paid Gabe Bankman-Fried for consulting, as the Trust implies at ¶ 39 on the Motion. A phone call or two does not raise "concerns." Nor did Manifold for Charity ever add Gabe Bankman-Fried to its board of directors.

49.     Even though the Trust's purported "concerns" with Manifold for Charity are unfounded, Ross nevertheless promptly sought to address those concerns by substituting 1Day Sooner as the recipient of the FDU Claim.

50.     Ross is not an employee, officer, or director of 1Day Sooner. He has never been paid by 1Day Sooner.

51.     From time to time, Ross has volunteered his time to assist 1Day Sooner's research and public-communications efforts with uncredited and uncompensated writing, reviewing, and informal advice.

52.     Ross is willing to stipulate that he not be compensated by 1Day Sooner in any capacity for a future period sufficient to allay the Trust's purported concerns about self-dealing.

53.     As with Manifold for Charity, once the FDU Bonus is distributed to 1Day Sooner, Ross will have no legal right to control the FDU Bonus funds.

## ARGUMENT

### I.    Legal Standard

54.    The standard for reconsideration under Rule 59(e) is an exceptionally high one. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) ("The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case"). "[F]inality of judgment and conservation of judicial resources dictate that Rule 59(e) be sparingly granted." *In re TE Holdcorp, LLC*, No. 20-11442 (MFW), 2021 WL 1961911 at *2 (Bankr.D.Del. May 14, 2021).

55.    Reconsideration may be warranted only upon "the availability of new evidence that was not available" previously. *In re Maxus Energy Corporation*, 571 B.R. 650, 654 (Bankr.D.Del. 2017).

56.    "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985). "[A] party cannot show due diligence if the newly discovered evidence was available to that party during the proceeding." *In re Syntax-Brillan Corp.*, No. 08-11407 (BLS), 2013 WL 153831 at *6 (Bankr.D.Del. Jan. 15, 2013).

### II.    There is no new evidence presented in the Motion.

57.    The Motion is supported by the Declaration of Matthew B. McGuire ("McGuire Decl.") and its 24 exhibits. The Motion is trying to be a referendum on Effective Altruism. The Trust says that Ross may not change the beneficiary from Manifold for Charity to 1Day Sooner because EA is Bad.

58.    A review of the exhibits makes this clear. Exhibit 1 to the McGuire Decl. is a March 2023 article titled "Effective Altruist Leaders Were Repeatedly Warned About Sam Bankman-

Fried Years Before FTX Collapsed." Exhibit 4 is Bankman-Fried's LinkedIn page that has not been updated since the petition date. The LinkedIn page shows that Bankman-Fried's first job after leaving Jane Street Capital was with the Centre for Effective Altruism. Exhibit 1 says the initial funding for Alameda Research came from two EA donors. Paragraph 10 of the Motion recites that in 2021, Bankman-Fried hired Nick Beckstead, an effective altruist, to work at FTX Foundation, and that the founder of effective altruism was an advisor. Paragraph 11 says that Ross self-identifies as an effective altruist.

59.    In support of the Motion, the Trust filed "only [its] own [declaration] containing evidence that was available prior to the [Claim Objection]." *Harsco*, 779 F.2d at 906. The Trust's own declaration reveals that the purported evidence that EA is Bad is not newly discovered. If the Trust sought to disallow Ross's claim because of "other connections to these Chapter 11 cases" (Motion, ¶ 40), and "the larger context of these Chapter 11 Cases" (*id.*, ¶ 4), these connections and larger context were known to the Debtors prior to October 30, 2023, the date of the Claim Objection. It is too late for the Trust to raise them now.

60.    Of course, the Trust will argue that Ross's selection of Manifold for Charity is itself the newly discovered evidence: If the Trust had known before filing its Claim Objection that Ross would select Manifold for Charity, it would have objected on these grounds before. "But more than a showing of the potential significance of the new evidence is necessary" to obtain relief under Rule 59(b). *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967).

61.    If the Trust had objected to Manifold for Charity during the Claim Objection, Ross would have changed the beneficiary then.[12] The Court would likely have still found that Ross

---

[12] Ross would have changed the beneficiary not because Manifold for Charity is unworthy but to eliminate the Trust's concern that donating to Manifold for Charity is problematic because Manifold for Charity is a defendant in an adversary proceeding. *See* Ross Decl.

earned the FDU Bonus as employment compensation and he timely accepted it by filing a proof of claim. The only difference is that the payment would have been directed to 1Day Sooner instead of Manifold for Charity.

62.     In other words, there is no new evidence demonstrating why Ross cannot select a new EA cause, since the FDU Bonus has not been paid. Reconsideration cannot be granted on this ground.

### III.     There is no manifest injustice presented by a change in beneficiary.

63.     The Motion is premised upon the Trust's unilateral and baseless determination that Ross "cannot be trusted" to redesignate the beneficiary of the FDU Bonus before the claim is paid. *Id.*, ¶ 48. Trust counsel's response to Ross's redesignation, meanwhile, was that the FDU Order "does not permit" Ross to do so. Ross Decl. Ex. E.

64.     The FDU Order directs the Trust to make distributions in accordance with the Plan to the EA charity identified by Ross's counsel in writing to Trust counsel. *See* FDU Order at ¶ 3. The FDU Order does not prohibit Ross from selecting a different EA charity before the FDU Claim is paid. The Bonus Memo likewise does not prohibit Ross from identifying a different EA charity. Indeed, it allows Ross to designate *any* EA charity.

65.     Just as the Court held that Ross's acceptance of the FDU Bonus occurred when he filed a proof of claim within a reasonable time, so was Ross's redesignation of the beneficiary to 1Day Sooner made within a reasonable time of the Trust objecting to Manifold for Charity. The redesignation moots the Motion. It should have been withdrawn upon the redesignation.

66.     Instead, the Trust asserts that Ross's designation of Manifold for Charity "raises such serious concerns" that the Trust is unwilling to even consider changing the beneficiary. Motion, ¶ 48. The Trust argues that Ross's selection of Manifold for Charity created a "manifest

injustice" and he should not be "given … an opportunity" to redesignate. *Id.* What are the supposedly "serious concerns" the Trust has cited?

67.    The Trust is purportedly concerned that Manifold Markets, Inc. created a charitable affiliate, Manifold for Charity, and that Austin Chen, now the CEO of Manifold for Charity, was one of Manifold Market Inc.'s co-founders. *See* Motion at ¶ 38. Aside from unspoken innuendo, there is no reason for concern expressed on this point.

68.    The Trust is purportedly concerned that Manifold for Charity and Manifold Markets, Inc. jointly host an annual conference that Ross has attended, at a location associated with another EA organization. *See* Motion at ¶ 38. There is nothing concerning about Ross attending a charity conference at the Rose Garden Inn.

69.    The Trust is purportedly concerned that as a director of Manifold for Charity, Ross "may be" eligible for compensation for his service. Motion, ¶ 39. If the Trust had asked or investigated, it would have learned that Manifold for Charity has never paid its directors for their service. *See* Ross Decl.

70.    But even if the charity begins paying its directors, that is not violative of Ross's employment agreement nor the Bonus Memo. Neither document required Ross to designate an EA charity where he was not a director or he would not be paid. Indeed, Final Ross Terms – the document negotiated between Ross and Bankman-Fried outlining the terms of Ross's employment (*see* Ex. G to the Stipulated Facts) – provides at ¶ 2(b)(3) that the FDUs could be directed "to a Ross-controlled personal foundation." Because Ross Terms contemplated Ross being able to control the entire beneficiary of the FDU claim, there is nothing concerning about him merely serving as an unpaid, independent member of Manifold for Charity's board of directors.

71.    The Trust is purportedly concerned that Nishad Singh, who participated in the underlying FTX fraud, "now works at Manifold for Charity." Motion, ¶ 39. If the Trust had asked or investigated, it would have learned that this claim is false. Mr. Singh is not currently working at Manifold for Charity, nor was he doing so on July 23, 2025, when the Trust filed the Motion. *See* Ross Decl. There is nothing concerning about a falsity.

72.    The Trust is purportedly concerned that Manifold for Charity had a couple of phone calls with Gabe Bankman-Fried and considered adding him to its board of directors. See Motion at ¶ 39. There is nothing concerning about a couple of phone calls or *not* adding someone to a board of directors.

73.    Finally, the Trust is purportedly concerned about the Trust's ongoing litigation with Manifold for Charity. *See* Motion at ¶ 40. But the mere existence of litigation, one which Manifold for Charity is defending, is not evidence of wrongdoing.

74.    If the Trust were legitimately concerned about Manifold for Charity receiving the FDU Bonus, why wouldn't those concerns be resolved by donating the funds to 1Day Sooner, an EA charity where Ross does not sit on the board and that is not being sued by the Trust?

75.    The Motion does not answer that question. Instead, the Trust baldly states that it "does not believe that simply modifying the Designated Beneficiary will alleviate any concerns of impropriety or self-dealing." Motion, ¶ 48. Why not? Ross is not a director of 1Day Sooner. He will stipulate that if he provides services to 1Day Sooner, he will not be compensated. *See* Ross Decl. 1Day Sooner is not being sued by the Trust.

76.    The Trust's stubborn refusal to change the beneficiary betrays that this Motion is not about the Trust's purported "concerns," but instead an unlawful attempt to relitigate the allowance of Ross's FDU Claim.

77.    There is no "manifest injustice" in allowing Ross to change the beneficiary. "[M]anifest injustice" requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 218 (D.C. Cir. 2018).

78.    The only case cited by the Trust on manifest injustice is *In re Energy Future Holdings Corp.*, 575 B.R. 616 (Bankr.D.Del.2017). There, the court observed that the phrase has been used to describe "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." *Id.* at 628. The error must be "apparent to the point of being indisputable." *Id.*

79.    Here, the indisputable facts are that the Trust never objected to Ross's claim on the grounds that it would pay an EA charity, even though the Trust stipulated that the FDU Claim, if allowed, would be so paid. It is indisputable that the Trust stipulated that Ross could select *any* EA cause if the claim were allowed. It is indisputable that neither Ross Terms, nor the Bonus Memo, placed any restrictions on Ross selecting an EA cause where he sits on the board or has previously donated personal funds. Suffice it to say there is no error in the Court's ruling that is apparent to the point of being indisputable.

80.    Moreover, the governing law of this case is the Court's allowance of the FDU Claim. Accordingly, the Trust is not prejudiced by Ross changing the beneficiary, let alone in a way that is fundamentally unfair in light of governing law. The FDU Claim is still being paid under the Plan; no creditors are even potentially harmed by the change.

81.    Notably, the court in *Energy Future* held that manifest injustice is not demonstrated by the disappointment of the losing party. Rather, "it is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* FN 52.

82.     None of the Trust's purported concerns require disallowance of an employment claim that the Court already allowed as valid and enforceable. Even though the Trust claims that the Court wrongly allowed the FDU Claim – "the FDU Claim never should have been allowed in the first place" (Motion ¶ 46) – the Motion is bereft of any description of how the Court disregarded, misapplied, or failed to recognize controlling precedent. Obviously, this is because the Court did not do so; the Court properly determined that the FDU Bonus is an allowable employment claim.

83.     Because the Motion presents no basis for reconsideration, the Trust's refusal to change the beneficiary to 1Day Sooner is frivolous and objectively unreasonable.

**IV.     There is no need to defer distribution of the FDU Claim.**

84.     The Trust never made a distribution or even directed its claims administrator to pay the FDU Claim. Thus, the Trust took it upon itself to defer distribution.

85.     Now that Ross has redesignated 1Day Sooner, the Trust's "concerns" are moot.

86.     The Court should order payment of the FDU Claim to 1Day Sooner without delay.

**<u>CONCLUSION</u>**

87.     Just as the Trust tied itself in knots trying to argue that the FDU claim was anything other than a straightforward wage claim, here the Trust is manufacturing insincere "concerns" about Manifold for Charity. The Bonus Memo allowed Ross to select *any* EA cause; since the Trust admits that Manifold for Charity is an EA cause, it cannot be heard to object.

88.     Notwithstanding the Trust's concern-trolling, Ross voluntarily substituted 1Day Sooner, another EA cause, as the FDU Claim's beneficiary. The substitution moots whatever concerns the Trust has regarding Manifold for Charity – as well as the Motion.

**WHEREFORE**, for the foregoing reasons, together with those to be presented at the hearing on the Motion, Ross respectfully requests that the Court (i) deny the Motion in its entirety; (ii) direct the Trust to pay the FDU Claim to 1Day Sooner; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: September 26, 2025
       Wilmington, DE

/s/ Michael J. Joyce
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
mjoyce@mjlawoffices.com

-and-

Scott D. Simon (admitted *pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, NY 10119
Telephone: (212) 695-8100
ssimon@goetzplatzer.com