**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al.*,<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |

**DECLARATION OF ROSS RHEINGANS-YOO IN OPPOSITION TO**
**FTX RECOVERY TRUST'S MOTION FOR RECONSIDERATION OR**
**TO MODIFY ORDER ALLOWING FDU CLAIM**

　　Ross Rheingans-Yoo hereby declares under penalty of perjury as follows:

　　1.　I am the claimant of the FDU Claim.[1] I submit this declaration in opposition to the *FTX Recovery Trust's Motion For Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* (D.I. 31846, "Motion") and to place before the Court certain documents and information referenced in the accompanying opposition to the Motion.

　　2.　I have donated over $700,000 of his own money to charity since 2014. This is *before* considering the FDU Bonus.

　　3.　Most of my donations were to EA causes. As many EA donors do, I have publicly explained why I believe that the recipients of his donations are worthy of support. Indeed, the Trust easily found my public website where I discuss my giving.

　　4.　For example, I have given the largest portion of my personal donations – nearly $165,000 – to the organization GiveWell, established in 2007 as a nonprofit dedicated to finding outstanding giving opportunities and sharing the full details of that analysis with everyone for free.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Motion.

5. The second-largest portion of my personal donations – over $150,000 – has been to Manifold for Charity. I have also personally donated to the Centre for Effective Altruism, COVID-response projects, the Humane League for animal welfare, the Against Malaria Foundation, and many other EA causes.

6. The Court may recall that Final Ross Terms contemplated that the FDU Bonus could be granted "to a Ross-controlled personal foundation." See Stipulated Facts, p. 7. This is because in a technical sense, I initially made the vast majority of my over $700,000 in donations to Vanguard Charitable, which administers a donor-advised fund ("DAF") in my name.

7. Vanguard describes DAFs as "a charitable giving vehicle that empowers you to grow your philanthropy with ease and precision."[2] As a 501(c)(3), Vanguard Charitable faces restrictions in how it can invest or direct these funds, to prevent them from being used for the private benefit of individuals connected to the donor.

8. Once I donate funds to Vanguard Charitable, my role is limited to the provision of non-binding advice as to how the assets may be invested, or how they may be directed for charitable purposes, which in practice often means my advising Vanguard to send the funds to an EA cause.

9. Vanguard Charitable as a DAF service provider has a legal obligation to ensure that it only makes regrants for charitable purposes, and that its investments comport with all relevant laws that govern charitable investing. It is Vanguard's duty to ensure that following actions advised by a donor-advisor does not illegally inure to private benefit. In this responsibility, the organization, its officers, and its directors are responsible to state and federal authorities under common statutes against misuse of philanthropic funds.

10. Manifold for Charity is, like Vanguard Charitable, a DAF service provider.

---

[2] *See* https://www.vanguardcharitable.org/what-is-a-donor-advised-fund (last accessed September 26, 2025.

11. I am indeed an independent director of Manifold for Charity. I have disclosed this fact on my personal website since December 2024. In this role, I am legally obligated to evaluate advice from donor-advisors – either with respect to investments that are likely to lead to the growth of philanthropic capital to support future projects, or with respect to grants that will have positive impact on the world in the shorter term. I take seriously my responsibility to ensure that Manifold for Charity complies with its legal obligations as a 501(c)(3) as it evaluates advice from donor-advisors as to grants and investments.

12. Importantly, I have no property interest in my donations once they are made to Vanguard Charitable, Manifold for Charity, or any other DAF. Indeed, when I advise Manifold for Charity about how I wish to invest or regrant funds that I donated,[3] I recuse myself from board oversight and the remaining directors confirm that my donations are used only for charitable purposes and not to benefit myself.

13. It is true that Manifold for Charity's bylaws provide that directors can be paid for serving on the board. However, since Manifold for Charity's founding, directors have never been paid – I have never been paid – and there is no expectation or plan for that to change.

14. The Trust asserted that Nishad Singh, who participated in the underlying FTX fraud, "now works at Manifold for Charity." Motion, ¶ 39. That is false. Singh was an independent contractor who had a 4-6 week trial position as an engineer. His trial term ended before the Trust filed its Motion on July 23, 2025.

15. Manifold for Charity never paid Gabe Bankman-Fried for consulting, as the Trust implies at ¶ 39 on the Motion. A phone call or two does not raise "concerns." Nor did Manifold

---

[3] Separately from my role as director, I serve as the donor-advisor for a DAF administered by Manifold for Charity.

for Charity ever add Gabe Bankman-Fried to its board of directors.

16. Even though the Trust's purported "concerns" with Manifold for Charity are unfounded, I nevertheless promptly sought to address those concerns by substituting 1Day Sooner as the recipient of the FDU Claim.

17. I am not an employee, officer, or director of 1Day Sooner. I have never been paid by 1Day Sooner.

18. From time to time, I have volunteered my time to assist 1Day Sooner's research and public-communications efforts with uncredited and uncompensated writing, reviewing, and informal advice.

19. I am willing to stipulate that I not be compensated by 1Day Sooner in any capacity for a future period sufficient to allay the Trust's purported concerns about self-dealing.

20. As with Manifold for Charity, once the FDU Bonus is distributed to 1Day Sooner, I will have no legal right to control the FDU Bonus funds.

21. The following documents are referenced in my objection to the Motion:

22. Annexed as **Exhibit A** is a certified copy of the transcript from the June 25, 2025 hearing at which the Court overruled the objection of the FTX Recovery Trust ("Trust")[4] to Ross's FDU Claim.

23. Annexed as **Exhibit B** is a true and correct copy of the Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim filed in connection with the Trust's objection to Ross's FDU Claim [D.I. 29218].

24. Annexed as **Exhibit C** is a true and correct copy of the "Bonus Memo" – a September

---

[4] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1].

1, 2022 memorandum created by Bankman-Fried and shared with Rheingans-Yoo with the file name "Ross Rheingans-Yoo Review 2022S1 -- SBF -> RRY."

25. Annexed as **Exhibit D** is a true and correct copy of correspondence between my counsel and counsel for the Trust dated July 2, 2025.

26. Annexed as **Exhibit E** is a true and correct copy of correspondence between my counsel and counsel for the Trust dated August 14-15, 2025.

27. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 26, 2025
New York, New York

/s/*Ross Rheingans-Yoo*
Ross Rheingans-Yoo