**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 20, 2025 at 9:30 a.m.**<br>**Objection Deadline: October 30, 2025 at 4:00 p.m.**<br>**Reply Deadline: November 13, 2025 at 4:00 p.m.** |
| FTX RECOVERY TRUST,<br><br>Plaintiff,<br><br>- against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>Defendants. | Adv. Pro. No. 24-50214 (KBO) |

**ROSS RHEINGANS-YOO'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011, 28 U.S.C. § 1927, AND 11 U.S.C. § 105**

Ross Rheingans-Yoo ("Ross") hereby submits this motion ("Motion") for entry of an order imposing sanctions upon the FTX Recovery Trust ("Trust")[1] and its counsel pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C. § 1927, and 11 U.S.C. § 105, in connection with the Trust filing its *First Amended Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 548, and 550 and Del. Code Ann. Tit. 6, § 1304 and*

[1] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1].

*1305, and for Disallowance or Subordination of Claim Pursuant to 11 U.S.C. §§ 502 and 510* [Adv. Pro. D.I. 38, "Amended Complaint"], and its *Motion for Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* [D.I. 31846, "Motion for Reconsideration"]. In support of this Motion, Ross respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Trust reveals the harassing and unlawful nature of its pleadings when it asserts that Ross did not earn the FDU Bonus.[2] The Trust declares that Ross's "FDU Claim is 'compensation' that was obtained without any consideration by Rheingans-Yoo." Motion for Reconsideration at ¶ 4. Those scare quotes insult the Court, which ruled on June 25, 2025 that Ross's FDU Claim was indeed employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company."[3] The Trust lost on its claim objection and is trying to relitigate it in two separate places, unreasonably multiplying these proceedings.

2. The Trust objected to Ross's FDU Claim on the grounds that he did not timely accept it and he lacked standing to assert it. *See Debtors' Objection to Proof of Claim Filed by Ross Rheingans-Yoo* [D.I. 3409, "Claim Objection"] at ¶¶ 28-29:

> The Debtors have identified no evidence that Rheingans-Yoo ever directed a grant of $650,000 to any Effective Altruist cause prior to the Petition Date … Moreover, even if Rheingans-Yoo had timely directed a $650,000 grant to an Effective Altruist cause that he had designated—and he made no such election—Rheingans-Yoo himself would not have received the $650,000 that he now seeks from the Debtors as an administrative claim. Rather, the $650,000 would have gone to the Effective Altruist cause that Rheingans-Yoo designated.

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Amended Complaint or Ross's Supplemental Response to Debtors' Objection to Claim [D.I. 29572], as applicable.

[3] A certified copy of the transcript from the June 25, 2025 hearing overruling the Trust's objection to Ross's FDU Claim ("Hearing Tr.") is annexed to the accompanying Declaration of Scott D. Simon ("Simon Decl.") as **Exhibit A**. *See* Hearing Tr. at 46:4-7.

The Court overruled the Trust's objection. So, as the Trust acknowledged and the Court ordered, the $650,000 FDU Bonus will go to an Effective Altruist ("EA") cause that Ross designates.

3. But when Ross designated Manifold for Charity, the Debtors filed their Motion for Reconsideration and Amended Complaint, repeatedly placing scare quotes around the words *charitable* and *charity* and *charities* (*see* Motion for Reconsideration at ¶¶ 1, 2, 3, 4, 5, etc.) – even as the Debtors proclaim that Manifold for Charity is undeniably an EA cause. *See id.* at ¶¶ 7-11 (Sam Bankman-Fried's "Ties to the Effective Altruist Movement"); 20-29 (FTX made donations to numerous EA charities and estate sought to recover those funds during bankruptcy case); *see also* Amended Complaint at ¶ 36 ("The donations to Effective Altruist and other charities were part of an integrated plan by the FTX Insiders to siphon money from FTX Group creditors…"). The Trust's pleadings are screeds shouting that EA is Bad.

4. However, the argument that EA is Bad is not one that can be made on the Motion for Reconsideration. At all times, the Trust was aware that the Debtors awarded Ross the exclusive and absolute right to designate *any* EA charity to receive the FDU Claim. *See* Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim [D.I. 29218, "Stipulated Facts"][4] at ¶ 41; *see also* Bonus Memo[5] ("you get another $650k of directed grants to any EA-driven cause if you want"). Yet the Objection to Claim raised only two arguments against allowance of the FDU Claim: that Ross lacked standing and he did not designate an EA cause prior to the petition date. If the Trust believed that "claw[ing] back donations to charities – and in particular Effective Altruist charities" (Motion for Reconsideration, ¶ 27) was grounds for disallowing the FDU Claim, then the Debtors were required to raise it as part of their claim objection. They cannot do so now.

[4] A true and correct copy of the Stipulated Facts is annexed to the Simon Decl. as **Exhibit B**.
[5] A true and correct copy of the Bonus Memo is annexed to the Simon Decl. as **Exhibit C**. The Bonus Memo was previously filed as an exhibit to the Stipulated Facts.

5.   Stated differently, the Trust conceded that Ross's Employment Agreement is an enforceable contract. *See* Stipulated Facts at ¶ 31. The Employment Agreement gave the Debtors discretion to award Ross a bonus. *See id.* at ¶ 28. The Bonus Memo issued by the Debtors required Ross to choose any EA charity. Now that Ross has done so, the Trust cannot be heard to object on the ground that EA charities are unworthy or fraudulent due to their association with FTX. The Debtors admit that Manifold for Charity is an EA cause. That is the end of the inquiry.

6.   Through the Amended Complaint, the Trust seeks to "avoid and recover" from Ross the FDU Claim that the Court already allowed at the June 25, 2025 hearing and in a corresponding order entered on July 9, 2025 ("FDU Order"). Amended Complaint at ¶ 1. The Trust also seeks to "disallow, or alternatively to equitably subordinate" Ross's allowed FDU Claim. *Id.* at ¶ 2.

7.   Like the Motion for Reconsideration, the Amended Complaint is frivolous. It alleges that Ross's post-petition, post-confirmation, post-allowed-claim conduct in 2025 – selecting Manifold for Charity to receive the FDU Claim – violates sections of the Bankruptcy Code and Delaware law that relate to *prepetition* conduct. Counts One through Four seek avoidance under provisions of the Bankruptcy Code and corresponding Delaware law that look back at transfers made before the bankruptcy filing. Those statutes also require Ross to have received the transfers. However, the Debtors admit that the Manifold entities, not Ross, received the funds distributed prepetition. Counts Five and Six, sounding under 11 U.S.C. §§ 550 and 502, are tools for enforcing successful avoidance actions; the Trust cannot be successful here as to Ross. And Count Seven, seeking equitable subordination of Ross's claim, is subject to dismissal because Ross did not engage in inequitable prepetition conduct by working for the Debtors, asserting his FDU Claim, and complying with the FDU Order by selecting an EA charity.

8.   The gravamen of the Amended Complaint is that FTX was a fraud (Amended Complaint, ¶¶ 24-33), FTX Philanthropy made charitable donations using wrongfully obtained FTX customer funds (*id.* at ¶¶ 34-35), and some of those donations were made to EA charities (*id.* at ¶ 36). The Trust alleges that FTX Philanthropy used customer funds to invest $1 million in Manifold Markets, Inc. and donate $508,000 to Manifold for Charity (*id.* at ¶¶ 38-41). The Trust then alleges, upon information and belief, that Manifold for Charity re-registered itself as a non-profit organization and may be running out of funds to operate (*id.* at ¶¶ 42-43).

9.   What, then, is Ross's alleged wrongdoing? That Ross was a named defendant in the Latona Adversary Proceeding? *See* Amended Complaint at ¶¶ 44-45. That cannot be it; the Debtors settled the Latona Adversary Proceeding and released Ross for any claim that he aided and abetted Sam Bankman-Fried's breach of fiduciary duties to the Debtors. *See* Latona Adversary Proceeding D.I. 106. Perhaps Ross's wrongdoing is that he was employed by the fraudulent FTX Group. *See* Amended Complaint at ¶ 45. That can't be it either; the Debtors admitted when they objected to the FDU Claim that the Debtors' employment agreement with Ross was a valid and enforceable contract, and the Debtors in their discretion awarded the FDU Bonus to Ross. *See* Stipulated Facts at ¶¶ 31, 38-41.

10. No, what the Trust alleges constitutes Ross's wrongful conduct is designating Manifold for Charity as the beneficiary of his FDU Claim. *See* Amended Complaint at ¶¶ 47-49. Specifically, the Trust alleges that Ross engaged in wrongdoing by not disclosing that he sits on the board of directors of Manifold for Charity and that Manifold for Chairty has "material connections" between it and "key individuals connected to these Chapter 11 cases." *Id.* Respectfully: So what?

11. The Bonus Memo required Ross to do two things. First, accept the bonus. The Court held that Ross did so by timely filing a proof of claim in the chapter 11 case.[6] Second, designate any EA-driven cause to receive the FDU Bonus. Ross did so, through counsel, on July 2, 2024.[7]

12. The Trust does not object to Manifold for Charity on the ground that it is not an EA cause. To the contrary, the Trust harps on Manifold for Charity's EA connections, asserting that Manifold for Charity is Ross's "Effective Altruist acquaintance." Amended Complaint at ¶ 48. Ross had a valid and enforceable employment agreement with the Debtors. The Debtors awarded Ross a discretionary bonus. Ross accepted the bonus on its terms by designating Manifold for Charity. There was no contractual or equitable restriction on Ross's right to choose, other than that his choice needed to be any EA cause. The Trust vigorously agrees that Manifold for Charity is an EA cause. Ross has done nothing wrong.

13. Bankruptcy Rule 9011 grants courts discretion to impose sanctions on a party and its counsel when their pleadings and motions are presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs. Sanctions are also authorized where a party and its counsel assert claims unsupported by law and assert allegations and factual contentions that lack evidentiary support. The Court has authority under 28 U.S.C. § 1927 to impose sanctions on counsel that multiplies the proceedings in a case unreasonably and vexatiously. And the Court's equitable powers under 11 U.S.C. § 105(a) allow it to award fees and costs for bad-faith filings. The Motion for Reconsideration and Amended Complaint meet all of these criteria.

---

[6] *See* Hearing Tr. at 45:20 – 46:14.

[7] A true and correct copy of Ross's designation of Manifold for Charity as the recipient of the FDU Bonus is annexed to the Simon Decl. as **Exhibit D**.

14. The Trust is harassing Ross and needlessly increasing his litigation costs. The Motion for Reconsideration and Amended Complaint object to distributing the FDU Claim to Manifold for Charity because the Trust is currently litigating against that entity. However, that "the Trust is litigating against this EA charity" does not change the fact that Ross properly designated an EA charity. The Trust has no right to object to the distribution of the FDU claim to an EA charity.

15. Notwithstanding that the Trust's objection is meritless, Ross in good faith voluntarily resolved the Trust's concerns by redesignating as the beneficiary 1Day Sooner Inc. ("1Day Sooner"), an EA charity that is not currently litigating with the Trust. The Trust refused.[8]

16. In refusing to pay the FDU Claim to 1Day Sooner, Trust counsel asserted that the FDU Order "does not permit" Ross to substitute another charity for the one he originally designated. *See* Simon Decl., Ex. E. Of course, the FDU Order also does not forbid Ross from designating another charity, especially since the FDU Claim has not even been submitted to the Trust's claims administrator, let alone paid.[9] The Trust in bad faith rejected Ross's good-faith attempt to avoid multiplying these proceedings. Instead, the Trust insists on wasting judicial resources based on a silence in the FDU Order while at the same time defaulting under the FDU Order by unilaterally failing to comply with it. This bad faith insistence on litigating is sanctionable.

17. The Trust and its counsel should also be sanctioned for asserting claims unsupported by law and factual contentions that lack evidentiary support. There is no legal basis for suing Ross in the Amended Complaint: He did not receive an avoidable transfer; he did not direct the prepetition transfers to the Manifold entities; he did not engage in prepetition inequitable conduct;

---

[8] *See* August 14-15, 2025 correspondence redesignating the FDU Bonus recipient from Manifold for Charity and the Trust's refusal. A true copy is annexed to the Simon Decl. as **Exhibit E**.

[9] Trust counsel refuseed to confirm that the claims administrator was directed to pay Manifold for Charity, strongly implying that they have not done so, in violation of the FDU Order. *See* Simon Decl., Ex. E.

and his designation of Manifold for Charity complied with his obligations under the Bonus Memo and the FDU Order. Ross did nothing wrong.

18. Additionally, numerous allegations in the Amended Complaint and Motion for Reconsideration are materially false and misleading – squarely implicating Brandolini's Law.[10]

19. The Trust asserts, for example, that Ross did not disclose that he is a Manifold for Charity board member, implying that he had an obligation to disclose this and he concealed the truth. *See* Amended Complaint at ¶ 47. Both are wrong. Neither the Bonus Memo nor the FDU Order prohibited Ross from designating an EA charity for which he serves as a director. It is commonplace for charities' board members to be among their organizations' largest donors and staunchest supporters; Ross has donated over $140,000 of his own money to Manifold for Charity. In any event, Ross did not conceal this fact. The Trust admits this by citing a post on Ross's own public website! *See* Amended Complaint, ¶ 47 n. 12. Likewise false is the Trust's claim that former FTX employee Nishad Singh "now works at Manifold for Charity." Motion for Reconsideration, ¶ 46. The Trust claims that Manifold for Charity directors are entitled to be paid. *See id.* at ¶ 47. Yes, but none of them ever have been paid. Refuting each and every instance of the Trust's mudslinging attacks on EA, Ross, and Manifold for Charity[11] is beside the point.

20. The point is best made in response to the overriding theme of the Trust's pleadings: "The donations to Effective Altruist and other charities were part of an integrated plan by the FTX Insiders to siphon money from FTX Group creditors and enhance their own personal and professional reputations at creditors' expense." Amended Complaint, ¶ 36. Here is what the Trust elides: *The knowledge that the Debtors had donated customer funds to EA charities and sued for*

---

[10] "The amount of energy needed to refute [a false and misleading claim] is an order of magnitude bigger than that needed to produce it." Wikipedia, Brandolini's Law, available at https://en.wikipedia.org/wiki/Brandolini%27s_law (last accessed August 19, 2025).
[11] *See generally* accompanying Declaration of Ross Rheingans-Yoo ("Ross Decl.").

*their return was known to the Debtors at all times.* Ross's obligation to select any EA charity as the FDU Claim's beneficiary was known to the Debtors at all times. This is not newly discovered evidence that merits reconsideration.

21. Nor can the Trust argue that Ross's employment and the FDU Bonus were fraudulent. The Trust asserted in the objection to claim sequence that Ross's Employment Agreement was a valid, enforceable, fully integrated contract, so Ross could not offer evidence of negotiations leading up to issuance of the Bonus Memo or execution of Employment Agreement: "[T]he Ross terms, as they're referred, we do not believe those are … admissible." Hearing Tr. at 42:13-15. Having argued that evidence of Ross's pre-contractual negotiations are inadmissible, the Trust cannot now offer evidence on why Bankman-Fried issued the Bonus Memo with the requirement that Ross select any EA-driven cause to receive it.

22. Finally, the Trust's request for alternative relief (*see* Motion for Reconsideration at ¶¶ 50-52) is also sanctionable. The Court already held that the FDU Claim is an allowable compensation claim, part of "the discretionary bonus approved by the company." Hearing Tr., 46:4-7. It is not, as the Trust baldly claims, a "fraudulent conveyance." *Id.*, ¶ 51.

23. More importantly, Ross has an unconditional contractual right to designate "*any*" EA cause to receive the FDU Claim. Bonus Memo at p. 2 (emphasis added). Neither the Bonus Memo nor the FDU Order precludes Ross from changing the beneficiary before the claim is paid.

24. In filing the Motion for Reconsideration and Amended Complaint, the Trust indicated that it believes Ross designating Manifold for Chairty is somehow fraudulent. Ross disagreed with that interpretation but nevertheless resolved the Trust's concern by voluntarily redesignating the beneficiary. *See* Simon Decl., Ex. E. Ross's prompt change to another EA charity, one that is not litigating with the Trust, completely undermines the Trust's theory of wrongdoing.

25. The Trust's objection to paying Manifold for Charity is moot because Ross designated 1Day Sooner, another EA cause, as the FDU Claim's recipient. Yet the Trust insists on multiplying these proceedings, harassing Ross, causing unnecessary delay, needlessly increasing litigation costs, and depleting judicial resources. Sanctions are warranted.

## JURISDICTION AND VENUE

26. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Ross consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL HISTORY

27. The Court is respectfully referred to the Stipulated Facts (Simon Decl. Ex. B) for an undisputed recitation of Ross's employment history with the Debtors.

28. The Debtors filed their chapter 11 cases on November 11, 2022. The general non-customer bar date was set as June 30, 2023. Ross timely filed his proof of claim, inclusive of the FDU Claim, on or about June 29, 2023.

29. On October 30, 2023, the Debtors filed their Claim Objection. The Claim Objection asserted two grounds for disallowance of the FDU Claim. First, Ross did not identify the FDU

Claim's beneficiary prior to the Petition Date. *See* Claim Objection at ¶ 28. Second, Ross lacked standing to assert the FDU Claim. *See id.* at ¶ 29. The Claim Objection recognized that the FDU Claim, if paid, would go "to the Effective Altruist cause that Rheingans-Yoo designated." *Id.* The Claim Objection did not seek disallowance of the FDU Claim on the ground that allowance would require the Debtors to make a charitable donation to an EA cause.

30. On February 12, 2025, Ross filed his response to the Claim Objection [D.I. 29572, "Ross Response"]. The Ross Response explained that the FDU Claim was part of Ross's earned employment compensation and the Bonus Memo did not obligate Ross to designate a beneficiary between September 2022, when the Debtors awarded the FDU Bonus, and the November 2022 petition date.

31. On June 12, 2025, the Trust filed its reply on the Claim Objection [D.I. 30712, "Trust Reply"]. The Trust Reply repeated the arguments made in the Claim Objection, namely that Ross lacked standing to assert the FDU Claim since he would not be the ultimate recipient of the FDUs, and Ross's claim was unenforceable because he never accepted the bonus by designating the beneficiary before the petition date.[12]

32. On June 25, 2025, the Court held oral argument on the Claim Objection. On the record of the hearing, the Court determined that Ross had standing to assert the FDU Claim given his personal interest in the FDU Bonus. *See* Hearing Tr. at 46:2-4. The Court also determined that the Debtors awarded Ross a prepetition discretionary bonus which required the Debtors to make a $650,000 donation to an EA cause, and that Ross timely accepted the bonus by filing a proof of claim pursuant to Judge Dorsey's bar date order. *Id.* at 46:4-14.

[12] The Trust Reply also insisted that Final Ross Terms – the Google Document expressing the terms of Ross's employment that was negotiated between Ross and Sam Bankman-Fried – was inadmissible to show the parties' intent because Ross's form Employment Agreement was a fully integrated contract.

33. On July 2, 2025, Ross's counsel timely emailed Trust counsel to advise that Ross had selected Manifold for Charity. *See* Simon Decl., Ex. D. The email advised Trust counsel to "[l]et me know if you need any additional information to identify the Designated Beneficiary…" *Id.*

34. On July 9, 2025, the Court entered the FDU Order. The FDU Order directed the Trust to "make distributions in accordance with the terms of the Plan on account of the Allowed FDU Claim to the Effective Altruism-driven charity identified by counsel for Rheingans-Yoo in writing to counsel for the Trust." FDU Order, ¶ 3. The FDU Order further directed Kroll Restructuring Administration LLC, the Trust's claims and administrative agent, to "update the claims register maintained in these Chapter 11 Cases to reflect the relief granted in this Order." *Id.*, ¶ 4.

35. On July 23, 2025, Trust counsel filed the Amended Complaint and Motion for Reconsideration. Trust counsel never reached out to Ross's counsel to discuss Ross's July 2 selection of Manifold for Charity before precipitously filing these pleadings.

36. On August 14, 2025, Ross's counsel emailed Trust counsel to advise that Ross believed the Amended Complaint and Motion for Reconsideration lacked merit, but in an effort to "eliminate the parties' ongoing litigation costs and conserve judicial resources," Ross was changing his designation from Manifold for Charity to 1Day Sooner. *See* Simon Decl. Ex. E. The August 14, 2025 email also advised Trust counsel that upon information and belief, the Trust had not complied with the FDU Order by directing its claims administrator to pay the FDU Claim to Manifold for Charity. *See id.* And Ross's counsel also advised Trust counsel that Ross was willing to answer written questions about 1Day Sooner "to prospectively alleviate any concerns that the debtors may have about its philanthropy or relationship to Ross." *Id.*

37. On August 15, 2025, the Debtors responded that the FDU Order "does not permit Rheingans-Yoo to substitute another charity for the one he originally designated." Of course, the

FDU Order also does not prohibit a substitution, especially where the FDU Bonus has not been paid or even conveyed to the claims administrator in compliance with the FDU Order – a fair presumption given Trust counsel's refusal to address Ross's counsel's concern that there had been no such direction.

## NOTICE

38. On August 21, 2025, Ross's counsel served Trust counsel with notice of Ross's intent to bring this Motion. See Simon Decl. at ¶ 8; Ex. F. The Trust and its counsel declined to withdraw the offending pleadings. Accordingly, the Trust and its counsel should be sanctioned under Bankruptcy Rule 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105.

## ARGUMENT

### I. Legal Standards for Imposing Sanctions

39. Rule 9011 of the Federal Rules of Bankruptcy Procedure, the equivalent of Rule 11 of the Federal Rules of Civil Procedure,[13] provides that an attorney or unrepresented party filing a petition, pleading, written motion, or other paper certifies that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if

[13] Bankruptcy Rule 9011 tracks Federal Rule 11 and case law interpreting Federal Rule 11 is applicable to Bankruptcy Rule 9011. *See* Landon v. Hunt, 977 F.2d 829, 833 n.3 (3d Cir. 1992).

> specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

40. Rule 11 requires reasonableness, which has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)). "The imposition of Rule 11 sanctions ... requires only a showing of objectively unreasonable conduct." *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995).

41. The Court may also award sanctions pursuant to 28 U.S.C. § 1927. Section 1927 sanctions can only be imposed against an attorney and not the client. A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that an attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

42. The test is therefore four parts, namely, a party must have "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceeding; and (4) doing so in bad faith or by intentional misconduct." *Claybrook v. AutoZone Tex. L.P. (In re Am. Remanufacturers, Inc.)*, 453 B.R. 235, 237-38 (Bankr.D.Del. 2011).

43. In addition to the authority cited above, it is well recognized that a "bankruptcy court has jurisdiction under Bankruptcy Rule 9011 to assess attorney's fees as sanctions against attorneys who fail to comply with the rule." *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (quoting *In re Arkansas Communities, Inc.*, 827 F.2d 1219, 1222 (8th Cir. 1987)).

44. Bankruptcy courts also have authority under section 105 of the Bankruptcy Code to sanction counsel and litigants for acting in bad faith, vexatiously, wantonly, or for oppressive

reasons. *Id*. ("Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel"); *In re Bryson*, 131 F.3d 601, 603 (7th Cir. 1997) (holding that the bankruptcy court has authority under § 105(a) to sanction an attorney for filing a frivolous motion even "if for any reason the misconduct did not fall under Rule 9011").

**II. The Motion for Reconsideration is sanctionable.**

a. There is no new evidence presented on the Motion for Reconsideration.

45. Reconsideration may be warranted only upon "the availability of new evidence that was not available" previously. *In re Maxus Energy Corporation*, 571 B.R. 650, 654 (Bankr.D.Del. 2017). "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985). "[A] party cannot show due diligence if the newly discovered evidence was available to that party during the proceeding." *In re Syntax-Brillan Corp.*, No. 08-11407 (BLS), 2013 WL 153831 at *6 (Bankr.D.Del. Jan. 15, 2013).

46. The Motion for Reconsideration is supported by the Declaration of Matthew B. McGuire ("McGuire Decl.") and its 24 exhibits. The Motion for Reconsideration is trying to be a referendum on Effective Altruism. The Trust says that Ross may not change the beneficiary because EA is Bad.

47. A review of the exhibits makes this clear. Exhibit 1 to the McGuire Decl. is a March 2023 article titled "Effective Altruist Leaders Were Repeatedly Warned About Sam Bankman-Fried Years Before FTX Collapsed." Exhibit 4 is Bankman-Fried's LinkedIn page that has not been updated since the petition date. The LinkedIn page shows that Bankman-Fried's first job after leaving Jane Street Capital was with the Centre for Effective Altruism. Exhibit 1 says the initial

funding for Alameda Research came from two EA donors. Paragraph 10 of the Motion for Reconsideration recites that in 2021, Bankman-Fried hired Nick Beckstead, an effective altruist, to work at FTX Foundation, and that the founder of effective altruism was an advisor. Paragraph 11 says that Ross self-identifies as an effective altruist.

48. In support of the Motion for Reconsideration, the Trust filed "only [its] own [declaration] containing evidence that was available prior to the [Claim Objection]." *Harsco*, 779 F.2d at 906. The Trust's own declaration reveals that the purported evidence that EA is Bad is not newly discovered. If the Trust sought to disallow Ross's claim because of "material connections" between effective altruism and "key individuals connected to these Chapter 11 cases" (Amended Complaint, ¶¶ 47-49) and "other connections to these Chapter 11 cases" (Motion for Reconsideration, ¶ 40), and "the larger context of these Chapter 11 Cases" (*id.*, ¶ 4), these connections and larger context were known to the Debtors prior to October 30, 2023, the date of the Claim Objection. It is too late for the Trust to raise them now.

49. Of course, the Trust will argue that Ross's selection of Manifold for Charity is itself the newly discovered evidence: If the Trust had known before filing its Claim Objection that Ross would select Manifold for Charity, it would have objected on these grounds before. "But more than a showing of the potential significance of the new evidence is necessary" to obtain relief under Rule 59(b). *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967).

50. If the Trust had objected to Manifold for Charity during the Claim Objection, Ross would have changed the beneficiary then.[14] The Court would likely have still found that Ross earned the FDU Bonus as employment compensation and he timely accepted it by filing a proof

[14] Ross would have changed the beneficiary not because Manifold is unworthy but to eliminate the Trust's concern that donating to Manifund is problematic because Manifold is a defendant in an adversary proceeding. *See* Ross Decl. at ¶ 6.

of claim. The only difference is that the payment would have been directed to 1Day Sooner instead of Manifold for Charity. In other words, there is no new evidence demonstrating why Ross cannot select a new EA cause, since the FDU Bonus has not been paid. Reargument cannot be granted on this ground. The Trust's insistence that it can is sanctionable.

b. There is no manifest injustice presented by a change in beneficiary.

51. The standard for reconsideration under Rule 59(e) is an exceptionally high one. *See* *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) ("The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case"). "[F]inality of judgment and conservation of judicial resources dictate that Rule 59(e) be sparingly granted." *In re TE Holdcorp, LLC*, No. 20-11442 (MFW), 2021 WL 1961911 at *2 (Bankr.D.Del. May 14, 2021).

52. The Motion for Reconsideration is premised upon the Trust's unilateral and baseless determination that Ross "cannot be trusted" to redesignate the beneficiary of the FDU Bonus before the claim is paid. *Id.*, ¶ 48. Trust counsel's response to Ross's redesignation, meanwhile, was that the FDU Order "does not permit" Ross to do so. Simon Decl. Ex. E.

53. The FDU Order directs the Trust to make distributions in accordance with the Plan to the EA charity identified by Ross's counsel in writing to Trust counsel. FDU Order at ¶ 3. The FDU Order does not prohibit Ross from selecting a different EA charity before the FDU Claim is paid. The Bonus Memo likewise does not prohibit Ross from identifying a different EA charity. Indeed, it allows Ross to designate *any* EA charity.

54. Just as the Court held at June 25, 2025 hearing on the Claim Objection that Ross's acceptance of the FDU Bonus occurred when he filed a proof of claim within a reasonable time, so was Ross's redesignation of the beneficiary to 1Day Sooner made within a reasonable time of

the Trust objecting to Manifold for Charity. The redesignation moots the Motion for Reconsideration. It should have been withdrawn upon the redesignation.

55. Instead, the Trust asserts that Ross's designation of Manifold for Charity "raises such serious concerns" that the Trust is unwilling to even consider changing the beneficiary. Motion for Reconsideration at ¶ 48. The Trust claims Ross's selection of Manifold for Charity created a "manifest injustice" and he should not be "given … an opportunity" to redesignate. *Id.* What are the supposedly "serious concerns" the Trust has cited?

56. The Trust is purportedly concerned that Manifold Markets, Inc. created a charitable affiliate, Manifold for Charity, and that Austin Chen, now the CEO of Manifold for Charity, was one of Manifold Market Inc.'s co-founders. *See* Motion for Reconsideration at ¶ 38. Aside from unspoken innuendo, there is no reason for concern expressed on this point.

57. The Trust is purportedly concerned that Manifold for Charity and Manifold Markets, Inc. jointly host an annual conference that Ross has attended. *See* Motion for Reconsideration at ¶ 38. The Trust admits that Ross serves on the Board of Directors of Manifold for Charity. He has donated over $140,000 of his own money to this charitable cause. *See* Ross Decl. at ¶ 3. There is nothing concerning about Ross attending the charity's conference.

58. The Trust is purportedly concerned that as a director of Manifold for Charity, Ross "may be" eligible for compensation for his service. Motion for Reconsideration at ¶ 39. If the Trust had asked or investigated, it would have learned that Manifold for Charity has never paid its directors for their service. *See* Ross Decl. at ¶ 4. But even if the charity begins paying its directors, that is not violative of Ross's employment agreement nor the Bonus Memo. Neither document required Ross to designate an EA charity where he was not a director or he would not be paid. Indeed, Final Ross Terms – the document negotiated between Ross and Bankman-Fried outlining

the terms of Ross's employment (*see* Ex. G to the Stipulated Facts) – provides at ¶ 2(b)(3) that the FDUs could be directed "to a Ross-controlled personal foundation." Since Ross terms contemplated Ross being able to control the entire beneficiary of the FDU claim, there is nothing concerning about him merely serving as an unpaid, independent member of Manifold for Charity's board of directors.

59. The Trust is purportedly concerned that Nishad Singh, who participated in the underlying FTX fraud, "now works at Manifold for Charity." Motion for Reconsideration, ¶ 39. If the Trust had asked or investigated, it would have learned that this claim is false. Mr. Singh is not currently working at Manifold for Charity, nor was he doing so on July 23, 2025, when the Trust filed the Motion for Reconsideration. *See* Ross Decl. at ¶ 5. There is nothing concerning about a falsity.

60.  The Trust is purportedly concerned that Manifold for Charity once considered adding Gabe Bankman-Fried to its board of directors. *See* Motion for Reconsideration at ¶ 39. There is nothing concerning about *not* adding someone to a board of directors.

61. Finally, the Trust is purportedly concerned about the Trust's ongoing litigation with Manifold for Charity. *See* Motion for Reconsideration at ¶ 40. Given the Trust's feeble attempts to describe their concern, it is evident that the Trust's concern about Ross changing the beneficiary is entirely circular. The Trust has no legitimate concern about Ross's choice other than to harass Ross in multiple proceedings and relitigate the Court overruling the Claim Objection.

62. There is no "manifest injustice" in allowing Ross to change the beneficiary. "[M]anifest injustice" requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 218 (D.C. Cir. 2018). Given the governing law of this case – the Court allowed the FDU Claim

and directed its payment – the Trust is not prejudiced by Ross changing the beneficiary. The FDU Claim is still being paid under the Plan; no creditors are even potentially harmed by the change.

63. Nor, it should go without saying, do any of the Trust's purported concerns require disallowance of an employment claim that the Court already allowed as valid and enforceable.

64. Thus, the Trust's refusal to change the beneficiary to 1Day Sooner is frivolous and objectively unreasonable. It multiplies the proceedings, increases litigation costs and delays the resolution of this matter. The Trust's refusal to pay the FDU Bonus to 1Day Sooner is sanctionable.

**III. The Amended Complaint is sanctionable.**

a. The fraudulent transfer causes of action against Ross are frivolous.

65. The first four causes of action against Ross in the Amended Complaint assert claims under sections 548(a) and 544(b) of the Bankruptcy Code. *See* Amended Complaint at ¶¶ 51-79. It is black-letter law that an essential element of a claim under these statutes is a transfer that took place prior to the petition date. "[T]he fraudulent transfer provisions of section 548(a) and the 'strong arm' provisions of provisions of section 544(b) likewise require a 'transfer' that occurred before the commencement of the debtor's case." *In re American Remanufacturers, Inc.*, Adversary No. 07–51750(PJW), 2008 WL 2909871 at *3 (Bankr.D.Del. Jul. 25, 2008).

66. The Trust's allegation against Ross is that he "designated Manifold for Charity as the beneficiary of the FDU Claim." Amended Complaint at ¶¶ 47-48. Undeniably, Ross's designation was made on July 2, 2025. *See* Simon Decl., Ex. D. For the avoidance of doubt, July 2, 2025 was not only after the November 2022 petition date, it was also after the October 8, 2024 plan confirmation date, and it was also after the June 25, 2025 hearing at which the Court allowed Ross's FDU Claim. The allegation that Ross's FDU Claim was a prepetition transfer is frivolous.

67. Another essential element of a claim under § 548(a) and 544(b) is that the defendant

received the alleged fraudulent transfer. "A bankruptcy trustee may recover property transferred from the debtor to an initial transferee or any immediate or mediate transferee to the extent that a transfer could be avoided under §§ 544 and 548, among others." Miller v. Mott, No. 23-50004, 2023 WL 6467368 at *6 (Bankr.D.Del. Oct. 4, 2023). The same is true under Delaware law. "The only proper defendants in a fraudulent conveyance action under federal bankruptcy law or Delaware law are the transferor and any transferees." Trenwick Am. Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch. 2006) *aff'd*, 931 A.2d 438 (Del. 2007).

68. In the Amended Complaint, the Trust alleges that five transfers are avoidable. Four of the five transfers were to Manifold Markets. The fifth was to FTX Philanthropy, Inc. *See* Amended Complaint at ¶ 4. None of the alleged transfers were to Ross, either as the initial or subsequent transferee. None of the alleged transfers is the FDU Bonus. It is self-evident that in making the designation in compliance with the FDU Order, Ross did not receive a transfer. Indeed, the Trust acknowledged that upon allowance of the FDU Claim, the $650,000 will go "to the Effective Altruist cause that Rheingans-Yoo designated" – not to Ross himself. Claim Objection at ¶¶ 28-29. The allegation that Ross received the FDU Bonus himself is frivolous.

69. The Trust alleges that "multiple badges of fraud … permeate … the FDU Obligation." Amended Complaint, ¶ 50. Objectively false. The Court already determined the Trust's obligation to pay the FDU Claim. By holding that the FDU Bonus was awarded to Ross as duly awarded compensation, the Court found that the Trust's obligation to pay an EA charity is not fraudulent. *See* Hearing Tr. at 46:2-17.

70. To the extent the Trust argues that "FDU Obligation" is a defined term relating to Ross's designation of Manifold for Charity, and that this particular obligation is fraudulent, the Court is respectfully referred to the foregoing sections that show how the Trust's purported

concerns are actually concern trolling. If the Trust had legitimate concerns about Manifold for Charity, Ross addressed them by changing the EA cause to 1Day Sooner. There never was a fraud. Even if the Trust subjectively believed there was a fraud, Ross resolved the issue by redesignating the beneficiary. Ross's prompt redesignation to an EA cause that is not litigating with the Trust completely undermines the Trust's fraud allegations. The Trust's continued prosecution of the Amended Complaint is sanctionable.

b. The 11 U.S.C. §§ 550 and 502 causes of action against Ross are frivolous.

71. Because the fraudulent transfer causes of action are subject to dismissal, so are the recovery causes of action under Bankruptcy Code sections 550 and 502. *See In re Daily Bread Winddown, LLC*, Adv. No. 22-50334 (JTD) at *8 (Bankr.D.Del. Nov. 1, 2022) ("Section 550 is not a separate basis."); *In re FBI Wind Down, Inc.*, 614 B.R. 460 (Bankr.D.Del. 2020) (adjudication under section 548 is a "condition precedent" to use of section 550); *In re DHP Holdings II Corp.*, 435 B.R. 264, 273 (Bankr.D.Del. 2010) (section 502 "is not available" absent prerequisite liability requiring turnover of property).

72. Because the Trust cannot allege a fraudulent transfer claim against Ross, its causes of action under sections 502 and 550 are sanctionable.

c. The claim disallowance cause of action against Ross is frivolous.

73. The only basis for the Trust's cause of action for disallowance under § 502 of the Bankruptcy Code are the purported avoidance claims under §§ 544 and 548. *See* Amended Complaint at ¶ 85. As discussed above, those causes of action are bereft of essential elements and must be dismissed as to Ross. Therefore, there is no basis for disallowance of Ross's FDU Claim.

d. The equitable subordination cause of action against Ross is frivolous.

74. The Trust's seventh cause of action is not a model of clarity, but it seems to allege that

Ross's FDU Claim should be equitably subordinated because Ross, supposedly as opposed to "innocent creditors," took part in "the illegal and fraudulent misappropriation of customer funds." Amended Complaint, ¶ 88. This allegation is conclusory and not entitled to a presumption of truth. The truth is that the Trust cannot state a claim for equitable subordination.

75. There are three required elements of an equitable subordination claim under section 510(c) of the Bankruptcy Code: (1) "[t]he claimant must have engaged in some type of inequitable conduct;" (2) "[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;" and (3) "[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." *In re Winstar Communications, Inc.*, 554 F.3d 382, 411 (3d Cir. 2009). Equitable subordination is a "drastic" and "unusual" remedy that should only be applied in limited circumstances. *In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr.D.Del. 2022). "[T]he most important factor in determining if a claimant has engaged in inequitable conduct for the purposes of equitable subordination is whether the claimant was an insider or outsider in relation to the debtor at the time of the act." *Off. Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 79 (Bankr. D. Del. 2010).

76. The Trust admits that Ross was not an insider of the Debtors. When the Trust defines "FTX Insiders" in the Amended Complaint, the list is "Bankman-Fried, Singh, Wang, and Ellison," but not Ross. *Id.* at ¶ 15. Because Ross is not an insider, then under this Court's ruling in *United States v. State St. Bank & Tr. Co.*, 520 B.R. 29, 87 (Bankr.D.Del. 2014), "the circumstances supporting [an equitable subordination] claim are few and far between." The facts here do not come close to supporting an equitable subordination claim against Ross.

77. Where, as here, a non-insider creditor exercises contractual rights, it does not engage

in inequitable conduct. *See* Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims, 323 F.3d 228, 235 (3d Cir. 2003) ("the pursuit of one's legal rights may not be grounds for equitable subordination."). The Court already allowed Ross's FDU Claim because his Employment Agreement gave the Debtors discretion to award him a bonus and then the Debtors awarded him the FDU Bonus. *See* Hearing Tr. at 46:4-7 ("I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company."). Thus, Ross's pursuit of his FDU Bonus is contractual, not inequitable.

78. Nor is it inequitable for Ross to have selected an EA cause to receive the FDU Bonus. Doing so was required by the terms of the Bonus Memo: "you get another $650k of directed grants to *any* EA-driven cause if you want" *See* Simon Decl. Ex. C at 2 (emphasis added). Ross selecting an EA cause was also required by the FDU Order allowing Ross's $650,000 claim and distributing it "to the Effective-Altruism-driven charity identified by counsel for Rheingans-Yoo…" *Id.* at 2. Ross complied with his Employment Agreement, the Bonus Memo, and the FDU Order. There is no inequitable conduct.

79. There is also no injury to creditors[15] or unfair advantage to Ross. The Court allowed the FDU Claim, requiring the Trust to distribute $650,000 to an EA cause. *See Zohar III*, 639 B.R. at 107-108 n. 222 ("alleged inequitable post-petition conduct … is unsupported" where Court approved it. "Accordingly, there was no harm."). The Trust refuses to accept that its Claim Objection was overruled.

80. The Trust's belief that EA is Bad does not alter the undeniable fact that the Debtors

[15] Given the Debtors' approved plan of reorganization paying all general unsecured creditors 100 cents on the dollar plus interest, it seems impossible for creditors to be injured by the Trust paying the FDU Claim. The Motion for Reconsideration does not describe how they could.

agreed, by issuing the Bonus Memo, to donate these funds to an EA cause. The Court allowed the FDU Claim. Ross redesignated the beneficiary to 1Day Sooner to avoid this litigation, but the Trust refused even though the Trust has not paid the claim. Paying the FDU Bonus to 1Day Sooner will not harm creditors because the Court held that Ross's FDU Bonus is allowable.

81. The Trust's assertion that payment of an allowed claim in accordance with contractual terms is inequitable or harmful to creditors is frivolous and sanctionable.

**CONCLUSION**

The Trust simply refuses to accept the Court's determination that Ross earned the FDU Bonus: "[T]he FDU Claim never should have been allowed in the first place." Motion for Reconsideration, ¶ 46. The Trust disregards the Court's holding that the FDU Bonus is part of Ross's compensation, he timely accepted the bonus by filing a proof of claim, and he can direct the Trust to donate the FDU Bonus to any EA cause.

The Trust impliedly argues that if it had known Ross would designate Manifold for Charity, it would have argued against allowance of the FDU Claim and payment to that EA cause during the Claim Objection sequence. If so, Ross would have done the same thing he did in response to the Trust's "concerns" about Manifold for Charity: change the EA beneficiary.

Ross respectfully submits that had all this happened prior to the June 25, 2025 hearing, the Court would still have allowed the FDU Claim as Ross's compensation claim. The Court would just have entered the FDU Order directing the Trust to pay 1Day Sooner as the beneficiary. The Trust's ongoing refusal to change the beneficiary is harassment. It is causing unnecessary delay. It is multiplying these proceedings and needlessly increasing litigation costs.

The Debtors employed Ross and awarded him a bonus. But now the Trust fallaciously conflates Ross's employment compensation with FTX's use of customer funds to commit fraud.

Contrary to the Trust's gaslighting, the FDU Bonus is no longer "FTX Group assets" (Amended Complaint, ¶ 48) because the Court allowed the FDU Claim. Those funds must be donated to *any* EA cause that Ross designates. He has designated 1Day Sooner. The Court should impose sanctions and order the Trust's vindictive campaign against Ross to stop.

Dated:  September 26, 2025
        Wilmington, DE

                        */s/ Michael J. Joyce*
                        Michael J. Joyce (No. 4563)
                        **JOYCE, LLC**
                        1225 King Street, Suite 800
                        Wilmington, DE 19801
                        Telephone: (302) 388-1944
                        mjoyce@mjlawoffices.com

                        -and-

                        Scott D. Simon (*admitted pro hac vice*)
                        **GOETZ PLATZER LLP**
                        One Penn Plaza, Suite 3100
                        New York, NY 10119
                        Telephone: (212) 695-8100
                        ssimon@goetzplatzer.com