## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |

## MOTION OF OTOY INTERNATIONAL, SEZC
## FOR LEAVE TO AMEND PROOF OF CLAIM

OTOY International SEZC ("OTOY" or "Claimant"), by and through its undersigned counsel, states as follows in support of this motion (the "Motion"):

### Relief Requested

1.     OTOY seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting OTOY leave to amend its timely filed proof of claim [Claim No. 4285] (the "Original POC" or "Claim") against Debtor Alameda Research Ltd. in the above-captioned cases (the "FTX Cases") to assert its defensive right of setoff pursuant to section 553 of title 11 of the United States Code (the "Bankruptcy Code") and applicable non-bankruptcy law or, in the alternative, permitting OTOY to file a late claim asserting a right of setoff based on a showing of excusable neglect. The proposed amended proof of claim (the "Amended POC") is attached as Exhibit 1 to the Proposed Order.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Preliminary Statement**

2.        OTOY is an exempted company with limited liability incorporated in the Cayman Islands. OTOY is the original producer of Render tokens ("RNDR"), which are utility tokens used to pay for rendering projects on a decentralized peer-to-peer network (the "Render Network").[2]

3.        In June and December 2021, OTOY entered into two (2) separate agreements with affiliated Debtor entities of FTX Trading Ltd. ("FTX") involving OTOY's RNDR. The first agreement was a Token Purchase Agreement ("TPA") entered into on June 23, 2021 with Alameda Research Ventures, LLC (n.k.a. as Clifton Bay Investments, LLC) and other unrelated non-Debtor parties under which Alameda Research Ventures, LLC. agreed to the purchase of RNDR at specified prices for a $7.25 million purchase amount.[3] The second agreement was a Market Making Agreement ("MMA") with Alameda Research Ltd. entered into on December 15, 2021 under which OTOY loaned Alameda Research, Ltd. 5,000,000 RNDR[4] relating to market maker services to be provided by Alameda Research, Ltd.

4.        On December 21, 2021 OTOY received the $4,857,500.00 balance of the $7.25 million purchase price under the TPA that was paid by Alameda Research Ltd., not Alameda Research Ventures, LLC.[5] This December 21, 2021 payment by Alameda Research Ltd. triggered

---

[2] For the sake of clarity, OTOY's Ethereum-based RNDR tokens were produced in 2017 and in 2023 superseded by the Solana-based "Render" token, minted by The Render Network Foundation, the community-based governance body currently responsible for the management of the Render Network. Both RNDR and Render tokens are in the token ecosystem today and exchangeable on a 1:1 ratio. This Motion hereinafter will use the name RNDR to refer to the tokens.

[3] The TPA was executed by Samuel Bankman-Fried on behalf of Alameda Research Ventures, LLC, however, OTOY believes that Alameda Research Ltd. substantially if not fully acted as the Purchaser in the transaction.

[4] For ease of reference, this Motion hereinafter uses million rather than the number to refer the quantity of RNDR.

[5] The December 21, 2021 payment of Alameda Research, Ltd to OTOY for the RNDR under the TPA was six (6) days after OTOY and Alameda Research, Ltd. entered into the MMA under which OTOY loaned 5 million RNDR to Alameda Research, Ltd. The first installment of the $7.25 million purchase price in the amount of $2,392,500 due upon full execution of the TPA was paid by Prime Trust, LLC, not Alameda Research Ventures, LLC.

OTOY's obligation to distribute 25,223,958 RNDR in equal installments over a 12-month period beginning in January 2022.

5.      At the time of the FTX Debtors bankruptcy filings on November 11 and 14, 2022, the total remaining 4,203,994 RNDR due in November and December 2022 under the TPA had not yet been delivered by OTOY. As Alameda Research Ltd. or the FTX Debtors owed the 5 million RNDR loaned to Alameda Research, Ltd. by OTOY, OTOY did not deliver the remaining approximately 4.2 million RNDR based on its nonbankruptcy right to offset an equal portion of its 5 million RNDR loan that it expected to consensually resolve with the FTX Debtors.

6.      In filing its Original POC on June 29, 2023 relating to its 5 million RNDR loan to the Debtor Alameda Research, Ltd., OTOY incorrectly checked "No" and not "Yes" in the box to question 11 "Is this claim subject to a right of setoff?" OTOY's error was due to a mistaken understanding of "subject to" in the question. OTOY mis-read the question as asking if the Debtors had any offsetting obligations arising from the MMA that OTOY's loan claim was based on. OTOY did not understand question 11 to be asking if OTOY intended to seek to satisfy its 4.2 million RNDR obligation to the Debtors under the TPA through a setoff of a corresponding portion of its 5 million RNDR claim under the MMA.

7.      The Debtors have always known of OTOY's RNDR obligation under the TPA that was discussed in April 2023 and never filed any action against OTOY or requested payment during the entirety of the FTX Cases thru the January 3, 2025 effective date of the confirmed liquidating plan (the "Plan").[6]

---

[6] OTOY's remaining RNDR obligation under the TPA was raised by the Debtors' financial advisors on an April 20, 2023 Microsoft Teams meeting, and an email setting it up, where OTOY raised the Debtors 5 million RNDR obligation under the MMA, but there was no request for payment of OTOY's 4.2 million RNDR obligation at the meeting. The primary focus of the discussion was on the nature of OTOY's Render Network and whether OTOY was interested in buying the RNDR the Debtors had on hand. That was the only discussion between OTOY and the Debtors during their chapter 11 cases until over 6 months after the Effective Date of the Plan.

8.      In June 2025, over 6 months after the Effective Date, the FTX Recovery Trust established under the Plan contacted OTOY and for the first time requested delivery of the RNDR owed by OTOY under the TPA at a Zoom settlement meeting on June 10, 2025. In response, OTOY raised its right to offset a corresponding portion of its 5 million RNDR claim under the MMA. The FTX Recovery Trust did not raise OTOY's failure to check the setoff box in its Claim or the Section 7.10 provision of the Plan requiring creditors to preserve their right of setoff in a timely filed proof of claim to assert setoff under the Plan, but stated that under bankruptcy law OTOY's claim was valued as of the Petition Date and the FTX Recovery Trust was entitled to delivery of the RNDR OTOY owed to the FTX Debtors under the TPA. Counsel for the FTX Recovery Trust indicated that any agreement regarding a setoff would be based on using a Petition Date valuation of OTOY's RNDR claim under the MMA and a current valuation of the RNDR OTOY owed under the TPA.[7] OTOY responded that the position of the FTX Recovery Trust did not seem fair, specifically, using different valuations for the RNDR obligations of OTOY and the FTX Recovery Trust was inequitable. However, as OTOY did not have bankruptcy counsel and was not knowledgeable about bankruptcy law, it was agreed that OTOY would contact and retain bankruptcy counsel to advise it with respect to OTOY's setoff right in the FTX Cases.

9.      Following the June 2025 discussion with the FTX Recovery Trust, OTOY retained bankruptcy counsel and learned for the first time from its bankruptcy counsel of the requirement in § 7.10 of the Plan to preserve setoff in a timely filed proof of claim and its error in not checking the setoff box in its Original POC.

---

[7] In a subsequent meeting on September 22, 2025 counsel for the FTX Recovery Trust indicated that their reference to a setoff of the obligations under the TPA and the MMA at the June 10, 2025 meeting was not to a setoff under Section 553 of the Bankruptcy Code.

10.     Over the past two months, prior to filing this Motion, OTOY diligently pursued a consensual resolution of its setoff right with the FTX Recovery Trust that has not been reached to date. In a September 17, 2025 letter relating to the disputes regarding OTOY's right of setoff and how the respective claims of the FTX Recovery Trust and OTOY are valued, counsel for the FTX Recovery Trust wrote: "*Finally*, to the extent OTOY still wishes to pursue its arguments for setoff, it must first seek a Court order," citing to § 7.10 of the Plan, and also stating that the FTX Recovery Trust would oppose such a request. At a Zoom meeting between OTOY and the FTX Recovery Trust on September 22, 2025 discussing the September 17, 2025 letter, OTOY requested the FTX Recovery Trust's consent to the Amended POC while OTOY and the FTX Recovery Trust continued to seek a consensual resolution, that the Trust declined to do in a subsequent email on September 25, 2025.[8]

11.     As discussed *infra,* OTOY fully satisfies the equitable and "excusable neglect" standards for amendments to proof of claims or filing a new late-filed claim after the bar date, including any "compelling reason" requirement for amendments to claims after plan confirmation. OTOY has acted in good faith in its dealings with the Debtors and has not engaged in any dilatory tactics or delay. The Debtors and the FTX Recovery Trust have always known of the mutual RNDR obligations under the TPA and the MMA and there has been no detrimental reliance by the Debtors or the FTX Recovery Trust on OTOY's error in not checking the setoff box in its Original POC. And the FTX Recovery Trust cannot show any prejudice in now permitting OTOY to correct its error in the Amended POC and assert its right of setoff preserved under section 553 of the Bankruptcy Code. Unsecured creditors with estimated claims totaling close to $11 billion are

---

[8] The substance of the Amended Claim was discussed, but the actual proposed Amended Claim was not provided or requested.

projected to receive recoveries of 100% plus interest under the Debtors' Plan and the Amended POC permitting OTOY to assert a setoff right relating to its approximately 4.2 million RNDR obligation[9] will have no detrimental impact on the FTX judicial proceeding and the liquidation of the Debtors under the Plan.

12.     The equities weigh compellingly in favor of this court authorizing OTOY to file the Amended POC asserting its defensive right of setoff to avoid "the absurdity of making A pay B when B owes A." On the Petition Date, OTOY's RNDR obligation to the Debtors had a value less than $2.3 million, approximately 84% of Alameda Research Ltd.'s obligation to OTOY.  The RNDR held by the Debtors after the filing, that included RNDR above OTOY's 5 million RNDR loan, increased in value the same as the RNDR owed by OTOY to the Debtors. To the extent the FTX Recovery Trust determines to dispute OTOY's assertion of its defensive right of setoff they have not been prejudiced in any way.

## Jurisdiction and Venue

13.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and OTOY confirms its consent pursuant to Rule 9013-1(f) of the local rules of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent

---

[9] The RNDR dollar price has ranged from $3.07 to $4.63 over the past 3 months

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 553 and Rules 7015 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### General Background

16.     On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases").

17.     On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"), which set forth the applicable bar dates for filing non-customer proofs of claim and establishing certain procedures. Pursuant to the Non-Customer Bar Date Order, the Non-Customer Bar Date was June 30, 2023, at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date"). *See* D.I. 1519 ¶ 3.

18.     On June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation, and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan. See* D.I. 19068.

19.     On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), and, on October 8, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order*

*Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Confirmation Order"). On January 3, 2025 (the "Effective Date"), the Plan went effective pursuant to the terms of the Plan and Confirmation Order. *See* D.I. 29127.

20.     Section 7.10 of the Plan provides as follows regarding setoff rights:

> Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the **Debtors or the Plan Administrator, as applicable, the Debtors may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise)**; provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such Claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder. **In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.**

Plan § 7.10 (emphasis added).

21.     The first paragraph of the "Executive Summary" at the beginning of the disclosure statement for the Plan (the "Disclosure Statement") starts with the following description of the Debtors' collapse and their bankruptcy filing:

> The FTX Group collapsed precipitously 17 months ago, during the second week of November 2022. At the time, the FTX Group was a disorganized jumble of over 100 legal entities in dozens of jurisdictions around the world. The founder, Sam Bankman-Fried, ran the global business from The Bahamas with a group of young colleagues, without a functioning board of directors or any senior leader with significant business experience. Using the FTX Group's trading platforms, Mr. Bankman-Fried had solicited

billions of dollars in investments from customers, lenders, business partners, employees and stockholders, then spent the proceeds on bad or illiquid investments, vanity projects, celebrity endorsements, political donations, and lavish personal expenditures, including airplanes and luxury real estate.

*See* Disclosure Statement, D.I. 18976 at 1. This is further discussed in the Background Section of the Disclosure Statement at pp. 29-35. *Id.*

22.    Under section 5.7 of the Plan, except for FTX Bahamas PropCo, the Debtors substantively consolidated into a "Consolidated Wind Down Trust" (the "FTX Recovery Trust") for the purposes of effectuating and implementing the Plan. Section 5.7 further provided that all property of the "Consolidated Debtors" vested in the Consolidated Wind Down Trust and the liquidation of the assets of the Debtors and their non-Debtor subsidiaries under the Plan and the "Plan Supplement" and payment of distributions to the Debtors' creditors would be carried out by the "Wind Down Entities." Plan § 5.7

23.    In the Debtors' Disclosure Statement for the Plan, the Debtors projected an estimated total value of "Net Distributable Proceeds" between $14.7 and $16.5 billion, and projected cash on hand of approximately $12.6 billion on the Effective Date. The Disclosure Statement projected allowed secured and unsecured claims of approximately $11.2 billion in Classes 3A, 3B, 5A, 5B, 6A, 6B, 7A, 7B and 7C, and distributions to creditors in these classes of the entire amount of their allowed claims plus postpetition interest. *See* Disclosure Statement at 22-25.

24.    The Debtors are liquidating under the confirmed Plan through the FTX Recovery Trust established under the Plan. Pursuant to the *Order Establishing the Amount of the Disputed Claims Reserve* entered on December 11, 2024 [D.I. 28689], a "Disputed Claims Reserve" in the amount of $6.533 billion was established in accordance with the Plan and the Confirmation Order.

25.     On May 15, 2025, the FTX Recovery Trust announced a "Second Distribution" on or about May 30, 2025, of over $5 billion to holders of allowed unsecured claims in the Plan's Convenience and Non-Convenience Classes that completed the pre-distribution requirements on May 30, 2025, which would be distributed within one to three business days from May 30, 2025. The announcement stated that in accordance with the waterfall priorities set forth in the Plan, Allowed Class 5A Dotcom Customer Entitlement Claims will receive a 72% distribution, Allowed Class 5B U.S. Customer Entitlement Claims will receive a 54% distribution, Allowed Class 6A General Unsecured Claims and 6B Digital Asset Loan Claims will each receive a 61% distribution, and Allowed Class 7 Convenience Claims will receive a 120% distribution. *See* "FTX Recovery Trust to Distribute More Than $5 Billion to Creditors in Second Distribution on May 30, 2025," PR Newswire (May 15, 2025).

26.     On July 22, 2025, the Court entered an order reducing the Disputed Claim Reserve by $1.93 billion (from $6.533 billion to $4.599 billion). DI 31822.

27.     On July 23, 2025, the FTX Recovery Trust announced a further distribution on or about September 30, 2025, to Classes 5A, 5B, 6A, 6B, 7A and 7B with an August 15, 2025 record date utilizing $1.93 billion in cash the FTX Recovery Trust received authority from the court to release from its disputed claims reserve. Even after the release and distribution of the $1.93 billion, the FTX Recovery Trust reported is still holding approximately $4.6 billion in its disputed claims reserve. *See* "FTX Sets Next Distribution Date Following Disputed Claims Reduction," PR Newswire (July 23, 2025).

### OTOY's Claim Against and Obligation to the Debtors

28.     OTOY is an exempted company with limited liability incorporated in the Cayman Islands. OTOY is the original producer of RNDR, which are utility tokens used to pay for rendering projects on the Render Network, a decentralized peer-to-peer network. RNDR are blockchain-

based tokens designed and intended for users of the Render Network to obtain various rendering and streaming services, proof-of-render work, and related functionality from other Render Network users.

29.    On June 23, 2021, OTOY entered into the TPA with eight parties: (a) Multicoin Concentrated Master Fund, LP; (b) Multicoin Venture Fund II, LP; (c) Multicoin Master Fund; (d) Alameda Research Ventures, LLC; (e) Lingham Family Trust; (f) The Solana Foundation; (g) Metaverse One, LP; and (h) Bill Lee (collectively, the "Purchasers").  The TPA provided that OTOY would sell RNDR to each of the Purchasers subject to the terms and conditions set forth therein.

30.    Under the TPA, Alameda Research Ventures, LLC agreed to a total purchase amount of $7,250,000.00 for 25,223,958  RNDR. Samuel Bankman-Fried executed the TPA on behalf of Alameda Research Ventures, LLC. The $2,392,500 initial installment of the $7,250,000 purchase price due upon the full execution of the TPA was paid by Prime Trust, LLC, not Alameda Research Ventures, LLC.

31.    On December 21, 2021, OTOY received payment of the full remaining purchase balance of Alameda Research Ventures, LLC under the TPA in the amount of $4,857,500.00. This $4,857,500.00 payment was made by Alameda Research Ltd., not Alameda Research Ventures, LLC and triggered an obligation of OTOY to deliver 25,223,958 RNDR in equal installments over a 12-month period beginning in January 2022. Ten monthly distributions were made in January – October 2022.

32.    As of the Petition Date, a total of 4,203,994 RNDR due to Alameda Research Ventures, LLC under the TPA in November and December 2022 installments, had not yet vested and been delivered by OTOY.

33.     On December 15, 2021, OTOY entered into the MMA with Alameda Research Ltd., whereby Alameda Research Ltd. was engaged to provide market-making services for OTOY's RNDR. The MMA also provided for a loan of 5 million RNDR by OTOY to Alameda Research Ltd. that related to the market-making services Alameda Research Ltd. was to provide. The MMA is the basis for OTOY's timely filed proof of claim.

34.     Due to OTOY's dissatisfaction with Alameda Research Ltd.'s reporting on its market making services under the MMA, the MMA was consensually terminated in June 2022. However, Alameda Research Ltd. retained OTOY's 5 million RNDR loan that OTOY had not received repayment of as of the date of the Debtors' chapter 11 filings.

35.     After the Debtors bankruptcy filings, other than notices and documents sent to creditors generally regarding the FTX Cases and Plan, from the November 2022 Petition Dates thru the end of May 2025, the only communications between the Debtors and OTOY relating to OTOY's RNDR obligation to the Debtors under the TPA and the Debtors' obligation to OTOY under the MMA, or anything else relating to the FTX Cases, were in April and May 2023.[10]

36.     On April 20, 2023, OTOY and the Debtors' financial advisor Alvarez & Marsal spoke about OTOY's and the Debtors' obligations under the TPA and the MMA at a meeting requested by Alvarez & Marsal on April 17, 2023.[11] OTOY's remaining RNDR obligation under the TPA was raised by Alvarez & Marsal and OTOY responded that the Debtors had a 5 million RNDR obligation to OTOY under the MMA. No request for OTOY's payment of its RNDR obligation under the TPA was made, and the primary focus of the discussion was thereafter on the

---

[10] On November 24, 2024, OTOY additionally received an email and documents from Alvarez & Marsal regarding the legal entity name change of Alameda Research Ventures, LLC to Clifton Bay Investments LLC in September 2022 requesting confirmation of the change in OTOY's records.

[11] OTOY does not have the information on the specific individuals who were on the April 20, 2023 Microsoft Teams meeting on behalf of the Debtors, that was set up by the Debtors' financial advisor,.in addition to Steven Glustein at Alvarez & Marsal Canada ULC.

nature of OTOY's Render Network and whether OTOY was interested in buying the RNDR the Debtors/Alameda had on hand.

37.      Following the April 20, 2023 meeting, OTOY sent a follow-up email to Alvarez & Marsal stating: "to determine whether we could place an offer – can you please confirm how many RNDR tokens remain in Alameda's possession today." On May 23, 2023 Alvarez & Marsal responded that "[t]he FTX Entities hold approx. 8.8M RNDR tokens in their possession." The Debtors and their professionals made no request for the approximately 4.2 million RNDR owed to the Debtors under the TPA. Thereafter, at no time during the entire chapter 11 proceedings thru Plan confirmation and the January 3, 2025 Effective Date did the Debtors ever request payment of the approximately 4.2 million RNDR OTOY owed under the TPA.[12]

38.      On June 29, 2023, OTOY filed its Original POC against Alameda Research Ltd. in the amount of 5 million RNDR. The Original POC set forth the basis of the Claim as "loaned assets" in connection with the MMA that was electronically filed with the Original POC.

39.      On the proof-of-claim form for the Original POC, OTOY's corporate counsel, who was not sophisticated in bankruptcy, checked "No" to item 11, which states: "Is this claim subject to a right of setoff?"[13] This was done based on a misunderstanding of the question and the use of the "setoff" term in the Debtors' Modified Form 410. OTOY mistakenly read "subject to" as asking if there were offsetting obligations OTOY owed to the Debtors under the MMA. OTOY did not understand question 11 to be asking if OTOY intended to seek to satisfy its 4.2 million RNDR obligation under the TPA through a setoff of a corresponding portion of its 5 million RNDR Claim

---

[12] OTOY believed this was due to the Debtors recognition that OTOY had a right to offset a corresponding portion   of Alameda Research, Ltd.'s 5 million RNDR loan obligation against OTOY's 4.2 million RNDR obligation under the TPA.

[13] OTOY consulted with bankruptcy counsel for the limited purpose of whether there may be a need for OTOY to file a proof of claim with respect to OTOY's 5 million RNDR loan under the MMA and whether the claim value was as of the Petition Date.

under the MMA.[14]  In completing the non-customer proof of claim form, OTOY did not see the explanation of the "setoff" term in the Instructions for Proof of Claim that explained the terms used in the proof of claim form.  If OTOY had understood that the term setoff in the Debtors' proof of claim form related to OTOY's right of setoff to cancel its obligation to the Debtors under the TPA OTOY would have checked the "Yes" box and identified that the setoff related to the approximately 4.2 million RNDR obligation of OTOY under the TPA.[15]

40.    Until a few months ago, OTOY was not aware of the requirement in section 7.10 of the Plan relating to setoff rights of creditors. The Plan and accompanying solicitation materials were not submitted to creditors with Class 6 Digital Asset Loan Claims for voting and objection to the Plan until July 8-10, 2024, over a year after the June 30, 2023 Bar Date deadline. *See Affidavit of Service* (re solicitation materials), D.I. 25841.

41.    In early June 2025, the FTX Recovery Trust established under the Plan contacted OTOY and for the first time requested delivery of the RNDR owed by OTOY under the TPA at a Zoom meeting on June 10, 2025. In response, OTOY raised its right to offset a corresponding portion of its 5 million RNDR claim under the MMA. The FTX Recovery Trust did not raise OTOY's failure to check the setoff box in its Claim or the Section 7.10 provision of the Plan requiring creditors to preserve their right of setoff in a timely filed proof of claim to assert setoff under the Plan, but stated that under bankruptcy law OTOY's claim was valued as of the Petition Date and the FTX Recovery Trust was entitled to delivery of the RNDR OTOY owed to the FTX Debtors under the TPA. Counsel for the FTX Recovery Trust indicated that any agreement

---

[14] At the time of the filing of OTOY's Original POC, the value of the RNDR had risen substantially since the Petition Date and the Debtors would not have conceivably sought to reduce its 5 million RNDR obligation to OTOY thru setoff.

[15] OTOY's exercise of its right of setoff was stayed by Bankruptcy Code section 362; there was also no pending action of the Debtors seeking payment of the OTOY's RNDR obligation under the TPA at the time of the filing of OTOY's Claim.

regarding a setoff would be based on using a Petition Date valuation of OTOY's RNDR claim under the MMA and a current valuation of the RNDR OTOY owed under the TPA. OTOY responded that the position of the FTX Recovery Trust did not seem fair, specifically, using different valuations for the RNDR obligations of OTOY and the FTX Recovery Trust was inequitable. However, as OTOY did not have bankruptcy counsel and was not knowledgeable about bankruptcy law, it was agreed that OTOY would contact and retain bankruptcy counsel to advise it with respect to OTOY's setoff right in the FTX Cases.

42.     Following the June 10, 2025 meeting with counsel for the FTX Recovery Trust regarding the RNDR obligations of OTOY and the Debtors under the TPA and the MMA, OTOY retained bankruptcy counsel relating to its right of setoff and how the crypto obligations of OTOY and the FTX Recovery Trust are valued under bankruptcy law for purposes of setoff under Section 553 of the Bankruptcy Code. At that time, OTOY learned of its error in not checking "Yes" in the setoff box and the § 7.10 Plan requirement to preserve a right of setoff in a proof of claim filed by the applicable Bar Date.

43.     Over the past two months, prior to filing this Motion, OTOY diligently pursued a consensual resolution with the FTX Recovery Trust regarding its right of setoff with respect to its approximately 4.2 million RNDR obligation to the Debtors under the TPA, but to date no agreement has been reached. In a September 17, 2025 letter relating to the disputes regarding OTOY's right of setoff and how the respective claims of the FTX Recovery Trust and OTOY are valued, counsel for the FTX Recovery Trust wrote: "*Finally*, to the extent OTOY still wishes to pursue its arguments for setoff, it must first seek a Court order," citing to § 7.10 of the Plan, and also stating that the FTX Recovery Trust would oppose such a request. OTOY's checking of "No" in the setoff box of its Claim and not preserving its right of setoff in its Claim was not raised. At a

September 22, 2025 Zoom meeting to discuss the letter, OTOY noted its mistake in not checking "Yes" in the setoff box of its Claim and requested the consent of the FTX Recovery Trust to OTOY's filing of an amended proof of claim to correct its error that the FTX Recovery Trust declined to do in a subsequent September 25, 2025 email.

44.     By this Motion, OTOY seeks leave to file the Amended POC to correct its error in not checking the box asserting setoff in its Original POC and preserving its right of setoff.

### Basis for Relief

**I.      OTOY Should Be Permitted to Amend the Original POC**

    **A.      Standards for Post-Bar Date Amendments**

45.     The Third Circuit has held that "Bankruptcy Rule 7015 provides that amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure, which commits the decision to grant or deny leave to amend to the trial court's sound discretion." *Interface Group-Nevada v. Trans World Airlines* (*In re Trans World Airlines)*, 145 F.3d 124, 141 (3d Cir. 1998) (citation omitted).  Federal Rule of Civil Procedure 15 provides that "[t]he Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

46.     Consistent with the text of the rule, courts that have addressed Rule 15 in the context of amendments to proofs of claim have maintained that such amendments should be "liberally allowed." *See In re Orion Ref. Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004) ("[A]mendments to timely proofs of claim are liberally allowed"); *see also In re Edison Bros. Stores,* 2002 Bankr. LEXIS 1228, at *9, 2002 WL 999260 (Bankr. D. Del. May 15, 2002) (permitting a post-bar date claim amendment and stating: "It is a well settled principle that, absent contrary equitable considerations or prejudice to the opposing party, amendments to proofs of claim should be freely permitted.").

47.     Indeed, leave to amend should only be denied upon a "showing by the non-moving party of one of the following grounds for denial:  (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; or (5) futility of the amendment." *Plains Mktg. v. Bank of Am. (In re Semcrude, L.P.)*, 443 B.R. 472, 476 (Bankr. D. Del. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Edison Bros. Stores*, 2002 Bankr. LEXIS 1228, at *10 ("'[A] court will deny leave to amend only if there is undue delay, [the amendment is] motivated by bad faith, or it would be prejudicial to the opposing party.'") (quoting *Hatzel & Buehler Inc. v. Station Plaza Assoc.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993)).

48.     Amendments to proof of claims after the claims bar date are subject to additional scrutiny regarding whether the amendment involves an improper attempt to circumvent the bar date. "The Third Circuit has held that amendments to proofs of claim should be freely allowed, but 'once the deadline to file claims has passed, an amendment to a claim filed post bar-date must be scrutinized to assure that it is not an attempt to file a new claim. Thus, a creditor may not use the claims amendment process to circumvent the claims bar date.'" *In re FTX Trading*, 669 B.R. 298, 305 (Bankr. D. Del. 2025) (quoting *Semcrude,* 443 B.R. at 477).

49.     Additionally, a party seeking to amend its proof of claim after the bar date must obtain the court's permission to do so. *In re FTX Trading,* 2024 Bankr. LEXIS 1512 at * 18-19, 2024 WL 33191668 (Bankr. D. Del Dec. 18, 2024). *See also In re Brown,* 159 B.R. 710, 714 (Bankr. D.N.J. 1993).

50.     "'Courts typically apply a two-pronged inquiry when considering whether to allow post-bar-date amendments to proofs of claim. First, they must determine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable.

Second, assuming the first prong is satisfied, the court must then determine whether it would be equitable to allow the amendment.'" *FTX Trading,* 669 B.R. at 305 (citations omitted; quoting *Acthar Ins. v. Mallinckrodt plc (In re Mallinckrodt plc)*, 2022 U.S. Dist. LEXIS 147924, at *6–7, 2022 WL 3545583 (D. Del. Aug. 18, 2022)).

51.     Some courts, including courts in this Circuit, have applied a higher "compelling reason" or 'compelling circumstances" standard for amendments to proof of claims after plan confirmation in applying the two-pronged equitable test for post-bar date amendments; however as discussed in *FTX Trading*, the Third Circuit has not addressed this issue. *FTX Trading*, 669 B.R at 308 n.32.[16]

### B.     OTOY's Amended POC Satisfies the Two-Prong Inquiry for Amendments to Proof of Claims

#### (i)     The First Prong: Timely Assertion of a Similar Claim or Demand Intending to Hold the Estate Liable

52.     A post-bar date claim amendment satisfies the first prong if it "'(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim.' The focus of this prong is whether the initial proof of claim provided the debtor with reasonable notice of the later claim." *Id.* (quoting *In re Mallinckrodt plc*, 2022 U.S. Dist. LEXIS 147924, at *6–7).

53.     In addressing the satisfaction of the first prong with respect to the right of setoff, the nature of setoff and application of setoff under section 553 of the Code are relevant.

54.     The right of setoff allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "'the absurdity of making A pay B when B owes A."

---

[16] As was the case in the court's consideration of the Three Arrows Capital, Ltd motion for leave to amend its claim in *FTX Trading*, all of the cases in this Circuit that the Debtors cited regarding the "compelling reason" standard for postconfirmation amendments noted in footnote 32 of *FTX Trading*, 669 B.R. at 308, are distinguishable on their facts.

*Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*., 229 U.S. 523, 528 (1913)). "[It] is the time honored right of one who is indebted to another to reduce or balance off such indebtedness by charging against the debt sums which his creditor in that transaction may owe him in some other transaction." Robert H. Skelton, *The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code*, 1977 So Ill. Rev. 120, 186 (1977). The above long-recognized view of the right of setoff was recently set forth by the bankruptcy court in *In re PS On Tap*, 669 B.R. 56, 64-65 (Bankr. C.D. Cal. 2025).

55.    With limited exceptions, section 553(a) of the Bankruptcy Code preserves a creditor's right to set off mutual debts between itself and a debtor that arose prior to the commencement of a debtor's bankruptcy proceeding. 11 U.S.C. § 553(a) *See also Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18 (1995) ("Bankruptcy Code § 553(a) provides that, with certain limited exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."); *Dunn v. Patriarch Ptnrs.* (*In re Zohar III, Corp*.), 650 B.R. 622, 636 (Bankr. D. Del. 2023). However, courts are divided on whether a defensive setoff is substantively different from a "claim," whether a defensive setoff is discharged under section 1141 of the Bankruptcy Code, and whether a chapter 11 plan can require creditors to file a proof of claim preserving setoff or lose their right to assert setoff after plan confirmation. *See, e.g., In re SVB Fin. Grp*., 662 B.R. 53, 66-68 (Bankr. S.D. N.Y. 2024) (A defensive setoff right is substantively different from a "claim" as defined under section 101(5) of the Code and does not affirmatively implicate the Debtor's estate. "'The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff.'") (quoting *Geltzer v. Bloom (In re M. Silverman Laces Inc.),* 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009)); *direct appeal docketed sub nom. SVB Fin. Trust v. FDIC*, No. 25-567 (2d Cir. Mar. 11, 2025).

56.     In *United States v. Continental Airlines (In re Continental Airlines)*, the Third Circuit held "the right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim." 134 F.3d 536, 542 (3d Cir. 1998). However, *Continental Airlines* did not address a chapter 11 plan provision expressly preserving a creditor's right to offset its claim against a claim or cause of action of the debtor if the right of setoff is preserved in its timely filed proof of claim. *See Zohar*, 650 at 637-638 (distinguishing *Continental Airlines* and allowing the creditor to pursue a setoff right postconfirmation where the confirmed plan permitted the creditor to preserve their right of setoff and the creditor checked the setoff box in its timely filed proof of claim and asserted setoff rights preconfirmation).

57.     *Continental Airlines* also did not involve or address application of the standards for amendment of proof of claims after the bar date or whether a creditor that failed to preserve its right of setoff in a timely filed proof of claim as required in the plan may amend its proof of claim after plan confirmation under applicable standards for amending proof of claims after the bar date. *Continental Airlines* involved distinguishable issues, including whether the funds deposited in the bankruptcy court's registry against which the government asserted setoff against were estate property.[17] Thus, it is not controlling or applicable to OTOY's Motion.

58.     In discussing the failure of a creditor to mention its right of setoff in its proof of claim, *Collier* states: "The better view is that the mere failure to mention the right in a timely filed proof of claim will not result in a waiver of the right. Rather the issue of whether a right of setoff has been lost through a waiver should be examined under a more generous standard that takes into

---

[17] The court's opinion in *Zohar* similarly did not involve or address application of the standards for amendment of proof of claims after the bar date or plan confirmation. It also involved other distinguishable circumstances, including the fact that the debtor had filed an adversary action against the creditors prior to plan confirmation that led to the pursuit of the defensive setoff rights of the defendant creditors in the litigation prior to plan confirmation.

account a broader array of factors." 5 *Collier on Bankruptcy* ¶ 553.07 (16th ed. 2025) (footnotes omitted). *See also In re Ben Franklin Hotel Assoc*., 186 F.3d 301 (3d Cir. 1999) (affirming bankruptcy court's decision allowing postconfirmation claim amendment increasing the amount of damages asserted and adding a new theory of recovery).

59.     As set forth below, OTOY contends it meets the applicable standards in this Circuit for amending its Claim under the facts and circumstances alleged in this Motion or, alternatively, the standards for filing a late claim pursuant to Bankruptcy Rule 9006(b)(1).

60.     The Amended POC remains grounded in OTOY's timely filed Claim and simply seeks to correct a defect involving not checking "Yes" in the box for question 11 "Is this claim subject to a right of setoff?," and identifying OTOY's 4.2 million RNDR obligation under the TPA in its Original POC. As detailed above, OTOY mistakenly read "subject to" as asking if there were any potential grounds for the Debtors to reduce OTOY's claim under the MMA, and not whether OTOY intended to pay its approximately 4.2 million RNDR obligation under the TPA through a setoff of a corresponding portion of Alameda Research Ltd.'s 5 million RNDR obligation to OTOY. Notwithstanding this error by OTOY, the Debtors were fully aware of OTOY's RNDR obligation under the TPA as well as the fact that OTOY contended it had a right to offset a corresponding portion of its 5 million RNDR claim against its 4.2 million RNDR obligation under the TPA that had been discussed in April 2023.[18]

61.     The Debtors' Plan expressly permits creditors to assert setoff after confirmation of the Plan, subject to the requirement in section 7.10 that "Holders of a Claim" file a proof of claim by the applicable claims bar date preserving such setoff that this Motion is seeking relief to do

---

[18] The Debtors and their counsel and financial advisors are also well aware that the "FTX Group was a disorganized jumble of over 100 legal entities," that there was massive fraud and commingling of corporate funds by the Debtors, and Alameda Research Ltd.'s funded obligations of other FTX entities with looted funds that is described and set forth in the Disclosure Statement and other filings of the Debtors and the FTX Recovery Trust.

under the standards for post-bar date amendments. OTOY was not aware of this Plan requirement that is at the end of a single paragraph of the Debtors' 90-page Plan and 169-page Disclosure Statement.[19] In addition, the Plan was submitted to creditors for voting and objection over a year after the June 30, 2023 Bar Date deadline and OTOY had filed its Claim. OTOY timely filed its Claim in accordance with the Non-Customer Bar Date Order.

62.     On July 26, 2024, OTOY received a packet from the bankruptcy court, which included a thumb drive, ballot, and cover letter dated June 27, 2024 advising OTOY of the Plan and its opportunity to vote. OTOY reviewed the cover letter as instructed and determined not to vote given the magnitude of the FTX Cases and the relatively tiny size of its Claim compared to other creditors.  After a single discussion with the Debtors' financial advisor in April 2023 about the TPA and the MMA, and a subsequent email from the Debtors financial advisor in May 2023 informing OTOY that the Debtors were holding approximately 8.8 million RNDR, there were no active matters between OTOY and the Debtors between the Petition Date and the Effective Date of the Plan.

63.     The Amended POC sets forth the same right to payment as in the Original POC based on the Debtors' obligation to OTOY under the MMA. The setoff OTOY asserts in the Amended POC relates to a different transaction but does not involve or seek any affirmative recovery against the Debtors' assets. And the setoff relates to OTOY's remaining approximately

---

[19] Other than the last sentence, the paragraphs on Setoff in the Plan and Disclosure Statement addressed the Debtors rights of setoff and the paragraph on Setoff at page 116 of the Disclosure Statement is buried in a subsection F. of section 4 titled "Record Date and Delivery of Distributions." The subsection F. heading gave no indication it addressed a requirement relating to the filing of proof of claims or the assertion of setoff rights even if the table of contents of the Disclosure Statement had been checked for anything pertaining to setoffs. However, OTOY's mistake in checking "No" to the item 11 question "Is this claim subject to setoff" was solely due to its own mistake and not any failure of the Debtors, and OTOY is not seeking to suggest anything to the contrary.

4.2 million RNDR obligation under the TPA at the time of the Debtors' chapter 11 filing that the Debtors knew about and was discussed in April 2023 prior to the filing of the Original Claim.

64.    An allowed claim that is subject to setoff under Bankruptcy Code section 553 is treated as a secured claim under Bankruptcy Code section 506(a)(1) and there is case authority that amending an unsecured claim to a secured claim does not satisfy the first prong of the two-prong inquiry.[20] *See, e.g., Brown,* 159 B.R. at 714-15. However, the cases involving amending unsecured claims to secured claims are distinguishable. OTOY's defensive right of setoff in its Amended POC is not an affirmative claim against the Debtors' estate as is the case with secured claims. *See also Zohar*, 650 B.R at 634-35 (a claim of setoff is more appropriately labeled as an affirmative defense, not a claim under FRCP 12 and must only provide fair notice of the issue involved). Moreover, the Debtors have always known of OTOY's approximately 4.2 million RNDR obligation under the TPA and had reasonable notice of OTOY's setoff right. It was also the Debtors and the FTX Recovery Trust that delayed 2 ½ years, close to eight months after Plan confirmation, before even communicating with OTOY about payment of its obligation to the Debtors under the TPA.[21]

65.    If this Court determines that OTOY'S assertion of a defensive right of setoff is more than the correction of an error and beyond the Original POC based on section 506(a)1) or other grounds, the Amended POC should still be permitted under the equitable test for amendments to claims based on this court's broad equitable powers or, alternatively, under the "excusable neglect"

---

[20] The Third Circuit's opinion in *Continental Airlines* did not involve or address whether the amendment to a timely filed proof of claim to assert setoff is a new claim or the amendment of the claim.

[21] OTOY acknowledges that the Debtors and their professionals were dealing with a multitude of far larger and more pressing issues in their chapter 11 cases, but the fact that the Debtors and subsequently the FTX Recovery Trust did not even raise OTOY's payment of OTOY's 4.2 million RNDR obligation for 2 ½ years, that would trigger the exercise of OTOY's setoff rights under section 553, weighs strongly in favor of OTOY's request to file the Amended POC based on the equities as discussed further in subsection (ii) below.

standard for late-filed claims. Even where a proposed amendment is more than just the correction of an error or involves something beyond the original claim, "'courts will generally apply an equitable test to determine whether to allow the amendment anyway.'" *New York City Hous. Auth. V. G-I Holdings (In re G-I. Holdings*), 514 B.R. 720, 755 (Bankr. D. N.J. 2014) (quoting *Brown*, 159 B.R. at 715), *aff'd*, 654 F. App'x 571 (3d Cir. 2016). *see also Brown,* 159 B.R. at 715 n.4 (citing cases), *FTX Trading*, 699 B.R. at 307 (quoting *Mallinckrodt*, 2002 U.S. Dist. LEXIS 147924 at *7, that the second prong of the inquiry on whether to allow post-bar-date amendments to proofs of claim is an equitable determination that takes into account the excusable neglect factors set forth by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S.380, 395 (1993).

66.    As set forth in *Brown*, "[c]ourts generally consider the following questions under this equitable test: (1) whether the debtors and creditors relied on the earlier proofs of claim or had reason to know that subsequent proof of claims would be filed; (2) whether other creditors would receive a windfall if the court refused to allow the amendment; (3) whether the creditor intentionally or negligently delayed in filing the proof of claim; (4) the justification for the failure of the creditor to seek an extension of the bar date; and (5) whether equity requires consideration of other facts and circumstances." *Brown*, 159 B.R. at 715-16. In reviewing these equitable concerns, courts often place the "'greatest weight on whether any prejudice would result to other parties from allowing the amendments.'" *G-I Holdings*, 514 B.R. at 755 (quoting *Brown,* 159 B.R. at 716); *see also Edison Bros. Stores*, 2022 Bankr. LEXIS 1228, at *10 ("'[A] court will deny leave to amend *only if* there is undue delay, motivated by bad faith, or it would be prejudicial to the opposing party.'") (quoting *Hatzel & Buehler*, 150 B.R. at 562; emphasis added).

### (ii)    The Second Prong: It Would Be Equitable to Allow the Amended POC

67.    With respect to the consideration of the equities prong (whether allowance of the amended claim would be equitable), "[a]mong the factors considered in deciding this issue are undue delay, bad faith, or a dilatory motive." *Mallinckrodt* , 2022 U.S. Dist. LEXIS 147924, at *7); *see also Valley Media Inc. v. Borders, Inc. (In re Valley Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003). "To avoid unnecessary harsh results, a claimant can still file a claim after the bar date if it shows 'excusable neglect**.**'" *Mallinckrodt*, 2022 U.S. Dist. LEXIS 147924 at * 7 (citing Fed. R. Bankr. P. 9006(b)(1). "This is also an equitable determination; it takes into account all of the relevant circumstances regarding the movant's omission, including (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395).

68.    The mere passage of time between the original proof of claim and a proposed amendment does not make the delay "undue." *See, e.g.*, *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("the passage of time, without more, does not require that a motion to amend a complaint be denied. The question of undue delay requires that we focus on the [movant's] motives for not amending their complaint to assert this claim earlier"); *In re Stone & Webster, Inc.*, 547 B.R. 588, 606 (Bankr. D. Del. 2016) (allowing amendment eleven years after the original proof of claim was filed because the trustee delayed the proceedings); *In re Burlington Motor Carriers, Inc.*, 1999 U.S. Dist. LEXIS 20819, at *32, 1999 WL 1427683 (D. Del. Dec. 30, 1999) (holding that a motion to amend filed ten months after the complaint was not, in the absence of any other prejudicial factors, undue delay); *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 668 F. Supp. 906, 921 (D. Del. 1987) (holding that a passage of over six years, when unmotivated by bad faith, was not undue delay).

69.     Here, OTOY's request to amend the Original POC does not involve undue delay, bad faith, or a dilatory motive. OTOY's failure to assert setoff in its Original POC was an inadvertent error due to a good-faith, but mistaken, understanding of question 11: "Is this claim subject to a right of setoff?" OTOY did not understand the question to be asking if OTOY intended to seek to satisfy its 4.2 million RNDR obligation under the TPA by setoff of a corresponding portion of its 5 million RNDR Claim under the MMA that the Debtors had not yet requested or sought payment of.

70.     OTOY's error in not checking "Yes" to question 11 and identifying its approximately 4.2 million RNDR obligation under the TPA did not mislead or deceive the Debtors or provide OTOY any unfair advantage. As noted above, the Debtors were fully aware of OTOY's RNDR obligation under the TPA that had been discussed at the April 20, 2023 meeting with the Debtors' financial advisor. The Debtors did not seek payment of this obligation at that meeting or at any time during the Debtors' chapter 11 case prior to Plan confirmation.

71.     Since retaining bankruptcy counsel after the June 10, 2025 meeting with counsel and the financial advisors for the FTX Recovery Trust, OTOY has worked diligently to resolve any issues relating to OTOY's defensive setoff right relating to its approximately 4.2 million RNDR obligation under the TPA.

72.     There is also no material prejudice to the FTX Recovery Trust, distributions to creditors, or the judicial administration and orderly liquidation of the Debtors under the Plan in Allowing OTOY to amend its Claim and assert its right of setoff under section 553 of the Bankruptcy Code in the Amended POC.

73.     When considering prejudice, courts focus on the burden to the nonmoving party if the amendment is allowed. The nonmoving party "must show that it was unfairly disadvantaged

or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989); *see also Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017). "'To establish prejudice, the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had . . . the amendment been timely.'" *FTX Trading*, 669 B.R at 307 (quoting *Semicrude* 443 B.R. at 481).

74.    In this matter, the FTX Recovery Trust cannot demonstrate that it would be adversely impacted by the amendment or that the amendment comes as a surprise, given the Debtors' knowledge of the obligations of the parties under the TPA and the MMA  In addition, there is no evidence that OTOY's inadvertent failure to assert setoff in the Original POC induced any detrimental reliance by the Debtors or the FTX Recovery Trust. The Amended POC will correct OTOY's good-faith mistake without causing any prejudice to the FTX Recovery Trust. The Amended POC will not impose any additional expense or burden on the FTX Recovery Trust in resolving OTOY's Claim and right of setoff than if OTOY had correctly checked the "Yes" box.

75.    Nor can the FTX Recovery Trust demonstrate material prejudice to the judicial administration and orderly liquidation under the Plan.  In addition to having knowledge of OTOY's approximately 4.2 million RNDR obligation under the MMA, the FTX Recovery Trust still currently holds approximately $4.6 billion in a disputed-claims reserve, and an additional $1.93 billion in a second distribution to unsecured creditors scheduled to made on or about September 30, 2025. And under the Plan, unsecured creditors in Classes 5A, 5B 6A, 6B, 7A and 7B with estimated allowed claims of approximately $11 billion are projected to receive full payment of their allowed claims plus post-petition interest.

76.     OTOY's setoff right relates to an approximately 4.2 million RNDR obligation with a dollar value in the approximate range of $12.9 million to $19.4 million over the past three (3) months,[22] that had a purchase price of approximately $1.2 million (1/6 of the $7.25 million total purchase price under the TPA) and a Petition Date value under $2.3 million (approximately 84% of the $2,690,605.50 Petition Date value of OTOY's 5 million RNDR Claim amount).[23] The amounts at issue with respect to OTOY's setoff will have no meaningful impact on implementation of the Plan; distributions to unsecured creditors are projected to total in excess of $11 billion and result in recoveries over 100% of the allowed claim amounts. Because the current dollar value of OTOY's 4.2 million RNDR obligation and Alameda Research Ltd.'s 5 million RNDR obligation substantially increased in value over the past 34 months and have a dollar value approximately 7 times greater than on the Petition Date, OTOY's setoff right is very significant to OTOY, but will not materially effect creditor recoveries under the Plan. The equities weigh compellingly in favor of OTOY.  OTOY's amendment to its Claim simply seeks to correct a mistaken failure to check the "setoff" box in the FTX proof-of-claim form in order to seek to exercise its defensive setoff right under section 553 of the Code and avoid "the absurdity of making A pay B when B owes A."

77.     For the foregoing reasons, the Court should grant OTOY leave to file the Amended POC.

## II.     In the Alternative, the Court Should Permit the Requested Amendment Based on Excusable Neglect

78.     To the extent the Court determines that the Amended POC is a late-filed claim (rather than an appropriate amendment to the Original POC), OTOY submits that its filing should

---

[22] The RNDR dollar price has ranged from $3.07 to $4.63 over the past 3 months.

[23] The Petition Date valuation of OTOY's claim was for solicitation, voting, and distribution purposes only. *See Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets*, D.I. 7090.

nevertheless be permitted under the "excusable neglect" standard set forth in Bankruptcy Rule 9006(b).

79.     Bankruptcy Rule 9006(b) provides that the court "for cause shown may at any time in its discretion" grant an enlargement of time to act "where the failure to act was the result of excusable neglect." Fed. R. Bank. P. 9006(b). "The 'excusable neglect' standard of [Bankruptcy Rule 9006(b)(1) governs late filings of proofs of claims in Chapter 11 cases." *Pioneer,* 507 U.S. at 389.

80.     The United States Supreme Court in *Pioneer* enumerated four factors to consider in determining whether neglect is excusable: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. The Supreme Court also stated: "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[24] *Id.*

### A.     There Is No Prejudice to the FTX Recovery Trust, Distributions to Creditors, or the Judicial Administration and Orderly Liquidation of the Debtors Under the Plan

81.     The first factor, danger of prejudice to the debtor, "is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence."

---

[24] With respect to "excusable neglect" based on an attorney's act or omission, the Supreme Court in *Pioneer* stated: "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."507 U.S. at 397 (emphasis in italics in original). As detailed above, while OTOY's outside corporate counsel completed and submitted OTOY's Original POC, it was done in consultation with OTOY, and the mistake in not checking "Yes" to question 11 regarding setoff was due to a misunderstanding of both OTOY and its counsel. The relief sought herein is grounded in facts and circumstances demonstrating that the mutual mistake of OTOY and its counsel is excusable under the excusable neglect standard..

*Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir.

1999). Relevant considerations regarding whether prejudice to the debtors is present include:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated;
>
> (ii) whether the payment of the claim would force the return of amounts already paid out under a confirmed plan or affect the distribution to creditors;
>
> (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization;
>
> (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and
>
> (v) whether allowance of the claim would open the floodgates to other future claims.

*Id.* at 126; *see also TWA Inc. Post Confirmation Est. v. Marsh USA (In re TWA Inc. Post Confirmation Est.)*, 305 B.R. 228, 233–34 (Bankr. D. Del. 2004) (permitting amendment where "[d]efendants have already been put on notice of the essential issues involved and they are surely fully informed regarding their business dealings with [the plaintiff]").

82.    As detailed in section I above, there will be no material prejudice to the FTX Recovery Trust, distributions to creditors, or the judicial administration and orderly liquidation of the Debtors under the Plan in Allowing OTOY to amend its Claim and assert its defensive right of setoff under section 553 of the Bankruptcy Code in the Amended POC. The Debtors and the FTX Recovery Trust have always known of the prepetition obligations of the parties under the TPA and the MMA and were apprised in April 2023 that OTOY asserted a right of setoff. In addition, OTOY's inadvertent failure to check the setoff box on the Original POC did not induce any detrimental reliance by the Debtors or the FTX Recovery Trust. The Amended POC will correct an inadvertent error in OTOY's Original POC without causing any prejudice to the FTX Recovery Trust.

83.     The Debtors and the FTX Recovery Trust never even requested payment of OTOY's approximately 4.2 million RNDR obligation for over 2½ years after the November 11 and 14, 2022 filings of the FTX Cases. The FTX Recovery Trust first sought payment of OTOY's approximately 4.2 million RNDR obligation under the TPA in June 2025 at which time OTOY again raised its right to offset a corresponding portion of its 5 million RNDR claim against its 4.2 million RNDR obligation. OTOY thereafter engaged bankruptcy counsel and pursued a consensual resolution with the FTX Recovery Trust.

84.     The FTX Recovery Trust cannot claim to be "caught unaware" by OTOY filing an Amended POC to assert its defensive right of setoff that OTOY mistakenly did not do in its Original POC. Likewise, the FTX Recovery Trust cannot put forth any evidence that the requested amendment would adversely impact the liquidation of the Debtors or distributions to creditors or that OTOY's inadvertent failure to check the setoff box in the Original POC induced any form of detrimental reliance by the Debtors. In its recent *Motion of the FTX Recovery Trust for Entry of an Order Implementing Certain Procedures for Late-Filed Claims* [D.I. 32119], granted by this court in an order entered on July 17, 2025 [D.I. 31504], the FTX Recovery Trust contemplated a possible need to substantively address late-filed claims in administration of the Cases and its liquidation of the Debtors that meet the "excusable neglect" standard for late filed claims.[25]

85.     Because the Debtors' Plan is a liquidating plan, OTOY's Amended POC also does not jeopardize any contemplated reorganization. *See In re Cable & Wireless USA,* 338 B.R. 609, 615 (Bankr. D. Del. 2006) ("Further, since the Debtors' plan is a liquidating plan, allowance of the . . . claim would have no effect on the Debtors' ability to successfully complete their plan."); *see also In re Sacred Heart Hosp.*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) ("Allowance of a late

---

[25] *See* D.I. 31299; 31504.

claim, in such circumstances, will generally merely result in a slightly different distribution of a liquidating debtor's assets. Exactly how the debtor's assets are distributed is ultimately of little consequence to the debtor, so long as the claim is not filed so late as to disrupt the distribution process.").

      **B.**    <u>**Length of Delay and Impact of the Delay on Judicial Proceedings and Reason for the Delay**</u>

    86.     The second factor is the length of the delay in asserting the claim and the impact of the delay on the judicial proceedings; the third factor is the reason for the delay, including whether the delay was within the reasonable control of the movant. OTOY now seeks leave to amend its timely filed Claim a few months after it retained bankruptcy counsel and discovered that: (i) it mistakenly did not check "Yes" in the question 11 box regarding setoff in its Original POC and (ii) there was a requirement in the Plan for creditors to preserve their rights of setoff in a proof of claim to assert setoff against a Debtor or the Plan Administrator. During the past 2 months prior to filing this Motion, OTOY engaged in discussions with counsel and the financial advisors for the FTX Recovery Trust to resolve disputes regarding its setoff right without litigation.

    87.     Permitting OTOY's filing of the Amended POC to assert a defensive right of setoff will not result in any detrimental impact on the FTX Debtors judicial proceeding and the liquidation of the Debtors under the Plan.

      **C.**    <u>**OTOY's Good Faith**</u>

    88.     The fourth factor is the movant's good faith in seeking to file a late proof of claim. OTOY has always acted in good faith in its dealings with the Debtors and the FTX Recovery Trust with respect to the obligations of the parties under the MMA and the TPA. OTOY's failure to check the setoff box on the proof-of-claim form was an inadvertent error, not an attempt to "hide the ball"

or gain any advantage. Since becoming aware of this error and the section 7.10 Plan provision on setoff, OTOY diligently tried to resolve its setoff right with the Debtors and then filed this Motion.

89.     For these reasons, in the event that the Amended POC would be deemed a late-filed claim, OTOY submits that it should be authorized under the excusable neglect standard.

## No Prior Request

90.     No prior request for the relief sought herein has been made to this Court or any other court.

## Notice

91.     Notice of this Motion has been given to: (i) counsel for the FTC Recovery Trust and the Plan Administrator, (ii) the Office of the United States Trustee, and (iii) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  OTOY submits that no other or further notice need be provided.

WHEREFORE, OTOY respectfully requests that the Court enter the Proposed Order granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated:  September 29, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James O'Neill*
James O'Neill (DE Bar No. 4042)
Stanley E. Goldich (*pro hac vice* pending)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  302-652-4100
Facsimile:   302-652-4400
Email: joneill@pszjlaw.com
        sgoldich@pszjlaw.com

*Counsel to OTOY International, SEZC*