# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 3409, 3737, 29572, 30712, 31312, 31846 & 32779 |

### FTX RECOVERY TRUST'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION OR TO MODIFY ORDER ALLOWING RHEINGANS-YOO'S FDU CLAIM

The FTX Recovery Trust ("Trust") hereby submits this reply (the "Reply") in further support of its Motion for Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim (the "Reconsideration Motion") [D.I. 31846].[1] In support of the Reconsideration Motion, the Trust respectfully states as follows:

### PRELIMINARY STATEMENT

1. Mr. Rheingans-Yoo's opposition to the Reconsideration Motion perpetuates—and attempts to legitimize—material misstatements made to the Court at the June 25, 2025 hearing on the FDU Claim. During that hearing, counsel for Mr. Rheingans-Yoo repeatedly represented to the Court that Mr. Rheingans-Yoo did not personally seek to be paid the $650,000 FDU Claim. *See* Hearing Tr. 32:11-12 ("[I]t's not our position that Ross should be paid this FDU claim"); *id.* 39:14-16 ("Ross does not seek to be paid that money, but Ross has the property right to direct the Debtor to pay that money."). The Court relied on those representations in allowing the FDU Claim. *Id.* 46:15-17 ("Mr. [Rheingans-]Yoo has indicated that he is not seeking to receive payment of the

---

[1] Terms not defined herein shall have the same meaning as used in the *Debtors' Objection to Proof of Claim Filed By Ross Rheingans-Yoo* [D.I. 3409], the *Reply of FTX Recovery Trust in Further Support of Debtors' Objection to Ross Rheingans-Yoo's Claim* [D.I. 30712], and the Motion.

claim; he would like it directed to the charity."). However, following the filing of the Reconsideration Motion, counsel for Mr. Rheingans-Yoo revealed that Mr. Rheingans-Yoo intended to transfer the $650,000 "donation" not to an account controlled by Manifold for Charity, as he had represented, but instead to an *account in his own name* at Manifold for Charity, which would enable Mr. Rheingans-Yoo to direct those funds as he wished (including to an entity he controls). Wheeler Decl. ¶¶ 3-4. That revelation directly contradicts his prior representations to the Court. There can be no doubt that the fact that Mr. Rheingans-Yoo was scheming to deposit the $650,000 into an account in his own name and from which he could direct future transfers, rather than in the name of his designated beneficiary Manifold for Charity, is additional "new evidence" that warrants reconsideration of the Court's Order allowing the FDU Claim.

2. In his Opposition to the Motion for Reconsideration ("Opposition") [D.I. 32779], Mr. Rheingans-Yoo unsurprisingly conceals from the Court his intention to transfer the $650,000 to an account in his name at Manifold for Charity—which is indisputably "new evidence," just as he concealed during the June 25, 2025 hearing the identity of the Effective Altruist charity he intended to designate as the beneficiary of the FDU Claim. Mr. Rheingans-Yoo does not dispute that his July 2, 2025 designation of Manifold for Charity as the beneficiary of the FDU Claim is "new evidence" that neither the Trust nor the Court could have known until after the Court allowed the FDU Claim during the June 25, 2025 hearing. Nor does Mr. Rheingans-Yoo dispute that he is on the Board of Manifold for Charity; that Manifold for Charity's bylaws permit members of its Board of Directors to be paid for their service; that Nishad Singh, who pleaded guilty for his role in the FTX fraud, worked at Manifold for Charity for a period of time; or that Manifold for Charity has a relationship with Samuel Bankman-Fried's brother. Finally, Mr. Rheingans-Yoo does not dispute that the Trust has expended significant efforts and resources to recover over $90 million

in fraudulent transfers from Effective Altruist "charities" into which Bankman-Fried funneled money.

3.     Instead, Mr. Rheingans-Yoo contends that payment of the FDU Claim to Manifold for Charity under these circumstances would not be manifestly unjust. But Mr. Rheingans-Yoo's misleading representations to the Court that the funds would go to an "EA charity" (as opposed to an account in his name), combined with the clear risk of self-dealing and the extensive connections between Manifold for Charity and the FTX Group, show that Mr. Rheingans-Yoo's designation of Manifold for Charity as the beneficiary of the FDU Claim creates a manifest injustice.

4.     Moreover, Mr. Rheingans-Yoo's argument—only after he was caught—that he should simply be allowed to designate a new entity as the beneficiary of the FDU Claim not only contravenes the Court's Order, prejudices the Trust, and requires the expenditure of unnecessary judicial resources in light of Mr. Rheingans-Yoo's actions, but would also countenance his misrepresentations to the Court.

## ARGUMENT

**A.     Mr. Rheingans-Yoo Fails to Refute the Trust's Argument that Reconsideration Is Warranted, Particularly in Light of the New Evidence of Mr. Rheingans-Yoo's Intention to Transfer the $650,000 into an Account in his Own Name**

5.     Reconsideration of the Court's Order is warranted on multiple bases. *First*, Mr. Rheingans-Yoo's designation of Manifold for Charity as the beneficiary of the FDU Claim and the recent revelation that Mr. Rheingans-Yoo actually intended to transfer the $650,000 to an account in his own name at Manifold for Charity (from which he could direct transfers, including to an entity controlled by him) constitute newly discovered evidence. *See Max's Seafood Cafe ex rel. Lou-Ann, Inc.* v. *Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). *Second*, allowing the FDU Claim in this context will result in a manifest injustice. *See id.* Mr. Rheingans-Yoo does not refute

that his designation of Manifold for Charity is newly discovered evidence, nor does Mr. Rheingans-Yoo rebut the Trust's argument that allowing the FDU Claim would cause a manifest injustice, particularly where he has indicated an intent to pay the funds to an account in his own name. The Court should therefore grant the Reconsideration Motion.

> i. **The Designation of Manifold for Charity and Mr. Rheingans-Yoo's Intent to Transfer the $650,000 to an Account in His Name Constitute Newly Discovered Evidence**

6. Mr. Rheingans-Yoo spills much ink explaining that the role of Effective Altruism in these Chapter 11 Cases is not newly discovered evidence. Opp'n ¶¶ 6-9, 18, 57-59. In doing so, Mr. Rheingans-Yoo attempts to muddy the clear argument at the heart of the Trust's Reconsideration Motion: "The designation of Manifold for Charity as the beneficiary of the FDU Claim" and the recent revelation that Mr. Rheingans-Yoo intended to transfer the $650,000 to an account in his name "constitute[] newly discovered evidence." Mot. ¶ 45. Despite Mr. Rheingans-Yoo's claim in his brief that "[t]here is no new evidence presented in the Motion," Opp'n at 13, he nonetheless *admits* that his designation of Manifold for Charity as the beneficiary of the FDU Claim is new evidence. *Id.* ¶¶ 10, 60. Indeed, Mr. Rheingans-Yoo acknowledges the Trust's argument that if it "had known before filing its Claim Objection that Ross would select Manifold for Charity, it would have objected on these grounds before." *Id.* ¶ 60.

7. Unable to refute that the designation is newly discovered evidence, Mr. Rheingans-Yoo then shifts his argument, contending that "'more than a showing of the potential significance of the new evidence is necessary' to obtain relief under Rule 59(b)." *Id.* ¶ 60 (quoting *Plisco* v. *Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967)). Mr. Rheingans-Yoo does not attempt to explain what showing is necessary. But the Trust's burden is not onerous: "[I]t must appear that reasonable diligence by the movant before trial would not have brought to light the evidence which he failed to discover until after trial." *Plisco*, 379 F.2d at 16; *see also* Mot. ¶ 45 (citing *In re*

*Bailey*, 2021 WL 4314217, at *7 (Bankr. D.N.J. Sep. 22, 2021)). Of course, the Trust could not have known before the June 25 hearing on the FDU Claim that Mr. Rheingans-Yoo intended to designate Manifold for Charity as the beneficiary, because Mr. Rheingans-Yoo concealed that intention until the last possible moment (for reasons that have now become clear). Even in response to direct questions from the Court at the hearing, Mr. Rheingans-Yoo's counsel did not identify the charity his client planned to designate. *See* Hearing Tr. 38:10-39:11 ("THE COURT: Let me ask you this: Why haven't you designated the charity . . . Why don't we know who this alleged charity would be? I have concerns about that. . . . [MR. SIMON:] It's just, procedurally, we were baffling over whether the [FDU Claim] was allowable."). Mr. Rheingans-Yoo does not dispute that the Trust could not have known about the designation before the hearing. As a result, the designation of Manifold for Charity as the beneficiary of the FDU Claim undisputedly constitutes new evidence that the Trust could not have discovered before the June 25 hearing.

8.  Given his representations to the contrary to the Court, the Trust also could not have known that Mr. Rheingans-Yoo intended to transfer the $650,000 to an account in his name. At the June 25 hearing, counsel for Mr. Rheingans-Yoo repeatedly informed the Court that the FDU Claim would not be paid to Mr. Rheingans-Yoo. *See* Hearing Tr. 32:11-12 ("[I]t's not our position that Ross should be paid this FDU claim"); *id.* 39:14-16 ("Ross does not seek to be paid that money, but Ross has the property right to direct the Debtor to pay that money."). The Court relied on those misrepresentations in allowing the FDU Claim. *Id.* 46:15-17 ("Mr. [Rheingans-]Yoo has indicated that he is not seeking to receive payment of the claim; he would like it directed to the charity."). The Trust did not become aware of Mr. Rheingans-Yoo's contrary intent until an August 8, 2025 video meeting between counsel for the Trust and counsel for Mr. Rheingans-Yoo. Wheeler Decl. ¶¶ 3-4. During the August 8 call, counsel for Mr. Rheingans-Yoo revealed, only

after very direct questions from counsel for the Trust, that the $650,000 would be paid into Mr. Rheingans-Yoo's account at Manifold for Charity.  *Id.*

9. As a result, Mr. Rheingans-Yoo's intent to transfer the $650,000 into an account in his own name (from which he could direct transfers, including to an entity controlled by him) constitutes new evidence that the Trust could not have discovered before the June 25 hearing.

>   ii. **Mr. Rheingans-Yoo Does Not Rebut the Trust's Argument that Allowance of the FDU Claim Under These Circumstances Would Result in a Manifest Injustice**

10. As the Trust explained in its Reconsideration Motion, the Trust has expended "significant efforts to recover fraudulent transfers from myriad 'charities' that were little more than outposts" for Bankman-Fried and his associates.  Mot. ¶ 46.  The Trust's investigation of Manifold for Charity has revealed that the FDU Claim is effectively an extension of Bankman-Fried's fraud.  While Mr. Rheingans-Yoo attempts to downplay the connections between Manifold for Charity and the FTX Group, and the potential for self-dealing, he does not deny them. Remarkably, Mr. Rheingans-Yoo entirely omits from his Opposition any mention of the fact that, during the August 8, 2025 call with counsel for the Trust discussed above, counsel for Mr. Rheingans-Yoo revealed that Mr. Rheingans-Yoo intended to direct that the $650,000 be transferred into an account *in Mr. Rheingans-Yoo's name* at Manifold for Charity, rather than an account in the name of and controlled by Manifold for Charity.  Wheeler Decl. ¶¶ 3-4.  This revelation confirmed the Trust's reasonable belief that Mr. Rheingans-Yoo's designation of Manifold for Charity reflected an intent to "lin[e] his own pockets and those of his friends at the expense of FTX creditors."  Mot. ¶ 47.

11. Although he now admits that he sits on the board of Manifold for Charity and that its board members are eligible for compensation, Mr. Rheingans-Yoo attempts to minimize this information by claiming that there is currently "no expectation or plan" for directors to be paid for

their services. Opp'n ¶ 46. But this bald assertion in no way prevents Manifold for Charity from deciding *later* to pay its directors after receiving payment of the FDU Claim. *See Farmers Co-op. Co.* v. *Comm'r*, 822 F.2d 774, 779 n.8 (8th Cir. 1987) (The mere "fact that [a] right may not have been exercised in a specific instance does not mean that the right does not exist or will not be exercised at some point in the future."). And while Mr. Rheingans-Yoo also argues that his employment agreement and the Bonus Memo do not "require[] Ross to designate an EA charity where . . . he would not be paid," Opp'n ¶ 70, the terms of those documents do not alter the fact that Mr. Rheingans-Yoo (mis)represented to the Court during the June 25 hearing that he would not seek to pay himself, nor the fact that the Court relied on these (mis)representations in allowing the FDU Claim.

12. In his correspondence that post-dated the August 8 call, counsel for Mr. Rheingans-Yoo never disputes telling the Trust's counsel that Mr. Rheingans-Yoo actually intended to transfer the $650,000 into an account in his own name. Wheeler Decl. Exs. 3-5. Instead, Mr. Rheingans-Yoo's Opposition asserts that Manifold for Charity operated donor-advised funds on behalf of its customers. Opp'n ¶ 43. That unsupported assertion is simple misdirection. It is undisputed that the Court required Mr. Rheingans-Yoo to designate a "charity" as the beneficiary, and Mr. Rheingans-Yoo designated "Manifold for Charity." The Court never authorized Mr. Rheingans-Yoo to pay the FDU Claim to a donor-advised fund operated by the charity, let alone one in Mr. Rheingans-Yoo's name. Further, a donor-advised fund is obviously not an "EA cause" or itself a "charity." Nor is there any guarantee that any funds from the donor-advised fund actually would be *subsequently* transferred to any "EA cause." Indeed, the Opposition contradicts the representations to this Court that "Ross does not seek to be paid that money" by now taking the position that neither "Ross's employment agreement nor the Bonus Memo" prohibit the FDU

-7-

Claim from being "directed to a Ross-controlled personal foundation."[2]  Opp'n ¶ 70; *see also id.* ("Ross [does not have] to designate an EA charity where . . . he would not be paid.").  But the plain language of the Court's Order prohibited that, requiring that the FDU Claim go to a charity.

13. Moreover, the business and operation of Manifold for Charity are entirely opaque, and nothing in the present record establishes how funds in any purported donor-advised fund at Manifold for Charity may be used.  The Opposition curiously describes the operation of donor-advised funds at Vanguard, an entirely unrelated entity (and legitimate), which raises questions about the procedures (if any even exist) for donor-advised funds at Manifold for Charity.  Opp'n ¶¶ 39-42.  What is clear is that Mr. Rheingans-Yoo represented to the Court that he would pay the FDU Claim to a charity, informed the Trust that he would designate Manifold for Charity as the beneficiary of the FDU Claim, provided wire instructions for that entity, but actually intended to divert the $650,000 to his own account from which he could direct future transfers.  Wheeler Decl. Ex. 1; Wheeler Decl. ¶¶ 3-4.  In short, Mr. Rheingans-Yoo told the Court and the Trust one thing, and intended to do another.

14. Mr. Rheingans-Yoo's lack of candor with the Court combined with the clear risk of self-dealing and the extensive connections between Manifold for Charity and the FTX Group show that Mr. Rheingans-Yoo's designation of Manifold for Charity as the beneficiary of the FDU Claim and his intent to transfer the $650,000 into an account in his own name create a manifest injustice.

---

[2]   A review of Manifold for Charity's website reveals that "grants" are made to individuals, for example to fund travel to conferences, and to entities that are not 501(c)(3) charities.

### B. Allowing Mr. Rheingans-Yoo To Designate a New Charity Would Only Reward His Misrepresentations to the Court

15. Mr. Rheingans-Yoo makes much of the fact that he is willing to designate a new charity as the beneficiary of the FDU Claim to "address" the Trust's "concerns" about Manifold for Charity. *See* Opp'n ¶¶ 33, 49-53, 61, 65, 74-76. However, permitting Mr. Rheingans-Yoo to designate a new charity would countenance his misrepresentations to the Court, contravene the Court's order, and prejudice the Trust. Moreover, contrary to Mr. Rheingans-Yoo's assertion, redesignation of the charity would not resolve any adversary proceeding related to the FDU Claim.

16. *First*, Mr. Rheingans-Yoo only purported to "redesignate" the beneficiary of the FDU Claim *after* counsel for the Trust learned that Mr. Rheingans-Yoo had intended to transfer the funds into an account held *in his name* at Manifold for Charity and informed counsel for Mr. Rheingans-Yoo that that was contrary to the Court's Order. Wheeler Decl. ¶ 4; Wheeler Decl. Ex. 2. The Court should not countenance Mr. Rheingans-Yoo's attempt to sanitize his misconduct, including his misrepresentations to the Court.

17. *Second*, the Court's Order does not permit Mr. Rheingans-Yoo to designate a new charity. The Order allowed payment of the FDU Claim "to *the* Effective Altruism-driven charity identified by counsel for Rheingans-Yoo in writing to counsel for the Trust." Order ¶ 3 (emphasis added). Mr. Rheingans-Yoo identified Manifold for Charity, and the Trust brought this Reconsideration Motion asking the Court to modify its Order allowing the FDU Claim under these circumstances. The Court's Order does not provide for redesignation. In fact, contrary to Mr. Rheingans-Yoo's assertion that his attempted "redesignation moots the [Reconsideration] Motion," Opp'n ¶ 65, the Court explicitly retained jurisdiction to address disputes about the beneficiary of the FDU Claim. Hearing Tr. 46:22-25 ("If there's [a] dispute, with respect to . . .

the charity that is designated; that issue is not before me today and I would entertain the dispute, if there is one.").

18. *Third*, allowing Mr. Rheingans-Yoo to designate another beneficiary of the FDU Claim would require the Trust to expend additional resources investigating any connection between Mr. Rheingans-Yoo and the new designee.  Moreover, redesignation would frustrate the resources the Trust has expended to date in addressing Mr. Rheingans-Yoo's misrepresentations.  Given that Mr. Rheingans-Yoo has demonstrated that "he cannot be trusted to designate a legitimate beneficiary of the FDU Claim," Mot. ¶ 48, the Trust should not bear the burden of investigating any further attempts to designate a new beneficiary (only after he had been caught engaging in misconduct and misrepresentations).

19. *Fourth*, allowing Mr. Rheingans-Yoo to designate a new beneficiary does not resolve the Trust's primary legal concern that the underlying obligation to pay the FDU Claim was incurred fraudulently pre-petition.  *See* Manifold Adversary Proceeding, ECF No. 38.  Even if Mr. Rheingans-Yoo designated a new beneficiary of the FDU Claim, the Trust would still be required to initiate a new lawsuit against Mr. Rheingans-Yoo and the new beneficiary to avoid the fraudulent transfer.  This can be no surprise to Mr. Rheingans-Yoo because the Trust expressly noted and reserved at the June 25 hearing the right to seek to avoid the transfer.  Hearing Tr. 40:14-41:40.  Having now sought to do so, Mr. Rheingans-Yoo would like to force the Trust to restart that process.  Allowing Mr. Rheingans-Yoo to designate a new beneficiary would therefore multiply the proceedings related to the FDU Claim and expend unnecessary judicial resources.  Redesignation would also deprive Manifold for Charity of $650,000 it would have received, which funds could have been used to satisfy any liability it owes to the Trust in connection with the Manifold Adversary Proceeding.

**CONCLUSION**

20. For the foregoing reasons and for the reasons stated in the Trust's Reconsideration Motion, the Trust respectfully requests that the Court enter an order in the form attached to the Reconsideration Motion as Exhibit A granting the Trust's motion for reconsideration of the Order, or, in the alternative, for entry of an order modifying the Order to defer distribution on the FDU Claim pending resolution of the Manifold Adversary Proceeding.

| | |
|---|---|
| Dated: October 10, 2025<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>E-mail: landis@lrclaw.com<br>   mcguire@lrclaw.com<br>   brown@lrclaw.com<br>   pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Stephanie G. Wheeler (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>E-mail: wheelers@sullcrom.com<br>   gluecksteinb@sullcrom.com<br><br>*Counsel for the FTX Recovery Trust* |