# **EXHIBIT 3**

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, New York 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 11, 2025

Via E-mail

Scott D. Simon,
  Goetz Platzer LLP,
    1 Pennsylvania Plaza,
      New York, New York 10119.

Re:  FTX Recovery Trust v. Manifold Markets, Inc., et al., Adv. Pro. No. 24-50214 (KBO)

Dear Scott:

We write on behalf of the FTX Recovery Trust (the "Trust") in response to your August 21, 2025 letter threatening to seek sanctions against the Trust, and attaching a draft motion (the "Motion") under Rule 9011 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1927.

We are baffled by your letter and draft Motion. Contrary to your baseless accusation that the Trust is pursuing a "vindictive campaign" against your client, both the Trust's *Motion for Reconsideration or to Modify Order Allowing Rheingan-Yoo's FDU Claim* [D.I. 31846] (the "Motion for Reconsideration") and the *First Amended Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 548, and 550, and Del. Code Ann. Tit. 6, §§ 1304 and 1305, and for Disallowance or Subordination of Claim Pursuant to 11 U.S.C. §§ 502 and 510* [Adv. D.I. 38] (the "Amended Complaint") are well-founded and brought for bona fide purposes. While your Motion is replete with mischaracterizations of both the facts and the law, we respond to the concerns below in the interest of minimizing any burden on the Court.[1]

**The Motion for Reconsideration**

Your assertion that the Trust's Motion for Reconsideration does not seek to address evidence that was unavailable before the hearing on the FDU Claim is incorrect. First, at the time of the June 25, 2025 hearing on the FDU Claim (the "Hearing"), neither the Trust nor the Court knew the identity of the designated beneficiary of the FDU Claim.

---

[1] Terms not defined herein shall have the same meaning as used in the Motion for Reconsideration.

Second, at the time of the Hearing, neither the Trust nor the Court knew that Mr. Rheingans-Yoo, contrary to the representations made to the Court, intended for the $650,000 to be deposited into an account in his own name (not a charity's name).

After Mr. Rheingans-Yoo designated Manifold for Charity as the beneficiary of the FDU Claim in an email to counsel to the Trust dated July 2, 2025, the Trust immediately investigated Manifold for Charity and learned that Mr. Rheingans-Yoo sat on the board of that entity. Contrary to your assertions, Mr. Rheingans-Yoo did not "disclose" his position on the Board simply by posting about it on his "public website," or by counsel saying in the email identifying the beneficiary, "[l]et me know if you need any additional information to identify the Designated Beneficiary." Motion ¶¶ 19, 34. Mr. Rheingans-Yoo's failure to disclose that he had designated a charity on whose Board he sat and that had ultimately received a $500,000 transfer from the FTX Group pre-petition, raised significant concerns for the Trust. Among these, the Trust was concerned that Mr. Rheingans-Yoo's service on the Board could result in his receiving, in his capacity as a director, compensation derived from the FDU Bonus. Motion for Reconsideration ¶¶ 39, 47.

The Trust's concerns were well-founded. During an August 8, 2025 call with counsel for the Trust, you admitted that, despite Mr. Rheingans-Yoo having designated Manifold for Charity as the beneficiary and having provided the Trust with wire instructions for that entity, Mr. Rheingans-Yoo actually intended to direct the FDU Bonus into an account *in his name* at Manifold for Charity—not to an account that Manifold for Charity controlled—and the funds would be distributed at Mr. Rheingans-Yoo's direction. This revelation was shocking to the Trust because it contradicted representations you made to the Court during the Hearing and on which the Court specifically relied in allowing the FDU Claim. During the Hearing, you repeatedly represented to the Court that "it's not our position that Ross should be paid this FDU Claim." Hearing Tr. 32:11-12; *see also id.* 39:14-16 ("Ross does not seek to be paid that money, but Ross has the property right to direct the Debtor to pay that money."). The Court accepted and relied on those representations in allowing the FDU Claim. *Id.* 46:15-17 ("Mr. [Rheingans]-Yoo has indicated that he is not seeking to receive payment of the claim; he would like it directed to the charity.").

Your Motion conspicuously omits the fact that Mr. Rheingans-Yoo intended to circumvent the Court's July 9, 2025 order by surreptitiously directing the FDU Bonus to a personal account in Mr. Rheingans-Yoo's name, rather than to an account belonging to an Effective Altruist charity. It is simply impossible to square that with the representations you made to the Court that "Ross does not seek to be paid that money." *See id.* at 39:14-15.

As the Trust explained in its Motion for Reconsideration, this new evidence "must be evaluated in the larger context of these Chapter 11 Cases" including pre-petition issues concerning "charitable" donations, and reconsideration is warranted because, in this context, "the record presented" would be "so patently unfair and tainted that the error is manifestly clear to all who view it." Motion for Reconsideration ¶¶ 4, 5.

Only after the Trust discovered the full extent of Mr. Rheingans-Yoo's attempted self-dealing and deception on the Court during the August 8, 2025 call did Mr. Rheingans-Yoo attempt to cure his misconduct by attempting to designate another charity. The Motion bizarrely claims that there "is no manifest injustice presented by a change in beneficiary." Motion at 18. Moreover, it is well-settled that conduct under Rule 11 is assessed by "what was reasonable to believe at the time" the pleading "was submitted." *Scott* v. *Vantage Corp.*, 64 F.4th 462, 473 (3d Cir. 2023). Mr. Rheingans-Yoo cannot deceive the Court and then, when caught, try to cover up his misconduct by changing the facts and then bringing a Rule 11 Motion based on the changed facts.[2]

Moreover, the assertion that the purported designation of a different charity as the beneficiary of the FDU Claim resolves any concerns raised in the Motion for Reconsideration or the Amended Complaint is a red herring. Mr. Rheingans-Yoo's attempt at a "do-over" does not resolve the Trust's concerns. Further, the July 9 Order only permitted distribution on the claim to "***the*** Effective Altruism-driven charity," designated in writing (July 9 Order ¶ 3), and not, for example, to "***any*** Effective Altruism-driven charity." Indeed, the Court expressly reserved jurisdiction to address any dispute following the designation of the beneficiary of the FDU Claim. *See Id.* ¶ 8; Hearing Tr. 46:22-25 ("If there's dispute, with respect to . . . the charity that is designated; that issue is not before me today and I would entertain the dispute, if there is one.").

**The Amended Complaint**

The Court's July 9 Order determined that the employment agreement created a valid pre-petition obligation between the FTX Group and Mr. Rheingans-Yoo to transfer $650,000 to an Effective Altruism-driven charity, and that Mr. Rheingans-Yoo therefore held a valid claim against the Trust. *See* Hearing Tr. 46:2-4 ("I do find that the claimant has standing to assert this claim, given his personal interests in the FDU and the bonus."); July 9 Order ¶ 3. The Court explicitly recognized, however, that the Trust could seek to avoid any transfer or obligation if the claim were allowed. *See* Hearing Tr. 40:14-41:10. The Motion thus entirely ignores that the allowance of the claim is not "the end of the inquiry." Motion ¶ 5. Indeed, a trustee does not waive the right to initiate an avoidance action against a creditor to whom objections were made and adjudicated on other grounds. *See In re Cambridge Indus. Holdings, Inc.*, 2006 WL 516764 (D. Del. Mar. 2, 2006); *In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 34 (Bankr. D. Del. 2004) ("[Section] 502(d) [does not] prohibit a preference action that is commenced after a claim is allowed."); *In re Rhythms NetConnections Inc.*, 300 B.R. 404, 410 (Bankr. S.D.N.Y. 2003) ("A debtor is not required to assert an avoidable transfer as a counterclaim to a proof of claim, although the debtor is free to do so."). The July 9 Order explicitly retained the Trust's "rights under the Bankruptcy Code or any other applicable law." July 9 Order ¶ 5.

---

[2]   Similarly, "manifest injustice" for purposes of a motion for reconsideration is determined by reference to the record at the time the July 9 Order was entered. Allowing Mr. Rheingans-Yoo to escape the consequences of his misleading statements to the Court and the Trust by simply designating a new beneficiary would present a "manifest injustice."

The Motion misunderstands the Amended Complaint and the applicable law. Specifically, the Motion asserts that (i) the Trust cannot pursue avoidance or disallowance, (ii) that Mr. Rheingans-Yoo's conduct does not warrant equitable subordination, and (iii) that the doctrine of *in pari delicto* forecloses the Trust's claims. We address each of these arguments in turn.

### *Fraudulent Transfers and Disallowance*

As you know, it is the intent of the transferor—not the transferee—that is relevant for pleading an actual fraudulent transfer claim. *See In re Elrod Holdings Corp.*, 421 B.R. 700, 709 (Bankr. D. Del. 2010). The Motion's refrain that "Ross did nothing wrong" therefore misses the point. Motion at ¶ 17. The Court will not look to Mr. Rheingans-Yoo's intent in determining whether the FDU Bonus was an obligation created with fraudulent intent. Similarly, the Motion incorrectly states that an essential element for any fraudulent transfer claim is that "the defendant [has] received the alleged fraudulent transfer." Motion ¶ 68. To the contrary, it is black letter law that a trustee may avoid "any *obligation* [] incurred by the debtor." *See* 11 U.S.C. §§ 544(b), 548(a)(1)(A), 548(a)(1)(B) (emphasis added). Indeed, an obligation remains avoidable even if the resulting payment would occur post-petition. *See Alameda Research Ltd.* v. *Giles*, 2024 Bankr. LEXIS 2584, at *54-56 (Bankr. D. Del. Oct. 23, 2024) (denying motion to dismiss fraudulent transfer claims to avoid the obligation to make post-petition payments). The Trust seeks to avoid the *pre-petition* obligation to Mr. Rheingans-Yoo to pay the FDU Bonus to the designated beneficiary.

Accordingly, your contention that the Trust's avoidance and disallowance claims fail under Sections 550 and 502 for failure to plead essential fraudulent transfer elements is without merit. Motion ¶¶ 66-74 . The Bankruptcy Court has previously held in these Chapter 11 Cases that where fraudulent transfer claims survive a motion to dismiss, claims under Sections 550 and 502 are "permitted to proceed." *Giles,* 2024 Bankr. LEXIS 2584, at *56 (denying motions to dismiss counts under Sections 550 and 502); *see also In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 34 (Bankr. D. Del. 2004) ("[Section] 502(d) automatically holds up the allowance of a claim pending the preference determination.").

### *Equitable subordination*

By reference to an unrelated defined term, the Motion declares that Mr. Rheingans-Yoo is not an "insider" for purposes of equitable subordination. Motion ¶ 77. But the record does not support such a self-serving conclusion. You admitted at the Hearing that "Ross was the director of an FTX affiliate called 'Latona Bioscience,'" and that "Latona was one of the charitable arms of FTX." Hearing Tr. 38:19-22. Bankruptcy Code Section 101(31)(E) defines an "insider" as including an "insider of an affiliate as if such affiliate were the debtor." Further, an individual may be a "non-statutory insider" as a result of "(1) the closeness of the relationship between the transferor and transferee, (2) the degree of influence the transferee exerts over the transferor, and (3) whether the transactions were arms-length." *In re Opus East, LLC*, 528 B.R. 30, 93 (Bankr. D. Del. 2015).

The Trust's equitable subordination claim is well-founded whether Mr. Rheingans-Yoo ultimately is determined to be an "insider" or not. The Amended Complaint alleges—and Mr. Rheingans-Yoo concedes—that he negotiated the FDU Bonus directly with Mr. Bankman-Fried, and that the bonus purportedly arose from an agreement with an entity by which he was only nominally employed, and for which he performed no actual work. Amended Compl. ¶ 45. Through his position at Latona and his ties to FTX Philanthropy, Mr. Rheingans-Yoo knew that Mr. Bankman-Fried routinely disguised transfers as "charitable" contributions. Many of those transfers were little more than pretense to enrich Mr. Bankman-Fried's acquaintances—among them, Mr. Rheingans-Yoo himself.

As you know, whether a claim should be subordinated "is a fact-intensive inquiry" which the Court will not address on a motion to dismiss. *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 583 (Bankr. D. Del. 2012). The Trust intends to take discovery of Mr. Rheingans-Yoo relating to the creation of the FDU Bonus and his intent to designate Manifold for Charity as the recipient.

*In Pari Delicto*

Your argument that the doctrine of *in pari delicto* is a "complete defense" to the Amended Complaint also is inapposite. Motion¶¶ 83-88. *In pari delicto* is an affirmative defense that does not—by itself—bar the Trust from seeking to recover or avoid fraudulent transfers and obligations. *See In re Student Fin. Corp.*, 335 B.R. 539, 547 (D. Del. 2005) ("[*I*]*n pari delicto* is an affirmative defense . . . [and] will not operate to bar claims against insiders of the debtor corporation"). An affirmative defense cannot typically serve as the basis for a Rule 11 sanction. *See In re Berger Indus.* 298 B.R. 37, 41 (Bankr. E.D.N.Y. 2003) ("Requiring a plaintiff to anticipate affirmative defenses to avoid Bankruptcy Rule 9011 sanctions reorders traditional burdens of pleading and would, in effect, impermissibly change the requirement for a reasonable pre-filing inquiry into pre-filing discovery."). Regardless, the defense fails on the merits. *In parli delicto* does not apply where, as here, independent management has replaced the former wrongdoers, and the Trust now pursues the claims. *See Scholes* v. *Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (concern that a "wrongdoer [will] be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors . . . falls out" if the wrongdoer has been "ousted from control of and beneficial interest in the corporations"); *see also In re Art & Architecture Books of the 21st Century*, 2019 Bankr. LEXIS 3736, at *48-49 (Bankr. C.D. Cal. Dec. 6, 2019) ("The court agrees with the Plan Agent that it is not equitable, if not in bad taste, for [defendant] to argue that if he committed bad acts as debtor's principal, they are imputed to the Plan Agent who, under the Plan, is attempting to recover the value of the estate for payment of the claims of innocent creditors who were apparently victimized by such bad acts."). Moreover, courts generally find the defense inapplicable to actions arising out of the Bankruptcy Code, such as those seeking to avoid fraudulent transfers or for equitable subordination. *See In re Personal & Bus. Ins. Agency*, 334 F.3d 239, 245-47 (3rd Cir. 2003) (holding that the doctrine of *in pari delicto* does not apply to a trustee bringing an action under § 548); *see also In re Auto. Profs., Inc.*, 398 B.R. 256, 262-63 (Bankr. N.D. Ill. 2008) (collecting cases); *In re Bernard L. Madoff Inv. Secs. LLC,*557 B.R. 89 (Bankr. S.D.N.Y. 2016); *In re Bernard L. Madoff Inv. Secs. LLC*,

Scott D. Simon	-6-

2015 WL 4734749, at *17 (Bankr. S.D.N.Y. Aug. 11, 2015) (unclean hands "is not a defense to an equitable subordination claim because the claim focuses on the inequitable conduct of the creditor, not the debtor").

*   *   *

The unfounded accusations in your letter and draft Motion come nowhere close to establishing a Rule 9011 or Section 1927 violation, and the Trust will not withdraw the Motion for Reconsideration or the Amended Complaint. Please be advised that if Mr. Rheingans-Yoo files his frivolous motion, the Trust reserves all rights, including to obtain costs from Mr. Rheingans-Yoo. *See* Fed. R. Civ. P. 11(c)(2) ("[T]he court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.").

Sincerely,

*/s/ Brian D. Glueckstein*

Brian D. Glueckstein

cc:	Stephanie G. Wheeler
	(Sullivan & Cromwell LLP)

	Adam G. Landis
	(Landis Rath & Cobb LLP)

	Michael Joyce
	(Joyce LLC)