**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 20, 2025 at 9:30 a.m. (ET)** |
| | **Objection Deadline: November 13, 2025 at 4:00 p.m. (ET)** |

**MOTION OF SETH MELAMED SEEKING ENTRY OF
AN ORDER: (I) COMPELLING THE PERFORMANCE
OF BITFLYER UNDER THE FTX JAPAN SALE ORDER [D.I. 20560], OR
ALTERNATIVELY, (II) COMPELLING THE FTX RECOVERY TRUST
TO PAY AMOUNTS OWED UNDER THE KEIP ORDER [D.I. 1589]**

Seth Melamed ("**Melamed**"), by his undersigned counsel, hereby files this motion (this "**Motion**") seeking entry of an order: (i) compelling the performance of bitFlyer Holdings, Inc. ("**bitFlyer**") under the *Order (I) Authorizing and Approving Sale of Debtors' Interests in FTX Japan K.K. Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving FTX Japan Holding K.K.'s Entry into, and Performance Under, the Purchase and Sale Agreement; (III) Dismissing the Chapter 11 Case of FTX Japan K.K. Effective as of Closing; and (IV) Granting Related Relief* [D.I. 20560] (the "**FTX Japan Sale Order**"); and/or alternatively (ii) compelling the FTX Recovery Trust (the "**FTX Recovery Trust**")[2] to pay amounts owed under the *Order Authorizing Implementation of a Key Employee Incentive Plan*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. A complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX

[2] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established through the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404] which became effective on January 3, 2025 [D.I. 29127].

[D.I. 1589] (the "**KEIP Order**").  In support of this Motion, Melamed respectfully states the following:

<div align="center">**PRELIMINARY STATEMENT**</div>

This Motion[3] seeks targeted enforcement of two prior, final orders of this Court. First, the FTX Japan Sale Order approved the Purchase and Sale Agreement ("**FTX Japan PSA**"), under which bitFlyer expressly assumed the post-closing KEIP Transaction Award obligation and agreed to pay "any applicable Transaction Awards …within sixty (60) calendar days of the Closing," while "Seller [and] any of its Affiliates shall have no obligations for any payments contemplated by the KEIP Order in connection with the Transactions." FTX Japan PSA § 4.5. The Transaction closed on July 26, 2024, making payment due by September 24, 2024.

Second and alternatively, if the Court determines that FTX Japan PSA § 4.5 does not encompass Mr. Melamed's KEIP Transaction Award, the KEIP Order independently entitles him to payment as an administrative expense once earned, with payment due within 60 days of closing.[4]  The Court retained jurisdiction in the Sale Order to interpret and enforce both orders, and its authority to enforce its own orders is well settled.

Under the KEIP Order, Melamed was to receive the Transaction Award by no later than September 24, 2024 – 60 days after the sale of FTX Japan was consummated.  Although bitFlyer expressly assumed the KEIP obligations under the FTX Japan PSA, bitFlyer has disclaimed its obligation to pay the Transaction Award simply noting that "[a]t this time, bitFlyer is not obligated to make any KEIP payments to Melamed in connection with the sale of FTX Japan."

The FTX Recovery Trust (and prior to it, the Debtors) have also refused to pay the KEIP

---

[3] Since this Motion relies solely on legal issues and undisputed facts, it is not subject to the discovery schedule to be submitted by the parties pursuant to the *Order Granting in Part and Denying in Part Cross-Motion of Seth Melamed Seeking to Compel Arbitration of the Claims* [D.I. 32058] (the "**Cross-Motion Order**").

[4] The FTX Japan Sale Order did not relieve the Debtors of the KEIP Obligation.

Award by noting that the obligation was assumed by bitFlyer.  The Debtors/FTX Recovery Trust also claims that Melamed **refused**[5] to sign a "customary" release of all his claims against the Debtors which is false and conveniently ignores that the Debtors <u>never</u> sent him the final version of the document.  The "customary releases" were presented to the KEIP Participants in September of 2024.  At that time, Melamed was targeted, given his objection to the Plan and it appears that the Debtors omitted him as a recipient of the final documents.

In light of the positions taken by the FTX Recovery Trust and bitFlyer, Melamed hereby requests that this Court determine which party (*i.e.* bitFlyer and/or the FTX Recovery Trust) is liable for the amounts under the KEIP Order and direct such party(ies) to pay the Transaction Award forthwith.[6]  In addition, due to the bad faith conduct of both bitFlyer and the FTX Recovery Trust, Melamed requests that: (i) the Court require the parties to pay interest on the amount of the Transaction Award (at 3.5% -below the federal post judgment interest rate) from September 24, 2024 to the date that the Transaction Award is paid; and (ii) the fees and expenses associated with the filing of this Motion.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] *See Debtors' Amended Objection to Claims of Seth Melamed* (the "**Amended Claims Objection**") at ¶ 52, 54 [D.I. 30364].
[6] Given the Debtors refusal to send Melamed the "customary release" in September of 2024 and bitFlyer's refusal to honor section 4.5 of the FTX Japan PSA, it is respectfully requested that the Court award Melamed his expenses incurred for the filing of this motion.

2.     In approving the FTX Japan PSA, the Court retained jurisdiction "to interpret, implement and enforce" the FTX Japan Sale Order and the FTX Japan PSA and "to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction." Paragraph 30 of the FTX Japan Sale Order provides that:

> This Court shall retain jurisdiction to, among other things, interpret, *implement and enforce the terms and provisions of this Sale Order and the Agreement*, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

Second, the KEIP Order independently entitles him to payment as an administrative expense once earned, with payment due within 60 days of closing. The Court retained jurisdiction in the Sale Order to interpret and enforce both orders, and its authority to enforce its own orders is well settled.

3.     The predicates for the relief sought herein are sections 105(a) of the Bankruptcy Code and the Court's continuing authority to interpret its own orders.  *See In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 200 (3d Cir. 2022) (bankruptcy courts always "have jurisdiction to interpret and *enforce* their prior orders.") (emphasis supplied).

4.     Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), Melamed consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

5.      Melamed was the Chief Operating Officer of Liquid Group, Inc., a cryptocurrency exchange with its primary business located in Japan.  FTX acquired LGI on or about April 4, 2022.[7]

6.      On and after November 11, 2022 and November 14, 2022, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

7.      On April 26, 2023, Debtors filed the Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan [D.I. 1359] (the "**KEIP Motion**").  *See Declaration of Seth Melamed in support of Order: (i) Compelling the Performance of Bitflyer Under the Sale Order, or Alternatively, (ii) Compelling the FTX Recovery Trust to Pay Amounts Owed Under the KEIP Order* ("**Melamed Declaration,**" attached hereto as **Exhibit 1**) at ¶ 3.

8.      The KEIP Motion identified Melamed as one of seven persons to be a KEIP Participant (referencing him as the Chief Operating Officer of FTX Japan).  To support the approval of the KEIP Motion, the Debtors submitted the *Declaration of Edgar W. Mosley II in Support of Motion of Debtors for Entry of an Order Authorizing and Approving the Debtors' Key Employee Incentive Plan* [D.I. 1359-3] (the "**Mosley Declaration**")[8] which sets forth the factual

---

[7] Melamed's claims have previously been the subject of proceedings before the Court.  *See e.g.* Cross-Motion Order.
[8] The Mosley Declaration served as the evidentiary basis for the Court's approval the KEIP Motion.  In connection with the Amended Claims Objection, the Debtors have filed a declaration of another principal at Alvarez, Henry Chambers, that asserts that Melamed's claim should be subordinated under Section 510(c) of the Bankruptcy Code. *See Declaration of Henry Anthony Chambers in Further Support of Debtors' Amended Objection to Proofs of Claim filed by Seth Melamed and Motion for Subordination Pursuant to 11 U.S.C. §§ 510(B) and 510(C)(1)* [D.I. 30366]. These declarations, both from Alvarez & Marsal ("**A&M**"), reflect the gamesmanship that the Debtors (and the FTX Recovery Trust) has adopted to avoid paying Melamed.  When it suited their goals, the Debtors, through Alvarez, were quick to point out that Melamed has provided tremendous effort and leadership which resulted in a critical

basis upon which the Debtors' sought to obtain Court approval of the KEIP.   The Mosley

Declaration describes in great detail the exemplary efforts of Melamed and the six other

participants to date and why the Debtors should be authorized to pay these individuals

(collectively, the "**<u>KEIP Participants</u>**") the KEIP Award.

> The KEIP Participants have stepped up in their roles and have engaged effectively with regulators, endeavored to stabilize the Company's workforce and operate the Company efficiently and have made significant progress towards the Company's goal of either pursuing a Transaction or resuming exchange operations. As a result of the KEIP Participants' diligence, the Company was able to resume withdrawals from users' accounts on February 21, 2023, **which was a critical achievement**, because these capabilities are necessary for the Company to be able to operate and to maintain and maximize its going concern value.  Because of the KEIP Participants' tremendous efforts, was able to resume withdrawals from users' accounts on February 21, 2023—a critical feat, given that these capabilities are essential to [Holdings'] ability to operate and to maintain and maximize its going concern value.

> The seven KEIP Participants' institutional knowledge, industry experience and specialized skills are essential to maximize the Company's value through the administration of these Chapter 11 Cases and during a Transaction or Reorganization. **The KEIP Participants perform integral functions for the Company, including serving as the leaders of the Company's compliance efforts, liaising with regulators and serving as the technical leads of the Company, and in such positions, they serve in various critical roles, including performing functions related to the Debtors' ability to ensure the return of users' assets, resume operations as an exchange, effectively respond to regulatory inquiries and effectuate a successful Reorganization or Transaction.**

Mosley Declaration, ¶¶ 8, 14 (emphasis supplied); *see also* Melamed Declaration at ¶ 4.

9.        On June 8, 2023, this Court entered the *Order Authorizing Implementation of*

*a Key Employee Incentive Plan* [D.I. 1589] (the "**<u>KEIP Order</u>**").  Melamed Declaration at ¶ 5.

10.        Exhibit "A" to the KEIP Order (entitled KEIP Terms) provides that a

Transaction Award (as defined in the KEIP Order) is earned when a sale is consummated and is

payable within sixty days following the closing.  *See* Melamed Declaration at ¶ 6 (referencing

---

achievement.   In connection with the Amended Claims Objection, the FTX Estate, through A&M, conjure up alleged prepetition conduct that demonstrates "inequitable conduct" to subordinate the very same claim that it sought the Court's approval.

the KEIP Order, Exhibit A, ¶5).

11.     The KEIP Order placed *no* conditions on the earning of the KEIP award other than the KEIP Participant's continued employment through the "applicable Transaction or Reorganization that triggers the payment." Melamed Declaration at ¶ 7.  Paragraph 5 of the KEIP Order specifies, among other things, when a Transaction Award is earned:

> Each KEIP Participant will earn the second KEIP payment (the "Transaction or Reorganization Award") upon the earlier of: (i) the consummation of a Transaction (the "Transaction Award") or (ii) the Reorganization (the "Reorganization Award"), *in each case subject to the continued employment of the KEIP Participant through the applicable Transaction or Reorganization that triggers the payment*…. If earned, the Transaction Awards will be payable to each applicable KEIP Participant within 60 days of the closing of the Transaction.

Melamed Declaration at ¶ 7.  Furthermore, Paragraph 5 of the KEIP Order provides that:

> Once earned, the Debtors' obligations to pay amounts that become due and owing under the KEIP will constitute administrative expenses pursuant to section 503(b) of the Bankruptcy Code, thereby entitled to priority payment pursuant to section 507(a)(2) of the Bankruptcy Code.

*Id.*

12.     Following the entry of the KEIP Order, Melamed continued to work closely with the FTX Japan management team and engineers and engage with the regulator, the Japan Financial Services Agency (JFSA).  *Id.* at ¶ 8.  Melamed and the team's focus was to restart the exchange operations of FTX Japan.  *Id.*  To achieve this, various initiatives were undertaken to significantly improve the exchange. These included implementing a new wallet system, conducting a third party cybersecurity audit with subsequent remediation of all identified issues, and upgrading the exchange's back-end infrastructure.  Despite these significant efforts, the FTX Debtors ultimately decided against allowing a restart of the FTX Japan exchange business and instead opted to sell the business which, at that time, had been dormant for over sixteen months to bitFlyer.

13.         In late 2023, the Debtors circulated a document entitled "General Release and Waiver of Claims" (the "**General Release**") in order to participate in the KEIP.  Among other things, the General Release would have released any claims against the Debtors other than the KEIP, a form of a customary release.  *Id*. at ¶ 9.  Melamed's prior counsel engaged in discussions with the Debtor's counsel.  A number of changes were made to the document.  *Id.*, **Exhibit "A"**.  On December 22, 2023, Melamed's counsel asked Debtors' counsel: "Would you like to send around a final copy for execution?" *Id.*, **Exhibit "B"**.  Melamed never refused to sign the award agreement. The Debtors never sent Melamed an execution version of the General Release.

14.         On June 20, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (i) Authorizing and Approving Sale of Debtors' Interests in FTX Japan K.K. Free and Clear Of All Liens, Claims, Interests and Encumbrances; (ii) Authorizing and Approving FTX Japan Holding K.K.'S Entry Into, and Performance under, the Purchase and Sale Agreement; (iii) Dismissing the Chapter 11 Case of FTX Japan K.K. Effective as of Closing; and (iv) Granting Related Relief* (D.I. 17923; the "**Sale Motion**"). *Id*. at ¶ 10.  Attached as *Exhibit B* to the Sale Motion is the proposed FTX Japan PSA.  Among other things, the Sale Motion sought approval to sell the estate's interests in FTX Japan to bitFlyer.

15.         Section 4.5 of the Purchase and Sale Agreement between FTX Japan PSA provides that:

> 4.5 <u>Post-Closing KEIP Obligations</u>. Following the Closing, Purchaser shall, or shall procure that the Subject Company shall, pay any applicable Transaction Awards to any applicable KEIP Participants within sixty (60) calendar days of the Closing and otherwise in accordance with the terms and conditions set forth in the KEIP Order. *Neither Seller nor any of its Affiliates shall have any obligations for any payments contemplated by the KEIP Order in connection with the Transactions.*

*Id.* at ¶ 11 (emphasis supplied). *See* D.I. 17923, Exhibit B.

16.         On July 16, 2024, the Court entered the FTX Japan Sale Order.  *Id*. at ¶ 12.

Pursuant to paragraph 30 of the Sale Order, this Court retained jurisdiction over disputes concerning the implementation, interpretation and enforcement of the Sale Order and the FTX Japan PSA.

> This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

*Id.*

17.    The Transaction closed on or about July 26, 2024.  *Id.* at ¶ 13.  Melamed resigned as Representative Director of FTX Japan on that date.  *Id.*  On July 30, 2024, Melamed was terminated, without cause, by the Debtor as Representative Director of FTX Japan Holdings.  *Id.*

18.    On Friday, August 16, 2024, Melamed filed the *Joinder in Objection of Retail Creditors and Reservation of Rights* (the "**_Joinder_**") [D.I. 23167].  *Id.* at ¶ 14.  The Joinder adopted various arguments of certain retail creditors to the First Amended Plan.  On Tuesday, August 20, 2024 – more than three weeks after the sale of FTX Japan and Melamed's resignation and termination by K.K.– and in clear retaliation to the Joinder - the Debtors advised Melamed that his termination was now being redesignated as termination for cause.  *Id.*  In a letter dated August 20, 2024, from Kurt Knipp, a director at FTX Japan Holdings, Melamed was advised that:

> Notice of Breach. It has come to our attention that the Joinder of Seth Melamed to the Objections to the Plan Raised by the Retail Customers and Reservation of Rights (D.I.23167) was filed by you in the United States Bankruptcy Court for the District of Delaware on August 16, 2024. Accordingly, this letter (this "Letter") is to provide you with notice of a material breach by you of Section 3.1(e) of the FTX Japan Management Agreement.

> Termination for Cause. In accordance with the terms of the FTX Management Agreement, such material breach must be cured within 30 days of receipt of this Letter, failing which you will be deemed to have been terminated with Cause (as defined in the

FTX Japan Management Agreement) pursuant to Section 11.2(a) of the FTX Japan Management Agreement effective as of the date of this Letter.

*Id.,* **Exhibit "C"**.  The August 20th Letter improperly asserts that Melamed's joinder to the plan objections of the retail customers justified characterizing Melamed's conduct as a breach of the Management Agreement.  Knipp's argument is without legal merit. *See Declaration of Takane Hori in support of Payment of Post Petition Director's Fees* filed on April 7, 2025 at ¶¶ 26-30 [D.I. 30080].

19.     Pursuant to the KEIP Order, Melamed was entitled to be paid the KEIP award on or before September 24, 2024.  *Id.* at ¶ 13.  Based on the FTX Japan Sale price of 4.5 billion JPY to bitFlyer, the KEIP award payable to Melamed is approximately USD $112,116 (the "**KEIP Award**").  *Id.*

20.     In September of 2024, the Debtors circulated a final form of the "customary release" to the six other KEIP Participants.  *Id.* at ¶ 16.  At that time, Melamed did not receive an execution version of the document that had previously been negotiated (see []) or for that matter any document.  *Id.*

21.     In the Amended Claims Objection, the Debtors raised three arguments as to why the Transaction Award was not paid.  *Id.* at ¶ 17.  First, the Debtors asserted that the KEIP Award was duplicative of Melamed's prepetition salary and bonus Claim.  *Id.*; Amended Claims Objection at ¶ 52.  Second, the Debtors asserted twice in the Amended Claims Objection that Melamed "refused" to sign an award agreement.  *Melamed Declaration.* at ¶ 17; Amended Claims Objection at ¶¶ 52, 54.  Third, the Debtors asserted that they were relieved of any liability for the Transaction Award following the sale of FTX Japan.  *Melamed Declaration.* at ¶17; *Amended Claims Objection* at ¶ 54.

22.     On September 5, 2024, bitFlyer inquired whether Melamed would be able to

accept the KEIP Payment in Euros or Yen.  *Id.* at ¶ 18; *see also* **Exhibit "D"**.  After that bitFlyer went silent and did not respond to follow up emails from Melamed on September 5th, 23rd and 26th of 2024.  *Id.*  In response to a further email from Melamed on January 14, 2025, bitFlyer responded on January 17, 2025 stating that "[a]t this time, bitFlyer is not obligated to make KEIP payments to Mr. Melamed in connection with the sale of FTX Japan."  *Id.*

23.     On October 8, 2024, the Bankruptcy Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates*. [D.I. 26404] (the "**Plan**").

24.     On November 7, 2024, Melamed filed an administrative expense claim (the "**Administrative Claim**").  The Administrative Claim asserted two claims that were entitled to administrative status: i) unpaid amounts due under the KEIP Order; and ii) amounts owed on account of Monthly Director Fees (for which Melamed never received a single payment presumably justified by the Debtors on account of the August 20th Letter).  *Id.* at ¶ 19.

25.     On December 9, 2024, the Debtors filed the Amended Claims Objection which included an objection to his administrative claim for amounts owed under the KEIP Order.

26.     On January 3, 2025, the Plan went Effective and the FTX Trust succeeded to the rights and liabilities of the Debtors. S*ee Notice of Effective Date of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

## **RELIEF REQUESTED**

27.     By this Motion, Melamed requests that the Court enter an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) directing bitFlyer to perform its obligations under the FTX Japan Sale Order (including its obligations under Section 4.5 of the

FTX Japan PSA); and/or in the alternative (ii) compelling the FTX Recovery Trust to pay the

KEIP award to Melamed; and (iii) granting such other relief as the Court deems just and proper

including, but not limited to, interest on the Transaction Award from September 26, 2024 to the

date of payment and legal fees associated with the filing of this Motion.[9]

### BASIS FOR RELIEF REQUESTED

28.        This Motion seeks to enforce and compel performance of either bitFlyer or the

FTX Trust with two prior and final orders of this Court -- the KEIP Order and the FTX Japan

Sale Order -- and direct such parties to pay Melamed the Transaction Award.  Under the KEIP

Order, Melamed was entitled to a Transaction Award upon the sale of FTX Japan.   Under the

FTX Japan Sale Order, bitFlyer specifically assumed this liability.

29.        This Motion, among other things, seeks the enforcement of both the KEIP

Order and the FTX Japan Sale Order.   Both of these Orders were sought by the Debtors during

the bankruptcy case.   Both the FTX Trust (as the successor to the Debtor) and bitFlyer have

*willfully* not complied with the provisions of these Orders.

30.        It is axiomatic that a bankruptcy court has authority to "interpret and enforce

its own prior orders." *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009); *In re Ross*,

858 F.3d 779, 783 (3d. Cir. 2017).  Here, the Court specifically retained jurisdiction under the

FTX Japan Sale Order. Second, section 105(a) of the Bankruptcy Code provides that the Court

"may issue any order, process, or judgment that is necessary or appropriate to carry out the

provision of this title."  *See* 11 U.S.C. § 105(a).

31.        The Debtors actively sought the Court's approval of the KEIP Order to

incentivize the efforts of key employees to maximize the recovery to the estate.  That milestone

---

[9] If payment were made on November 24, 2025, Melamed would be entitled to 14 months of interest (1.16 years) which, if not compounded, would equal $4,578.04.

was achieved on July 26, 2024.   The Debtors then repudiated their obligation to Melamed under the KEIP Order – the very order that they had previously sought.

32.        As noted above, the Debtors (and now the FTX Recovery Trust) have raised three reasons for their refusal to pay.   <u>First</u>, the Debtors asserted that the KEIP Award was duplicative of Melamed's prepetition salary and bonus Claim.  Amended Claims Order at ¶ 52. The KEIP Award is a separate post petition incentive program approved by the Court.  The KEIP has nothing to do with prepetition wages or bonus.

33.        <u>Second</u>, the Debtors asserted twice in the Amended Claims Objection that Melamed "refused" to sign an award agreement.  Amended Claims Objection at ¶¶52, 54.  The KEIP Motion did not indicate that this was a  condition to receipt of the KEIP Award.  More importantly, Melamed did not refuse to sign the award agreement – it was never presented to him.  As noted above, Melamed and the Debtors negotiated the form of the Release and the Debtors never sent Melamed a final version for execution.

34.        <u>Third</u>, the Debtors asserted that they were relieved of any liability for the Transaction Award following the sale of FTX Japan.  Amended Claims Objection at ¶54.  The KEIP Order required the Debtors to pay these amounts. While bitFlyer agreed to assume the KEIP liabilities under Section 4.5 of the FTX Japan PSA, the FTX Japan Sale Order did not explicitly vacate or modify the KEIP Order and the Debtors (and the FTX Recovery Trust) remain liable for those obligations.  Once entered, an order of the Court "remains binding and enforceable according to its terms unless and until modified or vacated by a subsequent order of the Court." *In re Genesis Health Ventures, Inc*., 355 B.R. 438, 446 (Bankr. D. Del. 2006).  The mere entry of a later order that is silent on the subject does not alter the prior one; "silence in a later order is not sufficient to infer an intent to vacate or modify an earlier binding order of this

Court." *Id.; see also In re Motors Liquidation Co.*, 943 F. Supp. 2d 613, 621 (S.D.N.Y. 2013) ("Modification of a prior order requires clear expression; it cannot be inferred from silence.").

35.    bitFlyer, for its part had initially indicated in a September 5, 2024 email that it was prepared to pay Melamed the Transaction Award.  *See Melamed Declaration*, Exhibit D. bitFlyer went "dark" after September 5, 2024 and did not respond to multiple emails from Melamed until January 5, 2024 at which time it denied it had any obligation (presumably at the behest of the Debtors) stating without any explanation "[a]t this time, bitFlyer is not obligated to make any KEIP payments to Melamed in connection with the sale of FTX Japan" despite the explicit assumption of the KEIP obligation under section 4.5 of the FTX Japan PSA as approved by the FTX Japan Sale Order.

36.    The Court should enforce the KEIP Order and the FTX Japan Sale Order and compel the FTX Recovery Trust and/or bitFlyer to pay the Transaction Award.   Melamed also requests that the Court award fees to Melamed (and interest on the KEIP Award at 3.5% from September 24, 2024) given the parties' blatant disregard of prior Orders which necessitated the filing of this Motion.

## NOTICE

37.    Notice of this motion will be given to: (a) the FTX Recovery Trust; (b) bitFlyer c/o Ryota Sasaki (at the email address identified in Section 7.5 of the FTX Japan PSA); (c) the U.S. Trustee; and (d) any party that, as of the filing of this Motion, has requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Melamed submits that no other or further notice of this Motion is necessary or required.

## RESERVATION OF RIGHTS

38.      Melamed reserves all rights to (i) amend or supplement this Motion, (ii) serve

discovery in connection with this Motion, and (iii) seek additional relief from the Court.

## CONCLUSION

**WHEREFORE**, Melamed respectfully requests that the Court enter the Proposed Order,

(i) Compelling the Performance of bitflyer Under the Sale Order, or Alternatively, (ii)

Compelling the FTX Recovery Trust to Pay Amounts Owed under the KEIP Order (D.I. 1589);

and (iii) granting such other and further relief as the Court deems just and proper, including, but

not limited to, interest on the Transaction Award and fees associated with the filing of this

Motion.

Dated: October 31, 2025
Wilmington, Delaware

<div style="margin-left:40%">

**McCARTER & ENGLISH, LLP**

/s/ *Kate R. Buck*
Kate R. Buck (No. 5140)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile (302) 984-6399
kbuck@mccarter.com
-  and  -
David J. Adler (admitted *pro hac vice*)
250 W. 55th Street, 13th Floor
New York, NY 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
dadler@mccarter.com
*Counsel to Seth Melamed*

</div>