**Weiwei Ji**
Singapore

**Date:** November 10, 2025

Clerk of the Court
United States Bankruptcy Court
District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

Re: **In re FTX Trading Ltd., et al., Case No. 22-11068 (KBO)**

**Filing of: LIMITED OBJECTION OF WEIWEI JI TO THE FTX RECOVERY
TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE
CLAIMS OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE
CLAIMS OBJECTION DEADLINE (D.I. 33444)**

Dear Clerk,

Please find enclosed **one original** of the above-referenced **Limited Objection** for
filing in this case. I respectfully request that the enclosed document be filed on the
docket.

Thank you for your assistance.

Sincerely,
**Weiwei Ji**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.,* | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Ref. No. 33444** |

## LIMITED OBJECTION OF WEIWEI JI TO THE FTX RECOVERY TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE (D.I. 33444)

Weiwei Ji ("Objector"), a creditor in the above-captioned chapter 11 cases, respectfully submits this limited objection (the "Limited Objection") to the Motion of the FTX Recovery Trust for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline [D.I. 33444] (the "Motion"). In support of this Limited Objection, the Objector states as follows:

### PRELIMINARY STATEMENT

1.    Objector does not oppose, in principle, a reasonable extension. These Chapter 11 cases remain unprecedented in global scale and complexity, and the Recovery Trust continues to shoulder substantial administrative and litigation burdens.

2.    However, the Extension Motion—as currently presented—seeks a substantial, unconditional one-year extension without offering any corresponding transparency, oversight, or procedural safeguards for creditors whose claims have been unilaterally designated as "disputed" without explanation. For these creditors, the lack of information regarding the

that key information is not disseminated within the Trust's administrative processes. This contributes to the perception of a black-box system in which creditors have no visibility into the status of their claims.

## II.    Even Attorney-to-Attorney Communication Yields No Substantive Detail

6.    This communication failure is not limited to individual or international creditors. Creditor's counsel has, on multiple occasions, attempted to communicate directly with the Trust's counsel regarding disputed designations. These efforts have likewise yielded little to no substantive information. Responses—when provided—were high-level, generic, and lacked any claim-specific explanation. This demonstrates that the communication gap is structural rather than individual, arising not from creditor misunderstanding or miscommunication, but from the absence of internal processes that allow for timely, substantive disclosure.

## III.    Creditors Bear Real Costs; the Trust Bears None and May Even Benefit from Delay

7.    The burdens in these cases fall overwhelmingly on creditors, particularly those whose claims remain in disputed status. These creditors must continue expending time, legal fees, and administrative costs simply to seek basic information regarding their own claims, often without receiving any substantive response. International creditors face even greater burdens, including translation expenses and cross-border procedural obstacles. By contrast, the Trust bears no economic consequence for delay. All professional fees and administrative costs are paid exclusively from estate assets, meaning prolonged administration imposes real financial harm only on creditors.

investigation or litigation. A broad, undifferentiated one-year extension is therefore neither necessary nor appropriate.

12.    A more targeted approach—prioritizing the resolution of straightforward claims while allocating additional time only for genuinely complex matters—would improve efficiency, enhance transparency, and support the Court's oversight responsibility. It would also ensure that simple claims are not indefinitely delayed due to unrelated complex disputes.

### VI.    A Shorter, Conditional Extension Is Appropriate

13.    For these reasons, if the Court determines an extension is warranted, Objector respectfully submits that it should not grant a full unconditional year. A more balanced and oversight-driven approach would be a shorter, conditional extension—such as ninety days— during which the Trust must demonstrate measurable progress in dispute categorization, communication procedures, transparency, and claims administration. At the end of that period, the Court can evaluate whether further extension is justified based on the Trust's actual performance and good-faith efforts.

### VII.    Requested Safeguards

14.    Accordingly, Objector objects only to the unconditional and year-long nature of the extension requested, and respectfully urges the Court to condition any extension on:

(a)    disclosure of dispute categories and grounds;

(b)    a roadmap with estimated time windows for each dispute category;

(c)    periodic status reporting to the Court and creditors;

(d)    partial allowance with a reserve where appropriate;

(e)    safeguards ensuring time-value neutrality for creditors whose distributions are delayed solely due to administrative status; and

17.    In multiple filings and hearings, the Debtors and the Trust have represented that the claims reconciliation process has advanced significantly. Specifically, they have stated that:

   (a)    The majority of global asset recovery and reconciliation has been completed;

   (b)    Most straightforward customer claims have been resolved;

   (c)    Only a small percentage of the claims population remains unresolved; and

   (d)    The case has transitioned into a later procedural stage focused on a narrower set of remaining issues.

These statements demonstrate that the current posture of the case is materially different from earlier phases and that the remaining unresolved claims vary significantly in complexity.

**III.    Despite the Case Entering a Later Stage, Numerous Simple Claims Remain Marked as Disputed Without Explanation**

18.    Creditor's experience, as well as reports from many similarly situated creditors, shows that numerous simple, fully documented claims remain marked as "disputed" without explanation. Examples include:

   (a)    Creditor's spouse's claim (Claim No. 60161),

   (b)    Creditor's wholly owned Hong Kong company's claim (Claim No. 45581),

   (c)    Creditor's brother's claim (Claim No. 51901), and

   (d)    Many overseas creditors' claims.

These claims share common characteristics: clear trading histories, complete supporting records, no allegations of misconduct, and no apparent legal or factual complexity. Yet they remain disputed indefinitely, with no stated basis.

for the September 30 distribution, while his spouse's and company's claims remained disputed with no explanation.

## VI.    The July 2 and October 20 Motions Altered Creditors' Understanding of "Disputed" Status

23.    On July 2, 2025, the Trust filed a motion [D.I. 31148] proposing the "Restricted Jurisdiction Procedures," in which it identified 49 countries as potentially restricted jurisdictions. In that filing, the Trust explained that it was concerned that making digital-asset distributions to creditors in those jurisdictions—particularly through the designated Distribution Service Providers ("DSPs")—could expose both the Trust and the DSPs to regulatory or legal risk. For many creditors, including Creditor, this was the first time it became clear that their "disputed" status might be tied to the Trust's concerns about the legal risks of distributing digital assets into certain countries, rather than—as previously suggested—the unavailability of a suitable DSP.

24.    On October 20, 2025, the Trust filed a revised motion [D.I. 33193], shifting its rationale again—this time asserting concerns arising from the "digital-asset origin" of certain claims.

25.    These shifting explanations caused significant confusion among creditors attempting to understand why their claims were disputed. Although both motions were ultimately withdrawn under the Court's supervision, the uncertainty regarding disputed designations persisted.

## VII.    The Meaning of "Disputed" Has Shifted Multiple Times Over the Past Year

26.    Throughout 2025, the basis for disputed designations changed repeatedly:

(a)    Early 2025: Believed by creditors to be related to DSP availability;

**IX.    Creditors Have No Effective Channel to Clarify or Resolve Their Disputed Status**

30.    The following systemic issues are consistently reported:

(a)    Support email responses are automated or template-based;

(b)    Address updates do not result in status changes;

(c)    The Kroll portal provides no claim-specific information;

(d)    Counsel-to-counsel communications yield no meaningful explanation;

(e)    Creditors are not told what documents are required to cure their status;

(f)    No classification, criteria, or timeline for resolving disputed claims has been disclosed.

Consequently, many creditors remain indefinitely frozen in disputed status without any guidance, transparency, or path toward resolution.

**X.    The Trust's Own Extension Motion Confirms That the Case Has Entered a Later Procedural Stage**

31.    The Trust's Motion to extend the Claims Objection Deadline [D.I. 33444] provides further confirmation that the claims reconciliation process has advanced substantially. According to the Motion:

(a)    The initial claims pool included over 682,000 filed and scheduled claims totaling more than $447 billion;

(b)    The unresolved pool has been reduced to approximately 25,400 claims, consisting of:

- nearly 24,200 customer claims,

- 11 -

*Bank of Mass.*, 549 U.S. 365, 375 (2007). The Third Circuit similarly instructs that courts must balance administrative needs against potential prejudice to creditors. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

35.    Accordingly, the Court is fully empowered to grant a shorter, conditional extension, impose transparency and reporting requirements, and maintain ongoing supervisory oversight. Nothing in the Bankruptcy Code, the Plan, or applicable case law requires the Court to approve the Trust's requested blanket extension.

## II.    A One-Year Unconditional Extension Would Materially Prejudice Disputed Creditors Who Currently Lack Any Explanation, Timeline, or Procedural Pathway

36.    The Trust's motion describes administrative workload but does not address the reality that thousands of creditors whose claims were designated as disputed operate in a complete information vacuum.

Disputed creditors:

  (a)    have not been informed of the reason for the disputed designation;

  (b)    have no timeline or estimated sequence for review;

  (c)    cannot cure or clarify because no basis for dispute is disclosed;

  (d)    receive only template responses from support channels;

  (e)    cannot obtain claim-level information even through retained counsel.

37.    Delaware bankruptcy courts have repeatedly recognized that a lack of transparency in administrative processes creates unfairness and harms creditor interests. In *In re Washington Mutual, Inc.*, the Court held that "transparency and disclosure are essential to ensuring creditor confidence in the fairness of the process." 442 B.R. 314, 361 (Bankr. D. Del. 2011). This principle reflects that transparency is a fairness safeguard where administrative

43.    In *In re New Century TRS Holdings, Inc.*, the Court held that it "must consider the impact of delay on creditors and the integrity of the bankruptcy process." 465 B.R. 38, 47 (Bankr. D. Del. 2012). As New Century makes clear, delay itself can prejudice creditors, and the Court must weigh it. Disputed creditors have already experienced prolonged delay without explanation, communication, or procedural certainty. Extending the deadline by an additional year—without conditions—would exacerbate the substantive prejudice that New Century warns against and further undermine confidence in the integrity of the process.

**IV.    The Trust's Own Filing Demonstrates That the Case Has Entered a Later Procedural Phase, Rendering a Blanket Extension Inappropriate**

44.    The Trust's extension motion [D.I. 33444] confirms that the case has progressed far beyond the initial bulk-review stage:

(a)    more than 682,000 initial claims have been reduced to approximately 25,400 unresolved;

(b)    only "dozens" involve complex or multi-billion-dollar litigation;

(c)    198 omnibus objections and numerous individual objections have been filed;

(d)    initial distributions have already commenced.

45.    This data establishes that the remaining pool of claims is smaller, more heterogeneous, and at varying stages of complexity.

46.    Delaware courts recognize that classification and targeted processing of remaining claims is appropriate in this procedural posture. See *In re Tribune Co.*, 2015 WL 730730 (Bankr. D. Del. Feb. 19, 2015) (authorizing categorization to facilitate efficient resolution).

47.    Thus, rather than extending all claims uniformly for an additional year, the Trust should address simple and complex disputes through differentiated and transparent pathways.

(b)   disclosure of the applicable dispute category;

(c)   a projected timeline for review.

51.   This mechanism does not require the Trust to allow claims or adjudicate disputes within a specific timeframe; it merely prevents disputed creditors from being indefinitely frozen without information. It also preserves judicial efficiency, requiring only narrow, procedural relief.

**VII.   A Short, Conditional Extension—Not a One-Year Unconditional Delay—Best Balances Administrative Needs with Creditor Protections**

52.   Delaware courts have endorsed phased extensions with ongoing judicial oversight where necessary to ensure progress. In *In re Energy Future Holdings Corp.*, the Court held that "extensions in stages, coupled with continued oversight," are appropriate to balance efficient administration with creditor protections. 561 B.R. 630, 641 (Bankr. D. Del. 2016).

53.   A short, conditional extension—such as 90 days—paired with transparency, categorization, progress reporting, and narrowly tailored creditor remedies would:

(a)   prevent undue prejudice to disputed creditors;

(b)   ensure accountability;

(c)   align with controlling precedent;

(d)   preserve the integrity of the claims resolution process.

54.   In contrast, the one-year unconditional extension requested by the Trust is unnecessary, procedurally inappropriate, and incompatible with the fairness principles embedded in the Bankruptcy Code and Third Circuit jurisprudence.

- 17 -

(a)    disclosure of the creditor's dispute category;

(b)    the Trust's stated process for resolving that category; and

(c)    a projected timeline for review or next procedural steps;

provided, however, that such relief shall not:

(i) compel allowance or disallowance of any claim, or

(ii) require disclosure of privileged, confidential, or litigation-sensitive information;

61.    Directing the Trust, following its disclosure of the non-privileged categories of disputed claims pursuant to the Court's order, to implement a reasonable, second-layer prioritization framework that distinguishes between:

(a)    "Procedurally Simple and Clear-Cut Disputes," meaning categories of disputed claims that, once disclosed, reflect low-complexity, non-substantive issues such as documentation confirmation, KYC or address corrections, DSP eligibility verification, or other matters that require no fact-intensive analysis and present no genuine contest regarding the validity or amount of the creditor's claim; and

(b)    "Procedurally Complex Disputes," meaning categories of disputed claims that, once identified, involve active litigation, regulatory inquiries, substantial factual disputes, potential fraud investigations, or other matters reasonably requiring extended review.

62.    Directing the Trust to prioritize the prompt review and resolution of the "Procedurally Simple and Clear-Cut Disputes" before proceeding with the more complex categories.

63.    Reserving the Court's authority to reassess, modify, or terminate the extended Claims Objection Deadline at the conclusion of the conditional extension period based on

- 19 -

## **CONCLUSION**

68.    For the foregoing reasons, and in the interest of fairness, transparency, and orderly case administration, the Creditor respectfully submits that the Trust's request for a one-year, unconditional extension of the Claims Objection Deadline should be denied. A short, conditional extension—paired with reasonable transparency measures, periodic reporting, category-based processing, and a limited procedural mechanism for disputed creditors—is sufficient to protect the estate while preventing further unnecessary prejudice to creditors whose claims have remained unresolved for prolonged periods without explanation.

69.    These safeguards will not impede the administration of the estate. Rather, they will promote a more efficient, transparent, and court-supervised process that will ultimately accelerate the fair resolution of disputed claims and support the overall progress of this Chapter 11 case.

70.    Accordingly, the Creditor respectfully requests that the Court grant the relief set forth in the "Requested Relief" section above and grant such other and further relief as the Court deems just and proper.


Date: November 10, 2025
Respectfully submitted,


Weiwei Ji
Claim No. 37373
Singapore
weiweiji@hotmail.com

**CERTIFICATE OF SERVICE**

I, Weiwei Ji, hereby certify that on the 10th day of November 2025, I caused a true and correct copy of the foregoing *Limited Objection of Weiwei Ji to the FTX Recovery Trust's Motion for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline [D.I. 33444]* to be submitted to the Court in paper form, in accordance with the procedures applicable to pro se filings in the United States Bankruptcy Court for the District of Delaware.

I further certify that on the same date, November 10, 2025, I caused a courtesy copy of the foregoing filing to be served via Electronic Mail upon the following parties:

*Counsel for the FTX Recovery Trust:*

| | |
|---|---|
| Adam G. Landis, Esq. | Andrew G. Dietderich, Esq. |
| Kimberly A. Brown, Esq. | James L. Bromley, Esq. |
| Matthew R. Pierce, Esq. | Brian D. Glueckstein, Esq. |
| **LANDIS RATH & COBB LLP** | Alexa J. Kranzley, Esq. |
| 919 Market Street, Suite 1800 | **SULLIVAN & CROMWELL LLP** |
| Wilmington, Delaware 19801 | 125 Broad Street |
| landis@lrclaw.com | New York, NY 10004 |
| brown@lrclaw.com | dietdericha@sullcrom.com |
| pierce@lrclaw.com | bromleyj@sullcrom.com |
| | gluecksteinb@sullcrom.com |
| | kranzleya@sullcrom.com |

November 10, 2025

Date

Weiwei Ji