## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>**Hearing Date: November 24, 2025 at 9:30 a.m. (ET)**<br>**Obj. Deadline: November 13, 2025 at 4:00 p.m. (ET)** |

**OBJECTION OF SEN WANG AND YONG PING HU TO MOTION OF THE FTX RECOVERY TRUST FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE (D.I. 33444)**

Creditor Sen Wang (on behalf of himself and Ms. Yong Ping Hu), both verified creditors in these Chapter 11 cases, respectfully object to and request that the Court deny or strike the FTX Recovery Trust's Motion to Extend Deadlines to Object to Claims and Administrative Claims (D.I. 33444) (the "Extension Motion"), or, in the alternative, limit any extension to no more than six (6) months and impose strict transparency, filing, and non-discrimination measures described below.

### Preliminary Statement

1. The Extension Motion is not a neutral scheduling request; it is a substantive and indefinite grant of power that would permit the Trust to freeze and indefinitely "dispute" otherwise valid claims, thereby denying creditors timely distributions and effectively nullifying their rights under the confirmed Plan. The Trust seeks to extend objection deadlines through January 4, 2027 (and reserves the right to seek further extensions).

2. The Trust already withdrew its separate "Restricted Jurisdiction Procedures" motion (D.I. 31148) on November 3, 2025, citing the Court's October 23, 2025 oral ruling; the Trust expressly stated the withdrawal was "without prejudice" but that any renewal would require a new motion and notice. The present Extension Motion—if granted in its current form—would permit the Trust to accomplish, indirectly and without the procedural safeguards the Court demanded, much of what the withdrawn RJ motion sought to do.

3. For these reasons and those below, the Court should deny or strike the Extension Motion, or at minimum impose narrow, concrete limits and reporting requirements that prevent the Trust from using an open-ended objection period to nullify creditor rights.

### Background

4. The confirmed Plan set two specific objection deadlines: the Claims Objection Deadline and the Administrative Claims Objection Deadline. The Plan provides that the Court may extend those deadlines "upon a motion by the Plan Administrator," but any such extension must be supported by "cause shown" and must remain consistent with the Code and the Plan's structure.

5. On November 3, 2025, the Trust filed a Notice withdrawing D.I. 31148 (the Restricted Jurisdiction Procedures motion) "without prejudice," and represented that any renewal would require filing a new motion and providing notice.

6. On that same docket period, the Trust filed the present Extension Motion (D.I. 33444), requesting an extension of both objection deadlines through January 4, 2027, and reserving the right to seek further extensions. The Motion relies on generic administrative burdens and cites other Delaware bankruptcy cases for precedent, but it

neither identifies unique circumstances warranting relief nor addresses the due process harms caused by an indefinite freeze on creditor rights.

7. Notably, the Trust previously obtained a 180-day extension of the Administrative Claims Objection Deadline (from May 5, 2025 to November 3, 2025, D.I. 30991), citing similar reasons of "administrative complexity." The present Motion therefore represents a second and far broader extension request—now seeking to extend both the Claims and Administrative deadlines to January 2027 and reserving the right to extend further. Such serial extensions reveal a pattern of procedural delay rather than genuine necessity.

**Argument**

**A. The Trust Fails to Show "Cause" for an Indefinite Multi-Year Extension**

8. Bankruptcy Rule 9006(b) allows enlargement of time only "for cause shown." The Trust's generalized claims of "volume and complexity"—without identifying discrete claim categories requiring extended review or explaining why targeted relief would be insufficient—do not satisfy that standard.

9. The most significant prejudice arises from the proposed extension of the Claims Objection Deadline, not merely the Administrative Claims Deadline. By prolonging the period during which the Trust may label claims as "disputed," the Motion enables indefinite freezing of otherwise valid creditor recoveries—precisely the harm the Plan sought to avoid. This effectively allows the Trust to delay or deny distributions for months or years, without meaningful judicial oversight, under the guise of "claims reconciliation."

10. The confirmed Plan, and this Court's obligation to preserve its integrity, require that extensions be narrowly tailored and time-limited. Granting an open-ended, multi-year extension would permit the Trust to withhold distributions and delay interest accruals indefinitely for otherwise valid claims—an outcome inconsistent with the purposes of the Plan and the Bankruptcy Code.

11. Moreover, the Motion conflates two distinct deadlines: the Claims Objection Deadline—governing ordinary creditor claims—and the Administrative Claims Objection Deadline—covering only the Trust's own professional and operational expenses. The Trust offers no separate "cause" for each, underscoring that this Motion is a blanket power grab rather than a targeted request justified by case-specific need.

**B. The Motion Circumvents the Withdrawal of D.I. 31148**

12. The Trust withdrew its "Restricted Jurisdiction Procedures" motion (D.I. 31148) following the Court's October 23, 2025 hearing, stating that any renewal would require a new filing and notice. Approving the current Motion would effectively revive the same restrictive consequences the Court already addressed—allowing the Trust to delay distributions and continue selectively disputing claims under the guise of administrative necessity. This circumvention is not a procedural coincidence but a deliberate strategy driven by internal financial incentives within the Trust, as further discussed below.

**B.1 The Administrative Claims Extension Serves Only the Trust's Internal Interests**

13. While the primary harm lies in the prolonged Claims Objection Deadline, the Trust's simultaneous request to extend the Administrative Claims Deadline further reveals its self-serving intent and lack of transparency.

14. The Administrative Claims Objection Deadline concerns only the Trust's internal professional fees, consultant invoices, and post-confirmation administrative costs. Extending this deadline provides no benefit to creditors. Instead, it allows the Trust and its professionals to delay public disclosure and final reconciliation of their own compensation while continuing to draw interim payments under the Bankruptcy Code's fee procedures.

15. In practice, the extension postpones oversight—not payment. By deferring the objection period, the Trust effectively prevents creditors or the Court from reviewing escalating fee totals, while maintaining authority to continue interim disbursements to itself and its professionals. This dynamic incentivizes prolonged case administration and directly dilutes the pool of distributable assets.

16. Accordingly, the Administrative Claims extension is not merely irrelevant to creditors—it is actively adverse to their interests, preserving administrative opacity at the expense of finality and recovery.

**C. The Combined Effect of Serial Extensions Is Economically Harmful and Unequal**

17. The combined effect of these serial extensions—particularly the administrative one—is to keep the estate perpetually open, delay distributions, and

enlarge professional costs while the Trust maintains unilateral control over billions in estate funds.

18. Each extension of administrative deadlines indirectly delays final calculation of distributable funds, reduces available recoveries, and undermines the Plan's promise of prompt and equitable distributions to all creditors.

**D. Granting an Open-Ended Extension Would Create a Procedural Runway to Revive "Restricted Jurisdiction" Issues at the End of the Case**

19. The Trust withdrew its Restricted Jurisdiction motion (D.I. 31148) with the representation that any renewal would require a new motion and notice. Yet, by pushing the Objection Deadlines out to the late stages of the case, the Trust would obtain a procedural runway to defer any renewed "restricted jurisdiction" request until the very end—when creditors face acute timing pressure and the Court is incentivized to finalize the case. That sequencing would evade present scrutiny, chill distributions for years by keeping claims in "disputed" status, and recreate—by delay—the very harm the Court flagged when D.I. 31148 was withdrawn.

20. While the Court previously deemed it premature to adopt such procedures, the Trust should not exploit that prudence to delay them indefinitely. If the Trust truly believes such procedures are necessary, it must bring them through a proper noticed motion on a full record, rather than using indefinite extensions to stockpile procedural leverage and postpone distributions. [1]

---

[1] Recent public and creditor-market commentary has speculated that "restricted jurisdictions" could be left to the end of the case, with multi-year delays for certain creditor groups. While such commentary is not evidence, it illustrates the foreseeable market impact and the chilling effect of prolonged "disputed" designations absent timely judicial guidance.

**E. If the Court Considers Any Limited Relief, It Must Impose Strict Conditions**

21. If the Court determines that some limited extension is absolutely

necessary, it must impose strict safeguards to prevent further prejudice:

- Limit any extension to no more than six (6) months from entry of the order;

- Require the Trust, within 30 days, to file a detailed schedule identifying each claim

or category of claims it intends to object to and the factual and legal basis;

- Prohibit the Trust from basing any objection solely on nationality, residence, or

mailing address;

- Require withheld funds to be placed in a segregated, interest-bearing reserve under

Court supervision; and

- Require bi-monthly public status reports to creditors and the Court.

## Conclusion and Requested Relief

22. For the foregoing reasons, and in light of the Trust's prior extension,

conflation of distinct deadlines, and ongoing lack of transparency, the undersigned

creditors respectfully request that the Court:

A. Deny or strike the FTX Recovery Trust's Motion (D.I. 33444) in its

entirety;

B. Alternatively, limit any extension to six (6) months, require disclosure of

total administrative costs, prohibit nationality-based objections, mandate segregated

interest-bearing reserves for disputed claims, and require bi-monthly reporting to the

Court;

C. Grant such other and further relief as the Court deems just and proper to

preserve the integrity of the confirmed Plan and protect creditor recoveries;

D. If any extension is granted, order that the Trust shall not withhold, defer, or condition distributions based solely on nationality, residence, or mailing address, and shall not rely on any "restricted jurisdiction" theory to maintain claims in "disputed" status absent a separate, noticed motion granted on the merits;

E. To prevent any procedural abuse, order that if the Trust intends to renew or reintroduce any "restricted jurisdiction" procedures, it must do so promptly through a stand-alone motion with full notice to all affected creditors and a complete evidentiary record, rather than deferring such issues until the end of the case.

The Court should expressly prohibit the Trust from using the Objection Deadlines to delay, stage, or otherwise manipulate the timing of any such request.

Dated: November 10, 2025

Respectfully submitted,

Sen Wang (on behalf of himself and Ms. Yong Ping Hu)
FTX Account ID: 77760096 (Sen Wang)
FTX Account ID: 135752553 (Yong Ping Hu)
Address on File with FTX Recovery Trust: Hong Kong (updated address)
Email: vincentwangbj@gmail.com | Phone: +86 13910838586

## CERTIFICATE OF SERVICE

I hereby certify that as of November 10, 2025, I caused a true and correct copy of the foregoing Objection of Sen Wang and Yong Ping Hu to the FTX Recovery Trust's Motion to Extend Deadlines to Object to Claims and Administrative Claims (D.I. 33444) to be served via electronic mail upon the following recipients:

### Counsel for the FTX Recovery Trust – Sullivan & Cromwell LLP

Andrew G. Dietderich – dietdericha@sullcrom.com

James L. Bromley – bromleyj@sullcrom.com

Brian D. Glueckstein – gluecksteinb@sullcrom.com

Alexa J. Kranzley – kranzleya@sullcrom.com

### Delaware Counsel for the Trust – Landis Rath & Cobb LLP

Adam G. Landis – landis@lrclaw.com

Kimberly A. Brown – brown@lrclaw.com

Matthew R. Pierce – pierce@lrclaw.com

Matthew B. McGuire – mcguire@lrclaw.com

### Office of the United States Trustee – District of Delaware

Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov

Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov

David Gerardi – david.gerardi@usdoj.gov

Sen Wang (pro se)
Hong Kong (updated address)
Email: vincentwangbj@gmail.com