# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Ref. No. 33425 |

**OBJECTION OF FTX RECOVERY TRUST TO MOTION OF
SETH MELAMED FOR ENTRY OF AN ORDER (I) COMPELLING
THE PERFORMANCE OF BITFLYER UNDER THE FTX JAPAN
SALE ORDER, OR ALTERNATIVELY, (II) COMPELLING THE FTX
RECOVERY TRUST TO PAY AMOUNTS OWED UNDER THE KEIP ORDER**

The FTX Recovery Trust (the "Trust")[2] hereby submits this objection to the *Motion of Seth Melamed Seeking Entry of an Order: (I) Compelling The Performance of Bitflyer Under The FTX Japan Sale Order, or Alternatively, (II) Compelling the FTX Recovery Trust to Pay Amounts Owed Under The KEIP Order* [D.I. 33425] (the "Motion"). In support of this objection, the Trust respectfully states as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

### I. The Motion Is Procedurally Improper Because It Is Duplicative of Melamed's Pending Administrative Claim.

1. The relief Melamed seeks in the Motion is identical to that sought in his pending administrative claim filed on November 7, 2024 [D.I. 27798] (the "<u>Administrative Claim</u>"). Specifically, both the Motion and the Administrative Claim seek payment of funds that Melamed asserts are owed to him pursuant to a post-petition Key Employee Incentive Plan [D.I. 1589-1] (the "<u>KEIP</u>"). (*Compare* Mot. ¶ 24 (acknowledging that the Administrative Claim seeks to recover "unpaid amounts due under the KEIP"), *with* Mot. ¶ 27 (seeking an order "compelling the FTX Recovery Trust to pay the KEIP award to Melamed").) As this Court is aware, the Administrative Claim has already been the subject of extensive litigation, including: (1) the Debtors' December 9, 2024 claims objection and motion for subordination [D.I. 28643] (the "<u>Amended Objection</u>");[3] (2) Melamed's April 7, 2025 opposition and cross-motion for arbitration [D.I. 30077] (the "<u>Amended Opposition</u>"); (3) the Trust's May 7, 2025 reply in support of its claim objection and opposition to Melamed's cross-motion [D.I. 30364] (the "<u>Reply</u>"); (4) Melamed's June 18, 2025 reply in support of his cross-motion [D.I. 30900]; (5) multiple hearings before this Court; and (6) two substantive orders from this Court retaining jurisdiction over the majority of Melamed's claims, including the Administrative Claim [D.I. 32057; D.I. 32058] (the "<u>July 31 Orders</u>"). That litigation is ongoing. Proceeding on parallel tracks would be procedurally improper, inefficient, and inconsistent with the orderly claims-resolution framework established by the Plan and the Bankruptcy Code. *See Power Integrations, Inc.* v. *Fairchild Semiconductor Int'l, Inc.*, 2009 WL 2016436, at *4 (D. Del. July 9, 2009) ("The power of a federal court to prevent duplicative litigation is intended to foster judicial economy and the comprehensive disposition of

---

[3] Debtors' original claims objection [D.I. 20051] was filed prior to Melamed's Administrative Claim. The Debtors filed the Amended Objection to, *inter alia*, include an objection to the Administrative Claim.

litigation, and to protect parties from the vexation of concurrent litigation over the same subject matter." (citation omitted)).

2. Melamed should not be permitted to use this Motion as an end run around the ongoing claims litigation or to obtain a premature ruling outside the process already established for resolution of his claim. Having invoked and fully participated in the claims-allowance process for over a year, Melamed cannot now pursue the same relief through this Motion. The Motion should thus be denied as impermissibly seeking the same relief as the Administrative Claim. *See In re Zimmer*, 586 B.R. 413, 414 (Bankr. W.D. Pa. 2018) (dismissing creditor's motion relating to the status of a debt under a prior court order where "the record reflects that the [creditors] already instituted an adversary proceeding for this very same relief," which "is pending").

## II. The Motion Implicates Numerous Disputes of Fact and Law That Will Be Addressed in the Pending Claims Dispute.

3. In its July 31 Orders, this Court directed the parties to submit a proposed scheduling order governing all of Melamed's claims that remain before the Court, including the Administrative Claim. Melamed's assertion that the Motion "is not subject to the discovery schedule to be submitted by the parties pursuant to" the July 31 Orders because it "relies solely on legal issues and undisputed facts" (Mot. at n.3) is puzzling. First, nothing in the Court's July 31 Orders suggests that they are limited to dealing with disputed facts, or that Melamed may raise "solely [] legal issues" outside the context of the Trust's pending objection to his Administrative Claim. In any event, as set forth below, this Motion implicates numerous disputes of fact and law, which must be explored in discovery, and ultimately adjudicated in an evidentiary hearing on Melamed's claims.

### A. Melamed Forfeited His Right to Participate in the KEIP.

4.  Melamed now contends—for the first time—that he did not refuse to sign the KEIP award agreement, and was never sent a final execution copy for his signature. (Mot. ¶¶ 13, 33.) Notably, the Motion acknowledges that the Trust first argued that Melamed did not sign the KEIP award agreement in its Amended Objection *nearly a year ago*. (Mot. ¶ 33.) Yet in the 648 pages of material that Melamed filed with the Court in opposition to the Amended Objection, he never once disputed that he refused to sign the KEIP award agreement.

5.  In any event, the Trust does not agree with the version of events set forth in Melamed's Motion. Melamed *did* refuse to release his claims against the Debtors. The December 2023 draft waiver and email chain attached to Melamed's declaration predate this refusal. [D.I. 33426 Exs. A, B.] In fact, by the time Melamed asserts that the releases were presented to KEIP participants in September 2024 (Mot. at 3), he had already objected to the Debtors' Plan [D.I. 23167], resigned as Representative Director of FTX Japan K.K. [D.I. 23173 Ex. 25], and been terminated from his remaining positions with the Debtors for breaching his management agreement [D.I. 23173 Ex. 26], among other reasons.[4] This Motion is not the proper vehicle to

---

[4] Melamed requests that "the Court award Melamed his expenses incurred for the filing of this motion" in light of his new argument that the "Debtors refus[ed] to send Melamed the 'customary release' in September of 2024." (Mot. at n.6.) This is baseless. The Court should not reward Melamed for attempting to reassert his purported entitlement to the KEIP award after nearly a year of parallel litigation, while simultaneously raising new arguments that could have been raised months ago in connection with his Administrative Claim. *See In re Stimwave Techs. Inc. Perryman* v. *Province, LLC*, 2024 WL 4626221, at *6 (D. Del. Oct. 30, 2024) (claimants may not "improperly reassert[]" claims already set forth in proofs of claim).

resolve contested factual issues relating to Melamed's Administrative Claim—let alone to raise new ones.

6.  Melamed also argues that that the terms of the award agreement constituted a new condition that was not previously included in the Court order authorizing the KEIP [D.I. 1589] (the "KEIP Order"), and that Debtors were not entitled to create such a new condition. (Mot. ¶ 33.) The parties have already briefed this argument. (*See* Am. Opp. ¶ 84; Reply at 16-18.) As the Trust has already explained, the KEIP Order gives the Trust "authorization" to "take and perform all actions necessary to implement" and "effectuate" the KEIP in their "sole discretion." (Reply at 16-18.) Whether requiring KEIP participants to sign the award agreement was a proper use of that discretion is a question of fact appropriately before the Court in connection with its adjudication of the Administrative Claim—not on the present Motion.

    **B.**    **Melamed's Administrative Claim Is Subject to Equitable Subordination.**

7.  The Trust seeks to subordinate all of Melamed's claims, including his Administrative Claim, pursuant to section 510(c) of the Bankruptcy Code. The Trust's arguments in support of equitable subordination, and Melamed's arguments against, have been briefed at length. (*See* Am. Obj. ¶¶ 56-63; Am. Opp. ¶¶ 58-74; Reply at 27-29.) Equitable subordination necessarily turns on factual issues, such as whether Melamed engaged in inequitable conduct that resulted in injury to other creditors or conferred an unfair advantage on Melamed. *See In re Am. Bus. Fin. Servs., Inc.*, 362 B.R. 135, 148 (Bankr. D. Del. 2007) ("[T]he level of egregiousness of the inequitable conduct is a question of fact that the Court cannot determine on a motion to dismiss."). The Trust has submitted sworn declarations from witnesses in support of its claim for

equitable subordination,[5] which, together with any other relevant facts uncovered through discovery, should be considered at an evidentiary hearing in connection with the claims dispute.[6]

### C.      Melamed May Have Forfeited the Right to Recover Any KEIP Award.

8.      Moreover, the Trust has expressly reserved the right to withhold or recoup any KEIP payments to the extent that additional evidence of Melamed's misconduct emerges during the litigation of the claims dispute. The KEIP Order conditioned awards on recipients not engaging in wrongdoing. *See Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan* [D.I. 1359] ("KEIP Motion") ¶ 9 ("All awards granted under the KEIP will be subject to forfeiture and recoupment if there is a subsequent final determination that the recipient of the award engaged in wrongdoing."); KEIP Order (approving the KEIP on the terms provided in the KEIP Motion). As detailed in the Chambers Reply Declaration, Melamed's conduct interfered with the Debtors' efforts to sell FTX Japan K.K. and thereby maximize the value for the Debtors' stakeholders. (*See* Chambers Reply Decl. ¶ 8.) Whether such conduct constitutes a forfeiture under the terms of the KEIP is a matter for determination by this Court in pending claims litigation.

---

[5]   *See, e.g.*, Declaration of Henry Chambers [D.I. 28645] ¶ 9 ("whilst Melamed was Chief Operating Officer," "hackers were able to access" and "t[ake] control of the Liquid Exchange's cryptocurrency warm wallet" "because Liquid executives, including Melamed, had not implemented adequate controls"); ¶ 10 ("Melamed approached" Samuel Bankman-Fried regarding the "acquisition of Liquid" and "discuss[ed] the terms" with him); ¶¶ 12-13 ("Melamed directed the transfer of almost $11 million of cryptocurrency assets to FTX.com," "[h]owever, Melamed did not transfer custody of the majority of Quoine's customer accounts to FTX"); Reply Declaration of Henry Chambers [D.I. 30366] (the "Chambers Reply Declaration") ¶ 8 (while Melamed was "deeply involved in the sale process" of FTX Japan K.K. and "had regular interactions with multiple bidders," "Melamed submitted a bid that only slightly exceeded existing bids").

[6]   The Motion incorrectly asserts that the materials submitted by Debtors in support of the KEIP are inconsistent with the Trust's position that Melamed engaged in inequitable conduct pre-petition. (Mot. at n.8.) However, the KEIP Motion and accompanying declarations make no representations about the KEIP participants' pre-petition conduct. Moreover, Melamed also engaged in misconduct that post-dated the KEIP Motion and entry of the KEIP Order, including conduct that interfered with Debtors' efforts to sell FTX Japan K.K. *See* Chambers Reply Decl. ¶ 8 (discussing Melamed's conduct beginning in May 2024).

**CONCLUSION**

9.　　For the foregoing reasons, the Trust respectfully requests that the Court deny the Motion.[7]

Dated: November 13, 2025　　　　　　　　**LANDIS RATH & COBB LLP**
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　*/s/ Matthew R. Pierce*
　　　　　　　　　　　　　　　　　　　　Adam G. Landis (No. 3407)
　　　　　　　　　　　　　　　　　　　　Matthew B. McGuire (No. 4366)
　　　　　　　　　　　　　　　　　　　　Kimberly A. Brown (No. 5138)
　　　　　　　　　　　　　　　　　　　　Matthew R. Pierce (No. 5946)
　　　　　　　　　　　　　　　　　　　　919 Market Street, Suite 1800
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 467-4400
　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 467-4450
　　　　　　　　　　　　　　　　　　　　E-mail: landis@lrclaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　mcguire@lrclaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　brown@lrclaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　pierce@lrclaw.com

　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　**SULLIVAN & CROMWELL LLP**
　　　　　　　　　　　　　　　　　　　　Andrew G. Dietderich (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Brian D. Glueckstein (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Christopher J. Dunne (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Jacob M. Croke (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Alexa J. Kranzley (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　125 Broad Street
　　　　　　　　　　　　　　　　　　　　New York, NY 10004
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 558-4000
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 558-3588
　　　　　　　　　　　　　　　　　　　　E-mail: dietdericha@sullcrom.com
　　　　　　　　　　　　　　　　　　　　　　　　　gluecksteinb@sullcrom.com
　　　　　　　　　　　　　　　　　　　　　　　　　dunnec@sullcrom.com
　　　　　　　　　　　　　　　　　　　　　　　　　crokej@sullcrom.com
　　　　　　　　　　　　　　　　　　　　　　　　　kranzleya@sullcrom.com

　　　　　　　　　　　　　　　　　　　　*Counsel for the FTX Recovery Trust*

---

[7] The Trust contacted Bitflyer following the filing of the Motion, and understands that Bitflyer has not been served or received proper notice of the Motion, and Bitflyer therefore reserves all rights with respect to this matter.