## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 32956** |

**FTX RECOVERY TRUST'S OBJECTION TO MOTION OF CHISATO MUROMOTO TO PERMIT FILING OF A PROOF OF CLAIM AFTER THE BAR DATE AND/OR FOR RELATED RELIEF**

The FTX Recovery Trust[2] hereby submits this objection (the "Objection") to the

*Motion of Chisato Muromoto to Permit Filing of a Proof of Claim After the Bar Date and/or for*

*Related Relief* [D.I. 32956] (the "Motion") filed by Chisato Muromoto.   In support of the

Objection, the FTX Recovery Trust respectfully states as follows:

### PRELIMINARY STATEMENT

1.      It is undisputed that Chisato Muromoto failed to submit the required Know

Your Customer ("KYC") information prior to the Court-ordered deadline.   Accordingly, in

accordance with the *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive)*

*Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Objection

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

Order"), over six months ago Mr. Muromoto's scheduled claim was disallowed and expunged in its entirety.

2.       Apparently unwilling to acknowledge that his claim has been expunged, Mr. Muromoto now asks the Court to allow him to file a proof of claim over two years late, claiming that he was not provided "actual notice" of the bar dates and KYC deadlines.  Mr. Muromoto, however, admits he received—and disregarded—multiple emails from Kroll Restructuring Administration LLC ("Kroll") notifying him of events in this bankruptcy.  Accordingly, Mr. Muromoto was sent constitutionally adequate "actual notice" of the bar dates and KYC deadlines by email pursuant to this Court's orders providing for notice via email.  There is no basis, therefore, to provide Mr. Muromoto relief from the KYC Objection Order.  Mr. Muromoto does not, and cannot, satisfy the standard for relief from a judgment pursuant to rule 60 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable by rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Indeed, Mr. Muromoto comes nowhere close to showing that extraordinary circumstances warrant a grant of Rule 60(b) relief.

3.       In the alternative, Mr. Muromoto asserts that his failure to meet relevant deadlines constitutes excusable neglect.  But Mr. Muromoto satisfies none of the *Pioneer* factors necessary to establish excusable neglect.  In fact, each of those factors weighs against granting the requested relief.  *First*, extending the KYC deadlines would prejudice the FTX Recovery Trust by encouraging additional late-filing claimants.  *Second*, Mr. Muromoto's delay was substantial as the Motion comes months after the relevant deadlines set by this Court.  *Third*, Mr. Muromoto received notice of the KYC Deadlines and had every opportunity to meet them but failed to do so out of his own carelessness, which (under Delaware law) is not excusable.  And, *fourth*, Mr. Muromoto's dilatory conduct does not reflect good faith diligence.  As a result, the Motion should be denied.

**RELEVANT BACKGROUND**

**I.      The Debtors and Their Chapter 11 Proceedings**

4.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5.      Quoine Pte Ltd. ("Quoine") was incorporated in Singapore when it was acquired by FTX Trading in early 2022 and was one of the Debtors in these Chapter 11 Cases. [Case No. 1:22-bk-11161, D.I. 1.]  On November 22, 2022, the Court ordered the procedural consolidation and joint administration of the Chapter 11 Cases, including Quoine's chapter 11 case. [*Id*. D.I. 4.]

6.      On January 9, 2023, the Court entered the *Final Order (i) Modifying Certain Creditor List Requirements, (ii) Authorizing the Debtors to Serve Certain Parties by E-mail, and (iii) Granting Related Relief* [D.I. 425] (the "Service Order"), which "modified" the "service requirements of Bankruptcy Rule 2002(g) . . . to permit e-mail service" to "customers that (a) have not designated a mailing address under Bankruptcy Rule 2002(g)(1) or 5003(e); (b) do not request to be served hard copies by mail and (c) have a valid e-mail address on file with the Debtors."

7.      On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), and on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Confirmation Order").  As part of the Plan, the Debtors reserved the right to determine to exclude Quoine from the Plan and treat Quoine as an Excluded

Entity (as defined in the Plan) in the event that the Singapore International Commercial Court (the "SICC") did not recognize the chapter 11 case of Quoine in Singapore and grant full force and effect in Singapore to certain orders of the Court, including the Confirmation Order.  (Plan § 1.2.)

8.    On November 20, 2024, Quoine filed an application with the SICC seeking recognition of certain orders of the Court, including the Confirmation Order and the Service Order (the "Singapore Recognition Application").  [*See* D.I. 28640.]  The purpose of the Singapore Recognition Application was to facilitate the implementation of the Plan with respect to Quoine in Singapore.  On December 9, 2024, the Debtors filed the *Statement of the Debtors Regarding Filing of Recognition Application in Singapore with Respect to Quoine Pte Ltd.* [D.I. 28640] (the "Recognition Application Statement").  Mr. Muromoto was served with the Recognition Application Statement by email on December 10, 2024.  [D.I. 29113.]

9.    On January 3, 2025, the effective date of the Plan occurred, which, among other things, established the FTX Recovery Trust and transferred, assigned, and vested all of the Debtors' assets in the FTX Recovery Trust.  *See Notice of Effective Date of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

10.    On February 17, 2025, the FTX Recovery Trust filed the *Statement of the FTX Recovery Trust Regarding Recognition of Chapter 11 Case of Quoine Pte Ltd in Singapore* [D.I. 29590] (the "Recognition Statement").  The Recognition Statement detailed that, on February 12, 2025, the SICC granted orders, among other things, (a) recognizing, in Singapore, the chapter 11 case of Quoine as a foreign main proceeding, and (b) recognizing and giving full force and effect, in Singapore, to, among other things, the Confirmation Order, the Plan, and the Service Order.  (*Id.*)  Mr. Muromoto was served with the Recognition Statement on or before

February 18, 2025.  [D.I. 33544.]  As a result, Quoine creditor claims are treated under the Plan and are being administered by the FTX Recovery Trust.

## II.    Mr. Muromoto's Cryptocurrency Holdings

11.    Liquid.com, along with its parent entity Quoine, was acquired by FTX Trading in early 2022.  Mr. Muromoto alleges that he held certain cryptocurrency assets in an account on Liquid.com, allegedly worth approximately $53,103.46 as of the Petition Date.  (Mot. ¶¶ 7, 14.)  The Debtors' books and records show that, as of the Petition Date, Muromoto's Liquid.com account contained $41,761.16 in total asset value.  The Debtors scheduled this amount as a Customer Entitlement Claim[3] against Quoine (the "Scheduled Customer Claim").  [D.I. 1766.]

## III.    Mr. Muromoto's Scheduled Customer Claim is Expunged

12.    On June 28, 2023, this Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order").  The Customer Bar Date Order established September 29, 2023 as the deadline to file proofs of claim on account of Customer Claims (the "Customer Bar Date") and ordered, among other things, that as part of the proof of claim submission process, the original holder of the Customer Claim shall submit KYC information as a prerequisite to the allowance of any such Claim.  (*Id.* ¶¶ 3, 18.)  The Customer Bar Date Order provided that notice of the Customer Bar Date was to be served by email on "all holders of Customer Claims known to the Debtors" and that such service "shall be deemed adequate and

---

[3]    "Customer Entitlement Claim," as defined in the Plan, means "any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets held by such Person or Entity in an account on any FTX Exchange."  (Plan § 2.1.47.)

sufficient if served by electronic service . . . at least 60 days prior to the Customer Bar Date" (the "Customer Bar Date Notice").  [D.I. 1793 ¶¶ 7, 15.]  The Customer Bar Date Notice was served by email on over eight million creditors, including Mr. Muromoto, on or before July 28, 2023—63 days before the Customer Bar Date.  [D.I. 2164.]

13.    On November 11, 2024, the Debtors filed the *Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* (the "Omnibus Claims Objection") seeking to disallow and expunge in its entirety any Customer Claim where the original holder does not commence the KYC process by March 1, 2025 or does not complete all requested KYC information by June 1, 2025.  [D.I. 28225.]  The Omnibus Claims Objection and a Notice of Objection to Unverified Claims (customized to include Mr. Muromoto's customer code and schedule number) were both served by email to Mr. Muromoto on November 27, 2024.  [D.I. 28889.]

14.    The Court sustained the Omnibus Claims Objection and, on February 3, 2025, entered an order (the "KYC Objection Order") disallowing and expunging in their entirety any of the Customer Claims listed on Schedule 1 to the KYC Objection Order where the original holder does not commence[4] the KYC submission process by March 1, 2025 or does not "submit all KYC information requested by the Debtors or their KYC vendors" by June 1, 2025 (the March 3, 2025[5] and June 1, 2025 deadlines, the "KYC Deadlines").  [D.I. 29464 ¶¶ 2-3.]  The KYC Objection Order was served on Mr. Muromoto by email on February 4, 2025.  [D.I. 33526.]

---

[4]    The KYC Objection Order defined "commencing" the KYC submission process as logging into the Customer Claims Portal and beginning "Step 3 – Provide Know Your Customer (KYC) Information."

[5]    In accordance with Bankruptcy Rule 9006, the deadline to commence KYC was automatically extended from March 1, 2025 to March 3, 2025.  [D.I. 30042.]

15.     On April 2, 2025, the FTX Recovery Trust filed the *Notice of Expungement of Unverified Customer Entitlement Claims* stating that over 390,000 claims were disallowed and expunged pursuant to the KYC Objection Order for failure to commence KYC by March 3, 2025. [D.I. 30042.]  According to the FTX Recovery Trust's records, Mr. Muromoto did not attempt to commence the KYC submission process until July 20, 2025, several months after the March 3, 2025 deadline.  Thus, Mr. Muromoto's Scheduled Customer Claim was expunged by the KYC Objection Order.  [D.I. 30042-1.]

## IV.     Mr. Muromoto's Access to the FTX Customer Portal

16.     To streamline the claims administration process, the Debtors developed an online claims portal at http://claims.ftx.com (the "<u>FTX Customer Portal</u>").  The FTX Customer Portal was designed to allow all claimants to verify their user credentials, submit KYC information, view historical transactions and account balances, and submit electronic proofs of claim.  The Court approved the use of the FTX Customer Portal on June 28, 2023 [D.I. 1793] and the portal launched on July 13, 2023.

17.     Quoine customers had access to the KYC Customer Portal and were able to log in at any time after July 13, 2023.  Since Mr. Muromoto's claim had been previously expunged pursuant to the KYC Objection Order, his access to the FTX Customer Portal should have been terminated following the March 3, 2025 deadline.  However, due to an inadvertent administrative error, he was not immediately blocked from accessing the portal.

18.     Mr. Muromoto alleges that he accessed the FTX Customer Portal and began the KYC process sometime "before the KYC Deadline"—which he defines as June 1, 2025, the deadline for customers to *complete* KYC—at which time the FTX Customer Portal listed his submission as "'processing' or 'in process.'"  (Mot. ¶¶ 24-25.)  But records show that

Mr. Muromoto did not attempt to access the FTX Customer Portal and submit any KYC information until July 20, 2025—well after the both of the KYC Deadlines.

## V.      Mr. Muromoto's Pending Motion

19.      On October 9, 2025, Mr. Muromoto filed the Motion requesting that the Court permit him to file a proof of claim two years after the Customer Bar Date and submit his KYC information after the KYC Deadline.  (Mot. ¶¶ 27-29.)  Mr. Muromoto admits in his Motion that he "did receive notices purportedly from FTX during the bankruptcy case via email," but chose to disregard these emails since "most emails that people receive nowadays are spam and a very large percentage are fraudulent."  (Mot. ¶ 12.)  Nonetheless, Mr. Muromoto argues that his failure to comply with relevant deadlines is irrelevant because he did not have "actual notice" of the Customer Bar Date or KYC Deadlines.  (*Id*. ¶¶ 30-34.)  In the alternative, Mr. Muromoto claims that his failure to abide by the KYC Deadlines was the result of excusable neglect.  (*Id*. ¶¶ 35-52.)

## **ARGUMENT**

## I.      Mr. Muromoto Received Constitutionally Adequate Notice of the Customer Bar Date and KYC Deadlines.

20.      Mr. Muromoto claims that he is "not [b]ound by the Bar Date or the KYC Deadline" because he is a "known creditor" who was "not provided actual notice" of those deadlines.  (Mot. ¶¶ 30-34.)  Specifically, Mr. Muromoto takes issue with the fact that notice was provided by e-mail, rather than U.S. mail, arguing that such notice violates due process.  (Mot. ¶ 34.)  But, this Court explicitly ordered that notices may be sent to creditors by e-mail.  As a result, Mr. Muromoto was sent sufficient notice of the KYC Objection Order and the KYC Objection Order .

21.      Constitutionally adequate notice in bankruptcy cases is notice that "is reasonably calculated to reach all interested parties, reasonably conveys all the required

information, and permits a reasonable time for a response." *Chemetron Corp*. v. *Jones*, 72 F.3d

341, 346 (3d Cir. 1995) (internal quotation marks omitted).  Known creditors, like Mr. Muromoto,

are entitled to "actual notice" which requires "[n]otice by mail *or other means as certain to ensure*

*actual notice*."  *Tulsa Pro. Collection Servs., Inc*. v. *Pope*, 485 U.S. 478, 491 (1988) (emphasis

added).  "Mailing a notice to a creditor's last known address . . . while surely *sufficient* to satisfy

due process, has never been found to be a *necessary* element of due process."  *In re Cyber

Litigation, Inc*., 2021 WL 5047512, at *5 (Bankr. D. Del. Oct. 28, 2021) (emphasis in original);

*see also Dunlap* v. *Nielsen*, 771 F. App'x 846, 853 (10th Cir. 2019) (rejecting argument that only

notice by mail satisfies due process requirements for "actual notice" to "known creditor").

22.     In the Service Order, this Court held that e-mail notice is sufficient to satisfy

due process in these Chapter 11 Cases.  [*See, e.g.,* D.I. 425 at ¶ 4 ("The service requirements of

Bankruptcy Rule 2002(g) hereby are modified to permit e-mail service to . . . customers that (a)

have not designated a mailing address under Bankruptcy Rule 2002(g)(1) or 5003(e); (b) do not

request to be served hard copies by mail and (c) have a valid e-mail address on file with the

Debtors.").]  This Court also specifically found that the e-mailed notice of the Omnibus Claims

Objection that resulted in expungement of Mr. Muromoto's claim was "adequate" and had "been

provided in accordance with the Bankruptcy Rule and the Local Rules, and that, except as

otherwise ordered herein, no other or further notice is necessary."  [D.I. 29464 at 1-2.]

23.     This Court's orders authorizing e-mail notice were in no way deficient—

nor does Mr. Muromoto allege otherwise.  *See, e.g.*, *In re Cred, Inc*., No. 20-12836 (Bankr. D. Del.

Nov. 10, 2020)  [D.I. 34] (modifying requirements of Bankruptcy Rule 2002(g) to authorize debtor

cryptocurrency platform to serve creditors via e-mail); *In re Am. Tire Distribs., Inc*., No. 24-12391

(Bankr. D. Del. Nov. 18, 2024) [D.I. 278] (authorizing the debtors "to modify the service

requirement of Bankruptcy Rule 2002(g) and serve all pleadings and papers via email"); *In re Accuride Corp.*, No. 24-12289 (Bankr. D. Del. Nov. 1, 2024) [D.I. 207] (same).

24.     Further, Mr. Muromoto admits he received relevant notices (Mot. ¶¶ 12, 18, 34, 50), and, as detailed in the affidavits filed with the Court, Kroll served e-mails containing notices of the Customer Bar Date, the Omnibus Claims Objection, and the KYC Objection Order to all relevant customers, including Mr. Muromoto.  [D.I. 2164 (affidavit of service of Customer Bar Date Notice); D.I. 28889 (affidavit of service of Omnibus Claims Objection); D.I. 33526 (corrected affidavit of service of KYC Objection Order).]

25.     Thus, as a matter of law, Mr. Muromoto is presumed to have received actual notice of the Customer Bar Date and KYC Deadlines.  *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) (properly mailed item is presumed to have been received by addressee); *see also Stephenson* v. *AT&T Services, Inc.*, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) (presumption of delivery applies to email).  Mr. Muromoto's "simple assertion of non-receipt" because he ignored relevant notices out of concerns that they might be fraudulent is not sufficient to rebut this presumption.  *In re Bowflex, Inc.*, 2025 WL 2315497, at *16 (Bankr. D.N.J. Aug. 11, 2025) (holding that "known creditor . . . received adequate notice via email as authorized by the Court" where creditor failed to provide "any evidence that she did not receive the [notice] other than her counsel's assertion that she could not find it in her email"); *Stephenson*, 2021 WL 3603322, at *5 ("party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt.").[6]  As a result, Mr. Muromoto was clearly sent

---

[6]     In support of his argument that he did not receive "actual notice" of the relevant deadlines, Mr. Muromoto cites to *In re Dewey Beach Enters., Inc.*, 110 B.R. 681, 684 (Bankr. D. Del. 1990).  That case is inapposite because the court in *Dewey Beach* only addressed "instances where no prior notice of the bar date has been given," (*id.*)

"constitutionally adequate notice" of the Customer Bar Date and KYC Objection Order and is

bound by the KYC Objection Order expunging his claim. *In re Essar Steel Minnesota, LLC*, 652

B.R. 709, 720 (Bankr. D. Del. 2023).

**II.    Mr. Muromoto Fails to Show that Extraordinary Circumstances Warrant Granting Him Relief from the KYC Objection Order Expunging His Scheduled Customer Claim.**

26.    Since Mr. Muromoto did receive notice, relief, if any, must be sought under

Federal Rule 60(b), incorporated into chapter 11 proceedings by Bankruptcy Rule 9024.  The KYC

Objection Order expunging Mr. Muromoto's Scheduled Customer Claim long ago became final

and unappealable so Mr. Muromoto's only pathway to revive his claim is a narrow one.  But Mr.

Muromoto comes nowhere close to showing that extraordinary circumstances warrant a grant of

relief from the KYC Objection Order pursuant to rule 60(b).  Accordingly, the Motion must be

denied.

27.    The Court entered the KYC Objection Order on February 3, 2025 [D.I.

29464], which means that it became final and unappealable pursuant to Bankruptcy Rule 8002(a)

on February 17, 2025—234 days before Mr. Muromoto filed his Motion.  Because Mr. Muromoto's

Scheduled Customer Claim has been disallowed, it can only be "reconsidered for cause."  11

U.S.C. § 502(j).  "While the term 'cause' is not defined in Section 502(j), . . . to establish cause

justifying reconsideration the movant must demonstrate at least one of the grounds set forth in

Rule 59 or Rule 60(b) of the Federal Rules of Civil Procedure."  *In re Nortel Networks Inc.*, 2017

WL 3141906, at *1 (Bankr. D. Del. July 24, 2017) (cleaned up).  Thus, "[a] party seeking

reconsideration in bankruptcy court must file a motion to alter or amend judgment under Fed. R.

---

whereas Mr. Muromoto *did* have prior notice of the Customer Bar Date and KYC Deadlines (*see* D.I. 2164, 28889, 33526).

Bankr. P. 9023 or a motion for relief from judgment under Fed. R. Bankr. P. 9024." *In re Energy Future Holdings Corp.*, 575 B.R. 616, 627 (Bankr. D. Del. 2017). But any motion pursuant to Bankruptcy Rule 9023(b) would be untimely. *See* Fed. R. Bankr. P. 9023(b) ("A motion . . . to alter or amend a judgment must be filed within 14 days after the judgment is entered."). Thus, Mr. Muromoto may only seek relief under the grounds listed in Federal Rule 60(b). *In re Nortel Networks Inc.*, 2017 WL 3141906, at *1.

28.     Mr. Muromoto's purported grounds for relief do not meet the stringent standards of Federal Rule 60(b). In fact, Mr. Muromoto does not address any of the grounds for relief provided by Federal Rule 60(b). Instead, he relies on his lack of experience with U.S. bankruptcy proceedings and claims that he thought the notices regarding these Chapter 11 Cases were fraudulent. (Mot. ¶¶ 13, 34.) Such assertions are insufficient to satisfy Muromoto's "heavy burden" to show that reconsideration of the KYC Objection Order is warranted under any part of Federal Rule 60(b). *In re Energy Future Holdings Corp.*, 575 B.R. at 630.

29.     "[W]hen a court is considering its own judgment, extraordinary circumstances must be present to justify the use of Rule 60(b) to vacate the judgment." *In re Energy Future Holdings Corp.*, 575 B.R. at 630 (internal quotation marks omitted); *Boughner* v. *Secretary of Health, Ed. and Welfare, U.S.*, 572 F.2d 976, 977 (3d Cir. 1978); *see also In re Vision Metals, Inc.*, 311 B.R. 692, 698 (Bankr. D. Del. 2004) ("Relief is appropriate under Rule 60(b) only upon a showing of exceptional circumstances and where, absent such relief, an extreme and unexpected hardship will result."). Thus, relief pursuant to Federal Rule 60(b) "should be granted sparingly." *Jester* v. *State Dep't of Safety*, 2016 WL 4497055, at *1 (D. Del. Aug. 26, 2016) (cleaned up).

30.    Here, Mr. Muromoto vaguely alleges that he lacks "familiarity" and "experience" with "bankruptcy law in the United States," and that he ignored the notices he was sent because "most emails that people receive nowadays are spam."  (Mot. ¶ 34.)  But, "[n]either ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)."  *Scott* v. *Children's Hospital of Philadelphia*, 2024 WL 453610, at *5 (E.D. Pa. Feb. 6, 2024) (cleaned up).  Further, "[i]gnorance of the rules, mistakes construing rules, and mere ignorance or carelessness on the part of the complaining party do not constitute bases for relief under Rule 60(b)(1)."  *In re Marinari*, 596 B.R. 809, 822 n.19 (Bankr. E.D. Pa. 2019) (citing *Williams* v. *New York City Dep't of Corrections*, 219 F.R.D. 78, 85 (S.D.N.Y. 2003)).  Accordingly, Mr. Muromoto's ignorance regarding the claims process established in these Chapter 11 Cases is not a sufficient basis for relief under Federal Rule 60(b)(1).

## III.    Mr. Muromoto Has No Right to File a Late Proof of Claim and Has Not Demonstrated Excusable Neglect.

31.    Although this Court need not consider Mr. Muromoto's request to file a late claim because Mr. Muromoto's claim has already been expunged, Mr. Muromoto does not show that his failure to pursue a claim in a timely manner was the result of excusable neglect.  (Mot. ¶¶ 35-53.)  Pursuant to Bankruptcy Rule 9006(b)(1), a creditor may be excused from filing a claim after the applicable bar date only where the failure to timely file was the result of "excusable neglect."  At all times "[t]he burden of proving excusable neglect lies with the late-claimant." *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).  In evaluating whether there is excusable neglect, courts weigh the following factors:  (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith.  *See Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993); *In re Mallinckrodt Plc*, 2022 WL

3545583, at \*3 (D. Del. Aug. 18, 2022). Courts take a "hard line" when applying these and place great emphasis on the "reason" for the delay. *In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020) (quoting *In re Nortel Networks Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017)). Here, each of the *Pioneer* factors weighs against a finding of excusable neglect.

32. *First,* given the stated reason for Mr. Muromoto's delay, extending the Customer Bar Date and KYC Deadlines as to Mr. Muromoto would prejudice the FTX Recovery Trust. Mr. Muromoto argues that the FTX Recovery Trust will not face any prejudice from his late-filed claim because (i) his claim was already scheduled, (ii) the addition of one claim to the hundreds of thousands of claims against the estate will not dilute distributions to other creditors, (iii) the FTX Recovery Trust could still object to Mr. Muromoto's late filed claim on the merits, and (iv) the FTX Recovery Trust cannot claim to be "surprise[d]" by "submission of the KYC information after the KYC Deadline." (Mot. ¶ 44.) None of these arguments has any merit.

33. Extending the KYC deadlines because Mr. Muromoto simply decided to disregard them would prejudice the FTX Recovery Trust by undermining the finality of *hundreds of thousands* of expunged claims. Allowing Mr. Muromoto to file a claim despite failing to abide by the KYC Deadlines *would* "open a floodgate" to similar requests brought by other late-filing claimants—in fact there are at least two other similar request currently pending. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 51 (Bankr. D. Del. 2012). Mr. Muromoto's suggestion that no similar motions have been filed (Mot. ¶ 45) in immaterial in addition to being wrong given that granting relief here would immediately signal to all potential claimants that this Court's final orders are negotiable and may be reopened upon any assertion of excusable neglect.[7]

---

[7]   In fact, contrary to Mr. Muromoto's assertion, other claimants have sought relief from the KYC Deadlines. *See Motion to Extend Time to Complete KYC Requirements* [D.I. 30432]; *Amended Motion to Extend Time to Complete KYC Requirements as to Morgan & Morgan P.A. Clients Who Are Bona Fide FTX Customers*

34. *Second*, Mr. Muromoto waited to take action and file his Motion until long after the KYC Deadlines. Despite admitting that the June 1, 2025 deadline to complete the KYC was "3-4 months" ago, Mr. Muromoto argues that he "in fact submitted his information before the KYC Deadline" making his delay "not material." (Mot. ¶ 47.) This is wrong. As an initial matter, Mr. Muromoto's Scheduled Customer Claim was expunged for failing to miss the deadline to *commence* KYC, which was March 3, 2025, not the June 1, 2025 deadline to complete KYC. [D.I. 30042-1.] Regardless, Mr. Muromoto did not even attempt to access the FTX Customer Portal until July 20, 2025, which was well past both deadlines. Moreover, Mr. Muromoto's lengthy delay before filing the Motion: two *years* after the Customer Bar Date and four months after the KYC commencement deadline weighs against a finding of excusable neglect. *See In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 616 (Bankr. D. Del. 2006); *see also In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) ("the length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date."); *In re XO Communications, Inc.*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003) (finding that a delay of nearly four months weighed against permitting a late proof of claim).

35. *Third*, Mr. Muromoto has no valid excuse for missing the KYC Deadlines. Mr. Muromoto claims that his "reason for delay" is excusable, since he mistakenly "believed that emails he did receive from FTX were spam or fraudulent." (Mot. ¶¶ 48-50.)[8] But Mr. Muromoto's professed ignorance of these bankruptcy proceedings does not constitute excusable neglect. *See*

---

[D.I. 31992]; *Motion of Daizhuo Chen for Entry of an Order Authorizing Late Completion of Customer KYC Pursuant to FRBP 9006(b)(1); In the Alternative, Relief under FRBP 9024 (Rule 60(b)(1)) and FRBP 3008/11 U.S.C. 502(j)* [D.I. 33349].

[8]  Mr. Muromoto's citation to *In re Texas Tamale Co.*, 219 B.R. 732 (Bankr. S.D. Tex. 1998) is unavailing. The FTX Recovery Trust is not arguing that Mr. Muromoto deliberately waited to file his claim in an attempt to destroy the chances of completing a confirmed plan, as was the case in *Texas Tamale*.

*In re W.R. Grace & Co.*, 563 B.R. 150, 159 (Bankr. D. Del. 2016) ("[I]gnorance of one's own claim does not constitute excusable neglect."); *see also In re National Steel Corp.*, 316 B.R. 510, 518 (Bankr. N.D. Ill. 2004) ("It is not the duty of the Debtors to make . . . any of its creditors aware of every potential claim they may have against the Debtors.  To the contrary, it was [claimant's] responsibility to explore, investigate and file a proof of claim against the Debtors, not the other way around . . . [claimant's] problem here is a 'self-inflicted' wound, and it has no one to blame but itself for this predicament.").

36.     And, *fourth*, Mr. Muromoto's conduct does not reflect good faith diligence. Assuming that his purported concerns regarding spam emails were valid, Mr. Muromoto admittedly read the notification emails and still waited until months after the KYC Deadlines to even attempt to access the KYC Customer Portal.  His prolonged inaction and failure to make any inquiry or seek clarification demonstrate neglect, not prudence.  Good faith demands reasonable efforts to comply with Court-ordered procedures.  Tens of thousands of other customers who received similar outreach and reminders did comply.  Mr. Muromoto's passive approach, after years of notice and opportunity, falls well short of that standard.

37.     Ultimately, Mr. Muromoto failed to meet the deadlines imposed by this Court because of his own carelessness and lack of action.[9]  By his own admission, he received

---

[9]  While Mr. Muromoto cites *In re O'Brien* for the proposition that "the mere use of the word 'neglect' encompasse[s] 'omissions caused by carelessness,'" he conveniently leaves out the rest of the sentence: ". . . but . . . the neglect must be 'excusable.'"  *In re O'Brien Env't Energy, Inc.,* 188 F.3d 116, 125 (3d Cir. 1999).  The *O'Brien* Court then reiterated that lower courts should, under *Pioneer*, consider "the reason for the delay, including whether it was *within the reasonable control of the movant*," when making the excusable neglect determination.  *Id.* (quoting *Pioneer,* 507 U.S. at 395) (emphasis added).  Here, the issue is not mere carelessness but the decision to ignore multiple notices—a circumstance plainly within Mr. Muromoto's control and therefore not excusable.  *In re Grand Union Co.* is also inapposite since the court held that the debtor should have provided notice to the claimants' attorney where the debtor "had specific knowledge of the claimants' representation" prior to the commencement of the chapter 11 proceedings.  204 B.R. 864, 870-71 (Bankr. D. Del. 1997).  Here, the FTX Recovery Trust had no knowledge of Mr. Muromoto's counsel until October 9, 2025, when Mr. Muromoto filed the Motion.

notice of relevant deadlines through numerous emails.  (Mot. ¶ 34.)  Rather than take action to contact the Debtors for clarification or assistance through available channels, he chose to simply ignore these communications.  (*Id.*)  "Simply put, a litigant's protracted and unjustified carelessness alone does not constitute excusable neglect."  *In re Insys Therapeutics, Inc.*, 2022 WL 5265033, at *3 (Bankr. D. Del. Oct. 6, 2022) (internal quotation marks omitted).  "A finding to the contrary would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice."  *In re Best Products Co., Inc.*, 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992).  Thus, the *Pioneer* factors demonstrate that Mr. Muromoto's failure to timely commence the KYC procedures is not excusable.  The Court should, therefore, deny the Motion.

## RESERVATION OF RIGHTS

38.     In filing this Objection, the FTX Recovery Trust has not waived any rights, and the FTX Recovery Trust expressly reserves all of its rights, powers, privileges and remedies under applicable law or otherwise with regards to Mr. Muromoto.  The FTX Recovery Trust may elect to exercise any or all of its rights, at its sole option without the necessity of any further notice, demand or other action on the part of Mr. Muromoto.  Nothing contained in this Objection or any delay by the FTX Recovery Trust in exercising any rights, powers, privileges and remedies under applicable law against Mr. Muromoto now existing or hereafter arising shall be construed as a waiver or modification of such rights, powers, privileges or remedies.

## CONCLUSION

39.     For the foregoing reasons, the Motion should be denied.

Dated:   November 13, 2025
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:   landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:   dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*