IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:
FTX TRADING LTD., et al.,
Debtors.

Chapter 11
Case No. 22-11068 (KBO)
(Jointly Administered)

Re: D.I. 33444



## OBJECTION TO THE FTX RECOVERY TRUST'S MOTION TO EXTEND THE CLAIMS OBJECTION DEADLINE

Xiaodong Wang (the "Objector"), a pro se creditor and resident of China, respectfully submits this Objection ("Objection") to the FTX Recovery Trust's Motion to Extend the Claims Objection Deadline [D.I. 33444] (the "Extension Motion").

In support, the Objector states as follows:

PRELIMINARY STATEMENT

1.  The Extension Motion seeks a sweeping, one full year enlargement of objection deadlines while leaving thousands of customer claims—including Chinese creditors' claims—indefinitely parked in "Disputed" status with no notice, no stated grounds, no timetable, and no accountability.

2.  The Trust withdrew its "Restricted Jurisdiction Procedures" motion but continues to hold a large number of Chinese creditors' claims in "Disputed" status without any explanation. In fact, Chinese creditors constitute the overwhelming majority of the claims currently marked as disputed.

3.  The confirmed Plan required creditors to complete pre-distribution steps. Many Chinese Class 7A creditors (including Objector) did so in 2024–2025, yet received no distribution when the first Class 7A tranche paid in February 2025. The Trust now asserts that pre-distribution completion is necessary but not sufficient, while refusing to articulate claim-by-claim grounds or provide a timetable for resolution.

4. Meanwhile, professional fees continue to mount daily, reportedly rivaling or exceeding FTX's historical operating burn, while customers have waited nearly three years since petition and over eight months since the first Class 7A distribution.

5. Under Fed. R. Bankr. P. 9006(b), the Trust must show "cause." Workload and self-created process complexity do not constitute cause for an open-ended extension that prejudices a discrete cohort of creditors. If any extension is granted, it must be narrow, conditioned, and paired with firm creditor-protection mechanisms. Uncontested Chinese customer claims that are facially complete and administratively ready should not remain in "Disputed" status or be further delayed; only genuinely disputed claims may be deferred.

As a result, uncontested Chinese Class 7A claims that are facially complete and administratively ready should not be held in "Disputed" or deferred further; only genuinely disputed claims may be deferred.

MOTION TO OBJECT GROUNDS

6. The Extension Motion lacks guardrails, due-process protections, and claim-specific bases as to creditors kept in "Disputed" status.

7. The requested relief is overbroad and not narrowly tailored; it invites extension without transparency or creditor recourse.

ARGUMENT

I. No "Cause" for an Open-Ended, One-Year Extension (Rule 9006(b)).

The Trust has not shown diligence, identified concrete impediments, or minimized creditor prejudice. Chinese Class 7A creditors who completed pre-distribution steps have borne eight-plus months of delay since February 2025 with no articulated objection.

II. Any Relief Must Be Conditioned to Prevent Back-Door Discrimination and Soft Forfeiture.

Equal-treatment principles require non-discriminatory administration of Class 7A. Equal treatment also requires that timely, Step-8-completed Chinese Class 7A creditors receive compensation for the eight-month delay in payment relative to other Class 7A creditors,

through interest or equivalent equitable compensation on the deferred amount for the applicable period.


A. Specific-Objection Requirement & Cure Timeline.

For Chinese creditors who have completed Step 8 of the pre-distribution process, which represents a large cohort of creditors, the Trust should provide a payment timetable for the next round(s) of distributions, specifying the round(s) or exact date for payment. These creditors should have been paid long ago, and by providing such a timetable, the Trust will ensure timely payments and avoid continuing to delay the payments under the pretext of unresolved claims. This approach will also significantly reduce the unresolved claim numbers and amounts that the Trust has cited in its motion.

Furthermore, during the hearing, the Judge instructed the Trust to establish a communication channel with Chinese creditors. The Trust should prioritize this and make every effort to ensure effective communication with these creditors to resolve any outstanding issues and expedite the payment process.

In addition, consistent with the Court's instruction at the hearing to establish effective communication with Chinese creditors, the Trust should provide claim-specific dispute reasons through the customer service/claims portal and push notices to affected creditors. Each disputed claim should be tagged with a clear, standardized reason code and a brief narrative explanation, together with an escalation contact for resolution.

Absent a stated, claim-specific reason, uncontested, administratively ready Chinese claims should not remain in "Disputed" status or be further delayed; only claims with articulated, substantiated objections may be deferred.


B. Immediate Pay of Non-Substantive Holds.

If the only impediment is vendors/jurisdictional logistics or other administrative reasons, the Trust must either pay by USD wire to a creditor-designated account or escrow the full amount in an interest-bearing, segregated account for the creditor's benefit within 15 days.


C. Reporting & Transparency.

Monthly public reports listing, by country: counts/amounts of Allowed/paid claims; Disputed claims (with objection categories); resolutions; and a payment calendar for each cohort.

D. No Categorical Disputes.

The Trust may not maintain a claim as Disputed with no reason specified. Any compliance concern must be supported by current written legal analysis plus a concrete, creditor-usable payment path; otherwise the claim must be paid or escrowed.

E. Payment Timetable for Chinese Class 7A Creditors.

For Chinese creditors who completed pre-distribution steps, the Trust shall publish a payment timetable within 21 days, with first payments within 45 days absent a filed, substantive objection.

F. Interest / Equitable Compensation.

Escrowed funds accrue interest for the creditor's benefit. Where delay is Trust-caused (e.g., no articulated objection or missed timelines), creditor receives catch-up distribution plus escrow interest upon payment.

For Class 7A creditors who timely completed Steps 1–8 but received distributions eight months later than similarly situated Class 7A creditors, the Trust should pay catch-up distributions plus interest (or equivalent equitable compensation) for the deferral period, to remedy the time-value loss and preserve equal treatment within Class 7A.

G. Limits on Serial Extensions.

Any extension must be strictly limited in duration and narrowly tailored. A blanket, year-long extension is excessive. The outer limit should be 90 days, absent a particularized, claim-category showing of good cause supported by sworn declarations. The Trust should also file monthly progress reports with country-level dashboards and quarter-by-quarter completion plans, and may not maintain uncontested, administratively ready Chinese claims in "Disputed" solely due to internal processes or vendor logistics.

H. Timely Payment for Step 8–Completed Chinese Creditors.

Given that the Trust has formally withdrawn its "Restricted Jurisdictions" motion, there is no longer any legal or procedural basis to delay payments to Chinese creditors who have completed Step 8 of the pre-distribution process. All such creditors must be included in the next scheduled distribution cycle without further delay; and the Trust shall calculate and pay interest or equivalent equitable compensation for the deferral period—from the date of

the first Class 7A distribution in February 2025 until the actual payment date—to ensure equal treatment and to offset time-value loss.

CONCLUSION

For the reasons above, the Court should (i) DENY the Extension Motion as procedurally improper and overbroad; or, in the alternative, (ii) GRANT ONLY A NARROWLY TAILORED EXTENSION not to exceed 90 days, subject to the safeguards set forth in Sections A–H—including claim-specific notice and reasons, a firm payment timetable for Step-8-completed Chinese creditors, monthly public reporting, escrow/interest for deferred amounts, limits on serial extensions, and timely payment with interest to remedy the eight-month delay experienced by Chinese Class 7A creditors.

Xiaodong Wang    *Xiaodong Wang*

go4ld4@gmail.com

Yard 6, Jiuxianqiao Road, Chaoyang District, Beijing, China, 100000

Dated: November 6, 2025

FTX.com Unique Customer Code: 00366223

## CERTIFICATE OF SERVICE

I, Xiaodong Wang, hereby certify that on November 6, 2025, I caused a copy of the foregoing objection to the FTX Recovery Trust's Motion to Extend Deadlines to Object to Claims (D.I. 33444) to be served via electronic mail upon the following parties:

Sullivan & Cromwell LLP

- James L. Bromley – bromleyj@sullcrom.com

- Alexa J. Kranzley – kranzleya@sullcrom.com

- Andrew G. Dietderich – dietdericha@sullcrom.com

- Brian D. Glueckstein – gluecksteinb@sullcrom.com


Landis Rath & Cobb LLP

- Adam G. Landis – landis@lrclaw.com

- Kimberly A. Brown – brown@lrclaw.com

- Matthew R. Pierce – pierce@lrclaw.com


I certify under penalty of perjury that the foregoing is true and correct.
Respectfully submitted,




Xiaodong Wang    *Xiaodong Wang*

go4ld4@gmail.com

Yard 6, Jiuxianqiao Road, Chaoyang District, Beijing, China, 100000


Dated: November 6, 2025

FTX.com Unique Customer Code: 00366223