# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al., | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Related Docket I.D. 33444 |

**LIMITED OBJECTION OF XIN HUANG TO THE FTX RECOVERY TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE <u>ADMINISTRATIVE CLAIMS OBJECTION DEADLINE (D.I. 33444)</u>**

Xin Huang ("Creditor"), a pro se creditor in the above-captioned chapter 11 cases, respectfully submits this limited objection (the "Limited Objection") to the Motion of the FTX Recovery Trust ("Trust") for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline [D.I.33444] (the "Motion"). In support of this Limited Objection, the Creditort states as follows:

**PRELIMINARY STATEMENT**

1. I, the Creditor, have completed all required procedures from Step 1 through Step 8 on the FTX Customer Claims Portal (claims.ftx.com), including KYC verification, submission of proofs of claim, tax documentation, and onboarding of a Distribution Service Provider. There are only 6 tickers in my FTX.com account and the tickers and quantities of fiat and cryptocurrency listed in Step 4 ("Total Customer Entitlement Claim") match exactly with those in the FTX Customer Claim Form I submitted via the Portal. There is no dispute with the Debtor regarding the tickers or quantities. Nonetheless, at Step 9—the final stage titled "Distribution Amounts – Summary"—my account was

marked as "Disputed" without any explanation.

2. The Trust previously filed motions [D.I. 31148] and [D.I. 33193] seeking approval for "Restricted Jurisdiction Procedures." These motions were met with objections from affected creditors, including myself, and were ultimately withdrawn at the Court's request.

3. The current Motion [D.I. 33444] seeks a broad, unconditional one-year extension without offering corresponding transparency, oversight, or procedural safeguards for creditors whose claims have been arbitrarily designated as "disputed." For creditors like myself, the absence of clarity regarding the basis for dispute, dispute categorization, review status, or projected resolution timeline has resulted in a prolonged and opaque administrative freeze.

4. These concerns are further compounded by the fact that my claim has now been pending for over two years. During this time, the Creditor's ability to obtain meaningful communication from the Trust has steadily diminished. I have no functional means to determine why my claim was marked as disputed at Step 9 on claims.ftx.com FTX Customer Claims Portal despite having completed all prior steps without issue; The Trust has disclosed neither a timeline for processing my claim nor any mechanism for resolving the alleged dispute.

5. Nearly three years into the case, the Trust has completed most global asset recovery and reconciliation work. Disputed claims vary significantly: my claim is simple and readily resolvable, while others may involve disputed amounts or tickers requiring further investigation or litigation. A blanket one-year extension is therefore neither necessary nor appropriate.

6. A more targeted approach—prioritizing the resolution of straightforward claims like my claim while allocating additional time only for genuinely complex matters—would

improve efficiency, enhance transparency, and support the Court's oversight responsibility. It would also ensure that simple claims are not indefinitely delayed due to unrelated complex disputes.

7. If the Court finds an extension warranted, I respectfully urge that it not be unconditional or year-long. A shorter, conditional extension—such as ninety days—would allow the Trust to demonstrate measurable progress in dispute categorization, communication protocols, and claims administration. At the end of that period, the Court could evaluate whether further extension is justified based on actual performance and good-faith efforts.

8. Accordingly, I object only to the unconditional and year-long nature of the requested extension, and respectfully urge the Court to condition any extension on:

```
(a) Disclosure of dispute categories and grounds;

(b) A roadmap with estimated timeframes for each category;

(c) Periodic status reporting to the Court and creditors;

(d) Partial allowance with reserve where appropriate;

(e) Safeguards ensuring time-value neutrality for delayed
distributions; and

(f) A limited right for disputed creditors to seek Court
intervention if no substantive explanation or update is provided
during the extension period.
```

9. These safeguards do not accelerate payment, alter priority, or allow any creditor to "jump the line," as the Trust has suggested in prior hearings. Rather, they prevent indefinite administrative freezes and establish a fair, transparent, and court-supervised framework for orderly claims reconciliation consistent with the Bankruptcy Code.

10. In multiple filings and hearings, the Debtors and the Trust have represented that the claims reconciliation process has advanced significantly:

(a) Most global asset recovery and reconciliation has been completed;

(b) The majority of straightforward customer claims have been resolved;

(c) Only a small percentage of the claims remains unresolved; and

(d) The case has entered into a later procedural stage focused on narrower issues.

These statements confirm that the current posture of the case differd materially from earlier phases and that the unresolved claims vary widely in complexity.

11. Throughout 2025, the basis for disputed designations changed repeatedly:

(a) Early 2025: Believed by creditors to be related to DSP availability;

(b) July 2025: Described in a court filing as jurisdictional risk for 49 countries;

(c) October 2025: Reframed as concern based on digital-asset-derived claims.

None of these shifting explanations were ever communicated directly to me, leaving me without a stable or consistent understanding of my "disputed" status at step 9 on the claims portal claims.ftx.com.

12. The Trust's Motion [D.I. 33444] further confirms that the reconciliation process is well advanced:

(a) The initial claims pool included over 682,000 filed and scheduled claims totaling more than $447 billion;

(b) The unresolved pool has been reduced to approximately 25,400 claims, including:

- nearly 24,200 customer claims,
- over 1,100 non-customer claims, and
- 131 administrative claims;

(c) The Trust has filed 198 omnibus objections, numerous individual objections, and multiple adversary proceedings;

(d) Distributions to holders of allowed claims have commenced.

13. The Trust also acknowledges that only "dozens" of the remaining matters involve complex litigations or multi-billion-dollar issues. These undisputed facts—drawn entirely from the Trust's own filings—demonstrate that:

(a) The vast majority of claims have already been reconciled;

(b) Only a small fraction of unresolved claims remains;

(c) The remaining claims vary widely in complexity; and

(d) The current stage of the case supports a more transparent, tailored, and category-based approach to disputed claims.

## LEGAL ARGUMENT

### I. The Court Has Broad Discretion Under §105(a) to Grant a Tailored, Conditional Extension Rather Than the One-Year Blanket Extension Requested

14. The Trust seeks a one-year, unconditional extension of the Claims Objection Deadline to January 3, 2027. While the Plan authorizes the Trust to request an extension, it does not mandate that the Court approve one, nor does it require the Court to grant a uniform, year-long extension irrespective of the case's current posture.

15. Under 11 U.S.C. §105(a), bankruptcy courts possess broad equitable authority to craft relief that ensures fairness and prevents procedural imbalance. *Marrama v. CitizensBank of Mass.*, 549 U.S. 365, 375 (2007). The Third Circuit similarly instructs that courts must balance administrative needs against potential prejudice to creditors. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

16. Accordingly, the Court is fully empowered to grant a shorter, conditional extension, impose transparency and reporting requirements, and maintain ongoing supervisory oversight. Nothing in the Bankruptcy Code, the Plan, or applicable case

law requires the Court to approve the Trust's requested blanket extension.

## II. A One-Year Unconditional Extension Would Materially Prejudice the Creditor Who Currently Lacks Any Explanation, Timeline, or Procedural Pathway

17. The Trust's motion describes administrative workload but does not address the reality that the Creditor's claim was designated as disputed at step 9 on the claim portal.

The Creditor:
    (a)   has not been informed of the reason for the disputed designation;

    (b)   has no timeline or estimated sequence for review;

    (c)   cannot cure or clarify because no basis for dispute is disclosed;

18. Delaware bankruptcy courts have repeatedly recognized that a lack of transparency in administrative processes creates unfairness and harms creditor interests. In In *re Washington Mutual, Inc.*, the Court held that "transparency and disclosure are essential to ensuring creditor confidence in the fairness of the process." 442 B.R. 314, 361 (Bankr. D. Del. 2011). Likewise, in *In re Nortel Networks Inc.*, the Court emphasized its duty to ensure "a fair and transparent process where administrative discretion directly affects creditor recoveries." 532 B.R. 494, 554 (Bankr. D. Del. 2015).

19. Requiring the Trust to provide timely, structured disclosures and a category-based review process would substantially reduce the space for misinformation, stabilize creditor expectations, and prevent market rumors from shaping recovery outcomes.

20. Granting a year-long extension without safeguards would entrench administrative opacity and further disadvantage creditors already excluded from meaningful participation.

## III. Delaware Courts Recognize That Delay Itself Constitutes Prejudice

21. A year-long extension must also be evaluated in light of well-established precedent that administrative delay can itself constitute material prejudice.

22. In *In re New Century TRS Holdings, Inc.*, the Court held that it "must consider the impact of delay on creditors and the integrity of the bankruptcy process." 465 B.R. 38, 47 (Bankr. D. Del. 2012). Disputed creditors have already endured prolonged delay without explanation, or procedural certainty. An unconditional one-year extension would exacerbate this prejudice and erode confidence in the process.

## IV. The Trust's Own Filing Confirms the Case Has Entered a Later Procedural Phase, Rendering a Blanket Extension Inappropriate

23. The Trust's Motion [D.I.33444] confirms that the case has progressed well beyond the initial bulk-review stage:

    (a) Over 682,000 initial claims have been reduced to approximately 25,400 unresolved;

    (b) Only "dozens" involve complex or multi-billion-dollar litigation;

    (c) 198 omnibus objections and numerous individual objections have been filed;

    (d) Initial distributions have already commenced.

24. These facts show that the remaining claims are fewer, more heterogeneous, and at different stages of complexity.

25. Delaware courts recognize that classification and targeted processing of remaining claims is appropriate in this procedural posture. See *In re Tribune Co.*, 2015 WL 730730 (Bankr. D. Del. Feb. 19, 2015) (authorizing categorization to facilitate efficient resolution).

**26.** Thus, rather than extending all claims uniformly, the Trust should adopt

differentiated and transparent pathways for simple and complex disputes.

## V. The Court Should Require Basic, Non-Privileged Transparency Regarding Disputed Claims as a Condition of Any Extension

27. Because administrative discretion directly affects creditor recoveries, the Court may require non-privileged transparency to ensure fairness. Washington Mutual and Nortel both underscore that transparency is essential to preserving creditor confidence and preventing inequitable outcomes.

At a minimum, the Court should require the Trust to:

(a) Provide a non-privileged categorization of disputed claims;

(b) Identify Creditor's dispute category;

(c) Offer projected review timelines for each category;

(d) Provide cure or clarification instructions where applicable.

These requirements are narrowly tailored, impose minimal administrative burden, and substantially improve fairness and efficiency in the reconciliation process.

## VI. The Court Should Permit Limited "Compel Action" Relief During Any Extension to Prevent Indefinite Administrative Paralysis

28. Where administrative inaction threatens to prejudice creditor rights, courts permit targeted relief. In *In re GT Advanced Technologies Inc.*, the Court recognized that creditors may seek judicial intervention when administrative delay threatens substantive prejudice. 605 B.R. 35, 44 (Bankr. D.N.H. 2019).

29. A limited "compel action" mechanism would allow disputed creditors to move for:

(a) A status update;

(b) Disclosure of the applicable dispute category;

(c) A projected timeline for review.

30. This mechanism does not require the Trust to allow claims or adjudicate disputes within a specific timeframe; it simply prevents disputed Creditor from being indefinitely frozen without information. It also preserves judicial efficiency through narrow procedural relief.

## VII. A Short, Conditional Extension—Not a One-Year Unconditional Delay—Best Balances Administrative Needs with Creditor Protections

31. Delaware courts have endorsed phased extensions with ongoing judicial oversight where necessary to ensure progress. In *In re Energy Future Holdings Corp.*, the Court held that "extensions in stages, coupled with continued oversight," appropriately balance administrative efficiency with creditor protections. 561 B.R. 630, 641 (Bankr. D. Del. 2016).

32. A short, conditional extension—such as 90 days—paired with transparency, categorization, progress reporting, and narrowly tailored creditor remedies would:

(a) Prevent undue prejudice to disputed creditors;

(b) Ensure accountability;

(c) Align with controlling precedent;

(d) Preserve the integrity of the claims resolution process.

**33.** In contrast, the one-year unconditional extension requested by the Trust is unnecessary, procedurally inappropriate, and incompatible with the fairness principles embedded in the Bankruptcy Code and Third Circuit jurisprudence.

## REQUESTED RELIEF

34. **WHEREFORE**, for the reasons set forth herein, the Creditor respectfully requests that the Court enter an order granting the following relief:

35. Denying the Trust's request for a one-year, unconditional extension of the Claims Objection Deadline through January 3, 2027;

36. Granting only a short, conditional extension of the Claims Objection Deadline— such as ninety (90) days—subject to the supervisory conditions set forth below;

37. Requiring the Trust to provide basic, non-privileged transparency regarding disputed claims, including:

(a) A non-privileged dispute-category framework identifying the basis for each disputed claim at a category level;

(b) Notice to each affected creditor identifying the creditor's dispute category;

(c) Projected review timelines for each category; and

(d) Cure or clarification instructions where applicable;

38. Requiring the Trust to file periodic status reports—e.g., every 30 or 45 days summarizing:

(a) Progress made in resolving disputed claims;

(b) The number of claims resolved during the reporting period;

(c) Anticipated timelines for remaining categories; and

(d) Any administrative or procedural obstacles requiring Court guidance;

39. Authorizing a limited and narrowly tailored "compel action" mechanism, permitting any disputed creditor—upon a showing of prolonged inaction without good cause—to seek procedural relief, including:

(a) Disclosure of the creditor's dispute category;

(b) The Trust's stated process for resolving that category; and

(c) A projected timeline for review or next procedural steps;

Provided, however, that such relief shall not:

(i) Compel allowance or disallowance of any claim, or

(ii) Require disclosure of privileged, confidential, or litigation-sensitive information;

40. Directing the Trust, following its disclosure of the non-privileged categories of disputed claims pursuant to the Court's order, to implement a reasonable, second-layer prioritization framework that distinguishes between:

(a) "Procedurally Simple and Clear-Cut Disputes," meaning categories of disputed claims that, once disclosed, reflect low-complexity, non-substantive issues such as documentation confirmation, KYC or address corrections, DSP eligibility verification, or other matters that require no fact-intensive analysis and present no genuine contest regarding the validity or amount of the creditor's claim; and

(b) "Procedurally Complex Disputes," meaning categories of disputed claims that, once identified, involve active litigation, regulatory inquiries, substantial factual disputes, potential fraud investigations, or other matters reasonably requiring extended review.

41. Directing the Trust to prioritize the prompt review and resolution of "Procedurally Simple and Clear-Cut Disputes" before proceeding with the more complex categories.

42. Reserving the Court's authority to reassess, modify, or terminate the extended Claims Objection Deadline at the conclusion of the conditional extension period based on

demonstrated progress, compliance with Court directives, and the continued needs of the estate.

43. Granting such other and further relief as the Court deems just, proper, and equitable.

**RESERVATION OF RIGHTS**

44. The Creditor expressly reserves all rights, claims, arguments, and remedies—legal or equitable—including, without limitation, the right to:

- (i) Supplement or amend this Limited Objection;
- (ii) Raise additional or independent objections to any future extension requests;
- (iii) Object to subsequent motions, filings, notices, or procedures affecting the Creditor's claim or similarly situated creditors;
- (iv) Seek discovery, submit evidence, or request an evidentiary hearing if factual development is warranted; and
- (v) Pursue any further relief available under the Bankruptcy Code, Bankruptcy Rules, or applicable law.

45. Nothing herein shall be construed as a waiver, concession, or limitation of any rights the Creditor may have regarding the allowance, classification, dispute status, or distribution of the Creditor's claim, nor shall it waive the rights of other similarly affected creditors.

46. The Creditor further reserves all rights to respond to any reply, supplemental filing, or evidentiary submission the Trust may submit in connection with the Motion.

## **CONCLUSION**

47. For the foregoing reasons, and in the interest of fairness, transparency, and orderly case administration, the Creditor respectfully submits that the Trust's request for a one-year, unconditional extension of the Claims Objection Deadline should be denied. A short, conditional extension—paired with reasonable transparency measures, periodic reporting, category-based processing, and a limited procedural mechanism for disputed

creditors—is sufficient to protect the estate while preventing further unnecessary prejudice to creditors whose claims have remained unresolved for prolonged periods without explanation.

48. These safeguards will not impede the administration of the estate. Rather, they will promote a more efficient, transparent, and court-supervised process that will ultimately accelerate the fair resolution of disputed claims and support the overall progress of this Chapter 11 case.

49. Accordingly, the Creditor respectfully requests that the Court grant the relief set forth in the "Requested Relief" section above and grant such other and further relief as the Court deems just and proper.

Date: November 13, 2025

Respectfully submitted,

Xin Huang

Claim No. 8566

China

huangxin201@gmail.com

# **CERTIFICATE OF SERVICE**

I, Xin Huang, hereby certify that on the 13th day of November 2025, I caused a true and correct copy of the foregoing *Limited Objection of Xin Huang to the FTX Recovery Trust's Motion for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline [D.I. 33444]* to be submitted to the Court, in accordance with the procedures applicable to pro se filings in the United States Bankruptcy Court for the District of Delaware.

I further certify that on the same date, November 13, 2025, I caused a courtesy copy of the foregoing filing to be served via Electronic Mail upon the following parties:

*Counsel for the FTX Recovery Trust:*

| | |
|---|---|
| Adam G. Landis, Esq. | Andrew G. Dietderich, Esq. |
| Kimberly A. Brown, Esq. | James L. Bromley, Esq. |
| Matthew R. Pierce, Esq. | Brian D. Glueckstein, Esq. |
| **LANDIS RATH & COBB LLP** | Alexa J. Kranzley, Esq. |
| 919 Market Street, Suite 1800 | **SULLIVAN & CROMWELL LLP** |
| Wilmington, Delaware 19801 | 125 Broad Street |
| landis@lrclaw.com | New York, NY 10004 |
| brown@lrclaw.com | dietdericha@sullcrom.com |
| pierce@lrclaw.com | bromleyj@sullcrom.com |
| | gluecksteinb@sullcrom.com |
| | kranzleya@sullcrom.com |

November 13, 2025
Xin Huang  /s/ Xin Huang