**Weiwei Ji**
Singapore

RECEIVED

2025 NOV 14  PM 2: 31

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**Date:** November 15, 2025

Clerk of the Court
United States Bankruptcy Court
District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

Re: **In re FTX Trading Ltd., et al., Case No. 22-11068 (KBO)**

**Filing of: SUPPLEMENTAL LIMITED OBJECTION OF WEIWEI JI TO THE
FTX RECOVERY TRUST'S MOTION FOR ENTRY OF AN ORDER
EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE
ADMINISTRATIVE CLAIMS OBJECTION DEADLINE (D.I. 33444)**

Dear Clerk,

Please find enclosed one original of the above-referenced Supplemental Limited
Objection, submitted as a supplement to my previously filed Limited Objection (D.I.
33537). I respectfully request that the enclosed document be filed on the docket.

Thank you for your assistance.

Sincerely,
**Weiwei Ji**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
DELAWARE

RECEIVED
NOV 11  PM 3: 29
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 33444, 33537** |

**SUPPLEMENTAL LIMITED OBJECTION OF WEIWEI JI TO THE FTX RECOVERY
TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS
OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE
CLAIMS OBJECTION DEADLINE (D.I. 33444)**

Weiwei Ji ("Creditor") hereby submits this supplemental limited objection (the
"Objection") to the FTX Recovery Trust's Motion for Entry of an Order Extending (I) the
Claims Objection Deadline and (II) the Administrative Claims Objection Deadline (the
"Motion") [D.I. 33444]. In support, Creditor respectfully states as follows:

**Preliminary Statement**

1.      The FTX Recovery Trust (the "Trust") seeks to push the Claims Objection
Deadline from January 3, 2026 to January 4, 2027, with leave to seek more time later. Creditor
does not oppose an extension supported with guardrails. But an unconditional extension—when
paired with the confirmed Plan's § 7.1 "deemed distribution" accrual rule—creates unequal
economic treatment among identical Class 5A creditors in violation of 11 U.S.C. § 1123(a)(4).

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX
Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of
such information may be obtained on the website of the FTX Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

2.      Under the confirmed Plan, Class 5A (Dotcom Customer Entitlement Claims) receives 100% of Allowed claims plus interest at the Consensus Rate "from the Petition Date through the applicable Distribution Date," subject to the waterfall. Critically, for a claim allowed after earlier class distributions, postpetition interest is calculated "as if" the claim had been paid on the prior class distribution dates, even though the creditor never had the funds during that delay. That is a permanent time-value loss that earlier-paid peers do not suffer. The extension therefore magnifies the disparity—any extension should be conditioned to restore parity.

3.      For avoidance of doubt, Creditor does not seek to disturb the Confirmation Order or re-litigate Plan § 7.1. The disparity arises now only because the Trust requests an additional one-year extension layered atop the Plan's deemed-distribution mechanics, creating economic effects that did not exist at confirmation. This newly-arising disparity did not exist at confirmation and only materializes under the Trust's requested post-confirmation extension, making conditional relief both necessary and appropriate.

## Background

4.      The confirmed Plan provides that postpetition interest "accrue[s] on the unpaid balance … through the applicable Distribution Date," provided that for a Disputed Claim that later becomes Allowed, interest "accrue[s] … as if" the claim had received each prior distribution on the dates those distributions were made to other class members. Plan § 7.1.

5.      The Plan defines "Disputed Claim" as any claim not Allowed, and defines "Allowed" to exclude, among other things, Unverified Customer Entitlement Claims. Plan §§ 2.1.8, 2.1.57. The Plan separately defines "Unverified Customer Entitlement Claims" as a claim that (a) either fails to submit KYC Information by a court ordered date or (b) an objection to the submitted KYC Information is sustained by order of the Court.  Plan § 2.1.197.

6.      The Trust now seeks to extend the claims objection deadline, citing administrative burden and the remaining volume of claims that remain unreconciled. The Trust also maintains that any extension will not prejudice any stakeholder.

**Argument**

I.      **The Proposed Extension of the Objection Deadlines Creates Non-Parity Inside Class 5A, Violating § 1123(a)(4).**

7.      Section 1123(a)(4) of the Bankruptcy Code requires "the same treatment for each claim … of a particular class, unless the holder … agrees to a less favorable treatment." 11 U.S.C. § 1123(a)(4). The equal treatment mandate looks to economic effect, not labels: a plan (or its administration) may not confer materially better economic value on some members of a class over others. *Dow Corning*, 280 F.3d at 660 (rejecting disparate recovery rights within a single class). See also *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 248–49 (Bankr. S.D.N.Y. 2007) (equal treatment satisfied only when class members receive the same treatment on account of their claims).Courts across circuits have consistently emphasized this equal-value principle when applying § 1123(a)(4). In *In re W.R. Grace & Co.*, the Third Circuit stressed that § 1123(a)(4) requires all creditors within a class to receive equal value for their claims and to surrender the same consideration in exchange for that value. 729 F.3d 311, 327–28 (3d Cir. 2013). Likewise, the D.C. Circuit in *In re AOV Industries, Inc.* explained that the "most conspicuous inequality" forbidden by § 1123(a)(4) occurs when co-class members receive different percentages or must sacrifice additional value to obtain the same recovery. 792 F.2d 1140, 1150 (D.C. Cir. 1986). These decisions reinforce that class members must receive not merely identical formal treatment, but truly equal economic value in practice.

8.      Here, Class 5A holders processed early received cash sooner (and Consensus Rate accrual on their remaining unpaid balances to their distribution dates). Plan §§ 4.3.6(b), 4.3.7(b).

By contrast, a creditor remaining flagged "Disputed" in the claims portal (claims.ftx.com) receives only "as if" interest that treats the creditor as already paid on previous distribution dates, even though the creditor never received the cash until later. The result is a permanent time-value shortfall for delayed creditors and a corresponding windfall for those paid earlier—this is non-parity the Bankruptcy Code does not permit.

9.      This disparity is not theoretical. It becomes especially clear when applied to the Trust's requested one-year extension: For example, if the requested one-year extension is granted, many Class 5A creditors who remain tagged "Disputed" may not receive their first distribution until as late as March 2027. Yet under Plan § 7.1, such a creditor would nevertheless be treated "as if" it had been paid on the earlier distribution dates in 2025—cutting off Consensus Rate interest for nearly two full years in which the creditor had no use of the funds at all. By contrast, earlier-paid Class 5A creditors received real cash in 2025 and enjoyed the full time-value benefit. This multi-year economic divergence, driven solely by the sequencing of the Trust's reconciliation queue, is precisely the unequal treatment that § 1123(a)(4) prohibits.

10.     For illustration purposes, and to isolate the economic effect, the following comparison assumes: (i) a Class 5A claim of $1,000,000; (ii) that the claim would be fully paid on the first distribution date; and (iii) a 9% Consensus Rate. These assumptions are used solely to demonstrate the time-value disparity created by delayed allowance. The resulting divergence is shown below:

**Illustrative Time-Value Loss from Delayed Allowance**

| Item | May 2025 Distribution (Normal Scenario) | March 2027 Distribution (Delayed "Disputed" Scenario) |
|---|---|---|
| Actual payment date | May 2025 | March 2027 |
| Date interest stops under Plan § 7.1 | May 2025 | Still May 2025 ("as-if-paid" cutoff) |
| Period without access to funds | None | Approximately 22 months |
| Time-value impact on a $1,000,000 claim (9% rate) | No loss | Approx. $165,000 permanent loss |
| Economic result | Full economic value preserved | Time-value deprivation; unequal treatment |

The illustration makes clear that the disparity is substantial: a nearly $165,000 time-value loss over a 22-month period for the same $1 million claim, solely because the creditor remained tagged as "Disputed".

11.    Without parity guardrails, any extension of the objection deadline causes permanent economic shortfalls for creditors whose claims are kept "Disputed" for multiple distribution dates. For those creditors, the Plan cuts off interest on amounts "as if" they had been paid earlier, even though the creditor never had use of those funds. Plan § 7.1. Earlier paid creditors, by contrast, received cash earlier (and therefore the full time-value benefit of deploying those funds), plus Consensus Rate accrual on unpaid balances through their distribution dates. Plan §§ 4.3.6(b), 4.3.7(b). That is not parity in economic effect when the Trust chooses (or simply delays) who is processed first.

12.    Although the Confirmation Order recites that the Plan, on its face, satisfies § 1123(a)(4), see *Confirmation Order* ¶ 30 (finding "same treatment" in Article 4), the Court

retains jurisdiction to resolve disputes "regarding the interpretation of an ambiguity in the Plan" and to implement the Plan equitably. *Confirmation Order* ¶¶ 169–70; 11 U.S.C. § 105(a).

13.    The present dispute is about Plan administration under a new extension, not a collateral attack on confirmation: the requested extension, layered atop § 7.1's deemed-distribution accrual, creates the very disparity § 1123(a)(4) forbids, unless the Court conditions the extension with parity safeguards.

## II.    Sequencing Standards for Claim Verification are Necessary to Protect Creditors

14.    The Trust argues that because the Plan defines "Disputed Claim" as any claim "that has not been Allowed," it may withhold indefinitely while it works through verification. But the Bankruptcy Code and the Rules still control claim allowance. A properly filed proof of claim "is deemed allowed" unless a party in interest objects under 11 U.S.C. § 502(a). And an objection must be filed and served under Bankruptcy Rule 3007(a); a portal status designation or internal tag is not enough absent justification as to why one claim is verified while the other is not when both timely submitted the same KYC Information. The Trust's internal tagging system cannot substitute for a Rule 3007 objection, nor can it delay the statutory "deemed allowed" presumption under § 502(a).

15.    Plan § 8.6 states that no distribution is made if an objection "is filed or is intended to be filed" or the claim "remains a Disputed Claim." Read literally and combined with rolling extensions, that language would permit open-ended nonpayment without a Rule 3007 objection. That construction cannot override § 502(a) or Rule 3007, and when combined with Plan § 7.1's "as-if paid" interest cutoffs, it creates the very § 1123(a)(4) disparity described above. The Court should interpret Plan § 8.6 to require a timely filed objection or, at minimum, a specific written notice explaining the grounds or else require equalization during any delay.

16.     The Trust may also cite Plan § 2.1.8, arguing that a claim is not "Allowed" while it is "unverified." But § 2.1.8(b)-(d) conditions allowance on the absence of an objection and on the claim's not being "unverified," without any sequencing standards for verification or deadlines to prevent arbitrary order. A definition of "Allowed" that hinges on an open-ended, administrator-controlled verification queue cannot become license to indefinitely deny equal treatment while simultaneously cutting off interest "as-if paid" on earlier dates. The appropriate harmonization is process now or equalize value with continued interest accrual until actual payment.

17.     The Trust cites *In re: Cred Inc., et al.,* Case No. 20-12836 (KBO) (Apr. 16, 2025) [D.I. 1291] ("Cred") for repeated claims objection deadline extensions in a digital asset Chapter 11 Case. But plan structure matters. In Cred, general unsecured creditors received a pro rata share of "Net Distributable Assets"; there was no plan set Consensus Rate interest and no "as-if paid" deemed distribution interest cutoffs.

18.     Because Cred measured recoveries as a percentage of a common distributable pool, the timing of individual allowance generally did not reduce the quantum of any creditor's recovery; late-allowed creditors still received the same pro rata share of the final pool. By contrast, FTX caps customer recoveries at 100% plus Consensus Rate interest only "through the applicable Distribution Date" and further deems prior distributions for later-allowed claims "as if" they had been paid earlier severing interest on amounts never received.

19.     Further, the disclosure statement approved in Cred showed general unsecured claims with impaired and unknown recoveries—i.e., a finite pool to be shared pro rata—not a promise of 100% plus interest capped by distribution dates. Thus, timing differences in Cred did not change any creditor's entitlement to time-value; everyone drew from the same pool as it

grew. By contrast, in FTX, Plan § 7.1's "as-if" accrual cuts off Consensus Rate interest for later-allowed Class 5A claims at earlier class distribution dates, even though those creditors had no use of funds then, creating an economic inequality that Cred never presented.

20.    Thus, Cred does not stand for the proposition that a debtor may rely on an arbitrary, open-ended post-confirmation reconciliation queue where economic parity declines as time passes. If Cred shows anything, it is that extensions may be appropriate when plan mechanics preserve parity. Here, absent equalization, each month of delay permanently shifts value from later-allowed customers to earlier-paid customers, precisely the § 1123(a)(4) problem. See *In re Washington Mut., Inc.*, 442 B.R. 314, 355-61 (Bankr. D. Del. 2011) (emphasizing fairness in post-confirmation administration).

21.    While the Trust's monumental task of reconciling tens of thousands of claims is real, administrative burden does not justify the economic discrimination within a class. The Court should adopt targeted conditions that balance efficiency with parity.

**III.  Any Extension to the Objection Deadlines Should be Conditioned to Restore Parity and Transparency.**

22.    Creditor respectfully asks the Court to condition any extension on the following:

i.    **Parity Interest (Equalization).** Order that, for Class 5A claims kept in "Disputed" status without a properly filed Rule 3007 objection, Consensus Rate interest continues the full unpaid amount until the creditor's actual first Distribution Date—not the earlier distribution dates—or, in the alternative, require a cash "Equalization Payment" equal to the time-value shortfall caused by the deemed distribution clause. (Plan §§ 4.3.6-4.3.7, 7.1.) This is an implementation order under § 105(a) that harmonizes Plan § 7.1 with § 1123(a)(4) while avoiding re-writing the Plan.

       ii.     **Temporary Allowance / Estimation & Catch-Up Distributions.** Direct the Trust to move, on a rolling basis, to estimate or temporarily allow claims (or undisputed portions) for distribution purposes under 11 U.S.C. § 502(c) and Plan § 8.2, and then make catch-up distributions so late-allowed claims match class peers. Plan §§ 8.2, 8.5 (Disputed Claims Reserve).

       iii.     **File or Explain.** Within 14 days of tagging any claim "Disputed," the Trust must either file a Rule 3007 objection stating particularized grounds (and noticing a hearing) or serve a written status notice identifying the precise basis, the evidence needed from the creditor, and a target timeline to resolve. (Rule 3007(a); § 1123(a)(4).)

       iv.     **Public, Categorical Reporting.** Require monthly filings: the count of disputed claims by reason code (KYC/AML; preference offset; double dip; valuation; documentation; sanctions/jurisdiction), average and median age, and the number advanced or resolved that month, so the Court can police progress and parity. See *Washington Mutual*, 442 B.R. at 355-61 (emphasizing disclosure and process integrity).

       v.     **Reserve at Parity.** Direct that the Disputed Claims Reserve include amounts necessary to fund parity interest/equalization for the later-allowed claims, so remedies are not illusory. Plan § 8.5.

     23.    These conditions are modest, workable, and squarely within the Court's powers "to issue any order… necessary or appropriate to carry out the provisions" of the Code, 11 U.S.C. § 105(a), and to interpret and implement its own confirmation orders. See *Confirmation Order* ¶¶ 168-70 (retaining authority and requiring a Disputed Claims Reserve).

     24.    Delaware courts have endorsed staged extensions with oversight where needed to assure progress while protecting creditors. See, e.g., *In re Energy Future Holdings Corp.*, 561

B.R. 630, 634-37 (Bankr. D. Del. 2016) (approving phased approach with continued court supervision). These narrow conditions preserve administrative efficiency and creditor parity.

## Conclusion

25.    Creditor does not seek delay; he seeks only parity. Conditional relief ensures that administrative convenience does not override the Bankruptcy Code's mandate of equal treatment among co-class creditors.

26.    WHEREFORE, for the reasons set forth herein, Creditor respectfully requests that the Court (a) deny the Motion as filed or condition any extension on the parity measures above, and (b) grant such other and further relief as is just and proper.

Dated: <u>November 15, 2025</u>

       Singapore

                                      _____

                                        Weiwei Ji (*pro se*)
                                        Clam No. 37373
                                        Singapore
                                        weiweiji@hotmail.com

## CERTIFICATE OF SERVICE

I, Weiwei Ji, hereby certify that on the 15th day of November 2025, I caused a true and correct copy of the foregoing *Supplemental Limited Objection of Weiwei Ji to the FTX Recovery Trust's Motion for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline [D.I. 33444]* to be submitted to the Court in paper form, in accordance with the procedures applicable to pro se filings in the United States Bankruptcy Court for the District of Delaware.

I further certify that on the same date, November 15, 2025, I caused a courtesy copy of the foregoing filing to be served via Electronic Mail upon the following parties:

*Counsel for the FTX Recovery Trust:*

Adam G. Landis, Esq.
Kimberly A. Brown, Esq.
Matthew R. Pierce, Esq.
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 1800
Wilmington, Delaware 19801
landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

Andrew G. Dietderich, Esq.
James L. Bromley, Esq.
Brian D. Glueckstein, Esq.
Alexa J. Kranzley, Esq.
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

November 15, 2025
_____

Date

Weiwei Ji