# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 22-11068 (KBO) |
| FTX TRADING LTD., *et al.*,[1] | (Jointly Administered) |
|  |  |
| Debtors. | Related Docket No(s).: 33444 |

## LIMITED OBJECTION OF PU KE TO THE FTX RECOVERY TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE

Movant Pu Ke, Ph.D. in Theoretical Physics, proceeding pro se as the holder of Claim No. 33657, respectfully submits this limited objection (the "Objection") to the FTX Recovery Trust's (the "Trust") Motion to Extend Deadlines (D.I. 33444) (the "Motion"). This Objection is timely filed pursuant to Delaware Bankruptcy Local Rule 9006-1(c)(ii), which sets the objection deadline seven (7) days prior to the rescheduled November 24, 2025 hearing date (D.I. 33469).

## I. SUMMAEY OF ARGUMENT

The FTX Recovery Trust seeks extraordinary extensions of both the Claims Objection Deadline and the Administrative Claims Objection Deadline to January 4, 2027—approximately one year for general claims and fourteen months for administrative claims. If granted as requested, these extensions would hold tens of thousands of filed, unobjected claims in limbo for another year or more, effectively suspending the Plan's record-date allowance mechanics and deepening an already entrenched "black box" around claim status in the Kroll system. This limited objection does not oppose every conceivable extension in the abstract. It objects to the length, structure, and effects of the extensions requested in the Motion, which are unsupported by the governing law, the confirmed Plan, or the factual record.

Under Rule 9006(b), "cause" must be shown; administrative convenience and self-created backlog do not suffice. Section 105(a) does not authorize rewriting the Plan or suspending the Bankruptcy Code's baseline rules, including § 502(a)'s "deemed allowed" default. The Plan itself already provides a clear, mechanical framework: for each interim distribution, claims with no Article 8 objection on file by the applicable Distribution Record Date, and whose holders have satisfied § 7.14, are treated as "Allowed" for that distribution, with catch-up under § 7.2.4. The Trust's request would invert this structure by using a distant final objection deadline to justify treating unobjected, compliant claims as "Disputed" indefinitely, contrary to both the Code and the Plan.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

The factual record shows that the Trust's difficulties are not technical or unavoidable. The reconciliation task is modest in scale and straightforward: the structured datasets for Claims totaling roughly 60 MB, a standard hash-based matching pass, and approximately 2.1 million simple lookup-and-compare operations—work that modern hardware performs in minutes, not months. The real problems are administrative and self-inflicted: inconsistent claim counts between the Trust's motion, Kroll's portal, and the Objection Docket; errors in omnibus schedules; failure to timely update Kroll's public database to reflect docketed objections; and the existence of approximately 49,393 claims showing no objection, notice, or updated status after an average wait of more than 800 days. These are not reasons to violate the Plan; they are reasons to enforce it.

At the same time, the Trust's own data show a declining workload and finite remaining tasks, not an unmanageable surge. Objection volumes have dropped sharply since 2025; the overwhelming majority of Claims have already been resolved; and the residual claim pool is small relative to the more than 650,000 claims already reconciled. The number of genuinely complex, high-stakes proceedings is modest, and far fewer than the "numerous" matters cited in the motion. Against this backdrop, the requested one-year and fourteen-month extensions are far longer than the 120–180 day extensions typical in the very cases the Trust cites, and longer even than the few outliers it relies upon—many of which involved plans that explicitly contemplated future extensions, unlike FTX's Plan.

Meanwhile, keeping tens of thousands of claims in an informational "black box" inflicts real prejudice on creditors and generates additional burdens for the Court. Creditors cannot tell whether their claims are allowed, disputed, or simply unprocessed; docket data show abnormal spikes in claim transfers and increased objection activity in response to this prolonged uncertainty; and each layer of opacity invites more motion practice and hearings that should not be necessary under a properly administered claims process. The Trust's invocation of "creditor patience" cannot convert this harm into "cause" for further delay.

For these reasons, the Trust has not carried its burden to show "cause" for the sweeping extensions it seeks. The existing Plan tools—Article 8 objections, deficiency notices, and the record-date framework—are sufficient to resolve the remaining claims within the current schedule, particularly customer claims that have already passed through hundreds of rounds of review. Movant therefore respectfully requests that the Court deny the extensions as proposed, or at a minimum substantially limit and condition any extension so that: (i) it is narrowly tailored in duration and scope; (ii) it does not permit unobjected, § 7.14-compliant claims to be treated as "Disputed" solely by reference to a distant final objection deadline; and (iii) the Trust and Kroll are required to bring the Claims Register and public portal current and transparent within a defined timeframe.

## II. GOVERNING LEGAL STANDARDS AND PLAN FRAMEWORK

### A. Timeliness and Procedural Posture (D. Del.Bankr. L.R. 9006-1(c))

The Trust filed its Motion to extend the Claims Objection Deadline on November 3, 2025 and noticed a hearing for November 20, 2025—seventeen days later. Because the notice period was less than 21 days, Local Rule 9006-1(c)(ii) fixed the objection deadline at seven days before the hearing. The hearing was

later continued to November 24, 2025 (D.I. 33469). Applying the same rule to the rescheduled date, the objection deadline became November 17, 2025. This limited objection was filed on or before that date and is therefore timely and properly before the Court.

## B. The Trust's extension is Limited by its Fiduciary Duty

FRBP 9006(b) permits enlargements "for cause shown." Section 105(a) authorizes remedial orders to carry out the Code but does not permit rewriting a confirmed plan or overriding explicit statutory mandates. Discretion under these provisions is therefore constrained by the Bankruptcy Code's baseline (including § 502(a)'s "deemed allowed" default) and by the Plan itself.

Plan § 5.8 fixes the Trust's fiduciary objective: the Wind-Down Entities exist "to… pay Distributions, in each case as promptly as reasonably practicable." Any request to enlarge deadlines must be evaluated against that non-discretionary duty and its effect on creditors' timely treatment under the Plan's mechanics.

Accordingly, "cause" cannot be predicated on generalized administrative burden where the practical effect is to postpone the Plan's treatment of unobjected, § 7.14-compliant claims or to introduce extra-Plan conditions.

## C. The Claims Register Is the Official, Timely Status Source for Record-Date Administration

The Plan and the Rules make the Claims Register the operative record of claim status. Plan § 2.1.33 defines the "Claims Register" as the official register maintained by the Notice and Claims Agent (Kroll Restructuring Administration LLC) defined in § 2.1.134. FRBP 5003(b) requires that a claims register be kept in cases with unsecured distributions, and in this District the court-approved claims agent maintains the official register under Del. Bankr. L.R. 2002-1, including recording objections and other filings affecting a claim and providing public access.

These duties operate in tandem with the Plan's distribution mechanics. Under Plan § 7.4.1, the Distribution Agent recognizes only those Holders "listed on the Claims Register" as of the close of business on the Distribution Record Date. Plan §§ 8.2, 8.3.1, and 8.8 give the Plan Administrator the authority and process to object to claims and to administer and adjust the Claims Register to reflect such filings and determinations.

Accordingly, prompt, accurate reflection on the Claims Register of any Article 8 objection (or the absence of one) ensures that each Record Date captures a reliable snapshot of which claims are treated as Allowed for that round, with catch-up thereafter under § 7.2.4. Any extension granted under Rule 9006(b) or § 105(a) functions as calendar management only; it does not alter the Register's role or delay the Plan's consequences for unobjected, § 7.14-compliant claims as of a given Record Date.

## D. Plan's Framework for Interim Distributions

Upon confirmation, the Plan became a binding contract among the parties, enforceable under 11 U.S.C. § 1141(a), and the Court retains authority under § 1142(b) to direct acts necessary to consummate it. Plan § 5.8 fixes the Trust's fiduciary objective—to pay Distributions "as promptly as reasonably

practicable." Operational constraints do not displace these obligations or suspend the allowance that attach at each Distribution Record Date absent an Article 8 objection.

## 1 . Principles of Plan Interpretation

The confirmed Plan is a binding contract whose construction is governed by settled principles:

a. **Consistency with the Bankruptcy Code.** The Plan must be consistent with the mandatory provisions of the Bankruptcy Code, including the "deemed allowed" default of 11 U.S.C. § 502(a), the equal-treatment requirement of 11 U.S.C. § 1123(a)(4), the binding effect of confirmation under 11 U.S.C. § 1141(a), and the Court's post-confirmation enforcement authority under 11 U.S.C. § 1142(b).

b. **Whole-instrument construction.** The Plan must be read as a coherent whole, giving effect to all of its parts. An interpretation that creates conflict between provisions is not allowed.

c. **The Canon Against Surplusage.** Every word and provision of the Plan must be given meaning. An interpretation that renders any part of the text superfluous, redundant, or insignificant must be rejected.

## 2. Foundational principle: claims are "deemed allowed" under § 502(a) and implemented by Plan §§ 2.1.8(d), 7.4.1–7.4.2, and 7.2.4

The claims-administration framework rests on the bedrock rule of § 502(a): a properly filed claim "is deemed allowed" unless a party in interest objects. The Plan implements this default through §§ 2.1.8(d), 7.4.1, 7.4.2 and 7.2.4: for each distribution, if no Article 8 objection has been filed by the applicable deadline, the claim is treated as "Allowed" for that round. The Trust's residency-based deferral reverses this logic by maintaining "Disputed Claim" status without an objection.

## 3. The final Claims Objection Deadline is the upper bound, not the operative deadline for interim distributions

**Proof by Contradiction:** If the Claims Objection Deadline (Plan § 2.1.32) were the only "applicable deadline," the Plan Administrator could always wait to object, and in that extreme scenario no creditor with a filed proof of claim could receive any interim distribution before the current Claims Objection Deadline on January 3, 2026. That reading conflicts with Article 7, which expressly mandates interim distributions (§ 7.2) and a catch-up mechanism (§ 7.2.4). The Claims Objection Deadline is the upper bound for objections, not the operative checkpoint for each interim distribution.

## 4. The Distribution Record Date is the operative "applicable deadline" for each interim distribution

**Proof by Contradiction.** Assume the Record Date is **not** the operative "applicable deadline" for interim distributions (e.g., the only deadline is the final Claims Objection Deadline, or the Plan Administrator may choose ad hoc). Then either: (i) the Record Date in Article 7 does no work—

violating the canon against surplusage; or (ii) similarly situated Class 5A creditors (no Article 8 objection by the Record Date; § 7.14 Pre-Distribution Requirements satisfied) receive different outcomes based solely on discretionary withholding "Allowed" status, producing non-uniform treatment within the same class, contrary to Article 4 and 11 U.S.C. § 1123(a)(4). Both results are incompatible with the Plan and the Code. Therefore, the Distribution Record Date is the operative "applicable deadline" for each interim distribution.

**5. The Plan-dictated, non-discretionary two-condition process for interim distributions**

Read holistically, the Plan establishes a clear, mechanical process for each interim distribution:

a.   **Condition 1 — Allowed-for-the-distribution (legal status of a Claim).** As of the **Distribution Record Date** for a given distribution, the Claims Register shall be closed and a claim is "Allowed" if **no Article 8 objection** has been filed.

b.   **Condition 2 — Pre-Distribution Requirements (logistical status of a Holder).** Separately, the Holder must satisfy the § 7.14 Pre-Distribution Requirements (KYC, tax forms, DSP onboarding) to receive payment.

c.   **Entitlement and catch-up.** A creditor satisfying both conditions is entitled to payment for that distribution per §7.4.2; if the claim becomes "Allowed" after a distribution date has passed (i.e. by other paths defined in §2.1.8), § 7.2.4 mandates a catch-up payment on the next distribution date. This framework enforces parity within each class and implements the Distribution Record Date and catch-up provisions without need for any extra-Plan procedure.

# III. FACTS

**A. The Reconciliation Process Is Straightforward and Not a Basis for Delay.**

Reconciliation of customer claims against the Debtors' books and records is not a complex or resource-intensive undertaking. It consists of a direct comparison of two existing electronic datasets: (i) the Debtors' internal ledger reflecting customer positions and balances, and (ii) the database of filed customer claims, each containing the customer identifier, asset, and asserted amount. Once in structured form, matching the two datasets is a routine, automated exercise.

Standard hash-based methods used in ordinary financial operations allow reconciliation without line-by-line human review. The ledger can be indexed once using a composite key (customer identifier, asset, currency), enabling constant-time lookup for each corresponding claim. Each claim is then scanned once and compared automatically to the ledger entry; matches are confirmed, and any mismatch or missing ledger record is flagged for further review. No iterative optimization or complex computation is involved.

The computational load grows linearly with the number of records. With approximately two million ledger lines and one hundred thousand claims, the process involves roughly 2.1 million simple lookup-and-compare operations—trivial by modern standards. Contemporary workstation-class hardware easily performs such tasks in seconds to minutes. Even accounting for disk I/O and system overhead,

the entire reconciliation run is a short, automated process, not a months-long or resource-prohibitive project.

The scale of the underlying data further underscores the simplicity of the reconciliation task. The complete combined dataset—including the Debtors' customer ledger and all filed customer claims—occupies approximately 60 megabytes in machine-readable form. This is a trivially small volume by modern computing standards. A dataset of this size fits comfortably into memory on any ordinary laptop-class machine and can be processed in its entirety without requiring specialized infrastructure, distributed systems, or extended runtime.

## B. Material Errors in the FTX–Kroll Reconciliation Process

As the Court recently observed, "the trust['s] reconciliation of claims . . . is at its infancy." *In re FTX Trading Ltd., et al.*, No. 22-11068 (Bankr. D. Del. Oct. 23, 2025), Hr'g Tr. 23:8–9. But the "infancy" of the process is not attributable to technical difficulty—the reconciliation itself is straightforward. Rather, it reflects persistent and substantial inaccuracies within the FTX–Kroll reconciliation workflow.

The Trust asserts that "the claims pool comprised more than 682,000 Claims" and that "approximately 25,400 Claims … remain under active review and reconciliation." (the Motion) Yet Kroll's own public claims database reports **100,407** total claims, of which **27,633** are marked as reconciled and **73,926** remain without any objection, notice, or status change (see Ex. B-1). Neither the total number of claims nor the subset identified as under active review aligns with the Trust's representations.

The inconsistency deepens when cross-checked against the Objection Docket, which reflects 40,309 claim objections, most of which are not accounted for in Kroll's figures and leaves the same **49,393** claims showing no objection, notice, or updated status (see Ex. B-2). These data sources—FTX's filings, Kroll's database, and the docket—cannot be reconciled with one another.

Even filings submitted to the Court contain basic tabulation mistakes. For example, in the table attached to the Thirty-Fourth Omnibus Claims Objection, Schedule 1 – Modified Claims, the column headers are incorrect; the field that should display the "Amount" continues to display "Debtor," a clear tabulation error. (see Ex. B-3)

These discrepancies demonstrate that the perceived "infancy" of the reconciliation effort arises not from inherent computational limits, but from avoidable human and administrative errors within the claims-handling system. The Trust therefore cannot rely on its own inconsistent and inaccurate data environment as a basis to delay allowance determinations or interim distributions.

## C. The Decline in Objection Activity

The Trust asserts that the reconciliation and objection process remains heavily burdened. But the objective data show the opposite: beginning in 2025, the Trust's rate of claim objections and reconciliation activity declined sharply, contradicting any claim that extraordinary workload prevents timely completion.

Kroll's public claims statistics reveal a clear trend. In 2025 Q1 and Q2, the Trust filed approximately **3403** and **3381** objections, respectively. Yet in 2025 Q3, that number fell to roughly **340** and in Q4 to approximately **12**—a dramatic reduction. The contrast with earlier periods is even more striking: in

2024 Q3 and Q4, FTX filed approximately **15,687** and **13,831** objections (see Ex. B-4). The downward trajectory of objection activity is unmistakable.

This pattern aligns with the Trust's own prior statements that it completed "addressing an immense volume of Claims" early in the case—primarily during 2024 and, at the latest, the first half of 2025. The volumes filed in 2025 Q3 and Q4 do not reflect a team operating at maximum capacity or facing an overwhelming surge of new work. They instead show that the bulk of the Trust's efforts occurred long ago and that the remaining tasks are being processed at a significantly slower pace.

Accordingly, the data do not support the assertion that continued delays are driven by insurmountable workload, ongoing peak-volume reconciliation, or any need for extraordinary extensions. To the contrary, the marked reduction in objection activity undermines the Trust's claim that it is unable to complete reconciliations or make allowance determinations within the existing schedule.

## D. Lack of Reconciliation Activity of Administrative Claim

The handling of Administrative Claims provides an additional, independent indicator that the Trust's reconciliation work has slowed materially and does not justify further delay. According to Kroll's claims database, there are **411** Administrative Claims in total. Of these, approximately **259** have already reconciled only **152** unresolved. Administrative Claims filed after **July 1, 2024** show no recorded processing activity whatsoever (see Ex. B-5). For more than a year, newly filed Administrative Claims have neither been reconciled nor advanced toward resolution. This absence of progress cannot be attributed to volume—because all such post–July 2024 claims number fewer than two hundred—nor to technical impediments. Instead, it reflects a prolonged stagnation in the Trust's administrative-claims workflow.

## E. The Trust Overstates Its Workload

The Trust's extension request invokes "numerous individual claim and adversary proceedings" and asserts that it is burdened by "complex and high-stakes" litigation. (the Motion) However, the objective record does not support these characterizations and shows that the Trust has materially overstated the scope of its outstanding workload.

According to Kroll's public database, the number of individual claim-specific matters—whether styled as objections, notices, or adversarial disputes—is **16** in total. This is far from the "numerous" proceedings described in the Trust's motion (see Ex. B-6). Likewise, the docket reflects that only **115** replies have ever been filed in response to omnibus objections in total, with the most heavily contested omnibus objection drawing just **14** replies, and the average omnibus objection drawing approximately **0.59** replies (i.e., well under one reply per omnibus objection). These include matters involving plan implementation, limited legal questions, or isolated fact disputes—none of which remotely approach the volume or systemic complexity implied in the extension filings.

## F. The Extraordinary Length of the Requested Extensions

The Trust seeks to extend both the Claims Objection Deadline and the Administrative Claims Objection Deadline to January 4, 2025—amounting to a one-year extension for general claims and an unprecedented fourteen-month extension for administrative claims. Extensions of this magnitude are exceedingly rare in chapter 11 practice and are not supported by the Trust's own cited authorities.

In its motion, the Trust references several cases in which courts approved extensions of claims-objection deadlines. Yet among those examples, only *In re Cred Inc.*, Case No. 20-12836 (Bankr. D. Del.), D.I. 1291 (Apr. 16, 2025), involved an extension approaching one year; the rest fall within a far more typical range of 120 to 180 days. With respect to administrative-claims objection deadlines, the longest extension cited by the Trust is approximately seven months, with most falling between 90 and 180 days. Moreover, several of those cases involved plans that expressly contemplated future extensions, making them poor comparators for FTX, whose confirmed Plan contains no such built-in schedule (see Ex. B-7).

FTX's request therefore seeks extensions that are substantially longer than those approved in the very cases it invokes, and materially longer than the norms reflected in Delaware bankruptcy practice. Nothing in the record—including the Trust's reduced objection activity, the minimal volume of remaining individualized matters, and the long-completed bulk of reconciliation work—supports such an extreme departure.

The Trust further argues that aligning the Administrative Claims Objection Deadline with the Claims Objection Deadline will "promote efficiency and streamline the administration of these related processes." That rationale fails on the text of the Plan itself. Article 3 carves out Administrative Claims as a separate, non-classified category, sets a distinct "Administrative Claim Bar Date" (30 days after the Effective Date, absent further order), and requires objections to administrative requests for payment to be filed within a short, fixed period after that bar date. By contrast, Article 2 defines the "Claims Objection Deadline" in terms of Proofs of Claim, and Article 8 applies that deadline only to objections to Claims other than Administrative Claims. Administrative Claims are also entitled to payment "on or as reasonably practicable after" the Effective Date or the date they are allowed, reinforcing an earlier, priority timetable distinct from the general claims process.

Read as a whole, the Plan thus creates two deliberately separate tracks: (i) a prompt, front-loaded regime for Administrative Claims, with their own bar date, objection window, and accelerated payment expectation, and (ii) a longer reconciliation schedule for general claims. Collapsing the Administrative Claims Objection Deadline into the final Claims Objection Deadline would erase that distinction, effectively re-timing Administrative Claims as if they were ordinary claims and stretching them far beyond the Plan's 30-day-plus-90-day framework. That is not "streamlining"; it is a functional rewrite of the Plan's priority scheme for Administrative Claims, undertaken for the Trust's administrative convenience rather than in furtherance of the Plan.

## G. Not Timely Updated Kroll's Claims Database

A comparison of recent docket filings with Kroll's public claims database reveals that the database has not been kept current, particularly with respect to claims that were expressly objected to prior to the most recent Distribution Record Date. Several claims that appear in the docket as having been formally objected to do not appear in Kroll's system, for example **Claim 17** (see Ex. C-1). This discrepancy reflects a failure to timely update the publicly available claims register.  Failing to record an objection in the public database creates a misleading disclosure environment and deprives affected creditors of the notice and transparency required under the Bankruptcy Code, the Rules, and the Plan.

Such omissions are not merely clerical oversights. The Trust asserts that "approximately 25,400 Claims … remain under active review and reconciliation." (the Motion) Yet Kroll's own public claims database reports **100,407** total claims, of which **27,633** are marked as reconciled and **73,926** remain without any objection, notice, or status change (see Ex. B-1).

These inconsistencies further illustrate that the Trust's administrative difficulties stem from internal information-management failures, not from any inherent complexity in the reconciliation process. They also undermine the Trust's reliance on its data systems as a basis for seeking additional time. The Trust cannot claim delay due to "ongoing reconciliation" while simultaneously failing to maintain accurate and timely disclosures in the very system upon which creditors must rely.

## H. Extraordinary Delay for Claims in limbo

The data further show that claims receiving no objection, notice, or status update in Kroll's system—currently **49,393 claims**—have now experienced an average wait time exceeding **800 days**. This delay is more than **twice** as long as the Trust's own average timeframe for objecting to claims it chooses to challenge (see Ex. C-2). The disparity underscores a systemic pattern: claims the Trust elects to address are processed within a predictable window, while the thousands of claims left with no status update remain stalled for years.

The pattern emerging from the **198 Omnibus Objections** filed to date reinforces this point. Each omnibus filing spans broad claim-number ranges and consistently incorporates the most recent claims, showing that the Trust systematically revisits the full claim universe. Yet despite these repeated cycles of review, the same **49,393 claims** continue to show no objection, no notice, and no change in status. These creditors remain indefinitely in limbo despite having survived nearly two hundred rounds of omnibus review.

## I. Unequal Treatment for Claims in Limbo

The current administration has left a large number of claims in limbo, with no timely processing under the Plan and no timely updates to claim status. This failure to provide the status transparency required by the Plan effectively places tens of thousands of creditors in a "black box"—unable to determine whether their claims are allowed, disputed, or even reviewed. Such opacity inflicts real prejudice on creditors and results in de facto discriminatory treatment.

Under the Plan, claim status must be updated promptly and accurately so that creditors know whether their claims stand as Allowed, Disputed, or subject to further review. The administrative failure to update these statuses deprives creditors of the procedural protections that the Plan and the Bankruptcy Code guarantee.

Any added delay prolongs the black-box environment, increases uncertainty, and entrenches unequal access to information. Creditors already disadvantaged by the lack of status updates would see their injuries deepened, not cured. The Trust cannot rely on a system it has allowed to become opaque and stagnant as a basis for requesting additional time.

## J. Non-Transparency Has Increased Uncertainty and Burden

The Kroll system fails to provide timely, accurate updates required by the Plan. As a result, claimants cannot determine whether their claims are Allowed, Disputed, under review, or simply unprocessed. This is a direct departure from the Plan's structured allowance framework and deprives creditors of the notice and transparency the Plan and the Bankruptcy Code require.

This uncertainty has also manifested in observable market behavior. Data from claim-transfer activity show a sharp and abnormal spike in transfers during 2025 Q3 and Q4, coinciding with the period in which claim statuses remained stagnant. At the same time, the number of objections filed against FTX's own proposals increased. These parallel trends strongly suggest that the prolonged opacity regarding claim status has destabilized creditor expectations, prompting distressed transfers and increased litigation activity (see Ex. C-3).

The consequences extend beyond creditors: the resulting disputes and objections impose additional burdens on the Court and complicate case administration. A claims-administration system that fails to communicate timely status updates invites unnecessary filings, motions, and hearings, diverting judicial resources to issues that should be resolved administratively under the Plan's framework.

## K. The Trust Has the Ability to Resolve Remaining Claims Without Further Extensions

The Trust is not confronted with an intractable problem that requires extraordinary extensions; it already has both the **tools** and the **capacity** to resolve the remaining claims within the existing schedule.

First, the confirmed Plan sets out a clear, detailed allowance process. It does not force the Trust to choose between (i) paying "invalid or unsupported Claims" or (ii) filing "a massive number of premature objections." Instead, Article 8 and related provisions permit the Trust to use targeted notices, deficiency notices, and other Plan-authorized mechanisms to clarify issues, cure defects, and move claims toward allowance or objection in an orderly way. Proper use of these Plan tools obviates the need for a global extension of the Claims Objection Deadline.

Second, by the Trust's own account, it has already demonstrated the capacity to process claims at high volume. Over the past twenty-two months, the Trust has reconciled **more than 650,000 claims** and resolved **almost 30,000** every month in average, leaving only **approximately 25,400** claims outstanding. Of these, roughly **24,200 are customer claims**, and they have already passed through **hundreds of rounds of omnibus review**. With such a reduced universe of remaining matters—and with the systems and experience already in place—the Trust is fully capable of making substantial additional progress, especially on customer claims, in the remaining weeks before the current deadline.

In short, the Plan provides a workable allowance framework, and the Trust's own track record confirms that it can apply that framework effectively. The existence of manageable, well-defined tools—and a significantly reduced claim population—undermines any assertion that only a lengthy extension can preserve orderly administration. The Trust has the ability to resolve a large portion of the remaining claims within the existing timeline and should be required to do so.

# IV. APPLICATION

Under Rule 9006(b), the Court may enlarge deadlines only "for cause shown," and § 105(a) does not authorize rewriting the Plan or suspending the Code's baseline rules, including § 502(a)'s "deemed allowed" default. The Plan, in turn, fixes the Trust's fiduciary mandate: to make distributions "as promptly as reasonably practicable," and implements a mechanical, record-date-based allowance framework that turns on the Claims Register and Article 8 objections, not on open-ended administrative discretion.

Applied to the present record, those standards show that the Trust has not carried its burden of demonstrating "cause" for the extraordinary extensions it seeks.

## A. The Trust's Self-Created Administrative Problems Do Not Constitute "Cause"

As set out in Section III, reconciliation of customer claims to the Debtors' books and records is a straightforward, low-burden task: two structured datasets totaling roughly 60 MB, a standard hash-based matching pass, and approximately 2.1 million simple lookup-and-compare operations—work that modern workstation-class hardware performs in minutes, not months. The Trust has thus failed to show any genuine technical or computational impediment to timely reconciliation.

The record instead shows avoidable errors in the FTX–Kroll workflow: inconsistent claim counts between the Motion and Kroll's database; misaligned totals between Kroll, the objection docket, and omnibus schedules; and even basic header and tabulation errors in filings such as D.I. 14597. Kroll's portal further fails to reflect, on a timely basis, objections that appear on the docket, leaving objected claims still showing "no objection" or no status change in the public register.

Rule 9006(b) does not permit a party to manufacture "cause" by allowing its own information systems to fall out of sync with the docket or the Plan. Administrative mismanagement of the Claims Register cannot justify suspending the Plan's allowance consequences or delaying interim distributions.

## B. The Plan's Record-Date Mechanics Foreclose Using Extensions to Suspend § 502(a)

As explained in Section II, the Plan implements § 502(a)'s "deemed allowed" default through a record-date-based framework: for each interim distribution, claims with no Article 8 objection on file by the applicable Distribution Record Date are treated as "Allowed" for that round, subject to catch-up under § 7.2.4.

The Trust's request would invert this structure. By pushing both the Claims Objection Deadline and the Administrative Claims Objection Deadline out to January 4, 2027, the Trust effectively asks to hold unobjected claims in permanent "Disputed" limbo, despite their status on the Claims Register as of prior Record Dates and despite creditors' satisfaction of § 7.14 Pre-Distribution Requirements. That is precisely the extra-Plan "second line" the Plan's architecture forbids.

Extensions under Rule 9006(b) adjust the calendar, not the Plan's logic. They cannot be used to:

(1) Override the Record Date as the operative "applicable deadline" for each interim distribution; or

(2) Convert administrative backlog into a de facto power to defer allowance for unobjected, compliant claims.

Because the Trust's requested extensions would functionally suspend § 502(a) and the Plan's record-date mechanics, they exceed what Rule 9006(b) and § 105(a) permit.

## C. The Record Shows Declining Workload and Limited Outstanding Matters, Not "Extraordinary" Burden

The Trust portrays itself as facing an overwhelming volume of work. The objective data show the opposite:

**(1) Objection volume has sharply declined:** from **15,687** and **13,831** objections in 2024 Q3 and Q4 to **3403** and **3381** in 2025 Q1 and Q2, then collapsing to r **340** and **14** in 2025 Q3 and Q4.

**(2) Administrative Claims are largely resolved**: of **441** Administrative Claims, about **259** have already received distributions, leaving only **152** unresolved—and no processing activity for claims filed after July 1, 2024.

(3) The Trust itself reports that over 650,000 claims have been reconciled and nearly 30,000 more resolved, leaving a residual pool of only 25,400 claims, of which approximately 24,200 are customer claims that have already passed through hundreds of omnibus review rounds.

Similarly, the Trust's motion invokes "numerous individual claim and adversary proceedings" and "complex and high-stakes" litigation, but Kroll's records show only about **212** claim-specific matters, and the docket reflects roughly twenty genuinely complex contested motions and oppositions.

On this record, the Trust has not demonstrated an extraordinary or unmanageable workload. It has demonstrated a shrinking and finite universe of remaining tasks that can be addressed using existing Plan tools within the current schedule. Generalized assertions of burden cannot satisfy Rule 9006(b) when the quantitative data show declining activity and a modest number of unresolved matters.

## D. The Requested Extensions Are Extreme and Unsupported by the Trust's Own Precedents

The Trust seeks to extend the Claims Objection Deadline by approximately one year and the Administrative Claims Objection Deadline by about fourteen months—durations that are, by its own cited authorities, atypical.

In the cases FTX cites, claims-objection extensions generally fall within 120–180 days, with only In re Cred Inc. approaching a year. For administrative claims, the longest extension the Trust identifies is about seven months, with most again in the 90–180 day range—and several of those decisions occurred in cases where the plan itself contemplated future extensions.

FTX's Plan contains no such built-in schedule. Yet the Trust seeks extensions substantially longer than those it presents as comparators, and asks to synchronize the administrative-claims deadline with the general Claims Objection Deadline in a manner foreign to both its precedents and the Plan's separate treatment of Administrative Claims.

Rule 9006(b) requires "cause," not maximal convenience. On this record, the length and structure of the requested extensions are untethered from past practice and from the actual, diminished workload. They therefore cannot be justified as "necessary" to carry out the Plan.

**E. Prolonging the "Black Box" Harms Creditors and Increases, Rather Than Reduces, Judicial Burden**

Tens of thousands of claims—approximately **49,393**—presently show no objection, notice, or updated status in Kroll's system, despite having passed through nearly 200 omnibus objection rounds and despite an average wait time now exceeding **800** days. Creditors holding these claims are left in a black box, unable to tell whether their claims are allowed, disputed, or simply unreviewed.

This opacity causes concrete prejudice:

(1) Creditors cannot plan or make informed financial decisions;

(2) Similarly situated claims receive divergent treatment in practice, undermining equal-treatment guarantees; and

(3) The uncertainty fuels distressed claim transfers and increased objection practice, as evidenced by abnormal spikes in claim-transfer activity and rising objections to FTX proposals in 2025 Q3–Q4.

Far from promoting "efficiency," further extending the deadlines in this environment would entrench the black box: prolonging status uncertainty for thousands of creditors and generating more disputes and motion practice for the Court to resolve. The Trust's request thus fails the basic equitable balance implicit in Rule 9006(b): the harms to creditors and to judicial economy outweigh any marginal administrative convenience to the Trust.

**F. The Trust Has Adequate Tools Under the Plan to Resolve Remaining Claims Without Global Extensions**

Finally, the Trust is not forced to choose between "paying invalid or unsupported claims" and "a massive number of premature objections." The Plan provides a suite of targeted mechanisms—Article 8 objections, deficiency notices, and other forms of "Notice"—that allow the Trust to identify and address problematic claims while allowing unobjected, § 7.14-compliant claims to flow through the record-date framework.

Given:

(1) The modest size and simplicity of the data;

(2) The substantial reconciliation already completed;

(3) The sharply reduced pool of remaining claims; and

(4) The Plan's clear, mechanical allowance structure;

the Trust has both the means and the time to make significant further progress—particularly on customer claims—before the existing deadlines. What it seeks instead is a blanket suspension of the

Plan's allowance consequences for another year or more. Rule 9006(b) and § 105(a) do not authorize that result.

For all of these reasons, and under the governing standards set out in Section II, the Trust has not shown "cause" to extend the Claims Objection Deadline or the Administrative Claims Objection Deadline in the manner requested. At a minimum, any extension should be narrowly tailored and conditioned so as not to delay the Plan's treatment of unobjected, § 7.14-compliant claims or to perpetuate the current black-box status environment on the Claims Register.

## V. CONCLUSION AND REQUESTED RELIEF

The Trust asks for extraordinary extensions that would hold tens of thousands of unobjected claims in limbo for another year or more, suspend the Plan's record-date allowance mechanics, and deepen the "black box" that already surrounds claim status in the Kroll system. The governing law does not permit that result. Rule 9006(b) requires "cause," not administrative convenience. Section 105(a) does not authorize rewriting the Plan or suspending § 502(a). And the Plan itself fixes a clear, mechanical allowance framework that turns on the Claims Register and timely Article 8 objections—not on open-ended discretion to defer reconciliation.

On this record:

(1) The reconciliation task is technically simple and modest in scale, involving only a ~60 MB dataset and a routine, linear hash-matching process for Claims.

(2) The Trust's claimed "infancy" in reconciliation is the product of avoidable FTX–Kroll data errors, delayed status updates, and inconsistent public disclosure, not any genuine computational barrier.

(3) Objection and reconciliation activity has declined sharply since 2025, Administrative Claims are largely resolved, and the remaining claim pool is finite and manageable.

(4) The Trust has materially overstated the volume and complexity of pending individualized litigation.

(5) The length of the requested extensions far exceeds both typical practice and the durations in the very cases the Trust cites.

(6) Tens of thousands of claims—especially customer claims—have been left in a status "black box" for more than 800 days, causing real prejudice to creditors and generating additional disputes and burdens for the Court.

In short, the Trust has not carried its burden to show "cause" for the sweeping extensions it seeks. The problems it identifies are either already addressed by the Plan's existing tools or are self-created administrative failures that Rule 9006(b) and § 105(a) do not reward.

**WHEREFORE**, for the reasons set forth above, Movant respectfully requests that the Court:

1. **Deny** the Motion to further extend the Claims Objection Deadline and the Administrative Claims Objection Deadline as requested;

2. **In the alternative**, if the Court is inclined to grant some additional time:

(1) Substantially limit the length of any extension to a modest period tailored to specific, identified categories of claims;

(2) Make clear that unobjected, § 7.14-compliant claims—particularly Class 5A customer claims—may not be treated as "Disputed" or withheld from interim distributions solely by reference to an extended final objection deadline, and that the Plan's record-date allowance mechanics (§§ 2.1.8(d), 7.4.1–7.4.2, 7.2.4) remain fully operative;

(3) Direct the Trust and Kroll to bring the Claims Register and public portal current within a defined period, including timely reflection of all filed objections and status changes, and to file a short status report certifying completion; and

3. **Grant** such other and further relief as the Court deems just and proper.

**Summary of Exhibits：**

Exhibits A consolidated summary of how each dataset used in Exhibits B-1 through B-7 and C-1 through C-3.

Exhibits B-1 through B-7 provide the quantitative and documentary support for III B–F, including: side-by-side comparisons of the Trust's claim counts with Kroll's database and the Objection Docket; examples of FTX–Kroll reconciliation errors (such as the header and tabulation mistakes in D.I. 14597); time-series data on objection volumes; Administrative Claims reconciliation status; and a comparison of the Trust's requested extensions with the shorter extensions approved in its cited cases. Together, these materials demonstrate that the Trust's claimed workload and "infancy" in reconciliation are inconsistent with its own data and with the Plan's framework.

Exhibits C-1 through C-3 provide the evidentiary basis for III H, I, L, including: claim-level samples where docketed objections are not reflected in Kroll's portal; the age distribution and average wait times for the approximately 49,393 claims with no status updates; claim-transfer and objection-volume data showing the destabilizing effects of prolonged opacity. These materials confirm the existence of a large "black box" of claims left in limbo, the resulting prejudice to creditors, and the Trust's ability to resolve the remaining claims without the extraordinary extensions it now seeks.

Dated: Beijing, China November 17, 2025

*Pu Ke*

Pu Ke (pro se)
Room 501, Unit 3, Building 12
No. 1 Courtyard, Gaojiayuan East Street
Mentougou District, Beijing, China
Email: kepu_ftx@superbloch.com
Tel: +86 15210847154

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

In re:

FTX TRADING LTD., *et al*.,[2]

Debtors.

Chapter 11
Case No. 22-11068 (KBO)
(Jointly Administered)

Related Docket No(s).: 33444

## DECLARATION OF PU KE PURSUANT TO 28 U.S.C. § 1746

I, Pu Ke, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. Identity and capacity. I am a creditor (Claim No. 33657) and the Movant these jointly administered cases and appear pro se. I have personal knowledge of the facts stated herein unless otherwise indicated.

2. Professional Background. I hold a Ph.D. in Theoretical Physics. I have more than 16 years of research experience across statistical physics, complex systems, and computational structural biology. I am a qualified high-performance computing (HPC) cluster administrator and have 5 years of experience as an HPC cluster administrator and 7 years of experience as a data analyst.

3. Purpose of declaration. I submit this declaration in support of my Limited Objection to the FTX Recovery Trust's ("Trust") Motion to Extend (D.I. 33444).

4. Attached hereto are Exhibits A and B-1 through B-7 and C-1 through C-3, which I prepared or caused to be prepared from publicly available data.

5. Exhibit A is a consolidated summary describing how each dataset used in Exhibits B-1 through B-7 and C-1 through C-3 was obtained, the sources relied upon (including Kroll's claims portal and specific docket entries by D.I. number), and the basic processing steps applied (such as filtering, grouping, and aggregation).

6. Exhibits B-1 through B-7 provide the quantitative and documentary support for III B–F, including: side-by-side comparisons of the Trust's claim counts with Kroll's database and the Objection Docket; examples of FTX–Kroll reconciliation errors (such as the header and tabulation mistakes in D.I.

---

[2]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

14597); time-series data on objection volumes; Administrative Claims reconciliation status; and a comparison of the Trust's requested extensions with the shorter extensions approved in its cited cases. Together, these materials demonstrate that the Trust's claimed workload and the supposed "infancy" of reconciliation are inconsistent with its own data and with the Plan's framework.

7. Exhibits C-1 through C-3 provide the evidentiary basis for III H, I, and L, including: claim-level samples where docketed objections are not reflected in Kroll's portal; the age distribution and average wait times for the approximately 49,393 claims with no status updates; and claim-transfer and objection-volume data showing the destabilizing effects of prolonged opacity. These materials confirm the existence of a large "black box" of claims left in limbo, the resulting prejudice to creditors, and that the Trust nonetheless has the ability to resolve the remaining claims without the extraordinary extensions it now seeks.

8. Unless otherwise indicated, all data cited or displayed in Exhibits A, B-1 through B-7, and C-1 through C-3 were obtained from publicly available sources as of November 10, 2025, and may have changed thereafter. The undersigned has no control over any such subsequent changes.

9. The facts in this declaration and the attached exhibits are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

*Pu Ke*

Dated: Beijing, China November 17, 2025

Pu Ke (pro se)
Room 501, Unit 3, Building 12
No. 1 Courtyard, Gaojiayuan East Street
Mentougou District, Beijing, China
Email: kepu_ftx@superbloch.com
Tel: +86 15210847154

# Exhibit Index

- **A—** Consolidated summary of how each dataset used in Exhibits B-1 through B-7 and C-1 through C-3.
- **B-1** — Claims-universe summary table comparing (i) total claims and "active review" counts stated in the Trust's Motion (the Motion) with (ii) Kroll's public claims database and (iii) the Objection Docket, supporting **III B**.
- **B-2** — Cross-reference table and sample screenshots showing discrepancies between Kroll's claim statuses and docketed objections (including sample claims that are objected to on the docket but not reflected as such in Kroll), supporting **III B**.
- **B-3** — Extracts and annotated image of the Thirty-Fourth Omnibus Claims Objection, Schedule 1 – Modified Claims (D.I. 14597), highlighting the incorrect column header where the "Amount" field is mis-labeled as "Debtor," supporting **III B**.
- **B-4** — Quarterly objection-volume table and chart (2024 Q3–2025 Q4) derived from Kroll statistics and docket counts , supporting **III C**.
- **B-5** — Administrative Claims reconciliation snapshot: table of total Administrative Claims, reconciled / distributed claims, unresolved claims, and filing dates, including the absence of processing activity for Administrative Claims filed after July 1, 2024, supporting **III D**.
- **B-6** —the number of individual claim-specific matters and adversary proceedings from Kroll and the docket, supporting **III E**
- **B-7** —the length of claims-objection and administrative-claims-objection extensions in the cases cited by the Trust, supporting **III F**.
- **C-1** — Claim-level comparison table listing sample claims objected to on the docket prior to the most recent Record Date but not reflected as objected in Kroll's public database, supporting **III G**.
- **C-2** — Age-distribution and average-wait-time table and chart for claims showing no objection, notice, or updated status in Kroll (approximately 49,393 claims), including calculation of the ~800-day average delay, supporting **III H**.
- **C-3** — Claim-transfer and objection-volume chart showing the abnormal spike in claim transfers during 2025 Q3–Q4 and the contemporaneous increase in objections to FTX proposals, supporting **III J**.



**Example Claim to show our data structure:**
**Claim #82698, it has these information:**
* **Basic information**
* **Claim Amounts**
* **Transfer History**
* **Objection History**

**For each data, we have one corresponding table (see details below)**

## Basic Info Section
## `claims.parquet`



# Claim Amounts Section
## `details_claim_amount.parquet`

## Claim Amounts

| Claim Nature | Schedule Amount | C*U*D* | Asserted Claim Amount | C*U*F* | Current Claim Value | Claim Status |
|---|---|---|---|---|---|---|
| General Unsecured | | | | | | |
| Priority | | | | | | |
| Secured | | | | | | |
| 503(b)(9) Admin Priority | | | | | | |
| Admin Priority | | | | | | |
| Total | | | | | | |

*C=Contingent, U=Unliquidated, D=Disputed, F=Foreign

```
_ = df_claims_amount = pd.read_parquet("details_claim_amount.parquet")
_[_.claim_number==82698].reset_index(drop=True).T
```

| | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| claim_id | 10080171 | 10080171 | 10080171 | 10080171 | 10080171 | 10080171 |
| schedule_number | 5401059 | 5401059 | 5401059 | 5401059 | 5401059 | 5401059 |
| claim_number | 82698 | 82698 | 82698 | 82698 | 82698 | 82698 |
| date_filed | 2023-09-29 00:00:00 | 2023-09-29 00:00:00 | 2023-09-29 00:00:00 | 2023-09-29 00:00:00 | 2023-09-29 00:00:00 | 2023-09-29 00:00:00 |
| claim_nature | General Unsecured | Priority | Secured | 503(b)(9) Admin Priority | Admin Priority | Total |
| schedule_amount | NaN | NaN | NaN | NaN | NaN | 0.0 |
| c_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| u_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| d_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| asserted_claim_amount | NaN | NaN | NaN | NaN | NaN | NaN |
| c_second_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| u_second_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| f_star | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| current_claim_value | NaN | NaN | NaN | NaN | NaN | 0.0 |
| claim_status | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |
| notes | <NA> | <NA> | <NA> | <NA> | <NA> | <NA> |

# Transfer History Section
## `details_claim_transfer_history.parquet`

## Transfer History

| Date Filed | Transfer Document | Transferor | Transferee |
|---|---|---|---|
| 04/30/2025 | Transfer/Assignment of Claim. Fee Amount $28 Transfer Agreement 3001 (e) 2 Transferor: Name (Redacted) To Ceratosaurus Investors, LLC. Filed by Cherokee Acquisition. | Name on File | Name on File |

```
_ = df_claims_transfer_history = pd.read_parquet("details_claim_transfer_history.parquet")
_[_.claim_number==82698].reset_index(drop=True).T
```

| | 0 | 1 |
|---|---|---|
| claim_id | 10080171 | 10080171 |
| schedule_number | 5401059 | 5401059 |
| claim_number | 82698 | 82698 |
| date_filed | 2025-04-30 00:00:00 | 2025-04-30 00:00:00 |
| transfer_document | Transfer/Assignment of Claim. Fee Amount $28 T... | Transfer/Assignment of Claim. Fee Amount $28 T... |
| transfer_document_url | Home-DownloadPDF?id1=MzM0NzE1OQ==&id2=0 | Home-DownloadPDF?id1=MzM0NzE1OQ==&id2=0 |
| transfer_document_id | <NA> | <NA> |
| transfer_document_extra_id | <NA> | <NA> |
| transferor | Name on File | Name on File |
| transferee | Name on File | Name on File |
| notes | <NA> | <NA> |

## Objection History Section
## `details_claim_objection_history.parquet`

## Objection History

| Date Filed | Objection Motion | Date Filed | Objection Order | Basis | Status |
|---|---|---|---|---|---|
| 11/22/2024 | Debtors' One Hundred Thirtieth Omnibus Objection … | | | Unverified Claims | Pending |

```
_ = df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
_[_.claim_number==82698].reset_index(drop=True).T
```

| | 39 |
|---|---|
| claim_id | 10080171 |
| schedule_number | 5401059 |
| claim_number | 82698 |
| date_filed | 2023-09-29 00:00:00 |
| date_filed_objection | 2024-11-22 00:00:00 |
| objection_motion | Debtors' One Hundred Thirtieth Omnibus Objecti… |
| objection_motion_url | Mzc2MTcyMw== |
| objection_motion_docket_id | 28225 |
| date_filed_order | NaT |
| objection_order | <NA> |
| objection_order_url | <NA> |
| objection_order_docket_id | <NA> |
| basis | Unverified Claims |
| status | Pending |
| notes | <NA> |

## Docket info
## `docket.parquet`

| Docket # ⌄ | Document Name ⇕ | Date Filed ⇕ |
|---|---|---|
| 33351 | Notice of Withdrawal of Transfer of Equity Interest (DN 33072). Filed by Boston Patriot Arlington St LLC. (related document(s)33072) <br><br> Attachments: <br> Related: 33072 | 10/29/2025 |
| 33350 | Notice of Withdrawal of Transfer of Equity Interest (DN 33071). Filed by Oaktree Value Opportunities Fund Holdings, L.P. (related document(s)33071) <br><br> Attachments: <br> Related: 33071 | 10/29/2025 |
| 33349 | Letter From Claimant/ Motion for Entry of an Order Authorizing Late Completion of Customer KYC. (related document(s)29464, 31139) Filed by Daizhuo Chen . <br><br> Attachments: <br> Related: 31139, 29464 | 10/29/2025 |

```
: _ = df_docket = pd.read_parquet("docket.parquet")
  _[_.id.isin([33351,33350,33349])]
```

| | id | download_id | title | date | notes |
|---|---|---|---|---|---|
| 32988 | 33349 | /ftx/Home-DownloadPDF?id1=Mzk2Njg5NQ==&id2=-1 | Letter From Claimant/ Motion for Entry of an O… | 2025-10-29 | None |
| 32989 | 33350 | /ftx/Home-DownloadPDF?id1=Mzk2NjkyMg==&id2=-1 | Notice of Withdrawal of Transfer of Equity Int… | 2025-10-29 | None |
| 32990 | 33351 | /ftx/Home-DownloadPDF?id1=Mzk2Njk1Mg==&id2=-1 | Notice of Withdrawal of Transfer of Equity Int… | 2025-10-29 | None |

# Exhibit B-1

```
In [1]: import matplotlib.pyplot as plt
        import pandas as pd
        from IPython.display import HTML, display
```

## See Ex. A for the defination and data structure of all these tables

```
In [2]: # load data
        df_claims = pd.read_parquet("claims.parquet")
        df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
        df_claims_amount = pd.read_parquet("details_claim_amount.parquet")
```

## According to the data, Neither the total number of claims nor the subset identified as under active review aligns with the Trust's representations.

- Kroll's own public claims database reports 100,407 total claims

```
In [3]: len(df_claims_amount["claim_number"].unique())
```

```
Out[3]: 100407
```

- 27,633 reconciled claims (using data from Claims' "Claim Amounts" Section)

```
In [4]: df_claims_reconciled = df_claims_amount[(df_claims_amount["claim_status"].notna())]
        len(df_claims_reconciled["claim_number"])
```

```
Out[4]: 27633
```

- 73,926 claims remain without any objection, notice, or status change

```
In [5]: len(df_claims_amount["claim_number"].unique()) - len(df_claims_reconciled["claim_number"].unique())
```

```
Out[5]: 73926
```

## The inconsistency deepens when cross-checked against the Objection History

- 40,309 claim objections (using data from Claims' "Objection History" Section)

```
In [6]: len(df_claims_objection_history["claim_number"].unique())
```

```
Out[6]: 40309
```

- 49,393 claims showing no objection, notice, or updated status.

```
In [7]: cols = [
            "c_star",
            "u_star",
            "d_star",
            "c_second_star",
            "u_second_star",
            "f_star",
            "claim_status",
        ]
        mask = df_claims_amount.groupby("claim_number")[cols].apply(
            lambda g: g.isna().all().all()
        )
        claim_number_limbo = mask[mask].index
        len(
            set(claim_number_limbo)
            - set(df_claims_objection_history["claim_number"])
            - set(df_claims_reconciled["claim_number"])
        )
```

```
Out[7]: 49393
```

# Exhibit B-2

```
In [1]: import matplotlib.pyplot as plt
        import pandas as pd
        from IPython.display import HTML, display
```

```
In [2]: table_style = """
                        <style>
                        /* 整个表格 */
                        table.styled-table {
                            border-collapse: collapse;
                            width: 100%;
                        }

                        /* 单元格边框 + 内边距 + 文本居中 */
                        table.styled-table th,
                        table.styled-table td {
                            border: 1px solid #333;
                            padding: 4px 8px;
                            text-align: center;      /* 文本居中 */
                        }

                        /* 表头：黑底白字，居中加粗 */
                        table.styled-table th {
                            background-color: #000;
                            color: #fff;
                            font-weight: bold;
                        }
                        </style>
                    """
```

```
In [3]: # load data
        df_claims = pd.read_parquet("claims.parquet")
        df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
        df_claims_amount = pd.read_parquet("details_claim_amount.parquet")
```

- **Data on Docket pdf files**

```
In [4]: df_objection_pdf = pd.read_parquet("all_objections.parquet")

        df_objection_pdf.rename(
            columns={"docket_id": "objection_motion_docket_id"}, inplace=True
        )

        schedule_min = df_claims["schedule_number"].min()

        mask_claim = df_objection_pdf["claim_or_schedule_number"] < schedule_min
        df_objection_pdf.loc[mask_claim, "claim_number"] = df_objection_pdf[mask_claim][
            "claim_or_schedule_number"
        ]

        mask_schedule = df_objection_pdf["claim_or_schedule_number"] >= schedule_min
        df_objection_pdf.loc[mask_schedule, "schedule_number"] = df_objection_pdf[
            mask_schedule
        ]["claim_or_schedule_number"]

        df_objection_claim_pdf = df_objection_pdf[df_objection_pdf["claim_number"].notna()]
```

- **Data on Kroll Claim Info**

```
In [5]: df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")

        df_objection_id_date = df_claims_objection_history.drop_duplicates(
            "objection_motion_docket_id", keep="first"
        )[["objection_motion_docket_id", "date_filed_objection"]]

        df_filed_claim_date = df_claims[df_claims["claim_number"].notna()][
            "claim_number", "date_filed"]
        ].drop_duplicates("claim_number", keep="first")

        df_objection_pdf = df_objection_pdf.merge(
            df_objection_id_date[["objection_motion_docket_id", "date_filed_objection"]],
            on="objection_motion_docket_id",
            how="left",
            validate="m:1",
        )

        df_objection_pdf.drop(columns=["date_filed"], inplace=True)
```

```python
df_objection_pdf = df_objection_pdf.merge(
    df_filed_claim_date[["claim_number", "date_filed"]],
    on="claim_number",
    how="left",
    validate="m:1",
)

df_objection_claim_pdf = df_objection_pdf[df_objection_pdf["claim_number"].notna()]

df_claims_objection_merged = df_claims_objection_history.merge(
    df_objection_claim_pdf,
    on=[
        "claim_number",
        "objection_motion_docket_id",
        "date_filed_objection",
        "date_filed",
    ],
    how="outer",
    indicator=True,
)
```

- Objections in filings but not on Kroll (no Objection History Section)

```python
In [6]: df = df_claims_objection_merged[
            (df_claims_objection_merged["_merge"] == "right_only")
            & (df_claims_objection_merged["tags"] != "surviving")
            & (df_claims_objection_merged["claim_number"].notna())
        ]
```

```python
In [7]: claim_nan = list(df_claims_amount[df_claims_amount['claim_status'].isna()]['claim_number'].unique())
```

```python
In [8]: filtered_df = df[df['claim_number'].isin(claim_nan)]
```

```python
In [9]: html = (
            filtered_df[['claim_number', 'date_filed',
                'date_filed_objection', 'objection_motion_docket_id']].iloc[1:5].to_html(index=False, classes="styled-table", bo
        )
        display(HTML(table_style + html))
```

| claim_number | date_filed | date_filed_objection | objection_motion_docket_id |
|---:|---:|---:|---:|
| 14 | 2022-11-18 | 2024-06-14 | 17631 |
| 15 | 2022-11-13 | 2023-11-13 | 3749 |
| 79 | 2022-12-12 | 2024-06-14 | 17631 |
| 120 | 2022-12-12 | 2024-11-22 | 28225 |

```python
In [ ]:
```

# Exhibit B-3

Screenshot of the table from D.I. 14597., Page 6 of 110, the field that should display the "Amount" continues to display "Debtor".

**FTX Trading Ltd. 22-11068 (JTD)**
**Thirty-Fourth Omnibus Claims Objection**
**Schedule 1 - Modified Claims**

| Claim Number | Name | Debtor | Tickers | | Asserted Claims Debtor | Modified Claim Debtor | Ticker Quantity |
|---|---|---|---|---|---|---|---|
| 83781 | Name on file | FTX Trading Ltd. | AAVE-PERP | | 5.600000000000000 | FTX Trading Ltd. | 5.600000000000000 |
| | | | ADA-PERP | | 142.460000000000000 | | 963.000000000000000 |
| | | | ALGO-PERP | | 472.000000000000000 | | 0.000000000000000 |
| | | | ATOM-PERP | | -0.000000000000003 | | -0.000000000000003 |
| | | | AUDIO-PERP | | 0.000000000000056 | | 0.000000000000056 |
| | | | AVAX | | 1.029931720000000 | | 1.029931720000000 |
| | | | AVAX-PERP | | -0.000000000000012 | | -0.000000000000012 |
| | | | BAT-PERP | | 224.620000000000000 | | 0.000000000000000 |
| | | | BCH | | 0.600000000000000 | | 0.185767810000000 |
| | | | BNB | | 1.716000000000000 | | 0.005653580000000 |
| | | | BNB-PERP | | 2.300000000000000 | | 2.300000000000000 |
| | | | BTC | | 0.000240710000000 | | 0.000240710000000 |
| | | | BTC-PERP | | 0.000000000000000 | | 0.000000000000000 |
| | | | CAKE-PERP | | 134.700000000001000 | | 134.700000000001000 |
| | | | COMP-PERP | | 0.000000000000000 | | 0.000000000000000 |
| | | | CRV-PERP | | 95.000000000000000 | | 0.000000000000000 |
| | | | DENT | | 34,325.157000000000000 | | 34,325.157000000000000 |
| | | | DODO | | 617.644919000000000 | | 617.644919000000000 |
| | | | DOGE | | 7,967.000000000000000 | | 10,764.867596620000000 |
| | | | DOT | | 8.229500000000000 | | 8.229500000000000 |
| | | | DOT-PERP | | 0.000000000000000 | | -0.000000000000049 |
| | | | ENS-PERP | | 0.000000000000000 | | -0.000000000000006 |
| | | | ETC-PERP | | 110.990000000000000 | | -0.000000000000014 |
| | | | ETH | | 3.023460000000000 | | 0.452784990000000 |
| | | | ETH-PERP | | 0.000000000000000 | | 0.000000000000000 |
| | | | ETHW | | 0.485784990000000 | | 0.485784990000000 |
| | | | EXCH-PERP | | 0.000000000000000 | | 0.000000000000000 |
| | | | FLM-PERP | | 0.000000000000000 | | -0.000000000000454 |
| | | | FTM | | 1.240476970000000 | | 1.240476970000000 |
| | | | FTT-PERP | | 8.300000000000000 | | 8.300000000000000 |
| | | | GRT-PERP | | 460.710000000000000 | | 0.000000000000000 |
| | | | HBAR-PERP | | 459.000000000000000 | | 0.000000000000000 |
| | | | JASMY-PERP | | 4,442.000000000000000 | | 0.000000000000000 |
| | | | JST | | 4,309.183000000000000 | | 4,309.183000000000000 |

The table header contains erros.

In [ ]:

## Exhibit B-4

```
In [1]: import matplotlib.pyplot as plt
        import pandas as pd
        from IPython.display import HTML, display
```

```
In [2]: table_style = """
                    <style>

                    table.styled-table {
                        border-collapse: collapse;
                        width: 100%;
                    }

                    table.styled-table th,
                    table.styled-table td {
                        border: 1px solid #333;
                        padding: 4px 8px;
                        text-align: center;
                    }

                    table.styled-table th {
                        background-color: #000;
                        color: #fff;
                        font-weight: bold;
                    }
                    </style>
                """
```

### See Ex. A for the defination and data structure of all these tables

```
In [3]: df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
```

### Table of the quantities of objected claims per quarter (using data from Claims' "Objection History" Section)

- In 2025 Q3, that number fell to roughly 340 and in Q4 to approximately 12—a dramatic reduction. The volumes filed in 2025 Q3 and Q4 do not reflect a team operating at maximum capacity or facing an overwhelming surge of new work.

```
In [4]: df_QE = pd.DataFrame(
            df_claims_objection_history.groupby(
                pd.Grouper(key="date_filed_objection", freq="QE")
            )["date_filed_objection"].count()
        )
        html = (
            df_QE.rename(columns={"date_filed_objection": "number_of_objected"})
            .reset_index()
            .to_html(index=False, classes="styled-table", border=0)
        )
        display(HTML(table_style + html))
```

| date_filed_objection | number_of_objected |
|---|---|
| 2023-12-31 | 300 |
| 2024-03-31 | 1347 |
| 2024-06-30 | 8589 |
| 2024-09-30 | 15687 |
| 2024-12-31 | 13831 |
| 2025-03-31 | 3403 |
| 2025-06-30 | 3381 |
| 2025-09-30 | 340 |
| 2025-12-31 | 12 |

- The curve of the number of claims per quarter. There is a sharp reduction since Q1 2025.

```
In [5]: df_claims_objection_history.groupby(pd.Grouper(key="date_filed_objection", freq="QE"))[
            "date_filed_objection"
        ].count().plot(style="-o")
        plt.xlabel("Date")
        plt.ylabel("Number of Objected")
        plt.title("Objection History of Claims")
```

```
plt.grid()
plt.tight_layout(rect=[0, 0.001, 1, 1])
plt.savefig("Objection_History_of_Claims.png")
plt.close()
```



Objection History of Claims

In [ ]:

# Exhibit B-5

```
In [1]:  import matplotlib.pyplot as plt
         import pandas as pd
         from IPython.display import HTML, display
```

## See Ex. A for the defination and data structure of all these tables

```
In [2]:  df_claims_amount = pd.read_parquet("details_claim_amount.parquet")
```

## According to Kroll's claims database, there are 411 Administrative Claims in total.

```
In [3]:  # This code filters rows from `df_claims_amount` into `df_admin_claims`
         # where the "claim_nature" is "Admin Priority" and at least one of the columns
         # ("claim_status", "c_second_star", "u_second_star", "c_star", "u_star", "d_star")
         # contains non-null values.
         df_admin_claims = df_claims_amount[
             (df_claims_amount["claim_nature"] == "Admin Priority")
             & (
                 (df_claims_amount["claim_status"].notna())
                 | (df_claims_amount["c_second_star"].notna())
                 | (df_claims_amount["u_second_star"].notna())
                 | (df_claims_amount["c_star"].notna())
                 | (df_claims_amount["u_star"].notna())
                 | (df_claims_amount["d_star"].notna())
             )
         ]
```

```
In [4]:  int(df_admin_claims.count()['claim_number'])
```

```
Out[4]:  411
```

## approximately 259 have been reconciliated

```
In [5]:  df_admin_processed = df_claims_amount[(df_claims_amount["claim_nature"]=="Admin Priority") & (df_claims_amount["claim_s
         df_admin_processed.sort_values("date_filed")
         len(df_admin_processed)
```

```
Out[5]:  259
```

## approximately 152 have not been reconciliated

```
In [6]:  len(df_admin_claims) - len(df_admin_processed)
```

```
Out[6]:  152
```

Administrative Claims filed after July 1, 2024 show no recorded processing activity whatsoever.

- ## Reconciled admin claims

```
In [8]:  # This code creates `df_admin_reconciled` by filtering rows from `df_claims_amount` where "claim_nature"
         # is "Admin Priority", "claim_status" is not null, and "claim_status" is not "Asserted".
         df_admin_reconciled = df_claims_amount[
             (df_claims_amount["claim_nature"] == "Admin Priority")
             & (df_claims_amount["claim_status"].notna())
             & (df_claims_amount["claim_status"] != "Asserted")
         ]
```

- According to the df_admin_reconciled table, the last processed Administrative Claim was filed on 2024-07-01 (see date_filed column)

```
In [9]:  df_admin_reconciled.sort_values("date_filed")
```

Out[9]:

| claim_id | schedule_number | claim_number | date_filed | claim_nature | schedule_amount | z_star | u_star | d_star | asse |
|---|---|---|---|---|---|---|---|---|---|
| **4966** | 4069345 | 8617746 | 266 | 2022-12-28 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **602056** | 9589583 | <NA> | 99903 | 2023-01-09 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **602062** | 9589584 | <NA> | 99904 | 2023-01-09 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **6292** | 4103807 | 5258599 | 503 | 2023-01-20 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **8536** | 5220680 | <NA> | 899 | 2023-02-16 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **...** | ... | ... | ... | ... | ... | ... | ... | ... | ... |
| **530908** | 8779153 | <NA> | 89450 | 2023-12-04 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **602074** | 9589586 | <NA> | 99906 | 2024-03-05 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **555892** | 9335620 | <NA> | 94925 | 2024-05-15 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **557392** | 9336470 | <NA> | 95134 | 2024-05-22 | Admin Priority | NaN | <NA> | <NA> | <NA> |
| **564208** | 9342699 | 6920619 | 95622 | 2024-07-01 | Admin Priority | NaN | <NA> | <NA> | <NA> |

259 rows × 16 columns



# Exhibit B-6

```
In [1]:  import matplotlib.pyplot as plt
         import networkx as nx
         import pandas as pd
         from IPython.display import HTML, display
```

## See Ex. A for the defination and data structure of all the claim details tables

```
In [23]:  df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
          df_objection_pdf = pd.read_parquet("all_objections.parquet")
```

## Total number of objections to claim is 214

```
In [24]:  id_objections = df_objection_pdf["docket_id"].unique()
```

```
In [25]:  len(id_objections)
```

```
Out[25]:  214
```

```
In [5]:  import numpy as np

         np.sort(id_objections)
```

```
Out[5]:  array([ 3409,  3748,  3749,  3750,  3751,  3752,  5113,  5114,  5115,
                 6280,  6281,  6282,  6283,  6284,  7582,  7583,  7584,  7585,
                10342, 10343, 10344, 10345, 10346, 10347, 11891, 11892, 11893,
                11894, 11895, 11896, 11897, 14594, 14595, 14596, 14597, 14598,
                14599, 14600, 14601, 14602, 14603, 14604, 14605, 17629, 17630,
                17631, 17632, 17633, 17634, 17635, 17636, 17637, 17638, 17639,
                19183, 19184, 19185, 19186, 19187, 19188, 19189, 19190, 19191,
                19795, 19797, 19971, 19975, 20007, 20017, 20030, 20042, 20044,
                20045, 20046, 20050, 20051, 21731, 23923, 23924, 23925, 23926,
                23927, 23928, 23929, 23930, 23931, 23932, 23933, 23934, 23935,
                23936, 23938, 23939, 23941, 23942, 23943, 23945, 23953, 23954,
                23955, 23956, 25685, 25686, 25687, 25688, 25689, 25690, 25691,
                25692, 25693, 25694, 25695, 25696, 25697, 25698, 25699, 25700,
                25701, 25702, 25703, 25704, 25705, 25706, 25707, 25710, 25711,
                25712, 25713, 25714, 25715, 25716, 25717, 25718, 27176, 27177,
                27178, 27179, 27181, 27182, 27183, 27190, 27191, 27192, 28225,
                28532, 28533, 28534, 28535, 28536, 28537, 28538, 28539, 28544,
                28545, 29166, 29167, 29168, 29169, 29170, 29171, 29172, 29173,
                29174, 29721, 29722, 29723, 29725, 29727, 29728, 29729, 29730,
                29731, 29732, 29733, 30299, 30300, 30301, 30302, 30303, 30304,
                30305, 30306, 30307, 30308, 30309, 30310, 30313, 30314, 30315,
                30625, 30626, 30627, 30628, 30630, 30631, 31056, 31057, 31058,
                31059, 31060, 31794, 31795, 31796, 31797, 31798, 31799, 31949,
                32600, 32601, 32602, 32603, 33039])
```

```
In [6]:  df_docket = pd.read_parquet("docket.parquet")
         df_docket["date"] = pd.to_datetime(df_docket["date"])
         df_docket_relations = pd.read_parquet("docket-relations.parquet")

         id_non_regular_docket = df_objection_pdf[df_objection_pdf["reason"] == "non-regular"][
             "docket_id"
         ].unique()
         id_objections = df_objection_pdf["docket_id"].unique()
         id_objections_regular = df_objection_pdf[
             ~df_objection_pdf["docket_id"].isin(id_non_regular_docket)
         ]["docket_id"].unique()
         id_objections_irregular = df_objection_pdf[
             df_objection_pdf["docket_id"].isin(id_non_regular_docket)
         ]["docket_id"].unique()
```

```
In [7]:  dict_num_reply_objection = dict()
         dict_related_objection = dict()
         list_docket_reply = list()
```

```
In [8]:  col = "title"
         mask = ~df_docket[col].str.contains(
             r"Transfer/Assignment", case=False, na=False
         ) & ~df_docket[col].str.contains(r"Receipt", case=False, na=False)
         df_docket_cleaned = df_docket[mask]
```

```python
In [9]:  mask_relation_tree = df_docket_relations["citer"] >= df_docket_relations["citee"]
         mask_relation_no_transfer = df_docket_relations["citer"].isin(df_docket_cleaned["id"])
```

```python
In [10]: df_docket_relations_cleaned = df_docket_relations[
             mask_relation_tree & mask_relation_no_transfer
         ]
```

```python
In [11]: G_docket = nx.from_pandas_edgelist(
             df_docket_relations_cleaned,
             source="citer",
             target="citee",
             create_using=nx.DiGraph(),
         )
```

```python
In [12]: for id in id_objections_regular:
             if id in G_docket.nodes:
                 dict_related_objection[id] = dict(
                     nx.bfs_successors(G_docket.reverse(copy=False), id), depth_limit=1
                 )[id]
                 dict_num_reply_objection[id] = len(dict_related_objection[id])
                 list_docket_reply.extend(dict_related_objection[id])
             else:
                 dict_num_reply_objection[id] = 0
```

```python
In [13]: col = "title"
         mask_objection_reply = (
             df_docket["id"].isin(list_docket_reply)
             & ~df_docket[col].str.contains(r"by FTX.*", case=False, na=False, regex=True)
             & ~df_docket[col].str.contains(r"Order.*", case=False, na=False, regex=True)
             & ~df_docket[col].str.contains(r"Certificate", case=False, na=False)
             & ~df_docket[col].str.contains(r"Affidavit/Declaration", case=False, na=False)
         )
```

```python
In [14]: df_docket_objection_reply = df_docket[mask_objection_reply]
         reply_nodes = df_docket_objection_reply["id"].unique()
```

```python
In [15]: reply_for_each_objection = dict()
         len_reply_for_each_objection = list()
         for id in dict_related_objection:
             reply_for_each_objection[id] = set(dict_related_objection[id]).intersection(reply_nodes)
             len_reply_for_each_objection.append(len(reply_for_each_objection[id]))
```

### Number of individual claim and adversary proceedings

```python
In [22]: len(df_objection_pdf[df_objection_pdf['reason']=='non-regular']['docket_id'].unique())
```

```
Out[22]: 16
```

### The docket reflects that only 115 replies have ever been filed in response to omnibus objections in total

```python
In [27]: len(reply_nodes)
```

```
Out[27]: 115
```

### Minimun 0 ,Maximum 14 and average 0.59 replies to each omnibus objection

```python
In [16]: np.min(len_reply_for_each_objection), np.max(len_reply_for_each_objection), np.mean(len_reply_for_each_objection)
```

```
Out[16]: (np.int64(0), np.int64(14), np.float64(0.5909090909090909))
```

## Exhibit B-7

```python
import pandas as pd
import matplotlib.pyplot as plt
from IPython.display import display, HTML
```

```python
table_style = """
            <style>
            table.styled-table {
                border-collapse: collapse;
                width: 100%;
            }

            table.styled-table th,
            table.styled-table td {
                border: 1px solid #333;
                padding: 4px 8px;
                text-align: center;
            }

            table.styled-table th {
                background-color: #000;
                color: #fff;
                font-weight: bold;
            }
            </style>
            """
```

```python
df_claim_period=pd.read_parquet("objection_period.parquet");
```

### The data present here are from `The Motion`

```python
html = df_claim_period.to_html(index=False, classes="styled-table", border=0)
display(HTML(table_style + html))
```

| Case Number | period |
| --- | --- |
| 23-11032-KBO | 180 |
| 24-10164-KBO | 180 |
| 24-10164-KBO | 180 |
| 22-10819-LSS | 182 |
| 23-11945-CTG | 180 |
| 24-12794-KBO | 120 |
| 24-12289-JKS | 180 |
| 22-10621-BLS | 120 |
| 20-11662-KBO | 180 |
| 21-11336-KBO | 120 |
| 22-10580-JKS | 210 |
| 24-10070-BLS | 90 |
| 17-12100-LSS | 180 |
| 24-12391-CTG | 120 |
| 24-12480-LSS | 120 |

```python

```

# Exhibit C-1



**Claims: 17, 986, 1548 can be found in objection files, but they CAN NOT be searched by Kroll website**

Case 22-11068-JTD    Doc 25702-2    Filed 09/25/24    Page 35 of 64

* 17: Doc 30303-1, page 79
* 986: Doc 17631-2, page 96
* 1548: Doc 25702-2: page 35

## Exhibit C-2

```python
In [1]:  import matplotlib.pyplot as plt
         import pandas as pd
         from IPython.display import HTML, display
```

## See Ex. A for the defination and data structure of all these tables

```python
In [2]:  df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
         df_claims = pd.read_parquet("claims.parquet")
         df_claims_claim = df_claims[df_claims["claim_number"].notna()]
         df_claims_sorted_date = df_claims_claim.sort_values("date_filed").copy()
         df_claims_claim_first_seen = (
             df_claims_sorted_date.drop_duplicates("claim_number", keep="first")[
                 ["claim_number", "date_filed"]
             ]
         ).sort_values("date_filed")
         ds_dailynew = df_claims_claim_first_seen.groupby("date_filed").size()
         ds_daily_cumnew = ds_dailynew.cumsum().rename("cum_unique_claims").reset_index()
```

```python
In [3]:  df_claims_sorted_date = pd.merge_asof(
             df_claims_sorted_date,
             ds_daily_cumnew.sort_values("date_filed"),
             on="date_filed",
             direction="backward",
         ).sort_index()
```

## plot of the max/min objection claim number in each quarter, along with the total number of filed claims

```python
In [4]:  df_claims_objection_history.groupby(pd.Grouper(key="date_filed_objection", freq="QE"))[
             "claim_number"
         ].min().plot(style="-o")
         df_claims_objection_history.groupby(pd.Grouper(key="date_filed_objection", freq="QE"))[
             "claim_number"
         ].max().plot(style="-o")
         df_claims_sorted_date.groupby(pd.Grouper(key="date_filed", freq="QE"))[
             "cum_unique_claims"
         ].max().plot(style="-o")
         plt.legend(["minimum claim number", "maximum claim number", "total claim number"])
         plt.xlabel("Date")
         plt.ylabel("Claim numbers of each objection")
         plt.title("Objection History of Claims")
         plt.grid()
         plt.tight_layout(rect=[0, 0.001, 1, 1])
         plt.savefig("Claim_numbers_of_each_obj.png")
         plt.close()
```

- green line: total number of filed claims
- blue/orange line: the min/max objected claim number by FTX in each season
- It shows that for each objection action, FTX scan the full id space, from 1 to max



```python
In [5]:  # build the limbo claims
         df_claims_amount = pd.read_parquet("details_claim_amount.parquet")
         df_claims_filed = df_claims_amount.drop_duplicates("claim_number", keep="first")[
             ["claim_number", "date_filed"]
         ]
         df_claims_reconciled = df_claims_amount[((df_claims_amount["claim_status"].notna()))]
         filter_no_predicate = (
             (df_claims_amount["c_star"].isna())
             & (df_claims_amount["u_star"].isna())
             & (df_claims_amount["d_star"].isna())
             & (df_claims_amount["c_second_star"].isna())
             & (df_claims_amount["u_second_star"].isna())
             & (df_claims_amount["f_star"].isna())
         )
         df_claim_number_no_predicate = df_claims_amount[filter_no_predicate]
         claim_number_in_limbo = (
             set(df_claim_number_no_predicate["claim_number"])
             - set(df_claims_reconciled["claim_number"])
             - set(df_claims_objection_history["claim_number"])
         )
         df_claims_limbo = df_claims_filed[
             df_claims_filed["claim_number"].isin(claim_number_in_limbo)
         ]
         df_claims_interval_limbo = pd.to_datetime("today") - df_claims_limbo["date_filed"]
         df_claims_objection_history_first = df_claims_objection_history.sort_values(
             "date_filed_objection"
         ).drop_duplicates("claim_number", keep="first")
         df_interval_objection = (
             df_claims_objection_history_first["date_filed_objection"]
             - df_claims_objection_history_first["date_filed"]
         )
```

The limbo claims on Kroll have an average waiting time exceeding 800 days, which is twice the average processing time for objections.

```python
In [6]:  (df_interval_objection.dt.days).plot.hist(bins=100, alpha=0.5)
         (df_claims_interval_limbo.dt.days).plot.hist(bins=100, alpha=0.5)
         plt.xlabel("Days")
         plt.ylabel("Number of Claims")
         plt.title("Distribution of the First Objection Interval vs. Limbo Claims")
         plt.legend(["First Objection Interval", "Limbo Claims"])
         plt.grid()
         plt.tight_layout(rect=[0, 0.001, 1, 1])
         plt.savefig("Distribution_of_the_First_Objection_Interval_vs_Limbo_Claims.png")
         plt.close()
```



```python
In [ ]:
```

# Exhibit C-3

```
In [1]: import matplotlib.pyplot as plt
        import pandas as pd
        from IPython.display import HTML, display
```

## See Ex. A for the defination and data structure of all claim details tables

```
In [2]: df_claims_transfer_history = pd.read_parquet("details_claim_transfer_history.parquet")
        df_claims_transfer_history.groupby(pd.Grouper(key="date_filed", freq="ME"))[
            "date_filed"
        ].count().plot(style="-o")
        plt.xlabel("Date")
        plt.ylabel("Number of Transfers")
        plt.title("Transfer History of Claims")
        plt.grid()
        plt.tight_layout(rect=[0, 0.001, 1, 1])
        plt.savefig("Transfer_History_of_Claims.png")
        plt.close()
```

```
In [3]: df_claims_objection_history = pd.read_parquet("details_claim_objection_history.parquet")
        df_claims_objection_history[
            df_claims_objection_history["date_filed_objection"] > pd.to_datetime("2023-02-22")
        ].groupby(pd.Grouper(key="date_filed_objection", freq="QE"))[
            "date_filed_objection"
        ].count().plot(
            style="-o"
        )
        plt.xlabel("Date")
        plt.ylabel("Number of Objections to Claims")
        plt.title("Objection History of Claims")
        plt.grid()
        plt.tight_layout(rect=[0, 0.001, 1, 1])
        plt.savefig("Objection_History_of_Claims.png")
        plt.close()
```

```
In [4]: df_object_ftx = pd.read_parquet("object_hist.parquet")
        df_object_ftx[df_object_ftx["date"] > pd.to_datetime("2023-02-22")].groupby(
            pd.Grouper(key="date", freq="QE")
        )["date"].count().plot(style="-o")
        plt.xlabel("Date")
        plt.ylabel("Number of filings against FTX")
        plt.title("Objection to FTX")
        plt.grid()
        plt.tight_layout(rect=[0, 0.001, 1, 1])
        plt.savefig("Objection_History_of_FTX.png")
        plt.close()
```



The transfered claim number has shown a minor peak recently.



The number of objected claims has been decreased recently, showing a continuous downward trend.



Number of filings against FTX

In [ ]:

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 22-11068 (KBO) |
| FTX TRADING LTD., *et al.*,[1] | (Jointly Administered) |
| Debtors. | Related Docket No(s).: 33444 |

### CERTIFICATE OF SERVICE – LIMITED OBJECTION

I, Pu Ke, certify that on November 17, 2025, I caused true and correct copies of the following documents:

- OBJECTION OF PU KE TO THE FTX RECOVERY TRUST'S MOTION FOR ENTRY OF AN ORDER EXTENDING (I) THE CLAIMS OBJECTION DEADLINE AND (II) THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE;

- DECLARATION OF PU KE PURSUANT TO 28 U.S.C. § 1746 WITH EXHIBITS (A through C-3)

- **Ex. A** — Consolidated summary of how each dataset used in Exhibits B-1 through B-7 and C-1 through C-3.

- **Ex.B-1** — Claims-universe summary table comparing (i) total claims and "active review" counts stated in the Trust's Motion (the Motion) with (ii) Kroll's public claims database and (iii) the Objection Docket.
- **Ex.B-2** — Cross-reference table and sample screenshots showing discrepancies between Kroll's claim statuses and docketed objections (including sample claims that are objected to on the docket but not reflected as such in Kroll).
- **Ex.B-3** — Extracts and annotated image of the Thirty-Fourth Omnibus Claims Objection, Schedule 1 – Modified Claims (D.I. 14597), highlighting the incorrect column header where the "Amount" field is mis-labeled as "Debtor,".
- **Ex.B-4** — Quarterly objection-volume table and chart (2024 Q3–2025 Q4) derived from Kroll statistics and docket counts.
- **Ex.B-5** — Administrative Claims reconciliation snapshot: table of total Administrative Claims, reconciled / distributed claims, unresolved claims, and filing dates, including the absence of processing activity for Administrative Claims filed after July 1, 2024.
- **Ex.B-6** — the number of individual claim-specific matters and adversary proceedings from Kroll and the docket.
- **Ex.B-7** — the length of claims-objection and administrative-claims-objection extensions in the cases cited by the Trust.

---

1    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

- **Ex.C-1** — Claim-level comparison table listing sample claims objected to on the docket prior to the most recent Record Date but not reflected as objected in Kroll's public database.
- **Ex.C-1** — Age-distribution and average-wait-time table and chart for claims showing no objection, notice, or updated status in Kroll (approximately 49,393 claims), including calculation of the ~800-day average delay.
- **Ex.C-3** — Claim-transfer and objection-volume chart showing the abnormal spike in claim transfers during 2025 Q3–Q4 and the contemporaneous increase in objections to FTX proposals.

to be served by electronic mail only upon the recipients listed below (collectively, the "Service Parties"):

**Office of the United States Trustee for the District of Delaware**
- Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov
- Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
- David Gerardi – david.gerardi@usdoj.gov

**Counsel to the FTX Recovery Trust – Sullivan & Cromwell LLP**
- Andrew G. Dietderich – dietdericha@sullcrom.com
- James L. Bromley – bromleyj@sullcrom.com
- Brian D. Glueckstein – gluecksteinb@sullcrom.com
- Alexa J. Kranzley – kranzleya@sullcrom.com

**Delaware Counsel to the FTX Recovery Trust – Landis Rath & Cobb LLP**
- Adam G. Landis – landis@lrclaw.com
- Kimberly A. Brown – brown@lrclaw.com
- Matthew R. Pierce – pierce@lrclaw.com
- Matthew B. McGuire – mcguire@lrclaw.com

**Request for Consent / Reservation:** By this certificate and the accompanying cover email, Movant respectfully requests that counsel confirm consent to service by email for the foregoing papers. If any Service Party withholds consent, or if the Court requires an alternative form of service, Movant will promptly cure by effecting service in a manner consistent with Rules 7004 and 9014 of the Federal Rules of Bankruptcy Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Beijing, China November 17, 2025

*Pu Ke*

Pu Ke (pro se)
Room 501, Unit 3, Building 12
No. 1 Courtyard, Gaojiayuan East Street
Mentougou District, Beijing, China
Email: kepu_ftx@superbloch.com
Tel: +86 15210847154