IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: November 24, 2025 at 9:30 a.m. (ET)<br>Ref. No. 33425, 33573 |

**REPLY IN FURTHER SUPPORT OF MOTION OF SETH MELAMED
SEEKING ENTRY OF AN ORDER: (I) COMPELLING THE PERFORMANCE
OF BITFLYER UNDER THE FTX JAPAN SALE ORDER [D.I. 20560],
OR ALTERNATIVELY, (II) COMPELLING THE FTX RECOVERY TRUST
TO PAY AMOUNTS OWED UNDER THE KEIP ORDER [D.I. 1589]**

Seth Melamed ("**Melamed**") submits this reply (the "**Reply**") to the Objection (the "**Objection**") of the FTX Recovery Trust (the "**Trust**") to the *Motion Seeking Entry Of An Order: (I) Compelling the Performance of bitFlyer under the FTX Japan Sale Order [D.I. 20560]; or alternatively, (II) Compelling The FTX Recovery Trust To Pay Amounts Owed Under the KEIP Order [D.I. 1589]* (the "**Motion**")[2].

1.  The Objection raises four arguments as to why the Motion should not be granted: (i) the Motion is procedurally improper; (ii) Melamed forfeited his right to participate in the KEIP by not signing the award agreement and the release; (iii) the KEIP claim is subject to equitable subordination under § 510(c) of the Bankruptcy Code; and (iv) the KEIP Claim may

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. A complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the *Motion of Seth Melamed Seeking Entry of an Order: (I) Compelling the Performance of Bitflyer under the FTX Japan Sale Order [D.I. 20560], or alternatively, (II) Compelling the FTX Recovery Trust to Pay Amounts Owed under the KEIP Order [D.I. 1589]. See* D.I. 33425.

1

ME1\59112447.v1

have been forfeited due to other conduct. As set forth in the Motion and herein, each of these arguments lacks merit. As a result, the Court should grant the Motion and enter the proposed form of Order compelling the Trust to pay the KEIP Award.

### A. The Motion is neither procedurally improper nor duplicative

2.  <u>First</u>, the Trust asserts that the Motion is procedurally improper. The Trust asserts that the Motion is duplicative of Melamed's administrative claim and seeks to establish parallel tracks for the claim resolution process. Objection at ¶¶ 1-2.

3.  The Trust's characterization of the Motion is incorrect. It should be recalled that in the Amended Claims Objection, the **Trust** asserted that it had no liability for the KEIP Award because bitFlyer assumed that liability. *See* Amended Claim Objection at ¶ 55 ("*Melamed thus must seek any award payable under the KEIP from bitFlyer, not the Debtors*") (emphasis supplied). Filing the Motion to compel as to both the Trust and bitFlyer addresses this argument. In addition, as set forth in the Motion, the KEIP Award is a discrete issue, does not involve the interpretation or application of Japanese Law, does not require any factual discovery nor are there any disputed material facts which would preclude the entry of judgment.

### B. The KEIP Order contains no conditions that require a KEIP participant to sign an award agreement or grant a release in order to receive the KEIP Award

4.  <u>Second</u>, in the Objection, the Trust argues that Melamed forfeited his KEIP Award by not signing the award agreement. ¶¶ 3-6. Holistically relying on selected words like "authorization", "implement", and "effectuate" along with the phrase "take and perform all actions necessary to implement", the Trust asserts that it had absolute discretion to graft on any new condition/outcome determinative prerequisite they so desired on KEIP participants.[3]

---

[3] These phrases address the administrative components of the KEIP – not actual conditions to earn the KEIP Award.

5. The Trust's interpretation of the KEIP Order is incorrect. Although Melamed disputes the Trust's unsupported assertion that he **refused** to sign the agreement (Objection at ¶ 5), this factual issue need not be determined in order to grant the Motion.[4] The Motion can be determined by a simple review of the KEIP Order and the FTX Japan Sale Order. The KEIP Order and its attachment Exhibit A (herein, the "**KEIP Terms**") lists the *exclusive* conditions that must be satisfied to earn the incentive (and the timing of payment from the Debtors).

6. References to provisions in the KEIP Motion were not approved unless that provision was specifically included in a decretal paragraph in the KEIP Order or in the KEIP Terms. *See Cooke v. Jackson Nat. Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018) ("[w]e have held many times that judgments must provide relief and must not stop with reciting that motions were granted or denied"); *Local Union No. 1992, of the International Brotherhood of Electrical Workers v. the Okonite Company*, 358 F.3d 278 (3d Cir. 2004) ("a judgment must . . . be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion.")(cleaned up); James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 58.05[4][a] (3d ed. 2003).[5]

7. Neither the KEIP Order, the KEIP Terms, nor the FTX Japan Sale Order contain a requirement that a KEIP Participant sign an award agreement or release claims against the estate as a condition for payment. The Trust's attempt to impose that new condition is nowhere referenced in the KEIP Order or KEIP Terms and is thus not permissible. Accordingly, based on the KEIP Order and KEIP Terms, the Court can determine that: a) Melamed was a KEIP

---

[4] Melamed submitted the emails between his prior counsel and Debtors' counsel on the general release to refute the Trust's assertion in the Amended Claims Objection that he refused to sign the agreement. In response, the Trust simply disputed this "version of events" (although the Trust does not assert that it ever sent the award agreement and the release to Melamed). Objection at ¶ 5.
[5] Indeed, the KEIP Order itself is limited to the relief "*as set forth herein*" not "as set forth in the Motion." KEIP Order, ¶ 1.

participant; b) the transaction closed on July 26, 2024; c) Melamed was employed as of that date; d) the Transaction Award was earned on that date pursuant to ¶ 5 of the KEIP Terms; and e) the Debtors were required to pay the Transaction Award within sixty days (*i.e.* by September 25, 2024). *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("where the plain terms of a court order unambiguously apply, . . . they are entitled to their effect."); *see also In re Shenango Grp. Inc.,* 501 F.3d 338, 346 (3d Cir. 2007) (orders construed under ordinary contract principles).

8. Finally, the Court can review the FTX Japan Sale Order and determine that the KEIP Order was never modified or vacated to relieve the Debtors (or the Trust) of this liability. As such, the KEIP Order "remains binding and enforceable according to its terms" *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 446 (Bankr. D. Del. 2006) ("silence in a later order is not sufficient to infer an intent to vacate or modify an earlier binding order of this Court.")*; see also In re Motors Liquidation Co.*, 943 F. Supp. 2d 613, 621 (S.D.N.Y. 2013) ("[m]odification of a prior order requires clear expression; it cannot be inferred from silence.").[6]

C. **Equitable Subordination Does Not Apply to the KEIP Award**

9. <u>Third</u>, in an attempt to create a factual issue, the Trust asserts that the KEIP Award should be subordinated pursuant to §510(c) of the Bankruptcy Code. This argument was <u>not</u> raised directly by the Debtors in the Amended Claims Objection. *See* Amended Claims Objection at ¶ 52 (listing the three grounds as to why the KEIP Award should not be allowed but not identifying section 510(c) of the Bankruptcy Code as one of them).

10. The Mosley Declaration, *inter alia*, served as the evidentiary support for the approval of the KEIP Motion. In connection with the Amended Claims Objection, the Debtors

---

[6] The Trust had no response to this argument in its Objection.

and the Trust filed two declarations from another principal at A&M, Henry Chambers, that assert that Melamed's claims should be subordinated under §510(c).[7] The Mosley and Chambers declarations, both from A&M, and both sworn pursuant to 28 U.S.C. §1746, directly contradict each other and the same fiduciaries who asserted that the KEIP was necessary to maximize value to the estate now use §510(c) to argue why the award should not be paid. If the Trust's invocation of §510(c) is not dismissed as a matter of law, Melamed reserves his rights to assert that the doctrines of judicial estoppel, equitable estoppel and quasi estoppel preclude the Trust from raising Section 510(c).[8] *See e.g. In re Invitae Corp.*, 671 B.R. 783 (Bankr. D.N.J. 2025).

11. Ultimately, whatever allegations the Trust now attempts to assert as a basis for §510(c) fail as a matter of law because customers will receive a recovery in excess of 100%. *See Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233-34 (3d Cir. 2003) (the equitable subordination doctrine is designed "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results."); *Windstream Holdings, Inc. v. Charter Commc'ns, Inc.* (*In re Windstream Holdings, Inc.*), 627 B.R. 32, *vacated in part*, 634 F. Supp. 3d 99 (S.D.N.Y. 2022), *aff'd*, 2024 WL 3195997 (2d Cir. June 24, 2024) (where unsecured creditors receive a 100% recovery on their claims, the remedy of equitable subordination does not apply).

12. Indeed, the Trust has recently filed its Q3 2025 financial report ("**Q3 Financial Report**") which reflects distribution on allowed claims to date and the amount of post petition interest accruing on "Allowed [Class 5A Claims, Class 5B Claims and Class 6A Claims . . . "

---

[7] *See Declaration of Henry Anthony Chambers in Support of Debtors' Amended Objection to Proofs of Claim Filed by Seth Melamed and Motion for Subordination* [D.I. 28645]; *Declaration of Henry Anthony Chambers in Further Support of Debtors' Amended Objection to Proofs of Claim filed by Seth Melamed and Motion for Subordination Pursuant to 11 U.S.C. §§ 510(B) and 510(C)(1)* [D.I. 30366].
[8] Permitting Debtors to raise Section 510(c) as a routine defense to a Court approved administrative expense would create havoc and disruption in the restructuring world.

*See FTX Recovery Trust Financial Report Q3 2025 (Unaudited),* [D.I. 33686 at 11]. Finally, the Q3 Financial Report notes that "[f]or Disputed Claims that subsequently become Allowed Claims, post petition interest will be accrued …" *Id.* In sum, given that customer claims are receiving a full recovery along with post-petition interest, §510(c) fails as a matter of law.[9]

### D.  The Recoupment/Forfeiture Argument is meritless

13.  <u>Finally</u>, the Trust asserts that it "expressly reserved the right to withhold or recoup any KEIP payments" if the recipient of the award engaged in wrongdoing. (KEIP Motion at ¶ 9). However, that provision never made it into the KEIP Order or the KEIP Terms. Accordingly, that reservation does not authorize the Trust to withhold payment after the conditions for payment have been satisfied.[10]

14.  The Trust argues that "the KEIP Order conditioned awards on recipients not engaging in wrongdoing" and references paragraph 9 of the KEIP Motion. Objection at ¶ 8. The language referenced expressly stated recoupment (not withholding) and was triggered upon a "subsequent final determination" of wrongdoing—which obviously has not occurred.

15.  Finally, the Trust fails to allege *any* "wrongdoing". Specifically, the Objection references paragraph 8 of the Chambers Reply Declaration which states that:

> During the period in which Melamed was reviewing the intercompany balances, he was also actively preparing a bid for FTX Japan K.K. himself. At this time, Melamed had active roles as representative director of both FTX Japan Holdings K.K. and FTX Japan K.K., and was deeply involved in the sale process in connection with those positions. During this period, Melamed had regular interactions with multiple bidders. On May 16, 2024, Melamed submitted a bid that only slightly exceeded existing bids.

---

[9] Separately, the allegations raised by the Trust as to why Section 510(c) should apply are meritless. Melamed reserves all rights to dispute these baseless assertions should the Court permit the Trust to proceed.

[10] In the KEIP Terms, there are references to forfeiture in the event of death or disability of a KEIP Participant. *See e.g.* KEIP Terms ¶¶ 3 and 7. To the extent that the Debtors actually wished to reserve this right, such a provision could have easily been included as a separate paragraph in the KEIP Terms.

6

ME1\59112447.v1

Paragraph 8 sheds no light on what the "wrongdoing" is[11] or why this conduct would permit the Trust to withhold payment of the Transaction Award.[12]

## CONCLUSION

**WHEREFORE**, Melamed respectfully requests that the Court enter the Proposed Order Compelling the FTX Recovery Trust to Pay Amounts Owed under the KEIP Order (D.I. 1589); and granting such other and further relief as the Court deems just and proper, including, but not limited to, interest on the Transaction Award and fees associated with the filing of this Motion.

Dated: November 19, 2025
Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

/s/ *Kate R. Buck*
Kate R. Buck (No. 5140)
Lawrence O'Brien (No. 7000)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile (302) 984-6399
kbuck@mccarter.com

- and –

David J. Adler (admitted *pro hac vice*)
250 W. 55th Street, 13th Floor
New York, NY 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
dadler@mccarter.com
*Counsel to Seth Melamed*

---

[11] The implausibility of this newly invented argument is demonstrated by the fact that Melamed was terminated without cause on July 28, 2024.
[12] The KEIP Motion referenced the recoupment of the KEIP Award – not the withholding of payment.