# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>Related Docket No(s).: 26404, 31148, 31559, 32687, 32712, 32739, 32785, 32840, 32943, 33193 |

## SUR-REPLY OF PU KE TO THE FTX RECOVERY TRUST'S OBJECTION IN FURTHER SUPPORT OF MOTIONS D.I. 32712 AND D.I. 32739

Pu Ke ("Movant"), appearing pro se, respectfully submits this sur-reply (the "Sur-Reply") in further support of his motions at D.I. 32712 and D.I. 32739 (together, the "Motions"). This Sur-Reply is narrowly tailored to (i) address the material developments placed on the record at the October 23, 2025 status conference, at which the Court set the Motions for a substantive hearing on November 20, 2025; and (ii) respond to the new and expanded arguments advanced by the FTX Recovery Trust (the "Trust") in its October 20, 2025 filing, D.I. 33193 (the "Omnibus Response to Related Motions and Filings"). The purpose is to ensure a clear and complete record for the Court's determination of the Plan-interpretation issues presented by the Motions.

## I. SUMMARY OF ARGUMENT

This is a claim-specific request to enforce the confirmed Plan's allowance mechanics as written. The Plan implements the Bankruptcy Code's baseline rule, 11 U.S.C. § 502(a), on a recurring, record-date basis: for each interim distribution, a claim with no Article 8 objection on file by the Distribution Record Date is treated as "Allowed" for that distribution under Plan §§ 2.1.8(d), 7.4.1, and 7.4.2 (with § 7.2.4 addressing catch-up if allowance occurs later). No Article 8 objection to Claim No. 33657 existed as of the August 15, 2025 Distribution Record Date, and Movant had satisfied the Plan's Pre-Distribution Requirements under § 7.14, including establishing a viable, DSP-approved USD payment path to Hong Kong. Under Plan's text, Movant should have been included in the September 30, 2025 distribution. The Trust's withholding of distribution is contrary to the Plan's mechanical framework.

Developments since briefing closed confirm that the Trust's policy arguments cannot displace the Plan's text. At the October 23, 2025 status conference, the Court did not adopt the Trust's Restricted Jurisdiction Procedures and set Movant's Motions for decision on November 20, 2025. The Trust's Omnibus Response to Related Motions and Filings advances new process-based rationales, but they continue to rely on residency-based deferral untethered to an Article 8 objection. Leaving an unobjected claim as "Disputed Claim" indefinitely on administrative or residency grounds is extra-

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

Plan; it conflicts with § 502(a), the Plan's allowance definitions § 2.1.8(d), and the binding effect of confirmation under 11 U.S.C. § 1141(a).

By designating Movant's claim "Disputed Claim" while treating otherwise similarly situated Class 5A claims as "Allowed" on the August 15, 2025 Distribution Record Date, the Trust had effectively created a discretionary "second line," producing unequal treatment within the class contrary to 11 U.S.C. § 1123(a)(4) and inconsistent with Article 4 of the confirmed Plan (Classification and Treatment of Claims), which requires uniform treatment of Class 5A Claims absent consent. The "floodgates" refrain is not a defense: the Plan was designed to scale distributions through recurring Record Dates and the catch-up mechanism in § 7.2.4; "thousands of compliant creditors" are precisely those the Plan recognizes as "Allowed" when no timely objection exists.

The Court has ample authority under 11 U.S.C. § 1142(b) and Plan § 12.1 to enforce the Plan's framework. Movant therefore seeks a narrow, claim-specific comply-or-object order: within a short period, the Trust must either (i) file a substantive Article 8 objection to Claim No. 33657, or (ii) recognize the claim as "Allowed" for distribution purposes as of the August 15, 2025 Record Date and make a catch-up USD distribution. This targeted relief requires no global ruling and simply enforces the Plan's mechanics as applied to Movant.

## II. THE PLAN'S MANDATORY LEGAL FRAMEWORK FOR INTERIM DISTRIBUTIONS

### A. Principles of Plan Interpretation

The confirmed Plan is a binding contract whose construction is governed by settled principles:

1. **Consistency with the Bankruptcy Code.** The Plan must be consistent with the mandatory provisions of the Bankruptcy Code, including the "deemed allowed" default of 11 U.S.C. § 502(a), the equal-treatment requirement of 11 U.S.C. § 1123(a)(4), the binding effect of confirmation under 11 U.S.C. § 1141(a), and the Court's post-confirmation enforcement authority under 11 U.S.C. § 1142(b).

2. **Whole-instrument construction.** The Plan must be read as a coherent whole, giving effect to all of its parts. An interpretation that creates conflict between provisions is not allowed.

3. **The Canon Against Surplusage.** Every word and provision of the Plan must be given meaning. An interpretation that renders any part of the text superfluous, redundant, or insignificant must be rejected.

### B. The Trust's residency-based deferral conflicts with the Plan's core structure

Plan §§ 2.1.8, 2.1.57 (definitions) and Article 8 (objections) govern the legal status of a Claim (e.g., "Allowed" vs. "Disputed Claim"). Article 7 governs the logistical status of a Holder (e.g., completion of § 7.14 Pre-Distribution Requirements). The Trust's current practice, using a Holder's residency or other logistical factor to keep an unobjected claim "Disputed Claim" for distribution purposes, conflates these distinct axes and bypasses the exclusive, due-process mechanism for holding a claim "Disputed Claim": a formal Article 8 objection.

This extra-Plan approach is incompatible with the Plan in at least two ways:

1. **Unauthorized subclassing within Class 5A.** Article 4 provides the exclusive classification scheme and places Dotcom Customer Entitlement Claims in Class 5A. Designating some unobjected Class 5A claims "Allowed" while leaving others' claim "Disputed Claim" based on residency creates a discretionary "second line," amounting to an impermissible subclass and unequal treatment within the class, contrary to Article 4 and 11 U.S.C. § 1123(a)(4).
2. **Inversion of the § 502(a) default.** Under § 502(a), a filed claim is "deemed allowed" unless objected to. Plan § 2.1.8(d) implements this default. Leaving unobjected claims "Disputed Claim" indefinitely on administrative grounds inverts the statutory burden and is extra-Plan.

### C. The post–October 23 posture requires adherence to the Plan's text

At the October 23, 2025 status conference, the Court did not adopt the Trust's proposed Restricted Jurisdiction Procedures. The Trust also represented that no request to designate any jurisdiction is currently pending. In this posture, the confirmed Plan, not any extra-Plan administrative regime, governs distributions. The Trust cannot exercise authority the Plan does not confer; first principles require application of the Plan and Code provisions as written.

### D. Foundational principle: claims are "deemed allowed" under § 502(a) and implemented by Plan §§ 2.1.8(d), 7.4.1–7.4.2, and 7.2.4

The claims-administration framework rests on the bedrock rule of § 502(a): a properly filed claim "is deemed allowed" unless a party in interest objects. The Plan implements this default through §§ 2.1.8(d), 7.4.1, 7.4.2 and 7.2.4: for each distribution, if no Article 8 objection has been filed by the applicable deadline, the claim is treated as "Allowed" for that round. The Trust's residency-based deferral reverses this logic by maintaining "Disputed Claim" status without an objection.

### E. The final Claims Objection Deadline is the upper bound, not the operative deadline for interim distributions

**Proof by Contradiction:** If the Claims Objection Deadline (Plan § 2.1.32) were the only "applicable deadline," the Plan Administrator could always wait to object, and in that extreme scenario no creditor with a filed proof of claim could receive any interim distribution before the current Claims Objection Deadline on January 3, 2026. That reading conflicts with Article 7, which expressly mandates interim distributions (§ 7.2) and a catch-up mechanism (§ 7.2.4). The Claims Objection Deadline is the upper bound for objections, not the operative checkpoint for each interim distribution.

### F. The Distribution Record Date is the operative "applicable deadline" for each interim distribution

**Direct Proof.** § 7.4.1 establishes a Distribution Record Date to determine the eligibility of Holders for each distribution. § 2.1.8(d) implements § 502(a) by providing that a claim is "Allowed" if no objection has been filed "prior to the applicable deadlines." For purposes of determining eligibility by definition § 2.1.8(d) for a given interim distribution per §7.4.1, the only Plan deadline that functions as a per-round checkpoint is the Distribution Record Date. Read together, §§ 2.1.8(d) and 7.4.1 mean: if no

Article 8 objection exists as of the Record Date, the claim is "Allowed" for that distribution; if § 7.14 is also satisfied, the claim must be paid in that distribution per 7.4.2 or, if missed, via § 7.2.4's catch-up on the next distribution date. This construction recognizes the Record Date's dispositive role in each interim distribution, preserves equal treatment within Class 5A, and ensures compatibility with the Code's § 502(a) "deemed allowed" principle.

**Proof by Contradiction.** Assume the Record Date is not the operative "applicable deadline" for interim distributions (e.g., the only deadline is the final Claims Objection Deadline, or the Plan Administrator may choose ad hoc). Then either: (i) the Record Date in Article 7 does no work—violating the canon against surplusage; or (ii) similarly situated Class 5A creditors (no Article 8 objection by the Record Date; § 7.14 Pre-Distribution Requirements satisfied) receive different outcomes based solely on discretionary withholding "Allowed" status, producing non-uniform treatment within the same class, contrary to Article 4 and 11 U.S.C. § 1123(a)(4). Both results are incompatible with the Plan and the Code. Therefore, the Record Date is the operative "applicable deadline" for each interim distribution.

## G. The Plan-dictated, non-discretionary two-condition process for interim distributions

Read holistically, the Plan establishes a clear, mechanical process for each interim distribution:

1. **Condition 1 — Allowed-for-the-distribution (legal status of a Claim).** As of the **Distribution Record Date** for a given distribution, a claim is "Allowed" if no Article 8 objection has been filed.

2. **Condition 2 — Pre-Distribution Requirements (logistical status of a Holder).** Separately, the Holder must satisfy the § 7.14 Pre-Distribution Requirements (KYC, tax forms, DSP onboarding) to receive payment.

3. **Entitlement and catch-up.** A creditor satisfying both conditions is entitled to payment for that distribution per §7.4.2; if the claim becomes "Allowed" after a distribution date has passed (i.e. by other paths defined in §2.1.8), § 7.2.4 mandates a catch-up payment on the next distribution date. This framework enforces parity within Class 5A and implements the Record Date and catch-up provisions without need for any extra-Plan procedure.

## H. Claim fixation and cash-only mandate under the Plan and Code

As of the petition date, customer entitlements are fixed in U.S. dollars (See 11 U.S.C. § 502(b); Plan § 4.4). Upon confirmation, the Plan becomes a binding contract with discharge (See 11 U.S.C. § 1141(a), (d)) that mandates payment in Cash (Plan § 4.3.6), with "Cash" defined as U.S. legal tender (Plan § 2.1.26). A distribution in Cash therefore satisfies a USD debt created by the Plan; it is not a crypto transaction.

## III. FACTS

### A. Movant's Full Compliance and the Trust's Withholding of Distribution

**Record-Date Status.** As of the August 15, 2025 Distribution Record Date, no Article 8 objection had been filed against Claim No. 33657, and Movant had completed the Plan's Pre-Distribution Requirements under § 7.14 (See D.I. 32687).

**Viable, Lawful Payment Path.** Movant established a USD payment route via Payoneer to a personal bank account in Hong Kong. This DSP-approved path does not involve transmission of funds into the mainland PRC banking system. (See D.I. 32739)

**Missed September 30 Distribution Despite Eligibility.** Although similarly situated Class 5A creditors received the September 30, 2025 interim distribution (See D.I. 32943), Movant's claim was maintained as a "Disputed Claim" for distribution purposes and excluded despite the absence of any Article 8 objection as of the Record Date and completion of § 7.14 Pre-Distribution Requirements (See D.I. 32840).

**Procedural Posture After October 23.** At the October 23, 2025 status conference, the Court set the The Motions for a substantive hearing on November 20, 2025 (October 23, 2025 Hr'g Audio at 01:32:10–01:32:26)[1] and did not adopt the Trust's Restricted Jurisdiction Procedures (October 23, 2025 Hr'g Audio at 02:03:35–02:09:52). The Trust represented that no request to designate any jurisdiction is pending (October 23, 2025 Hr'g Audio at 00:37:01–00:37:20).

**Proactive Resolution Efforts** (FRE 408—dates only; limited purpose)[2]. To conserve party and judicial resources, Movant engaged in time-limited settlement communications pursuant to Fed. R. Evid. 408 on September 29, October 7, and October 27, 2025. The substance of those communications is omitted under Rule 408. The Trust did not confirm an agreement by those dates and did not request additional time; the deadlines expired without resolution. This chronology is offered solely to explain procedural timing and case status.

**Counsel Correspondence Near the Final Date** (FRE 408—dates only; limited purpose)[2]. Shortly before the October 31, 2025, counsel and Movant exchanged emails. Without reciting any settlement content, Movant notes only that no formal § 7.14 deficiency notice was issued and no Article 8 objection was filed. The Trust allowed the deadline to pass without resolving the matter. This recital is offered solely to establish chronology and case status.

### B. The Trust's Pattern of Contradictory Positions and Discretionary Actions

**Contradiction 1: The Dispositive Importance of the Record Date.** In its Restricted Jurisdiction Procedure filings (See D.I. 31148 ¶ 6, 26; D.I. 31559 ¶ 7) and testimony (July 22, 2025 Hr'g Audio at 00:18:43–00:19:10)[3], the Trust repeatedly and unequivocally tied a claim's eligibility for any given

---

1   Citations to the October 23, 2025 hearing refer to the official audio recording docketed at D.I. 33309, as an official transcript was not yet available at the time of filing. Timestamps are provided in HH:MM:SS format.
2   Settlement communications are referenced by date only; content is omitted pursuant to Fed. R. Evid. 408. They are offered solely to explain procedural timing and case status, not to prove or disprove the validity or amount of Claim No. 33657. See Fed. R. Evid. 408(b).
3   Citations to the July 22, 2025 hearing refer to the official audio recording docketed at D.I. 31764, as an official transcript was not available to Movant at the time of filing. Timestamps are provided in HH:MM:SS format.

distribution to its status as of the Record Date. Specifically, D.I. 31148 ¶ 13 explicitly states that if a jurisdiction were designated as restricted on a distribution Record Date, the affected creditor's claim would be "forfeited" for that distribution. If the Record Date is the dispositive "applicable deadline" to forfeit a claim without an objection from creditors, then by the same logic it must also be the dispositive "applicable deadline" under Plan § 2.1.8(d) to treat a claim as "Allowed" in the absence of an objection from the Trust. Yet, in objecting to Movant's Motions, the Trust downplays the Record Date's importance (See D.I. 33193 ¶¶ 28-29 and D.I. 32785 ¶¶ 2-3), contending it may wait until the Claims Objection Deadline to decide allowance.

**Contradiction 2: "No Line Jumping" vs. Selective Reconciliation.** The Trust defends delay by citing the "herculean task" of an "orderly administration" and argues that Movant cannot "jump the line." However, the record shows the Trust can and does depart from this purportedly rigid queue for tactical reasons. As stated at the April 17, 2025 hearing, after a pro se creditor, Ms. Favario, filed objections to professional fees, the estate contacted her to offer payment on her disputed claim "within two weeks." (April 17, 2025 Hr'g Audio at 00:16:06–00:16:52)[1] Further, in its Omnibus Response to Related Motions and Filings (See D.I. 33193 ¶ 7), the Trust confirms it has already allowed claims and made distributions to other vocal objectors.

**Contradiction 3: "Distributional Issue" vs. "Plan Modification."** In the related filings (See D.I. 31559 ¶¶ 4, 7, 15) and at the July 22 hearing (July 22, 2025 Hr'g Audio at 00:14:04–00:14:33) the Trust characterized its Restricted Jurisdiction Procedure as a mere "distributional issue," not a "plan modification." Yet the current practice, unilaterally maintaining "Disputed Claim" status to claims based on residency, alters creditors' rights as to timing and treatment, is the hallmark of a plan modification. Moreover, in D.I. 33193 ¶ 13, the Trust shifts rationale, suggesting that even cash distributions do not resolve concerns about "crypto-tainted" funds — an acknowledgment that the issue is not a simple logistical matter.

**Contradiction 4: Acknowledging but Bypassing the Plan's Objection Mechanism.** At the July 22, 2025 hearing, Trust counsel recognized the Plan's available mechanism—"The Trust could simply object to claims on the basis that it would be illegal to satisfy them" (July 22, 2025 Hr'g Audio 00:15:24–00:15:49). The Trust nonetheless pursued residency-based deferral outside Article 8, converting a holder's logistical status into a change in the claim's legal status. That course departs from the Plan's architecture (Articles 2, 7, and 8), inverts the § 502(a) / Plan § 2.1.8(d) default, and produces non-uniform treatment within Class 5A.

**Inapplicable Precedent (The ELD Matter).** In its objection (D.I. 32785 ¶ 3) and Omnibus Response to Related Motions and Filings (D.I. 33193 ¶ 30), the Trust cites the Court's denial of relief to ELD Capital LLC. That matter involved a creditor already in the formal claims-objection process, raising complex fraud issues, who sought to compel an accelerated litigation schedule of its own design. By contrast, Movant's customer claim is not subject to any Article 8 objection. As the Trust itself acknowledged on the record, unobjected customer claims stand in a different posture from ELD. (July 22, 2025 Hr'g Audio 02:32:42–02:33:11) Movant does not seek to accelerate litigation; he seeks enforcement of the Plan's non-discretionary allowance mechanics for unobjected claims.

---

1  Citations to the April 17, 2025 hearing refer to the official audio recording docketed at D.I. 30165, as an official transcript was not available to Movant at the time of filing. Timestamps are provided in HH:MM:SS format.

# IV. APPLICATION: THE TRUST'S ACTIONS VIOLATE THE PLAN AND THE BANKRUPTCY CODE

## A. Residency-based withholding violates the Plan's architecture and, if sustained, would constitute a post-confirmation modification

Under the Plan's framework, Articles 2 and 8 govern the legal status of a claim ("Allowed" vs. "Disputed Claim"), while Article 7 governs the logistical status of the holder (e.g., § 7.14), with the Record Date (§ 7.4.1) serving as the operative "applicable deadline" for each interim distribution. Treating an unobjected claim as "Disputed Claim" indefinitely based on residency, a holder attribute under Article 7, conflates these axes, bypasses the exclusive Article 8 objection process, and inverts the § 502(a) "deemed allowed" default implemented by § 2.1.8(d).

This practice also manufactures unauthorized subclasses within Class 5A (e.g., "Class 5A - Unrestricted" and "Class 5A - Potentially Restricted") and results in non-uniform treatment of identically situated creditors, contrary to Article 4 and 11 U.S.C. § 1123(a)(4).

The post-confirmation modifications requiring compliance with 11 U.S.C. § 1127(b) (disclosure, solicitation, confirmation)—which the Trust has neither invoked nor satisfied.

## B. The "floodgates" rationale fails under the Plan's mechanics

The Trust's prediction of "innumerable copycat motions" (See D.I. 33193 ¶ 30) is not a legal defense; it reflects the Plan operating as designed. Under §§ 2.1.8(d), 7.4.1, and 7.2.4, claims with no Article 8 objection by the Record Date and with § 7.14 completed are Allowed for that distribution and must be paid (or caught up). Paying compliant, unobjected Class 5A creditors on that basis closes the "floodgates" by channeling outcomes through the Plan's bright-line rules and reducing motion practice. By contrast, the Trust's extra-Plan, discretionary "reconciliation line" creates uncertainty and invites the very litigation it says it seeks to avoid. Adherence to the Plan promotes finality and predictability consistent with 11 U.S.C. § 1141(a) and advances judicial economy.

## C. The Trust Has Violated the Equal Treatment Mandate of 11 U.S.C. § 1123(a)(4)

The class of "similarly situated" creditors is clearly defined: all Class 5A holders who met the § 7.14 requirements and whose claims were not subject to a pending Article 8 objection by the August 15 record date. The Trust allowed and provided distributions to members of this group but carved out an exception for Movant (See D.I. 32943). This is the essence of unequal treatment. By creating an extra-Plan "second line" for certain creditors, the Trust has failed to provide the "same treatment" the statute requires. The selective offers to resolve claims of other objecting creditors further evidence this discriminatory practice (See D.I. 33193 ¶ 7).

## D. The Trust's "crypto-tainted funds" theory fails under the Code and the Plan

Cash distributions cannot be treated as "crypto-tainted." Under § 502(b) and Plan § 4.4, customer entitlements are fixed as dollar-denominated claims at the petition date. Confirmation discharges

prepetition rights under § 1141(d) and, under § 1141(a), the Plan becomes a binding contract that mandates payment in Cash (§ 4.3.6), with "Cash" defined as U.S. legal tender and equivalents (§ 2.1.26). A distribution in Cash satisfies a USD debt created by the Plan; it is not a crypto transaction.

### E. The Court Has Full Authority to Enforce the Plan

This Court possesses the explicit authority and duty to enforce the confirmed Plan. 11 U.S.C. § 1142(b) grants the Court broad power to "direct...any necessary party...to perform any other act...that is necessary for the consummation of the plan". Further, Plan § 12.1(h) expressly reserves the Court's jurisdiction to "ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan". Granting Movant's requested relief is a direct and necessary exercise of this retained authority.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Movant respectfully requests that the Court enforce the Plan's allowance framework by entering a narrow, claim-specific order, consistent with, and as previously requested at D.I. 32840, directing the FTX Recovery Trust, within a short period, to either (i) file a substantive Article 8 objection to Claim No. 33657, to be heard on a prompt schedule; or (ii) recognize the claim's "Allowed" status for the September 30, 2025 interim distribution as of the August 15, 2025 Record Date, administer the § 7.2.4 catch-up, then provide ongoing treatment in the ordinary course under the Plan. Movant further requests such other relief as the Court deems just and proper.

Dated: Beijing China, November 3, 2025

*Pu Ke*

Pu Ke (pro se)

Room 501, Unit 3, Building 12
No. 1 Courtyard, Gaojiayuan East Street, Mentougou district, Beijing, China
Email: kepu_ftx@superbloch.com
Tel: +86 15210847154

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br>    Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br>Related Docket No(s).: [Sur-Reply D.I. — to be completed by the Clerk] |

## DECLARATION OF PU KE PURSUANT TO 28 U.S.C. § 1746

I, Pu Ke, pursuant to 28 U.S.C. § 1746, declare as follows:

1. **Identity and capacity.** I am the holder of Claim No. 33657 (Class 5A) in these jointly administered cases and appear pro se. I have personal knowledge of the facts stated herein unless otherwise indicated.

2. **Purpose of declaration.** I submit this declaration in support of my Motion for Leave to File Sur-Reply and the Sur-Reply in further support of D.I. 32712 and D.I. 32739, and the proposed order submitted therewith. To the extent the Court treats the accompanying filing as a sur-reply, this declaration supports that filing as well.

3. **Hearing recordings and citations.** I obtained all the hearing recordings from the docket. Citations in my papers refer to timestamps in HH:MM:SS format corresponding to those recordings.

4. **Truth of facts.** The factual statements in Sections III (Facts), and IV (Application) of the Sur-Reply are true and correct to the best of my knowledge, information, and belief. Statements quoting or citing the Plan, or docketed filings are based on my review of those materials; Citations to hearing recordings reflect timestamps I personally reviewed from the docketed audio files.

5. **FRE 408 timeline (dates only; limited purpose).** I made time-boxed settlement overtures on September 29, October 7, and October 27, 2025; shortly before the October 31 response window closed, Trust counsel and I exchanged a communication marked under Rule 408. These dates are provided solely to reflect good-faith efforts and procedural sequence and not to prove or disprove the validity or amount of the claim. See Fed. R. Evid. 408(b). No settlement content is offered.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Beijing China, November 3, 2025

*Pu Ke*

Pu Ke (pro se) Room 501, Unit 3, Building 12, No. 1 Courtyard, Gaojiayuan East Street, Mentougou district, Beijing, China. Email: kepu_ftx@superbloch.com. Tel: +86 15210847154

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>   Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>Related Docket No(s).: [Motion for Leave & Sur-Reply D.I. — to be completed by the Clerk] |

## CERTIFICATE OF SERVICE – Motion for Leave & Sur-Reply

I, Pu Ke, certify that on November 3, 2025, I caused true and correct copies of the following documents:

- MOTION OF PU KE FOR LEAVE TO FILE SUR-REPLY IN FURTHER SUPPORT OF D.I. 32712 AND 32739;

- PROPOSED ORDER (GRANTING LEAVE TO FILE SUR-REPLY);

- SUR-REPLY OF PU KE TO THE FTX RECOVERY TRUST'S OBJECTION IN FURTHER SUPPORT OF D.I. 32712 AND 32739; and

- DECLARATION OF PU KE PURSUANT TO 28 U.S.C. § 1746

to be served by electronic mail only upon the recipients listed below (collectively, the "Service Parties"):

**Office of the United States Trustee (District of Delaware)**
- Juliet M. Sarkessian — juliet.m.sarkessian@usdoj.gov
- Benjamin A. Hackman — benjamin.a.hackman@usdoj.gov
- David Gerardi — david.gerardi@usdoj.gov

**Counsel to the FTX Recovery Trust — Sullivan & Cromwell LLP**
- Andrew G. Dietderich — dietdericha@sullcrom.com
- James L. Bromley — bromleyj@sullcrom.com
- Brian D. Glueckstein — gluecksteinb@sullcrom.com
- Alexa J. Kranzley — kranzleya@sullcrom.com

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/.

**Delaware Counsel to the FTX Recovery Trust — Landis Rath & Cobb LLP**
• Adam G. Landis — landis@lrclaw.com
• Kimberly A. Brown — brown@lrclaw.com
• Matthew R. Pierce — pierce@lrclaw.com
• Matthew B. McGuire — mcguire@lrclaw.com

Request for Consent / Reservation: By this certificate and the cover email, Movant requests that counsel confirm consent to service by email for the foregoing papers. If any Service Party withholds consent or the Court requires alternate service, Movant will promptly cure by effecting service consistent with FRBP 7004 and 9014.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Beijing, China, November 3, 2025

*Pu Ke*

Pu Ke (pro se)
Room 501, Unit 3, Building 12
No. 1 Courtyard, Gaojiayuan East Street, Mentougou district, Beijing, China
Email: kepu_ftx@superbloch.com
Tel: +86 15210847154

Docusign Envelope ID: A7D813E0-E819-4FA2-A5B5-A5610523EFE4

## EVIDENCE OF TRANSFER OF CLAIM

TO:          U.S. Bankruptcy Court
                 District of Delaware
                 ("Court")

AND TO:    FTX Trading Ltd. ("Debtor")
                 Case No. 22-11068 ("Case")

**Re: Claim No. 986**

▉▉▉▉▉▉ ("Seller"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto:

**Liang Lu**
59 Ang Mo Kio Ave 8,
0701 Singapore 567752
Email: leosgrun@gmail.com

his successors and assigns ("Buyer"), all rights, title and interest in and to the claim of Seller in connection with the above referenced claim with **Claim Number 986** (the "Claim"), which represents 100% of Seller's total claim amount against Debtor.

Seller hereby waives: (a) any objection to the transfer of the Claim to Buyer on the books and records of Debtor and the Court; and (b) any notice or right to a hearing as may be imposed by Federal Rule of Bankruptcy Procedure 3001, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands, agrees, and hereby stipulates that an order of the Court may be entered, and the Debtor's claims register may be modified, in each case without further notice to Seller transferring the Claim to Buyer and recognizing Buyer as the sole owner and holder of the Claim.

Buyer does not assume and will not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. You are hereby directed to make all future payments and distributions free and clear of all setoffs and deductions, and to give all notices and other communications in respect of the Claim to Buyer.

IN WITNESS WHEREOF, each of the undersigned have duly executed this Evidence of Transfer of Claim by their duly authorized representative dated October 17, 2025.

**Liang Lu**

By:  9E096BB1BB45495...