IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  December 18, 2025 at 9:30 a.m. (ET)<br>Objection Deadline:  December 10, 2025 at 4:00 p.m. (ET) |

## MOTION OF FOLKVANG LTD. TO COMPEL ARBITRATION
## WITH RESPECT TO MASTER LOAN AGREEMENT

Folkvang Ltd. ("Folkvang"), by and through under its undersigned counsel, hereby submits this motion (the "Motion") to compel arbitration with respect to disputes between Folkvang and the FTX Recovery Trust (the "Trust") arising from the Master Loan Agreement (the "MLA") dated as of October 4, 2022, by and between Folkvang and Maclaurin Investments Ltd. ("Maclaurin"). In support of the Motion, Folkvang states as follows:

### JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.[2]  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Folkvang does not concede that the Court has subject matter jurisdiction over the MLA Dispute, however, for the reasons set forth in this Motion.

1

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Folkvang confirms its consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. For the avoidance of doubt, the consent given in Paragraph 2 is limited solely to the Court entering an order granting this Motion and is not a waiver of Folkvang's arguments, set forth below, that the Court does not have subject matter jurisdiction over the MLA Dispute (as defined below).

## STATEMENT OF FACTS

### A. Background to These Chapter 11 Cases

4. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

5. Joint administration of FTX Trading, Ltd.'s ("FTX"), and its affiliated debtors' (collectively, the "Debtors" and each a "Debtor") cases (the "Chapter 11 Cases") was authorized by the Court's order on November 22, 2022. [ECF No. 128.]

6. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [ECF No. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [ECF No. 93].

7. On October 8, 2024, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [ECF No. 26404] (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [ECF No. 26404-1] (the "Plan").[3] The Plan's effective date occurred on January 3, 2025. (*See* ECF No. 29127.]

8. The Plan substantively consolidated the estates of the "Consolidated Debtors" into a single entity and then vested all Plan assets, including the assets of the Consolidated Debtors, into the Trust. (*See* Plan at § 5.7.) The Trust was then granted, among other things, the power to take various actions to effectuate the wind down of the Debtors and their businesses.

B. **Information Respecting the Parties and Relief Requested**

9. Folkvang is a cryptocurrency trading firm validly existing as an exempted limited company under the laws of the Cayman Islands. Like many such firms, Folkvang had numerous business relationships with the Debtors.

10. *First*, Debtor Maclaurin extended a fixed interest Loan and Security Agreement to Folkvang on the FTX Exchange (the "LSA"), which remains fully drawn and has accrued interest. Folkvang has made an offer to the Trust to repay the LSA and the outstanding interest accrued thereon through October 1, 2025, but the Trust has not yet accepted this offer. (*See* Declaration of Michael Laurens van Rossum filed with this Motion, "van Rossum Decl.," at ¶ 4.) Folkvang remains willing to pay the LSA and its outstanding interest accrued only through October 1, 2025, as soon as practicable.[4] (*Id.*)

---

[3] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Plan.

[4] Folkvang objects to further interest accruing after October 1, 2025, because the LSA only remains outstanding at this point due to the Trust's election not to accept repayment.

11. **Second**, Debtor Alameda Research Ltd. ("Alameda") holds a 15% equity interest (1,500 shares) in Folkvang. Although Folkvang previously requested relief from this Court to effectuate a repurchase of that equity interest pursuant to Folkvang's Second Amended and Restated Articles of Association subject to the determination of Folkvang's Board of Directors,[5] Folkvang subsequently withdrew such request. [ECF No. 32095.] Folkvang is no longer evaluating a repurchase of Alameda's interest in Folkvang, and is accordingly no longer pursuing authority from the Court or taking any other step for a repurchase of Alameda's interest in Folkvang. (van Rossum Decl. at ¶ 5.)

12. **Third**, Maclaurin and Folkvang are parties to the MLA. Pursuant to the MLA, Maclaurin contributed a certain amount (the "Commitment Amount") to Folkvang, which Folkvang deployed for trading in digital assets. (van Rossum Decl. at ¶ 6 and Exhibit ("Ex.") A.)

13. Additionally, Folkvang timely filed a proof of claim demonstrating a Class 5A Dotcom Customer Entitlement Claim (the "Folkvang Claim"). At this time, the Debtors have made no distribution on the Folkvang Claim.

14. Folkvang has advised the Trust that it suffered large losses when the FTX Exchange crashed and the Debtors filed for bankruptcy, including with respect to the funds traded pursuant to the MLA. (van Rossum Decl., at ¶ 8; *see also* Declaration of Kenneth Kansa filed with the Motion, "Kansa Decl.," at ¶ 3.) Folkvang has advised the Trust that, because of these losses, the Commitment Amount was depleted and the Trust is not entitled to repayment of that amount (or any amount), consistent with the terms of the MLA. (Kansa Decl., at ¶ 4.) The Trust has disputed Folkvang's contention and maintains that it is entitled to repayment of the Commitment Amount

---

[5] *See Motion of Folkvang Ltd. for Entry of an Order (I) Authorizing Repurchase of Equity Interest in Folkvang Ltd. held by Debtor Alameda Research Ltd., (II) Authorizing Folkvang Ltd.'s Repayment of Loan Made by Debtor Maclaurin Investments Ltd., (III) Allowing Setoff of Repurchase and Repayment Amounts, and (IV) Granting Related Relief* [ECF No. 30579].

in full plus interest. (Kansa Decl., at ¶ 5.)  As a result, the Parties dispute how much of the Commitment Amount (if any) must be repaid (the "MLA Dispute").

15.     Pursuant to the Court's January 27, 2025, *Order (I) Authorizing the Debtors to Assume Certain Executory Contracts, (II) Fixing Cure Amounts with Respect Thereto, and (III) Granting Related Relief* [ECF No. 29394], the Debtors assumed the MLA as an executory contract. The Trust is accordingly bound to the terms of the MLA.

16.     Of relevance to this Motion, the MLA contains an arbitration agreement, which provides:

> In the event of any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, the Parties hereto agree to refer such dispute to arbitration administered by the Singapore International Arbitration Centre. The arbitration shall proceed in accordance with the Arbitration Rules of the Singapore Arbitration International Centre for the time being in force, which rules are deemed to be incorporated by reference to this clause. The seat of the arbitration shall be Singapore. The Tribunal shall consist of one (1) arbitrator appointed by the Singapore International Arbitration Centre. The language of the arbitration shall be in English. The Parties agree that any award made by the Singapore International Arbitration Centre shall be final and binding on the Parties.

(van Rossum Decl. Ex. A, § 12(e), the "Arbitration Agreement.")  The Arbitration Agreement was part of the bargain between Folkvang and Maclaurin. (van Rossum Decl., at ¶ 7.)

17.     On August 8, 2025, the Trust served Folkvang with a request to produce certain documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). (Kansa Decl., at ¶ 6.)  Certain of the document requests pertained to the MLA Dispute. Folkvang and the Trust have conferred with respect to such requests specifically and a consensual resolution of the MLA Dispute more generally. (Kansa Decl., at ¶ 7.)  Despite the parties' efforts, and Folkvang's voluntary production of certain documents in response to those requests, those

conferrals have not led to a consensual resolution of the MLA Dispute or any of the other open issues between the parties. (*Id.*)

18. On September 18, 2025, after the Trust agreed to extend Folkvang's response deadline, Folkvang provided the Trust with responses to its requests for documents. (Kansa Decl., at ¶ 8.) Folkvang has additionally objected to the relevance of discovery into the MLA on the basis that any MLA-related production of documents or materials, or other activities similar to discovery, should occur in arbitration proceedings in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre, as provided for in the MLA. (*Id.*)

19. The Trust has advised Folkvang that it disagrees with Folkvang's objections to the requested discovery. (Kansa Decl., at ¶ 9.)

20. Folkvang now seeks to enforce the Arbitration Agreement in the MLA and have the MLA Dispute resolved through an arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre. Folkvang plans to assert, among other claims, a claim for a declaration through such arbitration in Singapore. To that end, Folkvang requests that this Court compel arbitration of the MLA Dispute between the Trust and Folkvang in accordance with the MLA.

21. Folkvang further seeks a determination from this Court that it lacks subject matter jurisdiction over the MLA Dispute, and an order that any discovery relating to the MLA Dispute be addressed in arbitration in Singapore rather than in this Court given the Court's lack of subject matter jurisdiction. In the alternative, Folkvang seeks at a minimum an order staying the Trust's discovery requests, pending the resolution of those arbitration proceedings.

22. On November 24, 2025, we requested the Trust agree to arbitrate the MLA Dispute in Singapore in accordance with the Arbitration Agreement, and advised the Trust that we would

seek relief from this Court with respect to such arbitration in the absence of an agreement. The Trust has not responded to that request. (Kansa Decl., at ¶ 10.)

## LEGAL ARGUMENT

23. This Court should grant the Motion because it does not have subject matter jurisdiction over the MLA Dispute. Even if the Court were to find that it had the discretion to exercise jurisdiction over the MLA Dispute, this Court nonetheless should grant the Motion based on the federal policy favoring arbitration of disputes, the parties' specific agreement to arbitrate the MLA Dispute (and the Trust's assumption of that agreement as part of the Debtors' assumption of the MLA), and the efficiencies that come from resolving the MLA Dispute through arbitration.

### A.     This Court Does Not Have Subject Matter Jurisdiction Over the MLA Dispute

24. The Court should grant this Motion because it lacks subject matter jurisdiction over the MLA Dispute. The MLA Dispute is a contract dispute between Folkvang and the Trust. The MLA Dispute does not arise under the Bankruptcy Code and does not involve any provision of the Bankruptcy Code (or U.S. law, for that matter) in its resolution. As a result, the only potential basis on which the Court might have jurisdiction over the MLA Dispute is as a proceeding "related to" a bankruptcy case. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 162-63 (3d Cir. 2004) (to be a core proceeding, a matter must "invoke[] a substantive right provided by title 11" or one that "by its nature, could arise only in the context of a bankruptcy case").

25. The Third Circuit has said that for "related to" jurisdiction to be present following confirmation of a debtor's plan, "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts Int'l, Inc.*, 372 F.3d at 163. The Third Circuit explained further that "at the

7

post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process . . . " *See id.*[6]

26.     The MLA Dispute has neither a close nexus to the Debtors' bankruptcy proceedings nor does it affect any integral aspect of the Debtors' bankruptcy process.  The MLA Dispute is a commercial contract dispute between Folkvang and the Trust that depends on no provision of U.S. bankruptcy law (or any other U.S. law) for its resolution.  Indeed, the MLA states expressly that "[t]his Agreement will be construed and enforced in accordance with the laws of Singapore, without reference to its rules of conflicts of laws." (van Rossum Decl., Ex. A.)  It likewise does not involve "interpretation, implementation, consummation, execution, or administration" of the Debtors' confirmed chapter 11 plan as required by the Third Circuit.  *See id.* at 168-69.

27.     Moreover, the MLA Dispute is simply not intertwined with FTX's restructuring. Pursuant to the October 18, 2022 Variable Interest Term Sheet, the Commitment Amount was ▮▮▮▮▮▮▮▮, which represents the high end of the Trust's potential recovery under the MLA Dispute even if it is entirely successful in such dispute.  That amount, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of the Trust's assets.  *See FTX Recovery Trust Financial Report Q2 2025 (Unaudited)* dated Aug. 15, 2025 (Docket No. 32371) (showing approximately $9.9 billion in assets held by the Trust).

28.     The Debtors have confirmed their chapter 11 plan and elected to have the Trust assume the MLA.  The Trust has accordingly agreed to be bound by all provisions of the MLA, including the Arbitration Agreement.  Granting the request to proceed with arbitration of this

---

[6] Other federal Circuits have adopted similarly restrictive views of a bankruptcy court's jurisdiction post-confirmation. The Fifth Circuit, for example, has stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) (quoting *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001).

matter in Singapore aligns with the governing law of the MLA and the parties' bargain in entering into it. The relief requested in this Motion will allow for resolution of the matter by an arbitrator experienced in applying Singapore law to commercial disputes such as the MLA Dispute, which can likely be done more cost-effectively and efficiently than proceeding before this Court.[7]

29.     The Debtors' Plan also does not provide for jurisdiction over this matter. It is beyond dispute that the Plan cannot confer subject matter jurisdiction where none exists. *See, e.g., In re Coho Energy, Inc.*, 309 B.R. 217, 219-20 (Bankr. N.D. Tex. 2004) ("the retention of jurisdiction provisions of the Plan cannot confer or expand the Court's subject matter jurisdiction"); *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157"). Even if the Trust could overcome that issue, however, the Plan itself contains no provision reserving Bankruptcy Court jurisdiction over the MLA Dispute. The retention of jurisdiction provision of the Plan (section 12.1) instead focuses on the Bankruptcy Court's retention of jurisdiction to address claims against the Debtors (but not those held by the Debtors or the Trust), enforce the terms of the Plan, and otherwise determine "matters that may rise in connection with or relate to the Plan" and its related documents. Plan at § 12.1. None of those provisions, however, provides a plausible basis for the Bankruptcy Court to have or to exercise subject matter jurisdiction over the MLA Dispute, which is unrelated to the Plan or its implementation.

---

[7] The relief sought in this Motion would also address Folkvang's legitimate confidentiality concerns. The Trust has sought wide-ranging discovery from Folkvang regarding the MLA Dispute. The materials requested include non-public financial records and also touch on, among other things, confidential and sensitive trading strategies. Exchanging such information in a confidential arbitration proceeding rather than in this Court will eliminate the need for numerous motions relating to confidentiality or the sealing of pleadings, while better reflecting the parties' expectations under the MLA.

30. Because of these facts, there is no "related to" jurisdiction over the MLA Dispute, and it cannot find a home in this Court. The Court should grant the Motion, and enforce the parties' agreement by compelling the Trust to resolve the MLA Dispute through arbitration.

**B.  The MLA Dispute is a Non-Core Matter and therefore the Court Should Compel Arbitration based on the Federal Policy Favoring Arbitration.**

31. Even if this Court were to determine that it was able to exercise jurisdiction over the MLA Dispute notwithstanding the facts above, it should decline to do so because "[t]he Federal Arbitration Act (the "FAA") established a federal policy favoring arbitration agreements and mandates enforcement of contractual arbitration provisions." *MBNA Am. Bank v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). If there is an issue that is referable to arbitration under an agreement in writing, then Section 3 of the FAA requires any United States court to stay the trial, upon application of one of the parties, until such arbitration occurs in accordance with the terms of the agreement. *See* 9 U.S.C. § 3. The FAA applies to the Arbitration Agreement even though it requires arbitration in a foreign country. *See e.g., Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679 (5th Cir. 1976) (finding that federal action brought by American company would be stayed pending arbitration in Belgium consistent with the arbitration agreement). The Supreme Court has repeatedly advised courts to "rigorously enforce agreements to arbitrate" according to their terms and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

32. Bankruptcy "[c]ourts distinguish between claims over which bankruptcy judges have discretion to refuse arbitration and those that they must send directly to arbitration." *See MBNA Am. Bank*, 436 F.3d at 108. The Court must determine whether the party opposing arbitration has established congressional intent to create an exception to the FAA's mandate. In

the words of the Third Circuit, "[t]o overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between arbitration and the statute's underlying purposes." *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006) (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Without a finding of such congressional intent, the bankruptcy court has no discretion and must enforce an arbitration agreement. *Id.*

33. In light of this case law, the Trust, as the party opposing arbitration, must demonstrate that Congress intended to limit or prohibit the waiver of a judicial forum for a particular claim. *McMahon*, 482 U.S. at 227 ("[t]he burden is on the party opposing arbitration . . . .to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). In order to make this determination, courts often look to determine whether the issue is a core bankruptcy dispute or non-core bankruptcy dispute. *See United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631, 636 (2d Cir. 1999).

34. The Third Circuit has applied the core versus non-core distinction, and has found that if the underlying proceeding involves a debtor-derivative, non-core matter, then the bankruptcy court does not have the authority to deny enforcement of the arbitration clause. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F. 2d 1149, 1155-57 (3d Cir. 1989); *see also Crysen/Montenay Energy v. Shell Oil Co.*, 226 F.3d 160, 165-66 (2d Cir. 2000).

35. A matter falls within a bankruptcy court's "core" jurisdiction if it either invokes a substantive right created by federal bankruptcy law or could not exist outside a bankruptcy case. *See* 28 U.S.C. § 157(b)(2); *see also In re Seven Fields Dev. Corp.*, 505 F.3d 237, 256 (3d Cir.

2007) (claims or causes of action rising out of state law are not "core proceedings" because they do not invoke "a substantial right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). "The rationale for the core/non-core distinction…is that non-core proceedings are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration whereas core proceedings implicate more pressing bankruptcy concerns." *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation)*, 671 F.3d 1011, 1021 (9th Cir. 2011).

36. The MLA Dispute is a breach of contract dispute that did not arise out of the bankruptcy case. *See, e.g., Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant, LLC)*, 2012 Bankr. LEXIS 5338, at *11 (Bankr. D. Del. Nov. 15, 2012) ("claims for breach of contract and unjust enrichment are not capable of arising only in the context of a bankruptcy case."); *see also In re AstroPower Liquidating Trust*, 335 B.R. 309, 323 (Bankr. D. Del. 2005) (holding that breach of contract claims are generally non-core).

37. The MLA Dispute concerns solely the portion of the Commitment Amount (if any) that the Trust (a post-emergence entity) may be entitled to payment of under the MLA. The MLA Dispute does not arise under the Bankruptcy Code nor does it involve bankruptcy-specific issues. Resolution of the MLA Dispute is not dependent upon application of any provision of U.S. bankruptcy law. All of these factors demonstrate that the MLA dispute is non-core, and that the Court must accordingly enforce the arbitration clause in the MLA.

38. Even if that were insufficient, numerous other factors demonstrate further that the Arbitration Agreement should be enforced. The MLA Dispute is properly adjudicated in a Singapore arbitration proceeding, which is better-suited than the Bankruptcy Court to apply the Singapore law governing the MLA and is where Maclaurin bargained for any such disputes to be

addressed. The Trust, moreover, assented to that bargain when it assumed the MLA and agreed to be bound by the provisions thereof. (van Rossum Decl., at ¶¶ 6-7.) Folkvang's founder and Chief Executive Officer, who is the person with the most knowledge of Folkvang's records and the MLA Dispute is based in Singapore. (van Rossum Decl., at ¶ 1.) Indeed, apart from the fact of the Debtors' commencement of their chapter 11 cases in Delaware, there is no nexus between either Delaware or the United States and the MLA Dispute. All of these factors point to the same conclusion: this Court should enforce applicable law and the parties' bargain, and compel arbitration of the MLA Dispute in Singapore.

    C.    **There Are No Countervailing Considerations that Warrant Not Granting the Motion**

39. The Trust will no doubt continue its efforts to resolve matters relating to the Debtors' estates for some time, making it implausible that the arbitration would delay the administration of the estates. Moreover, as noted above, the amount of the MLA Dispute ▮▮▮▮▮▮ is minimal when compared to the value of the Debtors' estates overall. It is unlikely that resolution of the MLA Dispute poses any possibility of materially affecting the Trust's finances or the timing and amount of future distributions.

40. This Court has already relied on similar factors in granting a motion to compel arbitration in Singapore on another dispute involving the Trust. [*See* Order Granting in Part and Denying in Part Cross-Motion of Seth Melamed Seeking to Compel Arbitration, at ECF No. 32058.] The same logic applied by this Court in that matter applies here. Even if the Court determines it has discretion to refuse to enforce the Arbitration Agreement, it should not exercise that discretion and should allow the MLA Dispute to be determined between Folkvang and the Trust in Singapore arbitration as contemplated by the MLA.

**RESERVATION OF RIGHTS**

13

41. This Motion is limited to the grounds stated herein and is without prejudice to the rights of Folkvang or the Folkvang Claim. Folkvang expressly reserves all further substantive and procedural rights.

## CONCLUSION

42. WHEREFORE, Folkvang respectfully requests that the Court enter an order (a) granting the Motion; (b) compelling the Trust to arbitrate the MLA Dispute in accordance with the terms of the MLA; and (c) providing such other relief as is just and proper.

[SIGNATURE ON FOLLOWING PAGE]

| | |
|---|---|
| Dated: November 26, 2025<br>Wilmington, Delaware | **BARNES & THORNBURG LLP**<br><br>*/s/ Amy E. Tryon*<br>Mark R. Owens (DE No. 4364)<br>Amy E. Tryon (DE No. 6945)<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3434<br>Email: Mark.Owens@btlaw.com<br>Email: Amy.Tryon@btlaw.com<br><br>Kenneth P. Kansa (*pro hac vice*)<br>Paige Lohse (*pro hac vice*)<br>One N. Wacker Drive, Suite 4400<br>Chicago, IL 60606-2833<br>Telephone: (312) 214-4583<br>Email: KKansa@btlaw.com<br><br>Leah Anne O'Farrell (*pro hac vice*)<br>One Marina Park Drive, Suite 1530<br>Boston, MA 02210<br>Telephone: (781) 888-1516<br>Email: LOFarrell@btlaw.com<br><br>*Counsel for Folkvang Ltd.* |