**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date:  December 18, 2025 at 9:30 a.m. (ET)<br>Obj. Deadline:  December 10, 2025 at 4:00 p.m. (ET) |

**FTX RECOVERY TRUST'S OPPOSITION TO THE MOTION OF
FOLKVANG LTD. TO COMPEL ARBITRATION
<u>WITH RESPECT TO MASTER LOAN AGREEMENT</u>**

1.  By its motion, Folkvang Ltd. ("<u>Folkvang</u>") seeks improper "authorization" to initiate arbitration with respect to a manufactured dispute, thereby short-circuiting an orderly claims resolution process.  While stylized as a motion to compel arbitration, Folkvang in fact requests relief that exceeds any request to enforce arbitration on an unripe issue; Folkvang again seeks to evade inquiry into the extensive financial entanglements between Folkvang and Alameda Research Ltd. ("<u>Alameda</u>") and its affiliates.

2.  Folkvang's latest motion is *its third attempt* to obtain relief wholly out of turn. *First*, Folkvang sought authorization to forcibly repurchase the Trust's equity stake in Folkvang—an extraordinary attempt to strip the estate of its ownership interest through a shareholder action engineered by Folkvang's principal.  When the Trust sought discovery into this gambit, Folkvang abruptly withdrew the motion rather than permit even basic scrutiny into its actions.  *Then*, Folkvang asked the Court to accelerate the adjudication of the claim Folkvang has filed in these

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of post-effective date debtor entities in these chapter 11 cases, a complete list of the post-effective date debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the FTX Recovery Trust's claims and noticing agent at https://cases.ra.kroll.com/FTX.

Chapter 11 cases, insisting that the Trust be forced to assess Folkvang's claim immediately. The Court correctly rejected that effort, granting the Trust's request for an extension of the claims objection deadline. *Now*, mere days after the Court overruled Folkvang's objection, Folkvang repackages its request as a motion to "compel arbitration" with respect to an investment agreement between the parties.

3.    The relief Folkvang seeks would upend the orderly claims resolution process and preempt the very discovery that this Court has repeatedly recognized as fundamental to the Trust's ability to investigate, evaluate, and object to claims. With no ripe dispute and no litigation pending concerning the agreement, Folkvang asks this Court to declare—prospectively and abstractly—that an imagined "MLA Dispute" must be construed as a breach of contract and arbitrated, and to stay *all* discovery in the meantime with respect to that agreement. But the Court lacks Article III jurisdiction to address this hypothetical "dispute" at this stage, and arbitration now would conflict with the claims allowance process.

4.    Folkvang's serial efforts to manufacture a controversy, circumvent the claims administration process, and evade Rule 2004 discovery cannot be rewarded. Its motion should be denied in its entirety.

## BACKGROUND

5.    On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].

6.    On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"),

and on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404].

7. On January 3, 2025, the effective date of the Plan occurred, which, among other things, established the FTX Recovery Trust and transferred, assigned, and vested all of the Debtors' assets in the FTX Recovery Trust. *See Notice of Effective Date of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

8. Beginning in late 2019, the Debtors, at the behest of Samuel Bankman-Fried ("Bankman-Fried"), helped launch and grow Folkvang, a cryptocurrency trading firm founded by Michael Laurens van Rossum ("van Rossum"), a professional associate of Bankman-Fried. The connections between the Debtors and Folkvang were extensive from day one—not only was Alameda Folkvang's first (and even today, only) outside investor, but Alameda and Bankman-Fried were even responsible for helping structure and incorporate Folkvang's original corporate entity in Panama, and for helping van Rossum get Folkvang up and running.

9. During the years leading up to the Petition Date, Folkvang—with extensive ongoing assistance from the Debtors and Bankman-Fried—continued to grow, with Folkvang at one point claiming to have more than $400 million in assets. In 2021, Folkvang repurchased a portion of Alameda's equity stake in a transaction valuing Folkvang at $100 million, leaving Alameda with a 15% equity stake in Folkvang (the "Folkvang Equity"). The Debtors also made other investments in and loans to Folkvang, including: (1) an additional investment by Alameda into a cryptocurrency "pool" managed by Folkvang pursuant to a Master Loan Agreement (the "MLA Agreement"), with Alameda's investment valued in excess of $9 million in the days leading

up to the Petition Date (the "Pool Investment"); and (2) a $1 million loan from Debtor Maclaurin Investments Ltd. to Folkvang pursuant to a Loan and Security Agreement (the "LSA").

10. Folkvang also maintained an FTX.com customer account, which as of the Petition Date had a nominal balance of $26 million, a portion of which consists of the Alameda proceeds of the LSA loan as well as other assets transferred by the Debtors to Folkvang pre-petition (the "Folkvang Account"). Folkvang has filed a customer claim related to the Folkvang Account (the "Folkvang Claim").

11. Despite repeated requests spanning many months, Folkvang refused to provide even basic financial information about the Pool Investment, stating without explanation or any support that the Pool Investment somehow became worthless as a result of these Chapter 11 Cases.

12. Following months of efforts to obtain information regarding the Pool Investment (as well as the Folkvang Equity, the LSA, and the other relationships between Folkvang and the pre-petition Debtors), Folkvang on April 1, 2025, informed the Trust that it had scheduled a purported "general meeting" during which Folkvang's shareholders—van Rossum (85%) and Alameda (15%)—would "vote" on a proposal that purported to give Folkvang's two directors— van Rossum and one of van Rossum's long-time colleagues and friends—authority to cause Folkvang to unilaterally "repurchase" Alameda's Folkvang Equity at *whatever price the directors decided to pay*. The Trust declined to engage in Folkvang's sham process and, unsurprisingly, Folkvang has claimed that van Rossum's 85% vote carried the day.

13. Notwithstanding Folkvang's egregious and transparently bad-faith actions, the Trust continued to engage with Folkvang regarding a potential resolution of these outstanding issues. On June 2, 2025, apparently dissatisfied with the Trust's unwillingness to accede to Folkvang's demands, Folkvang filed a motion that sought this Court's authorization to (i) bless

Folkvang's compulsory repurchase of Alameda's Folkvang Equity at a price to be determined unilaterally by Folkvang; (ii) rewrite the LSA to allow Folkvang to avoid paying any accrued interest, while simultaneously giving Folkvang credit for post-petition interest on the portion of the assets in the Folkvang Account that represented the LSA proceeds; and (iii) allow Folkvang to "repurchase" Alameda's Folkvang Equity and "repay" the LSA not by actually repurchasing or repaying anything, but rather by way of a setoff against the Folkvang Claim regarding the Folkvang Account [D.I. 30579].

14. After the Trust served discovery requests on Folkvang and van Rossum in connection with that motion [D.I. 31991], Folkvang subsequently withdrew its motion [D.I. 32095], stated that it was no longer seeking to forcibly repurchase the Folkvang Equity, and asserted that by withdrawing the motion, Folkvang and van Rossum were not obligated to respond to the discovery requests that the Trust had served in connection with Folkvang's motion.

15. On August 8, 2025, as required by Local Rule 2004-1, the Trust served proposed discovery requests on Folkvang. The Trust and Folkvang have had several meet and confers regarding these discovery requests, and although Folkvang has to date provided some limited information, it has continued to delay and raise meritless objections to the Trust's requests. Nevertheless, this process remains ongoing, and Folkvang has stated that it expects to provide further information in response to the Trust's requests.

16. On November 3, 2025, the Trust filed the *Motion of the FTX Recovery Trust for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline* [D.I. 33444]. On November 13, Folkvang filed its *Limited Objection of Folkvang Ltd. to Motion of the FTX Recovery Trust for Entry of an Order Extending (I) the Claims Objection Deadline and (II) the Administrative Claims Objection Deadline* [D.I. 33574] seeking

an earlier resolution of the Folkvang Claim and asserting that the Trust had not demonstrated cause for an extension for "specific issues" or any "basis on which it is refusing to make distributions" on the Folkvang Claim. On November 19, 2025, the Trust opposed Folkvang's objection, noting: "The FTX Recovery Trust's ongoing investigation is part of its good-faith reconciliation process, and based on that investigation, the FTX Recovery Trust expects that it may, among other things, object to Folkvang's Claim in due course." [D.I. 33691].

17.     On November 24, 2025, the Court granted the Trust's extension of the claims objection deadlines [D.I. 33890]. Just two days later, Folkvang filed its *Motion of Folkvang Ltd. to Compel Arbitration with Respect to Master Loan Agreement* [D.I. 33914] (the "Motion").

**JURISDICTION AND VENUE**

18.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**ARGUMENT**

**I.    THE COURT LACKS ARTICLE III JURISDICTION TO ADJUDICATE THE MOTION AND GRANT THE REQUESTED RELIEF.**

19.     In seeking to compel arbitration before any litigation over the Folkvang Claim has commenced, Folkvang invents its own "MLA Dispute" in an attempt to manufacture an arbitrable issue. Mot. ¶ 14. According to Folkvang, because the Debtors and Folkvang maintained an agreement pursuant to which Folkvang was responsible for estate assets, the only cause of action that could accrue with respect to that agreement is one for a breach of contract. But no such dispute currently exists or is ripe, and this Court therefore lacks jurisdiction to adjudicate the motion.

20. It is black-letter law that a claim is ripe when it is fit for judicial decision, and if withholding consideration would constitute a hardship. *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 149 (1967). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum* v. *City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (internal citation omitted).

21. Folkvang asserts in conclusory fashion that the "MLA Dispute is a breach of contract dispute that did not arise out of the bankruptcy case," and that the "MLA Dispute does not arise under the Bankruptcy Code nor does it involve bankruptcy-specific issues." Mot. ¶ 37. But Folkvang argues a strawman, and should not be permitted to limit how the Trust may ultimately formulate any cause of action or claim objection with respect to the MLA Agreement. *Cf. DiAnoia's Eatery, LLC* v. *Motorists Mut. Ins. Co.*, 10 F.4th 192, 204 (3d Cir. 2021) ("The plaintiff, as master of the complaint, may make a genuine choice" as to what relief it seeks).

22. The MLA Agreement could (and likely will) implicate issues arising under the Bankruptcy Code, including with respect to the Folkvang Claim. The Trust continues to investigate the circumstances surrounding the Debtors' pre-petition relationships and investments with Folkvang, as well as the disposition and outcome of those investments, including by seeking Rule 2004 discovery of Folkvang. It would be entirely premature at this stage and on this record to conclude that the MLA Agreement presents *no* justiciable bankruptcy issues and that this Court therefore lacks subject matter jurisdiction with respect to any potential causes of action or other issues related to the MLA Agreement. Folkvang asserts the "MLA Dispute" solely to trigger arbitration—but this is exactly the sort of abstract disagreement the Supreme Court and the Third Circuit have held are non-justiciable. *Peachlum* v. *City of York,* 333 F.3d 429, 433 (3d Cir. 2003)

(ripeness requires that a "dispute is sufficiently concrete"); *Presbytery of N.J. of Orthodox Presbyterian Church* v. *Florio,* 40 F.3d 1454, 1463 (3d Cir. 1994) (ripeness requires "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (quoting *North Carolina* v. *Rice*, 404 U.S. 244, 246 (1971)).

23. Folkvang's attempt to sidestep discovery into the Folkvang Claim and Folkvang's relationship with the pre-petition Debtors is particularly inappropriate here, where the Court recently granted the Trust (over Folkvang's objection) an extension of time to continue to review and analyze the thousands of outstanding claims in these Chapter 11 Cases. Accordingly, to adjudicate the Motion now—thereby determining that the MLA Agreement may *only* give rise to a breach of contract claim subject to arbitration—would be to render an advisory opinion on the scope of a precocious issue involving an agreement the Trust continues to investigate. When ripeness "implicates the possibility of [a court] issuing an advisory opinion, [it] is a question of subject matter jurisdiction under the case-or-controversy requirement." *Wisconsin Cent., Ltd.* v. *Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). The Court should abstain from any decision with respect to the MLA Agreement at this premature stage and deny the Motion.

24. Moreover, despite characterizing the Motion as one to compel arbitration, Folkvang seeks relief that substantially exceeds the scope of such a motion. Folkvang requests "a determination from this Court that it lacks jurisdiction over the MLA Dispute" and "an order that any discovery relating to the MLA Dispute be addressed in arbitration in Singapore." Mot. ¶ 21. In the alternative, Folkvang "seeks at a minimum an order staying the Trust's discovery requests, pending the resolution of those arbitration proceedings." Mot. ¶ 21. But the Court also lacks the ability to adjudicate these additional requests for relief. Folkvang cites *no* authority whatsoever

-8-

for this Court's ability to declare that the Court lacks jurisdiction over a hypothetical dispute between parties, or enjoin the Trust from seeking discovery pursuant to Rule 2004 in the future. *See Texas* v. *United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks omitted); *Wyatt, V.I., Inc.* v. *Government of Virgin Islands*, 385 F.3d 801, 805-06 (3d Cir. 2004) (federal court may only grant declaratory relief when there is a justiciable controversy); *see also In re Brier Creek Corp. Ctr. Assocs. Ltd.*, 486 B.R. 681, 689 (Bankr. E.D.N.C. 2013) ("A request for an injunction pursuant to the court's powers under § 105 must ordinarily be made by filing an adversary proceeding").[2]

## II. EVEN IF THE COURT COULD ADJUDICATE THE MOTION, THE COURT SHOULD DECLINE TO COMPEL ARBITRATION AT THIS STAGE.

25. Even if this Court did have subject matter jurisdiction to adjudicate the motion, the Court should in its discretion decline to compel arbitration at this stage. A premature decision on arbitrability would conflict with the Trust's efforts to evaluate and determine any claim objections under the Bankruptcy Code, even if those claim objections could ultimately require the consideration of non-bankruptcy law. *See In re: Yellow Corp.*, 2024 WL 1313308, at *1, *6 (Bankr. D. Del. Mar. 27, 2024). Notwithstanding an otherwise potentially applicable arbitration provision, bankruptcy courts may decline to compel arbitration where there is an "inherent conflict between arbitration and the [Bankruptcy Code's] underlying purposes." *Shearson/Am. Express, Inc.* v. *McMahon*, 482 U.S. 220, 227 (1987). "The Supreme Court has made clear that the claims allowance process is at the heart of a bankruptcy court's jurisdiction over the property of the bankruptcy estate." *In re Yellow Corp.*, 2024 WL 1313308, at *10; *see In re Bencharsky*, 2010

---

[2] Indeed, there is no "case" yet to stay with respect to any discovery. Folkvang has voluntarily produced documents pursuant to the Trust's Local Rule 2004-1 letter.

WL 309145, at *1 (Bankr. N.D. Cal. Jan. 19, 2010) ("[T]he proof of claim changes everything."). Courts have thus repeatedly declined to compel arbitration of claim disputes. *See, e.g.*, *In re Yellow Corp.*, 2024 WL 1313308, at *7; *In re Penson Worldwide*, 587 B.R. 6, 12–13 (Bankr. D. Del. 2018); *In re APF Co.*, 264 B.R. 344, 364 (Bankr. D. Del. 2001).

26. The MLA Agreement forms only part of the Trust's potential objections to the Folkvang Claim, and adjudicating the Motion now by determining a hypothetical issue about the applicability (or not) of the MLA Agreement would require this Court to adjudicate a hypothetical dispute. Indeed, "particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve [] fundamental Bankruptcy Code issues." *In re APF Co.*, 264 B.R. 344, 364 (Bankr. D. Del. 2001).

27. Moreover, the Trust's discovery of Folkvang pursuant to Rule 2004 is manifestly a "core" Bankruptcy matter which would not be subject to any arbitration agreement. *In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 30662, at *9 (S.D.N.Y. May 16, 2006). On August 8, 2025, the Trust served proposed discovery requests on Folkvang pursuant to Local Rule 2004-1(a). The Trust has attempted to meet and confer with Folkvang regarding a mutually agreeable scope of examination and production before seeking leave of this Court to issue a formal subpoena pursuant to Rule 2004, which the Trust anticipates it will seek, if necessary, after further attempts to resolve Folkvang's remaining objections.

28. Bankruptcy Rule 2004(a) provides that "[o]n a party in interest's motion, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The general purpose of a Rule 2004 examination is to "discover the nature and extent of the bankruptcy estate," for the legitimate goals of "discovering assets, examining transactions, and determining whether

wrongdoing has occurred." *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (internal quotation marks and citations omitted). An examination under Rule 2004 may be made of any entity with knowledge of "the debtor's acts, conduct, or property or to the liabilities and financial condition," or to "any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge [and] any other matter relevant to the case." *See* Fed. R. Bankr. P. 2004(b). Generally, the scope of a Rule 2004 examination available is "unfettered and broad" and has been equated with a "fishing expedition." *See In re Wash. Mut., Inc.*, 408 B.R. at 49-50 (Bankr. D. Del. 2009) (internal quotation marks and citations omitted). Notably, discovery under Bankruptcy Rule 2004 is "broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002).

29. It is exactly this "broad and unfettered nature" of a Rule 2004 discovery request that Folkvang seeks to avoid by its Motion to Compel Arbitration. *See* Mot. ¶ 28 n.7. But the breadth of the Trust's requests pursuant to Rule 2004 do not put them outside the scope of the Bankruptcy Court. Nor does Folkvang's argument that "any MLA-related production of documents or materials, or other activities similar to discovery, should occur in arbitration proceedings in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre, as provided for in the MLA." Mot. ¶ 18. It is black-letter law that any examination pursuant to Rule 2004 is "aimed at discovering evidence upon which future causes of action may be based and is therefore governed by bankruptcy law rather than state substantive law." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 623 n.42 (Bankr. D. Del. 2016) (internal citation omitted). The Court should not speculate at this stage what cause of action examination could reveal, and in which tribunal that action may be heard. *In re Millennium Lab*

*Holdings II, LLC*, 562 B.R. at 623 ("As numerous courts have recognized when presented with a Rule 2004 motion, there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core.") (internal quotation marks and citations omitted). For that reason, this Court has previously granted Rule 2004 discovery even over objections that an arbitration clause would arguably govern any eventual dispute. *Id*. at 631; *see also In re Friedman's, Inc.*, 356 B.R. 779, 783 (Bankr. S.D. Ga. 2005). In other words, the applicability of arbitration to a future, hypothetical disagreement that discovery could reveal is not mutually exclusive with the Trust's ability to conduct discovery into related issues before this Court now.

30. At bottom, there simply is not yet anything to arbitrate nor anything for this Court to compel to arbitration. Folkvang's motion is an impermissible effort to short-circuit the Trust's ongoing investigation and the appropriate claims resolution process and evade discovery to which the Trust is entitled under the Bankruptcy Rules.

## **CONCLUSION**

For the reasons stated above, the Motion should be denied.

| | |
|---|---|
| Dated: December 10, 2025<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br> /s/ Kimberly A Brown <br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>　　　　brown@lrclaw.com<br>　　　　pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: gluecksteinb@sullcrom.com<br>　　　　crokej@sullcrom.com<br><br>*Counsel for the FTX Recovery Trust* |