EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
|  | . |
|  | . Case No. 22-11068 (KBO) |
| FTX TRADING LTD, et al, | . |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
| Debtors. | . |
| . . . . . . . . . . . . . . . | . Tuesday, January 20, 2026 |
| FTX RECOVERY TRUST, | . |
| Plaintiff, | . |
| vs. | . Adv. Proc. No. 24-50188(KBO) |
|  | . |
| FORIS DAX MT LTD., FORIS DAX | . |
| ASIA PTE. LTD., FORIS DAX, | . |
| INC., and IRON BLOCK CAPITAL, | . |
|  | . |
| Defendants. | . |
| . . . . . . . . . . . . . . . | . |
|  |  |
| FTX RECOVERY TRUST, | . |
| Plaintiff, | . |
| vs. | . Adv. Proc. No. 24-50212(KBO) |
|  | . |
| THE GOODLY INSTITUTE | . |
| d/b/a GOODLY LABS, | . |
|  | . |
| Defendant. | . |
| . . . . . . . . . . . . . . . | . |

(Continued)

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE KAREN B. OWENS
CHIEF UNITED STATES BANKRUPTCY JUDGE

Audio Operator:          Electronically Recorded
                         by Jadon Culp, Esq.

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
FTX RECOVERY TRUST,                     .
                      Plaintiff, .
          vs.                           .  Adv. Proc. No. 24-50214(KBO)
                                        .
MANIFOLD MARKETS, INC.,                 .
MANIFOLD FOR CHARITY, INC.,             .
ROSS RHEINGANS-YOO, and FTX             .
PHILANTHROPY, INC.,                     .
                                        .
                      Defendants. .
. . . . . . . . . . . . . . . .         .
FTX RECOVERY TRUST,                     .
                      Plaintiff, .
          vs.                           .  Adv. Proc. No. 25-50635(KBO)
                                        .
KUROSEMI INC.,                          .
                      Defendant. .
. . . . . . . . . . . . . . . .         .
MORGAN AND MORGAN CLAIMANTS,            .
                                        .
                      Plaintiff, .
          vs.                           .  Adv. Proc. No. 25-50962(KBO)
                                        .
FTX TRADING LTD.,                       .
                      Defendant. .
. . . . . . . . . . . . . . . .         .
FTX RECOVERY TRUST,                     .
                      Plaintiff, .
          vs.                           .  Adv. Proc. No. 25-52195(KBO)
                                        .
RYAN SALAME and MICHELLE                .
BOND,                                   .
                      Defendants. .
. . . . . . . . . . . . . . . .         .
FTX RECOVERY TRUST,                     .
                      Plaintiff, .
          vs.                           .  Adv. Proc. No. 25-52358(KBO)
                                        .
GENESIS DIGITAL ASSETS                  .
LIMITED, GDA US INC., DDH               .
(NORTH AMERICA) INC.,                   .
DDH-CHOLLA, LLC, DDH-OK-1,              .
LLC, RASHIT MAKHAT, and MARCO .
KROHN,                                  .
                      Defendants. .
. . . . . . . . . . . . . . . .         .
```

APPEARANCES:

| | |
|---|---|
| For the FTX Recovery Trust: | Matthew B. McGuire, Esq.<br>Howard W. Robertson, Esq.<br>LANDIS, RATH & COBB, LLP<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19899 |
| | Brian D. Glueckstein, Esq.<br>SULLIVAN & CROMWELL, LLP<br>125 Broad Street<br>New York, New York 10004 |
| For the U.S. Trustee: | Benjamin Hackman, Esq.<br>OFFICE OF THE U.S. TRUSTEE<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801 |
| For Ross Rheingans-Yoo: | Michael J. Joyce, Esq.<br>THE LAW OFFICES OF JOYCE, LLC<br>1225 King Street, Suite 800<br>Wilmington, Delaware 19801 |
| | Scott D. Simon, Esq.<br>GOETZ PLATZER, LLP<br>One Penn Plaza, Suite 3100<br>New York, New York 10119 |
| For Seth Melamed: | Kate Roggio Buck, Esq.<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 North King St., 8th Floor<br>Wilmington, Delaware 19801 |

INDEX

PAGE

FTX Recovery Trust's Motion for Reconsideration or to
Modify Order Allowing Rheingans-Yoo's FDU Claim
[D.I. 31846, filed on July 23, 2025]
-and-
Ross Rheingans-Yoo's Motion to Dismiss - [FTX Recovery
Trust v. Manifold Markets, Inc. et al., Adv. No.
24-50214 - Adv. D.I. 61, filed on September 26, 2025]
-and
Ross Rheingans-Yoo's Motion for Sanctions Under Federal
Rule of Bankruptcy Procedure 9011, 28 U.S.C. § 1927
and 11 U.S.C. § 105 [D.I. 32780 & FTX Recovery Trust v.
Manifold Markets, Inc. et al., Adv. No. 24-50214 -
Adv. D.I. 60, filed on September 26, 2025]

Argument by Mr. Glueckstein                        6
Argument by Mr. Simon                             11
Further Argument                                  17
Court Decision                                    21

1       (Proceedings commence at 9:33 a.m.)

2       (Call to order of the Court)

3           THE COURT:  Good morning.  Nice to see you all.

4   Please be seated.

5           Mr. Glueckstein.

6           MR. GLUECKSTEIN:  Good morning, Your Honor.

7           THE COURT:  Good morning.

8           MR. GLUECKSTEIN:  It's nice to see you.  Brian

9   Glueckstein, Sullivan & Cromwell, for the FTX Recovery Trust.

10          Your Honor, I'm pleased to report that we have been

11  able to resolve virtually everything that was on the agenda

12  today, one way or another, either permanently or moved it off

13  of today, other than three matters that remain on the agenda

14  that relate to the six-hundred-and-fifty-thousand-dollar

15  claim of Ross Rheingans-Yoo.

16          And if it pleases the Court, I would propose, this

17  morning, to briefly address the trust's motion for

18  reconsideration, after which the parties can address the

19  defendant's motion to dismiss in the adversary proceeding.

20          THE COURT:  Okay.

21          MR. GLUECKSTEIN:  And then we can certainly address

22  any issues or questions the Court has with respect to the

23  sanctions motion that's pending, as well.

24          THE COURT:  Okay.  Why don't we give them a moment

25  to get set up at counsel's table then.

1          The issues seem to be intertwined, so I'll defer to

2     you on your method of presentation, although everything seems

3     to be overlapping.

4          MR. GLUECKSTEIN:  They are certainly related, Your

5     Honor.  I think there are certainly different issues

6     presented by the motion to dismiss, but they are absolutely

7     all related matters.

8          THE COURT:  Okay.

9          MR. GLUECKSTEIN:  Your Honor, with respect to the

10     trust's motion for reconsideration, which we do believe

11     presents slightly different issues at least than those

12     addressed in our amended complaint, which we'll address in

13     connection with the motion to dismiss, with respect to the

14     motion for reconsideration, we have set out our position in

15     our papers, which we believe is relatively straightforward,

16     so I will just address it briefly.

17          Your Honor, the Court -- at the hearing last June,

18     the -- during the back-and-forth with respect to the question

19     of whether to allow Mr. Rheingans-Yoo's claim, the Court did

20     express concern at that hearing that he had not designated a

21     beneficiary of the claim, but nonetheless allowed it, based,

22     in part, on the representations by Mr. Rheingans-Yoo's

23     counsel that he did not seek the claim for himself or for any

24     purpose other than his charitable intentions.

25          The record of that hearing and the plain language

1  of the order allowing the claim are also clear that the

2  rights of the trust to object to the designated beneficiary

3  were reserved, as was the trust's rights to seek to avoid the

4  obligation that was incurred by Alameda in the first place,

5  the latter being what is addressed in the amended complaint

6  and we'll be discussing later this morning.

7        THE COURT:  Do you have the order, so I can take a

8  look at it?

9        MR. GLUECKSTEIN:  I do, Your Honor.

10        THE COURT:  Or point me where it would be in the

11  record.

12        MR. GLUECKSTEIN:  Your Honor, it's Docket 31312.

13        THE COURT:  31312?  Okay.

14        MR. GLUECKSTEIN:  Yes, Your Honor.  Does the Court

15  need a copy?

16        THE COURT:  I'd like one if you have one.  The

17  docket is --

18        MR. GLUECKSTEIN:  I'm just trying to find one that

19  doesn't have my marking on it.

20        THE COURT:  The docket is bordering on unhelpful

21  these days, so, if you have a hard copy.

22        MR. GLUECKSTEIN:  It is.  There are quite a few

23  items that are constantly being filed.

24     (Pause in proceedings)

25        MR. GLUECKSTEIN:  I'm happy to give you my copy,

1    Your Honor.

2              THE COURT:  Sure.

3              MR. GLUECKSTEIN:  It has some straight highlighting

4    on it, if that's okay, but ...

5              THE COURT:  It's fine.

6         (Pause in proceedings)

7              THE COURT:  Okay.  You can have this back if you'd

8    like to work off of it.

9              MR. GLUECKSTEIN:  Yes.

10        (Pause in proceedings)

11             MR. GLUECKSTEIN:  Your Honor, it was only after the

12   Court's decision did Mr. Rheingans-Yoo notify the trust that

13   he had designated -- that he had designated Manifold for

14   Charity as the beneficiary of the claim.  Manifold for

15   Charity is the charitable arm of Manifold Markets, an entity

16   against which the trust had already been litigating to

17   recovery fraudulent transfer -- various fraudulent transfers

18   since November of 2024.

19             This Court has wide discretion to grant

20   reconsideration and hold further proceedings if the equities

21   support that it do so.  The trust admits, as detailed in our

22   papers, that both new evidence has become available and, as a

23   result of these facts, there's a need to prevent manifest

24   injustice when there -- only one of which is required to

25   obtain reconsideration under Rule 59.

1            The designation of the claim beneficiary after the

2      hearing occurred and the order was entered led to the

3      revelation of numerous new and, by definition, unavailable

4      facts as they relate to the claim at issue.

5            Most critically, Mr. Rheingans-Yoo's counsel

6      acknowledged to the trust that the six-hundred-and-fifty-

7      thousand-dollar donation would be deposited into Mr.

8      Rheingans-Yoo's own account at Manifold for Charity, contrary

9      to the representations made at the June hearing, which

10     confirmed the trust's concerns about Manifold for Charity

11     being the designee.

12           In addition, Mr. Rheingans-Yoo sits on the board of

13     this entity and is permitted to be compensated for that

14     service.  We detail some other facts in our papers, including

15     some involvement of Mr. Nishad Singh with the entity, who

16     pleaded guilty to six felony counts for fraud and conspiracy

17     in connection with the FTX fraud, which raises serious

18     concerns for the trust.

19           AUTOMATED VOICE:  You are unmuted.

20           MR. GLUECKSTEIN:  As a result, the trust believes

21     that the designation of Manifold for Charity must now be

22     evaluated in the larger context of these Chapter 11 cases.

23           Contrary to the arguments in the opposition, the

24     trust is not seeking to reargue the Court's determination at

25     the June hearing, but rather is seeking a reconsideration of

1      the order, so that this newly learned information can be

2      presented to the Court.

3          Moreover, the trust believes that the continued

4      allowance of the claim and payment to Manifold for Charity

5      with trust assets would be manifestly unjust, given the

6      significant efforts by the trust that it has undertaken to

7      recover fraudulent transfers to questionable charities as

8      benefactors of Mr. Bankman-Fried's scheme that has been

9      detailed throughout the three-year history of these cases,

10     including the Manifold Markets, who currently was and remains

11     a defendant in an adversary proceeding brought by the trust.

12         Finally, if Your Honor is not inclined to

13     reconsider the claims allowance in its entirety, as we

14     request in our papers, we do ask, in the alternative, that

15     the order be modified to defer distributions on the claim

16     until after the adversary proceeding is resolved.  Of course,

17     that adversary proceeding is seeking to avoid the obligation

18     that led to the allowance of the claim.  This will ensure the

19     trust will not have to seek to recover distributions that it

20     might have made on account of the claim, in the event that

21     the obligation to pay is ultimately avoided as a fraudulent

22     transfer.

23         Happy to answer any questions, but I will otherwise

24     rest on our papers with respect to this motion.

25         THE COURT:  Okay.  Thank you.

1          MR. GLUECKSTEIN:  Thank you, Your Honor.

2          MR. SIMON:  Good morning, Your Honor.

3          THE COURT:  Good morning.  Nice to see you again.

4          MR. SIMON:  You, too.

5          Scott Simon, Goetz Platzer, counsel for Ross

6     Rheingans-Yoo.

7          It is well settled that motions for reconsideration

8     are not an opportunity to re-litigate a case.  That the trust

9     is trying to re-litigate this case and the allowance of

10    Ross's claim is not an argument; the trust admits it by

11    saying the FDU claim, quote, "never should have been allowed

12    in the first place," and that the Court wrongly held that the

13    FDU bonus was Ross' compensation.

14         These admissions alone should be fatal to the

15    motion because they demonstrate that the trust is moving for

16    reconsideration to get a second bite at the apple.  As a

17    matter of bankruptcy procedure, this isn't allowed.

18         But the motion's merits also fail.  Courts grant

19    consideration -- reconsideration where the movant shows newly

20    discovered evidence that would have changed the prior

21    outcome.  The prior outcome here was the Court holding that

22    Ross had standing to assert his claim and that he timely

23    accepted it by filing a proof of claim before the bar date.

24    These are the two issues that the Court asked -- or excuse me

25    -- that the trust asked the Court to adjudicate in connection

1    with the objection to claim.

2          The identity of the charitable recipient does not

3    and cannot affect whether Ross had standing or timely

4    accepted the bonus.  The trust knows this.  It makes no

5    attempt to explain why Ross selecting Manifold for charity is

6    germane to standing or timeliness.  Instead, the trust relies

7    entirely on the manifest injustice element of reconsideration

8    found in Rule 59.  The trust's reliance on manifest injustice

9    is misplaced.

10         Ross designating Manifold for charity does not come

11   close to the Court's standing for finding manifest injustice.

12   The case that the trust cited to define "manifest injustice"

13   offered as example a defendant's guilty plea that is

14   involuntary or based on a plea agreement that the

15   prosecutions rescinds.  It's not demonstrated by

16   disappointment of the losing party.  Manifest injustice is

17   the wholesale disregard, misapplication, or failure to

18   recognize controlling precedent.  That's the case that they

19   cited, Your Honor.

20         The trust does not even try to fit Ross' selection

21   of Manifold for charity into its own motion's framework for

22   finding manifest injustice.  After criticizing the Court's

23   June 2025 ruling that Ross had standing and timely accepted

24   the bonus, the trust identifies no disregard or

25   misapplication of controlling precedent.  Instead, the trust,

1    as counsel just said, raises its, quote, "significant efforts

2    to recover fraudulent transfers from other charities," and

3    quote, "the context of these Chapter 11 cases."

4         So now we go back to the basics.  A motion for

5    reconsideration must be based, as counsel said, upon new

6    evidence.  The trust's concerns about avoiding FTX donations

7    to other EA charities and the all-encompassing context of

8    this case would apply to any EA charity that Ross designated,

9    not just Manifold for Charity.

10         If the trust were truly concerned about Ross

11    donating to, quote, "outposts for Bankman-Fried's effective

12    altruist associates," well, that evidence existed long before

13    the June 2025 objection to claim hearing.  That evidence

14    object -- existed before the trust even filed its October

15    2023 objection to Ross' claim.  That Ross would designate an

16    EA charity is not newly discovered evidence.  Indeed, it was

17    required by the bonus memo.

18         Now the trust tries to find fault with Manifold for

19    Charity itself.  Counsel just mentioned Nishad Singh, who was

20    involved in the underlying FTX fraud.  The debtor claimed in

21    its motion that the trust -- excuse me -- that Mr. Singh

22    works at Manifold for Charity, and that's false.  Mr. Singh

23    was not working for Manifold for Charity when Ross designated

24    it.  He had a trial position in connection with his plea

25    agreement.

1            THE COURT:  Can I ask you one question?

2            MR. SIMON:  Of course.

3            THE COURT:  I'm sorry to interrupt.

4            MR. SIMON:  Please.

5            THE COURT:  Does your client still wish to re-

6    designate the charity?

7            MR. SIMON:  Yes, Your Honor.

8            THE COURT:  Okay.

9            MR. SIMON:  I mean, I was getting to that.

10            THE COURT:  I'd like to just get to that --

11            MR. SIMON:  Okay.

12            THE COURT:  -- if I may because I really am

13    frustrated at where we are, and I'd like to know why he just

14    can't re-designate the charity.  So can you tell me what the

15    name of the charity is --

16            MR. GLUECKSTEIN:  Yes.

17            THE COURT:  -- that he would --

18            MR. SIMON:  It is called --

19            THE COURT:  -- like to re-designate?

20            MR. SIMON:  -- One Day Sooner.

21            THE COURT:  Okay.  Can you tell me a little bit

22    about that charity, to the extent --

23            MR. SIMON:  I can.

24            THE COURT:  -- that you know?

25            MR. SIMON:  I'm sorry?

1    THE COURT:  To the extent you know --

2    MR. SIMON:  Yeah.

3    THE COURT:  -- could you just --

4    MR. SIMON:  And --

5    THE COURT:  -- walk me through that?

6    MR. SIMON:  -- Mr. Rheingans-Yoo is here in the

7    courtroom, he is -- having designated -- having donated many

8    thousands of dollars to that charity, he may be better

9    positioned to explain what it does.

10   But my understanding is that it is an effective

11   altruist charity whose purpose is to bring about positive

12   benefits to the world in the most efficient way that it can.

13   THE COURT:  And I'm sorry.  What was the name

14   again?

15   MR. SIMON:  One Day Sooner.

16   THE COURT:  Okay.

17   MR. SIMON:  Is it okay if Mr. Rheingans-Yoo speaks

18   for a minute about it?

19   THE COURT:  Well, we'll just leave it at that --

20   MR. SIMON:  Okay.

21   THE COURT:  -- and I'll let you continue on your

22   argument.

23   MR. SIMON:  Okay.  Well --

24   THE COURT:  But I just wanted to verify the state

25   of the world right now and if we were really here on the

1    designation of Manifold --

2             MR. SIMON:  Right.  I mean --

3             THE COURT:  -- for Charity.

4             MR. SIMON:  -- I'll just skip with my presentation

5    to that point, Your Honor, and I appreciate you making this

6    more efficient.

7             And even if all the concerns about Manifold for

8    Charity were given credence, Ross voluntarily resolved them

9    by offering to change the beneficiary to One Day Sooner,

10   another EA cause, one that is not a donor-advised fund, where

11   Ross, you know, has an account.

12            And we can get into the Internal Revenue Code.  I

13   understand the Court doesn't necessarily want to do that.

14   But One Day Sooner is not a charity where Ross serves as a

15   director, either.  It's not in litigation with the trust,

16   either.  So, if the trust were truly concerned about the

17   appropriateness of Manifold for Charity, then Ross' written

18   re-designation of One Day Sooner resolves those concerns.

19            The trust has made a naked claim that Ross is not -

20   - what did they say?  Cannot be trusted to re-designate the

21   beneficiary.  That's an ipse dixit fallacy.  There is no

22   evidence about Ross' trustworthiness.  And the fact that he's

23   donated hundreds of thousands of dollars to charities,

24   including effective altruist charities, makes it clear that

25   his purpose in doing this is to donate to charity, not to his

1    own personal account.

2              I'll rest on this, Your Honor.  I'm happy to answer

3    any more questions.  Thank you.

4              THE COURT:  Okay.  Thank you.

5              MR. GLUECKSTEIN:  Your Honor, just briefly, I want

6    to address this issue of the re-designation.

7              THE COURT:  I --

8              MR. GLUECKSTEIN:  And I --

9              THE COURT:  Yeah.

10             MR. GLUECKSTEIN:  -- understand --

11             THE COURT:  -- I think --

12             MR. GLUECKSTEIN:  -- the Court --

13             THE COURT:  -- that is the issue, so I'd like to

14    know why you won't accept the re-designation, and I want to

15    know why, based on the law and the facts because it seems

16    like this whole thing could have been mooted.  And the trust

17    -- the time and money this trust has incurred into this

18    dispute, I'm very curious as to why you will not accept the

19    re-designation.

20             MR. GLUECKSTEIN:  The problem here, Your Honor,

21    with the re-designation is we're not re-designating to --

22    we're not exactly designating here to the American Red Cross.

23    The problem here, Your Honor, is the re-designated entity,

24    the only reason this entity was not before this Court in

25    litigation is because, under the threat of litigation, after

1    having received $394,000 of fraudulent transfers, agreed to

2    repay those fraudulent transfers to the estate out of course

3    and have since done that.  So counsel is correct that they

4    are not currently in litigation with the estate.

5         THE COURT:  But your theory of fraudulent transfer

6    that you told me, I think at the last hearing -- and I could

7    be wrong because we've had numerous hearings -- is simply

8    that -- and I shouldn't say "simply" because I would suggest

9    this is not simple -- but that Sam Bankman-Fried and his

10   insider colleagues took money that didn't belong to them from

11   customers and gave it to charities; and, therefore, that, in

12   and of itself, is a fraudulent transfer, a theory that does

13   not seem to suggest that there's a wrongdoer on the other

14   side.  So why does it matter to me that they settled with

15   you?

16        MR. GLUECKSTEIN:  This entity we have not done a

17   deep dive into all of the circumstances.  We do know that Mr.

18   Rheingans-Yoo played a key role in the donation of that

19   $394,000 to this particular charity while he was associated

20   with the FTX group.

21        THE COURT:  Wasn't that his role?  I'm sorry, but

22   the role was to manage, from what I can gather -- and I could

23   be wrong as to the facts, but he was employed to do that.

24        MR. GLUECKSTEIN:  Your Honor, we don't believe any

25   of this was legitimate, hence why we're here in the context

1       of this case.  All right?  The idea that this is all just

2       normal charitable giving is simply not supported by the facts

3       of this Chapter 11 case and the fact that we have dozens of

4       fraudulent transfer actions that have been and continue to be

5       pending.

6              So, certainly, if the Court wants to accept the re-

7       designation to this charity, we, of course, will comply with

8       the Court's order.  But we do not believe that this would be

9       -- from the trust's perspective, we would want to look into

10      the facts and circumstances of this entity the same way we

11      did the last time.

12             THE COURT:  But why would -- why -- what is the

13      legal basis by which you are entitled to do so?

14             MR. GLUECKSTEIN:  Your Honor, the entire

15      circumstances of this claim is highly unusual.  It's

16      suggested that we could have presented some of these facts to

17      the Court at the time of the claims objection.  The problem

18      is, as the Court correctly pointed out when we were here last

19      year, it never made any sense why, prior to the allowance of

20      the claim, no designation to the charity was ever made,

21      right?

22             And so we're dealing with this post hac.  After

23      allowance of the claim, we got the designation.  We had the

24      right to object to it, we looked into it, we did.  They came

25      back to us and said okay, we'll just change horses here,

1    we'll go with a different charity.  Well, we looked -- we

2    started to look at that charity.  They also have deep

3    relationships with FTX that are problematic that required us

4    to claw back money.  So that's where we stand today.

5            If -- again, if the Court wants to accept a re-

6    designation to this entity, then we will -- we obviously will

7    accept that and proceed accordingly.

8            THE COURT:  Okay.  All right.  Thank you.

9            MR. SIMON:  Your Honor, may I be heard on one or

10   two --

11           THE COURT:  Yes.

12           MR. SIMON:  -- issues, please?  Thank you.

13           Okay.  The trust seems to be conflating the idea

14   that this is Ross' employment.  He was hired pursuant to an

15   employment agreement that the trust stipulated is valid and

16   enforceable according to its terms.  This is, I respectfully

17   submit, one reason why the Court allowed Ross' employment

18   claim.

19           And that employment contract gave the debtors

20   discretion to award a bonus, and it -- the debtors issued a

21   bonus memo.  It said you may donate to an EA cause, any EA

22   cause.  Ross selected one and the debtors objected to it.

23   Ross said fine, you object to it, here's another one.

24           We would argue, if there were a need to argue, that

25   the bonus memo "any EA cause" does not give the debtors *carte*

1   *blanche* right to investigate the EA -- the charitable

2   recipient.  It could investigate whether it is an effective

3   altruist charity because it said "any EA cause."  But to

4   imply, as counsel did, that it gets to undertake some massive

5   investigation into the charity, I just don't agree.

6          THE COURT:  If -- you heard counsel say it's not

7   like this is the American Red Cross.

8          MR. SIMON:  Uh-huh.  Well --

9          THE COURT:  If it was the American Red Cross, do

10   you think we'd be here?

11          MR. SIMON:  No, Your Honor.  I mean, I don't think

12   we would be here, necessarily, except that, remember, the

13   trust objected to Ross making any charitable contribution.

14   So they -- they're claiming and counsel just said, you know,

15   we've gone through so many of these charitable avoidance

16   claims, but they're still charitable avoidance claims.

17          Your Honor understands that the charities only

18   accepted a donation.  It's not the charity's fault that FTX

19   was a fraud.  And I respectfully submit that effective

20   altruism, although it does have an association with Sam

21   Bankman-Fried, is -- has survived and is flourishing and

22   continues to help the world, notwithstanding that Mr.

23   Bankman-Fried has been convicted.  Thank you.

24          THE COURT:  Okay.  Mr. Glueckstein, I think you hit

25   the nail on the head that this is unusual.  But that doesn't,

1    I think, support your or the trust's decision to not re-

2    designate the charity.

3        I think we could have gotten here a lot quicker if

4    we had just designated another charity at the outset, given

5    that we -- that the trust made it very clear at the last

6    hearing that they were going to have an issue if the EA

7    charity was Manifold, related to Manifold, for Manifold

8    Markets.

9        But nonetheless, I'm going to allow the re-

10   designation.  I just haven't heard any credible argument or

11   been shown any support in the record as to why this would not

12   be permitted based on my order or my ruling, which is the --

13   where we currently are.

14       And so that, in turn, moots pretty much everything

15   that I have before me in my opinion.  It moots the

16   reconsideration order.

17       It moots -- to me, it moots the first amended

18   complaint against Mr. Rheingans-Yoo because the relief sought

19   there hinges on the designation of Manifold for Charity as

20   the recipient of the bonus.

21       It doesn't moot the sanctions motion.  And I am

22   inclined to grant sanctions here because there is no valid

23   basis to have denied Mr. Rheingans-Yoo the opportunity to re-

24   designate the charity.  And when you didn't allow him to do

25   it, it led to the reconsideration motion, the first amended

complaint, and all the briefing attenuated to that.  And I

just think it was completely unreasonable and really just not

based in any law or fact.

The additional problem is, even if I didn't allow

the re-designation, I don't believe that you had the ability

to seek the fraudulent transfer action or the other relief

that's related to it because of *res judicata*.  The time to

have raised these issues was at the time that you objected to

the claim which arose in 2022, when Sam Bankman-Fried granted

the bonus to the claimant.  So it was all intertwined with

the claims objection and should have been brought at one

time.

We can't have piecemeal litigation over claims

because it wastes the parties' time and creates issues of law

and fact.  Our local rule, in fact, provides that, in omnibus

objections, all substantive claims need to be brought

together.  It does not say that, with one-off claims, it

needs to be done because I think it is just a given that you

need to do that in litigation.  You can't have people

dodging, like Whack-a-Mole, all the different claims.  It

needs to be brought at one time, so it can have one hearing,

and you didn't do that.  And to me, it has led to this

wasteful litigation.

So I am going to allow the re-designation.

I'm going to deny the motion for reconsideration as

1  moot.

2        I'm going to grant the motion to dismiss as moot

3  because there is no remedy that I could grant, given that

4  it's based on a charity donation that is not going to happen,

5  given that I've allowed the re-designation.

6        And I am going to enter the sanctions motion.  The

7  time that we have all spent on this issue, I am curious to

8  see how it adds up to the six fifty, given everyone's

9  billable rates.  And I just think that the trust has been

10  harmed, and I think that the claimant has been harmed, and I

11  think that the Court has been harmed with this.

12        I make no judgment as to the fraudulent transfers

13  to EA charity.  Everyone is entitled to make the arguments

14  that they make and I will hear them after it's briefed, but I

15  don't think that it's appropriate today, based on what I just

16  said.

17        So I will enter an order that provides for the

18  relief today, and I will enter it after today's hearing.

19  Does everybody understand?

20        MR. SIMON:  Yes.  Thank you, Judge.

21        THE COURT:  Okay.  And if someone has an issue with

22  this, if the trust has an issue with this, the appropriate

23  remedy is to appeal, and you may do so.  You have your appeal

24  rights.

25        I think that was everything on the agenda, but I'll

1   just ask if there's anything else we should discuss today

2   before we adjourn today's hearing.

3        (No verbal response)

4            THE COURT:  Okay.  All right.  We'll stand

5   adjourned.  Thank you very much.

6        (Proceedings concluded at 10:01 a.m.)

7                          *****

8                      <u>CERTIFICATION</u>

9            I certify that the foregoing is a correct

10  transcript from the electronic sound recording of the

11  proceedings in the above-entitled matter to the best of my

12  knowledge and ability.

16  _____        January 20, 2026

17  Coleen Rand, AAERT Cert. No. 341

18  Certified Court Transcriptionist

19  For Reliable