## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  March 26, 2026 at 9:30 a.m. (ET)**<br>**Obj. Deadline:  March 16, 2026 at 4:00 p.m. (ET)** |
| | **Ref. No. 20044** |

### FTX RECOVERY TRUST'S FIRST AMENDED
### OBJECTION TO PROOFS OF CLAIM FILED BY ALEX MASHINSKY

> **THIS OBJECTION SEEKS TO DISALLOW CERTAIN CLAIMS.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND LOCATE THEIR NAMES AND CLAIMS ON <u>SCHEDULE 1</u> OF <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE FOLLOWING THE INSTRUCTIONS SET FORTH HEREIN.**

The FTX Recovery Trust[2] (the "<u>Trust</u>") hereby submits this amended claims objection (the "<u>Amended Objection</u>"[3]), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 9013-1 of the Local Rules of the

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "<u>Plan</u>").

[3]    On July 10, 2024, the Debtors filed a claims objection to the Mashinsky Proofs of Claim (as defined herein) at D.I. 20044 (the "<u>Original Objection</u>").  As discussed further below, litigation of the Original Objection was consensually stayed by the parties (which stay has expired) and Mashinsky has not responded to the Original Objection.  The Trust files this Amended Objection to provide additional facts and arguments in support of disallowance of the Mashinsky Claims (as defined herein).

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the proofs of claim filed by Alex Mashinsky ("Mashinsky"), on behalf of himself and certain entities he controls, against certain of the FTX Debtors (the "Debtors") (collectively, the "Mashinsky Proofs of Claim,"[4] and the claims asserted therein, the "Mashinsky Claims").  In support hereof, the Trust respectfully states as follows:

### Preliminary Statement

1.      Mashinsky is the disgraced former chief executive officer of bankrupt cryptocurrency company Celsius.[5]  Mashinsky was indicted by the U.S. Attorney's Office for the Southern District of New York in July 2023 for his role in defrauding Celsius's customers and other victims out of billions of dollars, which led to the collapse of Celsius and its native CEL token.[6]  On December 3, 2024, Mashinsky pled guilty in federal court to commodities and securities fraud, for which he is currently serving a 144-month prison sentence.[7]

2.      Through his guilty plea, Mashinsky admitted that, between 2018 and 2022, he "engaged in a scheme to defraud investors in CEL token by artificially manipulating the market for CEL token," "ma[de] false and misleading statements about Celsius' purchase of CEL token," and "ma[de] false and misleading statements about [his] own sales of CEL token."[8]  By his own admission, not only did Mashinsky defraud CEL token holders, but he also "induce[d] investors

---

[4]    Schedule 1 attached to the proposed order attached hereto as Exhibit A provides a list of the Mashinsky Proofs of Claim.

[5]    Celsius Network LLC and its affiliated debtors ("Celsius") filed Chapter 11 cases on July 13, 2022 in the United States Bankruptcy Court for the Southern District of New York (the "Celsius Chapter 11 Cases").

[6]    *See generally* Indictment, *United States of America* v. *Alexander Mashinsky and Roni Cohen-Pavon*, No. 1:23-cr-00347 (S.D.N.Y. filed July 11, 2023) ("Mashinsky Indictment").

[7]    *See generally* Transcript of Plea, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 (S.D.N.Y. filed Dec. 20, 2024) ("Mashinsky Plea Transcript"); Judgment in a Criminal Case, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 (S.D.N.Y. filed May 12, 2025) ("Mashinsky Judgment").

[8]    Mashinsky Plea Transcript at 13:21-14:1; *see also* Mashinsky Indictment ¶ 85.

to sell their Bitcoin to Celsius in exchange for an interest in Celsius' [E]arn Program by making false and misleading statements about Celsius' financial condition and operations."[9] Mashinsky's deceptions about the financial health of the Celsius platform continued through May 2022, at which point Celsius was so weak financially that it could not withstand the market-wide drop in crypto asset prices and the subsequent surge in Celsius customer withdrawals.[10] On June 12, 2022, Celsius abruptly froze all customer withdrawals, leaving billions of customer dollars locked on the platform; a month later, Celsius filed for Chapter 11 bankruptcy.[11]

3.      Mashinsky has acknowledged that his "false statements were inexcusable" and that he "failed [his] community."[12] Yet Mashinsky, who is most responsible for Celsius's downfall, shamelessly seeks to divert ***more than $2 billion*** from former FTX customers and other creditors to himself personally through proofs of claim filed in his own name and in the name of entities he owns and controls. Between June and December 2023, Mashinsky filed proofs of claim against the Debtors in the amount of $2.15 billion relating to Celsius's downfall[13]—the cause of which has now been confirmed to be Mashinsky.

4.      Mashinsky is entitled to nothing from the Trust. As a threshold procedural matter, the only timely filed Mashinsky Proofs of Claim were those filed in June 2023, and therefore the remaining proofs of claim are time barred. In addition, Mashinsky does not and cannot assert any valid factual or legal basis in support of the Mashinsky Claims. And even if he

---

[9]     Mashinsky Plea Transcript at 11:5-8; *see also* Mashinsky Indictment ¶ 75.

[10]    Mashinsky Indictment ¶ 9.

[11]    *Id.*

[12]    Transcript of Sentencing, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 (S.D.N.Y. filed May 19, 2025) ("Mashinsky Sentencing Transcript"), at 51:20-22.

[13]    Because the factual and legal basis for the Mashinsky Claims is unclear from the Mashinsky Proofs of Claim, the Trust is unable to conclusively determine how many of the Mashinsky Claims are duplicative of other Mashinsky Claims. The Trust reserves all rights, arguments and defenses with respect to any duplicative Mashinsky Claims.

could, any such basis would be premised on theories resolved by the binding Global Settlement in Sections 5.2 and 10.8 of the Plan, as confirmed by the Court on October 8, 2024. Moreover, while the Mashinsky Proofs of Claim do not actually articulate any addressable harm, any losses suffered by Mashinsky or his affiliated entities are due to Mashinsky's own fraudulent conduct, and therefore the Mashinsky Claims are barred by the unclean hands doctrine. Accordingly, the Mashinsky Claims should be disallowed and expunged.

**Background**

5.      On November 11 and November 14, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.      On May 3, 2023, the Debtors filed the *Motion of Debtors for Entry of an Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1416]. On May 19, 2023, the Court entered an order[14] (the "Non-Customer Claims Bar Date Order") setting a non-customer claims bar date of June 30, 2023 (the "Non-Customer Claims Bar Date") and establishing certain procedures.

7.      On October 8, 2024, the Court confirmed the Plan and entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Confirmation Order").

---

[14]    *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest And (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519].

8.      Sections 5.2 and 10.8 of the Plan contain the Global Settlement, which resolves and settles all claims against the Debtors related to the "actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders," and "the purported commingling and misuse of customer deposits and corporate funds."  (Plan § 5.2.)  On January 3, 2025, the Plan became effective and the Global Settlement became "immediately effective and enforceable and deemed binding" on all claimants.  (*Id.* § 13.1; Confirmation Order ¶ 112.)

## Facts Specific to the Amended Objection

### I.      The Mashinsky Proofs of Claim

9.      From June to December 2023, Mashinsky filed a series of duplicative, unsupported, and exorbitant proofs of claim on behalf of Mashinsky and entities controlled by Mashinsky.[15]  On June 25, 2023, Mashinsky filed three identical proofs of claim in his own name against each of Alameda Research Ltd., Alameda Research LLC, and FTX Trading Ltd. in the amount of $2.15 billion (the "June Individual POCs").[16]  The June Individual POCs state the basis of the claim as "Fraud, Conspiracy to commit fraud, market manipulation, bribery, securities fraud, money laundering," but do not provide any other information or detail about the asserted claims. The only documentary support attached to the June Individual POCs' proof of claim form is a document named "FTX CEL naked short positions 2022 May 3 – July.pdf" that is entirely unverified, lacks any evidence of authentication or identification of its source, and includes unintelligible data with references to CEL, Celsius's proprietary crypto token (the "Mashinsky Attachment").  The June Individual POCs were the only proofs of claim filed by Mashinsky prior to the Non-Customer Claims Bar Date.

---

[15]    The Original Objection addressed all the Mashinsky Proofs of Claim and two additional proofs of claim filed by Mashinsky's wife containing the same allegations—Claim Nos. 85249 and 85248—which have since been consensually withdrawn and are thus not addressed by the Amended Objection.

[16]    Claim Nos. 2314, 3195 and 3233, respectively.

10.      On September 29, 2023—three months after the Non-Customer Claims Bar Date—Mashinsky filed four more proofs of claim:  two in the name of Koala1 LLC (one against each of Alameda Research LLC and FTX Trading Ltd.) and two in the name of AM Ventures Holdings Inc. (again, one against each of Alameda Research LLC and FTX Trading Ltd.) (the "September Corporate POCs," and together with the June Individual POCs, the "Initial POCs").[17] The September Corporate POCs filed against Alameda Research LLC state the basis of the claim as some variation of "Fraud, market manipulation, conspiracy, contract interference."  The September Corporate POC filed by Koala1 LLC against FTX Trading Ltd. states the basis of the claim as "Fraud, market manipulation, contract interferance [*sic*]," and the September Corporate POC filed by AM Ventures Holdings Inc. against FTX Trading Ltd. states the basis for the claim as "Fraud, market manipulation, naked shorting, torcherus [*sic*] interferance [*sic*], conspiracy to comit [*sic*] crimes."  The September Corporate POCs do not include any other information or detail about the asserted claims, and the only documentary support attached to the proof of claim forms is the Mashinsky Attachment (the same document attached to the June Individual POCs).

11.      Mashinsky then attempted to supplement these deficient filings with so-called "amendments" that introduced entirely new claims.  On November 6, 2023—more than four months after the Non-Customer Claims Bar Date—Mashinsky filed three additional proofs of claim in his own name purporting to amend the June Individual POCs filed against FTX Trading Ltd. and Alameda Research LLC (the "November Individual POCs").[18] The November Individual

---

[17]    Claim Nos. 85255 and 85256 on behalf of Koala1 LLC and Claim Nos. 85257 and 85258 on behalf of AM Ventures Holdings Inc.

[18]    In addition to filing a November Individual POC against FTX Trading Ltd. (Claim No. 88339), Mashinsky filed two November Individual POCs against Alameda Research LLC (Claim Nos. 88338 and 88341), but did not file any November Individual POC against Alameda Research Ltd.  One of the November Individual POCs, Claim No. 88341, was filed against Alameda Research LLC, but purports to amend the June Individual POC filed against Alameda Research Ltd.  The Trust reserves all rights, arguments, and defenses with respect to the effectiveness of the purported amendment by Claim No. 88341.

POCs do not provide any new information with respect to the basis for the claim in the proof of claim form, but replace the Mashinsky Attachment with a rider (which appears to have been prepared by counsel to Mashinsky).  The new rider to the November Individual POCs asserts entirely new claims against the Debtors in an amount "not less than $2,150,000,000" for the diminution of value of Mashinsky's equity interests in Celsius and his holdings of CEL, which Mashinsky alleges was caused by (i) the Debtors' receipt of "unauthorized" information from former officers of Celsius, which allowed the Debtors to "force the liquidation of Celsius's positions (specifically stETH and WBTC at well below market prices) and attack CEL Token to create fear and mass withdrawals," and (ii) the Debtors' "false and fraudulent creation and sale of CEL Token."[19]  The November Individual POCs do not include any factual or legal detail specific to the November Individual POCs underlying these assertions.[20]

12.    Finally, on December 13, 2023, Mashinsky filed four additional proofs of claim, two in the name of Koala1 LLC and two in the name of AM Ventures Holdings Inc., purporting to amend the four late-filed September Corporate POCs (the "December Corporate POCs,"[21] together with the September Corporate POCs, the "Mashinsky Corporate POCs," and together with the November Individual POCs, the "Purported Amendments").  The December

---

[19]   In support of this allegation, Mashinsky references a *pro se* objection filed in the Celsius Chapter 11 Cases objecting to the settlement of disputes relating to the valuation of CEL in the Celsius Chapter 11 Cases. *Otis Davis' Limited Objection to the Debtors' Entry for an Order (I) Approving the Settlement of CEL Token at $0.25 for the Purpose of Confirming the Debtors' Plan of Reorganization (II) Granting Related Relief* [Celsius Chapter 11 Cases, D.I. 3532] (the "Davis Objection").  Exactly how the Davis Objection supports Mashinsky's claims is unclear, and the Trust reserves all rights with respect to the allegations and claims in the Davis Objection.

[20]   In the November Individual POCs, Mashinsky purports to incorporate by reference claims filed against certain Debtors by Celsius in order "to demonstrate the further bad acts committed by the FTX Debtors and their representatives which resulted in the loss of value of CEL Token and the Celsius Debtors." *See, e.g.*, Claim No. 88338, *Rider to Amended Proof of Claim Filed by Alexander Mashinsky*, at 4.  Again, the relevance of these claims is unclear, and Celsius ultimately abandoned such theories of recovery. *See Memorandum Opinion and Order Sustaining Debtors' Objection to Proofs of Claim and Denying Motion for Relief from the Automatic Stay* [D.I. 28891], at 4.

[21]   Claim Nos. 89689, 89699, 89697, and 89698, respectively.

Corporate POCs do not provide any new information with respect to the basis for the claims in the proof of claim form, but, like the November Individual POCs, replace the Mashinsky Attachment with a substantively identical rider attached to the November Individual POCs, prepared by the same counsel.[22]

## II.    Mashinsky's Indictment

13.    Amidst the flurry of these duplicative and meritless proofs of claim, on July 11, 2023, Mashinsky was indicted for (i) securities fraud, (ii) commodities fraud, (iii) wire fraud, (iv) conspiracy to manipulate the price of CEL, (v) employing a fraudulent scheme to manipulate the price of CEL, (vi) market manipulation of CEL, and (vii) wire fraud related to the manipulation of CEL.[23]   The indictment describes how Mashinsky repeatedly made false statements about Celsius's financial condition and operations, including that Celsius sold all CEL tokens made available to the public during its initial coin offering,[24] that the Celsius platform was profitable,[25] that Celsius paid 80 percent of its revenue to customers in the form of weekly rewards,[26] and that customer investments were managed in a safe and secure manner.[27]   In reality, according to the indictment, Celsius sold only around a third of the CEL tokens offered during the ICO,[28] operated largely at a loss,[29] paid weekly rewards that far exceeded the revenue generated by the platform,[30]

---

[22]   Each of the December Corporate POCs filed by Koala1 LLC asserts a claim "in the amount of not less than 7.5 million CEL Token."  Each of the December Corporate POCs filed by AM Ventures Holdings Inc. asserts a claim "in the amount of not less than 41 million CEL Tokens."

[23]   Mashinsky Indictment ¶¶ 72-89.

[24]   *Id.* ¶ 18.

[25]   *Id.* ¶¶ 24, 28.

[26]   *Id.* ¶ 26.

[27]   *Id.* ¶¶ 31, 35.

[28]   *Id.* ¶ 18.

[29]   *Id.* ¶¶ 25, 28-30.

[30]   *Id.* ¶¶ 26-28.

and utilized customer funds in risky and undisclosed investments that resulted in significant losses.[31]  Further, while Mashinsky publicly portrayed the value of CEL as a proxy for the financial strength of the Celsius platform, the indictment describes how he manipulated the value of CEL by personally purchasing, and directing Celsius to purchase, large quantities of the token.[32]

### III.    The Debtors' Original Objection and the Stay Stipulation

14.    On July 10, 2024, the Debtors filed the Original Objection to the Mashinsky Proofs of Claim.  [D.I. 20044].  The Debtors objected to the Mashinsky Proofs of Claim on a number of grounds, including:  (i) that all the Mashinsky Claims, aside from the June Individual POCs, were untimely filed and are thus barred by the Non-Customer Claims Bar Date Order; (ii) that the Mashinsky Claims are not entitled to *prima facie* validity because their alleged facts are vague, speculative, and insufficient to support a theory of legal liability; and (iii) the unclean hands doctrine bars any recovery on the Mashinsky Claims due to Mashinsky's fraudulent conduct at Celsius.  (Original Objection ¶ 15.)

15.    Following the filing of the Original Objection, through his counsel, Mashinsky requested that the Debtors agree to stay litigation of the Original Objection until the conclusion of his criminal proceedings, to which the Debtors consented.  On September 20, 2024, the parties entered into a stipulation to that effect (the "Stay Stipulation"), which was approved by the Court on September 25, 2024.  *Order Approving Stipulation* [D.I. 25684].

16.    On December 3, 2024, Mashinsky pled guilty to (i) commodities fraud for fraudulently inducing investors to sell their crypto assets to Celsius in exchange for participation in the Earn Program, and (ii) engaging in a fraudulent scheme to manipulate the price of the CEL

---

[31]    Mashinsky Indictment ¶¶ 31-37.

[32]    *Id.* ¶¶ 48-59.

token issued by Celsius.[33]  As part of Mashinsky's plea agreement, he forfeited any ability to directly appeal or otherwise challenge his conviction.[34]

17.    Following Mashinsky's guilty plea, the Trust initiated discussions with counsel to Mashinsky about Mashinsky withdrawing his claims or, alternatively, to establish a litigation schedule in accordance with the Stay Stipulation.  At the request of Mashinsky's counsel, the Trust agreed to continue to hold the claims litigation in abeyance until after Mashinsky's sentencing.

18.    On May 8, 2025, Mashinsky was sentenced to 144 months' imprisonment to be followed by three years of supervised release.[35]  The sentencing court also ordered Mashinsky to forfeit approximately $48.4 million, along with additional property.[36]

19.    Following the sentencing hearing, the Trust once again initiated discussions with Mashinsky's counsel about Mashinsky withdrawing his claims or, alternatively, to establish a litigation schedule.  Through those discussions, the parties agreed that the stay under the Stay Stipulation had expired, but Mashinsky requested through his counsel that the Trust further defer litigation on a voluntary basis until after Mashinsky began serving his sentence, to which request the Trust again consented.

20.    Mashinsky began serving his sentence in September 2025.[37]  Thereafter, the Trust once again initiated discussions with Mashinsky's counsel about Mashinsky withdrawing his claims or, alternatively, to establish a litigation schedule.  Mashinsky's counsel did not engage

---

[33]    Mashinsky Plea Transcript at 10:6-11:14, 12:22-14:7; *see also* Mashinsky Judgment at 1-2.

[34]    Plea Agreement, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 ("Mashinsky Plea Agreement"), at 6; *see also* Mashinsky Plea Transcript at 22:18-24:10.

[35]    Mashinsky Judgment at 3-4.

[36]    *Id.* at 4.

[37]    Mashinsky Judgment at 3.

with respect to any matters between the parties but through those discussions, in or around October 2025, Mashinsky's counsel notified counsel for the Trust that Mashinsky had terminated their services and that they anticipated withdrawing from their representation in the FTX cases. However, Mashinsky's counsel did not file any motion to withdraw or follow up with the Trust regarding the status of their representation or any other matter between the parties. The Trust continued to inquire with Mashinsky's counsel into January 2026.

21.     In January 2026, four months after Mashinsky reported to prison and eight months after his sentencing, the Trust made a final attempt through Mashinsky's counsel to have Mashinsky voluntarily withdraw his claims to avoid unnecessary litigation or, alternatively, to resume litigation of the Mashinsky Claims. Mashinsky's counsel did not respond to the Trust, but instead shortly thereafter filed a motion to withdraw from the case on February 5, 2026.[38] In connection with the motion to withdraw, counsel represented that "Mashinsky effectively discharged" their services on October 19, 2025, and directed them "to substitute himself as *pro se*" in those matters where he was previously represented.[39] Nonetheless, as of the date of this Amended Objection, Mashinsky's counsel remains his counsel of record.

## Jurisdiction

22.     The Court has jurisdiction over this Amended Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant

---

[38] *See generally Motion of Ruskin Moscou Faltischek P.C. for Leave to Withdraw as Counsel to Alexander Mashinsky, Koala1, LLC, and AM Ventures Holdings, Inc.* [D.I. 34651].

[39] *Declaration in Support of the Motion of Ashby & Geddes, P.A. for Leave on Behalf of Ruskin Moscou Faltischek P.C. to Withdraw as Counsel to Alexander Mashinsky, Koala1, LLC, AM Ventures Holdings, Inc.* ¶ 16 [D.I. 34651-2].

to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought are section 502 of the Bankruptcy Code, and rules 3001 and 3007 of the Bankruptcy Rules.  Pursuant to rule 9013-1(f) of the Local Rules, the Trust confirms its consent to entry of a final order by the Court in connection with this Amended Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

23.     By this Amended Objection, the Trust seeks entry of the proposed order (the "Order"), substantially in the form attached hereto as **Exhibit A**, disallowing and expunging the Mashinsky Proofs of Claim listed on **Schedule 1**, annexed thereto, in their entirety.

### Argument

24.     Each of the Mashinsky Claims fails for multiple reasons.  *First*, all of the Mashinsky Proofs of Claim other than the June Individual POCs were filed after the Non-Customer Claims Bar Date and are barred by the Non-Customer Claims Bar Date Order, including the November Individual POCs, which are invalid amendments to the June Individual POCs.  *Second*, even if the Mashinsky Proofs of Claim are not time barred, the claims therein fail to articulate or allege facts sufficient to support any theory of legal liability, are vague and speculative, and therefore are not entitled to *prima facie* validity as a matter of law.  *Third*, to the extent that the Mashinsky Claims assert any valid allegations, those allegations were extinguished and are now barred by the Global Settlement contained in Sections 5.2 and 10.8 of the Plan.  *Fourth*, even if any of the Mashinsky Claims are facially valid *and* not otherwise barred, they should still be disallowed under the unclean hands doctrine due to Mashinsky's fraudulent conduct that caused the collapse of Celsius and any damage that could be asserted in the Mashinsky Claims.  The Mashinsky Claims therefore should be disallowed and expunged in their entirety.

I.      **The Mashinsky Proofs of Claim Filed After the Non-Customer Claims Bar Date Are Time Barred.**

      i.      *The Mashinsky Corporate POCs Are Time Barred.*

25.      The Non-Customer Claims Bar Date Order established June 30, 2023 as the deadline for filing non-customer proofs of claim, and provided that any person or entity asserting a "Non-Customer Claim" that failed to timely file a proof of claim by the deadline would be "forever barred, estopped and enjoined from . . . asserting the applicable Non-Customer Claim against . . . the Debtors or their estates or property in these Chapter 11 Cases."[40]   Each of the Mashinsky Corporate POCs was filed between three and six months after the Non-Customer Claims Bar Date, and does not purport to amend any timely filed proofs of claim.[41]   Accordingly, each Mashinsky Corporate POC should be disallowed as late filed pursuant to the Non-Customer Claims Bar Date Order.

26.      Under Rule 9006(b)(1) of the Bankruptcy Rules, a creditor may be excused from filing a claim after the applicable bar date only on motion where the failure to timely file was the result of "excusable neglect."  In evaluating whether there is excusable neglect, courts weigh the following factors:  (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith.  *See Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022).  Courts take a "hard line" when applying the *Pioneer* test and have placed the emphasis in their analysis on the "reason" for the delay.  *In re Energy Future Holdings Corp.*, 619 B.R. 99,

---

[40]    Non-Customer Claims Bar Date Order ¶ 13.

[41]    As described above, the December Corporate POCs purport to amend the September Corporate POCs, which themselves were late filed and are time barred.

110 (Bankr. D. Del. 2020) (quoting *In re Nortel Networks Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017)).  Furthermore, "[t]he burden of proving excusable neglect lies with the late-claimant." *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).

27.    Here, the Mashinsky Corporate POCs clearly fail the *Pioneer* test.  Putting aside the gating fact that Mashinsky never filed a motion for an extension of time as required by Rule 9006(b)(1), the Trust is at significant risk of undue prejudice if the Court were to suddenly "open[] the floodgates" to similar late-filed claims.  *See In re Enron Corp.*, 419 F.3d 115, 130-33 (2d Cir. 2005) (finding that "floodgate" concerns may contribute to undue prejudice where the relevant claim "was sufficiently large and insufficiently distinguishable from other [claims.]").  While largely unintelligible, the Mashinsky Claims appear to seek recompense for losses incurred in the cryptocurrency market, which are generic claims that any participant in the cryptocurrency market could assert.  In addition, the delay in filing these claims was significant (between three and six months) and entirely in the claimant's control, especially when Mashinsky timely filed the June Individual POCs, which are substantively identical to the Mashinsky Corporate POCs.  Finally, the serial filing of the same unsupported claims under different names is also indicative of bad faith.  Accordingly, there is no basis to find "excusable neglect" in these circumstances, and the Mashinsky Corporate POCs should be disallowed.[42]

      *ii.    The November Individual POCs Are Invalid Amendments to the June Individual POCs and Are Time Barred.*

28.    Courts will bar a proof of claim filed after the bar date even if it purports to amend a timely filed proof of claim if it is instead a new claim under the "guise of amendment." *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985) (courts apply "careful scrutiny to

---

[42]    Even if the Mashinsky Corporate POCs are not disallowed on the grounds that they are time barred, they should be disallowed as applicable for the reasons stated with respect to the June Individual POCs and November Individual POCs in Sections II, III, and IV below.

assure that there was no attempt to file a new claim under the guise of amendment"); *Mallinckrodt*, 2022 WL 3545583, at \*2 ("[O]nce the bar date passes, amendments to claims are closely reviewed to ensure they are not attempts to file a new claim.").

29.     In order for a post-bar-date proof of claim to constitute a valid amendment, it must: "(1) correct[] a defect of form in the original claim; (2) describe[] the original claim with greater particularity; or (3) plead[] a new theory of recovery on the facts set forth in the original claim." *In re FLYi, Inc.*, 2008 WL 170555, at \*3 (Bankr. D. Del. Jan. 16, 2008) (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).  "The focus of this test . . . is whether the initial claim provided the trustee or debtor-in-possession with reasonable notice of the later claim." *McLean*, 121 B.R. at 708.  Importantly, however, where a creditor has "alleged no facts whatsoever in their timely claims, it is impossible for them to amend." *In re Peregrine Fin. Grp., Inc.*, 2015 WL 2237201, at \*8 (Bankr. N.D. Ill. May 13, 2015).

30.     The November Individual POCs, filed over four months after the Non-Customer Claims Bar Date as purported amendments to the June Individual POCs, are clearly an attempt to assert new claims "under the guise of amendment." *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992).  The proof of claim forms for the June Individual POCs alleged no facts whatsoever and unequivocally failed to put the Debtors on notice of *any* claim, let alone the purported claims suggested in the November Individual POCs.  As a result, it was impossible for Mashinsky to amend the June Individual POCs.  The November Individual POCs are therefore impermissible post-bar-date attempts to file new claims and not valid amendments to any timely filed claims.  Thus, they are barred by the Non-Customer Claims Bar Date Order for the reasons stated above with respect to the other Mashinsky Corporate POCs.

31.     Nevertheless, even if the November Individual POCs are instead deemed to be late-filed amendments to the June Individual POCs, they should still be disallowed.  In order to file post-bar-date amendments, Mashinsky was required to seek leave to amend the June Individual POCs pursuant to rule 7015 of the Bankruptcy Rules, which he did not do.  And *arguendo*, even if he had, it is within this Court's discretion whether to allow a late-filed amendment, and here, Mashinsky's attempt to amend the June Individual POCs should not be permitted.  *Enron*, 419 F.3d at 133 (citing *In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998)).

32.     Courts consider multiple factors in determining whether to allow a late-filed amendment, including whether (i) the debtor or other creditors would be unduly prejudiced by the amendment, (ii) other creditors would "receive a windfall" from the disallowance of the amendment, and (iii) the late claimant acted in good faith and the delay was justified.  *Enron*, 419 F.3d at 133; *McLean*, 121 B.R. at 708.  Of these, however, "[t]he critical consideration is whether the opposing party will be unduly prejudiced by the amendment."  *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993).  Here, as discussed above under the *Pioneer* test, the prejudice to the Trust and its stakeholders strongly militates against allowing the November Individual POCs as late-filed amendments.  *See, e.g.*, *In re Kmart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) ("[I]f the bankruptcy court allowed all late-filed claims of nearly a million dollars where a simple 'innocent mistake' . . . was to blame for the tardiness of the proof of claim, we think Kmart could easily find itself faced with a mountain of such claims."); *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) ("We would be hard-pressed to distinguish [the late-filing creditor's] situation from any other similar creditor who ignored the Bar Date Notice, and to allow one may invite similar litigation from others.  In such a case, the legal fees the estate would potentially expend in litigating these matters supports a finding of prejudice.") (citation omitted).

33. The Trust is faced with the same risk of prejudice as in *Kmart* and *Keene*. Any exception for the Mashinsky Claims would risk inundating the Trust with a potentially vast number of so-called "amendments" from the Trust's sizeable roster of existing creditors. In addition, Mashinsky has no excuse for filing the November Individual POCs late—he had actual notice of the Non-Customer Claims Bar Date, as evidenced by his timely filing of the June Individual POCs. Nor do the November Individual POCs allege any new facts or information that would have made it impossible for him to assert these claims prior to the Non-Customer Claims Bar Date. Therefore, even if the November Individual POCs constituted valid amendments (which they do not), they should still be disallowed as improper late-filed amendments.

## II.    The Mashinsky Claims Should be Disallowed Because They Are Facially Invalid.

34. Even if they are not time barred for the above reasons, the Mashinsky Proofs of Claim should be disallowed because they are facially invalid. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The burden of proof for a claim asserted in a bankruptcy case under section 502(a) of the Bankruptcy Code is a shifting burden that rests on different parties at different times. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). First, the claimant must allege facts sufficient to support its claim. *Id.* If the allegations in the filed claim meet this standard, "it is '*prima facie*' valid." *Id.* But only a claim that "alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation" and is entitled to *prima facie* validity. *Id.* If the allegations in the filed claim meet this standard, the burden shifts to the objector to produce sufficient evidence to negate the facts alleged in support of the proof of claim. *Id.* If the objector advances sufficient evidence to challenge the validity of the proof of claim, the burden

shifts back to the claimant to prove the claim's validity by a preponderance of the evidence.    *Id.* at 174.

35.    Therefore, as a threshold matter, a claimant's failure to allege facts and to provide adequate support for a claim deprives the claim of *prima facie* validity.    *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).    For that reason, "claims can be disallowed for failure to support the claim with sufficient evidence." *Mallinckrodt*, 2022 WL 3545583, at *4; *see also In re O'Brien*, 440 B.R. 654, 667-68 (Bankr. E.D. Pa. 2010) (finding that lack of *prima facie* evidence pursuant to Bankruptcy Rule 3001(f) and failure of claimant to provide additional evidence warranted disallowance of claim).

36.    Importantly, "[t]he debtor . . . 'has no evidentiary burden to overcome' in objecting to a claim that is not *prima facie* valid."    *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008) (citing *eCast Settlement Corp*. v. *Tran* (*In re Tran*), 369 B.R. 312, 318 (Bankr. S.D. Tex. 2007)) (holding that debtors' objections alone are sufficient to shift the burden back to claimant when proof of claim had insufficient documentation).    The ultimate burden of persuasion to establish a claim by a preponderance of the evidence lies with the claimant. *In re Samson Res. Corp.*, 569 B.R. 605, 615 (Bankr. D. Del. 2017).

37.    Mashinsky has failed to articulate any cognizable claims entitled to *prima facie* validity.  The Mashinsky Proofs of Claim are bereft of detail and substantiation and fail to articulate any theory of liability by the Debtors.  Mashinsky has not identified in the Mashinsky Proofs of Claim any actions by the Debtors that could give rise to liability, or any specific action taken by the Debtors or their representatives that could give rise to a valid legal claim or that could have caused damages being sought.  Indeed, the Davis Objection, which Mashinsky relies on,

argues that despite being a form of a "downward price manipulation," the purported "illegal naked shorts" executed by FTX were the cause of "upwards price action" prior to the commencement of the Celsius Chapter 11 Cases.[43]  Mashinsky fails to assert or otherwise offer any evidence of (i) what actions were actually taken, (ii) by whom, (iii) what the consequence of those actions was with respect to any relevant claimant, or (iv) what harm such actions caused.  The idea that these bald and unsubstantiated assertions could give rise to any Claim, never mind a $2 billion claim, is preposterous.  In short, the Mashinsky Proofs of Claim fail to state anything that could be construed as a claim, are not *prima facie* valid, and must be disallowed and expunged in their entirety.

38.    The facial invalidity of the Initial POCs is even more patent.  While the untimely Purported Amendments attach a rider drafted by counsel providing vague and unsubstantiated allegations, the Initial POCs do not contain *any* factual allegations.[44]  The indecipherable Mashinsky Attachment is the only support provided for those claims, and it patently fails to assert any claim entitled to *prima facie* validity.  *See In re Falwell*, 434 B.R. 779, 785 (Bankr. W.D. Va. 2009) ("The documents, then, that are required to give a proof of claim prima facie validity are those that identify the claimant and the *amount* of the claim, and provide information sufficient to identify the basis for the claim (such as the account number).  A writing, if required, must support *the existence and amount* of the claim and, if applicable, the *priority or secured character of the claim*.") (emphasis added).  Nor has Mashinsky made any effort to provide evidentiary support or any legal basis for his asserted claims.  *In re Tribune Co.*, 2013 WL

---

[43]    *See Memorandum Opinion Approving the CEL Token Settlement and Resolving Issue of Collateral Ownership in the Modified Joint Chapter 11 Plan of Celsius Network and Its Debtor Affiliates* [Celsius Chapter 11 Cases, D.I. 3974], at 9.

[44]    To the extent that the Court determines that the Purported Amendments are valid, the Initial POCs must be disallowed and expunged because they are duplicative of Mashinsky's other claims.  A claimant is not entitled to multiple recoveries for the same liability against a debtor.  *See* Fed. R. Bankr. P. 3007(d)(1); *In re Hub Holding Corp*, 2009 WL 8519808, at *1 (Bankr. D. Del. May 27, 2009) (expunging and disallowing duplicative claims).

1909617, at *3 (Bankr. D. Del. May 2, 2013) (disallowing and expunging claim when the claimant "has not articulated a discernable basis for a claim against the Debtors").  The total lack of factual bases and proper supporting documentation strip the June Individual POCs of any *prima facie* validity, and they too should be disallowed and expunged.[45]

### III.  Mashinsky's Generalized Allegations of Fraud Were Extinguished and Are Now Barred by the Global Settlement in Sections 5.2 and 10.8 of the Plan.

39.    Even if the Mashinsky Proofs of Claim were entitled to *prima facie* validity, any such claim was extinguished by the Global Settlement contained in Sections 5.2 and 10.8 of the Plan.  The Global Settlement was the product of protracted, good faith, and arm's-length negotiations among the Debtors, the Official Committee of Unsecured Creditors, and other stakeholders.  (*See Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26041] (the "Coverick Plan Declaration") ¶ 23.)  It reflected a deliberate compromise designed to resolve the universe of customer claims arising from the prepetition misconduct by former FTX insiders.  In exchange for enhanced priority treatment and other consideration to customers, the Global Settlement released all current and potential claims relating to, among other things:

- "the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders;"

- "the purported commingling and misuse of customer deposits and corporate funds;"

---

[45] Broad reservation of rights language in a proof of claim is insufficient to preserve a claim based on new facts that were not asserted in the original proof of claim.  *In re LATAM Airlines Grp. S.A.*, 2023 WL 3574203, at *10 (Bankr. S.D.N.Y. May 19, 2023).  Courts are clear that "a creditor may not use the claims amendment process to circumvent the claims bar date."  *In re SemCrude, L.P.*, 443 B.R. 472, 477 (Bankr. D. Del. 2011).  "The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court" and "[a]n amendment to claim filed post bar date must be scrutinized to assure that it is not an attempt to file a new claim."  *In re Exide Techs.*, 601 B.R. 271, 291 (Bankr. D. Del. 2019).  As a result, any attempt by Mashinsky in the future to amend the Proofs of Claim to assert cognizable claims against the Trust would likewise fail.

- "the tracing of assets of individual Debtors to particular sources of funding;"

- "the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates;"

- "the Debtors' disregard for corporate separateness before the Petition Date;" and

- "the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases."

(Plan § 5.2; *see also* Coverick Plan Declaration ¶ 22.)

40.     Upon the Court's confirmation of the Plan on October 8, 2024, the Plan and the Global Settlement therein became "immediately effective and enforceable and deemed binding" on all claim holders, "irrespective of whether [they were] deemed to have accepted the Plan[.]"  (Plan § 13.1; *see also* Confirmation Order ¶ 112.)

41.     To the extent that the Mashinsky Claims adequately allege some variation of fraud, conspiracy to commit fraud, securities fraud, market manipulation, and/or contract interference (which they do not), these are exactly the kinds of generalized claims released by the Global Settlement.[46]   These claims are premised on broad and non-specific allegations of prepetition fraud and related misconduct by the Debtors, and are so general that it is impossible for the Trust to discern the precise conduct at issue.

42.     Thus, the Mashinsky Claims are exactly the character of claims that the Global Settlement was intended to extinguish.  The Debtors and Trust have long recognized that Mr. Bankman-Fried and certain other insiders committed fraud prepetition.  But individualized litigation of the resulting harm of such fraud to each customer was never a realistic option in these

---

[46]   To the extent the Mashinsky Proofs of Claim assert more individualized injuries by the Debtors, these claims are lifted from proofs of claim submitted by other claimants.  *See supra* n.19-20.  As previously discussed, these other claims are also entirely without merit or fail to relate to or support the Mashinsky Claims.  *See id.*

Chapter 11 cases.  The Global Settlement was designed precisely to avoid mass costly and value-destructive litigation by ensuring that no individual customer could augment its claim with theories of generalized harm that could be asserted by all customers.   But the Mashinsky Claims' allegations do precisely that:  rather than allege individualized harm, the Mashinsky Claims assert non-specific allegations of prepetition misconduct by the Debtors, which were unambiguously resolved by the Global Settlement.

43.     This Court previously rejected similar attempts to relitigate customer-wide issues that were resolved by the Plan and Global Settlement.  (*See* Aug. 12, 2025 Hr'g Tr. [D.I. 32344], at 39:15-21 ("If there was a valid claim under some sort of fraud, mismanagement, commingling claim, it has been compromised through the global settlement under the plan for the good of all creditors and customers of FTX[.]"); Nov. 24, 2025 Hr'g Tr. [D.I. 33909], at 30:9-13 ("The concerns here are generalized to all claimants and . . . would give rise to a reconsideration of the order for every creditor that is a subject of that order[.]").)   Similarly, this Court should reject Mashinsky's attempt to litigate universal fraud claims that were extinguished through the Global Settlement, lest Sections 5.2 and 10.8 of the Plan be rendered "meaningless or illusory" as to Mashinsky and his affiliated entities.  *Weinberg* v. *Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023).

## IV.     The Mashinsky Claims Should be Disallowed Because They Are Subject to the *In Pari Delicto* Doctrine.

44.     Assuming, *arguendo*, that the Mashinsky Claims are *prima facie* valid and not otherwise barred, they should still be disallowed by the application of the doctrine of unclean hands, or *in pari delicto*.  The doctrine provides that "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim."  *Off. Comm. of Unsecured Creditors* v. *R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001).  "As the bankruptcy trustee steps in the

shoes of the debtor, it is subject to the same defenses that could have been asserted against the debtor, including in pari delicto." *In re Liberty State Benefits of Del., Inc.*, 541 B.R. 219, 235 (Bankr. D. Del. 2015).

45.     Here, Mashinsky was criminally convicted for, among other things, having "illicitly manipulated the price of CEL" while "secretly selling [his] own CEL" tokens at artificially inflated prices.[47]  Because of his fraud, as the sentencing court recognized, "people lost their life savings," and "many people suffered severe psychological injuries from their financial losses."[48]  And Celsius itself acknowledged that Mashinsky and his prior management team are responsible for Celsius's downfall.  *See, e.g.*, D.I. 1 at ¶ 1, *Meghji* v. *Wolfgang*, Adv. Proc. No. 24-02091 (Bankr. S.D.N.Y).  Mashinsky's attempt to shift responsibility for his own admitted misconduct to the Trust's innocent creditors is beyond countenance, particularly after the Trust's creditors have themselves suffered losses due to the fraud committed by the Trust's own prepetition controlling insiders.  Because Mashinsky by his own admission bears direct responsibility for any harm suffered and for Celsius's own failure, any claims against the Trust seeking compensation for any such losses should be disallowed and expunged in their entirety. *See In re Benninger*, 357 B.R. 337, 352 (Bankr. W.D. Pa. 2006) (disallowing claims under the unclean hands doctrine).

### Reservation of Rights

46.     This Amended Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Trust to object to any claim on any grounds whatsoever.  The Trust expressly reserves all further substantive or procedural objections.  Nothing

---

[47]   Mashinsky Indictment ¶ 1.

[48]   Mashinsky Sentencing Transcript at 95:17-20.

contained herein is intended or should be construed as:  (a) an admission as to the validity of any claim against the Trust; (b) a waiver of the Trust's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Amended Objection or any order granting the relief requested by this Amended Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (f) a waiver of the Trust's rights under the Bankruptcy Code or any other applicable law.

## **Notice**

47.    Notice of this Objection has been provided to (i) Ruskin Moscou Faltischek P.C. as counsel of record to Mashinsky, and (ii) Mashinsky, on behalf of himself and the Mashinsky Entities, by certified mail at FCI Otisville; and (iii) all parties that have requested service pursuant to Bankruptcy Rule 2002 via CM/ECF.

## **Conclusion**

48.    For the foregoing reasons, the Trust respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, disallowing and expunging the Mashinsky Claims in their entirety.

Dated:  February 13, 2026
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        bellerb@sullcrom.com

*Counsel for the FTX Recovery Trust*