B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re _FTX Trading Ltd., et al._____ ,          Case No. _22-11068 (KBO)____

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Silvergate Bank and Silvergate Capital Corporation

_Argent Liquidation Trust_____          _See Attached Exhibit A_____
Name of Transferee                                Name of Transferor

Name and Address where notices to transferee          Court Claim # (if known): _4602_____
should be sent:  See Attached Exhibit B               Amount of Claim: _____
                                                      Date Claim Filed:  _06/30/2023_____

Phone:   _____          Phone: _____
Last Four Digits of Acct #: _____     Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):
   See Attached Exhibit B.

Phone:  _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____          Date: _03/31/2026_____
       Transferee/Transferee's Agent

_Penalty for making a false statement:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 & 3571.

**EXHIBIT A**

Silvergate Bank, Silvergate Capital Corporation, and their respective successors and assigns (together, "Silvergate") filed proofs of claim (and with each proof of claim addendum, the "Claims") against FTX Trading Ltd. and each of its affiliated debtors and debtors-in-possession (collectively, the "FTX Group"). As stated in more detail in the Claims, the Claims arise out of the FTX Group's extensive pattern of fraud, deceit, and violations of applicable law, which caused substantial harm and damage to Silvergate.

The Claims are substantively identical; Silvergate submitted a Claim against each of the FTX Group entities because the operations of the FTX Group are opaque to a third party and it was infeasible to determine which specific entities in the FTX Group caused harm to Silvergate. This problem is compounded by the extensive commingling of funds across the FTX Group entities, as detailed in the *Second Interim Report of John J. Ray III to the Independent Directors: The Commingling and Misuse of Customer Deposits at FTX.com* (*see* Dkt. No. 1704, Ex. A). Therefore, to ensure that Silvergate's rights were preserved against any FTX Group entity that caused them harm, Silvergate believed it was appropriate to file Claims against each entity in the FTX Group.

Silvergate's Claims have transferred in their entirety to Silvergate's successor-in-interest, Argent Liquidation Trust. In confirming Silvergate's bankruptcy plan[1] on November 13, 2025,[2] the Bankruptcy Court ordered that, "[o]n the Effective Date," the Claims "shall . . . automatically be deemed . . . irrevocably transferred, granted, assigned, conveyed, and delivered to the Liquidation Trust."[3] The Effective Date occurred on March 31, 2026.[4] The transferred Claims are set forth in the attached chart (**Addendum A**).

---

[1] *See* First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and its Affiliated Debtors at 58–67, *In re Silvergate Capital Corp., et al.*, Case No. 24-12158 (Bankr. D. Del. Nov. 13, 2025) [Dkt. No. 1077-1] (the "Silvergate Plan"), which incorporates the Liquidation Trust Agreement [Dkt. No. 1057-1], and Schedule of Retained Causes of Action [Dkt. No. 1017-8] (the "Schedule"), reproduced here in **Addendum B**.

[2] *See* Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and its Affiliated Debtors, *In re Silvergate Capital Corp., et al.*, Case No. 24-12158 (Bankr. D. Del. Nov. 13, 2025) [Dkt. No. 1077], reproduced here in **Addendum B**.

[3] *Id.* at 19, ¶ 13 ("On the Effective Date, the Debtors shall (i) automatically be deemed to have irrevocably transferred, granted, assigned, conveyed, and delivered to the Liquidation Trust all of their right, title, and interest in and to the Liquidation Trust Assets, including, without limitation, the Liquidation Trust Retained Causes of Action").

The Schedule specifically retains for the Liquidation Trust "any and all Causes of Action against" "FTX Trading Ltd, each of its debtor affiliates identified in FTX's jointly administered chapter 11 cases . . . and any of their respective affiliates – including without limitation any and all Causes of Action arising out of, under or related to claims asserted in" Silvergate's "proofs of claim filed in FTX's jointly administered chapter 11 cases." Schedule at 4, *In re Silvergate Capital Corp., et al.*, Case No. 24-12158 (Bankr. D. Del. Oct. 13, 2025) [Dkt. No. 1017-8].

[4] *See* Notice of Effective Date at 2, *In re Silvergate Capital Corp., et al.*, Case No. 24-12158 (Bankr. D. Del. Mar. 31, 2026) [Dkt. No. 1231].

**Addendum A**

| Name of Transferor(s) | Name of Debtor | Schedule No. | Date Claim Filed | Court Claim No. |
|---|---|---|---|---|
| Silvergate Bank<br><br>Silvergate Capital Corporation | FTX Services Solutions Ltd. | | 06/30/2023 | 4301 |
| | West Realm Shires Services Inc. | 5258632 | 06/30/2023 | 4302 |
| | Crypto Bahamas LLC | | 06/30/2023 | 4307 |
| | Maclaurin Investments Ltd. | | 06/30/2023 | 4311 |
| | Goodman Investments Ltd. | | 06/30/2023 | 4344 |
| | Alameda TR Systems S. de R. L. | | 06/30/2023 | 4353 |
| | Hilltop Technology Services LLC | | 06/30/2023 | 4358 |
| | Deck Technologies Holdings LLC | | 06/30/2023 | 4361 |
| | FTX US Trading, Inc. | | 06/30/2023 | 4472 |
| | LT Baskets Ltd. | | 06/30/2023 | 4473 |
| | Technology Services Bahamas Limited | | 06/30/2023 | 4481 |
| | FTX Canada Inc | | 06/30/2023 | 4522 |
| | Clifton Bay Investments LLC | | 06/30/2023 | 4534 |
| | Alameda Research Yankari Ltd | | 06/30/2023 | 4535 |
| | LedgerPrime Digital Asset Opportunities Master Fund LP | | 06/30/2023 | 4542 |
| | FTX Lend Inc. | | 06/30/2023 | 4554 |
| | Alameda Research KK | | 06/30/2023 | 4582 |
| | LedgerPrime LLC | | 06/30/2023 | 4583 |
| | Alameda Research Ltd | | 06/30/2023 | 4590 |
| | Deep Creek Ltd | | 06/30/2023 | 4598 |
| | LedgerPrime Ventures, LP | | 06/30/2023 | 4602 |
| | FTX Digital Holdings (Singapore) Pte Ltd | | 06/30/2023 | 4605 |
| | Blue Ridge Ltd | | 06/30/2023 | 4609 |
| | Verdant Canyon Capital LLC | | 06/30/2023 | 4614 |
| | Clifton Bay Investments Ltd | | 06/30/2023 | 4626 |
| | Digital Custody Inc. | | 06/30/2023 | 4630 |
| | FTX Japan Services KK | | 06/30/2023 | 4634 |

| Name of Transferor(s) | Name of Debtor | Schedule No. | Date Claim Filed | Court Claim No. |
|---|---|---|---|---|
| Silvergate Bank<br><br>Silvergate Capital Corporation | FTX US Services, Inc. | | 06/30/2023 | 4638 |
| | North Dimension Inc | | 06/30/2023 | 4640 |
| | Killarney Lake Investments Ltd | | 06/30/2023 | 4642 |
| | North Dimension Ltd | | 06/30/2023 | 4643 |
| | Hannam Group Inc | | 06/30/2023 | 4646 |
| | FTX Europe AG | | 06/30/2023 | 4650 |
| | Hawaii Digital Assets Inc. | | 06/30/2023 | 4655 |
| | Deck Technologies Inc. | | 06/30/2023 | 4658 |
| | LiquidEX LLC | | 06/30/2023 | 4660 |
| | Quoine Pte Ltd | | 06/30/2023 | 4661 |
| | West Realm Shires Financial Services Inc. | | 06/30/2023 | 4667 |
| | Atlantis Technology Ltd. | | 06/30/2023 | 4672 |
| | North Wireless Dimension Inc. | | 06/30/2023 | 4673 |
| | FTX Japan Holdings K.K. | | 06/30/2023 | 4676 |
| | Island Bay Ventures Inc | | 06/30/2023 | 4680 |
| | Paper Bird Inc | | 06/30/2023 | 4683 |
| | FTX Trading Ltd. | | 06/30/2023 | 4684 |
| | Cedar Grove Technology Services, Ltd. | | 06/30/2023 | 4687 |
| | West Realm Shires Inc. | | 06/30/2023 | 4688 |
| | Pioneer Street Inc. | | 06/30/2023 | 4689 |
| | FTX Japan K.K. | | 06/30/2023 | 4691 |
| | Ledger Holdings Inc. | | 06/30/2023 | 4692 |
| | LedgerPrime Bitcoin Yield Enhancement Fund, LLC | | 06/30/2023 | 4695 |
| | FTX Digital Assets LLC | | 06/30/2023 | 4696 |
| | Cardinal Ventures Ltd | | 06/30/2023 | 4699 |
| | LedgerPrime Bitcoin Yield Enhancement Master Fund LP | | 06/30/2023 | 4700 |
| | Alameda Research LLC | | 06/30/2023 | 4702 |

2

| Name of Transferor(s) | Name of Debtor | Schedule No. | Date Claim Filed | Court Claim No. |
|---|---|---|---|---|
| Silvergate Bank<br><br>Silvergate Capital Corporation | Bancroft Way Ltd | | 06/30/2023 | 4703 |
| | Global Compass Dynamics Ltd. | | 06/30/2023 | 4706 |
| | Analisya Pte Ltd | | 06/30/2023 | 4709 |
| | FTX Ventures Ltd. | | 06/30/2023 | 4713 |
| | Cedar Bay Ltd | | 06/30/2023 | 4715 |
| | FTX EMEA Ltd. | | 06/30/2023 | 4717 |
| | Cottonwood Technologies Ltd | | 06/30/2023 | 4718 |
| | FTX Property Holdings Ltd | | 06/30/2023 | 4720 |
| | FTX Equity Record Holdings Ltd | | 06/30/2023 | 4721 |
| | DAAG Trading, DMCC | | 06/30/2023 | 4723 |
| | FTX Marketplace, Inc. | | 06/30/2023 | 4726 |
| | FTX Products (Singapore) Pte Ltd | | 06/30/2023 | 4730 |
| | LedgerPrime Digital Asset Opportunities Fund, LLC | | 06/30/2023 | 4735 |
| | FTX Hong Kong Ltd | | 06/30/2023 | 4737 |
| | FTX Exchange FZE | | 06/30/2023 | 4739 |
| | Alameda Aus Pty Ltd | | 06/30/2023 | 4741 |
| | FTX EU Ltd. | | 06/30/2023 | 4742 |
| | FTX Trading GmbH | | 06/30/2023 | 4744 |
| | GG Trading Terminal Ltd | | 06/30/2023 | 4747 |
| | Liquid Securities Singapore Pte Ltd | | 06/30/2023 | 4748 |
| | Alameda Research (Bahamas) Ltd | | 06/30/2023 | 4751 |
| | Blockfolio, Inc. | | 06/30/2023 | 4753 |
| | Innovatia Ltd | | 06/30/2023 | 4757 |
| | Cottonwood Grove Ltd | | 06/30/2023 | 4759 |
| | Hive Empire Trading Pty Ltd | | 06/30/2023 | 4761 |
| | Zubr Exchange Ltd | | 06/30/2023 | 4763 |
| | Alameda Global Services Ltd. | | 06/30/2023 | 4766 |
| | FTX Certificates GmbH | | 06/30/2023 | 4767 |

3

| Name of Transferor(s) | Name of Debtor | Schedule No. | Date Claim Filed | Court Claim No. |
|---|---|---|---|---|
| Silvergate Bank<br><br>Silvergate Capital Corporation | Strategy Ark Collective Ltd. | | 06/30/2023 | 4772 |
| | Liquid Financial USA Inc. | | 06/30/2023 | 4774 |
| | FTX Zuma Ltd | | 06/30/2023 | 4775 |
| | Alameda Research Pte Ltd | | 06/30/2023 | 4778 |
| | Alameda TR Ltd | | 06/30/2023 | 4782 |
| | Euclid Way Ltd | | 06/30/2023 | 4784 |
| | Alameda Research Holdings Inc. | | 06/30/2023 | 4789 |
| | Good Luck Games, LLC | | 06/30/2023 | 4791 |
| | Quoine India Pte Ltd | | 06/30/2023 | 4793 |
| | Allston Way Ltd | | 06/30/2023 | 4794 |
| | Western Concord Enterprises Ltd. | | 06/30/2023 | 4797 |
| | FTX Crypto Services Ltd. | | 06/30/2023 | 4798 |
| | Quoine Vietnam Co. Ltd | | 06/30/2023 | 4799 |
| | West Innovative Barista Ltd. | | 06/30/2023 | 4801 |
| | FTX Switzerland GmbH | | 06/30/2023 | 4802 |
| | FTX Structured Products AG | | 06/30/2023 | 4806 |
| | FTX (Gibraltar) Ltd | | 06/30/2023 | 4809 |
| | Mangrove Cay Ltd | | 06/30/2023 | 4841 |

**Addendum B**

Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and its Affiliated Debtors [Dkt. No. 1077]

First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and its Affiliated Debtors [Dkt. No. 1077-1]

Notice of Filing Fifth Plan Supplement and Exhibits A and H [Dkt. Nos. 1070, 1070-1, 1070-8]

Liquidation Trust Agreement [Dkt. No. 1057-1]

Schedule of Retained Causes of Action [Dkt. No. 1017-8]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION, *et al.*[1]** | **Case No. 24-12158 (KBO)** |
| **Debtors.** | **(Jointly Administered)** |
| | Re: Docket No. 1071 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN OF
SILVERGATE CAPITAL CORPORATION AND ITS AFFILIATED DEBTORS**

Upon the filing by the above captioned debtors and debtors in possession (collectively, the "Debtors") of the *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1071] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan"),[2] which is attached hereto as **Exhibit A**; and the Court previously having approved the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 970] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") and the solicitation procedures related to the Disclosure Statement pursuant to the *Order Approving (I) Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing (II) Establishing Solicitation, Voting, and Tabulation Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, (V)*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Declarations (as defined herein), as applicable.

*Establishing Cure Procedures, and (VI) Granting Related Relief* [Docket No. 966] (the "Disclosure Statement Order"); and, as evidenced by the *Affidavit of Publication* [Docket No. 993] (the "Proof of Publication") and the *Affidavits of Service* [Docket Nos. 976, 982, 984, 989, 991, 995, 997 & 1005] (the "Affidavits of Service"), the Debtors having served the notice of Confirmation Hearing [Docket No. 972] (the "Confirmation Hearing Notice"), the Plan, the Disclosure Statement and the other documents required by the Disclosure Statement Order on the Holders of Claims and Interests and other parties in interest pursuant to the Disclosure Statement Order; and the Debtors having filed the *Notice of Filing of First Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1012] (as may be amended from time to time, the "First Plan Supplement"), the *Notice of Filing of Second Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1017] (as may be amended from time to time, the "Second Plan Supplement"), the *Notice of Filing of Third Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1054] (as may be amended from time to time, the "Third Plan Supplement"), the *Notice of Filing of Fourth Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1057] (as may be amended from time to time, the "Fourth Plan Supplement"), and the *Notice of Filing of Fifth Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1070] (as may be amended from time to time, the "Fifth Plan Supplement" and, together with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, and the Fourth Plan Supplement, the "Plan Supplement"); and the Court having considered the *Declaration of Ivona*

2

*Smith in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1060] (the "Confirmation Declaration"), the *Declaration of Ivona Smith in Support of the Releases Set Forth in the First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1061] (the "Release Declaration"), the *Declaration of Jeffrey Kopa in Support of the Confirmation of First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1062] (the "Kopa Declaration"), and the *Declaration of Clarissa D. Cu Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1063] (the "Voting Declaration," and together with the Confirmation Declaration, the Release Declaration and the Kopa Declaration, collectively, the "Confirmation Declarations"); and the Court having considered the record in the Chapter 11 Cases, the stakeholder support for the Plan established by the Voting Declaration, the compromises and settlements embodied in and contemplated by the Plan (including the Global Settlement and the Common Stock Settlement), and the evidence presented in support of confirmation of the Plan at the Confirmation Hearing held before the Court on November 13, 2025; and after due deliberation:

<div align="center">**IT IS HEREBY FOUND AND DETERMINED THAT**</div>

A.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

<div align="center">3</div>

B.      This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order hereon under Article III of the United States Constitution.

C.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      The Court takes judicial notice of (and deems admitted into evidence for purposes of confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including, without limitation, the Confirmation Hearing.

E.      The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and, as applicable, 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation. Further, to the extent applicable, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence. Each witness who testified (by declaration, proffer, or otherwise) on behalf of the Debtors in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

4

F.      The Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

G.      The Disclosure Statement, the Plan, the Confirmation Hearing Notice, the Proof of Publication, the forms of ballots (the "Ballots") for accepting or rejecting the Plan, and notices of non-voting status (the "Notices of Non-Voting Status") provided Holders of Claims and Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c). No other or further notice is necessary.

H.      In compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and as evidenced by the Proof of Publication and Affidavits of Service, Stretto, Inc. ("Stretto") (a) effectuated service of the appropriate solicitation packages, including the Disclosure Statement, the Plan, an appropriate Ballot, the Confirmation Hearing Notice, and the Disclosure Statement Order, to Holders of Claims in Class 5 (Indemnified Individuals Indemnifiable Claims) and Interests in Class 8 (Preferred Stock Interests), (b) effectuated service of the (i) Notice of Unimpaired Non-Voting Status, including the Opt-In Election Form annexed thereto as Annex A, on Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Subordinated Notes Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 11 (Bhatia Litigation Claims), (ii) Class 9 Notice of Unimpaired Non-Voting Status, including the Opt-In Election Form annexed thereto as Annex A, on all known registered Holders of Interests in Class 9 (Common Stock Interests), and (iii) Notice of Impaired Non-Voting Status, on Holders of Claims in Class 10 (Section 510(b) Claims), (c) effectuated service of the Confirmation Hearing Notice on all parties in interest, and (d) caused notice of the Confirmation Hearing to be published

5

in *The Wall Street Journal*. All parties required to be given notice of the Confirmation Hearing have been given due, proper, timely and adequate notice and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is necessary.

I. The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Court has considered the totality of the circumstances of the Chapter 11 Cases and found that the Debtors and all other constituencies acted in good faith. The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

J. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. As evidenced by the Voting Declaration, the Holders of Claims in Class 5 (Indemnified Individuals Indemnifiable Claims) and Interests in Class 8 (Preferred Stock Interests) have voted to accept the Plan in the numbers and amounts required by sections 1126(c) and (d) of the Bankruptcy Code, respectively. No other Class is entitled to vote on the Plan, as each such Class is either Unimpaired under the Plan (and therefore conclusively presumed to accept the Plan) or Impaired and to receive no recovery under the Plan (and therefore deemed to have rejected the Plan).

K. The documents contained in the Plan Supplement comply and are consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Liquidation Trust Agreement, and this

RLF1 34144092v.2

Confirmation Order (including any review and consent rights of certain parties as set forth in the Plan and the Liquidation Trust Agreement), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement (including, without limitation, the Liquidation Trust Agreement) at any time through and including the Effective Date.

L.    The Release Declaration reflects the Debtors' position that (i) Ms. Smith is independent and the appointment of Ms. Smith as the sole member of the Investigation Committee was appropriate, (ii) the investigative process employed by the Investigation Committee was thorough, complete and consistent with the Investigation Committee's fiduciary duties, (iii) the Investigation Committee's use of RLF was appropriate, and (iv) the results of the IC Investigation are reasonable. Further, the Release Declaration provides a sufficient basis for the Court to approve the release of Debtor and Estate Claims proposed in Plan Article IX.B and the Releasing Party Claims Proposed in Plan Article IX.C.

M.    The releases, exculpations and injunctions set forth in Article IX of the Plan and set forth in paragraph 9 below, are appropriate under applicable law.

1.    Releases by the Debtors. As set forth in the Confirmation Declarations, the releases being provided by the Debtors in favor of the Released Parties pursuant to Section IX.B of the Plan (the "Debtor Releases") are (i) fair, equitable and reasonable, (ii) integral elements of the Plan and resolution of the Chapter 11 Cases, without which the Debtors' ability to confirm the Plan would be impaired, (iii) narrowly tailored under the facts and circumstances of the Chapter 11 Cases and (iv) in the best interests of the Debtors, the Estates, creditors, and equity holders.  Accordingly, the Debtor Releases constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

2.    Releases by Holders of Claims and Interests.  As set forth in the Confirmation Declarations, the releases being provided by the Releasing Parties in favor of the Released Parties pursuant to Section IX.C of the Plan (the "Third Party Releases") are appropriate in that such releases are voluntary and consensual.

3.    Exculpation. As set forth in the Confirmation Declarations, the exculpations in favor of the Exculpated Parties in Section IX.D of the Plan (the "Exculpation

7

Provision") are appropriate in that the Exculpated Parties are estate fiduciaries and no Exculpated Party is being exculpated for acts or omissions that constitute actual fraud, gross negligence or willful misconduct. Accordingly, the Exculpation Provision complies with the standard articulated in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).

4. Injunction. As set forth in the Confirmation Declarations, the injunction set forth in Section IX.E of the Plan (the "Injunction Provision") is appropriate in that such injunction is necessary to implement, preserve and enforce the releases and exculpations set forth in Article IX of the Plan, and is narrowly tailored to achieve such purpose.

N. Entry into the Global Settlement and the Common Stock Settlement incorporated into the Plan is a sound exercise of the Debtors' business judgment. The Global Settlement and the Common Stock Settlement are good faith, arms'-length settlements and compromises, are in the best interests of the Debtors, their Estates, the Debtors' creditors and equity holders, and other parties in interest, and are fair, equitable, and within the range of reasonableness. Absent the Global Settlement and the Common Stock Settlement, the Debtors would become mired in protracted and costly litigation with certain creditors and equity holders, and would face substantial delays and uncertainty in making any distributions to creditors or equity holders. The Global Settlement and the Common Stock Settlement resolve complex disputes among key constituencies and provide a framework for an efficient and value-maximizing resolution of these Chapter 11 Cases.

O. On May 14, 2025, the Court entered a preliminary order [Docket No. 732] preliminarily approving the Global Settlement, including, among other things, the Debtors' entry into and performance under the Securities Litigation Settlement. On September 3, 2025, the S.D. Cal. District Court entered the Securities Litigation Final Approval Order approving the Securities Litigation Settlement on a final basis, together with orders approving attorneys' fees and expenses and a plan of allocation.

P.      The Debtors' Estates will be consolidated for the limited purpose of calculating and making distributions under the Plan.  Section 105(a) of the Bankruptcy Code empowers the Court to consolidate multiple debtors, including the limited consolidation of the Debtors' Estates into a single estate for certain limited purposes relating to the Plan, including distributions. Limited consolidation of the Debtors is an important element of the successful implementation of the Plan and the Debtors have demonstrated a sufficient basis for the consolidation.

Q.      Holders of Claims in Class 10 (Section 510(b) Claims) will not receive a distribution on account of their existing Claims. Notwithstanding that Class 10 (Section 510(b) Claims) is deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, and credible, has not been controverted by other evidence, and establishes that the Plan does not discriminate unfairly against, and is fair and equitable with respect to Class 10 (Section 510(b) Claims) as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  Accordingly, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Class 10 (Section 510(b) Claims).

R.      On October 16, 2025, the Debtors filed the Cure and Assumption Notice which included a schedule listing certain potentially executory contracts and unexpired leases (the "Executory Contracts and Unexpired Leases") proposed to potentially be assumed by Reorganized Silvergate[3] or the Liquidation Trust, as applicable, and identifying the Cure Amount, if any, that the Debtors believed must be paid to cure any monetary defaults and pay all amounts accrued

---

[3]  "Reorganized Silvergate" means Silvergate Capital Corporation, from and after the Effective Date, as owned solely by Holders of reinstated Common Stock Interests. The term Reorganized Silvergate shall include the Subsidiary Debtors ((i) Silvergate Liquidation Corporation and (ii) Spring Valley Lots, LLC), as Reorganized Debtors from and after the Effective Date.

9

under such contracts and leases. The Cure and Assumption Notice was served on each non-Debtor counterparty (collectively, the "Counterparties") to the Executory Contracts and Unexpired Leases identified on the Assumption Schedule (the "Assumed Contracts") who were affected by such notice. *See* Docket No. 1038.   The service of the Cure and Assumption Notice, including the Assumption Schedule, was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given. All Counterparties to the Assumed Contracts have had a reasonable opportunity to object both to the Cure Amount listed on the Cure and Assumption Notices and to the assumption of the Assumed Contracts. The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Effective Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. Unless otherwise agreed to by the Debtors and the applicable Counterparty, the Cure Amounts set forth in the Assumption Schedule are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Executory Contracts and Unexpired Leases. Accordingly, all of the requirements of sections 1123(b)(2) and 365(b) of the Bankruptcy Code have been satisfied for the assumption by the Debtors of each of the Assumed Contracts.

S.      The Liquidation Analysis provided in the Disclosure Statement and the other evidence presented, proffered, or adduced at the Confirmation Hearing (i) are persuasive and credible; (ii) have not been controverted by other evidence; and (iii) establish that each Holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less

10

than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

T.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan made after solicitation of the Plan or in this Confirmation Order constitute technical or clarifying changes, do not materially and adversely affect or change the treatment of any Holder of a Claim or Interest, and do not require re-solicitation of votes with respect to the Plan.

U.      All documents necessary to implement the Plan, including the exhibits thereto, the documents contained in the Plan Supplement (including, without limitation, the Liquidation Trust Agreement), and all other documents contemplated or required to be entered into and executed to effectuate the Plan, are essential elements of the Plan, and entry into each such document is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors, the Estates, the Debtors' creditors, and other parties in interest.

## IT IS HEREBY ORDERED THAT

**A.      Confirmation of the Plan**

1.      The Plan is confirmed and approved in all respects, as set forth herein.

2.       All objections or responses, if any, to confirmation of the Plan that have not been withdrawn, waived, settled, or resolved prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing or in this Confirmation Order are hereby overruled and denied on the merits, with prejudice. All objections to the entry of this Confirmation Order or to the relief granted herein that were not timely filed and served prior to the Plan Objection Deadline are deemed waived and forever barred.

11

RLF1 34144092v.2

3.      The Global Settlement, which was preliminarily approved by this Court's order dated May 14, 2025 [Docket No. 732], is approved on a final basis pursuant to Bankruptcy Rule 9019 and shall become effective upon the occurrence of the Effective Date of the Plan.

4.      The Common Stock Settlement is approved pursuant Bankruptcy Rule 9019.

5.      The terms of the Plan (including without limitation the Global Settlement and the Common Stock Settlement), the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date.  As provided for in the Plan, subject to any review and consent rights of certain parties as set forth in the Plan and the Plan Supplement, the Debtors may alter, amend, or modify the Plan and the Plan Supplement (including, without limitation, the Liquidation Trust Agreement) at any time through and including the Effective Date in accordance with the terms of the Plan.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, provision, or document.

6.      To the greatest extent permitted under the Bankruptcy Code and the Bankruptcy Rules, and in consideration for the classifications, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and other controversies released, settled, compromised, satisfied, or otherwise resolved pursuant to the Plan and such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

RLF1 34144092v.2

7.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.  In accordance with section 1142(b) of the Bankruptcy Code, upon the entry of this Confirmation Order, the Debtors, Reorganized Silvergate, the Liquidation Trust, the Liquidation Trustee, and the Disbursing Agents, as applicable, each acting by and through their respective officers and agents, are authorized to take any and all actions contemplated under the Plan to be taken on or after entry of the Confirmation Order and/or otherwise necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the (a) Global Settlement and (b) Common Stock Settlement, (ii) establishing the Liquidation Trust and entering into the Liquidation Trust Agreement (substantially in the form included in the Plan Supplement), (iii) performing their respective obligations under the Liquidation Trust Agreement in accordance with the Plan, (iv) executing the New Organizational Documents, and (v) executing any such other agreements and documentation reasonably desired or necessary to consummate and document the transactions contemplated by the Plan (including any amendments, modifications, and supplements thereto), as applicable and in each case without any further order of the Court.  The Liquidation Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order and, upon its execution, the Liquidation Trust Agreement, pursuant to the Plan and this Confirmation Order, will constitute a legal, valid, enforceable and binding agreement of the parties thereto.

8.     Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary

13

or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

9.     The amendments and modifications to the *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 969] since the filing thereof, including as reflected herein, and incorporated into and reflected in the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a).

10.     For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and shall be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: (a) the Debtor Releases (Article IX.B); (b) the Third Party Releases (Article IX.C); (c) the Exculpation Provision (Article IX.D); and (d) the Injunction Provision (Article IX.E), as follows:

a)  Debtor Releases (Article IX.B):

> Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors and their Estates, Reorganized Silvergate and each of their respective current and former Affiliates (with respect to non-Debtors, to the extent permitted by applicable non-bankruptcy law), the Liquidation Trustee, the Liquidation Trust Board, the Liquidation Trust, and any and all other Entities who may purport to assert any Cause of Action by, through, for, or because of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, in each case, whether prepetition or postpetition (including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, Reorganized Silvergate or the Liquidation Trust), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security or other debt instrument of the Debtors, the formulation, preparation, dissemination, negotiation of the

14

RLF1 34144092v.2

RSA, the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing (collectively, the "Debtor and Estate Claims"). Notwithstanding anything to the contrary in the foregoing and subject to the provisos later in the paragraph, the releases set forth in this Article IX.B shall not release (i) any Liquidation Trust Retained Causes of Action or Reorganized Silvergate Retained Causes of Action, (ii) any Released Party (other than any Indemnified Individual) from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan; provided that for the avoidance of doubt, and in accordance with the terms of the Global Settlement, the Debtors and their Estates are waiving and releasing all Debtor and Estate Claims against all Indemnified Individuals.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this Article IX.B by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article IX.B is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Debtor; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates, the Liquidation Trustee on behalf of the Liquidation Trust or Reorganized Silvergate, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

b)  Third Party Releases (Article IX.C):

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be

15

deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Reorganized Silvergate, the Liquidation Trustee, the Liquidation Trust Board, the Liquidation Trust and each other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition up until the Effective Date), including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, Reorganized Silvergate, the Liquidation Trustee or the Liquidation Trust that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security or other debt instrument of the Debtors, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, or negotiation of the RSA, the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition up until the Effective Date) related or relating to the foregoing (collectively, the "Releasing Party Claims").    Notwithstanding anything to the contrary in the foregoing, and subject to the provisos later in this paragraph, the releases set forth in this Article IX.C shall not release (i) any Liquidation Trust Retained Causes of Action or Reorganized Silvergate Retained Causes of Action, (ii) any Released Party (other than any Indemnified Individual) from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan; provided that for the avoidance of doubt, (x) and in accordance with the terms of the Global Settlement, the Releasing Parties are waiving and releasing all Releasing Party Claims against all Indemnified Individuals; and (y)(i) the Securities Plaintiffs' entry into the Securities Litigation Stipulation of Settlement shall not be construed as having deemed the Securities Plaintiffs or any Securities Litigation Class Members as Releasing

16

Parties or having opted into the third party releases provided in <u>Article IX.C</u>; and (ii) the releases granted by the Securities Plaintiffs and Securities Litigation Class Members, in their capacity as such, in the Securities Litigation pursuant to the Securities Litigation Stipulation of Settlement shall be governed by and implemented pursuant to the terms thereof and the Securities Litigation Final Approval Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this <u>Article IX.C</u> by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this <u>Article IX.C</u> is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Holders of Claims and Interests; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates, the Liquidation Trustee on behalf of the Liquidation Trust or Reorganized Silvergate, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

c) Exculpation Provision (Article IX.D):

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, in whole or in part, the Debtors, the formulation, preparation, dissemination, negotiation, of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of Cash under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon Consummation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws

17

RLF1 34144092v.2

with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

d)  Injunction Provision (Article IX.E):

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE (1) BEEN RELEASED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C OR (2) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.D, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, REORGANIZED SILVERGATE, THE LIQUIDATION TRUST OR THE RELEASED PARTIES (TO THE EXTENT OF THE RELEASES PROVIDED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C WITH RESPECT TO THE RELEASED PARTIES), OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO ARTICLE IX.D WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (IV) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT (WHICH MAY BE A PROOF OF CLAIM) FILED WITH THE BANKRUPTCY

18

COURT IN ACCORDANCE WITH THE TERMS OF THIS PLAN
EXPLICITLY PRESERVING SUCH SETOFF.

11.    For the further avoidance of doubt, the releases granted by the Securities Plaintiffs and members of the Securities Litigation Settlement Classes through the Securities Litigation Settlement do not impact the allowance or treatment of any Class 8 Preferred Stock Interest or Class 9 Common Stock Interest (in each case, in their capacity as such) held by a member of a Securities Litigation Settlement Class that is also a Holder of such Interest as of the Distribution Record Date.

12.    Contemporaneously with the occurrence of the Effective Date, or as soon as reasonably practicable thereafter, the Debtors shall file and serve a notice, substantially in the form attached hereto as **Exhibit B**, upon all parties listed in the creditor matrix maintained by Stretto informing them of the occurrence of the Effective Date.

B.    **Vesting of Assets in the Liquidation Trust**

13.    On the Effective Date, the Debtors shall (i) automatically be deemed to have irrevocably transferred, granted, assigned, conveyed, and delivered to the Liquidation Trust all of their right, title, and interest in and to the Liquidation Trust Assets, including, without limitation, the Liquidation Trust Retained Causes of Action, and, in accordance with section 1141 of the Bankruptcy Code, all such Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Liens, charges, Claims, encumbrances and interests (legal, beneficial, or otherwise), for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement, (ii) execute the Liquidation Trust Agreement and, along with the Liquidation Trustee, take all steps necessary to establish the Liquidation Trust pursuant to the Liquidation Trust Agreement and consistent with the Plan; and (iii) transfer the Liquidation Trust Initial Funding to an account designated by the Liquidation Trust or established

by the Liquidation Trust. The act of transferring the Liquidation Trust Assets to the Liquidation Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidation Trust as if the asset or right was still held by the Debtors. The Liquidation Trust shall be governed by the Liquidation Trust Agreement.

14. Upon the Effective Date, the Liquidation Trust, acting by and through the Liquidation Trustee, shall be the exclusive administrator of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of each Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for the purposes of carrying out the duties specified in the Plan and the Liquidation Trust Agreement.

15. In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust shall retain and may enforce all rights to commence, pursue, litigate, or settle, as appropriate, any and all Liquidation Trust Retained Causes of Action, whether arising before or after the Petition Date, and the Liquidation Trust's right to commence, prosecute, litigate, or settle such Liquidation Trust Retained Causes of Action, subject to the terms of the Plan and the Liquidation Trust Agreement, shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Liquidation Trust Retained Causes of Action against it as any indication that the Liquidation Trust will not pursue any and all available Liquidation Trust Retained Causes of Action against it.

16. To the extent that any of the Liquidation Trust Retained Causes of Action cannot be transferred to the Liquidation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code

RLF1 34144092v.2

or any other provision of the Bankruptcy Code, such Liquidation Trust Retained Causes of Action and rights shall be deemed to have been retained by the Estates or Reorganized Silvergate, as applicable, (other than for tax purposes) and the Liquidation Trustee shall be deemed to have been designated as a representative of the Estates or Reorganized Silvergate, as applicable, to the extent provided in the Liquidation Trust Agreement pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Liquidation Trust Retained Causes of Action, at the sole cost of the Liquidation Trust and as directed by counsel to the Liquidation Trust, on behalf of the Liquidation Trust for the benefit of the Beneficiaries. Notwithstanding anything to the contrary with respect to the foregoing, any and all proceeds of the Liquidation Trust Retained Causes of Action shall be distributed to the Beneficiaries consistent with the provisions of the Plan, this Order, and the Liquidation Trust Agreement. No Liquidation Trust Retained Cause of Action shall be deemed to have been waived or otherwise prejudiced if it cannot be transferred to the Liquidation Trust and shall be preserved for all purposes by the Estates or Reorganized Silvergate for the benefit of the Liquidation Trust and its Beneficiaries.

17. Unless a Cause of Action against a holder of a Claim or an Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including this Confirmation Order or by virtue of the allowance of such Claim under the Plan), such Cause of Action is expressly preserved for later adjudication by the Liquidation Trust or Reorganized Silvergate, as applicable. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Cause of Action upon or after the entry of this Confirmation Order or the Effective Date of the Plan based on the Plan or this Confirmation Order, except where such Causes of Action have been expressly released in the Plan or this Confirmation

21

Order. For the avoidance of doubt, any person, entity, or party specifically identified on Schedule 1 of Exhibit H (Schedule of Retained Causes of Action) to the Plan Supplement that would otherwise qualify as a Released Party or Exculpated Party under the Plan shall not be deemed a Released Party or Exculpated Party and shall not be released or exculpated pursuant to the Plan or this Order.

18.     In pursuing any claim, right or Liquidation Trust Retained Causes of Action, the Liquidation Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action might be brought under the Bankruptcy Code.

19.     The Liquidation Trust shall have the exclusive right to investigate, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any Liquidation Trust Retained Causes of Action that have not been released pursuant to the terms of the Plan without notice to or approval from the Bankruptcy Court or the Debtors.

20.     The Plan and the Plan Supplement provide adequate disclosure with respect to the Liquidation Trust Retained Causes of Action and all parties in interest received adequate notice thereof.

21.     The Plan and Plan Supplement are specific and unequivocal with respect to Causes of Action to be preserved and retained by the Liquidation Trust and Reorganized Silvergate as indicated on Schedule 1 and Schedule 2, respectively, of Exhibit H (Scheduled of Retained Causes of Action) to the Plan Supplement.

**C.     No Successor in Interest**

22.     Except as otherwise expressly provided in the Plan or this Order, the Liquidation Trust (a) is not agreeing to, and shall not be deemed to assume the obligation to, perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other

Entity relating to or arising out of the operations or the assets of the Debtors on or prior to the Effective Date, (b) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date, and (c) shall not have any successor, transferee, or similar liability of any kind or character.

23.     On the Effective Date, the Liquidation Trust shall establish the Indemnification Reserves, the Disputed Claims Reserve, and the Data Retention and Protection Reserve.  The Liquidation Trust is authorized to establish such other reserves as the Liquidation Trustee, with the consent of the Required Preferred Stockholders, reasonably determines necessary or appropriate to facilitate consummation of the Plan and the occurrence of the Effective Date.

**D.     Vesting of Assets in Reorganized Silvergate**

24.     Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Reorganized Silvergate Assets shall vest in Reorganized Silvergate, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation Order.  On and after the Effective Date, Reorganized Silvergate may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Reorganized Silvergate Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

25.     In accordance with section 1123(b) of the Bankruptcy Code, Reorganized Silvergate shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Reorganized Silvergate Retained Causes of Action, whether arising before or after the Petition Date, and Reorganized Silvergate's right to commence, prosecute or settle such Reorganized Silvergate Retained Causes of Action shall be preserved notwithstanding the occurrence of the

23

Effective Date.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Reorganized Silvergate Retained Causes of Action against it as any indication that Reorganized Silvergate will not pursue any and all available Reorganized Silvergate Retained Causes of Action against it.

26.     In pursuing any claim, right or Reorganized Silvergate Retained Causes of Action, Reorganized Silvergate shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action might be brought under the Bankruptcy Code.

27.     The Plan and the Plan Supplement provide adequate disclosure with respect to the Reorganized Silvergate Retained Causes of Action and all parties in interest received adequate notice thereof.

**E.      Liquidation Trust Agreement; Liquidation Trustee**

28.     Entry into the Liquidation Trust Agreement is approved.  Further, the appointment of (i) Matthew Dundon of Dundon Advisors LLC, as Liquidation Trustee, is approved in all respects.  The Liquidation Trustee is hereby (a) authorized to (i) execute, perform, and carry out all rights and duties set forth in the Liquidation Trust Agreement and in the Plan, (ii) appear and be heard before the Court on all matters relating to the Chapter 11 Cases (as a representative of the Liquidation Trust and/or Reorganized Silvergate, as applicable) and/or section 1123(b) of the Bankruptcy Code, as applicable, (iii) as set forth in Article VI.H of the Plan and this Confirmation Order, pursue, prosecute, settle, and/or dispose of, in the name of the Estates, Reorganized Silvergate and/or the Liquidation Trust, any Liquidation Trust Retained Causes of Action, and (iv) present to creditors, other courts of competent jurisdiction, and any other party the Liquidation Trust Agreement, the Plan and this Confirmation Order as evidence of its authority; and (b) vested

with all of the powers and authority set forth in the Plan and the Liquidation Trust Agreement, as applicable. The compensation of the Liquidation Trustee as set forth in the Plan Supplement is approved in all respects and the Liquidation Trustee shall perform its duties in its capacity as such as set forth in the Plan and the Liquidation Trust Agreement.

29.     The Liquidation Trust Beneficial Interests are not intended to be "securities" under applicable laws, but if such interests constitute securities, the issuance of such securities under the Plan shall be exempt pursuant to section 1145 of the Bankruptcy Code, to the extent such exemption is available, from the registration requirements of Section 5 of the Securities Act of 1933, as amended (the "Securities Act") and any other applicable securities laws requiring registration of securities. Moreover, if the Liquidation Trust Beneficial Interests constitute securities, any and all such beneficial interests that constitute securities shall be tradeable under the Securities Act by the recipients thereof (i) if either (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and the rules and regulations of the SEC, if any, applicable at the time of any future transfer of such beneficial interests are available or (y) the resales are otherwise exempt from registration under the Securities Act, and (ii) only to the extent expressly permitted under the terms of the Liquidation Trust Agreement.

30.     To the extent expressly permitted under the terms of the Liquidation Trust Agreement, the Liquidation Trust Beneficial Interests may be made eligible for clearance and trading through the book-entry facilities of DTC.

31.     For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall relieve the Liquidation Trust or any other party from complying with federal and state securities laws. The Liquidation Trust shall be subject to the continuing jurisdiction of this Court.

**F.      Privilege**

32.     As set forth in the Liquidation Trust Agreement, all attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "LT Privileges") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors) (collectively, the "LT Privilege Transfer Parties") related in any way to the Liquidation Trust Assets and the purpose of the Liquidation Trust or Reorganized Silvergate Assets (the "LT Transferred Privileged Information") are hereby transferred and assigned to the Liquidation Trust and Reorganized Silvergate jointly, which joint privilege shall be subject to the terms of the Business Records Access Agreement (as defined in the Liquidation Trust Agreement).   The LT Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital, and whether or not previously disclosed or discussed.   For the avoidance of doubt, the LT Privileges shall include any right to preserve or enforce a LT Privilege that arises from any joint defense, common interest, or similar agreement involving any of the LT Privilege Transfer Parties.

33.     The foregoing transfer and assignment shall vest the LT Privileges concerning the LT Transferred Privileged Information in the Liquidation Trust and Reorganized Silvergate jointly, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. For the avoidance of doubt and notwithstanding anything to the contrary in this Order, Confidential Supervisory Information (as defined in 12 C.F.R. § 261.2) shall remain subject to the rights and privileges of applicable regulators and nothing in this Order shall authorize the disclosure of any Confidential Supervisory Information absent applicable regulatory approval or otherwise in accordance with applicable non-bankruptcy law.

RLF1 34144092v.2

34.     Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no LT Privileges shall be waived by the transfer and assignment of the LT Privileges or the production of any LT Transferred Privileged Information to the Liquidation Trust or Reorganized Silvergate, or any of their respective employees, the Liquidation Trustee, the Liquidation Trust Board Members, professionals or representatives, or by disclosure of such LT Transferred Privileged Information between the LT Privilege Transfer Parties, on the one hand, and the Liquidation Trust and/or Reorganized Silvergate, as applicable, on the other hand, or any of their respective employees, the Liquidation Trustee, the Liquidation Trust Board, professionals or representatives.  For the avoidance of doubt, any access provided to Reorganized Silvergate of the Debtors' books and records pursuant to [Article V.D.4] of the Plan shall not be deemed a waiver of any LT Privileges and any LT Transferred Privileged Information received by Reorganized Silvergate in connection therewith shall be subject to the joint privilege and the terms set forth in the Business Records Access Agreement.

## G.     Cancellation of Existing Securities and Agreements

35.     Except for the reinstatement of the Common Stock Interests and as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, or the Plan Supplement, on the Effective Date, all certificates, shares, notes, bonds, indentures, agreements, purchase rights, or other instruments or documents (including, without limitation, the SC Trusts Documents), directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest or equity in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest (and the obligations of the Debtors and the Indenture Trustees, as applicable, thereunder) shall be deemed automatically cancelled,

27

terminated, surrendered, and of no further force or effect, without further act or action under any applicable agreement, law, regulation, order, or rule, <u>provided</u>, <u>however</u>, that notwithstanding the occurrence of the Effective Date, such cancelled certificates, shares, notes, bonds, indentures, agreements, purchase rights, or other instruments or documents (including, without limitation, the SC Trusts Documents) shall continue in effect solely for the purposes of allowing Holders of Claims or Interests (including, without limitation, Allowed SC Trusts Claims and Indemnified Individuals' Indemnifiable Claims) to receive and accept their respective Distributions under the Plan on account of such Claims and Interests (with all Allowed SC Trusts Claims being distributed to (or at the direction of) the SC Trusts Indenture Trustees), if any, subject to the SC Trusts Indenture Trustee Charging Liens (for the avoidance of doubt, as set forth in and subject to Article V.M of the Plan.

**H.      New Organizational Documents**

36.      On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized Silvergate's certificates of incorporation and bylaws (and other analogous formation and constituent documents) shall be amended, amended and restated or replaced with the New Organizational Documents set forth in the Plan Supplement.  The New Organizational Documents shall, among other things: (a) reinstate all Allowed Common Stock Interests such that Holders of Common Stock Interests shall be the owners of Reorganized Silvergate; (b) reinstate all Intercompany Interests; and (c) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities.  Reorganized Silvergate may amend and restate its certificate of incorporation or other formation and constituent documents as permitted by the Laws of its respective jurisdiction of formation and the terms of the New Organizational Documents and the Plan.

## I.     Directors and Officers of Reorganized Silvergate

37.     The designation of the members or the persons proposed to serve on the initial board of directors of Reorganized Silvergate as set forth in the Plan Supplement is approved and shall be effective as of the Effective Date without further action by any party. As of the Effective Date, all of the Debtors' board members, directors, officers, and managers, as applicable, shall cease to hold office or have any authority from and after such time, shall have no continuing obligations to Reorganized Silvergate on or after the Effective Date, and each such board member, director, officer, and manager, as applicable, shall be deemed to have resigned or shall otherwise cease to be a board member, director, officer, and manager, as applicable, on the Effective Date. Each of the board members, directors, officers, and managers, as applicable, of Reorganized Silvergate shall serve pursuant to the terms of the applicable organizational documents of Reorganized Silvergate and may be designated, replaced, or removed in accordance with such applicable organizational documents.

## J.     Governmental Approvals

38.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.  In accordance with section 1142(b) of the Bankruptcy Code, to the extent not previously authorized, the Debtors and Reorganized Silvergate, as applicable, and the appropriate officers, representatives, and members of the boards of directors thereof shall be authorized to, and may, issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms

29

and conditions of the Plan, including the transactions contemplated thereby, and all such other actions delineated in Article V of the Plan or otherwise contemplated by the Plan, including the conversion, merger, or dissolution of any Debtor, without the need for any further approvals, authorization, or consents, in each case, subject to the terms of the Plan and this Confirmation Order.

39.     Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state, commonwealth, or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

**K.     Administrative Expense Bar Date**

40.     Except as otherwise ordered by the Bankruptcy Court, and except as otherwise provided in the Plan or this Confirmation Order, requests for payment of any Administrative Expense Claims must be Filed on or before the Administrative Expense Claims Bar Date (*i.e.*, thirty (30) days after the Effective Date). Such request for payment of any Administrative Expense Claim must include at a minimum: (i) the name of the holder of the Administrative Expense Claim; (ii) the asserted amount of the Administrative Expense Claim; (iii) the basis of the Administrative Expense Claim; and (iv) supporting documentation for the Administrative Expense Claim. Notwithstanding the foregoing, any and all claims of the Indemnified Individuals, for indemnification, contribution, advancement, or reimbursement shall not be subject to the

30

RLF1 34144092v.2

Administrative Expense Claims Bar Date or the procedures set forth in this paragraph, and shall instead be governed and treated in accordance with Article V.C.2 of the Plan. **FAILURE TO TIMELY AND PROPERLY FILE AND SERVE SUCH REQUEST FOR PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISALLOWED**.

**L.      Professional Fee Claims**

41.      In accordance with Article II.B of the Plan, all Professionals seeking an award by the Court of Professional Fee Claims shall file and serve on the Debtors, the Liquidation Trust, and such other Persons who are designated by the applicable Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order, or any other applicable order of the Bankruptcy Court, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases by **no later than forty-five (45) days after the Effective Date.** Objections to any Professional Fee Claims must be filed and served on the Debtors, the Liquidation Trust, the U.S. Trustee, the Ad Hoc Preferred Stockholder Group, and the requesting party no later than twenty calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors or Liquidation Trust, as applicable, the Ad Hoc Preferred Stockholder Group, and the party requesting compensation of a Professional Fee Claim).

**M.      Payment of Statutory Fees**

42.      Article II.F of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors consistent with Article II.F of the Plan. Notwithstanding anything

31

to the contrary in the Plan, the Debtors, the Liquidation Trustee, and Reorganized Silvergate agree that the Debtors shall be solely liable to pay Quarterly Fees on account of all disbursements made prior to the Effective Date. After the Effective Date, the Debtors, the Liquidation Trustee and Reorganized Silvergate agree that the Liquidation Trust shall be responsible for payment of Quarterly Fees on all disbursements on and after the Effective Date, other than disbursements made to or for the benefit of Reorganized Silvergate (which the Debtors, the Liquidation Trustee and Reorganized Silvergate agree shall be the responsibility of Reorganized Silvergate), provided that with respect to disbursements to the Liquidation Trust, Quarterly Fees shall be due only on the disbursement of Cash on the Effective Date to the Liquidation Trust, whether such Cash will constitute a Liquidation Trust Asset on the Effective Date or be transferred to the Professional Fee Escrow Account, the Indemnification Reserves, the Data Retention and Protection Reserve, or the Disputed Claims Reserve, and no further Quarterly Fees will be due and payable by the Debtors or the Liquidation Trust upon any subsequent disbursements made by the Liquidation Trust from such reserves or such Cash that is transferred to the Liquidation Trust on the Effective Date. The Debtors, the Liquidation Trustee and Reorganized Silvergate agree that Reorganized Silvergate shall be responsible for any disbursements made by Reorganized Silvergate after the Effective Date; provided that, for the avoidance of doubt, the Debtors, the Liquidation Trustee and Reorganized Silvergate agree that the Liquidation Trust shall not be responsible for any Quarterly Fees incurred in connection with disbursements made by Reorganized Silvergate after the Effective Date. The Debtors, the Liquidation Trustee, and Reorganized Silvergate agree that Liquidation Trustee shall be responsible for payment of Quarterly Fees payable on account of disbursements made by the Liquidation Trustee from the monetization of the Liquidation Trust Retained Causes of Action. As set forth in Article II.F, each and every one of the Debtors,

RLF1 34144092v.2

Reorganized Silvergate, or the Liquidation Trust shall remain responsible for the payment of Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything in the Plan or herein to the contrary, (i) Quarterly Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to the Quarterly Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan. For the avoidance of doubt, the agreements between the Debtors, the Liquidation Trustee, and Reorganized Silvergate in this paragraph shall not be binding on the U.S. Trustee.

**N.      Reservation of Rights With Respect to Indemnified Individuals Fees & Expenses**

43.      Entry of the Confirmation Order shall not be deemed to waive any rights to contest or object to any portion of the invoices submitted by the Indemnified Individuals in connection with the Go-Forward Chapter 11 Budget, the Excess Go-Forward Fee Amounts, or otherwise as set forth in the Indemnification Settlement Term Sheet and the Debtors and the Ad Hoc Preferred Stockholder Group expressly reserve all such rights.

**O.      Executory Contracts and Unexpired Leases**

44.      The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article X of the Plan are hereby approved in their entirety.

45.      As of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (a) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (c) is the subject of a motion to assume filed by the Debtors on

33

RLF1 34144092v.2

or before the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; (e) is an Insurance Policy; or (f) is identified for assumption on the Assumption Schedule included in the Plan Supplement, which schedule shall be in form and substance reasonably acceptable to the Required Preferred Stockholders. For the avoidance of doubt, no Executory Contract or Unexpired Lease shall be assumed merely by virtue of its inclusion on the notices of potential assumption filed at Docket No. 1031.

46. Subject to the occurrence of the Effective Date, entry of this Confirmation Order shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination that the Liquidation Trust or Reorganized Silvergate, as applicable, has provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Liquidation Trust or Reorganized Silvergate, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

47. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors reserve the right to alter, amend, modify, or supplement the Assumption Schedules to add or remove any Executory Contract or Unexpired Lease to or from the Assumption Schedules at any time through and including the Effective Date, subject to any review and consent rights of certain parties as set forth in the Plan and the Plan Supplement.

48. In the event that the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 3 (General Unsecured Claims).

RLF1 34144092v.2

Such Claim shall be forever barred and shall not be enforceable against the Debtors, their respective Estates, or the Liquidation Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with Stretto and served upon counsel for the Debtors or Liquidation Trust, as applicable, by the later of (a) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (b) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.

**P.      Release of Liens**

49.      Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors, Reorganized Silvergate, or the Liquidation Trustee, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the Liquidation Trust.

**Q.      Securities and Exchange Commission**

50.      The Debtors and the Liquidation Trustee shall not destroy or otherwise abandon any documents or records without providing advance notice to the SEC (c/o Neal Jacobson, U.S. Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, NY 10004, jacobsonn@sec.gov) and seeking further authorization from this Court.

**R.      Centerview Partners LLC**

51.     With respect to Claim No. 157 (the "Centerview Claim") filed by Centerview Partners LLC ("Centerview"), as of the Effective Date, the Centerview Claim shall be a Disputed Claim, and the Debtors shall fund the Disputed Claims Reserve with $7,611,000 (the "Centerview Disputed Claims Funding") on account of the Centerview Claim. In addition, the Liquidation Trustee shall have 60 days from the Effective Date of the Plan to file its objection to the Centerview Claim (the "Centerview Claim Objection") with the Court (the "Centerview Claim Objection Deadline"). The Centerview Claim Objection Deadline may not be extended for any reason other than the mutual agreement of Centerview and the Liquidation Trustee.

52.     In the event that the Liquidation Trustee does not file the Centerview Claim Objection on or before the Centerview Claim Objection Deadline, the Centerview Claim will be automatically deemed an Allowed General Unsecured Claim and will be immediately paid in full, plus Post-Petition Interest at 9% per annum from the Effective Date.  For the avoidance of doubt, if the Liquidation Trustee timely files a Centerview Claim Objection, whether Post-Petition Interest accrues on the Centerview Claim and at what amount, shall be determined by the Court or as otherwise agreed to by the Liquidation Trustee and Centerview.  The Centerview Disputed Claims Funding shall remain on deposit in the Disputed Claims Reserve and shall not be withdrawn, spent or committed with respect to any other claim until (i) the expiration of the Centerview Claim Objection Deadline without an objection being filed, (ii) the entry of a final order allowing or disallowing the Centerview Claim, or (iii) as may otherwise be agreed to by the Liquidation Trustee and Centerview. All parties' rights are reserved with respect to the Centerview Claim.

RLF1 34144092v.2

**S.     Transition and Cooperation Between the Liquidation Trust and Reorganized Silvergate**

53.     The Liquidation Trust, the Debtors, and Reorganized Silvergate, shall in good faith reasonably cooperate with each other in connection with (i) transitioning the (a) Reorganized Silvergate Assets to Reorganized Silvergate and (b) Liquidation Trust Assets to the Liquidation Trust, (ii) the Liquidation Trust's execution of responsibilities under the DFPI C&D, and (iii) effecting the transition from the Debtors to the Liquidation Trust of administration of the Liquidation Trust Assets, in each case, which cooperation shall not be unreasonably withheld, conditioned, or delayed. The Liquidation Trust and Reorganized Silvergate may, but are not required to, enter into documentation formalizing their cooperation with one another.

54.     From and after entry of this Order, the Debtors and their professionals, including the professionals retained by the Debtors during the Chapter 11 Cases, shall use commercially reasonable efforts to cooperate with the Liquidation Trust and Liquidation Trustee and their professionals in effecting the transition from the Debtors to the Liquidation Trust of administration of the Liquidation Trust Assets, as set forth in the Plan, the Liquidation Trust Agreement and the Confirmation Order. Such cooperation shall include, but not be limited to, providing the Liquidation Trust with access to all documents and business records of the Debtors necessary for the disposition and liquidation of Liquidation Trust Assets, including without limitation the Liquidation Trust Causes of Action, and any objections to asserted Claims, except, in each case, to the extent necessary to (a) ensure compliance with any applicable law or an order of the Bankruptcy Court, (b) preserve any applicable privilege (including attorney-client privilege) that is not assigned to the Liquidation Trust pursuant to [Section 2.5] of the Liquidation Trust Agreement, or (c) comply with any contractual confidentiality obligations; provided that such

37

parties shall use commercially reasonable efforts to obtain the necessary permission or consents, as applicable, to provide such access.

55.    The Debtors and their professionals shall, to the extent practicable (i) identify any evidence and information (a) the Liquidation Trustee reasonably requests in connection with the Liquidation Trust's investigation, prosecution or other pursuit, or defense (as applicable) of the Liquidation Trust Retained Causes of Action and objections to Disputed Claims or Interests and (b) Reorganized Silvergate reasonably requests in connection with Reorganized Silvergate's investigation, prosecution or other pursuit of the Reorganized Silvergate Retained Causes of Action; and (ii) identify and provide contact information for former employees or professionals of the Debtors with knowledge regarding any (a) Liquidation Trust Assets, Causes of Action, including the Liquidation Trust Retained Causes of Action, and/or Disputed Claims or Interests the Liquidation Trustee reasonably requests and (b) Reorganized Silvergate Assets, including the Reorganized Silvergate Retained Causes of Action, Reorganized Silvergate reasonably requests. Prior to the Effective Date, the Debtors' retained professionals shall be entitled to payment from the Debtors for services rendered pursuant to this section in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 137] and/or Article II.B of the Plan, and, on and after the Effective Date, the Liquidation Trust shall pay from the Liquidation Trust Assets and the Liquidation Trust Initial Funding, or Reorganized Silvergate shall pay, as applicable, the reasonable and documented fees, expenses, and costs incurred by any retained professional of the Debtors pursuant to this section (paragraphs 53-55) within five (5) business days of receipt of an invoice therefor.

38

RLF1 34144092v.2

**T.      Conditions Precedent to Effective Date**

56.      The provisions governing the conditions precedent to the Effective Date set forth in Article XI.B of the Plan are hereby approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such conditions precedent in accordance with Article XI.B of the Plan.

**U.      Effect of Non-Occurrence of Conditions to the Effective Date**

57.      If the Effective Date does not occur (except as provided in Article XII of the Plan), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, including any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors or any other Entity.

**V.      Miscellaneous**

58.      The terms and conditions of this Confirmation Order, the Plan, the Plan Supplement, and all exhibits thereto, and all other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan (i) shall become immediately enforceable, and the period in which an appeal must be filed shall commence upon the entry of this Confirmation Order, (ii) shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, and (iii) shall be deemed binding upon the Debtors, Reorganized Silvergate, any and all holders of Claims or Interests (irrespective of whether such holders voted to accept, or are deemed to have accepted, the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or in this Confirmation Order, and any and all non-Debtor parties to Executory Contracts or Unexpired

RLF1 34144092v.2

Leases with the Debtors.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

59.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

60.     Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of any stockholder, security holder, officer, director or other owner of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state(s) in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before the Court.

61.     Each term and provision of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are valid and enforceable pursuant to its terms, nonseverable and mutually dependent, are integral to the Plan and may not be deleted, amended, supplemented and/or modified except in accordance with Article XII of the Plan.

RLF1 34144092v.2

41

62.     To the extent of any inconsistency between this Confirmation Order and the Plan or the Plan Supplement, this Confirmation Order shall govern.

63.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (i) Reorganized Silvergate and its counsel; (ii) the Liquidation Trust and its counsel; (iii) the U.S. Trustee; (iv) counsel to the Ad Hoc Preferred Stockholder Group; (v) any party that has filed a renewed request after the Effective Date to receive documents pursuant to Bankruptcy Rule 2002; and (vi) any party known to be directly affected by the relief sought.

64.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Confirmation Order and all matters arising in and under the Chapter 11 Cases, as set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

**Dated: November 13th, 2025**
**Wilmington, Delaware**

**KAREN B. OWENS**
**CHIEF JUDGE**

RLF1 34144092v.2

**Exhibit A**

**Plan**

*Confirmation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Silvergate Capital Corporation., *et al.*,[1] | Case No.  24-12158 (KBO) |
| Debtors. | (Jointly Administered) |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## SILVERGATE CAPITAL CORPORATION AND ITS AFFILIATED DEBTORS

George E. Zobitz (admitted *pro hac vice*)
Paul H. Zumbro (admitted *pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
Email:    jzobitz@cravath.com
          pzumbro@cravath.com

Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
Emily R. Mathews (No. 6866)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:    heath@rlf.com
          merchant@rlf.com
          queroli@rlf.com
          mathews@rlf.com

*Co-Counsel to the Debtors and Debtors in Possession*

Dated: November 12, 2025
Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follow: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

Docket No. 1071
Date Filed: 11/12/25

RLF1 34145408v.2

TABLE OF CONTENTS

                                                                                                Page

INTRODUCTION .................................................................................................................1

ARTICLE I:  DEFINED TERMS, RULES OF INTERPRETATION,
        COMPUTATION OF TIME, AND GOVERNING LAW .....................................1
        A.      Defined Terms .................................................................................................1
        B.      Interpretation; Application of Definitions; and Rules of Construction .................29
        C.      Computation of Time........................................................................................30
        D.      Governing Law ................................................................................................30
        E.      Reference to Monetary Figures ........................................................................31
        F.      Reference to the Debtors or Reorganized Silvergate .........................................31
        G.      Controlling Document ......................................................................................31

ARTICLE II:  ADMINISTRATIVE AND PRIORITY CLAIMS .............................................31
        A.      Administrative Expense Claims........................................................................31
        B.      Professional Fee Claims....................................................................................32
        C.      Ad Hoc Preferred Stockholder Group Expenses ...............................................33
        D.      SC Trusts Indenture Trustee Fees ....................................................................33
        E.      Common Stock Sponsors' Expenses .................................................................34
        F.      Statutory Fees..................................................................................................34
        G.      Priority Tax Claims ..........................................................................................34

ARTICLE III:  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .....35
        A.      Summary of Classification of Claims and Interests............................................35
        B.      Treatment of Claims and Interests ....................................................................36
        C.      Elimination of Vacant Classes .........................................................................42
        D.      Separate Classification of Secured Claims ........................................................42
        E.      Voting Classes; Presumed Acceptance by Non-Voting Classes..........................42
        F.      Controversy Concerning Impairment ................................................................42

ARTICLE IV:  ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION
        BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS....................................42
        A.      Classes Entitled to Vote....................................................................................42
        B.      Class Acceptance Requirement.........................................................................43
        C.      Cramdown and No Unfair Discrimination..........................................................43

ARTICLE V:  MEANS FOR IMPLEMENTATION ...............................................................43
        A.      Consolidation for Distribution Purposes Only...................................................43
        B.      Sources of Consideration for Distributions.......................................................43
        C.      The Global Settlement .....................................................................................44
        D.      Common Stock Settlement ...............................................................................48
        E.      Vesting of Reorganized Silvergate Assets in Reorganized Silvergate .................51
        F.      Reorganized Silvergate's Corporate Governance Documents.............................51
        G.      Reorganized Silvergate Board .........................................................................52

i

H.    Board of Directors, Officers and Remaining Employees ......................................52
I.    Exemption from Registration...............................................................................52
J.    Deemed Holders of Subordinated Notes Claims ..................................................54
K.    Preservation of Insurance....................................................................................55
L.    Indemnification Obligations ...............................................................................55
M.    Cancellation of Existing Securities and Agreements............................................56
N.    Exemption from Certain Taxes and Fees..............................................................57
O.    Establishing Disputed Claims Reserve ................................................................58

ARTICLE VI:  LIQUIDATION TRUST ...........................................................................58
A.    Liquidation Trust Agreement...............................................................................58
B.    Purpose of the Liquidation Trust .........................................................................58
C.    Liquidation Trust Assets .....................................................................................59
D.    Interests in the Liquidation Trust.........................................................................59
E.    Liquidation Trustee .............................................................................................60
F.    Liquidation Trust Board.......................................................................................60
G.    Functions of the Liquidation Trustee ..................................................................60
H.    Preservation of Rights of Action.........................................................................62
I.    Substitution in Pending Legal Actions ................................................................63
J.    Fees and Expenses of the Liquidation Trust.........................................................63
K.    Data Retention and Production Obligations .........................................................63
L.    Creation and Maintenance of Trust Accounts ......................................................64
M.    Indemnification of Liquidation Trustee ...............................................................64
N.    Insurance .............................................................................................................64
O.    Records ...............................................................................................................64
P.    Liquidation Trust Tax Matters .............................................................................65

ARTICLE VII:  PROVISIONS REGARDING DISTRIBUTIONS.......................................67
A.    Distributions Generally........................................................................................67
B.    Distributions to Liquidation Trust Beneficiaries .................................................67
C.    Distribution Record Date .....................................................................................67
D.    Disbursing Agent ................................................................................................68
E.    Rights and Powers of Disbursing Agent...............................................................68
F.    Post-Petition Interest...........................................................................................69
G.    Delivery of Distributions ....................................................................................69
H.    Distributions after the Effective Date ..................................................................70
I.    Unclaimed Property ............................................................................................70
J.    Time Bar to Cash Payments.................................................................................70
K.    Manner of Payment under Plan............................................................................70
L.    Satisfaction of Claims..........................................................................................70
M.    Minimum Cash Distributions...............................................................................70
N.    Setoffs and Recoupments.....................................................................................71
O.    Claims or Interests Paid by Third Parties ............................................................71
P.    Allocation of Distributions between Principal and Interest...................................72
Q.    No Distribution in Excess of Allowed Claim .......................................................72
R.    Distributions Free and Clear................................................................................72

RLF1 34145408v.2

S.      Compliance with Tax Requirements ...................................................................... 72

**ARTICLE VIII:  PROCEDURES FOR DISPUTED CLAIMS AND INTERESTS** .................... 72

A.      Objections to Claims ......................................................................................... 72
B.      Allowance of Claims ......................................................................................... 73
C.      Resolution of Claims ......................................................................................... 73
D.      Adjustment to Claims Register Without Objection .............................................. 73
E.      Disallowance of Claims ..................................................................................... 73
F.      Estimation of Claims ......................................................................................... 73
G.      Amendments to Proofs of Claim ........................................................................ 74
H.      No Distributions Pending Allowance and Disputed Interest Reserves .................. 74
I.      Allowed and Disputed Claims Reserves ............................................................. 74
J.      Distributions After Allowance ........................................................................... 75

**ARTICLE IX:  SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** . 75

A.      Compromise and Settlement of Claims, Interests, and Controversies ................... 75
B.      Releases by the Debtors ..................................................................................... 75
C.      Releases by Holders of Claims and Interests ...................................................... 76
D.      Exculpation ...................................................................................................... 78
E.      Injunction ........................................................................................................ 78
F.      Protection Against Discriminatory Treatment ..................................................... 79
G.      Setoffs ............................................................................................................. 79
H.      SEC Carve Out ................................................................................................. 79

**ARTICLE X:  EXECUTORY CONTRACTS** ................................................................... 80

A.      Rejection of Executory Contracts ....................................................................... 80
B.      Rejection Damages Claims ................................................................................ 80
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ......... 80
D.      Assignment ...................................................................................................... 81
E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements 81
F.      Reservation of Rights ........................................................................................ 82

**ARTICLE XI:  CONDITIONS PRECEDENT TO CONFIRMATION
AND THE EFFECTIVE DATE** .................................................................. 82

A.      Conditions to Confirmation of the Plan .............................................................. 82
B.      Conditions to Occurrence of the Effective Date .................................................. 83
C.      Waiver of Conditions to Confirmation and Effective Date ................................... 84
D.      Effect of Failure of Conditions to the Effective Date ........................................... 85

**ARTICLE XII:  MODIFICATION OF THE PLAN** ........................................................ 85

A.      Plan Modifications ............................................................................................ 85
B.      Effect of Confirmation on Modification .............................................................. 86

**ARTICLE XIII:  EFFECT OF CONFIRMATION** .......................................................... 86

A.      Deemed Consent ............................................................................................... 86
B.      Disallowed Claims and Disallowed Interests ...................................................... 86

RLF1 34145408v.2

ARTICLE XIV:  RETENTION OF JURISDICTION................................................................87

ARTICLE XV:  MISCELLANEOUS PROVISIONS.................................................................89
      A.      Notices .........................................................................................................89
      B.      Headings ......................................................................................................91
      C.      Governing Law ............................................................................................91
      D.      Notice of Entry of Confirmation Order and Relevant Dates ................................91
      E.      Revocation, Withdrawal or Non-Consummation of Plan ......................................91
      F.      Binding Effect .............................................................................................92
      G.      Severability of Plan Provisions......................................................................92
      H.      No Admissions.............................................................................................92
      I.      Time ...........................................................................................................92
      J.      Successors and Assigns.................................................................................92
      K.      Conflict between Plan, Disclosure Statement and Plan Documents.....................93
      L.      Substantial Consummation .............................................................................93
      M.      Plan Exhibits ...............................................................................................93

RLF1 34145408v.2

## INTRODUCTION

Silvergate Capital Corporation and its subsidiaries Silvergate Liquidation Corporation and Spring Valley Lots, LLC, as debtors and debtors in possession, hereby collectively propose the following Plan pursuant to the provisions of chapter 11 of the Bankruptcy Code.

Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in Article I hereof or in the Bankruptcy Code (as applicable). Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors; provided that, the estates of the various Debtors shall be consolidated for the purpose of effectuating distributions under the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN OR TAKING ANY OTHER ACTION WITH RESPECT TO THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE XII OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.

WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH UNDER ARTICLE IX OF THE PLAN.

### ARTICLE I:
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

**A.** *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "***Ad Hoc Preferred Stockholder Group***" means that certain ad hoc group of holders, or investment advisors or managers acting on behalf of holders, of certain Preferred Stock Interests represented by Milbank LLP.

2. "***Ad Hoc Preferred Stockholder Group Expenses***" means, collectively, all reasonable and documented fees and expenses of counsel to the Ad Hoc Preferred Stockholder Group.

3. "*Administrative Expense Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the Petition Date; (ii) Professional Fee Claims; and (iii) fees and charges payable to the U.S. Trustee pursuant to Section 1930 of the Judicial Code.

4. "*Administrative Expense Claims Bar Date*" shall be such date that is thirty (30) days following the Effective Date.

5. "*Administrative Claims Objection Deadline*" means the first Business Day that is one-hundred and eighty (180) days after the Effective Date; *provided that* such date may be extended by the Bankruptcy Court at the request of the Liquidation Trustee.

6. "*Affiliate*" means, with respect to any Entity, all Entities that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Entity was a debtor in a case under the Bankruptcy Code.

7. "*Aggregate Preferred Stockholder Distribution*" means at a given point in time, the total amount of distributions paid in Cash under Section III.B.8 of the Plan, on account of the Preferred Stock Initial Distributable Amount and the First Priority Liquidation Trust Beneficial Interests, to Holders of Allowed Preferred Stock Interests.

8. "*Alan Lane Dedicated Indemnity Reserve*" means a dedicated reserve for Lane as an Indemnified Individual in the amount of $5,477,000.00.

9. "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, such Claim or Interest (or any portion thereof) that is not Disallowed and (i) has been expressly allowed under the Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; (ii) is both not Disputed prior to the expiration of the Claims Objection Deadline and either (a) evidenced by a Filed Proof of Claim (or for which under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed) or (b) listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; (iii) is allowed by a Final Order; or (iv) is compromised, settled, or otherwise resolved by the Debtors and the Liquidation Trust, and the Holder of such Claim or Interest; *provided that*, except as otherwise expressly provided herein, the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code. "Allow," "Allowance," and "Allowing" shall have correlative meanings.

10. "*Assets*" means all of the right, title and interest of any of the Debtors in and to property of whatever type or nature (whether real, personal, mixed, tangible, intangible, or otherwise), including property of any of the Debtors' Estates.

11. "*Assumption Dispute*" means a pending objection relating to assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

2

12.     "***Assumption Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Liquidation Trust, or assumed by the Debtors to vest with Reorganized Silvergate, as applicable, pursuant to the Plan and as set forth in the Plan Supplement for each of the Liquidation Trust and Reorganized Silvergate.

13.     "***Avoidance Actions***" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors and any recovery, subordination, or other remedies that may be brought by or on behalf of the Debtors and their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including under sections 502, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, chapter 5 of the Bankruptcy Code, or applicable non-bankruptcy law.

14.     "***Ballot***" means the form(s) distributed to Holders of Claims and Interests entitled to vote on the Plan to indicate their acceptance or rejection of the Plan and to make an election with respect to the releases by Holders of Claims and Interests provided by Article IX.C.

15.     "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or as may be amended hereafter and applicable to the Chapter 11 Cases.

16.     "***Bankruptcy Court***" means (i) the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases; (ii) to the extent any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code; or (iii) such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof to the extent of such jurisdiction.

17.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

18.     "***Bar Date***" means the applicable deadline by which Proofs of Claim must be filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

19.     "***Bar Date Order***" means the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code), (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 97].

20.     "***Bhatia Litigation***" means the consolidated class action pending in the S.D. Cal. District Court captioned *Bhatia v. Silvergate Capital Corporation, Silvergate Bank and Lane*, S.D. Cal. Case No. 3:23-cv-01406-RBM-BLM.

21.     "***Bhatia Litigation Class Claim***" means the claim of all class members arising under the Bhatia Litigation Class, which shall be deemed Allowed in the amount of the Bhatia Litigation Settlement Fund upon entry of the Bhatia Litigation Final Approval Order.

22.     "***Bhatia Litigation Class Members***" means members of the purported class of claimants under the Bhatia Litigation.

23.     "***Bhatia Litigation Final Approval Order***" means a Final Order of the S.D. Cal. District Court (or other court of competent jurisdiction) approving the Bhatia Litigation Settlement.

24.     "***Bhatia Litigation Settlement***" means the settlement agreed by and between Bhatia Plaintiffs, Silvergate Capital Corporation, Silvergate Liquidation Corporation and Lane as defendants in the Bhatia Litigation and the purported class plaintiffs in the Bhatia Litigation, which is subject to approval by the Bankruptcy Court and the S.D. Cal. District Court.

25.     "***Bhatia Litigation Settlement Fund***" shall mean the agreed settlement amount of $10 million.

26.     "***Bhatia Plaintiffs***" means the class representative in the Bhatia Litigation.

27.     "***Business Day***" means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

28.     "***Cash***" means the legal tender of the United States of America or equivalents thereof.

29.     "***Cause of Action***" means any action, claim, proceeding, cause of action, controversy, demand, right, action, Lien, indemnity, interest, guarantee, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity; (iii) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims or Interests; (iv) any Claim pursuant to section 362 of the Bankruptcy Code; (v) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (vi) any Avoidance Action; and (vii) any rights and powers held by the Debtors pursuant to and in accordance with Bankruptcy Rule 2004 with respect to any of the foregoing.

30.     "*Certificate of Designation*" means the Articles Supplementary Designating the Rights and Preferences of the 5.375 Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series A, Par Value $0.01 Per Share of Silvergate Capital Corporation.

31.     "*Chapter 11 Cases*" means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (ii) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court which are styled as *In re Silvergate Capital Corporation et al.*, Case No. 24-12158 (KBO).

32.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

33.     "*Claims and Noticing Agent*" means Stretto, Inc., the Claims and Noticing Agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court.

34.     "*Claims Objection Deadline*" means, for each Claim, the latest of (a) the date that is one hundred and eighty (180) days after the Effective Date, and (b) such later date as may be fixed by the Bankruptcy Court upon a motion by the Liquidation Trustee on regular notice on or before the day that is one hundred and eighty (180) days after the Effective Date or such later date as may be fixed by the Bankruptcy Court.

35.     "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent in the Chapter 11 Cases.

36.     "*Class*" means a category of Holders of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

37.     "*Common Stock*" means the Class A Common Stock, par value $0.01 per share, of Silvergate Capital Corporation.

38.     "*Common Stock Interests*" means Interests in Common Stock in SCC, excluding any Section 510(b) Claims.

39.     "*Common Stock Sponsors*" means Stilwell Activist and Exploration Capital.

40.     "*Common Stock Sponsors' Expenses*" means all reasonable and documented fees and expenses for counsel and consultant fees incurred by the Common Stock Sponsors in an aggregate amount not to exceed $1.5 million, which shall be apportioned between Stilwell Activist and Exploration Capital by their mutual agreement.

41.     "*Common Stock Settlement*" means that certain settlement reached by Stilwell Activist, Exploration Capital, the Ad Hoc Preferred Stockholder Group and the Debtors announced on the record of the hearing held before the Bankruptcy court on May 13, 2025, as more fully set forth in that certain *Term Sheet*, dated July 1, 2025, the terms of which are incorporated in this Plan.

RLF1 34145408v.2

42. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

43. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

44. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

45. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Preferred Stockholders and, with respect to any terms that materially affect the terms set forth in the (i) Indemnification Settlement Term Sheet or the treatment of the Indemnified Individuals, the Indemnified Individuals, (ii) the Securities Litigation Settlement, the Indemnified Individuals, the Underwriters, and the Securities Plaintiffs and (iii) the Common Stock Settlement, to the extent such terms are inconsistent with the Common Stock Settlement set forth herein or, to the extent not addressed in the Common Stock Settlement set forth herein and affecting Reorganized Silvergate or Common Stock Interests' recoveries hereunder, the Common Stock Sponsors.

46. "*Consummation*" means the occurrence of the Effective Date.

47. "*Cure Amount*" means the payment of Cash by the Debtors or Liquidation Trust, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume an Executory Contract or Unexpired Lease.

48. "*D&O Insurance Contribution*" means the $27,500,000 remaining under the D&O Liability Insurance Policies, which shall be paid to the Securities Litigation Escrow Account contemporaneously with, or within twenty (20) business days after preliminary approval of the Securities Litigation Settlement by the S.D. Cal. District Court, all in accordance with the Securities Litigation Stipulation of Settlement.

49. "*D&O Liability Insurance Policies*" means, collectively, all Insurance Policies (including any "tail policy" or runoff period in respect of an Insurance Policy) issued at any time, whether expired or unexpired, to any of the Debtors for certain liabilities of the Debtors, their current or former directors and officers, including primary insurance, excess insurance, or tail insurance policies and all agreements, documents or instruments related thereto.

50. "*Data Retention and Production Obligations*" means the obligations set forth in Paragraph 4 of the DFPI C&D, requiring Silvergate Capital Corporation to ensure that Silvergate Liquidation Corporation's[2] records are preserved and maintained in a form and accessible by the

---

[2] Previously named Silvergate Bank.

Commissioner of Financial Protection and Innovation, the Federal Reserve Board of Governors, law enforcement, and other state and federal regulators until July 8, 2031.

51.     "***Data Retention and Production Reserve***" means $2.13 million, which amount shall be determined by the Debtors and the Required Preferred Stockholders, and shall be held in one or more separate accounts from other Liquidation Trust Assets.

52.     "***Debtor and Estate Claims***" has the meaning set forth in in Article IX.B of the Plan.

53.     "***Debtors***" means, collectively, (i) Silvergate Capital Corporation; (ii) Silvergate Liquidation Corporation; and (iii) Spring Valley Lots, LLC.

54.     "***Dedicated Indemnity Reserves***" means the Alan Lane Dedicated Indemnity Reserve, the Fraher Dedicated Indemnity Reserve and the Martino Dedicated Indemnity Reserve.

55.     "***Derivative Action***" means the litigation proceeding captioned *Nkonoki v. Karen F. Brassfield*, No. 2023-0000-8084 (Cal. Super.).

56.     "***DFPI***" means the California Department of Financial Protection and Innovation.

57.     "***DFPI C&D***" means the Consent Order entered into between the Commissioner of Financial Protection and Innovation of the DFPI and Silvergate Capital Corporation and Silvergate Liquidation Corporation (previously named Silvergate Bank) on June 26, 2024.

58.     "***Diem***" means the blockchain-based payment network that the Debtors acquired from Diem Group in January 2022.

59.     "***Diem Assets***" means Diem and all personal property used or useful with, Diem and all related regulatory documentation.

60.     "***Disallowed***" means any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed, deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely Filed under applicable law; or (iii) is not listed on the Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely Filed under applicable law, and for which no motion for leave to File a late Claim has been Filed prior to the Effective Date of the Plan. "Disallow" and "Disallowance" shall have correlative meanings.

61.     "***Disbursing Agent***" means an entity selected to make Distributions at the direction of the Liquidation Trustee, which may include the Claims and Noticing Agent, the Liquidation Trustee, or the Debtors; *provided, however*, that subject to the SC Trusts Indenture Trustee Charging Liens, all Distributions on account of the SC Trusts Claims shall be made to (or at the

7

direction of) the SC Trusts Indenture Trustees for distribution in accordance with the Plan following the procedures specified in the SC Trusts Indentures.

62.     "**_Disclosure Statement_**" means (i) the _Disclosure Statement for the First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Debtor Affiliates_ (as amended, modified, or supplemented from time to time in accordance with its terms), including all exhibits and schedules thereto and references therein that relate to the Plan that are prepared and distributed in accordance with applicable law and (ii) any supplement, amendment, or modification thereto.

63.     "**_Disputed_**" means, with respect to a Claim or Interest, (i) a Claim or Interest listed on the Schedules as unliquidated, disputed, or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been filed; (ii) a Claim or Interest that is the subject of an objection or request for estimation Filed by any of the Debtors, the Liquidation Trustee, or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) a Claim or Interest that is not otherwise Allowed or Disallowed under the Plan and, as to which, the applicable deadline for the Debtors, the Liquidation Trustee, or any other party-in-interest to object (including any extension to such deadline granted by the Bankruptcy Court) has not yet expired; or (iv) Section 510(b) Claims.

64.     "**_Disputed Claims Reserve_**" means Cash on the Effective Date allocable to, or retained on account of, Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims, and the FTX Disputed Claims Sub-Reserve, which reserve shall (i) be subject to the reasonable consent of the Required Preferred Stockholders, (ii) serve as a cap on available distributions from the Disputed Claims Reserve and (iii) be held in one or more separate accounts from other Liquidation Trust Assets.

65.     "**_Distribution_**" means the distributions of Cash (or other property), including by way of dividend, to be made by the Debtors, the Liquidation Trustee, the SC Trusts Indenture Trustees or their agents (as applicable) to Holders of Allowed Claims or Interests in accordance with the terms of the Plan.

66.     "**_Distribution Record Date_**" means the Confirmation Date.

67.     "**_DOJ_**" means the United States Department of Justice.

68.     "**_DOJ Indemnification Reserve_**" means $5 million of the Debtors' or the Estates' Cash to be reserved until September 30, 2028, and thereafter, if the DOJ asserts a claim against an Indemnified Individual prior to September 30, 2028 until such time as all claims have been settled, dismissed, or determined pursuant to a final order of a court of competent jurisdiction. The DOJ Indemnification Reserve will be preserved as last dollars out, to be used only after the DOJ Insurance Policy has been exhausted.

69.     "**_DOJ Insurance Policy_**" means an incremental insurance policy in the amount of $15 million, the terms of which policy shall be mutually acceptable to applicable Indemnified

<div align="center">8</div>

Individuals covered thereunder and the Required Preferred Stockholders, which for the avoidance of doubt, shall provide coverage to Lane and Fraher as applicable Indemnified Individuals covered thereunder, which policy shall provide for the payment of Indemnified Individuals' Indemnifiable Claims that relate to the DOJ; provided that such policy shall provide that (i) the premium for such policy shall be payable upon or after the Confirmation Date, (ii) the premium paid for the DOJ Insurance Policy by the Debtors shall not be fully earned unless and until the occurrence of the Effective Date, (iii) upon the occurrence of the Effective Date, the premium paid for the DOJ Insurance Policy shall be fully earned, and (iv) if the Effective Date does not occur and the Debtors cancel the DOJ Insurance Policy by providing notice thereof in accordance therewith, (a) such premium shall only be earned on a *per diem* basis from the date the premium is first paid through and including the date upon which the Debtors cancel the DOJ Insurance Policy, and (b) the Debtors shall be entitled to a refund of the unearned premium paid for the DOJ Insurance Policy; provided, for the avoidance of doubt, the terms of the DOJ Insurance Policy shall provide that the DOJ Insurance Policy shall not be cancelled or otherwise modified after the Effective Date without the consent of the Indemnified Individuals including, for the avoidance of doubt, Lane and Fraher.  In the event that the Required Preferred Stockholders determine not to purchase the DOJ Insurance Policy and in lieu thereof, fund a dedicated reserve of $15 million (or a combination thereof, as agreed to by the applicable Indemnified Individuals and the Required Preferred Stockholders) to provide for the satisfaction of the applicable Indemnified Individuals' (which for the avoidance of doubt shall include Lane and Fraher) Indemnifiable Claims that relate to a claim asserted by DOJ, the term "DOJ Insurance Policy" shall instead refer to such dedicated reserve, which shall be funded on the Effective Date of the Plan and be deemed an Indemnification Reserve set forth herein and be subject to the Indemnification Procedures set forth in Article V.C.2 hereof and the Debtors shall not be required to purchase the DOJ Insurance Policy (except as otherwise agreed).

70.    "***DOJ Investigation***" means the DOJ's prepetition investigation of SCC, Silvergate Bank and certain of their directors, officers and employees.

71.    "***DTC***" means The Depository Trust Company.

72.    "***Effective Date***" means, with respect to the Plan, the date that is the first Business Day on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article XI have been satisfied or waived (in accordance with Article XI); and (iii) the Plan is declared effective by the Debtors. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

73.    "***Entity***" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

74.    "***Estate***" means, as to a Debtor, the estate of such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code.

75.    "***Excess DOJ Reserve***" means, if any portion of the DOJ Indemnification Reserve is available to be released to the Debtors' estates on September 30, 2028, then $750,000.00 of the

9

DOJ Indemnification Reserve (or, if less than $750,000.00 is available to be released, such lesser amount) shall be added to the Go-Forward Indemnity Reserve; provided, that the Excess DOJ Reserve shall be split (ratably, to the extent necessary) as follows: $323,000.00 to the Alan Lane Dedicated Indemnity Reserve and $427,000.00 to the Shared Indemnity Reserve.

76.     "***Excess Go-Forward Fee Amounts***" means, subject to the conditions set forth in the Indemnification Settlement Term Sheet regarding the Go-Forward Chapter 11 Budget, any amount of reasonable and documented fees and expenses incurred by the Indemnified Individuals listed on Exhibit C to the Indemnification Settlement Term Sheet from the period from the Petition Date through the Effective Date in excess of the Go-Forward Chapter 11 Budget.

77.     "***Exchange Act Class***" means all persons and entities who purchased or otherwise acquired the publicly traded common stock of SCC from November 7, 2019 through March 21, 2023, inclusive, and were damaged thereby, excluding the Excluded Class Members, as set forth in the Securities Litigation Stipulation of Settlement.

78.     "***Excluded Class Members***" means the following entities set forth in, and to the extent applicable as defined in, the Securities Litigation Stipulation of Settlement: (a) the Securities Litigation Defendants; (b) directors and officers of the Securities Litigation Defendants (at all relevant times); (c) the Securities Litigation Defendants' immediate family members and their legal representatives, heirs, successors or assigns; and (d) any entity in which any Securities Litigation Defendant has or had a controlling interest, *provided*, *however*, that no "Investment Vehicle" shall be excluded from the Securities Litigation Settlement Classes. Investment Vehicle means any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Securities Litigation Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which their affiliates may act as an investment advisor, but in which any Securities Litigation Defendant alone or together with its, his or her respective affiliates does not hold a majority beneficial interest.

79.     "***Exculpated Parties***" means each of the following in their capacity as such: (i) the Debtors; and (ii) all officers, directors, employees, agents, attorneys, financial advisors, investment bankers, consultants, and other professionals of the Debtors, to the extent such parties are or were acting in such capacity between the Petition Date and the Effective Date. For the avoidance of doubt, any attorneys, financial advisors, investment bankers, consultants, agents, and other professionals that were engaged by the Debtors, but not providing services (whether or not their engagement was terminated or pending) during the Chapter 11 Cases, shall not be an Exculpated Party. Notwithstanding the foregoing, any individual or category of persons, entities, or parties listed on the Schedule of Retained Causes of Action shall not be deemed to be an Exculpated Party by virtue of this definition.

80.     "***Executory Contract***" means a prepetition contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

81.     "***Exploration Capital***" means Exploration Capital Fund, LP.

10

82. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, calculated as set forth in section 1961 of the Judicial Code.

83. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest with the Claims and Noticing Agent.

84. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022 closing the Chapter 11 Cases.

85. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Bankruptcy Court or applicable non-bankruptcy law, may be Filed relating to such order shall not prevent such order from being a Final Order.

86. "*First Priority Liquidation Trust Beneficial Interests*" means the beneficial interests issued under the Liquidation Trust for the benefit of Holders of Allowed Preferred Stock Interests that shall entitle the holder thereof to (i) 100% of net distributions from the Liquidation Trust, until the Aggregate Preferred Stockholder Distribution paid in Cash equals $150 million, and (ii)(a) if the Opt-Out Condition has not been exercised, after the Aggregate Preferred Stockholder Distribution paid in Cash equals $150 million in Cash, 80% of net distributions from the Liquidation Trust until the Aggregate Preferred Stockholder Distribution paid equals the Preferred Stock Liquidation Preference Amount or (b) if the Opt-Out Condition has been exercised, thereafter 100% of net distributions from the Liquidation Trust until the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount. When the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount, holders of First Priority Liquidation Trust Beneficial Interests shall not be entitled to further recovery on account of their First Priority Liquidation Trust Beneficial Interests.

87. "*First Priority Liquidation Trust Beneficiaries*" means Holders of Allowed Preferred Stock Interests, as of the Distribution Record Date.

88. "*Fraher*" means Kathleen Fraher.

89. "*Fraher Dedicated Indemnity Reserve*" means a dedicated reserve for Fraher as an Indemnified Individual in the amount of $250,000.00.

90. "*FTX*" means FTX Trading Ltd. and its affiliated debtors pending under the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (KBO).

11

91.    "*FTX Disputed Claims Sub-Reserve*" means a sub-reserve within the Disputed Claims Reserve, which shall entitle the holder of the FTX Silvergate Claims, solely, to the extent Allowed, to a right of setoff against the Allowed Silvergate FTX Claims, prior to any distribution therefrom to the holders of the Liquidation Trust Beneficial Interests.

92.    "*FTX Silvergate Claims*" means the proofs of claim filed by FTX in these Chapter 11 Cases.

93.    "*General Unsecured Claim*" means any Claim (including any Claim for indemnification, reimbursement, or otherwise that is not subject to subordination pursuant to section 510(b) of the Bankruptcy Code) against any of the Debtors that is not an Administrative Expense Claim, an Other Priority Claim, a Priority Tax Claim, a Secured Claim, a Subordinated Notes Claim, an Indemnified Individuals Indemnifiable Claim, or a Section 510(b) Claim.

94.    "*Global Settlement*" means the settlements contemplated by the Indemnification Settlement Term Sheet and the Securities Litigation Settlement Term Sheet, each of which is appended to the Global Settlement Approval Order. The terms of the Securities Litigation Settlement Term Sheet have been finally memorialized in and superseded by the Securities Litigation Stipulation of Settlement.

95.    "*Global Settlement Approval Order*" means that preliminary order of the Bankruptcy Court (including any exhibits thereto) [Docket No. 732] preliminarily authorizing and approving the Global Settlement in accordance with the term of such order.

96.    "*Go-Forward Chapter 11 Budget*" means (a) up to $7.45 million of incurred and reasonable and documented fees and expenses of the Indemnified Individuals listed on Exhibit C to the Indemnification Settlement Term Sheet which shall be paid on the Effective Date, plus (b) the incurred and reasonable and documented fees and expenses of such Indemnified Individuals, if any, through the Effective Date in: (x) responding to any interview requests or other actions taken by the Examiner in the Chapter 11 Cases that are directed at the Indemnified Individuals; (y) responding to written or oral discovery directed at the Indemnified Individuals in the Chapter 11 Cases initiated by any party other than the Indemnified Individuals; and (z) preparing for and participating in any hearings in which the Indemnified Individuals expect to either (i) file briefs or other statements on the issue(s) in dispute, either at the request of the Debtors or the Ad Hoc Preferred Stockholder Group or because such filing is reasonably required under the circumstances, or (ii) give testimony, which shall be paid on the Effective Date.  Those Indemnified Individuals listed on Exhibit C to the Indemnification Settlement Term Sheet are Karen Brassfield, Mona Brunette, Robert C. Campbell, Bernie Chavez, Paul D. Colucci, Steven Dietz, Thomas C. Dircks, Derek J. Eisele, Kathleen Fraher, Dennis S. Frank, Osman Gabiere, Aanchal Gupta, Alan Lane, Christopher Lane, Michael Lempres, Antonio Martino, Gosandy Pang, Tyler Pearson, Scott A. Reed, Ben Reynolds, Michelle Sabins, Natalie Schima Levi Stanley, Colleen Sullivan, and Tiffany Chesnos.

97.    "*Go-Forward Indemnity Reserve*" means the $12.75 million reserve for the reasonable and documented indemnifiable expenses of the Indemnified Individuals, split between

12

RLF1 34145408v.2

the Dedicated Indemnity Reserves and the Shared Indemnity Reserve as supplemented by the Excess DOJ Reserve, if any.

98. "*Governmental Bar Date*" means March 17, 2025 at 5:00 p.m. (prevailing Eastern Time).

99. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

100. "*Holder*" means a Person or Entity holding a Claim or an Interest, as applicable, each solely in its capacity as such.

101. "*Indenture Trustees*" means, collectively, the SC Trust I Indenture Trustee and the SC Trust II Indenture Trustee.

102. "*Indentures*" means, collectively, the SC Trust I Indenture and the SC Trust II Indenture.

103. "*Indemnified Individuals*" means Karen Brassfield, Mona Brunette, Robert C. Campbell, Bernie Chavez, Paul D. Colucci, Steven Dietz, Thomas C. Dircks, Derek J. Eisele, Kathleen Fraher, Dennis S. Frank, Osman Gabiere, Aanchal Gupta, Alan Lane, Christopher Lane, Michael Lempres, Antonio Martino, Gosandy Pang, Tyler Pearson, Scott A. Reed, Ben Reynolds, Michelle Sabins, Natalie Schima, Levi Stanley, Colleen Sullivan, Tiffany Chesnos, Adam Takeda, Andrew Surry, Jesse Avery, Matthew Bush, Paris Cribben, and Elaine Clarke-Hetrick.

104. "*Impaired*" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

105. "*Indemnifiable Claim*" means a Claim against a Debtor for (i) indemnification, (ii) advancement of defense costs, (iii) reimbursement of fees, expenses, and/or costs, or (iv) liabilities or losses that an applicable Debtor is required to provide indemnification for, to the fullest extent required under any applicable prepetition contract with a Debtor, organizational document of a Debtor, or applicable non-bankruptcy law.

106. "*Indemnification Reserve Residual Interest*" means the Liquidation Trust's residual interest in the Indemnification Reserves.

107. "*Indemnification Procedures*" means, collectively, the procedures set forth in Article V.C.2 with respect to the invoicing of, review of, objections to, and payment of Indemnified Individuals' Indemnifiable Claims (including the reasonable and documented fees of the Indemnified Individuals incurred prior to the Effective Date in accordance with the Go-Forward Chapter 11 Budget, and any Excess Go-Forward Fee Amounts).

108. "*Indemnification Reserves*" means, collectively, the Martino SEC Dedicated Reserve, Go-Forward Indemnity Reserve, the DOJ Indemnification Reserve, and the DOJ Insurance Policy, to the extent that in lieu of purchasing the DOJ Insurance Policy a dedicated reserve for the benefit of the applicable Indemnified Individuals in the same amount as the

13

proposed DOJ Insurance Policy (or a combination thereof, as agreed to by the applicable Indemnified Individuals and the Required Preferred Stockholders) is funded.

109.    "*Indemnification Settlement Term Sheet*" means the *Final Settlement Term Sheet Resolving Indemnified Individuals' Proofs of Claim for Indemnification*, appended to the Global Settlement Approval Order as Exhibit 1 thereto.

110.    "*Indemnified Individuals Indemnifiable Claims*" means any and all Indemnifiable Claims held by any Indemnified Individual, including without limitation, Indemnifiable Claims arising from, among other things, the Bhatia Litigation, Word of God Litigation, Derivative Action, the Shareholder Demand, SEC Enforcement Action, Securities Litigation, the DOJ Investigation or other Indemnifiable Claims for governmental investigations or subpoenas related to the Debtors.

111.    "*Insurance Policies*" means any and all known and unknown insurance policies or contracts that have been issued at any time to, or that provide coverage in any capacity to, the Debtors or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the first named insured, a named insured or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, and all agreements, documents or instruments related thereto and/or any agreements with third-party administrators.

112.    "*Insurer*" means any company or other entity that issued any Insurance Policies, any third-party administrators of claims against the Debtors or asserted under the Insurance Policies, and any respective predecessors and/or affiliates thereof.

113.    "*Intercompany Claim*" means a Claim held by any Debtor against any other Debtor.

114.    "*Intercompany Interest*" means an Interest held by a Debtor in another Debtor.

115.    "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all issued, unissued, authorized, or outstanding shares of Common Stock, Preferred Stock, or capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor), whether or not arising under or in connection with any employment agreement, plan or program implemented by the Debtors, and whether or not certificated, transferable, preferred, common, voting, or denominated "*stock*" or a similar security. In the interest of clarity, Interests include any and all ownership interests in any Debtor arising under or in connection with any employment agreement, plan or program implemented by the Debtors that has vested or that would have vested but for the freezing of any such award as a result of or connection with the Chapter 11 Cases.

116.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations)

14

promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

117.    "*IRS*" means the United States Internal Revenue Service.

118.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

119.    "*Lane*" means Alan J. Lane.

120.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

121.    "*Liquidation Trust*" means that certain trust established pursuant to Article VI hereof and the Liquidation Trust Agreement to, among other things, hold the Liquidation Trust Assets, and make Distributions to holders of First Priority Beneficial Interests and the Second Priority Beneficial Interest, in accordance with the Common Stock Settlement and the terms of the Liquidation Trust Agreement.

122.    "*Liquidation Trust Agreement*" means the trust agreement governing the Liquidation Trust, which shall be in form and substance reasonably acceptable to the Required Preferred Stockholders and the Common Stock Sponsors, which shall be filed with the Plan Supplement.

123.    "*Liquidation Trust Assets*" means (a) all remaining Assets of each of the Debtors that have not been sold, abandoned or distributed prior to the Effective Date, other than the Reorganized Silvergate Assets, and following funding of: (i) the Professional Fee Escrow Account, (ii) all distributions to Holders of Allowed Claims in accordance with the terms of the Plan, (iii) the SC Trusts Indenture Trustee Fees, (iv) the Ad Hoc Preferred Stockholder Group Expenses;  (v) the Disputed Claims Reserve, (vi) the Data Retention and Production Reserve, (vii) the Indemnification Reserves; (viii) amounts required to be paid from the Go-Forward Chapter 11 Budget; (ix) the Excess Go-Forward Fee Amounts, if any; (x) the Liquidation Trust Initial Funding, (xi) the Bhatia Litigation Settlement Fund; (xii) the Common Stock Sponsors' Expenses; and (xiii) the Preferred Stock Initial Distributable Amount; (b) all assets recovered by the Liquidation Trustee on behalf of the Liquidation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise; (c); all Liquidation Trust Retained Causes of Action, (d) any proceeds resulting from the Liquidation Trustee's investment of the Liquidation Trust Assets on or after the Effective Date; and (e) all amounts remaining after satisfaction of the applicable Allowed Claims from the Professional Fee Escrow Account, the Disputed Claims Reserve, the Data Retention and Protection Reserve, and the Indemnification Reserves (including the Indemnification Reserve Residual Interest), which shall automatically vest in the Liquidation Trust; provided, notwithstanding anything herein to the contrary, (a) the Indemnification Reserves shall be held in trust by the Liquidation Trustee in accordance with the Indemnification Procedures and shall not constitute Liquidation Trust Assets (provided, that the Indemnification Reserve Residual Interest shall constitute a Liquidation Trust Asset) and (b) the proceeds of the DOJ Insurance Policy shall not constitute Liquidation Trust Assets.

124.    "*Liquidation Trust Beneficial Interests*" means the First Priority Liquidation Trust Beneficial Interests and Second Priority Liquidation Beneficial Interests.

15

125.    "*Liquidation Trust Beneficiaries*" shall mean holders of First Priority Liquidation Trust Beneficial Interests and the Second Priority Liquidation Beneficial Interest.

126.    "*Liquidation Trust Board*" means the governing body of the Liquidation Trust to be appointed in accordance with Article VI.F and the Liquidation Trust Agreement.

127.    "*Liquidation Trust Expenses*" means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust, the Liquidation Trust Board or the Liquidation Trustee (or any Professional or other Person retained by the Liquidation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses subject to the terms of the Liquidation Trust Agreement.

128.    "*Liquidation Trust Initial Funding*" means the amount set forth in the Plan Supplement, which amount shall be subject to the consent of the Required Preferred Stockholders, which shall fund the Liquidation Trust Expenses in accordance with the terms of the Liquidation Trust Agreement.

129.    "*Liquidation Trust Retained Causes of Action*" means any and all Claims and Causes of Action of the Debtors, including without limitation, those Claims and Causes of Action listed or described in the Schedule of Retained Causes of Action filed in connection with the Plan Supplement, including (i) Causes of Action against Holders of Claims, vendors, and customers; (ii) any Cause of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence and claims made policies, occurrence and claims made contracts, and similar agreements to which any Debtor or the Liquidation Trust is or was a party or pursuant to which any Debtor, or the Liquidation Trust has any rights whatsoever, including the Insurance Policies; and (iii) all other Causes of Action listed or described in the Schedule of Retained Causes of Action filed in connection with the Plan Supplement, but shall not include the Reorganized Silvergate Retained Causes of Action. For avoidance of doubt, the term Liquidation Trust Retained Causes of Action shall not include any Causes of Action against the Indemnified Individuals or against any of the Underwriters.

130.    "*Liquidation Trustee*" means such Person as designated by the Required Preferred Stockholders, in consultation with the Common Stock Sponsors, and shall be identified in the Plan Supplement.

131.    "*Martino*" means Antonio Martino.

132.    "*Martino Dedicated Indemnity Reserve*" means a dedicated reserve from the total Go-Forward Reserve for Martino as an Indemnified Individual in the amount of $250,000.00.

133.    "*Martino SEC Dedicated Reserve*" means a $22,500,000.00 dedicated reserve for reasonable and documented indemnifiable fees and expenses of Martino in connection with the SEC Enforcement Action; provided, if the SEC Enforcement Action is settled with respect to Martino, this reserve will be eliminated.

RLF1 34145408v.2

134.     "***Motion to Expand the Examiner's Scope***" means the *Joint Motion of Exploration Capital Fund LP and Stilwell Activist Investments, L.P., to Expand the Scope of the Examiner's Investigation* [Docket No. 676].

135.     "***New Organizational Documents***" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of Reorganized Silvergate which, forms shall be included in the Plan Supplement all in form and substance reasonably acceptable to the Common Stock Sponsors.

136.     "***Opt-Out Condition***" has the meaning set forth in Article V.D.6.

137.     "***Other Priority Claim***" means any Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (i) an Administrative Expense Claim or (ii) a Priority Tax Claim.

138.     "***Person***" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

139.     "***Petition Date***" means the date on which the Chapter 11 Cases were commenced.

140.     "***Plan***" means this *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* (including the Plan Supplement and all exhibits hereto and thereto), as the same may be amended, modified, supplemented, or amended and restated from time to time, which shall be in form and substance reasonably acceptable to the Required Preferred Stockholders.

141.     "***Plan Objection Deadline***" means the date established by the Bankruptcy Court by which objections to Confirmation of the Plan must be Filed.

142.     "***Plan Supplement***" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, as may be amended, modified, or supplemented from time to time, each of which shall be in form and substance materially consistent with this Plan, and otherwise reasonably acceptable to the Debtors and the Required Preferred Stockholders, including but not limited to the *Notice of Filing of First Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1012], the *Notice of Filing of Second Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1017], the *Notice of Filing of Third Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1054], the *Notice of Filing of Fourth Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1057], and the *Notice of Filing of Fifth Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1070]. The Debtors shall be entitled to amend such documents in accordance with their respective terms and Article XII of this Plan through and including the Effective Date.

17

143. "***Post-Petition Interest***" means interest, with respect to Holders of Allowed General Unsecured Claims, accruing from the later of (i) the Petition Date and (ii) the date on which such amounts first became due and owing by the applicable Debtor, until the date the applicable Distribution to such Holder of an Allowed General Unsecured Claim is issued.

144. "***Preferred Stock***" means the 5.375% Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series A, authorized by the Articles of Incorporation of Silvergate Capital Corporation and governed by the Certificate of Designation.

145. "***Preferred Stockholder***" means the Holder of Preferred Stock.

146. "***Preferred Stock Initial Distributable Amount***" means all Cash remaining on the Effective Date, after payment in full of all Allowed Claims in accordance with the terms of the Plan and after giving effect to the funding of the Professional Fee Escrow Account, the Ad Hoc Preferred Stockholder Group Expenses, the Disputed Claims Reserve, the Indemnification Reserves, amounts required to be paid from the Go-Forward Chapter 11 Budget, the Excess Go-Forward Fee Amounts, if any, the Data Retention and Production Reserve, the Preferred Stock Interest Contribution, the Bhatia Litigation Settlement Fund, the Reorganized Silvergate Cash Funding, the Common Stock Sponsors' Expenses, and the Liquidation Trust Initial Funding.

147. "***Preferred Stock Interests***" means Interests in Preferred Stock.

148. "***Preferred Stock Interest Contribution***" means $5,320,000, which, on the Effective Date, will be transferred to the Securities Litigation Escrow Account for the benefit of the Securities Plaintiffs in accordance with the Securities Litigation Stipulation of Settlement.

149. "***Preferred Stock Liquidation Preference***" means the Liquidation Preference set forth and defined in (and in accordance with the terms of) the Certificate of Designation, including under Section 5 thereof, in an amount of $200,000,000.00.

150. "***Preferred Stock Liquidation Preference Amount***" means $200,000,000.00 in Cash.

151. "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

152. "***Pro Rata***" means, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

153. "***Professional***" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

RLF1 34145408v.2

154.    "*Professional Fee Claims*" means all Claims for fees and expenses incurred by a Professional on or after the Petition Date through the Effective Date.

155.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date equal to the estimated amount of unpaid Professional Fee Claims to be incurred prior to the Effective Date.

156.    "*Proof of Claim*" means a proof of Claim or Interest that is Filed against any of the Debtors in the Chapter 11 Cases.

157.    "*Quarterly Fees*" means the quarterly fees required to be paid to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereon pursuant to 31 U.S.C. § 3717.

158.    "*Released Party*" means each of the following in their capacity as such: (i) the Debtors and their Professionals; (ii) Reorganized Silvergate; (iii) each of the Debtors' Estates; (iv) the Ad Hoc Preferred Stockholder Group and each of its members, in their capacity as such, (v) the Liquidation Trustee, (vi) the Liquidation Trust Board (vii) the SC Trusts Indenture Trustees; (viii) the Indemnified Individuals; (ix) the Underwriters, and (x) with respect to each of the foregoing Entities in clauses (i) through (ix), their respective current and former officers, directors, employees, attorneys, assigns, assignees, heirs, executors, estates, administrators, entities in which they have a controlling interest, partnerships, partners, members, trustees, trusts, immediate family members, each in its capacity as such; *provided that*, notwithstanding anything in the foregoing, any Person or Entity that is entitled to vote on the Plan and (a) votes to accept the Plan and opts out of the releases in the Plan by checking the box on the Ballot indicating that they opt out of granting such releases in the Plan submitted on or before the Voting Deadline or (b) votes to reject the plan or abstains from voting on the Plan and, in each case, does not opt into the releases provided by the Plan by checking the box on the Ballot indicating that they opt into granting such releases in the Plan submitted on or before the Voting Deadline, shall not be a Released Party.  Notwithstanding the foregoing any individual or category of persons, entities, or parties listed on the Schedule of Retained Causes of Action shall not be deemed to be a Released Party by virtue of this definition.

159.    "*Releasing Party*" means each of the following in their capacity as such: (i) the Released Parties (other than the Debtors, Reorganized Silvergate, the Debtor's Estates, the Liquidation Trustee and the Liquidation Trust Board), (ii) all Holders of Claims or Preferred Stock Interests that vote to accept the Plan and do not opt-out of the third party releases provided for in Article IX.C by checking the box on the Ballot indicating that they opt out of granting such releases in the Plan submitted on or before the Voting Deadline; (iii) all Holders of Claims or Preferred Stock Interests that are entitled to vote on the Plan who either (a) abstain from voting or (b) vote to reject the Plan and, in each case, opt into the third party releases provided for in Article IX.C by checking the box on the Ballot indicating that they opt into granting such releases in the Plan submitted on or before the Voting Deadline, (iv) all Holders of Claims or Interests that are deemed to accept the Plan and opt into the third party releases provided for in Article IX.C by checking the box on the applicable form indicating that they opt into granting such releases in the Plan submitted on or before the Voting Deadline; and (v) with respect to each of the foregoing

19

Entities in clauses (i), (ii), (iii), and (iv), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, managed accounts or funds, management companies, fund advisors, each in its capacity as such; *provided*, *however*, that the Entities identified in part (v) shall be Releasing Parties only to the extent the corresponding Entities in parts (i), (ii), (iii), and (iv) are legally able to bind such Entities in part (v) to the releases contained in the Plan under applicable non-bankruptcy law. For the avoidance of doubt, (i) the Securities Plaintiffs' entry into the Securities Litigation Stipulation of Settlement shall not be construed as having deemed the Securities Plaintiffs or any Securities Litigation Class Members as Releasing Parties or having opted into the third party releases provided in Article IX.C; and (ii) the releases granted by the Securities Plaintiffs and Securities Litigation Class Members, in their capacity as such, in the Securities Litigation pursuant to the Securities Litigation Stipulation of Settlement shall be governed by and implemented pursuant to the terms thereof and the Securities Litigation Final Approval Order.

160. "***Releasing Party Claims***" has the meaning set forth in in Article IX.C of the Plan.

161. "***Reorganized Debtor***" means any Debtor from and after the Effective Date.

162. "***Reorganized Silvergate***" means Silvergate Capital Corporation, from and after the Effective Date, as owned solely by Holders of reinstated Common Stock Interests. The term Reorganized Silvergate shall include the Subsidiary Debtors, as Reorganized Debtors from and after the Effective Date.

163. "***Reorganized Silvergate Assets***" means (a) if the Opt-Out Condition is not exercised, the Interests in the Subsidiary Debtors, the Silvergate NOLs, the Reorganized Silvergate Cash Funding, the Diem Assets, the SEN Assets, the Silvergate Operational Assets, the Reorganized Silvergate Retained Causes of Action, and the Second Priority Liquidation Trust Beneficial Interest, or (b) if the Opt-Out Condition is exercised, (i) only the Interests in the Subsidiary Debtors, the Second Priority Liquidation Trust Beneficial Interest, and the Silvergate NOLs, and (ii) the following shall be transferred to the Liquidation Trust: the Diem Assets, the SEN Assets, the Silvergate Operational Assets, the Reorganized Silvergate Retained Causes of Action, and the Reorganized Silvergate Cash Funding.

164. "***Reorganized Silvergate Cash Funding***" means an amount of Cash equal to $1.6 million to be retained by Reorganized Silvergate on the Effective Date; provided that, if the Bankruptcy Court determines that NYDIG has an allowed unsecured claim and the Opt-Out Condition has not been exercised, then such amount shall be reduced by an amount equal to 50% of the allowed amount of the NYDIG claim, but such reduction shall not exceed $1.1 million.

165. "***Reorganized Silvergate Retained Causes of Action***" means (a) so long as the Opt-Out Condition has not been exercised, all of the Debtors' Claims and Causes of Action against Governmental Units and any regulator other than the State Income Tax Receivables, or (b) if the Opt-Out Condition has been exercised, none of the Debtors' Claims or Causes of Action.

RLF1 34145408v.2

166. "***Reserve Step-Downs***" means the step downs in which each of the Dedicated Indemnity Reserves and Shared Indemnity Reserve will be reduced and funds released to the Liquidation Trust in each case for the benefit of the Preferred Stockholders, as described in <u>Article V.C.2.b</u> herein.

167. "***RSA***" means that certain Restructuring Support Agreement, dated September 17, 2024, by and among the Debtors and certain Holders of the Preferred Stock Interests that are signatory thereto.

168. "***Required Preferred Stockholders***" means Holders of the Preferred Stockholder Interests holding 50% of the Preferred Stockholder Interests held by the holders of the Preferred Stockholder Interests that are parties to the RSA from time to time.

169. "***SC Trusts Capital Securities Claims***" means the SC Trust I Capital Securities Claim and the SC Trust II Capital Securities Claim.

170. "***SC Trusts Claims***" means the SC Trust I Claim and the SC Trust II Claim.

171. "***SC Trusts Common Securities Claims***" means the SC Trust I Common Securities Claim and the SC Trust II Common Securities Claim.

172. "***SC Trusts Documents***" means the SC Trust I Documents and the SC Trust II Documents.

173. "***SC Trusts Indentures***" means the SC Trust I Indenture and the SC Trust II Indenture.

174. "***SC Trusts Indenture Trustees***" means the SC Trust I Indenture Trustee and the SC Trust II Indenture Trustee.

175. "***SC Trusts Indenture Trustee Fees***" means the SC Trust I Indenture Trustee Fees and the SC Trust II Indenture Trustee Fees.

176. "***SC Trusts Indenture Trustee Charging Liens***" means the SC Trust I Indenture Trustee Charging Lien and the SC Trust II Indenture Trustee Charging Lien.

177. "***SC Trusts Subordinated Debentures***" means the SC Trust I Subordinated Debentures and the SC Trust II Subordinated Debentures.

178. "***SC Trust I***" means Silvergate Capital Trust I, a statutory business trust formed under the Delaware Statutory Trust Act pursuant to the SC Trust I Declaration of Trust and a Certificate of Trust filed with the Secretary of State of the State of Delaware on June 27, 2001.

RLF1 34145408v.2

179. "*SC Trust I Claim*" means any Claim arising under or related to the SC Trust I Subordinated Debentures, the SC Trust I Capital Securities, or any of the SC Trust I Documents.[3]

180. "*SC Trust I Declaration of Trust*" means that certain Declaration of Trust, dated as of June 27, 2001, as amended and restated by that certain *Amended and Restated Declaration of Trust*, by and among Bank of New York, as Institutional Trustee, the Bank of New York (Delaware), as Delaware Trustee, Silvergate Capital Corporation, as Sponsor, and Dennis S. Frank and Derek J. Eisele, as Administrators, dated as of July 16, 2001 (as further amended or supplemented from time to time) relating to SC Trust I.

181. "*SC Trust I Documents*" means, collectively, the SC Trust I Indenture, all documents evidencing SC Trust I Subordinated Debentures, the SC Trust I Declaration of Trust, all documents evidencing SC Trust I Capital Securities, the SC Trust I Sponsor Guarantee, and all related and ancillary documents, agreements, and instruments, each as altered, amended, modified or supplemented from time to time and including, without limitation, all exhibits and schedules thereto, together with any agreements executed by any of the Debtors or their Affiliates in connection therewith.

182. "*SC Trust I Indenture*" means that certain *Indenture* by and between Silvergate Capital Corporation, as Issuer, and the Bank of New York, as Trustee, dated as of July 16, 2001, pursuant to which Silvergate Capital Corporation issued the SC Trust I Subordinated Debentures.

183. "*SC Trust I Indenture Trustee*" means the Wilmington Savings Fund Society, FSB and any successors thereto, as permitted by the terms set forth in the SC Trust I Documents, collectively in its capacities as (i) Trustee under the SC Trust I Indenture, (ii) Delaware Trustee and Institutional Trustee under the SC Trust I Declaration of Trust; and (iii) Guarantee Trustee under the SC Trust I Sponsor Guarantee.

184. "*SC Trust I Indenture Trustee Charging Lien*" means any Lien or other priority of payment rights in favor of the SC Trust I Indenture Trustee or to which the SC Trust I Indenture Trustee is entitled under the SC Trust I Documents, on or with respect to Distributions made to or on behalf of Holders of Claims under the SC Trust I Indenture.

185. "*SC Trust I Indenture Trustee Fees*" means all reasonable compensation, costs, advances, fees, expenses, and disbursements, and all claims for indemnity, subrogation, and contribution, including, without limitation, attorneys' and agents' fees, expenses, costs, and disbursements, incurred by or owed to (or estimated to be incurred by or owed to) the SC Trust I Indenture Trustee under the SC Trust I Documents, including, without limitation, all such amounts incurred prior to, on, and after the Petition Date.

186. "*SC Trust I Securities*" means, collectively, the SC Trust I Capital Securities and the SC Trust I Common Securities.

---

[3] For the purposes of this Plan, the SC Trust I Claims shall be deemed to be held by the Holders of the SC Trust I Securities in accordance with Article V.M of this Plan.

22

187. **"*SC Trust I Sponsor Guarantee*"** means that certain *Guarantee Agreement* by and between Silvergate Capital Corporation, as Guarantor, and the Wilmington Savings Fund Society, FSB, as Guarantee Trustee, dated as of July 16, 2001.

188. "***SC Trust I Subordinated Debentures***" means the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2031, outstanding under the SC Trust I Indenture.

189. "***SC Trust I Capital Securities***" means those certain undivided beneficial interests in the assets of the SC Trust I comprising twelve thousand five hundred (12,500) Floating Rate Capital Securities, with an aggregate stated liquidation amount with respect to the assets of the SC Trust II of twelve million five hundred thousand dollars ($12,500,000) and a stated liquidation amount with respect to the assets of the SC Trust I of one thousand dollars ($1,000) per capital security, issued pursuant to the SC Trust I Declaration of Trust.

190. "***SC Trust I Capital Securities Claim***" means any Claim arising under or on account of the SC Trust I Capital Securities.

191. "***SC Trust I Common Securities***" means those certain undivided beneficial interests in the assets of the SC Trust I comprising three hundred eighty-seven (387) Floating Rate Common Securities, with an aggregate stated liquidation amount with respect to the assets of the SC Trust I of three hundred eighty-seven thousand dollars ($387,000) and a stated liquidation amount with respect to the assets of the SC Trust I of one thousand dollars ($1,000) per common security, issued pursuant to the SC Trust I Declaration of Trust.

192. **"*SC Trust I Common Securities Claim*"** means any Claim arising under or on account of the SC Trust I Common Securities.

193. "***SC Trust II***" means Silvergate Capital Trust II, a statutory trust formed under the Delaware Statutory Trust Act pursuant to the SC Trust II Declaration of Trust and a Certificate of Trust filed with the Secretary of State of the State of Delaware on January 13, 2005.

194. "***SC Trust II Capital Securities***" means those certain undivided beneficial interests in the assets of the SC Trust II comprising three thousand (3,000) Fixed/Floating Rate Capital Securities, with an aggregate stated liquidation amount with respect to the assets of the SC Trust II of three million dollars ($3,000,000) and a stated liquidation amount with respect to the assets of the SC Trust II of one thousand dollars ($1,000) per capital security, issued pursuant to the SC Trust II Declaration of Trust.

195. **"*SC Trust II Capital Securities Claim*"** means any Claim arising under or on account of the SC Trust II Capital Securities.

RLF1 34145408v.2

196. "**SC Trust II Claim**" means any Claim arising under or related to the SC Trust II Subordinated Debentures, the SC Trust II Capital Securities, or any of the SC Trust II Documents.[4]

197. "**SC Trust II Common Securities**" means those certain undivided beneficial interests in the assets of the SC Trust II comprising ninety-three (93) Fixed/Floating Rate Common Securities, with an aggregate stated liquidation amount with respect to the assets of the SC Trust II of ninety-three thousand dollars ($93,000) and a stated liquidation amount with respect to the assets of the SC Trust II of one thousand dollars ($1,000) per common security, issued pursuant to the SC Trust II Declaration of Trust.

198. "**SC Trust II Common Securities Claim**" means any Claim arising under or on account of the SC Trust II Common Securities.

199. "**SC Trust II Declaration of Trust**" means that certain *Declaration of Trust*, dated as of January 13, 2005, as amended and restated by that certain *Amended and Restated Declaration of Trust*, by and among Wilmington Trust Company, as Institutional Trustee, Wilmington Trust Company, as Delaware Trustee, Silvergate Capital Corporation, as Sponsor, and Dennis S. Frank and Derek J. Eisele, as Administrators, dated as of January 27, 2005 (as further amended or supplemented from time to time).

200. "**SC Trust II Documents**" means, collectively, the SC Trust II Indenture, all documents evidencing SC Trust II Subordinated Debentures, the SC Trust II Declaration of Trust, all documents evidencing SC Trust II Capital Securities, the SC Trust II Sponsor Guarantee, and all related and ancillary documents, agreements, and instruments, each as altered, amended, modified or supplemented from time to time and including, without limitation, all exhibits and schedules thereto, together with any agreements executed by any of the Debtors or their Affiliates in connection therewith.

201. "**SC Trust II Indenture**" means that certain *Indenture* by and between Silvergate Capital Corporation, as Issuer, and Wilmington Trust Company, as Trustee, dated as of January 27, 2005, pursuant to which Silvergate Capital Corporation issued the SC Trust II Subordinated Debentures.

202. "**SC Trust II Indenture Trustee**" means Wilmington Trust Company and any successors thereto, as permitted by the terms set forth in the SC Trust II Documents, collectively in its capacities as (i) Trustee under the SC Trust II Indenture, (ii) Delaware Trustee and Institutional Trustee under the SC Trust II Declaration of Trust; and (iii) Guarantee Trustee under the SC Trust II Sponsor Guarantee.

203. "**SC Trust II Indenture Trustee Charging Lien**" means any Lien or other priority of payment rights in favor of the SC Trust II Indenture Trustee or to which the SC Trust II

---

[4]  For the purposes of this Plan, the SC Trust II Claims shall be deemed to be held by the Holders of the SC Trust II Securities in accordance with Article V.M of this Plan.

Indenture Trustee is entitled under the SC Trust II Documents, on or with respect to Distributions made to or on behalf of Holders of Claims under the SC Trust II Indenture.

204. "*SC Trust II Indenture Trustee Fees*" means all reasonable compensation, costs, advances, fees, expenses, and disbursements, and all claims for indemnity, subrogation, and contribution, including, without limitation, attorneys' and agents' fees, expenses, costs, and disbursements, incurred by or owed to (or estimated to be incurred by or owed to) the SC Trust II Indenture Trustee under the SC Trust II Documents, including, without limitation, all such amounts incurred prior to, on, and after the Petition Date.

205. "*SC Trust II Securities*" means, collectively, the SC Trust II Capital Securities and the SC Trust II Common Securities.

206. "*SC Trust II Sponsor Guarantee*" means that certain *Guarantee Agreement* by and between Silvergate Capital Corporation, as Guarantor, and Wilmington Trust Company, as Guarantee Trustee, dated as of January 27, 2005.

207. "*SC Trust II Subordinated Debentures*" means those certain Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures between Silvergate Capital Corporation and Wilmington Trust Company, due 2035.

208. "*S.D. Cal. District Court*" means the United States District Court for the Southern District of California.

209. "*Schedule of Retained Causes of Action*" means a schedule of retained Liquidation Trust Retained Causes of Action and Reorganized Silvergate Retained Causes of Action filed in connection with the Plan Supplement, in form and substance acceptable to the Debtors and the Required Preferred Stockholders.

210. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors on October 4 and 7, 2024 pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been, or in the future may be, amended, modified, or supplemented from time to time.

211. "*SEC*" means the United States Securities and Exchange Commission.

212. "*SEC Enforcement Action*" means the proceeding captioned *United States Securities and Exchange Commission v. Silvergate Capital Corporation, et al.*, No. 1:24-cv-04987-ALC (S.D.N.Y.), any SEC action related to the allegations of that proceeding, and any appeals, if any, thereof.

213. "*Second Priority Liquidation Trust Beneficial Interest*" means the beneficial interest issued under the Liquidation Trust for the benefit of Reorganized Silvergate that shall entitle the holder thereof to, (a) if the Opt-Out Condition is not exercised, (i) 20% of net distributions from the Liquidation Trust once the Aggregate Preferred Stockholder Distribution paid in Cash equals $150 million and (ii) 100% of net distributions from the Liquidation Trust

25

once the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Liquidation Preference Amount or (b) if the Opt-Out Condition is exercised, 100% of net distributions from the Liquidation Trust only after the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Liquidation Preference Amount.

214.    "*Second Priority Liquidation Trust Beneficiary*" means Reorganized Silvergate.

215.    "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code, including claims asserted in connection with the Securities Litigation and any claims for indemnification, advancement or reimbursement arising in connection with the Securities Litigation; for avoidance of doubt, the term Section 510(b) Claim shall not include any Indemnified Individuals Indemnifiable Claim.

216.    "*Secured*" means, when referring to a Claim, a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, in each case, as determined pursuant to section 506(a) of the Bankruptcy Code.

217.    "*Secured Claim*" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

218.    "*Securities Act Class*" means all persons and entities who purchased Silvergate Capital securities in and/or traceable to any of Silvergate Capital Corporation's securities offerings during 2021, and were damaged thereby, excluding the Excluded Class Members, as set forth in the Securities Litigation Settlement.

219.    "*Securities Litigation*" means the litigation proceeding captioned *In re Silvergate Capital Corp. Securities Litigation*, Case No. 3:22-cv-01936-JES-MSB (S.D. Cal.).

220.    "*Securities Litigation Bankruptcy Court Approval Order*" means the Global Settlement Approval Order.

221.    "*Securities Litigation Class Claims*" means the claim of all class members in each of the Exchange Act Class and Securities Act Class, as applicable, arising under the Securities Litigation, which shall be deemed Allowed in the amount of the Securities Litigation Settlement Amount upon entry of the Securities Litigation Final Approval Order and the occurrence of the Effective Date of the Plan. For the avoidance of doubt, the treatment of Class 10 Section 510(b) Claims does not impact the Securities Litigation Settlement or any terms thereof, including the Securities Litigation Settlement Amount.

RLF1 34145408v.2

222.    "*Securities Litigation Class Members*" means members of the purported Exchange Act Class and Securities Act Class under the Securities Litigation.

223.    "*Securities Litigation Defendants*" means the defendants currently named in the Securities Litigation.

224.    "*Securities Litigation Escrow Account*" means an interest-bearing account controlled by Bernstein Litowitz Berger & Grossmann LLP and Cohen Milstein Sellers & Toll PLLC for the benefit of the Securities Litigation Settlement Classes, which will receive and hold the Securities Litigation Settlement Amount.

225.    "*Securities Litigation Final Approval Order*" means the Final Order of the S.D. Cal. District Court approving the Securities Litigation Settlement [S.D. Cal. District Court Docket No. 150].

226.    "*Securities Litigation Preliminary Approval Order*" means the *Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement* [S.D. Cal. District Court Docket No. 140].

227.    "*Securities Litigation Settlement*" means the settlement agreed by and between the Securities Plaintiffs, the Securities Litigation Defendants and the Ad Hoc Preferred Stockholder Group, which (a) the Bankruptcy Court has preliminarily approved under the Global Settlement Approval Order, (b) the S.D. Cal. District Court has preliminarily approved under the Securities Litigation Preliminary Approval Order, and (c) is subject to final approval by the S.D. Cal. District Court and the occurrence of the Effective Date of the Plan.

228.    "*Securities Litigation Settlement Term Sheet*" means the term sheet which is appended to the Global Settlement Approval Order as Exhibit 2 thereto. The terms of the Securities Litigation Settlement Term Sheet have been finally memorialized in and superseded by the Securities Litigation Stipulation of Settlement.  Reference to the Securities Litigation Settlement Term Sheet herein shall include reference to the Securities Litigation Stipulation of Settlement.

229.    "*Securities Litigation Settlement Amount*" means Cash consideration, in the amount of $37,500,000, composed of (a) the remaining $27.5 million of coverage available under the D&O Liability Insurance Policies, (b) a $4.68 million payment by the Underwriters, and (c) a $5.32 million payment from the Cash distributions otherwise due to the Holders of Allowed Preferred Stock Interests, which will be funded on the Effective Date, all made in accordance with the Securities Litigation Stipulation of Settlement.

230.    "*Securities Litigation Settlement Classes*" means the Exchange Act Class and Securities Act Class under the Securities Litigation Settlement.

231.    "*Securities Litigation Stipulation of Settlement*" means the *Stipulation and Agreement of Settlement* filed with the S.D. Cal. District Court resolving the Securities Litigation, preliminarily approved under the Securities Litigation Preliminary Approval Order, and filed with the Bankruptcy Court under the *Notice of Stipulation and Agreement of Settlement Filed in the*

*Securities Litigation Pending Before the United States District Court for the Southern District of California* [Docket No. 782] as <u>Exhibit 1</u> thereto.

232.    "*Securities Plaintiffs*" means the lead plaintiffs in the Securities Litigation.

233.    "*Security Depository or Custodian*" means a securities depository or custodian or any nominee for such a securities depository or custodian, *e.g.*, DTC and its nominee Cede & Co.

234.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

235.    "*SEN*" means the Silvergate Exchange Network.

236.    "*SEN Assets*" means SEN and all personal property used or useful with , SEN and all related regulatory documentation.

237.    "*Shareholder Demand*" means that certain derivative demand, dated March 6, 2023, issued to the Company by Nikhil Bhayani, as custodian for Krish Bhayani, a purported Silvergate stockholder.

238.    "*Shared Indemnity Reserve*" means a shared reserve in the amount of $6,773,000.00 for all Indemnified Individuals listed on Exhibit A to the Indemnification Settlement Term Sheet.

239.    "*Silvergate Operational Assets*" means (a) all tradenames, domain names, bank policies and procedures used in the operation of the DIEM Assets and SEN Assets, and Silvergate Bank and (b) the checking accounts maintained at Vista Bank for SCC and Silvergate Bank ending in account numbers X6364 and X6232, but excluding any Cash in such accounts on the Effective Date and any amounts deposited post-Effective Date that reflect Liquidation Trust Assets or recoveries thereof, which shall remain property of the Liquidation Trust.

240.    "*Silvergate Bank*" means Silvergate Liquidation Corporation (*f/k/a* Silvergate Bank).

241.    "*Silvergate FTX Claims*" means the proofs of claim filed by Silvergate Capital Corporation and Silvergate Liquidation Corporation in the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors pending under the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (KBO).

242.    "*Silvergate NOLs*" means any net operating losses belonging to any of the Debtors and all of the Debtors' tax attributes, but excluding the State Income Tax Receivables.

243.    "*State Income Tax Receivables*" means the refunds owed to the Debtors by (a) the District of Columbia, State of Michigan, and State of New York for tax year 2023, (b) the District of Columbia and State of Maryland for tax year 2022, and (c) similar state tax refunds and receivables due to the Debtors from Governmental Units, if any, arising prior to the Effective Date of the Plan; provided that any state tax refunds and receivables contemplated by this clause

(c) shall not be included in this definition to the extent that collecting such state tax refunds and receivables would reduce, impact, or otherwise affect the Silvergate NOLs or any of the Debtors' tax attributes.

244.    "*Stilwell Activist*" means Stilwell Activist Investments, L.P.

245.    "*Subordinated Notes*" means, collectively, the SC Trust I Subordinated Debentures and the SC Trust II Subordinated Debentures.

246.    "*Subordinated Notes Claims*" means, collectively, the SC Trust I Claims and the SC Trust II Claims.

247.    "*Subsidiary Debtors*" means (i) Silvergate Liquidation Corporation; and (ii) Spring Valley Lots, LLC.

248.    "*Underwriters*" means the following defendants in the Securities Litigation: Goldman Sachs & Co. LLC, Keefe, Bruyette & Woods, Inc., Canaccord Genuity LLC, Citigroup Global Markets Inc., UBS Securities LLC, Compass Point Research & Trading, LLC, Craig-Hallum Capital Group LLC, J.P. Morgan Securities LLC, and Wedbush Securities LLC.

249.    "*Underwriter Contribution*" means $4,680,000, which will be paid by the Underwriter to the Securities Litigation Escrow Account for the benefit of the Securities Plaintiffs, in accordance with the Securities Litigation Stipulation of Settlement.

250.    "*Unexpired Lease*" means a lease to which the Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

251.    "*Unimpaired*" means, with respect to a Claim or a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

252.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

253.    "*Voting Deadline*" means October 15, 2025 at 4:00 p.m. (prevailing Eastern time), which date may be extended by the Debtors.

254.    "*Word of God Litigation*" means the litigation proceeding captioned *Word of God Fellowship, Inc. v. Silvergate Bank, et al.*, 2023-00024877.

**B.    *Interpretation; Application of Definitions; and Rules of Construction***

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

RLF1 34145408v.2

conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "Articles" or "Sections" are references to Articles or "Sections" of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control, *provided that* no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party; and (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

**C.**      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**D.**      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* corporate or limited liability company governance matters relating to the Debtors, as applicable, not incorporated or formed (as applicable) in the State of Delaware shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

30

**E.**    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein. Any conversion required to convert foreign currency to United States dollars shall be done using the applicable exchange rates on the Petition Date.

**F.**    *Reference to the Debtors or Reorganized Silvergate*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or Reorganized Silvergate shall mean (i) prior to the Effective Date, the Debtors and, (ii) on or after the Effective Date, Reorganized Silvergate.

**G.**    *Controlling Document*

In the event of an inconsistency between the Plan, on the one hand, and (i) the Disclosure Statement or (ii) the Plan Supplement, on the other, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

## ARTICLE II:
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, including Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in <u>Article III</u>.

**A.**    *Administrative Expense Claims*

Requests for payment of Administrative Expense Claims must be Filed on or before the Administrative Expense Claims Bar Date. Except as otherwise ordered by the Bankruptcy Court, Holders of Administrative Expense Claims that are required to, but do not, file and serve a request for payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property and such Administrative Expense Claims shall be deemed released against the Debtors as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Liquidation Trustee and the requesting party by the Administrative Claims Objection Deadline.

Except with respect to Administrative Expense Claims that (a) are Professional Fee Claims, (b) have already been paid during the Chapter 11 Case, or (c) for which the Holder of an Allowed Administrative Expense Claim has agreed to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive in full satisfaction of its Administrative Expense Claim, Cash equal to the amount of such Allowed Administrative Expense Claim either: (i) on the Effective Date; (ii) if the Administrative Expense Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (iii) if the Allowed Administrative Expense Claim is based on a liability incurred by the Debtors in the ordinary course

31

of business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed Administrative Expense Claim, without any further action by the Holders of such Allowed Administrative Expense Claim and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

Pursuant to Local Rule 3002-1, the governmental entity shall not be required to file any Proof of Claim or applicable for allowance for any Claims covered by section 503(b)(1)(B), (C), or (D).

**B.**    *Professional Fee Claims*

1.    *Final Fee Applications.*  All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Liquidation Trust (or the authorized signatories to the Professional Fee Escrow Account, after consultation with the Liquidation Trust) shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account within two (2) Business Days or as soon thereafter as reasonably practicable after such Professional Fee Claims are allowed by entry of an order of the Bankruptcy Court. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, and the Liquidation Trustee, as applicable, shall pay the full unpaid amount of such Allowed Administrative Expense Claim in Cash.

2.    *Professional Fee Claims Estimate.*  Professionals shall reasonably estimate their unpaid Professional Fee Claims incurred in rendering services to the Debtors before and as of the Effective Date for the purpose of funding the Professional Fee Escrow Account and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided, however,* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  Nothing in the Plan shall preclude any objection by any party to the RSA to any Professional Fee Claims that do not comply with the terms of the RSA.

3.    *Professional Fee Escrow Account.*  Following the Confirmation Date, and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional

32

RLF1 34145408v.2

Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Debtor, Reorganized Silvergate, or the Liquidation Trust.

When all Allowed amounts owing to the Professionals have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Liquidation Trust, without any further action or order of the Bankruptcy Court.

4.      *Post-Effective Date Fees and Expenses.*  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by professionals providing services to the Liquidation Trustee or Liquidation Trust Board, as applicable, including the fees and expenses of any of the Debtors' Professionals incurred in addressing or responding to any discovery, trial preparation, or trial in any action, suit, proceeding or audit. From and after the Effective Date, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate.

## C.      *Ad Hoc Preferred Stockholder Group Expenses*

The Debtors shall pay in Cash all outstanding Ad Hoc Preferred Stockholder Group Expenses incurred, or estimated to be incurred through the Effective Date, to the extent not previously paid shall be paid on the Effective Date, without the requirement to file a fee application with the Bankruptcy Court.  From and after the Confirmation Date, any outstanding and unpaid Ad Hoc Preferred Stockholder Group Expenses shall be paid in full in Cash.

All Ad Hoc Preferred Stockholder Group Expenses to be paid on the Effective Date shall be estimated, as necessary, prior to or as of the Effective Date and such estimate shall be delivered to the Debtors; *provided* that such estimate shall not be considered an admission or limitation with respect to such Ad Hoc Preferred Stockholder Group Expenses. In addition, the Liquidation Trust is authorized to pay the Ad Hoc Preferred Stockholder Group Expenses, as necessary, after the Effective Date when due and payable in the ordinary course solely to the extent incurred on or after the Confirmation Order is entered, without any requirement for review or approval by the Bankruptcy Court or any Entity.

## D.      *SC Trusts Indenture Trustee Fees*

The Debtors shall pay in Cash the reasonable and documented SC Trusts Indenture Trustee Fees (including attorneys' fees and expenses) incurred, or estimated to be incurred, up to and including the Effective Date, without any requirement to file a fee application with the Bankruptcy Court, on or as soon as reasonably practicable after the Effective Date. The SC Trusts Indenture Trustee Fees to be paid on the Effective Date shall be presented in an invoice including an itemized description of services rendered and, if necessary, an estimate for unbilled fees and expenses incurred prior to and as of the Effective Date, to the Debtors at least two (2) Business Days prior to the anticipated Effective Date; provided that such estimate shall not be considered an admission or limitation with respect to such SC Trusts Indenture Trustee Fees. So that the SC Trusts Indenture

33

Trustees can timely provide such estimate, the Debtors shall provide the SC Trusts Indenture Trustees with five (5) Business Days' prior notice of the anticipated Effective Date. To the extent the Debtors dispute any SC Trusts Indenture Trustee Fees (including attorneys' fees and expenses) and such dispute cannot be consensually resolved, the Bankruptcy Court may determine the dispute.

In addition, within five (5) business days after presentation of an invoice including an itemized description of services rendered, the Debtors or the Liquidation Trust, as applicable, shall pay all reasonable and documented SC Trusts Indenture Trustee Fees (including attorneys' fees and expenses) related to implementation of the Plan, including, without limitation, making (or directing) Distributions on account of the SC Trusts Claims. To the extent the Debtors dispute any SC Trusts Indenture Trustee Fees (including attorneys' fees and expenses) and such dispute cannot be consensually resolved, the Bankruptcy Court may determine the dispute.

### E.      *Common Stock Sponsors' Expenses*

The Debtors shall pay in Cash all outstanding Common Stock Sponsors' Expenses incurred, or estimated to be incurred through the Effective Date, to the extent not previously paid shall be paid on the Effective Date, without the requirement to file a fee application with the Bankruptcy Court.

### F.      *Statutory Fees*

All Quarterly Fees due and payable prior to the Effective Date shall be paid in full in Cash by the Debtors on the Effective Date. The Debtors shall file all reports due prior to the Effective Date when they become due using UST Form 11-MOR. After the Effective Date, the Liquidation Trustee, for and on behalf of the Liquidation Trust, and Reorganized Silvergate shall pay all Quarterly Fees in full in Cash when due and payable and shall file with the Bankruptcy Court any and all quarterly reports when they become due using UST Form 11-PCR. Each and every one of the Debtors, the Liquidation Trust or Reorganized Silvergate shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything in the Plan to the contrary, (i) Quarterly Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

### G.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor agree (whether before or after the Effective Date) to a less favorable treatment, in full and final satisfaction of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

RLF1 34145408v.2

**ARTICLE III:**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.** *Summary of Classification of Claims and Interests*

All Claims and Interests, except for Administrative Expense Claims, including Professional Fee Claims, Quarterly Fees and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests pursuant to the Plan is as set forth below. All of the potential Classes for the Debtors are set forth herein. The Plan shall constitute a separate Plan for each of the Debtors, provided that, the estates of the various Debtors shall be consolidated for the purpose of effectuating distributions under the Plan. For all purposes under the Plan, where applicable, each Class contains a sub-Class for each Debtor. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.C. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.  Only Debtor Silvergate Capital Corporation has any voting classes.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Subordinated Notes Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Indemnified Individuals Indemnifiable Claims | IMPAIRED | ENTITLED TO VOTE |
| 6 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |

RLF1 34145408v.2

| Class | Claim / Interest | Status | Voting Rights |
|-------|------------------|--------|---------------|
| 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 8 | Preferred Stock Interests | IMPAIRED | ENTITLED TO VOTE |
| 9 | Common Stock Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Bhatia Litigation Class Claim | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

**B.**     *Treatment of Claims and Interests*

1.     Class 1 – Other Priority Claims

      a.     *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

      b.     *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive on account thereof payment of the full amount of such Allowed Other Priority Claim in Cash or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code, except to the extent the Holder of an Allowed Other Priority Claim agrees to less favorable treatment.

      c.     *Voting*: Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Secured Claims

      a.     *Classification*: Class 2 consists of all Secured Claims against the Debtors.

      b.     *Treatment*: Each Holder of an Allowed Secured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed Secured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed Secured Claim, including Post-Petition Interest at the Federal Judgment Rate; (ii) the property that serves as security for such Allowed Secured Claim; or (iii) such other treatment that shall render such Allowed Secured Claims Unimpaired pursuant to section 1124 of the Bankruptcy Code (which may include reinstatement). Any portion of any Secured Claim

36

RLF1 34145408v.2

that is not secured by collateral or the proceeds thereof shall constitute a General Unsecured Claim to the extent it is Allowed.

c.    *Voting*: Class 2 is Unimpaired, and Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Secured Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 – General Unsecured Claims

a.    *Classification*: Class 3 consists of all General Unsecured Claims against the Debtors.

b.    *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed General Unsecured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed General Unsecured Claim, including Post-Petition Interest at the Federal Judgment Rate; or (ii) such other treatment that shall render such Allowed General Unsecured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.  To the extent that a General Unsecured Claim is not Allowed and is a Disputed General Unsecured Claim as of the Effective Date, such Disputed General Unsecured Claim, if subsequently Allowed, shall be paid from the Disputed Claims Reserve maintained by the Liquidation Trust.

c.    *Voting*: Class 3 is Unimpaired, and Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

4.    Class 4 – Subordinated Notes Claims

a.    *Classification*: Class 4 consists of all Subordinated Notes Claims.

b.    *Allowance*: The Subordinated Notes Claims shall be Allowed as follows:

(i)    SC Trust I Claims: The SC Trust I Claims are Allowed in the amount of $12,887,000.00 in aggregate outstanding principal amount of SC Trust I Subordinated Debentures, *plus* accrued but unpaid interest to and including the Petition Date in the amount of $2,006,511.66, *plus* interest from the Petition Date to and including the Effective Date at the applicable rate specified in the SC Trust I Indenture and related documents, *plus* all fees, costs, premiums (if any), reimbursement obligations, indemnification obligations, hedging obligations, and other amounts arising and payable under and in accordance with the SC Trust I Indenture and related documents.

37

(ii) <u>SC Trust II Claims</u>: The SC Trust II Claims are Allowed in the amount of $3,093,000.00 in aggregate outstanding principal amount of SC Trust II Subordinated Debentures, *plus* accrued but unpaid interest to and including the Petition Date in the amount of $406,128.83, *plus* interest from the Petition Date to and including the Effective Date at the applicable rate specified in the SC Trust II Indenture and related documents, *plus* all non-contingent fees, costs, premiums (if any), reimbursement obligations, indemnification obligations, hedging obligations, and other amounts arising and payable as of the Effective Date under and in accordance with the SC Trust II Indenture and related documents and the amount of Allowed Subordinated Notes Claims shall not be subject to objection, challenge, reduction, offset, avoidance, setoff, recharacterization, impairment, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or disallowance under applicable law.

c. *Treatment*: Except to the extent that any Holder of an Allowed Subordinated Notes Claim agrees to less favorable treatment on account of such Claim, on or as soon as reasonably practicable after the Effective Date, in full satisfaction, settlement, and release of all Allowed Subordinated Notes Claims, (i) the SC Trust I Indenture Trustee, for the ratable benefit of the Holders of the SC Trust I Preferred Securities and itself, and (ii) the SC Trust II Indenture Trustee, for the ratable benefit of the Holders of the SC Trust II Securities and itself, respectively, shall receive either (x) Cash equal to the amount of such Allowed Subordinated Notes Claim; or (y) such other treatment that shall render such Allowed Subordinated Notes Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that with respect to the Allowed SC Trusts Claims, upon satisfaction in full of the Allowed SC Trusts Capital Securities Claims, all remaining Distributions on account of Allowed SC Trusts Claims shall be received by the Holders of the SC Trusts Common Securities Claims. For the avoidance of doubt, amounts received by the SC Trusts Indenture Trustees on account of the Allowed Subordinated Notes Claims will be subject to the SC Trusts Indenture Trustee Charging Liens.

d. *Voting*: Class 4 is Unimpaired, and Holders of Subordinated Notes Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 4 Subordinated Notes Claims are not entitled to vote to accept or reject the Plan.

5. <u>Class 5 – Indemnified Individuals' Indemnifiable Claims</u>

a. *Classification*: Class 5 consists of the Indemnified Individuals' Indemnifiable Claims against the Debtors.

b.  *Treatment*:  The Indemnified Individuals' Indemnifiable Claims are Allowed; provided, that such allowance shall in no way be deemed a determination that any fees, costs, and or expenses submitted for reimbursement and indemnification qualify as an Indemnifiable Claim, payment of the Indemnified Individuals' Indemnifiable Claims shall be subject to the Indemnification Procedures and shall be satisfied exclusively from the DOJ Insurance Policy, the Indemnification Reserves, and the Go-Forward Chapter 11 Budget (including any amounts payable for "cause" shown in accordance with the Indemnification Procedures), as applicable, and the Indemnifiable Claims shall be deemed amended in all respects to be consistent with the foregoing. Except to the extent that a Holder of an Indemnified Individuals' Indemnifiable Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for its Indemnified Individuals' Indemnification Claim, each such Holder thereof shall receive, the rights and benefits afforded under the Indemnification Settlement Term Sheet, as more fully set forth in Article V.C.2. hereof.

c.  *Voting*:  Class 5 is Impaired.  Holders of Indemnified Individuals' Indemnifiable Claims are entitled to vote to accept or reject the Plan.

6.  Class 6 – Intercompany Claims

a.  *Classification*: Class 6 consists of all Intercompany Claims.

b.  *Treatment*: Each Intercompany Claim shall be, at the option of the Debtors with the consent of the Common Stock Sponsors, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors with the consent of the Common Stock Sponsors; provided that the treatment of any Intercompany Claim shall not result in a Cash distribution on the Effective Date or otherwise reduce recoveries to any other Allowed Claim or Interest Holder or entitle the holder of such Intercompany Claim to any amounts from the Liquidation Trust.

c.  *Voting*: Holders of Claims in Class 6 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.  Class 7 – Intercompany Interests

a.  *Classification*: Class 7 consists of all Intercompany Interests.

b.  *Treatment*: On the Effective Date of the Plan, all Intercompany Interests in the Debtors shall be reinstated.

RLF1 34145408v.2

    c.    *Voting*: Holders of Interests in Class 7 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8.    Class 8 – Preferred Stock Interests

    a.    *Classification*: Class 8 consists of all Preferred Stock Interests in Silvergate Capital Corporation.

    b.    *Treatment*: Except to the extent that a Holder of an Allowed Preferred Stock Interest agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for its Allowed Preferred Stock Interest each such Holder thereof shall receive on the Effective Date (a) such Holder's Pro Rata share of First Priority Liquidation Trust Beneficial Interests, and (b) such Holder's Pro Rata share of the Preferred Stock Initial Distributable Amount.

    c.    *Voting*: Class 8 is Impaired. Holders of Allowed Preferred Stock Interests are entitled to vote to accept or reject the Plan.

9.    Class 9 – Common Stock Interests

    a.    *Classification*: Class 9 consists of all Common Stock Interests in the Debtors.

    b.    *Treatment*: Except to the extent that a Holder of an Allowed Common Stock Interest agrees to less favorable treatment, on the Effective Date of the Plan, all Allowed Common Stock Interests in the Debtors shall be reinstated. Holders of Common Stock Interests shall be the owners of Reorganized Silvergate, which shall continue to operate.

    c.    *Voting*: Class 9 is Unimpaired and Holders of Common Stock Interests in Class 9 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code; provided, however, that if the Opt-Out condition is exercised, Class 9 shall be deemed Impaired and Holders of Common Stock Interests in Class 9 shall be deemed to reject the Plan. Therefore, Holders of Common Stock Interests are not entitled to vote to accept or reject the Plan.

10.    Class 10 – Section 510(b) Claims

    a.    *Classification*: Class 10 consists of all Section 510(b) Claims against the Debtors, which shall include any Bhatia Litigation Class Member that opts-out of the Bhatia Litigation Settlement and any Securities Litigation Class Member that opts-out of the Securities Litigation Settlement, each as discussed below.

40

b.   *Allowance*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Section 510(b) Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

c.   *Treatment*: On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan. For the avoidance of doubt, the treatment of Class 10 Section 510(b) Claims does not impact the Securities Litigation Settlement or any terms thereof, including the Securities Litigation Settlement Amount.

d.   *Voting*: Class 10 is Impaired, and Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders (if any) of Allowed Section 510(b) Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders (if any) will not be solicited with respect to such Allowed Section 510(b) Claims.

11.   Class 11 – Bhatia Litigation Class Claim

a.   *Classification*: Class 11 consists of the Bhatia Litigation Class Claim against the Debtors.

b.   *Allowance*: Upon entry of the Bhatia Litigation Final Approval Order, and without the filing of a proof of claim, the Bhatia Litigation Class Claim shall be Allowed as a single class Claim in the amount of the Bhatia Litigation Settlement Fund.

c.   *Treatment*: Upon entry of the Bhatia Litigation Final Approval Order, the Bhatia Litigation Class Claim shall be entitled to receive the Bhatia Litigation Settlement Fund, to be paid by the Debtors and distributed in accordance with the Bhatia Litigation Final Approval Order in full and complete settlement and satisfaction of the Bhatia Litigation Class Claim.

The Debtors understand that Bhatia Litigation Class Members have the option to opt-out of the Bhatia Litigation Settlement. Any Claims of putative Bhatia Litigation Class Members that opt-out of the Bhatia Litigation Settlement shall be subject to the Bar Date Order, treated as Section 510(b) Claims and to the extent such 510(b) Claim becomes Allowed, such Section 510(b) Claim shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan.

d.   *Voting*: Class 11 is Unimpaired, and Holders of Bhatia Litigation Claims are conclusively deemed to have accepted the Plan pursuant to section

41

1126(f) of the Bankruptcy Code. Therefore, Holders of Class 11 Claims are not entitled to vote to accept or reject the Plan.

### C.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### D.      *Separate Classification of Secured Claims*

Each Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing another Secured Claim, shall be treated as being in a separate sub-Class for purposes of receiving distributions under this Plan.

### E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

### F.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### A.      *Classes Entitled to Vote*

Holders of Indemnified Individuals' Indemnifiable Claims (Class 5) and Preferred Stock Interests (Class 8) are entitled to vote on the Plan. Any Holder of a Claim or an Interest that has been objected to may file a motion pursuant to Bankruptcy Rule 3018 for an order temporarily allowing such Interest solely for purposes of voting to accept or reject the Plan in accordance with the procedures to be set forth in the order approving the Disclosure Statement, including any deadlines set forth therein. Class 1, Class 2, Class 3, Class 4, Class 9 and Class 11 are deemed to have accepted the Plan.

The Debtors have requested that the Bankruptcy Court adopt a presumption that if no Holder of a Claim or Interest in a Class of Claims or Interests eligible to vote in a particular Class timely submits a timely Ballot to accept or reject the Plan, then the applicable Class will be deemed to have accepted the Plan. Accordingly, if any Holder of a Claim or Interest in Class 5 or Class 8

42

does not wish such a presumption to apply with respect to any Class for which such Holder holds a Claim, then the Holder should timely submit a Ballot accepting or rejecting the Plan for any such Class.

**B.**      *Class Acceptance Requirement*

Class 5 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number in such Class that have voted on the Plan

Class 8 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount in such Class that have voted on the Plan.

**C.**      *Cramdown and No Unfair Discrimination*

In the event that any impaired Class of Claims or Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.

**ARTICLE V:**
**MEANS FOR IMPLEMENTATION**

**A.**      *Consolidation for Distribution Purposes Only*

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors' Chapter 11 Cases for the limited purpose of making Distributions. For all other purposes, this Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor in all respects other than for Distributions. Upon the entry of the Confirmation Order, the claims register maintained in the various Chapter 11 Cases shall be deemed consolidated into a single claims register in respect of the consolidated Estate. Further, Claims asserted against multiple Debtors, including Claims based on joint and several liability and guarantee and/or surety Claims shall be deemed to constitute a single Claim against the consolidated Estate. Notwithstanding the substantive consolidation for the limited purpose of making Distributions contemplated herein, on and after the Effective Date the Debtors will each continue as separate post-effective date entities after emergence from the Chapter 11 Cases.

**B.**      *Sources of Consideration for Distributions*

Cash payments or Cash distributions to be made hereunder on the Effective Date shall be funded from the existing Cash of the Debtors.  All other assets of the Debtors and property of the Debtors' estates shall vest in either the Liquidation Trust or Reorganized Silvergate, as applicable, on the Effective Date.

43

**C.**    *The Global Settlement*

The Global Settlement is composed of the Securities Litigation Settlement and the settlement contemplated by the Indemnification Settlement Term Sheet, each of which is mutually dependent and nonseverable.   Pursuant to the Confirmation Order, the Global Settlement, including the settlement contemplated by the Indemnification Settlement Term Sheet and the Securities Litigation Settlement, shall become effective upon the entry of the Securities Litigation Final Approval Order and the occurrence of the Effective Date of the Plan.

1.    *Securities Litigation Settlement*

a.    *Securities Litigation Claims*

On behalf of themselves and the Settlement Classes, the Securities Plaintiffs have agreed to resolve the Securities Litigation in exchange for the Securities Litigation Settlement Amount consistent with the Securities Litigation Stipulation of Settlement. On May 21, 2025, Securities Plaintiffs filed a motion in the Securities Litigation seeking preliminary approval of the Securities Litigation Settlement and certification of the Settlement Classes for settlement purposes, which the S.D. Cal. District Court granted under the Securities Litigation Preliminary Approval Order. Upon entry of the Securities Litigation Final Approval Order, the Securities Litigation Class Claims shall be entitled to receive the Securities Litigation Settlement Amount, to be paid and distributed in accordance with the Securities Litigation Final Approval Order in full and complete settlement and satisfaction of the Securities Litigation Class Claims. The Debtors understand that Securities Litigation Class Members will be provided with the option to opt-out of the Securities Litigation Settlement. Any Claims of putative Securities Litigation Class Members that opt-out of the Securities Litigation Settlement shall be subject to the Bar Date Order, treated as Section 510(b) Claims and to the extent such 510(b) Claim becomes Allowed, such Section 510(b) Claim shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan.

As set forth in the Securities Litigation Stipulation of Settlement, the Securities Litigation Settlement Amount shall be paid into the Securities Litigation Escrow Account controlled by Lead Counsel for the Securities Litigation Settlement Classes, Bernstein Litowitz Berger & Grossmann LLP and Cohen Milstein Sellers & Toll PLLC as follows: (a) contemporaneously with, or within twenty (20) business days after preliminary approval of the Securities Litigation Class Action Settlement by the S.D. Cal. District Court: (i) $27,500,000, which will come from the D&O Insurance Contribution; (ii) $4,680,000, which will come from the Underwriter Contribution; and (iii) subject to and upon the occurrence of the Effective Date, $5,320,000 which will come from the Preferred Stock Interest Contribution.

b.    *Underwriters Claims*

Consistent with the Securities Litigation Stipulation of Settlement, on the Effective Date of the Plan and consummation of the Global Settlement, all Proofs of Claim filed by the Underwriters in the Debtors' Chapter 11 Cases will be deemed disallowed and the Debtors and Stretto shall be authorized to note such disallowance on the Claims Register without further order of the Bankruptcy Court.   For the avoidance of doubt, no documents or orders entered in

44

RLF1 34145408v.2

connection with the Plan or the Global Settlement shall disallow or otherwise modify claims of the Underwriters until the Effective Date of the Plan and consummation of the Global Settlement.

2.   ***Indemnification Settlement***

a.   *Establishing Indemnification Reserves and Acquiring the DOJ Insurance Policy*

On the Effective Date, the Debtors shall, in a manner mutually acceptable to the Required Preferred Stockholders and the Indemnified Individuals, establish the DOJ Indemnification Reserve, Martino SEC Dedicated Indemnity Reserve, Dedicated Indemnity Reserves and the Shared Indemnity Reserve, in accordance with the Indemnification Settlement Term Sheet and shall have acquired the DOJ Insurance Policy or fund a reserve for the benefit of the applicable Indemnified Individuals in the same amount as the proposed DOJ Insurance Policy (or a combination thereof, as agreed to by the applicable Indemnified Individuals and the Required Preferred Stockholders), the terms of which policy shall be mutually acceptable to applicable Indemnified Individuals covered thereunder and the Required Preferred Stockholders.

The Indemnification Reserves shall be funded in the applicable amounts set forth in the Indemnification Settlement Term Sheet with Cash from the Debtors' estates held in trust for the Indemnified Individuals in an interest-bearing Cash deposit account managed by the Liquidation Trustee. Indemnified Individuals shall be entitled to submit to the Liquidation Trustee an invoice for reasonable and documented Indemnifiable Claims, which shall include a brief description of the matter to which the invoice relates, detail for expenses incurred and time entries for any professional retained by such Indemnified Individuals (which shall be maintained in no more than .25 increments of an hour). The Liquidation Trustee shall have 30 days to review such invoice (the "Indemnifiable Claim Objection Deadline") and raise any objection that such amounts incurred do not constitute a valid Indemnifiable Claim and/or the amounts incurred are not reasonable (which for the avoidance of doubt shall not include application of sections 330 and 328 of the Bankruptcy Code) (an "Indemnifiable Claim Objection"). Indemnified Individuals shall use reasonable and good-faith efforts to submit all invoices for Indemnifiable Claims within 40 days after the end of the month in which such Indemnifiable Claim is incurred; provided, however, that the failure to submit any such invoice within such period shall not prejudice the right of any Indemnified Individual to payment of any Indemnifiable Claim in accordance with the procedures set forth herein. Only reasonable and documented Indemnifiable Claims shall be paid from the Indemnification Reserve.

In the event that the Liquidation Trustee raises an Indemnifiable Claim Objection, the Liquidation Trustee and the Indemnified Individual shall work in good-faith to resolve such Indemnifiable Claim Objection. In the event that the Liquidation Trustee and the Indemnified Individual are unable to resolve such Indemnifiable Claim Objection within 45 days after the Indemnifiable Claim Objection Deadline (unless extended by mutual consent of the parties), then the Liquidation Trustee shall file a formal objection with the Bankruptcy Court and seek a determination from the Bankruptcy Court on no less than 20 days' notice to such Indemnified Individual or their counsel, as applicable. If the Liquidation Trustee is not the prevailing party in an Indemnifiable Claim Objection that is decided by the Bankruptcy Court, then the applicable

45

Indemnified Individual is entitled to recover his or her reasonable attorneys' fees incurred with respect to such Indemnifiable Claim Objection from the applicable reserve.  For avoidance of doubt, the Debtors shall pay the fees and expenses incurred under the Go-Forward Chapter 11 Budget on the Effective Date, and the Liquidation Trustee shall have no role in that process.

Any decision of the Bankruptcy Court with respect to the validity of an Indemnifiable Claim and/or the reasonableness thereof shall be binding on the Indemnified Individual and the Liquidation Trustee. All undisputed amounts, or subsequently allowed amounts, shall be paid from their applicable reserve within 30 days of the invoice submission if undisputed, and with 10 days of an agreement or determination of the Bankruptcy Court for any amounts that are disputed.

With respect to an amount claimed and allowed against any shared Indemnification Reserve, the Liquidation Trustee will be authorized and have no liability for paying such Allowed Indemnifiable Claims from the applicable shared Indemnification Reserve on a claims made basis. The Liquidation Trustee will send a quarterly notice to the Indemnified Individuals or their counsel, as applicable, of all amounts remaining in the Indemnification Reserves, until such time as the Indemnification Reserves have been exhausted or released.

Indemnified Individuals with Dedicated Indemnity Reserves must exhaust their applicable Dedicated Indemnity Reserves before seeking payment from the Shared Indemnity Reserves.

Subject to the reserve step downs set forth in Article V.C.2.b., Preferred Stock Interests shall hold the residual interest in the Indemnification Reserves after all Indemnifiable Claims are satisfied.

b.   *Reserve Step-Downs*

Funds in each of the Dedicated Indemnity Reserves and Shared Indemnity Reserve (but excluding the DOJ Insurance Policy or any Cash reserve maintained in lieu of the DOJ Insurance Policy) will be reduced as follows and released to the Liquidation Trust for Distribution to the holders of First Priority Liquidation Trust Beneficial Interests, in accordance with the Common Stock Settlement:

(1) Upon the earliest to occur of settlement, dismissal, or final non-appealable resolution of the SEC Enforcement Action regarding Martino:

a. the release of all amounts remaining in the Martino SEC Dedicated Reserve (net of amounts required to satisfy the Indemnifiable Claims of Martino related to the SEC Enforcement Action that are submitted within 40 days after such date in accordance with the Indemnification Procedures); and

b. the release of $750,000 from the Alan Lane Dedicated Indemnity Reserve and $750,000 from the Shared Indemnity Reserve (in each case, net of amounts required to satisfy the Indemnifiable Claims of the applicable Indemnified Individuals (other

than Martino) related to the SEC Enforcement Action that are submitted within 40 days after such date in accordance with the Indemnification Procedures).

(2) Upon a final resolution of the Word of God Litigation:

a. the release of $1,900,000 from the Alan Lane Dedicated Indemnity Reserve and $900,000 from the Shared Indemnity Reserve (in each case, net of amounts required to satisfy the Indemnifiable Claims of the applicable Indemnified Individuals related to the Word of God Litigation that are submitted within 40 days after such date in accordance with the Indemnification Procedures).

(3) Upon a final resolution of the Bhatia Litigation (with no opt-outs):

a. the release of $750,000 from the Alan Lane Dedicated Indemnity Reserve and $250,000 from the Shared Indemnity Reserve (in each case, net of amounts required to satisfy the Indemnifiable Claims of the applicable Indemnified Individuals related to the Bhatia Litigation that are submitted within 40 days after such date in accordance with the Indemnification Procedures).

(4) Upon final resolution of the SEC Enforcement Action as it relates to Martino, the Word of God Litigation and the Bhatia Litigation:

a. If there have been no Indemnifiable Claims asserted in good faith as of each of the following dates, the remaining amount of the Dedicated Indemnity Reserves and the Shared Indemnity Reserve will be reduced by 25% on August 15, 2026, 25% on August 15, 2027, 25% on August 15, 2028 and 25% on August 15, 2029.

c.    *Resolution of the SEC Enforcement Action Regarding Martino, the Word of God Litigation, and the Bhatia Litigation Prior to the Effective Date*

In the event that the SEC Enforcement Action, the Word of God Litigation, or the Bhatia Litigation is fully and finally dismissed or otherwise finally resolved, with no further right to appeal, if applicable, prior to the Effective Date, the applicable amounts to be released with respect to such dismissed or resolved action pursuant to the Reserve Step-Downs shall not be funded into the applicable reserve and instead shall remain Cash of the Debtors' estates to be used to satisfy the Debtors' obligations on the Effective Date, including the Preferred Stock Initial Distributable Amount, and, notwithstanding anything to the contrary herein, shall not be transferred to the Liquidation Trust.

d.    *Residual Interest in the Indemnification Reserves*

As set forth in the Indemnification Settlement Term Sheet, Holders of Allowed Preferred Stock Interest shall maintain the exclusive reversionary interest in the Indemnification Reserve Residual Interest until such time as the Holders of Allowed Preferred Stock Interest have actually received Cash payments of $200 million. Consistent with the Common Stock Settlement, amounts to be released to the Holders of Allowed Preferred Stock Interests under the Indemnification

47

Settlement Term Sheet, including the Indemnification Reserve Residual Interest, shall be released to and distributed by the Liquidation Trust to the Liquidation Trust Beneficiaries.

e.    *Go-Forward Chapter 11 Budget*

Notwithstanding anything to the contrary in this Article V.C.2, but without limiting the rights of the Debtors and the Ad Hoc Preferred Stockholder Group to challenge (and have determined by the Bankruptcy Court) whether such fees and expenses satisfy the terms of the Go-Forward Chapter 11 Budget or the Excess Go-Forward Fee Amounts, as applicable, on the Effective Date, the Debtors shall pay in Cash the incurred reasonable and documented fees of the Indemnified Individuals consistent with the terms of the Go-Forward Chapter 11 Budget, plus any Excess Go-Forward Fee Amounts (for the avoidance of doubt, the payment of any Excess Go-Forward Fee Amounts shall reduce the applicable Indemnification Reserves on a dollar-for-dollar basis). The Indemnified Individuals listed on Exhibit C to the Indemnification Settlement Term Sheet can request relief from the Bankruptcy Court from the Go-Forward Chapter 11 Budget for "cause" shown, which shall include, without limitation, additional work required to be completed by counsel for such Indemnified Individuals if the Plan has not gone effective prior to five (5) months from March 27, 2025. The Debtors and the Ad Hoc Preferred Stockholder Group shall reserve all rights to challenge the reasonableness of such fees, even if they fall within the Go-Forward Chapter 11 Budget.

**D.    *Common Stock Settlement***

As announced on the record made at the hearing held before the Bankruptcy Court on May 13, 2025, the Ad Hoc Group of Preferred Stockholders and the Common Stock Sponsors reached agreement in principle regarding the terms to be included in this Plan regarding the proposed treatment to be afforded to the Holders of Preferred Stock Interests and Common Stock Interests pursuant to the Plan, as set forth below in this Article V.D.

1.    *Preferred Stockholder Recoveries*

Holders of Allowed Preferred Stock Interests shall receive the following: (a) the Preferred Stock Initial Distributable Amount, and (b) the First Priority Liquidation Trust Beneficial Interests.

Preferred Stock Interests shall be cancelled upon the Effective Date of the Plan, and in exchange therefor, Holders of Allowed Preferred Stock Interests shall receive First Priority Liquidation Trust Beneficial Interests, which shall receive (i) 100% of net distributions from the Liquidation Trust until the Aggregate Preferred Stock Distribution paid in Cash equals $150 million, and (ii)(a) if the Opt-Out Condition is not exercised, 80% of the next net distributions from the Liquidation Trust after the Aggregate Preferred Stock Distribution paid in Cash equals $150 million until the Aggregate Preferred Stock Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount or (b) if the Opt-Out Condition is exercised, 100% of net distributions thereafter from the Liquidation Trust until the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount.  When the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount, holders of First Priority Liquidation Trust Beneficial Interests shall not be entitled to further recovery on account of their First Priority Liquidation Trust Beneficial Interests.

### 2. *Common Stockholder Recoveries*

Holders of Allowed Common Stock Interests shall have their Common Stock Interests in Silvergate Capital Corporation reinstated and shall be the owners of Reorganized Silvergate. On the Effective Date, the Debtors shall fund the Common Stock Sponsors' Expenses and, subject to the Opt-Out Condition, Reorganized Silvergate shall retain the Reorganized Silvergate Assets.

### 3. *Reorganized Silvergate Assets, Funding, and Governance*

If the Opt-Out Condition is not exercised, Reorganized Silvergate shall be vested with the following: (i) the SEN Assets, (ii) the Diem Assets, (iii) the Silvergate Operational Assets, (iv) the Silvergate NOLs, (v) the Reorganized Silvergate Retained Causes of Action, (vi) the Reorganized Silvergate Cash Funding, (vii) all Interests in the Subsidiary Debtors, and (viii) the Second Priority Liquidation Trust Beneficial Interest. If the Opt-Out Condition is exercised, then only the Silvergate NOLs, the Interests in the Subsidiary Debtors and the Second Priority Liquidation Trust Beneficial Interest will vest in Reorganized Silvergate and all other Reorganized Silvergate Assets shall be transferred to, and vest in, the Liquidation Trust.

If (a) the Opt-Out Condition is not exercised, then the Holder of the Second Priority Liquidation Trust Beneficial Interest shall receive (i) 20% of net distributions from the Liquidation Trust once the Aggregate Preferred Stockholder Distribution paid in Cash equals $150 million, and (ii) 100% of net distributions from the Liquidation Trust once the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount or (b) if the Opt-Out Condition is exercised, then the Holder of the Second Priority Liquidation Trust Beneficial Interest shall receive 100% of net distributions from the Liquidation Trust once the Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount.

Holders of Common Stock Interests shall be the owners of Reorganized Silvergate, which shall continue to operate. The board and management of Reorganized Silvergate shall be selected by mutual agreement of the Common Stock Sponsors.

Reorganized Silvergate shall not assume any liabilities under the Plan; provided that, Reorganized Silvergate shall be responsible for all costs associated with the Reorganized Silvergate Assets that vest with Reorganized Silvergate arising from and after the Effective Date.

### 4. *Liquidation Trust Assets, Funding and Governance*

The Liquidation Trust Assets shall vest in the Liquidation Trust. In the event the Opt-Out Condition is exercised, then the Liquidation Trust shall also be vested with (i) the SEN Assets, (ii) the Diem Assets, (iii) the Silvergate Operational Assets, (iv) the Reorganized Silvergate Retained Causes of Action, and (v) the Reorganized Silvergate Cash Funding.

The Liquidation Trust shall be funded with the Liquidation Trust Initial Funding.

The Liquidation Trust shall be operated pursuant to the Liquidation Trust Agreement, which shall provide that the Liquidation Trust shall be managed by the Liquidation Trustee

RLF1 34145408v.2

selected by the Required Preferred Stockholders in consultation with the Common Stock Sponsors, and that the Liquidation Trustee shall report to the Liquidation Trust Board, two members of which shall be appointed by the Required Preferred Stockholders and one member of which shall be appointed by the Common Stock Sponsors. The Liquidation Trust Agreement shall provide that matters requiring the vote, consent or other approval of the Liquidation Trust Board shall be determined by a majority of the members of the Liquidation Trust Board, and that no matters shall require special voting, consent or other approval of the board or any approval of the holders of Liquidation Trust Beneficial Interests. Amounts recovered by the Liquidation Trustee shall be distributed in a manner consistent with the terms of Liquidation Trust Agreement and in accordance with the Common Stock Settlement and this Plan. The Liquidation Trust Agreement shall provide that Reorganized Silvergate shall have access to the Debtors' books and records that are transferred to the Liquidation Trust. After the Aggregate Preferred Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount, Reorganized Silvergate shall have the right to select and replace the entire Liquidation Trust Board.

### 5.    *Plan Support*

Subject to the Opt-Out Condition discussed below, the Common Stock Sponsors will fully support the Plan (including the releases set forth in Article IX hereof by electing to opt into the third party releases set forth in Article IX.C hereof), including by withdrawing all litigation and discovery pending against the Debtors and withdrawing their Motion to Expand the Examiner's Scope (pending the Effective Date of the Plan).

### 6.    *The Opt-Out Condition*

The Common Stock Settlement provides the following regarding the Opt-Out Condition: In the event that the Bankruptcy Court determines that NYDIG has an allowed unsecured claim that results in a material adverse change, the Ad Hoc Preferred Stockholder Group (by the Required Preferred Stockholders), shall have the right to opt out of (and to direct the Debtors to opt out of) the Common Stock Settlement (the "Opt-Out Condition"), provided, however, that the exercise of the Opt-Out Condition shall not unwind, modify, or alter the payment of the Common Stock Sponsors' Expenses, the reinstatement of the Common Stock Interests in Reorganized Silvergate (which shall not be subject to dilution), and Reorganized Silvergate's retention of the Silvergate NOLs for the sole benefit of the existing Common Stock Interests and the Interests in the Subsidiary Debtors, but for the avoidance of doubt, Reorganized Silvergate shall not be entitled to retain any other Cash, assets, claims, or causes of action. The Opt-Out Condition must be exercised by providing written notice to the Common Stock Sponsors within 14 calendar days of the Bankruptcy Court's issuance of an order determining that NYDIG has an allowed unsecured claim. If the Opt-Out Condition is exercised, all of the Common Stock Sponsors' rights to oppose the Plan, prosecute the Motion to Expand the Examiner' Scope, and challenge whether the allowance of the NYDIG claim results in a material adverse change and the exercise of the Opt-Out Condition is proper, are fully preserved and the Common Stock Sponsors are no longer required to support the Plan. The Debtors, Ad Hoc Preferred Stockholder Group and the Common Stock Sponsors shall use good faith efforts to agree on a reasonable schedule for confirmation of the Plan and

RLF1 34145408v.2

consideration of the Motion to Expand the Examiner' Scope if the Opt-Out Condition is exercised.

In the event that the Bankruptcy Court determines that NYDIG has an allowed unsecured claim and the Required Preferred Stockholders have not exercised (and directed the Debtors to exercise) the Opt-Out Condition within 14 calendar days of the Bankruptcy Court's issuance of an order determining that NYDIG has an allowed unsecured claim, then the Reorganized Silvergate Cash Funding shall be reduced by an amount equal to 50% of the allowed amount of the NYDIG claim, provided, however, such reduction shall not exceed $1.1 million.

Any settlement of the NYDIG claim that results in an allowed unsecured claim without the consent of the Common Stock Sponsors shall not give rise to a right to exercise the Opt-Out Condition and shall not result in a reduction of the Reorganized Silvergate Cash Funding.

On August 1, 2025, the Bankruptcy Court sustained the NYDIG Claim Objection and disallowed NYDIG's Claims in their entirety.  The Bankruptcy Court Order sustaining the NYDIG Claim Objection became a final non-appealable order on August 15, 2025, and as result the Opt-Out Condition is now moot.

7.      *Right to Withdraw Plan Support*

The Common Stock Sponsors' support of the Plan may be withdrawn, and the Common Stock Sponsors shall be entitled to object to confirmation of the Plan on any grounds, if the Plan or any definitive documentation is inconsistent with the Common Stock Settlement set forth herein or, to the extent not addressed in the Common Stock Settlement set forth herein and affecting Reorganized Silvergate or Common Stock Interests' recoveries hereunder, has not been consented to by the Common Stock Sponsors.

**E.      *Vesting of Reorganized Silvergate Assets in Reorganized Silvergate***

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, (a) if the Opt-Out Condition has not been exercised, the Reorganized Silvergate Assets shall vest in Reorganized Silvergate, or (b) if the Opt-Out Condition has been exercised, only the payment of the Common Stock Sponsors' Expenses, and the Silvergate NOLs, the Interests in the Subsidiary Debtors, and the Second Priority Beneficial Trust Interest shall vest in Reorganized Silvergate, in each case as applicable, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or, if the Opt-Out Condition has not been exercised, Reorganized Silvergate Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**F.      *Reorganized Silvergate's Corporate Governance Documents***

To the extent required under the Plan, or applicable non-bankruptcy law, on the Effective Date, or as soon as reasonably practicable thereafter, Reorganized Silvergate will file such New Organizational Documents as are required to be filed with the applicable Secretary of State and/or

51

other applicable authorities in the state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized Silvergate may amend and restate its respective New Organizational Documents, and Reorganized Silvergate may file its respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents. Additionally, on the Effective Date, each recipient of Reorganized Silvergate Common Interests will be subject to the New Organizational Documents.

## G.    *Reorganized Silvergate Board*

As of the Effective Date, all directors, managers, and other members of existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of directors of Reorganized Silvergate. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents, and other constituent documents of Reorganized Silvergate. The directors and officers of Reorganized Silvergate shall be disclosed in the Plan Supplement and shall be selected by the Common Stock Sponsors.

## H.    *Board of Directors, Officers and Remaining Employees*

On the Effective Date, all of the Debtors' board members, directors, officers, managers, and, unless otherwise provided in any Plan Supplement filed on or before the Effective Date, any remaining employees shall be deemed to have resigned without the need to take any further action.

## I.    *Exemption from Registration*

The Debtors believe that, subject to certain exceptions described below, various provisions of the Securities Act, the Bankruptcy Code and applicable state securities laws ("Blue Sky Laws") exempt from federal and state securities registration requirements (i) the offering, issuance, exchange, distribution or sale of securities (to the extent Liquidation Trust Beneficial Interests are considered "securities" under applicable law) pursuant to the Plan and (ii) subsequent transfers of such securities.

The Liquidation Trust Beneficial Interests to be distributed to the Liquidation Trust Beneficiaries pursuant to this Plan shall be transferrable as set forth in the Liquidation Trust Agreement. The Liquidation Trust Beneficial Interests shall not be listed on any national securities exchange and shall have the consent and voting rights provided in the Liquidation Trust Agreement. The Liquidation Trust shall have no obligation to take any steps to facilitate the development of a trading market in the Liquidation Trust Beneficial Interests.

RLF1 34145408v.2

1.      *Section 1145.* Except with respect to any Person that is an underwriter as defined in section 1145(b) of the Bankruptcy Code or otherwise issued in reliance on section 4(a)(2) of the Securities Act ("Section 4(a)(2)") as elected by the Debtor, the issuance of the Liquidation Trust Beneficial Interests to Liquidation Trust Beneficiaries under the Plan (to the extent the Liquidation Trust Beneficial Interests are considered "securities" under applicable law) shall be exempt from registration under section 5 of the Securities Act (and any applicable Blue Sky Laws) under section 1145(a)(1) of the Bankruptcy Code.

Section 1145(a)(1) of the Bankruptcy Code exempts the issuance, offer, sale, and distribution of securities under a chapter 11 plan from registration under section 5 of the Securities Act and state or local securities laws if the following three principal requirements are satisfied: (a) the securities must be offered and sold under a chapter 11 plan must be securities of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan; (b) the recipients of the securities must hold prepetition or administrative expense claims against the debtor or interests in the debtor; and (c) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in exchange for such claim or interest and partly for Cash or property.

To the extent the issuance and distribution of the Liquidation Trust Beneficial Interests are made under the requirements of section 1145 of the Bankruptcy Code (and, to the extent such Liquidation Trust Beneficial Interests are deemed securities under applicable law), such issuance and distribution are exempt from registration under the Securities Act and any state or local law requiring registration. The availability of the exemptions under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to occurrence of the Effective Date of the Plan. To the extent section 1145 of the Bankruptcy Code is applicable, the securities to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) in general are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act. In addition, securities governed by section 1145 of the Bankruptcy Code generally may be able to be resold without registration under applicable Blue Sky Laws pursuant to various exemptions provided by the respective Blue Sky Laws of the various states; however, the availability of such exemptions cannot be known unless individual states' Blue Sky Laws are examined, and recipients of securities are advised to consult with their own legal advisors as to the availability of any such exemption from registration in any given instance. Notwithstanding the foregoing, any securities or instruments issued under the Plan in reliance on section 1145(a) of the Bankruptcy Code remain subject to: (x) compliance with any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments; (y) the restrictions in the Liquidation Trust Agreement on the transferability of the Liquidation Trust Beneficial Interests and (z) any other applicable regulatory approval.

2.      *Section 4(a)(2).*  To the extent securities are issued pursuant to the Plan in reliance on Section 4(a)(2), the offering, issuance, exchange, or distribution of such securities pursuant to the Plan shall be conducted in a manner that is exempt from, among other things, the registration

requirements of section 5 of the Securities Act. Section 4(a)(2) exempts from section 5's registration requirements transactions not involving a public offering, and Regulation D under the Securities Act ("Regulation D") provides a safe harbor under Section 4(a)(2) for transactions that meet certain requirements, including that the investors participating therein qualify as "accredited investors" within the meaning of Rule 501 under Regulation D ("Accredited Investors"). Such offering, issuance, exchange or distribution shall be structured to be available only to Holders who certify that they are Accredited Investors and who submit documentation allowing verification of their status as Accredited Investors. Any such securities shall be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and shall only be transferable if registered under the Securities Act or if transferred pursuant to an exemption from the registration requirements of the Securities Act and other applicable securities laws.

3.      *DTC.  S*hould the Liquidation Trust elect on or after the Effective Date to reflect any ownership of the Liquidation Trust Beneficial Interests through the facilities of DTC, it need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of transfers, exercise, removal of restrictions, or conversion of the Liquidation Trust Beneficial Interests under applicable U.S. federal, state or local securities laws.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Liquidation Trust Beneficial Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Liquidation Trust Beneficial Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

## J.      *Deemed Holders of Subordinated Notes Claims*

The SC Trust I Declaration of Trust provides that SC Trust I will automatically terminate upon the bankruptcy of Silvergate Capital Corporation.[5] Upon such termination of SC Trust I, the terms of the SC Trust I Securities require the administrative trustee of the SC Trust I to distribute to Holders of the SC Trust I Securities the SC Trust I Subordinated Debentures having a principal amount equal to the liquidation amount per security plus accumulated and unpaid distributions thereon to the date of payment, after satisfaction of liabilities to creditors of SC Trust I as provided by applicable law.[6] For purposes of this Plan, Holders of the SC Trust I Securities shall be deemed to hold the SC Trust I Subordinated Debentures and thus such Holders shall be deemed to hold the SC Trust I Claims; *provided*, *however*, that the Holder of the SC Trust I Common Securities Claim shall not receive any Distributions pursuant to this Plan unless and until the SC Trust I Capital Securities Claim shall have been satisfied in full.

---

[5] *See* Section 7.1(a)(ii) of the SC Trust I Declaration of Trust.

[6] *See* Annex I, Section 3 of the SC Trust I Declaration of Trust.

54

RLF1 34145408v.2

The SC Trust II Declaration of Trust provides that SC Trust II will dissolve upon the bankruptcy of Silvergate Capital Corporation.[7] Upon such dissolution of SC Trust II, the terms of the SC Trust II Securities require the institutional trustee of the SC Trust II to distribute to Holders of the SC Trust II Securities the SC Trust II Subordinated Debentures on a Pro Rata basis, after satisfaction of liabilities to creditors of SC Trust II as provided by applicable law.[8] For purposes of this Plan, Holders of the SC Trust II Securities shall be deemed to hold the SC Trust II Subordinated Debentures and thus such Holders shall be deemed to hold the SC Trust II Claims; *provided*, *however*, that the Holder of the SC Trust II Common Securities Claim shall not receive any Distributions pursuant to this Plan unless and until the SC Trust II Capital Securities Claim shall have been satisfied in full.

## K.      *Preservation of Insurance*

Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estates), the beneficiaries of the Insurance Policies, under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies.

All of the Debtors' rights and their Estates' rights under any Insurance Policies to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidation Trust for the benefit of the beneficiaries of such policies, including the current and former directors and officers and any Holder entitled to recover from such policies pursuant to the Plan. Notwithstanding the foregoing, the Debtors' rights to any recoveries from any of the Insurance Policies and the proceeds thereof, shall be deemed Liquidation Trust Assets and shall be distributed directly to the Liquidation Trust for distribution to the Liquidation Trust Beneficiaries; provided, however, that for the avoidance of doubt, nothing in this Article V.K shall affect (i) the D&O Insurance Contribution in accordance with the Securities Litigation Stipulation of Settlement, and (ii) the DOJ Insurance Policy acquired pursuant to the Indemnification Settlement Term Sheet.

## L.      *Indemnification Obligations*

The Indemnified Individuals' Indemnifiable Claims shall be Allowed and shall survive confirmation of the Plan; provided, that (a) such Allowance shall in no way be deemed a determination that any fees, costs, and or expenses submitted for reimbursement and indemnification qualify as an Indemnifiable Claim, (b) the payment of the Indemnified Individuals' Indemnifiable Claims shall be subject to the Indemnification Procedures and shall be satisfied exclusively from the DOJ Insurance Policy, the Indemnification Reserves, and the Go-Forward Chapter 11 Budget (including any amounts payable for "cause" shown in accordance with the Indemnification Procedures), as applicable, and (c) the Indemnifiable Claims shall be deemed amended in all respects to be consistent with the foregoing. Subject to compliance with the Indemnification Procedures and the maintenance of the Indemnification Reserves and the DOJ Insurance Policy in the manner required by this Plan, none of Reorganized Silvergate, the Liquidation Trust, the Liquidation Trustee, nor any of their respective assets shall be liable for any

---

[7] *See* Section 7.1(a)(ii) of the SC Trust II Declaration of Trust.

[8] *See* Annex I, Section 3 of the SC Trust II Declaration of Trust.

RLF1 34145408v.2

Indemnifiable Claims in any manner whatsoever other than in accordance with this Plan. Upon satisfaction of applicable Indemnifiable Claims in accordance with the Indemnification Procedures, the Indemnification Reserve Residual Interest (including any amounts released in accordance with the Reserve Step-Downs) shall vest in the Liquidating Trust and the Liquidating Trustee shall be authorized and directed to distribute such funds to the Holders of the Liquidation Trust Beneficial Interests in accordance with the Plan and the Liquidation Trust Agreement.

## M.  *Cancellation of Existing Securities and Agreements*

Except for the reinstatement of the Common Stock Interests and as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, or the Plan Supplement, on the Effective Date, all certificates, shares, notes, bonds, indentures, agreements, purchase rights, or other instruments or documents (including, without limitation, the SC Trusts Documents), directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest or equity in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest (and the obligations of the Debtors and the Indenture Trustees, as applicable, thereunder) shall be deemed automatically cancelled, terminated, surrendered, and of no further force or effect, without further act or action under any applicable agreement, law, regulation, order, or rule, and the SC Trusts Indenture Trustees shall be discharged and released and fully relieved of any duties or responsibilities under or related to the SC Trusts Documents; *provided, however*, that notwithstanding the occurrence of the Effective Date, such cancelled certificates, shares, notes, bonds, indentures, agreements, purchase rights, or other instruments or documents (including, without limitation, the SC Trusts Documents) shall continue in effect solely for the purposes of (a) allowing Holders of Claims or Interests (including, without limitation, Allowed SC Trusts Claims and Indemnified Individuals' Indemnifiable Claims) to receive and accept their respective Distributions under the Plan on account of such Claims and Interests (with all Allowed SC Trusts Claims being distributed to (or at the direction of) the SC Trusts Indenture Trustees), if any, subject to the SC Trusts Indenture Trustee Charging Liens (for the avoidance of doubt, the SC Trusts Indenture Trustee Charging Liens shall not attach to any amounts distributed on account of the Indemnified Individuals' Indemnifiable Claims); and (b) allowing and preserving the rights of the Disbursing Agent and the SC Trusts Indenture Trustees to (1) receive and make Distributions on account of such Claims or Interests, subject to (as applicable) the SC Trusts Indenture Trustee Charging Liens; (2) assert or maintain any rights the Disbursing Agent, the SC Trusts Indenture Trustees may have against any money or property distributable or allocable to Holders of such Allowed SC Trust Claims, including, without limitation, the SC Trusts Indenture Trustee Charging Liens; (3) receive compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation of the Plan (including, without limitation, the SC Trusts Indenture Trustee Fees); and (4) preserve the rights of the Disbursing Agent and the SC Trusts Indenture Trustees to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce any obligations owed to the Disbursing Agent, the SC Trusts Indenture Trustees, as applicable, under the Plan, the Plan Supplement, the Confirmation Order, or other documents incorporated therein. Except as provided in the Plan, the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of the Plan, on the Effective Date, the SC Trusts Indenture Trustees and their respective agents, successors, and assigns, shall

56

be automatically and fully discharged and released of all of their duties and obligations associated with the SC Trusts Documents.

All Distributions made under the Plan or on account of Allowed SC Trusts Claims shall be made to (or at the direction) of the SC Trusts Indenture Trustees. Upon the final distribution on account of the SC Trust I Subordinated Debentures, (i) the SC Trust I Subordinated Debentures shall thereafter be deemed to be null, void, and worthless, and (ii) at the request of the SC Trust I Indenture Trustee, the applicable Security Depository or Custodian shall take down the relevant position relating to the SC Trust I Subordinated Debentures without any requirement of indemnification or security on the part of the Debtors or the SC Trust I Indenture Trustee. Upon the final distribution on account of the SC Trust II Subordinated Debentures, (i) the SC Trust II Subordinated Debentures shall thereafter be deemed to be null, void, and worthless, and (ii) at the request of the SC Trust II Indenture Trustee, the applicable Security Depository or Custodian shall take down the relevant position relating to the SC Trust II Subordinated Debentures without any requirement of indemnification or security on the part of the Debtors or the SC Trust II Indenture Trustee.

In connection with the SC Trust I Declaration of Trust, upon the final distribution on account of the SC Trust I Subordinated Debentures, the SC Trust I shall thereafter be deemed to be cancelled and dissolved without any requirement of the SC Trust I Indenture Trustee to file any required documentation under applicable state law; *provided*, *however*, that the SC Trust I Indenture Trustee is authorized (but not required) to file a certificate of cancellation with the Secretary of State of the State of Delaware.

In connection with the SC Trust II Declaration of Trust, upon the final distribution on account of the SC Trust II Subordinated Debentures, the SC Trust II shall thereafter be deemed to be cancelled and dissolved without any requirement of the SC Trust II Indenture Trustee to file any required documentation under applicable state law; *provided*, *however*, that the SC Trust II Indenture Trustee is authorized (but not required) to file a certificate of cancellation with the Secretary of State of the State of Delaware.

## N.   *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any Securities, instruments, or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property or transfer of beneficial ownership of property pursuant to the Plan or the Plan Supplement, (iv) any assumption, assignment, or sale by the Debtors of their interests in Executory Contracts pursuant to section 365(a) of the Bankruptcy Code, and (v) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and

RLF1 34145408v.2

recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**O.      *Establishing Disputed Claims Reserve***

On the Effective Date, the Debtors, subject to the reasonable consent of the Required Preferred Stockholders, shall establish the Disputed Claims Reserve. As part of the Disputed Claims Reserve, the Debtors shall establish the FTX Disputed Claims Sub-Reserve, which shall entitle the holder of the FTX Silvergate Claims, solely to the extent Allowed, to a right of setoff against the Allowed Silvergate FTX Claims, prior to any distribution therefrom to the holders of the Liquidation Trust Beneficial Interests.  The Debtors reasonably and in good faith believe that the Silvergate FTX Claims exceed the FTX Silvergate Claims.

<div style="text-align:center">

**ARTICLE VI:**
**LIQUIDATION TRUST**

</div>

**A.      *Liquidation Trust Agreement***

On or prior to the Effective Date, the Liquidation Trust will be established pursuant to the Liquidation Trust Agreement. The Liquidation Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidation Trust as a "liquidating trust" for United States federal income tax purposes.

**B.      *Purpose of the Liquidation Trust***

The Liquidation Trust shall be established for the sole purpose of liquidating and distributing the Liquidation Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. The Liquidation Trust shall be deemed a successor-in-interest of the Debtors to the maximum extent necessary for the Liquidation Trust to execute its purpose, and shall not otherwise be deemed a successor-in-interest to the Debtors for any purpose other than as specifically set forth in the Plan or in the Liquidation Trust Agreement.

The Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement to administer post-Effective Date responsibilities of the Debtors, including, but not limited to, (a) being vested with and liquidating the Liquidation Trust Assets, (b) making Distributions to Holders of subsequently Allowed Claims (which for the avoidance of doubt shall not include Distributions to Holders of Allowed Claims as of the Effective Date, including with respect to all Distributions on account of the SC Trusts Claims, which shall be made to (or at the direction of) the SC Trusts Indenture Trustees, which shall be made on the Effective Date) in accordance with the terms of this Plan, (c) making Distributions in accordance with the terms of this Plan and the Liquidation Trust Agreement (other than the Preferred Stock Initial Distributable Amount, which shall be made on the Effective Date) to Holder(s) of (i) Allowed Preferred Stock Interests, (ii) First Priority Liquidation Trust Beneficial Interests, and (iii) Second Priority Liquidation Trust Beneficial Interest, (d) resolving all Disputed Claims and effectuating the Claims

<div style="text-align:center">58</div>

reconciliation process pursuant to the procedures prescribed in this Plan, (e) prosecuting, settling, and resolving the Liquidation Trust Retained Causes of Action, (f) recovering, through enforcement, resolution, settlement, collection, or otherwise, assets on behalf of the Liquidation Trust (which such assets shall become part of the Liquidation Trust Assets), (g) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust, and (h) complying with the Indemnification Procedures and maintaining the Indemnification Reserves and the DOJ Insurance Policy in the manner required by this Plan. Distributions from the Liquidation Trust to holders of Allowed Claims, First Priority Liquidation Trust Beneficial Interests, and the Second Priority Liquidation Trust Beneficial Interest shall be made in Cash only.

Notwithstanding anything to the contrary in this Article VI, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof. Liquidation Trust Assets held by the Debtors as of the Effective Date shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee, in accordance with this Plan and the Liquidation Trust Agreement. The Debtors may take all actions as may be necessary or appropriate to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan.

**C.** *Liquidation Trust Assets*

On the Effective Date, the Liquidation Trust Assets shall be deemed irrevocably transferred to the Liquidation Trust, without further action from the Debtors or any of their respective managers, employees, officers, directors, members, shareholders, agents, advisors, or representatives. Except as set forth in this Plan, the Liquidation Trust Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, rights, or other encumbrances subject to and in accordance with the Plan and the Liquidation Trust Agreement. For purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of the Liquidation Trust Assets to the Liquidation Trust, the Debtors and their predecessors, successors and assigns, and each other Entity released pursuant to Article IX.C herein shall be discharged and released from all liability with respect to the delivery of such distributions. Upon the transfer of the Liquidation Trust Assets and pursuant to the Liquidation Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidation Trust Assets.

**D.** *Interests in the Liquidation Trust*

There shall be two classes of Liquidation Trust Beneficiaries. On the Effective Date:

a. Holders of Preferred Stock Interests shall be deemed to be First Priority Liquidation Trust Beneficiaries, each with a Pro Rata interest in the First

Priority Liquidation Trust Beneficiaries' Interests in the Liquidation Trust; and

b. Reorganized Silvergate shall be deemed to be the Second Priority Liquidation Trust Beneficiary with 100% interest in the Second Priority Liquidation Trust Beneficial Interest.

The Liquidation Trust Beneficial Interests shall be subject to the limitations on transferability and other matters as set forth in this Plan or the Liquidation Trust Agreement.

## E.  *Liquidation Trustee*

The Liquidation Trustee shall be selected by the Ad Hoc Preferred Stockholder Group in consultation with the Common Stock Sponsors.  The Liquidation Trustee shall serve as the initial trustee of the Liquidation Trust. The Liquidation Trustee shall have no duties until the occurrence of the Effective Date, and on and after the Effective Date shall be a fiduciary and representative of the Liquidation Trust. The powers, rights and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement and the Plan and shall include the authority and responsibility to fulfill the items identified in this Article VI.E of the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

## F.  *Liquidation Trust Board*

On the Effective Date, the Liquidation Trust Board will be established and consist of three persons.  Two of the initial Liquidation Trust Board members will be selected by the Ad Hoc Preferred Stockholder Group and one will be selected by the Common Stock Sponsors.  The Plan Supplement will identify the initial Liquidation Trust Board.  Upon its formation, the duties of the Liquidation Trust Board will be limited to the following:  (a) overseeing the Claims reconciliation and settlement process conducted by or on behalf of the Liquidation Trustee; (b) overseeing the distributions to the Holders of Allowed Claims and Liquidation Trust Beneficiaries under the Plan; (c) selecting, in consultation with the Liquidation Trustee, professionals to prosecute the Liquidation Trust Retained Causes of Action; (d) overseeing the liquidation, prosecution, settlement, and/or collection of the Liquidation Trust Retained Causes of Action; (e) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above limited duties; (g) overseeing the Liquidation Trustee; and (h) such other matters as may be agreed on between the Liquidation Trustee and the Liquidation Trust Board or specified in the Plan or the Liquidation Trust Agreement.  Any decision made by the Liquidation Trust Board will be made by majority vote of the members of the Liquidation Trust Board, and no matters shall require special voting, consent or other approval of the board or any approval of the holders of Liquidation Trust Beneficial Interests.

## G.  *Functions of the Liquidation Trustee*

On and after the Effective Date, the Liquidation Trustee shall carry out the functions set forth in this Article VI.G and may take such actions without further approval by the Bankruptcy

RLF1 34145408v.2

Court, in accordance with the Liquidation Trust Agreement. Such functions may include any and all powers and authority to:

1.     take all steps and execute all instruments and documents necessary to make Distributions to Holders of Allowed Claims and Allowed Interests and to perform the duties assigned to the Liquidation Trustee under the Plan or the Liquidation Trust Agreement;

2.     comply with and effectuate the Plan and the obligations hereunder;

3.     employ, retain, or replace professionals to represent him or her with respect to his or her responsibilities;

4.     take any actions necessary to (i) resolve all matters related to the Liquidation Trust Assets and (ii) vest such assets in the Liquidation Trust;

5.     pursue liquidation of the Liquidation Trust Assets and prosecute the Liquidation Trust Retained Causes of Action of the Debtors' estates that are not otherwise released pursuant to the Plan;

6.     make Distributions of the Liquidation Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay Liquidation Trust Expenses, in accordance with the terms of this Plan;

7.     prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims);

8.     file, prosecute, settle, or dispose of any and all objections to asserted Claims;

9.     enter into and consummate any transactions for the purpose of dissolving the Debtors;

10.     comply with data retention obligation and legal obligations to produce documents in accordance with the DFPI C&D;

11.     administer the Indemnification Reserves and the DOJ Insurance Policy, if applicable, in accordance with the Indemnification Procedures and this Plan;

12.     take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases;

13.     maintain the books and records and accounts of the Debtors; and

14.     take any other actions not inconsistent with the provisions hereof that the Liquidation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

RLF1 34145408v.2

**H.**     *Preservation of Rights of Action*

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. For avoidance of doubt, the Debtors shall not retain any Causes of Action against the Indemnified Individuals.

On and after the Effective Date, the Liquidation Trustee shall have sole and exclusive discretion to pursue, prosecute, settle, and/or dispose of any Liquidation Trust Retained Causes of Action that are or become Liquidation Trust Assets. All Causes of Action that are or become Liquidation Trust Assets shall vest in the Liquidation Trust as provided for herein and the Liquidation Trustee may pursue any Liquidation Trust Retained Causes of Action that are or become Liquidation Trust Assets in its sole discretion.

If the Opt-Out Condition has not been exercised, on and after the Effective Date, Reorganized Silvergate shall have sole and exclusive discretion to pursue and dispose of any Reorganized Silvergate Retained Causes of Action that are or become Reorganized Silvergate Assets, and all Claims and Causes of Action that are or become Reorganized Silvergate Assets shall vest in Reorganized Silvergate as provided for herein and Reorganized Silvergate may pursue any Reorganized Silvergate Retained Causes of Action that are or become Reorganized Silvergate Assets in its sole discretion; provided, however, that if the Ad Hoc Preferred Stockholder Group (by the Required Preferred Stockholders) exercises the Opt-Out Condition and directs the Debtors to exercise the Opt-Out Condition, Reorganized Silvergate shall not retain, and shall not have the authority to, pursue any Reorganized Silvergate Retained Causes of Action.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, and on and after the Effective Date, the Liquidation Trustee or Reorganized Silvergate, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date and consummation of the transactions contemplated by the Plan. Prior to the Effective Date, subject to the other terms of this Plan, the Debtors (and on and after the Effective Date, the Liquidation Trustee or Reorganized Silvergate) shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party (except for, on and after the Effective Date, the Liquidation Trustee) or further notice to or action, order, or approval of the Bankruptcy Court.

Other than with respect to the release of all Claims and Causes of Action against the Indemnified Individuals provided for in this Plan, any settlement, release, or other resolution of Claims or Cause of Action held by or against the Debtors during the Chapter 11 Cases shall be subject to the consent of the Required Preferred Stockholders.

RLF1 34145408v.2

Notwithstanding anything in this Article VI.H or Article IX hereof to the contrary, the release of Claims against the Indemnified Individuals shall in no way be deemed to limit the Debtors', the Ad Hoc Preferred Stockholder Group's, or the Liquidation Trustee's rights consistent with the Indemnification Procedures to challenge or object to any claims for fees, expenses, losses or other amounts incurred and submitted by the Indemnified Individuals for reimbursement or payment as Indemnifiable Claims on the basis that such amounts are not Indemnifiable Claims, including that the Debtors are not required to indemnify such individuals under the applicable governing arrangement for such amounts arising in connection with or related to certain acts or omissions even if such acts or omissions have otherwise been released by the Debtors or third-parties.

## I.      *Substitution in Pending Legal Actions*

On the Effective Date, the Liquidation Trust shall be deemed to be substituted as the party to any pending litigation, including the Liquidation Trust Retained Causes of Action, in which the any Debtor is a party and shall be authorized, but not required, to file notices or other pleadings in such actions to effectuate its substitution for such Debtor. Such substitution shall not result in Holders of Claims, including litigation Claims, against the Debtors receiving greater rights in or against the Liquidation Trust than they are otherwise entitled to under the Plan and Liquidation Trust Agreement on account of such Claims

## J.      *Fees and Expenses of the Liquidation Trust.*

From and after the Effective Date, Liquidation Trust Expenses shall be paid in accordance with the Liquidation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Liquidation Trustee, on behalf of the Liquidation Trust, may employ and pay in the ordinary course of business, the reasonable fees of any professional (including professionals previously employed by the Debtors) for services rendered or expenses incurred on and after the Effective Date that, in the discretion of the Liquidation Trustee, are necessary to assist the Liquidation Trustee in the performance of the Liquidation Trustee's duties under the Plan and the Liquidation Trust Agreement.

## K.      *Data Retention and Production Obligations*

The Liquidation Trustee will comply with the Data Retention and Production Obligations. The Data Retention and Production Reserve will be established on or prior to the Effective Date to ensure the Liquidation Trustee has sufficient resources to comply with the Data Retention and Production Obligations.  If, in the reasonable judgment of the Liquidation Trustee, the funds in the Data Retention and Production Reserve exceed the expected cost of complying with the Data Retention and Production Obligations, then the Liquidation Trustee may distribute the amount of such excess in accordance with the terms of the Plan and the Liquidation Trust Agreement to the Liquidation Trust Beneficiaries.  Any funds remaining in the Data Retention and Production Reserve on July 9, 2031, shall be promptly distributed in accordance with the Plan.

63

RLF1 34145408v.2

**L.**    *Creation and Maintenance of Trust Accounts*

On or prior to the Effective Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust. Cash deposited in the trust accounts will be invested, held and used solely as provided in the Liquidation Trust Agreement. The Liquidation Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of the Liquidation Trust Agreement. After the initial funding of the trust accounts on or after the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation or the disposition of Liquidation Trust Assets. Upon obtaining an order of the Bankruptcy Court authorizing final Distribution or closure of the Debtors' Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with this Plan and the Liquidation Trust Agreement, and the trust accounts may be closed.

**M.**    *Indemnification of Liquidation Trustee*

The Liquidation Trustee (and its agents and professionals) shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except for any actions or inactions involving gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. Any indemnification claims of the Liquidation Trustee and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidation Trust Assets, as provided in the Liquidation Trust Agreement. The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its professionals.

**N.**    *Insurance*

The Liquidation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee, which insurance coverage may, at the sole option of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust Agreement.

**O.**    *Records*

The Liquidation Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidation Trust Assets, prosecution of the Retained Causes of Action, reconciliation of Disputed Claims and compliance with the Data Retention and Production Obligations.

The Liquidation Trustee shall not destroy or otherwise abandon any documents or records without providing advance notice to the SEC (c/o Neal Jacobson, U.S. Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, NY 10004, jacobsonn@sec.gov) and seeking further authorization from the Bankruptcy Court.

RLF1 34145408v.2

The Liquidation Trustee shall provide Reorganized Silvergate with access to all documents and business records of the Debtors that are transferred to the Liquidation Trust in accordance with the provisions of the Litigation Trust Agreement.

## P.    *Liquidation Trust Tax Matters*

1.    *Tax Treatment; No Successor in Interest.*  The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and, if applicable, as one or more Disputed Claims Reserves treated as disputed ownership funds described in Treasury Regulation section 1.468B-9. For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust is expected to be treated (a) as a taxable transfer of assets by the Debtors to the Holders of Allowed Interests, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by the tax-free transfer of such assets (subject to such liabilities) by such Holders to the Liquidation Trust in exchange for the Liquidation Trust Beneficial Interests, and (b) to the extent applicable, as a tax-free transfer of assets by the Debtors to one or more Disputed Claims Reserves.

2.    *Liquidation Purpose of the Liquidation Trust.* The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions to the Liquidation Trust Beneficiaries, and not unduly prolong the duration of the Liquidation Trust. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or the Liquidation Trust Agreement. The record holders of Liquidation Trust Beneficial Interests shall be recorded and set forth in a register maintained by the Liquidation Trustee expressly for such purpose.

3.    *Cash Investments.* The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code. The Liquidation Trustee may expend Liquidation Trust Cash (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidation Trust during liquidation, (b) to pay the respective reasonable administrative expenses of the Liquidation Trust (including, but not limited to, any taxes imposed on the Liquidation Trust) and (c) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement (including, without limitation, the payment of any taxes).

RLF1 34145408v.2

4.    *Liquidation Trust as Grantor Trust*. The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Interests, followed by a transfer by such Holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

5.    *Tax Reporting and Tax Payments*.

a.    The Liquidation Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations and in accordance with Article VI.P.5 of the Plan. The Liquidation Trustee also shall annually send to each holder of a Liquidation Trust Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

b.    As soon as practicable after the Effective Date, the Liquidation Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Liquidation Trust. The Liquidation Trustee may elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment). The Liquidation Trustee shall be the administrator of any such applicable Disputed Claims Reserve within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such Disputed Claims Reserve.

c.    The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any Disputed Claims Reserve) or the Liquidation Trust Assets. More particularly, any taxes imposed on any Disputed Claims Reserve or its assets will be paid out of the assets of the Disputed Claims Reserve, and netted against any subsequent Distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claims Reserve is insufficient to pay the portion of any taxes

66

attributable to taxable income arising from assets of the Disputed Claims Reserve (including any income that may arise upon an actual or constructive Distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserve (including those otherwise distributable) may be sold to pay such taxes.

a.    The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust, including any Disputed Claims Reserve, and, in the case of the Liquidation Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust or the Debtors for all taxable periods through the dissolution of the Liquidation Trust.

## ARTICLE VII:
## PROVISIONS REGARDING DISTRIBUTIONS

### A.    *Distributions Generally*

The Disbursing Agent shall make all Distributions under the Plan to the appropriate Holders of Allowed Claims and Interests in accordance with the terms of the Plan; *provided, however*, that notwithstanding anything to the contrary in this Plan, (i) all Distributions on account of the SC Trust I Claims shall be made to (or at the direction of) the SC Trust I Indenture Trustee for further distribution in accordance with the terms of the SC Trust I Indenture, (ii) all Distributions on account of the SC Trust II Claims shall be made to (or at the direction of) the SC Trust II Indenture Trustee for further distribution in accordance with the terms of the SC Trust II Indenture and (iii) all payments made on account of the Indemnified Individuals Indemnifiable Claims shall be made from the applicable Indemnification Reserves and Go-Forward Chapter 11 Budget in accordance with the Indemnification Procedures (including any amounts payable for "cause" shown in accordance with the Indemnification Procedures), as applicable.

### B.    *Distributions to Liquidation Trust Beneficiaries*

The Disbursing Agent shall remit to each First Priority Liquidation Trust Beneficiary any Distributions to which such First Priority Distribution Trust Beneficiary would have been entitled under this Plan on account of its Interest had such Interest been Allowed as of the Effective Date, in accordance with the terms of the Liquidation Trust.

The Disbursing Agent shall remit to the Second Priority Liquidation Trust Beneficiary any Distributions to which such Second Priority Distribution Trust Beneficiary would have been entitled under this Plan on account of its Interest had such Interest been Allowed as of the Effective Date, in accordance with the terms of the Liquidation Trust.

### C.    *Distribution Record Date*

Distributions shall only be made to the record Holders of Allowed Claims and Interests as of the Distribution Record Date. On the Confirmation Date, the Disbursing Agent shall be authorized and entitled to recognize only those Holders of Claims and Interests listed on the

67

register of Claims maintained by Stretto in these Chapter 11 Cases and/or the registered holders of Preferred Stock Interests and Common Stock Interests as of the close of business on the Confirmation Date. Notwithstanding the foregoing, if a Claim or Interest is transferred twenty (20) or fewer days before the Confirmation Date, the Disbursing Agent, at the direction of the Debtors or, after the Effective Date, the Liquidation Trust, shall make distributions to the transferee (rather than the transferor) only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. The Distribution Record Date shall not apply to publicly held securities deposited with any Security Depository or Custodian and, in connection with any Distribution under the Plan to be effected through the facilities of any Security Depository or Custodian (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors, the Liquidation Trust, the SC Trust I Indenture Trustee or the SC Trust II Indenture Trustee, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of Claims and Interests in each Class to the extent consistent with the customary practices of the applicable Security Depository or Custodian used in connection with such distributions.

For the avoidance of doubt, the Distribution Record Date shall not apply to Holders of SC Trusts Subordinated Debentures, which shall receive a Distribution from the Disbursing Agent in accordance with the terms of this Plan and the customary practices of the applicable Security Depository or Custodian, in each case subject to the SC Trusts Indenture Trustee Charging Liens.

**D.**    *Disbursing Agent*

All Distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Liquidation Trustee shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Liquidation Trustee) with the amounts of Claims and Interests and the identities and addresses of Holders of Claims and Interests, in each case, as set forth in the Debtors' books and records. The Liquidation Trustee shall cooperate in good faith with the applicable Disbursing Agent (if other than the Liquidation Trustee) to comply with the reporting and withholding requirements outlined in Article VII.S of the Plan.

For the avoidance of doubt, distributions to the Holders of Subordinated Notes Claims shall be made to (or at the direction of) the applicable Indenture Trustee, which shall act as Disbursing Agent (or direct the Disbursing Agent) for distributions to the Holders of Subordinated Notes Claims, respectively, in accordance with the Plan and the applicable Indenture.

**E.**    *Rights and Powers of Disbursing Agent*

No Holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

68

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (b) make all Distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### F.      *Post-Petition Interest*

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; *provided*, that if interest is payable pursuant to the preceding sentence, interest shall, except as provided in <u>Article III.B.4</u> of the Plan, accrue at the Federal Judgment Rate on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### G.      *Delivery of Distributions*

The Disbursing Agent shall make all distributions, allocations, and/or issuances required under the Plan. In the event that any Distribution to any Holder or permitted designee is returned as undeliverable, no further distributions shall be made to such Holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest.

All Distributions to Holders of SC Trusts Claims shall be deemed completed when made to (or at the direction of) the SC Trusts Indenture Trustees, which shall be deemed to be the single Holders of all SC Trusts Claims for purposes of Distributions to be made hereunder. Subject to the SC Trusts Indenture Trustee Charging Liens, the SC Trusts Indenture Trustees may transfer or direct the transfer of such Distributions (and may rely upon information received from the Debtors for purposes of such transfer(s)) through the facilities of the applicable Security Depository or Custodian in accordance with the applicable Security Depository or Custodian's customary practices. For the avoidance of doubt, the applicable Security Depository or Custodian shall be considered a single Holder with respect to Distributions made on account of the SC Trusts Subordinated Debentures. The SC Trusts Indenture Trustees shall not incur any liability whatsoever on account of any Distributions under the Plan. If the SC Trusts Indenture Trustees are unable to make (or consents to the Debtors making) such Distributions through the facilities of the applicable Security Depository or Custodian, the Debtors shall make such Distributions (subject to the SC Trusts Indenture Trustee Charging Liens) directly to the applicable Security Depository or Custodian. Notwithstanding any other provision of this Plan, the SC Trusts Indenture Trustees shall have no duties, obligations, responsibilities, or liability with respect to any form of Distribution to Holders of SC Trusts Claims that are not eligible to be distributed through the facilities of the applicable Security Depository or Custodian, and the Debtors shall make such Distributions (subject to the SC Trusts Indenture Trustee Charging Liens).

RLF1 34145408v.2

**H.**      *Distributions after the Effective Date*

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**I.**      *Unclaimed Property*

Undeliverable Distributions shall remain in the possession of the Liquidation Trust until such time as a Distribution becomes deliverable or the Holder accepts Distribution, or such Distribution reverts back to the Liquidation Trust and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of Distribution. After such date, all unclaimed property or interest in property shall revert to and vest in Liquidation Trust and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

**J.**      *Time Bar to Cash Payments*

Checks issued by the Disbursing Agent in respect of Allowed Claims and Interests shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall immediately and irrevocably revert to the Liquidation Trust and any Claim or Interest in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for reissuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by the Holder of the Allowed Claim or Interest to whom such check was originally issued.

**K.**      *Manner of Payment under Plan*

Except as otherwise specifically provided in the Plan, at the option of the Liquidation Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

**L.**      *Satisfaction of Claims*

Except as otherwise specifically provided in the Plan, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

**M.**      *Minimum Cash Distributions*

The Disbursing Agent shall not be required to make any Distribution of Cash less than One Hundred Dollars ($100) to any Holder of an Allowed Claim; *provided*, that if any Distribution is not made pursuant to this Article VII.M, such Distribution shall be added to any subsequent Distribution to be made on behalf of the Holder's Allowed Claim.

RLF1 34145408v.2

**N.**     *Setoffs and Recoupments*

The Debtors or the Liquidation Trustee, as applicable, or such Entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim or Interest, and any Distribution to be made on account of such Claim or Interest, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Liquidation Trustee may have against the Holder of such Claim or Interest pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action in favor of the Released Parties); *provided*, that neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by a Debtor, Reorganized Silvergate, the Liquidation Trustee, or its successor of any claims, rights, or Causes of Action that a Debtor, Reorganized Silvergate, the Liquidation Trustee, or its successor or assign may possess against the Holder of such Claim (other than the released Causes of Action in favor of the Released Parties).

**O.**     *Claims or Interests Paid by Third Parties*

No distributions under the Plan shall be made on account of an Allowed Claim or Allowed Interest that is payable under one of the Debtor's Insurance Policies until the Holder of such Allowed Claim or Allowed Interest has exhausted all remedies with respect to such Insurance Policy.

Except as otherwise provided in the Plan, payments to Holders of Claims or Interests covered by an Insurance Policy and otherwise payable under the Plan shall be made from the proceeds of such Insurance Policy in accordance with the provisions of any such applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by Insurers.

To the extent a Holder of Claims or Interests receives a payment on account of a Claim or Interest from a party that is not the Debtor, the Liquidation Trust or a Disbursing Agent on account of such Claim or Interest, the Debtors or the Liquidation Trust, as applicable, shall be authorized to reduce, for the purposes of Distribution, the Allowed amount of such Claim or Interest by the amount of the third-party payment, and such Claim or Interest shall be disallowed or deemed satisfied, as applicable, to the extent of such third party payment without an objection having to be filed, but subject to the filing of a notice with the Bankruptcy Court and service of such notice on any affected Holder. Any Holder of Claims or Interests that receives full or partial payment on account of such Claim from an Entity that is not the Debtor, the Liquidation Trust or a Disbursing Agent shall provide notice of the date and amount of such payment to the Debtors or, after the Effective Date, the Liquidation Trust within five (5) Business Days of receipt of such payment. Such Holder of Claims or Interests shall repay and/or return to the Debtors or, after the Effective Date, the Liquidation Trust any Distribution received on account of the portion of its Claim that was satisfied by such third-party payment within thirty (30) days.

71

**P.**    *Allocation of Distributions between Principal and Interest*

Except as otherwise required by law (as reasonably determined by the Liquidation Trust), Distributions with respect to an Allowed Claim shall be allocated first to the principal amount of such Allowed Claim (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of such Allowed Claim, to any portion of such Allowed Claim for accrued but unpaid interest.

**Q.**    *No Distribution in Excess of Allowed Claim*

Except as provided in Article VII.F of the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

**R.**    *Distributions Free and Clear*

Except as provided herein, and subject to the SC Trusts Indenture Trustee Charging Liens, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no other Entity, including the Debtors, Reorganized Silvergate, the Liquidation Trust, or the Liquidation Trustee, shall have any interest, legal, beneficial, or otherwise, in Assets transferred pursuant to the Plan.

**S.**    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Liquidation Trustee and the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidation Trustee and the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trustee and the Liquidation Trust reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

## ARTICLE VIII:
### PROCEDURES FOR DISPUTED CLAIMS AND INTERESTS

**A.**    *Objections to Claims*

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may only be interposed and prosecuted by the Liquidation Trustee. Such objections and requests for estimation shall be served and filed on or before the Claims Objection Deadline.

RLF1 34145408v.2

**B.      *Allowance of Claims***

After the Effective Date, the Liquidation Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

**C.      *Resolution of Claims***

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidation Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court.

**D.      *Adjustment to Claims Register Without Objection***

Any duplicate Claim or Interest, any Claim (Filed or scheduled) or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidation Trustee, as applicable, upon stipulation or any agreement in writing, including email correspondence, between the parties in interest without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.      *Disallowance of Claims***

All Proofs of Claim must be Filed on or before the applicable Bar Date. If Proofs of Claim are not Filed on or before the applicable Bar Date, except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall, absent further Order of the Bankruptcy Court Allowing such Claims, be barred from asserting such Claims against the Debtors and precluded from voting on the Plan and/or receiving Distributions from the Debtors on account of such Claims in the Chapter 11 Cases.

**F.      *Estimation of Claims***

The Debtors or the Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain

73

jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, or the Liquidation Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only. For avoidance of doubt, the Indemnified Individuals' Indemnifiable Claims shall be Allowed and not subject to estimation; provided, that such allowance shall in no way be deemed a determination that any fees, costs, and or expenses submitted for reimbursement and indemnification qualify as an Indemnifiable Claim, payment of the Indemnified Individuals' Indemnifiable Claims shall be subject to the Indemnification Procedures and shall be satisfied exclusively from the DOJ Insurance Policy, the Indemnification Reserves, and the Go-Forward Chapter 11 Budget (including any amounts payable for "cause" shown in accordance with the Indemnification Procedures), as applicable, the Indemnifiable Claims shall be deemed amended in all respects to be consistent with the foregoing and such Individuals' Indemnifiable Claims shall be subject to the limitations set forth in <u>Article V.C.2</u> of the Plan and shall not otherwise be subject to estimation.

## G.      *Amendments to Proofs of Claim*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, and unless the Bar Date with respect to a Claim has not passed, a Claim or Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Liquidation Trustee, and any such new or amended Claim or Proof of Claim Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action or notice to the Bankruptcy Court; *provided that* the filing of an unauthorized amendment shall not affect the underlying Claim or Proof of Claim. Nothing in this paragraph shall remove any claimant's ability to seek leave from the Bankruptcy Court to amend a Claim or Proof of Claim.

## H.      *No Distributions Pending Allowance and Disputed Interest Reserves*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

## I.      *Allowed and Disputed Claims Reserves*

The Liquidation Trustee shall, administer the Disputed Claims Reserve, which will be established by the Debtors on or prior to the Effective Date. As part of the Disputed Claims Reserve, the Debtors shall establish the FTX Disputed Claims Sub-Reserve, which shall entitle the holder of the FTX Silvergate Claims, solely to the extent Allowed, to a right of setoff against the Allowed Silvergate FTX Claims, prior to any distribution therefrom to the holders of the Liquidation Trust Beneficial Interests. The Debtors reasonably and in good faith believe that the Silvergate FTX Claims exceed the FTX Silvergate Claims.

74

**J.** *Distributions After Allowance*

Subject to Article VII.H hereof, after such time as a Disputed Claim or Interest becomes, in whole or in part, an Allowed Claim or Interest, the Liquidation Trustee (or Disbursing Agent) shall distribute to the Holder thereof Distributions, as applicable, if any, to which such Holder is then entitled under the Plan, within thirty (30) days of such Claim or Interest becoming Allowed. Any such Distributions shall be made in accordance with the Plan and the Liquidation Trust Agreement. To the extent such Disputed Claim or Interest is Disallowed, any corresponding reserved amount shall be distributed to other Allowed Claims or Interests as provided for in the Plan and the Liquidation Trust Agreement.

## ARTICLE IX:
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.** *Compromise and Settlement of Claims, Interests, and Controversies*

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of and except as set forth in the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trustee may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

**B.** *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors and their Estates, Reorganized Silvergate and each of their respective current and former Affiliates (with respect to non-Debtors, to the extent permitted by applicable non-bankruptcy law), the Liquidation Trustee, the Liquidation Trust Board, the Liquidation Trust, and any and all other Entities who may purport to assert any Cause of Action by, through, for, or because of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, in each case, whether prepetition or postpetition (including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, Reorganized Silvergate or the Liquidation Trust), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security or other debt instrument of the Debtors, the formulation, preparation, dissemination, negotiation of the**

75

RSA, the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing (collectively, the "**Debtor and Estate Claims**"). Notwithstanding anything to the contrary in the foregoing and subject to the provisos later in the paragraph, the releases set forth in this **Article IX.B** shall not release (i) any Liquidation Trust Retained Causes of Action or Reorganized Silvergate Retained Causes of Action, (ii) any Released Party (other than any Indemnified Individual) from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan; provided that for the avoidance of doubt, and in accordance with the terms of the Global Settlement, the Debtors and their Estates are waiving and releasing all Debtor and Estate Claims against all Indemnified Individuals.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this **Article IX.B** by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this **Article IX.B** is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Debtor; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates, the Liquidation Trustee on behalf of the Liquidation Trust or Reorganized Silvergate, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

C.    *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Reorganized Silvergate, the Liquidation Trustee, the Liquidation Trust Board, the Liquidation Trust and each other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition up until the Effective Date), including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, Reorganized Silvergate, the Liquidation Trustee or the Liquidation Trust that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen

76

or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security or other debt instrument of the Debtors, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, or negotiation of the RSA, the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition up until the Effective Date) related or relating to the foregoing (collectively, the "<u>Releasing Party Claims</u>").  Notwithstanding anything to the contrary in the foregoing, and subject to the provisos later in this paragraph, the releases set forth in this <u>Article IX.C</u> shall not release (i) any Liquidation Trust Retained Causes of Action or Reorganized Silvergate Retained Causes of Action, (ii) any Released Party (other than any Indemnified Individual) from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan; provided that for the avoidance of doubt, (x) and in accordance with the terms of the Global Settlement, the Releasing Parties are waiving and releasing all Releasing Party Claims against all Indemnified Individuals; and (y)(i) the Securities Plaintiffs' entry into the Securities Litigation Stipulation of Settlement shall not be construed as having deemed the Securities Plaintiffs or any Securities Litigation Class Members as Releasing Parties or having opted into the third party releases provided in <u>Article IX.C</u>; and (ii) the releases granted by the Securities Plaintiffs and Securities Litigation Class Members, in their capacity as such, in the Securities Litigation pursuant to the Securities Litigation Stipulation of Settlement shall be governed by and implemented pursuant to the terms thereof and the Securities Litigation Final Approval Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this <u>Article IX.C</u> by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this <u>Article IX.C</u> is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Holders of Claims and Interests; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates, the Liquidation Trustee on behalf of the Liquidation Trust or Reorganized Silvergate, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

RLF1 34145408v.2

D.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, in whole or in part, the Debtors, the formulation, preparation, dissemination, negotiation, of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of Cash under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon Consummation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.    *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE (1) BEEN RELEASED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C OR (2) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.D, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, REORGANIZED SILVERGATE, THE LIQUIDATION TRUST OR THE RELEASED PARTIES (TO THE EXTENT OF THE RELEASES PROVIDED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C WITH RESPECT TO THE RELEASED PARTIES), OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO ARTICLE IX.D WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE

**PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (IV) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT (WHICH MAY BE A PROOF OF CLAIM) FILED WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE TERMS OF THIS PLAN EXPLICITLY PRESERVING SUCH SETOFF.**

## F.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidation Trust or Reorganized Silvergate or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to or discriminate with respect to such a grant against the Liquidation Trust, Reorganized Silvergate or another Entity with whom the Liquidation Trust or Reorganized Silvergate has been associated, solely because the Debtors have been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case), or have not paid a debt that is dischargeable in the Chapter 11 Case.

## G.    *Setoffs*

In no event shall any Holder of a Claim be entitled to set off against such Claim any claim, right, or Cause of Action of the Debtors or the Liquidation Trust, as applicable, unless such Holder actually has provided notice of such setoff in writing to the Debtors on or before the Confirmation Date, which notice may be provided in a timely filed Proof of Claim; provided that this provision is without prejudice to any Governmental Units' ability to assert setoff rights, if any, provided that such applicable Governmental Unit provides notice of such setoff in writing by no later than Governmental Bar Date, which notice may be provided in a timely filed Proof of Claim.

## H.    *SEC Carve Out*

Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-Debtor person or non-Debtor entity in any appropriate forum.

RLF1 34145408v.2

## ARTICLE X:
## EXECUTORY CONTRACTS

### A.  *Rejection of Executory Contracts*

As of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (a) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (c) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan, (e) is an Insurance Policy; or (f) is identified for assumption on the Assumption Schedule included in the Plan Supplement, which schedule shall be in form and substance reasonably acceptable to the Required Preferred Stockholders.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Liquidation Trust or Reorganized Silvergate, as applicable, has provided adequate assurance of future performance under such assumed Executory Contract and Unexpired Leases. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Liquidation Trust or Reorganized Silvergate, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

### B.  *Rejection Damages Claims*

**In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 3 (General Unsecured Claims). Such Claim shall be forever barred and shall not be enforceable against the Debtors, their respective Estates, or the Liquidation Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Claims and Noticing Agent and served upon counsel for the Debtors or Liquidation Trust, as applicable, by the later of (a) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (b) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.**

### C.  *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Amount due under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors, the Liquidation

RLF1 34145408v.2

Trust or Reorganized Silvergate, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (a) the amount of the Cure Amount, (b) the ability of the Liquidation Trust or Reorganized Silvergate, as applicable, or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease, or (c) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided*, that the Debtors, the Liquidation Trust or Reorganized Silvergate (as applicable) may settle any dispute regarding the amount of any Cure Amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

**Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

**D.** *Assignment*

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

**E.** *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is listed in the Assumption Schedule shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects

81

such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

**F.**      *Reservation of Rights*

Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Assumption Schedule to add or remove any Executory Contract or Unexpired Lease from the Assumption Schedule at any time through and including the Effective Date, subject to any review and consent rights of certain parties as set forth in the Plan and the Plan Supplement; provided that after the date of the Confirmation Date and through the Effective Date, the Debtors shall provide notice of any amendments to the Assumption Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors, the Liquidation Trust or Reorganized Silvergate, or their respective affiliates have any liability thereunder.

Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors, the Liquidation Trust or Reorganized Silvergate, as applicable, under any executory or non-Executory Contract or any unexpired or expired lease.

Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Liquidation Trust, or Reorganized Silvergate, as applicable, under any executory or non-Executory Contract or any unexpired or expired lease.

**ARTICLE XI:**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND THE EFFECTIVE DATE**

**A.**      *Conditions to Confirmation of the Plan*

Confirmation of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Article XI.C of the Plan:

1.      The Global Settlement Approval Order shall have been entered and remain in full force and effect.

2.      The Order approving the Disclosure Statement shall have been entered;

3.      The Plan Supplement and all of the schedules, documents and exhibits contained therein shall have been filed;

4.      The RSA shall not have been terminated and shall be in full force and effect; and

5.      The Disputed Claims Reserve shall have been set by agreement with the Required Preferred Stockholders or as set forth in Article V.O of the Plan;

**B.      *Conditions to Occurrence of the Effective Date***

The Effective Date of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Article XI.C of the Plan:

1.      the Bankruptcy Court shall have entered the Confirmation Order, in form and substance materially consistent with the Plan and otherwise reasonably acceptable to the Debtors and the Required Preferred Stockholders and, with respect to any terms that materially affect the terms set forth in the (i) Indemnification Settlement Term Sheet or the treatment of the Indemnified Individuals, the Indemnified Individuals and (ii) the Securities Litigation Settlement, the Indemnified Individuals, the Underwriters, and the Securities Plaintiffs, which shall not be stayed pending appeal, and shall be a Final Order;

2.      the Professional Fee Escrow Account shall have been established and fully funded as set forth herein;

3.      All Ad Hoc Preferred Stockholder Group Expenses invoiced in accordance with Article II.C shall have been paid in full in Cash;

4.      All SC Trusts Indenture Trustee Fees invoiced in accordance with Article II.D shall have been paid in full in Cash;

5.      the Debtors shall have established and funded such reserves for Allowed and Disputed Claims, as required pursuant to Article V.O. and Article VIII.I of the Plan, and the Indemnification Reserves, as required pursuant to Article V.C.2, of the Plan;

6.      the DOJ Insurance Policy shall have been acquired, be in effect, and be in form and substance reasonably acceptable to the applicable Indemnified Individuals or the Debtors shall have funded a reserve for the benefit of the applicable Indemnified Individuals in the same amount as the proposed DOJ Insurance Policy (or a combination thereof, as agreed to by the applicable Indemnified Individuals and the Required Preferred Stockholders);

7.      the Bhatia Litigation Settlement Final Approval Order shall have been entered and be a Final Order in form and substance materially consistent with the Bhatia Litigation Settlement, and the Bhatia Litigation Settlement Fund shall be funded in accordance with the Bhatia Litigation Settlement;

8.      the Securities Litigation Final Approval Order shall have been entered and be a Final Order in form and substance materially consistent with the Securities Litigation Settlement, the proceeds under the D&O Contribution shall have been released and the Underwriter Contribution and the Preferred Stock Interest Contribution shall have been funded, each in accordance with the Securities Litigation Settlement;

RLF1 34145408v.2

9.      the Debtors shall have paid in Cash the incurred reasonable and documented fees of the Indemnified Individuals consistent with the terms of the Go-Forward Chapter 11 Budget (including any amounts payable for "cause" shown in accordance with the Indemnification Procedures), as applicable, plus any Excess Go-Forward Fee Amounts (for the avoidance of doubt, the payment of any Excess Go-Forward Fee Amounts shall reduce the applicable Indemnification Reserves on a dollar-for-dollar basis);

10.     the Common Stock Sponsors' Expenses shall have been paid in accordance with the Common Stock Settlement;

11.     the Reorganized Silvergate Cash Funding shall be funded in accordance with the Common Stock Settlement;

12.     all documents, agreements and other instruments which are exhibits to the Plan or included in any Plan Supplement shall be acceptable to the Debtors and the Required Preferred Stockholders and with respect to any terms that materially affect the terms set forth in the (i) Indemnification Settlement Term Sheet or the treatment of the Indemnified Individuals, the Indemnified Individuals, (ii) the Securities Litigation Settlement, the Indemnified Individuals, the Underwriters, and the Securities Plaintiffs, and (iii) the Common Stock Settlement to the extent not addressed in the Common Stock Settlement Term Sheet, the Common Stock Sponsors; and shall have been executed and delivered by the parties thereto;

13.     all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed;

14.     all appropriate notices shall have been given and all other appropriate actions shall have been taken to preserve all applicable Insurance Policies, including any "tail policy," notices required to be provided.

C.      *Waiver of Conditions to Confirmation and Effective Date*

The Debtors may not waive the conditions to Confirmation of the Plan set forth in Article XI.A., other than Article XI.A.3, without the consent of the Required Preferred Stockholders (e-mail of counsel being sufficient) and Article XI.A.1 without the consent of the Indemnified Individuals and the Underwriters (e-mail of counsel being sufficient).  The conditions to the Effective Date set forth in Article XI.B of the Plan may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; *provided*, that the Debtors may not waive the conditions set forth in (i) Article XI.B.8 without the consent of the Underwriters and the Securities Plaintiffs (e-mail of counsel being sufficient), and (ii) Article XI.B.1, Article XI.B.5 through Article XI.B.9, and Article XI.B.12 without the consent of the Indemnified Individuals (e-mail of counsel being sufficient) and (iii) Article XI.B.10 through Article XI.B.12 without the consent of the Common Stock Sponsors (e-mail of counsel being sufficient).

84

**D.**     *Effect of Failure of Conditions to the Effective Date*

In the event the conditions specified in Article XI. B of the Plan have not been satisfied or waived in accordance with Article XI.C of the Plan, and upon notification submitted by the Debtors to the Bankruptcy Court (a) the Confirmation Order shall be vacated; (b) no Distributions shall be made; (c) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any proceedings further involving the Debtors. Neither the Disclosure Statement, any statement contained in the Disclosure Statement nor the Plan may be used in these Chapter 11 Cases, or in any action, other than in connection with confirmation of the Plan. In the event that the Plan is not confirmed, or is confirmed but does not become effective, the Disclosure Statement, any statements contained in the Disclosure Statement and the Plan shall have no force or effect, and neither the Disclosure Statement, any statements contained in the Disclosure Statement nor the Plan shall be admissible in any court or legal forum for any purpose whatsoever.

**ARTICLE XII:**
**MODIFICATION OF THE PLAN**

**A.**     *Plan Modifications*

Subject to certain restrictions and requirements set forth in section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors may alter, amend or modify the Plan, including the Plan Supplement, with the consent of the Required Preferred Stockholders, and (a) with respect to any terms that materially affect the terms set forth in the (i) Indemnification Settlement Term Sheet or the treatment of the Indemnified Individuals, with the consent of the Indemnified Individuals and (ii) the Securities Litigation Settlement, with the consent of the Indemnified Individuals, the Underwriters, and the Securities Plaintiffs, and (b) if the alteration, amendment or modification of the Plan, including the Plan Supplement, is inconsistent with the Common Stock Settlement set forth herein or, to the extent not addressed in the Common Stock Settlement set forth herein and affecting Reorganized Silvergate or Common Stock Interests' recoveries hereunder, with the consent of the Common Stock Sponsors, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan with the consent, not to be unreasonably withheld, of the Required Preferred Stockholders, including the Plan Supplement,

RLF1 34145408v.2

and (a) with respect to any terms that materially affect the terms set forth in the (i) Indemnification Settlement Term Sheet or the treatment of the Indemnified Individuals, with the consent of the Indemnified Individuals and (ii) the Securities Litigation Settlement, with the consent of the Indemnified Individuals, the Underwriters, and the Securities Plaintiffs, and (b) if the alteration, amendment or modification of the Plan, including the Plan Supplement, is inconsistent with the Common Stock Settlement set forth herein or, to the extent not addressed in the Common Stock Settlement set forth herein and affecting Reorganized Silvergate or Common Stock Interests' recoveries hereunder, with the consent of the Common Stock Sponsors, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests and are otherwise permitted under section 1127(b) of the Bankruptcy Code.

### B.    *Effect of Confirmation on Modification*

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE XIII:
## EFFECT OF CONFIRMATION

### A.    *Deemed Consent*

By (i) voting to accept the Plan and failing to opt out of the releases, or (ii) opting into the releases, as applicable and set forth in the Plan, each such Holder of a Claim or Interest will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in the Plan; provided that this Article XIII.A. shall not limit or impact the enforceability of any exculpation, release, or injunction provisions of the Plan in accordance with their terms.

### B.    *Disallowed Claims and Disallowed Interests*

On and after the Effective Date, Reorganized Silvergate and the Liquidation Trust shall be fully and finally discharged of any and all liability or obligation on a Disallowed Claim or a Disallowed Interest. The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims against and Interests in the Debtors to the extent such Claims and Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest and (b) disallowing or subordinating to all other Claims, as the case may be, any Claims against the Debtors for penalties, punitive damages or any other damages not constituting compensatory damages.

**ARTICLE XIV:**
**RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

1.      To Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or Allowance of Claims or Interests.

2.      To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

3.      To hear and determine all applications for the payment of Professional Fee Claims.

4.      To resolve any matters related to (i) the assumption, assumption and assignment or rejection of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired.

5.      To adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims.

6.      To hear and determine any dispute or reconcile any inconsistency arising in connection with the Plan, including any Plan Supplement, or the Confirmation Order or the interpretation, implementation or enforcement of the Plan, any Plan Supplement, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

7.      To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

8.      To adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

9.      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

10. To hear and determine any rights, Claims or Causes of Action, including without limitation Claims or Causes of Action identified on the Schedule of Retained Causes of Action, held by, transferred to or accruing to the Liquidation Trust or Reorganized Silvergate, as applicable, pursuant to the Bankruptcy Code, including any settlement or compromise thereof.

11. To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

12. To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

13. To resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

14. To ensure that all Distributions are accomplished as provided herein.

15. To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim.

16. To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

17. To enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code.

18. To recover all Assets of the Estates, wherever located.

19. To hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code.

20. To determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code.

21. To enter a Final Decree closing the Chapter 11 Cases.

22. To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

23. To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Plan and these Chapter 11 Cases.

RLF1 34145408v.2

24. To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any Plan Supplement or any other contract, instrument, release or other agreement or document related to the Plan or the Disclosure Statement.

25. To adjudicate any adversary proceedings pending before the Bankruptcy Court on or after the Petition Date or any other disputes relating to any Retained Cause of Action that the Liquidation Trust or Reorganized Silvergate, as applicable, may bring thereafter.

26. To hear and determine any dispute or suit regarding setoff or recoupment.

27. Adjudicate all other matters over which the Bankruptcy Court has jurisdiction.

### ARTICLE XV:
### MISCELLANEOUS PROVISIONS

**A.**   *Notices*

Any notices, requests, and demands to or upon the Debtors, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following:

Silvergate Capital Corporation
4225 Executive Square, Suite 600,
La Jolla, CA 92037
Attn:  Paris Cribben

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:   Paul N. Heath
        Michael J. Merchant
        David T. Queroli
        Emily R. Mathews
        heath@rlf.com
        merchant@rlf.com
        queroli@rlf.com
        mathews@rlf.com

-and-

Cravath, Swaine & Moore LLP
375 Ninth Avenue
New York, NY 10001

Attn:   George E. Zobitz
        Paul H. Zumbro

        jzobitz@cravath.com
        pzumbro@cravath.com

90

**B.** *Headings*

The headings and other captions used in the Plan are for reference purposes only, and shall not affect the meaning or interpretation of the Plan in any way.

**C.** *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**D.** *Notice of Entry of Confirmation Order and Relevant Dates*

Promptly upon entry of the Confirmation Order, the Debtors shall file on the docket and serve upon parties who have entered their appearance a notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

**E.** *Revocation, Withdrawal or Non-Consummation of Plan*

If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if confirmation or consummation of the Plan does not occur as to any Debtor, then, as to such Debtor, (a) the Plan shall be null and void in all respects and (b) any settlements and compromises embodied in the Plan, and any document or agreement executed pursuant the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person. None of the filing of the Plan, the taking by the Debtors or other party in interest of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by the Debtors or other party in interest against interest, or be or be deemed to be a waiver of any rights, Claims or remedies that the Debtors or other party in interest may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved. In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and any Plan Supplement, and any statement contained herein or therein, may not be used by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) against the Debtors and other parties in interest. The Debtors shall consult with the Required Preferred Stockholders with respect to the revocation or withdrawal of the Plan with respect to any one or more of the Debtors.

<div align="center">91</div>

**F.    *Binding Effect***

The Plan shall be binding upon and inure to the benefit of the Debtors, the Liquidation Trust, Reorganized Silvergate and the Holders of all Claims and Interests and their respective successors and assigns.

**G.    *Severability of Plan Provisions***

Subject to Article XI.A and B., if, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors with the consent, not to be unreasonably withheld, of the Required Preferred Stockholders, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**H.    *No Admissions***

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

**I.    *Time***

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply. With regard to all dates and the periods of time set forth or referred to in the Plan, time is of the essence.

**J.    *Successors and Assigns***

The rights, benefits and obligations of any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof).

**K.**     *Conflict between Plan, Disclosure Statement and Plan Documents*

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, or any Plan Supplement, the terms and provisions of the Plan shall control and govern.

**L.**     *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**M.**     *Plan Exhibits*

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least seven (7) Business Days prior to the Plan Objection Deadline, unless the Plan provides otherwise. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors or online at https://cases.stretto.com/silvergate. The Debtors explicitly reserve the right to, in the exercise of its sole and absolute discretion, modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Plan Objection Deadline.

[Signature on following page.]

RLF1 34145408v.2

Respectfully Submitted, as of November 12, 2025

<div style="margin-left: 40%;">

Silvergate Capital Corporation
on behalf of itself and each Debtor

By: _____/s/ Elaine Hetrick_____
        Name: Elaine Hetrick
        Title: Chief Administrative Officer

</div>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | **Case No. 24-12158 (KBO)** |
| **Debtors.** | **(Jointly Administered)** |
|  | **Re: Docket No. 966, 969, 1012, 1017, 1054, 1057 & 1058** |

**NOTICE OF FILING OF FIFTH PLAN SUPPLEMENT IN CONNECTION**
**WITH FIRST AMENDED JOINT CHAPTER 11 PLAN OF SILVERGATE CAPITAL**
**CORPORATION AND ITS AFFILIATED DEBTORS**

PLEASE TAKE NOTICE that, on September 5, 2025, the above-captioned debtors

and debtors in possession (collectively, the "Debtors") filed the solicitation version of the *First*

*Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors*

[Docket No. 969] (as may be amended, supplemented, or otherwise modified, the "Plan") with the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2]

PLEASE TAKE FURTHER NOTICE that, pursuant to the *Order Approving (I)*

*Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II)*

*Establishing Solicitation, Voting and Tabulation Procedures, (III) Scheduling Confirmation*

*Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, (V)*

*Establishing Cure Procedures; and (VI) Granting Related Relief* [Docket No. 966]

(the "Solicitation Procedures Order"), a hearing on confirmation of the Plan is scheduled for

---

[1]　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

[2]　Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. On November 10, 2025, the Debtors filed a confirmation version of the Plan. *See* Docket No. 1058.

November 13, 2025 at 2:00 p.m. (prevailing Eastern Time), before the Honorable Karen B. Owens, Chief United States Bankruptcy Judge, at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801 (the "Confirmation Hearing").[3]

PLEASE TAKE FURTHER NOTICE that, in accordance with the Plan and the Solicitation Procedures Order, on October 8, 2025, the Debtors filed the *Notice of Filing of First Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1012] (the "First Plan Supplement") including Exhibit E therewith.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Plan and the Solicitation Procedures Order, on October 13, 2025, the Debtors filed the *Notice of Filing of Second Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1017] (the "Second Plan Supplement") including Exhibits B and H therewith.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Plan and the Solicitation Procedures Order, on October 31, 2025, the Debtors filed the *Notice of Filing of Third Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1054] (the "Third Plan Supplement") including Exhibits C and D therewith.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Plan and the Solicitation Procedures Order, on November 10, 2025, the Debtors filed the *Notice of Filing of*

---

[3]     The Confirmation Hearing was originally scheduled for October 29, 2025 at 9:30 a.m. (prevailing Eastern Time), but was adjourned to November 13, 2025 at 2:00 p.m. (prevailing Eastern Time), in accordance with the Solicitation Procedures Order. *See* Docket No. 1041. The Confirmation Hearing may be adjourned or continued from time to time with the consent of the Ad Hoc Preferred Stockholder Group and without further notice, including adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court.

2

*Fourth Plan Supplement in Connection with First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 1057] (the "Fourth Plan Supplement") including Exhibit A therewith.

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file the following documents as part of this plan supplement (as may be amended, supplemented, or otherwise modified, the "Fifth Plan Supplement"):

| Exhibit | Plan Supplement Document |
|---------|--------------------------|
| A | Liquidation Trust Agreement |
| B | Liquidation Trustee and Liquidation Trust Board |
| C | Reorganized Silvergate Charter |
| D | Reorganized Silvergate Bylaws |
| E | Reorganized Silvergate Directors and Officers |
| F | Assumption Schedule: Liquidation Trust |
| G | Assumption Schedule: Reorganized Silvergate |
| H | Schedule of Retained Causes of Action |

PLEASE TAKE FURTHER NOTICE that the documents, schedules, and other information contained in this Fifth Plan Supplement are integral to and comprise part of the Plan. These documents have not yet been approved by the Bankruptcy Court. If the Plan is approved, the documents contained in the Fifth Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

PLEASE TAKE FURTHER NOTICE that the documents, schedules, and other information contained in this Fifth Plan Supplement are not final and remain subject to continuing negotiations among the Debtors and other interested parties. The Debtors reserve all rights to further amend, supplement, or modify the Fifth Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan. If material amendments or

3

modifications are made to any of these documents, the Debtors will file a redline with the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that the Fifth Plan Supplement, Fourth Plan Supplement, Third Plan Supplement, Second Plan Supplement, First Plan Supplement, Plan and Solicitation Procedures Order may be viewed free of charge by (i) visiting the website maintained by the Debtors' claims, noticing, and solicitation agent, Stretto, Inc. ("Stretto"), at *https://cases.stretto.com/Silvergate*; (ii) calling Stretto at 1-(855) 316-3507 (toll free in the U.S.), (iii) emailing Stretto at TeamSilvergate@stretto.com, or (iv) writing to Stretto at Stretto, Inc, *Re: Silvergate Capital Corporation*, *et al*, 410 Exchange, Suite 100, Irvine, CA 92602.  You may also obtain a copy of the Fifth Plan Supplement, Fourth Plan Supplement, Third Plan Supplement, Second Plan Supplement, First Plan Supplement, Plan and Solicitation Procedures Order for a fee via PACER by accessing the Bankruptcy Court's website: *www.deb.uscourts.gov*. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: *www.pacer.psc.uscourts.gov*.

| | |
|---|---|
| Dated:  November 12, 2025<br>Wilmington, Delaware | Respectfully Submitted, |

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/  David T. Queroli*
Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
Emily R. Mathews (No. 6866)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701
Email:    heath@rlf.com
                 merchant@rlf.com
                 queroli@rlf.com

4

mathews@rlf.com

-and-

**CRAVATH, SWAINE & MOORE LLP**

George E. Zobitz (admitted *pro hac vice*)
Paul H. Zumbro (admitted *pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700
Email:   jzobitz@cravath.com
        pzumbro@cravath.com

*Co-Counsel for Debtors and Debtors
in Possession*

5

**<u>Exhibit A</u>**

**Liquidation Trust Agreement**

*See* **Docket No. 1057**

**<u>Exhibit H</u>**

**Schedule of Retained Causes of Action**

*See* **Docket No. 1017**

**Exhibit A**

**Liquidation Trust Agreement**

## LIQUIDATION TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidation trust agreement and declaration of trust (the "Agreement"), dated as of [●], is made by and among Silvergate Capital Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") and Matthew Dundon (the "Trustee," and together with the Debtors, each, a "Party" and collectively, the "Parties").

### RECITALS

A.      On September 17, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The Debtors' chapter 11 cases are being jointly administered under the caption *In re Silvergate Capital Corporation, et al.*, Case No. 24-12518 (KBO) (the "Chapter 11 Cases").

B.      On September 18, 2024, the Debtors filed the initial version of the *Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 10] and the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to the Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No.11] related thereto.

C.      On March 27, 2025, the Debtors, the Underwriters, the Indemnified Individuals identified on **Exhibit A** to the Indemnification Settlement Term Sheet, and the Ad Hoc Preferred Stockholder Group, entered into the Indemnification Settlement Term Sheet.

D.      On April 22, 2025, the Debtors, the Ad Hoc Preferred Stockholder Group, the Underwriters, the Indemnified Individuals named as defendants in the Securities Litigation, and the Securities Plaintiffs, entered into the Securities Litigation Settlement Term Sheet.

E.      On June 24, 2025, the Debtors filed the *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 810] (as amended or otherwise modified from time to time, including all supplements, schedules, exhibits, and annexes

thereto, the "Plan") and the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 811] related thereto.

F.      On July 1, 2025, Stilwell Activist, Exploration Capital, the Ad Hoc Preferred Stockholder Group and the Debtors entered into the Common Stock Settlement.

G.      Each of the Indemnification Settlement Term Sheet, the Securities Litigation Settlement Term Sheet, and the Common Stock Settlement were incorporated into the revised versions of the Plan, as filed with the Bankruptcy Court, and each of the settlements embodied therein remained subject to confirmation of the Plan and the occurrence of the Effective Date.

H.      On September 5, 2025, the Bankruptcy Court entered the *Order Approving (I) Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation, Voting and Tabulation Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation Of Plan, (V) Establishing Cure Procedures; and (VI) Granting Related Relief* [Docket No. 966] (the "Disclosure Statement Order").

I.      On [●], 2025, the Bankruptcy Court entered an order [Docket No. [●]] ("Confirmation Order") confirming the Plan, which will become effective once all conditions set forth in Article XI of the Plan have been satisfied or waived pursuant to the terms of the Plan ("Effective Date").

J.      Article VI of the Plan provides for the establishment of the Liquidation Trust (the "Trust") on the Effective Date.

K.      [The Confirmation Order provides for the appointment of Matthew Dundon to serve as Trustee of the Trust on the Effective Date.]

2

L.      The Trust is established in accordance with Article VI of the Plan for the benefit of making distributions to Holders of the First Priority Liquidation Trust Beneficial Interests (Holders of Allowed Preferred Stock Interests, as of the Distribution Record Date) and Holders of the Second Priority Trust Beneficial Interests (Reorganized Silvergate), as applicable (collectively, as defined in the Plan, the Liquidation Trust Beneficiaries, or as referred to herein, the "Beneficiaries").

M.      The Trust is established for the purpose of liquidating and distributing the Trust Assets (as defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement, the Confirmation Order, and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

N.      Pursuant to the Plan and the Confirmation Order, the Debtors, Reorganized Silvergate, the Trust, the Trustee, and the Beneficiaries shall treat, for all U.S. federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of a portion of the Trust Assets by the Debtors to the Holders of Allowed Preferred Stock Interests in satisfaction of their Allowed Preferred Stock Interests, followed by a transfer of such portion of the Trust Assets by the Holders of Allowed Preferred Stock Interests to the Trust in exchange for the First Priority Liquidation Trust Beneficial Interests, and a transfer of the remaining Trust Assets by the Debtors to the Trust in exchange for the Second Priority Liquidation Trust Beneficial Interest, and to treat the Beneficiaries as the grantors and owners of the Trust for U.S. federal income tax purposes, and thus as the direct owners of an undivided beneficial interest in the Trust Assets, consistent with their economic interests therein, except with respect to any DOF (as defined below). The foregoing treatment shall also apply, to the extent permitted by applicable law, for applicable U.S. state and local income tax purposes.

3

O.      Pursuant to the Plan and the Confirmation Order, the Trust (other than with respect to any DOF or other separate entity) is intended for U.S. federal income tax purposes (a) to be treated as a "grantor trust" within the meaning of Sections 671 to 677 of the Internal Revenue Code of 1986, as amended (the "Tax Code"); and (b) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).  For the avoidance of doubt, the decision to elect whether to have a disputed claim reserve or the Indemnification Reserve treated as a DOF for tax purposes shall be determined by the Trustee in its sole discretion and nothing in this Agreement or the Plan shall be construed otherwise.

P.      In accordance with the Plan and Confirmation Order, the Trust, and the issuance and distribution of Liquidation Trust Beneficial Interests to the Beneficiaries, are further intended to be exempt from the registration requirements of (i) the federal securities laws, including the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended (the "Securities Exchange Act"), and any applicable state and local laws requiring registration of securities; and (ii) Investment Company Act of 1940, as amended (the "Investment Company Act").

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises and the mutual covenants and agreements contained in the Plan, the Confirmation Order, and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to (a) create and establish the Trust and (b) liquidate the Trust Assets and effectuate the Distribution of the Cash proceeds thereof to the Beneficiaries pursuant to the Plan, the Confirmation Order, and this Agreement;

4

RLF1 34137607v.2

Pursuant to Article VI of the Plan and Section 2.3 of this Agreement, on the Effective Date, all of the Trust Assets, including for the avoidance of doubt, the Liquidation Trust Initial Funding, the Liquidation Trust Retained Causes of Action, and the residual interests in the Disputed Claims Reserve and the Indemnification Reserves shall automatically be transferred to and vest in the Trust free and clear of all Claims, Liens, interests, encumbrances, and contractually imposed restrictions except as otherwise provided in the Plan or the Confirmation Order and subject to the terms of this Agreement;

TO HAVE AND TO HOLD unto the Trustee and its successor trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidation Trust Assets as defined in the Plan (including without limitation the Liquidation Trust Retained Causes of Action) and all other property, including for the avoidance of doubt, the Liquidation Trust Initial Funding, the Liquidation Trust Retained Causes of Action, and the residual interests in the Disputed Claims Reserve and the Indemnification Reserves held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be held by the Trust and on behalf of the Beneficiaries on the terms and conditions set forth herein, in the Confirmation Order, and in the Plan solely for the benefit of the Beneficiaries, and distributed to the Beneficiaries, in accordance with their priorities (as set forth in the Plan and Section [5.2] herein), and for no other party.  The Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Trust, except as limited herein.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER
### DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2     Definitions.  All capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan.

1.3     Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents.  In the event of any inconsistency between the Plan, the Confirmation Order, and this Agreement, the Confirmation Order shall control and if the Confirmation Order is silent on a particular provision or issue, then the Plan shall control.  In the event of any inconsistency between the Plan and this Agreement, the terms of the relevant provision of the Plan shall control (unless stated otherwise in the Confirmation Order).

## ARTICLE II

### ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust. This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Silvergate Liquidation

RLF1 34137607v.2

Trust." All references to the Trust in this Agreement shall include the Trustee acting on behalf of the Trust.

2.2     Acceptance by Trustee. The Trustee accepts its appointment as Trustee of the Trust and shall perform all duties and obligations imposed upon the Trustee under the Plan, this Agreement, and applicable orders of the Bankruptcy Court.  Subject to the terms of this Agreement, any action that affects the interests of more than one Beneficiary shall be binding and conclusive on all Beneficiaries even if such Beneficiaries have different or conflicting interests.

2.3     Purpose of Trust. The Debtors and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), including but not limited to (a) being vested with and liquidating the Trust Assets, (b) making Distributions to Holders of Claims Allowed after the Effective Date in accordance with the terms of the Plan and this Agreement, (c) making Distributions in accordance with the terms of the Plan and this Agreement to Holders of (i) First Priority Liquidation Trust Beneficial Interests, and (ii) Second Priority Liquidation Trust Beneficial Interest in accordance with the terms of the Plan and Section [5.2] herein, (d) resolving all Disputed Claims and effectuating the Claims reconciliation process pursuant to the procedures prescribed in the Plan and this Agreement, (e) prosecuting, settling, and resolving the Liquidation Trust Retained Causes of Action, (f) recovering, through enforcement, resolution, settlement, collection, or otherwise, the Trust Assets on behalf of the Trust, (g) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Trust, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to effectuate the Plan, and consistent with, the liquidating purpose of the Trust, including, but not limited to, filing 2025

7

tax returns on behalf of the Debtors or the Trust; <u>provided</u> that, for all tax periods arising after the Effective Date, the Trust shall be solely responsible for any tax returns on behalf of the Trust and Reorganized Silvergate shall be solely responsible for any tax returns on behalf of Reorganized Silvergate, as applicable, and (h) complying with the Indemnification Procedures and maintaining the Indemnification Reserves [and the DOJ Insurance Policy] in the manner required by the Plan.

2.4     <u>Transfer of Trust Assets</u>.

2.4.1     <u>Conveyance of Trust Assets</u>.  Pursuant to the Plan and the Confirmation Order, the Debtors hereby irrevocably grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust as of the Effective Date free and clear of all Liens, Claims, charges, rights, or other encumbrances subject to and in accordance with the Plan and this Agreement to be held in trust and administered and applied as set forth in the Plan, the Confirmation Order, and this Agreement for the benefit of the Beneficiaries.  For purposes of section 553 of the Bankruptcy Code, the transfer of the Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.  The Debtors and Reorganized Silvergate shall, from time to time, as and when reasonably requested by the Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors and Reorganized Silvergate shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets, in each case, which cooperation shall not be unreasonably withheld, conditioned, or delayed.  The transfer and delivery of the Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to, and to the maximum extent permitted under, section 1146 of the Bankruptcy Code.

RLF1 34137607v.2

2.4.2    Title to Trust Assets.  Pursuant to the Plan and the Confirmation Order, all of the Debtors' rights, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are hereby transferred to and automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, interests, contractually imposed restrictions, and other interests, except as specifically provided in the Plan and the Confirmation Order, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized, among other things, to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue, settle, and/or sell all Liquidation Trust Retained Causes of Action (subject to Article VIII hereof), and pursue, assert and/or exercise all rights of setoff and recoupment and defenses of the Debtors or their Estates that may be asserted by any and all defendants as to any Liquidation Trust Retained Causes of Action or Disputed Claims.  Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets.  On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets, including the Liquidation Trust Retained Causes of Action.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a Lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in [Section 2.3] of this Agreement, and to the fullest extent permitted under applicable law, this Agreement shall be deemed  a  security agreement  granting  such  interest  thereon  without  need  to  file  financing  statements  or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of

9

such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Confirmation Order, and the Plan.

2.5    Privileges.

2.5.1    All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "Privileges") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors) (collectively, the "Privilege Transfer Parties") related in any way to the Liquidation Trust Assets and the purpose of the Trust or Reorganized Silvergate Assets (the "Transferred Privileged Information") are hereby transferred and assigned to the Trust and Reorganized Silvergate jointly, which joint privilege shall be subject to the terms of the Business Records Access Agreement.  The Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital, and whether or not previously disclosed or discussed.  For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a Privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Transfer Parties.

2.5.2    The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information in the Trust and Reorganized Silvergate jointly, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. For the avoidance of doubt and notwithstanding anything to the contrary herein, Confidential Supervisory Information (as defined in 12 C.F.R. § 261.2) shall remain subject to the rights and privileges of applicable regulators and nothing herein shall authorize the disclosure of any Confidential Supervisory

RLF1 34137607v.2

Information absent applicable regulatory approval or otherwise in accordance with applicable non-bankruptcy law.

2.5.3    The Privilege Transfer Parties agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Trust without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody, or control reasonably requested by the Trust. The Trust and Reorganized Silvergate are further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Transferred Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Transferred Privileged Information, and no such person may object to the production in accordance with such request or subpoena of such Transferred Privileged Information on the basis of a Privilege held by a Privilege Transfer Party.  For the avoidance of doubt, this Subsection is subject in all respects to Section 2.3(a) of this Agreement.

2.5.4    Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Trust or Reorganized Silvergate, or any of their respective employees, the Trustee, the Liquidation Trust Board Members, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Trust and/or Reorganized Silvergate, as applicable, on the other hand, or any of their respective employees, the Trustee, the Liquidation Trust Board, professionals or representatives.  For the avoidance of doubt, any access provided to Reorganized Silvergate of the Debtors' books and records pursuant to [Article V.D.4] of the Plan shall not be deemed a waiver of any Privileges and any Transferred Privileged Information received by Reorganized Silvergate

11

in connection therewith shall be subject to the joint privilege and the terms set forth in the Business Records Access Agreement.

2.5.5    If a Privilege Transfer Party, the Trust, Reorganized Silvergate, any of their respective employees, professionals or representatives, or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party shall, promptly upon discovery of the production, notify the Trust and/or Reorganized Silvergate, as applicable, of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

2.5.6    Notwithstanding anything to the contrary contained in Section [2.5], for the avoidance of doubt, no Privilege or Transferred Privileged Information related to any claims or causes of action that have been released under the Plan shall be deemed to have been transferred or assigned to the Trust; provided however, that the foregoing shall not prevent the transfer of any Privilege or Transferred Privileged Information to the extent that such Privilege or Transferred Privileged Information also relates to Trust Assets or Reorganized Silvergate Assets.

2.6    No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the Trustee may enforce all rights to commence and pursue, as appropriate, any and all Liquidation Trust Retained Causes of Action. No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Trustee will not pursue any and all Liquidation Trust Retained Causes of Action against such Entity. To the fullest extent permitted under applicable law, the Trustee expressly reserves all Liquidation Trust Retained Causes of Action for later adjudication,

12

resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Liquidation Trust Retained Causes of Action upon, after or as a consequence of the Confirmation Order.

2.7     Appointment as Representative. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee shall be the duly appointed representative of the Estates for certain limited purposes and, as such, to the extent provided herein, the Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution, resolution and settlement of the Liquidation Trust Retained Causes of Action and the Disputed Claims. To the extent that any of the Liquidation Trust Retained Causes of Action cannot be transferred to the Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidation Trust Retained Causes of Action and rights shall be deemed to have been retained by the Estates or Reorganized Silvergate, as applicable, (other than for tax purposes) and the Trustee shall be deemed to have been designated as a representative of the Estates or Reorganized Silvergate, as applicable, to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Liquidation Trust Retained Causes of Action, at the sole cost of the Trust and as directed by counsel to the Trust, on behalf of the Trust for the benefit of the Beneficiaries. Notwithstanding the foregoing, all proceeds of the Liquidation Trust Retained Causes of Action shall be distributed to the Beneficiaries consistent with the provisions of the Plan, Confirmation Order, and this Agreement. No Liquidation Trust Retained Cause of Action shall be deemed to have been waived or otherwise prejudiced if it cannot be transferred to the Trust and shall be preserved for all purposes by the Estates or Reorganized Silvergate for the

13

Trust and its Beneficiaries.  For the avoidance of doubt, any of the Liquidation Trust Retained Causes of Action subject to this [Section 2.7] shall be treated by the Parties for U.S. federal, state and local income tax purposes as transferred to the Trust as described in Section [8.1] herein.

2.7.1   The Trust shall be vested with and entitled to, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Liquidation Trust Retained Cause of Action and the Disputed Claims.  The Trust shall also be vested with and entitled to assert, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, all of the Debtors' and the Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

2.8     Capacity of Trust.   The Trust or the Trustee, on behalf of the Debtors, may enter into and execute any and all documents and instruments necessary or appropriate to effectuate the purposes of the Trust. To the fullest extent permitted by applicable law, notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts and other arrangements.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.9     Proceeds of the Trust Assets.  All of the proceeds received by the Trust from the Trust Assets shall be added to the Trust Assets and held as part thereof (and title thereto shall be vested in the Trust).

14

2.10    No Retention of Excess Cash.  Notwithstanding anything in this Agreement to the contrary, except as required to maintain the Disputed Claims Reserve and the Indemnification Reserves on the terms set forth in the Plan, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of [a reasonable amount necessary to (w) satisfy any liabilities of the Trust, (x) to protect, conserve or maintain the value of the Trust Assets, or (y) to meet any contingent liabilities of the Trust], in each case, as determined by the Trustee with approval of the Liquidation Trust Board.  All excess Cash shall promptly be distributed to the Beneficiaries in accordance with the priorities set forth in the Plan and Section [5.2] of this Agreement.

<div align="center">

**ARTICLE III**

**ADMINISTRATION OF TRUST**

</div>

3.1    Rights, Powers, and Privileges of Trustee Generally.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the Effective Date, the Trustee, on behalf of the Trust, may control and exercise authority over the Trust Assets, over the management, litigation, settlement, monetization, abandonment, and disposition thereof, and over the management and conduct of the affairs of the Trust, with the consent, as applicable, of the Liquidation Trust Board as set forth herein.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste and/or cost in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    Liquidation of the Trust Assets. The Trustee, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement (including Section [9.2] of this Agreement), liquidate and convert to Cash the Trust Assets, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly

<div align="center">15</div>

prolong the existence of the Trust. The Trustee shall exercise reasonable business judgment and liquidate the Trust Assets to maximize net recoveries to the Beneficiaries; provided, however, that the Trustee shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries. Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all of the Liquidation Trust Retained Causes of Action or otherwise or through the sale or other disposition of the Trust Assets (in whole or in part) subject to the consent of the Liquidation Trust Board. The Trustee may incur any reasonable and necessary expenses in connection with the liquidation of the Trust Assets and distribution of the proceeds thereof.

3.1.2  Power to Contract.  In furtherance of the purpose of the Trust, and notwithstanding anything to the contrary herein, in the Plan, or in the Confirmation Order, the Trustee, on behalf of the Trust, shall have the right and power to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be reasonable and advisable in furthering the purpose of the Trust, subject only to the consent of the Liquidation Trust Board as set forth in Section [9.2].

3.1.3  Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trust may owe the Beneficiaries or any other Person under the Plan, the Confirmation Order, or this Agreement.

16

3.2     Powers of Trustee.     Without limiting the generality of Section 3.1 of this Agreement, in addition to the powers granted in the Plan, the Trust, by and through the Trustee, shall, subject to the direction and approval of the Liquidation Trust Board as provided in this Agreement, have the power to take the following actions on behalf of the Trust, and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or advisable to effectuate the primary purpose of the Trust, unless otherwise specifically limited or restricted by the Plan, the Confirmation Order, or this Agreement:

3.2.1   hold legal title to the Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

3.2.2   open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.3   receive, maintain, conserve, supervise, prosecute, collect, settle, manage, invest, protect, and, where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of [Section 3.6] of this Agreement;

3.2.4   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5   collect, liquidate, and convert all Trust Assets to Cash, including through the sale of any Trust Assets, and make distributions to the Trust Beneficiaries in accordance with Section [5.2] of this Agreement;

3.2.6   protect and enforce the rights to the Trust Assets (including any Liquidation Trust Retained Causes of Action) vested in the Trust and the Trustee by this Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

17

3.2.7    investigate any Trust Assets, including, but not limited to, any Liquidation Trust Retained Causes of Action;

3.2.8    take or refrain from taking any and all actions the Trustee reasonably deems necessary for the continuation, protection, and maximization of the Trust Assets consistent with the purposes hereof;

3.2.9    review, reconcile, compromise, settle, allow, or object to Claims or Interests of any kind; and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in connection with the foregoing and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims in accordance with the Plan, the Confirmation Order, and this Agreement;

3.2.10   establish, administer, adjust, and maintain the Disputed Claims Reserve;

3.2.11   cause the Trust to review, reconcile, pursue, enforce, collect, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, resolve, or elect not to pursue any and/or all Liquidation Trust Retained Causes of Action;

3.2.12   subject to the further provisions of Section [3.4] hereof, cause the Trust to employ or retain professionals, disbursing agents, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable and documented compensation thereof;

3.2.13   cause the Trust to pay all Liquidation Trust Expenses, which shall include all of its lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Trust Assets consented to by the Liquidation Trust Board;

18

RLF1 34137607v.2

3.2.14 determine Distribution Dates in accordance with the Plan and this Agreement;

3.2.15 calculate and without unnecessary delay make all Distributions to the Beneficiaries in accordance with the terms and priorities set forth in the Plan and herein;

3.2.16 cause the Trust to withhold from the amount distributable to any Person or Entity the maximum amount needed to pay or remit any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld or deducted from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.17 maintain a register evidencing the Liquidation Trust Beneficial Interests to the extent they are issued in the form of First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests;

3.2.18 comply with data retention and legal obligations to produce documents in accordance with the DFPI C&D;

3.2.19 administer the Indemnification Reserves and the DOJ Insurance Policy, if applicable, in accordance with the Indemnification Procedures and the Plan;

3.2.20 take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases;

3.2.21 maintain the books and records and accounts of the Debtors and grant reasonable access thereto to Reorganized Silvergate, including by entering into the Business Records Access Agreement attached hereto as **Exhibit C**;

3.2.22 cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax

19

RLF1 34137607v.2

returns for the Trust as a grantor trust under sections 671-679 of the Tax Code and Treasury Regulation section 1.671-4 pursuant to and in accordance with the Plan and [Article VIII] of this Agreement, and timely pay taxes, if any, payable for and on behalf of the Trust solely out of the Trust Assets consistent with the Plan; provided, however, that nothing contained herein shall provide the Trust with any authority or responsibility to file any tax returns for the Debtors or their Estates, nor shall the Trust nor the Trustee have any responsibility or liability in any capacity whatsoever for the filing of the Debtors' income tax returns for any period either prior to or after the Effective Date or for any tax liability related thereto;

3.2.23  cause the Trust, subject to the approval of the Liquidation Trust Board, to abandon or donate to a charitable organization that qualifies for non-profit status under Section 501(c)(3) of the Tax Code any Trust Assets that the Trustee determines to be too impractical to distribute to the Beneficiaries or is of inconsequential value to the Trust and the Beneficiaries;

3.2.24  cause the Trust to send annually to the Beneficiaries, in accordance with the applicable tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their U.S. federal income tax returns, as applicable;

3.2.25  request an expedited determination of taxes of the Trust, including any Disputed Claims Reserve, and, in the case of the Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Trust or the Debtors for all taxable periods through the dissolution of the Trust;

3.2.26  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

20

3.2.27 cause the Trust to purchase, carry, renew, and modify all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs solely out of the Trust Assets;

3.2.28 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.29 undertake all administrative functions remaining in the Chapter 11 Cases to the extent provided for in the Plan or Confirmation Order and/or as otherwise necessary to carry out the Trust or Trustee's duties under the Plan, the Confirmation Order, and this Agreement;

3.2.30 exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.31 take all other actions not inconsistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     <u>Responsibility for Administration of Claims</u>.  From and after the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Holders of subsequently Allowed Claims and the Beneficiaries.  Without limiting the rights of the Trustee set forth herein with respect to the Indemnification Procedures, the Trustee, subject to the direction of the Liquidation Trust Board, shall have the exclusive right to object to the allowance of any Claim or Interest not Allowed prior to the Effective Date, either pursuant to the Plan or otherwise, on any ground, to file, withdraw, or litigate to judgment objections to Claims or Interests, to settle or compromise any such Claims or Interests without any further notice to or action, order, or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.  The Trust

21

shall also be entitled to assert all of the Debtors' and the Estates rights under section 558 and any other provision of the Bankruptcy Code. The Trust may also seek estimation of any Claims that have not been Allowed under and subject to section 502(c) of the Bankruptcy Code, to the extent applicable.

3.4    Agents and Professionals. The Trustee may, but shall not be required to, upon the prior consent of the Liquidation Trust Board, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors or the Ad Hoc Preferred Stockholder Group. For the avoidance of doubt, but subject to the preceding sentence regarding consent of the Liquidation Trust Board, and without limiting applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust. On the Effective Date, Milbank LLP and Potter Anderson and Corroon, LLP shall be retained by and will serve as co-counsel to the Trust.

3.5    Safekeeping and Investment of the Trust Assets. Subject to the Disputed Claims Reserve and the Indemnification Reserves, all moneys and other assets received by the Trust that are Trust Assets or the product or proceeds of Trust Assets, including any residual interest in the Disputed Claims Reserve and the Indemnification Reserves and any and all other reserves established under the Plan or this Agreement, shall, until distributed or paid over as provided herein and in the Plan and the Confirmation Order, be held in trust for the benefit of the Beneficiaries.

3.6    Investment of Cash. The right and power of the Trustee to invest the Trust Assets, the proceeds thereof, or any income earned by the Trust shall be limited to the right and power to invest such Trust Assets only in Cash and U.S. Government securities as defined in section

22

2(a)(16) of the Investment Company Act; provided, however, that the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any funds received by the Trust or the Trustee and held for Distribution except to the extent such interest is actually received by the Trust or the Trustee, which shall be distributed as provided in the Plan, the Confirmation Order, and this Agreement.  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.7     <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Trust and to maintain a record of the Beneficiaries to the extent the Liquidation Trust Beneficial Interests are issued in the form of First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests.  The Liquidating Trustee may, but shall not be required, to engage the Claims Agent to serve as Disbursing Agent for some or all Disbursements to be made by the Trust. The books and records maintained by the Trust and any

23

records of the Debtors transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trust determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries, (ii) the termination and completion of the winding down or dissolution of the Trust, and (iii) such time that the continued possession or maintenance of such books and records is no longer required under the Data Retention and Production Obligations, but solely with respect to such books and records that are required to be preserved thereby; provided that notwithstanding the forgoing, the requirement to preserve the books and records in accordance with the Data Retention and Production Obligations shall not require the continuation of the Trust so long as the books and records have otherwise been preserved in accordance with the terms thereof.

3.8     Reporting Requirements.  The Trustee shall provide the Liquidation Trust Board such information and reports as the Liquidation Trust Board may reasonably request concerning the Trust administration.

3.9     Financial and Status Reports. The fiscal year of the Trust shall be the calendar year. Within ninety (90) days after (x) the end of the second quarter of each calendar year and (y) the end of each calendar year during the term of the Trust, and as soon as reasonably practicable upon termination of the Trust, the Trustee shall make available, upon request, to the Beneficiaries, as of the end of such period or such date of termination, a written report including: (i) financial statements of the Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Trust as proposed by the Trustee; (ii) a summary description of any action taken by the Trust which, in the judgment of the Trustee, materially affects the Trust and of which

24

notice has not previously been given to the Beneficiaries; (iii) a description of the progress of liquidating the Trust Assets and making distributions to the Beneficiaries, which description shall include a written report detailing, among other things, the litigation status of the Liquidation Trust Retained Causes of Action transferred to the Trust, any settlements entered into by the Trust with respect to the Liquidation Trust Retained Causes of Action, the proceeds recovered on such claims to date, and the distributions made by the Trust to date; and (iv) any other material information relating to the Trust Assets and the administration of the Trust deemed appropriate to be disclosed by the Trustee and that would not compromise privilege or is required to be included in the written report by the Liquidation Trust Board.  [In addition, the Trust shall provide unaudited financial statements to each Beneficiary on a quarterly basis (which may be quarterly operating reports filed with the Bankruptcy Court).]  The Trustee may post any such report or unaudited financial statement on a website maintained by the Trustee or electronically file it with the Bankruptcy Court in lieu of actual notice to each Beneficiary (unless otherwise required by law).

3.10  <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trust and Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  In addition, the Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be a Liquidation Trust Expense paid from Trust Assets.

3.11    <u>Fiduciary and Other Duties</u>. Notwithstanding anything in the Plan, the Confirmation Order, or this Agreement to the contrary, the Trust shall always act in the best interests of the Beneficiaries and in furtherance of the purpose of the Trust as set forth in the Plan and the Confirmation Order. To the fullest extent permitted under applicable law, the Trustee shall have fiduciary duties to the Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her, or its responsibilities accordingly; provided, however, that the Trustee shall not owe fiduciary obligations to any defendants of or adverse parties to the Liquidation Trust Retained Causes of Action or the Disputed Claims or Interests in their capacities as such, it being the intent of such fiduciary duties to ensure that the Trustee's obligations are to maximize the value of the Trust Assets, including the Liquidation Trust Retained Causes of Action. The foregoing reflects the sole fiduciary duties owed by the Trust or the Trustee to the Beneficiaries.  For the avoidance of doubt, the members of the Liquidation Trust Board shall not individually or in their capacities as members of the Liquidation Trust Board owe any fiduciary duties to the Trust or any Beneficiary.

3.12    <u>Confidentiality</u>. The Trustee shall, during the period that the Trustee serves as Trustee under this Agreement and for a period of two (2) years following the termination of this Agreement or following such Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Trustee may be employed any non-public information of or pertaining to any Entity or Person to which any of the Trust Assets relates or of which the Trustee has become aware in the Trustee's capacity as Trustee, until (a) such information is made public other than by disclosure by the Trust, the Trustee, or any of its advisors or professionals in violation of this Agreement; (b) the Trust is required by

26

law to disclose such information (in which case the Trust shall provide the relevant Entity or Person reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the Trust obtains a waiver of confidentiality from the applicable Entity or Person.

<div align="center">

**ARTICLE IV**

**LIQUIDATION TRUST INITIAL FUNDING AND LIQUIDATION TRUST EXPENSES**

</div>

4.1     <u>Liquidation Trust Initial Funding</u> .  The Liquidation Trust Initial Funding will be $10 million, which amount will be distributed to the Trust on the Effective Date of the Plan to, among other things, fund Liquidation Trust Expenses as and to the extent set forth herein.

4.2     Upon receipt by the Trust of the Liquidation Trust Initial Funding, the Liquidation Trust Initial Funding shall be deemed Trust Assets.

4.3     Subject in all respects to the terms of this Agreement, the Trustee shall be authorized to use the Trust Assets to administer the Trust including all costs and expenses of commencing, prosecuting, compromising, settling, or otherwise resolving the Liquidation Trust Retained Causes of Action, as well as administering or distributing any proceeds therefrom, (including the Liquidation Trust Retained Causes of Action), paying the reasonable, documented, out-of-pocket fees, expenses, and costs of the Trust, including, without limitation, the Trustee Fees and the reasonable, documented, and necessary fees and expenses of any professionals retained by the Trust in accordance with the terms of this Agreement.

4.3.1     All such costs of the Trust set forth in [Section 4.3] of this Agreement shall (i) be paid by, and solely be the obligation of, the Trust and (ii) be paid by the Trust from the Trust Assets.

<div align="center">

27

</div>

## ARTICLE V

## MAINTENANCE OF RESERVES AND DISTRIBUTIONS

5.1     Maintenance of Reserves.

5.1.1    Disputed Claims Reserve.  In accordance with [Article V.O] of the Plan] and [Section 3.2.9] of this Agreement, the Trust may also maintain as necessary one or more Disputed Claims Reserve(s) with respect to Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending the Trust's determination of whether to object to any Claim that is not otherwise Allowed pursuant to the Plan. Any such withheld Distribution shall become part of the Trust's Disputed Claims Reserve(s) and shall be distributed to the applicable Claim holder no later than the first distribution date after a decision is made not to object to the pertinent Claim, or the Claim is Allowed.  Once a Claim has been Disallowed in whole or in part, any portion of the Disputed Claims Reserve allocable to such Disallowed Portion of the Claim shall be deemed a Trust Asset and shall be distributed to the Beneficiaries in accordance with their priorities and timing as set forth in the Plan and herein.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and with other funds of the Trust; provided, however, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.2    Indemnification Reserves. On the Effective Date, the Debtors shall, in a manner mutually acceptable to the Required Preferred Stockholders and the Indemnified Individuals, establish the DOJ Indemnification Reserve, the Martino SEC Dedicated Indemnity Reserve, the Dedicated Indemnity Reserves, and the Shared Indemnity Reserve in accordance with the Indemnification Settlement Term Sheet and shall have acquired the DOJ Insurance Policy or shall fund a reserve for the benefit of the applicable Indemnified Individuals in the same amount as the proposed DOJ Insurance Policy (or a combination thereof, as agreed to by the applicable

28

Indemnified Individuals and the Required Preferred Stockholders), the terms of which policy, if applicable, shall be mutually acceptable to the applicable Indemnified Individuals covered thereunder and the Required Preferred Stockholders.

5.1.3   <u>Indemnification Reserves Managed by Trustee</u>. The Indemnification Reserves shall be funded in the applicable amounts set forth in the Indemnification Settlement Term Sheet with Cash from the Debtors' estates held in trust for the Indemnified Individuals in an interest-bearing Cash deposit account managed by the Trustee.  Indemnified Individuals shall be entitled to submit to the Trustee an invoice for reasonable and documented Indemnifiable Claims, which shall include a brief description of the matter to which the invoice relates, detail for expenses incurred and time entries for any professional retained by such Indemnified Individuals (which shall be maintained in no more than .25 increments of an hour).  The Trustee shall have 30 days to review such invoice (the "<u>Indemnifiable Claim Objection Deadline</u>") and raise any objection that such amounts incurred do not constitute a valid Indemnifiable Claim and/or the amounts incurred are not reasonable (which for the avoidance of doubt shall not include application of sections 330 and 328 of the Bankruptcy Code) (an "<u>Indemnifiable Claim Objection</u>").  Indemnified Individuals shall use reasonable and good-faith efforts to submit all invoices for Indemnifiable Claims within 40 days after the end of the month in which such Indemnifiable Claim is incurred; <u>provided</u>, <u>however</u>, that the failure to submit any such invoice within such period shall not prejudice the right of any Indemnified Individual to payment of any Indemnifiable Claim in accordance with the procedures set forth herein. Only reasonable and documented Indemnifiable Claims shall be paid from the Indemnification Reserve.

5.1.4   <u>Indemnification Reserves Procedures</u>. In the event that the Trustee raises an Indemnifiable Claim Objection, the Trustee and the Indemnified Individual shall work in good-

29

faith to resolve such Indemnifiable Claim Objection. In the event that the Trustee and the Indemnified Individual are unable to resolve such Indemnifiable Claim Objection within 45 days after the Indemnifiable Claim Objection Deadline (unless extended by mutual consent of the parties), then the Trustee shall file a formal objection with the Bankruptcy Court and seek a determination from the Bankruptcy Court on no less than 20 days' notice to such Indemnified Individual or their counsel, as applicable. If the Trustee is not the prevailing party in an Indemnifiable Claim Objection that is decided by the Bankruptcy Court, then the applicable Indemnified Individual is entitled to recover his or her reasonable attorneys' fees incurred with respect to such Indemnifiable Claim Objection from the applicable reserve. Any decision of the Bankruptcy Court with respect to the validity of an Indemnifiable Claim and/or the reasonableness thereof shall be binding on the Indemnified Individual and the Trustee. All undisputed amounts, or subsequently allowed amounts, shall be paid from their applicable reserve within 30 days of the invoice submission if undisputed, and with 10 days of an agreement or determination of the Bankruptcy Court for any amounts that are disputed. With respect to an amount claimed and allowed against any shared Indemnification Reserve, the Trustee will be authorized and have no liability for paying such Allowed Indemnifiable Claims from the applicable shared Indemnification Reserve on a claims made basis. The Trustee will send a quarterly notice to the Indemnified Individuals or their counsel, as applicable, of all amounts remaining in the Indemnification Reserves, until such time as the Indemnification Reserves have been exhausted or released. Indemnified Individuals with Dedicated Indemnity Reserves must exhaust their applicable Dedicated Indemnity Reserves before seeking payment from the Shared Indemnity Reserves. Funds maintained in the Indemnification Reserves shall be released to the Trust as Trust Assets in accordance with [Article VI.C] of the Plan for immediate distribution to the Beneficiaries

30

in accordance with the priorities set forth in [Article V.D] of the Plan and Section [5.2] hereof. Subject to the reserve step downs set forth in [Article V.C.2.b.] of the Plan, Preferred Stock Interests shall hold the residual interest in the Indemnification Reserves after all Indemnifiable Claims are satisfied.

5.1.5    Indemnification Reserve Residual Interests. [As set forth in the Indemnification Settlement Term Sheet, Holders of Allowed Preferred Stock Interests shall maintain the exclusive reversionary interest in the Indemnification Reserve Residual Interest until such time as the Holders of Allowed Preferred Stock Interest have actually received Cash payments of $200 million.] Consistent with the Common Stock Settlement, amounts to be released to the Holders of Allowed Preferred Stock Interests under the Indemnification Settlement Term Sheet, including the Indemnification Reserve Residual Interest, shall be released to and distributed by the Trust to the Liquidation Trust Beneficiaries in accordance with the priorities set forth in [Article V.D] of the Plan and [Section 5.2] of this Agreement.

5.2    Distribution of Trust Assets.

5.2.1    Distributions to First Priority Liquidation Trust Beneficial Interests.  As set forth in Article V.D of the Plan, Holders of Allowed Preferred Stock Interests shall receive First Priority Liquidation Trust Beneficial Interests, which shall entitle each Holder thereof to receive distributions consisting of (i) 100% of the proceeds of the Trust Assets until the Aggregate Preferred Stock Distribution paid in Cash to the Holders of First Priority Liquidation Trust Beneficial Interests equals $150 million, and (ii) 80% of the proceeds of the Trust Assets after the Aggregate Preferred Stock Distribution paid in Cash equals $150 million until the Aggregate Preferred Stock Distribution paid in Cash to the Holders of the First Priority Liquidation Trust Beneficial Interests equals the Preferred Stock Liquidation Preference Amount.  When the

31

Aggregate Preferred Stockholder Distribution paid in Cash equals the Preferred Stock Liquidation Preference Amount, Holders of First Priority Liquidation Trust Beneficial Interests shall not be entitled to further recovery on account of their First Priority Liquidation Trust Beneficial Interests.

5.2.2  <u>Distributions to Second Priority Liquidation Trust Beneficial Interest</u>. Reorganized Silvergate shall receive the Second Priority Beneficial Interest which shall entitle it to receive distributions consisting of (i) 20% of the proceeds of the Trust Assets only after the Aggregate Preferred Stockholder Distribution paid in Cash to the Holders of the First Priority Liquidation Trust Beneficial Interests equals $150 million and until the First Priority Liquidation Trust Beneficial Interests equals the Preferred Stock Liquidation Preference Amount, and (ii) 100% of the proceeds of the Trust Assets, once the Aggregate Preferred Stockholder Distribution paid in Cash to the Holders of the First Priority Liquidation Trust Beneficial Interests equals the Preferred Stock Liquidation Preference Amount.

5.2.3  <u>Distribution of Trust Assets Generally</u>. From time to time (but no less frequently than annually) and at such times determined to by the Liquidation Trust Board, the Trustee shall make a determination of the amount of Cash available for distribution to the Beneficiaries from the Trust Assets, which shall include the amount of Cash then on hand including the net income and any proceeds of the Trust Assets, any release of funds from the Disputed Claims Reserve or Indemnification Reserve, or from any resolution of any Liquidation Trust Retained Causes of Action (but excluding any Cash or other amounts in any Disputed Claims Reserve or Indemnification Reserve that has not been released as a Trust Asset), reduced by any such amounts that are reasonably necessary to (i) meet contingent liabilities and to maintain the value of the Trust Assets during liquidation, (ii) pay reasonable incurred or anticipated expenses of the Trust (including, but not limited to, any taxes imposed on or payable by the Trust or in respect of the

32

Trust Assets and fees and expenses of professionals retained on behalf of the Trust), or (iii) satisfy other liabilities incurred or anticipated by the Trust in accordance with the Plan or this Agreement, in each case as consented to by the Liquidation Trust Board.  The Trustee shall then distribute all such available Cash to the Beneficiaries on account of their Liquidation Trust Beneficial Interests in accordance with the Plan, the Confirmation Order, and this Agreement.

5.2.4    Delivery of Distributions. Except as otherwise provided in the Plan or this Agreement, the Trust or the Disbursing Agent shall make Distributions to Beneficiaries at the address for each such Beneficiary as indicated in (i) the address set forth on the Proof(s) of Claim or Interest filed by such Holder, (ii) the address reflected in the Schedules if no Proof of Claim or Interest has been filed, or (iii) the address set forth in any written notice of, or change of, address delivered to the Trust and filed with the Bankruptcy Court.

5.2.5    Right to Rely on Professionals.  Without limitation of the generality of [Section 7.6] of this Agreement, in determining the amount of any Distribution or reserves, the Trust and/or Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's counsel, financial advisors, accountants, or other professionals.

5.3    Method and Timing of Distributions.  Distributions to Beneficiaries will be made from the Trust in Cash in accordance with the terms of the Plan and this Agreement. The Trust may engage disbursing agents and other Persons to assist with Distributions.

5.4    Withholding from Distributions.  The Trustee may deduct or withhold from amounts distributable from the Trust to or on account of any Holder of an Allowed Interest, any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust, including with respect to the amount

33

to be distributed to such Beneficiary any amounts received by, collections of, or earnings of the Trust and any proceeds from the Trust Assets.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.  All such amounts deducted and withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiary for all purposes of the Plan and this Agreement, to the extent permitted by applicable law.

5.5     IRS Forms.  As more fully set forth in Article VI.P.5 of the Plan, the Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current IRS From W-8, IRS Form W-8, or similar tax form, as a prerequisite to receiving any Distribution under the Plan or this Agreement.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number within sixty (60) days of first written request of all required documentation that, in the Trustee's reasonable business judgment, is necessary to determine the tax withholding and reporting requirements for such Interest, including an appropriate IRS Form W-8 or IRS Form W-9 (as applicable), then the Trust (i) may make a Distribution net of any applicable maximum withholding or (ii) determine that such Beneficiary shall be deemed to have forfeited its respective rights to any current, reserved or future Distributions provided for under the Plan, and such Beneficiary's Interest shall be disallowed and expunged without further order of the Bankruptcy Court.  Any such forfeited Distribution shall be deemed to have reverted back to the Trust for all purposes, including for Distributions to other Holders of Allowed Interests, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

34

5.6     Unclaimed and Undeliverable Distributions.  In accordance with Article VII.I of the Plan, undeliverable Distributions shall remain in the possession of the Trust until such time as a Distribution becomes deliverable or the Holder accepts Distribution, or such Distribution reverts back to the Trust and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of Distribution. After such date, all unclaimed property or interest in property shall revert to and vest in Trust and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

5.6.1     No Responsibility to Attempt to Locate Beneficiaries.  If a Distribution is returned to the Trust as undeliverable, or otherwise remains unclaimed, the Trust may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so; provided that, notwithstanding the foregoing, the Trust shall be obligated to reasonably cooperate with the Ad Hoc Preferred Stockholder Group in the event any issues arise in connection with making any Distributions in respect of Preferred Stock Interests.

5.6.2     Disallowance of Interests; Cancellation of Corresponding Liquidation Trust Beneficial Interests. All Claims and Interests in  respect  of  undeliverable  or  unclaimed Distributions that have been deemed to have reverted to the Trust for all purposes (including, but not limited to, Distributions to the Beneficiaries) pursuant to Article VII.I of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding right to payment or Liquidation Trust Beneficial Interests of any Beneficiary holding such disallowed Interests shall be deemed canceled.

35

The Beneficiary with respect to any such disallowed Interest shall no longer have any right, claim, or interest in or to any Distributions in respect of such Interest, and further, such Beneficiary is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such disallowed Interest against the Trust or Trustee.

5.6.3    Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. To the fullest extent permitted by applicable law, unclaimed property held by the Trust shall not be subject to the escheat, abandoned, or unclaimed property laws of the United States, any state, provincial, or local governmental unit.

5.7    Voided Checks; Request for Reissuance. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  Distributions in respect of voided checks shall be treated as unclaimed Distributions under Article VII.I of the Plan and administered under Article VII.J of the Plan and [Section 5.6] of this Agreement.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check within one hundred and twenty (120) days after first issuance thereof.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under [Section 5.6] of this Agreement. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and the Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance.

5.8    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the Liquidation Trust Beneficial Interests under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to

36

all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

5.8.1    The Trust may elect to make no payment or Distribution with respect to the Liquidation Trust Beneficial Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust nor the Trustee be liable for interest on any funds which may be so withheld.

5.8.2    The Trust shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trust, which agreement shall include a complete release of the Trust and the Trustee.  Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the Liquidation Trust Beneficial Interests, the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

37

5.8.3    In acting or refraining from acting under and in accordance with this [Section 5.8], the Trustee and the Liquidation Trust Board members shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

5.9    <u>De Minimis Distributions</u>. The Trustee shall not be required to make a distribution if the amount of Cash to be distributed is less than $100 to any one claimant in a single distribution. Any funds so withheld and not distributed shall be held in reserve and distributed to such claimant in subsequent distributions except if the aggregate distributions (including the final distribution) to be made by the Trust to such claimant is less than $100, in which case such amount shall be distributed in accordance with [Section 11.3] of this Agreement.

## ARTICLE VI

## BENEFICIARIES AND LIQUIDATION TRUST BENEFICIAL INTERESTS

6.1    <u>Ownership of Liquidation Trust Beneficial Interests Hereunder</u>.    Each Beneficiary shall own either a First Priority Liquidation Trust Beneficial Interest or a Second Priority Liquidation Trust Beneficial Interest which shall, subject to [Section 5.2] of this Agreement and the terms and conditions of the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

6.2    <u>Interest Beneficial Only</u>.    The ownership of a Liquidation Trust Beneficial Interest shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.3    <u>Issuance of Liquidation Trust Beneficial Interests</u>.    The aggregate number of Liquidation Trust Beneficial Interests that the Trust shall be authorized to issue consists of [●] First Priority Liquidation Trust Beneficial Interests and one (1) Second Priority Liquidation Trust Beneficial Interest, which amounts shall be subject to increase in order to satisfy any applicable legal or regulatory requirement. On the Effective Date, the Trustee shall issue, in accordance with

38

the Plan and in accordance with the ratio determined under the Plan, (i) First Priority Liquidation Trust Beneficial Interests to the Holders of Allowed Preferred Stock Interests and (ii) the Second Priority Liquidation Trust Beneficial Interest to Reorganized Silvergate.

6.4     No Issuance of Fractional Liquidation Trust Beneficial Interests.  No fractional Liquidation Trust Beneficial Interests will be issued or distributed by the Trust. Instead, the number of Liquidation Trust Beneficial Interests shall be rounded up or down as follows: (i) fractions less than one-half (1/2) shall be rounded to the next lower whole number and (ii) fractions equal to or greater than one-half (1/2) shall be rounded to the next higher whole number. The total number of Liquidation Trust Beneficial Interests to be distributed pursuant to this Agreement shall be adjusted as necessary to account for such rounding. No consideration shall be provided in lieu of fractional Liquidation Trust Beneficial Interests that are rounded down.

6.5     Evidence of First Priority Liquidation Trust Beneficial Interests.  The First Priority Liquidation Trust Beneficial Interests shall be transferable solely to the extent provided herein and subject to the provisions of applicable securities laws and only so long as the transferability of the First priority Liquidation Trust Beneficial Interests does not result in a reporting obligation under the Securities Exchange Act. The Trust will arrange for a CUSIP number to be issued for the First Priority Liquidation Trust Beneficial Interests. The First Priority Liquidation Trust Beneficial Interests will be issued in the form of global certificates (each, a "First Priority Global Certificate") only, registered in the name of DTC or its nominee (or the successor of either of them), and interests in the First Priority Global Certificates will be held only through participants (including securities brokers and dealers, banks, trust companies, clearing corporations, and other financial organizations) of DTC, as depositary; provided that such certification does not result in a reporting obligation under the Securities Exchange Act. The aggregate number of First Priority Liquidation

RLF1 34137607v.2

Trust Beneficial Interests issued may from time to time be increased, if required by any legal or regulatory requirements, by adjustments made on the records of the Trust and a corresponding increase in the number of First Priority Liquidation Trust Beneficial Interests evidenced by such First Priority Global Certificate (as shall be specified in the schedule included as part of the First Priority Global Certificate or the issuance of further First Priority Global Certificates in respect of such additional First Priority Liquidation Trust Beneficial Interests). First Priority Liquidation Trust Beneficial Interests will not be issued in definitive form, except in the limited circumstances described in Section [6.7] hereof. For so long as DTC serves as depositary for the First Priority Liquidation Trust Beneficial Interests, the Trust may rely on the information and records of DTC to make distributions and send communications to the holders of the First Priority Liquidation Trust Beneficial Interests and, in so doing, any persons participating in the management of the Trust, including the Trustee and the Liquidation Trust Board, shall be fully protected and incur no liability to any holder of First Priority Liquidation Trust Beneficial Interests, any Transferee (or purported Transferee) of such Liquidation Trust Beneficial Interests, or any other Person or Entity.

      6.6     <u>Evidence of Second Priority Liquidation Trust Beneficial Interest</u>. Second Priority Liquidation Trust Beneficial Interest shall be represented by an entry on a register (the "<u>Second Priority Register</u>") maintained, or caused by the Trust to be maintained, by a registrar engaged by the Trust for that purpose, on which the ownership of each Second Priority Liquidation Trust Beneficial Interest shall be recorded. Under no circumstances will the Second Priority Liquidation Trust Beneficial Interest be represented by certificates or any similar instrument. The Trust shall make Distributions in respect of Second Priority Liquidation Trust Beneficial Interest solely to the Persons in whose name the Second Priority Liquidation Trust Beneficial Interest is recorded on the Second Priority Register, and shall otherwise communicate exclusively with such Persons or

<div align="center">40</div>

their duly authorized representatives on any matter pertaining to the Second Priority Liquidation Trust Beneficial Interest.

6.7     Certificated First Priority Liquidation Trust Beneficial Interests.  If DTC is unwilling or unable to act, or to continue to act, as a depositary for the First Priority Liquidation Trust Beneficial Interests, the Trust shall either (i) issue First Priority Liquidation Trust Beneficial Interests in the form of certificates ("First Priority Certificated Liquidation Trust Beneficial Interests") or (ii) issue First Priority Liquidation Trust Beneficial Interests in uncertificated direct registration ("First Priority Direct Registration Liquidation Trust Beneficial Interests"); provided that if one or more First Priority Global Certificates representing the First Priority Liquidation Trust Beneficial Interests have previously been issued, the Trust shall exchange the First Priority Liquidation Trust Beneficial Interests represented by First Priority Global Certificate(s) for First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests. In such event, the Trust shall maintain, or cause to be maintained by a registrar and transfer agent engaged by the Trust for that purpose, a register (the "First Priority Register") on which the ownership of each First Priority Liquidation Trust Beneficial Interest shall be recorded, and on which the transfer of First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests shall be reflected. The Trust shall be entitled to treat the Person in whose name a First Priority Certificated Liquidation Trust Beneficial Interest or Direct Registration Trust Beneficial Interest is registered on the First Priority Register as the owner of such First Priority Certificated Liquidation Trust Beneficial Interest or Direct Registration Trust Beneficial Interest for all purposes, including the right to receive Distributions in respect thereof. The Trust shall also in such event establish or cause to be established customary procedures for the transfer and

41

RLF1 34137607v.2

exchange of First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests and the replacement of lost, stolen, or mutilated certificates representing Liquidation Trust Beneficial Interests.

6.8    **Manner of Distribution of First Priority Liquidation Trust Beneficial Interests.** If DTC is willing and able to act as depositary for the First Priority Liquidation Trust Beneficial Interests, the Trust shall issue such First Priority Liquidation Trust Beneficial Interests in accordance with the practices and procedures of DTC and its direct and indirect participants pursuant to the Plan. If DTC is unwilling or unable to act as a depositary for the First Priority Liquidation Trust Beneficial Interests, the Trust will institute appropriate procedures to obtain from the Beneficiaries the information required to issue the First Priority Liquidation Trust Beneficial Interests of record in their names. The Trust shall distribute the First Priority Liquidation Trust Beneficial Interests by recording First Priority Certificated Liquidation Trust Beneficial Interests or First Priority Direct Registration Liquidation Trust Beneficial Interests in the names of the persons entitled thereto as recorded on the First Priority Register and, in the case of First Priority Certificated Liquidation Trust Beneficial Interests, by issuing certificates representing such First Priority Certificated Liquidation Trust Beneficial Interests to such persons. Anything to the contrary in this Agreement notwithstanding, in no event will the Trust issue First Priority Liquidation Trust Beneficial Interests and/or Second Priority Liquidation Trust Beneficial Interest without the consent of the Liquidation Trust Board if (i) the total number of holders of record of First Priority Liquidation Trust Beneficial Interests and/or Second Priority Liquidation Trust Beneficial Interest would exceed one thousand nine hundred (1,900) in the aggregate or (ii) any such issuance could cause the Trust or any of its affiliates to be required to, or could reasonably be expected to create the risk of the Trust or any of its affiliates, as applicable, being required in

42

RLF1 34137607v.2

the reasonably near future to, have registration obligations under Section 12(g) of the United States Securities and Exchange Act of 1934 (in each case as determined in good faith by the Trust). For purposes of the preceding sentence, the determination of the number of holders of record of First Priority Liquidation Trust Beneficial Interests and/or the Second Priority Liquidation Trust Beneficial Interest shall be determined in accordance with Rule 12g5-1 under the Securities Exchange Act and any successor rule.

6.9     No Right to Accounting.  Except as otherwise provided in this Agreement,  neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trust or Trustee, and the Trust shall not be obligated to provide any accounting to any Person.

6.10     Transferability; Absence of Market for Liquidation Trust Beneficial Interests.  If and to the extent DTC continues to serve as depositary for the First Priority Liquidation Trust Beneficial Interests, the transferability of such First Priority Liquidation Trust Beneficial Interests shall also be subject to the requirements of DTC's electronic book-entry system.  If DTC is unwilling or unable to act or to continue to act, as a depositary for the First Priority Liquidation Trust Beneficial Interests, then in the event that any First Priority Liquidation Trust Beneficial Interests are presented for transfer, the Trust or its registrar and transfer agent may require evidence satisfactory to it in its discretion that the requested transfer complies with applicable securities law, including in appropriate cases an opinion of competent securities law counsel.  It is understood and agreed that the Second Priority Liquidation Trust Beneficial Interest shall be non-transferable, non-negotiable, and non-assignable, directly, or indirectly, during the term of this Agreement except by operation of law. Any attempt to transfer the Second Priority Liquidation Trust Beneficial Interest in violation of this Section shall be void ab initio and will not be recognized by

43

the Trust for any purposes. A transfer of a Second Priority Liquidation Trust Beneficial Interest is indirect if a transfer of such Second Priority Liquidation Trust Beneficial Interest is accomplished by the transfer, however accomplished, including by means of a merger or other business combination, of equity interests in a Person that directly or indirectly owns the Second Priority Liquidation Trust Beneficial Interest; provided, however, that an indirect transfer, assignment, or other disposition of a Second Priority Liquidation Trust Beneficial Interest by means of a transfer (including by means of a merger or other business combination) of equity interests in a Person that directly or indirectly owns such Second Priority Liquidation Trust Beneficial Interest shall not be deemed in violation of this Section if the Person whose equity interests are Transferred was not formed for the sole purpose of holding the Second Priority Liquidation Trust Beneficial Interest and owns, directly or indirectly, material assets other than the Second Priority Liquidation Trust Beneficial Interest and the purpose of such transfer is not to acquire such Second Priority Liquidation Trust Beneficial Interest. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation. The Liquidation Trust Beneficial Interests shall not be listed by the Trust on a national securities exchange or interdealer quotation system. Neither the Trust nor anyone acting on its behalf shall, directly or indirectly, engage in (i) any activity designed to facilitate or promote trading in the Liquidation Trust Beneficial Interests, including by placing advertisements, distributing marketing materials, or collecting or publishing information regarding prices at which the interests may be transferred or otherwise engage in any related market-making activities or (ii) any general solicitation or any

44

other activities that would require any Liquidation Trust Beneficial Interests to be registered under the Securities Act or any other applicable securities laws; provided that, for the avoidance of doubt, nothing shall prevent any securities professionals or other Persons from causing prices or trading activity of the Liquidation Trust Beneficial Interests to be quoted or otherwise reported so long as they are not acting in concert with the Trust or any agents of the Trust.

6.11    Exemption from Registration.    The exemption from registration under section 1145 of the Bankruptcy Code and applicable state and local laws requiring registration of securities are intended to be applicable to the rights of the Beneficiaries arising under this Agreement.  No party to this Agreement shall make a contrary or different contention.

6.12    No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets; provided, however, that, for the avoidance of doubt, this [Section 6.12] shall not prevent a Beneficiary from seeking any appropriate or necessary relief from the Bankruptcy Court with respect to the Plan, or the Ad Hoc Preferred Stockholder Group from seeking any appropriate or necessary relief from the Bankruptcy Court with respect to the Plan and its rights under this Agreement.

6.13    Requirement of Undertaking.  The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trust or Trustee for any action taken or omitted by it as Trust or Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this [Section 6.13] shall not apply to any suit by the Trust or the Trustee.

6.14    Limited Liability.  **NO PROVISION OF THIS AGREEMENT,  THE PLAN, OR THE CONFIRMATION ORDER, AND NO MERE ENUMERATION HEREIN OF THE RIGHTS OR PRIVILEGES OF ANY BENEFICIARY, SHALL GIVE RISE TO ANY LIABILITY OF SUCH BENEFICIARY SOLELY IN ITS CAPACITY AS SUCH, WHETHER SUCH LIABILITY IS ASSERTED BY THE DEBTORS' OR REORGANIZED SILVERGATE'S CREDITORS, SUCCESSORS, REPRESENTATIVES, EMPLOYEES, OR EQUITY INTERESTS, OR BY ANY OTHER PERSON. THE BENEFICIARIES ARE DEEMED TO RECEIVE THE TRUST ASSETS IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, THE PLAN, AND THE CONFIRMATION ORDER IN EXCHANGE FOR THEIR CLAIMS AS SET FORTH IN THE PLAN WITHOUT FURTHER OBLIGATION OR LIABILITY OF ANY KIND, BUT SUBJECT TO THE PROVISIONS OF THIS AGREEMENT.**

## ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1    Parties Dealing With the Trust. In the absence of actual knowledge to the contrary, any Person dealing with the Trust, the Trustee, or the Liquidation Trust Board shall be entitled to rely on the authority of the Trust, the Trustee, or the Liquidation Trust Board or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trust to inquire into the validity or expediency or propriety of any transaction by the Trust, the Trustee, or any agent of the Trustee.

7.2    Limitation of Trustee and Liquidation Trust Board Liability.  In exercising the rights granted herein, the Trustee shall exercise its best judgment in accordance with its fiduciary duties, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither

the Trustee nor any member of the Liquidation Trust Board, nor any of their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, nor any of such Person's successors and assigns, in each case, in their capacities as such, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan, the Confirmation Order, or this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. The Trust may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done on reasonable reliance on the advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, neither the Trust nor the Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Trust or the Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Persons and Entities dealing with the Trust or the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such Person or Entity in carrying out the terms of the Plan, the Confirmation Order, or this Agreement, and none of the Trust, the Trustee, or the Liquidation Trust Board shall have any personal obligation to satisfy such liability. In no event shall the Trustee or any member of the Liquidation Trust Board be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever,

<div align="center">47</div>

even if the Trustee or the Liquidation Trust Board has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trust and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Confirmation Order, and the Liquidation Trust Board shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

7.3     No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding [Section 7.2] of this Agreement shall be liable for the act or omission of any other Person identified in that section.

7.4     No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

7.5     No Liability for Good Faith Error of Judgment. Neither the Trust nor the Trustee shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order of the Bankruptcy Court that the Trust or the Trustee was grossly negligent.

7.6     Reliance by Trust on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trust and the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The Trust and the Trustee also may engage and consult with their respective legal counsel and other agents and advisors, and neither the Trust nor the Trustee shall be liable for any action taken, omitted, or suffered in good faith reliance upon the

48

advice of such counsel, agents, or advisors to the Trust or the Trustee to the extent permitted by law.

7.7     No Liability for Acts Approved by Bankruptcy Court.  The Trustee shall have the right (but not the obligation) at any time to seek an order from the Bankruptcy Court concerning the administration or disposition of the Trust and the Interests required to be administered by the Trust. Following the entry of any such order of the Bankruptcy Court, none of the Trust, the Trustee, nor the Liquidation Trust Board shall be liable for any act or omission expressly taken in accordance with, and not inconsistent with, any such order, and all such actions or omissions shall be deemed not to constitute fraud, gross negligence, or willful misconduct.

7.8     No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9     Indemnification.  The Trust shall indemnify the Liquidation Trust Board and the Trustee and their respective consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or

RLF1 34137607v.2

omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan, the Confirmation Order, or this Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct. In addition, the Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Trustee; or (iv) proceedings by or on behalf of any creditor. To the extent the Trust indemnifies and holds harmless any Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.

7.9.1   <u>Expense of Trust; Limitation on Source of Payment of Indemnification</u>.  All indemnification liabilities of the Trust under this [Section 7.9] shall be Liquidation Trust Expenses.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets.  None of the Trustee, the Liquidation Trust Board nor its members shall be personally liable for the payment of any Trust expense or claim or other

liability of the Trust, and no Person shall look to the Trustee, the Liquidation Trust Board or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall promptly pay an Indemnified Party all amounts subject to indemnification under this [Section 7.9] on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this [Section 7.9].

7.10    No Implied Obligations. The Trust or the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trust or the Trustee.

7.11    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this [Article VII] of this Agreement shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VIII

## TAX MATTERS

8.1    Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries, followed

51

by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their relevant Liquidation Trust Beneficial Interests. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

8.2    Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan, the Confirmation Order and this Agreement, the Trust shall file tax returns (including applicable state, local, and non-U.S. tax returns, if any) for the Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) except as otherwise required by applicable tax law.

8.3    Tax Treatment of Reserves for Disputed Claims. The Trustee may, in the Trustee's sole discretion, determine the best way to report for United States tax purposes with respect to any Disputed Claims Reserve, including (i) filing a tax election to treat any and all Disputed Claims Reserves and/or the Indemnification Reserve as a Disputed Ownership Fund ("DOF") or other separate entity within the meaning of Treasury Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity. If and to the extent an election is made to report any Disputed Claims Reserve and/or the Indemnification Reserve as a DOF, the Trust shall comply with U.S. federal and state tax reporting and tax compliance requirements of the DOF, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of U.S. federal and/or state income tax due.

8.3.1   [If an election is made to report the Disputed Claims Reserve and/or the Indemnification Reserve as a DOF or other separate entity, all parties (including the Debtors, Reorganized Silvergate, the Trust, the Trustee, the Indemnitees, and the Beneficiaries, as applicable) shall report for U.S. federal, state, and local income tax purposes consistently with the

52

foregoing. The Trust shall be responsible for payment, out of the Trust Assets, of any taxes imposed on the Trust or the Trust Assets, including the Disputed Claims Reserve and/or the Indemnification Reserve, as Liquidation Trust Expenses. In the event, and to the extent, any Cash retained on account of a Disputed Claim in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed Claims, the Trust may, through the Trustee's discretion, (a) sell any non-Cash assets relating to such Disputed Claim (including any assets distributable as a result of disallowance of such Disputed Claim) to pay such taxes or (b) to the extent that any non-Cash assets relating to such Claim are insufficient to pay such taxes, then from the Trust Assets.

8.4     Valuation of Trust Assets.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee, at the direction of and in consultation with the Liquidation Trust Board, shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

8.4.1   In the event that the Trust determines that it may be required to withhold from amounts distributable from the Trust pursuant to Sections [3.2.14 and 5.4] above, it shall endeavor to promptly notify the relevant Beneficiary.

8.4.2   Allocations of Trust taxable income among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if,

53

immediately prior to such deemed distribution, the Trust had distributed all its assets (valued at their tax book value) to the Holders of Liquidation Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust. Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Trust Assets. The tax book value of the Trust Assets for purposes of this [Section 8.4] shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

## ARTICLE IX

## LIQUIDATION TRUST BOARD

9.1    Appointment, Composition, and Governance of Liquidation Trust Board. As provided for in Article VI.F. of the Plan, the Liquidation Trust Board shall consist of a three-member board as set forth on **Exhibit A** to this Agreement. Two (2) members shall be appointed by the Ad Hoc Preferred Stockholder Group (the "AHG Board Members") and one (1) member shall be appointed by the Common Stock Sponsors (the "Common Stock Board Member").  Until such time as the Holders of Allowed Preferred Stock Interests have been paid the full Liquidation Preference Amount, the Ad Hoc Preferred Stockholder Group shall retain the sole right to replace any AHG Board Member upon such AHG Board Member's resignation, death, or removal and Reorganized Silvergate shall retain the sole right to replace the Common Stock Board Member upon such Common Stock Board Member's resignation, death, or removal; provided, however, if at any time prior to the date on which the Holders of Allowed Preferred Stock Interests have been paid the full Liquidation Preference Amount the Liquidation Trust Board consists of only one (1) AHG Board Member, such member's vote shall count as two (2) votes.

54

9.1.1    Any decision or act or omission under the Plan, the Confirmation Order, or this Agreement requiring the determination, vote, consent or other approval of the Liquidation Trust Board shall be determined, voted, consented, or otherwise approved by a majority of the members of the Liquidation Trust Board, and no matters under the Plan, this Agreement or otherwise shall require a special vote, the consent or other approval of the full Liquidation Trust Board, or any approval of the holders of Liquidation Trust Beneficial Interests.

9.1.2    After Holders of Allowed Preferred Stock Interests have been paid the Liquidation Preference Amount, Reorganized Silvergate shall have the right to select the entire Liquidation Trust Board.

9.2    <u>Authority and Responsibilities of Liquidation Trust Board</u>.  The members of the Liquidation Trust Board shall not individually owe any fiduciary duties to the Trust or the Beneficiaries. Upon its formation, the duties of the Liquidation Trust Board, which shall be consistent with those of an "Oversight Committee", will include:

(a)    overseeing the Claims reconciliation and settlement process conducted by or on behalf of the Trustee;

(b)    overseeing the distributions to the Holders of Allowed Claims and Liquidation Trust Beneficiaries under the Plan;

(c)    overseeing the issuance of the First Priority Liquidation Trust Beneficial Interests and the Second Priority Liquidation Trust Beneficial Interest;

(d)    selecting, in consultation with the Trustee, professionals to prosecute the Liquidation Trust Retained Causes of Action;

(e)    overseeing the liquidation, prosecution, settlement, and/or collection of the Liquidation Trust Retained Causes of Action;

RLF1 34137607v.2

(f) overseeing the Trustee's right and power to enter into any covenants or agreements binding the Trust, and the execution, acknowledgement and delivery of any and all instruments that are necessary or deemed by the Trustee to be reasonable and advisable in furthering the purpose of the Trust;

(g) overseeing the retention of attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors or the Ad Hoc Preferred Stockholder Group;

(h) overseeing the Trustee;

(i) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above limited duties; and

(j) such other matters as may be agreed on between the Trustee and the Liquidation Trust Board or specified in the Plan or this Agreement, including without limitation all matters requiring the oversight, vote, consent, or approval of the Liquidation Trust Board as set forth more fully herein.

9.3    Resignation of Liquidation Trust Board Members.    Any member of the Liquidation Trust Board may resign upon reasonable notice to the Trustee, counsel for the Trustee, and other members of the Liquidation Trust Board. Fourteen (14) days' prior written notice shall constitute reasonable notice under this [Section 9.3]. Any member of the Liquidation Trust Board may be removed by order of the Bankruptcy Court for cause.  The Liquidation Trust Board may

authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded. Unless earlier dissolved in accordance with the Plan, the Liquidation Trust Board shall be automatically dissolved on the date the Debtors' Chapter 11 Cases are closed.

9.4     Payment of Fees and Expenses.  The Liquidation Trust Board members shall not be entitled to compensation. The Trustee shall pay from the Trust Assets the reasonable and documented out-of-pocket expenses of the members of the Liquidation Trust Board incurred solely in connection with their role as a Liquidation Trust Board member, and not in their individual capacity.  For the avoidance of doubt, attorneys' fees incurred by a Liquidation Trust Board member, including, but not limited to, attendance at any meetings of the Liquidation Trust Board, shall not be paid out of the Trust Assets pursuant to this [Section  9.4], except and solely to the extent such attorney fees are incurred by such Liquidating Trust Board member in defense of any lawsuit or investigation commenced against such Liquidating Trust Board member on the basis of allegations of wrongful or improper acts or omissions by the Trust, Trustee, Liquidating Trust Board or by the Liquidating Trust Board member himself or herself in fulfilling his or her duties as such.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this [Section 9.4].

9.5     Confidentiality. Each member of the Liquidation Trust Board shall, during the period that such member serves as a member under this Agreement and following the termination of this Agreement or following such member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity or Person to which any of the Trust Assets relates or of which such member has become aware in the member's capacity as a member of the Liquidation Trust Board, except as otherwise required by law; provided that, for the avoidance of doubt, no such restriction shall apply to any information

that has been made public or otherwise disclosed in accordance with Section [3.12] of this Agreement.

## ARTICLE X

### SELECTION, REMOVAL, REPLACEMENT
### AND COMPENSATION OF TRUSTEE

10.1    <u>Initial Trustee</u>.  Matthew Dundon shall be appointed as the initial Trustee.

10.2    <u>Term of Service</u>. The Trustee shall serve until the earliest of (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination and dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VII of this Agreement shall survive the resignation or removal of any Trustee.

10.3    <u>Removal of Trustee</u>.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this [Section 10.3].

10.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the Liquidation Trust Board, the U.S. Trustee, and the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is sixty (60) days after the date such notice is filed with the Bankruptcy Court and served on the Liquidation Trust Board members, the Ad Hoc Preferred Stockholder Group, Reorganized Silvergate, and the U.S. Trustee. In the event of a resignation, the resigning Trustee shall render to the Liquidation

Trust Board and the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

10.5     Appointment of Successor Trustee.  Upon the resignation, death, or removal of the Trustee, the AHG Appointees shall in consultation with the Common Stockholder Appointee appoint a successor Trustee upon notice to the Bankruptcy Court; provided, however, if, upon the resignation, death, or removal of the Trustee, the Holders of Preferred Stock Interests have been paid the full Liquidation Preference Amount, then the Liquidation Trust Board shall appoint the successor Trustee upon notice to the Bankruptcy Court. Any party in interest (including, in the case of resignation, the Trustee) may file an objection in the Bankruptcy Court if they object to the appointment of the successor Trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (a) shall consent to and accept his, her, or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

10.6     Powers and Duties of Successor Trustee.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and the Confirmation Order.

10.7     Trust Continuance.  The resignation, death, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

10.8     Compensation of Trustee and Costs of Administration.  The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against and solely paid out of the Trust Assets as a Liquidation Trust Expense. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trust or the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets as a Liquidation Trust Expense prior to any Distribution to holders of Allowed Interests.  The terms of the compensation of the Trustee are set forth on **Exhibit B** hereto. The compensation of the Trustee shall not be modified absent the written approval of the AHG Board Members.

10.9     Appointment of Supplemental Trustee. If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a disinterested Person duly qualified to act as trustee (the "Supplemental Trustee") solely with respect to such conflict, or in such state or jurisdiction, which Supplemental Trustee shall be reasonably acceptable to the Liquidation Trust Board, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion. In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so. The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges, and duties of the Trustee hereunder, subject to the conditions and limitations of the Plan, the Confirmation Order and this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental

60

Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets, and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

10.10 <u>No Fiduciary Duties</u>. To the fullest extent permitted by applicable law and notwithstanding any other provision of this Agreement or any other agreement contemplated herein or applicable provisions of law or equity or otherwise, the Parties hereby agree and hereby eliminate any and all duties (including fiduciary duties) of the members of the Liquidation Trust Board to the Trust or to any other member of the Liquidation Trust Board or any Beneficiary and hereby agree that the members of the Liquidation Trust Board shall not have any duty (including any fiduciary duty) to the Trust or to any other member of the Liquidation Trust Board or Beneficiary that would otherwise apply at law or in equity; <u>provided</u> that (a) the foregoing shall not eliminate the obligation of the members of the Liquidation Trust Board to act in compliance with the express terms of this Agreement, and (b) the foregoing shall not be deemed to eliminate any bad faith violation of the implied contractual covenant of good faith and fair dealing. The Trust and each of the Beneficiaries expressly intend, acknowledge, and agree that the members of Liquidation Trust Board are not under any obligation to consider the separate interests of the Trust or any other member of the Liquidation Trust Board or Beneficiary in deciding whether to take or approve (or decline to take or approve) any actions, and that the members of the Liquidation Trust Board shall not be liable, at law or in equity, for any losses sustained, liabilities incurred or benefits

61

not derived by the Trust or any other member of the Liquidation Trust Board or any Beneficiary or any other Person in connection with such decisions.  The members of the Liquidation Trust Board acting under this Agreement shall not be liable to the Trust or to any other member of the Liquidation Trust Board or any Beneficiary for their good faith reliance on the provisions of this Agreement.

## ARTICLE XI

## DURATION OF TRUST

11.1    Duration.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated in accordance with the terms hereof.

11.2    Termination on Payment of Trust Expenses and Distribution of Trust Assets.  Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall automatically dissolve and the Trustee shall have no further responsibility in connection therewith except (a) as may be required to effectuate termination under relevant law, and (b) in furtherance of residual wind up efforts in accordance with [Section 11.5] of this Agreement, and thereafter terminate.

11.3    Termination after Five Years Unless Extended.  If the Trust has not been previously terminated pursuant to [Section 11.2] hereof, on the fifth (5th) anniversary of the Effective Date, the Trust shall terminate and dissolve unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth (5th) anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue

Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation and distribution of, the Trust Assets. Upon such termination, the Trust shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in [Section 11.5] of this Agreement.

11.4     No Termination by Beneficiaries.  The Trust may not be terminated and dissolved at any time by the Beneficiaries.

11.5     Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  In connection with the foregoing, upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trust, the Trustee, and the Trust and Trustee's employees, professionals, and agents of any further duties, discharging and releasing the Trustee and its employees, professionals, and agents from all liability related to the Trust.

**ARTICLE XII**

**MISCELLANEOUS**

12.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

63

RLF1 34137607v.2

12.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trustee. Notwithstanding the foregoing, all notices required or permitted to be given under this Agreement to the Ad Hoc Preferred Stockholder Group shall be in writing and shall be sent by email and, provided notice is given by email, also may be delivered personally or sent by overnight courier, in each case, addressed as follows below. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by email, registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> Matthew Dundon, Trustee
> Silvergate Liquidation Trust
> [Ten Bank Street, Suite 1100]
> [White Plains NY 10606]
> Email: md@dundon.com
>
> with a copy to counsel:
>
> [●]
> [●]
> [●]
> [●]
> Attn:    [●]
> Email: [●]
>
> If to the Ad Hoc Preferred Stockholder Group:
>
> [●]
> [●]
> [●]
> [●]
> Attn:    [●]
> Email: [●]

or to such other address as may from time to time be provided in written notice by the Trustee.

<p align="center">64</p>

12.3     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

12.4     Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

12.5     Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.6     Execution.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

12.7     Amendment. This Agreement may be amended by written agreement of the Trustee, with the consent of the Liquidation Trust Board and with notice to the Bankruptcy Court; provided, however, that such amendment may not be inconsistent with the Plan, or the Confirmation Order. No amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the interests, rights or treatment of the Beneficiaries, (b) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order, or this Agreement, (c) adversely affect the U.S. federal income tax status of the Trust as a "liquidating trust"; or (d) be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulation section

65

301.7701-4(d).  No failure by the Trust, the Trustee, or the Liquidation Trust Board to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

12.8    No Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

12.9    No Relationship Created.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

12.10    Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.11    Further Assurances.   The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and the Confirmation Order, and to consummate the transactions contemplated hereby.

12.12    Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

66

RLF1 34137607v.2

12.13   Limitations. Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the Parties any rights or remedies under or by reason of this Agreement. The Parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies, or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

12.14   Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Trust, the Trustee, the Liquidation Trust Board, and the Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

68

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

Silvergate Capital Corporation and its Debtor Affiliates

By: _____

Name: _____

Title: _____


Matthew Dundon, acting hereunder not individually, but solely in its capacity as Trustee under this Agreement

By: _____

Name: _____

Title: _____

68

## Exhibit A

### Liquidation Trust Board Members

1.    Representative from the Ad Hoc Preferred Stockholder Group – Michael Renoff
2.    Representative from the Ad Hoc Preferred Stockholder Group – Steven Robinson
3.    Representative from Common Stock Sponsors – Allan W. Gustin, Esq.

RLF1 34137607v.2

## **Exhibit B**

### **Trustee Compensation Structure**

The Trustee shall receive a base monthly fee of $10,000 per month.

The Trustee shall additionally receive a fee of 1% of all funds otherwise distributable to Beneficiaries after $25 million has been distributed to Beneficiaries, and an additional fee of 2% of all funds otherwise distributable to Beneficiaries after $50 million has been distributed to beneficiaries, provided, however that such percentage fees shall be reduced by one half of the base monthly fees actually paid in the thirteenth to twenty-fourth months of the life of the Trust, and by the entire amount of monthly fees actually paid, if any, in the twenty-fifth and subsequent months of the life of the Trust

Should and for so long as the Liquidating Trust Board consents to the Trust's retention of Dundon Advisers LLC as financial adviser to the Trust and Matthew Dundon is the Trustee, he shall cause Dundon Advisers LLC to furnish the Trust office facilities and administrative assistance support at a 100% discount from otherwise applicable charges or fees and professional services at a 30% discount from its then-applicable standard rates.

RLF1 34137607v.2

71

**Exhibit C**

**Business Records Access Agreement**

**BUSINESS RECORDS ACCESS AGREEMENT**

This Business Records Access Agreement (the "Agreement"), dated as of [●], is made by and among Reorganized Silvergate Capital Corporation and its affiliates (collectively, "Reorganized Silvergate") and the Liquidation Trust (the "Trust" and together with Reorganized Silvergate, each, a "Party" and collectively, the "Parties") formed under that certain Liquidation Trust Agreement dated as of [●] (the "Liquidation Trust Agreement").

**RECITALS**

A.    On September 17, 2024, Silvergate Capital Corporation and each of its affiliates, as debtors and debtors-in-possession (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under the caption *In re Silvergate Capital Corporation, et al.*, Case No. 24-12518 (KBO) (the "Chapter 11 Cases").

B.    On June 24, 2025, the Debtors filed the *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 810] (as amended or otherwise modified from time to time, including all supplements, schedules, exhibits, and annexes thereto, the "Plan")[1] and the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 811] related thereto.

C.    On [●], 2025, the Bankruptcy Court entered an order [Docket No. [●]]

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings afforded such terms in the Plan or Liquidation Trust Agreement, as applicable.

RLF1 34137607v.2

("Confirmation Order") confirming the Plan, which will become effective once all conditions set forth in Article XI of the Plan have been satisfied or waived pursuant to the terms of the Plan ("Effective Date").

D.      Article VI of the Plan provides for the establishment of the Trust on the Effective Date.

E.      The Plan also provides for the transfer of the Liquidation Trust Assets, which include the Debtors' books and records, from the Debtors to the Trust and the retention of the Reorganized Silvergate Assets by Reorganized Silvergate.

F.      Article V of the Plan contemplates that Reorganized Silvergate shall have rights of access to the Debtors' books and records being transferred to the Trust.

G.      The Parties desire to set forth the terms and conditions regarding Reorganized Silvergate's right to access the Debtors' books and records and the maintenance and preservation of existing confidentiality and privileges.

NOW, THEREFORE, in accordance with the Plan, the Confirmation Order, the Liquidation Trust Agreement, and in consideration of the promises and the mutual covenants and agreements contained in the Plan, the Confirmation Order, the Liquidation Trust Agreement, and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree as follows:

## 1.  ACCESS TO BUSINESS RECORDS

1.1.    After the Effective Date, the Trust shall maintain all the Debtors' books and records that are in the control or the possession of the Trust with respect to time periods prior to the Effective Date that are among the Liquidation Trust Assets (collectively, the "Business Records") in accordance with the terms of the Plan and the Liquidation Trust Agreement.  After the Effective

73

Date, the Trust shall provide Reorganized Silvergate and its professionals (collectively, the "Permitted Parties") reasonable access to the Business Records.

1.2. At any time that Reorganized Silvergate seeks access pursuant to Section 1.1, Reorganized Silvergate shall make a contemporaneous request to the Trust and the Trust's outside vendor(s) in possession of the Business Records (the "Business Record Vendor"). The right of reasonable access for the Permitted Parties shall include, without limitation, communicating with the Business Record Vendor to obtain copies of Business Records requested by Reorganized Silvergate. The Business Records Vendor shall maintain a log of Business Records provided to Reorganized Silvergate. Reorganized Silvergate shall pay the fees and expenses of the Business Records Vendor in connection with providing copies of Business Records and any services requested by Reorganized Silvergate in connection therewith or otherwise.

1.3. The Trust agrees to provide Reorganized Silvergate with thirty (30) days advance notice of any intention to delete or destroy any Business Record to afford Reorganized Silvergate the opportunity, but not the obligation, to obtain copies of such Business Records; provided that nothing herein shall require the Trust to retain or otherwise preserve any Business Records beyond the periods or requirements set forth in the Data Protections and Production Obligations.

## 2. PRIVILEGE MATTERS

2.1. Any applicable attorney-client privileges, common-interest or joint-defense privileges, work product protections and other privileges, immunities or protections from disclosure (the "Privileges") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors) that relate in any way to the Liquidation Trust Assets or the Reorganized Silvergate Assets shall continue to apply to, and be transferred to, the Business

74

Records, including documents and information of all manner contained therein, whether oral, written, or digital, and whether or not previously disclosed or discussed (collectively, the "Privileged Business Records"). Such Privileges shall be jointly held by both the Trust and Reorganized Silvergate with respect to the Privileged Business Records. For the avoidance of doubt and notwithstanding anything to the contrary herein, Confidential Supervisory Information (as defined in 12 C.F.R. § 261.2) shall remain subject to the rights and privileges of applicable regulators and nothing herein shall authorize the disclosure of any Confidential Supervisory Information absent applicable regulatory approval or otherwise in accordance with applicable non-bankruptcy law.

2.2. Neither Party may waive, disclose, or otherwise impair such jointly held Privileges without the other Party's prior written consent or an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Any purported unilateral waiver shall be null and void.

2.3. Inadvertent disclosure or production of any Privileged Business Records shall not constitute a waiver of any Privileges. Upon discovery of such inadvertent disclosure, Reorganized Silvergate and/or the Trust must be made aware promptly, and any additional receiving parties shall return or destroy those Privileged Business Records in accordance with any applicable protective orders, confidentiality agreements, or rules.

2.4. To avoid unnecessary disputes, the Parties agree to work cooperatively to determine if a Privileged Business Record primarily relates to (i) Reorganized Silvergate Assets, in which case the Privilege shall be determined to primarily reside with Reorganized Silvergate; or (ii) the Liquidation Trust Assets, in which case the Privilege shall primarily reside with the Trust. The purpose of this allocation is to afford more discretion in the meet-and-confer process to the Party

75

whose claims or assets the Privileged Business Record implicates the most should a dispute concerning disclosure or waiver arise.  In the event the Parties determine the Privileged Business Record implicates both categories or is otherwise ambiguous as to its primary subject matter, the Parties shall endeavor to work together to coordinate any use, disclosure, or assertion of privilege to ensure consistent and protected treatment of such materials.

### 3.  CONFIDENTIALITY

3.1.    The Parties agree to treat all Business Records as strictly confidential in a manner no less secure than it safekeeps its own confidential and proprietary information, but in no event less than a reasonable degree of care, provided, however, a Business Record shall not be deemed confidential to the extent that it (a) is or becomes publicly available other than as a result of a disclosure by a Party or its representatives; or (b) is or becomes available to a Party or its representatives from a source (other than a Party or its representatives providing the information), provided such source is not known, after reasonable inquiry, to be bound by a confidentiality agreement or otherwise prohibited from disclosing such information by a legal, contractual or fiduciary obligation.

3.2.    Such "Confidential" Business Records (and any and all information contained therein), may be given, shown, made available or communicated to the following:

(a)    parties to a litigation (and their respective officers, directors, employees, and authorized representatives);

(b)    counsel or professionals representing a Party, and their support personnel;

(c)    any person who is indicated on the face of a document to have been an author, addressee or recipient thereof;

(d)    court reporters, stenographers, or videographers who record testimony in connection with the litigation;

76

(e)   the Court or the court overseeing any litigation where the Business Record is implicated, including its personnel;

(f)   witnesses being questioned, either at a deposition, through other discovery requests, or in court proceedings, and the witness's counsel, to the extent that such disclosure is reasonably necessary for the proceedings or the resolution of the litigation;

(g)   any party that executes a confidentiality agreement that agrees to maintain the confidential nature of the Business Record, along with its counsel, professionals, and support personnel; or

(h)   any person or entity to whom the Parties consent, which consent shall not be unreasonably withheld.

## 4.   LITIGATION MATTERS

4.1.    In connection with the use or disclosure of Business Records in litigation matters, the Parties agree to meet and confer on matters of confidentiality and privilege in advance of the production of any Business Record in any dispute.  Such meet and confer should occur as early as possible in connection with any document request or document production.

4.2.    To avoid potential inadvertent disclosure, unless otherwise agreed or ordered by a court, the Parties will exclude from any outgoing productions any categories of documents considered to be "presumptively privileged."   These documents shall consist of: (a) communications solely among attorneys representing the Debtors (whether inside or outside counsel) ("Counsel"), (b) communications solely between Counsel and professionals retained by the Debtors to assist in the provision of legal advice, and (c) communications solely between Counsel and the Debtors.

4.3.    A Party may determine, in good faith, that certain Business Records contain highly sensitive commercial, financial, or personal information that should be subject to more limited disclosure to third parties on a "Professionals' Eyes Only" basis in litigation matters.  In such event, the designating Party shall notify the other Party, and the Parties shall promptly confer in

77

good faith regarding the appropriate handling and disclosure limitations for such Business Records.

4.4. Each Party shall, in its good-faith discretion and in the spirit of this Agreement, take appropriate steps to redact or file under seal any portions of pleadings, motions, or other filings that contain or reference sensitive or "Confidential" information, so as to protect such information consistent with the confidentiality and privilege provisions herein.

## 5. DISPUTE RESOLUTION

5.1. The Bankruptcy Court will retain jurisdiction over any dispute regarding this Agreement and the Business Records. In the event the Parties are unable to reach agreement through the meet-and-confer process, they shall meet and confer regarding a proposed schedule for resolving the dispute, and each Party shall simultaneously file a letter, not to exceed five (5) pages, setting forth its respective position for determination by the Bankruptcy Court.

## 6. GENERAL PROVISIONS

6.1. Governing Law. The validity, performance, construction and effect of this Agreement will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to principles of conflicts of law, and all Parties hereto, including their successors and assigns, consent to the jurisdiction of the state and federal courts of Delaware.

6.2. Waiver. Compliance with the provisions of this Agreement may be waived only by a written instrument specifically referring to this Agreement and signed by the Party waiving compliance. No course of dealing, nor any failure or delay in exercising any right, will be construed as a waiver, and no single or partial exercise of a right will preclude any other or further exercise of that or any other right.

RLF1 34137607v.2

6.3.    <u>Entire Agreement</u>.  This Agreement, together with the Plan, Confirmation Order, Liquidation Trust Agreement, and the other documents and agreements referenced herein and therein, (a) sets forth the entire understanding of the Parties hereto with respect to the subject matter hereof and thereof and (b) supersedes any and all previous agreements and understanding between or among the Parties hereto regarding the subject matter hereof or thereof, whether written or oral.

6.4.    <u>No Assignment</u>.  The rights and obligations of the Parties hereto under this Agreement may not be assigned without the prior written consent of the other Parties hereto.

6.5.    <u>Severability; Validity</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless doing so would alter the fundamental agreements expressed in this Agreement.  To such end, the provisions of this Agreement are agreed to be severable.

6.6.    <u>No Partnership Agreement</u>.  Nothing contained in this Agreement shall create or be deemed to create an employment, agency, fiduciary, joint venture, or partnership relationship between any of the Parties.

6.7.    <u>No Conflicts Agreement</u>.  Nothing contained in this Agreement shall create or be deemed to create any attorney-client relationship for purposes of the determination of conflicts of interest.  Neither the existence of this Agreement, nor its terms, nor information obtained hereunder, shall be asserted by any Party as grounds for a motion to disqualify any Party to this Agreement or its attorneys in any proceeding that may occur.

80

6.8.    <u>No Third-Party Beneficiaries</u>.  This Agreement is not intended to benefit or create rights in any other person or entity other than the Trust and Reorganized Silvergate.

6.9.    <u>Headings; Counterparts and Delivery</u>.  The headings in this Agreement are for convenience of reference only and will not constitute a part of this Agreement, nor will they affect the meaning, construction or effect of this Agreement.  This Agreement may be executed in separate counterparts, each of which when so executed will be deemed to be an original, and all of which taken together will constitute one and the same instrument.  Delivery of an executed signature page to this Agreement by facsimile or other electronic transmission (including, without limitation, documents in Adobe PDF format) will be effective as delivery of a manually executed counterpart to this Agreement.

[*Signatures on following page*]

80

81

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement, or caused

this Agreement to be executed, as of the Effective Date.

LIQUIDATION TRUST:

_____

By: _____
    Name:
    Title:

SILVERGATE CAPITAL CORPORATION:

_____

By: _____
    Name:
    Title:

RLF1 34137607v.2

**Exhibit H**

**Schedule of Retained Causes of Action**

RLF1 34001349v.1

## Schedule of Retained Causes of Action[1]

This Schedule of Retained Causes of Action (this "Schedule") comprises part of the Plan Supplement.

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. For avoidance of doubt, the Debtors have not retained any Causes of Action against the Indemnified Individuals or the Underwriters *provided* that any such release of Causes of Action against the Indemnified Individuals or the Underwriters shall not affect and not be a waiver of any rights in connection with the Indemnification Procedures.

On and after the Effective Date, the Liquidation Trustee shall have sole and exclusive discretion to pursue, prosecute, settle, and/or dispose of any Liquidation Trust Retained Causes of Action. All of the Liquidation Trust Retained Causes of Action shall vest in the Liquidation Trust as provided for in the Plan and the Liquidation Trustee may pursue any Liquidation Trust Retained Causes of Action in its sole discretion. A non-exclusive list of the categories of the Liquidation Trust Retained Causes of Action is set forth on Schedule I.

On and after the Effective Date, Reorganized Silvergate shall have sole and exclusive discretion to pursue and dispose of any Reorganized Silvergate Retained Causes of Action that are or become Reorganized Silvergate Assets, and all Claims and Causes of Action that are or become Reorganized Silvergate Assets shall vest in Reorganized Silvergate as provided for in the Plan and Reorganized Silvergate may pursue any Reorganized Silvergate Retained Causes of Action that are or become Reorganized Silvergate Assets in its sole discretion. An exclusive list of the categories of Reorganized Silvergate Retained Causes of Action is set forth on Schedule II.

Without limiting the generality of the foregoing, this Schedule describes the categories of Causes of Action of the Debtors and/or their Estates to be retained by either the Liquidation Trust or Reorganized Silvergate, as applicable, as of the Effective Date pursuant to the Plan. This Schedule does not limit or narrow the scope of the Liquidation Trust Retained Causes of Action or the Reorganized Silvergate Retained Causes of Action under the Plan. This Schedule is intended to provide further information and explanation to parties in interest of the Causes of Action of the Debtors (pre-Effective Date), and the Liquidation Trust (post-Effective Date) and Reorganized Silvergate (post-Effective Date), as applicable. **The Debtors and/or their Estates expressly reserve the right to alter, modify, amend, remove, augment, or supplement this Schedule at**

---

[1] Capitalized terms used but not defined herein have the meaning assigned to them in the *First Amended Joint Chapter 11 Plan of Silvergate Capital Corporation and Its Affiliated Debtors* [Docket No. 969] (as may be amended, modified, and/or supplemented, the "Plan").

2

any time in accordance with the terms of the Plan.  Any such modification will be set forth in an amended Plan Supplement.

RLF1 33892339v.7

## Schedule I

### Liquidation Trust Retained Causes of Action

Consistent with the foregoing, the following is a non-exclusive list of the categories of the Liquidation Trust Retained Causes of Action:

1.  any and all Causes of Action against any of the following parties;

    a.  Verafin, Inc and their Affiliates. – including without limitation any and all Causes of Action arising out of, under or related to the Debtors' engagement of Verafin, Inc and their Affiliates and any and all acts or omissions by Verafin, Inc and their Affiliates in connection therewith, or any other relationship with the Debtors including but not limited to BSA/AML compliance and/or financial performance;

    b.  RSM US LLP and their Affiliates – including without limitation any and all Causes of Action arising out of, under or related to the Debtors' engagement of RSM US LLP and their Affiliates and any and all acts or omissions by RSM US LLP and their Affiliates in connection therewith or any other relationship with the Debtors including but not limited to BSA/AML compliance and/or financial performance;

    c.  Crowe LLP and their Affiliates – including without limitation any and all Causes of Action arising out of, under or related to the Debtors' engagement of Crowe LLP and their Affiliates and any and all acts or omissions by Crowe LLP and their Affiliates in connection therewith or any other relationship with the Debtors, including but not limited to BSA/AML compliance and/or financial performance;

    d.  FTX Trading Ltd, each of its debtor affiliates identified in FTX's jointly administered chapter 11 cases pending under the caption *In re FTX Trading Ltd.*, Case No. 22-11068 (KBO)), and any of their respective affiliates – including without limitation any and all Causes of Action arising out of, under or related to claims asserted in the Debtors' proofs of claim filed in FTX's jointly administered chapter 11 cases;

    e.  Short sellers of Silvergate Capital Corporation Stock, including but not limited to, Marc Cohodes – including without limitation any and all Causes of Action arising out of, under or related to defamatory or misleading public statements about the Debtors; and

    f.  Insurers under any Insurance Policies.

2.  any and all Causes of Action against any of the parties identified in the Debtors' Schedules;

3.  any and all Causes of Action against any service providers, consultants, accountants, auditors, advisors, or other similar professionals that provided services to the Debtors prior to the Petition Date (other than those retained by the Debtors in connection with these

Chapter 11 Cases, except as expressly identified herein), arising out of, under or related to the Debtors' engagement of, or services provided by, such parties, including but not limited to BSA/AML compliance and/or financial performance, including but not limited to any and all Causes of Action against the following parties:

    a. AuditOne, LLC

    b. Grant Thronton LLP

    c. KPMG LLP

    d. K2 Integrity

4. any and all Causes of Action based in whole or in part upon any and all insurance contracts, Insurance Policies, occurrence and claims made policies, occurrence and claims made contracts, and similar agreements to which any Debtor is or was a party or pursuant to which any Debtor has any rights whatsoever, including, without limitation, Causes of Action related to or against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, indemnity, contribution, reimbursement, or any other matters;

5. any and all Causes of Action that the Debtors and/or their Estates hold or may hold against any party that is or may in the future become party to litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, or judicial or non-judicial;

6. any and all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit of collateral;

7. any and all Causes of Action based in whole or in part upon any and all liens regardless of whether any such lien is specifically identified in the Plan, this Plan Supplement, or any amendments thereto;

8. any and all Causes of Action based in whole or in part upon any and all contracts, leases or other agreements to which any of the Debtors and/or their Estates are, or at one time were, a party or pursuant to which the Debtors and/or their Estates have any rights whatsoever (regardless of whether such contracts, leases or other agreements are Executory Contracts);

9. any and all Causes of Action based in whole or in part upon any State Income Tax Receivables;

4

10. any and all Causes of Action related to all Persons that owe money to the Debtors and/or their Estates, and any and all Causes of Action related to all Persons that assert that the Debtors and/or their Estates owe money to such Persons;

11. any and all Causes of Action in connection with asserting any objection to or exercising the right to object to any disputed, contingent, or unliquidated Claim that has been scheduled by the Debtors on their Schedules or for which a Proof of Claim has been filed and that in each case has not been Allowed pursuant to a prior Order of the Bankruptcy Court or pursuant to the Plan, including without limitation all Disputed Claims, and including all of the Debtors' defenses, counterclaims, whether arising in law or equity, and claims for payment of fees and expenses in connection therewith;

12. any and all Avoidance Actions and/or other Causes of Action that the Debtors and/or their Estates could assert against any Person under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related state, federal, or foreign statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action;

13. any and all Causes of Action against any Person that owed any legal duty, no matter how arising, to any Debtor;

14. any and all Causes of Action based in whole or in part upon any criminal liability, and the civil, pecuniary and or any other kind of actions that may arise thereof; and

15. any and all defenses relating to the foregoing.

For the avoidance of doubt, if a Cause of Action against a Governmental Unit or any regulator (other than with respect to the State Income Tax Receivables) falls within a description on Schedule I, such Cause of Action as against such Governmental Unit or regulator (other than with respect to the State Income Tax Receivables) is exclusively a Reorganized Silvergate Retained Cause of Action as set forth on Schedule II.

No Causes of Action settled pursuant to Bankruptcy Rule 9019 or otherwise against any Released Party or Exculpated Party that are released or exculpated, as applicable, under the Plan shall be transferred to the Liquidation Trust as of the Effective Date unless such party has been expressly identified herein.

**No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Plan Supplement (including this Schedule), or the Disclosure Statement to any Liquidation Trust Retained Cause of Action against it as any indication that the Liquidation**

RLF1 33892339v.7

**Trust will not, or may not, pursue any and all available Liquidation Trust Retained Causes of Action against it.  The Liquidation Trust expressly reserves all rights to prosecute the Liquidation Trust Retained Causes of Action against any Person**.  All Liquidation Trust Retained Causes of Action shall be expressly reserved for later adjudication by the Liquidation Trust, as determined in the Liquidation Trust's discretion, (including, without limitation, any Liquidation Trust Retained Causes of Action not specifically identified or described in the Plan Supplement (including this Schedule) or elsewhere or of which the Liquidation Trust may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Liquidation Trust at this time or facts or circumstances which may change or be different from those the Liquidation Trust now believe to exist), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Liquidation Trust Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order.  In addition, the Liquidation Trust expressly reserves the right to pursue or adopt any Liquidation Trust Retained Causes of Action alleged in any lawsuit in which the Liquidation Trust is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

RLF1 33892339v.7

## Schedule II

### Reorganized Silvergate Retained Causes of Action

Consistent with the foregoing, the following is an exclusive list of the categories of the Reorganized Silvergate Retained Causes of Action:

1. any and all Claims and Causes of Action against Governmental Units and any regulator other than the State Income Tax Receivables.

Notwithstanding anything to the contrary herein, including the foregoing, no Causes of Action, including any listed in this Schedule, that are released or exculpated pursuant to the Plan, including pursuant to Article IX of the Plan, or settled pursuant to Bankruptcy Rule 9019 shall be transferred to Reorganized Silvergate as of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Plan Supplement (including this Schedule), or the Disclosure Statement to any Reorganized Silvergate Retained Cause of Action against it as any indication that Reorganized Silvergate will not, or may not, pursue any and all available Reorganized Silvergate Retained Causes of Action against it. Reorganized Silvergate expressly reserves all rights to prosecute the Reorganized Silvergate Retained Causes of Action against any Person**. All Reorganized Silvergate Retained Causes of Action shall be expressly reserved for later adjudication by Reorganized Silvergate, as determined in Reorganized Silvergate's discretion, as applicable (including, without limitation, any Reorganized Silvergate Retained Causes of Action not specifically identified or described in the Plan Supplement (including this Schedule) or elsewhere or of which Reorganized Silvergate may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Reorganized Silvergate at this time or facts or circumstances which may change or be different from those Reorganized Silvergate now believe to exist), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Reorganized Silvergate Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, Reorganized Silvergate expressly reserves the right to pursue or adopt any Reorganized Silvergate Retained Causes of Action alleged in any lawsuit in which Reorganized Silvergate is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## EXHIBIT B

**Name and Address where notices to transferee (Argent Liquidation Trust) should be sent:**

| *Prior to April 25, 2026:* | *From and after April 25, 2026:* |
|---|---|
| Argent Liquidation Trust | Argent Liquidation Trust |
| c/o Dundon Advisers, LLC | c/o Dundon Advisers, LLC |
| Ten Bank Street, Suite 1100 | 565 Fifth Avenue, 16th Floor |
| White Plains, NY 10606 | New York, NY 10017 |
| Main office line: (914) 341-1188 | Main office line: (914) 341-1188 |
| Fax: (212) 202-4437 | Fax: (212) 202-4437 |

*At all times, with copy to counsel:*

**POTTER, ANDERSON & CORROON LLP**
Katherine L. Good
Gregory J. Flasser
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:  (302) 984-6069
Email:        kgood@potteranderson.com
                   gflasser@potteranderson.com

-and-

**MILBANK LLP**
Dennis F. Dunne
Lauren C. Doyle
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Email:        ddunne@milbank.com
                   ldoyle@milbank.com

-and-

Andrew M. Leblanc
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone:  (202) 835-7500
Facsimile:  (202) 263-7586
Email:        aleblanc@milbank.com