**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  May 14, 2026 at 9:30 a.m. (ET) |
| | Response Deadline:  May 7, 2026 at 4:00 p.m. (ET) |

**FTX RECOVERY TRUST'S TWO HUNDREDTH (NON-SUBSTANTIVE) OMNIBUS**
**OBJECTION TO UNVERIFIED CUSTOMER ENTITLEMENT CLAIMS**

> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN CUSTOMER ENTITLEMENT CLAIMS.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND LOCATE THEIR CLAIMS ON SCHEDULE 1 OF EXHIBIT A ATTACHED TO THIS OBJECTION AND, IF APPLICABLE, SUBMIT ALL REQUESTED KYC INFORMATION BY JUNE 30, 2026 OR FILE A RESPONSE TO THIS OBJECTION BY MAY 7, 2026.**

The FTX Recovery Trust[2] hereby submits this two hundredth omnibus claims objection (this "Objection") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), disallowing and expunging in its entirety each Unverified Claim (as defined below) set forth in Schedule 1 attached to the Order if the Original Holder (as defined below) of such Unverified Claim does not submit

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' (as defined below) confirmed Plan (as defined below).

all requested KYC information by June 30, 2026.  In support of this Objection, the FTX Recovery

Trust submits the *Declaration of Michael S. Leto in Support of FTX Recovery Trust's Two*

*Hundredth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* (the

"Leto Declaration") and respectfully states as follows:

**Preliminary Statement**

1.        To address the myriad of know your customer ("KYC") issues in these

Chapter 11 Cases, the Debtors proactively implemented a comprehensive process to collect and

validate KYC information from original holders of Customer Entitlement Claims as of the Petition

Date (the "Original Holders").  Through the Debtors' Court-approved online customer claims

portal (the "Customer Claims Portal"), hundreds of thousands of Original Holders have

successfully submitted their KYC information.[3]

2.        Although the KYC process efficiently validated Customer Entitlement

Claims in an orderly and streamlined manner, certain Original Holders have nevertheless not

responded to repeated reminders to commence or complete the process.  To conclude the KYC

process and release reserves for the benefit of holders of valid claims, the Debtors sought entry of,

and the Court entered, the *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive)*

*Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Objection

Order").  The KYC Objection Order established deadlines to commence and complete the KYC

process, and the Customer Entitlement Claims of Original Holders who failed to meet those

deadlines were disallowed and expunged in their entirety.  The KYC Objection Order, however,

carved out certain narrow categories of claims to allow the Original Holders of those claims

---

[3]    *See Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order").

additional time to commence and/or complete the KYC process.  (*See infra* ¶ 13.)  Ten months have passed since the deadlines set forth in the KYC Objection Order, and many of those Original Holders have still not responded or interacted with the Customer Claims Portal or have otherwise stalled in providing the requested KYC information.

3.      This Objection seeks to complete the process the Debtors started in November 2024—to disallow and expunge the remaining Customer Entitlement Claims where the Original Holder has (i) failed to commence the KYC process; (ii) commenced the KYC process but failed to provide all KYC information originally requested by the FTX Recovery Trust; or (iii) provided all originally requested information but failed to satisfy subsequent requests for additional information to validate the Original Holder's KYC.  The FTX Recovery Trust submits that requiring all Original Holders of Unverified Claims to commence and complete all requested KYC submissions by **June 30, 2026**—and disallowing and expunging the Unverified Claims of Original Holders who fail to do so—is in the best interests of the FTX Recovery Trust and its stakeholders.

4.      For the avoidance of doubt, this Objection does not affect the rights of Original Holders who have satisfied all requests for KYC information but whose KYC submissions are under review, rejected, or deficient.  The FTX Recovery Trust expressly reserves its rights with respect to such claims.

### Background

5.      On November 11 and November 14, 2022, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.      On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), and on October 8, 2024, entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404].

7.      On January 3, 2025, the Effective Date (as defined in the Plan) occurred, which, among other things, established the FTX Recovery Trust and transferred, assigned, and vested all of the Debtors' assets in the FTX Recovery Trust.  *See Notice of Effective Date of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 29127].

**Facts Specific to the Relief Requested**

**I.      The KYC Submission Process**

8.      The Debtors had approximately 1.9 million Customer Entitlement Claims (as defined in the Plan) with net-positive balances as of the Petition Date.  *See Declaration of Kumanan Ramanathan in Support of Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 28227 ¶ 6].  To streamline the KYC submission process, the Debtors created the Customer Claims Portal, which, among other things, instructed the Original Holder to submit KYC information associated with the Original Holder for validation.  The requested KYC information depended on the type and risk profile of the Original Holder and the size of the claim and was reasonably standardized and designed to ensure compliance with generally recognized KYC/AML standards recommended by the Financial Action Task Force.  (*Id.* ¶ 7.)

9. The Debtors sought, and received, approval to utilize the Customer Claims Portal to collect and process KYC information in connection with the Customer Bar Date Order. The Customer Bar Date Order provided that, whether or not an Original Holder submits a proof of claim, Customer Entitlement Claims of an Original Holder who did not submit the requested KYC information by the Customer Bar Date (as defined in the Customer Bar Date Order) would not be immediately deemed disallowed, but would be deemed "unverified" (such claims, "Unverified Claims"). (Customer Bar Date Order ¶ 18.) The Customer Bar Date Order explicitly permitted the Debtors, in their discretion, to later object to the allowance of Unverified Claims on an omnibus basis on the grounds of insufficient documentation, and to request that such Original Holders submit the requested KYC information. (*Id.*)

10. Over the next seventeen months, known Original Holders of Customer Entitlement Claims received numerous notices to complete the KYC submission process. (*See infra* ¶¶ 14–18.) Approximately 160,000 Original Holders successfully completed the KYC submission process. (Leto Decl. ¶ 6.) However, approximately 482,000 Original Holders still had not done so (excluding scheduled *De Minimis* Claims) in the months leading up to the Effective Date of the Plan. (*Id.*) As the Customer Bar Date Order contemplated, the Debtors filed the *Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 28225] (the "KYC Objection") seeking to establish deadlines to commence and complete the KYC process and to expunge claims associated with Original Holders who did not comply with those deadlines.

11. On February 3, 2025, the Court sustained the objection, entered the KYC Objection Order, and established a March 1, 2025 deadline for the Original Holders of all Unverified Claims listed in the KYC Objection to commence the KYC process (the "KYC

Commencement Deadline"), and a June 1, 2025 deadline to complete the requested KYC

submission (the "KYC Completion Deadline").  (KYC Objection Order ¶¶ 2–3.)  The KYC

Objection Order further provided that if an Original Holder of a Customer Entitlement Claim listed

in the KYC Objection missed either deadline, such claim would be "disallowed and expunged in

its entirety."  (*Id.*)

12.    Between the entry of the KYC Objection Order and the KYC Completion

Deadline, approximately 16,700 Original Holders commenced or completed the KYC submission

process.  (Leto Decl. ¶ 7.)  After each deadline, the FTX Recovery Trust filed a notice of

expungement with the Court including a schedule of all claims that remained unverified beyond

the relevant deadline.[4]  Nearly 440,000 Customer Entitlement Claims were permanently expunged

under the KYC Objection Order.  (Leto Decl. ¶ 7.)

13.    Although the KYC Objection Order addressed the vast majority of

Unverified Claims, it did not address them all.  Approximately 7,110 Unverified Claims,

representing roughly $60 million in scheduled claim value, remained.  (*Id.* ¶ 8.)  Those claims fall

into five categories:

- *Original Holders with Multiple Accounts.*  Approximately 5,629 claims were associated with Original Holders who held multiple FTX accounts and had completed KYC for some, but not all, of those accounts. (*Id.*)  Although these claims were included in the KYC Objection Order, the FTX Recovery Trust excluded them from the subsequent notices of expungement to provide the Original Holders additional time to complete KYC for their remaining accounts. (*Id.*)

- *Customer Service Outreach.*  Approximately 819 claims were associated with Original Holders who had communications with the FTX customer support team ("FTX Customer Support") between the KYC Commencement Deadline and the KYC Completion Deadline. (*Id.*)  These claims were excluded from the notices of expungement to provide the

---

[4]    *Notice of Expungement of Unverified Customer Entitlement Claims* [D.I. 30042]; *Notice of Expungement of Unverified Customer Entitlement Claims* [D.I. 31139].

Original Holders additional time to resolve any technical issues preventing the completion of KYC.  (*Id.*)

- *Pending Document Request.*  Approximately 387 claims were associated with Original Holders who had pending document requests or were actively engaged in the KYC submission process as of the KYC Completion Deadline.  (*Id.*)  Out of an abundance of caution, the FTX Recovery Trust removed these claims from the notices of expungement.  (*Id.*)  These claimants are no longer engaged in the KYC process.  (*Id.*)

- *Traded, Non-Customer, and On Hold Claims.*  Approximately 38 claims were excluded from the notices of expungement because they had been traded by their Original Holders, were identified as associated with non-customer claims, or were on hold for payment or litigation.  (*Id.*)  Each of these issues has since been resolved or is no longer a basis to defer KYC compliance.  (*Id.*)

- *Previously Rejected KYC Claims.*  Approximately 232 claims were excluded from the KYC Objection, and an additional 5 claims were excluded from the notices of expungement, because the KYC information that had been provided was rejected due to a curable defect.  (*Id.*)  These claims were excluded from the KYC Objection and notices of expungement to provide the Original Holders additional time to cure the identified deficiencies in their KYC submissions.  (*Id.*)

## II.    KYC Notices

14.    Except for the approximately 232 claims that were excluded from the KYC Objection as described immediately above, each of the Original Holders of these other 6,878 Unverified Claims received notice of the KYC Objection Order via email and, if applicable, first-class mail.  *See Corrected Affidavit of Service of Reese Campanalonga* [D.I. 33526].

15.    Additionally, in the fourteen months since the Court entered the KYC Objection Order, these Original Holders have received numerous notices to complete the KYC process.  (Leto Decl. ¶ 9.)

16.    Institutional Original Holders received the following notices:

- FTX Customer Support sent a total of 6 KYC reminder emails to institutional Original Holders on April 3, 2025, May 8, 2025, October 21, 2025, December 8, 2025, January 28, 2026, and March 5, 2026.  (*Id.* ¶ 10.)

- FTX Customer Support sent a total of 7 KYC reminder emails to institutional Original Holders with multiple accounts on April 3, 2025, May 8, 2025, August 5, 2025, October 21, 2025, December 8, 2025, January 28, 2026, and March 5, 2026.  (*Id.*)

17.   Retail Original Holders received the following notices:

- FTX Customer Support sent a total of 7 KYC reminder emails to retail Original Holders on April 3, 2025, May 8, 2025, October 21, 2025, December 8, 2025, January 28, 2026, March 5, 2026, and March 27, 2026.  (*Id.* ¶ 11.)

- FTX Customer Support sent a total of 7 KYC reminder emails to retail Original Holders with multiple accounts on April 3, 2025, May 8, 2025, August 5, 2025, October 21, 2025, December 8, 2025, January 28, 2026, and March 5, 2026.  (*Id.*)

- The FTX Recovery Trust's KYC document review team also sends periodic targeted reminders to Original Holders who have not submitted sufficient KYC information or documentation such as source of funds documents. These reminders are sent on a rolling basis based on the last time that a KYC application was reviewed.  (*Id.*)

18.   Transferees of Customer Entitlement Claims received the following notices:

- On April 3, 2025, May 8, 2025, and March 27, 2026, FTX Customer Support sent emails to transferees of Customer Entitlement Claims reminding them to direct the Original Holder of such Customer Entitlement Claims to commence and/or complete KYC.  (*Id.* ¶ 12.)

**Jurisdiction and Venue**

19.   The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought are sections 105(a) and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.  Pursuant to Local Rule 9013-1(f), the FTX

Recovery Trust consents to the entry of a final order or judgment by the Court in connection with this Objection to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Basis for Relief**

I.     **Cause Exists to Approve the Proposed KYC Deadline Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code.**

20.     Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim. 11 U.S.C. § 502(b). Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

21.     Further, Local Rule 3007-1(c) provides that a debtor may object on a non-substantive basis to a "[c]laim that does not have a basis in the debtor's books and records and does not include or attach information or documents sufficient to constitute prima facie evidence of the validity and amount of the claim under [Bankruptcy Rule] 3001(f)." Local Rule 3007-1(c)(vi); *see also In re FBI Wind Down, Inc.*, 2015 WL 1181890, at *1 (Bankr. D. Del. Mar. 3, 2015) (expunging and disallowing insufficient documentation claims); *In re Exide Techs.*, 2013 WL 12579684, at *1 (Bankr. D. Del. Mar. 7, 2013) (same).

22.     While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("Initially, the claimant must allege

facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is 'prima facie' valid." (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991))). The burden of persuasion with respect to the claim is always on the claimant, *id.* at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity.  *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481–82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

23.    Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

24.    Here, where the Original Holder of a Customer Entitlement Claim has failed to submit all requested KYC information, the FTX Recovery Trust is missing a critical element necessary to administer the claim.  Absent completed KYC, the FTX Recovery Trust cannot determine whether the Unverified Claims are valid unless and until it can credibly assess whether these Original Holders are properly customers.  In such circumstances, the claim lacks sufficient documentation to sustain any *prima facie* presumption of validity.

25.    The absence of completed KYC also presents material legal risk.  For example, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") administers and enforces economic sanctions against targeted foreign countries and regimes, terrorists, international narcotics traffickers, and those engaged in threats to U.S. national security.[5]  Assets subject to OFAC sanctions are "blocked," and U.S. persons are generally

---

[5]   OFAC publishes lists of certain individuals and entities subject to various sanctions programs.  *See* ALPHABETICAL LISTING OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS, OFFICE OF FOREIGN ASSETS CONTROL, U.S. DEP'T OF THE TREASURY, https://www.treasury.gov/ofac/downloads/sdnlist.pdf; Specially Designated Nationals (SDNs) and the SDN List: Frequently Asked Questions, OFFICE OF FOREIGN ASSETS CONTROL, U.S. DEP'T OF THE TREASURY, https://ofac.treasury.gov/faqs/topic/1631.

prohibited from dealing with them.  U.S. sanctions laws apply to both U.S. and non-U.S. persons when there is a U.S. connection and include "anyone engaging in virtual currency activities in the United States, or that involve U.S. individuals or entities."[6]  Enforcement of OFAC sanctions is based on a strict liability legal standard, with substantial penalties for violations.  Accordingly, the FTX Recovery Trust cannot make distributions on account of Unverified Claims (even if such claims are sold to a non-sanctioned person) given the risk of violating OFAC sanctions.

26.     Similarly, the Money Laundering Control Act of 1986 (the "AML Act") prohibits certain financial transactions connected to unlawful activity.  Among other provisions, money laundering laws make it a crime to knowingly conduct a financial transaction that involves the proceeds of "specified unlawful activity" with one of four specific intents or to knowingly engage in a monetary transaction in property derived from specified unlawful activity with a value greater than $10,000.[7]  As with claims subject to OFAC sanctions, the FTX Recovery Trust cannot make distributions on account of Unverified Claims given the risk of violating the AML Act. Courts in this district have recognized the unique nature of anti-sanctions and money laundering risks associated with digital asset exchanges, and have prohibited distributions to holders of claims who reside in sanctioned or restricted nations.  *See, e.g.*, *In re Bittrex, Inc.*, No. 23-10597 (BLS) (Bankr. D. Del. Oct. 31, 2023) [D.I. 517] (confirming plan, where, among other things, the debtors were prohibited from disbursing cryptocurrency or fiat currency to any foreign national of a blocked, restricted, or sanctioned nation).

---

[6]     *See* SANCTIONS COMPLIANCE GUIDANCE FOR THE VIRTUAL CURRENCY INDUSTRY, OFAC (October 2021), https://ofac.treasury.gov/media/913571/download?inline.

[7]     18 U.S.C. §§ 1956(a)(1), 1957(a); *see also* 31 C.F.R. § 1022.210(a).  Under the U.S. AML laws, a "financial institution" includes money service businesses and "currency exchange[s] or . . . business[es] engaged in the exchange of . . . value that substitutes for currency or funds."  18 U.S.C. § 5312(a)(2).

27.     Consistent with the foregoing principles, this Court has already recognized the necessity of KYC compliance in these Chapter 11 Cases.  The KYC Objection Order authorized the disallowance and expungement of Unverified Claims that failed to timely commence and complete the KYC process.  The Court established firm KYC commencement and submission deadlines and ordered the disallowance and expungement of the Unverified Claims where the Original Holder failed to comply with such deadlines.

28.     This Objection addresses a more limited population of claims that were excluded from the KYC Objection Order based on circumstances appropriate to provide additional time and notice to the Original Holder.  As described above, these claims were excluded from prior notices of expungement to allow the Original Holders time to complete KYC for multiple accounts, resolve technical issues, respond to pending document requests, or otherwise address deficiencies or unresolved issues associated with the KYC information provided.  These issues have since been addressed or no longer justify deferring KYC compliance.  (Leto Decl. ¶ 8.)

29.     In the ten months since the KYC Completion Deadline, the FTX Recovery Trust has sent multiple reminders to these Original Holders to complete the KYC process and has worked diligently with Original Holders to help them troubleshoot and resolve technical issues preventing the completion of KYC.  Nevertheless, these Original Holders have repeatedly failed to provide the information necessary for the FTX Recovery Trust to verify the validity of their claims or ensure compliance with applicable law.  Continuing to hold reserves for these Unverified Claims indefinitely would delay the administration of these Chapter 11 Cases and unfairly reduce recoveries available to other creditors.

30.     As set forth in the Leto Declaration, based upon a review of the Unverified Claims and the FTX Recovery Trust's books and records, the FTX Recovery Trust has identified

that the Unverified Claims listed on Schedule 1 to Exhibit A continue to lack the requisite supporting documentation at this time to properly verify the validity of a claim against the FTX Recovery Trust and are therefore not *prima facie* valid.  Accordingly, the FTX Recovery Trust requests that such Unverified Claims be disallowed and expunged in their entirety from the claims register, unless the Original Holder of an Unverified Claim submits all requested KYC information with respect to such Unverified Claim by June 30, 2026.

**II.        Deadlines to Submit KYC Information to Resolve This Objection**

31.    To resolve the FTX Recovery Trust's objection with respect to an Unverified Claim included herein, an Original Holder must submit all requested KYC information (including additional information the FTX Recovery Trust or the Debtors' KYC vendors, Sum and Substance Ltd. ("Sumsub") and BitGo, Inc. ("BitGo"), as applicable, may determine to be necessary and may request from the Original Holder of an Unverified Claim after the KYC Commencement Deadline or the submission of initial KYC information) no later than **June 30, 2026 at 4:00 p.m. (ET)** (the "Final KYC Submission Deadline").

32.    If an Original Holder fails to submit all requested KYC information by the Final KYC Submission Deadline, the FTX Recovery Trust maintains that any Unverified Claims attributable to such Original Holder must be disallowed and expunged in their entirety.  Upon expiration of the Final KYC Submission Deadline, the FTX Recovery Trust will file a notice of expungement with the Court with a schedule of all Unverified Claims that are disallowed and expunged in their entirety.

33.    The FTX Recovery Trust may file and serve a reply to any response filed to this Objection in accordance with the Local Rules.  The FTX Recovery Trust reserves the right to

seek an adjournment of the hearing on any response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

34.     For the avoidance of doubt, this Objection applies only to Customer Entitlement Claims not previously expunged to the extent the Original Holders of such claims (i) have not commenced the KYC process by the Final KYC Submission Deadline; (ii) have commenced the KYC process but have failed to provide all originally requested KYC information by the Final KYC Submission Deadline; or (iii) have provided all originally requested information but have failed to satisfy subsequent requests for additional information by the Final KYC Submission Deadline.  The FTX Recovery Trust at this time is *not* seeking to disallow Customer Entitlement Claims of any Original Holders who have submitted all requested KYC information (including information sought in subsequent requests) by the Final KYC Submission Deadline, even if such information was unable to be validated and was therefore rejected by Sumsub or BitGo, as applicable, or otherwise rejected by the FTX Recovery Trust.  The FTX Recovery Trust reserves all rights with respect to such Customer Entitlement Claims, including the right to object to such claims at a later date on the basis of the KYC information provided.

35.     For the further avoidance of doubt, nothing in this Objection or the Order shall amend, supersede, or otherwise modify any of the requirements or deadlines with respect to any aspect of section 7.14 of the Plan, including the Pre-Distribution Requirements.

**Reservation of Rights**

36.     Nothing in this Objection:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the FTX Recovery Trust; (b) shall impair, prejudice, waive, or otherwise affect the rights of the FTX Recovery Trust to contest the validity, priority, or amount of any claim against the FTX Recovery Trust; (c) shall impair, prejudice, waive, or otherwise affect

-14-

the rights of the FTX Recovery Trust with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the FTX Recovery Trust; or (e) is intended to deem any claim as an Allowed (as such term is defined in the Plan) claim against the FTX Recovery Trust.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the FTX Recovery Trust's rights to subsequently dispute such claim.

37.    The FTX Recovery Trust retains its rights to later object on any basis to any Unverified Claim, including on the basis of the KYC information later provided (if any).

**Separate Contested Matters**

38.    To the extent a response is filed regarding any claim listed in this Objection and the FTX Recovery Trust is unable to resolve the response, the objection by the FTX Recovery Trust to such claim shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim subject thereto.

**Limited Waiver of Local Rule 3007-1**

39.    The FTX Recovery Trust acknowledges that Local Rule 3007-1(d)(iii) requires that Schedule 1 attached to the Order contain, at a minimum, the (i) name of the claimant; (ii) claim number; (iii) claim amount; and (iv) reason for disallowance.  However, pursuant to this Court's *Ninth Order Authorizing the Movants the Continued Redaction or Withholding of Certain Confidential Information of Customers* [D.I. 34287], the FTX Recovery Trust has withheld the customer names from Unverified Claims and has instead listed the unique customer code associated with each Unverified Claim on Schedule 1.

40. In addition, the FTX Recovery Trust has not listed the claim amounts (including the type and quantity of each digital asset) associated with each Unverified Claim, because such amounts are not relevant to the grounds underlying this Objection, and it would be unduly burdensome to do so. The FTX Recovery Trust submits that not including the claim amounts promotes judicial efficiency and reduces the FTX Recovery Trust's costs and administrative burden.

41. Subject to the foregoing, to the best of the FTX Recovery Trust's knowledge and belief, this Objection and all related exhibits and schedules comply with Local Rule 3007-1. To the extent this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the undersigned believes that such deviations are not material to the relief requested and respectfully requests that any such requirement be waived.

### Notice

42. Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) each Original Holder of an Unverified Claim and any subsequent transferee; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The FTX Recovery Trust submits that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the FTX Recovery Trust respectfully requests that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: April 1, 2026
   Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
   brown@lrclaw.com
   pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
   bromleyj@sullcrom.com
   gluecksteinb@sullcrom.com
   kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*

-17-