**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Hearing Date:  April 16, 2026 at 1:00 p.m. (ET)**<br>**Obj. Deadline:  April 9, 2026 at 4:00 p.m. (ET)** |

**FTX RECOVERY TRUST'S MOTION TO ENFORCE PRIOR ORDERS
THAT PRECLUDE SETH MELAMED FROM ASSERTING
<u>NEW CLAIMS IN ARBITRATION</u>**

The FTX Recovery Trust[2] (the "<u>Trust</u>") respectfully submits this motion (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 1141, and 1142 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>"), enforcing three prior orders from this Court that bar Seth Melamed from asserting new claims, in arbitration or otherwise, that Melamed did not previously assert or preserve in this Court, that have been conclusively settled and released under the Plan, and that exceed the scope of the claims that this Court has referred to arbitration:  (a) the *Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "<u>Confirmation Order</u>"), (b) the *Order (I)(A) Establishing Deadlines for Filing*

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "<u>Plan</u>"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar-Date Order"), and (c) the *Order Granting in Part and Denying in Part Cross-Motion of Seth Melamed Seeking to Compel Arbitration of the Claims* [D.I. 32058] (the "Arbitration Order").[3]  In support of this Motion, the Trust submits the contemporaneously filed *Declaration of Brian D. Glueckstein in Support of FTX Recovery Trust's Motion to Enforce Prior Orders That Preclude Seth Melamed From Asserting New Claims in Arbitration*, and respectfully states as follows:

## PRELIMINARY STATEMENT AND RELEVANT BACKGROUND

1.      This Motion is necessitated by the continued gamesmanship of Seth Melamed, a former executive of FTX Japan who yet again seeks to recover more than he is entitled to on his claims against the FTX estate—this time through an arbitration that he expressly acknowledges is designed to circumvent this Court's prior orders.  Melamed seeks to arbitrate entirely new claims that tellingly were never identified or discussed with the Court and are not preserved by his proofs of claim.  Of course, these claims could not have been discussed with the Court because they had not been asserted until now.  The Court's intervention is therefore needed to shut down this ill-conceived gambit.

2.      The Court and the parties have devoted substantial time and resources to Melamed's claims over the past two years.[4]  The parties have collectively filed nine briefs and thirteen declarations, spanning over a thousand pages, pertaining to Melamed's claims, and the

---

[3]     Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the *Debtors' Amended Objection to Proofs of Claim Filed by Seth Melamed and Motion for Subordination Pursuant to 11 U.S.C. §§ 510(b) and 510(c)(1)*  [D.I. 28643] (the "Claims Objection") and the Plan.

[4]     After initially declining to adjourn an evidentiary hearing on his claims—necessitating an emergency motion for adjournment filed by the Debtors [D.I. 24427] and granted by the Court (Sep. 12, 2024 Tr., Glueckstein Decl. Ex. 3, 86:1-15)—Melamed then sought, and the Trust consented to, *six* extensions of time to respond to the Claims Objection [D.I. 29591, 29707, 29800, 29886, 29933, 30009].

Court has already held five hearings on those claims.  Four of those hearings focused primarily on Melamed's Claim No. 3385 (the "SPA Claim," Glueckstein Decl. Ex. 1), which asserts breach of contract and fraudulent inducement claims arising from FTX's acquisition of Liquid Group Inc. ("Liquid") in April 2022.

3.      The SPA Claim seeks $35,613,112.19, comprising two categories of consideration that Melamed contends he was entitled to, but did not, receive in exchange for his shares in Liquid:  (1) specified allotments of cryptocurrencies (the "Crypto Consideration"), which came due only after FTX filed for bankruptcy and were therefore never paid to Melamed, and (2) FTX common shares (the "FTX Consideration Shares"), which Melamed received pursuant to the Share Purchase Agreement (the "SPA"), but which became worthless following FTX's collapse.  The SPA Claim seeks to recover $8,903,278.05 for the unpaid Crypto Consideration and $26,709,834.14 for the FTX Consideration Shares, each valued as of the date the SPA was signed, together comprising the full $35,613,112.19 asserted as damages in the SPA Claim.  Pursuant to the SPA, Melamed also received $8,903,278.05 in cash at closing (the "Cash Consideration"), for which the SPA Claim asserts no entitlement to additional relief.

4.      The Trust's Claims Objection argues that, regardless of how Melamed characterizes his claims, the portion relating to the Crypto Consideration must be valued as of the Petition Date in accordance with the Plan and Estimation Order, and the portion relating to the FTX Consideration Shares must be subordinated under section 510(b) of the Bankruptcy Code.

5.      The Trust advocated for the Court to consider and determine these threshold issues to simplify and streamline this claims litigation.  The Court agreed, but that did not stop Melamed from continuing to urge the Court to defer ruling on these issues pending arbitration. Even after the Court made clear that a preliminary ruling was appropriate to "advance the disputes

between the parties" (May 14, 2025 Tr., Glueckstein Decl. Ex. 4, 20:16-25), Melamed filed an additional brief proposing a "procedural framework" that would delay any ruling on the threshold issues until after arbitration [D.I. 30900 at 16-17], and advanced that framework at oral argument on June 25, 2025 (June 25, 2025 Tr., Glueckstein Decl. Ex. 5, 80:6-20). At the July 22, 2025 hearing, the Court reiterated: "[A]s I already have ruled, addressing these two issues may streamline trial and increase the possibility of a settlement." (July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 118:23-119:4.) Accordingly, the Court issued an oral ruling on July 22, 2025, memorialized in two orders [D.I. 32057; D.I. 32058], agreeing with the Trust on both issues.

6.      *First*, the Court held that "the portion of Mr. Melamed's SPA claim related to unpaid Crypto Consideration should be valued pursuant to the confirmed [P]lan and [E]stimation [O]rder." (July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 125:16-20.) The Court explained that the Plan "is broadly worded to capture all claims [] 'in respect of a digital asset,'" and found that "Melamed's claim is in respect of a digital asset, which are the cryptocurrencies Mr. Melamed was entitled to and did not receive from FTX." (*Id*. 126:18-22.) Importantly, the Court emphasized that this result was not only correct "based on the plain language of the [P]lan," but also fair "because it treats Mr. Melamed and his crypto-related claim no better than any other similarly situated party." (*Id*. 127:1-5.)[5]

7.      *Second*, the Court held that "the remainder of the SPA Claim[]" must be subordinated under section 510(b) of the Bankruptcy Code. (*Id*. 118:21-22; 127:6-9; 129:4-6.) The Court reasoned that "Melamed['s] claims for breach of warranty, misrepresentation, fraud, and indemnification" all arise from the "purchase and sale of FTX stock through allocated

---

5      The Court reserved decision "[t]o the extent that Mr. Melamed asserts an indemnification claim on account of the SPA Claim arising from the unpaid [C]rypto [C]onsideration," deferring that question "until such claim is clearly defined." (July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 129:7-11.)

consideration Mr. Melamed received from the sale of his stock and options in Liquid." (*Id.* 128:2-8.) "In other words, but for Mr. Melamed's purchase of FTX stock, the claims would not exist." (*Id.* 128:8-10.) Thus, "[a]t bottom," Melamed seeks to recover for "material misrepresentations as to [FTX's] financial health" that allegedly "caused him to suffer damages because his shares in FTX turned out to be worth less than what he was led to believe"—*i.e.*, "losses he sustained as an FTX shareholder due to FTX's improper behavior." (*Id.* 128:11-19.) Because that "type of loss is shared amongst all FTX shareholders whose equity was devalued by the fraudulent conduct of the FTX insiders," fairness demands subordination under section 510(b). (*Id.* 128:22-25.)

8.     The Court proceeded to grant Melamed's motion to compel arbitration with respect to the specific remaining issues underlying the SPA Claim—namely, (i) whether Melamed is entitled to the unpaid Crypto Consideration under the terms of the SPA, with any such recovery capped at Estimation Order values; and (ii) the value, if any, of Melamed's now-subordinated claim in respect of the FTX Consideration Shares. (Arbitration Order ¶ 1.)[6]

9.     Instead of seeking to resolve these two remaining issues underlying the SPA Claim in arbitration as the Court instructed, Melamed submitted a Notice of Arbitration (the "Notice of Arbitration" or "NoA," Glueckstein Decl. Ex. 2) with the Singapore International Arbitration Centre on November 12, 2025 that asserts *entirely new claims* that he expressly characterizes as "legally distinct" from the claims in the SPA Claim. (NoA, Glueckstein Decl. Ex. 2, ¶ 38(c).) The Notice of Arbitration does not argue that Melamed is entitled to receive the Crypto Consideration in accordance with the terms of the SPA, as he argued in this Court, and it *expressly*

---

[6]   Following the Court's rulings at the July 22, 2025 hearing, Melamed filed a motion seeking to compel the Trust to pay him a "Transaction Award" already included in his Administrative Claim [D.I. 33425], further underscoring his disregard of the established claims process, this Court's prior directives, and the time and resources of both the Court and the Trust. The Court rejected that effort at a subsequent hearing. (*See* Nov. 24, 2025 Tr., Glueckstein Decl. Ex. 9, 41:7-16.)

*disclaims seeking to liquidate his subordinated claim with respect to the FTX Consideration Shares.*  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 28-30, 38(c).)

10.     Rather, the Notice of Arbitration asserts for the first time that FTX somehow induced Melamed to enter into a "harmful transaction structure and purchase price," through "predatory business practices" while Melamed was "under economic duress," resulting in Melamed's selling 20% of his Liquid shares in exchange for the Crypto Consideration and 20% in exchange for the Cash Consideration.  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 15, 16, 17.)  The Notice of Arbitration asserts that "FTX's intentional or negligent infringements" with respect to the Crypto Consideration and Cash Consideration involved "distinct acts" and "resulted in legally distinct harms" from those with respect to the FTX Consideration Shares.  (NoA, Glueckstein Decl. Ex. 2, ¶ 38(c).)  The Notice of Arbitration specifically acknowledges that Melamed "makes no damages claim in th[e] arbitration for any loss attributable to the FTX Share Consideration," and requests "that any damages awarded do not arise from the purchase of FTX shares."  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 28-30.)  Melamed does so, by his own admission, in an effort to end-run this Court's subordination ruling:

> [The Trust] has already **persuaded the Bankruptcy Court to make a preemptive declaration** that **under [section 510(b)]** any claims or damages that arise from the purchase of equity would be subordinated in the bankruptcy proceeding and receive no recovery . . . That ruling has made it impossible for the Claimant to recover any amount that an arbitral tribunal might find the Respondent liable to pay in respect of that distinct loss.  **That is why, to repeat for emphasis, the Claimant is limiting his damages claims in this arbitration to those in respect of other harms,** and respectfully requests that the arbitral tribunal ensure that any award in the Claimant's favor explicitly confirms that any damages awarded do not arise from the purchase of FTX shares.

(NoA, Glueckstein Decl. Ex. 2, ¶¶ 29-30 (emphasis added).)

11. There are at least four reasons why this Court should enforce its prior orders to bar Melamed's transparent attempt to evade this Court's rulings, waste additional Trust resources, and improperly seek recovery from the Trust at the expense of legitimate creditors.

12. *First*, Melamed's claims in arbitration are new claims that were not preserved by the SPA Claim or any of his other filed proofs of claim.[7] Melamed's Notice of Arbitration *explicitly carves out* the claims asserted in the SPA Claim from the claims he now brings in arbitration, and asserts that the harm underlying his new claims is "legally distinct" from the harm alleged in the SPA Claim, premised on newly asserted "distinct acts," and resulting in "distinct loss." (NoA, Glueckstein Decl. Ex. 2, ¶¶ 28-30, 38(c).) The SPA Claim therefore did not provide the notice required to preserve these new theories, facts, or alleged injuries. Indeed, the SPA Claim could not have constituted such notice because Melamed's new claims in arbitration are premised on allegations that directly contradict those set forth in Melamed's SPA Claim and purport to assign a value to Melamed's Liquid shares that exceeds, *by more than 200%*, the value Melamed alleged in the SPA Claim. Melamed is therefore enjoined from asserting these new claims pursuant to (a) the Non-Customer Bar Date Order, which enjoins creditors from asserting claims after the June 30, 2023 bar date, and (b) the Plan and Confirmation Order in conjunction with section 1141 of the Bankruptcy Code, which enjoin creditors from asserting claims after Plan confirmation and the Plan Effective Date on October 8, 2024 and January 3, 2025, respectively. Those deadlines have well passed. And because "the relief sought is the enforcement of an injunction *previously obtained*," "an adversary proceeding is not necessary."

---

[7] The other four operative claims that Melamed has filed with this Court—which are wholly unrelated to FTX's acquisition of Liquid—also do not preserve the claims he now asserts in arbitration. Those four claims consist of: two duplicative claims for purportedly unpaid compensation in September and October 2022 (Claim Nos. 3353, 4578), a claim for a bonus payment that Melamed claims he was owed as of September 2022 (Claim No. 3244), and an Administrative Claim [D.I. 27798].

*In re Cont'l Airlines, Inc.*, 236 B.R. 318, 327 (Bankr. D. Del. 1999), *aff'd*, 2000 WL 1425751 (D. Del. Sept. 12, 2000), *aff'd*, 279 F.3d 226 (3d Cir. 2022), *cert. denied*, 537 U.S. 944 (2002).

13.    *Second*, by asserting new, unpreserved claims in arbitration, Melamed effectively seeks to amend his SPA Claim without leave of this Court.  That is improper.  (*See* Plan § 8.4.)  But even if Melamed had sought leave to amend, it would be futile because Melamed's new claims do not satisfy either requirement for post-confirmation amendment of a claim.  The first requirement—that the proposed amendment does not fundamentally change, but instead merely fleshes out the details of, a timely-filed claim—is not satisfied for the same reasons the claims were not preserved—*i.e.*, because they are, in Melamed's own words, "legally distinct" claims that assert "distinct harms," "acts," and "loss" from his SPA Claim.  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 29, 38(c).)  Nor can Melamed satisfy the second requirement that it would be equitable to permit a post-confirmation claim amendment.  In fact, allowing amendment under the circumstances here would be inequitable because it would reward Melamed's attempt to circumvent prior rulings of this Court through a foreign arbitration proceeding seeking to siphon value away from legitimate creditors.  It would also prejudice the Trust and burden the Court, which both have already devoted disproportionate time and resources to the SPA Claim.

14.    *Third*, Melamed is also enjoined from asserting these new claims because the claims have been conclusively settled and released under the Global Settlement provision of the Plan, which generally releases all claims premised on "the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of" FTX, and therefore permanently enjoined under the Plan's Injunction provision.  (Plan §§ 5.2, 10.8; Confirmation Order ¶¶ 49, 50, 144.)  Melamed's new claims are based on generalized allegations concerning FTX's financial

condition, business practices, and handling of assets, and therefore fall squarely within that release and injunction.

15.     *Fourth*, Melamed's newly asserted claims in arbitration exceed the scope of this Court's Arbitration Order.  The Court granted Melamed's cross-motion to compel arbitration "with respect to Claim No. 3385 [the SPA Claim] *only*."  (Arbitration Order ¶ 2 (emphasis added); *see also* July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 125:11–13.)  But Melamed's new claims in arbitration were not included in the SPA Claim, and by his own admission are "legally distinct," and involve "distinct acts" and "distinct loss," from the SPA Claim.  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 29, 38(c).)  They thus fall outside the scope of what this Court referred to arbitration.  This Court has core jurisdiction over the allowance and treatment of claims, and Melamed's efforts to arbitrate claims that fall outside the scope of what the Court referred to arbitration are inconsistent with the Arbitration Order and disrupt the delicate balance between the Federal Arbitration Act and the Bankruptcy Code.

16.     The Trust therefore respectfully requests that the Court enforce the Confirmation Order, the Non-Customer Bar Date Order, and the Arbitration Order, and bar Melamed from continuing to advance in arbitration (or otherwise) the claims described in his Notice of Arbitration.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

the Court may enter a final order consistent with Article III of the United States Constitution.[8] Additionally, the Court also has jurisdiction over this Motion pursuant to paragraphs 88 and 132 of the Confirmation Order, Section 12 of the Plan, paragraph 19 of the Non-Customer Bar Date Order, and paragraph 7 of the Arbitration Order.

18.     The statutory predicates for the relief requested herein are sections 105(a), 1141, and 1142 of the Bankruptcy Code.

<strong>RELIEF REQUESTED</strong>

19.     By this Motion, the Trust requests entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, enforcing the Confirmation Order, the Non-Customer Bar Date Order, and the Arbitration Order; barring Melamed from continuing to pursue the claims described in his Notice of Arbitration; and granting related relief.

<strong>ARGUMENT</strong>

**I.     Melamed's New Claims in Arbitration Were Not Preserved by His SPA Claim and Are Therefore Barred.**

20.     Creditors may not assert claims against a bankrupt entity or its successors without preserving those claims in bankruptcy court through timely-filed proofs of claim.  Fed. R. Bankr. P. 3003(c)(2).  Although "a creditor does not need to have the same level of detail in a proof of claim as it would in a complaint," it must "provide enough information to notify the debtor about the nature of the claim and the facts on which such claim is based," including the "amount," where ascertainable.  *In re FTX Trading Ltd.*, No. 22-11068-JTD, slip op. at 8-9, 10 (Bankr. D.

---

[8]    Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Trust confirms its consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Del. Dec. 18, 2024) [D.I. 28891].   If the proof of claim fails to satisfy this "fundamental requirement," it does not operate to preserve the creditor's claim. *Id.* at 4-6, 10.

### A. Melamed Acknowledges That His New Claims in Arbitration Are New Claims.

21.   The SPA Claim could not have provided enough information to notify the Trust of the nature or basis of the claims that Melamed now asserts in arbitration because Melamed's Notice of Arbitration *explicitly carves out* the claims asserted in the SPA Claim. Bankruptcy courts will not allow "veiled attempt[s] to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim." *Gens* v. *Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997).   Here, Melamed's attempt to assert distinctly new claims is not even veiled; it is explicit.   The Notice of Arbitration specifically asks the arbitral tribunal to declare that the alleged conduct giving rise to the purported "infringements of [Melamed's] rights" involved "distinct acts that resulted in legally distinct harms from the harm that FTX caused to [Melamed] by fraudulently inducing him to transfer 60% of his shares in Liquid to FTX in exchange for FTX equity." (NoA, Glueckstein Decl. Ex. 2, ¶ 38(c).)   Thus, by his own admission, Melamed seeks to recover in arbitration for claims that were *not* included in his SPA Claim.

22.   Even more troubling, Melamed openly tells the arbitral tribunal that he is asserting these new claims for the express purpose of evading this Court's prior rulings.   The Notice of Arbitration asserts that "any claims or damages that arise from the purchase of equity would be subordinated in the bankruptcy proceeding and receive no recovery," and explains, "*[t]hat is why*, to repeat for emphasis, the Claimant is limiting his damages claims in this arbitration to those in respect of other harms." (NoA, Glueckstein Decl. Ex. 2, ¶¶ 29, 30 (emphasis added).)

23. With respect to FTX's "distinct acts," the SPA Claim alleges only that FTX misrepresented its own financial condition and integrity, inducing Melamed to sell his Liquid shares in exchange for FTX Consideration Shares that later became worthless. By contrast, Melamed now asserts for the first time in arbitration that FTX "procured" a "harmful transaction structure and purchase price" through purportedly "predatory business practices" and "abuses of superior bargaining position," and that, as a result, the entire purchase price was induced by fraud. (NoA, Glueckstein Decl. Ex. 2, ¶¶ 16, 17(b), 24, 38.) These newly asserted "distinct acts" were neither alleged in, nor relevant to, the SPA Claim. See Charge Enters., Inc., 2024 WL 5112999, at *6 (Bankr. D. Del. Dec. 13, 2024) (declining to consider claim where "proof of claim failed to put [debtor] on notice of either the legal theory or the requisite facts on which the theory was based").

24. Melamed's new claims in arbitration also rest on allegations that directly contradict those in the SPA Claim. For instance, the SPA Claim seeks $35,613,112.19 in damages, representing the value of the Crypto Consideration and the FTX Consideration Shares as of the date of the SPA, and alleges that FTX purchased Melamed's Liquid shares "for $35,613,112.19 less than they were worth." (SPA Claim, Glueckstein Decl. Ex. 1, ¶¶ 14, 24.) That theory is premised on the assumption that the $44,516,390.24 total consideration set forth in the SPA— comprised of the $35,613,112.19 in Crypto Consideration and FTX Consideration Shares plus the Cash Consideration that Melamed received—reflects the "true value" of Melamed's Liquid shares. (SPA Claim, Glueckstein Decl. Ex. 1, ¶ 24.)

25. The Notice of Arbitration, by contrast, asserts for the first time that the $44,516,390.24 Melamed was to receive as total consideration under the SPA was less than the fair market value of Melamed's Liquid shares, and assigns a valuation to Liquid that exceeds *by*

*over 200%* the price assigned to his shares in the SPA and asserted in the SPA Claim. (NoA, Glueckstein Decl. Ex. 2, ¶ 24.) The Notice of Arbitration now asserts that "a conservative estimate" of Melamed's damages is $45 million—a figure that purportedly excludes 60% of Melamed's damages attributable to the FTX Consideration Shares and the $8,903,278.05 that Melamed received as Cash Consideration.[9] (NoA, Glueckstein Decl. Ex. 2, ¶ 24.) This new formulation of damages is impermissible. *In re Nortel Networks Inc.*, 573 B.R. 522, 529 (Bankr. D. Del. 2017) (claimant may not assert "new and different theory of damages" than what was included in proof of claim).

26. *In re Exide Technologies* is instructive. 601 B.R. 271 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020). There, claimant timely filed a proof of claim in bankruptcy court and the parties proceeded to litigate those preserved claims in state court. *Id.* at 275, 276. While that litigation was in progress, the bankruptcy court confirmed Exide's plan of reorganization, and the claimant subsequently sought to amend its complaint in state court to include new violations. *Id.* at 279. The Bankruptcy Court for the District of Delaware concluded that the newly asserted claims "should not relate back to and amend the Original Proof of Claim." *Id.* at 295. In so holding, the Court observed that "the damages asserted in [claimant's] Third Amended Complaint more than double the amount in the Original Proof of Claim," that these increased damages are based on "new violations and claims" rather than those in the original proof of claim, and Exide did not "ha[ve] any reason to believe that the [] claim would increase by more

---

[9] While the Notice of Arbitration purports to exclude the $8,903,278.05 that Melamed received as Cash Consideration from the requested relief, it also seeks to recover damages for the 20% of Melamed's Liquid shares that he sold in exchange for the Cash Consideration on the theory that those shares were worth more than $8,903,278.05. (NoA, Glueckstein Decl. Ex. 2, ¶¶ 17(b), 24, 38(b).) Because the SPA Claim did not assert any basis for recovery in respect of the Cash Consideration, this represents yet another reason why the SPA Claim did not preserve Melamed's new arbitration claims.

than $40 million dollars after the bar date, much less after Plan confirmation and the effective date." *Id.* at 294.

27.     Here, if the Trust had been aware of the nature and basis of the claims that Melamed now asserts in arbitration, it would have addressed those claims in its prior briefing before this Court, and the Court would have considered them in its threshold rulings in July 2025. The Court held a lengthy hearing and subsequently issued a detailed oral decision carefully analyzing the threshold issues of which claims are subordinated and which claims are arbitrable. It was understood by the parties and the Court at that time that the threshold rulings applied to all components of Melamed's claims.  (*See, e.g.*, July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 118:16-22 (describing former threshold issue as applicable to "the portion of the SPA claim based on the crypto consideration" and latter as applicable to "the remainder of the SPA claims").)  It is implausible that Melamed had another claim embedded within his SPA Claim—larger than the claims addressed with the Court—that he never bothered to mention.  Indeed, the Court's observation that its threshold rulings were likely to "streamline trial and increase the possibility of a settlement" would be meaningless if claims totaling an additional $45 million had been embedded within the SPA Claim but left unaddressed.  (*Id.* 118:23-119:4.)  Melamed's new $45 million claims were not addressed by the Court because Melamed did not assert them in his SPA Claim, and he cannot properly assert them now.

**B.     The Court Should Enforce the Confirmation Order and Non-Customer Bar Date Order to Stop Melamed from Asserting His New Claims in Arbitration.**

28.     A creditor who fails to file a proof of claim by the bar date "will not be treated as a creditor for that claim." Fed. R. Bankr. P. 3003(c)(2).  Black letter law provides that "the claims bar date operates as a federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor." *In re Grand Union Co.*, 204 B.R. 864,

871 (Bankr. D. Del. 1997).  Pursuant to the Non-Customer Bar Date Order, if a creditor seeks to assert an unpreserved claim against the FTX estate without filing a proof of claim "in the appropriate form" before June 30, 2023, the creditor "shall be forever barred, estopped *and enjoined from*" asserting it.  (Non-Customer Bar Date Order ¶ 13 (emphasis added).)  Melamed is thus enjoined from asserting his new, legally and factually "distinct" claims nearly three years after the bar date for non-customer claims.

29.     Melamed does not seek the Court's permission to file a late proof of claim to assert his new claims after the bar date, which in any event would require him to demonstrate excusable neglect.  *See In re Exide Techs.*, 601 B.R. at 291 n.84 (noting that "[a] court should grant permission to file a late claim only if the party's failure to file a timely claim was the result of 'excusable neglect'" but declining to "consider excusable neglect at this late stage in the case" (quoting *Pioneer Inv. Servs. Co.* v. *Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993))).  Here, Melamed's belated assertion of his new claims is neither excusable nor the result of neglect. Rather, it is a transparent attempt to evade rulings from this Court that Melamed regards as unfavorable to him with respect to the claims that were actually preserved by his SPA Claim.

30.     In addition, the Plan and Confirmation Order in this case, in conjunction with Section 1141 of the Bankruptcy Code, also serve to enjoin Melamed from bringing his new claims.  Upon confirmation of a bankruptcy plan, "the property dealt with by the plan is free and clear of all claims and interests of creditors," except as provided for in the plan or confirmation order.  11 U.S.C. § 1141(c).  Here, the confirmed Plan went into effect nearly a year and a half ago, on January 3, 2025, at which point the property of the estate vested in the Wind Down Entities "free and clear of all Liens, Claims, charges or other encumbrances or interests," subject to the terms of the Plan.  (Confirmation Order ¶ 106; *see also* Plan § 5.19.)  Section 10.8 of the Plan

"*act[s] as a permanent injunction*" against any person who holds a claim or cause of action from "commencing or continuing any action to collect, enforce, offset, recoup or recover" on any such claim or cause of action post-Plan Effective Date, except to the extent already preserved.  Thus, Melamed is enjoined from bringing his new claims in arbitration because they were not preserved in accordance with the terms of the Plan.  (*See* Confirmation Order 49, 50, 144.)

31.     This Court has exclusive jurisdiction to enforce the Non-Customer Bar Date Order and the Confirmation Order.  (Non-Customer Bar Date Order ¶ 19; Plan § 12.1(q); Confirmation Order ¶¶ 50, 88, 132); *see In re Nw. Corp.*, 2005 WL 2847228, at *5 (Bankr. D. Del. Oct. 25, 2005) ("[I]t is axiomatic that a bankruptcy court possesses the inherent authority to enforce its own orders, such as an order confirming a chapter 11 plan of reorganization.").  Melamed "cannot be permitted to 'end run' the confirmation process," or the claims allowance process, by raising new, unpreserved claims against the estate in a different forum post-confirmation, and bankruptcy courts routinely reject such attempts by creditors.  *Id.* at *6 (enjoining action brought in state court, reasoning that, "[i]f the [claimants] wishes to preserve its alleged pre-petition claims, it must do so in the bankruptcy forum where it initially sought relief by filing their proofs of claim"); *see also In re Yellow Corp.*, 2024 WL 1313308, at *10 (Bankr. D. Del. Mar. 27, 2024) ("The Supreme Court has made clear that the claims allowance process is at the heart of a bankruptcy court's jurisdiction.").

32.     The requirement of Federal Rule of Bankruptcy Procedure 7001(g) that "a proceeding to obtain an injunction or other equitable relief" requires an adversary proceeding is inapplicable here for two reasons.  *First*, the Trust is not seeking "to obtain" an injunction but merely to enforce injunctions already in place pursuant to the Non-Customer Bar Date Order and Confirmation Order.  It is well settled in this Court that the "general proposition" that injunctive

relief must be brought as an adversary proceeding "is not applicable" where the movant is "merely seeking to enforce an order already in place." *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000); *see In re Cont'l Airlines, Inc.*, 236 B.R. at 327 ("[A]n adversary proceeding is not necessary where the relief sought is the enforcement of an injunction *previously obtained,* as in the case of enforcement of the discharge injunction."). *Second*, Federal Rule of Bankruptcy Procedure 7001(g) provides for an exception where, as here, the relief the Trust seeks is provided for in the chapter 11 plan. Thus, the Court may enforce its prior injunctions to bar Melamed from pursuing his new claims in arbitration.

## II. Melamed Has Not Requested Leave to Amend the SPA Claim, Which in Any Event Would Be Futile.

33. Although the Plan provides a route for amending a timely-filed proof of claim post-confirmation, such an amendment requires Court authorization, which Melamed has not sought. (*See* Plan § 8.4 ("[A]ny [] amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.").) Melamed cannot amend his claim through a Notice of Arbitration in another forum. That is improper and violates the Plan and Confirmation Order.

34. Even if Melamed had sought leave of Court to amend the SPA Claim, he would not be entitled to do so now—nearly three years after the bar date and a year and a half after Plan confirmation. "Once the deadline to file claims has passed, 'an amendment to a claim filed post bar date must be scrutinized to assure that it is not an attempt to file a new claim.'" *In re Tribune Co.*, 2013 WL 5966885, at *8 (Bankr. D. Del. Nov. 8, 2013) (citation omitted). Bankruptcy courts permit proofs of claim to be amended after the applicable bar date only if (1) there was a "timely assertion of a similar claim or demand evidencing an intention to hold the

estate liable," *and* (2) "it would be equitable to allow the amendment." *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022) (internal citations omitted).  Moreover, "after a plan of organization has been confirmed and rendered effective," the late claimant must demonstrate a "compelling reason" for the post-confirmation amendment.  *In re NextMedia Grp. Inc.*, 2011 WL 4711997, at *3 (D. Del. Oct. 6, 2011); *see In re Exide Techs.*, 601 B.R. at 294 (finding no "compelling reason [t]o allow" amendment).  Melamed cannot satisfy any of these requirements.

35.    With respect to the first requirement, "there really is no disagreement that once the bar date passes . . . amendments are limited to fleshing out the details of—but not fundamentally changing—the timely-filed proof of claim." *In re Maxus Energy Corp.*, 2023 WL 5543612, at *1 (Bankr. D. Del. Aug. 28, 2023).  As set forth above, the claims that Melamed now brings in arbitration, by Melamed's own admission, are "legally distinct" from the claims he asserts in the SPA Claim, are premised on "distinct acts," and resulted in purportedly "distinct loss."  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 29, 30, 38(c).)  Indeed, Melamed's claims in arbitration are not only beyond the scope of his SPA Claim, they affirmatively conflict with it.  (*See supra* at 12.)  Accordingly, the new claims cannot be asserted as a post-bar date claim amendment.

36.    Nor can Melamed satisfy the second requirement, that a post-confirmation claim amendment would be equitable.  The parties and the Court have already spent considerable time and resources litigating Melamed's SPA Claim.  In those proceedings and resulting rulings, the Court has consistently reminded Melamed that he may not receive better treatment than similarly situated creditors.  (*See* July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 127:1-5 ("Mr. Melamed and his crypto-related claim" should be treated "no better than any other similarly situated party"); *id*. 128:22-25 (Melamed's "type of loss is shared amongst all FTX

shareholders"); Nov. 24, 2025 Tr., Glueckstein Decl. Ex. 9, 40:13 (Melamed may not "jump the line"); Sep. 12, 2024 Tr., Glueckstein Decl. Ex. 3, 83:20-21 ("So there's nothing special about Mr. Melamed's claim that requires action prior to the confirmation hearing.").)  Rather than accept those rulings, Melamed now seeks to circumvent them and launch a whole new round of litigation under the guise of the limited arbitration previously authorized.  *See Katchen* v. *Landy*, 382 U.S. 323, 334 (1966) ("[A] creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined," and "its validity may not be relitigated in another proceeding").

37.     Far from any legitimate, good faith reason for advancing his new claims in arbitration, Melamed *admits* that his goal in carving out the claims preserved by the SPA Claim from his Notice of Arbitration is to evade the consequences of this Court's rulings.  (NoA, Glueckstein Decl. Ex. 2, ¶¶ 29, 30.)  Indeed, this is not the first time that Melamed has attempted to sidestep the claims process.  The Court has already noted his failure "to follow the directions under the [July 22, 2025] order."  (Nov. 24, 2025 Tr., Glueckstein Decl. Ex. 9, 42:8-9 ("[W]e all agreed on how this was going to move forward and that hasn't been done."); *see also* July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 124:18 (argument asserted by Melamed "is not an issue appropriately before me").)  The Court should not countenance Melamed's continued gamesmanship.

38.     Allowing these new claims to go forward would also prejudice the Trust and burden the Court, particularly because the claims will inevitably return to this Court to determine their allowance and treatment.  (*See* June 25, 2025 Tr., Glueckstein Decl. Ex. 5, 77:1-6.)  At that point, the Court would apply the same framework that it has already established in deciding the threshold issues.  The Court's Section 510(b) analysis applies to Melamed's new claims because they still arise from a transaction in which Melamed purchased FTX shares.  And the Court already concluded that the Estimation Order "must be used to value any arbitration award

Mr. Melamed obtains related to the unpaid crypto consideration," regardless of how that claim is asserted. (July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 126:23-25.) In short, allowing these claims to proceed in arbitration would serve no purpose other than to impose unnecessary cumulative litigation and expense on the Trust, and an inevitable return to this Court to determine allowance and treatment in accordance with (among other things) the same orders that Melamed is now seeking to circumvent.

## III.    Melamed's New Claims in Arbitration Have Been Released and Enjoined Pursuant to the Plan's Global Settlement Provision.

39.    The new claims that Melamed asserts in arbitration fail for another independently sufficient reason: the claims are conclusively resolved by the Plan's Global Settlement provision (Plan § 5.2) because they are premised on generalized allegations of fraud and misconduct by FTX, and are therefore barred.

40.    The confirmed Plan incorporates a Global Settlement that releases any creditor claims premised on "the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of" FTX. (Plan § 5.2.) Claims falling within the scope of the Global Release are deemed fully "settle[d]" under section 5.2 of the Plan. Section 10.8 of the Plan therefore "act[s] as a permanent injunction against any Person who has held, holds or may hold" such a settled claim or interest from "commencing or continuing any action to collect, enforce, offset, recoup or recover" on that claim.

41.    The generalized allegations in Melamed's Notice of Arbitration concerning FTX's finances, governance, and handling of customer or corporate assets put Melamed in the same position as any other creditor asserting similar misconduct. For example, in support of Melamed's new argument that he was induced to enter into the SPA's "harmful transaction structure," Melamed provides two examples of FTX's "deceit" and "predatory conduct":

42.     *First*, Melamed now asserts that he would not have sold 20% of his Liquid shares in exchange for the Crypto Consideration if FTX had not made "material misrepresentations and omissions" concerning the following topics:  "(i) its segregation, custody, and reconciliation of customer assets; (ii) the true status of customer asset backing and risk management (including fabricated 'insurance fund' metrics and undisclosed shortfalls); and (iii) the secret preferential treatment and effectively unlimited credit extended to Alameda Research—funded by FTX customer deposits." (NoA, Glueckstein Decl. Ex. 2, ¶ 17(a).)

43.     *Second*, Melamed asserts that he would not have sold 20% of his Liquid shares in exchange for the Cash Consideration "if FTX had not made misrepresentations to the Claimant as to the legitimacy of its business practices."  (NoA, Glueckstein Decl. Ex. 2, ¶ 17(b).)

44.     These allegations concern the very same alleged misconduct that was conclusively settled and released through the Plan's Global Settlement.  Because virtually any purported creditor of FTX could attempt to obtain a disproportionate recovery at the expense of others by asserting claims based on this same misconduct, these are precisely the type of claims that have been released and enjoined under the Plan's Global Settlement provision.  (*See* Aug. 12, 2025 Tr., Glueckstein Decl. Ex. 7, 39:9-21 (recognizing in connection with another claimant's claim that, "[i]f there was a valid claim under some sort of fraud, mismanagement, commingling claim, it has been compromised through the global settlement under the plan for the good of all creditors and customers of FTX so that the litigation, with respect to these issues, wouldn't just consume the rest").)

45.     Importantly, this Court has exclusive jurisdiction over the interpretation of the Plan.  (*See* Plan § 12.1 ("[T]he Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan.")); *Travelers*

*Indem. Co.* v. *Bailey*, 557 U.S. 137, 151 (2009) (affirming bankruptcy court order enjoining state law actions initiated in violation of third-party release and injunction in chapter 11 plan and confirmation order, observing that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").  Thus, this Court—not the arbitral tribunal—must determine as necessary whether Melamed's new claims are precluded by the Plan's Global Settlement provision and Confirmation Order.

**IV.     Melamed's New Claims in Arbitration Exceed the Scope of the Arbitration Order.**

46.     As discussed, the claims that Melamed now asserts in arbitration were not included in the SPA Claim.  Accordingly, they fall outside the scope of the Court's Arbitration Order, which granted Melamed's cross-motion to compel arbitration "with respect to Claim No. 3385 only"—*i.e.*, the SPA Claim.  (Arbitration Order ¶ 2; *see also* July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 125:11-13 ("[T]he cross-motion to compel arbitration is granted as to the SPA claim, but denied as to Mr. Melamed's other claims.").)

47.     Moreover, the Arbitration Order retains this Court's jurisdiction "with respect to any matters, claims, rights, or disputes arising from or related to the Claims Objection or the implementation of th[e] Order."  (Arbitration Order ¶ 7.)  Thus, this Court—not the arbitral tribunal—must determine whether Melamed's claims in arbitration exceed the scope of the referral to arbitration in the Arbitration Order.

48.     This conclusion is reinforced by the Court's prior recognition that "Congress has given bankruptcy courts the power and mandate to adjudicate the allowance and disallowance of claims asserted against the bankruptcy estate, thus creating a conflict between the [Bankruptcy C]ode and the Federal Arbitration [A]ct."  (Sept. 11, 2025 Tr., Glueckstein Decl. Ex. 8, 35:22-36:1.)  Melamed should not be permitted to upend that delicate framework.  Having

chosen to participate in the bankruptcy process, Melamed is bound by this Court's prior orders and may not selectively ignore and seek to circumvent them by proceeding in another forum.

## NOTICE

Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) counsel to Seth Melamed; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Trust submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests that the Court grant the Motion, enforce the Confirmation Order, Non-Customer Bar Date Order, and Arbitration Order, and preclude Melamed from continuing to pursue in arbitration (or otherwise) the previously unasserted and unpreserved, and conclusively settled and released, claims described in Melamed's Notice of Arbitration, which in any event exceed the scope of the Arbitration Order.

Dated:  April 2, 2026

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        dunnec@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*