# EXHIBIT 1

# FTX Non Customer Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission. EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim. If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☑ Check here to see further instructions on completing your claim form:

## Debtor Selection

**Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):**

◉ FTX Trading Ltd. (Case No. 22-11068)
○ Alameda Aus Pty Ltd (Case No. 22-11104)
○ Alameda Global Services Ltd. (Case No. 22-11134)
○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
○ Alameda Research Holdings Inc. (Case No. 22-11069)
○ Alameda Research KK (Case No. 22-11106)
○ Alameda Research LLC (Case No. 22-11066)
○ Alameda Research Ltd (Case No. 22-11067)
○ Alameda Research Pte Ltd (Case No. 22-11107)
○ Alameda Research Yankari Ltd (Case No. 22-11108)
○ Alameda TR Ltd (Case No. 22-11078)
○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
○ Allston Way Ltd (Case No. 22-11079)
○ Analisya Pte Ltd (Case No. 22-11080)
○ Atlantis Technology Ltd. (Case No. 22-11081)
○ Bancroft Way Ltd (Case No. 22-11082)
○ Blockfolio, Inc. (Case No. 22-11110)
○ Blue Ridge Ltd (Case No. 22-11083)
○ Cardinal Ventures Ltd (Case No. 22-11084)
○ Cedar Bay Ltd (Case No. 22-11085)
○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
○ Clifton Bay Investments LLC (Case No. 22-11070)
○ Clifton Bay Investments Ltd (Case No. 22-11111)
○ Cottonwood Grove Ltd (Case No. 22-11112)
○ Cottonwood Technologies Ltd (Case No. 22-11136)
○ Crypto Bahamas LLC (Case No. 22-11113)
○ DAAG Trading, DMCC (Case No. 22-11163)
○ Deck Technologies Holdings LLC (Case No. 22-11138)
○ Deck Technologies Inc. (Case No. 22-11139)
○ Deep Creek Ltd (Case No. 22-11114)
○ Digital Custody Inc. (Case No. 22-11115)
○ Euclid Way Ltd (Case No. 22-11141)
○ FTX (Gibraltar) Ltd (Case No. 22-11116)
○ FTX Canada Inc (Case No. 22-11117)
○ FTX Certificates GmbH (Case No. 22-11164)
○ FTX Crypto Services Ltd. (Case No. 22-11165)
○ FTX Digital Assets LLC (Case No. 22-11143)
○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
○ FTX EMEA Ltd. (Case No. 22-11145)
○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
○ FTX EU Ltd. (Case No. 22-11166)
○ FTX Europe AG (Case No. 22-11075)
○ FTX Exchange FZE (Case No. 22-11100)
○ FTX Hong Kong Ltd (Case No. 22-11101)
○ FTX Japan Holdings K.K. (Case No. 22-11074)
○ FTX Japan K.K. (Case No. 22-11102)
○ FTX Japan Services KK (Case No. 22-11103)
○ FTX Lend Inc. (Case No. 22-11167)
○ FTX Marketplace, Inc. (Case No. 22-11168)
○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
○ FTX Property Holdings Ltd (Case No. 22-11076)
○ FTX Services Solutions Ltd. (Case No. 22-11120)
○ FTX Structured Products AG (Case No. 22-11122)
○ FTX Switzerland GmbH (Case No. 22-11169)
○ FTX Trading GmbH (Case No. 22-11123)
○ FTX US Services, Inc. (Case No. 22-11171)
○ FTX US Trading, Inc. (Case No. 22-11149)
○ FTX Ventures Ltd. (Case No. 22-11172)
○ FTX Zuma Ltd (Case No. 22-11124)
○ GG Trading Terminal Ltd (Case No. 22-11173)
○ Global Compass Dynamics Ltd. (Case No. 22-11125)
○ Good Luck Games, LLC (Case No. 22-11174)
○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund, LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**

Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

○ No
⦿ Yes

First Name

| Seth |

Middle Name

| |

Last Name

| Melamed |

Other names the creditor used with the debtor

| |

Email the creditor used with the debtor

| |

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

[                                                                          ]

**3. Where should notices and payments to the Creditor be sent?**

[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

[ Seth Melamed                                                            ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ c/o Fox Rothschild LLP, Attn: William H. Stassen                        ]

Address 2:

[ 2000 Market Street, 20th Floor                                          ]

Address 3:

[                                                                          ]

Address 4:

[                                                                          ]

City:

[ Philadelphia                                                            ]

State or Province (use 2-letter abbreviation if US or Canada):

[ PA                                                                       ]

Zip Code | Postal Code:

[ 19103                                                                    ]

**Is the creditor address outside of the US?**

◉ No
○ Yes

Contact phone:

[ (215) 299-2853                                                          ]

Contact email:

[ wstassen@foxrothschild.com                                              ]

**Should payments go to a different address?**

○ No
◉ Yes

Name:

[ Seth Melamed                                                            ]

Address 1 (Street address, "Care of:", or "Attention To:"):

[ 319 Lennon Lane                                                         ]

Address 2:

[                                                                          ]

Address 3:

[                                                                          ]

FTX Non Customer Proof of Claim Form

Address 4:

City:

Walnut Creek

State or Province (use 2-letter abbreviation if US or Canada):

CA

Zip Code | Postal Code:

94598

Is the creditor address outside of the US?

◉ No
○ Yes

Contact phone:

Contact email:

smm19ftx@proton.me

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

## If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

| $ | 35,613,112.19 |

Does this amount include interest or other charges?

◉ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

(ii) the amount in such currency

(iii) a conversion rate to U.S. dollars

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
|  |  |  |  |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
|  |  |  |  |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
|  |  |  |  |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

Breach of Contract; Breach of Warranty; Retained Consideration, Indemnification and Fraud

**9. Is all or part of the claim secured?**

◉ No
○ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

**Basis for perfection:**

**Value of property (all amounts in US $ dollars):**

**Amount of the claim that is secured (all amounts in US $ dollars):**

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

Annual Interest Rate (when case was filed) % -

○ Fixed
○ Variable

Annual Interest Rate (when case was filed) %:

**10. Is this claim based on a lease?**

◉ No
○ Yes

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).

[                                                                                          ]

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property.

[                                                                                          ]

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No
○ Yes.

Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.

[                                                                                          ]

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ◉ I am the creditor.
- ○ I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

06/30/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

Seth Melamed

Title/Company:

FTX Non Customer Proof of Claim Form

Address 1:

319 Lennon Lane

Address 2:

City:

Walnut Creek

State or Province (use 2-letter abbreviation if US or Canada):

CA

Zip Code | Postal Code:

94598

Is this address outside of the US?

◉ No
○ Yes

Contact phone:

Contact email:

smm19ftx@proton.me

## Supporting Documentation

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| | |
|---|---|
| 🗎 03 - FTX Trading Ltd (22-11068) $36M POC- SUMMARY.pdf | 179 KB |

**Attachment Filename**

03 - FTX Trading Ltd (22-11068) $36M POC- SUMMARY.pdf

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FTX Trading Ltd., *et al.*, | ) | Case No. 22-11068 (JTD) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------------

### ANNEX TO PROOF OF CLAIM OF SETH MELAMED
### FILED AGAINST FTX TRADING LTD.

1.      This is an Annex to, and a part of claimant, Seth Melamed's, proof of claim ("Proof of Claim"). Claimant, Seth Melamed, is the holder of certain claims ("Claims") against FTX Trading Ltd. (the "Debtor") in the above-captioned chapter 11 case. The Debtor's chapter 11 case was assigned Case No. 22-11068 (JTD). Copies of supporting documents relating to claimant's Claims are incorporated by reference into the Proof of Claim. Claimant will furnish the Debtor with copies of any additional pertinent documentation upon written request or as otherwise required by order of the United States Bankruptcy Court for the District of Delaware.

2.      On November 11, 2022, and November 14, 2022, "Petition Date"), Debtor, together with its affiliated debtor entities, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the Bankruptcy Court, jointly administered for procedural purposes under Case No. 22-11068 (JTD) (collectively, the "Bankruptcy Proceeding").

3.      Claimant asserts non-subordinated general, unsecured claims against the Debtor which arise from breach of contract, breach of warranty, retained consideration, indemnification, and fraud and in connection with the Debtor's purchase of the Claimant's Shares in Liquid Group Inc., a Japanese Corporation and additional debtor in the Bankruptcy Proceeding (renamed  FTX Japan Holdings K.K.), pursuant to and as defined in that certain Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc., (Major Shareholders), dated November 19, 2021 (the "SPA"), as modified by that certain Side Letter Agreement between

1

Claimant and FTX Trading Ltd. of the same date (the "Side Letter").  Among others, the signatories to the SPA included Claimant as seller of Shares and Sam Bankman-Fried on behalf of FTX Trading Ltd. as buyer.

4.      Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or of its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA.  Claimant asserts a general, unsecured, non-subordinated claim against the Debtor of not less than $35,613,112.19, which represents (a) the purchase price of Claimant's Liquid Shares, less actual cash received from the Debtor prior to the Petition Date; (b) Retained Consideration, as defined herein and allocated in Schedule I to the Side Letter (Designated as Allocation of Consideration) and (c) Debtor's obligation to indemnify Claimant in connection with the purchase of his LGI Shares.

5.      In calculating the principal amount of this Proof of Claim, the claims set forth by Claimant are not subject to setoff, counterclaim or right of recoupment.

6.      The Claimant has not yet filed an adversary proceeding against the Debtor. No judgment has been rendered in respect of the claims asserted by Claimant in this Proof of Claim.

### Background

7.      Claimant's evidence relies on the following sources:

(a)      Debtor Materials, as defined herein, provided by the Debtor to the Claimant in a cloud-based data room for the purpose of inducing Claimant to sell his LGI Shares.

(b)      Records of correspondence between the Claimant and the Debtor in connection with the purchase of Claimant's LGI Shares.

2

146993992.6

(c)　　Interviews with former officers of FTX Japan Holdings KK.

(d)　　An Amended Complaint filed by the Commodity Futures Trading Commission (the "CFTC") on December 21, 2022, against Samuel Bankman-Fried, the Debtor, affiliated debtor Alameda Research LLC ("Alameda"), Caroline Ellison ("Ellison") and Zixjiao Wang ("Wang") seeking certain remedies set forth therein on the basis of violations of the Commodity Exchange Act (the "CFTC Complaint"). Both Ellison, a former officer of affiliated debtor Alameda, and Wang, a founder and former officer of the Debtor, have entered consent orders of judgment as to their liability for engaging in fraud in violation of the Commodity Exchange Act. Claimant asks this court to take judicial notice of said amended CFTC complaint and of the consent orders of judgment.

(e)　　A Complaint filed by the Securities and Exchange Commission (the "SEC") on December 21, 2022, against Ellison and Wang which seeks certain remedies on the basis of violations of the Securities Act and the Securities Exchange Act (the "December SEC Complaint"). Both Ellison and Wang have consented to settlements in connection with the December SEC Complaint and are cooperating with further investigations by the SEC. Claimant asks this court to take judicial notice of said December SEC Complaint.

(f)　　A Complaint filed by the SEC on February 21, 2022, against Nishad Singh ("Singh") which seeks certain remedies on the basis of violations of the Securities Act and the Securities Exchange Act (the "February SEC Complaint"). Singh, a former officer of the Debtor, consented to a settlement in connection with the February SEC Complaint and is cooperating with further investigations by the SEC. Claimant asks this court to take judicial notice of said February SEC Complaint.

8.　　The claims asserted herein arise in connection with the Claimant's execution of the SPA dated November 19, 2021, between Debtor and the Claimant, and certain other LGI shareholders and the 11-19-21 Side Letter Agreement.  Pursuant to Clause 2.1 of SPA the Claimant agreed to sell the Debtor 12,203 shares of Common Stock of Liquid Group Inc., now named FTX

3

Japan Holdings KK, as well as options to purchase 510 shares of Common Stock, for an aggregate price of $44,516,390.24 ("Liquid Shares").[1]

9.      The Debtor agreed to pay for the Liquid Shares with (a) 1,019,070 shares of Common Stock of the Debtor worth $26,709,834.14 ("FTX Consideration Shares"), calculated based on the price per share of the Debtor's Series B priced round, the closing of which was announced on July 20, 2021; (b) $8,903.278.05 in cash; and (c) $8,903,278.05 worth of cryptocurrency, as determined on November 19, 2021, made up of 39.132 bitcoin, 560.48 ETH, 11,884.98 Solana, and 47,532 FTT tokens (the "Purchase Consideration"). The Debtor retained the cryptocurrency component of the Purchase Consideration as security against certain indemnification obligations that might arise under the SPA (the "Retained Consideration"), with half to be released on the one-year anniversary date of the April 4, 2022, completion date (the "Completion Date"), and the remaining half to be released on the two-year anniversary of the Completion Date.

10.     Debtor held itself out as an "honest steward" of customer assets and a safe crypto trading platform. As admitted by its former officers, the Debtor used its own customers' assets to illicitly fund risky trading activities of certain affiliated debtors, resulting in the loss of billions of dollars' worth of cryptocurrency and value. *See, e.g.*, CFTC Complaint at 2 ("Throughout the [period starting no later than May 2019 and continuing through at least November 11, 2022], and unbeknownst to all but … [Samuel] Bankman-Fried, Ellison and Wang, [the Debtor's] customers deposits … were regularly accepted, held by and/or misappropriated by Alameda for its own use."). Alameda was owned and controlled by principals of FTX Trading Ltd. Claimant did not know about the misappropriations of customer deposits by Alameda.  By this aforementioned conduct, Debtor breached the warranties described in the SPA.

11.     Claimant sold his Liquid Shares to Debtor in reliance on information provided by the Debtor and the Debtor's officers and employees, including the draft and final term sheets, presentations and Zoom calls, AML and KYC compliance programs, phone calls, emails, and other materials (collectively, the "Debtor Materials").  The Debtor Materials were false, misleading, and

---

[1] FTX Japan Holdings KK is an affiliate debtor. FTX Japan Holdings KK's chapter 11 case was assigned Case No. 22-11074 (JTD).

4

inaccurate in multiple material respects.  The Debtor Materials therefore breached the warranties and representations of the SPA in multiple material ways and constituted fraud in the inducement and performance of the SPA.

12.     As alleged by the SEC, with cooperation from Ellison, Wang, and Singh, the Debtor granted affiliated debtor Alameda Resources (Alameda) an effectively limitless credit line which drew down on the Debtor's customer deposits in the neighborhood of a billion dollars (the "Alameda Credit Line"). *See, e.g.*, December SEC Complaint at 2 ("In truth, [FTX's officers] provided Alameda with significant special treatment on the FTX platform, including a virtually unlimited 'line of credit' *funded by the platform's customers*.") (emphasis added). Moreover, for most of the period prior to the date of the SPA, customer "fiat," which are deposits in recognized national currencies, was deposited in "bank accounts that were owned and controlled by Alameda," and were not "segregated from Alameda assets or placed into accounts designated as being for the benefit of [the Debtor's] customers." CFTC Complaint at 13-14.

FTX's audited financial statements failed to disclose any information about the Alameda Credit Line or the Debtor's illicit use of customer funds. *See, e.g.*, February SEC Complaint at 18 (noting that the same financials provided to the Debtor "[did] not include information about Alameda's undocumented 'line of credit' from FTX and … were, at the very least, materially misleading."). This conduct breached the SPA's explicit warranties and representations and constituted fraud on Claimant in the inducement to sign to SPA.

## Claims

13.     Claimant seeks damages of $35,613,112.19  from Debtor  for Debtor's (a)  breach of warranty in the SPA (b) impermissible retention of the Retained Consideration; and (c ) its indemnification obligations. The Claimant states its claims under theories of Japanese law and Delaware law, to the extent applicable.[2]

14.     Accordingly, Claimant is entitled to obtain damages from Debtor in an amount of not less than $35,613,112.19, for (a) the purchase price received under the Agreement, less

---

[2] Clause 19.1 of the Agreement specifies that the "Agreement … and any non-contractual obligation or other matter arising out of or in connection with it are governed by the laws of Japan."

5

payment of the cash consideration; (b) the Retained Consideration, in the event it is not returned; and (c) damages, including, but not limited to, reimbursement of expenses and fees including any currently unliquidated future expenses or losses and attorney fees as allowed by law.

15.    Each of Claimant's claims are set forth in detail below.

*Breach of Contract*

16.    Pursuant to Part B of the SPA, in which Debtor warranted to the Claimant that "all … information furnished by or on behalf of the Debtor to Claimant before and during the negotiating leading up to the SPA was true, accurate….," Debtor breached the SPA. Pursuant to Clause 7.2 of the Agreement, Debtor warranted the Debtor's representations and warranties were, as of the Completion Date, "true, accurate and not misleading by reference to the facts and circumstances as at Completion."

17.    The Debtor breached its warranties because the Debtor failed to disclose material facts, including that:

(a)    the Debtor had established the Alameda Credit Line, enabling an affiliated debtor to draw on billions of dollars' worth of Debtor's customer funds without their knowledge or consent and ultimately resulting in the Bankruptcy Proceedings;

(b)    Debtor's compliance program inaccurately stated Debtor segregated customer funds from its own assets;

(c)    Debtor transferred customer assets to bank accounts controlled by affiliated debtor, Alameda without the knowledge or consent of Debtor's customers;

18.    Claimant relied on Debtor's inaccurate information about the safety of its trading platform, its risk mitigation measures to protect customer assets, and its financial situation. Debtor's conduct breached its warranties in the SPA.

146993992.6

*Retained Consideration*

19.    Claimant alleges that Debtor unlawfully withheld and/or interfered with its title to the Retained Consideration. Debtor promised Claimant the Retained Consideration on the Completion Date. However, Debtor retained such consideration pursuant to Clause 4.1 of the Agreement for the purpose of using it as security against Claimant's indemnification obligations under the Agreement, should any arise. Pursuant to Clause 4.2 of the Agreement, the Debtor agreed to release half of the Retained Consideration on the one-year anniversary of the Completion Date and the remaining half on the second-year anniversary of the Completion Date.

20.    The Debtor breached its obligation to return one half of the Retained Consideration on the one-year anniversary of the Completion Date, April 4, 2023. Moreover, following the Petition Date and the resulting  acceleration of Debtor's obligations, the Debtor no longer has the right to continue to withhold Claimant's Retained Consideration.  There is no outstanding basis for Debtor to seek indemnification from the Claimant.

*Indemnification*

21.    Debtor has failed to release the Retained Consideration to the Claimant. Pursuant to Clause 9.3 the SPA, Debtor must indemnify the Claimant for  all claims, losses, liabilities, demands, damages, costs or expenses of any nature "resulting from, relating or, or arising out of *any* breach" (emphasis added) of Debtor's representations and warranties as well as the Debtor's breach of its obligations under the SPA. Accordingly, Debtor is responsible for all damages to Claimant caused by Debtor's breaches of warranty and representations, including fraudulent breaches, as well as all fees and costs resulting from, relating or arising out of Debtor's breaches, including court costs and attorneys' fees, which cannot be ascertained at this time.

*Fraud*

22.    Beginning no later than May 2019 and continuing through at least November 11, 2022 (the "Relevant Period"), Sam Bankman-Fried ("Bankman-Fried") and Zixiao "Gary" Wang ("Wang") owned, operated and/or controlled FTX Trading Ltd., its numerous subsidiaries and related entities around the world, all doing business as FTX.com or FTX. Bankman-Fried and Wang also owned, operated or controlled Alameda Resources ("Alameda"), a digital asset trading

7

146993992.6

and investment firm in Berkeley CA. Throughout the Relevant Period, Alameda operated as a primary "market maker" on FTX, providing liquidity to its various digital asset markets and also performed a number of other key functions for the exchange. Bankman-Fried, along with Wang, Caroline Ellison (Ellison) and/or others, operated multiple entities, together with other entities under Bankman-Fried's majority ownership and control, as a common enterprise (referred to herein as the "FTX Enterprise"). Bankman-Fried appointed Ellison CEO of Alameda.

23.    A small group of insiders, including Bankman-Fried, Ellison and Wang, misappropriated FTX customers deposits, including fiat currency and digital assets such as bitcoin (BTC), ether (ETH) and tether (USDT), each a commodity in interstate commerce, which were intended to be used for trading or in the custody of FTX, were misappropriated by Alameda for its own use. Unknown to Claimant, Alameda had been and was surreptitiously siphoning off customer assets from Debtor for its own use, in excess of one billion dollars in customer assets, which were missing when Bankman-Fried furnished FTX Trading Ltd.'s "Debtor Materials" to Claimant.

24.    Unbeknownst to Claimant, Debtor allowed Alameda to maintain an essentially unlimited line of credit from Debtor, thereby creating a financial picture of Debtor that was materially false and misleading.  This material misrepresentation of Debtor's financial health induced claimant to enter into the SPA, causing claimant to sell his shares in LGI for 1/50 of their true value and take in exchange shares in Debtor worth $35,613,112.19 less than his LGI shares were worth. Thus, FTX Trading Ltd. purchased Liquid Group Inc. and its subsidiaries, including FTX Japan K.K. (formerly known as Quoine Corporation) and Quoine Pte. Ltd. for $35,613,112.19 less than they were worth.  By this material breach of Debtor's warranties and representations and Debtor's and its principals corresponding fraud, Claimant was damaged in that amount.

25.    Debtor fraudulently induced Claimant into executing the SPA through knowing misrepresentations and omissions upon which Claimant was intended to rely. As outlined in detail in this Proof of Claim, Debtor's material representations and warranties to Claimant about the safety of its trading platform, its risk mitigation measures to protect customer assets, and its financial situation were materially false and misleading.

8

146993992.6

26. Debtor made untrue, misleading statements of a material fact to Claimant about the financial integrity of Debtor. Claimant reasonably relied on Debtor's representations and warranties when deciding to execute the SPA.

27. Had the Debtor Materials been accurate and truthful, Claimant would have discovered Debtor's fraudulent activities and determined that Debtor's offered shares and blockchain tokens were worthless or nearly worthless. Because such shares and tokens represented nearly 75% of the Purchase Consideration, the Claimant would not have executed the SPA. Therefore Debtor's breaches of warranties, misrepresentations and fraud were material and but for them Claimant would not have signed the SPA thereby incurring the aforesaid losses.

28. Claimant would not have entered into the SPA had he known Debtor misappropriated customer funds for the benefit of one of its affiliated debtors and the personal use of its officers.

29. Claimant managed and grew FTX Japan K.K. (f/n/a Quoine Corporation which operated the Liquid Exchange) into one of the world's leading crypto currency exchanges on the basis of his commitment to securing the integrity of his own customers' assets. Since Debtor's Petition Date, Claimant has continued to fulfill this commitment, ensuring assets were returned to FTX Japan K.K.'s customers. Debtor's disregard of its customers, if discovered by Claimant prior to the Completion Date, would have made Debtor an unacceptable purchaser of Claimant's Liquid Shares.

*Retained Consideration*

30. Claimant alleges Debtor has unlawfully withheld and/or interfered with its title to the Retained Consideration. As previously outlined, the Debtor was contractually obligated to pay Claimant the Retained Consideration on the Completion Date. However, Debtor retained such consideration pursuant to Clause 4.1 of the SPA for the purpose of using it as security against Claimant's indemnification obligations under the SPA, should any arise. Pursuant to Clause 4.2 of the SPA, Debtor agreed to release half of the Retained Consideration on the one-year anniversary of the Completion Date and the remaining half on the second-year anniversary of the Completion Date.

9

146993992.6

31.     Debtor breached its obligation to return one half of the Retained Consideration on the one-year anniversary of the Completion Date, April 4, 2023. Moreover, following the Petition Date and the resulting acceleration of the Debtor's obligations, the Debtor no longer has the right to continue to withhold Claimant's Retained Consideration. Claimant knows of no outstanding basis for the Debtor to seek indemnification from the Claimant.

32.     In executing and filing his Proof of Claim, the Claimant does not submit himself to the jurisdiction of the Bankruptcy Court for any purpose other than with respect to his Claims against the Debtor and does not waive or release: (a) his rights and remedies against any other person or entity that may be liable for all or part of the Claims set forth herein, whether an affiliate or subsidiary of the Debtor, an assignee, guarantor or otherwise; (b) any obligation owed to him, or any right to any security that may be determined to be held by him or for his benefit; (c) any past, present or future defaults (or events of default) by the Debtor or others; or (d) any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of Debtor. Without limiting the generality of the foregoing, Claimant reserves the right to seek resolution of his claims in Singapore-based arbitral proceedings. The filing of the Proof of Claim is not, and shall not be construed as, an election of remedies or limitation of rights or remedies.

33. Nothing contained in Claimant's Proof of Claim nor any subsequent appearance, pleading, claim or suit is intended to be a waiver or release of: (a) Claimant's  right to have final orders in noncore matters entered only after *de novo* review by a district court judge; (b) the right of Claimant to a jury trial in any proceeding so triable herein or in any case, any controversy or proceeding related hereto; (c) the right of Claimant to have the reference withdrawn by the United States District Court for the District of Delaware in any matter subject to mandatory or discretionary withdrawal; (d) the right of Claimant to have any unliquidated portions of the Claims determined by applicable state, federal, or foreign courts or tribunals; (e) the right of Claimant to assert that all or any portion of the Claims constitute administrative expense claims or other priority claims in this case; (f) the right to arbitration of any dispute; or (g) the right of Claimant to initiate any other rights, claims, actions, defenses, setoffs, or recoupments to which Claimant is or may be entitled under the Agreement, any other agreement, documents, or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

146993992.6

**<u>Notices</u>**

34.     All notices with respect to the Claims should be sent to:

William H. Stassen, Esquire
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
wstassen@foxrothschild.com

Dated:   June 29, 2023

11

146993992.6

Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

c8ba77f7676323a72f22f8be1e83714bbe3538dc

Submitted Date Time

2023-06-30T06:28:24.971Z

Status

Submitted

CONFIRMATION ID

3265-69-MRWON-534116790

Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE