# EXHIBIT 2

IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES
OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE

**SETH MELAMED**

(CLAIMANT)

-VERSUS-

**THE FTX RECOVERY TRUST**

(RESPONDENT)

NOTICE OF ARBITRATION

12 November 2025

MORI HAMADA

Marunouchi Park Building, 2-6-1 Marunouchi
Chiyoda-ku, Tokyo 100-8222, Japan

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 3

II.   THE PARTIES................................................................... 3

   A.   The Claimant ...................................................... 3

   B.   The Respondent.................................................... 3

III.  BRIEF DESCRIPTION OF THE DISPUTE .................................... 4

IV.   GOVERNING LAW AND ARBITRATION AGREEMENT..................... 11

V.    THE TRIBUNAL................................................................ 13

VI.   PRELIMINARY STATEMENT OF RELIEF REQUESTED.................... 14

## I.   INTRODUCTION

1. The Claimant, Seth Melamed, hereby submits this Notice of Arbitration in accordance with Rule 6 of the Arbitration Rules of the Singapore International Arbitration Centre (the SIAC Rules).

2. Pursuant to Rule 6.3(i) of the SIAC Rules, the Claim Filing Fee has been paid and a copy of the money order is attached to this Notice of Arbitration.

## II.   THE PARTIES

### A.   THE CLAIMANT

3. The Claimant is Seth Melamed, an individual residing at:

> JL. Bumbak Gg. Pulau 37 Villa Kamila, Kerobokan, Kec.
> Kuta Utara, Kabupaten Badung, Bali, Indonesia 80361

4. The Claimant's contact email address is sethmm19@gmail.com.

5. The Claimant is represented in this arbitration by the following legal counsel, to whom all correspondence should be sent:

> Mori Hamada & Matsumoto
> 2-6-1 Marunouchi, Chiyoda-ku, Tokyo 100-8222, Japan
>
> Daniel Allen
> Lexi Takamatsu
> Zoe Lim
> Yoshino Saito
>
> daniel.allen@morihamada.com
> lexi.takamatsu@morihamada.com
> zoe.lim@morihamada.com
> yoshino.saito@morihamada.com

### B.   THE RESPONDENT

6. The Respondent is the FTX Recovery Trust, a Delaware statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 *et*

3

*seq*.) and the recipient of the assets and liabilities of FTX Trading Ltd. ("FTX").

7. In November 2022, in the wake of revelations that FTX had engaged in widespread criminality and fraud, FTX filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As a result of those proceedings, and specifically pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization that was confirmed on 8 October 2024 and went effective on 3 January 2025, the assets and liabilities of FTX and its affiliates were vested in the Respondent.

8. To the best of the Claimant's knowledge, the Respondent's contact details are as follows:

> FTX Recovery Trust
> c/o Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
> Attention: Andrew G. Dietderich, James L. Bromley, Brian D. Glueckstein, Alexa J. Kranzley
>
> dietdericha@sullcrom.com
> bromleyj@sullcrom.com
> gluecksteinb@sullcrom.com
> kranzleya@sullcrom.com

9. Pursuant to Rule 6.1 of the SIAC Rules, this Notice of Arbitration was delivered to the Respondent by email, using the contact details above, on 12 November 2025.

## III.   BRIEF DESCRIPTION OF THE DISPUTE

10. This dispute concerns tens of millions of dollars in damages suffered by the Claimant due to, among other things, a targeted commercial fraud.

11. FTX is well known. It had many victims. Much of the voluminous press coverage of FTX's misdeeds has concerned the systemic

4

fraud that it and its management committed against its retail customers and investors, but that is only one part of the whole sordid tale.

* * *

12. In 2021, FTX acquired a Japanese cryptocurrency company ("Liquid") that had been co-founded by the Claimant. FTX purchased the Claimant's 22.4 percent stake in Liquid through a transaction that was crystallized in a share purchase agreement dated 19 November 2021 (the "SPA"), together with accompanying side letters also dated 19 November 2021 (the "Side Letter") and 31 March 2022 (the "Second Side Letter").[1]

13. The SPA, which concerned the transfer of all Liquid ownership interests held by its major shareholders (including the Claimant), had a specific consideration structure. The purchase price for Liquid was USD 200,000,000, and the aggregate purchase price for the major shareholders' interests was USD 151,919,670.93, with FTX to be permitted to satisfy that dollar-denominated price as follows:

   (a)   USD 81,197,790.25 of the price could be satisfied by direct payment of cash to each of the major shareholders on a pro rata basis, according to their ownership interests;

   (b)   USD 17,925,031.75 of the price could be satisfied with specified amounts of various cryptocurrency assets (which, however, FTX would continue to hold as security until specified release dates); and

   (c)   USD 52,796,848.94 of the price could be satisfied by the allotment and issue of a specific number of equity shares

---

[1] C-001 Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc. (Major Shareholders) dated 19 November 2021; C-002 Side Letter Agreement dated 19 November 2021; C-003 Side Letter Agreement dated 31 March 2022.

in FTX.

14. As applied to the Claimant in particular, this structure meant that FTX purchased the Claimant's equity interests in Liquid in three distinct tranches, as follows:

(a) 20% of the Claimant's equity interests in Liquid had a purchase price of USD 8,903,278.05, which could be satisfied in cash;

(b) 20% of the Claimant's equity interests in Liquid also had a purchase price of USD 8,903,278.05, but that price could be satisfied using specified cryptocurrency assets that FTX would temporarily continue to hold in a manner that was to be agreed in good faith between the parties; and

(c) 60% of the Claimant's equity interests in Liquid had a purchase price of USD 26,709,834.14, and that price could be satisfied with issue to the Claimant of an amount of FTX equity.

15. This transaction structure harmed the Claimant in multiple ways. For the purposes of this arbitration, the key points are that:

(a) FTX's contractual right (and obligation) to maintain custody of the assets used to satisfy 20% of the purchase price led ultimately to the Claimant being deprived of that tranche of the purchase price; and

(b) FTX's contractual obligation to pay just USD 8,903,278.05 for the right to an additional 20% of the Claimant's shares caused the Claimant to be grossly undercompensated for the value of that stake.

16. FTX procured the Claimant's consent to that harmful transaction structure and purchase price through deceit and other predatory

conduct, including false documentation sent by FTX's senior management and oral misrepresentations made directly to the Claimant by Mr Sam Bankman-Fried himself—who is now serving a 25-year prison sentence as a result of the many crimes of dishonesty that he committed while in control of FTX.

17. In particular, by way of example:

    (a)    if FTX had not made material misrepresentations and omissions to the Claimant concerning (i) its segregation, custody, and reconciliation of customer assets; (ii) the true status of customer asset backing and risk management (including fabricated 'insurance fund' metrics and undisclosed shortfalls); and (iii) the secret preferential treatment and effectively unlimited credit extended to Alameda Research—funded by FTX customer deposits—the Claimant would not have agreed to allow FTX to hold 20% of the purchase price because he would have understood that this portion of the purchase price was at risk; and

    (b)    if FTX had not made misrepresentations to the Claimant as to the legitimacy of its business practices, and had not engaged in predatory business practices (including abuses of superior bargaining position) while the Claimant was under economic duress, the Claimant never would have agreed to sell 20% of his interests in Liquid to FTX for cash.

18. After the SPA was signed, FTX then deceived the Claimant again when the parties negotiated the supplementary agreement contemplated in SPA Clause 2.4, concerning the manner of FTX's withholding of the 20% of the purchase price that could be satisfied through title to cryptocurrency assets. At that time, Claimant sought and received assurances from FTX executives

7

that his assets would be held in segregated wallets (i.e., that his assets would not be commingled with FTX assets), and on that basis did not insist on a third-party escrow or some other form of protection from abusive conduct by FTX. But the assurances that FTX provided were false, and FTX did commingle the Claimant's assets—just as he had feared.

19. The negotiation and execution of the SPA took place in Japan, and in the SPA the Claimant and FTX agreed that their legal relationship, including non-contractual obligations, would be governed by Japanese law. FTX's conduct was a straightforward breach of its duties to the Claimant under Article 709 of the Japanese Civil Code, which provides as follows:

> 第七百九条　故意又は過失によって他人の権利又は法律上保護される利益を侵害した者は、これによって生じた損害を賠償する責任を負う。

> Article 709 A person who has intentionally or negligently infringed any right of others, or legally protected interest of others, shall be liable to compensate any damages resulting in consequence.

20. As FTX engaged in wrongful conduct (both intentional and negligent) that infringed the Claimant's rights and caused harm to the Claimant, Article 709 obligates the Respondent, as the recipient of FTX's assets and liabilities, to pay money damages to the Claimant. This is a legal remedy that exists under Japanese law distinctly from any contractual rights that parties may also have vis-à-vis each other.

21. Further, and at a minimum, FTX's conduct also breached the SPA, which imposed on FTX obligations not to provide false information to the Claimant, and required FTX to indemnify the Claimant for any losses (including damages and legal expenses) caused by breaches of those obligations. Without limitation, those provisions

8

include Clause 7.2, which provides as follows:

> The Purchaser represents and warrants to the Sellers that, (i) except any matter, circumstance or event arising substantially as a result of any actions or omissions that are requested in writing or consented to in writing by any of the Sellers or any of their respective Representatives, or any actions that any of the Sellers or any of their respective Representatives takes or, notwithstanding reasonable written request by the Purchaser, omits to take, in connection with the transactions contemplated by this Agreement, **each** of the Warranties set out in Part B of Schedule 6 (other than the Purchaser Fundamental Representations) is true, accurate and not misleading at the date of this Agreement; and (ii) each of the Purchaser Fundamental Representations is true, accurate and not misleading at the date of this Agreement. Immediately before Completion, the Purchaser is deemed to represent and warrant to the Sellers that each respective Warranty is true, accurate and not misleading by reference to the facts and circumstances as at Completion. For this purpose only, where there is an express or implied reference in a Warranty to the "date of this Agreement", that reference is to be construed as a reference to Completion.

22. The Fundamental Representations made by FTX were the representations and warranties that it made under Clause 7.2 with respect to the Warranties set out in Paragraphs 1 (Incorporation), 2 (Right, power, authority and action), 3 (Anti- Social Forces), 4 (Binding agreements), 5 (Funds) and 6 (Share Issuance) of Part B of Schedule 6.

23. Under Schedule B, Part 6 paragraphs 7 and 8, FTX made the following warranties:

> Information

> All statements in the Disclosure Documents in relation to the Purchaser and all documents and information provided or made available by or on behalf of the Purchaser for the purpose of preparation of the Disclosure Documents are true, accurate and not misleading in all material respects and has not omitted any information the omission of which would make any

statement in the Disclosure Documents misleading in any material respect.

Completeness of Disclosure

All information contained in this Agreement and all other information furnished by or on behalf of the Purchaser to the Sellers or the Sellers' advisers before and during the negotiation leading up to this Agreement is true and accurate in all material respects.

24. The Claimant will quantify his losses in full during the arbitration, but preliminarily estimates the damages to which he is entitled in respect of the harms identified above to be approximately USD 45 million. This figure corresponds to a conservative estimate of the actual market value of 40% of the Claimant's shares in Liquid at the relevant time, minus the USD 8,903,278.05 in cash that the Claimant actually received.

25. In addition, FTX's misrepresentations has caused the Claimant to incur significant legal and other expenses in the bankruptcy proceeding and to pursue this arbitration. The Claimant is entitled to full indemnity of those amounts under the SPA.

26. Finally, it is necessary to address the issue of the FTX Share Consideration—i.e., why the Claimant's claim for damages in this arbitration is limited to the value of 40% of his stake in Liquid.

27. In principle, the Claimant is also entitled under Japanese law to damages for the losses he suffered relating to the remaining 60% of his Liquid ownership interests, the dollar-denominated purchase price for which FTX satisfied by providing the Claimant with FTX equity. That is because, as a separate matter, FTX also intentionally or negligently infringed the Claimant's legal rights in respect of those shares (and breached its contractual obligations of candor) by, among other things, making misrepresentations directly to the Claimant concerning the value of FTX equity. In reality, the FTX equity that the Claimant received was worthless,

and it is a fact that FTX's wrongful conduct in respect of the FTX Share Consideration (which was in breach of obligations under both the SPA and Japanese law) caused the Claimant to suffer losses in respect of those shares that were nothing short of enormous.

28. However, and for the avoidance of doubt, the Claimant makes **no damages claim in this arbitration for any loss attributable to the FTX Share Consideration**, and specifically requests that the arbitral tribunal explicitly find that any damages awarded are not in any way related to the FTX Share Consideration.

29. That is because the Respondent has already persuaded the Bankruptcy Court to make a preemptive declaration that under a United States bankruptcy statute (11 U.S.C. Section 510(b)) any claims or damages that arise from the purchase of equity would be subordinated in the bankruptcy proceeding and receive no recovery—even if such claim is based on fraudulent behavior targeting a specific commercial counterpart.  That ruling has made it impossible for the Claimant to recover any amount that an arbitral tribunal might find the Respondent liable to pay in respect of that distinct loss.

30. That is why, to repeat for emphasis, the Claimant is limiting his damages claims in this arbitration to those in respect of other harms, and respectfully requests that the arbitral tribunal ensure that any award in the Claimant's favor explicitly confirms that any damages awarded do not arise from the purchase of FTX shares.

## IV. GOVERNING LAW AND ARBITRATION AGREEMENT

31. The parties have agreed in the SPA that their entire legal relationship is to be governed by Japanese law, and that "any dispute, controversy or claim arising in any way out of or in connection with [the SPA]" must be submitted to arbitration under

the SIAC Rules and seated in Singapore, as follows:

19.1 This Agreement (including a dispute relating to its existence, validity or termination) and any non-contractual obligation or other matter arising out of or in connection with it are governed by the laws of Japan.

19.2 Any dispute, controversy or claim arising in any way out of or in connection with this Agreement (including, without limitation: (i) any issue regarding contractual, pre-contractual or non-contractual rights, obligations or Liabilities; and (ii) any issue as to the existence, validity, breach or termination of this Agreement) shall be referred to and finally resolved by binding arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the SIAC Rules in force when the Notice of Arbitration is submitted in accordance with such Rules (the "Rules"), which Rules are deemed to be incorporated by reference into this Clause and as may be amended by the rest of this Clause. The arbitration proceedings, all documents and all testimony, written or oral, produced in connection therewith, and the arbitration award shall be confidential.

19.3 The arbitration tribunal ("Tribunal") shall consist of three arbitrators to be appointed in accordance with the Rules unless the parties separately agree to one arbitrator.

19.4 The seat and venue of the arbitration shall be Singapore. The arbitration agreement in this Clause 19 shall be governed by the laws of Singapore.

19.5 The language of the arbitration proceedings shall be English.

19.6 Any award of the Tribunal shall be made in writing and shall be final and binding on the parties from the day it is made. The parties undertake to carry out any award without delay.

19.7 Nothing in this Clause 19 shall be construed as preventing any party from seeking conservatory or interim relief from any court of competent jurisdiction.

32.    As this dispute arises from FTX's conduct in connection with aspects of the transaction to which the SPA relates, it falls within

12

the scope of the parties' arbitration agreement.

33.    For the avoidance of doubt, on 31 July 2025, the Bankruptcy Court ordered that the Claimant's claims with respect to the transaction are to be adjudicated through arbitration in accordance with the SPA's arbitration agreement.

34.    The Parties acknowledge, and the Claimant reserves, that certain issues (e.g., claim allowance and distribution under the Confirmed Plan) are reserved to the U.S. Bankruptcy Court for the District of Delaware. Consistent with the Court's 31 July 2025 orders, this arbitration is limited to: (i) liability and damages under Japanese law arising out of or in connection with the SPA and Side Letters; and (ii) the quantification of any such damages for submission to the Bankruptcy Court for allowance and distribution purposes.

## V.  THE TRIBUNAL

35.    As set out in Clause 19.3 of the SPA (excerpted above), the parties have agreed that the arbitral tribunal shall consist of three arbitrators absent any subsequent agreement.

36.    There has been no subsequent agreement between the parties as to the number of arbitrators, with the result that the number of arbitrators should be three.

37.    Pursuant to Rule 22.1 of the SIAC Rules, the Claimant hereby nominates as co-arbitrator Ms Chiann Bao, whose contact details are as follows:

> 1 Wallich Street
> #14-01 Guoco Tower
> Singapore, Singapore 078881
>
> Phone: +65 8354 7488
> Email: bao@chiannbao.com

13

## VI. PRELIMINARY STATEMENT OF RELIEF REQUESTED

38.   For the reasons set out above, the Claimant respectfully requests that the tribunal issue an Award:

(a)   declaring that FTX intentionally or negligently infringed the rights of the Claimant in connection with the Claimant's decision to sell 20% of his interests in Liquid to FTX in a manner that enabled FTX to continue to hold the consideration that had been legally transferred to the Claimant, causing harm to the Claimant;

(b)   declaring that FTX intentionally or negligently infringed the rights of the Claimant in connection with the Claimant's decision to sell 20% of his interests in Liquid to FTX for a price far below their actual fair market value;

(c)   declaring that, under Japanese law, FTX's intentional or negligent infringements of the Claimant's rights in respect of the two 20% tranches of his shares in Liquid were distinct acts that resulted in legally distinct harms from the harm that FTX caused to the Claimant by fraudulently inducing him to transfer 60% of his shares in Liquid to FTX in exchange for FTX equity;

(d)   declaring that the Respondent is obligated to pay the Claimant money damages corresponding to the actual dollar value of the Liquid shares of which he was wrongfully dispossessed, valued as of the date of dispossession (preliminarily estimated to be USD 45 million);

(e)   declaring that FTX made misrepresentations and breaches of warranty for which the Claimant suffered

14

"losses" as defined in the SPA,[2] which "losses" include both the loss of 20% of his interest in Liquid as well as significant legal and other expenses incurred to enforce his legal rights, and declaring that the Respondent is obligated, pursuant to clause 9.3 of the SPA, to pay such amounts;

(f)  quantifying the amount of compensation in damages owed by the Respondent to the Claimant according to the principles of Japanese law and ordering the Respondent to pay that amount to the Claimant;

(g)  ordering the Respondent to pay interest on all damages awarded at the applicable rate under Japanese law, to run from the date of the breach until 12 November 2022;

(h)  ordering the Respondent to bear all costs incurred by the Claimant in connection with this Arbitration, including all of the Claimant's legal costs and expenses; and

(i)  granting such further or other relief as the tribunal deems fit.

Respectfully submitted

**Mori Hamada & Matsumoto**

Counsel for the Claimant

---

[2] "Losses" as defined in clause 1.1 of the SPA.

15