# EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .   Chapter 11
                                    .   Case No. 22-11068 (KBO)
FTX TRADING LTD., *et al.,*         .
                                    .   (Jointly Administered)
                                    .
          Debtors.                  .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .
FTX RECOVERY TRUST,                 .   Adversary Proceeding
                                    .   No. 24-50184 (KBO)
          Plaintiff,                .
                                    .
     -against-                      .
                                    .
GATE TECHNOLOGY INCORPORATED,       .
GATE GLOBAL, CORP., GATE            .
INFORMATION PTE. LTD., and          .
SUN YUNZHI,                         .
                                    .
          Defendants.               .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .
FTX RECOVERY TRUST,                 .   Adversary Proceeding
                                    .   No. 24-50188 (KBO)
          Plaintiff,                .
                                    .
     -against-                      .
                                    .
FORIS DAX MT LTD., FORIS DAX        .
ASIA PTE. LTD., FORIS DAX,          .   Courtroom No. 3
INC., and IRON BLOCK CAPITAL,       .   824 Market Street
                                    .   Wilmington, Delaware 19801
          Defendants.               .
                                    .   Tuesday, August 12, 2025
. . . . . . . . . . . . . . . . .   .   9:30 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE KAREN B. OWENS
CHIEF UNITED STATES BANKRUPTCY JUDGE


- Cont'd -

FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 24-50191 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
AMERICAN VALUES                        .
COALITION, INC.,                       .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . . . .    .
                                       .
FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 24-50197 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
FARMINGTON STATE CORPORATION           .
(f/k/a FARMINGTON STATE BANK,          .
d/b/a GENIOME BANK, d/b/a              .
MOONSTONE BANK), FBH                   .
CORPORATION, and JEAN                  .
CHALOPIN,                              .
                                       .
          Defendants.                  .
                                       .
. . . . . . . . . . . . . . . . . .    .
                                       .
FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 24-50199 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
NEW YORK SOLIDARITY NETWORK,           .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . . . .    .

                                  - Cont'd -

```
FTX RECOVERY TRUST,              .   Adversary Proceeding
                                 .   No. 24-50201 (KBO)
          Plaintiff,             .

     -against-                   .

PROSPERITY ALLIANCE, INC.,       .

          Defendant.             .

. . . . . . . . . . . . . . . . .
                                 .
FTX RECOVERY TRUST,              .   Adversary Proceeding
                                 .   No. 24-50204 (KBO)
          Plaintiff,             .

     -against-                   .

WORKING AMERICA,                 .

          Defendant.             .

. . . . . . . . . . . . . . . . .
                                 .
FTX RECOVERY TRUST,              .   Adversary Proceeding
                                 .   No. 24-50211 (KBO)
          Plaintiff,             .

     -against-                   .

SECUREBIO, INC. dba              .
SECUREBIO,                       .
                                 .
          Defendant.             .
                                 .
. . . . . . . . . . . . . . . . .
```

- Cont'd -

FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50212 (KBO)
              Plaintiff,               .
       -against-                       .
THE GOODLY INSTITUTE dba               .
GOODLY LABS,                           .
                                       .
              Defendant.               .
                                       .
. . . . . . . . . . . . . . . . . . .
FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50213 (KBO)
                                       .
              Plaintiff,               .
                                       .
       -against-                       .
                                       .
SPARTZ PHILANTHROPIES, dba             .
RETHINK CHARITY and                    .
NONLINEAR,                             .
                                       .
              Defendant.               .
                                       .
. . . . . . . . . . . . . . . . . . .
FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50214 (KBO)
                                       .
              Plaintiff,               .
                                       .
       -against-                       .
                                       .
MANIFOLD MARKETS, INC.,                .
                                       .
              Defendant.               .
                                       .
. . . . . . . . . . . . . . . . . . .

                              - Cont'd -

```
FTX RECOVERY TRUST,                  .  Adversary Proceeding
                                     .  No. 25-50635 (KBO)
           Plaintiff,                .
                                     .
      -against-                      .
                                     .
KUROSEMI, INC.,                      .
                                     .
           Defendant.                .
. . . . . . . . . . . . . . . . . .
```

APPEARANCES:

For the FTX
Recovery Trust:          Matthew Pierce, Esquire
                         LANDIS RATH & COBB LLP
                         919 Market Street
                         Suite 1800
                         Wilmington, Delaware 19801

                         Brian D. Glueckstein, Esquire
                         Christopher J. Dunne, Esquire
                         SULLIVAN & CROMWELL, LLP
                         125 Broad Street
                         New York, New York 10004

For Claimant 911658:     R. Stephen McNeill, Esquire
                         POTTER ANDERSON & CORROON LLP
                         Hercules Plaza
                         1313 N. Market Street, 6th Floor
                         P.O. Box 951
                         Wilmington, Delaware 19801


Audio Operator:          Kim Ross, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

6

INDEX

MOTIONS:                                                        PAGE

Agenda
Item 26:  FTX Recovery Trust's One Hundred Sixtieth        7
          (Substantive) Omnibus Objection to
          Certain Overstated Proofs of Claim
          (Customer Claims) [D.I. 29733 & 29744,
          filed on February 25, 2025]

Agenda
Item 27:  Motion of Claimant No. 911658 for Leave
          to File and Serve Sur-Reply in Support of
          Claimant's Response [D.I. 32264, filed on
          August 8, 2025]

          Court's Ruling:                                  38


DECLARATIONS:                                                   PAGE

Michael S. Leto Declaration and Accompanying               8
Exhibits

Transcriptionists' Certificate                             52

(Proceedings commenced at 9:34 a.m.)

THE CLERK:  All rise.

THE COURT:  Good morning, everyone.  Nice to see you.  Please be seated.

Good morning.

MR. PIERCE:  Good morning, Your Honor.  Matthew Pierce with Landis Rath & Cobb on behalf of the FTX Recovery Trust.

Your Honor, the FTX Recovery Trust filed a second amended agenda at Docket 32308.  As noted on the second amended agenda, there are two items that remain going forward today.  Those are Agenda Items 26 and 27 with respect to the objection to Claim Number 96754.

Your Honor, I will cede the podium to Mr. Glueckstein who will address the objection.

THE COURT:  Thank you very much.

MR. GLUECKSTEIN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. GLUECKSTEIN:  Brian Glueckstein, Sullivan & Cromwell, for the FTX Recovery Trust.

We are here this morning to address the Trust's objection to Claim Number 96754, which is claimant's untimely claim seeking an allowed claim of $690,420 alleging fraud and comingling of funds by FTX that we submit fails on both the law and the facts and should be disallowed on the record that

will be before the Court today.

The claimant is seeking an allowed claim on account of funds he withdrew from the FTX Trading customer account and donated to the FTX Foundation in April 2021, more then 18 months prior to the petition date on these cases. The claimant has demanded that this hearing go forward today on the current record and that his claim be promptly adjudicated.  That is his choice and is acceptable to the Trust because we submit that there are multiple legal basis to deny this claim on the papers.

In addition, Your Honor, we have submitted -- the Trust has submitted evidence through the declaration of Michael S. Leto, which was filed at Docket Number 32217.  I would request at this time that the declaration and exhibits attached thereto be entered into evidence.  Mr. Leto is in the courtroom and available for cross-examination; although, we have conferred and been informed that the claimant does not intend to examine Mr. Leto.

THE COURT:  Okay.  Any objection to the admission of Mr. Leto's declaration and accompanying exhibits into evidence?

MR. MCNEILL:  No objection, Your Honor.

THE COURT:  Okay, thank you.  Its admitted.

(Leto declaration and attached exhibits received into evidence)

MR. GLUECKSTEIN:  Thank you, Your Honor.

THE COURT:  And just for confirmation, do you intend to cross-examine or wish to cross-examine Mr. Leto on the substance of his testimony today?

MR. MCNEILL:  Not on the substance of his declaration, which I understand there is no -- there is no supplemental direct to my knowledge but that is correct, Your Honor.

THE COURT:  Alright, thank you.

MR. GLUECKSTEIN:  Thank you, Your Honor.

The Trust has objected to this claim on multiple grounds.  The Third Circuit has long ago established that a claimant always has the ultimate burden of persuasion to prove he has a valid claim and yet he is not here offering any evidence today that can satisfy that burden; no witnesses, no evidence to support the assertions in his proof of claim.  That should be the end of the inquiry.

Your Honor may recall that when the claimant tried at the last minute to have this claim objection heard at the June omnibus hearing, Your Honor observed that a fraud claim of this type, as alleged, assuming one is viable, and as I will discuss we submit it is not, "seems highly evidentiary in nature," if the claimant is offering no evidence today beyond what was asserted in his response to the objection and the mere allegations in his proof of claim that was submitted

in these cases.

Instead, Your Honor, the claimant is requesting that the Court disregard and make a special exception for him to, by my account, at least each of the plan, the confirmation order, the omnibus procedures order, and the Court's claim bar date order.  He provides no justification or basis to do any of these things.

The claimant wants to share in the estate alongside legitimate creditors, and we submit that his money grab should be rejected.  There is no path where this claim should survive beyond today's hearing and it should be disallowed for no less than four independent reasons.

First, Your Honor, the claim is barred as a matter of law by the plan and the confirmation order because the claim is premised on allegations of fraud and comingling by the FTX insiders.  His proof of claim is replete with allegations, many of which lifted from the debtors reports submitted in these proceedings, that the FTX insiders misappropriated and mismanaged customer funds through the FTX Foundation but no such claim is viable; having been conclusively resolved through the global settlement approved in the plan that compromised all customer fraud claims as part of the global resolution that provided, amongst other things, the customer priority settlement that is a hallmark of the plan.

Section 5.2 of the plan conclusively provides that in return for the claims treatment and benefits provided for under the plan, among other things, the plan is in resolution of all claims against the debtors for fraud, misappropriation and misconduct by the insiders.  The reasonableness and importance of this settlement was part of the evidentiary record at the confirmation hearing before Judge Dorsey and the confirmation order expressly approved the global settlement in Paragraphs 41 and 93.

The claimant is seeking to increase his customer claim arising from his petition date balance of 56 cents to almost $700,000 on a fraud theory which is precisely what the global settlement precludes.  We submit the Court need look no further and that the claim should be disallowed on this basis.  There are, as we detail in our papers and I will touch on, other independent grounds to disallow this claim as well.

Second,  Your Honor, the claim is time barred. It was filed almost a year after the customer bar date.  The claim -- the proof of claim that was filed pays some lip service with conclusory statements which would be applicable to anyone and cannot be sufficient, that the lateness should be treated as excusable neglect, but offers no evidence, and will offer no evidence today at all to support such a finding.  Importantly, Your Honor, the claimant never filed a

motion with this Court seeking leave to file late claim before doing so.

The Third Circuit and Courts in this district emphasize the importance of claims bar dates and, thus, the need to enforce them given the important purpose that they serve.  We submit the Court should enforce the bar date here and disallow the claim.

Third, Your Honor, the plan does not permit the allowance of a claim because the Trust has succeeded in clawing back a portion of funds donated to certain charities.  Claimants response, filed in response to the objection, asserts an argument that is not contained in its proof of claim but that is equally flawed.  He asserts that because the debtors have successfully clawed back certain funds from certain charities that that somehow provides a basis for allowance of his claim.  It does not.

Nothing in the plan or the bankruptcy code, and none is pointed to by the claimant in his response, provides a basis for claims allowance on the basis that the debtor recovered value in fraudulent transfer litigation.  Those recoveries augment the estate for the benefit of all creditors but the claimant must have an allowance claim in order to receive a distribution from those in other estate assets.  Here, the claimant simply does not have an allowance claim.

Faced with that reality, the claimant attempts to invoke the Court's equitable powers under Section 105(a) of the Bankruptcy Code.  That provision, of course, does not provide a separate substantive basis to allow a claim or create any substantive rights otherwise unavailable under applicable law.  And Courts in this district and others are clear that Section 105 cannot be used to modify or override the terms of a confirmed plan and that is fundamentally what the claimant here is asking the Court to do.

The plans terms, including both treatment of the customer entitlement claims and the approval of the global settlement are binding on all claimants including this one. The claimant cannot interpose a plan objection now by simply citing to Section 105 of the Bankruptcy Code.  Further, FTX to date has recovered only a portion, approximately 58 percent, of the total donated that's at issue; the majority of which were misappropriated customer funds donated from corporate accounts not specifically authorized donations such as the claimant's transfer here.

In addition, Your Honor, in our reply and in rebuttal to any argument about the equities of this situation, the Trust has raised significant factual inconsistencies and concerns with respect to the voracity of the information the claimant has provided in connection with his account opening documents, the claim that was submitted

to this Court and the ownership of the funds that were originally transferred back in 2021 to the FTX Foundation. While the Trust would require further discovery if it somehow became necessary, the facts that are presented at this stage in the exhibits to Mr. Leto's declaration that are now in evidence undermine any argument that the equities favor the claimant here in any way.

Fourth and finally, Your Honor, the relevant facts asserted by the claimant in his proof of claim are conclusively refuted now by the Leto declaration and that testimony stands and will stand unchallenged today.  The claim is premised on the assertion that FTX Trading misused or misappropriated the claimant's funds designated in 2021 for charitable causes.

As explained in Mr. Leto's declaration, the Trust review of the exchange account created to receive customer donated funds as opposed to simply customer deposits on the exchange but the account that was earmarked for customer deposited funds such as the claimants, in fact, made donations to various charities with the account balance dropping as low as $56,000 after this claimant had made the donation in question.

The sole evidence before the Court that -- well, the sole evidence that the claimant points to in his submissions is to a September 2021 email that stated FTX

would notify the claimant of the donation details and he claims that he never received such a notification.  The account records attached and explained in Mr. Leto's declaration established that substantially all of the funds in the customer donations account that were designated were, in fact, donated to certain organizations.

So, regardless of whether any notification was ever provided to the claimant with respect to the ultimate recipient of his donated funds, the evidence now, again unrefuted before the Court, shows that those funds, in fact, were donated as part of the donations made by the FTX Foundation in the aggregate.

As a result, Your Honor, we submit that the factual allegations, and they're just allegations of the claim, have been conclusively rebutted and the claimant offers no evidence to the contrary.  Therefore, Your Honor, the factual record in addition establishes that the claim fails and should be disallowed.  And we certainly submit there is no basis and there is no information before the Court today for which the Court could determine that this is an allowable claim under our confirmed plan.  We, therefore, submit that the Court -- that the evidence before the Court conclusively establishes the claim must be disallowed and expunged.  We respectfully request that the Court sustain the objection.

I am happy to answer any questions and, otherwise, we would reserve time for rebuttal.

THE COURT:  I have no questions at this time. Thank you.

MR. GLUECKSTEIN:  Thank you, Your Honor.

THE COURT:  Mr. McNeill.

MR. MCNEILL:  Good morning, Your Honor.  Steve McNeill from Potter Anderson & Corroon on behalf of Claimant 911658.

And, You Honor, that moniker, which was originally signed by the debtors, is important here.  My client is a public figure in the cryptocurrency community.  Due to his position and the community and past security threats he is particularly concerned about his personal information being made public and accessible to bad actors such as data minors and others.

The debtors acknowledged this risk long ago in their customer confidentiality motion but for some reason the Recovery Trust has reverted to using my clients name in the reply. It is what it is at this point, Your Honor.  Your Honor is aware of the back and forth about the redactions without consulting with us, Your Honor, but that is what it is.

Your Honor, today we are here to address the objections raised by the Recovery Trust in the hundred and

sixtieth omnibus objection which was filed on February 25th. That objection, Your Honor, raised two objections to my clients claim. One is that the claim was overstated and, two, was that is barred by the plan.  There was no mention of a late-filed claim objection.  The unclean  hands argument, Your Honor, I believe is ultimately a challenge to the claim. There is no -- the statements are unsupported.  Mr. Glueckstein acknowledged as much that he needs evidence. That issue is not ripe regardless but it's also where my client lived, where his address was, what his name is has nothing to do with whether the claim is overstated,  Your Honor.

Your Honor, I submit that both the late filed claim objection and  objection to the merits of the claim should not be allowed to go forward today, Your Honor. It was raised for the first time in the debtors reply five days ago after we had served discovery, long after we had filed our objection originally.  It's a very basic objection, Your Honor, that could have been raised long ago. There was not a need to -- there is no real investigation that is needed to know when the claim was filed.

My client's proof of claim, which he filed pro se, acknowledges as much and has several paragraphs regarding why the claim should be allowed for excusable neglect, Your Honor, but, Your Honor, none of that is relevant to what was

actually put forth in the objection filed back in -- filed six months ago, Your Honor.

Even if the prior order allowing them to file a second substantive omnibus objection to modify the rules is binding on my client, and we dispute that, Your Honor, but that is not before Your Honor today.  Mr. Glueckstein is correct, there is no motion for relief from that order or to vacate that order with respect to my client but, nevertheless, we are entitled to 30 days' notice under the federal rules of a claim objection and that late filed claim objection simply cannot go forward today regardless of the merits of that objection.  If they want to go forward, they need to -- they needed to and should have filed a second omnibus objection. I didn't even know that order existed until they filed their reply which, again, was five days ago.

So, Your Honor, turning to the merits of the actual objection that was filed, and it is the Recovery Trust's burden and obligation to present all issues, all challenges to my client's claim.  They are the ones who teed this up, Your Honor.  We are the respondent here.  We are not trying to parse anything.  They have been aware since we were before Your Honor a few months ago that we wanted to go forward as soon as possible.  We locked in this date shortly after that hearing as a way to go forward and at no point did they raise any additional objection until the reply was

filed.

So, Your Honor, as far as evidence and facts goes, with respect to the on-file objection, Your Honor, there is no real factual dispute between the parties. They -- the Recovery Trust admits the evidence -- the facts that are relevant here, Your Honor. Those facts are quite simple.

My client, between April 10th, 2021 and April 13th, 2021, transferred $690,420 from his FTX Trading account to FTX Philanthropy with the understanding that the funds would be used for charitable purposes. The transfer and receipt of the funds by FTX Philanthropy is not disputed, Your Honor. The funds were paid. The debtors got them. In fact, the debtors transferred them.

On September 20th, 2021, and this was an exhibit attached to our response, Your Honor, FTX Philanthropy emailed my client stating that his funds had not yet been distributed and that FTX was preparing to disperse the funds to a US charity. The email indicated that they would provide further updates to my client once the donation was made but no further updates were provided.

Since filing our objection, Your Honor, we have discovered that my client's funds were sent to New Venture Fund, an alleged charity. And for purposes of today we will agree that that is a charity but it's unclear, Your Honor, but for today's purposes it does not matter for our position.

In October 2021, the debtor contributed my client's funds, donated my client's funds to the New Venture Fund as part of an $8 million all-in contribution that was designed to clear the FTX Philanthropy account of a backlog of customer contributions.  This fact is also not in dispute. The transfer information is in Mr. Leto's declaration. They're exhibits in the debtors own declaration. This is not disputed, Your Honor.

The only factual dispute today, Your Honor, on the -- at least with respect to what is included in the on-file objection is whether any of FTX's donations prior to that September 20th email included funds that were donated by my client.  Our position, Your Honor, is that the email provides proof that all of my client's funds were still held by FTX Philanthropy as of that date.  Why else would the email say we are about to send your money to a US charity if some of those funds had already been sent out.

The Recovery Trust's position, while unclear, appears to be that all of the funds that were in the FTX Philanthropy account were distributed on some type of pro rata or other basis and that at least some of my client's funds were paid out to those earlier contributions.  But they have offered no evidence to support that my clients funds were included in those donations and the tracing rules, Your Honor, they just don't work that way.  The tracing rules

allow me, under the lowest intermediate balance test, to assume that the money that is still in the account is still my client's money until shown otherwise.

THE COURT:  So, the $56,000?  I'm sorry, I'm not --

MR. MCNEILL:  No.

THE COURT:  -- following.

MR. MCNEILL:  No, you're --

THE COURT:  So, you agree that the funds were donated to New Venture.  Is that what I heard?

MR. MCNEILL:  Yes, Your Honor.  We agree that as part of the $8 million transfer, that my client's $690 or at least most of it was donated to New Venture Fund in October of 2021.

THE COURT:  Okay.

MR. MCNEILL:  Again, that issue is not in dispute, Your Honor.

THE COURT:  Okay.

MR. MCNEILL:  After the petition date, the debtors recovered $7.125 million of that $8 million from New Venture Fund and certain subsequent transferees.  Those -- that is reflected in Exhibits 40 to 43 to the Leto declaration regarding stipulations on returning funds.  And, Your Honor, that number is 89.1 percent.  So of the $8 million they gave to New Venture, the debtors clawed back 89.1 percent of that

money.  Our position is our money was held as of September 20th, that was the next transfer, that was designed to clean it out, our money went to New Venture and then came back post-petition.

Your Honor, now -- so despite it being a charitable contribution now we are talking about, at least, 89.1 percent of my client's funds are now in the possession of the estate and they are being used to fund distributions to other creditors who are not charities.

Your Honor, while the Trust attempts to cherry-pick which claimants are eligible for distribution under the plan, my client is no different then the thousands of individuals who were defrauded by the debtors prepetition and should be entitled to distributions under the plan in the same manner.  Sure, the global settlement resolves claims against the estate in exchange for distributions under the plan but my -- it makes no sense to allege that my client's claim is simultaneously resolved by the global settlement but that he is not eligible for a distribution pursuant to that settlement like all other defrauded customers of the debtor, Your Honor, simply because the debtors washed his funds through a fraudulent transfer to an alleged charity.

Your Honor, the Trust seeks to penalize my client for attempting to support FTX's philanthropic efforts rather than the for-profit exchange by disallowing the claim while

retaining my client's funds for the benefit of other creditors, especially when those funds were earmarked for charity.

This Court, as a court of equity, cannot allow the Recovery Trust to benefit from claimant's funds while using the global settlement as a shield to prevent my client from recovering on his claim.  I don't think its in dispute that bankruptcy courts are a court of equity. The Supreme Court has long recognized this, Your Honor.  Your Honor has the equitable powers under 105(a).

The great principles of equity are aimed at securing complete justice for the parties before the Court and so bankruptcy courts have broad authority to act in a manner to prevent injustice or unfairness in the administration of the bankruptcy estate.

THE COURT:  So, is the remedy that you seek a constructive trust remedy?  I am trying to understand what the legal principle is for your theory.

MR. MCNEILL:  Your Honor --

THE COURT:  Is it this idea that those funds once clawed back are now held in trust for your client?

MR. MCNEILL:  Yes.  I think that is correct, Your Honor.  There is -- the plan itself creates a constructive trust for the benefit of creditors as part of the plan and there is also equitable -- yeah, that is a disclosure

statement Section 4(b)(3) and (4) where the disclosure statement discusses a constructive trust.

THE COURT:  Where is that again?

MR. MCNEILL:  In the disclosure statement Section 4(b), Sub (3) and (4), is a discussion by the disclosure statement of what a constructive trust is and the equitable tracing rules allow a court to impose a constructive trust to find the trust attached to comingled pools of assets and remains in effect even as new assets are added and removed to the pool.

THE COURT:  So, 4(b)?

MR. MCNEILL:  Section 4(b), Sub (3) and (4).

THE COURT:  Do you know what page that is?

MR. MCNEILL:  Ms. Forshay is looking at that, Your Honor.

THE COURT:  Thank you.  I have it in front of me.

MR. MCNEILL:  Page 82, Your Honor.

THE COURT:  Okay, thank you.

MR. MCNEILL:  Yes.  So, Your Honor, the plan is already set up as a constructive trust for the benefit of parties who were defrauded and acknowledges the extensive comingling that I think the entire world knows was going on prepetition as a result of the debtors obligations.

Your Honor, despite the equitable basis for allowing my client's claim under the plan, the Recovery Trust

is seeking to inequitably disallow my client's claim while retaining his funds to pay to other creditors.  This is the opposite of equity.

And, Your Honor, we found a case this morning, in a receivership context, involving a Ponzi scheme in Utah that squarely addresses this issue we believe, Your Honor.  That case is CFTC v. Rust Rare Coin, Inc., the citation is 2023 U.S. District Lexus 194302.  That is a decision out of the District of Utah in October of 2023.  There the Court found "It is because of the money invested by the defrauded investors, and the receivers ability to claw back ill-gotten gains, that victims of the receivership defendants stand to recover any funds at all."

The Court previously had ruled in a challenge to the receiver's findings that equity was best served by treating unsecured creditors and defrauded investors in the same class.  Again, it's a receivership context and this is not a Ponzi scheme, Your Honor, but the concept of using someone's funds to pay other creditors when those funds were earmarked for charity is the fundamental issue here, Your Honor.  Our client made a charitable donation. The money was supposed to go to a charity.  Most, if not all of that money, never made it to charity or, at least, didn't stay with a charity.

My client was a customer on the FTX Exchange that

was fraudulently induced to provide funds to the debtors, just like every other customer claimant caught up in the debtors web of fraud and he should now be entitled to recovery under the plan.  Accordingly, the Court should overrule the claims objection, allow the claim in its entirety as a valid US customer entitlement claim under the plan.

THE COURT:  Thank you very much.

MR. MCNEILL:  Thank you, Your Honor.

MR. GLUECKSTEIN:  Your Honor, thank you.  Brian Glueckstein for the Recovery Trust.

So, we heard a few remarkable things just now because clearly the claimant is coming up with new theories as we go.  I want to take a step back.  This claim, we heard nothing, we heard nothing in the papers and we have heard nothing this morning that engages at all with the fact that this claim is a claim for fraud and is barred by Section 5.2 of the plan, full stop.

What we are now hearing is that the claimant has apparently accepted the debtors evidence that the entire theory of the proof of claim, the belated proof of claim that was filed, was that the money never left FTX and, therefore, he should be entitled to recover the funds that were never actually donated because he had this email from 2021 that never had a follow up that said the money was actually

donated.

We have now heard that the claimant is accepting that the money actually went out to different charities, at least the portion that went to New Ventures.  We made clear in our -- in the Leto declaration that a whole variety of charities received money from the FTX Foundation in the relevant timeframe. That undermines the entirety of the claim.  The claim was that he had made a deposit on the FTX Exchange, the money was commingled with debtor assets, never went out to charities, as it was earmarked for and, therefore, he had some basis for a claim.  We, of course, contested that claim, but that was the argument that was being made in the proof of claim.

They've now abandoned that argument.  They've accepted the premise that the money actually left FTX and went to a charity and the first time we've heard that was this morning.  And I would submit there's nothing left of this claim.  What they're trying to do, though, Your Honor, is morph this into some, this argument that appears in the response to the objection that we've now elaborated further on this morning, that somehow, because FTX succeeded in its litigation in clawing back funds into the estate, that those funds were not for the benefit of the estate, but were for the benefit of this claimant, at least a portion of them that he claims originated with his deposit.

But, critically, Your Honor, there's no evidence, none, zero, no evidence before this Court. If they can trace these funds in any way, shape or form to the deposit that was made in 2021 to the FTX donations account from this claimant. There's no evidence. Where's the evidence?

He suggested that we put forward no tracing analysis. If they want to actually say that money that we recover from a third party can be traced to this claimant, they need to come forward with evidence today and put that evidence on. Where is it? There is no evidence, because I can't be done.

What we did was resolve litigation with a third party. We had a fraudulent transfer theory, and to take a step back, the premise of that fraudulent transfer, as all of the fraudulent transfers is, with respect to the charities and philanthropic organizations, is that notwithstanding limited amounts that were earmarked for donation that were deposited into an account to the FTX Foundation, like this claimant's, most of the funds that went out to charities and foundations came from customers and accounts that were swept, funds that were swept off of the FTX Exchange and through Alameda, for customers who had no idea that these funds were being used for any purpose, other than sitting in their FTX account. That's the whole premise of these Chapter 11 cases. That's why Mr. Bankman-Fried is in prison.

This claimant is not one of those customers.  This claimant deposited money for the express purpose of making a charitable donation.  That is entirely different.

And counsel says, Well, his claimant is no different than any customer who was defrauded, but we submit he's very differently situated for that reason alone, but there's a second reason, Your Honor, that's critically important here.  These other customers have balances on the exchange as of the petition date.  And the question, and what's resolved through the global settlement is the priority of payment of those claims as a result of fraud arguments, as a result of customer property arguments, all of which were resolved through the plan.

This claimant has a 56-cent balance as of the petition date.  What he's trying to do is go back in time to 2021 and say that the money that I deposited with the express purpose of being donated to a charitable organization, which they now admit, in fact, happened, should be the basis for an allowed claim.  There is absolutely no -- nothing that suggests that that's a remedy that's possible.  There is -- there was no balance as of the petition date in his account beyond the 56 cents.

And this argument that somehow all of the estate assets are being held in some kind of constructive trust for this claimant, there's nothing in the plan documents that say

that.  What the plan documents provide is that all of the funds that are amassed by this estate, all of the assets that are amassed by this estate are going to be for the benefit of the estate.  And what the creditors got in the global settlement, the customers got in the global settlement, amongst other things, was the customer priority settlement, which allowed a priority of payment so that out of the three pools of assets, there would be priority payments made to customers off the top so they would get a larger percentage of the general pool of assets, in addition to the dot com and the U.S. asset pools, the general unsecured creditors, and non-customer creditors got.  That's what's contained in the plan, but all of this, the distributional architecture and the claim treatment architecture, Your Honor, that was approved is premised on the fact that there's a basis to have an allowed claim.

And what is the basis for an allowed claim?  It's a claim that exists as of the petition date against these debtors and this claimant simply doesn't have such a claim.  The only basis that he could come up with for such a claim would be a damages claim on a fraud theory.  That's what this is.  I was defrauded.  The money that I believe was being sent out to charitable causes didn't happen, of course, now we see that with respect to these donations, it did happen, but that was his theory and that's the claim that was barred,

Your Honor, by the global settlement. It's really not more than that.

Some of this is, we're getting into the weeds a little bit of the evidence, but I think we need to step back from that also, Your Honor. There's a very limited set of evidence that's before the Court. It's the evidence that was put forward by Mr. Leto in his declaration and it shows the account records and it shows that the money that went into the FTX donations account from customers such as this claimant, who specifically intended to have money donated to philanthropic causes actually went out the door. That's the evidence, and so that undermines the premise of their claim.

This argument now that because the estate brought money in, that that should give rise to a claim, there's nothing. There's nothing in the briefing. There's nothing in the law that we're aware of that would allow for this Court to allow a claim.

And counsel admits it; again, he referred this morning to Section 105 and the general powers of equity of the Court. And, again, we submit, Your Honor, that there's absolutely nothing about Section 105 that allows the Court to grant an allowed claim where there is none, with respect to this debtor.

So, with that, Your Honor, I'm happy to address some of the other procedural points and I think I need to,

briefly, just on this issue of the late-filed claim issue. The hundred-and-sixtieth omni objection to the extent that the Court proceeds beyond the arguments we've discussed, did not address the late-filed claim, that is true.  That is a fact.  It's clear from the evidence from the face of the proof of claim that this claim was filed a year late.  There is no question.  There is no question that under Judge Dorsey's order that put in place the omnibus procedures in this case, that we could file a second substantive objection on that ground if necessary.

What has happened consistently throughout this process is that this claimant has not wanted to proceed in an orderly fashion.  They wanted to get to a hearing before Your Honor, so here we are.  So, we did not complete discovery. We're having a hearing.  Again, from the trust's perspective, that's fine, because this all can be decided on the record that's before the Court.  We did raise the untimeliness issue so the Court has the totality of the issues.  If the Court does not want to consider that argument today, if the Court denies or overrules our objection on the multitude of other grounds, we will file a second objection on the fact that this is untimely, but we do submit, Your Honor, that the Court always has the ability to enforce its orders and the claimant engaged on this issue in the proof of claim.

The claimant came forward and made a motion to

file a surreply, supposedly, to address what he viewed as new arguments in our reply brief, and then did not engage on the substance of those arguments in that reply and we find that to be very telling.  So, I don't want to go off on a tangent on this point.  It's an issue.  It's an independent ground that the Court can see from the face of the documents and the record before the Court to deny this claim.  The Court doesn't need to reach that issue with the other issues that are before the Court, but there is no question that if for some reason our objection was denied on all bases, that we will file a subsequent objection on the untimeliness ground, if necessary, and we view that as inefficient, so we did make those arguments as part of our submissions.

THE COURT:  Okay.  Thank you, I understand.

MR. GLUECKSTEIN:  Thank you, Your Honor.

MR. MCNEILL:  Good morning, again, Your Honor. Steve McNeill from Potter.

Your Honor, I do want to go back and clarify the page number from the disclosure statement.  Ms. Forshay tells me that the table of contents was off and that that discussion I was referring to actually starts on page 89.

THE COURT:  Okay.  I appreciate that.  I think I had found it on the version I have, so...

MR. MCNEILL:  Okay.  I did want to correct the record, Your Honor.

With respect to Mr. Glueckstein's reply a moment ago, I'll give him the benefit of the doubt because he was not involved in the settlement discussions or anything else until yesterday, but the position I articulated this morning, Your Honor, and I'm not going to get into the settlement discussions, was articulated over a month ago in connection with the settlement offers that we've exchanged back and forth.  It's not a new argument.  I'm not making it up.

Your Honor, the fact that information included in a *pro se* claim has turned out to be different than the reality following discovery requests and discussions can't be surprising to this Court, Your Honor, where, unlike the debtor, who seems to be hell-bent on adjourning this hearing for whatever reason, we have been very forthcoming with what our intentions were.  We wanted to have the hearing as soon as possible.  My client wants this money back so that he can get it to an actual charity.  That's what he wanted to do with it.  It was always the purpose.  The money is not in the hands of a charity.  He just wants to get it back so he can make that make that charitable contribution.

I don't have him here to put that as official evidence in the record, Your Honor, but my client is not so the nefarious actor.  He is someone who made a large donation with the specific purpose of the money going to charity.  The money went out to an alleged charity.  We don't dispute that,

but the money was clawed back.  That transfer was clawed back.

And there's an argument about tracing from a third party.  The third party repaid a fraudulent transfer claim.  Perhaps, we're only entitled to 89.1 percent of those funds, but those funds, Your Honor, unquestionably went out in a lump sum and they unquestionably came back in an equal lump sum.  That, Your Honor --

THE COURT:  Not entirely.

MR. MCNEILL:  Not entirely.

THE COURT:  Not entirely a lump sum.

MR. MCNEILL:  It was --

THE COURT:  It wasn't an eight-million-dollar transfer and then eight million came back.

MR. MCNEILL:  Correct.

THE COURT:  So if your client's funds were in that pool, perhaps they never came back.  We don't know whose funds came back.  I don't have any evidence on that.  I'm just -- not to get right to it, but there is no evidence as to that.

If Mr. Glueckstein's theory is correct that they're only trying to claw back the funds that were misappropriated from customer accounts that didn't give consent to make donations to charity, then that would seem to align with the clawback.

MR. MCNEILL:  But, Your Honor, that $8 million was paid from the FTX philanthropy account.

THE COURT:  Right.

MR. MCNEILL:  It wasn't paid from the general -- if we're reverting back to, well, all the accounts are commingled and all the accounts across the entire enterprise were commingled, then my client's money was always commingled with everyone else and all the more reason why he should be treated the same as everyone else.  They can't have it both ways where all the money was commingled except for this one particular donation that my client made and of the $7.125 million that came back, it just so happens that all of the six nine (indiscernible) stay with new venture fund was my client's money and no one else's.  That can't possibly be the case, Your Honor, as a matter of equity.

THE COURT:  Yeah.

MR. MCNEILL:  It is unfair that money earmarked for charitable purposes is now being distributed to other similarly situated people who are not charities.

THE COURT:  Okay.

MR. MCNEILL:  And that's my client's position, Your Honor.

MR. GLUECKSTEIN:  I'm sorry, Your Honor.

THE COURT:  This is it.  This is it, by the way.

MR. GLUECKSTEIN:  I thought we had -- I don't know

why, I thought we had the last word on our motion.

THE COURT:  Sur-sur-surreplies, but no.

MR. GLUECKSTEIN:  Okay.  But the issue --

THE COURT:  I understand the issues at this point.

MR. GLUECKSTEIN:  The only thing I will say, Your Honor, if I may, is that counsel is now testifying from the podium and he started think by saying that his client considers him to be a public figure in the crypto space and we've seen this before in this case.

What his client might do with the money, what his client intended to do; there is no evidence of any of that. None of that is part of the record.

We need to step back and look at the evidence that's actually before the Court.  The evidence before the Court is that there was money that was donated by the claimant.  That money went out to a third party.  The fact that we clawed money back in different amounts, absolutely, there's commingle funds.  All of our accounts are commingled. That's not the issue.

The issue is, what happened with respect to this money and does he have any tracing analysis that he can put before the Court to say this claimant's money is the money that went out and came back to us and there's no evidence before the Court of that, none, because there's no way to actually prove that and they didn't come here today and try

to do it.  They wanted a hearing.  We're here having a hearing.  The evidentiary record is what it is before the Court.  This claim is barred on multiple grounds, as I discussed, and the Court should sustain the objection.

Thank you, Your Honor.

THE COURT:  Okay.  Thank you very much.

There was quite a bit in the pleadings and there's quite a bit today, but I think I can answer the question before me fairly, succinctly and I will attempt to do so today, which is that I will sustain the trust's claims objection with respect to the claimant's claim.  In doing so, I am not addressing the timeliness arguments, because putting aside them, even if I allowed the late-filed claim, I don't believe the claimant has sufficiently approved that he has a valid and allowable claim.

He admits that the funds were, in fact, donated, per his consistent to a charity.  In my mind, we're done.  That destroys the claim.  There is no claim because the funds went out, per his directions and consent, to a charity.  That was his intent and his request and it was, in fact, fulfilled.

While there were funds that were given to the charity -- while some of the funds that were given to a charity were clawed back by the trust, there is -- I think we have a tracing problem.  There's insufficient proof that the

funds, in fact, went to the clawed-back charity, the target charity, and I think there's insufficient funds that the -- insufficient evidence that the fund that were, in fact, clawed back were the claimant's.

So we have two problems:  one, there's no tracing of where the funds actually went, which charity, and which charity returned the funds and if they, in fact, were the client's funds.  So, at that point, we're finished.

Even if funds came back, there's no mechanism in the plan or a viable legal theory for the return of the funds to the account so that the claim can be allowed and then credited and treated as a customer entitlement claim for purposes of distributions under the plan.  A constructive trust theory is a remedy on account of a valid claim; again, there is no valid claim.  If there was a valid claim under some sort of fraud, mismanagement, commingling claim, it has been compromised through the global settlement under the plan for the good of all creditors and customers of FTX so that the litigation, with respect to these issues, wouldn't just consume the rest, you know, the funds in the trust and destroy all potential recoveries.

So, either way you proceed down the issue tree of this claim, if allowed -- excuse me -- if considered timely, it is not a valid claim and I agree it should not be allowed in its full total.  I understand that the claim objection

wishes to reduce it and allow it at 56 cents, I believe, and I will sustain that claims objection and enter the order, as has been submitted by the trust.

And I appreciate the time and effort that the parties have given to this matter in an attempt to resolve it.  I understand why we're here today and it is what it is, but I agree with the trust, there is no valid claim here, but for the 56 cents that remained in the account as of the petition date as reflected in Mr. Leto's declaration.

So, what do I need from the trust to memorialize this or I'll look for it under certification of counsel.

MR. GLUECKSTEIN:  Thank you very much, Your Honor. That's very clear.  The trust will submit a form of order under certification of counsel.  The remainder of the Omni objections we dealt with separately, so we'll submit an order just with respect to this claim.

THE COURT:  Let me ask you -- this is not related to this issue -- when I was preparing for this hearing, I was working from home and I had to rely on the Kroll website.  I noticed in trying to access documents that Mr. Leto's declaration was not available on that Kroll website in the redacted form.  It was only on the Kroll website in the sealed form, which isn't accessible, right, because it's completely inaccessible if it's sealed.  So I didn't spend the time to go through the Kroll's website.

I guess I'll just make the following statement. If Kroll is choosing to only put sealed documents on the public version that they're displaying on their public docket and foregoing putting the redacted versions; that's a problem.  That's a bad judgment.  The redacted version should be displayed so all parties in interest can access the redacted portion.  It just seems like a waste of time to just put the sealed line on the docket.

I understand this case is -- the docket is not helpful, so, but not having a redacted, publicly-available version is a problem.  It shows poor judgment.  So I would ask you to talk to them, because putting the sealed version makes no sense.  It's inaccessible.

MR. GLUECKSTEIN:  I completely understand, Your Honor.  We will check on that.  I do believe that with respect to this particular objection, it's a unique issue --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- that Your Honor encountered because of the fact, as was alluded to by counsel, while we have a disagreement as to the scope of what the trust could file publicly with respect to this claim objection, when we filed a redacted version with the sealed version, when we filed our reply brief, the scope of those, the information that was available publicly was objectionable to the claimant.

THE COURT:  Okay.

MR. GLUECKSTEIN:  So, at their request, we had Kroll pull the redacted version down --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- so we could agree on a further redacted version with the claimant.  That was filed, I believe, either last night or this morning --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- and that would be available. So I think the issue that Your Honor encountered was as a result of that process --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- so that we had pulled it down at the request of the claimant.

But the Court's comment is well taken and we certainly agree --

THE COURT:  Well, it sounds like it was just --

MR. GLUECKSTEIN:  -- that all information needs to be available.

THE COURT:  -- a complete fluke, okay.  It sounds like it was a complete fluke.  So, I don't want to make unnecessary work for the trust to have to go back and look at things.

If this was a unique instance, I'll take you at your word.  It's not the first time I've run into issues with

what has been posted by the claims agent, so -- not Kroll, in particular -- but I've run into issues with accessing claims that shouldn't have been redacted, that are redacted in various cases.  So, it is what it is.

MR. GLUECKSTEIN:  But understanding Your Honor's point and we do have -- and we do keep tabs on this, and we will just take a look to make sure because with respect to sealed and redacted, in particular, because, obviously, as Your Honor notes, there are a lot of filings in this case on a daily basis and we do need to make sure that everything is posted that should be, so that the available website that's free of charge is available to anybody who wants it.

THE COURT:  Okay.  And so another question, then: With respect to how claimants are being handled in this case, walk me through -- because this dovetails with the issue with the sealing -- and I have always taken the position, and I respect whatever Judge Dorsey ruled in this case -- I have taken the position that when the debtors file a sealing motion in the beginning of the case to redact the claims register, that that ex tents to only their filings and if parties choose to file a proof of claim in the case, it should not be redacted by the claims agent, because it's a voluntary submission by a claimant.  And so, if they would like to seal their claim, they may do so, but otherwise, there is no reason why the debtor should be going in and

sealing other people's filings. So, that's the position I have taken.

But it sounds like that is not how that's being implemented here, due to the unique issues with respect to crypto. So, going forward, just refresh my recollection. So, claimants were permitted to file confidential proofs of claim with an identifier?

MR. GLUECKSTEIN: Everybody was assigned a unique identifier. The proofs of claim of individual claimants are not publicly available.

THE COURT: Okay.

MR. GLUECKSTEIN: There's a request that's made to the debtor or the Court and we agree that it should be shared with somebody, but if you go to the claims website, for example --

THE COURT: Uh-huh.

MR. GLUECKSTEIN: -- all of the individual customer claims, individual customers are not publicly available. But Your Honor's point is where there's some disagreement here. It doesn't matter for purposes of this hearing --

THE COURT: Uh-huh.

MR. GLUECKSTEIN: -- if we need to make further redactions, but there's a difference. As Your Honor is recognizing, generally, when a litigant steps forward and

actually engages in litigation with the Court, it is one thing where we have scheduled claimants and because of the personal identification concerns, all right, we did redact -- first of all, there's two bases in this case.  The concerns are about identifiable information, which have been personally identifiable information, which was permanently sealed, and there's a related issue where the debtors have had periodic sealing motions, with respect to even institutional customers because of the preservation of the customer list --

THE COURT:  Correct.

MR. GLUECKSTEIN:  -- and the potential to monetize that list.  But nonetheless, when we have proceedings and when creditors step forward and contest, either to advance a proof of claim or contest a proof of claim, there's nothing about the sealing orders that guarantee anonymity for the entirety of the case to a litigant who appears before this Court.

And I think Your Honor is alluding to that with the proof of claim issues.  And so it has certainly not been the case that every time we've had a contested claim objection, we've cleared the courtroom, sealed the courtroom and not talked about the identity of the claimant.  That is different than publishing a list of, you know, a million names of customers with their email addresses and to the

extent we had them, home addresses, which is a concern in the crypto world.

So there's a distinction there --

THE COURT:  Uh-huh.

MR. GLUECKSTEIN:  -- but you are correct.  It sounds like where this goes a little bit further than Your Honor's practice, I think, is that the sealing order does cover the proofs of claim themselves, so those are not publicly available.

THE COURT:  Okay.  So there is an order that permits creditors to file, individual creditors and I guess customers, to file claims, sealed claims.

MR. GLUECKSTEIN:  It allows them to file claims and what it does is it allows -- they have to file the claims in full and that information is available.  What it does is it allows the debtor and the claims agent to withhold those claims from public view, as a matter of ordinary course.

What it does not do, again, we would submit what it does not do is provide a guarantee of anonymity where the creditor can file pleadings in an anonymous basis and we're going to have court hearings before Your Honor and we're never going to utter the facts and circumstances or the claimant's name and circumstances.  That is not what the order says.  That's a bridge too far and we did have discussions at the time the order was entered about specific

factual situations.  It's in the record.  There were concerns, for example, raised by the United States Trustee that members of the Creditors Committee and actions taken by customers, you know, in certain situations affirmatively, Rule 2019 statements, for example, things needed to be public and they have been.

And so this is an extension of that.  I think what happened here is the creditor believed that they were entitled to complete anonymity --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- we disagree with that, but again, given the limited scope of the hearing this morning, we didn't need to press that issue any further.  We agreed to further redactions for purposes of this particular redaction --

THE COURT:  All right.  That's helpful.

MR. GLUECKSTEIN:  -- or this particular objection.

THE COURT:  To the extent this arises in the future, my view is if parties file pleadings on the docket, they need to file a motion to seal and if you don't get permission from the Court, it's public.

And so, I can understand why parties, claimants may have misunderstood, quite frankly, the extent of the sealing order, but it seems like it's very understandable, given the extent of the original sealing order.  And so, I

make no judgment on how I would ultimately decide that issue, but to the extent you're dealing with folks -- I know it's not your responsibility to police the docket, but that order is limited and if parties file things on our docket, that needs to be in accordance with the local rules.  There needs to be an accompanying motion to seal, and then at that point, I make the decision with the facts and circumstances presented to me at the time, for instance, litigation, posture, like, what does that mean for closing the courtroom, which will very rarely happen, if not ever.  I've done it one time in a very unique circumstance -- one case, I should say -- but, generally, I'm not doing that, so parties will need to think about how to handle these proceedings.

But you understand, it sounds like you all understand that, but it makes me a little worried that I don't like sealing all the time with the public docket.  And if you engage with our Court, that comes with certain choices and so people should understand that when they start to engage in litigation.

MR. GLUECKSTEIN:  We agree with that, Your Honor.

To the extent it matters, the trust agrees with the Court's comments.  It's very helpful to get that guidance from the Court because we certainly agree that if claimants are going to engage in litigation with the trust, it's going to be a public proceeding and those pleadings need to be --

we need to be able to discuss the facts in the pleadings.

And as Your Honor notes, if a particular claimant has a concern and wants to file a sealing motion, we can address that in a one-off basis.

THE COURT:  All right.

MR. GLUECKSTEIN:  Thank you, Your Honor.

THE COURT:  Well, then, we will proceed accordingly.

MR. GLUECKSTEIN:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

Mr. McNeill?

MR. MCNEILL:  Sorry, Your Honor.  A couple of housekeeping things.  One, my motion for surreply, I don't know that it matters -- * 27R

THE COURT:  It's granted.

MR. MCNEILL:  It seems you read it, so --

THE COURT:  Yeah, I read it.

MR. MCNEILL:  So, should we upload, just upload the order and be done?

THE COURT:  Yes, please upload the order and I'll instruct and ask Ms. Lopez to enter that.

MR. MCNEILL:  Okay.  We will get that done.

The second thing, it's not my issue or, ultimately, it's not my thing, but we were just talking about sealing motions -- I don't know if a motion to seal the stuff

has been filed yet for the stuff that we just heard today, but given that we're now resolved, I don't know if Your Honor --

THE COURT:  I would --

MR. MCNEILL:  Normally, you hear them the same day as the dispute, but I don't -- I think we've resolved our issues on that with the trust --

THE COURT:  Okay.

MR. MCNEILL:  -- but I do think an order, presumably, would need to be entered at some point.

THE COURT:  Okay.  Well, why don't you work on what that looks like.

MR. MCNEILL:  I mean, it's not -- it was their document.  They filed the sealed version, so ultimately, it's their motion.  We did consult with them.  I'm happy to have that discussion offline with Mr. Pierce, but ...

THE COURT:  But it looks like you filed a sealed response?

MR. MCNEILL:  We filed a sealed response long -- my motion to seal on my response was entered months ago.

THE COURT:  Oh, okay.  I'm sorry.

MR. MCNEILL:  I'm talking about the motion to seal the declaration and the reply that they filed.

THE COURT:  Okay.  Okay.

MR. MCNEILL:  I just don't want it to get lost in

the shuffle since we won't be returning --

THE COURT:  I appreciate that.  Why don't you submit a CO -- something in the order, as well, that memorializes that.

MR. GLUECKSTEIN:  We'll do that, Your Honor.  I mean, we submitted -- we redacted, specifically, because they demanded it.  We'll submit an order, though, for good housekeeping order that covers the (indiscernible) and we understand the Court's very helpful comments going forward.

THE COURT:  Okay.  Thank you.

I just don't want to get on the naughty list with the Administrative Office regarding my sealing --

MR. GLUECKSTEIN:  Understood.  We'll submit something under COC.

THE COURT:  -- because, believe it or not, it could happen.  And so I report to the higher-ups and too much sealing is not great for it.

All right.  Thank you all very much.

Is there anything else we should discuss, then?

MR. GLUECKSTEIN:  Nothing else today, Your Honor.

THE COURT:  All right.  Thank you.

We'll stand adjourned.

(Proceedings concluded at 10:34 a.m.)

52

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.


/s/ William J. Garling                    August 12, 2025

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Tracey J. Williams                    August 12, 2025

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable