# EXHIBIT 8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              . Chapter 11
                                   . Case No. 22-11068 (KBO)
FTX TRADING LTD., *et al.,*          .
                                   . (Jointly Administered)
                                   .
          Debtors.                 .
                                   .
. . . . . . . . . . . . . . . . .  .
                                   .
FTX RECOVERY TRUST,                . Adversary Proceeding
                                   . No. 24-50184 (KBO)
          Plaintiff,               .
                                   .
    -against-                      .
                                   .
GATE TECHNOLOGY INCORPORATED,      .
GATE GLOBAL, CORP., GATE           .
INFORMATION PTE. LTD., and         .
SUN YUNZHI,                        .
                                   .
          Defendants.              .
                                   .
. . . . . . . . . . . . . . . . .  .
                                   .
FTX RECOVERY TRUST,                . Adversary Proceeding
                                   . No. 24-50188 (KBO)
          Plaintiff,               .
                                   .
    -against-                      .
                                   .
FORIS DAX MT LTD., FORIS DAX       .
ASIA PTE. LTD., FORIS DAX,         . Courtroom No. 3
INC., and IRON BLOCK CAPITAL,      . 824 Market Street
                                   . Wilmington, Delaware 19801
          Defendants.              .
                                   . Thursday, September 11, 2025
. . . . . . . . . . . . . . . . .  . 1:01 p.m.


                    TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE KAREN B. OWENS
           CHIEF UNITED STATES BANKRUPTCY JUDGE


                        - Cont'd -

FTX RECOVERY TRUST,                  .  Adversary Proceeding
                                     .  No. 24-50191 (KBO)
          Plaintiff,                 .
                                     .
     -against-                       .
                                     .
AMERICAN VALUES                      .
COALITION, INC.,                     .
                                     .
          Defendant.                 .
                                     .
. . . . . . . . . . . . . . . .      .
                                     .
FTX RECOVERY TRUST,                  .  Adversary Proceeding
                                     .  No. 24-50198 (KBO)
          Plaintiff,                 .
                                     .
     -against-                       .
                                     .
NAWAAZ MOHAMMAD MEERUN,              .
                                     .
          Defendant.                 .
                                     .
. . . . . . . . . . . . . . . .      .
                                     .
NFT FTX RECOVERY TRUST,             .  Adversary Proceeding
                                     .  No. 24-50201 (KBO)
          Plaintiffs,                .
                                     .
     -against-                       .
                                     .
PROSPERITY ALLIANCE, INC.,          .
                                     .
          Defendant.                 .
                                     .
. . . . . . . . . . . . . . . .      .
                                     .
FTX RECOVERY TRUST,                  .  Adversary Proceeding
                                     .  No. 24-50204 (KBO)
          Plaintiff,                 .
                                     .
     -against-                       .
                                     .
WORKING AMERICA,                     .
                                     .
          Defendant.                 .
                                     .
. . . . . . . . . . . . . . . .      .

FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50209 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
SKYBRIDGE CAP IT AL II, LLC,           .
SKYBRIDGE GP HOLDINGS LLC,             .
DIGITAL MACRO FUND LP f/k/a            .
SKYBRIDGE COIN FUND LP, SALT           .
VENTURE GROUP LLC, ANTHONY             .
SCARAMUCCI, and BRETT                  .
MESSING,                               .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . .        .
                                       .
FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50212 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
THE GOODLY INSTITUTE dba               .
GOODLY LABS,                           .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . .        .
                                       .
FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-50214 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
MANIFOLD MARKETS, INC.,                .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . .        .

                         - Cont'd -

FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 24-50220 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
DENG JUN, SHEN LING, TU JING,          .
DENG DINGYUAN, DENG LAN, DENG          .
JIAN, TU FAN, PAN YANG LIAN,           .
HU JINGMING, HU SIFENG, YANG           .
YUHUA, QIN YONG QIANG, HUANG           .
YAO, DAI FUYANG, FU LING,              .
CHEN CHAO, SHEN LIUGEN, LIN            .
GUODONG, YANG YIBO, XU MIN,            .
XU HONG, WAN JIAN, WU QIAO,            .
WU TIANMING, LI PING, JIA              .
SHUYUN, and JOHN DOES 1-20             .
                                       .
          Defendants.                  .
                                       .
. . . . . . . . . . . . . . . . .      .
                                       .
FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 25-50635 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
KUROSEMI, INC.,                        .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . . .      .
                                       .
FTX RECOVERY TRUST,                    .   Adversary Proceeding
                                       .   No. 25-50636 (KBO)
          Plaintiff,                   .
                                       .
     -against-                         .
                                       .
NFT STARTS LIMITED,                    .
                                       .
          Defendant.                   .
                                       .
. . . . . . . . . . . . . . . . .      .

                              - Cont'd -

FTX RECOVERY TRUST,              .  Adversary Proceeding
                                 .  No. 25-51054 (KBO)
            Plaintiff,           .
                                 .
     -against-                   .
                                 .
NEWURTH S.A., B TRANSFER         .
SERVICES LIMITED, BT PAYMENT     .
SERVICES NIGERIA LTD,            .
TRANSFERZERO MONEY TRANSFER      .
EP SA, BT PAYMENTS SERVICES      .
UGANDA LTD, ELIZABETH            .
ROSSIELLO, ADAM GOUVEIA,         .
MARLEEN HAYE, CALLUM DRYDEN,     .
MIN-SI WANG, CHARLENE CHEN,      .
LINDA LEVINSON, and TOMOYUKI     .
NII,                             .
                                 .
            Defendants.          .
                                 .
. . . . . . . . . . . . . . . .  .
FTX RECOVERY TRUST,              .  Adversary Proceeding
                                 .  No. 25-51059 (KBO)
                                 .
            Plaintiff,           .
                                 .
     -against-                   .
                                 .
WANDILLA HOLDINGS LIMITED,       .
                                 .
            Defendant.           .
                                 .
. . . . . . . . . . . . . . . .  .


Audio Operator:          Kim Ross, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

For the FTX
Recovery Trust:            Matthew B. McGuire, Esquire
                           LANDIS RATH & COBB, LLP
                           919 Market Street
                           Suite 1800
                           Wilmington, Delaware 19801


                                   -and-

                           Stephen Ehrenberg, Esquire
                           Jessica H. Goldman, Esquire
                           SULLIVAN & CROMWELL, LLP
                           125 Broad Street
                           New York, New York 10004


For the Skybridge
Defendants:                Jeremy W. Ryan, Esquire
                           POTTER ANDERSON & CORROON, LLP
                           1313 North Market Street
                           6th Floor
                           Wilmington, Delaware 19801

                                   -and-

                           Jonathan K. Youngwood, Esquire
                           SIMPSON THACHER & BARTLETT, LLP
                           425 Lexington Avenue
                           New York, New York 10017


For Lorenzo Corsetti:      Siena Cerra, Esquire
                           MORRIS JAMES, LLP
                           3205 Avenue North Boulevard
                           Suite 100
                           Wilmington, Delaware 19803

For Mohammad
Nawaaz Meerun:             Rachel Fleder, Esquire
                           MORRISON COHEN, LLP
                           909 Third Avenue
                           27th Floor
                           New York, New York 10022

INDEX

MOTIONS:                                                                      PAGE

Agenda
Item 25:   Defendants' Motion to Compel Arbitration and          9
           to Dismiss and/or Stay [FTX Recovery
           Trust v. SkyBridge Capital IL LLC et al.,
           Adv. No. 24-50209 - Adv. D.I. 22, filed on
           January 24, 2025]

           Court's Ruling:                                       33

Agenda
Item 26:   Plaintiffs Motion to Compel Defendant to              37
           Produce Documents and Respond to Plaintiffs
           Interrogatories [FTX Recovery Trust v. Nawaaz
           Mohammad Meerun, Adv. No. 24-50198 - Adv.
           D.I. 58, filed on August 22, 2025]

           Court's Ruling:                                       59


Transcriptionists' Certificate                                  62

8

(Proceedings commenced at 1:01 p.m.)

THE CLERK:  All rise.

THE COURT:  Thank you, everyone.  Please be seated.

Mr. McGuire?

MR. MCGUIRE:  Good afternoon, Your Honor.

Matthew McGuire, Landis Rath & Cobb, on behalf of the FTX Recovery Trust.

We're here for the monthly omnibus hearing.  We did file an amended agenda last night.  We have 26 matters on.  I'm happy to report that 24 of them have either been resolved or adjourned.

THE COURT:  I saw that, thank you.

MR. MCGUIRE:  So, we'll start with Matter 25, which is the SkyBridge Defendants' motions to compel --

THE COURT:  Sure.

MR. MCGUIRE:  -- arbitration.

THE COURT:  That would be fine, thank you.

MR. RYAN:  Good afternoon, Your Honor.

Jeremy Ryan of Potter Anderson & Corroon, on behalf of the Defendants.  I have with me Jonathan Youngwood, Batoul Husain, and Justin Kane of Simpson Thacher.

Mr. Youngwood will take the presentation on this motion.

THE COURT:  Sounds good, thank you.

MR. YOUNGWOOD:  Thank you, Your Honor.

And may I proceed?

THE COURT:  Yes, please.

MR. YOUNGWOOD:  Your Honor, I know you have ample briefing on this.  I know that you've, or you considered a prior, at least one prior similar motion, so I won't belabor the case law or many of the arguments that are already in the briefs, but just try to jump into it.

THE COURT:  Okay.

MR. YOUNGWOOD:  As you know from the papers, we're seeking to compel arbitration with respect to Claims 5 through 9 and 12 through 13 of the proceeding.  I do begin with this basic reference to law, because I think it controls the outcome here, which is that under both, New York law and Delaware law -- and several of the agreements are under Delaware lawyer and one of the agreements is under New York law -- where an arbitration clause generally provides for arbitration of all disputes and where the contract incorporates a set of arbitration rules that empower arbitrators to decide arbitrability, that's from Delaware law, the Willie Gary case.  New York law is similar.

Where that appears, it is for the arbitrators to decide the scope of the arbitration, and while there are different claims here, seven different claims and they have different aspects, one of them being an actual breach of

contract, where I don't think there can be any serious dispute that it's not subject to the arbitration clause, and, whereas, here, there is no dispute that the agreements in question are, in fact, enforceable, the rest of the analysis is, with all respect, for the arbitrators.

The causes at issue here, I grouped together the SkyBridge II LLCA, the SkyBridge GP, LLCA, and the subscription agreement are incredibly broad.  Those all read:

"If any dispute, controversy, or claim arises out of or in connection with this agreement, including the breach, termination, or invalidity thereof," and then it refers you to arbitration.

The SALT's (phonetic) agreement in paragraph 11, different words, but similarly broad:

"Any controversy or claim between the parties hereto, arising out of or related to the provisions of this agreement, or the breach thereof, shall be settled by arbitration."

They're referring the case to the AAA.  The prior agreements refer to the ICDR.

By these plain terms, the arbitration agreements require that the claims relating to these agreements, the SkyBridge acquisition, the SALT's sponsorship, all of which are covered by Claims 5 through 9 and accounts, or Claims 12 and 13, all of those should be arbitrated.  It is not with

all respect within the discretion of this Court to rule otherwise; Third Circuit law is quite clear on that in the Mincy case, which is discussed in our brief; although, I note not, I believe, discussed in the responsive brief.  And I know Your Honor went through this analysis in the Melamed, if I'm pronouncing the name correctly, case this summer.  And I think the analysis, although, here with more claims, is incredibly similar and on point.

And I will not belabor discussion of In re Yellow. I think Your Honor went through it.  I think it's even more distinguishable here than it was in that matter.  And, regardless, Your Honor, even if you have discretion, I would ask that you would express it -- and I know that's how you made the decision in that case -- that you exercise it here to send them to arbitration.

I won't go through each claim and, again, it's not, to us, we think, in this forum, to show why each one is arbitrable, but one can begin with the most obvious, which is Count 7; it's a breach of contract claim.  You can look at the two claims relating to breach of fiduciary duty:  8, there could be no fiduciary duty, but for the agreements. It's a breach, an allegation of breach of fiduciary duty under the agreements that's being alleged, so how that doesn't concern the agreement.

The aiding and abetting, is an aiding and abetting

of going into an agreement, so how that couldn't concern the agreement, I think, would strain the reading of the contracts.

I know there's a separate argument for the two unjust enrichment claims, 6 and 5, which is that these are claims that if there weren't agreements, we want these claims.  But it still concerns the issues in the agreements and so I don't think the analysis is any different.

And then with respect to 12 and 13, which are the two related to the proofs of claim, I don't think there is a count or argument that those don't, in some way, relate to certain rights under the agreements.  And so, again, I submit, just as you ruled this summer in the other case, Your Honor, that those are all subject to arbitration.

I'm happy to answer other questions, Your Honor, or go through some of the arguments that I think had been raised in opposition.  Maybe I'll touch on one or two of them and then pause and see if I should go on to the stay discussion.

But there's no inherent conflict here with the Bankruptcy Code; that seems to be one of the arguments. There's arguments about efficiency and, Wouldn't it be better to have it all in one place?

But that's not the law.  The law is not that you overwrite these arbitration agreements just because some

claims might not be subject to them -- and then we'll get to the stay in a second.  We have the right -- and I think there's even the argument, But there are two different arbitrations that might have to happen.

Well, that's what the agreements say and those are the rights that the parties negotiated and nothing that happens here abrogates those rights.  There will be plenty of efficiency once the arbitration starts.  I will note that, originally, the claims had been brought in arbitration and if originally they had been brought sooner than two years after or more the facts were known, we wouldn't be three years in.  But that's not prejudice that we've caused; that's how the case has developed and strategic decisions made by my friends on the other side, so that doesn't count as prejudice.

The fact that it might take longer to get money if there is a positive result; that's not prejudice, either, certainly, not given the status of how this matter has proceeded.  These are the size of these claims, relevant to the claims in the case; none of those things create prejudice.

Your Honor, I'll pause, but I'm inclined to, unless you have questions, move on to the stay discussion.

THE COURT:  I don't have any questions.

MR. YOUNGWOOD:  Okay.  Your Honor, so I start with -- the question, here, is really whether there's an

overlap. It is not as, again, my friends on the other side would like us to believe, whether or not the arbitration will resolve everything else. I don't know that it will or won't. I suppose it depends on how the arbitrators rule, and I know at least under the SkyBridge agreements, there will be a requirement of a written ruling, so there will be a recent ruling that if it were to come back here, this Court could consider.

The question, really, is whether or not there's sufficient overlap, and, here, this is in your discretion. In your discretion, we think it makes sense to have one thing go forward at a time.

And, Your Honor, by the pleading itself -- and perhaps this is the most obvious point -- by the pleading itself, there's complete overlap. And I say that because each of the 13 claims in this case in the complaint, each of them, repeat and re-allege the same 111 paragraphs that come before. There has been no parsing. This is the high-level (indiscernible), where we can go through each of the remaining claims. There's no parsing as to which paragraphs that come before are relevant to which claims, nor I submit to you, could there be.

And if there was, there'd be so many overlaps between them that it would prove the point, if the Court were to request a chart and, certainly, there'd be sufficient

overlap between all the claims that it would prove the point that I'm making, that there's tremendous overlap between all these claims.

But to give Your Honor -- and I will avoid going through these one by one for the six affected -- but to give it high-level, for example, if Count 9 is subject to arbitration, it broadly will consider whether the amount SkyBridge received in the FTX investment was so inequitable as to constitute a breach of fiduciary duties; similarly, I'd posit the unjust enrichment claims, 5 and 6, would consider whether the amount was unjust, as well as the degree to which the Defendants were enriched.  The proofs of claims assert that FTX was unjustly enriched by selling worthless crypto to SkyBridge as part of the SkyBridge transactions, and so you have a further overlap there.

When you look at claim Counts 1 and 2, the fraudulent transfer counts, these will also consider whether much of what I just referred to -- and, again, were we to get past this, we have a motion to dismiss pending -- whether or not these were adequate badges of fraud, whether the consideration was fair, et cetera.

Paragraphs to just give one other example, again, looking at some of the aiding and abetting claims, they concern whether or not they're a breach of fiduciary duty. The proof of claim asserts that FTX's insiders engaged in

fraudulent conduct.  So, too, Counts 1 and 2, we'll consider to the same degree, whether there's any evidence of fraud.

Again, Your Honor, I'm prepared to go through them one by one.  I see from your --

THE COURT:  I've reviewed the complaint --

MR. YOUNGWOOD:  Yes.

THE COURT:  -- and I'm familiar with them --

MR. YOUNGWOOD:  Okay.

THE COURT:  -- so, thank you, though.

MR. YOUNGWOOD:  And so, Your Honor, with that, I think I'll just cede the floor unless you have questions?

THE COURT:  I do not, thank you very much.

MR. YOUNGWOOD:  Thank you.

MR. EHRENBERG:  Good afternoon, Your Honor.

Stephen Ehrenberg, Sullivan & Cromwell, on behalf of the Trust.

THE COURT:  Good afternoon.

MR. EHRENBERG:  May I proceed?

THE COURT:  At your leisure.

MR. EHRENBERG:  Thank you, Your Honor.

There is a sort of preliminary question that has to be answered here, which is:  Who decides what is arbitrable?

And the Defendants would have you, I think, believe there is no dispute as to that.  The Supreme Court

has been clear that courts decide the issue of arbitrability, unless there is clear and unmistakable evidence that the parties intended to delegate that to the arbitrator.

And I think the parties agree that the right way to think about that is the Willie Gary test under Delaware law. And Willie Gary adopted the majority view that the general presumption is, if a contract provides for the arbitrability of all disputes and the parties incorporate the tribunal's rules that empower the arbitrator to decide arbitrability, and that's pretty good evidence that they intended to delegate that question. But if the contract does not provide for arbitration of all disputes, then the mere incorporation of those rules is insufficient.

And the Defendants argue that the reference to those rules is sufficient on its own. Willie Gary is a useful case in this regard because it's very similar to what we have here, which is the contract at issue, you know, expressly provided in Willie Gary, that the parties could seek injunctive relief. And as a result of that, there's no clear and unmistakable evidence that all disputes would be decided in arbitration.

And the evidence here, we submit, is even more clear and unmistakable that the parties did not intend to delegate that. If we look at the subscription agreement in -- and the two LLC agreements, they are identical in terms

of their arbitration provision, and I want to talk about that, because my colleague has characterized it as "incredibly broad," and we think it's narrow.

The language, in rough part, is in dispute, controversy, or claim arises out of, or in connection with the agreements, including breach, termination, or invalidity thereof, it shall be settled by final, binding arbitration. And it's focused on matters on contract.

What it doesn't cover, to start with, is torts. And we know this because in the LLC agreements, in the clauses covering exculpation and indemnification of the managers, it expressly contemplates Court adjudication of those claims, or at least the availability of it.

So, if we look at Section 3.08(a) of the LLC agreements, which is the exculpation provision, it refers three different times to adjudication by a Court of competent jurisdiction with respect to whether the act in question is a breach of the agreement; whether it constitutes fraud, willful misconduct, reckless disregard of duty, bad faith or gross negligence and whether an act of an employee constitutes fraud, willful misconduct, reckless disregard of duty, bad faith, or gross negligence.

3.08(c), same provision, deals with withholding of indemnity payments and it refers, again, to adjudication by a Court of competent jurisdiction and permits the withholding

of indemnity payments if a Court, if one is found by a Court to be guilty of fraud, willful misconduct, reckless disregard of duty, bad faith, gross negligence in the performance of their duties.

Now, in both of those sections, in the same sentence, it refers to both "binding arbitration" and/or, more appropriately, to "adjudication by a Court." It reads, it starts with the exculpation provision and then it says:

"Provided that such act or omission is not finally settled by binding arbitration, pursuant to Section 10.09 of this agreement or finally adjudicated by a Court of competent jurisdiction."

So in the very same sentence, this agreement is recognizing that there are two paths for dealing with a tort, like a breach of fiduciary duty, which, as the provision refers to the reckless disregard of duty, bad faith.

So, another thing that the arbitration provision does not cover; it doesn't cover claims in equity. And we know this because if we look at the subscription agreement, it tells us the opposite. In Section 4.11, it provides that equitable relief is available in court; accordingly, it is agreed that each party hereto shall be entitled to seek an injunction, restraining order, or other equitable relief to prevent breaches of the provisions of this agreement and to enforce, specifically, the terms and provisions hereof, in

any court of competent jurisdiction in the United States or any state thereof, in addition to any other remedy to which it may be entitled, at law or equity.

So, as a result of these provisions, we submit, Your Honor, that the arbitration provision that we've been talking about does not provide for the resolution of all disputes; that means that it fails the first prong of Willie Gary.  There so no clear and unmistakable evidence that the parties intended to delegate all disputes to an arbitrator.

It's quite the opposite; we think the evidence is clear and unmistakable that the parties intended to reserve their right to go to court under certain circumstances and for certain claims.

The Paragon case here doesn't help the Defendants.  The contract expressly provided that the arbitrators had full power and authority to determine issues of arbitrability.  The contract did it, not just the rules; the contract, itself.

So, Your Honor, we think you are presented with a question about the scope of the arbitration provision and for most of the claims that Defendants seek to arbitrate, we would submit that they are not covered.  The Defendants seek to arbitrate causes of action.  I'm going to start with the equity and common law claims.

Count 5 is an unjust enrichment claim under

Section 105 of the Bankruptcy Code.  This is alleged in the alternative to Counts 1 and 4, which are the fraudulent transfer claims.  Your Honor, we submit that this is a cause of action that is unique to the Bankruptcy Courts --

THE COURT:  I've never heard of it, but we'll deal with that later.

MR. EHRENBERG:  Okay.  Section 105(a), in it, empowers the Bankruptcy Court to exercise its equitable powers, and we cite some cases on that.  This cause of action is not available to the debtor, prepetition; it's a creature of the Bankruptcy Code.  And, in addition, you know, as an equitable claim, it simply isn't covered by the arbitration provision; for the reasons that I discussed before, equity is not included.  In addition, as an equitable claim, it applies where a contract doesn't.  So if the contract doesn't apply, the arbitration provision doesn't apply, either.

Count 6 is very similar, except that it is not a creature of the Bankruptcy Code; it's a state law claim.

The Defendants, Your Honor, rely on a case called Douzenas for quite a few propositions.  We think that the agreement in that case is distinguishable.  It expressly required arbitration of any dispute arising under or related to the agreement, quote:

"Whether arising in contract, tort, or otherwise, and whether arising at law or in equity."

So it's a very different provision than the one we're dealing with in this case.  It explicitly encompassed claims brought in equity and there was no provision in Douzenas providing for equitable relief in the courts.

With respect to the breach of fiduciary duties claim against Scaramucci and Messing, the individual Defendants, you know, the fiduciary duties at issue arise under Delaware common law, we'd submit, not under the contract.  Again, Section 3.08 of the agreement sets out the terms of exculpation and indemnification and it contemplates that claims arising under there will be dealt with in court, or can be dealt with in court.

THE COURT:  Well, you would submit that fiduciary duties in an LLC are governed by a contract?

MR. EHRENBERG:  They can be modified; yes, Your Honor.

THE COURT:  They can be modified.

And you would agree that exculpation is not modification of -- it doesn't eliminate the fiduciary duties?

MR. EHRENBERG:  Correct.

THE COURT:  Okay.  So, isn't it two different things --

MR. EHRENBERG:  Your Honor --

THE COURT:  -- or what would be the effect of that, because an LLC agreement's exculpation does not

eliminate duties; it just exculpates them.

MR. EHRENBERG:  I agree with that, correct.

THE COURT:  So, how --

MR. EHRENBERG:  But we don't think that affects whether or not they can be sent to arbitration, because the contracts expressly contemplates that they can go to arbitration.  It refers to "adjudication by a Court of competent jurisdiction" throughout those provisions.

THE COURT:  Uh-huh.

MR. EHRENBERG:  So, it's contemplated by the parties that it could be.  Not required, but can be.

THE COURT:  Okay.

MR. EHRENBERG:  And I would say, Your Honor, it refers, specifically, to claims like reckless disregard of duty and bad faith; I mean, those are undoubtedly breach of fiduciary duty claims.

THE COURT:  The exculpation provision?

MR. EHRENBERG:  Yes --

THE COURT:  Okay.

MR. EHRENBERG:  -- correct.

With respect to the aiding and abetting claim, Your Honor, the Plaintiffs allege that the Defendants aided and abetted Sam Bankman-Fried's breach of his fiduciary duties and there is no contract that could govern these.  The contact -- the conduct at issue took place before the

transactions were ever even introduced -- entered into.

Again, the Defendants rely on the Douzenas case for the proposition that an aiding and abetting claim is arbitrable under the agreements. We think that is inapposite.

Douzenas involved a group of Defendants who were allegedly aiding and abetting a co-Defendant's breach of fiduciary duties under an agreement, which contained an arbitration provision. So that agreement was both, the source of the duties and the source of the arbitration provision. Here, our aiding and abetting claim is about Mr. Bankman-Fried's duties, which do not arise under any of the agreements at issue in this case and, therefore, no SkyBridge-related agreement could apply.

I want to address, briefly, the conflict issue with the Bankruptcy Code and I won't cover everything we do in our briefs. I think I'd like to focus, if I could, Your Honor, on Counts 12 and 13, which are the claim objections. Your Honor, the Mintz and Hayes cases, they do away with the distinction between core and non-core and whether the Court has discretion to deny arbitration or compel arbitration as a result thereof. But they don't alter the standard under McMahon.

If a party can show that there is, in fact, a conflict, then the Court has discretion to deny arbitration.

And that simply didn't happen in Mintz; there were just no bankruptcy claims that could have created a conflict and so that's why the Court came out that way.

We'd submit, however, that this case is one of those rare cases where the facts do give rise to a conflict between arbitration and the Code, particularly, with respect to the claim objections. Twelve and 13 arise out of the SkyBridge acquisition and the SALT's sponsorship. Those are, again, the subject of Counts 1 through 4, the non-arbitrable fraudulent transfer claims.

And the Code explicitly envisions that these fraud claims and the objections are going to be decided together. And the reason for that is 502(d), delta, which provides for disallowance of those claims while there are fraudulent transfer claims pending. So, in other words, the claim objection can't be litigated until the fraudulent transfer case is litigated.

And that makes sense, of course, because the Supreme Court has told us like claims, processing claims objections are at the heart of the bankruptcy process; that's what the Bankruptcy Court is here to do. And so, for that reason, we think there is an inherent conflict between arbitration of those claims, where we've got related, pending fraudulent transfer claims.

With respect to the stay, Your Honor, I think my

colleague has characterized that as a "complete overlap."  We would disagree.  Your Honor mentioned in the Melamed case that the party seeking the stay has to have a clear interest in getting a stay.

I don't think that the Defendants have demonstrated a clear interest here.  And the primary argument, again, is overlap.  Some factual overlap is an insufficient reason for granting a stay.  We can talk about the Paragon case, which covers that.

There is a degree of factual overlap between the claims, because they concern all the same parties in a limited period of time, but the key distinction, which I think is the bulk of what discovery would be focused on, is with respect to the non-arbitrable claims.  What we're focused on, the fraud, the disallowance, the recovery, that's based on the allegation that prepetition the FTX insiders caused fraudulent transfers and all of those transfers were prepetition.  The determination is going to relate to things like the debtors' solvency, the intent of the debtors -- all prepetition.

The other claims that are sought to be arbitrated are based on the Defendants' mismanagement of the funds, the wrongful disposal of the cryptocurrency assets that were the subject of the purchase agreement, and these claims relate, primarily, to the Defendants' conduct post-petition and that

distinction is important. They all resolve around the same transactions, yes, but they are temporarily disconnected.

So the focus of discovery in these two proceedings is going to be different. There is some overlap, undoubtedly. The Defendants argue that the fraudulent transfer, unjust enrichment, and aiding and abetting claims are going to consider the relative value of the parties -- that the parties received.

Judge Sontchi, in Paragon, was confronted with a similar issue. The debtor had actual and constructive fraudulent transfer claims, as well as an unjust enrichment claim. The arbitrable unjust enrichment claim was an alternative theory, just like ours. The repayment of a certain note, same claim that's in the fraudulent transfer.

And, you know, although there was overlap in that both claims would require determination of the consideration, that was not sufficient to justify the stay. Judge Sontchi said the fraud claims were at the very heart of the case, which is true here. Fraud claims are not contingent upon the resolution of the arbitrable claims alone; also true here.

So, when we've got non-arbitrable fraud claims at the heart of the complaint that can't completely be resolved by the arbitrable claims or related arbitrable claim, a stay is inappropriate there.

I think the state of mind of the parties is

something that Defendants mentioned in their briefing.  We think they're totally unrelated.  In the fraud claims, of course, it's Sam Bankman-Fried's state of mind that matters, you know, intent to hinder or delay creditors, et cetera, and in the other claims, it's about the actions of the Defendants and not the debtors.

I think there is one error, just a simple misreading, in one of the things that defendants point to in their brief.  This is about the appropriateness of compensation for the individuals, Scaramucci and Messing. They're pointing to Paragraph 111 of the complaint noting that we use it as a badge of fraud, that the insiders of the company misappropriated company assets to overpay their friends, Scaramucci and Messing, in return for access to potential new investors but that is just a misunderstanding of what that is about.  That is not about their salary as managers, it's about overpaying for the transaction; it's about the $45 million they paid for 30 percent interest in the funds.

In fact, the defendants had no -- excuse me, the insiders, the FTX insiders, had no authority over the salary of the individual defendants.  That is not even specified in the agreements they would have known what the salary was going to be.  And, in fact, it's in the sole discretion of the defendants under the agreements.  So, that is just a

mistake as to what that is about.

THE COURT:  So, it's not about excessive compensation.

MR. EHRENBERG:  It is not about excessive compensation with respect to their role as managers.  It's about overpaying in the transaction.  There is no way they could have even known what the compensation was going to be until after the transaction was consummated.

Just bear with me, I'm just looking to see if there is anything else I want to touch on, Your Honor.

(Pause)

MR. EHRENBERG:  Your Honor, just with respect to prejudice, we don't think the defendants have identified any prejudice if parallel proceedings were to happen. There is no reason we can't litigate the fraud claims at the same time that we're arbitrating anything that Your Honor decides to send to arbitration.  They haven't identified any.  We think that the Trust would be prejudiced potentially with respect to the claim objections and, of course, that is, sort of, core function of this Court.  So, the resolution of those should happen here.

I have nothing else, Your Honor, unless you have questions for me.

THE COURT:  I do not.  Thank you.

MR. EHRENBERG:  Thank you.

THE COURT:  Would you like to make a reply?

MR. YOUNGWOOD:  Very briefly, Your Honor, and perhaps just on one point, again, unless you have questions.

THE COURT:  Okay.

MR. YOUNGWOOD:  I hear the argument that counsel has expressed under 3.08 but note its nowhere in the briefs and this is the first time it's been raised. I would submit that it's been waived.  It's also wrong.  It's an incorrect reading of the Willie Gary case.  The case itself uses the words "generally provides" for arbitration of all disputes. So, even if 3.08 is meant to refer certain things to courts, which in a moment I'm going to explain why I don't think that is what it says, generally provide for arbitration of all disputes I think still works if the only carve out relates to this narrow issue of exculpation.

Your Honor, I do refer you, in this case, it is not in the briefs, again, because this issue wasn't raised but I would refer you to then Vice Chancellor Strine's decision in the case of McLaughlin v. McCann, which is 942 A.2d 616 from 2008.  He goes through this analysis in that decision and concludes that "all" doesn't mean every possible permutation.

More importantly he writes, In my view, Willie Gary requires that a signed agreement vesting questions of substantive arbitrability to the arbitrator must resolve

disputes against arbitration unless the signatory can show that this concerns a non-signatory, the underlying dispute is -- whether its arbitral is wholly groundless.  And so, it paints a very broad picture of what goes to the arbitrators. Again, not the exact case we have here but it seemed to be a case, at least, relevant to this discussion under Delaware law.

I think we're only talking about Delaware law because I don't think that there was any argument here that the SALT agreement had any potential carve out.  And I actually don't read 3.08 here as a carve out because --

THE COURT:  Can I just interrupt you for one second.  What exhibit are -- I want to look at the provision you're referring to.

MR. YOUNGWOOD:  3.08.  I believe -- well, it shows up in different -- I believe it shows up -- does it show up in all of them?

UNIDENTIFIED SPEAKER:  (Indiscernible) LLC agreements.  (Inaudible)

MR. YOUNGWOOD:  Yeah.

THE COURT:  Their just any one?

MR. YOUNGWOOD:  I'm looking at the one that is Exhibit E.

UNIDENTIFIED SPEAKER:  (Inaudible)

THE COURT:  Okay, I'm there.  I found one of them.

MR. YOUNGWOOD: Again, we have to compare to make sure that they're the same.

Your Honor, first of all, I think this sits well within the "generally" language of Willie Gary. And I don't think it requires, necessarily, court adjudication between the parties to the agreement and the reason I get there, Your Honor, is the use, among other things, because I think there's several reasons why that's the wrong reading, the phrase "guilty of fraud." This Court isn't going to find anyone guilty of fraud. Guilty of fraud is a criminal word and this is encompassing and imagining that if something didn't come out of the arbitration it could come out of another court that could make another finding that could abrogate the indemnification obligations.

The second way to read this, consistent with the arbitration clause, is that you could arbitrate and you could come to a court for confirmation of the arbitration award which would also be a court of competent jurisdiction. But, again, Your Honor, even if you see this as some sort of exception, which, again, was not raised in the briefs, I think it fits well within the very long line of Delaware law on this topic.

Again, I will not repeat it, I know you have read all the claims, you can compare them yourself to the agreement. At best, if they are ripe, they are not -- at

best if they are ripe, then it would be for you to go through each claim; although, we don't think it is for the panels.

Thank you, Your Honor.

THE COURT:  All right.  Thank you.

I'm going to take a short break and then I'm going to come back and rule from the bench.

We stand adjourned.  Thank you.

(Recess taken at 1:37 p.m.)

(Proceedings resumed at 1:57 p.m.)

THE COURT OFFICER:  All rise.

THE COURT:  Please be seated.

Thank you for your patience on this issue.  I know you have been waiting some time, so I wanted to rule from the bench rather than to write and further delay the proceedings here.  So, I know it's a complex issue but I think time is of the essence to get things going.

Let me start by saying for the record that the parties agree that each of the contracts at issue here contain an agreement to arbitrate; however, the Trust assets that the claims at issue, which are counts 5 through 9, and 12, and 13, do not fall within the scope of those arbitration provisions.  In response, the defendants argue that the claims fall within the scope of the arbitration provisions but that regardless, that is a decision for the arbitrators and not this Court.

I disagree with the defendants and conclude that I am entitled to decide whether the claims at issue fall within the scope of the parties arbitration agreements.  The Supreme Court explained in its 1995 First Options decision that "Courts should not assume that the parties agree to arbitrate arbitrability unless there is a clear and unmistakable evidence that they did so."

The language of each of the arbitration clauses is not sufficiently clear for me to determine that the parties agree to arbitrate the scope of arbitration.  The clauses before me incorporate arbitration rules that recognize the arbitrators ability to decide scope but they do not clearly advance the parties intention for arbitrators to have the exclusive authority to do so.

Faced with similar language, Judge Walrath recently decided in Her Honor's DMK Pharmaceuticals v. Belgium decision that the parties did not provide clear and unmistakable evidence of intent to delegate arbitrability to the arbitrators. So, I am in good company with my decision here to decide scope.

Moreover, the contracts do contemplate some court involvement if injunctive relief is sought, further undercutting the idea that the parties intended for the arbitrators to have exclusive authority over all matters arising under the contracts such that the scope of

arbitration must be deferred to the arbitrators.

Turning to the scope question, the language of the arbitration clauses is very broad.  Its broad enough to include all the claims that are at issue in the complaint.  I thought this was pretty simple, to be honest with you, but that means I must move forward with more complex issues and decide whether I must send the claims at issue to arbitration.

I have included that Congress did not intend to preclude the parties agreement to arbitrate claims in counts 6 through 9. These are state law claims asserted by the debtors against the defendants and, therefore, under the teachings of (2:00:36) I have no discretion and I must defer the matters to arbitration.

Plaintiff argues that the claims relate to improper post-petition actions over property of the estate but regardless of the time period in which the actions took place, the claims are not for violations of the stay under 362, nor do they implicate any other statutory bankruptcy provision.

However, with respect to the Trust claim objections of counts 12 and 13, Congress has given bankruptcy courts the power and mandate to adjudicate the allowance and disallowance of claims asserted against the bankruptcy estate, thus creating a conflict between the code and the

Federal Arbitration act.  Therefore, I have the discretion to allow the claim disputes to be adjudicated in arbitration but I will decline that option and keep the claims before me.  I will stay them as well as the remaining counts of the complaint until the arbitration concludes.

The fact and legal issues presented in claim 9, which is going to arbitration, intertwined with those of the fraudulent transfer claims and the claim objection of count 13, the SALT sponsorship issues raised in count 12, may not intervene with the fraudulent transfer claims or even those being sent to arbitration but keeping the claims objection and staying it will be a more efficient and -- it will be more efficient and it will aid judicial economy because doing so avoids the adjudication of the plaintiffs' claims in three different forums and it avoids multiple stage proceedings before me.

Counts 10 and 11 are reliant on the stayed claims. And count 5 is asserted as a claim for unjust enrichment under Section 105 of the Bankruptcy Code. If this is a claim, it would be one arising under the bankruptcy code but more fundamentally is an alternative to the fraudulent transfer claims and it mirrors them.  The fraudulent transfer claims are not challenged as arbitrable and, therefore, count 5 should remain in the bankruptcy case and stayed.

In sum, I will grant the motion to compel

arbitration for the claims of counts 6 through 9, deny it with respect to the claims of counts 5, 12, and 13.  I will also grant the defendants motion to stay as it relates to the claims that will stay here in bankruptcy, which is counts 1 through 5, and 10 through 13.  The remainder of the relief requested is denied and I will enter an order reflecting this ruling shortly following the conclusion of this hearing.

You need not prepare one, I have one prepared already.  Thank you all for your time and attention to this matter.

Unless you want to break, we can go into Meerun but if you would like to take a break to switch out, I'm fine with that too.  I will defer to you.

UNIDENTIFIED SPEAKER:  We're fine proceeding.

THE COURT:  All right.

MR. EHRENBERG:  Thank you, Your Honor.  We will clean up very quickly.

THE COURT:  Okay . Let's just give them a bit of time.

(Pause)

THE COURT:  All set?  Okay, why don't we move forward with the motion to compel.

MS. GOLDMAN:  Good afternoon, Your Honor. Jessica Goldman from Sullivan & Cromwell on behalf of the FTX Recovery Trust.

We are here to discuss the Trust's discovery motion in the adversary proceeding against defendant, Mohammad Nawaaz Meerun.  As a reminder, the complaint alleges that Mr. Meerun orchestrate a series of frauds against FTX and Alameda that caused them a billion dollars in damages and losses.

Defendant orchestrated these frauds on numerous occasions using dozens of customer accounts that were not in his own name.  Defendant has moved to compel arbitration and on June 2nd, Your Honor permitted discovery on issues of arbitrability.  Pursuant to that order, the Trust served four very simple interrogatories and only one document request on defendant seeking only the documents relied upon in answering interrogatories.

Defendant has refused to respond wholesale. Defendant argues that any arbitrability discovery would be improper but, of course, Your Honor already permitted it. The standard here is relevance.  Plaintiffs discovery requests are clearly seeking relevant information and they're not burdensome on defendant.  The Court should order Mr. Meerun to respond to them.

By way of background, defendant seeks to compel arbitration pursuant to the FTX terms of service but defendants motion identifies two different versions of the terms of service which call for different arbitrable forums,

different substantive laws and different arbitrable rules. The 2020 terms of service provide for arbitration in Antigua and Barbuda under the Antigua and Barbuda Arbitration Act and governed by Antigua law. The 2022 terms of service provide for arbitration in Singapore, administered by the Singapore International Arbitration Center and pursuant to its rules and governed by UK law.

Before a court can compel arbitration, it must find that a valid agreement to arbitrate exists and that it governs the particular dispute. So, before ruling on defendants motion, the Court must decide whether the parties entered into either of the terms of service or both and if so, which one governs which of defendant's conduct. Those are precisely the questions that the plaintiffs discovery requests are designed to shed light on.

Although the motion to compel arbitration is not before the Court today a little bit of background on the terms of service might be helpful.

The 2020 terms went into effect when a user either registered for an FTX account or used the FTX.com services. The 2020 terms of service terminated when an account was closed or suspended.

The 2022 terms of service went into effect the first time a user used the FTX.com services after they were posted for the first time on May 13th, 2022. The 2022 terms

applied, and I'm quoting now, "On a going forward basis with respect to transactions initiated after the initial posting date." So, the 2022 terms applied prospectively. They do not, as defendant contends, apply retroactively to transactions before May 13th, 2022.

The Trust served only four interrogatories and one document request, all of which go to whether and when defendant was bound by one or both of those terms and with respect to which it was conduct. And, again, because Your Honor already allowed us to seek arbitrability discovery, the standard would be relevance here.

Interrogatory number one asks whether defendant controlled certain FTX customer accounts which were linked to the misconduct alleged in the complaint. This information is relevant to whether defendant agreed to the terms of service through his use of those accounts, and if so, which version applies. Those accounts were not registered in defendants name, so only defendant knows which ones he actually used and the extent of his control over it. The Trust can't get this information anywhere else.

Interrogatory number two asks who else controlled the accounts. This information is also relevant to the applicability and enforceability of the terms of service. If defendant did not himself control the accounts at issue that could affect whether the terms apply to him.

Interrogatory number three asks whether defendant agreed to the terms of service through his use of these accounts.  This is squarely relevant to arbitrability. If defendant cannot concede that he agreed to the terms of service he certainly should not be permitted to invoke its arbitration provision.

Finally, interrogatory number four asks to what extent defendant transacted on the exchange after May 13th, 2022, the date that the 2022 terms of service went into effect.  Again, this is relevant to the applicability of the 2022 terms of service because they became applicable the first time that a user transacted on the exchange after they went into effect.

And as I mentioned earlier, the Trust served one document request seeking only the documents that defendant relied on in answering the interrogatories.  This is not a heavy burden.  The requests are narrow, they are targeted and they are directly relevant to arbitrability.

Defendant's objections are meritless.  Defendant first objected on the basis that the Trust did not have Court permission to seek arbitrability discovery but the Court's June 2nd order made clear that arbitrability discovery is allowed and on August 15th the Court clarified that no such leave was required.

Defendant, nonetheless, spends much of his

opposition brief suggesting that any arbitrability discovery would be improper but, of course, Your Honor has already ruled that its permitted. Defendant also objects that the requests are overbroad and not relevant to arbitrability. These boiler plate objections lack specificity. That is, defendant does not say why each request is overbroad or how each request is not relevant, nor could he, Your Honor.

Each interrogatory is tailored to identify whether and when defendant agreed to the terms of service and which version applies to which of his conduct. The first three interrogatories are limited to certain specific accounts. The fourth is a very narrow timeframe.

THE COURT: Let me interrupt you because I have looked at the requests and I've read the briefing. Your complaint is premised on an allegation under Rule 11 that the plaintiff access the accounts -- his accounts and made trades from 2021 through May or definitely past May 2022 under Rule 11. So, why is this in dispute? Why -- I actually find the relevancy question to be the only question before me and why is it a fact in dispute when you have alleged it?

MS. GOLDMAN: Thank you for the question. I understand the question. It's one which we will go to the ultimate question of arbitrability and will -- it will be informed by the discovery, the extent to which defendant transacted on the accounts. I would argue that the complaint

does not allege that defendant, himself, transacted on an account, for example, after the 2022 times went into effect. It alleges that he used accounts that were not in his own name actually after FTX had terminated his previous accounts; therefore, very likely under applicable law terminating the contract with respect to him.

So, there are a number of complicated factors that could weigh into whether the allegations in the complaint about the use of the various different accounts were constituted contract formation and, you know, whether there was an agreement on both sides.  There is other provisions that could be at play.  There is an eligibility requirement in the terms of service that say that once FTX terminates your account you cannot -- you are not eligibility to enter into the terms of service again. So, that could be at play.

At the end of the day, it will be a question of foreign law and it will be one which will be handled when we discuss the motion to compel arbitration.

THE COURT:  Do you think, given that the briefing has been completed, that the defendants could even raise some of those arguments at this point given that they're the ones that pointed out there's two agreements that apply, that have governing arbitration provisions.  Haven't they conceded, by moving to compel arbitration, that there are two agreements that they're bound by, that are relevant here.

MS. GOLDMAN:  Defendants motion to compel arbitration very specifically states that defendant does not concede that either terms apply.

THE COURT:  Right.  Well, they provided me with copies of the agreements and said this needs to go to arbitration because there is two agreements.  So just playing this out, if I decide and I send some claims to arbitration and I say which ones have to go to arbitration, I mean isn't the matter finished?

MS. GOLDMAN:  Well, Your Honor -- before Your Honor can compel arbitration Your Honor must be satisfied that a valid agreement to arbitrate exists and that it governs the particular dispute.

THE COURT:  But you conceded in the complaint that this party was contracting, whether it be through other accounts or not, the party was contracting on the server or on the exchange and thereby in doing so I would submit, agree to the terms of service.  Is there some -- and no one has argued that that is not -- that that is a fact in dispute.

MS. GOLDMAN:  I understand the question now.

THE COURT:  I apologize, I don't articulate my questions as clear as I should.

MS. GOLDMAN:  The conduct that the complaint alleges is that defendant used various accounts to perpetrate the fraud but that does not necessarily mean that through the

use of those accounts entered into the terms of serve and necessarily was bound by it and that FTX, in turn, was also bound by it.

For example, if someone is pretending to be someone else and they enter into a contract it's very possible that that contract there was no meeting of the minds because they weren't the right person or if defendant instructed somebody else to enter into -- to use the -- if defendant instructed somebody else to use the accounts on his behalf it could show that discovery would show in the end that only defendant profited from the accounts but really was operating at a very macro level, and whether that was considered entering into the contract with defendant.  Of course, there were also a number of terminations of the contracts when accounts were consistently closed.

So, all of these complicated facts are something that would be a question of foreign law under either Antigua or UK law for an expert of foreign law to interpret.

THE COURT:  But if there was no contract then you wouldn't have a breach of contract claim.  So, it kind of cuts both ways, doesn't it.

MS. GOLDMAN:  Again, this is a question that will ultimately be informed by discovery and it's an ultimate question of arbitrability and not a discovery question about whether the discovery requests were relevant but to be clear,

the complaint does not allege a breach of the 2022 terms.  It alleges a breach under Antiguan law.

THE COURT:  So, you are conceding that you are not asserting a breach of contract under the 2022.

MS. GOLDMAN:  Yes.

THE COURT:  Okay.  So, given that there would not be a scope question -- excuse me, there would not be a -- where is the dispute on which contract governs arbitration because it's a breach.  You are alleging a breach of contract for the 2020 terms and services, so aren't we done?

MS. GOLDMAN:  Well, first --

THE COURT:  Sorry, the 2022 terms of service don't apply to transactions that occurred prior to May 13th, 2022.  So, I am confused as to why there could ever be an argument that the terms of 2022 services could apply here then.

MS. GOLDMAN:  Well, even putting aside the question of which version, which defendant is apparently moving under the 2022 terms for the motion to compel arbitration, putting aside which version applies it also is a question about pursuant to which it was conduct.  So, which of his conduct is bound.

For example, under the applicable law, which would be up to a UK or Antiguan lawyer to interpret, it certainly could be the case that when FTX first closed defendants account that he no longer entered into another one of the

terms of service and every subsequent time that he told someone else to transact on the exchange that that transaction was not governed by any terms of service because, for example, it was entered into by fraud.

This is all to say that there are a lot of complicated factors at play. There were account openings, there were account closures, there were other people, likely fake names and fake accounts. So, there was just a lot of different factors at play and it's something that when we get the discovery that would inform that question and ultimately will be a question of foreign law.

THE COURT: Okay. All right, thank you.

MS. GOLDMAN: So the burden on defendant is extremely low. We're just asking whether defendant used the accounts, who else did, whether defendant agreed to the terms of service, and to what extent defendant transacted on the exchange when the 2022 terms were in effect.

Finally, defendant argues that the trust already has this information, but as I mentioned the complaint alleges that defendant used other customer accounts to carry out the frauds. So, only defendant can say which accounts he used and how.

The trust's requests are narrow, targeted, and they're essential to resolving the threshold question of arbitrability. They meet the low bar for relevance and

they're very clearly not burdensome.

Defendant cannot invoke an arbitration provision while refusing to provide the basic facts necessary to determine if he ever agreed to arbitrate and pursuant to which contract.  We respectfully ask the Court to compel defendant to respond to the four interrogatories and the single document request so that the Court can make the determination.

THE COURT:  Okay.  Thank you very much.

MS. GOLDMAN:  Thank you.

MS. CERRA:  Good afternoon, Your Honor, nice to see you again.

THE COURT:  Nice to see you.

MS. CERRA:  Siena Cerra from Morris James on behalf of the defendant here.  With me in the courtroom are my co-counsel from Morrison & Cohen, Rachel Fleder and Heath Rosenblat, so I'll turn the podium over to them.

THE COURT:  Sounds good.  Thank you so much.

MS. FLEDER:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MS. FLEDER:  Your Honor, no discovery is needed to decide the motion to compel arbitration.  Instead, the motion should be decided based on the assertions and allegations in the complaint and the terms of service.

Under Third Circuit case law, limited discovery on

arbitrability is only permitted if there's a factual dispute because either, one, the complaint and its supporting documents are unclear if there's an arbitration agreement, or, two, if plaintiff presents additional facts that place the arbitration agreement at issue.  Neither is present or supported here.  Instead, plaintiff is trying to avoid arbitration, but undermining its own allegations regarding Meerun's use of FTX, but plaintiff cannot create a factual dispute by arguing with itself and challenging its own allegations.

At a very minimum, plaintiff must concede that it's beyond dispute that Meerun used FTX under his own name until he was kicked off in March 2021 and that Meerun was subject to the 2020 terms, which contain an arbitration provision and it would continue to apply, and those facts in and of themselves resolve the issue of whether there is at least one arbitration agreement and the parties could arbitrate all the common law claims under the 2020 terms. And so the only inquiry plaintiff should be making here is not whether there's an agreement to arbitrate, but where arbitration should occur because the 2020 terms provide arbitration should occur in Antigua or Barbuda and the 2022 terms, which take effect starting March 13, 2022, say that arbitration should occur in Singapore.

THE COURT:  What's the relevancy of the 2022

terms --

MS. FLEDER:  The relevancy is --

THE COURT:  -- to this dispute.

MS. FLEDER:  The relevancy is that plaintiffs bring claims under the 2022 terms.  I understand now they're saying they don't, but I'm reading Count 2 and it very clear is alleging breaches of the terms and then in the complaint it said it's, you know, referencing the 2020 and 2022 terms. And plaintiff is alleging conduct that continues on to September 2022 specifically, they're specifically saying that, they're specifically saying he used it, and they're saying that they know it is -- they can be confident enough to sue him because they can trace it to him based on the devices used, based on the wallets used, and that's explained in complaint paragraphs 43 to 45.  So they're alleging it, they're bringing suit based on this conduct against Meerun, and so he is just saying, if you're going to sue me based on these terms, you can't cherry-pick terms to enforce, you also have to abide by the provisions in that same terms that provide for arbitration.

THE COURT:  So does it give you any solace or comfort -- I mean, obviously you have to pivot based on what you just heard -- they seem to be backing off of a claim for breach of contract --

MS. FLEDER:  Well, I mean --

THE COURT:  -- under 2022 --

MS. FLEDER:  -- I'm just not clear that that's true.  They're saying --

THE COURT:  Well, I just heard it at the podium. So, if that's --

MS. FLEDER:  I heard --

THE COURT:  -- the case, I mean, we have judicial estoppel issues.

MS. FLEDER:  I heard that they're bringing up breach of contract under Antiguan law, but not under the terms of service, which I don't -- which is what I heard, which I was kind of confused of the meaning of that.

THE COURT:  Okay, I misheard.

MS. FLEDER:  So, yeah, I mean, if they're saying they're dropping their breach of contract claim, that -- you know, that's something we'll take under advisement, but that's not what I understand to be occurring.

THE COURT:  Well, I'm sorry, let me be clear.  I thought what I heard was there is not a breach of contract claim related to the terms of service in effect for 2022; it would just be the 2020 terms of service.  And let's just say I'm right for purposes of this hypothetical discussion, how does that change what we're doing here?  Because you've pointed out in your papers, hey, there's two here --

MS. FLEDER:  Great.

THE COURT:  -- because the facts seem to suggest there was some transacting that covered both contracts --

MS. FLEDER:  I think that would make the matter extremely simple for the Court --

THE COURT:  Okay.

MS. FLEDER:  -- because our briefing talks about there is -- every single time we talk about arbitration being enforceable, we quote both sets of terms.  And so if they're saying we're not going to allege breach of the 2022 terms, we're just talking about 2020, great, the 2022 terms apply, let's go to arbitration in Antigua or Barbuda.

THE COURT:  Okay.  Yeah, it does seem to simplify the matter, doesn't it?

MS. FLEDER:  And so I think our point here is, yes, if you're trying -- if it goes to 2022, we just thought that was the right interpretation of language, but totally fine reading under the 2020 terms, and what we -- but what we insist on is that arbitration is the correct forum and so then it would -- it's a matter of where, not if we arbitrate.

THE COURT:  Correct, and it moots out any discovery that's necessary because we're only under the 2020 terms.

MS. FLEDER:  Yeah, we don't think discovery is needed in either situation, but --

THE COURT:  I understand.

MS. FLEDER:  -- definitely, absolutely it's even stronger if it's just the 2020 terms.

Thank you, Your Honor.  So do you want me to proceed as if -- like as if there's no 2022 terms because I have arguments there --

THE COURT:  I guess just continue.  I mean, if I'm misunderstanding, I'll have counsel correct me --

MS. FLEDER:  All right, I'll just --

THE COURT:  -- in a reply.

MS. FLEDER:  -- so, yeah, I'll go quickly over my 2022 points --

THE COURT:  No, please.

MS. FLEDER:  -- but just making them in case we're mistaken.  So, again, the bottom line is yes, 2020 terms, let's go to arbitration in Antigua.  However, if they do decide to continue on to the 2022 terms, I just want to say it's not the case here that plaintiff in the complaint said they used -- that Meerun used FTX before May 13th, 2022 and then just doesn't know what happened.  Instead, they are bringing claims originally under both sets of terms and they specifically say that he continued until September 2022, and they're the ones -- you know, because they were originally arguing or they still are arguing that no arbitration is appropriate, I just want to -- you know, Meerun can only have breached either set of terms if he agreed to them and they

apply to this case, and they're the ones that chose to bring claims under 2020 terms and/or the 2022 terms, thus discovery is not needed for the Court to simply just hold them accountable to the arbitration provisions in those terms.

Again, they are the ones that kind of say they have records of this, they say they can trace it to him based on the devices and wallets used, so we're just basing it on allegations.

And, finally, I just want to say it is telling that plaintiff opposed Meerun's motion to compel arbitration and stay discovery without ever mentioning it needed discovery on arbitrability, that is because none is needed, and I just want to stress the standard here is needed and appropriate, that's what your order said. So, even though other cases that they cite talk about relevance, which we know is very broad, that is not the standard here, the standard is necessary and appropriate.

And, you know, certainly we think no discovery is needed and definitely not the really broad discovery that was propounded, which in our view is very clearly not simple, not narrow, and really gets to the merits of the case. And I am more than happy to walk through these requests one by one, if you would like me to do so, but otherwise that's all I have. And so we would respectfully ask Your Honor to deny plaintiff's motion to compel discovery.

THE COURT: Okay. Thank you very much.

MS. FLEDER: Thank you.

MS. GOLDMAN: Okay, let me clarify a couple of things.

THE COURT: Okay. And I will say at the outset, when I came in, I'm not just seizing on what you said, I'm also seizing on the face of the complaint because, to be fair, when I came into this, I think it was relevant to me that the Count 2 was only alleged under Antiguan law and the terms of service that's relevant to that is 2020. So, you know, unless you amend your complaint, I guess I would submit, it doesn't seem to me on the face of the complaint there's even a breach of contract claim that has been alleged under the 2022 terms.

I mean, I don't want this to be law of the case or *res judicata*, but it just was confusing to me because if you don't have a breach of contract claim alleged under English law -- and we all agree English law applies to 2022 terms of service -- then is there a claim and is -- therefore, are we subject to that arbitration provision?

So, you know, to be fair, I already had that question, I just seized on something that you said. So, I apologize.

MS. GOLDMAN: Of course, a couple of things. So there are allegations in 2022, first of all, it's just that

we are not bringing a breach of contract claim under the 2022 terms of service.  There are also other claims that defendant is saying must be arbitrated and that whether or not we bring a breach of contract claim under the terms does not weigh on the effect on the other claims. We also -- to be very clear, it's not just which terms apply, that's not the only question that we need discovery to determine and which we need to analyze for in law to understand, it's also pursuant to which conduct.

So the standard, right, is that Your Honor has to be satisfied that a valid and enforceable arbitration agreement exists and that it governs the particular dispute. So there are a number of frauds that are alleged in, and the frauds occurred on numerous occasions using different accounts and each time -- it doesn't -- each time a new account is used for the fraud, that doesn't necessarily mean that defendant specifically is governed by the terms of service.  That's a question that will need to be determined under foreign law based on whether or not there was a meeting of the minds, defendant transacted on the exchange himself sufficiently to have entered into those terms.

The question of contract formation, whether, for example, when defendant -- when FTX terminated the contract by closing the account the first time, whether anything after that period in time would be subject to any arbitration

provision in light of the -- or subject to any of the terms of service in light of the eligibility clause in the terms of service, these are all matters that are going to have to be determined under foreign law based on the responses to the discovery requests, which are very narrow.

And just to clarify one more thing, Ms. Fleder said that we have traced to him all of this conduct and that necessarily means he entered into an agreement with FTX where there was a meeting of the minds, that's not how that works. Contract formation involves a lot more than just tracing conduct to somebody.  So, under Antiguan and/or UK law, whether the defendant entered into the terms of service and was bound by the terms of service and when they were applicable to his conduct, those are questions which need to be analyzed under the applicable law to understand based on all of these complicated terms in the terms of service.

Last points --

THE COURT:  That's a defense that they could raise in the underlying action, though, correct?  Like that's a great point, but isn't that a defense that they would raise to defend against a breach of contract claim?  They already put at issue that they believe two arbitration provisions apply here.  Aren't they bound to that suggestion?

MS. GOLDMAN:  But, Your Honor, pursuant to which conduct --

THE COURT:  But why is that relevant to what I have before me, which is -- is it some suggestion that I'm going to split claims and I'm going to send some, you know, that I have to say a portion of the fraud claim under Count 1 goes to arbitration in Singapore?  I mean, how is it relevant to the actual decision that I have to make on whether the matter should be going to arbitration and where?

MS. GOLDMAN:  The question today is whether the discovery requests are relevant and necessary and appropriate to the question of arbitrability, which will be decided at a later date, but the issue today is these questions, these discovery requests will inform the extent to which defendant transacted on the exchange to understand whether he entered into the terms of service with respect to his use of those accounts.  It's a question that will have to be determined based on the extent of defendant's control over the accounts and whether there was a meeting of the minds, the terms of service and what they say and how those apply to each of the particular conduct with respect to each account, and an interpretation of foreign law.  And it's a question that we revisit when we've fully briefed the motion to compel arbitration with, you know, perhaps supplemental declarations of foreign law.

THE COURT:  Okay.  Thank you.

I'm going to take a short break and I'll rule from

the bench.  Thank you.

(Recess taken at 2:34 p.m.)

(Proceedings resumed at 2:45 p.m.)

THE COURT:  Please be seated.  Thank you.

Well, all these breaks should give you some indication that I don't think these issues are easy, and so thank you all for the briefing.  I will say, until this case, I never had to think about arbitration and now it keeps coming up, but I appreciate the efforts to brief this and put it before me in a cogent manner.

I've considered the issues and I am going to deny the trust's motion to compel responses to its arbitration discovery.  And I'm going to ask the parties to meet and confer regarding scheduling of the defendant's motion to compel arbitration for oral argument as soon as possible -- or as soon as the calendar allows, I should say.

Defendant has alleged that certain of the trust's claims against it are subject to two terms of service contracts between the parties that require arbitration of disputes, one in 2020 and a later revised one in 2022. The 2020 terms of service provide that Antiguan law applies that arbitration should be Antigua and Barbuda, whereas the 2022 terms of service provides that English law applies and that arbitration should be held in Singapore.  So, therefore, if the claims are to be arbitrated, I must decide

which agreement applies.

The 2020 terms of service provides that future changes of the 2022 terms of service will become effective -- excuse me, the 2020 terms of service provide that future changes to its terms will become effective and should be deemed accepted by the customer the first time the customer uses the services after the initial posting of the revised agreement, and shall apply on a going-forward basis with respect to transactions initiated after the posting date. The revised 2022 terms are posted on May 13th, 2022 it seems.

The trust seeks discovery to establish if the defendant transacted on the exchange on or after May 13th, 2022 and agreed to the changes.  It argues that this information is essential to my decision on the motion to compel arbitration.  However, based on the allegations of the trust's complaint, the trust submits that the defendant transacted on the exchange through September of 2022. Therefore, there is no fact dispute necessitating the trust's discovery.  At this point, the question of which agreement applies given the claims at issue is a legal question that the Court must decide based on the facts that have been alleged in the complaint.

So I'm just denying discovery and I will rely on the briefing that you have submitted on this issue and I'll hear argument on it.  If the parties are available, I can

hear you at the next omnibus hearing; if not, reach out and we'll give you another date, or if you want to wait until the following omnibus hearing, that's fine too.  I'll leave it to you to think about it and contact Ms. Lopez, unless you all know right now what you want to do.  But I'm trying to move this stuff forward really and I apologize, it's a quite a bit and I have other cases.  So I am moving through it, but I will get a prompt decision once you all schedule oral argument, I'll work towards it, and I'm planning on ruling from the bench on the issue.  Okay?

All right, thank you all very much.  Should we discuss anything else before we adjourn today's hearing?

MR. EHRENBERG:  Not today, Your Honor.

THE COURT:  Okay, all right.

MR. EHRENBERG:  Thank you.

THE COURT:  Thank you, Mr. Glueckstein.

MS. GOLDMAN:  Thank you, Your Honor.

THE COURT:  Take care.

MR. GLUECKSTEIN:  Thank you, Your Honor.

(Proceedings concluded at 2:48 p.m.)

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.


/s/ William J. Garling                    September 12, 2025

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Mary Zajaczkowski                     September 12, 2025

Mary Zajaczkowski, CET-531

Certified Court Transcriptionist

For Reliable


/s/ Tracey J. Williams                    September 12, 2025

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable