# EXHIBIT 9

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                    .  Chapter 11
                                          .  Case No. 22-11068 (KBO)
FTX TRADING LTD., *et al.,*                .
                                          .  (Jointly Administered)
              Debtors.                    .
                                          .
. . . . . . . . . . . . . . . . .         .
                                          .
FTX RECOVERY TRUST,                       .  Adversary Proceeding
                                          .  No. 24-50184 (KBO)
              Plaintiff,                   .
                                          .
    -against-                             .
                                          .
GATE TECHNOLOGY INCORPORATED,             .
GATE GLOBAL, CORP., GATE                  .
INFORMATION PTE. LTD., and                .
SUN YUNZHI,                               .
                                          .
              Defendants.                 .
                                          .
. . . . . . . . . . . . . . . . .         .
                                          .
FTX RECOVERY TRUST,                       .  Adversary Proceeding
                                          .  No. 24-50188 (KBO)
              Plaintiff,                   .
                                          .
    -against-                             .
                                          .
FORIS DAX MT LTD., FORIS DAX              .
ASIA PTE. LTD., FORIS DAX,                .  Courtroom No. 3
INC., and IRON BLOCK                      .  844 King Street
CAPITAL,                                  .  Wilmington, Delaware 19801
                                          .
              Defendants.                 .  Monday, November 24, 2025
. . . . . . . . . . . . . . . . . .          9:33 a.m.


                     TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE KAREN B. OWENS
              CHIEF UNITED STATES BANKRUPTCY JUDGE


                          - Cont'd -

FTX RECOVERY TRUST,                     .   Adversary Proceeding
                                        .   No. 24-50201 (KBO)
              Plaintiff,                .
                                        .
     -against-                          .
                                        .
PROSPERITY ALLIANCE, INC.,              .
                                        .
              Defendant.                .
                                        .
. . . . . . . . . . . . . . . . .       .
                                        .
FTX RECOVERY TRUST,                     .   Adversary Proceeding
                                        .   No. 24-50212 (KBO)
              Plaintiff,                .
                                        .
     -against-                          .
                                        .
THE GOODLY INSTITUTE dba                .
GOODLY LABS,                            .
                                        .
              Defendant.                .
                                        .
. . . . . . . . . . . . . . . . .       .
                                        .
FTX RECOVERY TRUST,                     .   Adversary Proceeding
                                        .   No. 24-50214 (KBO)
              Plaintiff,                .
                                        .
     -against-                          .
                                        .
MANIFOLD MARKETS, INC.,                 .
MANIFOLD FOR CHARITY, INC.,             .
ROSS RHEINGANSYOO, and FTX              .
PHILANTHROPY, INC.,                     .
                                        .
              Defendants.               .
                                        .
. . . . . . . . . . . . . . . . .       .

- Cont'd -

FTX RECOVERY TRUST,                   .   Adversary Proceeding
                                      .   No. 24-50635 (KBO)
                Plaintiff,            .
                                      .
        -against-                     .
                                      .
KUROSEMI, INC.,                       .
                                      .
                Defendant.            .
                                      .
. . . . . . . . . . . . . . . . . .   .
                                      .
MORGAN AND MORGAN CLAIMANTS,          .   Adversary Proceeding
                                      .   No. 25-50962 (KBO)
                Plaintiffs,           .
                                      .
        -against-                     .
                                      .
FTX TRADING LTD.,                     .
                                      .
                Defendant.            .
                                      .
. . . . . . . . . . . . . . . . .     .
                                      .
FTX RECOVERY TRUST,                   .   Adversary Proceeding
                                      .   No. 24-51054 (KBO)
                Plaintiff,            .
                                      .
        -against-                     .
                                      .
NEWURTH S.A., B TRANSFER              .
SERVICES LIMITED, BT PAYMENT          .
SERVICES NIGERIA LTD,                 .
TRANSFERZERO MONEY TRANSFER           .
EP SA, BT PAYMENTS SERVICES           .
UGANDA LTD, ELIZABETH                 .
ROSSIELLO, ADAM GOUVEIA,              .
MARLEEN HA YE, CALLUM DRYDEN,         .
MIN-SI WANG, CHARLENE CHEN,           .
LINDA LEVINSON, and TOMOYUKI          .
NII,                                  .
                                      .
                Defendants.           .
                                      .
. . . . . . . . . . . . . . . . . .   .

                        - Cont'd -

FTX RECOVERY TRUST,                        .  Adversary Proceeding
                                           .  No. 24-52195 (KBO)
              Plaintiff,                    .
                                           .
     -against-                             .
                                           .
RYAN SALAME and MICHELLE                   .
BOND,                                      .
                                           .
              Defendants.                   .
                                           .
. . . . . . . . . . . . . . . . .          .
                                           .
FTX RECOVERY TRUST,                        .  Adversary Proceeding
                                           .  No. 24-52358 (KBO)
              Plaintiff,                    .
                                           .
     -against-                             .
                                           .
GENESIS DIGITAL ASSETS                     .
LIMITED, GDA US INC., DDH                  .
(NORTH AMERICA) INC., DDH-                 .
CHOLLA, LLC, DDH-OK-1, LLC,                .
RASHIT MAKHAT, and MARCO                   .
KROHN,                                     .
                                           .
              Defendants.                   .
                                           .
. . . . . . . . . . . . . . . . .

(APPEARANCES CONTINUED)

Audio Operator:            Jadon Culp, ECRO

Transcription Company:     Reliable
                           The Nemours Building
                           1007 N. Orange Street, Suite 110
                           Wilmington, Delaware 19801
                           Telephone: (302)654-8080
                           Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES:

For the FTX
Recovery Trust:                 Kimberly A. Brown, Esquire
                                LANDIS RATH & COBB, LLP
                                919 Market Street
                                Suite 1800
                                Wilmington, Delaware 19801


                                -and-

                                Brian D. Glueckstein, Esquire
                                Jessica H. Goldman, Esquire
                                Alexa J. Kranzley, Esquire
                                SULLIVAN & CROMWELL, LLP
                                125 Broad Street
                                New York, New York 10004


For Seth Melamed:               Lawrence O'Brien, Esquire
                                MCCARTER & ENGLISH, LLP
                                405 North King Street
                                8th Floor
                                Wilmington, Delaware 19801

                                David Adler, Esquire
                                250 West 55th Street
                                13th Floor
                                New York, New York 10019


ALSO APPEARING:

In Propria Persona:    Pu Ke

In Propria Persona:    Daizhuo Chen

INDEX

MOTIONS:                                                        PAGE

Agenda
Item 19:  FTX Recovery Trust's One Hundred Ninety-Third        10
          (Substantive) Omnibus Objection to Certain No
          Liability Proofs of Claim (Non-Customer
          Claims)
          [D.I. 31949, filed on July 25, 2025]

          Court's Ruling:                                      14

Agenda
Item 20:  Motion of Pu Ke for Status Conference and           14
          Limited Administrative Relief Regarding Claim
          No. 33657
          [D.I. 32712, filed on September 15, 2025]

          Court's Ruling:                                      21

Agenda
Item 21:  Motion of Pu Ke for Collaborative, Claim-           14
          Specific Administrative Relief Regarding Claim
          No. 33657
          [D.I. 32739, filed on September 18, 2025]

          Court's Ruling:                                      21

Agenda
Item 22:  Motion of Daizhuo Chen for Entry of an Order        23
          Authorizing Late Completion of Customer KYC
          Pursuant to FRBP 9006(b)(1); in the
          Alternative, Relief Under FRBP 9024
          (Rule 60(b)(l)) and FRBP 3008/11 U.S.C. 502(j)
          [D.I. 33349, filed on October 29, 2025]

          Court's Ruling:                                      29

Agenda
Item 23:  Motion of Seth Melamed Seeking Entry of an          31
          Order: (I) Compelling the Performance of
          BitFlyer Under the FTX Japan Sale Order
          [D.I. 20560], or Alternatively, (II)
          Compelling the FTX Recovery Trust to Pay
          Amounts Owed Under the KEIP Order [D.I. 1589]
          [D.I. 33425, filed on October 31, 2025]

          Court's Ruling:                                      41

INDEX

MOTIONS:                                                                  PAGE

Agenda
Item 24:   Motion of the FTX Recovery Trust for Entry of        8
           an Order Extending (I) the Claims Objection
           Deadline and (II) the Administrative Claims
           Objection Deadline
           [D.1. 33444, filed on November 3, 2025]

           Court's Ruling:                                      9

Agenda
Item 25:   Motion of Pu Ke for Leave to File Sur-Reply in      14
           Further Support of D.I. 32712 and
           32739 [D.I. 33446, filed on November 3, 2025]

           Court's Ruling:                                     21

EXHIBITS

DECLARATIONS:                                                             PAGE

1 - Declaration of Jeffrey Sielinski, D.I. 31949-3             11

Transcriptionist's Certificate                                46

(Proceedings commenced at 9:33 a.m.)

THE COURT:  Good morning, nice to see everybody. Please be seated.

Ms. Brown, good to see you.

MS. BROWN:  Good morning, Your Honor.  Good to see you, as well.

Kim Brown, for the record, from Landis Rath & Cobb, appearing today on behalf of the FTX Recovery Trust.

Your Honor, we have a handful of matters that are going forward today.  Unless Your Honor would prefer otherwise, we'd suggest starting with Item 24, which is the FTX Recovery Trust's motion for an order extending the claims objection and the administrative claims objection.  We understand there are a number of parties on the phone that are on merely with respect to this matter, so we thought it made sense to take it first.

THE COURT:  Okay.  That would be fine.

As I indicated prior to -- or indicated last week by email through my courtroom deputy, I'm not going to entertain argument on this motion.  I've reviewed the motion. I've reviewed the reply.  And I reviewed all hundred or so objections and joinders and I don't think oral argument will lend any additional help to my decision on this matter, so I'm just going to make a ruling and then the parties on the phone can listen.

And to the extent that they wish to be excused, they may excuse, themselves.

MS. BROWN:  Thank you, Your Honor.

THE COURT:  All right.  So, by the motion to extend, the Trust seeks a one-year extension of the claims objection deadlines, and as I mentioned, oral argument is not necessary, as it will not further my consideration on the matter.  Also, I mentioned I reviewed the approximately 110 objections and joinders thereto, and I will overrule them.

The relief requested is procedure in nature and it's customary and appropriate for complex commercial cases of this size.  It is the Trust's first request, and while they have made progress in the claims reconciliation process, the work is far from complete.  Nothing in the record indicates that the Trust has been dilatory with its duty to reconcile claims or has otherwise acted in bad faith.

Finally, the extension is necessary to maximize value by ensuring that creditor recoveries are not unnecessarily diluted with illegitimate claims; therefore, I find that cause exists under Rule 9006(b) and I will grant the Trust's requested relief.  Once the order, to the extent that it has not, please upload it and I will enter it as soon as possible.

MS. BROWN:  Thank you, Your Honor.

We'll have that uploaded immediately.

THE COURT:  Excellent, thank you so much.

MS. BROWN:  With that, Your Honor, we will go to the start of the agenda, which is Item 19, and I will cede the podium over to Ms. Goldman.

THE COURT:  Great, thank you so much.

MS. GOLDMAN:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. GOLDMAN:  Jessica Goldman, from Sullivan & Cromwell, on behalf of the FTX Recovery Trust.

The Trust's hundred-and-ninety-third omnibus objection concerns four proofs of claim collectively seeking over $15 million, filed by individuals who claim to have loaned money to Alameda.  The Trust asks the Court to disallow and expunge these claims in their entirety, on the grounds that there's no evidence that these loans ever existed and the supporting documentation attached to the proofs of claim is fraudulent.

The Trust filed this objection in July.  All four claimants had requested additional time, which the Trust accommodated and we adjourned from the September omnibus to today.  Even with those extensions, claimants have not substantively responded to the objection.  In addition to the objection, the Trust submitted evidence through the declaration of Jeffrey Sielinski, filed as Exhibit B to the omnibus, Docket 31949-3.

Our request at this time is that the declaration and exhibits be entered into evidence.  I know that Mr. Sielinski is in the courtroom; though, I do not believe claimants are available or in the courtroom for questioning.

THE COURT:  Okay.  Does anyone object to the admission of the declaration into evidence?

(No verbal response)

THE COURT:  All right.  I'm hearing no objection.

It's admitted.

(Sielinski Declaration received in evidence)

MS. GOLDMAN:  Thank you, Your Honor.

The Trust conducted a thorough review of the debtors' books and records and there's no evidence that the loans ever existed.  No record of the loan agreements attached to the proofs of claim, no record of the loan confirmation emails attached to the proofs of claim, no record of the underlying loan amounts ever being transferred to the Debtors.

The Trust has also concluded that the supporting documentation submitted with the proofs of claim is fraudulent.  It's clear that claimants went to the public docket for this case, pulled documentation that was filed with legitimate loan claims, and then doctored those documents to reflect their own fraudulent loans.  They, then, used each other's fraudulent loans to -- as templates to

create additional fake loans.

The no objection and the declaration include a number of examples detailing this fraud.  I'll give just two, to illustrate the points.  As the first example, each proof of claim attaches a purported loan confirmation email, so a PDF of an email from, or of an email chain, purportedly with Alameda, confirming the loan amounts, interest, things like that.  Those PDFs of the email chains have embedded hyperlinks within them, but the hyperlinks link to different emails than the ones being displayed.  So, in one case, claimant's email is listed as the recipient of this loan confirmation email, but if you click on claimant's email, it actually will hyperlink you to a legitimate Alameda lender, whose publicly filed proof of claim includes a nearly identical email chain attached to that claim.  So claimant used the publicly filed document as a template for his own fraudulent loan, but failed to remove the original hyperlink.

In other instances, one claimant's email address is displayed as the recipient, but if you click on it, it hyperlinks to a different one of these four claimants' email address.  So, it's clear that there was some collusion happening here.

As a second brief example, the DocuSigned document IDs that are in at the top-left corner of the loan agreements, the purported loan agreements attached to the

proofs of claim are displayed as one docket ID, but if you edit, if you go into edit PDF mode and you move it, you can see that it hides a different document, DocuSign ID underneath.  So it's clear that someone took the existing loan agreement and then covered up the original information to make it appear as though it was a unique document.  I'd refer the Court to the Sielinski declaration for additional examples; there's a number of them.

You know, claimants always have the burden of proving they have a valid claim and, here, the only evidence that these loans ever existed is fraudulent.  Claimants have not substantively responded to our allegations.  They have not provided any additional evidence, and so the Trust submits that the claims should be disallowed and expunged and respectfully request that the Court sustain the objection.

THE COURT:  All right.  Thank you very much.

Does anyone wish to be heard in connection with the -- excuse me --

Can you put that person into the waiting room, please, or just remove them completely from the hearing. Great, thank you so much.

Does anyone wish to be heard in connection with the omnibus objection to the claims, one-hundred-and-ninety-third objection claims?

(No verbal response)

THE COURT:  Okay.  I'm not hearing anyone.

I've reviewed the omnibus objection, as well as the evidence that was attached; in particular, the Sielinski declaration.  I agree that the claims should be disallowed and I will go ahead and do so by entry of the order once it has been uploaded, if you have not already done so; if you have, we'll just go ahead and we'll have it entered.  Thank you very much.

MR. GLUECKSTEIN:  Thank you, Your Honor.  Good morning.

THE COURT:  Good morning.

MR. GLUECKSTEIN:  Nice to see you.

Brian Glueckstein, Sullivan & Cromwell, for the FTX Recovery Trust.

I think the next item is on the agenda, although together, it's Items 20, 21, and 25, which was the recent filings by a *pro se* objector, Mr. Pu Ke, who I believe has appeared before, dealing with his --

THE COURT:  Excuse me.

MR. GLUECKSTEIN:  -- seeking allowance and various administrative remedies, with respect to his claim.  I'm happy to proceed as the Court would like.  I can address the motions or we could hear from the movant, first.

THE COURT:  Why don't we hear from the movant first, to the extent that they're participating today.

Mr. Pu Ke, are you with us, and do you wish to be heard in connection with your motions that you have submitted?

MR. KE:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. KE:  Is my voice clear?

THE COURT:  Yes, it is.  Thank you very much.

MR. KE:  Yeah, good morning, Your Honor.

Pu Ke, I'm appearing *pro se*; holder of Claim Number 33657.

I'm here today, not to ask for special treatment, but to ask for the enforcement of the confirmed plan, which is being asked under 1141(a) of the Bankruptcy Code.

First, I must address the agenda.  I found the notice of dispute at 33802.  The (indiscernible) paradox.  The deadline for my motions was extended to November 17th, for the late objection, 33678.  While the deadline of the motion to extend, 33444, at the same hearing, was shortened to November 13th.

The reality is simple:  my motion was fully briefed on October the 1st by the reply, 32840.  The objection 33678 is an, unauthorized, untimely, sur-surreply, filed without seeking leave of Court.

In contrast, I have filed a motion for leave, 33446, to file a surreply on Agenda Item 25.  The

Trust failed to challenged my good cause for leave. I respectfully request the Court to grant 33446 first, so that for an appropriate record is before Your Honor.

The Trust argues it has discretion to withhold my claim as disputed claim indefinitely. The plan was meticulously designed to prevent exactly this kind of arbitary delay and black box administration. In their plan, Section 218(d), a claim is allowed if no objection is on file by the objection deadline.

For the September 30th, distribution, the operative deadline was the August 15th record date. As of August 15th, the Trust had no objection on file against Claim 33657. By the mandatory mechanics of the confirmed plan, my claim was deemed allowed for that distribution.

The Trust had advanced its manufactured excuses, claimed they cannot pay, due to (indiscernible) risk or a potentially liability. The Trust's liability fears are baseless. Plan Section 742 grants the Trust a safe harbor, stating it shall not incur any liability whatsoever for making a distribution required by the plan.

The plan (indiscernible) payments and protects the Trust when it complies. The Trust is solving for risk that simply doesn't exist.

I'm at old Section 714, previous pre-distribution requirements, my residency is China. My payment mail is Hong

Kong.  The distribution agent, Pioneer, explicitly confirmed this and this path works.

Your Honor, I'm not asking to jump the line.  I was properly in the line and the Trust pulled me out, without any objection.  I respectfully ask for a simple compliance (indiscernible) order that enforces (indiscernible) as written.  The right to trial to file (indiscernible) objection to my claim, 33657, within two weeks, identifying a very legal impediment or, if such impediment exists.  If no such impediment exists, exercise its authority under plan, Section 88, to allow the claim and process the cashout distribution immediately.

The request is reasonable and consistent with the Trust's own administrative practice; specifically, the two-week payment offer to Mr. Favario, as reflected in the record, of the April 17th, 2025 hearing.  The Trust cannot indefinitely hold me in the disputed claim pile based on administrative excuses that exist outside the plan, whether it be a restricted (indiscernible) theory that have never been approved by the Court.  A workload excuse is (indiscernible) contradict or a manufactured (indiscernible) discrepancy.

None of these non-statutory theories override the automatic allowance mechanism of the confirmed plan.

Unless the Court has questions, that is my

request.  Thank you.

THE COURT:  Thank you very much.

I have no questions at this time.

I'm happy to hear from the Trust, in response.

MR. GLUECKSTEIN:  Thank you very much, Your Honor.

Brian Glueckstein, for the Trust.

Mr. Ke is a creditor, who, by his own admission in his submissions, as you just heard this morning, is a resident of China.  Mr. Ke is not happy that his claim remains subject to objection and has not been allowed and requests through his various filings, that the Court step in and force the allowance of the claim.

There is no basis to do so.  At bottom, Your Honor, Mr. Ke is arguing that claims of holders living in China should be paid immediately.  Restating arguments in opposition to China being designated as restricted foreign jurisdiction, they are not ripe and have been deferred to later in this case.  The FTX Recovery Trust continues to assess whether distributions can lawfully be made to creditors who are residents of China and certain other jurisdictions, but until the concerns discussed previously with the Court are resolved and Mr. Ke's claims is otherwise allowed, in accordance with the terms of the plan, it does, in fact, remain a disputed claim, as defined by Section 2.1.57 of the plan.

This should not be a surprise to Mr. Ke or any of the other creditors who participated in the lengthy status conference held before Your Honor last month.  At that conference, the Court directed that the Trust withdraw the proposed restricted jurisdiction procedures motion without prejudice, which we have done, but recognize that with respect to creditors with claims in those jurisdictions, there would be a delay in distributions that is unavoidable, given the issues that have been identified.  That is the reality, with respect to such claims and the Court should not entertain further arguments, with respect to restricted jurisdiction issues, unless and until they are presented to the Court through proper means.

Mr. Ke's submissions in his argument this morning also misconstrue what the plan says and how it operates. Section 8.6 of the plan expressly provides that no distribution may be made by the Trust on account of a disputed claim until it is allowed; thus, none of the provisions governing distributions set forth in Article 7 of the plan, including the distribution record date that's cited the movant, are relevant until the claim becomes allowed.

It, of course, cannot be and will never be the case that claims are eligible for distribution simply because they were filed.  If an individual claim has not been validated or allowed by the debtor or order of this Court.

Based on the claimant's residency in China, a potentially restricted foreign jurisdiction, raising legal issues previously presented and acknowledged by the Court, but deferred until a later date, the Trust is not in a position to allow the claim at this time and it remains a disputed claim under the plan that is still subject to the objection on that, and any other bases, until the claims objection deadline, that's now been extended by the Court, has passed.

Mr. Ke notes his completion of the pre-distribution requirements set forth in Section 7.14 of the plan; those are a prerequisite to receiving a distribution under the plan, but are, all, not sufficient. To sufficient a distribution, the plan requires a holder to both, have an allowed claim, as defined in the plan, and complete the pre-distribution requirements in 7.14.

Mr. Ke does not have an allowed claim at this time and, thus, is not eligible to receive a distribution unless and until his claim becomes an allowed claim at some date in the future. Until such time as his claim is resolved, one way or the other, the claim remains subject to the disputed claims reserve procedures that have been established.

If the claim becomes an allowed claim at a later date, Mr. Ke will, of course, receive a cashed-out distribution, in accordance with the terms of the plan. At

this point, however, because the claim has not been allowed, there is no basis to direct the distribution on Mr. Ke's claim and we respectfully submit that each of his motions that have been filed to the Court should be denied.

Thank you, Your Honor.

THE COURT:  Okay.  Thank you very much.

All right.  Mr. Ke, I'm happy to give you an opportunity for a brief reply, should you like -- should you want one.

MR. KE:  Okay.  I didn't say that I met the Section 714, pre-distribution requirements, is a sufficient condition for allowance and my theory are all in my filings and my replies are all in my filings, and that's my response. Thank you.

THE COURT:  Okay.  All right.

Well, thank you very much.  Thank you, everyone, for taking the time today.

First, I will grant the request to file a surreply or a reply; admittedly, that one slipped my radar and I didn't have the opportunity to consider that request, prior.

MR. KE:  I am 25, 33, and 446.

THE COURT:  Okay, great.  Thank you so much.

I will go ahead and grant the request to file the surreply for the completeness of the record.  But with respect to the substance of the motions, I am overruling

22

them.  The claims, in general, are disputed and are not entitled to a distribution under the plan until they are formally, big-A, allowed.  And I come to that conclusion by looking at the entire provisions of the plan all as one, as I am required to do under the law.  So, until the claim objections deadline expires, claims that have not been formally allowed in other ways, are not entitled to a distribution and that is where we are here today on this claim.

The Trust, as I mentioned, has the opportunity to review claims and pursue them in a manner that they see fit, using their business judgment and based on the Trust's, governing Trust documents and their duties thereunder. There's nothing here that would cause me to question their decision-making and how they're reviewing claims and objecting to them.  The issues that are raised by Mr. Ke are just simply not ripe before me right now.  There's no objection pending to the claim for me to resolve and to allow, and I will wait to receive that from the Trust, when it's an appropriate time.

For those reasons, I will overrule those motions. Thank you very much.

Let's move on to the next matter.

MR. GLUECKSTEIN:  Thank you very much, Your Honor.

I think the next item is Agenda Item 22, which is

the motion of another claimant, Mr. Chen, for entry of an order allowing him to file a late-filed claim and complete KYC.

THE COURT:  Okay.

MR. GLUECKSTEIN:  My partner, Ms. Kranzley, will handle that.  I don't know if Mr. Chen is on and wants to address the Court.

THE COURT:  I think I saw him earlier; he is with us.

So, Mr. Chen, if you're joining us, I'm happy to hear a presentation on your motion.

(No verbal response)

THE COURT:  Okay.  I see your hand is raised -- go ahead -- and if you'd turn your camera on, please.

MR. CHEN:  Can you hear me?

THE COURT:  I can hear you, but I cannot see you.

MR. CHEN:  I received this message that you cannot start your video, because it's disabled by the host.

THE COURT:  Okay.  Give us one minute.

MR. CHEN:  All right.  I see the thing to start.  I hope you can see me now.

THE COURT:  Great, I can see you and I can hear you.

MR. CHEN:  Thank you, Your Honor.

Thank you for permitting me for presenting my

case.  I think I made most of my points relatively clear in my reply to the Trust's objection letter, but here are a few, kind of high-level, like, key points I want to drive through my short presentation.

So, one, I want to emphasize that I am an individual client.  I have a scheduled claim and that's not disputed, but in terms of amount.  And, (B), I think the design choice led by the Trust and, actually, predictably reduces completion, which I have spent quite a bit of paragraphs in my reply, on that point.  They basically told users to distrust unfamiliar third-party domains, while still sending their most-important KYC reminder letters through that domain, making them, objectively, bear a lot of similarities to phishing emails that I try to avoid, even following the Trust's very own, like, anti-phishing advises.

And, three, I think my portion was reasonable.  It's not a self-created problem.  It's not avoidance.  Because the substantive email came from a non-FTX domain, asks for very sensitive information, and that was not explained to me anywhere in the email or any direct communications from the Trust.  And this particular pattern matched the very kind of phishing behavior that FTX warned itself, warned users against.

And, four, I want to also say that I have engaged really early through this process and it did not include

instructions; in fact, when the Kroll sent me the reminder email through the official channel on September 22nd, 2023, I logged in to the portal and I completed as much as I can immediately afterwards on the next day.  So, I do think that shows my attention to this matter.

And then, finally, I want to, also, add a point, which is that the entire back-end evidence is held by the Trust, whether I complete the KYC or not.  After a lot of thinking on this process, I believe it's more than likely than not, I actually uploaded my driver's license to the portal on September 23rd, 2023 and because I don't have that access to the back-end system, only the Trust and the vendor have their back-end logs showing what actually happened.

And you have to understand that I'm trying to recover the events that happened through that time, which is two years ago.  So, I'm trying my best to present what has happened, but I'm happy to answer any questions you have or the Trust has regarding that process.

Yeah, that's my presentation for the case.  Thank you.

THE COURT:  Okay.  Thank you very much.

I'm happy to hear from the Trust on this, as well.

MS. KRANZLEY:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. KRANZLEY:  Alexa Kranzley, from Sullivan &

Cromwell, on behalf of the FTX Recovery Trust.

Your Honor, we set out extensive arguments in our objection to Mr. Chen's motion.  I won't re-hash them, but just a few points that I wanted to highlight.

Your Honor, notwithstanding Mr. Chen's framing, the request that he is asking is not a narrow one, as it is seeking reconsideration of the KYC-related deadlines set forth in this Court's hundred-and-thirtieth omnibus order, a process that was implemented by Judge Dorsey.

We have continually reiterated that for any creditors who have reached out with issues, whether it was accessing the portal, questions about security, questions about websites, completing the requested information, the status of KYC; anyone who's reached out, we have been responsible and responsive.  We received a number of creditors who reached out on the eve of the deadline; we worked with them and did not expunge their claims.

Mr. Chen was not one of these parties.  He has demonstrated no specialized circumstances and no valid reason for any exceptions.

Some more specifics about Mr. Chen's claim.  Your Honor, Mr. Chen attached, as one of the exhibits to his original motion, Exhibit F(2), at Docket 33349.  This is an FAQ that FTX had published about the official email addresses and it explicitly includes an email address from Sumsub.

This is the same email address that Mr. Chen received emails from.

Additionally, the specific FAQs on KYC always were very clear that KYC is being conducted by a third party and it clearly lists Sumsub.  Mr. Chen received, not only the five email reminders directly from Sumsub, but also nine email reminders from FTX customer support directly, noting that he had not completed his KYC.  He also received notice of the KYC motion when it was filed and order, when it was entered.

Also, Your Honor, to be clear, none of these reminders that were sent to him ever asked Mr. Chen to click or to go into anything from Sumsub directly.  The KYC process is all built into the customer claims portal, and so everything directed him to go back to the customer claims portal to complete the KYC step.  And this was how Mr. Chen had gone into the portal in September of 2023.  There were numerous reminders to him in the two years throughout; he did not complete it.

If he had logged into the portal, he would have seen that it would say the status for KYC was not complete.  He can click in there.  He could have reached out to KYC or to FTX customer support; he didn't do so until October of this year.  And so, Your Honor, we submit that we should not be vitiating the order that was entered by this Court for

Mr. Chen's relief.

THE COURT:  Okay.  Thank you very much.

MS. KRANZLEY:  Thank you, Your Honor.

THE COURT:  Mr. Chen, I'm happy to give you the, a brief reply, if you would like one.

MR. CHEN:  Yes, I do think there are a few factual errors in their response.  One particular one is I did go through their portal on September 23rd and in -- two years ago.  And that was not driven by Sumsub, like a reminder email; that's driven by a clear, like, (indiscernible) email, which I think is a very good practice.  And they directed me to the portal link, which I actually followed the next day.

However, all the later emails, like, the reminder, the majority of later emails were, like, as far as (indiscernible), like a bit prior to 2024, is sent from Sumsub, which is a very different type of email that there's a lot of similarities to phishing, which I argue is something that's reasonable.  But there is some reason for me to doubt their valid list and my ignorance of them is actually some excusable neglect, which are (indiscernible) by this.

And, also, I do want to raise another objection, which is, I do believe that I have completed the KYC process on that September 23rd interaction in two years ago.  While I don't -- this is more likely than not.  I don't have the back end logs to prove it and neither the Trust has sent me any

notification that I didn't complete that over multiple months.

Given that, I think I have reason to believe that my process, my authorization process is done, and also coupled with the fact that I received many emails over the next year that there's a lot of similarities of phishing that caused me to objectively think that the KYC scheme, especially started from Sumsub, is a phishing campaign that targeted me. And I have to admit the later emails are clearer and showed me going back to the portal; however, I do think that was -- it was my mistake to not follow the final emails, like, maybe after February this year, but I do think, like, all the earlier confusion has caused me that and I hope the Court will classify as excusable neglect.

THE COURT: Okay. All right. Thank you very much.

I admit that these types of requests are difficult, sitting here as a court of equity standpoint, but when I think about all of the issues holistically, as well as the idea that what you've put forward is a more generalized argument that could be applicable to almost every creditor that is supplement to that order, I'm persuaded by the Trust's arguments and I agree the claimant's request for consideration of the prior order expunging your claim and for expanding the KYC completion deadline is just not warranted.

I think the evidence or the arguments -- the arguments and the evidence show that you knew about the process; started it nearly two years ago.  There were reminders that were coming, service of the orders, and you had the ability to authenticate the veracity of the process by calling customer service, but none of that was done.

And as I mentioned, I'm very conscious of, and sympathetic, to phishing attempts that are pervasive amongst, quite frankly, all of our cases.  The concerns here are generalized to all claimants and would give rise to, if I were to agree, would give rise to a reconsideration of the order for every creditor that is a subject of that order, based on a theory of excusable neglect.

Your failure to take steps to mitigate the concerns of phishing and your fears by following up with customer service representatives, you know, is not reasonable in my mind and it undermines the credible conclusion of mistake or excusable neglect.

And with respect to your argument that you may have uploaded the picture that is not for today; it was not raised in the briefing.  There's been no discovery on that.  It's really just sort of a late-articulated argument as to why I should expand the deadline, but it was raised too late.

So, for all those reasons, I'm going to deny the relief that's been requested; I don't think it is

appropriate.  Thank you very much for taking the time to appear today.  I will so-order the record on this.

MR. GLUECKSTEIN:  Thank you very much, Your Honor.

THE COURT:  I believe the final agenda item this morning is a motion that was made by Mr. Seth Melamed, seeking payments on his admin claim.  I'll turn the podium over to Mr. Melamed's counsel.

MR. O'BRIEN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. O'BRIEN:  Larry O'Brien of McCarter & English for Seth Melamed.  I'll be ceding the podium to my colleague, David Adler.

THE COURT:  Great, thank you.

MR. ADLER:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. ADLER:  Good to see you, again.

THE COURT:  Good to see you, too.

MR. ADLER:  I'm David Adler from McCarter & English, on behalf of Seth Melamed.

Your Honor, we're here before you today, as you may recall, we had some hearings back in the summer regarding some threshold issues that were before the Court:  the applicability of 510(b); the digital estimation order; and whether the claims under the management -- under the stock purchase agreement were going to go to arbitration.  And I'm

here today, because we filed a motion to compel the performance of the Debtors, and now the Trust, and bitFlyer with respect to two court orders that were entered in 2023 and 2024.

With respect -- and it should be noted that bitFlyer was a -- was served with this motion.  I sent bitFlyer the email identified in the agreement, the papers, but I got bounced back.  So I don't know -- I will acknowledge that I think we have to figure out another way to serve them, because the email address that was in the agreement did not work.

Now, I don't think that precludes us from going forward today, with respect to the Trust.  I think that the bitFlyer issue can be put to the side and we can move forward with the Trust.  And the case, Your Honor, is pretty clear, in 2023, in April, the Debtors, at that time, moved to, for authorization to implement a Key Employee Incentive Program. Declarations were submitted by A&M explaining to the Court at the time why it was necessary to adopt a Key Employee Incentive Program.  Mr. Melamed was identified on the exhibit as the COO of the company and was to receive the largest bonus to be paid if the circumstances for the KEIP were triggered.

That order was approved by the Court, Your Honor, on June 8th, 2023, at Docket 1589.  And I do want to note, it

says expressly in the preamble of the order, that the motion seeks to approve implementation of a Key Employee Incentive Program as expressly set forth in paragraphs 19 to 25 of the motion and as further amended and qualified by Exhibit A, the KEIP.  I could those the "KEIP terms" and that's Exhibit -- or that's Document 1589-1, attached to the KEIP order.

And, essentially, Your Honor, the conditions for the triggering of the KEIP payment are set forth in black and white in the KEIP terms.  And with respect to FTX Japan, it did not restart; it was eventually sold in 2024 to bitFlyer and the conditions under the KEIP were triggered under that point.  And, essentially, the only condition was that he be employed when transaction took place.

There are other provisions in here, conditions about what happens if there's a death or a disability event: how much you get; whether it's terminated; if you're terminated with cause.  It can -- the KEIP can go away under certain circumstances, but it's pretty black and white.

And Mr. Melamed did not receive his KEIP award. It's a *de minimis* amount in the scheme of this case; it's $111,000.  We are asking for the Court to compel the payment of that.

Now, if you recall, Your Honor, in the amended claims objection that was filed by the Debtors and the Trust, they took the position that it wasn't their liability; it was

the liability of bitFlyer.  So we had to assess how that might play out.  I mean, if we were to litigate over the KEIP provisions with the Trust for years and, ultimately, they were corrupt, are we wasting our time by not filing a motion to compel bitFlyer to pay those amounts?

So, it was determined that we would file the motion for the Trust and for bitFlyer.  As I said, I think it's very black and white that Mr. Melamed is entitled to his KEIP award.  And the Debtors raised four arguments in their objection as to why the payment should not be made, and I'll go through them sequentially.

Number one is that the motion, my motion to compel was procedurally improper.  They said it's creating duplicative litigation.  It's creating parallel tracks.

I don't see it that way.  As I mentioned before, I mean, they're the ones who said bitFlyer is liable, not the Trust.  And we've got to resolve that issue some way, sooner rather than later, and it would, I think, advance the litigation to know if the Trust is still on the hook for the payment of these amounts.

We think, by the way, Your Honor, that they clearly are, because the KEIP terms identify, specifically, the conditions for which a KEIP award would be payable.  And no condition requires that a claimant release his or her claims against the estate.  So, in other words, if they

wanted to have a release and it apply to FTX and its affiliates and its shareholders and everyone else; that should have been part of the KEIP terms that were set forth in 1589-1 of the order.

THE COURT:  So, in other words, they're co-liable on the claim because they didn't build a release in; is that the argument?

MR. ADLER:  Correct, Your Honor.

And in our motion, we pointed to case law that said, specifically, that when there's an order that says, for example, that FTX is liable for the KEIP amount -- and then there's a subsequent order that says bitFlyer is assuming that liability.  Unless the order expressly amends the prior order, the original order is still a final order and FTX remains liable on account of those sums.

So, we pointed to that case law.  I don't think the debtor was -- I'm sorry -- the Trust, I don't think the Trust responded to that argument that, you know, once there's a final order, you know, the only way you're going to get relief from that order is to either vacate it or modify it. And I don't think the inclusion of a section in the sale agreement that says FTX -- I'm sorry -- bitFlyer is assuming this liability is sufficient to relieve them of their liability under the original KEIP order, okay, because it's just an order approving the sale on the terms and conditions.

It doesn't say, you know, ECF 1589 is hereby vacated or amended, such that bitFlyer is now liable.

So, we laid out that -- those provisions. The Trust has stated that it's procedurally improper; I have to address that. Their second argument was that Mr. Melamed refused sign the agreement. And our response to that is, we put in the declaration showing the back-and-forth between Melamed's prior counsel and FTX's counsel. I don't think that's necessary to get into those facts to resolve this motion. I think all you have to do is look at the KEIP terms, and because there is no KEIP term that says, In order to qualify for a KEIP award, you have to waive your claims against the estate; it doesn't exist, okay. I mean, the four corners of the order dictate, you know, the terms and conditions for the payment of a KEIP.

I think that they also indicate that they had discretion to do whatever they wanted, you know, whether to go forward or not. They mentioned several times "discretion." Our response to that is, yes, the Debtors had discretion whether to go through -- whether to move forward with the KEIP or not, right: business judgment of the company. If the business judgment of the company was that we're not going to go forward with this KEIP anymore, they could have terminated it as to everyone. But if they're going to go through with it, as it was approved by the Court,

they have to go through it with the terms and conditions stated in the Exhibit A to the order and they can't just start adding on new conditions at that point.  So, it's either take it or leave it, you know; either they go forward with it or they don't go forward with it.  But if they do go forward with it, they have to abide by the terms and conditions of the KEIP order.  They just can't add on additional conditions without another order from this Court approving the modifications.  That's their second argument.

Their third argument is that -- and it was unclear to me in the amended claims objection that they were seeking to subordinate under 510(c), the previous KEIP award payment that had been approved by the Court.  So, in May of 2023, individuals from A&M advised the Court why these seven individuals should be entitled to a KEIP award:  they've done extraordinary service; they've re-opened up the Japanese crypto, FTX Japan, for withdrawals; and at that time, they're trying to either figure out whether they're going to restart it or sell it.  And there's a whole -- we cited them in the motion -- a whole litany of plaudits that's given to Mr. Melamed.  And a year later, a year and a half later, we now have another declaration by an individual at A&M saying his claim should be subordinated under 510(c).

I don't think -- I looked, Your Honor, I could not find a single case where somebody tried to get the Court to

approve a KEIP payment or a specified administrative claim, only to later turn around and say that that claim was subordinated under 510(c).  And more importantly, and I think we raised this issue in connection with the claims objection, is there is no 510(c) if creditors are receiving a -- or customers are receiving a full payout.

And we cited case law, the Citigroup case, the Windstream case from Judge Drain that says when there's a hundred-percent payout under a plan, there is no harm and there's no remedy to be applied under equitable subordination.

THE COURT:  Well, there's many creditors who are subordinating their claims so creditors get a claim, so I'm not really understanding that argument.

MR. ADLER:  Well --

THE COURT:  To be fair, I mean, there's a lot of things I take issue, but the idea that everyone is getting paid in full -- well, people aren't getting paid in full.  If you look at the plan, there's many classes of creditors who aren't getting paid.

MR. ADLER:  Well, the customers, I think, are all receiving their --

THE COURT:  But there are other claimants, I believe, under the plan that subordinated their claim or, at least, said they wouldn't take a distribution to benefit.

Look at all the governmental entities.

MR. ADLER:  Well, I --

THE COURT:  Am I misunderstanding how the plan is working here?

MR. ADLER:  -- I think, Your Honor, on that issue, the allegations that were made by A&M were customer-related; in other words, were they owing something pre-transaction, where liquid, the prior company had been hacked.  They point to a certain transfer from Coin, which was a Singapore-based entity, to one of the FTX entities as a mismatch of assets and liabilities, even though it's recorded in the intercompany receivables.

And their allegations are all related to customers, that the conduct hurt the customers of FTX or Coin, specifically, and if the Coin creditors are receiving a hundred-cent payout under the plan, there can't be any remedy that would be applied to, you know, subordinate.

So, we did attach the financials, or we referenced the third-quarter 2025 report that was filed last week that makes it very clear that customers are receiving a full payout and there's a category of accrued interest, you know, next to them, you know, earning interest.  And general unsecured creditors do, I believe, I mean, other than customers, are receiving the full payout.

The only entities that I'm aware of that aren't

receiving -- creditors that aren't receiving a full payout are the governmental agencies.

THE COURT:  Well, they matter, don't they?

MR. ADLER:  They do matter, but they're not part of the harm that was specified by Mr. Chambers at A&M.

THE COURT:  Yeah.  Can I ask a question, just to interrupt here?

MR. ADLER:  Yeah.

THE COURT:  The order that I entered, because I had hearings on this, a lot of time over the summer devoted to your client's issues, which I'm happy to do, but now I just keep having these hearings where everyone is trying to jump the line and get their stuff heard.  And the order said: Agree on a scheduling order to organize the manner in which we move forward.

So, why am I here, the Monday before Thanksgiving, hearing from this again, when I have not seen a scheduling order, as my order directed; has there been conversations on the scheduling order?

MR. ADLER:  There has, Your Honor.

THE COURT:  Okay.

MR. ADLER:  There was one in September and there was a discussion, also, about avenues of resolution.

THE COURT:  Okay.  But I'm not here on a scheduling order, which is the next step.

MR. ADLER:  I think the response is that a scheduling order has not been agreed to yet, in part.  I have not heard from them since September and the issue with bitFlyer --

THE COURT:  Okay.

MR. ADLER:  -- is a separate issue.

THE COURT:  Okay.  This is how I want to move forward.  I'm denying the motion, okay.  First of all, the relief is not procedurally proper.  You are seeking injunctive relief, a motion to compel performance, against a non-debtor third party that is not before me.  You need to file an adversary proceeding; you can't just file a motion, okay.  So that hasn't been done.  So, we haven't heard there them because you haven't served it.  They haven't received notice.  You know, you have to file an adversary with a summons and serve it properly.

But the issues are intertwined with your claims against the debtor, which you filed, and they objected to. We need an organized proceeding moving forward; that's the purpose of the scheduling order.  And now that you're interjecting bitFlyer into this, we're going to have to bring an adversary complaint into this, because they're all intertwined issues and it needs to get resolved at one time and in the motion efficient way for purposes of how I handle things.

So, I'm done with the piecemeal and we're going to file your complaint with bitFlyer.  If you want to pursue bitFlyer, file the complaint, serve the summons, and incorporate them into a scheduling order, and move forward in that way.  I'm just not going to do this anymore, piecemeal.

MR. ADLER:  Yes, Your Honor.

THE COURT:  Okay.  I appreciate the time and attention on this, but, you know, I think we all agreed on how this was going to move forward and that hasn't been done.  So we need to follow the directions under the order.

And I appreciate your interest in bitFlyer, but let's do it right, because they're a third party to a complaint, okay?

MR. ADLER:  Yes, Your Honor.

THE COURT:  And it is tricky.  I will admit, I get a lot of these where it's motions to enforce orders, but generally, my view is pretty strict on those, which is:  You need to file a complaint.

MR. ADLER:  Okay.

THE COURT:  Okay.

MR. ADLER:  That's it.

THE COURT:  All right.

MR. ADLER:  Thank you, Your Honor.

THE COURT:  All right.  Thank you for your time.

Is that it or do we have the Yoo issues?

MR. GLUECKSTEIN:  Your Honor, the amended agenda reflected that the issues with respect to Mr. Yoo, as of Friday, the parties agreed to adjourn those issues.

THE COURT:  Okay.

MR. GLUECKSTEIN:  There is, in that matter, Mr. Yoo, in the adversary complaint that we filed, they have filed a motion to dismiss --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- against Mr. Yoo and they have requested that we confer with them about the possibility of having a motion to dismiss heard at the same time as the pending motions.

THE COURT:  Okay.

MR. GLUECKSTEIN:  We had that discussion on Friday afternoon.  There was confusion as to what was on the agenda for today, so we agreed with them to adjourn the motions that were on for today until we could confer further, and then a proposal to the Court for hearing things in an efficient manner.

THE COURT:  Okay.  All right.

So, then, that's on for the December hearing, then, or, at least, that's the -- it's been carried over to December?

MR. GLUECKSTEIN:  It's been carried.

I think there's a question as to the status of the

adversary motion.  We'll confer with them and we will make a proposal --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- as to when to be heard.  It, ultimately, of course, will be up to the Court, whether that motion to dismiss should be heard with these other motions; whether the Court wants to hear argument on a motion to dismiss in an adversary proceeding, at all, of course.  But there is, I think, consensus amongst the parties that if there's going to be such argument, it would make sense to handle this only once --

THE COURT:  Yeah.

MR. GLUECKSTEIN:  -- so Your Honor is not dealing with these issues more than once.

THE COURT:  Okay.  All right.

Well, then, I will look for the parties to present, either, a consensual path forward in December or tell me why there couldn't be consensus, and I'll decide how to move forward on it.

MR. GLUECKSTEIN:  That sounds great, Your Honor.

THE COURT:  Okay.  In terms of -- when's the next hearing in December, do we know the date for that?

MR. GLUECKSTEIN:  I want to say it's --

THE COURT:  I do think I have a trial.

MR. GLUECKSTEIN:  I believe it's the 18th, Your

Honor --

THE COURT:  The 18th, okay.

MR. GLUECKSTEIN:  -- there's an omnibus hearing.

THE COURT:  Okay.  And then I am correct that there's a three-day trial in January?

MR. GLUECKSTEIN:  Yes, Your Honor.  That is scheduled for the last week of January.  That is with respect to the Trust's objection to the Three Arrows Capital --

THE COURT:  Okay.  All right.

MR. GLUECKSTEIN:  -- amended proof of claim that has been -- that is the subject of ongoing litigation.

THE COURT:  Okay.  All right.  Thank you, I appreciate that.

Okay.  All right.  Well, then, I will look forward to see you all in December, if I have to, and I'm sure I will.  And until then, have a great Thanksgiving, everybody, and safe travels.

MR. GLUECKSTEIN:  You too.  Thank you very much, Your Honor.

COUNSEL:  Thank you, Your Honor.

(Proceedings concluded at 10:26 a.m.)

46

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling                    November 25, 2025

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable