**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Hearing Date:  May 14, 2026 at 9:30 a.m. (ET)** |
| | **Ref. Nos. 35243 & 35411** |

**FTX RECOVERY TRUST'S REPLY IN FURTHER SUPPORT OF**
**ITS MOTION TO ENFORCE PRIOR ORDERS THAT PRECLUDE**
**SETH MELAMED FROM ASSERTING NEW CLAIMS IN ARBITRATION**

The FTX Recovery Trust[2] (the "Trust") respectfully submits this reply in further support of its *Motion to Enforce Prior Orders That Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35243] (the "Motion") and in response to the *Objection of Seth Melamed to FTX Recovery Trust's Motion to Enforce Prior Orders That Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35411] (the "Objection" or "Obj."). In support of the Motion and this reply, the Trust respectfully states as follows:

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Motion or the Plan. Citations to "Ex. _" refer to exhibits to the *Declaration of Brian D. Glueckstein in Support of FTX Recovery Trust's Motion to Enforce Prior Orders That Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35244].

**PRELIMINARY STATEMENT**

1.      Melamed takes irreconcilably different positions in this Court and before the arbitral tribunal.  In this Court, he contends that his arbitration claims are "the same claims asserted in the SPA Claim."  (Obj. ¶ 4.)  Before the tribunal, by contrast, he asserts that his arbitration claims are "legally distinct" from those in his SPA Claim, and are premised on "distinct acts" and resulted in "legally distinct harms."  (NoA ¶ 38(c).)  Both cannot be true, and the Court should reject Melamed's attempt to recharacterize his arbitration claims as preserved after expressly and deliberately pleading them in the Notice of Arbitration as "distinct" from the SPA Claim in order to evade this Court's threshold rulings (the "Threshold Rulings").

2.      The Court reached those Threshold Rulings after considerable litigation, and over Melamed's multiple objections, in order to "streamline" litigation of the SPA Claim. (Ex. 6 at 119:2.)  The parties and the Court understood that, taken together, these rulings applied to all components of the SPA Claim, which the Court broke down into two categories.  First, as the Court noted, the SPA Claim sought to recover "damages due to FTX's failure to deliver" the crypto portion of Melamed's SPA consideration (the "Crypto Consideration") under the terms of the SPA.  (Id. at 126:15-18.)  Second, "the remainder of the SPA Claim[]," alleged "that FTX's material misrepresentations as to its financial health caused [Melamed] to suffer damages" because the portion of his consideration consisting of FTX shares (the "FTX Consideration Shares") "turned out to be worth less than what he was led to believe." (Id. at 118:21; 128:11-14.)

3.      The Court's Threshold Rulings addressed each in turn.  The Court first held that Melamed's claim for the Crypto Consideration "should be valued pursuant to the confirmed [P]lan and [E]stimation [O]rder."  (Id. at 125:16-20.)  As to the remainder, the Court concluded that "Melamed['s] claims for breach of warranty, misrepresentation, fraud, and indemnification" were, "[a]t bottom," "an attempt to recover the losses [he] sustained as an FTX shareholder," and

must be subordinated under section 510(b).  (*Id.* at 128:7-8; 128:17-19, 129:4-6.)  Thus, following these Threshold Rulings, the remaining issues are:  (1) whether Melamed is entitled to the unpaid Crypto Consideration under the terms of the SPA, with any recovery capped at Estimation Order values; and (2) whether Melamed's subordinated claims relating to the FTX Consideration Shares have any merit.[3]  The Court directed that these issues be resolved in arbitration, with this Court ultimately making a determination as to the allowance and treatment of any claim.

4.      Melamed's Notice of Arbitration seeks to assert new, unpreserved claims that go well beyond these remaining issues.  The Notice of Arbitration does not assert a claim that FTX breached its obligation to deliver the Crypto Consideration under the terms of the SPA, and expressly disclaims any claim for losses relating to the FTX Consideration Shares.  Clearly dissatisfied with the Threshold Rulings, Melamed instead advances *new claims* that *distinguish* those in the SPA Claim.  For the first time, he asserts in the Notice of Arbitration:  (1) a claim that FTX induced Melamed, through abuses of "superior bargaining position" "to sell 20% of his interests in Liquid to FTX for cash" (the "Cash Consideration"), and, in turn, "to be grossly undercompensated for the value of that stake" (NoA ¶¶ 15(b), 17(b)); and (2) a claim that FTX induced Melamed "to sell 20% of his interests in Liquid to FTX in a manner that enabled FTX to continue to hold" and "maintain custody of" the Crypto Consideration, putting "this portion of the purchase price [] at risk," and "led ultimately to [Melamed] being deprived of that tranche of the purchase price."  (NoA ¶¶ 15(a), 17(a), 38(a).)

5.      The Notice of Arbitration explains precisely why Melamed has crafted these new, "legally distinct" claims:

---

[3]   This bucket includes any indemnification claim, except "[t]o the extent that Mr. Melamed asserts an indemnification claim on account of the SPA Claim arising from the unpaid [C]rypto [C]onsideration," for which the Court deferred judgment "until such claim is clearly defined." (Ex. 6 at 129:4-11.)

> [Melamed] makes no damages claim in this arbitration for any loss attributable to the FTX Share Consideration, and specifically requests that the arbitral tribunal explicitly find that any damages awarded are not in any way related to the FTX Share Consideration.
>
> ***That is because the [Trust] has already persuaded the Bankruptcy Court to make a preemptive declaration that under [section 510(b)] any claims or damages that arise from the purchase of equity would be subordinated in the bankruptcy proceeding*** . . . That ruling has made it impossible for [Melamed] to recover any amount that an arbitral tribunal might find the [Trust] liable to pay in respect of that distinct loss.
>
> ***That is why, to repeat for emphasis, [Melamed] is limiting his damages claims in this arbitration to those in respect of other harms***, and respectfully requests that the arbitral tribunal ensure that any award in [Melamed]'s favor explicitly confirms that any damages awarded do not arise from the purchase of FTX shares.

(Ex. 2, ¶¶ 28-30 (emphasis added).)  In other words, after failing to preserve these admittedly "legally distinct" claims through a timely-filed proof of claim, never raising or even alluding to them during two years of litigation before this Court, and only after this Court issued Threshold Rulings limiting his potential recovery on the claims he did preserve, Melamed now seeks to newly assert them in arbitration.  The Court should enforce its prior orders and bar him from doing so.

6.      *First*, these new repackaged arbitration claims were not preserved in the SPA Claim.  The Notice of Arbitration expressly identifies conduct, harm, and losses that it represents to be "legally distinct" from the conduct, harm, and losses underlying the SPA Claim. The Objection does not even attempt to reconcile that position with its contrary assertion that "[t]he NOA Claims are the same claims asserted in the SPA Claim," involving "the same factual allegations," "and the same harm."  (Obj. ¶¶ 4, 52.)  They are not.  The SPA Claim did not seek to recover any amount in respect of the Cash Consideration, and asserted only a breach of contract claim in respect of the unpaid Crypto Consideration that is entirely distinct from his claim in

arbitration.   The Objection's single paragraph (¶ 43) attempting to tie the arbitration claims to allegations in the SPA Claim cites to provisions that contradict, rather than support, his new claims.

7.      The Objection's description of the arbitration claims as part of a "single unitary tort action" supposedly preserved in the SPA Claim (Obj. ¶ 40) cannot be squared with the Notice of Arbitration, which expressly distinguishes "FTX's intentional or negligent infringements of [his] rights in respect of the two 20% tranches of his shares in Liquid" sold in exchange for the Cash Consideration and Crypto Consideration as "distinct acts that resulted in legally distinct harms from the harm that FTX caused [him] by fraudulently inducing him to transfer 60% of his shares in Liquid to FTX in exchange for FTX equity" (NoA ¶ 38(c)).

8.      The Objection's damages argument fares no better.  Melamed insists that his arbitration claims seek the same damages as the SPA Claim minus 60% of damages attributable to the FTX Consideration Shares, which he describes as a mere "arithmetic consequence" of the damages previously asserted.  (Obj. ¶ 5.)  But the Notice of Arbitration does not merely "back out" the FTX Consideration Shares as a computational step; it expressly seeks a determination that any arbitral damages "do not arise from the purchase of FTX shares" and are "not in any way related" to them.  (NoA ¶¶ 28, 29.)  That position is irreconcilable with the SPA Claim, which, as this Court has recognized, is centered on the alleged overvaluation of the FTX Consideration Shares.  Nor does Melamed explain how subtracting 60% of his prior alleged damages somehow yields far more damages than his SPA Claim, or why the valuation of his shares has suddenly increased by 200%.

9.      Melamed cannot salvage his position by repackaging these unpreserved claims as "indemnification."  The SPA Claim's reference to "indemnification" cannot operate as a back door to assert unpreserved claims or obtain relief that the Court already foreclosed.  Nor is there an equitable basis for such relief.  The Trust never disputed Melamed's entitlement to recover

the Estimation Order value of any unpaid Crypto Consideration, and has no obligation to indemnify him for the costs of pursuing recovery beyond that.  If anything, it is the Trust—and ultimately its creditors—that unfairly bears the costs of this unnecessary and duplicative litigation.

10.    *Second*, the Court need not entertain Melamed's improper request (Obj. ¶ 53) to treat the Objection as a cross-motion to amend, particularly given the extensive prior proceedings with no mention of these new claims, lack of any legitimate basis for amendment, and his conspicuous gamesmanship.  Even if Melamed had properly sought leave to amend, he cannot satisfy the exacting standard for post–confirmation amendment.  His arbitration claims are not clarifications of existing claims, but newly minted ones designed to circumvent this Court's orders. He provides no reason, much less a compelling one, for post-confirmation amendment and no explanation for delay.  Amendment would also result in clear prejudice, as the parties have been litigating for nearly two years, and would be futile in any event because the new claims lack merit.

11.    *Third*, Melamed's hodgepodge of Plan-related arguments lack merit, and do not alter the conclusion that he is enjoined from pursuing these new claims under the confirmed Plan and Non-Customer Bar Date Order—both because the new claims were asserted after the bar date and because they fall squarely within the Plan's Global Settlement provision.

12.    *Fourth*, because Melamed's new claims were not presented to this Court as part of the SPA Claim, they also fall outside the scope of the Court's referral to arbitration.

13.    The Court should reject Melamed's inconsistent positions and *post hoc* recharacterizations and enforce the Confirmation Order, Non-Customer Bar Date Order, and Arbitration Order to bar Melamed from advancing these new claims in arbitration.

**ARGUMENT**

I.   **Melamed's Arbitration Advances New, Unpreserved Claims, and the Objection's Contrary Arguments Cannot Be Reconciled with the Notice of Arbitration.**

14.     Melamed's Objection is most notable for what it omits.  Nowhere in his 24-page Objection does Melamed even attempt to reconcile his position in arbitration that his claims are "legally distinct" from those in the SPA Claim, premised on "distinct acts" and "result[ing] in legally distinct harms" (NoA ¶ 38(c)), with the position he now advances to this Court that "[t]he NOA Claims are the same claims asserted in the SPA Claim," involving "the same factual allegations," "and the same harm" (Obj. ¶¶ 4, 52).  Plainly, both cannot be true.

A.   **Melamed's Claims in Arbitration Rest on New Factual Allegations, Theories of Liability, and Damages.**

15.     The Notice of Arbitration advances entirely new claims, expressly premised on distinct factual allegations, theories of recovery, and types of harm than the SPA Claim, and which seek far greater damages:

|  | **SPA Claim** | **Notice of Arbitration** |
|---|---|---|
| **FTX Consideration Shares** | FTX's "untrue, misleading statements" about its own "financial health" and "integrity," induced Melamed to accept "worthless" FTX "shares and blockchain tokens." (SPA Claim ¶¶ 24-27) | Melamed "makes **no damages claim in this arbitration for any loss attributable to the FTX Share Consideration**." (NoA ¶ 28 (emphasis in original)) |
| **Cash Consideration** | Melamed makes **no claim** with respect to the Cash Consideration, and specifically excludes the Cash Consideration from the asserted damages. (SPA Claim ¶ 14) | FTX's "predatory business practices (including abuses of superior bargaining position) while [Melamed] was under economic duress," induced him "to sell 20% of his interests in Liquid to FTX for cash," "for a price far below their actual fair market value." (NoA ¶¶ 15(b), 17(b), 38(b)) |
| **Crypto Consideration** | FTX "promised Claimant the [Crypto] Consideration on the [SPA] Completion Date" but "retained such consideration," and thus, "breached its obligation" under the SPA. (SPA Claim ¶¶ 19, 20) | FTX's "misrepresentations" about customer assets induced him "to sell 20% of his interests in Liquid to FTX in a manner that enabled FTX to continue to hold [it]," putting "this portion of the purchase price [] at risk." (NoA ¶¶ 15(a), 17(a), 38(a)) |
| **Damages** | **$35.6M** = SPA date value of:  Crypto Consideration ($8.9M) + FTX Consideration Shares ($26.7M).  (SPA Claim ¶¶ 9, 13, 14) | **$45M** = "conservative estimate" of:  (20% shares sold for Crypto Consideration) + (20% shares sold for Cash Consideration) – ($8.9M cash received) |
| **Valuation** | **$44.5M** = SPA date value of:  Crypto Consideration ($8.9M)  + FTX Consideration Shares ($26.7M) + Cash Consideration ($8.9M) | **$135M**<br>$45M = (.4X – $8.9M cash received)<br>X = $134.75M |

16. The Objection's attempt to tie the arbitration claims to allegations in the SPA Claim is confined to a single paragraph—paragraph 43. That paragraph, however, does not support Melamed's position; it undermines it.

17. First, Melamed asserts that his claim in arbitration to recover damages in respect of the Cash Consideration "was identified in SPA Claim Annex ¶ 14(a)." (Obj. ¶ 43(a).) It was not. Paragraph 14(a) says the opposite: it *excludes* the Cash Consideration from any measure of damages and implicitly concedes that Melamed received a fair price for that portion of his Liquid shares by asserting total damages of $35,613,112.19—*i.e.*, the purported "true value" of his shares minus the $8,903,278.05 Cash Consideration he received. (SPA Claim ¶¶ 14(a), 24; *see* Motion ¶¶ 24, 25, 25 n.9.) Melamed's attempt in arbitration to recover in respect of the Cash Consideration is thus not only an effort "to recover damages that were not fairly encompassed in [his] original proof of claim," which he "cannot do at this point," *In re Maxus Energy Corp.*, 2023 WL 5543612, at *7 (Bankr. D. Del. Aug. 28, 2023), but also one that contradicts the SPA Claim.

18. The Objection likewise fails to grapple with the new ***factual*** predicate underlying this basis of recovery. A claim is new where it "asserts a new legal theory that would require supporting facts that are not set forth in [the original] proof of claim." *In re Charge Enters., Inc.*, 2024 WL 5112999, at *5 (Bankr. D. Del. Dec. 13, 2024). Here, Melamed's new claim in respect of the Cash Consideration relies on brand new allegations that FTX induced him to sell 20% of his Liquid shares by "engag[ing] in predatory business practices" and "abuses of superior bargaining position" while Melamed "was under economic duress." (NoA ¶¶ 15(b), 17(b).)

19. Melamed's assertion that the arbitration claims and the SPA Claim share "the same factual allegations" of "FTX-induced fraud, misrepresentation and indemnity" is both conclusory and incorrect. (Obj. ¶ 52.) The SPA Claim only alleges misrepresentations concerning

FTX's own value and, in turn, the value of the FTX Consideration Shares. Those alleged misrepresentations have no bearing on Melamed's new contention that FTX underpaid for the *Liquid* shares he sold to FTX, which would instead turn on facts relevant to Liquid's valuation or the new allegations regarding FTX's business practices that allegedly resulted in its underpayment.

20. Second, Melamed asserts that his claim in arbitration to recover damages for the 20% of his Liquid shares sold for the Crypto Consideration was "identified in SPA Claim Annex ¶¶ 13(b), 14(b), 19, 20." (Obj. ¶ 43(b).) Once again, it was not. Those provisions make abundantly clear that the SPA Claim sought to recover in respect of the Crypto Consideration solely on the basis that FTX "promised Claimant the [Crypto] Consideration on the Completion Date" but "breached its obligation" by failing to deliver it. (SPA Claim ¶¶ 19, 20.) On the other hand, the Notice of Arbitration asserts for the first time that FTX induced Melamed to "agree[] to allow FTX to hold 20% of the purchase price." (NoA ¶¶ 16, 17(a), 18, 38(a).) The allegation that FTX induced Melamed *to agree* to FTX's retention of the Crypto Consideration is not only absent from the SPA Claim, but also inconsistent with the SPA Claim's assertion that FTX breached the SPA by *wrongfully* retaining it. *See also Melamed Opp.* [D.I. 30077] at 3 ("Debtors' failure to pay the [Crypto] Consideration on the Completion Date was a breach of the SPA (and Side Letter).").[4]

21. The Objection's reference to Japanese law does not save it. It argues that the Trust "misunderstand[s] Japanese civil law," which purportedly treats Melamed's claims as "a single unitary tort action." (Obj. ¶¶ 40, 41.) Rhetoric aside, that argument is contradicted by Melamed's Notice of Arbitration, which expressly divides his alleged harm arising from the SPA Transaction into three "legally distinct" categories: (1) harm arising from the sale of 20% of his

---

[4]   It is not apparent what the "Trust's 'Indemnification' Theory" or "Japanese Law Theories" referenced in paragraph 43(c) and 43(d) refer to, as the Motion does not identify or describe either purported theory.

Liquid shares for the Cash Consideration; (2) harm arising from the sale of 20% of his shares for the Crypto Consideration, and (3) harm arising from the sale of 60% of his shares for the FTX Consideration Shares—which he then excludes from arbitration.  (NoA ¶¶ 28, 30, 38(c).)  Having affirmatively pleaded these claims as "legally distinct" in arbitration, Melamed cannot now recast them as a "single unitary" claim to argue that they were preserved.  (NoA ¶ 38(c); Obj. ¶ 40.)

**B.     The Objection's "Arithmetic Consequence" Argument Is Internally Inconsistent and Expressly Contradicted by the Record.**

22.     The Objection asserts that Melamed is seeking the same damages in arbitration as he sought in the SPA Claim, except that the arbitration "excludes that portion of damages related to the FTX Consideration Shares." (Obj. ¶ 42.)  This argument cannot be squared with the SPA Claim, the Notice of Arbitration, or the record before this Court.

23.     First, the FTX Consideration Shares were not a line item to be netted out of the SPA Claim.  Instead, as this Court recognized, the FTX Consideration Shares were the centerpiece of Melamed's claimed injury.  (Ex. 6 at 128:8-19.)  Melamed cannot subtract the very loss he claimed as his injury and call what remains the "same claim."  (Obj. ¶ 4.)

24.     Second, Melamed mischaracterizes his briefing in this Court, which did not consistently posit that his Article 709 damages would be calculated as "the difference between the consideration [he] received" and "the value of his interests" conveyed to FTX.  (Obj. ¶ 39.)  For example, the *Declaration of Takane Hori* [D.I. 23171 ¶ 26], which was incorporated into Melamed's opposition [D.I. 30077 at 2 n.4], posits that any damages would be calculated as "the difference between the expected purchase price and what Melamed actually received."

25.     Third, the Notice of Arbitration does not merely seek to exclude 60% of Melamed's purported damages as a computational step.  Rather, it "specifically requests" a finding

"that any damages awarded are not in any way related to the FTX Share Consideration," "do not arise from the purchase of FTX shares," and constitute "distinct loss." (NoA ¶¶ 28-30.)

26.    Fourth, if Melamed were merely subtracting a component of his prior damages, the resulting figure would also necessarily be lower than the damages asserted in the SPA Claim. Yet Melamed now seeks *greater* damages in arbitration while purporting to exclude 60% of the damages sought in the SPA Claim. He does so by advancing a new valuation of Liquid that exceeds the "true value" asserted in the SPA Claim by more than 200%, and by including an entire category of consideration, the Cash Consideration, for which the SPA Claim sought no relief. (*See* Motion ¶ 24.) The Objection offers no coherent explanation for this contradiction.[5] The Trust was never put on notice that this claim litigation would involve a valuation of Liquid above the valuation in the SPA because it did not until now.

27.    Puzzlingly, the Objection asserts that this new damages figure excludes the FTX Consideration Shares because "Melamed received [them] in-kind at closing," and thus that portion of consideration is "backed out" of the calculation "as 'consideration received.'" (Obj. ¶ 39.) That is wrong. The Notice of Arbitration makes clear that it carves out the FTX Consideration Shares in an effort to circumvent this Court's 510(b) ruling. (NoA ¶¶ 28-30.) Melamed's lack of transparency reflects both an acknowledgment that the newly crafted arbitration claims are distinct from those asserted in the SPA Claim and an effort to obscure his admitted purpose in doing so.

---

[5]    The Objection merely asserts, in conclusory fashion, that the Trust's 200% figure is "wrong on the face of the record." (Obj. ¶ 42.) However, it does not dispute that the SPA Claim seeks $35,613,112.19 damages based on a purported "true value" of $44,516,390.24. (*See* Motion ¶ 24.) Melamed now seeks approximately $45 million in arbitration, which he describes as "a conservative estimate" of damages relating to the 40% of Liquid shares sold for the Cash Consideration and Crypto Consideration, minus $8,903,278.05 received. (NoA ¶ 24.) That figure implies a valuation of approximately $135 million, which is 203% greater than the SPA Claim's valuation.

C.    **The SPA Claim's Reference to Indemnification Does Not Preserve the Claims Asserted in Arbitration.**

28.    The Objection attempts to pivot by identifying two theories in the Notice of Arbitration that it contends are premised on the SPA Claim's indemnification language.  Neither has any merit.

29.    First, it cites to paragraph 17(a) of the Notice of Arbitration, which advances the new claim that FTX fraudulently induced him to allow FTX to retain the Crypto Consideration. (Obj. ¶ 35.)  This argument fails for the same reason as Melamed's claim in respect of the Crypto Consideration:  it was not preserved in the SPA Claim.  Melamed cannot repackage this new claim as an indemnification claim to avoid that infirmity.  More fundamentally, "indemnification" in this context is properly understood to refer to the recovery of legitimate costs incurred in pursuing the claim—not to a separate, duplicative source of substantive damages.  Nothing in the SPA Claim would have put the Trust on notice that Melamed was invoking "indemnification" as a vehicle to assert entirely new substantive claims for relief sought here.  A contrary holding would permit Melamed "to assert increasing amounts and additional causes of action *ad infinitum*." *In re Exide Techs.*, 601 B.R. 271, 293 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020).[6]

30.    Second, the Objection cites to paragraph 25 of the Notice of Arbitration, which asserts that "FTX's misrepresentations" caused Melamed "to incur significant legal and other expenses in the bankruptcy proceeding" and "this arbitration." (Obj. ¶ 35.)  But Melamed may not recover fees incurred in pursuing theories he has abandoned or claims he was never entitled to assert.  Because he expressly requested "that any damages awarded" in arbitration "are

---

[6]    Melamed also argues that he may pursue these new claims because the SPA Claim purported to "preserve[] an omnibus reservation of all remaining rights of action" (Obj. ¶ 20), but it is well settled that such boilerplate reservation language is insufficient.  *See In re SVB Fin. Grp.*, 674 B.R. 111, 155 (Bankr. S.D.N.Y. 2025) ("[Claimants] cannot just file a 'placeholder' claim and then feel free to add any unrelated claim they like.").

not in any way related to the FTX Share Consideration" (NoA ¶ 28), he does not seek to recover in arbitration for legal fees he incurred pursuing that now abandoned claim before this Court.[7]

31.     Melamed similarly abandons his only preserved claim in respect of the Crypto Consideration, namely, that FTX "failed to release the [Crypto] Consideration" to him in breach of the SPA. (SPA Claim ¶ 21.) Accordingly, there is nothing left for the Trust to indemnify. And because the Trust has never disputed that Melamed is entitled to recover the Estimation Order value of any unpaid Crypto Consideration (subject to equitable subordination for Melamed's conduct as asserted in the claim objection), Melamed's efforts to keep litigating for recovery beyond that amount is a choice, not a necessity. If anything, the burden of this unnecessary and duplicative litigation falls on the Trust—and ultimately its creditors—not on Melamed.

**D.     The Objection's Preservation Arguments Lack Any Basis in Law or Fact.**

32.     Absent proper amendment, Melamed is bound to the original claims, factual allegations, characterizations, and theories of liability and damages set forth in the SPA Claim. *See In re ADI Liquidation, Inc.*, 555 B.R. 423, 434, 437 (Bankr. D. Del. 2016) (rejecting claimant's attempt to "recharacterize portions of its claim without seeking leave to amend").[8] Although the Objection includes an entire section dedicated to the argument that the SPA Claim preserves the arbitration claims, it fails to cite a single case where a claimant was permitted to amend claims asserted in a proof of claim without first seeking leave to amend from the Court—much less to assert entirely new, "legally distinct" categories of relief. (NoA ¶ 38(c).)

---

[7]   The suggestion that any indemnity award might nonetheless relate to the FTX Consideration Shares is therefore foreclosed by the Notice of Arbitration itself. (*E.g.*, Obj. ¶ 6 ("[T]his Court will need to determine whether any indemnity award relates to the [FTX Consideration Shares] or the [Crypto Consideration]").)

[8]   *See Charge Enters.*, 2024 WL 5112999, at *4 (declining to consider new theories of liability); *In re B456 Sys., Inc.*, 2017 WL 6603817, at *15 (Bankr. D. Del. Dec. 22, 2017) (declining to consider new theories of damages).

33.     Melamed relies on a single case, *In re FTX Trading Ltd.* ("*3AC*"), 669 B.R. 298 (Bankr. D. Del. 2025) [D.I. 29924], in purported support of his preservation argument.  But that decision arose on a properly filed motion to amend and involved vastly different facts.  As the Objection notes, *3AC* distinguishes *In re FTX Trading Ltd.* ("*Celsius*"), No. 22-11068-JTD (Bankr. D. Del. Dec. 18, 2024) [D.I. 28891], on the grounds that Celsius "offered no explanation for its delay" and "had all facts related to its claims" "at all relevant times."  (Obj. ¶ 48 n.6 (citing *3AC* at 11).)  Here, as in *Celsius*, Melamed offers no explanation for his delay, no new facts have emerged, and the new claims he asserts in arbitration could have been raised when the SPA Claim was filed.  The only intervening development here was this Court's Threshold Rulings, and Melamed's desire to circumvent those rulings is not a valid basis for amendment.

34.     The Objection's factual arguments fare no better.  It makes a superficial comparison that both sets of claims broadly assert breach of contract, breach of warranty, fraud, and indemnification claims arising from the Liquid acquisition.  (Obj. ¶¶ 4, 41.)  But a proof of claim requires more:  it must "provide[] notice of the existence, nature, and amount" of a "claim," defined in the Bankruptcy Code as any "right to payment."  *Charge Enters.*, 2024 WL 5112999, at *5; 11 USC § 101(5).  Accordingly, even a claimant who properly moves to amend a proof of claim—which Melamed has not done—may not "seek recovery of amounts that were not encompassed within a timely-filed proof of claim," *Maxus Energy*, 2023 WL 5543612, at *5, or "assert[] a new legal theory that would require supporting facts that are not set forth in [the] proof of claim," *Charge Enters.*, 2024 WL 5112999, at *5.

## II.    Melamed Fails to Meet the High Standard for Post-Bar Date Amendment.

35.     The Court need not address Melamed's revealing but belated and procedurally improper alternative request that the Objection "be deemed a cross-motion to amend" (Obj. ¶ 53), particularly in light of the extensive proceedings already conducted, the absence of

any factual developments or other legitimate basis to seek amendment, and Melamed's clear purpose in advancing these new claims to end-run this Court's prior rulings. *See In re Mallinckrodt PLC*, 2022 WL 3545583, at \*4 (D. Del. Aug. 18, 2022) (claimants' "gamesmanship and bad faith" precluded any opportunity to amend proof of claim).

36.     Even if the Court were to entertain this request, it should reject it. "[O]nce the bar date passes, amendments to claims are closely reviewed to ensure they are not attempts to file a new claim," and only permitted where (1) "the initial claim provided the trustee or debtor-in-possession with reasonable notice of the later claim," **and** (2) "it would be equitable to allow the amendment." *Id.* at \*2-3.[9]   Moreover, after the Plan Effective Date, claimants must demonstrate a "compelling reason" (or at a minimum, "good cause") to amend. *In re NextMedia Grp. Inc.*, 2011 WL 4711997, at \*3 (justification for lateness was "not compelling").[10]

37.     First, as discussed in Section I, Melamed's claims in arbitration are, by their own terms, newly minted claims that (i) rest on new factual predicates and "distinct acts," (ii) advance new, "legally distinct harms" and damages, and (iii) seek to recover amounts far in excess of those asserted in the SPA Claim. (NoA ¶¶ 15, 17, 24, 27, 38; *see* Motion ¶¶ 20-38.)

38.     Melamed invokes Federal Rule of Civil Procedure 15 and contends that, because his arbitration claims arise from the same SPA transaction as those in the SPA Claim, the Notice of Arbitration merely "flesh[es] out" that claim. (Obj. ¶ 55.) But "[t]hat is a misreading of what is meant by a 'transaction or occurrence.'" *Maxus Energy*, 2023 WL 5543612, at \*7. The

---

[9]     The Objection wrongly asserts that "leave to amend should **only** be denied upon 'a showing by the non-moving party of one of the [equitable] grounds for denial.'" (Obj. ¶ 58 (emphasis in original).) Not so. Amendment is **only allowed** if it is equitable, *In re Mallinckrodt*, 2022 WL 3545583, at \*3, and the **moving party** has the burden, *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 96 (Bankr. S.D.N.Y. 2007).

[10]    *See also In re Exide*, 601 B.R. at 294 (denying motion to amend claim after plan effective date absent "compelling reason [t]o allow" it); *In re G-I Holdings, Inc.*, 514 B.R. 720, 760-61 (Bankr. D.N.J. Aug. 12, 2014) (same).

Rule 15 analysis—to the extent that it even applies—"must be done in the context of the bankruptcy case." *In re Exide*, 601 B.R. at 293. Here, "Rule 15 is intended to do precisely the same work as the standard … for granting leave to amend proofs of claim in bankruptcy," which "ask[s] whether the proposed amended proof of claim seeks to recover damages that are fairly encompassed within the original proof of claim." *Maxus Energy*, 2023 WL 5543612, at *7.[11] Because Melamed's claims in arbitration are "new claims," the Court need not consider the equitable factors.[12] In any event, those factors weigh heavily against amendment.

39. ***Undue Delay.*** Melamed has not given any explanation for his delay, let alone a compelling one justifying amendment nearly three years after the bar date and over a year and a half after Plan confirmation. *See supra ¶ 33*; *In re Nortel Networks*, 573 B.R. at 528 (relation back "requires a showing 'that [claimants] have not slept on their rights'").

40. ***Bad Faith.*** Melamed's attempt to assert new claims in arbitration to sidestep this Court's rulings while simultaneously obscuring that purpose in opposing this motion reflects clear gamesmanship, which amounts to bad faith and forecloses amendment. *See In re Energy Future Holdings Corp.*, 619 B.R. 99, 119 (Bankr. D. Del. 2020) (movants "exhibited bad faith by waiting to file claims until after the Third Circuit's decision").

---

[11] Courts thus routinely deny leave to amend where the original proof of claim fails to provide such notice—even where the proposed amendment arises out of the same contract or business transaction. *See Charge Enters.*, 2024 WL 5112999, at *5-7 (denying leave to amend to add damages theory pertaining to the same invoices attached to the original proof of claim); *In re Nortel Networks Inc.*, 573 B.R. 522, 524-25, 529 (Bankr. D. Del. 2017) (denying leave to amend to recover copyright infringement damages where proof of claim sought contractual royalties arising from the same contractual relationship); *In re Fowler*, 2006 WL 6591597, at *6 (Bankr. N.D. Ga. July 10, 2006) ("Despite the fact that the claims all arose from the same contract, the district court upheld the bankruptcy court's refusal to allow the amendments" for additional amounts (discussing *In re Big Rivers Elec. Corp.*, 1998 U.S. Dist. LEXIS 23011, at *5, *11-12 (W.D. Ky. Sept. 25, 1998)).

[12] The Objection does not address the excusable neglect standard, which is applicable to new, late-filed claims, or otherwise offer an explanation for the delay in asserting these new claims, and thus, the Court need not consider it. *See In re Exide*, 601 B.R. at 291 n.84 ("The District did not file a motion … seeking the Court's permission to file a late proof of claim to assert a new claim after the bar date" and "I will not consider [it] at this late stage")

41.     *Prejudice.*  The parties and the Court have already devoted substantial time and resources to the SPA Claim.  Permitting Melamed to assert new claims that are designed to circumvent the Court's Threshold Rulings would undermine the purpose of those rulings to "streamline trial and increase the possibility of a settlement."  (Ex. 6 at 118:23-119:4.)  The introduction of significant additional facts not previously asserted, and the substantial increase in damages based on new, complicated theories of recovery, also weigh heavily in favor of denying Melamed's request to amend.  *See In re Nortel Networks*, 573 B.R. at 529 (finding prejudice where claimant increased amount of claim post-bar date).

42.     *Futility.*  Melamed's new claims are futile because, even as recast, they will ultimately be subject to the Threshold Rulings.  (*See* Motion ¶ 38.)  Thus, allowing these claims to proceed in arbitration would only delay the inevitable return to this Court to determine that its prior 510(b) analysis applies to Melamed's new claims because they still arise from a transaction in which Melamed purchased FTX shares, and any claim to the Crypto Consideration would still be valued pursuant to the Estimation Order.

### III.    Melamed's Plan-Based Arguments Are of No Consequence.

43.     Melamed advances a litany of unmeritorious arguments to cast doubt on the unambiguous conclusion that he is enjoined from pursuing his claims in arbitration—both because the bar date and Plan confirmation have long passed (*see* Motion Section I.B; Plan §§ 8.4, 10.8; Non-Customer Bar Date Order ¶ 13), and because the claims have been conclusively settled and enjoined under the Plan's Global Settlement provision (*see* Motion Section III; Plan §§ 5.2, 10.8).

44.     First, Melamed is wrong that the Motion is procedurally deficient.  (Obj. ¶ 3 n.3.)  He points to the Court's observation that his KEIP motion was improper, but unlike the Trust's Motion, Melamed's KEIP motion sought to enforce two orders that did not contain any injunction provision (and did not even require any payment to Melamed).  (*See* Motion ¶ 32.)

45.     Second, the fact that the Trust has not previously raised the Global Settlement provision as a basis to disallow Melamed's SPA Claim (Obj. ¶¶ 7, 61) only highlights the novelty of his arbitration claims, which now plainly implicate that provision. Melamed's new manufactured claims rely on generalized allegations of FTX's fraud, and thus are precisely the types of claims that could be asserted by nearly all creditors and which the Global Settlement provision was designed to resolve. (*See, e.g.*, NoA ¶ 17(a) (alleging that FTX's "misrepresentations" about its "segregation, custody, and reconciliation of customer assets," "risk management," and "secret preferential treatment" of Alameda induced him to allow FTX to hold his crypto).)

46.     Third, Melamed asserts that the Global Settlement provision is limited to customer claims, citing a brief stating that the provision applies to "all Claims, Interests and Causes of Action against the Debtors, including, among other things" certain customer claims. (Obj. ¶¶ 7, 63.) But the quoted language is expansive, not limiting, and thus cannot be read to confine the Global Settlement provision to customer claims.[13]

47.     Fourth, Melamed's reading of the Plan's injunction provision is similarly flawed. By its plain terms, section 10.8 applies to any claims "released, settled or exculpated under the Plan or the Confirmation Order," and is not limited to claims released under Article 10. (*See* Obj. ¶¶ 9, 69.) Nor is section 10.8 limited by (i) the language "including to the extent provided for or authorized by sections 524 or 1141" (*see* Obj. ¶ 9), which is expansive rather than limiting, (ii) the inapplicability of the statutory injunction applicable to discharged debts (*see* Obj. ¶¶ 10,

---

[13]    Melamed also cites (i) a brief addressing the provision's compliance with the Bankruptcy Code (Obj. ¶ 64), (ii) an exception in the Confirmation Order for two unrelated proofs of claim (Obj. ¶ 64), and (iii) limitations of section 10.9 of the Plan (Obj. ¶ 64, n.7), but offers no explanation for how these miscellaneous citations relate to his claims, nor is any apparent.

70), given that section 10.8 is an independent injunction provision, or (iii) Melamed's opt out of the Plan's voluntary Third-Party Release (*see* Obj. ¶¶ 9, 21), which is irrelevant here. If anything, Melamed's decision to opt out only underscores his awareness of the Plan's terms, including those that now bar him from pursuing new claims. Regardless, Melamed is also separately enjoined from asserting his new claims pursuant to the Non-Customer Bar Date Order.

## IV.     Melamed's New Claims Exceed the Scope of the Arbitration Order.

48.     Melamed asserts that, because the Court subordinated the claims in respect of the FTX Consideration Shares instead of disallowing them, the new claims somehow fall within the Court's prior referral to arbitration. (Obj. ¶ 11.) But the Trust does not contend that the new claims are improperly brought in arbitration because they relate to the FTX Consideration Shares. Rather, they are improper because they are new, unpreserved claims that were never before the Court and therefore were not considered in issuing the Arbitration Order. The Court's referral was necessarily limited to the claims and theories actually preserved and presented at that time.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion, the Trust respectfully requests that the Court grant the Motion and enforce the Confirmation Order and Non-Customer Bar Date Order to enjoin Melamed from pursuing his unpreserved, conclusively settled and released, claims.

Dated:  May 11, 2026
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
      gluecksteinb@sullcrom.com
      dunnec@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*