**EXHIBIT A**



**McCarter & English**

---

*In re FTX Trading, Ltd.*, Case No 22-11068 (KBO)

**Motion of FTX Recovery to Enforce Prior Orders that Preclude Seth Melamed from Asserting New Claims in Arbitration [D.I. 35243]**

**Presentation of Seth Melamed**

**Hearing Date May 14, 2026**

McCarter & English, LLP
www.mccarter.com

# Background – Claim 3385

- Melamed filed a timely claim (Claim 3385) asserting a claim arising from the sale of his interests in Liquid Group, Inc. to FTX.

- Claim 3385 specifically laid out the basis for the claim.



Case 22-11068-KBO   Doc 35244-1   Filed 04/02/26   Page 12 of 22

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------
In re:                                                  )   Chapter 11
                                                        )
FTX Trading Ltd., *et al.*,                             )   Case No. 22-11068 (JTD)
                                                        )
        Debtors.                                        )   Jointly Administered
                                                        )
------------------------------------------------------------

ANNEX TO PROOF OF CLAIM OF SETH MELAMED
FILED AGAINST FTX TRADING LTD.

Claimant and FTX Trading Ltd. of the same date (the "Side Letter"). Among others, the signatories to the SPA included Claimant as seller of Shares and Sam Bankman-Fried on behalf of FTX Trading Ltd. as buyer.

4. Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or of its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA. Claimant asserts a general, unsecured, non-subordinated claim against the Debtor of not less than $35,613,112.19, which represents (a) the purchase price of Claimant's Liquid Shares, less actual cash received from the Debtor prior to the Petition Date; (b) Retained Consideration, as defined herein and allocated in Schedule I to the Side Letter (Designated as Allocation of Consideration) and (c) Debtor's obligation to indemnify Claimant in connection with the purchase of his LGI Shares.



# Background – Claim #3385 - Indemnity

- Under Section 9.3 of the SPA, the Debtors are obligated to indemnify and hold harmless Melamed for Losses relating to or arising out of any breach of the representations and warranties made by Purchaser.

> 9.3    If Completion takes place (whether or not pursuant to an election by the applicable parties under Clause 6.4 or 6.5), the Purchaser shall indemnify and hold harmless the Sellers and their Affiliates (the "**Seller Indemnified Parties**") from, against and in respect of any and all Losses incurred or suffered by any of the Sellers Indemnified Parties resulting from, relating to or arising out of any breach of the representations and warranties made by the Purchaser under Clause 7.2 or covenants of the Purchaser under this Agreement.

- Losses is defined as "all costs, losses, Liabilities, damages, claims . . . expenses . . .and legal and other professional fees."

- Claim 3385 asserted a claim for indemnity.

> 4.    Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA.   Claimant asserts a general, unsecured, non-subordinated claim against the Debtor of not less than $35,613,112.19, which represents (a) the purchase price of Claimant's Liquid Shares, less actual cash received from the Debtor prior to the Petition Date; (b) Retained Consideration, as defined herein and allocated in Schedule I to the Side Letter (Designated as Allocation of Consideration) and (c) Debtor's obligation to indemnify Claimant in connection with the purchase of his LGI Shares.

> *Indemnification*
>
> 21.    Debtor has failed to release the Retained Consideration to the Claimant. Pursuant to Clause 9.3 the SPA, Debtor must indemnify the Claimant for  all claims, losses, liabilities, demands, damages, costs or expenses of any nature "resulting from, relating or, or arising out of *any* breach" (emphasis added) of Debtor's representations and warranties as well as the Debtor's breach of its obligations under the SPA. Accordingly, Debtor is responsible for all damages to Claimant caused by Debtor's breaches of warranty and representations, including fraudulent breaches, as well as all fees and costs resulting from, relating or arising out of Debtor's breaches, including court costs and attorneys' fees, which cannot be ascertained at this time.



# Amended Claims Objection and the 7/31/2025 Order

The procedural background is as follows:

- July 13, 2024 – Claim Objection filed
- December 9, 2024 – Amended Claim Objection filed
- June 25, 2025 – Oral Argument on threshold issues
- July 22, 2025 – Bench Ruling-  the court reserved judgment on the indemnity claim "arising from the unpaid crypto consideration claim."
- July 31, 2025 – Order on Amended Claims Objection entered (reservation on the indemnity claim arising from the Crypto Consideration highlighted below)

Case 22-11068-KBO    Doc 35244-6    Filed 04/02/26    Page 130 of 134

129

considerations of Section 510(b), and pursuant to the Third Circuit's framework in Telegroup, and persuasive case law from courts within this circuit, including Kaiser, Peregrine, and U.S. Wireless, the non-crypto portion of Mr. Melamed's claim must be subordinated, which includes any related indemnification claim.

To the extent that Mr. Melamed asserts an indemnification claim on account of the SPA claim arising from the unpaid crypto consideration, I will reserve judgment as to whether that claim is subordinated until such claim is clearly defined.

3.      The Claims Objection is SUSTAINED insofar as it relates to the Crypto Consideration.  The portion of Claim 3385 relating to the Crypto Consideration is a "Claim in Respect of [] Digital Asset[s]," as that term is broadly defined in section 4.4 of the Plan.  The Crypto Consideration claim shall be valued using their petition-date values in accordance with the Court's *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order").  The Court reserves judgment regarding the allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration.



# 7/31/2025 Order - Rulings

- In the July 31, 2025 Order, the Bankruptcy Court: (i) subordinated any portion of Claim 3385 relating to the shares of FTX Trading Ltd., including any indemnity claim, to a Class 14 Section 510(b) Other Equity Claim; (ii) allowed the Crypto Consideration claim pursuant to Section 4.4 of the Plan; and (iii) "reserved judgment regarding the allowance, classification and treatment of any indemnification claim arising from the Crypto Consideration."

2.      The Claims Objection is SUSTAINED to the extent that it seeks to subordinate pursuant to 11 U.S.C. § 510(b) any portion of Claim 3385 relating to the shares of FTX Trading Ltd. ("FTX Shares") provided to Melamed as consideration for FTX's purchase of Liquid Group, Inc., including any indemnity claim related to the FTX Shares.   To the extent any claim is ultimately allowed relating to the FTX Shares, it shall be allowed only as a Class 14 Section 510(b) Other Equity Claim, as defined in the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

3.      The Claims Objection is SUSTAINED insofar as it relates to the Crypto Consideration.  The portion of Claim 3385 relating to the Crypto Consideration is a "Claim in Respect of [] Digital Asset[s]," as that term is broadly defined in section 4.4 of the Plan.  The Crypto Consideration claim shall be valued using their petition-date values in accordance with the Court's *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order").  The Court reserves judgment regarding the allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration.

- The 7/31/2025 Order did *not* disallow any claims.   It subordinated certain claims under Section 510(b) relating to the FTX Shares and reserved judgment on the "allowance, classification and subordination" of any claim arising from the Crypto Consideration.

- Separately, on July 31, 2025, the Court entered a separate order which granted Melamed's Cross-Motion to compel arbitration of the claims asserted in Claim 3385.



5

## The Trust has repeatedly refused to recognize the existence of the indemnity claim on account of the Crypto Consideration

- **The Trust has *refused* to recognize that the Court reserved decision on the indemnity claim on account of the Crypto Consideration.   On December 10, 2025, the Trust, in its Response to the Notice of Arbitration, stated that "[a]s a result of [the] Bankruptcy Court rulings, *only two issues were to be addressed in arbitration*."**



- **Similarly, the Trust made that same representation to the Court in its Motion to Enforce:**





# Timeline of Proceedings in the SIAC Arbitration

- Since the entry of the 7/31 Order, Melamed has filed his notice of arbitration, the Trust has responded and the Tribunal has issued two procedural orders. *See Declaration of Daniel Allen* [D.I. 35556].



SIAC PROCEDURAL TIMELINE

| Nov. 12, 2025 | Apr. 4, 2026 | Apr. 20, 2026 | May 14, 2026 | +≈3 weeks |
|---|---|---|---|---|
| Notice of Arbitration | PO No. 1 issued | PO No. 2 — sequencing | THIS HEARING | Statement of Claim |

- As set forth in the Allen Declaration, Procedural Order #2 which was entered on the date that the Melamed's Opposition was filed, set the deadline for the filing of the Statement of Claim.  That deadline is three weeks following the Court's ruling on the Motion to Enforce.



# The Motion to Enforce is unripe and appears to be a disguised motion to reconsider

- Melamed has previously acknowledged that this Court would determine the allowance of any award issued by SIAC.

From our -- and we don't dispute that, upon receiving whatever the arbitration panel gives in Singapore, we have to come back here and have this Court determine at that time, you know, what the -- whether 510(b) applies and to what extent, and the same issue with respect to the plan, so --

THE COURT:  And the KEIP, I would assume, and the admin claim.

MR. ADLER:  And the admin claim, yeah.

Case 22-11068-KBO    Doc 35244-4    Filed 04/02/26    Page 12 of 32

11

THE COURT:  At least, at least, right?

MR. ADLER:  Yes.

THE COURT:  Okay.

- Given this acknowledgement (along with the prior ruling on allowance of the claims in Claim 3385), the Motion to Enforce is premature. The Motion to Enforce appears to be a disguised motion for reconsideration to get a second opportunity to obtain the result that the Trust indicates took place.  It should not be entertained.



8

# Response to Point 1 – The Claims in the NOA are not "new claims"- they are the same as stated in Claim 3385

- The Trust asserts that the claims in the NOA are "new" claims and that the Court should enjoin Melamed from pursuing these claims under the Bar Date Order.

- The claims in Claim 3385 and the claims asserted in the NOA are the same and arise out of the same set of circumstances – Melamed's sale of his interests in Liquid to FTX.

Cl

Claimant and FTX Trading Ltd. of the same date (the "Side Letter"). Among others, the signatories to the SPA included Claimant as seller of Shares and Sam Bankman-Fried on behalf of FTX Trading Ltd. as buyer.

4. Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or of its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA. Claimant asserts a general, unsecured, non-subordinated claim against the Debtor of not less than $35,613,112.19, which represents (a) the purchase price of Claimant's Liquid Shares, less actual cash received from the Debtor prior to the Petition Date; (b) Retained Consideration, as defined herein and allocated in Schedule I to the Side Letter (Designated as Allocation of Consideration) and (c) Debtor's obligation to indemnify Claimant in connection with the purchase of his LGI Shares.

**VI. Preliminary Statement of Relief Requested**

38. For the reasons set out above, the Claimant respectfully requests that the tribunal issue an Award:

(a) declaring that FTX intentionally or negligently infringed the rights of the Claimant in connection with the Claimant's decision to sell 20% of his interests in Liquid to FTX in a manner that enabled FTX to continue to hold the consideration that had been legally transferred to the Claimant, causing harm to the Claimant;

(b) declaring that FTX intentionally or negligently infringed the rights of the Claimant in connection with the Claimant's decision to sell 20% of his interests in Liquid to FTX for a price far below their actual fair market value;

(c) declaring that, under Japanese law, FTX's intentional or negligent infringements of the Claimant's rights in respect of the two 20% tranches of his shares in Liquid were distinct acts that resulted in legally distinct harms from the harm that FTX caused to the Claimant by fraudulently inducing him to transfer 60% of his shares in Liquid to FTX in exchange for FTX equity;

(d) declaring that the Respondent is obligated to pay the Claimant money damages corresponding to the actual dollar value of the Liquid shares of which he was wrongfully dispossessed, valued as of the date of dispossession (preliminarily estimated to be USD 45 million);

(e) declaring that FTX made misrepresentations and breaches of warranty for which the Claimant suffered

"losses" as defined in the SPA,[2] which "losses" include both the loss of 20% of his interest in Liquid as well as significant legal and other expenses incurred to enforce his legal rights, and declaring that the Respondent is obligated, pursuant to clause 9.3 of the SPA, to pay such amounts;

(f) quantifying the amount of compensation in damages owed by the Respondent to the Claimant according to the principles of Japanese law and ordering the Respondent to pay that amount to the Claimant;

(g) ordering the Respondent to pay interest on all damages awarded at the applicable rate under Japanese law, to run from the date of the breach until 12 November 2022;

(h) ordering the Respondent to bear all costs incurred by the Claimant in connection with this Arbitration, including all of the Claimant's legal costs and expenses; and

(i) granting such further or other relief as the tribunal deems fit.

Respectfully submitted

*Mori Hamada & Matsumoto*

**Mori Hamada & Matsumoto**

Counsel for the Claimant



9

# Response to Point 1 (cont.)

- The Trust asserts that because the damages in the Notice of Arbitration are greater than in Claim 3385, it is a new claim. The Trust ignores that the Trust's own expert stated that this was the measure of damages under Article 709 of the Japanese Civil Code and, as a result, that the claim being pursued is not "irreconcilable" with Claim 3385.

14, 2022 (the dates on which FTX filed for bankruptcy under U.S. law) Melamed possessed at most a contractual right to the delivery of the specified cryptocurrencies set forth in the SPA.

**Mr. Melamed's Damages for a Fraud Claim Are Limited to the Value of His Stake in Liquid, Which Is Unknown**

19.    As noted, Mr. Melamed also purports to seek at least $35,613,112.19 as damages for his fraud claim.

20.    As a general rule, damages for tort claims such as fraud are determined pursuant to Article 709 as well as 416 of the Japanese Civil Code.[7] The purpose of such damages is to restore the situation that would have existed had the wrongdoing not occurred.[8] Mr. Melamed claims that he was induced to sign the SPA based on misrepresentations FTX made to him. (Claim No. 3385 ¶ 24.) Mr. Melamed claims that had the allegedly fraudulent misrepresentations not been made, he would not have signed the SPA. Under Japanese law, Mr. Melamed's damages for his fraud claim, if any, would be calculated by determining the difference between the consideration Mr. Melamed received as part of the transaction and the true value of the Liquid shares and stock options that he sold to FTX pursuant to the SPA.

21.    Melamed's damages for his fraud claims, if he successfully prevailed, would be calculated (i) if under Article 709, by determining the difference between the consideration Mr. Melamed received for the Liquid Transaction and the value of his interests that he conveyed to FTX pursuant to the SPA,[2] with a statutory late penalty of 3% per annum to accrue from the date the parties entered into the SPA and Side Letter,[3] and (ii) if under Article 96, by seeking to restore him to his original position before the wrongdoing occurred, which would be determined based on the value of Melamed's interests in Liquid at the time that he was defrauded by FTX and FTX benefitted from such fraud (i.e., the date the parties entered into the SPA and the Side Letter), with a statutory late penalty of 3% per

---

[2] Tokyo District Court, May 30, 2005, *Westlaw Japan* 2005WLJPCA05300004, p. 10, as cited by the Tanaka Declaration, ¶21.
[3] Taishinin (current Supreme Court), June 24, 1914, Minji Hanketsuroku 20, p. 493.

8



# Response to Point 2 – Amendment of Claim 3385 is premature until the Statement of Claim is filed

- The Trust seizes on the preliminary estimate of damages (paragraph 24 of the Notice of Arbitration) and asserts that because this estimate is greater than what was stated in Claim 3385, Claim 3385 must be amended.

- Initially, the claim is not larger – Claim 3385 lists the contract price and notes that there is a separate unliquidated indemnity claim.  The Trust's expert acknowledged this in Paragraph 14 of his Declaration.

> Case 22-11068-JTD    Doc 28646    Filed 12/09/24    Page 5 of 11
>
> 13.    Consistent with the SPA and the Side Letter, FTX withheld the total amount of the Crypto Consideration on the Completion Date.
>
> 14.    Mr. Melamed's Claim No. 3385 alleges fraud and breach of contract claims against FTX and claims that he was damaged in an amount "not less than $35,613,112.19." (Claim 3385 ¶ 4.)  Mr. Melamed appears to have calculated these damages by adding (i) "the purchase price of [his] Liquid Shares, less actual cash received from [FTX] prior to the Petition Date," and (ii) the value allocated in the SPA to the "Retained [Cryptocurrency] Consideration."[5]  (Id.)

- Second, as noted in the Allen Declaration, the Statement of Claim, is the operative document in the SIAC proceeding.   It is Melamed's view that it would be premature to amend Claim 3385 until the damages are stated with specificity in the Statement of the Claim.

- Finally, it is not disputed that any amendment would concern Melamed's claim against the estate from the sale of his interest in Liquid.  That's the claim asserted in Claim 3385 which is being prosecuted in the SIAC proceeding.  Accordingly, the situation is not at all comparable to the *Celsius* decision.  The analysis in *Three Arrows* is the appropriate standard if the Court determined that an amendment to claim 3385 was required at this time.



## Response to Point 4 – The Claims in the NOA were included in the scope of the 7/31/25 Order

- The Trust argues that the Court referred only the claims in Claim 3385 to arbitration.  Because the claims are new claims, the Trust asserts that they are outside the scope of the referral to arbitration in the 7/31/2025 Order of the Court.   Accordingly, the Trust requests that the Court enjoin Melamed from pursuing the NOA claims.

- The argument fails for the same reason as point 1.   The claims are not new.   They are the same as the claims asserted in Claim 3385.



12

# Response to Point 3 – Melamed's claims were not compromised under Section 5.2 of the Plan

- The Trust raises a new argument – that under section 5.2 of the Plan claims for fraud by creditors were compromised and released claims against the estate.  This argument should have been raised as a "threshold issue" last year.  In any event, the argument is without any merit because Melamed's claim stems from the contractual provisions of the SPA – that contract gave Melamed specific remedies if the Debtors made misrepresentations and was not an estate claim.

- Section 5.2 provides:

  Case 22-11068-JTD   Doc 26404-1   Filed 10/08/24   Page 55 of 96

  **5.    IMPLEMENTATION OF THE PLAN**

  5.1.    Operations Between the Confirmation Date and Effective Date

  During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

  5.2.    Global Settlement of Claims and Interests

  In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation:  (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

- As noted in the Opposition, specific and continuous misrepresentations were made to Mr. Melamed by FTX in connection with the sale,.  His injury is not a general injury of the kind suffered by all creditors.



13

# Response to Point 3 – The Plan Injunction is limited to those released claims under Article 10 of the Plan

- The Trust argues that if the claims were compromised under Section 5.2, then the Court should enjoin Melamed from pursuing the NOA Claims under Section 10.8 of the Plan. That argument fails for several reasons. First, as liquidating entities, the FTX debtors were excluded from a discharge under section 1141(d)(3) of the Bankruptcy Code. As a result, the FTX debtors do not get the benefit of section 524 of the bankruptcy code.

- Since Section 10.8 of the Plan only provides an injunction to the fullest extent permitted by the Bankruptcy Code. Because there is no plan injunction under section 524, the Trust's argument that section 10.8 can enjoin Melamed's prosecution of the NOA claims is without merit.

10.8.  Injunction

Except as otherwise expressly provided in the Plan or Confirmation Order with respect to Preserved Potential Claims, the satisfaction and release pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 or 1141 thereof, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims or Interests; and (d) asserting any right of setoff that was not validly asserted before Confirmation, or subrogation of any kind on account of or in connection with or with respect to any such Claim or Interest, against any Plan Asset, the Wind Down Entities, any Holder of a Claim or Interest or any initial or subsequent transferee. Notwithstanding anything to the contrary in the Plan, all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date.



14

# Conclusion – The Court should deny the Motion to Enforce.

- Neither of the three orders referenced by the Trust serves as a basis to enjoin Melamed from prosecuting the NOA Claims.

- The Motion should be denied.

