**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF STEVEN P. COVERICK IN SUPPORT OF**
**THIRD NOTICE OF PROPOSED REDUCTION OF DISPUTED CLAIMS RESERVE**
**AMOUNT**

I, Steven P. Coverick, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

**I.      Personal Qualifications**

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.

2.      I have more than ten years of restructuring and financial advisory experience across various industries, including cryptocurrency, energy, technology, media, telecommunications, logistics, and healthcare.  I have a Bachelor's Degree from the Kelley School

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

of Business at Indiana University, am a CFA® charterholder, and am recognized as a Certified Turnaround Professional by the Turnaround Management Association.

3.    Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Seadrill Limited, iHeart Media Inc., White Star Petroleum Holdings, LLC, Templar Energy LLC, and Expro International Group Holdings Limited.  I am the co-lead of the A&M engagement with the Debtors.

4.    I submit this declaration (this "Declaration") in support of the *Third Notice of Proposed Reduction of Disputed Claims Reserve Amount* (the "Notice").[2]  Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and the Debtors' books and records, information provided to me by professionals at A&M working under my supervision or other employees or advisors of the Debtors, and my opinions are based upon my experience and knowledge related to the Debtors' operations, businesses, and financial condition.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am authorized to submit this Declaration on behalf of the FTX Recovery Trust.

5.    I am not being compensated separately for this testimony other than through payments received by A&M as financial advisor retained by the FTX Recovery Trust.

## II.    The FTX Recovery Trust's Claims Reconciliation Efforts

6.    As of the filing of this Declaration, the FTX Recovery Trust has reconciled approximately $10.1 billion of Claims.  To reconcile Claims, the FTX Recovery Trust and its advisors (including counsel) have, among other things, been reviewing each Claim against the Debtors' books and records to determine the validity and appropriate amount of each Claim,

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Notice or the Plan, as applicable.

seeking and analyzing supporting documentation associated with such Claim, evaluating applicable law implicated by such Claim, and, where appropriate, objecting to such Claim and/or engaging in negotiations with the Holder of such Claim.

7.      To date, the Debtors and the FTX Recovery Trust have filed 213 omnibus and individual claims objections seeking to disallow and expunge, reclassify, or reduce over 37,000 asserted Claims in excess of $84 quintillion.  The FTX Recovery Trust's reconciliation process is significant and remains ongoing.

8.      The Disputed Claims Reserve Amount was originally established in an amount of $6.533 billion (the "Original Reserve Amount") and is currently $2.38 billion (the "Second Revised Reserve Amount").  Since this Court entered the Second Reserve Reduction Order, these reconciliation and expungement efforts have led to a net reduction of approximately $600 million of Disputed Claims.  Approximately $300 million of Disputed Claims have become Allowed due to reconciliation, settlement, and KYC verification.  An additional approximately $300 million of Disputed Claims have been expunged or modified.  Of the $300 million expunged or modified Disputed Claims, approximately $210 million reflects claims reconciliation, and approximately $90 million was expunged or modified due to excess reserves associated with certain Claims following the dismissal of related litigation and with other stipulated Claims.

III.    The Proposed Reduction of the Disputed Claims Reserve Amount

9.      In light of the reconciliation and expungement efforts since this Court entered the Second Reserve Reduction Order and based on all of the information currently available to the FTX Recovery Trust, the FTX Recovery Trust submits that the Second Revised Reserve Amount should be reduced by $600 million to $1.78 billion (the "Third Revised Reserve Amount").

10.     As with the determination of the Original Reserve Amount, the First Revised Reserve Amount, and the Second Revised Reserve Amount, the FTX Recovery Trust used a rigorous process to determine the appropriate Third Revised Reserve Amount.  The FTX Recovery Trust did not start with any "target" in mind.  Rather, the FTX Recovery Trust and its advisors (including counsel) determined the appropriate Third Revised Reserve Amount based on (i) an analysis of the Debtors' books, records and accounting system; (ii) scheduled Claims; (iii) filed proofs of claim and their supporting documentation; (iv) communications and agreements, if any, with claimants; (v) legal considerations associated with the Claims; (vi) expungements, objections, settlements and other reconciliations of Claims to date; and (vii) other relevant factors.

11.     Informed by this work, the FTX Recovery Trust in its business judgment determined that reducing the Second Revised Reserve Amount by $600 million to $1.78 billion is reasonable.  The Third Revised Reserve Amount is based on intentionally conservative assumptions, and as described below and detailed in Exhibit 1 hereto, includes approximately $900 million of remaining Disputed Claims over and above the amounts that the FTX Recovery Trust projects will ultimately become Allowed Claims.  The FTX Recovery Trust believes that the Third Revised Reserve Amount strikes a careful and reasonable balance between enabling the FTX Recovery Trust to continue making distributions to the Holders of all Allowed Claims while not jeopardizing the potential recoveries to claimants holding Disputed Claims in the event such claims subsequently become Allowed Claims.

12.     All Disputed Claims will continue to have recourse to the Disputed Claims Reserve and the entirety of the Third Revised Reserve Amount, subject to the terms and provisions of the Plan.

13.     My conclusion, based on all of the information currently available to the FTX Recovery Trust, is that the Third Revised Reserve Amount that includes approximately $900 million over and above the FTX Recovery Trust's projections with respect to liability for Disputed Claims is conservative and reasonable under the circumstances.

-6-

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   May 26, 2026

/s/ *Steven P. Coverick*
Steven P. Coverick
Alvarez & Marsal North America, LLC
Managing Director