# EXHIBIT A

# FTX Non Customer Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**This claim form should not be used to assert claims against Emergent Fidelity Technologies Ltd.**

**Fill in all the information about the claim as of November 14, 2022 for Debtor West Realm Shires Inc. and as of November 11, 2022 for all other Debtors.**

☐ Check here to see further instructions on completing your claim form:

## Debtor Selection

Check the box to identify the Debtor against whom you assert a claim (select only one Debtor per claim form):

- ◉ FTX Trading Ltd. (Case No. 22-11068)
- ○ Alameda Aus Pty Ltd (Case No. 22-11104)
- ○ Alameda Global Services Ltd. (Case No. 22-11134)
- ○ Alameda Research (Bahamas) Ltd (Case No. 22-11105)
- ○ Alameda Research Holdings Inc. (Case No. 22-11069)
- ○ Alameda Research KK (Case No. 22-11106)
- ○ Alameda Research LLC (Case No. 22-11066)
- ○ Alameda Research Ltd (Case No. 22-11067)
- ○ Alameda Research Pte Ltd (Case No. 22-11107)
- ○ Alameda Research Yankari Ltd (Case No. 22-11108)
- ○ Alameda TR Ltd (Case No. 22-11078)
- ○ Alameda TR Systems S. de R. L. (Case No. 22-11109)
- ○ Allston Way Ltd (Case No. 22-11079)
- ○ Analisya Pte Ltd (Case No. 22-11080)
- ○ Atlantis Technology Ltd. (Case No. 22-11081)
- ○ Bancroft Way Ltd (Case No. 22-11082)
- ○ Blockfolio, Inc. (Case No. 22-11110)
- ○ Blue Ridge Ltd (Case No. 22-11083)
- ○ Cardinal Ventures Ltd (Case No. 22-11084)
- ○ Cedar Bay Ltd (Case No. 22-11085)
- ○ Cedar Grove Technology Services, Ltd. (Case No. 22-11162)
- ○ Clifton Bay Investments LLC (Case No. 22-11070)
- ○ Clifton Bay Investments Ltd (Case No. 22-11111)
- ○ Cottonwood Grove Ltd (Case No. 22-11112)
- ○ Cottonwood Technologies Ltd (Case No. 22-11136)
- ○ Crypto Bahamas LLC (Case No. 22-11113)
- ○ DAAG Trading, DMCC (Case No. 22-11163)
- ○ Deck Technologies Holdings LLC (Case No. 22-11138)
- ○ Deck Technologies Inc. (Case No. 22-11139)
- ○ Deep Creek Ltd (Case No. 22-11114)
- ○ Digital Custody Inc. (Case No. 22-11115)
- ○ Euclid Way Ltd (Case No. 22-11141)
- ○ FTX (Gibraltar) Ltd (Case No. 22-11116)
- ○ FTX Canada Inc (Case No. 22-11117)
- ○ FTX Certificates GmbH (Case No. 22-11164)
- ○ FTX Crypto Services Ltd. (Case No. 22-11165)
- ○ FTX Digital Assets LLC (Case No. 22-11143)
- ○ FTX Digital Holdings (Singapore) Pte Ltd (Case No. 22-11118)
- ○ FTX EMEA Ltd. (Case No. 22-11145)
- ○ FTX Equity Record Holdings Ltd (Case No. 22-11099)
- ○ FTX EU Ltd. (Case No. 22-11166)
- ○ FTX Europe AG (Case No. 22-11075)
- ○ FTX Exchange FZE (Case No. 22-11100)
- ○ FTX Hong Kong Ltd (Case No. 22-11101)
- ○ FTX Japan Holdings K.K. (Case No. 22-11074)
- ○ FTX Japan K.K. (Case No. 22-11102)
- ○ FTX Japan Services KK (Case No. 22-11103)
- ○ FTX Lend Inc. (Case No. 22-11167)
- ○ FTX Marketplace, Inc. (Case No. 22-11168)
- ○ FTX Products (Singapore) Pte Ltd (Case No. 22-11119)
- ○ FTX Property Holdings Ltd (Case No. 22-11076)
- ○ FTX Services Solutions Ltd. (Case No. 22-11120)
- ○ FTX Structured Products AG (Case No. 22-11122)
- ○ FTX Switzerland GmbH (Case No. 22-11169)
- ○ FTX Trading GmbH (Case No. 22-11123)
- ○ FTX US Services, Inc. (Case No. 22-11171)
- ○ FTX US Trading, Inc. (Case No. 22-11149)
- ○ FTX Ventures Ltd. (Case No. 22-11172)
- ○ FTX Zuma Ltd (Case No. 22-11124)
- ○ GG Trading Terminal Ltd (Case No. 22-11173)
- ○ Global Compass Dynamics Ltd. (Case No. 22-11125)
- ○ Good Luck Games, LLC (Case No. 22-11174)
- ○ Goodman Investments Ltd. (Case No. 22-11126)

○ Hannam Group Inc (Case No. 22-11175)
○ Hawaii Digital Assets Inc. (Case No. 22-11127)
○ Hilltop Technology Services LLC (Case No. 22-11176)
○ Hive Empire Trading Pty Ltd (Case No. 22-11150)
○ Innovatia Ltd (Case No. 22-11128)
○ Island Bay Ventures Inc (Case No. 22-11129)
○ Killarney Lake Investments Ltd (Case No. 22-11131)
○ Ledger Holdings Inc. (Case No. 22-11073)
○ LedgerPrime Bitcoin Yield Enhancement Fund, LLC (Case No. 22-11177)
○ LedgerPrime Bitcoin Yield Enhancement Master Fund, LP (Case No. 22-11155)
○ LedgerPrime Digital Asset Opportunities Fund, LLC (Case No. 22-11156)
○ LedgerPrime Digital Asset Opportunities Master Fund LP (Case No. 22-11157)
○ LedgerPrime LLC (Case No. 22-11158)
○ LedgerPrime Ventures, LP (Case No. 22-11159)
○ Liquid Financial USA Inc. (Case No. 22-11151)
○ Liquid Securities Singapore Pte Ltd (Case No. 22-11086)
○ LiquidEX LLC (Case No. 22-11152)
○ LT Baskets Ltd. (Case No. 22-11077)
○ Maclaurin Investments Ltd. (Case No. 22-11087)
○ Mangrove Cay Ltd (Case No. 22-11088)
○ North Dimension Inc (Case No. 22-11153)
○ North Dimension Ltd (Case No. 22-11160)
○ North Wireless Dimension Inc. (Case No. 22-11154)
○ Paper Bird Inc (Case No. 22-11089)
○ Pioneer Street Inc. (Case No. 22-11090)
○ Quoine India Pte Ltd (Case No. 22-11091)
○ Quoine Pte Ltd (Case No. 22-11161)
○ Quoine Vietnam Co. Ltd (Case No. 22-11092)
○ Strategy Ark Collective Ltd. (Case No. 22-11094)
○ Technology Services Bahamas Limited (Case No. 22-11095)
○ Verdant Canyon Capital LLC (Case No. 22-11096)
○ West Innovative Barista Ltd. (Case No. 22-11097)
○ West Realm Shires Financial Services Inc. (Case No. 22-11072)
○ West Realm Shires Inc. (Case No. 22-11183)
○ West Realm Shires Services Inc. (Case No. 22-11071)
○ Western Concord Enterprises Ltd. (Case No. 22-11098)
○ Zubr Exchange Ltd (Case No. 22-11132)

## Part 1: Identify the Claim

**1. Who is the current Creditor?**
Name of the current creditor (the person or entity to be paid for this claim)

Is the current Creditor an Individual?

◉ No
○ Yes

Creditor Name

| Silvergate Bank and Silvergate Capital Corporation |
| --- |

Other names the creditor used with the debtor

| |
| --- |

Email the creditor used with the debtor

| |
| --- |

**2. Has this claim been acquired from someone else?**

◉ No
○ Yes

From whom?

| |
| --- |

### 3. Where should notices and payments to the Creditor be sent?
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

**Where should notices to the Creditor be sent?**

Name:

Silvergate Bank and Silvergate Capital Corporation

Address 1 (Street address, "Care of:", or "Attention To:"):

c/o Paul H. Zumbro

Address 2:

Cravath, Swaine & Moore LLP

Address 3:

825 Eighth Avenue

Address 4:

City:

New York

State or Province (use 2-letter abbreviation if US or Canada):

NY

Zip Code | Postal Code:

10019

**Is the creditor address outside of the US?**

◉ No
○ Yes

Contact phone:

212-474-1036

Contact email:

pzumbro@cravath.com

**Should payments go to a different address?**

○ No
◉ Yes

Name:

Silvergate Bank and Silvergate Capital Corporation

Address 1 (Street address, "Care of:", or "Attention To:"):

4250 Executive Square

Address 2:

Suite 300

Address 3:

Address 4:

City:

La Jolla

State or Province (use 2-letter abbreviation if US or Canada):

CA

Zip Code | Postal Code:

92037

Is the creditor address outside of the US?

◉ No
○ Yes

Contact phone:

Contact email:

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

Claim number on court claims registry (if known)

**5. Do you know if anyone else has filed a Proof of Claim for this claim?**

◉ No
○ Yes

Who made the earlier filing?

## Part 2a: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

Last 4 digits of the debtor's account or any number you use to identify the debtor:

## If filing a claim for cryptocurrency, please fill in 7b.

**7a. How much is the claim?**

| $ | See addendum |

Does this amount include interest or other charges?

○ No
○ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**If asserted liability is in a currency other than U.S. dollars or cryptocurrency, provide:**

(i) the currency type:

(ii) the amount in such currency

(iii) a conversion rate to U.S. dollars

FTX Non Customer Proof of Claim Form

**7b. List the number of each type and quantity of each coin owed as of the date the case was filed (November 11, 2022)**

Please use only numerals and decimals in the Count fields, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| | | | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| | | | |

| Coin List | Count | Coin List | Count |
|---|---|---|---|
| | | | |

## Part 2b: Give Information About the Claim as of the Date the Case Was Filed

**8. What is the basis of the claim?**

See addendum

**9. Is all or part of the claim secured?**

◉ No

○ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate

☐ Motor vehicle

☐ Other

Describe:

Basis for perfection:

Value of property (all amounts in US $ dollars):

Amount of the claim that is secured (all amounts in US $ dollars):

Amount of the claim that is unsecured (all amounts in US $ dollars):

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):

Annual Interest Rate (when case was filed) % -

○ Fixed

○ Variable

Annual Interest Rate (when case was filed) %:

**10. Is this claim based on a lease?**

◉ No

○ Yes

Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).

**11. Is this claim subject to a right of setoff?**

○ No

◉ Yes

Identify the property.

> See addendum

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No

○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

◉ No

○ Yes.

Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. If claim is for both goods and services, provide your total claim amount (goods & services) in section 7a. and the value of the goods here. Attach documentation supporting such claim. See the instructions above on what further information is required.

## Part 3: Electronic Signature

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**

**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

- ○ I am the creditor.
- ● I am the creditor's attorney or authorized agent.
- ○ I am the trustee, or the Debtor, or their authorized agent. Bankruptcy Rule 3004.
- ○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

## Executed on date (Calculated in UTC)

06/30/2023

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First Name/Middle Name/Last Name:

Paul H. Zumbro

Title/Company:

Cravath, Swaine & Moore LLP

FTX Non Customer Proof of Claim Form

Address 1:

825 Eighth Avenue

Address 2:



City:

New York

State or Province (use 2-letter abbreviation if US or Canada):

NY

Zip Code | Postal Code:

10019

Is this address outside of the US?

⊙ No
○ Yes

Contact phone:

212-474-1036

Contact email:

pzumbro@cravath.com

## Supporting Documentation

Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):

⊙ I have supporting documentation
○ I do not have supporting documentation

Attach a single PDF attachment that is less than 5 megabytes in size

| | |
|---|---|
| ⬛ Proof of Claim Addendum.pdf | 250 KB |

Attachment Filename

Proof of Claim Addendum.pdf

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**ADDENDUM TO PROOF OF CLAIM
FILED BY SILVERGATE BANK**

Silvergate Bank hereby submits this attachment to its proof of claim on behalf of itself, Silvergate Capital Corporation and their respective successors and assigns (together, "Claimants"), which attachment is expressly incorporated into such proof of claim as if fully set forth therein (collectively, the "Proof of Claim").

Claimants are submitting proofs of claim against FTX Trading, Ltd. and each of its affiliated debtors and debtors-in-possession (collectively, the "FTX Group"), because the operations of the FTX Group are opaque to a third party, and it is infeasible to determine which specific entities in the FTX Group caused harm to the Claimants.   This problem is compounded by the extensive commingling of funds across FTX Group entities, as detailed in the *Second Interim Report of John J. Ray III to the Independent Directors: The Commingling and Misuse of Customer Deposits at FTX.com* (the "Second Interim Report").  (*See* Dkt. No. 1704, Ex. A.) Therefore, to ensure that Claimants' rights are preserved against any FTX Group entity that caused them harm, they believe it is appropriate to file proofs of claim against each entity in the FTX Group.

**PRELIMINARY STATEMENT**

1.      Claimants, like many other customers, investors and financial services providers, are victims of the FTX Group's extensive pattern of fraud, deceit and violations of applicable law.

2.  Silvergate Capital Corporation was previously a leading provider of innovative financial infrastructure solutions to the digital asset industry.  Through and by Silvergate Capital Corporation's subsidiary, Silvergate Bank, Claimants provided banking services to digital asset customers, including the FTX Group.

3.  Prior to the rapid collapse of the FTX Group and exposure of malfeasance by certain of its officers and employees, including Mr. Samuel Bankman-Fried, the co-founder and former CEO for certain subsidiaries of the FTX Group, Silvergate Bank had maintained a banking relationship with certain FTX Group entities.  Unbeknownst to Silvergate Bank, some of the entities with which it had banking relationships were accepting customer deposits and processing customer withdrawals for the FTX.com exchange using bank accounts that were not approved for such use and in contravention of the representations made by the FTX Group and/or certain of its officers and employees in order to induce Silvergate Bank to open these accounts.  For example, as stated in the Second Interim Report, Mr. Bankman-Fried and an attorney for the FTX Group affirmatively and fraudulently took steps to mislead Silvergate Bank on behalf of the FTX Group when opening an account for an entity called North Dimension Inc. ("North Dimension"), and continued to mislead and defraud Claimants about that entity's operations and its use of Claimants' services.  (Second Interim Report, 11.)

4.  For example, the Second Interim Report states that "Bankman-Fried and others also knew that they intended to . . . process customer deposits and withdrawals" using the North Dimension account, but this information was not disclosed to Silvergate Bank.  (Second Interim Report, 18-19.)  In fact, in response to a question on Silvergate Bank's application asking if North

Dimension was a money services business, [1] the FTX Group falsely and knowingly responded that it was not. (*Id.*)  When Silvergate Bank asked for a copy of North Dimension's corporate register, as required to open this account, the FTX Group employees then knowingly directed the creation of a false and misleading corporate register for North Dimension to advance this fraud and provided that false register to Silvergate Bank.  (*Id.*)

5.       In addition to the fraud committed by the FTX Group against Silvergate Bank in opening the North Dimension account, from April 2019 until the end of August 2020, the FTX Group used bank accounts of Alameda Research Ltd. ("Alameda") to process its customers' deposits and withdrawals while knowingly making misrepresentations to its banks—including Silvergate Bank—about the purpose for which it was using the accounts.  (Second Interim Report, 11.)

6.       As such, the FTX Group, fraudulently and in breach of its contracts with Silvergate Bank, used the North Dimension account and other accounts it held with Silvergate Bank to accept and process customer deposits and withdrawals for the benefit of the FTX.com cryptocurrency exchange rather than as accounts for a trading operation, as it had falsely represented to Silvergate Bank in its account application.

7.       Further, the FTX Group, through its ongoing misstatements, omissions and misrepresentations, both to Claimants specifically and to other financial services providers, investors and the market generally, perpetuated a criminal enterprise that fraudulently induced Claimants to provide significant services to which the FTX Group was not entitled and put Claimants' business at risk for substantial and potentially even total business loss.  The implosion

---

[1] A money services business includes any person or entity doing business in the capacity of, among other things, a currency dealer or exchanger.  Status as a money services business requires licensure and triggers additional due diligence and enhanced due diligence measures.

of the FTX Group that led to these chapter 11 cases caused significant harm to Silvergate Bank, including through significant deposit withdrawals that resulted in losses on the sale of securities and through resulting litigation brought against Silvergate Bank by FTX customers arising from Silvergate Bank's relationships with the FTX Group.  On March 8, 2023, Silvergate Bank announced its intent to wind down operations and voluntarily liquidate in an orderly manner and in accordance with applicable regulatory processes.

8.    Claimants file this Proof of Claim to preserve their rights with respect to the substantial damages caused to them by the FTX Group, directly and indirectly, as a result of the totality of its conduct that affects Claimants.  Further, Claimants believe that the FTX-related litigation that has been brought against them to date by the FTX Group's customers is meritless and should be dismissed, but file this Proof of Claim for the additional reason of preserving their rights to bring counterclaims against the FTX Group in the event that the FTX Group determines to bring any claims against Silvergate Bank or its parent company.[2]

## FACTUAL ALLEGATIONS

9.    In or around March 2019, the FTX Group opened an account for Alameda with Silvergate Bank.  In the course of the parties' dealings, the FTX Group never disclosed to Silvergate Bank—and sought to avoid having Claimants learn—that the Alameda account was being used to receive customer deposits and fund customer withdrawals for the FTX.com exchange.

10.    In or around April 2021, as a result of increased scrutiny of deposits and withdrawals made to and from accounts held by Alameda, the FTX Group sought and opened the

---

[2] For the avoidance of doubt, Silvergate Bank does not believe the FTX Group has any meritorious claims to bring against it or its parent company.

North Dimension account with Silvergate Bank.  (Second Interim Report, 18-19.)  In the Business Account Application for the North Dimension account, the FTX Group represented that North Dimension was <u>not</u> a money services business, despite the FTX Group's intent to use the North Dimension account to receive and pay funds to customers, thus making it a money services business. (*Id.*)  Further, the FTX Group falsely described North Dimension to Silvergate Bank as a proprietary and over-the-counter (OTC) trading firm with 2,000 counterparties and an average monthly trading volume of $10 million.  (*Id.*)

11.    In order to open accounts with Silvergate Bank, the FTX Group entered into Cash Management and Treasury Services Agreements and Deposit Account Agreement and Regulatory Disclosures with Silvergate Bank.  The Cash Management and Treasury Services Agreements all contain indemnification provisions in favor of Silvergate Bank that cover losses it incurs as a result of actions by the applicable customer or its employees or agents.  The Deposit Account Agreement and Regulatory Disclosures provide that, in opening an account on behalf of a legal entity, the FTX Group is required to provide appropriate documentation and to certify that the information contained therein is true and accurate to the best of their knowledge.  Despite this requirement, the FTX Group knowingly submitted false information to Silvergate Bank.

12.    On November 9, 2022, public news outlets reported that the Securities and Exchange Commission and the Department of Justice were investigating the FTX Group and Mr. Bankman-Fried.

13.    On November 11, 2022, FTX, Alameda Research and affiliated entities each filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.

14. On December 13, 2022, the Department of Justice unsealed an eight-count indictment against Mr. Samuel Bankman-Fried, the co-founder and former CEO of FTX Trading Ltd. ("FTX.com") and FTX.US. The indictment charged Mr. Bankman-Fried with two counts of wire fraud, two counts of wire fraud conspiracy, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, conspiracy to commit money laundering and conspiracy to defraud the United States and violate the campaign finance laws.

15. On December 21, 2022, Ms. Caroline Ellison, the former CEO of Alameda Research, pleaded guilty to seven counts, including two counts of wire fraud, two counts of conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud and conspiracy to commit money laundering. These counts included allegations of criminal behavior in connection with the improper lending of FTX customer funds to Alameda to help support Alameda as it faced liquidity crunches "around the time the crypto market crashed" in Spring 2022.

16. Also on December 21, 2022, Mr. Gary Wang, the co-founder and former Chief Technology Officer of FTX.com, pleaded guilty to four counts, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud and conspiracy to commit securities fraud.

17. On January 17, 2023, Silvergate Capital Corporation issued financial results for the three and twelve months ending December 31, 2022 on a Form 8-K. Those results reported that Silvergate Bank's deposits had declined by $6.9 billion, or 52.4%, from September 30, 2022 to December 31, 2022. Additionally, to maintain a liquid balance sheet, Silvergate Capital Corporation reported that Silvergate Bank had sold $5.2 billion of debt securities, resulting in a loss on the sale of securities of $751.4 million during the fourth quarter of 2022.

18.     On February 23, 2023, the Department of Justice included four new charges in a superseding indictment against Mr. Bankman-Fried.  In addition to the eight charges brought in December 13, 2022, prosecutors charged Mr. Bankman-Fried with securities fraud, commodities fraud, conspiracy to commit bank fraud and conspiracy to operate an unlicensed money transmitting business.  On information and belief, Silvergate Bank is the bank discussed in the superseding indictment as being defrauded by Mr. Bankman-Fried.

19.     On February 28, 2023, Mr. Nishad Singh, an early employee of FTX.com and leader of the FTX Group's cybersecurity, pleaded guilty to six counts, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, conspiracy to commit money laundering and conspiracy to make unlawful political contributions and defraud the Federal Election Commission.

20.     On March 1, 2023, Silvergate Capital Corporation reported that Silvergate Bank had sold additional debt securities in January and February 2023.  These sales negatively impacted the regulatory capital ratios of Silvergate Capital Corporation and Silvergate Bank.  In light of these developments, Silvergate Capital Corporation issued a going concern warning and stated that it was in the process of reevaluating its businesses and strategies in light of the business and regulatory challenges it was facing.

21.     On March 8, 2023, Silvergate announced in a Form 8-K its "intent to wind down operations and voluntarily liquidate the Bank in an orderly manner and in accordance with applicable regulatory processes."

22.     On March 28, 2023, the Department of Justice unsealed a new superseding indictment of Mr. Bankman-Fried, charging him with conspiracy to violate the anti-bribery

provisions of the Foreign Corrupt Practices Act in addition to the twelve charges previously brought against him.

## CAUSES OF ACTION AGAINST THE FTX GROUP

23.     Based on the foregoing conduct, Claimants assert that they have legal claims against the FTX Group, as set forth below.  Claimants reserve their rights to supplement these legal claims and the allegations set forth above to the extent additional information becomes available relating to harm caused to Claimants by the FTX Group.

### Fraud

24.     Claimants incorporate by reference all allegations above as though fully set forth herein.

25.     Claimants allege that the FTX Group fraudulently induced Silvergate Bank to provide banking services that the FTX Group used to operate its FTX.com cryptocurrency exchange.  As stated in the Second Interim Report, the FTX Group, through Mr. Bankman-Fried and other employees, fraudulently misrepresented the purpose of accounts set up by the FTX Group entities at Silvergate Bank.  (Second Interim Report, 18-19.)  Silvergate Bank relied on these false statements; until mere days before the FTX Group collapsed, it was widely regarded by investors, customers and media as one of the safest and most promising cryptocurrency exchanges. Moreover, it is a criminal act to knowingly provide false information as part of a bank application. Claimants were injured as a result of FTX Group's fraudulent statements.

26.     Claimants assert a claim for all damages resulting from the FTX Group's fraud. The damages caused by this fraud are significant and unliquidated as of the time of this filing.

### Breach of Contract

27.     Claimants incorporate by reference all allegations above as though fully set forth herein.

28.     As summarized below in "Supporting Documents", Claimants executed numerous valid and binding contracts with members of the FTX Group, including, but not limited to, Alameda Research LLC, Alameda Research Ltd., FTX Digital Markets Ltd., North Dimension Inc., Quoine Pte Ltd. and West Realm Shires Inc.  These contracts included, but are not limited to, Cash Management and Treasury Service Agreements and Deposit Account Agreement and Regulatory Disclosures entered into at the time of account origination by the applicable members of the FTX Group.  The FTX Group breached several of the obligations contained in its contract agreements with Claimants, including, but not limited to, breaches of representations that the information provided to Silvergate Bank by the FTX Group was true and correct to the best of their knowledge.

29.     Claimants assert a claim for all damages resulting from the FTX Group's breach of its obligations under its contracts with Claimants.  The damages caused by this breach of contract are significant and unliquidated as of the time of this filing.

**Contractual Indemnification**

30.     Claimants incorporate by reference all allegations above as though fully set forth herein.

31.     Each time the FTX Group opened accounts with Silvergate Bank, such entities agreed to a Cash Management and Treasury Services Agreement governing the use of banking services relating to the applicable account, among other agreements.

32.     Those Cash Management and Treasury Services Agreements represent valid and binding contracts entered into within and among the FTX Group, through its subsidiary entities, and Silvergate Bank.

33.     The Cash Management and Treasury Services Agreements entered into between and among Silvergate Bank and the FTX Group, through its subsidiary entities, contain substantially identical indemnification provisions:

> **Indemnity by You.** You [the applicable FTX Group customer] agree to defend, indemnify and hold the Bank harmless against any loss, liability or expense (including attorneys' fees and expenses) resulting from or arising out of:  (a) any acts or omissions by you or your employees or agents; (b) any claims against the Bank from a third party resulting directly or indirectly under this CMTS Agreement where the Bank has acted in accordance with your instructions and/or within the terms of this CMTS Agreement; and (c) any breach by you or your employees or agents of any representation, warranty, covenant or agreement made pursuant to or in this CMTS Agreement. Nothing contained in this CMTS Agreement will be deemed to relieve you of any liability, duty, or obligation which may be imposed upon you by any Applicable Laws or Regulations.

34.     These indemnification provisions represent a material term in the agreements entered into between and among Silvergate Bank and the FTX Group, through its subsidiary entities.

35.     Any damages suffered by Claimants as a result of the FTX Group's improper use of its accounts with Silvergate Bank, including, but not limited to, unauthorized use of the applicable accounts to custody customer funds and/or to operate a money services business, and any attorneys' fees and costs resulting from related litigations, are covered by the terms of these indemnification provisions.  The amount of these covered damages are significant and unliquidated as of the time of this filing.

### Civil Violation of the RICO Act, 18 U.S.C. § 1962(c)

36.     Claimants incorporate by reference all allegations above as though fully set forth herein.

37.    Mr. Samuel Bankman-Fried and Mr. Daniel Friedberg are "person[s]" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  The FTX Group is an association-in-fact within the meaning of 18 U.S.C. § 1961(4).  Silvergate Bank is a "financial institution" within the meaning of 18 U.S.C. § 1344.

38.    The FTX Group and/or certain of its subsidiaries, including North Dimension, were created and/or used as a tool to effectuate a pattern of racketeering activity.  Mr. Bankman-Fried, in conjunction with Mr. Friedberg and others of and associated with the FTX Group, established North Dimension to fraudulently procure banking services from Claimants, knowing or believing that their scheme violated federal and state laws.

39.    Mr. Bankman-Fried, in conjunction with Mr. Friedberg and others of and associated with the FTX Group, engaged in a course of conduct that included the following:

- Created and caused to submit false information in an application for North Dimension to receive bank accounts from Claimants, including that North Dimension "operates a cryptocurrency trading business".  (Second Interim Report, 18.)

- Falsely stated in their application to receive services from Claimants that North Dimension was not a money services business, while knowing that their true intent was to use a North Dimension account with Claimants to receive and pay funds to customers, thus acting as a money services business.  (Second Interim Report, 19.)

- Created and caused to submit false information in Claimants' required diligence forms for trading businesses that North Dimension was "a proprietary and OTC trading firm with 2,000 counterparties and average monthly trading volume of $10 million", when at the time the entity had no business operations or employees.  Mr. Bankman-Fried signed and certified that this response was correct and complete to his knowledge and belief. (Second Interim Report, 18.)

- Created a false and misleading corporate register to provide to Claimants in connection with North Dimension's application to open bank accounts and/or to receive other services.  (Second Interim Report, 19.)

- 11 -

40.     Some or all of these false representations were made over the wires or by mail and were directed to a financial institution (Silvergate Bank).  These false representations were made directly to Claimants and were a condition of receiving services, including banking services.  The FTX Group engaged in and affected interstate commerce because, among other things, it marketed, sold, purchased or provided services to thousands of individuals throughout the United States.

41.     Mr. Bankman-Fried, Mr. Friedberg and/or others appear to have conducted and participated in the affairs of the FTX Group through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud) and other applicable federal or state statutes.  The effect of this racketeering activity was to induce for the FTX Group an increase in sales, profits and/or other benefits that otherwise would not have been made in the absence of the illegal conduct.

42.     Claimants suffered injuries that resulted from the illegal conduct.  Claimants' injuries were directly and proximately caused by the FTX Group's racketeering activities as described above.  By virtue of these violations of 18 U.S.C. § 1962(c), the FTX Group is jointly and severally liable to Claimants for three times the damages Claimants have sustained, including reasonable attorneys' fees and costs.  The total resulting damages are significant and unliquidated as of the time of this filing.

**Civil Conspiracy To Violate the RICO Act, 18 U.S.C. § 1962(d)**

43.     Claimants incorporate by reference all allegations above as though fully set forth herein.

44.     18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section".  The FTX Group, in coordination with certain of its directors or officers, appears to have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).  The object of this conspiracy has been and is to

- 12 -

conduct or participate in, directly or indirectly, the conduct of the affairs of the FTX Group described previously through a pattern of racketeering activity.

45. The FTX Group, in coordination with certain of its directors or officers acting as its co-conspirators, appears to have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Claimants of money and services and conduct to cause and/or commit other acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud) and 1344 (bank fraud).

46. The nature of the above-described acts, material misrepresentations and omissions in furtherance of the conspiracy gives rise to an inference that the FTX Group, in coordination with certain of its directors or officers, not only agreed to the objective of an 18 U.S.C. § 1962(d) RICO violation by conspiring to violate 18 U.S.C. § 1962(c), but was aware that their ongoing fraudulent acts have been, and are part of, an overall pattern of racketeering activity. The purpose and effect of the conspiracy was to induce an increase in sales, profits and/or other benefits that otherwise would not have been made in the absence of the illegal conduct.

47. As a direct and proximate result of the overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), as described above, Claimants have been injured in their business and property. Claimants suffered injuries that resulted from the illegal, conspiratorial conduct. Claimants' injuries were directly and proximately caused by the racketeering activities as described above. By virtue of these violations of 18 U.S.C. § 1962(d), the FTX Group is jointly and severally liable to Claimants for three times the damages Claimants have sustained, including reasonable attorneys' fees and costs. The total resulting damages are significant and unliquidated as of the time of this filing.

**NATURE OF DAMAGES**

48.     Based on the allegations set forth, and subject to amendments which may occur from Claimants' ongoing investigation, Claimants have reason to believe that they suffered, and are continuing to suffer, substantial damages as a result of the FTX Group's conduct, including, but not limited to, its willful and knowing conduct to provide false and misleading information to Silvergate Bank for the purpose of inducing Silvergate Bank to unknowingly provide bank accounts to custody customer funds and/or to use as a money services business by the FTX.com exchange, among other banking services.  The FTX Group intended to and did use those accounts to receive customer deposits and fund customer withdrawals for FTX.com.

49.     Further, the FTX Group, through its misstatements, omissions and misrepresentations, both to Silvergate Bank specifically and the market generally, perpetuated a criminal enterprise that induced Silvergate Bank to provide services it would not have otherwise provided.  Silvergate Bank was unaware of the FTX Group's pattern of fraud, and its provision of banking services to the FTX Group on the basis of deceptive and false statements put Claimants' business at risk for substantial and potentially even total business loss.  In particular, as the FTX Group collapsed due to exposure of its many frauds and violations of state and federal law, customers and investors lost confidence in the ability of financial services providers to the FTX Group, including Silvergate Bank, to continue paying their liabilities as they came due.  As a result, numerous customers withdrew deposits from Silvergate Bank which was then forced to sell securities at a significant loss across November 2022 through January 2023 to meet these withdrawals.  Ultimately, by March 2023, Silvergate Bank announced that it was voluntarily winding down and liquidating.

50.     Claimants hereby assert all claims for damages arising from any and all losses that they have suffered as a result of the harmful conduct perpetrated onto Silvergate Bank by the FTX Group, including, but not limited to, the following claims for damages:

- *First*, in an as yet unliquidated, contingent and unfixed amount, claims for all losses it has suffered, and will suffer in the future, arising from lawsuits by customers of the FTX Group ("FTX Customer Lawsuits"), including defense costs and any amounts paid or to be paid by Claimants or a party either of them has agreed to indemnify.[3]  These suits generally allege that, by failing to detect the FTX Group's fraud against its customers, Silvergate Bank and its parent company aided and abetted the FTX Group's intentional torts and so are liable to these customers for the losses they have incurred as a result of the FTX Group's malfeasance.  To be clear, Silvergate Bank and its parent company believe that these allegations are without merit and that they breached no duty to the FTX Group's customers—as stated in Second Interim Report, the FTX Group, through Mr. Bankman-Fried and other FTX employees, made affirmative misrepresentations to Silvergate Bank, which undermine allegations against Silvergate Bank that it knowingly aided and abetted the fraud on customers by FTX (it did not).  However, by fraudulently inducing Silvergate Bank to provide the FTX Group with accounts used to accept customer deposits, it was or should have been foreseeable by the FTX Group that Silvergate Bank may become a target of litigation.  These losses are recoverable under theories of fraud or contractual indemnification set forth above.

- *Second*, to the extent any other party (including the FTX Group) brings any cause of action against Claimants arising from or relating to fraudulent conduct by the FTX Group, Claimants assert contingent and unliquidated claims for all losses under applicable law, including defense costs and any amounts paid or to be paid by Claimants or by a party Claimants have agreed to indemnify.

- *Third*, Claimants assert a claim for consequential damages in an unfixed and unliquidated amount arising from the fraudulent conduct perpetrated against Silvergate Bank by the FTX Group, including damage to Claimants' goodwill as a result of the FTX Group's malfeasance.  In the weeks and months after the FTX Group's rapid collapse, Silvergate Bank itself faced significant distress, culminating in its announcement on March 8, 2023 that it was winding down and liquidating.  Silvergate Bank would not have engaged in any business or the amount or type of business it did with the

---

[3] *In re Silvergate Capital Corporation*, No. 23-CV-667 (N.D. Cal.); *Word of God Fellowship Inc. v. Silvergate Bank*, No. 37-2023-00024877-CU-FR-CTL (Cal. Super. Ct.); *O'Keefe v. Sequoia Capital Operations, LLC*, No. 23-CV-20700 (S.D. Fla.) (dismissed).

FTX Group absent the FTX Group's fraud against it. The market's perception of the business engaged in between Silvergate Bank and the FTX Group contributed to the large amount of withdrawals faced by Silvergate Bank shortly after the FTX Group's collapse, which in turn caused it to incur substantial losses on sales of securities and, ultimately, to liquidate.

- *Fourth*, Claimants assert a claim for damages in an unfixed and unliquidated amount resulting from any breaches of contract and/or contractual indemnification obligations set forth above.

- *Fifth*, Claimants assert a claim for damages in an unfixed and unliquidated amount arising from any RICO Act violations under 18 U.S.C. § 1962(c) and/or 18 U.S.C. § 1962(d).

- *Sixth*, Claimants assert a claim for damages in an unfixed and unliquidated amount arising from any additional causes of action not explicitly discussed herein.

## SUPPORTING DOCUMENTS

51.     The claims asserted herein are based on, without limitation, misrepresentations, omissions or obligations contained in business account applications, organizational documents, due diligence questionnaires, correspondence regarding compliance, Cash Management and Treasury Services Agreements and Deposit Account Agreement and Regulatory Disclosures. In particular, and as previously discussed, the business account application for North Dimension contained the misrepresentation that North Dimension was not a money services business, despite the FTX Group's undisclosed intent to use the North Dimension account to receive and withdraw customer funds. Additionally, the Cash Management and Treasury Services Agreements with the FTX Group entities contain the indemnification provisions covering damages suffered by Claimants as a result of the FTX Group's improper use of its accounts with Silvergate Bank.

52.     The supporting documentation for the claims are voluminous, and many of them contain confidential or private information of Claimants or the Debtors. For that reason, Claimants have not attached the supporting documentation. Subject to entry of an appropriate protective order with respect to documents containing confidential or private information of Claimants or the

- 16 -

Debtors, supporting documentation may be obtained upon written request to counsel for Claimants:  Paul H. Zumbro, Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019-7475, pzumbro@cravath.com.

## SETOFF AND RECOUPMENT

53.    The claims asserted herein are secured to the extent of any right of setoff and/or recoupment in favor of Claimants against the applicable Debtor.  Claimants expressly assert a secured claim to that extent and preserve any and all rights of setoff and/or recoupment available to Claimants.  No effort is made to take any action contrary to applicable law (including the automatic stay under § 362 of the Bankruptcy Code (11 U.S.C. § 362), but every reservation of rights is otherwise asserted herein with respect to setoff or recoupment rights.

## RESERVATION OF RIGHTS

54.    Claimants file the Proof of Claim with full reservation of rights, including the right to amend or supplement the Proof of Claim to assert or amend any theories, claims and causes of action available for recovery against the Debtors, their estates, successors, assigns, any affiliates or any of their respective estates, successors, assigns or any other person or entity who may be liable for all or part of the claims set forth herein.

55.    Claimants do not waive or abandon any claims Claimants may have against any non-debtor person or entity, and expressly reserve the right to pursue and recover from any party from which repayment of the claims asserted herein may be made.

56.    Claimants do not waive, and expressly reserve all rights and remedies at law or in equity that Claimants have or may have against the Debtors, their estates, successors, assigns, any affiliates or any of their respective estates, successors, assigns or any other person or entity who may be liable for all or part of the claims set forth herein.  Claimants' reservation of rights includes, without limitation:  (i) any obligation owed to Claimants; and (ii) Claimants' right to trial by jury,

or right to consent to trial by jury, in any hearing, proceeding or other matter arising in or related to this case or in any other court.

57.     The filing of the Proof of Claim is not:  (i) an election of remedies; (ii) a waiver or limitation of any procedural or substantive rights or any procedural or substantive defenses to any claim that may be asserted against the Debtors; (iii) an admission by Claimants that any property held by the Debtors (or any successors, assigns, subsidiaries or affiliates thereof) is property of the Debtors' (or their successors, assigns, subsidiaries or affiliates') bankruptcy estates; (iv) a waiver or release of, or any other limitation on, Claimants' right to assert that any portion of the claims asserted herein or any other claims are entitled to treatment as priority claims under any applicable section of the Bankruptcy Code; (v) a waiver or release of any lien or security interest, as applicable; (vi) a waiver or limitation on Claimants' right to vote on any plan or plans of reorganization proposed in the Bankruptcy Case; (vii) a waiver of any right of subordination in favor of Claimants of indebtedness or liens held by other creditors of the Debtors; (viii) a waiver of any rights to any claims asserted herein by not ascribing a specific dollar amount thereto at this time; or (ix) a waiver of any additional claims or other rights that Claimants may have against the Debtors, their estates, successors, assigns, any affiliates or any of their respective estates, successors, assigns or any other person or entity who may be liable for all or part of the claims set forth herein.  In addition, Claimants reserve the right to withdraw the Proof of Claim in full or in part with respect to any of the claims set forth herein for any reason whatsoever.

58.     Claimants expressly reserve the right to (i) amend, modify, update or supplement the Proof of Claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail regarding the claims set forth herein, to fix the amount of any disputed, contingent or unliquidated claim or to assert

any alternative theories or bases for recovery; or (ii) file additional proofs of claim for additional claims which may be based on the same or additional supporting documents as described above.

59.     This Proof of Claim is filed pursuant to Federal Rule of Bankruptcy Procedure 3002 and filed to assert and preserve claims against the Debtors as stated herein and to protect Claimants from forfeiture of those claims.  Notwithstanding anything to the contrary herein and for the avoidance of doubt, the filing of this Proof of Claim is not and should not be construed to be, *inter alia*:  (i) a consent by Claimants to the jurisdiction of this Court with respect to the subject matter of the claims set forth in the Proof of Claim and this addendum, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this Bankruptcy Case against or otherwise involving Claimants; (ii) a waiver of Claimants' right to have final orders in non-core matters, or core matters to which *Stern v. Marshall*, 564 U.S. 462 (2011), applies, entered only after *de novo* review by a United States District Court Judge; or (iii) a waiver of Claimants' right to (1) withdraw the reference, or otherwise challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of these claims, any objection or any other proceeding commenced in this case against or otherwise involving Claimants, or (2) assert that the reference has already been withdrawn with respect to the subject matter of these claims, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving Claimants.

FTX Non Customer Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

DOCUMENT ID

a22e5e2031a6b85c7e43a7ac5609805e093dc329

Submitted Date Time

2023-06-30T15:07:21.362Z

Status

Submitted

CONFIRMATION ID

3265-69-EVXTC-381878743

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

Orbeon Forms 2022.1.3.202304130216 PE