**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.,* [1]<br><br>         Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>Ref. Nos. D.I. 35678 D.I. 35768<br><br>Hearing Date: July 23, 2026 at 9:30 a.m. (ET)<br><br>Obj. Deadline: July 16, 2026 at 4:00 p.m. (ET) |

**DECLARATION OF DAVID J. ADLER IN SUPPORT OF MOTION
OF SETH MELAMED FOR ENTRY OF AN ORDER DETERMINING THAT
THE FILING AND PROSECUTION OF THE PROPOSED REQUEST
TO AMEND DESCRIPTION OF ARBITRATION IS NOT ENJOINED BY THE
<u>JUNE 2ND ORDER OR THE CONFIRMATION ORDER</u>**

I, David J. Adler, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.  I am a partner at McCarter & English, LLP, counsel for Seth Melamed.  I submit this declaration in connection with the *Motion of Seth Melamed for Entry of an Order Determining that the Filing and Prosecution of the Proposed Request to Amend Description of Arbitration Is Not Enjoined by the June 2nd Order or the Confirmation Order*.

2.  Attached hereto as **Exhibit A** is a true and correct copy of the Proposed Request to Amend Description of Arbitration.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  A complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX

1

Executed in New York, New York on this 9th day of July 2026

/s/ *David J. Adler*
David J. Adler

**EXHIBIT A**

IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES
OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE

**SETH MELAMED**

(CLAIMANT)

-VERSUS-

**THE FTX RECOVERY TRUST**

(RESPONDENT)

REQUEST TO AMEND DESCRIPTION OF DISPUTE

[DATE]

MORI HAMADA

Marunouchi Park Building, 2-6-1 Marunouchi
Chiyoda-ku, Tokyo 100-8222, Japan

1

2

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 3

II.   REASON FOR AMENDMENT ............................................................................ 3

III.  AMENDED DESCRIPTION OF THE NATURE AND CIRCUMSTANCES OF THE DISPUTE
SUBMITTED TO ARBITRATION ...................................................................... 5

　　A.   FTX's breach of its contractual representations and warranties to the
　　Claimant ................................................................................................... 6

　　B.   FTX's breach of its contractual payment obligation ..................................... 12

IV.   AMENDED REQUEST FOR RELIEF ................................................................. 16

## I.   INTRODUCTION

1.   The Claimant, Seth Melamed, hereby requests that the description of the nature of dispute and requests for relief set out in this document replace and supersede the description of the nature of the dispute and preliminary request for relief that was set out in the Notice of Arbitration dated 12 November 2025 (the "Notice of Arbitration").

2.   For the avoidance of doubt, the Claimant no longer pursues his claims as they were described in the Notice of Arbitration. The only claims pursued in this arbitration will be those described in the amended description of the dispute and request for relief set out herein.

## II.   REASON FOR AMENDMENT

3.   As explained in the Notice of Arbitration, on 31 July 2025, the Bankruptcy Court ordered that the claims described in Claim 3385 (a proof of claim submitted by the Claimant in the Bankruptcy Proceedings) that relate to the SPA were to be adjudicated through arbitration in accordance with the SPA's arbitration agreement. Accordingly, on 12 November 2025, the Claimant submitted the Notice of Arbitration, which sought relief in respect of claims described in Claim 3385 that fell within the scope of the SPA's arbitration agreement.

4.   However, on 2 June 2026, the Bankruptcy Court issued an injunction personally against the Claimant, constraining him from pursuing his claims as they were described in the Notice of Arbitration. The Claimant understands the June 2 Order as precluding him from pursuing the claims described in the Notice of Arbitration to the extent premised on generalized FTX-wide

3

misconduct compromised under Plan §§ 5.2 and 10.8.[1]

5.    Accordingly, the Claimant wishes to narrow the relief that he seeks in this arbitration, so that his conduct is in compliance with the Bankruptcy Court's order against him.

6.    The Claimant will not ask the Tribunal to impose liability or award damages on the basis of any generalized allegations concerning FTX's fraud, misuse or commingling of customer assets, preferential treatment of Alameda, lack of corporate controls, lack of customer-asset segregation, insolvency, or any other FTX-wide misconduct compromised under § 5.2 of the Plan. On the issue of information provided by FTX to the Claimant, the Tribunal will be asked only to determine whether specific information furnished privately and confidentially to the Claimant, and solely in connection with SPA transaction, breached FTX's explicit contractual warranties to the Claimant under the SPA.

7.    As previously confirmed in the Notice of Arbitration, the Claimant reconfirms that certain issues (including but not limited to claim allowance and distribution under the Confirmed Plan) are reserved to the U.S. Bankruptcy Court for the District of Delaware. Consistent with the Court's 31 July 2025 orders, this arbitration is limited to: (i) liability and damages/indemnification under Japanese law arising out of or in connection with the claims that the Bankruptcy Court has permitted the Claimant to pursue under the SPA and Side Letters; and (ii) the quantification of any such damages/indemnity for submission to the Bankruptcy Court for

---

[1]    The Claimant is pursuing reconsideration of the Order and has also submitted a notice of appeal.

4

purposes such as allowance and distribution.

## III.    AMENDED DESCRIPTION OF THE NATURE AND CIRCUMSTANCES OF THE DISPUTE SUBMITTED TO ARBITRATION

8.    This dispute concerns the Respondent's breach of contract. The Respondent breached explicit contractual representations and warranties that were set out in a high-value commercial contract concluded directly between the Claimant and the Respondent, causing breach-of-contract damages to the Claimant. The contract explicitly obligates the Respondent to indemnify the Claimant for those losses. The Respondent also breached a contractual payment obligation.

9.    In 2021, FTX acquired a Japanese cryptocurrency company ("Liquid"). FTX purchased the Claimant's 22.4 percent stake in Liquid through a transaction that was crystallized in a share purchase agreement dated 19 November 2021 (the "SPA"), together with accompanying side letters also dated 19 November 2021 (the "Side Letter") and 31 March 2022 (the "Second Side Letter").[2] The parties agreed that the SPA and the Side Letters were to be governed by Japanese law, and that it would be mandatory for all disputes under the SPA and and the Side Letters to be resolved through Singapore-seated SIAC arbitration.

10.    Under the explicit terms of the SPA and the Side Letters, FTX promised to pay the Claimant consideration of US$8,903,278.05 in exchange for 20 percent of the Claimant's shares in Liquid. FTX also made specific contractual representations and warranties directly to the Claimant.

11.    Pursuant to the SPA and the Side Letters, the Claimant transferred all of his shares in Liquid to FTX on 4 April 2022. But FTX breached

---

[2] C-001 Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc. (Major Shareholders) dated 19 November 2021; C-002 Side Letter Agreement dated 19 November 2021; C-003 Side Letter Agreement dated 31 March 2022.

the SPA and the Side Letters in two ways.

① FTX breached the contractual representations and warranties that it had made directly to the Claimant, by failing to comply with the SPA's special and explicit contractual obligations of candor and accuracy.

② In addition, and in any event, FTX failed to satisfy its contractual obligation to effect payment of 20 percent of the purchase price to the Claimant. The Claimant never received 20 percent of the contractually-agreed purchase price.

## A. FTX's breach of its contractual representations and warranties to the Claimant

12. FTX's contractual obligations to the Claimant in respect of representations and warranties are set out in Clause 7.2 of the SPA, which provides as follows:

> The Purchaser represents and warrants to the Sellers that, (i) except any matter, circumstance or event arising substantially as a result of any actions or omissions that are requested in writing or consented to in writing by any of the Sellers or any of their respective Representatives, or any actions that any of the Sellers or any of their respective Representatives takes or, notwithstanding reasonable written request by the Purchaser, omits to take, in connection with the transactions contemplated by this Agreement, **each** of the Warranties set out in Part B of Schedule 6 (other than the Purchaser Fundamental Representations) is true, accurate and not misleading at the date of this Agreement; and (ii) each of the Purchaser Fundamental Representations is true, accurate and not misleading at the date of this Agreement. Immediately before Completion, the Purchaser is deemed to represent and warrant to the Sellers that each respective Warranty is true, accurate and not misleading by reference to the facts and circumstances as at Completion. For this purpose only, where there is an express or implied reference in a Warranty to the "date of this Agreement", that reference is to be construed as a reference to Completion.

6

13.  The Fundamental Representations to which Clause 7.2 refers were the contractual representations and warranties set out in Part B of Schedule 6 to the SPA, at Paragraphs 1 (Incorporation), 2 (Right, power, authority and action), 3 (Anti-Social Forces), 4 (Binding agreements), 5 (Funds) and 6 (Share Issuance).

14.  Under Schedule B, Part 6, paragraphs 7 and 8, FTX also made the following contractual warranties:

Information

All statements in the Disclosure Documents in relation to the Purchaser and all documents and information provided or made available by or on behalf of the Purchaser for the purpose of preparation of the Disclosure Documents are true, accurate and not misleading in all material respects and has not omitted any information the omission of which would make any statement in the Disclosure Documents misleading in any material respect.

Completeness of Disclosure

All information contained in this Agreement and all other information furnished by or on behalf of the Purchaser to the Sellers or the Sellers' advisers before and during the negotiation leading up to this Agreement is true and accurate in all material respects.

15.  FTX breached these provisions of the SPA contract by means of non-public information and assurances provided directly to the Claimant. Specifically, FTX uploaded non-public information to a secure, password-protected data site for the transaction, and also made private statements directly to the Claimant. By both means, FTX provided information to the Claimant that was not consistent with the specific and explicit contractual obligations of accuracy and candor that these provisions of the SPA contract imposed.

16.  That the information provided to the Claimant during the negotiation and implementation of the SPA was not generally available to the public is confirmed in Clause 7.3 of the SPA, which

7

memorializes that the parties had entered into a contractual non-disclosure agreement on 26 August 2021 (the "NDA"). That NDA was specific to the SPA transaction, and had the specific purpose of facilitating the SPA transaction by enabling the parties to share sensitive, non-public information with each other.[3]

17. The information and assurances that FTX and its management communicated directly and confidentially to the Claimant breached the specific contractual representations and warranties that FTX made to the Claimant in the SPA. In particular, the evidence that the Claimant will present in this arbitration will show that:

①  It was **<u>not</u>** the case that "all information provided or made available by or on behalf of the Purchaser for the purpose of the preparation of the Disclosure Documents" was "true, accurate and not misleading in all material respects", and it was **<u>not</u>** the case that information provided did not "omit[] any information the omission of which would make any statement in the Disclosure Documents misleading in any material respect", as contractually required by Paragraph 7 of Part B to Schedule 6 of the SPA.

②  Likewise, "all information … furnished by or on behalf of the Purchaser to the Sellers … during the negotiation leading up to [the SPA]" was **<u>not</u>** "true and accurate in all material respects", as contractually required under Paragraph 8 of Part B to Schedule 6 of the SPA.

18. The above assertions have specific factual premises that concern the Crypto Consideration tranche in particular, and are not generalized (i.e., could not generally be relied upon or asserted by FTX's customers). As explained in the signed testimonial

---

[3]     The Claimant no longer possesses a copy of the NDA, but understands that the Respondent possesses a copy. The Claimant expects to seek disclosure of the NDA during the course of the arbitration.

declaration submitted by the Claimant in the bankruptcy proceedings under penalty of perjury:

① Prior to execution of the SPA, but after the execution of the NDA, FTX management and Sam Bankman-Fried provided Liquid management (including the Claimant) with audited consolidated financial statements of FTX and its subsidiaries prepared by Prager Metis CPAs, LLC, including FTX's consolidated balance sheets for 31 December 2019 and 31 December 2020, and related statements of operations, shareholders' equity, cash flows, and notes to the financial statements. (For the avoidance of doubt, FTX was a private company and its audited financials were not publicly available.)

② Those Prager Metis audited financial statements were provided as transaction due diligence materials and were deposited in a private Data Room to which Liquid executives (including the Claimant) were given access in September 2021 by an email sent by Can Sun, FTX's then Chief Legal Officer, on 17 September 2021.

③ The Claimant personally read and analyzed the Prager Metis audited financial statements in the Virtual Data Room. (As the Claimant will establish with further evidence in the arbitration, those audited financial statements were specifically material to the Crypto Consideration tranche of the SPA's purchase price, as they were material to the question of withholding a portion of the purchase price.)

④ During the due diligence process before the sale of Liquid to FTX, Sam Bankman-Fried and Can Sun personally assured the Claimant that FTX maintained sound risk management and daily customer reconciliations as part of its operating

9

framework.

⑤ Prior to the 4 April 2022 Completion Date, the Claimant made direct requests to FTX on numerous occasions that FTX hold the Retained Consideration in segregated wallets, and Sam Bankman-Fried, Can Sun, and Nishad Singh repeatedly provided personal assurances directly to the Claimant that his Retained Consideration would be segregated from FTX's own assets.

⑥ FTX also provided Liquid management and shareholders (including the Claimant) with the March 31, 2021 FTX Trading Ltd. balance sheet through the Virtual Data Room in September 2021, which appeared to show that FTX Trading Ltd. had no large or hidden liability or material liquidity or solvency risk arising from its dealings with affiliated entities.

⑦ During the negotiations for the sale of Liquid, Can Sun confidentially shared with the Claimant and other Liquid management an email dated 31 August 2021 attaching a document titled "FTX B-1 Round Terms", which provided information concerning FTX's financing terms, valuation, and the repurchase of FTX shares from Binance.

19. The Claimant will establish that these were non-public transaction-specific documents, information, and assurances that were furnished pursuant to a non-disclosure agreement by or on behalf of FTX directly to the Claimant in connection with the negotiation and performance of the SPA and Side Letters, and that this specific, targeted conduct makes FTX liable to the Claimant for breach of contract.

20. For the avoidance of doubt, the Claimant will not premise any claim in this arbitration on any contention that any generalized conduct of FTX (i.e., conduct not specifically and personally

10

directed toward the Claimant in confidence and in connection with the SPA contract) gives rise to any form of liability to the Claimant. Notwithstanding anything to the contrary in the Notice of Arbitration dated 12 November 2025, the Claimant's claims in respect of information provided by FTX will from now on exclusively concern whether FTX breached its specific contractual promises to the Claimant through conduct directed toward the Claimant in relation to the specific issue of the Crypto Consideration.

21.   By breaching these provisions of the SPA and the First Side Letter, FTX breached contractual obligations that it owed directly to the Claimant under the SPA and caused the Claimant to suffer breach-of-contract losses.

22.   Clause 9.3 of the SPA contractually obligates FTX to indemnify the Claimant for any "Losses" caused to the Claimant by FTX breaching its contractual obligations to the Claimant.

> If Completion takes place, the Purchaser shall indemnify and hold harmless the Sellers and their Affiliates — the "Seller Indemnified Parties" — from, against and in respect of any and all Losses incurred or suffered by any Seller Indemnified Party resulting from, relating to or arising out of any breach of the representations and warranties made by the Purchaser under Clause 7.2 or covenants of the Purchaser under the Agreement.

23.   The term "Losses" is a contractually-defined term in the SPA, with the following meaning: "all costs, losses, Liabilities, damages, claims, demands, proceedings, expenses, penalties and legal and other professional fees".

24.   Because the SPA is governed by Japanese law, an assessment of the Claimant's "Losses" for the purposes of Clause 9.3 of the SPA corresponds to the breach-of-contract damages that FTX would owe to the Claimant under Article 416 of the Japanese Civil Code, the provision of Japanese law governing damages for breach of

contractual obligations. Article 416 provides as follows:

> Article 416
>
> (1)The purpose of the claim for compensation for the loss or damage for failure to perform an obligation is to have the obligor to pay the compensation for loss or damage which would ordinarily arise from the failure.
>
> (2)The obligee may also claim the compensation for damage which has arisen from any special circumstances if the party did foresee, or should have foreseen, the circumstances.

25.   FTX's breaches of its contractual representations and warranties caused the Claimant to suffer losses corresponding to the value of the 20 percent portion of the purchase price to which these breached representations and warranties related. The Claimant will establish the correct quantification of those damages under the principles of Japanese law and the terms of the contractual indemnity during the course of the arbitration.

26.   For the avoidance of doubt, the Claimant acknowledges that the Bankruptcy Court has the power to determine the bankruptcy consequences of any award in respect of this indemnification claim, including any dispute as to allowance, bankruptcy valuation, classification, subordination, distribution, or the effect, if any, of Plan § 4.4 or the Estimation Order. The purpose of submitting this claim to arbitration is to liquidate the Claimant's contractual indemnity claim under Clause 9.3 of the SPA so that the bankruptcy court's determinations of those issues can be based on a liquidated claim.

## B. FTX'S BREACH OF ITS CONTRACTUAL PAYMENT OBLIGATION

27.   FTX also breached its contractual obligation to pay 20 percent of the purchase price (defined in the SPA contract as the "Total Consideration") to the Claimant. This obligation is set out in

12

Clauses 2.2 to 2.4 of the SPA, as well as the Side Letters.

28.   Clauses 2.2 to 2.4 of the SPA provide as follows:

2.2 The aggregate purchase price for the Target Security Interests shall be USD 151,919,670.93 (the "**Total Consideration**"), representing a purchase price of USD 3,510.41 per Target Share (on an as converted basis), USD 3,509.54 per Target Option with respect to 180 of the Target Options, USD 3,103.16 per Target Option with respect to 30 of the Target Options, USD 3,180.15 per Target Option with respect to 300 of the Target Options (in each such case, being the net amount of the purchase price per Target Share minus the exercise price in USD applying the Applicable Exchange Rate for the Target Option) and USD 1,605.63 per Target Warrant (being the net amount of the purchase price per Target Share minus the applicable exercise price for the Target Warrant), of which:

(a) USD 52,796,848.94 will be satisfied by the allotment and issue of 2,014,377 Consideration Shares to the Sellers as set out in Schedule 2, credited as fully paid at Completion;

(b) USD 81,197,790.25 will be satisfied by the payment of cash (the "**Cash Consideration**") to the Sellers as set out in Schedule 2; and

(c) USD 17,925,031.75 will be satisfied by the payment of the types and amounts of digital assets (the "**Crypto Consideration**") as set out in Schedule 2.

2.3 At Completion, the Purchaser shall pay the aggregate amount of USD 68,738,887.81 as part payment of the Cash Consideration (the "**Initial Cash Consideration**") to the Sellers as set out in Schedule 2 by transfer of funds to the bank account of the respective Sellers as set out in Schedule 3 (or in such other manner or to any other bank account designated by such Seller and notified to the Purchaser in writing no later than three (3) Business Days prior to Completion).

2.4 At Completion, the Purchaser shall withhold (a) the remainder of the Cash Consideration, being the amount of USD 12,458,902.44 (the "**Retained Cash Consideration**") and (b) the Crypto Consideration, in a manner to be agreed in good faith by the Purchaser and the Management Shareholders.

13

29. However, the First Side Letter provides at its Clause 2.1(d) that, notwithstanding anything to the contrary in the contractual language excerpted above, the amount corresponding to the "Crypto Consideration" was to be paid to the Claimant at Completion, not later:

> The total amount of consideration to be paid by the Purchaser to Mr. Melamed (the "Consideration") shall be paid ratably on the Completion Date, the Second Completion Date and the Last Completion Date, provided, that the total amount of Crypto Consideration of Mr. Melamed, which shall be withheld in its entirety by the Purchaser as Retained Consideration in accordance with clause 4 of the Major Shareholders SPA, shall be paid on the Completion Date. Detailed allocation of the Consideration is set forth in Schedule 1 hereto.

30. For the avoidance of doubt, Schedule 1 of the First Side Letter confirmed that point and summarized the economics of the SPA contract with respect to the Claimant in particular, as follows:

2. **Allocation of Total Consideration**

| Date | Cash Consideration | Crypto Consideration | Consideration Shares |
|---|---|---|---|
| Completion Date | $1,511,232.19 | $8,903,278.05 | $4,533,696.57 |
| Second Completion Date | $5,586,817.52 | - | $16,760,452.55 |
| Last Completion Date | $1,805,228.34 | - | $5,415,685.03 |
| Total | $8,903,278.05 | $8,903,278.05 | $26,709,834.14 |

31. Although FTX had a contractual obligation to pay the Crypto Consideration on the Completion Date, FTX did not carry out that contractually-required payment, with the result that the Claimant did not receive that part of the Total Consideration. This non-payment was a breach of FTX's contractual obligation to the Claimant.

32. For the avoidance of doubt, the Claimant was not a depositor at FTX, was not an FTX customer, and never agreed to be a depositor or customer of FTX in any capacity. The Claimant's relationship with FTX was as a commercial counterparty, and was defined and

governed by the specific contractual promises and obligations set out in the SPA. The Claimant's contractual claim for non-payment of amounts due under the SPA at the date of Completion is not a claim that an FTX customer-depositor would generally be able to assert against FTX.

33. Because the SPA is governed by Japanese law, damages for breach of the SPA contract are assessed under Article 416 of the Japanese Civil Code, the provision of Japanese law governing damages for breach of contractual obligations. Article 416 provides as follows:

> Article 416
>
> (1)The purpose of the claim for compensation for the loss or damage for failure to perform an obligation is to have the obligor to pay the compensation for loss or damage which would ordinarily arise from the failure.
>
> (2)The obligee may also claim the compensation for damage which has arisen from any special circumstances if the party did foresee, or should have foreseen, the circumstances.

34. FTX's breach of its contractual payment obligation caused the Claimant to suffer a loss corresponding to the value of the contractual performance to which he was entitled but did not receive.

35. The Claimant will establish the precise quantification of that loss under the principles of Japanese law during the course of the proceedings, noting preliminarily that the SPA denominates the purchase price in USD, and specifies an amount of USD to which the Claimant was contractually entitled.

36. Specifically, the Claimant will establish in the arbitration that, as a matter of Japanese law, FTX's failure to perform on 4 April 2022 gave rise to a monetary damages claim, not merely an unmatured or continuing claim to delivery of cryptocurrency assets. The Claimant will further establish that, under Japanese law, those

damages are quantified by reference to the USD-denominated contractual performance that FTX failed to provide, together with interest.

37. For the avoidance of doubt, the Claimant acknowledges that the Bankruptcy Court has the power to determine the bankruptcy consequences of any award in respect of that claim, including any dispute as to allowance, classification, subordination, distribution, or the effect, if any, of Plan § 4.4 or the Estimation Order. The purpose of submitting this claim to arbitration is to liquidate the Claimant's Japanese-law claim for breach of contract so that the bankruptcy court's determinations of those issues can be based on a liquidated claim.

## IV. AMENDED REQUEST FOR RELIEF

38. For the reasons set out above, and in light of the amendments to the nature and circumstances of the dispute submitted to arbitration that are explained in this document, the Claimant respectfully requests that the Tribunal issue an Award:

(a) declaring that the Respondent breached its contractual payment obligations to the Claimant under Clause 2.4 of the SPA, as varied by the First Side Letter;

(b) declaring that the Respondent breached its contractual representation and warranty obligations to the Claimant under Clause 7.2 of the SPA;

(c) ordering the Respondent to honor its contractual indemnity to the Claimant and indemnify the Claimant against the Losses caused by FTX's breach of Clause 7.2 of the SPA, pursuant to Clause 9.3 of the SPA;

(d) ordering the Respondent to pay breach-of-contract damages under the principles of Japanese law caused by

FTX's breach of Clause 2.4 of the SPA, as varied by the First Side Letter;

(e) ordering the Respondent to pay interest on all amounts awarded at the applicable rate under Japanese law, to run from the date of the breach until 12 November 2022; and

(f) ordering the Respondent to bear all costs incurred by the Claimant in connection with this Arbitration, including all of the Claimant's legal costs and expenses.

39. Once again, for the avoidance of doubt, the Claimant seeks no relief in this arbitration in respect of issues reserved for the Bankruptcy Court, such as allowance, classification, subordination, distribution, or the effect, if any, of Plan § 4.4 or the Estimation Order in respect of any amount or relief that might be awarded in this arbitration. Those issues will be addressed, if and when necessary, before the Bankruptcy Court. The purpose of this arbitration is the adjudication and liquidation of specific claims for the purpose of providing an appropriate basis for the Bankruptcy Court's determination of those issues.

Respectfully submitted

**Mori Hamada & Matsumoto**

Counsel for the Claimant

17