**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 23, 2026 at 9:30 a.m. (ET)**<br>**Obj. Deadline: July 16, 2026 at 4:00 p.m. (ET)** |
| | **Ref. Nos. 33349, 33575, 33740 & 34975** |

**OBJECTION OF THE FTX RECOVERY TRUST TO MOTION OF DAIZHUO CHEN**
**FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 59(E) AND 60(B)(2)**
**BASED ON NEWLY DISCOVERED EVIDENCE**

The FTX Recovery Trust[2] hereby submits this objection (this "Objection") to the

*Motion of Daizhuo Chen for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) and 60(b)(2) Based*

*on Newly Discovered Evidence* [D.I. 34975] (the "Motion"), filed by Daizhuo Chen (the

"Claimant").  The FTX Recovery Trust respectfully requests that the Motion be denied and in

support of this Objection, the FTX Recovery Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Claimant again seeks extraordinary relief by asking the Court to compel

the FTX Recovery Trust to accept a noncompliant Know Your Customer ("KYC") submission

well after the Court-established deadline and the Court's prior denial of his request for an exception

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]     The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established through the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127]. Capitalized terms not defined herein shall have the same meaning set forth in the Plan.

to such deadline.  Styled as a motion for reconsideration, the Motion is nothing more than an attempt to relitigate issues that the Court already ruled on in November 2025 without any new legal or factual support.  For the second time, the Claimant asks the Court to accord him special treatment by revisiting and disregarding the final *Order Sustaining Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 29464] (the "KYC Objection Order").  The Claimant has provided no legal or factual basis to support such special treatment, and none exists.

2.     The Motion must be denied.  *First*, the Motion does not meet the strict standard for reconsideration of a final order under rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), which would be required for any relief to be granted.  *Second*, it fails the "excusable neglect" standard of rule 9006(b)(1) of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     The Claimant's purported new evidence is not new.  He received a copy of his previously submitted KYC information from the FTX data privacy team (the "FTX Privacy Team") and argues that the FTX Recovery Trust's possession of his identification document demonstrates that he completed KYC.  The FTX Recovery Trust acknowledged, in its prior objection, that the Claimant submitted an identification document, but that such identification document was not "valid" for KYC purposes.  [D.I. 33575 ¶ 7].  The FTX Recovery Trust's records reflect that the identification submitted was a photocopy and, consistent with the FAQs on KYC submission and the KYC email reminders, "photos of document copies . . . are not acceptable."  The Claimant's retrieval of his prior submission does not constitute "newly discovered evidence" or satisfy Federal Rule 60(b)(2).

4.      The Claimant's renewed challenge to the KYC notices fares no better.  He contends that the notices were deficient because they did not identify a specific issue.  But he received multiple reminders over nearly two years, each noting that he had not "provided all requested information or documents," "[a]ll customers are requested to provide . . . a valid and unexpired ID," and "screenshots, photos of document copies, and images altered in photo redactors are not acceptable" and directing him to complete the KYC process through the FTX Customer Claims Portal (the "Customer Claims Portal").[3]  Despite this, he chose not to act and never contacted the FTX customer support team ("FTX Customer Support") to ask questions or resolve any confusion.  Moreover, had he returned to the Customer Claims Portal before the applicable deadline, he would have seen that his KYC status was still "Processing," and, by clicking "Begin KYC Process" on Step 3, would have been automatically prompted to upload a new identification document.  Instead, he waited until October 2025 to log back into the Customer Claims Portal— long after the relevant deadlines had passed.  Such inaction cannot be recast as "excusable neglect."

5.      Ultimately, the Motion is an obvious attempt to circumvent the finality of the Court's prior ruling by repackaging old facts and arguments as new ones.  Granting reconsideration on this basis would undermine the integrity of the claims process, invite repetitive challenges, and erode the finality that Federal Rule 60(b) is designed to protect.  The Motion should be denied.

## RELEVANT BACKGROUND

6.      None of the relevant facts are new.

---

[3]   [D.I. 33349, Ex. D-2–D-6].  Mr. Chen attached copies of the reminder emails sent from Sumsub, the FTX KYC vendor, in his Prior Motion that clearly identifies that he needs to provide all requested information.

7.      On June 28, 2023, this Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order").  The Customer Bar Date Order established September 29, 2023 as the deadline to file proofs of claim on account of Customer Claims[4] and ordered, among other things, that as part of the proof of claim submission process, the original holder of the Customer Claim shall submit KYC information as a prerequisite to the allowance of any such Claim.  (Customer Bar Date Order ¶¶ 3, 7).

8.      On September 23, 2023, the Claimant accepted his scheduled customer claim (the "Scheduled Customer Claim").  [D.I. 33349 ¶ 6].  That same day, the Claimant logged into the Customer Claims Portal and, from there, accessed FTX's vendor portal at "in.sumsub.com" ("Sumsub") to complete KYC.  He uploaded a proof of address and a selfie, and filled out his applicant information and questionnaire.  Critically, as the FTX Recovery Trust stated in its prior objection to the Claimant's motion, the Claimant failed to provide a valid identification document.  [D.I. 33575 ¶ 7].  Because the Claimant had not completed KYC, the Customer Claims Portal continued to display his KYC status as "Processing," and, had he clicked "Begin KYC Process" on Step 3, he would have been automatically prompted to upload a new identification document.

---

[4]   "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

9.      On November 11, 2024, the Debtors filed the *Debtors' One Hundred Thirtieth (Non-Substantive) Omnibus Objection to Unverified Customer Entitlement Claims* [D.I. 28225] (the "Omnibus Claims Objection") seeking to establish deadlines for customers to commence the KYC process and to submit all requested KYC information.

10.     The Court granted the Omnibus Claims Objection and, on February 3, 2025, entered the KYC Objection Order establishing (i) a March 1, 2025 deadline to commence[5] the KYC submission process and (ii) a June 1, 2025 deadline to "submit all KYC information requested by the Debtors or their KYC vendors." (KYC Objection Order ¶¶ 2–3).

11.     On April 2, 2025, the FTX Recovery Trust filed the *Notice of Expungement of Unverified Customer Entitlement Claims* [D.I. 30042] confirming over 390,000 claims that were expunged pursuant to the KYC Objection Order for failure to commence KYC by March 1, 2025. On July 2, 2025, the FTX Recovery Trust filed the *Notice of Expungement of Unverified Customer Entitlement Claims* [D.I. 31139] confirming over 47,600 claims that were expunged pursuant to the KYC Objection Order for failure to complete KYC by June 1, 2025. According to the FTX Recovery Trust's records, the Claimant did not attempt to log back into the Customer Claims Portal to complete the KYC submission process until October 20, 2025 and did not reach out to FTX Customer Support for assistance until October 22, 2025, more than five months after the June 1, 2025 deadline. Thus, the Claimant's Scheduled Customer Claim was expunged pursuant to the KYC Objection Order. [D.I. 31139-1].

12.     The Claimant filed the *Motion for Entry of an Order Authorizing Late Completion of Customer KYC* [D.I. 33349] (the "Prior Motion") on October 29, 2025—over five

---

[5]     The KYC Objection Order defined "commencing" the KYC submission process as logging into the Customer Claims Portal and beginning "Step 3 – Provide Know Your Customer (KYC) Information."

months after the June 1, 2025 KYC deadline.  In response, the FTX Recovery Trust filed the *Objection of the FTX Recovery Trust to Motion for Entry of an Order Authorizing Late Completion of Customer KYC* [D.I. 33575].  The Claimant subsequently filed a *Reply in Further Support of Motion for Late KYC Completion* [D.I. 33740].

13.     On November 24, 2025, after a full hearing on the Prior Motion, the Court denied the Claimant's requested relief (the "Bench Ruling").  *See In re FTX Trading Ltd., et al.*, No. 22-11068 (Bankr. D. Del. Nov. 24, 2025), Hr'g Tr. at 30:24–25, 31:1–2.

14.     On November 24, 2025, after the Court issued the Bench Ruling, the Claimant submitted a data subject access request to Sumsub.  On January 13, 2026, the Claimant contacted FTX Customer Support and the FTX Privacy Team again requesting all personal data associated with his KYC verification process, including any identification documents he had uploaded.  On January 14, 2026, the Claimant opened a customer support ticket requesting the same information.  On January 19, 2026 and February 2, 2026, the FTX Privacy Team responded by informing the Claimant of the "categories" of personal data held by the FTX Recovery Trust and provided the Claimant with a link to access the information that Mr. Chen himself previously uploaded.  Between February 4, 2026 and March 4, 2026, the Claimant sent three follow-up emails to FTX Customer Support and opened four additional support tickets requesting that the FTX Recovery Trust correct his failed KYC status, at times stating that he intended to file another motion if the issue was not resolved.  On March 27, 2026, the Claimant filed the Motion.

### OBJECTION

**I.     The Motion Fails to Satisfy the Reconsideration Standard and Identifies No Newly Discovered Evidence.**

15.     The Bench Ruling denying the Claimant's Prior Motion long ago became final and unappealable, so the Claimant's only pathway to revive his claim is a narrow one.  But

the Claimant again comes nowhere close to showing that either extraordinary circumstances or newly discovered evidence warrant any relief from the Bench Ruling pursuant to Federal Rule 60(b). Accordingly, the Motion must be denied.

16. The Bench Ruling was issued on November 24, 2025 and became final and unappealable pursuant to Bankruptcy Rule 8002(a) on December 8, 2025—109 days before he filed this current Motion. Because the Claimant's Motion asks the Court to reconsider its Bench Ruling, it can only be "reconsidered for cause." 11 U.S.C. § 502(j). "While the term 'cause' is not defined in Section 502(j), . . . to establish cause justifying reconsideration the movant must demonstrate at least one of the grounds set forth in Rule 59 or Rule 60(b) of the Federal Rules of Civil Procedure." *In re Nortel Networks, Inc.*, 2017 WL 3141906, at *1 (Bankr. D. Del. July 24, 2017) (cleaned up). Thus, "[a] party seeking reconsideration in bankruptcy court must file a motion to alter or amend judgment under Fed. R. Bankr. [P.] 9023 or a motion for relief from judgment under Fed. R. Bankr. P. 9024." *In re Energy Future Holdings Corp.*, 575 B.R. 616, 627 (Bankr. D. Del. 2017). But any motion pursuant to Bankruptcy Rule 9023(b) would be untimely. *See* Fed. R. Bankr. P. 9023(b) ("A motion . . . to alter or amend a judgment must be filed within 14 days after the judgment is entered."). Thus, the Claimant may only seek relief on the bases listed in Federal Rule 60(b). *See In re Nortel Networks, Inc.*, 2017 WL 3141906, at *1.

17. Federal Rule 60(b), made applicable by Bankruptcy Rule 9024, provides limited bases to seek relief from a final order of this Court, none of which are applicable: (i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Federal Rule 59(b); (iii) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (iv) the judgment is void; (v) the judgment has been satisfied,

released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (vi) any other reason that justifies relief. Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. Furthermore, "when a court is considering its own judgment, extraordinary circumstances must be present to justify the use of Rule 60(b) to vacate the judgment." *In re Energy Future Holdings Corp.*, 575 B.R. at 630 (internal quotation marks omitted); *Boughner* v. *Secretary of Health, Ed. and Welfare, U.S.*, 572 F.2d 976, 977 (3d Cir. 1978); *see also In re Vision Metals, Inc.*, 311 B.R. 692, 698 (Bankr. D. Del. 2004) ("[r]elief is appropriate under Rule 60(b) only upon a showing of exceptional circumstances and where, absent such relief, an extreme and unexpected hardship will result."). Thus, relief pursuant to Federal Rule 60(b) "should be granted sparingly." *Jester* v. *State of Delaware Dep't of Safety*, 2016 WL 4497055, at *1 (D. Del. Aug. 26, 2016) (cleaned up).

18.     Against this demanding standard, the Claimant's arguments rest solely on the "newly discovered evidence" prong of Federal Rule 60(b)(2). (Mot. ¶ 9). To succeed on a Federal Rule 60(b)(2) motion, the Claimant must show that the "newly discovered evidence" is: "(1) material and not merely cumulative; (2) could not have been discovered prior to trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial." *Bohus* v. *Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (emphasis in original) (citing *Stridiron* v. *Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)); *see also Singleton* v. *Beadle*, 839 F. App'x 671, 674 (3d Cir. 2021); *In re Vascular Access Centers, L.P.*, 645 B.R. 804, 828 (Bankr. E.D. Pa. 2022).

19.     The Claimant offers no newly discovered evidence. His cited "newly discovered evidence" fails all three prongs of the *Bohus* test. *First*, the proffered "evidence" is neither material nor new, but instead cumulative of facts previously before the Court. In its objection to the Claimant's Prior Motion, the FTX Recovery Trust expressly acknowledged that

the Claimant "failed to provide a valid identification document." [D.I. 33575 ¶ 7].  Nowhere does the FTX Recovery Trust suggest that the Claimant did not submit an identification document at all as the Motion implies.  (*See* Mot. ¶ 2).  At the same time, the Claimant relies on the absence of any such statement that he failed to submit an identification document as evidence that he completed KYC.  (*See* Mot. ¶ 18).  Contrary to the Claimant's assertions, the FTX Privacy Team merely provided the Claimant with copies of the KYC information the Claimant previously submitted, but that does not alter or validate the Claimant's KYC status.  Nothing has changed— the Claimant commenced his KYC process but failed to provide all of the requested KYC information by the deadline imposed by the KYC Objection Order.  The entire basis for the Motion, therefore, is immaterial and was known to the Court at the time the Prior Motion was litigated and the Bench Ruling issued, and thus cannot support relief under Federal Rule 60(b)(2).

20.     *Second*, the Claimant is wrong to assert that the new "evidence" relied upon "was obtained January–February 2026 and could not have been discovered earlier" (Mot. ¶ 10), and therefore fails to satisfy the second *Bohus* requirement.  His "evidence" is self-generated communications from the FTX Privacy Team, in response to the Claimant's questions, stating that the FTX Recovery Trust holds certain identification information, including a photocopy of an identification document.  (Mot., Ex. I).  However, this cannot be considered new evidence, as the Claimant himself uploaded the invalid identification document on September 23, 2023.  (*See supra* ¶ 8).  His earlier filings and remarks at the November 2025 hearing suggest that he may have forgotten what he submitted on September 23, 2023.  *See* [D.I. 33740 at 3] ("I do not recall every screen or every click from nearly two years ago."); *see also In re FTX Trading Ltd.*, *et al.*, No. 22-11068 (Bankr. D. Del. Nov. 24, 2025), Hr'g Tr. at 28:22–25, 29:1–2.  However, forgetting and then rediscovering relevant evidence does not render the evidence "newly discovered" under

Federal Rule 60(b)(2).  Rather, forgetting—and failing to inquire about the status of his KYC submission until long after the deadline passed—indicates a lack of diligence.  *See United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006) ("[t]he test to determine whether evidence is 'newly discovered' is both objective and subjective:  Evidence is not 'newly discovered' if it was [actually] known or **could have been known by the diligence of the defendant** or his counsel." (internal citations omitted) (emphasis added)); *In re Lampman*, 494 B.R. 218, 224 (Bankr. M.D. Pa. 2013) (declining to consider information previously known to the moving party as "newly discovered evidence" under Federal Rule 60(b)).  Here, both are true.

21.     *Third*, the "evidence" presented in the Motion would not have changed the outcome at the November 2025 hearing.  The FTX Recovery Trust noted in its objection to the Prior Motion that the Claimant had not submitted an acceptable identification document.  Each of the reminder emails that the Claimant received were clear that the Claimant had not "provided all requested information or documents," "[a]ll customers are requested to provide . . . a valid and unexpired ID," and "screenshots, photos of document copies, and images altered in photo redactors are not acceptable."  [D.I. 33349, Ex. D-2–D-6].  The same information was set forth in FTX's published KYC FAQs[6] and the Claimant would have been advised the same had he reached out to FTX customer support or logged into the Customer Claims Portal.  With this information in the record, the Court denied the extraordinary relief the Claimant sought.  The fact that the unacceptable identification document was in fact a photocopy changes nothing.  The Motion therefore also fails the third *Bohus* prong and is not entitled to relief under Federal Rule 60(b)(2).

## II.     The Claimant's Arguments Regarding the KYC Notices Do Not Constitute

---

[6]     https://support.ftx.com/hc/en-us/articles/17964384447124-KYC-Guidelines-for-Individual-Customers.

**"Excusable Neglect" Under Bankruptcy Rule 9006(b)(1).**

22.    The Claimant asserts in his Motion that he received "no KYC failure notification." (Mot. at 5).  At the outset, this issue was litigated months ago, and the Claimant has presented no new evidence that the KYC notices sent to him were deficient.  Instead, the Motion improperly seeks to relitigate a previously contested issue.  *See In re G-I Holdings, Inc.*, 472 B.R. 263, 279 (Bankr. D.N.J. 2012) ("Rule 60(b) motions cannot serve as an appeal or relitigation of previously contested issues.").  As the FTX Recovery Trust explained in its prior objection and at the November 2025 hearing, the Claimant received fourteen reminders from Sumsub and FTX Customer Support and had nearly two years to complete the KYC process, yet did not engage with FTX Customer Support until October 2025.  *See In re FTX Trading Ltd.*, *et al.*, No. 22-11068 (Bankr. D. Del. Nov. 24, 2025), Hr'g Tr. at 27:5–8; [D.I. 33575 ¶ 3–4].  Indeed, the Claimant attached five of the notices he received to the Prior Motion.  [D.I. 33349 at 3, 11, Exs. D-2–D-6].  These notices demonstrate that the FTX Recovery Trust clearly advised him that "[i]n order to complete the KYC process, you will need to upload all requested documents as indicated on the KYC section of the customer claims portal."  [D.I. 33349, Ex. D-2].

23.    The Claimant contends that none of the notices "identified a specific deficiency." (Mot., Ex. Q).  However, each of the reminder emails that the Claimant received from Sumsub stated that the Claimant had not "provided all requested information or documents," "[a]ll customers are requested to provide . . . a valid and unexpired ID," and "screenshots, photos of document copies, and images altered in photo redactors are not acceptable."  [D.I. 33349, Ex. D-2–D-6].  Furthermore, even assuming, *arguendo*, that the notices lacked sufficient specificity, the Claimant could, and should, have contacted FTX Customer Support prior to the June 1, 2025 deadline to determine what information remained outstanding.  He also could have returned to the Customer Claims Portal, where he would have seen that his KYC status was still "Processing,"

and, upon hitting "Begin KYC Process" on Step 3, would have been automatically prompted to upload the missing identification document.  The Claimant previously asserted that he declined to act on the KYC emails due to concerns about phishing [D.I. 33349 at 3–4, 11–12], but the Court found it was not "reasonable" for him to fail to contact FTX Customer Support to verify whether those emails were genuine.  *See In re FTX Trading Ltd.*, *et al.*, No. 22-11068 (Bankr. D. Del. Nov. 24, 2025), Hr'g Tr. at 30:14–18.  That same reasoning continues to apply.  It is not "reasonable" to receive repeated notices regarding incomplete KYC and not contact FTX Customer Support or otherwise take action.  The Claimant only reached out to inquire about his submitted KYC materials long after the June 2025 deadline had passed and after his Prior Motion had been denied.

24.     Although the Claimant asserts that this Motion does not seek to relitigate "excusable neglect" (Mot. at 3), his arguments regarding allegedly deficient KYC notices can only be analyzed under that standard.  Bankruptcy Rule 9006(b)(1) permits enlargement of a deadline where "the failure to act . . . resulted from excusable neglect."  "The burden of proving excusable neglect lies with the late-claimant."  *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).  Courts consider four factors in determining excusable neglect: (i) the danger of prejudice to the estate; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.  *See Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022).  Courts take a "hard line" when applying these and place great emphasis on the "reason" for the delay.  *In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020) (quoting *In re Nortel Networks, Inc.*, 573 B.R. 522, 527 (Bankr. D. Del. 2017)).  Here, as before, each of the *Pioneer* factors weighs against a finding of excusable neglect.

25.     The prejudice to the FTX Recovery Trust and the estate is clear and significant.  The Court agreed at the November 2025 hearing that allowing the Claimant to reopen KYC would undermine the KYC Objection Order and open the floodgates to copycat arguments. As this Court stated, "the idea" that the Claimant previously "put forward is a more generalized argument that could be applicable to almost every creditor that is supplement to [the KYC Objection Order]. . . . The concerns here are generalized to all claimants and would give rise to . . . a reconsideration of the order for every creditor that is a subject of that order." *In re FTX Trading Ltd.*, *et al.*, No. 22-11068 (Bankr. D. Del. Nov. 24, 2025), Hr'g Tr. at 29:20–22, 30:9–12.

26.     Now, long after the November 2025 Bench Ruling, the Claimant again seeks to subvert the long-passed objection deadline and asks the Court to reconsider both its Bench Ruling and its KYC Objection Order.  Granting the Claimant an extension to complete KYC at this stage would create a clear pathway for similarly situated claimants, particularly those who (i) submitted deficient identification documents or (ii) contend that the KYC notices were insufficient, to seek comparable relief.  In effect, this would reopen the KYC process for a broad set of claimants.  The purpose of the KYC process was to bring resolution and uniformity to customer claim allowance.  Granting an exception to the Claimant on this record would unravel that process, compromise administrative efficiency, and disadvantage the thousands of compliant creditors who completed the required procedures on time.

27.     In addition, the Claimant's delay in taking action—now over thirteen months after the KYC deadline—is both substantial and disruptive.  The Court and the FTX Recovery Trust have devoted significant resources to claims reconciliation and ensuring equitable treatment across hundreds of thousands of customers.  At this stage, revisiting an individual claimant's KYC status would create unnecessary administrative burden and uncertainty.  As a

result, the Claimant's lengthy delay weighs against a finding of excusable neglect.  *See In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 616 (Bankr. D. Del. 2006); *see also In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) (the "length of delay in filing the Proof of Claim here is substantial, that is, it was filed more than six months after Bar Date."); *In re XO Communications Inc.*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003) (finding that a delay of nearly four months weighed against permitting a late proof of claim).

28.     Furthermore, the reason for the Claimant's delay likewise fails to justify relief.  The Claimant admits that he received multiple official FTX KYC emails between 2023 and 2025.  Moreover, his KYC status remained marked as "Processing" in the Customer Claims Portal. The Claimant's professed ignorance of these bankruptcy proceedings, failure to reach out to FTX Customer Support and forgetfulness regarding what he submitted as his KYC materials do not constitute excusable neglect—as the Court previously concluded.  *See In re W.R. Grace & Co.*, 563 B.R. 150, 159 (Bankr. D. Del. 2016) ("[I]gnorance of one's own claim does not constitute excusable neglect."); *see also In re Insys Therapeutics, Inc.*, 2022 WL 5265033, at *3 (Bankr. D. Del. Oct. 6, 2022) ("Simply put, a litigant's protracted and unjustified carelessness alone does not constitute excusable neglect." (internal quotation marks omitted)).

29.     Finally, the Claimant's forgetfulness as to the materials he uploaded to the Customer Claims Portal reflects a lack of diligence, not excusable neglect.  In any event, the Claimant again fails to justify his failure to make any inquiry or seek clarification as to the documents that the FTX Recovery Trust had on file or what else was required until January 2026. (*See* Mot., Exs. I–J).  Good faith demands reasonable efforts to comply with Court-ordered procedures.  Tens of thousands of other customers who received similar outreach and reminders

did comply.   The Claimant's continual inaction, after years of notice and opportunity, falls well short of the excusable neglect standard.   Accordingly, the Motion should be denied.

## CONCLUSION

30.     For the foregoing reasons, the FTX Recovery Trust respectfully requests that the Court deny the Motion.

Dated: July 16, 2026
    Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:    landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:    dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*