**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  July 23, 2026 at 9:30 a.m. (ET)**<br>**Obj. Deadline: July 16, 2026 at 4:00 p.m. (ET)** |
| | **Ref Nos. 35243, 35411, 35558, 35768 & 35827** |

**OBJECTION OF FTX RECOVERY TRUST TO MOTION**
**OF SETH MELAMED FOR RECONSIDERATION OF THE**
**JUNE 2, 2026 ORDER [D.I. 35768] PURSUANT TO 11 U.S.C. § 502(j)**
**AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 3008, 9023, AND 9024**

The FTX Recovery Trust (the "Trust")[2] hereby submits this objection to the *Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order [D.I. 35768] Pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3008, 9023, and 9024* [D.I. 35827] (the "Motion" or "Mot.").  In support of this objection, the Trust submits the contemporaneously filed *Declaration of Brian D. Glueckstein in Support of Objection of FTX Recovery Trust to Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order*,[3] and respectfully states as follows:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Trust's *Motion to Enforce Prior Orders That Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35243] (the "Motion to Enforce") and the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

[3]   Citations to "Ex._" refer to exhibits to the accompanying *Declaration of Brian D. Glueckstein in Support of Objection of FTX Recovery Trust to Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order*.

**PRELIMINARY STATEMENT AND RELEVANT BACKGROUND**

1.     There is no basis for this Court to reconsider anything with respect to its June 2 Order concerning Seth Melamed's claims.  The Motion is another meritless attempt by Melamed to evade the consequences of this Court's prior rulings.  In July 2025, this Court issued a series of rulings (the "Threshold Rulings") that sharply cabined Melamed's largest claim against the estate, Claim No. 3385 (the "SPA Claim").  First, the Court held that any recovery on the unpaid cryptocurrency portion of Melamed's SPA consideration (the "Crypto Consideration") must be valued under the Plan and Estimation Order.  (July 22, 2025 Tr., Ex. 2 at 125:16-20.)  Second, the Court held that "the remainder of the SPA [C]laim[]"—the portion relating to the FTX shares Melamed received as SPA consideration (the "FTX Consideration Shares")—must be subordinated under section 510(b), "includ[ing] any related indemnification claim."  (*Id*. 118:21-22, 127:6-9, 129:4-6.)   The only narrow issue the Court left open in connection with its subordination ruling was whether any indemnification claim "arising from the unpaid crypto consideration" (the "Crypto Indemnity") would be subordinated, reserving judgment until any "such claim is clearly defined."  (*Id*. 129:7-11.)  The Court then referred the merits of the SPA Claim to arbitration, with any resulting award subject to this Court's claims allowance process.  (*Id*. 125:11-15.)

2.     But Melamed did not seek to arbitrate the claims preserved in his SPA Claim and referred by this Court to arbitration.  Instead, after the Threshold Rulings capped any Crypto Consideration recovery and subordinated any recovery in respect of the FTX Consideration Shares, he filed a Notice of Arbitration ("NoA," Ex. 3), asserting brand new claims that he expressly characterized as "legally distinct" from those in the SPA Claim.  (NoA ¶ 38(c).)  He did so for the express purpose of circumventing the Threshold Rulings.  (NoA ¶¶ 29-30.)  These new claims rely on generalized allegations concerning the broader FTX fraud—namely, that FTX's

"misrepresentations" about "the legitimacy of its business practices" and its "segregation, custody, and reconciliation of customer assets," "risk management," and "secret preferential treatment" of Alameda induced Melamed to (1) allow FTX to hold the Crypto Consideration until it became due and (2) accept approximately $9 million in cash as 20% of his SPA consideration. (NoA ¶¶ 14(a), 17.)   The Trust therefore filed the Motion to Enforce [D.I. 35243] seeking to enforce the Plan's injunction provision (§ 10.8), as well as other prior orders of the Court, on the grounds that Melamed's arbitration claims were both unpreserved and independently barred by the Plan's Global Settlement provision (§ 5.2), which conclusively resolves and releases claims against the estate premised on the larger FTX group fraud.

3.      The Court heard oral argument on the Motion to Enforce on May 14, 2026. At that hearing, Melamed's counsel asserted for the first time that *all* of the claims asserted in the Notice of Arbitration fit within the "Crypto Indemnity" portion of the SPA Claim—*i.e.*, the admittedly "narrow" portion of the SPA Claim for which the Court had previously reserved judgment as to its subordination status.  (May 14, 2026 Tr., Ex. 5 at 33:11-16, 35:11-12, 65:17-66:1.)   In attempting to distinguish the purported indemnity claim from one based in fraud, however, counsel ultimately acknowledged that the claim is nonetheless predicated on the generalized allegations of fraud in the Notice of Arbitration, and was unable to explain why such claims were not barred by the Plan's Global Settlement provision.  (*Id.* 43:14-47:24 (conceding that the Trust's counsel "is the expert on this").)  Counsel also withdrew his arguments relating to the applicability of the Plan's injunction provision, telling the Court that he "frankly" was "not seeking to get a ruling on 10.8." (*Id.* 50:23-24.)

4.      By order dated June 2, 2026 (the "June 2 Order"), the Court granted the Motion to Enforce, correctly concluding that "Melamed is enjoined from pursuing the claims

described in his November 12, 2025 Notice of Arbitration" because those claims are barred by the Plan's Global Settlement provision, and therefore permanently enjoined under the Plan injunction. (June 2 Order ¶ 2.)  That ruling was dispositive.  The Court therefore found it "unnecessary" to decide the Trust's alternative argument that the arbitration claims were also barred because they were unpreserved in Melamed's SPA Claim.  (*Id*. ¶ 2 n.2.)  But that argument provides a separate and independent basis to enforce the Plan injunction.

5.      The June 2 Order for a second time should have provided the necessary clarity to resolve this matter.  But Melamed remains unwilling to accept this Court's rulings. Following the June 2 Order, Melamed refused to withdraw his Notice of Arbitration.  When the Trust asked the Singapore International Arbitration Centre (the "SIAC") tribunal to dismiss the enjoined arbitration claims, Melamed informed SIAC that he "contests" the Trust's request "in its entirety." (Exs. 8, 9.)  Rather than opposing dismissal on the merits, however, Melamed asked the tribunal to stay the effect of the June 2 Order by holding the arbitration "in abeyance" pending reconsideration and appeal of the Order (Ex. 6)—relief that only this Court (or, in limited circumstances, the District Court) may grant.  He also continued to pursue his challenge to the Trust's appointed arbitrator, and ultimately requested a stay of the proceedings directly from SIAC until that challenge is resolved.  (Ex. 8.)  Over the Trust's objection, SIAC granted that request, and the arbitration proceedings are now stayed pending Melamed's arbitrator challenge.  (*Id*.) Whether the tribunal will thereafter hold the arbitration in abeyance pending reconsideration and appeal of the June 2 Order therefore remains unresolved.

6.      On June 16, 2026, Melamed improperly filed a notice of appeal from the June 2 Order without first seeking leave of this Court [D.I. 35825], despite the interlocutory nature of the June 2 Order.  Also on June 16, 2026, Melamed filed the instant Motion despite purporting

to divest this Court of jurisdiction with an appeal, asserting that reconsideration of the June 2 Order is necessary to correct a clear error of law and prevent a manifest injustice. (Mot. ¶ 26.) The Motion is meritless and, together with Melamed's conduct in arbitration and in discovery of his related claims pending before this Court,[4] reflects a continuing pattern of attempts to evade this Court's prior orders.

7.      As an initial matter, the Motion does not present a proper procedural vehicle for reconsideration. Melamed principally relies on section 502(j) of the Bankruptcy Code and Rule 3008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), but those provisions apply only to a court's reconsideration of an order allowing or disallowing a claim. The June 2 Order does neither. Rather, it only enjoins Melamed from pursuing his *arbitration claims*, and expressly does not reach the question of whether those claims were preserved in the SPA Claim such that any portion of the SPA Claim is disallowed. (June 2 Order ¶ 2 n.2.) Nor do Bankruptcy Rules 9023 and 9024 provide a basis for reconsideration because they apply only to final orders, whereas the June 2 Order is interlocutory because it adjudicates fewer than all disputes between Melamed and the Trust.

---

[4]   While Melamed simultaneously presses forward with his affirmative litigation of the SPA Claim—including pursuing arbitration, reconsideration, and appeal—his counsel has failed to respond to the Trust's inquiries regarding discovery on his remaining claims, and the Trust still has no meaningful information regarding the scope or status of Melamed's document collection and review, or whether he is engaging in any such efforts at all. This conduct further underscores Melamed's disregard for this Court's rulings. Although the Court denied Melamed's request to stay litigation of his remaining claims pending arbitration of the SPA Claim nearly a year ago ([D.I. 32058] ¶ 3), Melamed has effectively self-imposed that stay by refusing to participate in discovery on those claims, forcing the Trust to seek multiple extensions of the case management order. *See also Order Sustaining in Part Debtors' Claims Objection* [D.I. 32057] ¶ 1 (directing parties to "confer on a schedule governing litigation of the remaining issues pending before the Court"); Nov. 24, 2025 Tr., Ex. 4 at 42:8-9 ("[W]e all agreed on how this was going to move forward and that hasn't been done.").)

8.      Those issues notwithstanding, even if the Court were to exercise its discretion to revisit the June 2 Order, Melamed does not satisfy the demanding standard for reconsideration because he identifies neither a clear error of law nor a manifest injustice.

9.      *First*, Melamed argues that the June 2 Order is "impossible to square" with the Court's Threshold Rulings because those rulings purportedly treat his SPA Claim "as a live claim," whereas the June 2 Order purportedly enjoins those same claims. (Mot. ¶¶ 32-33.)  That supposed conflict is illusory and depends on Melamed's rewriting of both decisions.  The Threshold Rulings did not allow the SPA Claim, adjudicate its merits, or immunize any portion of it from later challenge.  The Threshold Rulings established only how the SPA Claim would be treated if Melamed succeeded in liquidating it:  any recovery in respect of the Crypto Consideration would be valued under the Plan and Estimation Order, and any recovery in respect of the FTX Consideration Shares would be subordinated.  The June 2 Order, by contrast, addressed a different question—whether the claims Melamed actually asserted in arbitration are barred by the confirmed Plan. It did not hold that any portion of the SPA Claim was settled or released.  There is no conflict.

10.     The purported conflict also depends on yet another tactical shift in Melamed's characterization of his own claims.  At oral argument, Melamed represented that his arbitration claims were preserved solely through the "narrow" Crypto Indemnity portion of the SPA Claim—the portion as to which the Court reserved judgment in its subordination ruling. (May 14, 2026 Tr., Ex. 5 at 33:11-16, 35:11-12, 65:17-66:1.)  Now, he contends that those same claims were already allowed and subordinated as part of the SPA Claim.  (Mot. ¶¶ 24, 34.)  Both cannot be true, and the only irreconcilable conflict identified in the Motion is between Melamed's current characterization of his claims and those that he previously advanced.  Of course there is

nothing in the record to suggest that any of Melamed's claims have been allowed because they have not been.

11.     *Second*, Melamed's arguments that his arbitration claims were not released under the Plan's Global Settlement provision do not provide a proper basis for reconsideration because they merely repackage the same arguments he made in opposing the Motion to Enforce, which were discussed at length at oral argument and ultimately rejected by the Court.  They also still fail on the merits.  The Plan's Global Settlement provision applies to "*all* Claims, Interests and Causes of Action *against*, by or among the Debtors" arising from the FTX fraud (§ 5.2) (emphasis added), and Melamed's counsel acknowledged at oral argument that the arbitration claims are predicated on that fraud.  (May 14, 2026 Tr., Ex. 5 at 43:14-46:6.)  Melamed had the opportunity to object to the Global Settlement provision during Plan confirmation proceedings, in which he actively participated, but did not do so.  As a result, he may not now collaterally attack the terms of the confirmed Plan.

12.     *Third*, Melamed's arguments concerning the Plan injunction are likewise improper because they merely repackage arguments previously raised and rejected by the Court, ignore the unambiguous language of the Plan, and amount to an impermissible collateral attack on the confirmed Plan.  More fundamentally, Melamed's counsel told the Court at oral argument that he was "not seeking to get a ruling on 10.8." (May 14, 2026 Tr., Ex. 5 at 50:24.)  Having expressly waived those arguments, he cannot now contend that the Court "overlooked" them.  (Mot. ¶ 38.)  But even if those arguments had not been waived, they fail on the merits because section 10.8 is an independent injunction provision whose language is expansive, not limiting, does not depend on section 524 of the Bankruptcy Code, and is wholly unrelated to Melamed's opt-out of the Plan's voluntary third-party release.

13.     *Finally*, the equities weigh heavily against reconsideration given Melamed's continuing pattern of gamesmanship, as reflected in his assertion of "legally distinct" arbitration claims designed to circumvent this Court's Threshold Rulings, his repeated recharacterization of his claims to suit his changing litigation objectives, his continued pursuit of the arbitration claims even after the June 2 Order enjoined him from doing so, and his ongoing efforts to obtain relief in arbitration that properly should have been sought from this Court.  The Court should deny the Motion in its entirety.

## ARGUMENT

### I.     The Statutes and Rules Melamed Invokes Do Not Authorize Reconsideration.

14.     Melamed seeks reconsideration pursuant to section 502(j) of the Bankruptcy Code and Bankruptcy Rules 3008, 9023, and 9024.  (Mot. ¶ 22.)  None of those provisions authorizes reconsideration of the June 2 Order.

15.     The Motion first asserts that section 502(j) of the Bankruptcy Code is the "appropriate vehicle" for reconsideration of the June 2 Order.  (Mot. ¶ 24.)  Section 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause."  Rule 3008 similarly provides that a party "may move to reconsider an order allowing or disallowing a claim."  But those provisions are "inapposite" here because the June 2 Order "neither allowed nor disallowed any claim."  *In re Enron Corp.*, 2003 WL 1562202, at *11 (Bankr. S.D.N.Y. Mar. 21, 2003).  Melamed asserts that section 502(j) is applicable because the June 2 Order "functionally adjudicated the allowance status of the SPA Claim, holding that its underlying causes of action were settled and released and barring their liquidation."  (Mot. ¶ 24.)  That argument fails.  The June 2 Order only enjoins Melamed from pursuing the asserted ***arbitration claims***, but expressly does not reach the question of whether any such claims were preserved in the SPA Claim filed in these chapter 11 cases.  (June 2 Order ¶ 2 n.2.)

16. The Motion alternatively seeks reconsideration pursuant to Bankruptcy Rules 9023 and 9024, which incorporate Federal Rules of Civil Procedure (the "Rules") 59 and 60, respectively. Those provisions are likewise inapposite because neither Bankruptcy Rule 9023 nor 9024 applies to interlocutory rulings. *See In re Conex Holdings, LLC*, 524 B.R. 55, 58 n.4 (Bankr. D. Del. 2015) (Rule 9023 "does not apply to motions for reconsideration of interlocutory orders," which merely seek to "invok[e] the . . . court's general discretionary authority to review and revise interlocutory rulings" (citations omitted)); *In re Enron Corp.*, 2003 WL 1562202, at *12 (denying motions for reconsideration pursuant to Rule 9024 because "Rule 60(b) does not govern relief from interlocutory orders"). The June 2 Order is interlocutory because it "adjudicates less than all related disputes between a creditor and the estate." *In re Flintkote Co.*, 471 B.R. 95, 101-02 (D. Del. 2012).[5] Indeed, even if the June 2 Order had determined that Melamed's arbitration claims were preserved in the SPA Claim and expressly disallowed them (which it did not), it still would have adjudicated only a portion of the SPA Claim, leaving other components unresolved. Thus, the June 2 Order is in all circumstances interlocutory. *See In re Isaac*, 1990 WL 68875, at *2 (E.D. Pa. May 21, 1990) (bankruptcy court order that claim was contingent and unliquidated was interlocutory because it did not expunge claim or conclusively determine its amount).

## II. Melamed Cannot Satisfy the High Standard for Reconsideration.

17. Although none of the Motion's predicates is applicable, should the Court decide to exercise its discretion to revisit its June 2 Order, the Rule 59(e) standard for altering or amending a judgment applies. *See In re Conex Holdings, LLC*, 524 B.R. at 58 & n.4 (applying

---

[5] For the same reason, Melamed's appeal is improper, as he has not sought leave of this Court before noticing an appeal of the interlocutory June 2 Order. *See* Bankruptcy Rule 8004.

Rule 59(e) standard to motion for reconsideration of interlocutory bankruptcy order).  Delaware courts have observed that the policy underlying this standard—that litigants who "have once battled for the court's decision[] should neither be required, nor without good reason permitted, to battle for it again"—"is especially true in the bankruptcy context where the very nature of the practice involves the routine entry of interlocutory orders." *Calyon New York Branch* v. *Am. Home Mortg. Corp.*, 383 B.R. 585, 589 (Bankr. D. Del. 2008) (citation omitted).  Such motions should be "granted sparingly" and "should not be used to reargue the facts or applicable law." *In re New Century TRS Holdings, Inc.*, 502 B.R. 416, 420-21 (Bankr. D. Del. 2013) (citation omitted).

18.    The Motion wrongly asserts that a more "flexible standard[]" should apply under section 502(j) and Rule 3008, "rather than the stricter standards applicable to a motion to alter or amend a judgment." (Mot. ¶ 23.)  But even if section 502(j) was an available avenue for reconsideration of the June 2 Order (which it is not), Melamed is wrong that the standard would be less stringent.  In assessing section 502(j) motions for reconsideration, courts first determine whether "cause" for reconsideration exists, which in turn requires a showing of "at least one of the grounds set forth in Rule 59 or Rule 60(b)." *In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 661 (D. Del. 2007), *aff'd*, 248 F. App'x 475 (3d Cir. 2007); *see also In re Nortel Networks Inc.*, 2017 WL 3141906, at *1 (Bankr. D. Del. July 24, 2017) (same).  Thus, whether the Motion is analyzed under the standard applicable to motions under section 502(j) or Rule 59(e),[6] reconsideration is warranted only upon "(1) an intervening change in controlling law; (2) the

---

[6]    This objection does not directly address Rule 60 because it is not applicable to interlocutory rulings and in any event is not addressed in the Motion. *See In re Grigg*, 2013 WL 5310207, at *8 (Bankr. W.D. Pa. Sep. 20, 2013) (movant's failure to "specifically identify the basis of his motion[]," including "the subsection [of Rule 60] on which he relies," "is itself a sufficient reason to deny his motion[]").

availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re New Century TRS Holdings, Inc.*, 502 B.R. at 420-21 (citation omitted).

19.     Melamed's Motion invokes only the third ground for reconsideration, which presents "a very high hurdle to leap over." *In re Titus*, 479 B.R. 362, 367 (Bankr. W.D. Pa. 2012). "[C]lear error of law or fact requires an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Id.* at 368 (citation omitted). "[M]anifest injustice" likewise requires an error "that is direct, obvious, and observable." *Id.* at 367 (citation omitted). "A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable" and the record is "so patently unfair and tainted that the error is manifestly clear to all who view it." *Id.* at 367-68 (citation omitted). Neither standard is satisfied by a motion that merely "takes issue with the Court's findings" after the movant already litigated, or had a full and fair opportunity to litigate, those same issues. *In re Grigg*, 2013 WL 5310207, at *3, *7-8. That is precisely what Melamed is doing here.

### A.     The June 2 Order Does Not Conflict with the Court's Threshold Rulings.

20.     The Motion contends that the June 2 Order and the Court's Threshold Rulings "are directly in conflict" and "cannot be reconciled" because, according to Melamed, "[t]he June 2nd Order holds that the SPA Claim's causes of action were 'settled, resolved, and [] enjoined' under Section 5.2" of the Plan, whereas the Court's Threshold Rulings purportedly "treated those same causes of action as existing." (Mot. ¶¶ 3, 33.) That argument rests on fundamental mischaracterizations of both rulings and identifies no error—much less the clear error or manifest injustice required for reconsideration.

21.     *First*, Melamed once again mischaracterizes the June 2 Order, which does not "hold[] that the SPA Claim's causes of action were 'settled, resolved, and enjoined'" under the

Plan's Global Settlement provision.  (Mot. ¶ 33.)  Rather, the Court held only that those claims Melamed sought to assert *in arbitration* were "settled, resolved, and enjoined."  (June 2 Order ¶ 2.) Having reached that conclusion, the Court expressly declined to determine whether those arbitration claims were preserved in the SPA Claim at all because that issue was unnecessary to its ruling.  (June 2 Order n.2.)  Because the Court never determined that the arbitration claims were the same claims addressed in the Threshold Rulings, there is no conflict between the two orders.

22.     *Second*, Melamed's purported "conflict" argument also rests on a fundamental mischaracterization of the Threshold Rulings.  Contrary to Melamed's framing, the Threshold Rulings did not liquidate, allow, validate, or otherwise treat any portion of the SPA Claim "as existing."  (Mot. ¶ 33.)  Rather, the Threshold Rulings were just that: *threshold* rulings. They dictate how the SPA Claim would be treated if it were proven and successfully liquidated, but do not preclude the possibility that the claim is determined to be invalid and does not survive at all.  Melamed has always understood that.  Indeed, he even argued that the Threshold Rulings were merely "advisory" for that reason.  (*Reply in Support of Melamed's Cross-Motion to Compel Arbitration* [D.I. 30900] ¶ 41 n.8 ("Without the liquidation of the claim, a ruling on the section 510(b) issue would appear to be advisory."); May 14, 2025 Tr., Ex. 1 at 10:11-22 (same).)

23.     *Third*, Melamed's "conflict" argument also depends on yet another recharacterization of his claims.  In his Notice of Arbitration, Melamed repeatedly asserted that his arbitration claims are "legally distinct" from the subordinated claims in the SPA Claim and therefore not subject to this Court's subordination ruling.  (NoA ¶¶ 28-30; 38(c).)  At oral argument on the Motion to Enforce, Melamed's counsel likewise told the Court that the arbitration claims belonged exclusively in the "Crypto Indemnity" bucket—the narrow portion of the SPA Claim as to which the Court had reserved judgment—because otherwise they would be subordinated under

the Court's Threshold Rulings.  (May 14, 2026 Tr., Ex. 5 at 33:11-16 ("[W]e are trying to put [the arbitration claims] in the tranche of being in the crypto consideration indemnification part because, if it's in the other part of the transaction, it's going to be subordinated . . . per Your Honor's July 31st ruling.").)  If that representation was correct, then the June 2 Order could not possibly conflict with the Threshold Rulings because the Court expressly reserved judgment as to the subordination of any such claim until it was "clearly defined."  (July 22, 2025 Tr., Ex. 2, 129:7-11.)  Yet now, in an effort to manufacture a conflict, Melamed takes the opposite position:  that those same arbitration claims were "already allowed, in subordinated form, under Section 510(b)" and that the June 2 Order therefore "retroactively void[s]" the Court's threshold subordination ruling.  (Mot. ¶¶ 24, 34.)  Both cannot be true.  Having repeatedly insisted that his arbitration claims fall outside the subordinated portion of the SPA Claim, Melamed cannot now argue that the June 2 Order, which applies only to those arbitration claims, conflicts with the Court's Threshold Rulings.

24.  *Finally*, in entering the June 2 Order, the Court was well aware of its Threshold Rulings, which were the subject of extensive briefing and argument in connection with the Motion to Enforce.  (*See, e.g.*, Motion to Enforce ¶¶ 5-8, 27, 36-37; Motion to Enforce Obj. [D.I. 35411] ¶¶ 6, 11, 29-31, 36, 39; May 14, 2026 Tr., Ex. 5 at 22:15-20, 24:9-16, 25:18-26:13, 33:11-16.)  There is therefore no basis to suggest that the Court overlooked its prior rulings.

25.  Nor did Melamed previously argue that enforcing the Plan's Global Settlement provision would conflict with those Threshold Rulings.  Melamed contends that his "conflict" argument "is necessarily a proper ground for reconsideration" because "the conflict between the June 2nd Order and the [Threshold Rulings] did not arise until entry of the June 2nd Order" and thus "could not have been presented earlier."  (Mot. ¶ 34.)  That is not how litigation works.  The Trust's Motion to Enforce expressly sought enforcement of the Plan injunction based

on, among other things, the applicability of the Global Settlement provision.  (Motion to Enforce ¶¶ 14, 39-45.)  Melamed had a full and fair opportunity to oppose that requested relief, and did so over six pages of his objection and again during extensive oral argument.  (*See* Motion to Enforce Obj. ¶¶ 7-10, 60-70; May 14, 2026 Tr., Ex. 5 at 46:10-51:3.)  If Melamed believed that enforcing the Global Settlement provision would conflict with the Court's Threshold Rulings, he was required to make that argument before the Court ruled, and "it is anything but manifestly unjust" to prevent him from doing so now.  *In re Centaur, LLC*, 2019 WL 2122952, at *3 (Bankr. D. Del. May 13, 2019) ("A motion to reconsider cannot be used to argue issues that were inexcusably absent from previous proceedings.").  He didn't argue it before because it was not true then and it is not true now.

**B.      The Motion Identifies No Error in the Court's Application of the Plan's Global Settlement Provision.**

26.      The Motion next contends that the arbitration claims "were not released" under the Plan's Global Settlement provision by repackaging the very same arguments that Melamed advanced in opposing the Motion to Enforce and that this Court rejected in entering the June 2 Order—namely, that the Global Settlement provision is limited to "estate-level and intercreditor controversies" and that his claims are purportedly "direct, contractual claims" not subject to the provision.  (*Compare* Mot. ¶¶ 35-37, *with* Motion to Enforce Obj. ¶¶ 65-66.) Because these arguments have already been "briefed, considered, and rejected by this Court," reconsideration is "inappropriate."  *Lynch* v. *Jacobs ex rel. New Century Liquidating Tr.*, 2021 WL 5984897, at *2-3 (D. Del. Nov. 23, 2021) (motion for reconsideration "fail[ed] to satisfy the requirements of either Rule 59(e) or 60(b)" where it "attempt[ed] to re-litigate arguments that were already considered and rejected by th[e] Court"), *aff'd*, 2023 WL 155449 (3d Cir. Jan. 11, 2023).

27.     As set forth in the Trust's Motion to Enforce, Melamed's arbitration claims fall squarely within the Global Settlement provision because they are premised on generalized allegations concerning the broader FTX Group fraud.  (*See* Motion to Enforce ¶¶ 39-45.)  The Court agreed, granting the Motion to Enforce on that basis, and Melamed's mere disagreement with that ruling is not a basis for reconsideration.  *See Lynch*, 2021 WL 5984897, at *2 ("[a]ppellants' disagreement with the Court's ruling" on "the clear language of the Modified Confirmation Order" "constitutes neither 'manifest injustice' nor the 'extraordinary circumstance' necessary for reconsideration").  To the extent that Melamed attempts to characterize his arbitration claims as contractual "indemnification" claims, his counsel acknowledged at oral argument that such claims are nonetheless predicated on the same generalized allegations of fraud. (*See, e.g.*, May 14, 2026 Tr., Ex. 5 at 43:16-19 (arguing that while "there may be fraud of a general nature" asserted in the Notice of Arbitration, "[t]hat fraud is the trigger . . . for the indemnity claim"); *id.* 46:2-6 (arguing that "misrepresentations, and breach[es] of warranty" which are not recoverable as a fraud claim "serve as the basis for the indemnity claim for the crypto consideration"); *see also id.* 36:3-9, 39:23-40:2.)  As the Court recognized, those claims therefore "relat[e] to" the generalized fraud alleged in the Notice of Arbitration and fall within section 5.2(k) of the Plan.  (*Id.* 46:10-16.)

28.     Melamed had every opportunity to contest the Global Settlement during the Plan confirmation process.  In fact, as the Court also recognized at oral argument, Melamed *did* object to confirmation and twice appealed the Confirmation Order, with the latest appeal currently pending before the Third Circuit.  *See Melamed* v. *FTX Recovery Trust*, No. 25-02846 (3rd Cir. 2025).  Yet despite his active participation in the confirmation proceedings, Melamed never objected to the Global Settlement provision or argued that it was inconsistent with the Bankruptcy

Code.  The Confirmation Order is therefore final and binding as to that issue, and Melamed may not use a motion for reconsideration to collaterally attack the terms of the confirmed Plan.  *See In re Integrated Health Servs., Inc.*, 344 B.R. 262, 277 (Bankr. D. Del. 2006) ("[Creditor] did not object to the Global Settlement and, as it was incorporated in the Plan, [] is bound by it."). Accordingly, the Motion's discussion of what it characterizes as "controlling law" is not only incorrect, but also irrelevant. [7]  (Mot. ¶ 36.)  *See Spitfire Energy Grp., LLC* v. *Presidio Petroleum LLC (In re TE Holdcorp, LLC)*, 2022 WL 951553, at *6 (D. Del. Mar. 30, 2022) (affirming denial of motion to reconsider where movant's argument was "foreclosed by the fact that [movant] had notice and an opportunity to object to the otherwise unambiguous terms of the [] Order"), *aff'd*, 2023 WL 418059 (3d Cir. Jan. 26, 2023).

>   **C.**    **The Court's Application of the Plan to Enjoin Melamed's Arbitration Claims Does Not Constitute Clear Error or Manifest Injustice.**

29.    Melamed's arguments concerning the Plan injunction fail for the same reasons as his Global Settlement arguments:  they merely repackage arguments previously raised and rejected by the Court (*see* Motion to Enforce Obj. ¶¶ 10, 66-70), ignore the unambiguous language of the Plan, and amount to an impermissible collateral attack on the confirmed Plan. More fundamentally, however, Melamed cannot plausibly contend that the Court "overlooked" his section 10.8 arguments (Mot. ¶ 38), or that any such omission resulted in "manifest injustice" (Mot. ¶ 40), when his own counsel expressly disclaimed those arguments, stating:  "*I, frankly, am*

---

[7]    The cases Melamed cites (*see* Mot. ¶ 36) are inapposite because they each discuss whether a trustee or alternatively an individual creditor owns a claim against a third party, not whether a Chapter 11 plan may compromise a creditor's claim against the debtor.  *See In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) (personal injury plaintiffs did not have standing to pursue successor liability claim against non-debtor third party because claim was "generalized" estate property), *cert. denied*, 574 U.S. 974 (2014); *Bd. of Trs. of Teamsters Loc. 863 Pension Fund* v. *Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002) (pension fund could pursue alter ego claim against non-debtor corporate affiliates because claim was personal to fund and not property of estate); *St. Paul Fire & Marine Ins. Co.* v. *PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989) (guarantor did not have standing to pursue alter ego claim against non-debtor corporate parent because claim was generalized estate property).

*not seeking to get a ruling on 10.8.*" (May 14, 2026 Tr., Ex. 5 at 50:24.)  Having affirmatively conceded that he was not seeking a ruling on section 10.8, Melamed cannot now seek reconsideration on the ground that the Court "overlooked" that issue.  (*See* Mot. ¶ 38.)

30.     In any event, these arguments fail on the merits for the reasons set forth in the Trust's reply in support of the Motion to Enforce [D.I. 35558].  *First*, the language in section 10.8 "including to the extent provided for or authorized by sections 524 or 1141" (*see* Mot. ¶ 38) is expansive rather than limiting and does not limit its applicability.  *Second*, the statutory injunction applicable to discharged debts (*see* Mot. ¶ 38) is irrelevant because section 10.8 is an independent injunction provision that does not depend on section 524 of the Bankruptcy Code.  *Third*, the Plan's voluntary third-party release under section 10.4 (*see* Mot. ¶ 39) is irrelevant to the Plan injunction under section 10.8.  (*See* Motion to Enforce Reply ¶ 47.)

**D.     Reconsideration Is Also Unwarranted for Reasons Other than Sections 5.2 and 10.8 of the Plan, as Set Forth in the Motion to Enforce.**

31.     Even if Melamed were correct that sections 5.2 and 10.8 of the Plan somehow do not apply to his claim, reconsideration would still be unwarranted and serve no purpose because the Notice of Arbitration fails for the independent reasons set forth in the Trust's Motion to Enforce papers [D.I. 35243; 35558].  The Notice of Arbitration asserts claims that Melamed himself represented are "legally distinct" from those in the SPA Claim, premised on "distinct acts" and resulting in "distinct loss."  (NoA ¶¶ 29-30, 38(c).)  Melamed's admittedly new arbitration claims were not preserved by a timely-filed proof of claim, could not satisfy the exacting standard for post-bar date claims, and Melamed does not seek leave to amend or file a late proof of claim in any event.  Nor does Melamed's proposed "narrow[ed]" version of the Notice of Arbitration bring it within the scope of the SPA Claim simply by deleting those representations while maintaining the same unpreserved claims, as further explained in the Trust's objection to

Melamed's separately filed motion [D.I. 35980]. And because Melamed's arbitration claims are nowhere asserted in the SPA Claim, they likewise exceed the scope of the Arbitration Order, which referred "Claim No. 3385 only" to arbitration. (*See* Motion to Enforce ¶¶ 12-16, 20-38; Motion to Enforce Reply ¶¶ 6-10, 35-42.) Reconsideration is therefore unwarranted under any circumstances.

### E.  The Equities of the Case Do Not Support Reconsideration.

32.    Finally, even if there were some conceivable basis for the Court to reconsider its June 2 Order (and there is none), it would not be equitable to do so, as the Motion reflects a continuing pattern of gamesmanship and bad faith that has needlessly burdened the Trust and the Court. Rather than pursuing in arbitration only the claims preserved in the SPA Claim in accordance with this Court's Threshold Rulings, Melamed submitted a Notice of Arbitration asserting "legally distinct" claims expressly designed to avoid those rulings, thereby necessitating the Trust's Motion to Enforce. (NoA ¶¶ 29-30, 38(c).) At oral argument, he tried to justify those brand new arbitration claims by advancing a new "Crypto Indemnity" theory, while simultaneously disclaiming the issues that he now contends the Court overlooked. Even after the Court entered the June 2 Order, Melamed has refused to comply with it: He asked the arbitral tribunal, rather than this Court, to stay the effect of the June 2 Order pending reconsideration and appeal, informed SIAC that he "contests" the Trust's request for dismissal of his enjoined claims "in its entirety," and ultimately obtained a stay of the arbitration proceedings from SIAC pending his challenge to the Trust's arbitrator, which he continues to pursue. (*See* Exs. 7, 8, 9.) He also improperly noticed an interlocutory appeal of the June 2 Order without first seeking leave of this Court and, while at the same time pursuing affirmative relief on the SPA Claim, has to date failed to comply with his discovery obligations with respect to the claims that remain pending before this Court. For more than two years, the Trust and, ultimately, its creditors have borne the costs of

responding to each new attempt to relitigate issues already decided by this Court, each accompanied by a new characterization of Melamed's claims, a new theory of recovery, or entirely new claims not previously articulated.  Melamed should not be permitted to continue this cycle.  Given this record, reconsideration would only reward Melamed's dilatory tactics at the expense of the estate's legitimate creditors.

## CONCLUSION

33.    For the foregoing reasons, the Trust respectfully requests that the Court deny the Motion. [8]

---

[8]    On July 13, 2026, the Argent Liquidation Trust, which is not a party to this contested claims objection, filed an improper brief styled as a "Joinder and Statement in Support" of the Motion [D.I. 35985].  The Trust will address that improper filing separately, as necessary.

Dated:  July 16, 2026
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email:  landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
         gluecksteinb@sullcrom.com
         dunnec@sullcrom.com
         kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*