# Exhibit 4

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Chapter 11
                                    .  Case No. 22-11068 (KBO)
FTX TRADING LTD., *et al.,*         .
                                    .  (Jointly Administered)
              Debtors.              .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .
FTX RECOVERY TRUST,                 .  Adversary Proceeding
                                    .  No. 24-50184 (KBO)
              Plaintiff,            .
                                    .
    -against-                       .
                                    .
GATE TECHNOLOGY INCORPORATED,       .
GATE GLOBAL, CORP., GATE            .
INFORMATION PTE. LTD., and          .
SUN YUNZHI,                         .
                                    .
              Defendants.           .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .
FTX RECOVERY TRUST,                 .  Adversary Proceeding
                                    .  No. 24-50188 (KBO)
              Plaintiff,            .
                                    .
    -against-                       .
                                    .
FORIS DAX MT LTD., FORIS DAX        .
ASIA PTE. LTD., FORIS DAX,          .  Courtroom No. 3
INC., and IRON BLOCK                .  844 King Street
CAPITAL,                            .  Wilmington, Delaware 19801
                                    .
              Defendants.           .  Monday, November 24, 2025
. . . . . . . . . . . . . . . . .   .  9:33 a.m.


                    TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE KAREN B. OWENS
            CHIEF UNITED STATES BANKRUPTCY JUDGE


                        - Cont'd -

FTX RECOVERY TRUST,                      .  Adversary Proceeding
                                         .  No. 24-50201 (KBO)
                Plaintiff,               .
                                         .
     -against-                           .
                                         .
PROSPERITY ALLIANCE, INC.,               .
                                         .
                Defendant.               .
                                         .
. . . . . . . . . . . . . . . .          .
                                         .
FTX RECOVERY TRUST,                      .  Adversary Proceeding
                                         .  No. 24-50212 (KBO)
                Plaintiff,               .
                                         .
     -against-                           .
                                         .
THE GOODLY INSTITUTE dba                 .
GOODLY LABS,                             .
                                         .
                Defendant.               .
                                         .
. . . . . . . . . . . . . . . .          .
                                         .
FTX RECOVERY TRUST,                      .  Adversary Proceeding
                                         .  No. 24-50214 (KBO)
                Plaintiff,               .
                                         .
     -against-                           .
                                         .
MANIFOLD MARKETS, INC.,                  .
MANIFOLD FOR CHARITY, INC.,              .
ROSS RHEINGANSYOO, and FTX               .
PHILANTHROPY, INC.,                      .
                                         .
                Defendants.              .
                                         .
. . . . . . . . . . . . . . . .          .

                         - Cont'd -

```
FTX RECOVERY TRUST,              .  Adversary Proceeding
                                 .  No. 24-50635 (KBO)
              Plaintiff,         .
                                 .
     -against-                   .
                                 .
KUROSEMI, INC.,                  .
                                 .
              Defendant.         .
                                 .
. . . . . . . . . . . . . . . .  .
                                 .
MORGAN AND MORGAN CLAIMANTS,     .  Adversary Proceeding
                                 .  No. 25-50962 (KBO)
              Plaintiffs,        .
                                 .
     -against-                   .
                                 .
FTX TRADING LTD.,                .
                                 .
              Defendant.         .
                                 .
. . . . . . . . . . . . . . . .  .
                                 .
FTX RECOVERY TRUST,              .  Adversary Proceeding
                                 .  No. 24-51054 (KBO)
              Plaintiff,         .
                                 .
     -against-                   .
                                 .
NEWURTH S.A., B TRANSFER         .
SERVICES LIMITED, BT PAYMENT     .
SERVICES NIGERIA LTD,            .
TRANSFERZERO MONEY TRANSFER      .
EP SA, BT PAYMENTS SERVICES      .
UGANDA LTD, ELIZABETH            .
ROSSIELLO, ADAM GOUVEIA,         .
MARLEEN HA YE, CALLUM DRYDEN,    .
MIN-SI WANG, CHARLENE CHEN,      .
LINDA LEVINSON, and TOMOYUKI     .
NII,                             .
                                 .
              Defendants.        .
                                 .
. . . . . . . . . . . . . . . .  .
```

- Cont'd -

FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-52195 (KBO)
                   Plaintiff,          .
                                       .
      -against-                        .
                                       .
RYAN SALAME and MICHELLE               .
BOND,                                  .
                                       .
                   Defendants.         .
                                       .
. . . . . . . . . . . . . . . . .      .
                                       .
FTX RECOVERY TRUST,                    .  Adversary Proceeding
                                       .  No. 24-52358 (KBO)
                   Plaintiff,          .
                                       .
      -against-                        .
                                       .
GENESIS DIGITAL ASSETS                 .
LIMITED, GDA US INC., DDH              .
(NORTH AMERICA) INC., DDH-             .
CHOLLA, LLC, DDH-OK-1, LLC,            .
RASHIT MAKHAT, and MARCO               .
KROHN,                                 .
                                       .
                   Defendants.         .
                                       .
. . . . . . . . . . . . . . . . .      .

(APPEARANCES CONTINUED)

Audio Operator:          Jadon Culp, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

For the FTX
Recovery Trust:              Kimberly A. Brown, Esquire
                            LANDIS RATH & COBB, LLP
                            919 Market Street
                            Suite 1800
                            Wilmington, Delaware 19801


                            -and-

                            Brian D. Glueckstein, Esquire
                            Jessica H. Goldman, Esquire
                            Alexa J. Kranzley, Esquire
                            SULLIVAN & CROMWELL, LLP
                            125 Broad Street
                            New York, New York 10004


For Seth Melamed:            Lawrence O'Brien, Esquire
                            MCCARTER & ENGLISH, LLP
                            405 North King Street
                            8th Floor
                            Wilmington, Delaware 19801

                            David Adler, Esquire
                            250 West 55th Street
                            13th Floor
                            New York, New York 10019


ALSO APPEARING:

In Propria Persona:     Pu Ke

In Propria Persona:     Daizhuo Chen

INDEX

MOTIONS:                                                              PAGE

Agenda
Item 19:  FTX Recovery Trust's One Hundred Ninety-Third      10
          (Substantive) Omnibus Objection to Certain No
          Liability Proofs of Claim (Non-Customer
          Claims)
          [D.I. 31949, filed on July 25, 2025]

          Court's Ruling:                                     14

Agenda
Item 20:  Motion of Pu Ke for Status Conference and          14
          Limited Administrative Relief Regarding Claim
          No. 33657
          [D.I. 32712, filed on September 15, 2025]

          Court's Ruling:                                     21

Agenda
Item 21:  Motion of Pu Ke for Collaborative, Claim-          14
          Specific Administrative Relief Regarding Claim
          No. 33657
          [D.I. 32739, filed on September 18, 2025]

          Court's Ruling:                                     21

Agenda
Item 22:  Motion of Daizhuo Chen for Entry of an Order       23
          Authorizing Late Completion of Customer KYC
          Pursuant to FRBP 9006(b)(1); in the
          Alternative, Relief Under FRBP 9024
          (Rule 60(b)(l)) and FRBP 3008/11 U.S.C. 502(j)
          [D.I. 33349, filed on October 29, 2025]

          Court's Ruling:                                     29

Agenda
Item 23:  Motion of Seth Melamed Seeking Entry of an         31
          Order: (I) Compelling the Performance of
          BitFlyer Under the FTX Japan Sale Order
          [D.I. 20560], or Alternatively, (II)
          Compelling the FTX Recovery Trust to Pay
          Amounts Owed Under the KEIP Order [D.I. 1589]
          [D.I. 33425, filed on October 31, 2025]

          Court's Ruling:                                     41

INDEX

MOTIONS:                                                              PAGE

Agenda
Item 24:   Motion of the FTX Recovery Trust for Entry of        8
           an Order Extending (I) the Claims Objection
           Deadline and (II) the Administrative Claims
           Objection Deadline
           [D.1. 33444, filed on November 3, 2025]

           Court's Ruling:                                      9

Agenda
Item 25:   Motion of Pu Ke for Leave to File Sur-Reply in       14
           Further Support of D.I. 32712 and
           32739 [D.I. 33446, filed on November 3, 2025]

           Court's Ruling:                                      21

EXHIBITS

DECLARATIONS:                                                         PAGE

1 - Declaration of Jeffrey Sielinski, D.I. 31949-3             11

Transcriptionist's Certificate                                 46

appropriate.  Thank you very much for taking the time to appear today.  I will so-order the record on this.

MR. GLUECKSTEIN:  Thank you very much, Your Honor.

THE COURT:  I believe the final agenda item this morning is a motion that was made by Mr. Seth Melamed, seeking payments on his admin claim.  I'll turn the podium over to Mr. Melamed's counsel.

MR. O'BRIEN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. O'BRIEN:  Larry O'Brien of McCarter & English for Seth Melamed.  I'll be ceding the podium to my colleague, David Adler.

THE COURT:  Great, thank you.

MR. ADLER:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. ADLER:  Good to see you, again.

THE COURT:  Good to see you, too.

MR. ADLER:  I'm David Adler from McCarter & English, on behalf of Seth Melamed.

Your Honor, we're here before you today, as you may recall, we had some hearings back in the summer regarding some threshold issues that were before the Court:  the applicability of 510(b); the digital estimation order; and whether the claims under the management -- under the stock purchase agreement were going to go to arbitration.  And I'm

here today, because we filed a motion to compel the performance of the Debtors, and now the Trust, and bitFlyer with respect to two court orders that were entered in 2023 and 2024.

With respect -- and it should be noted that bitFlyer was a -- was served with this motion.  I sent bitFlyer the email identified in the agreement, the papers, but I got bounced back.  So I don't know -- I will acknowledge that I think we have to figure out another way to serve them, because the email address that was in the agreement did not work.

Now, I don't think that precludes us from going forward today, with respect to the Trust.  I think that the bitFlyer issue can be put to the side and we can move forward with the Trust.  And the case, Your Honor, is pretty clear, in 2023, in April, the Debtors, at that time, moved to, for authorization to implement a Key Employee Incentive Program. Declarations were submitted by A&M explaining to the Court at the time why it was necessary to adopt a Key Employee Incentive Program.  Mr. Melamed was identified on the exhibit as the COO of the company and was to receive the largest bonus to be paid if the circumstances for the KEIP were triggered.

That order was approved by the Court, Your Honor, on June 8th, 2023, at Docket 1589.  And I do want to note, it

says expressly in the preamble of the order, that the motion seeks to approve implementation of a Key Employee Incentive Program as expressly set forth in paragraphs 19 to 25 of the motion and as further amended and qualified by Exhibit A, the KEIP. I could those the "KEIP terms" and that's Exhibit -- or that's Document 1589-1, attached to the KEIP order.

And, essentially, Your Honor, the conditions for the triggering of the KEIP payment are set forth in black and white in the KEIP terms. And with respect to FTX Japan, it did not restart; it was eventually sold in 2024 to bitFlyer and the conditions under the KEIP were triggered under that point. And, essentially, the only condition was that he be employed when transaction took place.

There are other provisions in here, conditions about what happens if there's a death or a disability event: how much you get; whether it's terminated; if you're terminated with cause. It can -- the KEIP can go away under certain circumstances, but it's pretty black and white.

And Mr. Melamed did not receive his KEIP award. It's a *de minimis* amount in the scheme of this case; it's $111,000. We are asking for the Court to compel the payment of that.

Now, if you recall, Your Honor, in the amended claims objection that was filed by the Debtors and the Trust, they took the position that it wasn't their liability; it was

the liability of bitFlyer.  So we had to assess how that might play out.  I mean, if we were to litigate over the KEIP provisions with the Trust for years and, ultimately, they were corrupt, are we wasting our time by not filing a motion to compel bitFlyer to pay those amounts?

So, it was determined that we would file the motion for the Trust and for bitFlyer.  As I said, I think it's very black and white that Mr. Melamed is entitled to his KEIP award.  And the Debtors raised four arguments in their objection as to why the payment should not be made, and I'll go through them sequentially.

Number one is that the motion, my motion to compel was procedurally improper.  They said it's creating duplicative litigation.  It's creating parallel tracks.

I don't see it that way.  As I mentioned before, I mean, they're the ones who said bitFlyer is liable, not the Trust.  And we've got to resolve that issue some way, sooner rather than later, and it would, I think, advance the litigation to know if the Trust is still on the hook for the payment of these amounts.

We think, by the way, Your Honor, that they clearly are, because the KEIP terms identify, specifically, the conditions for which a KEIP award would be payable.  And no condition requires that a claimant release his or her claims against the estate.  So, in other words, if they

wanted to have a release and it apply to FTX and its affiliates and its shareholders and everyone else; that should have been part of the KEIP terms that were set forth in 1589-1 of the order.

THE COURT:  So, in other words, they're co-liable on the claim because they didn't build a release in; is that the argument?

MR. ADLER:  Correct, Your Honor.

And in our motion, we pointed to case law that said, specifically, that when there's an order that says, for example, that FTX is liable for the KEIP amount -- and then there's a subsequent order that says bitFlyer is assuming that liability.  Unless the order expressly amends the prior order, the original order is still a final order and FTX remains liable on account of those sums.

So, we pointed to that case law.  I don't think the debtor was -- I'm sorry -- the Trust, I don't think the Trust responded to that argument that, you know, once there's a final order, you know, the only way you're going to get relief from that order is to either vacate it or modify it. And I don't think the inclusion of a section in the sale agreement that says FTX -- I'm sorry -- bitFlyer is assuming this liability is sufficient to relieve them of their liability under the original KEIP order, okay, because it's just an order approving the sale on the terms and conditions.

It doesn't say, you know, ECF 1589 is hereby vacated or amended, such that bitFlyer is now liable.

So, we laid out that -- those provisions.  The Trust has stated that it's procedurally improper; I have to address that.  Their second argument was that Mr. Melamed refused sign the agreement.  And our response to that is, we put in the declaration showing the back-and-forth between Melamed's prior counsel and FTX's counsel.  I don't think that's necessary to get into those facts to resolve this motion.  I think all you have to do is look at the KEIP terms, and because there is no KEIP term that says, In order to qualify for a KEIP award, you have to waive your claims against the estate; it doesn't exist, okay.  I mean, the four corners of the order dictate, you know, the terms and conditions for the payment of a KEIP.

I think that they also indicate that they had discretion to do whatever they wanted, you know, whether to go forward or not.  They mentioned several times "discretion."  Our response to that is, yes, the Debtors had discretion whether to go through -- whether to move forward with the KEIP or not, right:  business judgment of the company.  If the business judgment of the company was that we're not going to go forward with this KEIP anymore, they could have terminated it as to everyone.  But if they're going to go through with it, as it was approved by the Court,

they have to go through it with the terms and conditions stated in the Exhibit A to the order and they can't just start adding on new conditions at that point.  So, it's either take it or leave it, you know; either they go forward with it or they don't go forward with it.  But if they do go forward with it, they have to abide by the terms and conditions of the KEIP order.  They just can't add on additional conditions without another order from this Court approving the modifications.  That's their second argument.

Their third argument is that -- and it was unclear to me in the amended claims objection that they were seeking to subordinate under 510(c), the previous KEIP award payment that had been approved by the Court.  So, in May of 2023, individuals from A&M advised the Court why these seven individuals should be entitled to a KEIP award:  they've done extraordinary service; they've re-opened up the Japanese crypto, FTX Japan, for withdrawals; and at that time, they're trying to either figure out whether they're going to restart it or sell it.  And there's a whole -- we cited them in the motion -- a whole litany of plaudits that's given to Mr. Melamed.  And a year later, a year and a half later, we now have another declaration by an individual at A&M saying his claim should be subordinated under 510(c).

I don't think -- I looked, Your Honor, I could not find a single case where somebody tried to get the Court to

approve a KEIP payment or a specified administrative claim, only to later turn around and say that that claim was subordinated under 510(c).  And more importantly, and I think we raised this issue in connection with the claims objection, is there is no 510(c) if creditors are receiving a -- or customers are receiving a full payout.

And we cited case law, the Citigroup case, the Windstream case from Judge Drain that says when there's a hundred-percent payout under a plan, there is no harm and there's no remedy to be applied under equitable subordination.

THE COURT:  Well, there's many creditors who are subordinating their claims so creditors get a claim, so I'm not really understanding that argument.

MR. ADLER:  Well --

THE COURT:  To be fair, I mean, there's a lot of things I take issue, but the idea that everyone is getting paid in full -- well, people aren't getting paid in full.  If you look at the plan, there's many classes of creditors who aren't getting paid.

MR. ADLER:  Well, the customers, I think, are all receiving their --

THE COURT:  But there are other claimants, I believe, under the plan that subordinated their claim or, at least, said they wouldn't take a distribution to benefit.

Look at all the governmental entities.

MR. ADLER:  Well, I --

THE COURT:  Am I misunderstanding how the plan is working here?

MR. ADLER:  -- I think, Your Honor, on that issue, the allegations that were made by A&M were customer-related; in other words, were they owing something pre-transaction, where liquid, the prior company had been hacked.  They point to a certain transfer from Coin, which was a Singapore-based entity, to one of the FTX entities as a mismatch of assets and liabilities, even though it's recorded in the intercompany receivables.

And their allegations are all related to customers, that the conduct hurt the customers of FTX or Coin, specifically, and if the Coin creditors are receiving a hundred-cent payout under the plan, there can't be any remedy that would be applied to, you know, subordinate.

So, we did attach the financials, or we referenced the third-quarter 2025 report that was filed last week that makes it very clear that customers are receiving a full payout and there's a category of accrued interest, you know, next to them, you know, earning interest.  And general unsecured creditors do, I believe, I mean, other than customers, are receiving the full payout.

The only entities that I'm aware of that aren't

receiving -- creditors that aren't receiving a full payout are the governmental agencies.

THE COURT:  Well, they matter, don't they?

MR. ADLER:  They do matter, but they're not part of the harm that was specified by Mr. Chambers at A&M.

THE COURT:  Yeah.  Can I ask a question, just to interrupt here?

MR. ADLER:  Yeah.

THE COURT:  The order that I entered, because I had hearings on this, a lot of time over the summer devoted to your client's issues, which I'm happy to do, but now I just keep having these hearings where everyone is trying to jump the line and get their stuff heard.  And the order said: Agree on a scheduling order to organize the manner in which we move forward.

So, why am I here, the Monday before Thanksgiving, hearing from this again, when I have not seen a scheduling order, as my order directed; has there been conversations on the scheduling order?

MR. ADLER:  There has, Your Honor.

THE COURT:  Okay.

MR. ADLER:  There was one in September and there was a discussion, also, about avenues of resolution.

THE COURT:  Okay.  But I'm not here on a scheduling order, which is the next step.

MR. ADLER:  I think the response is that a scheduling order has not been agreed to yet, in part.  I have not heard from them since September and the issue with bitFlyer --

THE COURT:  Okay.

MR. ADLER:  -- is a separate issue.

THE COURT:  Okay.  This is how I want to move forward.  I'm denying the motion, okay.  First of all, the relief is not procedurally proper.  You are seeking injunctive relief, a motion to compel performance, against a non-debtor third party that is not before me.  You need to file an adversary proceeding; you can't just file a motion, okay.  So that hasn't been done.  So, we haven't heard there them because you haven't served it.  They haven't received notice.  You know, you have to file an adversary with a summons and serve it properly.

But the issues are intertwined with your claims against the debtor, which you filed, and they objected to. We need an organized proceeding moving forward; that's the purpose of the scheduling order.  And now that you're interjecting bitFlyer into this, we're going to have to bring an adversary complaint into this, because they're all intertwined issues and it needs to get resolved at one time and in the motion efficient way for purposes of how I handle things.

So, I'm done with the piecemeal and we're going to file your complaint with bitFlyer.  If you want to pursue bitFlyer, file the complaint, serve the summons, and incorporate them into a scheduling order, and move forward in that way.  I'm just not going to do this anymore, piecemeal.

MR. ADLER:  Yes, Your Honor.

THE COURT:  Okay.  I appreciate the time and attention on this, but, you know, I think we all agreed on how this was going to move forward and that hasn't been done. So we need to follow the directions under the order.

And I appreciate your interest in bitFlyer, but let's do it right, because they're a third party to a complaint, okay?

MR. ADLER:  Yes, Your Honor.

THE COURT:  And it is tricky.  I will admit, I get a lot of these where it's motions to enforce orders, but generally, my view is pretty strict on those, which is:  You need to file a complaint.

MR. ADLER:  Okay.

THE COURT:  Okay.

MR. ADLER:  That's it.

THE COURT:  All right.

MR. ADLER:  Thank you, Your Honor.

THE COURT:  All right.  Thank you for your time.

Is that it or do we have the Yoo issues?

MR. GLUECKSTEIN:  Your Honor, the amended agenda reflected that the issues with respect to Mr. Yoo, as of Friday, the parties agreed to adjourn those issues.

THE COURT:  Okay.

MR. GLUECKSTEIN:  There is, in that matter, Mr. Yoo, in the adversary complaint that we filed, they have filed a motion to dismiss --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- against Mr. Yoo and they have requested that we confer with them about the possibility of having a motion to dismiss heard at the same time as the pending motions.

THE COURT:  Okay.

MR. GLUECKSTEIN:  We had that discussion on Friday afternoon.  There was confusion as to what was on the agenda for today, so we agreed with them to adjourn the motions that were on for today until we could confer further, and then a proposal to the Court for hearing things in an efficient manner.

THE COURT:  Okay.  All right.

So, then, that's on for the December hearing, then, or, at least, that's the -- it's been carried over to December?

MR. GLUECKSTEIN:  It's been carried.

I think there's a question as to the status of the

adversary motion.  We'll confer with them and we will make a proposal --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- as to when to be heard.  It, ultimately, of course, will be up to the Court, whether that motion to dismiss should be heard with these other motions; whether the Court wants to hear argument on a motion to dismiss in an adversary proceeding, at all, of course.  But there is, I think, consensus amongst the parties that if there's going to be such argument, it would make sense to handle this only once --

THE COURT:  Yeah.

MR. GLUECKSTEIN:  -- so Your Honor is not dealing with these issues more than once.

THE COURT:  Okay.  All right.

Well, then, I will look for the parties to present, either, a consensual path forward in December or tell me why there couldn't be consensus, and I'll decide how to move forward on it.

MR. GLUECKSTEIN:  That sounds great, Your Honor.

THE COURT:  Okay.  In terms of -- when's the next hearing in December, do we know the date for that?

MR. GLUECKSTEIN:  I want to say it's --

THE COURT:  I do think I have a trial.

MR. GLUECKSTEIN:  I believe it's the 18th, Your

Honor --

THE COURT:  The 18th, okay.

MR. GLUECKSTEIN:  -- there's an omnibus hearing.

THE COURT:  Okay.  And then I am correct that there's a three-day trial in January?

MR. GLUECKSTEIN:  Yes, Your Honor.  That is scheduled for the last week of January.  That is with respect to the Trust's objection to the Three Arrows Capital --

THE COURT:  Okay.  All right.

MR. GLUECKSTEIN:  -- amended proof of claim that has been -- that is the subject of ongoing litigation.

THE COURT:  Okay.  All right.  Thank you, I appreciate that.

Okay.  All right.  Well, then, I will look forward to see you all in December, if I have to, and I'm sure I will.  And until then, have a great Thanksgiving, everybody, and safe travels.

MR. GLUECKSTEIN:  You too.  Thank you very much, Your Honor.

COUNSEL:  Thank you, Your Honor.

(Proceedings concluded at 10:26 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


/s/ William J. Garling                    November 25, 2025

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable