# Exhibit 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 22-11068 (KBO) |
| FTX TRADING LTD, et al, | . |  |
|  | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . . . | . | Thursday, May 14, 2026 |
| FTX RECOVERY TRUST, | . |  |
|  | . |  |
| Plaintiff, | . |  |
| vs. | . | Adv. Proc. No. 24-50188(KBO) |
|  | . |  |
| FORIS DAX MT LTD., FORIS DAX | . |  |
| ASIA PTE. LTD., FORIS DAX, | . |  |
| INC., and IRON BLOCK CAPITAL, | . |  |
|  | . |  |
| Defendants. | . |  |
| . . . . . . . . . . . . . . . . | . |  |
|  |  |  |
| FTX RECOVERY TRUST, | . |  |
| Plaintiff, | . |  |
| vs. | . | Adv. Proc. No. 24-50214(KBO) |
|  | . |  |
| MANIFOLD MARKETS, INC., | . |  |
| MANIFOLD FOR CHARITY, INC., | . |  |
| ROSS RHEINGANS-YOO, and FTX | . |  |
| PHILANTHROPY, INC., | . |  |
|  | . |  |
| Defendants. | . |  |
| . . . . . . . . . . . . . . . . | . |  |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE KAREN B. OWENS
CHIEF UNITED STATES BANKRUPTCY JUDGE

Audio Operator:             Electronically Recorded
                            by Kim Ross, ECRO

Transcription Company:      Reliable
                            1007 N. Orange Street
                            Wilmington, Delaware 19801
                            (302)654-8080
                            Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

For the FTX Recovery
Trust:                          Matthew R. Pierce, Esq.
                                George A. Williams, Esq.
                                LANDIS, RATH & COBB, LLP
                                919 Market Street, Suite 1800
                                Wilmington, Delaware 19899

                                Brian D. Glueckstein, Esq.
                                Jessica H. Goldman, Esq.
                                SULLIVAN & CROMWELL, LLP
                                125 Broad Street
                                New York, New York 10004

For Seth Melamed:               Lawrence J. O'Brien, Esq.
                                MCCARTER & ENGLISH, LLP
                                Renaissance Centre
                                405 North King St., 8th Floor
                                Wilmington, Delaware 19801

                                David J. Adler, Esq.
                                MCCARTER & ENGLISH, LLP
                                250 West 55th Street, 13th Floor
                                New York, New York 10019

3

INDEX

PAGE

FTX Recovery Trust's Objection to Proofs of Claim
Filed by ELD Capital LLC
[D.I. 34251, filed on January 2, 2026]

    Court's Ruling                                        4


FTX Recovery Trust's Motion to Enforce Prior Orders        12
that Preclude Seth Melamed from Asserting New Claims
in Arbitration [D.I. 35243, filed on April 2, 2026]

    Court's Ruling                        (Under Advisement)

suggests that the TRON announcement was fraudulent.

ELD Capital is entitled to its claim for the value of its digital assets held as of the petition date, but no more.

Therefore, I will enter the proposed order that was attached to the trust's claim objection at Docket Item 34251, which sustains the objection advanced by the trust, and I will do so shortly after the conclusion of today's hearing.

I thank you for all the time and attention you devoted to the matter and your appearance at the trial, as well as today. Thank you very much.

So, with that, let's move forward with Mr. Melamed's issue and the motion of the trust.

MR. GLUECKSTEIN: Thank you very much, Your Honor. Brian Glueckstein, Sullivan & Cromwell, for the FTX Recovery Trust.

Your Honor, we are here this morning, somewhat unfortunately, because we were put in the position of needing to take more of the Court's time with respect to the claims of Mr. Melamed arising from FTX's acquisition of the Liquid Group.

As the Court knows, Your Honor has spent significant time carefully addressing Mr. Melamed's SPA claim, Number 3385, including considering and ruling on important threshold issues that Mr. Melamed sought, but

failed to avoid being decided.

In July of last year, after substantial briefing and argument, the Court issued rulings on those threshold issues. In doing so, the Court first ruled that Mr. Melamed's claims, related to unpaid cryptocurrency consideration, should be valued pursuant to the confirmed plan and the Court's estimation order, noting that Section 4.4 of the plan provides that all claims, quote, "in respect of digital assets" must be calculated pursuant to the estimated values provided in the Court's order.

The Court secondarily held that the non-crypto consideration portions of the SPA claim should be subordinated pursuant to Section 510(b) of the Bankruptcy Code. Importantly, in issuing that ruling, the Court reasoned that these various claims all involved the purchase and sale of FTX stock received from the sale of Mr. Melamed's stock in Liquid. The Court and the parties understood, at the time, that these rulings were intended to streamline the adjudication and resolution of the SPA proof of claim.

In the course of those hundreds of pages of briefing and hours spent before Your Honor, Mr. Melamed's claims were examined, discussed, characterized, and explained by the parties. At no time were the claims and theories of recoveries that are now asserted in the arbitration ever discussed, and that is because they are not found in the SPA

proof of claim. And certainly, Your Honor, the trust was not on notice of the claims that have now been asserted there.

Mr. Melamed now focuses almost exclusively on the fact that, in its decision, the Court also reserved judgment as to whether any indemnification claim, quote:

"-- on account of the SPA claim arising from the unpaid crypto consideration" --

Will be subordinated or not.

The Court did address the indemnification claims in its July ruling, concluding that, other than the breach of contract claim for payment of crypto consideration, the SPA claims, including any indemnification claim, arise from the stock purchased and are subordinated.

Mr. Melamed would now like us all to believe that that reservation somehow permits him to assert brand new, never articulated before, un-subordinated claims that he describes in his filings with the arbitral tribunal as legally distinct, relating to the sale of his liquid interests and purchase of FTX stock simply by calling them "indemnification claims."

Mr. Melamed's SPA claim does not allege any breach of representation or warranty related to the unpaid crypto consideration, which is the only portion of his indemnification claim that has not been subordinated by this Court.

Furthermore, any indemnification claim relating to the crypto consideration is still a claim in respect of digital assets and subject to the estimation order, while any other flavor of indemnity has been subordinated by the Court's ruling of last July.

What is happening is Mr. Melamed is seeking to create a third path to recovery that we submit does not exist.  Any legitimate indemnity in this context must mean recovery of legitimate costs incurred in pursuing the claim, not a back door to assert entirely new substantive claims under the guise of indemnity.

What is laid bare by Mr. Melamed's notice of arbitration is that, instead of arbitrating the remaining issues put at issue in his SPA claim, he is seeking to assert brand new claims and theories of recovery that seem to be newly minted and designed to bypass the Court's threshold rulings, and we submit that is not permissible.  Just as our confirmed plan ensures that no creditor can go sue the trust on a claim or legal theory not preserved by its proof of claim outside of this court, Mr. Melamed cannot do so through his arbitration proceeding.

This Court's bar date orders, Bankruptcy Rule 3003 are clear that only those claims preserved by timely proof of claim remain viable.

Mr. Melamed's notice of arbitration does not try to

hide his intention to formulate new claims and theories of recovery in an effort to avoid this Court's prior rulings, telling the arbitral tribunal that his claims in arbitration are legally distinct from his SPA claim based on distinct conduct and quote, "legally distinct harms."

Somewhat amazingly, Mr. Melamed tells the tribunal precisely why he has done so in Paragraphs 29 and 30 of the notice of arbitration, writing that it is quote:

"-- because the trust has already persuaded the Bankruptcy Court to make a preemptive declaration" --

As to subordination and, therefore, quote:

"-- requests that the arbitral tribunal ensure that any award in the claimant's favor explicitly confirms that any damages awarded do not arise from the purchase of FTX shares."

Said differently, Your Honor, Mr. Melamed is no longer pursuing his SPA claims at all.

Only after the trust filed this motion in opposition, Mr. Melamed now argues that this Court -- to this Court that his "legally distinct claims" -- his words to the tribunal -- are really the same claims that are asserted in the SPA proof of claim. And we submit these positions, Your Honor, cannot be reconciled. Mr. Melamed cannot have it both ways. He cannot assert new legally distinct claims in the

arbitration and then turn around and tell this Court that they're the same claims to avoid being barred from asserting them at all.

And from the presentation that we were provided yesterday, it now appears that the Court is going to hear, today, from Mr. Melamed's counsel, that maybe the entire issue is premature because the notice of arbitration is still subject to his more definitive statement of claim, suggesting to us that he may try to assert still evolving and different claims before all is said and done in the arbitration.  And that is why, Your Honor, we, unfortunately, are here and are seeking the Court's guidance to enforce its prior orders and put an end to this.

The notice of arbitration that has been submitted to the arbitral tribunal describes three legally distinct claims arising from the Liquid transaction:

First, Mr. Melamed asserts a new claim that FTX fraudulently induced him to sell 20 percent of his Liquid shares in exchange for nearly $9 million in cash, what is referred to as the "cash consideration" in the SPA claim, alleged now to be far below fair market value.  This claim directly contradicts the SPA claim, which excludes the cash consideration from any claim and concedes that Mr. Melamed received a fair price for those shares.

Second, Mr. Melamed brings a new claim in the

arbitration that FTX fraudulently induced him to allow FTX to retain the crypto consideration in exchange for another 20 percent of his liquid shares.

THE COURT:  Say that again.  Sorry,

MR. GLUECKSTEIN:  Mr. Melamed's second claim in the arbitration is that FTX fraudulently induced him to allow FTX to retain the crypto consideration.

The Court will recall one of the issues here was that the crypto consideration was not to be delivered to Mr. Melamed until dates out into the future.  And the breach of contract claim that's asserted in his proof of claim is that we failed to deliver those cryptocurrencies to him.

The claim in the arbitration now is very different. And we did do a side-by-side on this, Your Honor, in our reply brief on Page 7 that shows the most material, they're exemplary of where these differences occur.

But the only claim that's preserved on this issue in his SPA claim relating to the crypto consideration alleges that FTX wrongly retained the crypto consideration at closing in violation of the SPA, the complete opposite of the claim that's now being asserted in the arbitration that he was induced to set up this structure in the first place in some sort of improper manner.  His claim that FTX induced him to agree to this structure in the transaction contradicts what is clearly asserted on this point in the SPA claim.

And third, Your Honor, Mr. Melamed claims in the arbitration that FTX induced him to sell 60 percent of his Liquid shares in exchange for the FTX shares.  This claim plainly would be subordinated within the scope of the SPA claim.  Yet, Mr. Melamed disclaims making any damages claim in the arbitration for any loss attributable to the share consideration.  He's, in fact, asking the tribunal to affirmatively find that any damages that's being awarded, including on account of this claim, is not on account of the shares and is, therefore, not subordinated.  Again --

THE COURT:  What is it on -- apparently on account of then in the -- because you --

MR. GLUECKSTEIN:  From --

THE COURT:  -- are much more familiar with the notice of the arbitration.

MR. GLUECKSTEIN:  From -- well, it's not clear from the face of the arbitration, Your Honor.  I think what, from the briefing on this motion, is clear is that this is all supposed to fit within the rubric of identification.

THE COURT:  Okay.

MR. GLUECKSTEIN:  In issuing --

THE COURT:  How was that not released under the plan?

MR. GLUECKSTEIN:  I -- we certainly --

THE COURT:  And I --

MR. GLUECKSTEIN:  -- believe --

THE COURT:  -- apologize.

MR. GLUECKSTEIN:  -- it is.

THE COURT:  I've been running -- I've been running a lot and I haven't been able to focus --

MR. GLUECKSTEIN:  We certainly --

THE COURT:  -- a hundred percent --

MR. GLUECKSTEIN:  -- believe it is --

THE COURT:  -- on this.

MR. GLUECKSTEIN:  -- Your Honor.

THE COURT:  But --

MR. GLUECKSTEIN:  And I'll get to that in a moment. And that's part of the issue here, is that this is a moving target and --

THE COURT:  Because if I recall just from my memory, we  -- I just gave a ruling on a fraudulent inducement claim.  But that was specifically carved from that -- from global release in the plan, correct?

MR. GLUECKSTEIN:  It --

THE COURT:  Wasn't that the issue with ELD, was that they asked for and you carved from the global release that claim for fraudulent inducement?

MR. GLUECKSTEIN:  Your Honor is a hundred percent correct on that --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- right?  That issue has come up on multiple claims, including the one that Your Honor --

THE COURT:  Okay.

MR. GLUECKSTEIN:  -- just ruled on.  The only reason that claim went to Your Honor to be adjudicated was because they had an express carveout from that release.

THE COURT:  Okay.

MR. GLUECKSTEIN:  ELD did at the time of confirmation.  All right?

THE COURT:  Okay.

MR. GLUECKSTEIN:  Everybody else is bound by that.

And I'll I'm happy to address that point now.  This iteration of these claims, we have asserted, is barred by the global settlement release in the plan.  And that is because the way this is now articulated in the notice of arbitration is that these fraud claims are based on these generalized allegations of FTX's fraud that are precisely the types of claims that could be asserted by nearly all creditors, which is what the global settlement is intended to resolve and Your Honor has considered on multiple ever occasions.

For example, in the notice of arbitration in Paragraph 17(a), the alleged representations about segregation of custody and reconciliation of customer assets not happening appropriately, making arguments about preferential treatment for Alameda with respect to lending

activities, these are the sorts of generalized fraud that are covered by the global settlement.

In the opposition to this motion, Mr. Melamed argues well, we didn't raise this previously.  Well, we didn't, Your Honor, because the iteration of these claims that Your Honor considered last year didn't make these sorts of allegations.  It was not directly relevant because the pled -- what was pled at the time, what's actually contained in the four corners of the proof of claim are allegations having to do with the specific transaction and the sale of Liquid and the shares that were received by Mr. Melamed.  So we do believe that this iteration -- which we maintain is completely separate and new -- of claims would be barred by the global settlement, as Your Honor is alluding to.

And Your Honor will recall, in issuing the threshold rulings last summer, this Court recognized that Mr. Melamed's entire SPA claim, with the exception of the breach of contract claim with respect to the unpaid crypto consideration, arises from his purchase of the FTX shares in exchange for the Liquid shares.

Mr. Melamed is not asserting in the arbitration, either a breach of contract for unpaid crypto consideration, or any remaining preserved claims relating to the FTX shares. We submit his arbitration claims are then, by definition, new.  These are not the claims that we were here talking

about last year, Your Honor.

In addition, his brand new theories relating to cash consideration, which is an issue that was not even on the table and is expressly disclaimed in the proof of claim, and the crypto consideration rely on new factual allegations.

This all matters, of course, Your Honor, because this Court's bar date orders and plan injunction prevent him from asserting new claims that are not preserved in the proof of claim.  Mr. Melamed doesn't seriously dispute that an entirely new claim could not be asserted.  Rather, Mr. Melamed argues that his new claims can be found somewhere in the SPA claim.  We have not found them there.

Mr. Melamed points to the generalized language referencing the types of claims in the SPA claims, such as the word "fraud" or "misrepresentation," to say that the claims are the same.  But upon examination, this superficial analysis misses the mark.

As I suggested, Your Honor, we did include a chart on Page 7 of our reply that highlights some of the key differences in the different categories of the SPA claim, in terms of what's actually found in the proof of claim, juxtaposed to what is found in the notice of arbitration.

This is anything, Your Honor, but a situation where the claimant is fleshing out the details of his proof of claim, which courts have acknowledged is -- would be

permissible.  It is a wholesale rewrite to assert new claims and theories in an attempt to construct viable non-subordinated claims.

This Court and the parties are not looking at these claims on a blank slate.  Given the extensive resources that have been invested over the course of two years to narrow the issues, Mr. Melamed is now looking for a do-over that we believe is not available.

It is implausible that all of these new theories were being asserted, yet never raised in the voluminous briefing or hours of hearings before Your Honor, leading up to the decision on the threshold rulings.  Mr. Melamed cannot reinvent his claim in the arbitration as he has suggested he will continue to do in an attempt to create a claim that could be viable and un-subordinated, in light of the Court's prior rulings.

And of course, Your Honor, at no point here, with this having been done through the notice of arbitration, has Mr. Melamed sought to amend his claims in this court.  Absent a proper amendment, Mr. Melamed is bound to his SPA claims, including the factual allegations and theories of liability and damages as set forth in that proof of claim.

We cite numerous cases in our briefing where courts reject attempts to recharacterize portions of its claim -- a claimant to recharacterize portions of his claim without

seeking leave and refusing to consider new theories of liability without seeking and obtaining leave to amend its claim.

If Mr. Melamed wanted to assert new theories or claims in the arbitration, he needed to first obtain permission from this Court and actually amend the bankruptcy claim to put the trust on notice of those claims to assert the theories that he now seeks to arbitrate.

Mr. Melamed makes a half-hearted attempt in his opposition papers to seek amendment as some type of alternative response. While procedurally improper, it would also be meritless. Where, as here, the bar date has long passed, amendments to claims are closely reviewed to ensure they are not attempts to file a new claim and only permitted where, one, the initial claim provided the trust with reasonable notice of the new claims that are now being asserted; and, two, that it would be equitable to do so.

The distinct claims Mr. Melamed seeks to assert in the arbitration could have been asserted before, but they weren't. Mr. Melamed is not citing to newly discovered facts or circumstances for needing to amend a claim or assert different claims. To the contrary, the notice of arbitration candidly admits the new claims were developed and are being asserted to avoid this Court's threshold rulings.

Mr. Melamed's argument that he is merely fleshing

out the claims are belied by the record, including the voluminous record considered by this Court leading up to the issuance of the threshold rulings.

The trust would be prejudiced by any amendment now because the parties and the Court have devoted substantial time and resources to the SPA claim as it was pled. Forcing the parties to start this litigation over would be inequitable and makes no sense.

Of course, even if the Court permitted amendment and the new claims were to be adjudicated in arbitration, any award would -- of course, would still be subject to the Court's threshold rulings and the reasoning behind them, making it futile in any event.

With that, Your Honor, I will pause. And I'm happy to answer any questions the Court has; otherwise, I will reserve for rebuttal.

THE COURT: I do not have any questions at this time. Thank you very much.

MR. GLUECKSTEIN: Thank you very much, Your Honor.

THE COURT: Mr. Adler, good to see you again.

MR. ADLER: Good morning, Judge Owens. David Adler from McCarter & English on behalf of Seth Melamed.

I'd like to -- I had sent, yesterday, a presentation that I think would be very helpful to sort of go through, and I want to make sure Your Honor has it.

THE COURT:  I do.

MR. ADLER:  Okay.

THE COURT:  Thank you.

MR. ADLER:  Because there's a lot of --

THE COURT:  Does opposing counsel have a copy of it, as well?

MR. GLUECKSTEIN:  Yes, we do, Your Honor.

THE COURT:  Okay.

MR. ADLER:  We served it on them yesterday.

But I think --

THE COURT:  Great.  Thank you.

MR. ADLER:  -- there's a lot of information that is not being accurately conveyed, and I'm going to try and go through some of the history here that leads to -- or that led to the notice of arbitration.  I think there's just a -- there is a miscommunication, at best.  They're not understanding what the purpose of that provision was.

So, with that, I'd like to begin on Slide 2, which is entitled "Background on Claim 3385."  And what we've done, Your Honor -- because we think documents speak louder than words -- is we've tried to put the documents in front of your court for ease of reference.

In 3385, Melamed laid out the basis for his claim.  And I want to draw your attention to Paragraph 4, which is on the left-hand -- on the right-hand side and says:

"Claimant has been damaged" --

Or:

"Claimant was damaged as approximate result of the following breaches and torts by FTX trading" --

I'm skipping to B, which says:

"-- by multiple breaches of warranties and representations contained in the SPA and elsewhere;

"C, failure to pay retained consideration, as defined and promised in the SPA;

"D, failure to indemnify claimant for damages from breach of contract and breaches of warranty and representations provided in the SPA."

So, when I hear that we haven't made claims about indemnity on account of the crypto consideration or, as we call it, the "retained consideration," when I -- I don't understand it because that claim is directly laid out in Paragraph 4 of the proof of claim. And it -- further on in the proof of claim, it is stated with quite some particularity.

If you go to -- it is Paragraph 21 of the proof of claim:

"Debtor has failed to release the retained consideration. Debtor is" --

And I'm skipping here.

"Accordingly, debtor is responsible for all damages

caused by claimant caused by debtors' breaches of warranties and representations, including fraudulent breaches, as well as fees and costs resulting from or arising from breaches, including court costs and attorneys' fees, which cannot be ascertained at this time."

So, there's the indemnity provision straight in the proof of claim related to the crypto consideration. It's not new.

The claim for fraud is not new. It was -- it's laid out in detail in the proof of claim. And specifically, Paragraphs 22 through 29 of the proof of claim talks about the fraud claim here.

And I think it just bears note here -- and I say it later on in the slide, I'll skip it when I get to it. But Your Honor's ruling on July 31st did not disallow the claim. Mr. Melamed can pursue his fraud claim all he wants. It may not yield any recovery, but it wasn't disallowed by the Court.

So the point that I'm trying to make --

THE COURT: Was it disallowed by the plan? That's very important, that we need --

MR. ADLER: No.

THE COURT: -- to discuss.

THE COURT: Why would you say it's not?

MR. ADLER:  Because --

THE COURT:  You've read the provision of the plan --

MR. ADLER:  Well, can we --

THE COURT:  -- I assume.

MR. ADLER:  Can we actually come back to that?  I -- well, no.  I -- when a judge asks, you got to address it.  5.2 --

THE COURT:  No.  You know what?  Get to it in due course.  I don't want to interrupt your argument.

MR. ADLER:  Okay.  I mean --

THE COURT:  But let's --

MR. ADLER:  -- because --

THE COURT:  -- let's put --

MR. ADLER:  -- I think that's --

THE COURT:  -- in that.

MR. ADLER:  Yeah.

THE COURT:  To me --

MR. ADLER:  Let's --

THE COURT:  -- it's a --

MR. ADLER:  -- put a pin --

THE COURT:  -- critical --

MR. ADLER:  -- in it and --

THE COURT:  -- question.

MR. ADLER:  -- come back to it because it's -- it

is very, very important.

So, Your Honor, we -- Page 2 just does what -- or just references what I referenced in Paragraph 21 of the proof of claim on the indemnity --

THE COURT: Uh-huh.

MR. ADLER: -- and references Section 9.3 of the SPA, which is the indemnity provision, for any breaches of representations and warranties made by the purchaser under Clause 7.2 or covenants of the purchaser under the agreement.

Now, Your Honor, I didn't go through this in great detail in our submission because I didn't want to waste a lot of ink doing it. But I want to draw your attention to -- if you go to -- in the notice of arbitration, on paragraphs -- that's not -- on Paragraphs 20, 21, there is much more detail about the representations and warranties that were made by FTX in connection with the sale.

And if you look at Paragraph 23, it says, parts --

"Paragraphs 7 and 8 of Schedule B make the

following warranties."

And there's one about information, and there's one about completeness of disclosure.

Now I'm going to put a pin in that one, too, because, when we talk about claims being released under 5.2, as I understand it, that's if it's a general cause of action that all creditors have that's vested in the estate.

THE COURT: Okay.

MR. ADLER: Obviously, the customer base did not have these types of representations and warranties that were made in the SPA. And the amount of information that was exchanged in this transaction, obviously, was substantial to get to the closing, and there are, you know, significant violations or breaches of the information and the completeness of the disclosure, which is not the case with the ordinary customer of FTX.

Now I think this is the part that I really wanted to -- I -- because I think it explains a lot. On Slide 4, we put before Your Honor, both the July 22nd bench ruling, and Paragraph 3 of the July 31st order.

So, in Your Honor's ruling on July 22, you state:

"To the extent that Mr. Melamed asserts an indemnification claim on account of the SPA claim arising from the unpaid crypto consideration, I will reserve judgment as to whether that claim is subordinated until such claim is clearly defined."

That is embodied in the order in Paragraph 3, last sentence:

"The Court reserves judgment regarding the allowance, classification, and subordination of any indemnification claim from the crypto consideration."

Now why is this important?  Because -- and this goes to the point of legally distinct.  Let's suppose Your Honor disallowed -- or didn't -- I'm sorry, can't use that word -- Your Honor subordinated any claim for indemnity on account of the SPA relating to the FTX shares in the July 31st ruling, but Your Honor did not subordinate an indemnity claim on account of the crypto consideration, so there's overlap.  In other words, there may be a misrepresentation that applies both to the transaction and to the crypto consideration.

So, when we talk about "legally distinct," we are trying -- we are trying to put it in the tranche of being in the crypto consideration indemnification part because, if it's in the other part of the transaction, it's going to be subordinated, you know, per Your Honor -- per Your Honor's July 31st ruling.

So the whole argument over legally distinct is to deal with that issue of the two separate categories that were created with respect to the indemnification claim under the SPA, based on Your Honor's ruling.  So that's the significance of the "legally distinct" language, was to make sure that we don't come back here and they say well, that was a part of the indemnity for the SPA transaction, it didn't relate specifically to the indemnification claim for the crypto.

And we say we have a factual finding that it does. I mean, you know, they may be overlapping, you know, because the fraud was so extensive, but that was the point.

THE COURT:  Well, the alleged fraud relates to the SPA, so a damage claim would need to be approximated based on the different tranches of damages that you are seeking.  And if some of those damages, on account of a fraud, relate to the subordinated portion, then those would be subordinated.

MR. ADLER:  Correct.

THE COURT:  Do you -- well, you probably would have an overall figure of damage, and then it would have to be apportioned --

MR. ADLER:  Well, I --

THE COURT:  Because you couldn't put all of your damages into the crypto consideration piece.

MR. ADLER:  I agree a hundred --

THE COURT:  Okay.

MR. ADLER:  -- percent, Your Honor.

THE COURT:  To be clear.

MR. ADLER:  I agree.  I --

THE COURT:  I mean, maybe you could.  I am not adjudicating that.

MR. ADLER:  I --

THE COURT:  But that does not seem --

MR. ADLER:  I understand that.

THE COURT: -- proper.

MR. ADLER: But I don't want to be faced with a situation down the road saying this is -- let's take the easiest one, failure to deliver accurate financial statements. Okay? So FTX presents fraudulent financial statements. Well, that induced Mr. Melamed to go forward with the transaction, but it also induced him to keep the crypto consideration on the platform, so there are -- you know, it applies to both. Now I'm not saying that we can use that to say oh no, Judge, we're entitled to, you know, the transaction damages under the SPA, right? It relates to the narrow category that you've reserved judgment on. So, you know, frankly, because of the way the indemnity was split up in the July 31st order, that's why we sought the legally distinct issues.

All right. Moving along. I think, from Slide 5, the rulings of the Court, this is -- three things were essentially left open post July 31st:

The subordinated portion of Claim 33385, including any indemnity claim -- and we put that in there specifically so Your Honor would see that -- to a Class 14, Section 510(b) other equity claim;

The allowed crypto consideration claim pursuant to 4.4 of the plan;

And the reservation of judgment regarding the

allowance, classification, and treatment of any indemnity claim arising from the crypto consideration.

We say here that we reiterate that the Court didn't disallow any claims. And we have to show misrepresentations and fraud -- okay? To get to the point of having an indemnity for crypto consideration. Okay? So, you know, when we talk about fraud in the notice of arbitration, it's to show the misrepresentations, to get to the point of the crypto consideration indemnity.

So, next slide, trying to move along faster here.

You know, since Your Honor ruled on July 31st, counsel for the trust has just not acknowledged that the Court made that reservation. And we specifically refer to the representations made before SIAC, which is specifically, quote:

"Only two issues were to be addressed in arbitration as a result of the Bankruptcy Court rulings: Whether Melamed is entitled to the unpaid crypto consideration and the liquidated amount, if any, of Melamed's subordinated fraud claims."

Same issue before this Court. They stated that the two issues are whether Melamed is entitled to unpaid crypto consideration under the terms of the SPA and the value of the subordinated claims.

So, from our perspective, the July 31st ruling,

that reservation has just been ignored.  Okay?  And I mean,
we can talk about it, you know, all we want.  But I think
that, you know, from our perspective, you know, it's like it
doesn't exist because I think that the trust is of the view
that any indemnity claim is going to be in the bucket of the
claims that the Court subordinated.

Slide 6, Your Honor.  I thought this was helpful to
sort of provide the Court with an update on the timeline of
the proceedings in the SIAC arbitration.  And I specifically
want to draw your attention to these procedural orders that
were issued on April 4th and April 20th, and especially the
April 20th one basically ruled that the statement of claim --
and that is the operative document in the case.

So we put in the Allen Declaration.  Mr. Allen is
counsel for Mr. Melamed in Singapore, he's an arbitration
guru.  And what he says in that declaration is that the
notice of arbitration is basically a commencement document,
and the statement of claim is the actual operative document
in the arbitration, so that is where the claim has to be
detailed -- okay?  And laid out.

So, when we say in the notice of arbitration that
we estimate damages to -- preliminarily, to be this amount,
that doesn't really mean that much other than the fact that
it is a placeholder to be put in.  Obviously, when you get to
the statement of claim where -- you have to quantify damages

in a much greater degree, I'm told.

So we're in this situation, Your Honor, where the statement of claim is to be filed three weeks after Your Honor rules. And I think, as we said in the papers, what caused SIAC to do that was the fact that there were arguments being made over the jurisdiction of SIAC over the proceedings. So they basically put a pin in it or put it on hold, put a stay on it to get a ruling from the Court first.

Now, obviously, the motion doesn't have much to do with jurisdiction; it has to do with enjoining. Okay? The jurisdiction of SIAC exists. You know, the question before the Court today is whether the three orders that the trust references should enjoin him from pursuing these claims.

Moving forward. And this is just a follow-on from the slide -- the two slides before, is -- I say this, but it appears to me that this motion to enforce is unripe and appears to be a disguised motion to reconsider. And I say that based on the fact that the indemnity for the crypto consideration has never been acknowledged by the trust, even in the motion before this Court. And it appears to me to be a motion to attempt to get the Court to reconsider the ruling in Paragraph 3, the last sentence of the July 31st order.

We get to the response to point one and -- which is Slide 9. And our position is that they're not new claims. They're essentially the same claims as stated in Claim 3385.

We state a claim for fraud.  We state a claim for the return

of the crypto consideration.  We state a claim for breaches

of reps and warranties.  We state a claim for indemnity.

Okay?  Fraudulent inducement.  All of those claims are in

Paragraph 4 of the proof of claim, and they're all in the --

and it's very hard to read, I apologize, Your Honor -- on the

right-hand side, which is the preliminary, preliminary

statement of relief requested in the notice of arbitration.

I'd also note, Your Honor, that we're being accused

of changing the calculation for damages.  And I think this is

important to recall, that, last year, it was their expert who

came forward and said that, with respect to a fraud claim,

the damages would be that which is received against the value

of which you gave up.  And in connection with those

statements, there were allegations that Liquid -- that the

trust overpaid for Liquid -- or I'm sorry -- the debtors --

not the trust -- the debtors overpaid for Liquid.

I'm a little -- well, I'm -- I don't know whether

that's true or not, Your Honor, but I don't think it's true.

But I will say that it was injected into this proceeding by

the debtors in connection with the briefing last year, the

measure of damages.

So, you know, that is what is in the notice of

arbitration, in terms of the fraud claim -- okay?  Which, as

I said, is a claim that has to be pursued, if for no other

40

reason than it is an element for establishing the indemnity for the crypto consideration claim.

I was going to say, Your Honor, that, you know, FTX had interests in Anthropic, SpaceX, and a bunch of other companies.  And you know, it just seems to my -- to me that the investments were not all so terrible.

On our response -- on point two, which is that the amendment -- their position that we should file an amendment, I think it's important, again, to reiterate that the statement of claim is the relevant document in the proceeding.  The notice of arbitration is -- let's call it, for lack of a better term, like, you know, the form 405 that you have to file with a proof of claim.  It is just basically, you know, who the parties are, the tribunal, you know, all these other things.

And I -- from our standpoint, it is premature to put in an amendment until the statement of claim is filed because, if we put in an amendment -- if we ask for leave to amend -- excuse me -- we're just going to have to do it again when the statement of claim is filed.

THE COURT:  Well, okay.

MR. ADLER:  Does that make sense?

THE COURT:  No, not really because I'm the one that controls the claims in this case.

MR. ADLER:  I under --

THE COURT: And so you would need to submit to me and ask for permission to file an amended claim with the arbitrable tribunal.

MR. ADLER: Okay.

THE COURT: That is how bankruptcy, in my opinion, works.

MR. ADLER: Okay.

THE COURT: So they don't have the authority to make a decision with respect to that.

MR. ADLER: I didn't say that they did.

THE COURT: Right. And --

MR. ADLER: I said that --

THE COURT: And you would not be able to go forward and seek that claim because it would be violative of the bar date order.

MR. ADLER: Okay.

THE COURT: Right? That -- and I -- we can discuss your argument on that, if you would wish, but I think that I am the controller of what claims get pursued in -- against the debtor for pre-petition claims.

MR. ADLER: Right.

THE COURT: And the bar date order has -- the bar date has passed. And so, if you were going to seek an amendment, you would need to first do so with me, with the way that everything works under our various orders and how

it's intended to work.

So would I find you in contempt?  You know, that's a different story.  But do I think that you could proceed on that statement of claim without further proceedings before me is ...

MR. ADLER:  Let me rephrase what I said.

I think that the statement of claim should be filed and then we should seek a motion for leave to amend before the claim goes forward.  So, in other words, the claim itself is detailed.  Okay?  We ask permission from the Court for leave to amend and nothing goes forward in SIAC until that ruling takes place.

And I fully agree with Your Honor that that -- I didn't mean to suggest that SIAC somehow has the ability to amend your claims --

THE COURT:  Right, right.

MR. ADLER:  -- in your court.

I'm going to skip point four for a minute, and now I'm going to come to the plan stuff.

Okay.  This was news to me.  We had -- Mr. Glueckstein likes to say we litigated -- we filed six briefs last year on this issue and, you know, none of these issues were raised that we're supposedly raising.

If we were considering threshold issues last year, why didn't we consider the threshold issue of whether

Melamed's fraud claim was compromised under 5.2 of the plan? Because that seems to me to be, you know, an overwhelming point.  I -- you know, putting that aside -- I just want to point that out because they say that we did it -- I don't think that -- again, I think this sort of misses the mark.

If I'm understanding it correctly, the fraud claim under 5.2 -- and we put sections the -- in our objection about where they indicated that the intention was not to disallow claims of particular entities that have specified claims for fraud.  And we referred to the confirmation brief that was filed in this case.  We referred to -- I think it's in response to the U.S. Trustee, we referred to that provision.

But regardless of whether the claim is compromised or not, it's missing the mark because there's an indemnity claim.  So there may be fraud of a general nature, I'm -- just assume that there's fraud that is of a general nature. That fraud is the trigger or the misrepresentations are the trigger for the indemnity claim.

If you were to rule that, somehow, 5.2 compromised his section five -- his indemnity claim for crypto consideration, I don't think that that makes sense because that is an individual claim that he has, that he bargained for in connection with the SPA, an indemnity claim.  And if there's fraud claims, false financials, everything, Alameda,

all of the -- all of the other stuff, he still has the right under the contract to get indemnity for those misrepresentations.

THE COURT:  Right.  But you have to have an underlying claim in which you've experienced a loss.

MR. ADLER:  You have to have a loss, I think.

THE COURT:  Well, the loss is --

MR. ADLER:  And a --

THE COURT:  -- springs from a --

MR. ADLER:  -- misrepresentation.

THE COURT:  -- from a claim.  An indemnity claim doesn't stand alone.

MR. ADLER:  Well --

THE COURT:  It has to have a triggering claim that would cause a loss.

MR. ADLER:  Well, it's based on misrepresentations and warranties of -- on breaches of warranty made by the debtor, so --

THE COURT:  Because of their fraud.

MR. ADLER:  Well, the cause of action.  I'm referencing the statements, the misrepresentations themselves that gives the trigger to the indemnity claim.

THE COURT:  So the cause of action is the fraud.

MR. ADLER:  Right.  I mean --

THE COURT:  Right.

MR. ADLER:  -- I think that, obviously, you have a separate cause of action for fraud, a separate cause of action for indemnity.

THE COURT:  But --

MR. ADLER:  There are fraud claims that overlap both --

THE COURT:  Right.

MR. ADLER:  -- both of those.

THE COURT:  But if I enjoin your ability to bring the fraud claim, what would be left?

MR. ADLER:  We would still assert the -- I -- well, I shouldn't say "we would still."  I think that we could still assert the misrepresentations that were made as misrepresentations and breaches of warranty under the agreement, and that, therefore, we have a claim for indemnity.

The 5.2 didn't preclude you from asserting misrepresentations or breaches of warranties.  And I can't think of anything that is more specific than having, you know, contracted for that provision of having an indemnity on account of misrepresentations that were made.

No other -- I mean, the -- I shouldn't -- the general customer base in this case did not have these contractual protection provisions of indemnity.  Okay?  We have that, we contracted for that, and we should be allowed

to pursue that.

You know, Your Honor might say that the fraud claim -- you cannot recover on a fraud claim. Okay? But those representations, misrepresentations, and breach of warranty serve as the basis for the indemnity claim for the crypto consideration.

THE COURT: Okay.

MR. ADLER: Moving forward, Your Honor, we get to the --

THE COURT: Should I give any weight to Section (k) that says "and all causes of action relating to any of the foregoing"?

MR. ADLER: I'm sorry?

THE COURT: Should we just ignore Subsection (k) of the settlement that says and it releases all causes of action relating to any of the foregoing?

MR. ADLER: Let me see, hold on. I have to read this.

THE COURT: So I'm under 5.2.

MR. ADLER: "All causes of action relating to any of the foregoing."

Your Honor, I am struggling with the fact that a global settlement could remove a contractual provision that a party has.

THE COURT: But you were there at the confirmation

hearing.  Actually, I was not.

MR. ADLER:  Well, part --

THE COURT:  You were there, right?  Correct?

MR. ADLER:  Yes.

THE COURT:  Your client was there.  They were -- you were objecting, I understand.

MR. ADLER:  Yes.

THE COURT:  You appealed the confirmation order and it went forward on that basis.

MR. ADLER:  Right.

THE COURT:  This is an important part of the plan, in my understanding, because it would be difficult to prosecute all of these types of allegations and claims given the facts of the case, and it would have been to the detriment of the claimants to have allowed others to pursue such difficult claims.

MR. ADLER:  Right.

THE COURT:  I thought that that was -- and I could be wrong, but that was my understanding of the necessity for the settlement.

MR. ADLER:  Okay.  My -- I mean, Mr. Glueckstein is the expert on this --

THE COURT:  Right.

MR. ADLER:  -- I will say that from the start.  But my understanding is that this was a settlement between the

48

customer class and the debtors and really had to do with, you know, the claims that were made about tracing. And it provided a way to sort of -- you have a proof of claim that says I'm owed ten Bitcoin.

THE COURT: Right.

MR. ADLER: And you also have -- and that proof of claim says by the way, they also defrauded me. So, in order -- and I might be wrong, this is from other crypto cases. But in order to sort of get that claim to the amount of ten Bitcoin, you're basically coming to a compromise where they're giving up their non-crypto related claims in exchange for their crypto claims.

I don't see under -- I don't see how the ad hoc group of customers could reach a settlement or reach a deal that addressed a specific contractual claim of my client -- okay? Without -- you know, without anything more. And I'll --

THE COURT: Well, you had -- you were given notice and an opportunity to object. That's how that would work in a --

MR. ADLER: Right.

THE COURT: -- in a plan --

MR. ADLER: But --

THE COURT: -- confirmation hearing. And your claimant was -- your client was present at the confirmation

hearing.

MR. ADLER:  Right.  But I mean, in fairness, Judge, it is the confirmation brief that says that they are not -- that it is a global settlement between customers.  Okay?  It doesn't say with respect to other claimants or people who have contracts.

And while I'm talking about this, I want to refer to 10.9 of the plan, which I think -- and this is in my declaration.

THE COURT:  Uh-huh.

(Participants confer)

THE COURT:  I have the plan in front of me.

MR. ADLER:  On 10.9, it essentially says that, you know -- and which I had -- I wish I remembered where it was.  But it essentially says that any documents -- that no claims are being compromised, you know, that are embodied in documents, you know.  And I read that to mean that, if you have a specific provision that gives you a cause of action, that claim is not being compromised and/or released.

THE COURT:  Okay.

MR. ADLER:  Okay?

THE COURT:  Uh-huh.

MR. ADLER:  So moving forward.  We point to Section -- I'm sorry -- yeah -- 10.8 of the plan, which is the plan injunction.

Now, I -- as I -- I was there, and we did object at the time to the debtor receiving a discharge, which was originally in Section 10 and was removed. So this -- the liquidating debtors of FTX did not receive a discharge. And what is left is an injunction provision, which normally would kick in under 524, for after a dis -- after confirmation of a plan and a discharge, you would get a discharge and an injunction.

And it doesn't say that the injunction is -- stands by itself. It says that the injunction is to the fullest extent authorized or provided by the Bankruptcy Code. If there is no discharge and there is no injunction under 524, I don't know how there can be a plan injunction that references that it extends to the fullest extent authorized or provided by the Bankruptcy Code.

Now I understand there are -- have been recent decisions by Judge Goldblatt where he did provide a plan injunction, but it was limited in time and scope. But without the discharge, you don't have 524. And if you don't have 524, the plan injunction probably needs to say specifically not -- or not reference the Bankruptcy Code and ascribe its scope.

So, Your Honor, I mean, I think that it's an issue here. I, frankly, am not seeking to get a ruling on 10.8. I think Your Honor could deal with the 5.2 part and determine

that Melamed's contractual claim for indemnity was not compromised or released by the ad hoc group of customers.

THE COURT: Okay.

MR. ADLER: And just to finish up here, the last point that they argue is point four, which essentially is your July 31st order put the claims in or referred to arbitration, the claims in 3385 and, because this is quote, "a new claim," which I think we've addressed in the earlier slides, it wasn't included in your order. I think, for the reasons that I stated before that it's not a new claim, the July 31st order doesn't provide a basis.

So, you know, in conclusion, Your Honor, we think that -- that this -- that all three orders don't provide a basis to enjoin Melamed from pursuing these claims.

Now I should have said this at the beginning, that we recognize and we've said in court that we are not getting a distribution in this case until we come back here. Okay?

THE COURT: Uh-huh.

MR. ADLER: That Your Honor is the gatekeeper. Okay? And so whatever happens in SIAC, we're coming back here. And if you determine that the claim is 510(b), well, that's, I guess, the end of the story. You know? And so the litigation should move forward.

What I would suggest is that we put in the statement of claim, we tell the SIAC Court that we need

permission from the Court for leave to amend, if it really is an amendment, but I'm going to ask you anyway.

THE COURT: Can I --

MR. ADLER: And --

THE COURT: Well, let me ask you. Can I make that decision now then? Because it sounds like --

MR. ADLER: Yes.

THE COURT: -- you are going to --

MR. ADLER: Yes.

THE COURT: -- re-frame the claims.

MR. ADLER: I'm sorry?

THE COURT: So how can I make the decision whether it's an amendment today?

MR. ADLER: I don't think you can.

THE COURT: Okay.

MR. ADLER: I would say that the course of action is to say go ahead, file your statement of claim, come back here, you're going to, you know, just defer the motion and, at that time, we will consider whether this is an amendment, whether there's leave to amend, and you know, we'll figure it out at that point for --

THE COURT: Well --

MR. ADLER: -- with yet another hearing. Sorry, Your Honor.

THE COURT: Okay. Well, I could do it on the

papers.

MR. ADLER:  Right.

THE COURT:  Okay.  I think I understand your arguments and I appreciate that.  I don't think I have any further questions if you're done.

MR. ADLER:  Thank you.

THE COURT:  All right.

MR. GLUECKSTEIN:  Your Honor, Brian Glueckstein for the trust.

Where we just ended that discussion about we should let the litigation proceed, we can consider this all later, these are the arguments that Mr. Adler stood here and made to the Court last year, in trying to avoid the Court considering the threshold issues in the first place.  They want to go litigate whatever they want to litigate in the arbitration and then figure it out later whether they have a claim.

And that was why we briefed and argued and Your Honor agreed with the trust that there was benefit to everybody to narrowing these issues and getting clarity around what we were actually going to arbitrate and whether the parties could then consider whether that arbitration, frankly, made economic sense, given what was left in the claim.  And we're hearing that again.

And what we're hearing now is even more remarkable, that appeared in these slides that were given to us

yesterday, that now we should say -- and this is the theme that was risen in this declaration from their lawyer, their arbitration lawyer, that was dumped on the docket, he's, of course, not here -- that somehow we should just now wait until they file a statement of claim because that will be the determinative document in the arbitration. That is determinative document. But this notice of arbitration was not just some form that was filled out, as is being suggested. They needed to articulate their claims to tribunal. And what they have done is manufacture entirely new claims.

What Mr. Adler set forth in his slides here, in Slide 3, he excerpts paragraph four of the proof of claim. And as I said in my opening remarks, he talks very generally about the claims that we are asserting: Fraud, misrepresentation, indemnification. He shows the indemnification provision as an example because we know he's very focused on -- Mr. Melamed is very focused on indemnification.

Paragraph 21 of the proof of claim covers indemnification. The first sentence of that paragraph says:

"The debtor has failed to release the retained consideration to the claimant."

That's the context in which we've been talking, for two years, about the crypto consideration, the retention of

that consideration by the debtor.  What's pled in the notice of arbitration is the polar opposite, that they were induced to this structure as a result of fraud and misrepresentations by the debtor.

And we could go paragraph by paragraph, Your Honor, through the proof of claim.  With each of the claims that they've asserted in the proof of claim, they assert a theory of recovery.  They assert facts that they're relying on in the proof of claim.

We have the benefit, Your Honor, of not simply the proof of claim.  This claims litigation has been pending for a long time.  There's extensive briefing before the Court. There was extensive briefing before the Court leading up to the threshold rulings where the parties explained their position.  Mr. Melamed put in briefs.  He explained his fraud claim.  He explained his misrepresentation claim. The trust responded to those claims.  On the basis of those arguments, which presumably is what the parties understood the claims that actually were asserted and preserved in the proof of claim to be about, it is on that record that the Court decided, considered and decided the threshold issues.

What is presented in the notice of arbitration is completely different.  Mr. Adler completely glossed over that this morning.  There's a slide in here that says that they're same claims, again, referring just to these generalizations

about the type of claim, the cause of action.  But the case law is clear, Your Honor, that, if you come forward with a new theory that's based on different facts that the debtor is not on notice of, that is an amended claim.  That's not the new -- that's not the same claim.

And at various points in the colloquy this morning, Mr. Adler seemed to concede that, after they're going to file this statement of claim, that then they'll come and ask for an amendment.  It sounds like maybe we actually are saying now they need an amendment.  We certainly think that they would.

And we certainly argued and we'll -- if we ever get to that point, we'll -- and we have to -- we'll brief it as to why, certainly, at this stage, no amendment should be granted, given the history, particularly given the history of this case.

And Your Honor made a comment that I certainly agree with, that I think is very important here.  And I want to respond to this suggestion that we have been ignoring the fact that Your Honor was deferring on the subordination question as to indemnity.  That is not the case.  I addressed it this morning, we addressed it in our papers.

But I -- we certainly agree with Your Honor's observation that an indemnity claim does not stand alone.  And what we believe is happening here is that, in the face of

the threshold rulings subordinating the substantial majority of the SPA claim, but for the crypto consideration, which there's a fixed number associated with it now, pursuant to the estimation order, we know what Mr. Melamed is entitled to on that claim.  We could agree to that today and move on; they don't want to do that, of course.

What they want to do is repackage these claims as indemnity on a standalone basis.  So they want to take their fraud claim, they want to take their SPA claims and say well, I am not asking the tribunal to award me damages on account of the SPA claim because Your Honor has already decided that that is subordinated, please, instead, award it as indemnity and make an express finding that it is not on account of the SPA, so, therefore, we can get around Your Honor's order. And we submit that that is not proper here.

The -- there was, you know, quite a bit in the argument this morning, Your Honor, about this question of the plan provisions, and I don't want to belabor it.  There is a plan injunction in the plan in Section 10.8.  The debtor did not receive a discharge.  Despite Mr. Adler apparently wanting to read the plan injunction out of the plan, it's there, it was approved by Judge Dorsey.  It's not part of his objection, as I -- if I can recall, at the time, that somehow it should be removed in its entirety.

And the reason why we cite it in this motion is we

believe it does provide a basis for Your Honor to prevent the insertion of new claims outside of this court, which is what a plan does to ensure that all adjudication of claims occur before Your Honor.

The only reason this arbitration is proceeding at all is because Your Honor issued an order permitting that limited scope to go forward in the arbitration. And what we're doing here now, what Mr. Melamed is doing here, from our perspective, is assert new claims, and wants to assert those claims, was apparently going to just be perfectly fine going to litigate those claims in the arbitration without ever coming to this court. The only reason we're having any discussion now about potential amendment of claims is because we've raised this motion that's before Your Honor today.

I don't -- the more we talk about this, the less it sounds like there's serious argument that these are, in fact, the same claims. And as I say, I would just observe that, if we go side by side -- we did put that excerpt in our reply brief of key points. There are others. If we go side by side from what's in the proof of claim and, importantly, what's in their own briefing in this claim objection before Your Honor, in connection with the prior motions, and then we look at what's in this notice of arbitration, the theories of recovery, the calculation of damages, the theory of damages, how they're getting to those damages number, the facts that

they're relying on are completely different; and so, therefore, this is a new claim.

Lastly, Your Honor, I will just comment on this question that Your Honor is talking about, which we certainly agree with, on 5.2 of the plan and the global settlement.  We talked about it earlier.  Again, this idea that we didn't raise it earlier, the claims that were asserted, the fraud theory that's asserted in the proof of claim is extremely different than what is asserted now.

And the reason why we -- as I alluded to earlier, the reason why we believe this is now plainly barred by Section 5.2, in the form that is enumerated in the notice of arbitration, is that the facts that they are relying on are facts that exist broadly.  They're trying to say that -- Mr. Adler is saying we're trying to rely on contractual misrepresentations, but they're not.

They're arguing the facts that are supporting these arguments now have morphed from bilateral negotiations to do things like you did not protect cryptocurrency in customer wallets as was expected, and, therefore, we had -- we now learned that our cryptocurrency that was allocated to us was not properly protected.  These are the very sort of global arguments that are not limited simply to customers, that are discussed and that were the impetus for Section 5.2, to say any sort of generalized harm where creditors-at0large could

assert that Mr. Bankman-Fried and his associates defrauded people, those claims were not going to be litigated.

So, whether you had a customer claim, whether you have a breach of contract claim and you want to tack on arguments to say I should have additional damages on account of the FTX fraud, "The" FTX fraud -- capital T -- those claims were being compromised for the terms of the plan, so that the estate was not litigating on a creditor-by-creditor basis the fact that everybody was harmed by Mr. Bankman-Fried's actions. That's easy. At this point, that is a -- everybody can stipulate to that fact, but it's not going to be a basis for additional recoveries in this case.

I do agree, Your Honor, that the language in Section 5.2 covers any such claims relied -- of that nature, as well as any cause of action related to the foregoing. So, again, this comes back, it becomes this circular discussion that we continue to have around this indemnity claim and whether this indemnity claim is some savior to Mr. Melamed; that, notwithstanding the fact that he's asserting claims that we now -- in the form he's asserting in the arbitration, are barred by Section 5.2, the fact that he's asserting claims that all arise under the SPA that Your Honor has previously ruled are subordinated, that we can just repackage them under new theories, call them indemnity, and somehow, on account of the crypto consideration and, therefore, ask the

tribunal to adjudicate those claims and make findings, so, when they come back to Your Honor, they want to waive the piece of paper from the tribunal that says the tribunal found this all relates to crypto consideration, Your Honor, because we didn't even ask them to enter any damages with respect to the SPA claim.  So they're trying to -- again, from our perspective, this looks like an end-run around the decisions.

What we want to do, Your Honor, and what we always wanted to do -- which is why we brought the questions to the Court and have taken so much of the Court's time on this -- is to try to actually narrow the issues to what is a viable claim for Mr. Melamed, the issues that are in dispute between the parties, and see if those could be resolved.  And if there's a portion of those within the buckets that Your Honor identified that are appropriately arbitrated, we are off in the arbitration proceeding trying to liquidate those.

But what we are now facing is a completely new set of facts, circumstances, and claims.  And that, we submit, is not permissible.  And we do ask, Your Honor, that, based on the sufficient authority that exists, to stop this and to refocus Mr. Melamed on the categories of claims subject -- that are actually pending before this Court in the proof of claim that were subject to the order last year, and allow the parties to proceed as appropriate.

I will note, as we see it, none of those claims are

actually being asserted currently in the arbitration.  So that's where we don't really know why we're there.  But notwithstanding --

THE COURT:  I must admit, I must admit I thought that this would be finished following my ruling because I thought --

MR. GLUECKSTEIN:  Well, we did, too, Your Honor.

THE COURT:  And I want to look at the record and make sure I understood what was happening, and there's a good chance that maybe I wasn't fully understanding what was being presented to me at the time.  But I really thought that the ruling --

MR. GLUECKSTEIN:  I --

THE COURT:  -- on the threshold issues finalized the disputes between the parties in a sufficient manner that we would be able to conclude the claim because I agree with you, I thought it -- I really did -- wasn't focused on a fraud claim.  But I am going to look -- I don't want to cut you off.  I'm going to look at everything again because, you know, this is -- I need more time with it and I haven't spent adequate time with it.

So I'm not going to be able to make a ruling today on it.  And I want to look at the record and I want to look at the claims in the arbitration very carefully, as compared to the proof of claim that was submitted because it does say

"fraud" and it does say "inducement," and there are paragraphs discussing the theory of the fraud.

MR. GLUECKSTEIN:  We appreciate that, Your Honor.

And I would certainly observe I do believe and agree with Your Honor's observations.  We left that hearing believing that this was going to be very streamlined.  We thought Your Honor's ruling was very clear.

And in fact, in reviewing the record, I would point Your Honor, to the Court's comments on Pages 127 and 128 of your ruling at the July hearing, where you discuss the question, the second threshold question of the 510(b) subordination claims.  And in issuing that ruling, the Court talks about the fact that it is from the stock purchase and the sale of the claim -- and the sale of the business that Mr. Melamed's claims for breach of warranty, misrepresentation, fraud, and indemnification arise.  All of the categories of claims that we're talking about now were before the Court and carefully considered by Your Honor in making the subordination ruling.

What has changed is that Mr. Melamed has gone and developed new theories on how to try to prosecute these claims in a way that perhaps brings them somewhere that is not within the subordination ruling.  And we would submit that you can't have it both ways.  If these are the same claims, they're subject to that ruling.  If these are new

claims, they can't just go assert them in the arbitration and start this litigation anew.

They could have asserted some of these theories and factual predicates in the proof of claim. They could have raised them with Your Honor last year and Your Honor could have considered them in connection with the threshold rulings. That did not happen. And we certainly don't have a desire to restart this litigation anew.

THE COURT: Okay.

MR. GLUECKSTEIN: Thank you, Your Honor.

THE COURT: All right. Well, thank you.

As I said, I'm not able to fully rule today, so I will take it under advisement.

MR. ADLER: Your Honor?

THE COURT: Oh --

MR. ADLER: I was just going to say can I have a quick response.

THE COURT: Please, but to the podium, so we can pick you up on the transcript.

MR. ADLER: Yeah. I want to reiterate two things, Your Honor, which is Mr. Glueckstein's reference to Pages 127 and 128. When you get past everything, that's when Your Honor issues the reservation on the indemnity for the cryptocurrency.

THE COURT: Well, and to be fair, I did not know

what your claim was on that.

MR. ADLER: I think --

THE COURT: That's why I had to reserve --

MR. ADLER: Well, I think it was --

THE COURT: -- because I had no idea what the category -- what you were going to claim was a crypto consideration indemnification claim.

MR. ADLER: That's fair. I mean, that --

THE COURT: And so how would I determine whether it was appropriately subordinated or not?

MR. ADLER: Right.

THE COURT: Right.

MR. ADLER: Right, right, right. But --

THE COURT: To be -- I mean --

MR. ADLER: Yeah. No, no, no, I didn't mean to suggest otherwise.

But when you -- it -- the discussion was on the FTX shares, and then there was this separate discussion or paragraph on the indemnity.

And I just want to say that -- again, that it is from that ruling where you have the indemnity on the -- being subordinated on the shares, and then the indemnity on the crypto being reserved, that -- you know, that created sort of this issue about legally distinct and everything like -- and the need to put that within the context or to focus our

efforts on the indemnity for the crypto consideration.

THE COURT:  We discussed at length the nature of the claim prior.  Do you feel like you should have been more forthright on what the crypto consideration claim was?

MR. ADLER:  I think it's -- if you look at the transcript from June 25th of last year, I think I discuss it --

THE COURT:  Okay.

MR. ADLER:  -- at length.

THE COURT:  I will go ahead and review the transcript.

MR. ADLER:  And I think I even -- I hate to say this, but it is a year ago today --

THE COURT:  It probably was clear, you'll say.

MR. ADLER:  It is a year ago today, Your Honor, that we were here for the first time, May 14th.

THE COURT:  Sure.

MR. ADLER:  And I looked at that transcript, and I think it's actually mentioned in that transcript, as well.

THE COURT:  Okay.  So I will pull those transcripts and be sure --

MR. ADLER:  Now I understand --

THE COURT:  -- to review them.

MR. ADLER:  -- I mean, it's -- you know, at the -- it's very difficult stuff, right?  I mean, like where you're

dealing with indemnities for, you know, a transaction, but then there's a separate component.  And let's recall that they're the ones who broke it down into these separate components in the amended claim objection, so we're responding to that.  But I think we addressed it in both the -- both hearings.

THE COURT:  Okay.  All right.  thank you all very much.  I appreciate this.  It's always nice to hear everyone in person and to crystallize the arguments.  I will take it under advisement and hopefully can rule at the next hearing, but we will contact you and let you know.  Okay?

All right.  Thank you all very much.  We'll stand adjourned.

MR. ADLER:  Thank you very much.

THE COURT:  Take care.

MR. GLUECKSTEIN:  Thank you, Your Honor.

(Proceedings concluded at 11:02 a.m.)

                              *****

68

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____   May 15, 2026

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable