**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 23, 2026 at 9:30 a.m. (ET)**<br>**Obj. Deadline: July 16, 2026 at 4:00 p.m. (ET)** |
| | **Ref Nos. 35243, 35411, 35558, 35768, 35827, 35980 & 35981** |

**OBJECTION OF FTX RECOVERY TRUST TO MOTION OF SETH MELAMED FOR
ENTRY OF AN ORDER DETERMINING THAT THE FILING AND PROSECUTION
OF THE PROPOSED REQUEST TO AMEND DESCRIPTION OF ARBITRATION IS
NOT ENJOINED BY THE JUNE 2ND ORDER OR THE CONFIRMATION ORDER**

The FTX Recovery Trust (the "Trust")[2] hereby submits this objection to the *Motion of Seth Melamed for Entry of an Order Determining That the Filing and Prosecution of the Proposed Request to Amend Description of Arbitration Is Not Enjoined by the June 2nd Order or the Confirmation Order* [D.I. 35980] (the "Motion" or "Mot."). In support of this objection, the Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Melamed's claims have been litigated in this Court for more than two years and counting. During that time, the Court has held six hearings, entered multiple orders, and

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Objection of FTX Recovery Trust to Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order [D.I. 35768] Pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3008, 9023, and 9024*. Citations to "Ex._" refer to exhibits to the *Declaration of Brian D. Glueckstein in Support of Objection of FTX Recovery Trust to Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order* filed concurrently therewith.

repeatedly rejected Melamed's efforts to obtain better treatment than similarly situated creditors. Those rulings should have cleared the path for efficient resolution of Melamed's claims. Instead, Melamed has done everything possible to avoid compliance with the directives of this Court and prolong this claims litigation. This Motion is more of the same and should be denied.

2.       The Court's June 2 Order held that Melamed is enjoined from pursuing the "claims described in his November 12, 2025 Notice of Arbitration" because those claims are premised on matters compromised, settled, resolved, and enjoined under the Plan's Global Settlement and injunction provisions. Melamed has both moved for reconsideration of that Order and appealed it to the District Court. Yet while both challenges remain pending, he now asks this Court to bless an Amended Notice of Arbitration (the "Amended Notice") that deletes the word "fraud," repackages the same claims as breach of contract, breach of warranty, and indemnity, and seeks damages in arbitration far beyond what the Plan and Estimation Order allow.[3] Enough is enough. The Motion should be denied for several independent reasons.

3.       *First*, the Motion fails at the outset because it seeks advisory relief. Melamed is not asking the Court to clarify an ambiguity in the June 2 Order; he is asking the Court to approve a proposed Amended Notice now in contemplation of a possible third iteration of an

---

[3]    The only reason Melamed's Notice of Arbitration is available for amendment is because Melamed has continued to pursue his enjoined claims in violation of the June 2 Order. Since the Court entered that Order, Melamed has repeatedly acted in direct contravention of it by refusing to withdraw his enjoined claims, expressly "contes[ting]" the Trust's request that the tribunal dismiss them, requesting to hold the arbitration "in abeyance" pending reconsideration and appeal despite there being no non-enjoined claims left to prosecute, continuing to pursue his challenge to the composition of the tribunal, and ultimately obtaining a stay of the arbitration to prevent the tribunal from considering the Trust's dismissal request. (Exs. 6-8.) This conduct violates the June 2 Order, and the Trust expressly reserves the right to seek appropriate relief for Melamed's violations. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda.* v. *GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655-56 (2d Cir. 2004) (affirming contempt order where party sought to place enjoined foreign action on a "suspense calendar" rather than voluntarily dismissing it); *In re Johns-Manville Corp.*, 666 B.R. 476, 481, 487, 489 (Bankr. S.D.N.Y. 2025) (holding party in contempt of bankruptcy court order enjoining him "from prosecuting the claims asserted against [defendant] as alleged in the Complaint" in state court action where he opposed dismissal of the action despite there being no non-enjoined claims remaining against defendant).

arbitration, while he is still asking this Court and the District Court to set aside the very Order that makes the Amended Notice necessary. The Court should not consider Melamed's request for alternative, hypothetical relief.

4. *Second*, Melamed's own Motion defeats the relief he seeks. Melamed states that the Amended Notice does not amend his proof of claim, but merely "narrows the presentation of the dispute" supposedly already before the arbitral tribunal. (Mot. ¶ 4 n.3; Amended Notice ¶¶ 4-5.) If that is right, the Amended Notice by definition remains within the scope of the June 2 Order holding that Melamed is enjoined from pursuing the "claims described in his November 12, 2025 Notice of Arbitration." (June 2 Order ¶ 2.) A narrowed part of an enjoined whole remains enjoined. That is especially true because the Amended Notice does not replace the original theory with a genuinely different claim; it repackages the same alleged FTX-wide misconduct using superficially different language. But Melamed cannot circumvent the Court's June 2 Order by deleting the word "fraud" from his Notice of Arbitration and recasting the same theory as breach of contract, breach of warranty, or indemnity. Melamed's counsel already tried making that distinction at oral argument, when he argued that the supposed "triggering claim" for indemnity was not fraud, but "breaches of warranty made by the debtor[s]." (May 14, 2026 Tr., Ex. 5 at 44:11-25.) But counsel then conceded that those purported breaches occurred "[b]ecause of their fraud." (*Id.*) This is entirely circular. The June 2 Order did not turn on the label attached to the claims; it turned on the substance of what Melamed was trying to assert and arbitrate.

5. *Third*, the Amended Notice is independently improper because it asks the arbitral tribunal to do exactly what this Court has conclusively held cannot be done: value Melamed's alleged Crypto Consideration losses using a methodology other than as set forth in the Plan and Estimation Order. Melamed does this expressly, asking the arbitral tribunal to calculate

his alleged "losses" by valuing the 20% of his Liquid shares that he sold in exchange for the Crypto Consideration. (Amended Notice ¶ 25.)  He further seeks "a loss corresponding to the value of the contractual performance to which he was entitled but did not receive," with the "precise quantification" to be established "under the principles of Japanese law." (Amended Notice ¶¶ 34-35.)  In other words, Melamed is not asking the tribunal merely to decide whether FTX breached the SPA.  He is asking the tribunal to decide the quantum of damages to which he is purportedly entitled *specifically on account of the Crypto Consideration*.  That is precisely the result that this Court held in its Threshold Rulings was foreclosed by the Plan and Estimation Order, concluding that "the [P]lan is broadly worded to capture all claims . . . 'in respect of a digital asset'" and that both "the plain language of the [P]lan" and basic fairness require that result.  (July 22, 2025 Tr., Ex. 2 at 126:15-127:5.)

6.       *Finally*, the Amended Notice fails for the independent reason that it asserts a theory Melamed never preserved in the SPA Claim.  This is the latest iteration of a familiar pattern:  Melamed advances one theory; the Court cabins or rejects it; and Melamed returns with a new formulation that supposedly preserves his claim while avoiding the Court's ruling.  The claims allowance process does not permit that kind of serial rewriting.  A proof of claim must put the estate "on notice of the nature and basis of the claim," so that the claim can be evaluated, litigated, and resolved with finality.  *In re Charge Enters., Inc.*, 2024 WL 5112999, at *6 (Bankr. D. Del. Dec. 13, 2024).  Melamed's SPA Claim did not do that.  It did not assert the theory he now seeks to arbitrate:  that FTX's alleged breaches of representations and warranties concerning the Crypto Consideration caused him to permit FTX to retain that consideration, thereby giving rise to a separate indemnification damages claim.  (*See* Amended Notice ¶¶ 18(4), (5).)  Nor did the SPA Claim's passing reference to "indemnification" preserve every damages claim Melamed

might later dream up after this Court rejected his prior ones.  If Melamed wishes to assert a new claim, he must seek leave to file a late claim or, at least, amend his SPA Claim.  He expressly disclaims doing so.  (Mot. ¶ 4 n.3.)

## ARGUMENT

### I.    The Motion Fails at the Outset Because It Is Premature and Seeks Advisory Relief.

7.    Unable to advance the claims asserted in his previous Notice of Arbitration, Melamed now asks the Court to decide what he may do next assuming his motion for reconsideration and appeal fail.  Put differently, Melamed seeks an advisory ruling based on a procedural posture that is not yet certain.  A party may seek clarification of an injunction where it is facing a situation uncertain about what the court's order requires.  *Regal Knitwear Co.* v. *N.L.R.B.*, 324 U.S. 9, 15 (1945).  But Melamed identifies no ambiguity in the June 2 Order.  The Order holds that he is enjoined from pursuing the claims described in the original Notice of Arbitration, and Melamed has already asked this Court to reconsider that ruling, and has appealed from the Court's decision.  The Court need not decide whether a different pleading that Melamed may seek to file at some point in the future would comply with the June 2 Order.  Federal courts "may not . . . give opinions advising what the law would be upon a hypothetical state of facts." *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013); *see also In re Cubic Energy, Inc.*, 587 B.R. 849, 856-57 (Bankr. D. Del. 2018).  The Court should decline Melamed's invitation to do so here.

### II.    The Amended Notice Still Violates this Court's June 2 Order.

8.    In any event, the Motion rests on a contradiction and must be denied on the merits.  Melamed asks the Court to declare that the Amended Notice falls outside the June 2 Order, while at the same time insisting that the Amended Notice merely "narrow[s]" the claims asserted in the original Notice of Arbitration.  (Mot. ¶ 4 n.3; *see also* Amended Notice ¶¶ 4-5.)  Those positions cannot be reconciled.  A "narrow[ed]" subset of an enjoined whole remains enjoined.

And that is all the Amended Notice is:  a repackaged version of the same claim, stripped of the word "fraud" and dressed up in contract, warranty, and indemnity terminology.

9.      Melamed cannot plead around the June 2 Order by changing labels.  The Amended Notice goes out of its way to delete express references to the word "fraud" and to disclaim any request that the arbitral tribunal impose liability for generalized FTX-wide misconduct.  But disclaimers do not change the substance of the claim.  The question is not whether Melamed still uses the word "fraud."  The question is whether his reformulated claim still depends on the same alleged FTX-wide misconduct that this Court held was compromised, settled, resolved, and enjoined under the Plan's Global Settlement.  It clearly does.

10.      Melamed already tried making this distinction at the hearing on the Motion to Enforce.  There, he argued that the claims in the original Notice of Arbitration fell within the purported "Crypto Indemnity" portion of the SPA Claim because the supposed "triggering claim" for indemnity was not fraud, but a "breach of warranty made by the debtor[s]."  (May 14, 2026 Tr., Ex. 5 at 33:11-16, 44:11-25.)  But counsel then conceded that the alleged breaches occurred "[b]ecause of their fraud."  (*Id.* at 44:16-25.)  He nevertheless argued that the claim fell outside the Global Settlement because it sought contractual indemnification for breaches of representations and warranties, not damages for fraud itself.  (*Id.* at 45:9-46:6.)  The Amended Notice advances the same theory in a slightly different form.  By deleting the word "fraud" while leaving the underlying allegations intact, Melamed simply repackages the distinction this Court necessarily rejected when it held that the arbitration claims were barred because they were "premised on claims" arising from the broader FTX fraud. (June 2 Order ¶ 2.)

11.      The Amended Notice confirms the point.  It alleges that the supposed breaches of warranty include FTX's failure to "maintain[] sound risk management and daily

customer reconciliations," false financials, and misrepresentations about "large or hidden liabilit[ies]," "material liquidity," and "solvency risk[s] arising from its dealings with affiliated entities." (Amended Notice ¶ 18.)  Those are not meaningfully different from the allegations in the original Notice of Arbitration that FTX misrepresented its "segregation, custody, and reconciliation of customer assets," its "customer asset backing and risk management," and Alameda's "secret preferential treatment."  (*Compare* NoA ¶ 17(a), *with* Amended Notice ¶ 18.) Both pleadings depend on the same alleged misconduct:  FTX's financial condition, internal controls, customer-asset practices, risk management, liquidity, solvency, and affiliated-entity dealings.

12.    The Amended Notice also tries to shift to the arbitral tribunal a determination that belongs to this Court.  Rather than identify a concrete factual theory that falls outside the Global Settlement, Melamed says only that he "will not premise any claim in this arbitration" on "generalized conduct of FTX" or "other FTX-wide misconduct compromised under § 5.2 of the Plan," while preserving the same factual allegations and leaving their ultimate contours to be developed later.  (Amended Notice ¶¶ 6, 18, 20.)  That is not a solution; it is the problem.  If Melamed is allowed to proceed on that basis, the arbitral tribunal—not this Court—would decide in the first instance whether his reformulated allegations fall within the Plan's Global Settlement and the June 2 Order.  That is improper and is intended to usurp this Court's jurisdiction.  This Court has exclusive jurisdiction over matters arising in or related to these Chapter 11 Cases or the Plan, including the interpretation and enforcement of the Plan, and it already exercised that jurisdiction by enjoining Melamed's arbitration claims.[4]  (*See* Plan § 12.1.)

---

[4]    The Motion's request for a determination that the "prosecution" of the Amended Notice is not enjoined is particularly improper.  Even if the Court could assess the filing of a proposed pleading by reviewing the text attached to the Motion, it cannot know how Melamed might try to prosecute the claims once in arbitration, what factual theories he will pursue, what evidence he will rely on, what damages model he will advance, or how he

**III.** **The Amended Notice Independently Violates the Plan and Estimation Order Because It Attempts to Value Claims in Respect of Digital Assets.**

13.     The Motion should be denied for another reason:  the Amended Notice asks the arbitral tribunal to award damages that this Court's Threshold Rulings have already made legally irrelevant.  Melamed asks the tribunal to calculate his alleged "losses" by valuing the Liquid shares he says he exchanged for the Crypto Consideration, and separately to quantify, "under the principles of Japanese law," the value of the contractual performance he says FTX failed to deliver. (Amended Notice ¶¶ 25, 34-35.)  Melamed may say this Court, not the arbitral tribunal, will determine the bankruptcy treatment of any award.  But that misses the point.  This Court has *already* determined, in the Threshold Rulings, that claims in respect of the Crypto Consideration must be valued under the Plan and Estimation Order.  The Amended Notice therefore serves no legitimate purpose except to generate a non-Plan damages number that the Court has already held cannot control allowance or distribution in these Chapter 11 Cases.

14.     The reasoning here is straightforward.  The newly formulated Amended Notice seeks damages only with respect to the Crypto Consideration.  The Crypto Consideration consists of specified cryptocurrency tokens.  Claims seeking payment on account of that consideration are therefore "Claims in respect of Digital Assets."  Under Plan section 4.4, those claims "shall be calculated by converting the value of such Digital Asset[s] into Cash as of the Petition Date" using the conversion rates attached to the Estimation Order.  (Plan §§ 4.4, 5.2.) That result does not turn on labels.  Whether Melamed calls the claim indemnity, breach of warranty, breach of contract, or anything else, each theory asserts a right to payment on account

---

will respond to arguments that his claims remain premised on matters compromised, settled, resolved, and enjoined by the Plan and the June 2 Order.  Any ruling pre-authorizing the future "prosecution" of the Amended Notice would therefore be an advisory ruling on matters not yet before the Court.  *See Chafin*, 568 U.S. at 172.

of the Crypto Consideration. Each therefore falls within the Plan's broad definition of "Claim" and its mandatory treatment of claims in respect of digital assets.[5]

15. The Court has already resolved this issue. Avoiding this precise scenario was the impetus for including the question of valuation of the Crypto Consideration as one of the Threshold Rulings. In the Threshold Rulings, the Court rejected Melamed's argument "that his SPA claim falls outside the scope of the estimation order because he's entitled to monetary damages due to FTX's failure to deliver his cryptocurrency." (July 22, 2025 Tr., Ex. 2 at 126:15-25.) The Court held that "the [P]lan is broadly worded to capture all claims . . . 'in respect of a digital asset.'" (*Id.* 126:18-20.) It also explained that this result followed not only from "the plain language of the [P]lan," but also from basic fairness, because Melamed's crypto-related claim should be treated "no better than any other similarly situated party whose claim in these cases relates to crypto withheld from them by the debtors." (*Id.* 127:1-5.)

16. The Amended Notice tries to sidestep that ruling without saying so. Melamed's warranty theory asks the tribunal to calculate alleged "losses" by valuing the 20% of his Liquid shares that he sold in exchange for the Crypto Consideration. (Amended Notice ¶ 25.) His contract theory seeks "a loss corresponding to the value of the contractual performance to which he was entitled but did not receive," with the "precise quantification" to be established "under the principles of Japanese law." (Amended Notice ¶¶ 34-35.) But the exercise is the same no matter how Melamed describes it. He wants the arbitral tribunal to calculate a non-Plan

---

[5] Section 2.1.30 of the Plan incorporates the definition of "claim" in section 101(5) of the Bankruptcy Code: "The term 'claim' means (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

damages number for the Crypto Consideration, even though this Court has already held that the Plan and Estimation Order supply the governing valuation methodology.

17.     That exercise is futile and wasteful.  The Estimation Order precludes individualized valuation fights over digital-asset claims.  And the extensive litigation of the threshold issues was intended to provide clarity to the parties up front regarding the valuation of such claims and avoid postponing the issue until after conducting a full arbitration.  (*See, e.g.*, July 22, 2025 Tr., Ex. 2 at 119:1-4.)  Requiring the Trust to arbitrate the value of Melamed's Liquid shares or the value of FTX's alleged contractual performance, only to substitute the Estimation Order value later, would defeat the very purpose of the Court's prior rulings.  The Court should not allow Melamed to manufacture a nominal damages calculation that cannot under any circumstance be the value of his claim.

## IV.     The Amended Notice Cannot Proceed Because It Asserts a Theory Not Preserved in the SPA Claim.

18.     A proof of claim must give the estate fair "notice of the nature and basis" of the asserted liability.  *Charge Enters.*, 2024 WL 5112999, at *6.  That requirement matters because the estate and the Court rely on the proof of claim to determine what must be investigated, litigated, estimated, subordinated, allowed, or disallowed.  Melamed's approach turns that process on its head.  He treats the SPA Claim not as a claim to be resolved, but as a vessel into which he can pour a new theory whenever the last one fails.

19.     That is exactly what happened here.  Melamed first litigated the SPA Claim through the Threshold Rulings.  When those rulings limited the value and treatment of his claims, he filed the original Notice of Arbitration and asserted new, "legally distinct" claims.  When the Trust moved to enforce the prior orders that enjoin him from doing so, Melamed defended his new claims as supposedly falling within the narrow "Crypto Indemnity" reservation left open by the

Threshold Rulings.  (May 14, 2026 Tr., Ex. 5 at 35:11-12.)  The Court then entered the June 2 Order, holding that the claims described in the original Notice of Arbitration are barred by the Plan's Global Settlement.  Now Melamed returns with the Amended Notice, deletes the word "fraud," changes the labels, and says this latest version is different enough to proceed.  The claims allowance process does not permit that kind of serial revision.

20.     Melamed now alleges that FTX breached representations and warranties relating to the Crypto Consideration, that those breaches caused him to permit FTX to retain the Crypto Consideration, and that he is entitled to indemnification damages as a result. (*See* Amended Notice ¶¶ 18(4)-(5).)  But the SPA Claim does not assert that claim.  The breach of warranty claim in the SPA Claim concerns alleged misrepresentations that supposedly induced Melamed to accept FTX Consideration Shares that later proved to be worth less than represented. (SPA Claim ¶¶ 10-11.)  This Court expressly treated that claim, and any indemnity claim tied to it, as part of the "non-crypto portion" of the SPA Claim and held that those claims "must be subordinated."  (July 22, 2025 Tr., Ex. 2 at 128:2-129:6.)  That is not the crypto-related claim Melamed now says is the basis for arbitration.

21.     Nor can Melamed bridge the gap by invoking the SPA Claim's passing reference to "indemnification."  That reference did not tell the Trust or the Court that Melamed would later assert a separate damages claim based on alleged warranty breaches, or that Melamed would claim he was injured because those alleged breaches caused him to allow FTX to retain the Crypto Consideration.  And it did not preserve a free-floating right to repackage any later theory as a "Crypto Indemnity" claim.

22.     Melamed's new claims require leave to file a new, late-filed claim, or *at a minimum*, to amend the SPA Claim.  *See In re ADI Liquidation, Inc.*, 555 B.R. 423, 434-37 (Bankr.

D. Del. 2016). Melamed has done neither. Indeed, he expressly disclaims any amendment. (Mot. ¶ 4 n.3.) That disclaimer is fatal. He cannot avoid the standards governing the claims allowance process by insisting that nothing has changed while simultaneously advancing a claim the SPA Claim never disclosed.

23. The claims allowance process depends on finality. Melamed's approach would make finality impossible. A claimant cannot file an imprecise proof of claim, litigate threshold issues for years, lose, define a new theory in arbitration, lose again, and then revise the theory once more. The claims process is not a rolling invitation to keep reformulating a claim until something survives. The Court should reject that approach here. The Amended Notice asserts unpreserved claims not fairly encompassed in the SPA Claim. It should not be permitted.

## CONCLUSION

24. For the foregoing reasons, the Trust respectfully requests that the Court deny the Motion.

Dated:  July 16, 2026
        Wilmington, DE

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email:  landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        dunnec@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*