**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 23, 2026 at 9:30 a.m. (ET) (requested)** <br> **Obj. Deadline: At or prior to the Hearing (requested)** |

**FTX RECOVERY TRUST'S MOTION TO STRIKE ARGENT'S JOINDER**
**AND STATEMENT IN SUPPORT OF MOTION OF SETH MELAMED**
**FOR RECONSIDERATION OF THE JUNE 2, 2026 ORDER**

The FTX Recovery Trust (the "Trust")[2] respectfully submits this motion for entry

of an order, substantially in the form attached hereto as **Exhibit A**, striking *Argent's Joinder and*

*Statement in Support of Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order*

[D.I. 35985] (the "Joinder").  In support of this motion, the Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Argent Liquidation Trust ("Argent") seeks to interject itself in the bilateral

claims dispute between Seth Melamed and the Trust by filing a purported "Joinder" in Melamed's

already improper motion for reconsideration [D.I. 35827] (the "Motion for Reconsideraion") of

this Court's June 2, 2026 Order [D.I. 35768] (the "June 2 Order").  The June 2 Order held that

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

*Melamed's* claims in arbitration are barred by the Plan's Global Settlement provision (§ 5.2) in accordance with the Court's prior and consistent application of that settlement.  Whether *Argent's* separate claims against the estate are similarly barred is not before the Court.  Yet Argent expressly does not "ask the Court to reverse the June 2, 2026 Order as applied to Melamed's specific claims," instead arguing throughout the filing that its own claims should not be interpreted as being barred. (Joinder ¶ 8.)  The Joinder should be stricken.

2.      First, although styled as a joinder, Argent's filing is, in substance, a 55-page merits brief requesting affirmative relief concerning the interpretation of the Plan's Global Settlement as it relates to Argent's own claims.  Argent's brief exceeds the *combined* length of Melamed's Motion for Reconsideration and the Trust's objection thereto *by 20 pages*, raising new but flawed arguments about the interpretation, scope, history, and effect of the Plan.  Argent is not permitted to do so through an eleventh-hour filing in another claimant's contested matter.  It must wait its turn to litigate its own claims dispute, as every other creditor is required to do.  As the Court may recall, counsel for Argent stated at the June 18, 2026 hearing that it was working with the Trust to agree upon a litigation scheduling order with respect to its claims, the terms of which have now been substantially agreed.  (June 18, 2026 Hr'g Tr. [D.I. 35864], at 20:13-21:1.)  This representation to the Court makes Argent's Joinder particularly surprising given that Argent did not provide notice to the Trust about its planned gamesmanship.

3.      Second, Argent lacks both constitutional and statutory standing to seek affirmative relief in this contested matter.  Standing is absent for the simple reason that Argent has no direct stake in the Trust's dispute with Melamed.  The only asserted interest Argent has in the Trust's dispute with Melamed is the possible effect that the legal reasoning underlying the June 2 Order may have on Argent's own separate claims dispute.  (*See* Joinder ¶¶ 8, 53.)  That is precisely

the sort of generalized litigation interest that is insufficient to establish standing, which requires a concrete stake in the particular dispute before the Court. To be sure, Argent is a holder of a disputed claim against the Trust and therefore enjoys participatory rights in other aspects of these Chapter 11 Cases under section 1109(b) of the Bankruptcy Code. But those rights are not without limits and do not authorize Argent to seek affirmative relief in a bilateral contested matter in which it holds no direct interest.

4.     Third, even if Argent were permitted to seek affirmative relief in this contested matter, it failed to comply with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's local rules (the "Local Rules") governing requests for such relief. Argent neither filed the motion required by the Bankruptcy Rules nor complied with the Local Rules' timing requirements for obtaining affirmative relief. Argent is not permitted to circumvent those requirements by styling its filing as a "joinder."

5.     Argent asks this Court, on the eve of a hearing it has nothing to do with, to revisit the meaning of one of the Plan's central negotiated provisions—a provision that this Court approved after extensive negotiations and briefing and that has been the subject of years of proceedings before this Court. While Argent might want to wipe the slate clean, it does not work that way. Argent's predecessors, Silvergate Capital Corporation and Silvergate Bank—the entities who filed their proofs of claim—received notice and had the opportunity to participate in the Plan confirmation process. Argent does not get a do over with respect to key aspects of a Plan confirmed almost two years ago. Regardless, Argent certainly cannot interfere with the Trust's administration of other creditor claims. The Trust respectfully requests that the Court strike Argent's impermissible Joinder. If the Court nevertheless declines to strike the Joinder and is inclined to consider Argent's newly raised arguments, fundamental fairness requires that the Trust

be afforded, and the Trust hereby requests, at least fourteen days additional days to file a responsive brief so it can meaningfully respond.

**ARGUMENT**

**I.     Argent Is Not Entitled to Litigate Its Own Dispute Through Melamed's Motion for Reconsideration.**

6.      Argent's "Joinder" is not a joinder at all.  It is a 55-page merits brief seeking affirmative relief with respect to Argent's own separate claims dispute with the Trust, thinly disguised as a joinder in support of Melamed's Motion for Reconsideration.  Argent's brief exceeds the *combined* length of Melamed's Motion for Reconsideration and the Trust's objection thereto *by 20 pages*, raising new arguments about the interpretation, scope, and effect of the Plan that were not raised in Melamed's original objection to the Trust's Motion to Enforce, were not presented during the extensive oral argument on that motion, and are not contained in the Motion for Reconsideration that Argent purports to join.  Courts will strike such affirmative requests for relief as improper joinders.  *See, e.g.*, *In re Andrews*, 2008 WL 8013406, at *2 (Bankr. S.D. Cal. Feb. 20, 2008) (striking "what [debtors] called a 'joinder'" where it "exceeded the length of the Trustee's original objection by approximately 20 pages and contained significant argument, alleged evidence, and citations to case law not contained in the Trustee's timely opposition").

7.      Indeed, "to 'join' in a contested matter filing means nothing more than to agree with the position taken by the party being joined." *In re Frank's Oilfield Serv., Inc.*, 2013 WL 4048604, at *2 (Bankr. D.N.M. Aug. 9, 2013).  Yet Argent does the opposite.  It expressly *disclaims* any request that "the Court [] reverse the June 2, 2026 Order as applied to Melamed's specific claims" (Joinder ¶ 8), which is the only relief sought in the Motion for Reconsideration. Instead, Argent states that it joins solely "for the purpose of seeking correction of the interpretation of Section 5.2 reflected in the June 2, 2026 Order" because the Trust has invoked the Court's

interpretation of the Plan in connection with Argent's own claims litigation. (*Id.*)  That is not a proper joinder.  Rather, Argent is attempting to use Melamed's motion as a procedural vehicle to obtain different relief concerning its own pending claims dispute.

8.    The Joinder confirms as much.  It devotes multiple sections to Argent's history and claims against the estate (Joinder ¶¶ 42-53) and repeatedly advances arguments concerning Argent's own claims and its own purported rights under the Plan, including expressly "[a]pplying Section 5.2's plain text to Argent" (*id.* ¶ 66), arguing what "the Plan guarantees" to claims classified "like Argent's" (*id.* ¶ 73), and discussing the meaning of Plan provisions "as is relevant to Argent" (*id*. ¶ 17; *see also* ¶ 79).  Those arguments concern *Argent's* claims, not Melamed's.  Indeed, Argent has previously represented to the Court that it intended to "distinguish th[e] circumstances" giving rise to Melamed's Motion for Reconsideration and appeal, which Argent purported "are a little bit different" from its own claims.  (June 18, 2026 Hr'g Tr. [D.I. 35864], at 20:4-7.)  Argent further acknowledged that it would have the opportunity to make those arguments in connection with its own claims.  (*Id.* at 19:22-21:1.)  Consistent with that understanding, the parties have since agreed upon a schedule to govern the litigation of Argent's claims, which is in the process of being documented and submitted for the Court's consideration. That schedule would have any motions concerning threshold issues such as the Global Settlement being filed on October 1, 2026, with responsive briefing to follow.  Argent cannot bypass that process by attempting to litigate those issues through Melamed's Motion for Reconsideration on mere days' notice.

9.    Neither Argent's disagreement with the Court's approval and interpretation of the Plan nor application of the Global Settlement to Melamed's claims entitles it to hijack the Trust's bilateral dispute with Melamed or to obtain what is, in effect, an advance ruling on issues

that will be litigated in due course in Argent's own contested matter. *See In re Zimmer*, 586 B.R. 413, 414 (Bankr. W.D. Pa. 2018) (dismissing creditor's motion seeking relief that was already subject of separate pending adversary proceeding). Argent, like every other claimant, must wait its turn.

**II.     Argent Lacks Standing to Seek Affirmative Relief in the Trust's Bilateral Claims Dispute with Melamed That Has Nothing to Do with Argent.**

10.     Argent lacks standing to seek the affirmative relief of reconsideration in the Trust's contested matter with Melamed. *First*, Argent lacks Article III standing, which "is a 'threshold question in every federal case,'" including bankruptcy proceedings. *In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. 2007), *aff'd*, 2008 WL 4890896 (D. Del. Nov. 12, 2008). As Judge Goldblatt recently explained, "the party invoking the jurisdiction of a federal court—the one that is seeking relief—needs to have Article III standing," and that principle applies equally to a movant in a contested matter. *In re AIO US, Inc.*, 672 B.R. 261, 268-69 & n.26 (Bankr. D. Del. 2025). Argent cannot satisfy this requirement because it has no legally protected interest in whether the Plan injunction should be enforced to bar Melamed's arbitration claims. Argent's asserted interest is simply that the Court's reasoning may affect its own separate dispute with the Trust. (*See* Joinder ¶¶ 8, 53.) That is not a "direct" or "concrete stake in the relief it is seeking," and is therefore insufficient to invoke the Court's jurisdiction. *AIO*, 672 B.R. at 269; *see Conf. Grp., LLC* v. *F.C.C.*, 720 F.3d 957, 959 (D.C. Cir. 2013) ("[T]he mere fact that an adjudication creates a precedent that could harm a non-party does not create the injury-in-fact required for Article III standing."); *Allied World Ins. Co.* v. *Kenney & McCafferty, P.C.*, 2020 WL 2839098,

at *3 (E.D. Pa. June 1, 2020) ("[A] potential *stare decisis* effect is not itself a cognizable legal interest[.]").[3]

11.    *Second*, Argent likewise lacks statutory standing under section 1109(b) to participate in the Trust's dispute with Melamed.  Although Argent, as the holder of a disputed claim against the Trust, is a "party in interest" under section 1109(b) and thus enjoys a right to "appear and be heard" in the bankruptcy proceedings, "a party's status as a creditor does not entitle it to be heard with regard to every matter in a Debtor's bankruptcy."  *In re Terry*, 521 B.R. 90, 95 (Bankr. E.D. Pa. 2014) (movant's "broad right to participation" as "creditor of the Debtor" and "party in interest" does not "extend[] to the instant controversy"); *see also In re Morris Pub. Grp., LLC*, 2010 WL 599393, at *3 (Bankr. S.D. Ga. Feb. 10, 2010) ("§ 1109 does not give every party in interest the right to seek relief on every issue.").  Rather, "[b]ecause one's interests depend on the nature of the issue, 'a person may be a 'party in interest' for some purposes but not others.'"  *In re Grp. Mgmt. Corp.*, 2022 WL 14929963, at *6 (Bankr. N.D. Ga. Oct. 24, 2022) (quoting *In re Pulp Finish 1 Co.*, 2014 WL 201482, at *5-6 (Bankr. S.D.N.Y. Jan. 16, 2014)).  "Generally, a party in interest **must have a financial or legal stake in the outcome of the particular matter**."  *In re Old Carco LLC*, 500 B.R. 683, 691 (Bankr. S.D.N.Y. 2013) (emphasis added).  Argent's status as a disputed creditor therefore does not entitle it to seek affirmative relief in every contested matter before this Court, including the Melamed claims litigation.

---

[3]    *See also Janney Montgomery Scott, Inc.* v. *Shepard Niles, Inc.*, 11 F.3d 399, 407 (3d Cir. 1993) ("[T]he persuasive effect of a district court decision on [absent party]'s rights is speculative."); *Nationwide Ins. Co. of Am.* v. *Schiavo*,2025 WL 1094163, at *3 (E.D. Pa. Apr. 11, 2025) (policyholders' "interest in seeing the insurance contract interpreted broadly," was not a "legally protected interest," because a decision would not affect policyholders "other than by creating 'persuasive precedent'"); *In re Shale Oil Antitrust Litig.*, 2026 WL 1693965, at *6 (D.N.M. June 11, 2026) ("Nor does the potential stare decisis effect of any rulings give rise to a concrete or imminent injury. . . . That is not an injury in fact."); *Exxon Mobil Corp.* v. *F.E.R.C.*, 571 F.3d 1208, 1219 (D.C. Cir. 2009) ("[A] mere interest in FERC's legal reasoning and the possibility of a collateral estoppel effect are insufficient to confer a cognizable injury in fact." (internal citations omitted)).

12.     Courts have consistently applied those limits.  For example, "the case law on party-in-interest standing under § 1109(b) limits an objector to asserting its own rights – it may not assert the rights of others."  *AIO*, 672 B.R. at 274.  Creditors likewise lack standing to challenge aspects of a chapter 11 plan that do not affect their own rights.  *See In re Tonopah Solar Energy, LLC*, 657 B.R. 393, 402 (D. Del. 2022) (noting decision of this Court that claimants in bankruptcy "lacked Article III standing to object to portions of the Plan that did not affect their direct interest").  Moreover, "status as 'party in interest' under section 1109(b) does not give standing to file a Rule 60(b) motion" for relief from a final judgment or order, which is one of the bases for relief sought by Melamed in the Motion for Reconsideration.  *In re Grp. Mgmt. Corp.*, 2022 WL 14929963, at *6.

13.     In the context of contested matters, section 1109(b) generally permits a party in interest to *oppose* relief sought by another, but it does not authorize unrestricted participation.  *See In re Barrick Grp., Inc.*, 98 B.R. 133, 134-35 (Bankr. D. Conn. 1989) ("§ 1109(b) permits every party in interest to object to the relief sought by a motion in a Rule 9014 contested matter, but not to otherwise participate.").  This makes sense.  When a creditor *objects* to another creditor's claim, it ordinarily has a direct pecuniary interest in the outcome because disallowance of the competing claim increases the objecting creditor's share of the estate.  By contrast, where a creditor seeks *affirmative relief* in a contested matter, it becomes the party invoking the Court's jurisdiction and therefore must demonstrate a concrete injury that can be redressed by the outcome of that particular proceeding.  *See AIO*, 672 B.R. at 268-269.

14.     Here, Argent lacks statutory standing under section 1109(b) because the dispute in which Argent seeks to insert itself concerns only *Melamed's* claims and does not directly affect Argent's legal or pecuniary interests.  To the contrary, any pecuniary interest Argent has in

the bankruptcy estate would, if anything, be diminished if Melamed's claims were ultimately allowed, as those claims would theoretically compete with Argent's own recovery from the estate. Argent instead seeks to influence the legal reasoning that may later be applied in its own pending claims dispute. That interest does not transform Argent into a party with standing to seek affirmative relief in this bilateral contested matter. If it did, any creditor could inject itself into any claims dispute involving another creditor whenever it believed the Court's reasoning might prove relevant in separate litigation. Section 1109(b) does not authorize such a result.

### III.    Argent Cannot Evade the Procedural Requirements for Affirmative Relief Simply by Styling Its Motion as a "Joinder."

15.    Even if Argent were permitted to participate in this proceeding (which it is not), the Joinder should nonetheless be stricken because it seeks affirmative relief without complying with the procedures governing such requests. Bankruptcy Rule 9014(a) provides that, "[i]n a contested matter not otherwise governed by these rules, relief must be requested by motion." Bankruptcy courts have repeatedly recognized that a party may not use a joinder as a procedural shortcut to obtain affirmative relief on independent grounds without filing its own motion. *See, e.g.*, *In re NJ Affordable Homes Corp.*, 2007 WL 869577, at *3-4 (Bankr. D.N.J. Mar. 19, 2007) (denying relief requested in notice of joinder because party "failed to move before this Court, as required when seeking relief not expressly authorized by the Federal Rules of Bankruptcy Procedure"); *In re Jazz Photo Corp.*, 312 B.R. 524, 535 (Bankr. D.N.J. 2004) (joinder "is not a substitute for" applicable motion procedure (citation omitted)). Yet that is what Argent tries to do here. Rather than attempting to file its own motion requesting that the Court "correct" its interpretation of the Plan as applicable to its own claims, (Joinder ¶ 54), Argent impermissibly embedded that request within a document styled as a joinder to Melamed's motion in Melamed's separate contested matter. That procedural defect is compounded by the Joinder's untimeliness.

Had Argent sought affirmative relief by motion, it would have been required to comply with the notice period prescribed by this Court's Local Rules. *See* Del. Bankr. L. R. 9006-1(c)(i). Argent failed to do so. Its "joinder" must be stricken as a result. *See Frank's Oilfield*, 2013 WL 4048604, at *2 (if tardy objections could be cured by "joining" timely filings, "there could be no late filings in any contested matters as long as there was one timely filing").

**IV.     If the Court Nonetheless Declines to Strike the Joinder, It Should Permit Further Briefing Before Considering Argent's New Arguments.**

16.     If the Court nevertheless declines to strike the Joinder and is inclined to consider the arguments raised therein, the Trust respectfully requests an opportunity to respond before the Court considers those arguments on the merits. Argent's filing is not a conventional joinder that merely adopts arguments already presented by Melamed. Rather, Argent offers an entirely new narrative concerning the Global Settlement in an effort to influence the outcome of its own, separate claims dispute that is not ripe for the Court's consideration. In so doing, it injects 55 pages of flawed factual assertions, legal authorities, and arguments concerning the interpretation, scope, and purpose of the Global Settlement and the confirmed Plan that ignore the Court's findings to date and extend well beyond the arguments set forth in Melamed's Motion for Reconsideration.

17.     These issues do not arise as to Argent on a blank slate. The Global Settlement was a fundamental component of the Plan confirmed by Judge Dorsey almost two years ago. It resolved fundamental disputes that threatened to delay these Chapter 11 Cases for years. Following extensive negotiations among the Debtors, the Official Committee of Unsecured Creditors, and numerous other stakeholders, the Court approved the Global Settlement, incorporated it into the confirmed Plan, and found it to be "fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests." (Confirmation

Order [D.I. 26404] ¶ 41.)  This Court has since overseen the implementation of the provision and enforced it on numerous occasions.[4]  Argent's predecessors, the Silvergate entities that actually filed the proofs of claim, had notice and an opportunity to object and participate in those proceedings.

18.     Nonetheless, Argent's Joinder now asks the Court, on the eve of a hearing concerning Melamed's claims that Argent has nothing to do with, to revisit the meaning and scope of those central Plan provisions through the lens of Argent's own pending claims.  If the Court is inclined to consider those new arguments at this time, the Trust should be afforded a full opportunity to respond.  Given the extensive history of the Global Settlement before this Court and its central role in the confirmed Plan, the Court should not consider Argent's newly raised argument without the benefit of full briefing.  Accordingly, if the Court declines to strike the Joinder, the Trust respectfully requests that the Court defer consideration of Argent's arguments and establish a briefing schedule so that the Trust may fully address those issues and the Court may resolve them on a complete record.

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests that the Court grant this motion and strike the Joinder.

---

[4]  *See, e.g.*, Aug. 12, 2025 Tr. [D.I. 32344], at 39:15-21 ("If there was a valid claim under some sort of fraud, mismanagement, commingling claim, it has been compromised through the global settlement under the plan for the good of all creditors and customers of FTX[.]"); Nov. 24, 2025 Tr. [D.I. 33909], at 30:9-13 ("The concerns here are generalized to all claimants and . . . would give rise to a reconsideration of the order for every creditor that is a subject of that order[.]").

Dated:  July 20, 2026
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
      gluecksteinb@sullcrom.com
      dunnec@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the FTX Recovery Trust*