**EXHIBIT A**



*In re FTX Trading, Ltd.*, Case No 22-11068 (KBO)

**Melamed's Motion for Reconsideration of the June 2, 2026 Order [D.I. 35827] and Motion to Clarify [D.I. 35980]**

**Presentation of Seth Melamed**

**Hearing Date July 23, 2026**

McCarter & English, LLP
www.mccarter.com

# The June 2nd Order

- Paragraph 2 enjoins pursuit of the NoA claims as "premised on claims that have been compromised, settled, resolved, and enjoined under sections 5.2 and 10.8" of the Plan.

- Paragraph 3 makes the Order "immediately effective and enforceable."

> Confirmation Order, including those set forth in paragraphs 38-41, 49-50, 93, 119, and 143-144, Seth Melamed is enjoined from pursuing the claims described in his November 12, 2025 Notice of Arbitration (SIAC Case No. ARB602/25/VKH) because they are premised on claims that have been compromised, settled, resolved, and enjoined under sections 5.2 and 10.8 of the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates*.[2]
>
> 3.   This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

*June 2, 2026 Order [D.I. 35768] ¶¶ 2-3*



2

# Procedural Posture

- **June 2, 2026 —** Order entered enjoining pursuit of the claims described in the Notice of Arbitration [D.I. 35768].

- **June 16, 2026 (day 14) —** Notice of Appeal [D.I. 35825] and Motion for Reconsideration [D.I. 35827] filed.

- **July 9, 2026 —** Motion to Clarify [D.I. 35980] with proposed Amended Notice (Adler Decl. Ex. A) [D.I. 35981].

- **July 13, 2026 —** Argent Liquidation Trust (successor to Silvergate) files joinder and statement in support of reconsideration [D.I. 35985].

- **July 16, 2026 —** Trust objections [D.I. 36002, 36004]; Glueckstein Declaration [D.I. 36003].

- **July 20, 2026 —** Replies filed [D.I. 36014, 36015]; Allen Declaration [D.I. 36016]; Adler Declaration attaching the Trust's Silvergate Proof of Claim [D.I. 36015-1].



3

# Reconsideration — *§ 502(j)/Rules 3008, 9023 and 9024*

- Reconsideration is authorized under *§ 502(j)/Rules 3008, 9023 and 9024*

**§ 11 USC 502(j)** -A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

**Rule 3008.** Reconsidering an Order Allowing or Disallowing a Claim

A party in interest may move to reconsider an order allowing or disallowing a claim. After notice and a hearing, the court must issue an appropriate order.

**Rule 9023 – Rule 60** New Trial; Altering or Amending a Judgment

(a) **Except as this rule and Rule 3008 provide otherwise**, Fed. R. Civ. P. 59 applies in a bankruptcy case.

**Rule 9024 – Rule 59(e)**

- (1) mistake, inadvertence, surprise, or excusable neglect;

- (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

- (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

- (4) the judgment is void;

- (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

- (6) any other reason that justifies relief.



4

# The Reconsideration Standard Is Met

- The Trust concedes this Court's "general discretionary authority to review and revise interlocutory rulings" — and itself applies the Rule 59(e) standard. (D.I. 36002 ¶¶ 16-17.)

- **Clear error / manifest injustice:** Section 5.2's text compromises and settles claims into the allowance process; it does not expunge a timely filed claim that this Court referred to arbitration for liquidation.

- The manifest injustice is concrete: the injunction cuts off, for Melamed alone, exactly the process the Trust affords the creditor it calls the clearest case of a barred claim.

- Reconsideration will not prejudice the Trust: it retains every defense in the Court-ordered forum, and this Court retains allowance, classification, and treatment. (D.I. 32057 ¶ 3; D.I. 32058.)



# Reconsideration of an Interlocutory Order — This Court's Own Standard

- *Zohar* **(October 21, 2025):** this Court decided reconsideration of an interlocutory order under Rule 54(b), applicable via Bankruptcy Rule 7054 — such an order "may be revised at any time before the entry of a judgment." (Dunn v. Patriarch Partners, LLC (In re Zohar III, Corp.), Adv. Pro. No. 20-50534 (KBO), Adv. D.I. 1245 ¶ 4.)

- **The standard:** a movant "must still establish good cause for why the court should visit its prior [interlocutory] decision," and reconsideration is permitted "whenever consonant with justice to do so." (Id. (quoting Price v. United States, 2023 WL 8370107, at *2 (D. Del. Dec. 4, 2023)).)

- **If the June 2 Order is interlocutory — as the Trust insists (D.I. 36002 ¶ 16) —** good cause governs, not the heightened Rule 59(e) showing the Trust briefs.

- **Good cause here is post-June 2, and it is the Trust's own conduct:** the June 12 letter to the SIAC tribunal (D.I. 36003, Ex. 7); the June 16 Silvergate concessions (D.I. 35828 ¶¶ 5, 24); the July 16 finality reversal (D.I. 36002 ¶ 16). None of it was before the Court on June 2.



6

# The June 2nd Order Cannot Be both Conclusive and Interlocutory

- **June 12 —** Trust tells the SIAC tribunal the Order requires dismissal of the arbitration. (D.I. 36003 Ex. 7.)

- **June 16 —** Trust cites the Order to this Court as settled authority against a third party. (D.I. 35828 ¶ 33.)

- **July 16 —** Trust says the same Order is too interlocutory to be reconsidered under Rule 9023 or appealed. (D.I. 36002 ¶ 16 & n.5.)

- **Either way, the Motion is properly before the Court:**
  - If final — the Rule 9023 motion and the appeal were both filed on day 14 and are proper.
  - If interlocutory — the Court retains "general discretionary authority to review and revise" its ruling (D.I. 36002 ¶ 16, quoting Conex), and Rule 8004(d) preserves the appeal.

recoveries." (*See* Ex. B (Aug. 12, 2025 Hr'g Tr. 39:15-21).) The Court has similarly applied the Global Settlement to breach of contract and indemnity claims similar to those asserted here. (*See* [D.I. 35768] (enjoining pursuit of contractual indemnification claims in arbitration "because they are premised on claims that have been compromised, settled, resolved, and enjoined under

*D.I. 35828 ¶ 33 (June 16, 2026)*

Rules 9023 and 9024, which incorporate Federal Rules of Civil Procedure (the "Rules") 59 and 60, respectively. Those provisions are likewise inapposite because neither Bankruptcy Rule 9023 nor 9024 applies to interlocutory rulings. *See In re Conex Holdings, LLC*, 524 B.R. 55, 58 n.4 (Bankr. D. Del. 2015) (Rule 9023 "does not apply to motions for reconsideration of interlocutory orders," which merely seek to "invok[e] the . . . court's general discretionary authority to review and revise interlocutory rulings" (citations omitted)); *In re Enron Corp.*, 2003 WL 1562202, at *12 (denying motions for reconsideration pursuant to Rule 9024 because "Rule 60(b) does not govern relief from interlocutory orders"). The June 2 Order is interlocutory because it "adjudicates less than all related disputes between a creditor and the estate." *In re Flintkote Co.*, 471 B.R. 95,

*D.I. 36002 ¶ 16 (July 16, 2026)*



# Plan, §§ 5.2 and 10.9

- *Plan, §5.2 provides:*

- ***5.2 Global Settlement of Claims and Interests***

  *In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.*

- *Plan, §10.9 provides:*

  ### 10.9 Limitations on Exculpations and Releases

  **Notwithstanding anything to the contrary herein**, **none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity**: (a) **arising under any contract**, instrument, **agreement,** release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations, (b) arising under the FTX DM Global Settlement Agreement or (c) solely in the case of releases, expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.



# By its plain terms, § 10.9 excludes any releases and preserves "Causes of Action of any Person "arising under any contract"

- **Creditor or not, the Trust's reading releases its own claims.** § 5.2 reaches claims "against, by or among the Debtors . . . without limitation." Whether or not Binance holds a creditor claim, the Debtors' $1.76 billion claims against Binance are claims "by" the Debtors — so on the Trust's reading, FTX agreed at confirmation to release the estate's own recovery. The Trust cannot explain its own complaint under its own construction. (Adv. Pro. No. 24-50222, D.I. 1; slides 8, 20.)

- **The Plan says releases do not reach contract claims.** § 10.9: "[n]otwithstanding anything to the contrary herein," no release or exculpation in the Plan "shall operate to waive or release any obligation or Causes of Action . . . arising under any contract . . . ." If § 5.2 is the release the Trust says it is, § 10.9 is a limitation on it — and Melamed's SPA claims are contract claims. (Reply [D.I. 36015] ¶¶ 31–32.)

- **The Trust never answered.** § 10.9 was put to the Trust in the Motion to Clarify [D.I. 35980 ¶ 17] and again in the Reply [D.I. 36015 ¶¶ 31–32]. Its objections [D.I. 36002, 36004] engage § 10.8 and § 10.4 — and never mention § 10.9. Not once.

> 10.9. <u>Limitations on Exculpations and Releases</u>
>
>     **Notwithstanding anything to the contrary herein, ==none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity:==  (a) ==arising under any contract,== instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations,**
>
> **(b) arising under the FTX DM Global Settlement Agreement or (c) solely in the case of releases, expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.**

Confirmed Plan § 10.9 [D.I. 26404-1 at 84–85 of 96] — the complete provision



# Solicitation/Confirmation Briefs

- **July 2024** – Solicitation packages mailed – no reference or discussion of the purported release in the description of Section 5.2 of the Disclosure Statement.   Additionally, no reference to Section 5.2 (or bolded language as to its impact) on the ballots. *See* Rule 3016(c)

- **August 23, 2024 — the U.S. Trustee objects to § 5.2:**

  § 1123(b)(3) "does not allow a debtor to settle claims that creditors and interest holders may have against it, which is what Plan § 5.2 seeks to do" — and "[u]nless § 5.2 is narrowed," the Plan "does not comply with section 1123(b)(3)(A) and does not satisfy section 1129(a)(1)." (D.I. 23610 ¶¶ 66, 71.)

- **September 30, 2024 — Reply Brief ISO Confirmation:** § 5.2 is standard language — "several plans approved by this Court contain almost identical language" (¶ 79); a debtor cannot "unilaterally seek to modify claims in a Chapter 11 plan"; and "[t]he Debtors are not attempting to circumvent any requirement imposed by the Bankruptcy Code or the Bankruptcy Rules." (D.I. 26039 ¶ 81.)

> 66.    Section 1123(b)(3) only allows a debtor to settle claims it has against others; it does not allow a debtor to settle claims that creditors and interest holders may have against it, which is what Plan § 5.2 seeks to do. *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers,*

*U.S. Trustee's Objection to Confirmation [D.I. 23610] ¶ 66*

> 81.    The single case cited by the U.S. Trustee, *Varela* v. *Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) is completely irrelevant. (UST Obj. ¶ 66.)  In *Dynamic Brokers*, a debtor sought to modify the amount of a claim in a proposed plan instead of objecting to the amount of the claim in accordance with Bankruptcy Rule 3007.  293 B.R. at 496-497.  The court sustained the objections of the claimant, noting that the debtor needed to file a formal claims objection in respect of such claim because section 1123(b)(5) of the Bankruptcy Code does not authorize a debtor to unilaterally seek to modify claims in a Chapter 11 plan.  *See id*.  This has nothing to do with the U.S. Trustee's objection. The Debtors are not attempting to circumvent any requirement imposed by the Bankruptcy Code or the Bankruptcy Rules.  As detailed in the Confirmation Brief (Argument § II), the Debtors

*Debtors' Omnibus Reply ISO Confirmation [D.I. 26039] ¶ 81*



10

# The Claims Objection/Amended Claims Objection Do Not Reference Either § § 5.2 and § 10.8

- The Amended Claims Objection (D.I. 28643, Dec. 9, 2024 — filed nine weeks after Plan confirmation) never cites § 5.2, § 10.8.  Point Two argues the fraud claim in detail, puts forward an expert on Japanese law Plan § 4.4 and the Estimation Order — but "nowhere even mentions § 5.2 of the Plan." (Reply [D.I. 36015] ¶ 1; the pre-confirmation Objection, D.I. 20051, is likewise silent.)

> **II.   Melamed's Claim For the Crypto Consideration Must Comply With This Court's Estimation Order and the Debtors' Plan of Reorganization.**

*Amended Claims Objection [D.I. 28643] — Point Two heading*

39.   Melamed's fraud theory of recovery for the Crypto Consideration fares no better.  Even if Melamed were defrauded out of the right to obtain specific digital assets, he would be no different from the many thousands of FTX creditors who entrusted FTX with holding cryptocurrency, only to lose it due to the fraud committed by Samuel Bankman-Fried and the other FTX insiders.  His claim must therefore be valued in accordance with the Estimation Order.

-16-

Case 22-11068-JTD   Doc 28643   Filed 12/09/24   Page 17 of 30

40.   Even setting the Estimation Order to the side, Melamed himself has never stated what he believes his measure of damages for fraud should be, other than to refer to the value ascribed to the Crypto Consideration in the SPA.  As Mr. Tanaka explains, under Japanese law, the purpose of damages for tort claims such as fraud "is to restore the situation that would have existed had the wrongdoing not occurred." (Tanaka Decl. ¶ 20.)  Because Melamed claims that he was induced to sign the SPA based on misrepresentations that FTX made to him, "had the allegedly fraudulent misrepresentations not been made, [Mr. Melamed] would not have signed the SPA." (*Id.*)  His damages would thus be calculated "by determining the difference between the consideration Mr. Melamed received as part of the transaction and the true value of the Liquid shares and stock options that he sold to FTX pursuant to the SPA." (*Id.*)



11

# The Claims Objection/the Amended Claims Objection Do Not Reference Either § § 5.2 and § 10.8 (continued)

- The Amended Claims Objection (D.I. 28643, Dec. 9, 2024 — filed nine weeks after Plan confirmation) never cites § 5.2, § 10.8.  Point Two argues the fraud claim in detail, puts forward an expert on Japanese law Plan § 4.4 and the Estimation Order — but "nowhere even mentions § 5.2 of the Plan." (Reply [D.I. 36015] ¶ 1; the pre-confirmation Objection, D.I. 20051, is likewise silent.)

- If Section 5.2 meant what the Trust asserts , Point II in the ACO would have referenced Section 5.2 in terms of compliance with the Plan of Reorgaization.

> **II.   Melamed's Claim For the Crypto Consideration Must Comply With This Court's Estimation Order and the Debtors' Plan of Reorganization.**

*Amended Claims Objection [D.I. 28643] — Point Two heading*

41.   "[A] proper damages calculation would require knowing at least the true value of Mr. Melamed's Liquid shares and stock options that he sold to FTX." (*Id.* ¶ 23.)  While the value ascribed to those shares and options in the SPA may be probative for assessing their value, "it is not determinative." (*Id.* ¶ 24.)  This is particularly true where, as here, it is well-established that the FTX insiders routinely (i) used commingled customer funds to finance venture investments and acquisitions, (ii) prioritized speed above all else, (iii) failed to retain financial advisors and perform financial analyses, and (iv) showed little to no price sensitivity.  *See, e.g.,* Compl. for Avoidance & Recovery of Transfers & Obligations, *FTX et al.* v. *SkyBridge Capital II, LLC et al.* [D.I. 27829] ¶ 13 (alleging that FTX invested $45 million into hedge funds with "[n]o meaningful due diligence"); Compl. for Avoidance & Recovery of Transfers & Obligations, *Alameda Research Ltd. et al.* v. *Michael Giles et al.* [D.I. 1503] ¶ 52 (alleging Debtor West Realm Shires, Inc. bought Embed Financial Technologies Inc. for more than $200 million after nearly no diligence); Trial Tr. at 1500:18-1501:12 (former FTX executive Nishad Singh testifying that he

-17-

Case 22-11068-JTD   Doc 28643   Filed 12/09/24   Page 18 of 30

directed Debtor Alameda Research LLC to invest in Anthropic PBC without performing any due diligence on the company).  And with respect to the Liquid acquisition in particular, FTX and Liquid agreed to all material terms of the transaction less than two months after negotiations began, meaning FTX had no time to conduct fulsome due diligence on Liquid before agreeing to a deal price.



## The Claims Objection/the Amended Claims Objection and the Threshold Rulings Clearly Contradict the Trust's recent interpretation of Section 5.2

- The Trust's Counsel stated at the May 14, 2025 hearing that "[w]e have a proposal for how to stage this litigation in a way that we believe is most efficient for the Court and the parties, including Mr. Melamed himself."

- If the Global Settlement in Section 5.2 in fact had released fraud claims, the exercise of seeking the Threshold Rulings last year was a waste of resources and time.



Case 22-11068-KBO   Doc 36003-1   Filed 07/16/26   Page 6 of 32

April of 2023 and 2024, but which were not delivered, of course, because FTX went bankrupt in November of 2022.

The trust has raised various objections. And most notably, the trust seeks to subordinate the portion of Mr. Melamed's claims relating to the stock pursuant to Section 510(b), and to apply the FTX plan of reorganization to the portion of his claim that relates to the crypto consideration, which, as Your Honor knows, the plan calls for tokens to be valued at petition date prices, as set forth in the Court's digital assets estimation order.

Mr. Melamed has, of course, also moved to compel arbitration. The liquid group share purchase agreement has a Singapore law arbitration clause that, if enforceable, would call for arbitration in Singapore, and the trust opposes arbitration.

Now, Your Honor, both the trust and Mr. Melamed agree that there are certain threshold issues that should be decided before litigating on the merits. The parties disagree, however, on what those threshold issues are.

We believe that 510(b) -- I'm sorry. Excuse me.

We have a proposal for how to stage this litigation in a way that we believe is most efficient for the Court and the parties, including Mr. Melamed himself.

We believe that 510(b) subordination and application of the plan to the cryptocurrency tokens are



# Post Confirmation Conduct – The filing of the Silvergate Claim/Prosecution of Other Claims based on fraud/misconduct of insiders

- **October 31, 2024 — 23 days after confirmation —** the FTX debtors filed Proof of Claim No. 138 against the Silvergate debtors, In re Spring Valley Lots, LLC (f/k/a Silvergate Capital Corp.), No. 24-12158 (KBO).  The claim asserts claims for aiding and abetting breach of fiduciary duty, aiding and abetting conversion and unjust enrichment, Adler Decl. Ex. A [D.I. 36015-1].)

- **The Silvergate Claim pleads conduct squarely within § 5.2's:**  "the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders." (Plan § 5.2(a).)

- **Silvergate Claim still pending.**  The Silvergate Claim has never been withdrawn.

- **Other Actions.** In addition to Silvergate, there are other actions are being prosecuted by the Trust against third parties which is inconsistent with the Trust's interpretation of Section 5.2.

| Fill in this information to identify the case: | Date Filed: 10/31/2024 Claim No: 138 |
| --- | --- |
| Debtor _____Spring Valley Lots, LLC_____ | |
| United States Bankruptcy Court for the District of _____District of Delaware_____ | |
| Case number _____24-12157_____ | |

Official Form 410

**Proof of Claim**            **04/22**

*Proof of Claim No. 138, filed Oct. 31, 2024 (member case No. 24-12157, jointly administered under No. 24-12158) — Adler Decl. Ex. A [D.I. 36015-1]*

10.      Accordingly, the FTX Group files this Proof of Claim for any and all claims, rights, and causes of action that it has or may have against the Debtors.  Based on the foregoing conduct, and the conduct described in the Ray Declaration, the First Interim Report, and the Second Interim Report, each of which is incorporated here by reference, the FTX Group asserts that it has legal claims against the Debtors, including, but not limited to, claims for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment.

*Id., Addendum ¶ 10*



# The Argent (Silverlake's) Joinder [D.I. 35985]

- **Silvergate's successor — asserting damages "well over a billion dollars" — joins Melamed's motion.** Argent reads § 5.2 as a channeling provision: claims flow into Article 8 allowance and Article 4 distributions. Nothing is extinguished.

- **Under the Trust's reading, the Plan dismantles itself:** the Disputed Claims Reserve (§ 8.5) "has no reason to exist," Article 8's claims process "is meaningless," Article 4's promise of 100% payment "can never be fulfilled," and § 10.4's consent-based releases were "an elaborate exercise in futility." (¶ 3.)

- **"Against, by or among" is mutual.** If § 5.2 extinguished all claims against the Debtors, "it must equally extinguish all Causes of Action by the Debtors" — including the Trust's own Silvergate and Binance claims. (¶¶ 5–6.)

> The extinguishment theory is not a faithful reading of the Plan. It is a *post-hoc* litigation position, manufactured months after confirmation, that has expanded with each successive dispute—from silence, to customer fraud claims, to non-customer fraud claims, to breach of contract claims, and now to all the claims of a non-customer bank. The Debtors never disclosed this interpretation to creditors, nor did they present it to the Court at confirmation. To the contrary, the Debtors told the Court that Section 5.2 was standard boilerplate—with language "almost identical" to the language found in "several plans approved by this Court"—and that they were "not attempting to circumvent any requirement imposed by the Bankruptcy Code or the Bankruptcy Rules." *See* Debtors' Confirmation Reply ¶¶ 79, 81. Those representations were made to obtain confirmation, and they should be honored now.

*Argent Joinder [D.I. 35985] ¶ 4 — incorporated by reference, Reply [D.I. 36015] ¶ 2 n.2*



15

# Argent's (Silverlake's) Joinder (cont.)

- **The Plan uses extinguishment words — elsewhere.** § 8.3: claims "adjusted or expunged" and "deemed disallowed"; § 6.2: late rejection claims "automatically disallowed, forever barred"; § 10.4: non-opt-out creditors "irrevocably and forever release" claims. § 5.2 uses none of these terms. (¶¶ 82–83, 85.)

- **Celsius shows what extinguishment language looks like.** The Celsius plan paired a global-settlement provision "materially identical to Section 5.2" with a separate Class Claim Settlement expressly providing that claims "shall be expunged from the Claims Register." The FTX drafters wrote no such provision. (¶¶ 84–85.)

- **Any ambiguity cuts against the drafter.** The Debtors drafted the Plan; the Trust is their successor; both were represented by the same counsel. "[A]ny doubt as to whether Section 5.2 effects a wholesale disallowance of filed proofs of claim must be resolved against it." (¶ 86 & n.18.)

> consideration. *Id.* § 10.4. The Debtors used none of these terms in Section 5.2. Instead, they chose "compromise, settlement and resolution"—words connoting a process, not a wholesale destruction. This Court should enforce the words the drafters wrote, not the words the FTX Trust now wishes it had written.

*Argent Joinder ¶ 82 — incorporated, Reply ¶ 2 n.2*

> 85.    To be clear, there is no provision anywhere in the Plan that uses the words "expunged" or "disallowed" in connection with Section 5.2. There is no opt-out mechanism tied to Section 5.2. And there is no defined consideration provided for any purported extinguishment effected by Section 5.2 on the Effective Date. Had the drafters intended Section 5.2 to expunge filed proofs of claim—as the Celsius drafters intended with their Class Claim Settlement—they knew exactly how to draft such a provision. They chose not to. The contrast between the two plans confirms that Section 5.2, standing alone, does not and cannot accomplish any wholesale extinguishment the FTX Trust now urges.

*Argent Joinder ¶ 85 — incorporated, Reply ¶ 2 n.2*



16

## Conclusion – The Court Should Grant The Motion To Reconsider

- **Grant reconsideration.** Section 5.2 compromises and settles claims into the claims allowance process. The SPA Claim proceeds in the forum this Court ordered [D.I. 32058], where every Trust defense — including its Section 5.2 position — remains available.

- **Alternatively, grant clarification.** The Amended Notice asserts only the claims preserved in Claim 3385 and reserved by this Court — the claims the June 2 Order expressly did not reach.



# Motion to Clarify - [D.I. 35980]

- **On July 9, 2026 — Melamed filed the** Motion to Clarify [D.I. 35980] with proposed Amended Notice to be file din the SIAC Proceeding (Adler Decl. Ex. A) [D.I. 35981].

- The Trust has opposed the Motion on four grounds.

  - The Motion is premature and seeks an advisory ruling

  - The Amended Notice violates the June 2nd Order

  - The Amended Notice independently violates the Plan and Estimation Order

  - The Claim in the Amended Notice were not preserved in the SPA Claim (Claim 3385)



## Response to Point I – The Motion to Clarify Does not Seek an Advisory Ruling

- The Motion does not seek an advisory ruling.   The Court has entered an injunction against Melamed.  The Motion to clarify is the proper way to determine whether all claims in the SIAC proceeding were enjoined or just those that related to fraud claims.

- Case law supports this position.  *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).  A party facing uncertainty about what an injunction permits "may seek clarification" from the issuing court.

– The Trust cannot label the Motion advisory while threatening contempt over Melamed's conduct under the same Order (D.I. 36004 n.3).

– Clarification is the orderly path: it protects the Trust as much as Melamed from further motion practice over scope.



19

## Response to Point II  – The Amended Notice does not violate the June 2nd Order

- In the Motion to Enforce, the Trust argued only that claims for fraud were barred by Section 5.2 of the Plan.

- The Amended Notice amends the description of the existing arbitration, deletes the enjoined claims and limits the claims to purely contract claims. A claim for breach of representations and warranties is a contract claim, and it differs from a fraud claim in its very elements: it requires no scienter, no intent to deceive, no justifiable reliance, and no misconduct — only a bargained-for representation that proved untrue, and resulting loss. *See e.g., Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005); *Cobalt Operating, LLC v. James Crystal Enters., LLC*, 2007 WL 2142926, at *28 (Del. Ch. July 20, 2007) (representations "serve an important risk allocation function"; reliance is not an element), *aff'd*, 945 A.2d 594 (Del. 2008).

- The Trust's arguments that this was conceded by counsel are incorrect. Counsel indicated **that** the 1) trigger is "the misrepresentations themselves" (44:20–22); b) there is "a separate cause of action for fraud, a separate cause of action for indemnity";  (3) § 5.2 "didn't preclude you from asserting misrepresentations or breaches of warranties" (45:17–18); and that 4) Section 10.9 of the Plan stated that if you have a specific contractual provision that provides a claim or clause of action, that claim was not being released (49:14-19).

- If the Trust's argument were correct, Section 5.2 subsumes all claims of creditors (and the estate) whether they are based in tort or in contract.



# Response to Point III
# § 4.4 Values Claims; It Does Not Decide Them

- **The premise (Obj. ¶¶ 13–17):** every theory "asserts a right to payment on account of the Crypto Consideration," so arbitration is "futile and wasteful."

- **§ 4.4 values claims; it does not decide them.** Section 4.4 ("Valuation of Claims") converts digital-asset claims "into Cash as of the Petition Date" — "[u]nless otherwise expressly provided" — and the Estimation Order estimates token values under § 502(c). Neither decides whether FTX breached the SPA's warranties or owes the Clause 9.3 indemnity. (Plan §§ 4.4–4.5; D.I. 7090.)

- **The Court heard this argument in July 2025 — and compelled arbitration anyway.** Liquidate in arbitration; value at allowance. Sequential functions, not a bar. (Tr. 124:9–12; 126:23–25; D.I. 32058.)

- **A reserved claim is not an "already determined" claim.** The written order reserves "allowance, classification, and subordination" of the Crypto Consideration indemnity. (D.I. 32057 ¶ 3.)

- **The Amended Notice concedes the mechanics — and disclaims the premise.** "[N]ot merely a . . . claim to delivery of cryptocurrency assets" (¶ 36); every bankruptcy consequence — including "the effect, if any, of Plan § 4.4 or the Estimation Order" — is expressly this Court's to decide. (¶ 26; Ex. A row 4, core slide 9.) And if § 4.4 caps recovery "under any circumstance" (Obj. ¶ 17), the arbitration threatens the estate with nothing — the futility complaint refutes the injunction, not the Motion.

> Finally, unlike Yellow, the adjudication of the SPA claim can be entirely disposed of in arbitration without any need of piecemeal litigation or significant subsequent proceedings before this Court; therefore, I will not exercise

July 22, 2025 Hr'g Tr. 124:9–12 (D.I. 36003, Ex. 2)

> The estimation order and relevant plan provisions, therefore, must be used to value any arbitration award Mr. Melamed obtains related to the unpaid crypto consideration.

July 22, 2025 Hr'g Tr. 126:23–25 (D.I. 36003, Ex. 2)

> 7090] (the "Estimation Order"). The Court reserves judgment regarding the allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration.

Order Partially Sustaining Objection [D.I. 32057] ¶ 3 (July 31, 2025)



21

## Response to Point IV –
## The Amended Notice Asserts Claims that were clearly identified in Claim 3385

- **Claim 3385, Annex ¶¶ 4(b)-(d), 9 (June 2023):** breaches of SPA representations and warranties → indemnity under SPA Section 9.3 → losses on the unpaid Crypto Consideration.

- **Amended Notice ¶ 18 ①-⑦:** the same representations, the same breaches, the same indemnity chain — now clearly defined — fulfilling the condition the Court set from the bench: judgment reserved "until such claim is clearly defined" (July 22, 2025 Tr. 129:7–11; conceded at D.I. 35558 at 3 n.3).

- **The Court itself parsed the claim's theories:** "Melamed claims for breach of warranty, misrepresentation, fraud, and indemnification" — the Court's words, July 22, 2025. (Tr. 128:7–8.)

July 22, 2025 Hr'g Tr. 128:7–8 (D.I. 36003, Ex. 2)



22

## Response to Point IV –
## The Amended Notice Asserts Claims that were clearly identified in Claim 3385

**Claim 3385, Annex — filed June 29, 2023 (D.I. 35244-1, Ex. 1)**

by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or of its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA. Claimant asserts a general

*Annex ¶ 4(b)-(d) — warranties, retained consideration, indemnity*

cryptocurrency, as determined on November 19, 2021, made up of 39.132 bitcoin, 560.48 ETH, 11,884.98 Solana, and 47,532 FTT tokens (the "Purchase Consideration"). The Debtor retained the cryptocurrency component of the Purchase Consideration as security against certain indemnification obligations that might arise under the SPA (the "Retained Consideration"), with

*Annex ¶ 9 — crypto retained as security for SPA indemnification obligations*

**Amended Notice — D.I. 35981, Ex. A (July 9, 2026)**

17. The information and assurances that FTX and its management communicated directly and confidentially to the Claimant breached the specific contractual representations and warranties that FTX made to the Claimant in the SPA. In particular, the evidence that the Claimant will present in this arbitration will show that:

*¶ 17 — breaches of SPA representations & warranties   =   Annex ¶ 4(b)*

25. FTX's breaches of its contractual representations and warranties caused the Claimant to suffer losses corresponding to the value of the 20 percent portion of the purchase price to which these breached representations and warranties related. The Claimant will establish the correct quantification of those damages under

*¶ 25 — losses on the Crypto Consideration tranche   =   Annex ¶ 4(c) + ¶ 9*

22. Clause 9.3 of the SPA contractually obligates FTX to indemnify the Claimant for any "Losses" caused to the Claimant by FTX breaching its contractual obligations to the Claimant.

*¶ 22 — Clause 9.3 contractual indemnity   =   Annex ¶ 4(d)*

- ▪ **Same representations, same breaches, same Clause 9.3 indemnity chain — itemized in the timely proof of claim three years before the June 2 Order. Nothing is new, and nothing is being amended. (Filed as Reply Ex. A — D.I. 36022-1, July 21, 2026.)**



## Response to Point IV
## The Amended Notice Asserts Claims that were clearly identified in Claim 3385

21.   Nor can Melamed bridge the gap by invoking the SPA Claim's <mark>passing reference to "indemnification."</mark>  <mark>That reference did not tell the Trust or the Court</mark> that Melamed would later assert a separate damages claim based on alleged warranty breaches, or that Melamed would claim he was injured because those alleged breaches caused him to allow FTX to retain the Crypto Consideration.   And <mark>it did not preserve a free-floating right to repackage any later theory as a "Crypto Indemnity" claim.</mark>

The Objection: a "passing reference" — nothing preserved. (D.I. 36004 ¶ 21, July 16, 2026)

| 1 | Annex ¶ 4(b): | Amended Notice ¶ 17: |
|---|---|---|
| | "Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd. . . . (b) multiple breaches of warranties and representations contained in the SPA and elsewhere . . . ." | "The information and assurances that FTX and its management communicated directly and confidentially to the Claimant breached the specific contractual representations and warranties that FTX made to the Claimant in the SPA." (Followed by itemized breaches ①–⑦, each tied to a specific SPA provision, e.g., Paragraph 7 of Part B to Schedule 6.) *Same breaches of SPA representations and warranties — now itemized provision by provision.* |

Row 1 — warranty breaches: Annex ¶ 4(b) = Amended Notice ¶ 17

### EXHIBIT A
**Side-by-Side Comparison: Proof of Claim No. 3385 (June 29, 2023) and the Proposed Amended Notice of Arbitration (July 9, 2026)**

Left column: Claim No. 3385, Annex (as filed June 29, 2023; copy from the Trust's own exhibit, D.I. 35244-1, Ex. 1). Right column: Proposed Amended Notice of Arbitration (D.I. 35981, Ex. A). All quotations verbatim.

| CLAIM NO. 3385 — ANNEX (JUNE 2023) | PROPOSED AMENDED NOTICE (JULY 2026) |
|---|---|

Exhibit A to the Reply [D.I. 36022-1], filed July 21, 2026

| 4 | Annex ¶ 4 (conclusion): | Amended Notice ¶ 26: |
|---|---|---|
| | "Claimant asserts a general, unsecured, non-subordinated claim against the Debtor . . ." — asserted in, and subject to, this Court's claims-allowance process since June 2023. | "For the avoidance of doubt, the Claimant acknowledges that the Bankruptcy Court has the power to determine the bankruptcy consequences of any award in respect of this indemnification claim, including any dispute as to allowance, bankruptcy valuation, classification, subordination, distribution, or the effect, if any, of Plan § 4.4 or the Estimation Order." *Every bankruptcy consequence expressly reserved to this Court.* |

*Same representations. Same breaches. Same Clause 9.3 indemnity chain. Itemized in the timely proof of claim three years before the June 2, 2026 Order.*

Row 4 — every bankruptcy consequence reserved to this Court: Annex ¶ 4 = Amended Notice ¶ 26



24

# The Trust's Account of the SIAC Proceedings — Contradicted by Its Own Exhibits

- **The objection:** Melamed "asked the tribunal to stay the effect of the June 2 Order by holding the arbitration 'in abeyance.'" (D.I. 36002 ¶¶ 5, 32.)

- **The email itself (their Ex. 6) asked one thing:** that the Statement of Claim deadline "continue to be held in abeyance (in the manner set out in Procedural Order No 2)" — the Tribunal's own scheduling mechanism. (PO2 ¶¶ 41, 43(c).)

- **Their own sworn declaration describes it accurately:** a request "that the deadline for his Statement of Claim be 'held in abeyance.'" (Glueckstein Decl. ¶ 7.) The brief contradicts its own declaration.

- **And the chronology is inverted:** the June 4 email predates the Trust's June 12 termination request by eight days — it cannot have been a substitute for "opposing dismissal on the merits."

> entirety.   (Exs. 8, 9.)  Rather than opposing dismissal on the merits, however, Melamed asked the tribunal to ==stay the effect of the June 2 Order by holding the arbitration== "in abeyance" pending

*D.I. 36002 ¶ 5*

> We write regarding the status of the bankruptcy proceedings, in light of the 2 June 2026 court order (of which the Respondent has submitted a copy).
>
> The Claimant intends to seek reconsideration of the order and/or to appeal the order, and will take corresponding steps shortly. The Claimant therefore respectfully requests that the ==deadline for the Statement of Claim== continue to be held in ==abeyance (in the manner set out in Procedural Order No 2)== until those processes have completed.
>
> Respectfully
> Daniel Allen

*Allen email to Tribunal, June 4, 2026 (D.I. 36003-6, Ex. 6)*

> that Melamed intended to seek reconsideration and/or appeal of the Bankruptcy Court's June 2, 2026 order and ==requesting that the deadline for his Statement of Claim be== "==held in abeyance==" pending completion of those processes.  A true and correct copy of that email is attached hereto as

*Glueckstein Decl. ¶ 7 (D.I. 36003)*

