# EXHIBIT B

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

February 6, 2024

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

The Government writes to request that the Court conduct a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), concerning potential conflicts of interest that could arise from defense counsel's representation of a defendant in a separate criminal matter. In particular, Marc Mukasey and Torrey Young, who filed notices of appearance on behalf of the defendant on January 9, 2024, also represent Alex Mashinsky, a defendant in *United States v. Mashinsky*, 23 Cr. 347 (JGK). Because there is a possibility that a conflict of interest could arise in either case, the Government is seeking *Curcio* hearings in both matters so that the defendants may knowingly waive any conflict that could arise.

A. Applicable Law

A defendant has a right under the Sixth Amendment to conflict-free legal representation. *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). District courts have two separate obligations where there is a possible conflict of interest. First, when a court is aware of the possibility of an attorney's conflict of interest, it has a threshold obligation to "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Id.* at 153; *see also United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998). As the Second Circuit has explained:

> The trial court has an obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection or when it knows or reasonably should know of the possibility of a conflict of interest. Failure to engage in such an inquiry, when it is required, results in an automatic reversal. An inquiry allows the trial judge to determine the precise nature of the conflict and how to proceed, *i.e.*, whether to disqualify counsel, obtain a waiver from the defendant pursuant to *Curcio*, or take no action.

*United States v. Stantini*, 85 F.3d 9, 13 (2d Cir. 1996) (citations and internal quotation marks omitted). Second, if the court determines that defense counsel has an actual or potential conflict of interest, the court has a "'disqualification/waiver' obligation" to determine whether the conflict is so severe as to obligate the Court to disqualify the attorney or a lesser conflict that can be waived in a *Curcio* hearing. *Kliti*, 156 F.3d at 153; *Levy*, 25 F.3d at 153.

An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citations and internal quotation marks omitted). To show divergent interests, "[s]peculation is not enough." *Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000), nor is a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). A potential conflict of interest, by contrast, occurs when "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *Kliti*, 156 F.3d at 153 n.3) (internal quotation marks omitted).

Once the court has determined that an actual or potential conflict exists, it must determine whether the conflict is waivable. *Levy*, 25 F.3d at 153. Because the Sixth Amendment guarantees not only the right to an attorney of undivided loyalty but also, with certain exceptions, to an attorney of one's own choosing, where those rights conflict the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation. *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012) (citing *Curcio*, 694 F.2d at 24-25). Nonetheless, because the Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *Wheat v. United States*, 486 U.S. 153, 160 (1988), "there exists a narrow class of so-called per se conflicts that are not susceptible to waiver." *Cain*, 671 F.3d at 293.

Conflicts "such as an attorney's representation of two or more defendants . . . are generally waivable." *Id.* at 127 (citation omitted). "Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he 'can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel.'" *Id*. (quoting *Fulton*, 5 F.3d at 613). "In the multiple representation situation, the defendant 'can be advised by independent counsel of the dangers' of such matters as 'one defendant's cooperating with the government,' and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another accused." *Id.* (quoting *Fulton*, 5 F.3d at 613).

If a court determines that there exists a conflict that does not require disqualification, it "must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Kliti*, 156 F.3d at 153; *see also Levy*, 25 F.3d at 153. The Second Circuit has set forth the requirements for such a *Curcio* hearing as follows:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

B. Discussion

Mr. Mukasey's and Ms. Young's representation of defendants Bankman-Fried and Mashinsky in separate cases creates a potential conflict of interest; this potential conflict of interest, however, is waivable.

As background, Mashinsky was the cofounder and former CEO of Celsius Network LLC and its related entities (collectively, "Celsius"), a now-bankrupt cryptocurrency lending platform. As the trial evidence in this matter established, Celsius lent money to Alameda Research, and certain loans were repaid by Alameda Research to Celsius using customer funds. The relationship between Alameda Research and Celsius creates the potential for conflicts in several respects.

First, Celsius's status as a victim of the fraud on Alameda Research's lenders may create a conflict in the simultaneous representation of Bankman-Fried (the owner of Alameda Research) and Mashinsky (the former CEO of Celsius). At Bankman-Fried's trial, the Government presented evidence that Alameda Research was borrowing money from Celsius, that Celsius asked for loans to be returned, and that Alameda Research ultimately repaid certain Celsius loans with customer money. (Trial Tr. at 817-18, 1771.) In summations, the Government argued to the jury that the defendant had conspired to defraud Alameda Research's lenders, while the defendant at various times during the trial disputed the fraud. At sentencing, the Government will argue that Alameda Research's lenders, including Celsius, were victims of the fraud, and that lenders are entitled to restitution. This has the potential to create a conflict in the representation of Bankman-Fried and Mashinsky. Bankman-Fried may wish to argue at sentencing or in the event of an appeal that Celsius and similar lenders were not defrauded and are not entitled to restitution. Celsius, and potentially Mashinsky, may take a contrary position. Indeed, in a separate court proceeding, Mashinsky has argued that Celsius did not know that Alameda Research was a "risky counterparty." Def. Mem. of Law in Support of Motion to Dismiss Complaint, *People v. Alex Mashinsky*, Index No. 450040/2023 (N.Y. Cty May 2, 2023), https://shorturl.at/kyDJ9. In short, defense counsel's clients may be incentivized to take different, conflicting positions on Celsius's victim status, due diligence, and entitlement to restitution, creating a potential conflict of interest for the attorneys.

Second, it appears that Mashinsky has blamed Celsius's collapse, at least in part, on actions taken by Alameda Research, possibly at Bankman-Fried's direction, to short CEL, the native cryptocurrency token issued by Celsius. Some of the public reporting on this topic has suggested

that Mashinsky claimed that Alameda Research used its unique, secret ability to borrow unlimited funds to borrow CEL on FTX, flooding the market and pushing down the price of CEL. *See* The Block, *Celsius's Alex Mashinsky Responds to New York State Lawsuit Blaming Him for the Crypto Lender's Collapse* (May 3, 2023), https://www.theblock.co/post/229211/alex-mashinsky-celsius-nys-lawsuit-defense. This allegation creates the potential for a conflict of interest. If true, while Mashinsky's allegations could possibly aid in his own defense, in Bankman-Fried's case Bankman-Fried's alleged manipulation of CEL could be additional relevant conduct that the Court could consider at Bankman-Fried's sentencing. Thus, counsel could have an incentive in the *Mashinsky* case to develop evidence of Alameda Research shorting CEL and to air those facts in the litigation, while the same counsel may have an incentive to minimize or refute such allegations in the *Bankman-Fried* case.

Third, in this case, defense counsel has gained access to millions of records pursuant to a protective order, which will limit defense counsel's use and disclosure of that information. That too creates the potential for conflict. If defense counsel views something in the Bankman-Fried materials that they believe may be useful to Mashinsky, they will be limited in their ability to share that information with Mashinsky or use it in Mashinsky's defense. Thus, defense counsel's mere agreement to be subjected to a protective order creates the potential for a conflict of interest between their two clients.

Finally, we understand that, prior to Celsius's bankruptcy, Bankman-Fried had discussions with Celsius executives about the financial condition of Celsius and the prospect of FTX purchasing Celsius and Bankman-Fried replacing Mashinsky as CEO. Bankman-Fried's involvement at this stage of Celsius's history could cause him to have information that is relevant to the defense of Mashinsky, but that defense counsel is not authorized to share with Mashinsky.

That said, these potential conflicts are not so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *Levy*, 25 F.3d at 153. And such conflicts, to the extent they manifest, "are generally waivable" or can be dealt with through the appointment of additional counsel. *Id.* at 127. Here, Bankman-Fried already has conflict-free trial counsel that could advise him on issues relating to Celsius and Mashinsky. Nonetheless, to ensure the integrity of the proceeding and guard against the risk that the defendant may, in the future, complain about the conflict, the defendant must "knowingly and intelligently waive his right to conflict-free representation" to proceed with this representation. *Kliti*, 156 F.3d at 153.

Therefore, the Government respectfully requests that the Court schedule a *Curcio* hearing to review the potential conflicts of interest with Bankman-Fried, and to confirm that he knowingly waives any such conflict. The Government has conferred with Mr. Mukasey and Ms. Young, who have agreed to the scheduling of a *Curcio* hearing. For the convenience of the Court, the

Government is attaching a set of proposed questions to be put to the defendant as part of the *Curcio* inquiry.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ Nicolas Roos
Nicolas Roos
Danielle R. Sassoon
Samuel Raymond
Thane Rehn
Danielle Kudla
Assistant United States Attorneys
(212) 637-2421

cc: Defense Counsel (by ECF)

**Proposed *Curcio* Examination**
***United States v. Bankman-Fried,*** S5 22 Cr. 673 (LAK)

**A. <u>Introductory Questions To Establish Competence</u>**

Age

Education

Current medications

Alcohol, drugs, medications within past 24 hours

Is anything interfering with your ability to understand what is happening here today?

**B. <u>Potential Conflict of Interest Posed by the Representation</u>**

1. Are you satisfied with the services of Mr. Mukasey and Ms. Young thus far in the case?

2. Have Mr. Mukasey and Ms. Young informed you that their firm represents Alex Mashinsky in connection with a prosecution in this district for conduct that may involve you as well?

3. How long have you been aware of this issue? How much time have you spent discussing this issue with them? Have you discussed this issue with your trial counsel, Mr. Everdell and Mr. Cohen?

4. Do you understand that the fact that Mukasey and Young simultaneously represent Mr. Mashinsky may mean that, in some cases, they may be required to put his interests before yours?

5. Specifically, do you understand that Mr. Mukasey and Ms. Young may be required to forgo sentencing arguments that may be favorable to you because of their duty of loyalty to Mr. Mashinsky?

6. Do you understand that there may be ways in which Mukasey and Young's representation of you will be impaired by their office's representation of Mr. Mashinsky that are not currently foreseeable?

7. Do you understand that the potential conflict has existed since Mr. Mukasey and Ms. Young began representing you?

8. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

**C. The Right To Conflict-Free Representation**

8. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

9. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

10. Have you consulted with any attorneys other than Mr. Mukasey and Ms. Young about the dangers to you of this potential conflict of interest?

11. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

12. Have you consulted with independent counsel about the conflict or potential conflict of interest that I have described to you today? Has counsel fully advised you about the situation? Do you wish to receive additional time to consult with independent counsel?

**D. Continuation of Curcio Hearing**

13. After considering all that I have said today about the ways in which Mr. Mukasey and Ms. Young's representation of Mr. Mashinsky may adversely affect your defense, do you believe that it is in your best interest to continue with them as your attorneys? Is that your wish?

14. Do you understand that by choosing to continue with Mr. Mukasey and Ms. Young as your attorneys, you are waiving your right to be represented solely by an attorney who has no potential conflict of interest?

15. Are you knowingly and voluntarily waiving your right to conflict-free representation?

16. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Mukasey and Ms. Young's representation of Mr. Mashinsky, you were denied effective assistance of counsel by Mr. Mukasey and Ms. Young?

17. Is there anything that I have said that you wish to have explained further?