**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 34704, 36194** |

**REPLY IN FURTHER SUPPORT OF THE FTX RECOVERY TRUST'S FIRST AMENDED OBJECTION TO PROOFS OF CLAIM FILED BY ALEX MASHINSKY**

The FTX Recovery Trust[2] (the "Trust") hereby submits this reply (the "Reply") in further support of the *FTX Recovery Trust's First Amended Objection to Proofs of Claim Filed by Alex Mashinsky* [D.I. 34704] (the "Amended Objection"),[3] and in response to the *Superseding Opposition of Creditors Alexander Mashinsky, Koala1 LLC, and AM Ventures Holdings Inc. to FTX Trust's First Amended Objection* (the "Opposition" or "Opp.") [D.I. 36194]. In support hereof, the Trust submits contemporaneously herewith the *Declaration of Benjamin S. Beller* in support of this Reply (the "Beller Declaration") and respectfully states as follows:

**Preliminary Statement**

1. Mashinsky is currently serving a 12-year federal prison sentence having pleaded guilty to committing commodities and securities fraud for two fraudulent schemes he

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan").

[3] Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Amended Objection.

conducted as CEO of Celsius: (i) misleading Celsius's customers about Celsius's business, including Celsius's success and profitability and the nature of the investments Celsius made using customer funds, and (ii) illicitly manipulating the price of CEL—Celsius's proprietary cryptocurrency token—while he was secretly selling his own CEL at artificially inflated prices. As a result of his guilty plea, Mashinsky conceded an actual loss of $590 million from his fraudulent conduct and was required to forfeit over $48 million in personal profits from his illegal sales of CEL. Yet through his ever-evolving, indiscernible, late-filed claims asserted against the Debtors, he seeks to recover from the actual victims of FTX's fraud his personal losses arising from Celsius's collapse—a collapse he himself (along with other members of Celsius leadership) caused. Allowing the Mashinsky Claims would reward him for his illegal conduct, reimburse him for the proceeds of his fraud he forfeited in connection with his guilty plea, and allow him to perpetrate another injustice on innocent cryptocurrency customers, this time, FTX's.

2. To make matters worse, Mashinsky did not even timely articulate ***any*** claims against the Debtors. The ***only*** Mashinsky Proofs of Claim that were timely filed and are properly before the Court—the June Individual POCs—are facially deficient and should be disallowed without further litigation. Those proofs of claim failed to put the Debtors on notice of, or assert a discernible basis for, the theories of liability Mashinsky is now pursuing. They allege no facts and to this day Mashinsky still has not provided a coherent explanation of the implications of the 44 pages of unidentified, unverified, unsourced, and unexplained data that he exclusively relies on to save the June Individual POCs from disallowance. Mashinsky's attempts to assert new claims through his many purported amendments to the June Individual POCs are invalid for numerous reasons. On that basis, under well-established authority in this jurisdiction, the Court can and should disallow the June Individual POCs in full on their face.

3. Even if the Court entertains Mashinsky's late-filed Proofs of Claim, they should also be disallowed at this stage as procedurally defective. Although he was represented by competent counsel at the time of filing of the November Individual POCs and December Corporate POCs, Mashinsky never moved to amend the June Individual POCs or for leave to file new claims after the Non-Customer Claims Bar Date. This Court previously held, in connection with litigation involving claims filed by Celsius itself, that such a failure is an independent and dispositive basis to disallow an attempted amendment. That same rule should apply equally here.

4. Furthermore, Mashinsky identifies no equitable reason to allow amendment or late-filed claims now. It is beyond dispute that he knew about the Non-Customer Claims Bar Date since he timely filed the June Individual POCs (and was not incarcerated) yet did not include allegations to put the Debtors on notice of his subsequent theories of harm and damages until after the Non-Customer Claims Bar Date and, for many allegations, until years after the Plan was confirmed and became effective. Allowing amendment on these facts would impose severe prejudice on the Trust, including by potentially reopening a claims pool consisting of tens of thousands of claimants to whom the Trust has already distributed over $11 billion.

5. But even if Mashinsky's late-filed, unexcused amendments and new claims are not barred, and the *ex post facto* articulation of his claims put forward for the first time in his Opposition is considered, the Mashinsky Claims should still be disallowed as pleaded due to threshold standing defects. Mashinsky lacks standing to assert any of the causes of action raised in the Mashinsky Proofs of Claim because (i) nearly all of his claims arise from alleged injuries to Celsius (Celsius itself asserted similar claims against the Debtors in its original proofs of claim) or to the Mashinsky Entities, and (ii) his remaining claims lack any allegation that he or the

Mashinsky Entities sold CEL or any other security, as is required for standing to assert a market manipulation or fraud claim under federal securities laws.

6. But there are still further independent bases to disallow the Mashinsky Claims because they fail on the merits even crediting Mashinsky's speculative and unsubstantiated allegations as true. They do not identify any viable cause of action or connect the Debtors' alleged conduct to Mashinsky's claimed losses, and are internally inconsistent. They also fail to allege that the Debtors proximately caused the collapse of Celsius or the rapid decline of CEL that accompanied Celsius's collapse, which Mashinsky alleges resulted in his purported injuries.

7. Even if Mashinsky could overcome each and every one of these threshold barriers, the claims are barred by *in pari delicto* because they seek recovery for losses tied to Celsius's collapse despite Mashinsky's admitted and judicially noticeable role in the conduct that caused Celsius's financial condition and the decline in CEL.

8. Thus, there are numerous independently dispositive procedural and substantive deficiencies with the Mashinsky Claims, each of which requires disallowance at this stage without further proceedings. However, if any portion of the Mashinsky Claims nevertheless survives, the Trust has rebutted any *prima facie* case and it is Mashinsky's burden to prove his claims, which his Opposition concedes he has not done. Thus, any surviving claim should proceed only under a schedule providing for discovery and further adjudication.

9. Mashinsky's years-long effort to extract value from the Trust at the expense of legitimate creditors to pay for losses resulting from his own criminal actions and decisions should be stopped in its tracks. The Mashinsky Claims (both individual and corporate) are procedurally and substantively deficient and should be disallowed and expunged in their entirety.

## Background

### I. The Mashinsky Claims and the Amended Objection

10. As explained in greater detail in the Amended Objection, Mashinsky filed or caused to be filed four sets of proofs of claim against the Debtors.

11. *First*, Mashinsky timely filed the June Individual POCs,[4] which, in their entirety, allege $2.15 billion in damages, identify six conclusory legal causes of action (in their entirety, "Fraud, Conspiracy to commit fraud, market manipulation, bribery, securities fraud, [and] money laundering"), and attach a 44-page data set titled "FTX CEL naked short positions 2022 May 3 - July" (the "June Attachment"). The June Individual POCs do not identify the source of the data contained in the June Attachment. The June Attachment also does not provide any indication—outside of one- to three-word column headings—of what the data it contains represents. The June Individual POCs list Mashinsky himself as the creditor.

12. *Second*, months after the Non-Customer Claims Bar Date, Mashinsky filed the September Corporate POCs[5] on behalf of Koala1 LLC and AM Ventures Holdings Inc. (the "Mashinsky Entities"). Like the June Individual POCs, the September Corporate POCs fail to allege any facts and rely entirely on the June Attachment to provide the nature of the claims asserted therein.

13. *Third*, long after the Non-Customer Claims Bar Date, through his then-counsel, Mashinsky filed the November Individual POCs,[6] which purport to amend the June

[4] Claim Nos. 2314, 3195 and 3233, against each of Alameda Research Ltd., Alameda Research LLC, and FTX Trading Ltd., respectively. Attached to the Beller Declaration as Exhibit A is a true and correct copy of Claim No. 2314, which, unless as noted herein, is substantively similar to Claim Nos. 3195 and 3233.

[5] Claim Nos. 85255 and 85256 on behalf of Koala1 LLC, and Claim Nos. 85257 and 85258 on behalf of AM Ventures Holdings Inc. Attached to the Beller Declaration as Exhibit B is a true and correct copy of Claim No. 85255, which, unless as noted herein, is substantively similar to Claim Nos. 85256, 85257, 85258.

[6] Claim No. 88339 against FTX Trading Ltd., and Claim Nos. 88338 and 88341 against Alameda Research LLC. Claim No. 88341, although filed against Alameda Research LLC, purports to amend the June Individual POC

Individual POCs with a short rider. The November Individual POCs reiterate the six causes of action alleged in the June Individual POCs and refer—for the first time—to the basis for Mashinsky's purported damages as the diminution in value of his personal CEL token holdings and Celsius equity. The November Individual POCs include limited factual allegations in support of the causes of action, including by purporting to incorporate proofs of claim filed against the Debtors by the Celsius Debtors that were later abandoned.[7]

14. The riders to the November Individual POCs set forth the factual allegations underlying Mashinsky's six causes of action in less than half a page. Namely, the November Individual POCs allege that "certain former officers of the Celsius Debtors provided the FTX Debtor[s] with sensitive financial information concerning the Celsius Debtors" and "the FTX Debtors were able to force the liquidation of Celsius's positions (specifically stETH and WBTC) and attack CEL Token to create fear and mass withdrawals."[8] Mashinsky did not move, and has never moved, for leave to the amend the June Individual POCs to assert these fatally flawed claims.

15. *Fourth*, even further after the Non-Customer Claims Bar Date, through his then-counsel, Mashinsky filed the December Corporate POCs[9] which purport to amend the late-filed September Corporate POCs with riders largely the same as those filed with the November Individual POCs.

---

filed against Alameda Research Ltd. The Trust reserves all rights, arguments, and defenses with respect to the effectiveness of the purported amendment by Claim No. 88341. Attached to the Beller Declaration as Exhibit C is a true and correct copy of Claim No. 88339, which, unless as noted herein, is substantively similar to Claim Nos. 88338, 88341.

[7] The "Celsius Debtors" refers to Celsius Network LLC and its affiliated debtors in *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y.) (the "Celsius Bankruptcy").

[8] Claim No. 88338 adds the additional detail that stETH and WBTC were sold "at well below market prices."

[9] Claim Nos. 89689 and 89699 on behalf of Koala1 LLC, and Claim No. 89697 on behalf of AM Ventures Holdings Inc., and Claim No. 89698 on behalf of AM Ventures Inc. Attached to the Beller Declaration as Exhibit D is a true and correct copy of Claim No. 89699, which, unless as noted herein, is substantively similar to Claim Nos. 89689, 89697, 89698.

16. On July 10, 2024, the Debtors filed an initial objection to the Mashinsky Proofs of Claim [D.I. 20044]. On February 13, 2026—after Mashinsky pleaded guilty to commodities and securities fraud, was sentenced to 144 months of incarceration, and reported to prison—the Trust filed the Amended Objection [D.I. 34704].

17. The Amended Objection argued that the June Individual POCs should be disallowed because they are not *prima facie* valid and lack "evidentiary support or any legal basis for his asserted claims" (Amended Objection ¶ 38), the November Individual POCs and Mashinsky Corporate POCs should be disallowed because they are time barred (*id.* ¶¶ 25-33) and, even if considered, fail to identify "any specific action taken by the Debtors or their representatives that could give rise to a valid legal claim or that could have caused damages being sought" (*id.* ¶ 37), and the Mashinsky Claims as a whole are barred by *in pari delicto* (*id.* ¶¶ 44-45).[10]

18. After a series of handwritten letters from Mashinsky [D.I. 34798, 34861, 34888], the Court permitted Mashinsky a 90-day extension to respond to the Amended Objection [D.I. 34994]. Mashinsky then filed, on June 22, 2026, his *Response of Alex Mashinsky, Pro Se, in Opposition to the FTX Recovery Trust's First Amended Objection to Proofs of Claim Filed by Alex Mashinsky* (the "Pro Se Response") [D.I. 35863].[11] Two days before the Trust's reply deadline to the Pro Se Response, Mashinsky's and the Mashinsky Entities' current counsel reached out to the Trust identifying themselves and seeking to file a superseding response to the Trust's Amended Objection. The Trust promptly consented to that request and, on July 29, 2026, the Court approved

[10] The Trust previously argued that the Global Settlement operates to bar the Mashinsky Claims. The Trust is no longer asserting that argument against Mashinsky and expressly reserves all rights, arguments, and defenses concerning the Global Settlement and any other grounds for objection. (*See* Amended Objection ¶¶ 39-43; *FTX Recovery Trust's Response to Argent Liquidation Trust's Corrected Joinder and Statement in Support of Motion of Seth Melamed for Reconsideration of the June 2, 2026 Order* [D.I. 36245] ¶¶ 14, 138.)

[11] As detailed in the Amended Objection, at the request of Mashinsky, the Debtors agreed to delay litigation of the Mashinsky Claims until after his criminal proceedings were fully resolved. (Amended Objection ¶¶ 15-19.)

a stipulation permitting Mashinsky's new counsel to file a superseding opposition [D.I. 36060] which was ultimately filed on August 31, 2026 [D.I. 36194].[12]

## II. The Mashinsky Opposition

19. The Opposition restates the six theories of misconduct by FTX set out in the June Individual POCs: "Fraud, Conspiracy to commit fraud, market manipulation, bribery, securities fraud, [and] money laundering." (Opp. ¶ 67.) It also advances new factual and legal theories concerning alleged misuse of Celsius information, trading in CEL and other assets, and the claimed effects on Mashinsky's equity, CEL holdings, control of Celsius, and compensation.

20. The Opposition insists that the June Individual POCs are *prima facie* valid because the June Attachment shows that "FTX's activity was an extreme trading anomaly indicating fraudulent short trading in the CEL token" and, because "[a]ny person familiar with cryptocurrency and commodities trades would grasp the import of the trade information Mashinsky attached," and therefore the Trust was "on notice that Mashinsky was alleging that FTX's and Alameda's misconduct severely diminished his holdings in the CEL token." (Opp. ¶¶ 67-68; *see also id.* ¶ 81 (referring to "evidence of FTX's and Alameda's fraudulent trading").) Relying on that baseless premise, the Opposition mischaracterizes the Trust's argument that the June Individual POCs lack any facts in support of the claims as an objection to the "sufficiency or persuasiveness of that support" that should be resolved through a "merits dispute." (*Id.* ¶¶ 67-74.) The Opposition does not identify the statutory or legal basis for Mashinsky's Claims for "fraudulent short trading" or "fraudulent trading." Nor does the Opposition identify the applicable law or elements for any of the Mashinsky Claims.

---

[12] Because the Opposition supersedes the Pro Se Response, the Pro Se Response has no operative effect and the Trust does not address it herein.

21. The Opposition next argues without any substance that because the June Individual POCs validly state claims, the November Individual POCs relate back to the June Individual POCs or, alternatively, should be allowed as late-filed claims (*id.* ¶¶ 79-99), and that the Corporate POCs should be allowed either as amendments to the Individual POCs or on their own as late-filed claims (*id.* ¶¶ 100-112). The Opposition also asserts that Mashinsky's guilty plea does not bar recovery. (*Id.* ¶¶ 135-142.)

22. In an attempt to belatedly support the Mashinsky Claims with actual facts, the Opposition expands on the limited factual allegations in certain of the late-filed Mashinsky Proofs of Claim and presents a narrative covering alleged efforts by FTX and Alameda to remove Mashinsky as Celsius's CEO, sharing of Celsius information by Celsius executives with FTX, trading in CEL and other assets, and the effect of those events on Mashinsky's CEL, Celsius equity, and governance rights within Celsius. (Opp. ¶¶ 27-54, 57-60.) The Opposition attempts to minimize Mashinsky's role in the collapse of Celsius and the scope of his guilty plea. (*Id.* ¶ 26 ("Mashinsky's plea allocution did *not* include any admissions . . . that his conduct caused Celsius to freeze withdrawals in June 2022").)

**<u>Legal Standard</u>**

23. The burden of proof for a claim asserted in a bankruptcy case under section 502(a) of the Bankruptcy Code shifts between the claimant and objector at different times. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). The claimant must first allege facts sufficient to support its claim. *Id.* Only a claim that "alleges facts sufficient to support a legal liability to the claimant" is entitled to *prima facie* validity. *Id.* If the claim is entitled to *prima facie* validity, the burden "shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *Id.* If the objector satisfies that burden, the burden

shifts back to the claimant to prove the claim's validity by a preponderance of the evidence. *Id.* at 173-74.

24. "Federal pleading standards apply when assessing the validity of a proof of claim," such that "a claimant must allege 'enough facts to state a claim for relief that is plausible on its face.'" *In re Residential Cap., LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y.), *reconsidered in part*, 537 B.R. 161 (Bankr. S.D.N.Y. 2015). Claims grounded in fraud are held to an even stricter standard that "requires the claimant to 'state with particularity the circumstances constituting fraud or mistake.'" *Id*. Therefore, as a threshold matter, a claimant's failure to allege facts supporting the asserted theories of liability deprives the claim of *prima facie* validity. *In re Mallinckrodt Plc*, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022) (Ambro, J.) (proofs of claim were not entitled to *prima facie* validity where they "failed to allege any conduct by any of the non-defendant Debtors" for antitrust liability nor "facts sufficient to support . . . legal liability" for RICO and unjust enrichment claims).

25. Where a proof of claim fails to establish *prima facie* validity and is "so deficient . . . that 'there were no claims asserted,'" it "can be disallowed for failure to support the claim with sufficient evidence." *Mallinckrodt*, 2022 WL 3545583, at *4-5 (holding that claims lacking *prima facie* validity and that cannot be amended should be disallowed). In other words, a claim may be disallowed if it does not allege enough facts to "articulate[] a discernable basis for a claim against the Debtor[]." *In re Trib. Co*., 2013 WL 1909617, at *3 (Bankr. D. Del. May 2, 2013) (disallowing claim that identified the amount of the debt, but provided no "discernible basis" for the debtor's liability); *see Charge Enters., Inc.*, 2024 WL 5112999, at *3-4 (Bankr. D. Del. Dec. 13, 2024) (disallowing claim that did not allege "on what legal theory [the debtor's] responsibility should rest, or any facts that would support such a finding").

## Reply

### I. The June Individual POCs Are Not Entitled to *Prima Facie* Validity and Should Be Disallowed.

26. The June Individual POCs are the only Mashinsky Proofs of Claim filed before the Non-Customer Claims Bar Date and are the only proofs of claim properly before the Court. Thus, if the Court determines—as it should—that the June Individual POCs are so facially deficient that they should be disallowed at the outset, ***all*** of the Mashinsky Claims should be similarly disallowed without any need to wade through the unsupported conspiracy theories put forward in the November Individual POCs, Mashinsky Corporate POCs, and Opposition.

#### A. The June Individual POCs are Not *Prima Facie* Valid.

27. The June Individual POCs are not entitled to *prima facie* validity because not only do they fail to assert sufficient facts to support a theory of legal liability, they do not assert, identify, allege or reference any facts at all. The June Individual POCs consist entirely of the following: (i) a list of the names of six causes of action, "Fraud, Conspiracy to commit fraud, market manipulation, bribery, securities fraud, [and] money laundering"; (ii) an asserted claim amount of $2.15 billion; and (iii) the June Attachment—an unsourced, unexplained, unidentified document containing incomprehensible figures and titled (presumably by Mashinsky himself) "FTX CEL naked short positions 2022 May 3 - July." Nowhere do the June Individual POCs identify any alleged conduct by the Debtors, any alleged injury to Mashinsky, any explanation of how the June Attachment relates to the six listed causes of action, or any basis for the $2.15 billion claim amount. (*See* Amended Objection ¶ 38.) Accordingly, the June Individual POCs are not entitled to *prima facie* validity.

28. Mashinsky's arguments to the contrary are unavailing. *First*, Mashinsky acknowledges the limited content of the June Individual POCs but argues that the included words

constitute factual allegations sufficient for his claims to survive. (Opp. ¶ 67.) But the relevant inquiry is not whether the June Individual POCs contain any words or information at all; rather, the relevant inquiry is whether the proofs of claim allege facts sufficient to establish and put the debtor on notice of the nature of the legal liability. *See Mallinckrodt*, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022). Simply reciting legal labels such as "fraud" and "market manipulation" without any underlying facts—especially considering the stricter standard for fraud claims, *see In re Residential Cap.*, 531 B.R. at 12—does nothing to identify the acts giving rise to the alleged misconduct, who committed the misconduct, or the basis for purported liability. (*See* Opp. ¶ 67.)

29. *Second*, Mashinsky argues that the June Attachment supplied "documentary evidence" for the June Individual POCs by showing the Debtors' "fraudulent short trading in the CEL token." (Opp. ¶ 67.) But Mashinsky cannot rely on this *post hoc* explanation of the June Attachment, advanced for the first time in the Opposition, to bolster the June Individual POCs, which contain *no* explanation of what the June Attachment purportedly shows or how it supports any theory of liability against the Debtors. *See Charge Enters., Inc.*, 2024 WL 5112999, at *3-4. The assertion that the data came "from FTX itself" appears nowhere in the June Individual POCs and is completely unknowable from the June Attachment or the June Individual POCs, which do not establish what the data represents. Even if the data were authenticated as from the FTX.com exchange (which it has not been), it would still not identify a wrongful act, the actor who committed it, or an injury to Mashinsky.[13] Notably, in the Opposition, Mashinsky himself limits the June Attachment's import to the claim that the Debtors "severely diminished his holdings in

[13] To this day Mashinsky cannot explain what the June Attachment actually represents, alternatively referring to the June Attachment as representing the cost of borrowing actual CEL in a spot short and the cost of maintaining a perpetual futures position. (Opp. ¶¶ 28-29 & n.11.) These are fundamentally different transactions with different implications for Mashinsky's theories.

the CEL token"—a claim absent from and therefore not asserted or preserved through the June Individual POCs (and unsupported by the purported data). (Opp. ¶¶ 12, 68-69.)

30. *Third*, Mashinsky relies on *In re Falwell*, 434 B.R. 779 (Bankr. W.D. Va. 2009), to argue that a proof of claim is entitled to *prima facie* validity if its supporting documents merely identify the claimant, the amount of the claim, and the basis for the claim. (Opp. ¶¶ 69-70.) His reliance on this out-of-circuit case is misplaced. The proofs of claim at issue in *Falwell* were for undisputed credit card debts that the debtors had already scheduled in substantially the same amounts—not for completely unarticulated, unscheduled, and indiscernible litigation claims for which the Debtors could not have had any notice. *See In re Falwell*, 434 B.R. at 782, 785. And unlike the debtors in *Falwell*, the Trust actually disputes "the existence, amount, or character" of the June Individual POCs. *Id.* at 785. Thus, even applying the reasoning in *Falwell*, Mashinsky cannot overcome the Trust's good-faith objection. *See id.* at 783 (objections to claims "must be based on some *good faith* ground").

**B. The June Individual POCs Can and Should be Disallowed At This Stage.**

31. The June Individual POCs don't allege any facts, don't identify any action by the Debtors, don't allege any injury to Mashinsky, and don't identify the law under which any claims are asserted, and, as a result, don't articulate a discernable basis for the claim. They should be disallowed on their face.

32. Mashinsky argues that, even if the June Individual POCs lack *prima facie* validity, he remains "entitled to prove his claim."[14] (Opp. ¶ 72.) Mashinsky is wrong. He does not cite a single case in which a claimant was entitled to proceed to an evidentiary hearing with

[14] Even if Mashinsky were "entitled to prove" his claim, he has not done so to date. Mashinsky has submitted no declaration, no authentication of the June Attachment, and has provided no other documents cited in his Opposition.

respect to proofs of claim that failed to articulate a discernible basis for a theory of liability or put the debtor on notice of the nature of the at-issue claims. Rather, Mashinsky cites cases in which the court either disallowed claims,[15] addressed defective proofs of claim that the debtors had scheduled,[16] or did not disallow claims that, while deficient, nevertheless put the debtors on notice of the nature of the claims being asserted.[17] None of those cases is relevant or support Mashinsky's arguments; to the contrary, they all lend further support to the Trust's request for disallowance.

## II. Mashinsky's Attempted Amendments and Late-Filed Claims Are Invalid and Should Not Be Considered.

33. Likely recognizing the fatal failure of the June Individual POCs to articulate a discernible theory of liability, Mashinsky filed the November Individual POCs purporting to amend the June Individual POCs after the Non-Customer Claims Bar Date. The June Individual POCs, however, are incapable of amendment. The November Individual POCs are also procedurally improper and fail to meet the strict requirements of a motion to allow a late-filed amendment or claim. Moreover, there is no excusable neglect for Mashinsky's untimely filing of the Corporate POCs, and his attempts to relate these claims to the June Individual POCs are made-for-litigation positions lacking any credible basis.[18]

---

15 *See Mallinckrodt*, 2022 WL 3545583, at *4-5; *O'Brien*, 440 B.R. at 657, 663, 668.

16 *Campbell* v. *Verizon Wireless S-CA*, 336 B.R. 430, 432 (B.A.P. 9th Cir. 2005); *In re Kincaid*, 388 B.R. 610, 613 (Bankr. E.D. Pa. 2008); *In re Kemmer*, 315 B.R. 706, 717 (Bankr. E.D. Tenn. 2004); *In re Willis*, 2013 Bankr. LEXIS 5161, at *8 (Bankr. D. Del. Nov. 7, 2013).

17 In *In re Sacko*, the court addressed an undisputed mortgage. 394 B.R. 90, 101 (Bankr. E.D. Pa. 2008). The Third Circuit decision *Lampe* v. *Lampe* is perhaps the most instructive: there the Third Circuit was faced with a proof of claim that merely alleged fraud and a breach of fiduciary duties, ***but*** those causes of action were the subject of pre-petition state court litigation ***and*** a parallel adversary proceeding filed the same day. 665 F.3d 506, 513-15 (3d Cir. 2011). The Third Circuit thus held that the debtor in *Lampe* "clearly" had notice of the nature of the at-issue claims. *Id.* at 512-15. The Debtors here were not clearly on notice of the nature of Mashinsky's claims based on the June Individual POCs.

18 Because the September Corporate POCs are invalid late-filed claims (among other infirmities), the December Corporate POCs also fail as amendments to the September Corporate POCs.

### A. The June Individual POCs Are Incapable of Amendment.

34. When timely-filed proofs of claim do not allege any facts putting the debtors on notice of claims, amendment is a legal impossibility. *See In re Peregrine Fin. Grp., Inc.*, 2015 WL 2237201, at *8 (Bankr. N.D. Ill. May 13, 2015) ("[s]ince [plaintiffs] alleged no facts whatsoever in their timely claims, it is impossible for them to amend").[19]

35. Such a rule adheres to the principle that courts will reject attempts to file new claims asserted after the bar date under the "guise of amendment" because if the original proof of claim did not assert any facts, then any claims asserted in a post-bar date amendment must be new. *See In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985) (courts apply "careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment"). As explained above, the June Individual POCs failed to allege any facts and accordingly the June Individual POCs are legally incapable of amendment.

### B. The November Individual POCs Are Procedurally Improper Amendments and Should Be Struck Under the Law of the Case.

36. The November Individual POCs are procedurally improper. Because the November Individual POCs were filed over four months after the Non-Customer Claims Bar Date, Mashinsky was required to seek leave to amend pursuant to Bankruptcy Rule 7015. (Amended Objection ¶ 31.) Mashinsky, despite being represented by competent counsel, did not do so. (Opp. ¶ 88.)

37. Indeed, "[u]nder the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the

[19] Mashinsky attempts to distinguish *Peregrine* by arguing that the June Individual POCs were materially more particularized than the "bare-bones" claims at issue there. (Opp. ¶¶ 80-81.) They were not. Like the claimants in *Peregrine*, Mashinsky alleged "no facts at all in the timely proofs of claim." *Peregrine*, 2015 WL 2237201, at *5-6. Nor is it apparent how the *Peregrine* claimants filing on a forex "form provided by the trustee" is meaningfully different from Mashinsky filing the standard non-customer proof of claim form. *Id.* at *5.

same case[.]" *In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 36 (Bankr. D. Del. 2004). And in the Court's *Memorandum Opinion and Order* [D.I. 28891] (the "Celsius Order"), the Court established the law of the case prohibiting ***exactly*** what Mashinsky attempted to do in filing the November Individual POCs without leave of the Court:

> The Amended POCs filed by Celsius here should not be allowed for several independent reasons. First, the Amended POCs are improper because Celsius did not seek leave to amend. While counsel for Celsius argued at the hearing that he believed it was not the practice in this Court to require motions for leave to amend proofs of claim, he cited to nothing in support of that conclusion. In failing to file a motion or anything else on the docket Celsius failed to provide either the Debtors or the Court with any notice of the fact that its Original POCs were being amended.

(Celsius Order at 12.) The Opposition offers no explanation why the law of the case should not control or why Mashinsky should be treated differently than Celsius. Allowing the November Individual POCs as amendments to the June Individual POCs would create inconsistent results in these Chapter 11 Cases, and the procedurally defective amendments should not be considered.

### C. The November Individual POCs Fail the Standard For a Late-Filed Amendment or Late-Filed Proof of Claim.

38. Even if the November Individual POCs were not barred, they do not meet the applicable standards applicable to purported late-filed amendments or proofs of claim. The parties agree (Opp. ¶ 83) that courts evaluating late-filed amendments consider (i) whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," which is satisfied by the original claim providing "reasonable notice of the later claim," and (ii) whether allowing the amendment would be equitable. *Mallinckrodt*, 2022 WL 3545583, at *3 (*citing Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The parties also agree (Opp. ¶¶ 88-89) that courts evaluating late-filed claims use the "excusable neglect" test set out in *Pioneer*, which is an equitable analysis involving prejudice to the debtor,

length of the delay and its effect on judicial proceedings, reason for the delay, and good faith on the part of the movant. *Pioneer*, 507 U.S. at 395. Whether considered as either late-filed amendments or late-filed claims, the remaining Mashinsky Proofs of Claim should be disallowed.

***i. The November Individual POCs are not valid amendments to the June Individual POCs.***

39. Even if the June Individual POCs put the Debtors on notice of a potential legal liability, they did not put the Debtors on notice of the complex conspiracy articulated in the November Individual POCs and Opposition. As such, the November Individual POCs assert new claims under the guise of a late-filed amendment and are barred by the Non-Customer Claims Bar Date. *See, e.g.*, *Mallinckrodt*, 2022 WL 3545583, at *2 (amendments filed after the bar date "are closely reviewed to ensure they are not attempts to file a new claim"); *In re Charge Enters.*, 2024 WL 5112999, at *6 (proofs of claim and attachments "failed to put [debtor] on notice of either the legal theory or the requisite facts on which the [amended claim] was based").

40. Mashinsky argues that the June Individual POCs and the June Attachment informed the Debtors that he was asserting fraud, conspiracy, and market-manipulation claims for losses involving CEL and Celsius equity. (Opp. ¶¶ 67-68, 86-87.) He asserts that the Debtors should have understood the listed causes of action and June Attachment to convey the Debtors' "false and fraudulent creation and sale of CEL Token," use of "unauthorized information" to "force the liquidation of Celsius's positions," and the connection between those actions and the diminution in value of Mashinsky's Celsius equity interests and CEL holdings. (*Id.* ¶ 86.) Yet he does not identify anything in the June Individual POCs on which that knowledge could reasonably have been based.

41. The Court has already rejected a similar attempt to amend a deficient timely-filed proof of claim in these Chapter 11 Cases where, coincidentally, the Celsius Debtors

attempted to amend their original proofs of claim to include claims that were merely referenced in their original proofs of claim without any factual support. (Celsius Order at 1-2, 6.) In its decision, the Court recognized the long-standing principle "that to constitute *prima facie* evidence of a claim a proof of claim must be sufficient to put a debtor and the court on notice as to the existence, nature and amount (if ascertainable) of a claim," (*id.* at 8-9 (collecting cases)), and held that "[t]he single sentence" in Celsius's timely proofs of claim listing potential preference and fraudulent transfer actions, without any supporting facts, failed to put the Debtors on notice of the legal theories Celsius asserted in its purported amended claim. (*Id.* at 10.) Just as with the Celsius claims, Mashinsky's mere recitation of causes of action is insufficient to preserve claims based on any such causes of action for purposes of a later amendment.

42. Moreover, the equities also do not favor amendment. Permitting a claimant who timely filed only legal labels and unexplained data to supply the operative facts of a $2.15 billion claim months after the Non-Customer Claims Bar Date would defeat its purpose. As discussed below, it would also risk a cascade of additional late-filed amendments. Accordingly, Mashinsky's attempt to amend the June Individual POCs through the November Individual POCs should be rejected.

***ii. Mashinsky fails to establish excusable neglect for the November Individual POCs as late-filed new claims.***

43. Even if the November Individual POCs were interpreted as entirely new (late-filed) claims rather than amendments to the June Individual POCs, the November Individual POCs are still barred because Mashinsky fails to establish excusable neglect. *First*, if the November Individual POCs were permitted, the Trust would face a potentially vast number of similar late-filed amendments from other creditors. *See, e.g.*, *In re Enron Corp.*, 298 B.R. 513, 526-27 (Bankr. S.D.N.Y. 2003) (denying motion to amend or file new proof of claim after bar date

because, in part, "the Debtors might be unduly prejudiced by possibly opening the floodgates for similar late-filed guaranty claims"), *aff'd*, 419 F.3d 115 (2d Cir. 2005). Mashinsky misunderstands this prong, contending that "the Trust could have identified other creditors asserting claims comparable to Mashinsky's," yet did not do so. (Opp. ¶ 93.) But the prejudice lies in reopening the claims pool and the administration of tens of thousands of claims—not in counting how many claims currently resemble Mashinsky's. The Trust has made over $11 billion in distributions based on its assessment of claims as currently asserted [D.I. 36245]; allowing this claims pool to shift under the Trust's feet is prejudicial. Mashinsky argues (Opp. ¶ 96) that, under *New Century TRS Holdings*, "speculation about future floodgate litigation . . . is not prejudice." *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 51 (Bankr. D. Del. 2012). But the court in *New Century* ultimately found that "allowance of late-filed claims in this case unquestionably will open a floodgate to similar claims by other borrowers" based on the size and nature of that proceeding. *Id.* Similarly, in these sprawling Chapter 11 Cases, floodgate concerns are not mere speculation.

44. *Second,* the length of delay is substantial. The Non-Customer Claims Bar Date was June 30, 2023, and the November Individual POCs were not filed until over four months later. An unexcused four-month delay in identifying the nature of a purportedly multi-billion dollar claim is highly prejudicial and should not be permitted. *See, e.g.*, *In re XO Commc'ns, Inc.*, 301 B.R. 782, 797-98 (Bankr. S.D.N.Y. 2003), *aff'd*, 2004 WL 2414815 (S.D.N.Y. June 14, 2004) (disallowing proof of claim filed four months after the bar date). Mashinsky compounded the issue by *never*, in the almost three years that has since elapsed, requesting relief from this Court to treat the late-filed claims as timely.

45. *Third*, Mashinsky offers no legitimate explanation for his failure to comply with the Non-Customer Claims Bar Date for his late-filed claims. He had notice of the bar date

and, as he repeatedly represents to the Court in the Opposition, he knew the nature of his claims when he filed the June Individual POCs. (Opp. ¶ 84.) Rewarding Mashinsky's choice to keep the Debtors in the dark regarding the nature of his claims before the bar date would not be equitable.

46. Mashinsky blames his failure to include allegations in the June Individual POCs on his lack of counsel, criminal prosecution, and later incarceration. (Opp. ¶ 99.) All of Mashinsky's excuses fail. A lack of counsel is not an excuse for missing the Non-Customer Claims Bar Date. The Court-approved Non-Customer Proof of Claim Form advises that "[y]ou should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process" [D.I. 1519-1 at 7]. Further, permitting creditors to circumvent the bar date because they lacked counsel would undermine the role of the bar date as "akin to a statute of limitations" that "must be followed." *See In re Mallinckrodt PLC*, 2021 WL 3403799, at *3 (D. Del. Aug. 4, 2021) (quotations omitted); *see also Folly* v. *City of Philadelphia*, 2025 WL 1742781, at *2 (3d Cir. June 24, 2025) ("Difficulty obtaining counsel, or proceeding pro se, does not warrant the extraordinary remedy of tolling the statute of limitations."). That Mashinsky faced criminal prosecution throughout this period as a consequence of his illegal actions does not excuse his failure to comply with the Non-Customer Claims Bar Date, a deadline that Mashinsky in fact complied with for the June Individual POCs (but not the November Individual POCs or Mashinsky Corpoate POCs). Moreover, Mashinsky was not incarcerated until the fall of 2025, long after the Individual POCs were filed. (Opp. ¶ 19.)

47. *Fourth*, Mashinsky attempts to show his good faith in filing the late November POCs by admitting that he "knew of the bar date and took affirmative steps to preserve his claims." (Opp. ¶ 99.) But his knowledge of the Non-Customer Claims Bar Date instead undercuts any excuse for delay: he knew there was an applicable deadline but did not comply with

it when he chose not to allege facts in the June Individual POCs. That is not good faith, and Mashinsky's willful non-compliance should not be rewarded.

### D. The Corporate POCs Are Untimely Without Any Excuse.

48. The September Corporate POCs and December Corporate POCs were filed three and six months, respectively, after the Non-Customer Claims Bar Date. On their face, they do not purport to amend any timely-filed proof of claim and therefore should be barred by the Non-Customer Claims Bar Date Order.

49. Mashinsky fails to demonstrate excusable neglect for the Mashinsky Corporate POCs for the same reasons as the November Individual POCs. *See Pioneer*, 507 U.S. at 395. The same floodgate concerns apply. The delay in filing the Mashinsky Corporate POCs after the bar date is substantial, Mashinsky offers no reason why he could not have filed claims on behalf of the Mashinsky Entities before the Non-Customer Claims Bar Date or sought relief at any point in the intervening period, and he fails to explain how his decision not to notify the Debtors of the existence of the Mashinsky Entities could have been in good faith. (*See supra* ¶¶ 43-47; Opp. ¶¶ 101-105.)

50. Mashinsky also argues that the September Corporate POCs should not be time-barred because they somehow supplement or relate back to the timely-filed June Individual POCs.[20] *First*, Mashinsky argues that the informal-proof-of-claim doctrine saves the September Corporate POCs, claiming that the September Corporate POCs relate back to the June Individual POCs because the June Individual POCs were informal proofs of claim. (Opp. ¶¶ 106-08.) But that argument does not withstand scrutiny. As a threshold matter, the June Individual POCs and the September Corporate POCs do not involve the same creditor and therefore the September

[20] Mashinsky does not assert that the December Corporate POCs relate back to the June Individual POCs.

Corporate POCs cannot validly supplement the June Individual POCs. *See In re Kinsak*, 269 B.R. 49, 50 (Bankr. N.D. Cal. 2001) (holding that the informal proof of claim "must have been filed by or on behalf of the creditor").

51. Moreover, even if Mashinsky could overcome the discrepancy in the identity of the creditor, the informal-proof-of-claim doctrine still does not save his theory. Under the informal-proof-of-claim doctrine, a writing filed with the bankruptcy court that contains a demand by a creditor and evidences an intent to hold the estate liable can be treated as an informal proof of claim if it meets five "exacting" requirements. *See In re Am. Classic Voyages Co.*, 405 F.3d 127, 130-31 (3d Cir. 2005). The doctrine excuses defects in form; it does not relax the substantive requirement that a pre-bar date writing provide notice of the creditor's demand and the nature of its claim. *Id.* at 132 ("[T]he substantive requirements of a proof of claim, including the notice requirement, cannot be significantly relaxed for 'informal' proofs of claims."). The June Individual POCs identified Mashinsky alone as the creditor and alleged no facts suggesting that the Mashinsky Entities existed, let alone that they intended to assert claims against the Debtors for the decline in the value of CEL that they held in connection with the collapse of Celsius. The June Individual POCs therefore do not constitute informal proofs of claim on behalf of the Mashinsky Entities.

52. *Second*, Mashinsky also attempts to characterize the September Corporate POCs as "corrective amendments" of the June Individual POCs that merely substitute the Mashinsky Entities for Mashinsky as the creditor of record. (Opp. ¶¶ 109-12.)[21] That theory fares no better: (i) as discussed above, the June Individual POCs are incapable of amendment (*see supra*

[21] Mashinsky does not assert that the December Corporate POCs are "corrective amendments" of the June Individual POCs.

¶¶ 34-35); (ii) the September Corporate POCs do not purport to amend any earlier claim; (iii) the November Individual POCs *do* purport to amend the June Individual POCs and cannot be squared with Mashinsky's argument that the September Corporate POCs were corrections to the June Individual POCs; (iv) Mashinsky did not seek leave to amend in connection with filing the September Corporate POCs (*see supra* ¶¶ 36-37); and (v) the September Corporate POCs change more than the identity of the creditor: they assert causes of action different from those asserted in the June Individual POCs.[22] They are therefore new late-filed claims, not corrective amendments.[23]

53. All of Mashinsky's out-of-circuit support is distinguishable from the facts here and not applicable. Mashinsky concedes that the court in *Clamp-All* found that "there was no evidence of prejudice to the debtor . . . particularly because the debtor knew of the nature of the corporate claims." (Opp. ¶ 112 (*citing In re Clamp-All Corp.*, 235 B.R. 137, 141 (B.A.P. 1st Cir. 1999)).) In *Unioil*, the amendment neither asserted a new claim nor altered the original claim's substance. *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992). In *Gens*, the original filing "met the general notice requirement." *Gens* v. *Resol. Tr. Corp.*, 112 F.3d 569, 575 (1st Cir. 1997). None were as bare bones and deficient as the Mashinsky Corporate POCs are here.

---

[22] The June Individual POCs all assert fraud, conspiracy to commit fraud, market manipulation, bribery, securities fraud, and money laundering. Claim Nos. 85255 and 85257 assert fraud, market manipulation, contract interference, and conspiracy; Claim No. 85256 asserts fraud, market manipulation, and contract interference; Claim No. 85258 asserts fraud, market manipulation, naked shorting, tortious interference, and conspiracy to commit crimes.

[23] Mashinsky's attempt to classify the September Corporate POCs as "corrective amendments" is also inconsistent with his characterization of the June Individual POCs in the Purported Amendments and Opposition. (Opp. ¶ 109.) Mashinsky maintains that the June Individual POCs concern his Celsius equity based on their demand for more than $2 billion. He does not allege the Mashinsky Entities held Celsius equity, so they simply could not have asserted the June Individual POCs on Mashinsky's own theories. (Opp. ¶¶ 58, 86.)

54. Thus, the November Individual POCs and Corporate POCs are not only procedurally improper, but they also attempt to assert new claims not found in the June Individual POCs and fail to establish excusable neglect. They should all be disallowed.

**III. Even if All of the Mashinsky Claims Are Considered, They Should Be Disallowed.**

55. Even if the Court considers all of the Mashinsky Proofs of Claim ***and*** the expanded allegations in the Opposition, the claims are rife with threshold defects and should be disallowed without burdensome discovery or an evidentiary hearing. Even taking Mashinsky's allegations as true, Mashinsky cannot assert claims arising from injuries to Celsius or losses involving CEL owned by the Mashinsky Entities merely because he allegedly owned or controlled those entities. The claims also fail because of facial deficiencies as a legal matter, for lack of causation, and under *in pari delicto.*

**A. Even Considering the Purported Amendments, the Claims Remain Subject to Threshold Standing Defects.**

***i. Claims based on injuries to Celsius—including the alleged diminution in the value of Mashinsky's Celsius equity—belong to the Celsius bankruptcy estate.***

56. As a result of Mashinsky's fraud and mismanagement, Celsius filed for bankruptcy protection on July 13, 2022.[24] With this filing, "all legal or equitable interests" of Celsius became the property of the Celsius bankruptcy estate, 11 U.S.C. § 541(a)(1), and the Celsius bankruptcy estate acquired the ***exclusive power*** to prosecute claims that (i) "existed at the commencement of the [bankruptcy] filing" and that (ii) Celsius "could have asserted on its own behalf." *In re Wilton Armetale, Inc.*, 968 F.3d 273, 282 (3d Cir. 2020). That power accords with the well-established derivative-injury rule that precludes shareholders from suing for "personal

[24] *See* Voluntary Petition for Non-Individuals Filing For Bankruptcy at 1, *In re Celsius Network LLC*, No. 22-10964 (MG) [D.I. 1] (Bankr. S.D.N.Y. July 13, 2022).

injuries that result directly from injuries to the corporation." *In re SemCrude, L.P.*, 796 F.3d 310, 316 (3d Cir. 2015). And it reflects the policy choice embodied in Section 323 of the Bankruptcy Code that a debtor has the "exclusive statutory authority to pursue claims that constitute property of the estate under Section 541." *In re Whittaker Clark & Daniels Inc.*, 176 F.4th 241, 260 (3d Cir. 2026).

57. The core misconduct alleged in the Opposition—including the alleged misuse of Celsius's confidential information, violation of Celsius's NDA, front-running of Celsius's positions, loans to Celsius using FTX customer funds, and interference with Celsius's business—occurred before Celsius's petition date and allegedly injured Celsius itself. (Opp. ¶¶ 27-60.) Claims arising from those alleged injuries therefore belong to the Celsius estate, not Mashinsky. *See In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010) ("[A] 'claim' arises when an individual is exposed pre-petition to . . . conduct giving rise to an injury[.]").

58. The same conclusion follows under Delaware's direct-versus-derivative test because the alleged injuries concern Celsius's corporate assets, business, and equity interests. The test turns "solely" on (i) "who suffered the alleged harm (the corporation or the stockholders, individually)" and (ii) "who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Brookfield Asset Mgmt., Inc.* v. *Rosson*, 261 A.3d 1251, 1263 (Del. 2021) (quotations omitted). The Opposition itself describes Mashinsky as a competitor and market participant, but that characterization does not convert Celsius's injuries into individual injuries. (Opp. ¶ 7.)

59. In addition, any breach-of-contract claim based on the alleged violation of Celsius's NDA belongs to the Celsius estate. The same is true of any tortious interference, fraud, conspiracy, or other claim to the extent it seeks recovery for injury to Celsius's assets, liquidity,

contracts, customer relationships, or business opportunities. *See In re New Media Invs. II, LLC*, 2026 WL 208698, at *6 (Del. Ch. Jan. 27, 2026) ("Because the alleged harm—loss of corporate assets and opportunities—was inflicted on [the company], the legal remedy logically belongs to the entity."); *Epps* v. *Park Ctr. Condo. Council*, 2000 WL 1211163, at *7 (Del. Super. Ct. Aug. 18, 2000) ("[a] shareholder cannot bring an individual suit at law to enforce the contract claim of the corporation"); *see also Glean Tech Fund II LP* v. *McIntosh*, 2025 WL 2505049, at *9 (Del. Ch. Sep. 2, 2025) (finding two claims derivative because "[t]he benefit of any recovery" for those claims "would run to the stockholders of the Company on a *pro rata* basis, not to the Plaintiffs individually"). The claimed diminution of Mashinsky's equity value is also a "classically derivative" injury. *El Paso Pipeline GP Co., L.L.C.* v. *Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) ("Any economic harm to [limited partner] devolved upon him as an equity holder in the form of the proportionally reduced value of his units—a classically derivative injury.").

60. Celsius's own participation in these Chapter 11 Cases further supports that conclusion. In its original proofs of claim, Celsius alleged that the Debtors made "unsubstantiated and disparaging statements about Celsius" and asserted claims against the Debtors for, among other things, "tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy." (Celsius Order at 1.) Thus, these claims arose from substantially the same alleged conduct and injuries that Mashinsky now invokes, and the Celsius estate—not Mashinsky—had the exclusive power to assert claims arising from those injuries. *See Wilton Armetale*, 968 F.3d at 282.

***ii. Mashinsky does not allege a purchase or sale necessary to pursue any claim based on the decline in price of CEL.***

61. Mashinsky does not have standing to bring any market manipulation or securities fraud claim based on the decline in price of CEL that accompanied Celsius's collapse. Section 9(f) of the Securities Exchange Act of 1934 permits recovery only by a person who "shall purchase or sell" a security at a price affected by the alleged manipulation. 15 U.S.C. § 78i(f). Likewise, a private claim under Section 10(b) and Rule 10b-5 is limited to purchasers and sellers—not holders—of securities. *See Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 737-38 (1975); *Mfrs. Hanover Trust Co.* v. *Smith Barney, Harris Upham & Co., Inc.*, 770 F. Supp. 176, 179 (S.D.N.Y. 1991). Although the Opposition alleges that Mashinsky sold CEL in 2019, it acknowledges that those sales occurred "well before" the alleged manipulation of CEL by the Debtors. (Opp. ¶ 137.) Accordingly, neither Mashinsky's direct ownership of approximately 3.5 million CEL nor the Mashinsky Entities' ownership of approximately 48.5 million CEL provides any Claimant standing to assert any federal market-manipulation or securities-fraud theory.[25]

62. Mashinsky thus lacks standing to assert claims based on any alleged harm to Celsius and any alleged downward manipulation of the CEL token. Without standing to assert the claims asserted therein, the Mashinsky Proofs of Claim must be disallowed.

[25] Mashinsky also lacks standing to personally assert claims based on the decline in price of the approximately 48.5 million CEL held by the Mashinsky Entities. (Opp. ¶ 59.) The Opposition confirms this point, arguing that Koala1 LLC and AM Ventures Holdings Inc. are "real parties in interest" because they "held the affected property." (*Id.* ¶ 111.) Mashinsky's alleged ownership or control of the Mashinsky Entities does not make any of their purported claims his own. *See SemCrude*, 796 F.3d at 316 (shareholders "may not sue for personal injuries that result directly from injuries to the corporation"); *New Media Invs.*, 2026 WL 208698, at *6 (where the alleged harm "was inflicted on [the entity], the legal remedy logically belongs to the entity"). For the avoidance of doubt, the Trust does not concede that the Mashinsky Entities possess valid or allowable claims.

**B. The Mashinsky Claims Fail as a Threshold Legal Matter Even If Their Allegations Are Taken as True.**

63. Even if Mashinsky could overcome the aforementioned standing bar to his claims, and even if the allegations in the Opposition are taken as true for purposes of a threshold analysis, the Mashinsky Claims fail as articulated as a matter of law because they do not assert requisite factual predicates to satisfy the elements of the identified claims, and therefore should be disallowed.

- ***Market Manipulation and Securities Fraud***. Mashinsky does not state whether his market manipulation theories arise under Sections 9 or 10 of the Securities Exchange Act of 1934, but whatever statutory basis Mashinsky relies on, his claims fail. Mashinsky does not identify a manipulative transaction or deceptive conduct by FTX, plead particularized facts supporting a strong inference of scienter, or allege that any Claimant purchased or sold CEL during the relevant period. *See Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 321 (2007) (recognizing that a private securities claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

- ***Fraud***. Mashinsky never identifies any misrepresentation by FTX to Mashinsky, any reliance by Mashinsky on any such misrepresentation, or how any fraud could possibly have caused the collapse of Celsius.

- ***Conspiracy***. A conspiracy claim requires an "underlying wrong." *Kuroda* v. *SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009). Because Mashinsky does not plead a viable fraud, market-manipulation, securities-fraud, or other claim against FTX, Mashinsky's conspiracy claims fail as well.

- ***Bribery and Money Laundering***. Mashinsky does not advance the bribery or money-laundering theories listed in the June Individual POCs in the Opposition.

**C. The Damages Alleged in the Mashinsky Claims Were Not Caused by the Debtors.**

64. The Mashinsky Claims further fail as plead on causation grounds alone because they do not plausibly allege that FTX caused the losses for which Mashinsky seeks a $2.15

billion recovery. Mashinsky attempts to attribute Celsius's collapse and the resulting decline in the value of his equity in Celsius and CEL holdings to the Debtors' alleged "acquisition and misuse of confidential Celsius information, forced liquidation of Celsius positions, manipulation and naked shorting of CEL, and fraudulent creation and sale of CEL." (Opp. ¶ 137.) Even taking those allegations as true, the purported causal connection between FTX's conduct and Mashinsky's injuries is too attenuated to establish a basis for legal liability.

65. *First*, Mashinsky's own allegations point to Celsius executives and employees—not FTX—as the cause of his alleged injuries. In the Opposition, Mashinsky repeatedly focuses on "the hostile takeover effort by Celsius executives" who "mismanaged customers' crypto assets" rather than actual actions by FTX. (Opp. ¶ 38.) Mashinsky further alleges that it was Celsius employees who provided proprietary information to FTX, met with Bankman-Fried to discuss a potential lending agreement, merger, or acquisition, and orchestrated a "scheme" to oust him from his position as CEO of Celsius. (*Id.* ¶¶ 27, 39, 42, 44.) Mashinsky cannot meaningfully distinguish between losses flowing from the purported acts of Celsius personnel and losses flowing from acts of FTX and has asserted no aiding and abetting claim against the Debtors.

66. *Second*, Mashinsky's allegations do not allege that any specified action by FTX caused Celsius's collapse to the exclusion of the many other contributing factors. Mashinsky acknowledges that Celsius collapsed in May 2022 as "the broader crypto market deteriorated sharply during the Terra Luna collapse." (Opp. ¶ 37.) He further acknowledges that Celsius had voluntarily held "large, concentrated positions" in "illiquid" assets vulnerable to significant price declines. (*Id.* ¶ 39.) Mashinsky alleges no facts plausibly connecting any specific conduct by FTX, as opposed to market forces and Celsius's own concentrated, illiquid positions, to Celsius's

collapse. *See Berckeley Inv. Grp., Ltd.* v. *Colkitt*, 455 F.3d 195, 223 (3d Cir. 2006) (rejecting securities fraud claim where there was "absolutely no connection between the price decrease in NMFS shares and Berckeley's unrelated alleged misrepresentation").

67. *Third*, Mashinsky's alleged damages from the loss of his position as CEO and governance rights in Celsius are even more attenuated. According to Mashinsky's own telling, those purported losses resulted from the collapse of Celsius—downstream from FTX's actions—and cannot be disentangled from Celsius's ensuing bankruptcy proceedings and Mashinsky's criminal prosecution.

68. *Fourth*, the February 6th, 2024 prosecutors' letter does not establish any connection between FTX and Mashinsky's purported injuries. Contrary to Mashinsky's suggestion, it does not identify Mashinsky as a victim of Alameda's fraud or explain the damages caused to Celsius as a result of this fraud.[26] It further characterizes his CEL-shorting theory only as an allegation that, "if true," could possibly aid his defense and constitute relevant conduct at Mr. Bankman-Fried's sentencing. (Opp., Ex. B. at 4.) Thus, contrary to Mashinsky's assertions, the letter does nothing to cure the absence of a causal link between any conduct by FTX and Mashinsky's claimed losses. (Opp. ¶¶ 55-56.)

**D. The Mashinsky Claims Are Barred by the Doctrine of *In Pari Delicto*.**

69. The doctrine of *in pari delicto* provides that, "a plaintiff is barred from asserting a claim if the plaintiff participated in the wrongdoing that was a substantial cause of the alleged damages." *Zazzali* v. *Hirschler Fleischer, P.C.*, 482 B.R. 495, 512 (D. Del. 2012). "*In pari delicto* serves at least two important policy goals: deterring wrongful conduct by refusing

26 Celsius was only identified as a potential victim of FTX because it unknowingly received customer funds. (*See* Opp., Ex. B. at 3 ("Celsius lent money to Alameda Research, and certain loans were repaid by Alameda Research to Celsius using customer funds.").) Celsius, of course, collapsed months before the revelation of FTX's fraud, so it was not harmed by Alameda's misrepresentation.

wrongdoers any legal or equitable relief, and protecting the judicial system from having to use its resources to provide an accounting among wrongdoers." *Stewart* v. *Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015). The doctrine of *in pari delicto* thus independently bars the Mashinsky Claims, which seek to recover $2.15 billion for injuries intertwined with and arising from Mashinsky's own fraud.

70. This Court recently applied the doctrine in these Chapter 11 Cases to analogous facts against the Trust. *See In re FTX Trading Ltd.*, 2026 WL 2149961 (Bankr. D. Del. July 24, 2026) ("*Binance*"). In that adversary proceeding, the Court granted motions to dismiss the Trust's state law claims asserted against Binance concerning Binance's November 2022 tweets that allegedly accelerated the collapse of the Debtors. *Id.* at *3, 22. The Court determined that "it was the ongoing fraud at FTX and not the Binance Defendants' alleged conduct, that was the primary cause of the lost value FTX attempts to collect." *Id.* at *18. The same analysis applies here: Celsius collapsed because of Mashinsky's admitted fraud, so Mashinsky cannot recover value from the Trust for losses resulting from that misconduct.

71. Having pleaded guilty to fraud, Mashinsky attempts to use his proofs of claim to shift responsibility for the resulting losses to the Debtors, including by minimizing his criminal misconduct and framing it as categorically distinct from his ever-evolving and unsupported allegations against the Debtors. (Opp. ¶¶ 135-42.) Both efforts fail.

72. *First*, Mashinsky characterizes his guilty plea as relating to "misrepresentations to Celsius customers regarding the Earn Program" and "securities fraud arising from the scheme to manipulate the price of the CEL token," with the caveat that "he did not concede, and the plea does not otherwise establish, that his conduct caused CEL's decline or the injuries for which the Mashinsky Claims seek recovery." (Opp. ¶ 139.) He further argues that

his CEL sales were a "miniscule fraction" of his holdings and that his admitted conduct occurred "well before" the acts described in the POCs.[27] (*Id.* ¶ 137.)

73. Mashinsky's retelling improperly minimizes the scope and consequences of his criminal misconduct. At his plea hearing, Mashinsky admitted that he "engaged in a scheme to defraud investors in CEL token by artificially manipulating the market for CEL token," made "false and misleading statements about Celsius' purchase of CEL token," and made "false and misleading statements about [his] own sales of CEL token."[28] He also admitted that he "induce[d] investors to sell their Bitcoin to Celsius in exchange for an interest in Celsius' Earn Program by making false and misleading statements about Celsius' financial condition and operations."[29] Later, at his sentencing hearing, Mashinsky agreed to an actual loss of $590 million and forfeiture exceeding $48 million.[30] Judge Koeltl specifically observed that the $590 million actual loss could not result solely from the two statements to which Mashinsky pleaded guilty and that the more than $48 million forfeiture could not be reconciled with an actual gain of only $53,000.[31] Despite the Opposition's obfuscating and blatant failure to take responsibility for his criminal conduct, the dismissal of other counts does not erase the agreed loss, forfeiture, and relevant conduct reflected in the sentencing record.

---

[27] Mashinsky ignores the sentencing record's account that, in the lead-up to Celsius's collapse, Mashinsky publicly claimed to hold assets on the Celsius platform while secretly withdrawing his own assets. Judge Koeltl noted that Mashinsky did not object to the following statement in his presentence report: "[i]n the lead-up to the June 12, 2022 pause, Mashinsky sought to allay Celsius' customers concerns about the solvency of the platform by publicly stating that he, like Celsius' customers, held an amount of his own wealth on the Celsius platform and was keeping his assets with Celsius. Mashinsky was secretly withdrawing his own assets." (Beller Decl., Ex. E (Transcript of Sentencing, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 (S.D.N.Y. filed May 19, 2025)) ("Mashinsky Sentencing Transcript") at 12:12-18.)

[28] Beller Decl., Ex. F (Transcript of Plea, *United States of America* v. *Alexander Mashinsky*, No. 1:23-cr-00347 (S.D.N.Y. filed Dec. 20, 2024)) ("Mashinsky Plea Transcript") at 13:21-14:1.

[29] *Id.* at 11:4-8.

[30] Mashinsky Sentencing Transcript at 4:14-16, 5:10-13.

[31] *Id.* at 6:24-7:9.

74. *Second*, Mashinsky attempts to frame his fraud as categorically distinct from FTX's alleged misconduct, arguing that "[t]he Mashinsky claims concern far different conduct" than the conduct to which Mashinsky pleaded guilty. (Opp. ¶ 137.) Beyond being false, this argument reflects the kind of "hypertechnical interpretation of the *in pari delicto* doctrine" that courts have rejected. *See, e.g.*, *In re Oakwood Homes Corp.*, 389 B.R. 357, 371 (D. Del. 2008), *aff'd*, 356 F. App'x 622 (3d Cir. 2009) (rejecting plaintiff's "attempt to separate the 'wrongs'" committed by both parties where plaintiff's claims were based on its own misconduct). For the doctrine to bar a party's claim, "it is not necessary that [the] wrongdoing of plaintiff and defendant be clearly mutual, simultaneous, and relatively equal." *Id.* at 371-72. In fact, as the Court recently explained, "[t]his act of referee[ing] between thieves is precisely what *in pari delicto* aims to avoid." *Binance* at *20. Thus, assuming *arguendo* that FTX engaged in the fraud and market manipulation that Mashinsky alleges, the fact that Mashinsky's misconduct was "of a different quality" than FTX's alleged wrongdoing does not preclude application of the doctrine to his claims. *See Peltz* v. *SHB Commodities, Inc.*, 115 F.3d 1082, 1091 (2d Cir. 1997) (holding "the lack of an identical nature" of wrongdoing "does not destroy" the *in pari delicto* defense).

75. Here, the standard for *in pari delicto* is satisfied. The Trust does not contend that Mashinsky is barred from recovery because he committed an unrelated crime; rather, the misconduct underlying Mashinsky's guilty plea is directly tied to the injuries for which he now seeks recovery through the Mashinsky Proofs of Claim.[32] His alleged losses are the direct consequences of Celsius's collapse in which, by his own criminal admission, he played a central role.

[32] Mashinsky's reliance on *In re New Valley Corp.*, 181 F.3d 517 (3d Cir. 1999), is misplaced. (*See* Opp. ¶¶ 140-41.) In that case, the claimant's backdating of certain lease-assignment agreements "had no 'immediate and necessary' relationship to" its claims for unpaid rent, as the agreements neither affected the claimant's entitlement to that rent nor related to the lease underlying most of their claims. *New Valley*, 181 F.3d at 524-26.

**IV. In the Event Any of the Mashinsky Claims Survive, the Trust Has Rebutted Mashinsky's *Prima Facie* Case and the Court Should Set a Schedule for Litigation of the Mashinsky Claims.**

76. The Trust has limited its arguments herein to the contents of the Mashinsky Proofs of Claim and Opposition, treating Mashinsky's factual allegations as true. And on that basis, the Mashinsky Claims should be disallowed in their entirety. But Mashinsky's asserted factual narrative is deeply flawed and the Trust disputes the accuracy of his allegations and whether any of them could ever be substantiated with admissible evidence. Moreover, when held up against the record of the collapse of Celsius in the Celsius bankruptcy proceedings, Mashinsky's allegations appear misleading, at best. The Celsius Examiner Report describes Celsius's risky investments and substantial losses, its failure to maintain sufficient liquidity, and a rapid increase in withdrawals after customers lost confidence in Celsius's ability to cover deposits.[33] It also reports that Celsius was in a weakened position and was failing its liquidity stress test before the events on which Mashinsky relies, and that the price of CEL had already fallen sharply before the period when Mashinsky suggests a spike in short activity occurred.[34]

77. Accordingly, while the Mashinsky Claims should be disallowed at this stage for the reasons set forth in Argument Sections I-III above, if any portion of the Mashinsky Claims survives, the Trust has rebutted Mashinsky's *prima facie* case through the Amended Objection and this Reply. Mashinsky therefore bears the burden of proving each element of his claims, including damages, by a preponderance of the evidence. *Allegheny Int'l, Inc.*, 954 F.2d at 174. Mashinsky has not and cannot carry that burden. If the Court concludes that the Trust's threshold arguments do not fully dispose of the Mashinsky Claims, the Trust requests a schedule for discovery and

---

[33] Celsius Bankruptcy, D.I. 1956 at 143-44, 287-90, 308-09.

[34] *Id.* at 290-95, 303-04.

further litigation up to and including an evidentiary hearing on any surviving portion of those claims.

**Conclusion**

78. For the foregoing reasons, the Trust respectfully requests that the Court enter an order disallowing and expunging the Mashinsky Claims in their entirety, with prejudice, and granting such other and further relief as the Court deems just and proper. Alternatively, if any portion of the Mashinsky Claims survives, the Trust requests that the Court set a schedule for discovery and further adjudication of the surviving claims.

Dated: October 2, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
mcguire@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
bellerb@sullcrom.com

*Counsel for the FTX Recovery Trust*