# Exhibit B

**Seth Melamed's Reply**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>**Related to D.I. 35768, 35827, 35980, 36002, 36059, 36245**<br><br>**Hearing Date: October 20, 2026 at 9:30 am (ET)** |

**STATEMENT OF SETH MELAMED IN RESPONSE TO FTX RECOVERY TRUST'S RESPONSE TO ARGENT LIQUIDATION TRUST'S CORRECTED JOINDER AND STATEMENT IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE JUNE 2, 2026 ORDER**

Seth Melamed ("**Melamed**"), by and through his undersigned counsel, submits this statement in response to the *FTX Recovery Trust's Response to Argent Liquidation Trust's Corrected Joinder and Statement in Support of Motion for Reconsideration of the June 2, 2026 Order* [D.I. 36245] (the "**Argent Response**" or "**Resp.**"), solely as to the portions applicable to Melamed,[2] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. In the *FTX Recovery Trust's Motion to Enforce Prior Orders that Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35243] (the "**Enforcement Motion**"),

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] This Statement responds to Point IV of the Argent Response (¶¶ 127–135) which raises new arguments in opposition to the *Motion for Reconsideration of the Order Granting FTX Recovery Trust's Motion to Enforce Prior Orders That Preclude Seth Melamed from Asserting New Claims in Arbitration* [D.I. 35827] (the "**Motion for Reconsideration**") and *Motion of Seth Melamed for Entry of an Order Determining That the Filing and Prosecution of the Proposed Request to Amend Description of Arbitration Is Not Enjoined by the June 2nd Order or the Confirmation Order* [D.I. 35980] (the "**Motion to Clarify**").

the Trust argued that section 5.2 "conclusively settled and released" every claim "premised on" FTX's generalized fraud, by whomever asserted, including Melamed. The June 2nd Order enjoins Melamed from pursuing the claims described in his November 12, 2025 Notice of Arbitration (the "**NOA**") "because they are premised on claims that have been compromised, settled, resolved, and enjoined under sections 5.2 and 10.8" of the Plan. (June 2nd Order ¶ 2.) When the claimant became Silvergate, which asserts "the very types of generalized fraud claims and theories of recovery" the Trust told this Court section 5.2 had extinguished (Resp. ¶ 14), the Trust modified its interpretation of the Plan. That view changed again when Alex Mashinsky made the argument Melamed had made. Based on the Argent Response, the Trust now asserts that Section 5.2 is a provision whose "focus" was on "Claims for losses tethered in some way to accounts on the FTX exchanges or Digital Assets"; generalized-fraud claims not so tethered "arguably are not precluded by section 5.2"; and whether section 5.2 bars the Silvergate Claims "at all is moot." (*Id.* ¶¶ 13–14, 100.) The Plan's text has not changed. Only the Trust's interpretation of it has.[3]

2. Melamed does not ask the Court to adopt the Trust's September reading. He asks the Court to apply what that reading requires: a specific account of the obligation and the loss. The Trust now explains the settlement's effect by the loss for which additional recovery is sought. (Resp. ¶¶ 99, 131.) In other words, the second paragraph of section 5.2 does the work, not the first. As to Melamed, the Trust now contends that his claims are "in respect of Digital Assets" and that section 4.4 "dictates how such claims are valued." (Resp. ¶ 130.) The Enforcement Motion's section 5.2 argument did not cite section 4.4 (Enforcement Motion ¶¶ 39–45), and the June 2nd Order does not reference it. The Court reserved the indemnification claim on July 31, 2025, and

[3] Attached hereto as **Exhibit A** is a comparison of statements of the Trust from its operative pleadings.

no ruling has separately analyzed it. Based on the foregoing, the Court should vacate the June 2nd Order.

## ARGUMENT

### I. The Trust Has Retreated From the Reading of Section 5.2 That It Pressed for the June 2nd Order (Argent Response Point IV.B)

#### A. April Through July 2026: Section 5.2 Was a Self-Executing Release of Every Generalized-Fraud Claim

3. The Enforcement Motion devoted seven paragraphs to section 5.2. (Enforcement Motion ¶¶ 39–45.) At that time, the argument was clear -- Melamed was enjoined because his claims i) "have been conclusively settled and released under the Global Settlement provision of the Plan, which generally releases all claims premised on 'the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of' FTX." (*Id.* ¶ 14.); and ii) Melamed's claims were barred precisely because they were generic:

> These allegations concern the very same alleged misconduct that was conclusively settled and released through the Plan's Global Settlement. Because virtually any purported creditor of FTX could attempt to obtain a disproportionate recovery at the expense of others by asserting claims based on this same misconduct, these are precisely the type of claims that have been released and enjoined under the Plan's Global Settlement provision.

(*Id.* ¶ 44.) The Trust has described the settlement as aimed at "theories of generalized harm that could be asserted by all customers," and has distinguished claims that "allege individualized harm." (D.I. 34704 ¶ 42; Resp. ¶¶ 74–75.) Melamed's indemnification right belongs to the Seller Indemnified Parties under the SPA (SPA cl. 9.3); it does not arise from customer status. Whether its particular Losses are distinct from the unpaid Crypto Consideration is the question the Court reserved in the Order entered on July 31, 2025 (the "**July 31 Order**" ¶ 3, [D.I. 32057].)

4. Among other arguments, Melamed argued that the Debtors themselves had described section 5.2 by reference to customer claims. The Trust brushed that argument aside by

noting that the language of section 5.2 "is expansive, not limiting, and thus cannot be read to confine the Global Settlement provision to customer claims." [D.I. 35558; the "**MTE Reply**" ¶ 46.] Melamed's claims fell within section 5.2 because they "could be asserted by nearly all creditors." (*Id.* ¶ 45.) In opposing reconsideration, the Trust told the Court that section 5.2 "*conclusively resolves and releases claims against the estate premised on the larger FTX group fraud.*" (D.I. 36002 (the "**Reconsideration Objection**") ¶ 2)(emphasis supplied.) When the text of section 5.2 did not quite say that, the Trust supplied the missing words. It described the Global Settlement as applying to "all Claims, Interests and Causes of Action against, by or among the Debtors" arising from the FTX fraud, citing section 5.2. (*Id.* ¶ 11.) The phrase "arising from the FTX fraud" appears nowhere in section 5.2 or in paragraph 39 of the Confirmation Order.[4]

**B. Argent Response: Section 5.2 Becomes a "Focus," a "Framework," and an "Arguabl[e]" Bar**

5. On July 13, 2026, Argent filed its *Joinder and Statement in Support of Motion of Seth Melamed for Reconsideration of the June 2, 2026* Order [D.I. 35985], corrected on July 28, 2026 [D.I. 36059] (the "**Argent Joinder**"). At the July 23, 2026 hearing, the Court gave the Trust time to respond, and it did so on September 11, 2026. (July 23, 2026 Hr'g Tr. 29:17–18, 30:12–17; *see* D.I. 36188.) Rather than rely on the plain language of section 5.2 against the Silvergate Claims (as it did against Melamed), the Trust told the Court:

(a) "The focus of the Plan, including section 5.2, was on Claims for losses tethered in some way to accounts on the FTX exchanges or Digital Assets." (Resp. ¶ 13.)

(b) Class 6A claims that "seek recoveries for other types of alleged losses based on generalized allegations of prepetition misconduct" by FTX insiders

[4] The settlement and compromise in the first paragraph of 5.2 is mutual – in other words, creditors compromised their claims against the Debtors and the Debtors compromised their claims against creditors. *See* Confirmation Order, ¶40.

"arguably are not precluded by section 5.2 despite the framework provided for in the Global Settlement." (*Id.*)

(c) For Class 6A claims "untethered to Digital Assets" that "seek damages based on allegations that the claimant's business suffered harm from the fraud," "the plain language of the Plan does not operate in the same manner." (*Id.* ¶ 100.)

(d) "The Global Settlement does not independently disallow any Claims that attempt an end-run around the Plan's classification and treatment provisions, but rather releases and settles such Claims so that they are unenforceable and subject to disallowance under section 502(b)(1) of the Bankruptcy Code." (*Id.* ¶ 125.)

(e) The Trust "will not request that the Court apply the Global Settlement or section 5.2 to the Silvergate Claims as a threshold legal matter, and thus the question of whether the language of the Plan bars the assertion of the Silvergate Claims at all is moot." (*Id.* ¶ 14; *see id.* ¶¶ 138–139.)

(f) Rather than rely on the Plan's text, the Trust asks the Court to "equitably apply the Global Settlement" to such claims. (*Id.* ¶ 74; *see id.* ¶ 138 (settlement "should be applicable on an equitable basis").)

6. The contrast speaks for itself. "Expansive, not limiting" has become "arguably." A release that reached "virtually any purported creditor" no longer reaches a creditor asserting billions of dollars on the same theories, unless the Court extends it as a matter of equity. A provision that "conclusively" resolved generalized-fraud claims is now one whose application to the largest generalized-fraud claimant in the case is "moot." The Argent Response offers reasons for treating Silvergate differently (Resp. ¶¶ 13–14, 138), but it does not reconcile them with its April account. It never mentions that "virtually any purported creditor" was the Trust's own phrase. Nor does it mention that "expansive, not limiting" was the Trust's answer when Melamed made substantially the argument the Trust now makes on Silvergate's behalf.

7. The retreat did not stop with Silvergate. On February 13, 2026, nearly seven weeks before it moved against Melamed, the Trust told the Court that Mashinsky's claims were "exactly the character of claims that the Global Settlement was intended to extinguish." (D.I. 34704 ¶ 42.) The Enforcement Motion made the same generalized-misconduct argument against Melamed, and

both briefs relied on the same August 12, 2025 ruling. (*Compare id.* ¶ 43, *with* Enforcement Motion ¶¶ 39–44.) The Trust now acknowledges that the Court "did not ultimately rely on the Global Settlement" in that ruling. (Resp. ¶ 66.) And on October 2, the Trust stated that it "is no longer asserting that argument against Mashinsky and expressly reserves all rights, arguments, and defenses concerning the Global Settlement and any other grounds for objection." (D.I. 36459 at 7 n.10 (citing Resp. ¶¶ 14, 138).) Melamed does not ask the Court to read that as a concession about his own claim. It does show that generalized misconduct cannot carry the injunction as to the reserved indemnification claim, and that the question is whether that particular claim falls within the settlement.

8. The Response qualifies the Trust's earlier description of the settlement as reaching claims based on misconduct that virtually any creditor could allege. It now distinguishes claims by their relationship to Digital Assets and the recovery sought. Applied to Melamed, that distinction turns on the particular obligation and loss. The Trust says the Court "agreed, granting the Motion to Enforce on that basis." (Reconsideration Objection ¶ 27.) The error is in the Order's reach: it applied the broader reading to every claim in the NOA, including the reserved indemnity and the pleaded expenses, which no ruling separately analyzed. Under any formulation of the standard, including the Trust's own (Resp. ¶ 83), that warrants correction.

9. At the May 14 hearing, the Court asked whether Melamed's fraud claim was "disallowed by the plan," calling the question "very important" and, later, "critical." (May 14, 2026 Hr'g Tr. 29:21–22, 30:18–24.) The Trust's answer then was that section 5.2 settled and released every claim premised on the generalized FTX fraud. (Motion to Enforce ¶ 14.) It has since given a different answer for claims untethered to Digital Assets in the passages quoted above (Resp. ¶¶ 13, 100), and it declines to invoke section 5.2 as a threshold bar against Silvergate and

has withdrawn it against Mashinsky, reserving its rights (*id.* ¶¶ 14, 138–139; D.I. 36459 at 7 n.10). As to Melamed, what remains is the Trust's contention that claims "in respect of Digital Assets" are limited by section 5.2, read with section 4.4. If Allowed, such a claim is valued under the Estimation Order "irrespective of the Cause of Action or theory of recovery," and its holder is "barred by section 5.2 from seeking to recover additional losses under any other theory of recovery." (Resp. ¶ 99.) The Trust thus explains the bar by the loss: section 5.2 prevents "additional recovery arising from the same underlying loss." (*Id.* ¶ 131.) Melamed seeks no second recovery of the unpaid principal. That explanation reaches the principal; it does not show that an expense separately incurred under Clause 9.3 is the same loss, and the June 2nd Order did not separately analyze that question.

10. To be clear, the question is not whether section 5.2 has substantive effect; it does. Nor does Melamed dispute that any award on account of the unpaid Crypto Consideration will be valued under the Estimation Order. The question is whether the settlement also forecloses adjudication of the contractual indemnification obligation asserted in Claim 3385 (Annex ¶¶ 4(d), 14(c), 21). That is the claim as to which the Court "reserve[d] judgment regarding the allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration." July 31 Order ¶ 3. The June 2nd Order enjoined the NOA in its entirety without separately analyzing that question.

### C. The Plan and Confirmation Order Support the Trust's September Account, Not Its April One

11. Melamed asks only that the Plan, the Global Settlement and the Confirmation Order be applied as written. The June 2nd Order relies on paragraphs 38–41, 49–50, 93, 119, and 143–144 of the Confirmation Order. Paragraph 38 describes the Plan as "a compromise of all Claims, Interests and Causes of Action relating to the contractual, legal and subordination rights that any

Holder may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made on account of such Allowed Claim or Allowed Interest," and paragraph 93 approves the Global Settlement in the same terms. Paragraph 39 makes the Global Settlement effective "on the Effective Date" and extends it to the enumerated FTX-wide controversies and "all Causes of Action relating to any of the foregoing." Melamed does not dispute that the settlement is effective or that it is substantive. Paragraph 40(a) provides that "the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4 of the Plan," a valuation rule that presupposes a claim to value.

12. The Confirmation Order also shows what an express exclusion from section 5.2 looks like (¶ 167, the ELD Claims); Melamed claims none. None of these paragraphs decides that a creditor's own contractual indemnification claim falls within an enumerated category before anyone has examined that claim.

13. At confirmation, the Debtors told the Court that "several plans approved by this Court contain almost identical language to section 5.2 of the Plan." (D.I. 26039 ¶ 79.) Argent identifies those plans and others confirmed in this District and states that in none of them did any party argue that the provision "released, expunged, or otherwise served to disallow filed proofs of claim." (Argent Joinder ¶¶ 68–69 & nn.14–15.) The Response answers that section 5.2 enumerates the categories of claims settled and the consideration given. (Resp. ¶ 85.) That does not answer whether these particular contractual components are barred from liquidation.

**D. The Trust's Own Conduct Confirms That Reading**

14. Claim 3385 has asserted fraudulent inducement from the outset. (Resp. ¶ 69.) Yet the Trust did not invoke section 5.2 against the Claim 3385 in the 2025 threshold litigation. It argued valuation and subordination instead. The Trust's explanation is that the arbitration claims

are new: its silence "only highlights the novelty of his arbitration claims." (Resp. ¶ 72, quoting MTE Reply ¶ 45.) That explanation does not reach the indemnification claim, which Claim 3385 pleaded in 2023 (Annex ¶¶ 4(d), 13(c), 14(c), 21) and which the Court reserved in 2025. (July 31 Order ¶ 3.) The Court sent the merits to arbitration and found, over the Trust's objection, that "the adjudication of the SPA claim can be entirely disposed of in arbitration without any need of piecemeal litigation or significant subsequent proceedings before this Court." (July 22, 2025 Hr'g Tr. 124:9–12.)

15. Today the Trust presses section 5.2 against Melamed while declining to seek it "as a threshold matter to bar any litigation of the Silvergate Claims." (Resp. ¶ 138.) It no longer asserts the argument against Mashinsky, while reserving its rights. (D.I. 36459 at 7 n.10.) A settlement that binds all creditors cannot be enforced only against the creditors the Trust chooses. The Trust distinguishes Melamed by the asserted link to Digital Assets, by preservation, and by the prior rulings. (Resp. ¶¶ 127–134.) The first of those is a characterization of the indemnification claim that the Court reserved and that no ruling has separately analyzed (July 31 Order ¶ 3); the second is answered above (¶ 14).

**E. Section 10.8 Adds Nothing Beyond the Settlement It Enforces**

16. Section 10.8 makes "the satisfaction and release pursuant *to this Article 10*" (emphasis supplied) act as an injunction "with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order." (Plan § 10.8.) It enjoins what was settled; it does not decide what was. Paragraph 144 of the Confirmation Order enjoins prosecution of claims "released, compromised, or discharged pursuant to the Plan." It does not enlarge what the Plan compromised. Section 10.8 and paragraph

144 therefore add nothing to the injunction until its predicate, that the particular claim was settled, is shown.

### II. The Trust's Section 4.4 Theory Was Not the Basis for the June 2nd Order and Cannot Sustain It (Argent Response, Point IV)

17. Having retreated from the reading that produced the June 2nd Order, the Trust offers a new one, both in support of the Order and in response to the Motion to Clarify. It argues that the second paragraph of section 5.2 bars recovery because Melamed's claims are "in respect of Digital Assets" and section 4.4 "dictates how such claims are valued." (Resp. ¶ 130.) Under the Trust's theory, section 5.2 bars Melamed's claims because of their asserted link to Digital Assets. Meanwhile, for Class 6A claims "untethered to Digital Assets" that seek damages for business harm from the FTX fraud, "the plain language of the Plan does not operate in the same manner," and the Trust falls back on Plan history and equitable subordination. (*Id.* ¶¶ 13, 99–100.) The theory therefore turns entirely on characterizing each claim in the Notice of Arbitration as a Claim in respect of Digital Assets.

18. *First*, the section 4.4 theory does not appear in the Enforcement Motion, whose section 5.2 argument cites neither the second paragraph of section 5.2 nor section 4.4. (Enforcement Motion ¶¶ 39–45.) The Trust first pressed it, after the June 2nd Order was entered, in opposing the Motion to Clarify. (D.I. 36004 ¶¶ 13–17.) The June 2nd Order does not mention section 4.4 or Digital Assets. Even on its own terms, the theory does not support the breadth of the Order. The Trust identifies the unpaid Crypto Consideration as the common loss. That addresses the principal. It does not explain why the contractual expense obligation pleaded in Claim 3385 (Annex ¶¶ 14(c), 21) must be treated as another valuation of those tokens. The Trust itself quoted the Court's ruling that the Estimation Order "must be used to value any arbitration award Mr. Melamed obtains related to the unpaid crypto consideration," adding "regardless of how that claim



ME1\63343050.v1

is asserted." (Enforcement Motion ¶ 38, at 19–20, quoting July 22, 2025 Hr'g Tr. 126:23–25.) That ruling fixes the measure of an award for the unpaid Crypto Consideration. It presupposes an award. Whether it also supports barring the liquidation of every asserted indemnification loss is a separate question, which no order has decided.

19. Second, section 4.4 does not by its terms decide the treatment of the indemnification claim. Section 4.4 converts "the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table," and it applies only "[u]nless otherwise expressly provided in the Digital Assets Estimation Order." (Plan § 4.4.) It presupposes a Digital Asset to convert. The Court has held that the portion of Claim 3385 relating to the Crypto Consideration is a "Claim in Respect of [] Digital Asset[s]." (July 31 Order ¶ 3.) Any award on account of the unpaid Crypto Consideration will be valued under the Estimation Order, as the Court has already ruled. (July 22, 2025 Hr'g Tr. 126:23–25; July 31 Order ¶ 3.) But the Court reserved judgment on the "allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration." (July 31 Order ¶ 3.) Clause 9.3 of the SPA obliges FTX to "indemnify and hold harmless" the Sellers against "any and all Losses," defined as "all costs, losses, Liabilities, damages, claims, demands, proceedings, expenses, penalties and legal and other professional fees," "resulting from, relating to or arising out of any breach of the representations and warranties made by the Purchaser under Clause 7.2 or covenants of the Purchaser under this Agreement." Claim 3385 asserted that right to payment. (Annex ¶¶ 4(d), 14(c), 21.) An expense separately incurred is a different loss from the value of the undelivered tokens. The indemnification claim is therefore not a Claim in respect of a Digital Asset. The Court tied that category to "the cryptocurrencies Mr. Melamed was entitled to and did not receive from FTX." (July 22, 2025 Hr'g Tr. 126:20–22.) The indemnity is a separate obligation under Clause

9.3, the loss claimed is costs and fees, not tokens, and the Court reserved it rather than valuing it with the Crypto Consideration. (July 31 Order ¶ 3.)

20. *Third*, the history of the Estimation Order confirms that section 4.4 is a token-conversion exercise, not a device for deciding other claim issues. In seeking that order, the Debtors' witness testified that "[t]he estimation motion is for the valuation of the particular token." (Jan. 31, 2024 Hr'g Tr. 45:14–15.) Debtors' counsel told the Court that, once the conversion rate is fixed, a claim is "a simple mathematical calculation to take the number of tokens you have and multiply it by the conversion rate," so that "[t]he question is, what is the conversion rate?" (*Id.* 126:19–23.) Based on these representations, the Court entered the Estimation Order. Section 4.4 is expressly subordinate to that order.

21. *Finally*, the Trust's conflation of the indemnification claim with a fraud claim fails on the contract's own terms. At the May 14 hearing, the Court observed that an indemnity claim "doesn't stand alone" and "has to have a triggering claim that would cause a loss," and asked: "if I enjoin your ability to bring the fraud claim, what would be left?" (May 14, 2026 Hr'g Tr. 44:11–15, 45:9–10.)[5] As demonstrated in the Motion to Clarify, the SPA supplies the answer. (Mot. to Clarify ¶¶ 19–22.) The triggering claim under Clause 9.3 is breach of the Clause 7.2 warranties, including FTX's warranties that its statements in the Disclosure Documents "are true, accurate and not misleading in all material respects" and that the information it furnished "is true and accurate in all material respects." (SPA Sched. 6, Pt. B ¶¶ 7–8.) Liability turns on whether the warranted

[5] The Trust says Melamed waived any argument under section 10.8 because counsel said he was "not seeking to get a ruling on 10.8." (Reconsideration Objection ¶¶ 3, 12, 29 (citing May 14, 2026 Hr'g Tr. 50:23–24).) Counsel's next words asked the Court to "deal with the section 5.2 part and determine that Melamed's contractual claim for indemnity was not compromised or released by the ad hoc group of customers." (May 14, 2026 Hr'g Tr. 50:24–51:2.) That is the question presented here. Melamed does not seek invalidation of section 10.8; he seeks a ruling on its application to the claims identified in the proposed Amended Notice. The point is that section 10.8 enjoins only those claims which were addressed in Article 10 of the Plan.

statement was untrue. It requires none of the elements that make a claim one for fraud: scienter, intent to induce reliance, or justifiable reliance. (Motion to Clarify ¶ 19 (citing *Field v. Mans*, 516 U.S. 59, 68–75 (1995)).) Bankruptcy law identifies such a claim by the source of the right to payment, which is the contract, not by the facts that made the warranty untrue. (*Id.* ¶¶ 20–21 (citing *In re Mallinckrodt PLC*, 99 F.4th 617, 621 (3d Cir. 2024), and *In re German Pellets La., L.L.C.*, 91 F.4th 802 (5th Cir. 2024)).)[6] The Trust's objection to the Motion to Clarify does not address any of that authority; it says only that Melamed is "changing labels." (D.I. 36004 ¶ 9.) Clause 15.10 confirms that "[a]ny indemnity under this Agreement is independent." Claim 3385 asserted this claim in 2023. (Annex ¶¶ 4(b), (d), 21.) The proposed Amended Notice asserts nothing else. (Mot. to Clarify ¶ 11.)

22. Fraud enters the analysis, if at all, only as the reason FTX's warranties proved false, and that fact is not in dispute. The Trust told the Court in May that "everybody was harmed by Mr. Bankman-Fried's actions" and that "everybody can stipulate to that fact." (May 14, 2026 Hr'g Tr. 60:9–12.) Adjudicating the indemnity therefore requires no litigation of the FTX fraud, which was the concern the Court identified as the reason for the Global Settlement: that "it would be difficult to prosecute all of these types of allegations and claims given the facts of the case." (*Id.* 47:11–16.) The Trust also described what section 5.2 forecloses: using the FTX fraud as "a basis for additional recoveries." (*Id.* 60:3–12.) Melamed's indemnity does not use the fraud as a basis for anything. Its basis is the warranty. And the Trust acknowledged that "[a]ny legitimate indemnity in this context must mean recovery of legitimate costs incurred in pursuing the claim." (*Id.* 15:8–9.) That is precisely the expense component Claim 3385 pleaded: "reimbursement of expenses and fees including any currently unliquidated future expenses or losses and attorney fees as allowed

---

[6] The SPA is governed by Japanese law. (SPA Clause 19.1.)

by law," and "all fees and costs resulting from, relating or arising out of Debtor's breaches, including court costs and attorneys' fees." (Annex ¶¶ 14(c), 21.) Any limit on that recovery is a question for allowance. It is not a basis for barring the claim from being liquidated.

## **CONCLUSION**

The June 2nd Order rests on a reading of section 5.2 that the Trust no longer presses as a threshold bar against other creditors. The June 2nd Order did not separately analyze the indemnification component the Court reserved on July 31, 2025. And the Trust's new argument in defense of the Order depends is dependent on indemnification being a Claim in respect of Digital Assets, an issue that was reserved in July 31 Order. Leaving the June 2nd Order in place would bar Melamed permanently from the forum this Court selected, on a rationale the Trust no longer presses against others creditors in the same Class. In short, it is manifestly unjust.

Reconsideration should therefore be granted under section 502(j) of the Bankruptcy Code and Bankruptcy Rules 9023 and 9024. The same error is a "mistake" within Rule 60(b)(1), which reaches a court's own error of law. *Kemp v. United States*, 596 U.S. 528 (2022). Alternatively, if the Court declines to vacate paragraph 2, it should grant the Motion to Clarify.

[***Remainder of Page Intentionally Left Blank***]

Dated: October 15, 2026
Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

/s/ *Kate R. Buck*
Kate R. Buck (No. 5140)
Larry O'Brien (No. 7000)
405 North King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile (302) 984-6399
kbuck@mccarter.com
lobrien@mccarter.com

– and –

David J. Adler (admitted *pro hac vice*)
250 W. 55th Street, 13th Floor
New York, NY 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
dadler@mccarter.com

*Counsel to Seth Melamed*

# EXHIBIT A

# EXHIBIT A

## The Trust's Evolving Arguments Regarding Section 5.2 of the Plan

*"Mot." = Motion to Enforce [D.I. 35243]; "Reply" = MTE Reply [D.I. 35558]; "Obj." = Reconsideration Objection [D.I. 36002]; "Resp." = Argent Response [D.I. 36245]. Emphasis omitted.*

| Issue | Motion to Enforce (D.I. 35243, Apr. 2, 2026) and Reply (D.I. 35558, May 11, 2026) | Objection to Motion for Reconsideration (D.I. 36002, July 16, 2026) | Response to Argent (D.I. 36245, Sept. 11, 2026) |
|---|---|---|---|
| **What § 5.2 does to fraud-premised claims** | The claims "have been conclusively settled and released under the Global Settlement provision of the Plan, which generally releases all claims premised on 'the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of' FTX." (Mot. ¶ 14.)<br><br>The allegations concern "the very same alleged misconduct that was conclusively settled and released through the Plan's Global Settlement." (Mot. ¶ 44.)<br><br>Relief sought: enjoin Melamed's "unpreserved, conclusively settled and released, claims." (Reply, Conclusion.) | Section 5.2 "conclusively resolves and releases claims against the estate premised on the larger FTX group fraud." (Obj. ¶ 2.)<br><br>The claims are barred by the Global Settlement provision, "and therefore permanently enjoined"; "[t]hat ruling was dispositive." (Obj. ¶ 4.) | "The Global Settlement does not independently disallow any Claims that attempt an end-run around the Plan's classification and treatment provisions, but rather releases and settles such Claims so that they are unenforceable and subject to disallowance under section 502(b)(1) of the Bankruptcy Code." (Resp. ¶ 125.)<br><br>Settled claims "cannot be pursued to obtain an additional recovery outside the Plan's classification and treatment framework. It does not, as Argent contends, extinguish every filed proof of claim or render articles 4 and 8 meaningless." (Resp. ¶ 84.) |
| **Which claims § 5.2 reaches** | "[C]laims based on this same misconduct," by which "virtually any purported creditor of FTX could attempt to obtain a disproportionate recovery at the expense of others." (Mot. ¶ 44.)<br><br>Claims "that could be asserted by nearly all creditors and which the Global Settlement provision was designed to resolve." (Reply ¶ 45.)<br><br>"[T]he quoted language" Melamed cited "is expansive, not limiting," and cannot confine the provision to customer claims. (Reply ¶ 46.) | "The Plan's Global Settlement provision applies to 'all Claims, Interests and Causes of Action against, by or among the Debtors' arising from the FTX fraud (§ 5.2)." (Obj. ¶ 11.)<br><br>The claims "fall squarely within the Global Settlement provision because they are premised on generalized allegations concerning the broader FTX Group fraud." (Obj. ¶ 27.) | "The focus of the Plan, including section 5.2, was on Claims for losses tethered in some way to accounts on the FTX exchanges or Digital Assets." (Resp. ¶ 13.)<br><br>Untethered Class 6A claims based on "generalized allegations of prepetition misconduct" "arguably are not precluded by section 5.2." (Id.)<br><br>For such claims, "the plain language of the Plan does not operate in the same manner." (Resp. ¶ 100.)<br><br>As to Melamed, *arguendo*, even claims "not premised on the generalized fraud," because "the Global Settlement's reach is not so limited." (Resp. ¶ 134.) |

| Issue | Motion to Enforce (D.I. 35243, Apr. 2, 2026) and Reply (D.I. 35558, May 11, 2026) | Objection to Motion for Reconsideration (D.I. 36002, July 16, 2026) | Response to Argent (D.I. 36245, Sept. 11, 2026) |
|---|---|---|---|
| **Claimants who assert generalized fraud** | "Because virtually any purported creditor of FTX could attempt to obtain a disproportionate recovery at the expense of others by asserting claims based on this same misconduct, these are precisely the type of claims that have been released and enjoined under the Plan's Global Settlement provision." (Mot. ¶ 44.)<br>Mashinsky: the Global Settlement bars the Mashinsky Claims. (D.I. 34704 ¶¶ 39–43 (Feb. 13, 2026); see D.I. 36459 at 7 n.10.) | Not addressed; Argent's joinder called "improper." (Obj. n.8.) | Trust will not ask the Court to apply § 5.2 to the Silvergate Claims "as a threshold matter to bar any litigation"; whether § 5.2 bars "even the assertion" of those claims is "moot." (Resp. ¶¶ 138–139; see ¶ 14.) Settlement "should be applicable on an equitable basis." (Resp. ¶ 138.)<br>Mashinsky: "The Trust previously argued that the Global Settlement operates to bar the Mashinsky Claims. The Trust is no longer asserting that argument against Mashinsky and expressly reserves all rights, arguments, and defenses concerning the Global Settlement and any other grounds for objection." (D.I. 36459 at 7 n.10 (Oct. 2, 2026).)<br>Asks instead that the Court "equitably apply" the Global Settlement to such claims. (Resp. ¶ 74.) |
| | | | |
| **Role of § 4.4 and the Estimation Order** | Not invoked in the § 5.2 argument (Mot. ¶¶ 39–45). The July 2025 valuation ruling is relied on to argue futility and burden. (Mot. ¶ 38.)<br>Quoting the Court: the Estimation Order "must be used to value any arbitration award Mr. Melamed obtains related to the unpaid crypto consideration." (Mot. ¶ 38, at 19–20.) | The Crypto Consideration "must be valued under the Plan and Estimation Order." (Obj. ¶ 1.) | Section 4.4 "dictates how such claims are valued." (Resp. ¶ 130.)<br>"[W]hatever theory of liability Melamed invokes," his claims fall within "the Plan's prescribed treatment for claims 'in respect of Digital Assets.'" (Resp. ¶ 130.) |
| **Textual basis cited** | Clause (a): "fraud . . . and misconduct" of FTX. (Mot. ¶ 40.) | Clause (k): claims that "relat[e] to" the generalized fraud. (Obj. ¶ 27.) | Section 5.2's second paragraph and § 4.4 (Resp. ¶¶ 89, 129–131), and "all Claims" held by a creditor "whose claim is governed by specific Plan treatment." (Resp. ¶ 134.) |
| **Section 10.8** | Section 10.8 is "an independent injunction provision" and "is not limited to claims released under Article 10." (Reply ¶ 47.) | Same. (Obj. ¶¶ 12, 30.) | Section 10.8 "incorporates the Global Settlement." (Resp. ¶ 107.) |