# EXHIBIT A

McCarter & English

*In re FTX Trading Ltd.*, et al., Case No. 22-11068 (KBO)

Melamed's Motion for Reconsideration of the June 2, 2026 Order [D.I. 35827] and Motion to Clarify [D.I. 35980]

**Presentation of Seth Melamed**

**Hearing Date October 20, 2026**

McCarter & English, LLP
www.mccarter.com

# The June 2nd Order

- Paragraph 2 of the June 2, 2026 Order enjoins pursuit of the Notice of Arbitration claims "because they are premised on claims that have been compromised, settled, resolved, and enjoined under sections 5.2 and 10.8" of the Plan.

> Confirmation Order, including those set forth in paragraphs 38-41, 49-50, 93, 119, and 143-144, Seth Melamed is enjoined from pursuing the claims described in his November 12, 2025 Notice of Arbitration (SIAC Case No. ARB602/25/VKH) because they are premised on claims that have been compromised, settled, resolved, and enjoined under sections 5.2 and 10.8 of the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates.*[2]
>
> 3. This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

*June 2, 2026 Order [D.I. 35768] ¶¶ 2–3*

M&E

# The Trust's Motion to Enforce



Mr. Melamed obtains related to the unpaid crypto consideration," regardless of how that claim is asserted. (July 22, 2025 Tr., Glueckstein Decl. Ex. 6, 126:23-25.) In short, allowing these claims to proceed in arbitration would serve no purpose other than to impose unnecessary cumulative litigation and expense on the Trust, and an inevitable return to this Court to determine allowance and treatment in accordance with (among other things) the same orders that Melamed is now seeking to circumvent.

**III. Melamed's New Claims in Arbitration Have Been Released and Enjoined Pursuant to the Plan's Global Settlement Provision.**

39. The new claims that Melamed asserts in arbitration fail for another independently sufficient reason: the claims are conclusively resolved by the Plan's Global Settlement provision (Plan § 5.2) because they are premised on generalized allegations of fraud and misconduct by FTX, and are therefore barred.

40. The confirmed Plan incorporates a Global Settlement that releases any creditor claims premised on "the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of" FTX. (Plan § 5.2.) Claims falling within the scope of the Global Release are deemed fully "settle[d]" under section 5.2 of the Plan. Section 10.8 of the Plan therefore "act[s] as a permanent injunction against any Person who has held, holds or may hold" such a settled claim or interest from "commencing or continuing any action to collect, enforce, offset, recoup or recover" on that claim.

41. The generalized allegations in Melamed's Notice of Arbitration concerning FTX's finances, governance, and handling of customer or corporate assets put Melamed in the same position as any other creditor asserting similar misconduct. For example, in support of Melamed's new argument that he was induced to enter into the SPA's "harmful transaction structure," Melamed provides two examples of FTX's "deceit" and "predatory conduct":





42. *First*, Melamed now asserts that he would not have sold 20% of his Liquid shares in exchange for the Crypto Consideration if FTX had not made "material misrepresentations and omissions" concerning the following topics: "(i) its segregation, custody, and reconciliation of customer assets; (ii) the true status of customer asset backing and risk management (including fabricated 'insurance fund' metrics and undisclosed shortfalls); and (iii) the secret preferential treatment and effectively unlimited credit extended to Alameda Research—funded by FTX customer deposits." (NoA, Glueckstein Decl. Ex. 2, ¶ 17(a).)

43. *Second*, Melamed asserts that he would not have sold 20% of his Liquid shares in exchange for the Cash Consideration "if FTX had not made misrepresentations to the Claimant as to the legitimacy of its business practices." (NoA, Glueckstein Decl. Ex. 2, ¶ 17(b).)

44. These allegations concern the very same alleged misconduct that was conclusively settled and released through the Plan's Global Settlement. Because virtually any purported creditor of FTX could attempt to obtain a disproportionate recovery at the expense of others by asserting claims based on this same misconduct, these are precisely the type of claims that have been released and enjoined under the Plan's Global Settlement provision. (*See* Aug. 12, 2025 Tr., Glueckstein Decl. Ex. 7, 39:9-21 (recognizing in connection with another claimant's claim that, "[i]f there was a valid claim under some sort of fraud, mismanagement, commingling claim, it has been compromised through the global settlement under the plan for the good of all creditors and customers of FTX so that the litigation, with respect to these issues, wouldn't just consume the rest").)

45. Importantly, this Court has exclusive jurisdiction over the interpretation of the Plan. (*See* Plan § 12.1 ("[T]he Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan.")); *Travelers*





*Indem. Co.* v. *Bailey*, 557 U.S. 137, 151 (2009) (affirming bankruptcy court order enjoining state law actions initiated in violation of third-party release and injunction in chapter 11 plan and confirmation order, observing that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"). Thus, this Court—not the arbitral tribunal—must determine as necessary whether Melamed's new claims are precluded by the Plan's Global Settlement provision and Confirmation Order.

# Plan § 5.2

5.2. Global Settlement of Claims and Interests

In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

In connection with the implementation of the Global Settlement pursuant to the Plan: (a) the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4; (b) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (c) the Alameda U.S. Customer Claim shall be recognized as part of the General Pool; (d) Claims shall be classified and treated as set forth in Article 4, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (i) Dotcom Customer Priority Assets and the U.S. Customer Priority Assets, respectively, and (ii) General Pool, in accordance with the waterfall priorities set forth in Section 4.2; (e) the Consolidated Debtors shall be substantively consolidated as set forth in Section 5.7; (f) Cancelled Intercompany Claims, Equitably Subordinated Claims, FTT Claims and Interests and *De Minimis* Claims shall be cancelled; (g) Separate Subsidiary Intercompany Claims, Senior Subordinated IRS Claims, Senior Subordinated Governmental Claims, Junior Subordinated IRS Claims, Preferred Equity Interests, Section 510(b) Preferred Equity Claims and Section 510(b) Other Equity Claims shall be subordinated to Claims of other Holders, in accordance with the waterfall priorities set forth in Section 4.2; (h) Holders of Other Equity Interests shall recover against the General Pool in accordance with the waterfall priorities set forth in Section 4.2; (i) Distributions to customers and





creditors shall be made in Cash (other than in Available NFTs) as set forth in Articles 4 and 7; (j) all assets scheduled by the Debtors shall constitute property of the Debtors' Estates; (k) interest shall be paid at the applicable rate to Holders of certain Claims in accordance with Section 7.1 and the treatment set forth in Section 4.3; and (l) interest shall be paid at the Consensus Rate to Holders of Allowed Separate Subsidiary Claims, Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, Allowed Dotcom Convenience Claims and Allowed U.S. Convenience Claims in accordance with Section 7.1 and the treatment set forth in Section 4.3.

# The June 2nd Order is Premised on an Interpretation that the Trust No Longer Presses

| Issue | April–May 2026 (D.I. 35243, 35558) | June 16 – July 16, 2026 (D.I. 35828, 36002, 36004) | Sept. 11, 2026 (D.I. 36245) / Oct. 2 (D.I. 36459) |
|---|---|---|---|
| **What § 5.2 does** | Claims "have been conclusively settled and released under the Global Settlement provision." (Mot. ¶ 14) | § 5.2 "conclusively resolves and releases claims against the estate premised on the larger FTX group fraud." (D.I. 36002 ¶ 2) "That ruling was dispositive." (¶ 4) | "The Global Settlement does not independently disallow any Claims that attempt an end-run around the Plan's classification and treatment provisions, but rather releases and settles such Claims so that they are unenforceable and subject to disallowance under section 502(b)(1) of the Bankruptcy Code." (Resp. ¶ 125) |
| **Which claims** | Claims "virtually any purported creditor of FTX could" assert (Mot. ¶ 44). Against a customer-claims reading: "the quoted language is expansive, not limiting." (Reply ¶ 46) | Glossed as "arising from the FTX fraud (§ 5.2)" (D.I. 36002 ¶ 11) — the Trust's words, not § 5.2's (Statement ¶ 4). | "The focus of the Plan, including section 5.2, was on Claims for losses tethered in some way to accounts on the FTX exchanges or Digital Assets." A "small set" of untethered Class 6A claims "arguably are not precluded by section 5.2." (Resp. ¶ 13) |
| **Other generalized-fraud claimants** | Mashinsky: "exactly the character of claims that the Global Settlement was intended to extinguish." (D.I. 34704 ¶ 42, Feb. 13) | Silvergate (June 16): its claims "can never become Allowed Claims as a matter of law." (D.I. 35828 ¶ 30) | Silvergate: no § 5.2 request "as a threshold legal matter"; the question is "moot." (Resp. ¶ 14) Mashinsky: "no longer asserting that argument," rights reserved. (D.I. 36459 at 7 n.10) |
| **§ 4.4** | Not cited in the § 5.2 argument (Mot. ¶¶ 39–45). The July 2025 valuation ruling is relied on for futility and burden (Mot. ¶ 38); counsel described § 4.4 at the hearing (May 14 Tr. 13:7–10). | Argued in writing against the Amended Notice ("Plan §§ 4.4, 5.2"; "futile and wasteful"). (D.I. 36004 ¶¶ 14, 17) | Extended to defend the June 2nd Order itself: § 4.4 "dictates how such claims are valued"; "whatever theory of liability Melamed invokes." (Resp. ¶¶ 129–131) |

M&E

# The New Interpretation Treats Class 6A Creditors differently

- **Argent Response:** the "focus" of § 5.2 is claims "tethered in some way to accounts on the FTX exchanges or Digital Assets." (Resp. ¶ 13)
- **Silvergate (Argent):** claims like Silvergate's "arguably are not precluded by section 5.2" (Resp. ¶ 13); the Trust will not raise § 5.2 against them "as a threshold legal matter." (Resp. ¶ 14)
- **Mashinsky:** the Trust is "no longer asserting that argument," rights reserved. (D.I. 36459 at 7 n.10)
- **Melamed:** the Trust keeps its § 5.2 reading and says the Amended Notice "relates exclusively to the Crypto Consideration." (Resp. ¶ 134)
- **June:** the Trust called Silvergate's breach of contract and indemnity claims "similar" to the claims the June 2nd Order enjoined. (D.I. 35828 ¶ 33)
- The September reading turns on the particular claim and loss. That requires a claim-specific ruling the June 2nd Order did not make — including on the indemnity claim. The Motion to Enforce's § 5.2 argument rested on generalized fraud. (Mot. ¶¶ 39–45)

M&E

# The Court should Vacate the June 2nd Order under 11 U.S.C. § 502(j) and Bankruptcy Rules 3008, 9023, 9024

- **Timely under Rule 9023 (Civil Rule 59(e)):** filed June 16, within 14 days of the June 2nd Order — clear error of law/manifest injustice.
- **The ground has moved:** the Order rests on a reading of § 5.2 that the Trust no longer presses as a threshold bar against other creditors.
- **The error:** the Court reserved judgment on “the allowance, classification, and subordination of any indemnification claim arising from the Crypto Consideration” (July 31, 2025 Order [D.I. 32057] ¶ 3). The June 2nd Order enjoined the whole Notice without separately analyzing that claim.
- **A claim-specific question:** the Trust says the Global Settlement “does not independently disallow any Claims” but “releases and settles such Claims so that they are unenforceable and subject to disallowance under section 502(b)(1).” (Resp. ¶ 125) Whether a particular claim falls within that release must be decided claim by claim — not assumed for a claim the Court referred to arbitration. (D.I. 32058)
- **Alternatively:** Rule 9024 (Civil Rule 60(b)(1)) reaches a court’s own error of law (*Kemp v. United States*, 596 U.S. 528 (2022)); § 502(j)/Rule 3008 (reconsideration for cause).

M&E

# The Motion To Clarify [D.I. 35980]

- **On July 9, 2026 — Melamed filed the** Motion to Clarify [D.I. 35980] (the "**MTC**") with proposed Amended Notice to be filed in the SIAC Proceeding (Adler Decl. Ex. A) [D.I. 35981].
- The Trust has opposed the Motion on four grounds.
  - The MTC is premature and seeks an advisory ruling
  - The Amended Notice violates the June 2nd Order
  - The Amended Notice independently violates the Plan and Digital Estimation Order
  - The Claims in the Amended Notice were not preserved in the SPA Claim (Claim 3385)

# Response to Point I — MTC Not Advisory

- The Trust argues that the MTC seeks an advisory opinion (D.I. 36004 ¶ 3; Resp. ¶ 133) while reserving the right to seek relief for Melamed's conduct under the same Order (D.I. 36004 n.3).
- The Court has entered an injunction against Melamed. A party uncertain of an injunction's reach may ask the issuing court to construe it. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).

> now permitted. ([D.I. 35980] ¶¶ 3-4 & n.3; *see* Amended Notice ¶ 6.) As set forth in detail in the Trust's Reconsideration Objection, Melamed's motion fails because Melamed improperly seeks advisory relief (Reconsideration Objection ¶¶ 3, 7) and simply recasts a "narrow[ed]" subset of claims already enjoined by the June 2 Order (*id.* ¶¶ 4, 8-12).

*Trust's Response to Argent [D.I. 36245] ¶ 133*

> THE COURT: Okay. And to be clear, that arbitration is, in fact, currently stayed; is that correct?
>
> MR. ADLER: That's correct.
>
> THE COURT: Okay. And I would expect it to remain stayed until I make my decisions.

*July 23, 2026 Hr'g Tr. 36:10–14*

M&E

# Response to Point II – The Amended Notice does not violate the June 2nd Order

- In the *Motion to Enforce*, the Trust argued that generalized claims for fraud and misconduct were resolved by Section 5.2 of the Plan. *See Motion to Enforce*, ¶¶40-41, 44.
- The Amended Notice amends the description of the existing arbitration, deletes the enjoined claims and limits the claims to purely contract claims. Specifically, the Amended Notice identifies the Clause 7.2 warranties (including that the information FTX furnished "is true and accurate in all material respects" (SPA Sched. 6, Pt. B ¶¶ 7–8; Statement ¶ 21)) and that Melamed suffered a loss (as defined) which is recoverable under SPA, Clause 9.3 (indemnity).
- A claim for breach of representations and warranties is a contract claim, and it differs from a fraud claim in its very elements: it requires no scienter and no intent to deceive — only a bargained-for representation that proved untrue, and resulting loss. *Delaware law, by illustration (the SPA is governed by Japanese law, cl. 19.1): Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005); *Cobalt Operating, LLC v. James Crystal Enters., LLC*, 2007 WL 2142926, at *28 (Del. Ch. July 20, 2007) (representations "serve an important risk allocation function"), *aff'd*, 945 A.2d 594 (Del. 2008).
- The chain: the promise (Sched. 6, Pt. B ¶ 8) → the breach (incorrect representations/warranties; Amended Notice ¶¶ 14–20) → the loss (Clause § 9.3) → its bankruptcy treatment, reserved to this Court (Amended Notice ¶¶ 26, 37).

M&E

# ▪ Response to Point III — Plan §4.4 does not Apply to the Indemnity Claim

- **The objection:** arbitration is "futile and wasteful" (D.I. 36004 ¶ 17); § 5.2 bars "additional recovery arising from the same underlying loss." (Resp. ¶ 131)
- **§ 4.4 values a Digital Asset:** it converts "the value of such Digital Asset into Cash as of the Petition Date." The Digital Estimation Order valued "Claims based on Digital Assets and fiat currency" (D.I. 7090 ¶ 2); it does not mention indemnification.
- **Clause 9.3 is a separate promise:** it covers breach of the warranties "or covenants of the Purchaser," including the payment covenant (SPA cl. 4.2; First Side Letter cl. 2.1(d)). "Losses" include "expenses" and "legal and other professional fees." (Annex ¶¶ 14(c), 21)
- **A different loss:** "An expense separately incurred is a different loss from the value of the undelivered tokens." (Statement ¶ 19) The Trust recognizes the category: indemnity here means "the recovery of legitimate costs incurred in pursuing the claim." (MTE Reply ¶ 29)

> indemnification claim arising from the Crypto Consideration." (July 31 Order ¶ 3.) Clause 9.3 of the SPA obliges FTX to "indemnify and hold harmless" the Sellers against "any and all Losses," defined as "all costs, losses, Liabilities, damages, claims, demands, proceedings, expenses, penalties and legal and other professional fees," "resulting from, relating to or arising out of any breach of the representations and warranties made by the Purchaser under Clause 7.2 or covenants of the Purchaser under this Agreement." Claim 3385 asserted that right to payment. (Annex ¶¶

*Statement [D.I. 36700-2] ¶ 19, quoting SPA cl. 9.3*

> 21. Debtor has failed to release the Retained Consideration to the Claimant. Pursuant to Clause 9.3 the SPA, Debtor must indemnify the Claimant for all claims, losses, liabilities, demands, damages, costs or expenses of any nature "resulting from, relating or, or arising out of *any* breach" (emphasis added) of Debtor's representations and warranties as well as the Debtor's breach of its obligations under the SPA. Accordingly, Debtor is responsible for all damages to Claimant caused by Debtor's breaches of warranty and representations, including fraudulent breaches, as well as all fees and costs resulting from, relating or arising out of Debtor's breaches, including court costs and attorneys' fees, which cannot be ascertained at this time.

*Claim 3385, Annex ¶ 21 [D.I. 35244-1]*

> 131. While the second paragraph of section 5.2 dictates how Melamed's crypto-related claim must be valued, the first paragraph works in tandem to prevent him from using alternative Causes of Action or theories of recovery, including theories rooted in the broader FTX Group fraud, to obtain additional recovery arising from the same underlying loss. (*See* Motion to

*Trust's Response to Argent [D.I. 36245] ¶ 131*

M&E

# Response to Point IV – The Amended Notice Asserts Claims that were Clearly Stated in Claim 3385

- **Claim 3385, Annex ¶¶ 4(b)-(d), 9 (June 2023):** breaches of SPA representations and warranties → indemnity under SPA Section 9.3 → losses on the unpaid Crypto Consideration.
- **Amended Notice ¶ 18:** the same representations, the same breaches, the same indemnity claim as referenced in Claim 3385.

# Response to Point IV – The Amended Notice Asserts Claims that were Clearly Stated in Claim 3385

**Claim 3385, Annex — filed June 29, 2023 (D.I. 35244-1, Ex. 1)**

by FTX Trading Ltd., by its affiliated debtors in the Bankruptcy Proceeding, by said Sam Bankman-Fried, and by various other principals, officers and employees of FTX Trading Ltd. and/or of its affiliated debtors in the Bankruptcy Proceeding: (a) breach of contract, including the SPA; (b) multiple breaches of warranties and representations contained in the SPA and elsewhere; (c) failure to pay retained consideration as defined and promised in the SPA; (d) failure to indemnify Claimant for damages from breaches of contract and breaches of warranties and representations as provided in the SPA; and (e) fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA. Claimant asserts a general

*Annex ¶ 4(b)-(d) — warranties, retained consideration, indemnity*

cryptocurrency, as determined on November 19, 2021, made up of 39.132 bitcoin, 360.48 ETH, 11,884.98 Solana, and 47,532 FTT tokens (the "Purchase Consideration"). The Debtor retained the cryptocurrency component of the Purchase Consideration as security against certain indemnification obligations that might arise under the SPA (the "Retained Consideration"), with

*Annex ¶ 9 — crypto retained as security for SPA indemnification obligations*

**Amended Notice — D.I. 35981, Ex. A (July 9, 2026)**

17. The information and assurances that FTX and its management communicated directly and confidentially to the Claimant breached the specific contractual representations and warranties that FTX made to the Claimant in the SPA. In particular, the evidence that the Claimant will present in this arbitration will show that:

*¶ 17 — breaches of SPA representations & warranties = Annex ¶ 4(b)*

25. FTX's breaches of its contractual representations and warranties caused the Claimant to suffer losses corresponding to the value of the 20 percent portion of the purchase price to which these breached representations and warranties related. The Claimant will establish the correct quantification of those damages under

*¶ 25 — losses on the Crypto Consideration tranche = Annex ¶ 4(c) + ¶ 9*

22. Clause 9.3 of the SPA contractually obligates FTX to indemnify the Claimant for any "Losses" caused to the Claimant by FTX breaching its contractual obligations to the Claimant.

*¶ 22 — Clause 9.3 contractual indemnity = Annex ¶ 4(d)*

- **Claim 3385 expressly pleaded the contractual bases now identified in the proposed Amended Notice: same warranties, same breaches, same Clause 9.3 chain. (Reply Ex. A — D.I. 36022-1)**

M&E

# Response to Point IV
# The Amended Notice Asserts Claims that were Clearly Stated in Claim 3385

21. Nor can Melamed bridge the gap by invoking the SPA Claim's passing reference to "indemnification." That reference did not tell the Trust or the Court that Melamed would later assert a separate damages claim based on alleged warranty breaches, or that Melamed would claim he was injured because those alleged breaches caused him to allow FTX to retain the Crypto Consideration. And it did not preserve a free-floating right to repackage any later theory as a "Crypto Indemnity" claim.

The Objection: a "passing reference" — nothing preserved. (D.I. 36004 ¶ 21, July 16, 2026)

| | | |
|---|---|---|
| 1 | **Annex ¶ 4(b):**<br>"Claimant was damaged as a proximate result of the following breaches and torts by FTX Trading Ltd. . . . (b) multiple breaches of warranties and representations contained in the SPA and elsewhere . . . ." | **Amended Notice ¶ 17:**<br>"The information and assurances that FTX and its management communicated directly and confidentially to the Claimant breached the specific contractual representations and warranties that FTX made to the Claimant in the SPA." (Followed by itemized breaches ①–⑦, each tied to a specific SPA provision, e.g., Paragraph 7 of Part B to Schedule 6.)<br>*Same breaches of SPA representations and warranties — now itemized provision by provision.* |

Row 1 — warranty breaches: Annex ¶ 4(b) = Amended Notice ¶ 17

**EXHIBIT A**

**Side-by-Side Comparison: Proof of Claim No. 3385 (June 29, 2023) and the Proposed Amended Notice of Arbitration (July 9, 2026)**

Left column: Claim No. 3385, Annex (as filed June 29, 2023; copy from the Trust's own exhibit, D.I. 35244-1, Ex. 1). Right column: Proposed Amended Notice of Arbitration (D.I. 35981, Ex. A). All quotations verbatim.

| | CLAIM NO. 3385 — ANNEX (JUNE 2023) | PROPOSED AMENDED NOTICE (JULY 2026) |
|---|---|---|

Exhibit A to the Reply [D.I. 36022-1], filed July 21, 2026

| | | |
|---|---|---|
| 4 | **Annex ¶ 4 (conclusion):**<br>"Claimant asserts a general, unsecured, non-subordinated claim against the Debtor . . ." — asserted in, and subject to, this Court's claims-allowance process since June 2023. | **Amended Notice ¶ 26:**<br>"For the avoidance of doubt, the Claimant acknowledges that the Bankruptcy Court has the power to determine the bankruptcy consequences of any award in respect of this indemnification claim, including any dispute as to allowance, bankruptcy valuation, classification, subordination, distribution, or the effect, if any, of Plan § 4.4 or the Estimation Order."<br>*Every bankruptcy consequence expressly reserved to this Court.* |

***Same representations. Same breaches. Same Clause 9.3 indemnity chain. Itemized in the timely proof of claim three years before the June 2, 2026 Order.***

Row 4 — every bankruptcy consequence reserved to this Court: Annex ¶ 4 = Amended Notice ¶ 26