**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 12, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: November 19, 2026 at 1:00 p.m. (ET)** |

**MOTION OF SHRAMAN VUPPU AND PROTOCOL LABS PTE LTD. TO REINSTATE AND COMPEL DISTRIBUTION OF ALLOWED CUSTOMER CLAIM**

Shraman Vuppu ("Mr. Vuppu") and Protocol Labs Pte Ltd. ("Protocol Labs" and collectively with Mr. Vuppu, the "Movants"), customer-claimants in the above-captioned Chapter 11 Cases, by and through their undersigned counsel, respectfully move (the "Motion to Compel Distribution") the Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), directing the Plan Administrator and the FTX Recovery Trust (the "Trust") to reverse the Trust's forfeiture determination made with regard to two distributions on an allowed customer claim associated with Unique Customer Code 00376497,[2] and reinstate and make payment on those distributions pursuant to sections 105(a) and 1142(b) of title 11 of the

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in the FTX Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The underlying owner of the funds associated with this account is Bit Protocol LLC (now known as Bit Protocol S.A.) ("Bit Protocol"), a wholly owned subsidiary of Protocol Labs Pte Ltd. ("Protocol Labs"), of which Mr. Vuppu is a shareholder. To facilitate withdrawals, the account was submitted for individual KYC under Mr. Vuppu's name. In response to inquiries from FTX Customer Support and to avoid any confusion, in October 2024, Mr. Vuppu submitted to Kroll documentation concerning Bit Protocol's interest in the account/claim. FTX's records appear to continue to identify Mr. Vuppu as the account or claim holder. Accordingly, this Motion also refers to Mr. Vuppu as the "Holder" of the claim and distributions related to that claim, but the Motion is being made jointly by both Mr. Vuppu and Protocol Labs. There is no dispute between Mr. Vuppu and Bit Protocol concerning the ownership of the account, claim or associated distributions.

United States Code (the "Bankruptcy Code"), Rules 3021 and 9006(b)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 26404-1] (the "Plan").[3] In support of this Motion to Compel Distribution, the Movants respectfully state as follows:

**PRELIMINARY STATEMENT**

1. This motion concerns $1,070,415.06 in distributions on an Allowed Claim that the Trust has designated as forfeited, apparently because Mr. Vuppu did not timely complete one administrative step in the distribution process: selection and onboarding of a Distribution Service Provider, also referred to as "Step 8." The disputed amounts consist of the following: (i) a $992,607.54 distribution associated with the May 30, 2025 Distribution Date, and (ii) a $77,807.52 distribution associated with the September 30, 2025 Distribution Date (together, the "Disputed Distributions"). These distributions constitute almost 80% of Mr. Vuppu's $1.3 million Allowed Claim. Neither the facts, the Plan, nor the equities warrant permanent forfeiture of the Disputed Distributions.

2. Section 7.8 of the Plan provides that an "Unclaimed Distribution" for six months shall be deemed "unclaimed property" under section 347(b) of the Bankruptcy Code and revest in the relevant Wind Down Entity. Plan § 7.8. But Section 7.8 also requires the Plan Administrator and Distribution Agent to "use commercially reasonable efforts to notify the Holder of such Unclaimed Distribution within three months of the applicable Distribution Date." *Id.* This case does not satisfy the notice requirement of Section 7.8.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

3. To begin with, this case does not involve any "Unclaimed Distribution." Mr. Vuppu did not abandon his Claim or the Disputed Distributions. For nearly two years, he actively pursued the claims process, responded to extensive KYC and verification requests, provided the documents and information FTX requested, and repeatedly sought guidance on how to receive his distributions.

4. Further, even if the Disputed Distributions could be deemed Unclaimed Distributions, Mr. Vuppu never received notice that any distribution had been deemed an Unclaimed Distribution or that delayed completion of Step 8 was going to result in permanently extinguishing more than $1 million in distributions on his Allowed Claim. In fact, the message Mr. Vuppu consistently received from FTX was one of *delayed distributions*, not *permanent forfeiture*. Those communications cannot constitute the notice of Unclaimed Distribution contemplated by the Plan, much less the clear and unambiguous notice necessary to effect forfeiture under Delaware law.

5. Based on those communications, Mr. Vuppu deferred the designation of a Distribution Service Provider to after he had completed his relocation to the United Arab Emirates ("U.A.E."). The very delay that FTX repeatedly told Mr. Vuppu would postpone his distributions cannot now serve as the basis for permanently extinguishing those distributions. Neither the law nor the equities warrant that result. The Court, therefore, should direct the Trust to reinstate and pay the Disputed Distributions.

**BACKGROUND**

6. Mr. Vuppu maintained an account with FTX under Unique Customer Code 00376497. Following FTX's bankruptcy filing, Mr. Vuppu participated in the customer claims

process with respect to that account. Ultimately, the Trust allowed his Claim in the amount of $1,369,238.07.

7. Mr. Vuppu actively pursued his Claim from the outset. In August 2023, he accepted the scheduled claim information provided by FTX, and Kroll subsequently confirmed that his Scheduled Claim Information Acceptance had been completed on August 26, 2023. *See* Ex. B at 1. Over the ensuing months, Mr. Vuppu repeatedly responded to requests from FTX and Kroll to verify his identity, account, and entitlement to the Claim. Among other things, he submitted identity documents; answered detailed questions concerning the opening and operation of the FTX account; addressed a discrepancy concerning the name associated with the account; provided tax returns, bank statements, and other source-of-funds documentation; supplied documentation concerning the beneficial ownership of the account and Claim; and repeatedly followed up when additional information or clarification was requested. *See id*.

8. By early 2025, Mr. Vuppu had substantially completed the extensive KYC and verification process and began addressing the mechanics for receiving distributions on his Allowed Claim. The FTX Customer Claims Portal required claimants to complete several steps, including Step 8, in which a Claimant selected and onboarded with a Distribution Service Provider. Throughout March 2025, Mr. Vuppu actively sought guidance from FTX Customer Support regarding that process, including the information required to establish an account with the two service providers identified by FTX: BitGo or Kraken. *See* Ex. C at 1.

9. On April 4, 2025, Mr. Vuppu received a generic, “Dear Customer,” email from FTX Customer Support, titled “REMINDER - FTX Customer Portal - Distribution Service Provider Onboarding Requirements.” *See* Ex. D. The email concerned the anticipated May 30, 2025 distribution, and reminded customers that they needed to complete Step 8 of the Customer

Claims Portal by selecting a Distribution Service Provider and completing that provider's onboarding process. It stated:

> Please proceed to the FTX Customer Portal (https://claims.ftx.com) and use Step 8 to select your Distribution Service Provider and follow the steps. . . . This information is required for all customers. Customers may not receive a Distribution unless and until this information is provided. Any delay in completing the onboarding process ***could* jeopardize customers' ability to receive any Distribution in a *timely manner***, or at all. For more information, please visit FTX FAQs on General Information on Distribution Service Providers.

*Id.* at 1–2 (emphasis added).

10. The email added that "[s]election of a Distribution Service Provider and successful onboarding must be completed prior to the anticipated record date of April 11, 2025 to be eligible for the Next Distribution." *Id.* at 2. It reminded Mr. Vuppu that FTX's records showed that he had "not fully completed Step 8 in the FTX Customer Portal." *Id.*

11. Upon receiving the April 4 email, concerned about the April 11, 2025 deadline, Mr. Vuppu immediately followed up with FTX Customer Support that day and specifically asked:

> 1) What happens if we are not able to select the distribution partner by April 11th?
>
> 2) What is the next distribution date after the one that is mentioned above?

Ex. E at 1. Mr. Vuppu also explained that opening and completing onboarding with a BitGo or Kraken account could take longer than the April 11 deadline. *Id.*

12. FTX Customer Support responded later that day on April 4. *See id.* at 1–2. While caveating their response with generic, "Subject to the terms of the Plan," language and attaching links to the FAQs, FTX Customer Support provided the following direct response to Mr. Vuppu's specific question:

> [C]reditors who fail to meet the cut-off dates will not receive a distribution on the next distribution date. **Late completions will receive distributions in the subsequent months.**

*Id.* at 2 (emphasis added).

13. On May 29, after seeing a reference to an FTX objection concerning "Unverified Customer Entitlement Claims," Mr. Vuppu again contacted FTX Customer Support. *See id.* at 3. He explained that his KYC was complete and verified but that he had not yet selected a Distribution Service Provider in Step 8. He specifically asked: "Will my claim be counted as Unverified and be subject to [the FTX objection] or is it Verified?" *Id.* FTX Customer Support responded, again referring to a potential "delay" in Mr. Vuppu receiving his distribution. *Id.* Specifically with regard to Step 8, FTX Customer Support advised:

> As for not completing Step 8 before the set deadlines, it would mean that the pre-distribution requirements are not satisfied, then **distribution for your claim may be delayed to a later date**.

*Id.* (emphasis added).

14. Against that backdrop, Mr. Vuppu did not select a Distribution Service Provider at the time. Mr. Vuppu was domiciled in India and understood there to be some uncertainty concerning the ability of the available providers to onboard an India-domiciled customer.[4] Mr. Vuppu also was considering relocating from India to the U.A.E., which could potentially address and resolve that uncertainty in favor of designating a service provider from the U.A.E. Based on

---

[4] That understanding had a contemporaneous basis. In December 2023, India's Financial Intelligence Unit ("FIU-IND") issued a show-cause notice to Kraken and eight other offshore virtual-digital-asset service providers for operating without compliance with India's anti-money-laundering regime, and requested that their URLs be blocked in India. *See* Press Information Bureau, Ministry of Finance, Financial Intelligence Unit India (FIU IND) Issues Compliance Show Cause Notices to Nine Offshore Virtual Digital Assets Service Providers (Dec. 28, 2023), https://www.pib.gov.in/PressReleaseIframePage.aspx?PRID=1991372&reg=48&lang=2. Public reporting in December 2024 likewise stated that BitGo was then in discussions with FIU-IND concerning compliance and that full local registration was required for it to provide services in India. *See* PANews, BitGo in Compliance Discussions with India's Financial Intelligence Unit (Dec. 5, 2024), https://panews.io/articles/5s5s06z5.

those circumstances and FTX Customer Support's communications, Mr. Vuppu understood the consequence of deferring provider selection to be delayed payment, not permanent loss of his distributions.

15. A few months later, on August 6, 2025, Mr. Vuppu received another "Dear Customer" email from FTX Customer Support, also titled "REMINDER - FTX Customer Portal - Distribution Service Provider Onboarding Requirements." *See* Ex. F. The email concerned the anticipated September 30, 2025 distribution and reminded customers that the deadline to select and successfully onboard with a Distribution Service Provider "to be eligible for the Next Distribution" was August 15, 2025. *Id.* at 2. This email added, conditionally, that distributions for which pre-distribution requirements were not timely completed "***may*** be subject to forfeiture pursuant to the Plan." *See id.* (emphasis added). In light of FTX Customer Support's earlier guidance, Mr. Vuppu continued to understand that delayed completion of Step 8 would postpone payment rather than permanently extinguish his distributions.

16. When Mr. Vuppu returned to the FTX Customer Claims Portal in connection with a later distribution, he learned that the Trust had designated as forfeited the May 30, 2025 distribution, in the amount of $992,607.54, and the September 30, 2025 distribution, in the amount of $77,807.52—the Disputed Distributions. By that time, Mr. Vuppu had relocated to the U.A.E., and on June 17, 2026, he completed Step 8 and designated Kraken as his Distribution Service Provider.

17. After learning that the Trust had designated almost 80% of his Allowed Claim as forfeited, Mr. Vuppu retained U.S. counsel and sought to resolve the matter without Court intervention. Unable to reach such resolution at this time, Mr. Vuppu now makes this Motion to seek payment of the Disputed Distributions.

# ARGUMENT

## I. THE DISPUTED DISTRIBUTIONS ARE NOT FORFEITED DISTRIBUTIONS UNDER THE PLAN.

### A. The Disputed Distributions Do Not Qualify as "Unclaimed Distributions" Under the Plan.

18. Section 7.8 of the Plan applies forfeiture to Unclaimed Distributions only. The Plan defines an Unclaimed Distribution as:

> [A]ny Distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Distribution Agent of an intent to accept a particular Distribution; (c) responded in writing to the request of the Distribution Agent for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution.

Plan § 2.1.208.

19. The circumstances here bear little resemblance to an unclaimed distribution. Mr. Vuppu did not abandon, reject or fail to pursue his distributions. To the contrary, he repeatedly and affirmatively expressed his intention to accept those distributions: he accepted his scheduled Claim in August 2023 (*see* Ex. B at 1); spent more than a year responding to FTX's extensive KYC and verification requests, submitting identity and source-of-funds documentation, and following up regarding his Claim (*see* Exs. B, C); affirmatively pursued the mechanics of receiving his distributions in early 2025, including by seeking guidance concerning Step 8 and designation of a Distribution Service Provider (*see* Exs. C, E); after receiving the April 4, 2025 correspondence concerning the May 30 distribution, specifically asked FTX Customer Support what would happen if he could not complete Step 8 by the April 11 record date (*see* Ex. E at 1); and thereafter, continued corresponding with FTX Customer Support regarding Step 8 (*see id.*).

20. This is simply not the type of distribution described by the Plan's definition of an Unclaimed Distribution. Mr. Vuppu did not fail to accept the distributions, fail to express his

intent to receive them, or fail to respond to requests for information necessary to facilitate payment. *See* Plan § 2.1.208. And subsection (d) of the Plan's definition of "Unclaimed Distribution" cannot reasonably convert an incomplete administrative step into abandonment of distributions that the Holder had doggedly pursued. *See id.* That is particularly so where Mr. Vuppu expressly identified the incomplete step to FTX and sought guidance concerning the consequences of the resulting delay. *See* Ex. E at 1.

### B. Even If the Distributions Could Be Deemed "Unclaimed," the Trust Did Not Satisfy Section 7.8's Notice Requirement.

21. Even if the Trust were permitted to characterize the Disputed Distributions as "Unclaimed Distributions," Section 7.8 imposes a separate notice requirement that has not been satisfied. *See* Plan § 7.8.

22. Section 7.8's notice provision requires that "the Plan Administrator and the Distribution Agent shall use commercially reasonable efforts to notify the Holder of such Unclaimed Distribution within three months of the applicable Distribution Date." *Id.* That language requires reasonable efforts to notify the Holder not merely of an outstanding administrative requirement but of the particular "Unclaimed Distribution." *Id.*

23. Forfeiture is a harsh remedy and notice of forfeiture must be clear and unambiguous. *See Ford Motor Co. v. Earthbound LLC*, No. N23C-06-237 PRW CCLD, 2026 WL 2431329, at *7–8 (Del. Super. Ct. June 8, 2026); *Nucor Coatings Corp. v. Precoat Metals Corp.*, No. N22C-11-222 MAA CCLD, 2023 WL 6368316, at *11 (Del. Super. Ct. Aug. 31, 2023). That principle has particular force here, where the Trust seeks to permanently extinguish more than $1 million in distributions on an otherwise Allowed Claim.

24. As a threshold matter, the April 4 and August 6, 2025 communications from FTX Customer Support do not qualify as notices under Section 7.8. *See* Exs. D, F. Section 7.8 requires

commercially reasonable efforts to notify the Holder "of such Unclaimed Distribution within three months of the applicable Distribution Date." Plan § 7.8. But FTX Customer Support sent both the April 4 and August 6, 2025 communications *prior* to the applicable Distribution Dates. *See* Exs. D, F. At the time they were sent, therefore, there was not yet a distribution that could have become an "Unclaimed Distribution." Nor did either communication purport to notify Mr. Vuppu that any particular distribution had been deemed unclaimed. *See id.* Accordingly, Mr. Vuppu did not receive a Section 7.8 notice for either Disputed Distribution.

25. Next, even if the April 4 and August 6, 2025 communications could qualify as Section 7.8 notices, their content was insufficient to effect permanent forfeiture. Neither communication provided clear and unambiguous notice of forfeiture: neither identified an Unclaimed Distribution; neither advised Mr. Vuppu that a six-month forfeiture period was running; and neither identified when his rights to the relevant distribution would be permanently extinguished. *See id.* Those omissions matter: "[b]ecause forfeitures are disfavored, Delaware courts do not infer them from implication or uncertain language." *Earthbound*, 2026 WL 2431329, at *7. The communications instead addressed completion of Step 8 and eligibility for upcoming distributions.

26. The April 4 communication, which relates to the $992,607.54 May 30 distribution, is particularly telling. It does not mention forfeiture at all. Rather, it states only that completion of Step 8 was necessary to be eligible for the "Next Distribution" and that delay in onboarding "***could*** **jeopardize customers' ability to receive any Distribution in a *timely manner*, or at all**." *See* Ex. D at 2 (emphasis added). That conditional warning falls well short of clear and unambiguous notice that Mr. Vuppu stood to lose permanently an otherwise allowed distribution of almost $1 million.

27. The August 6 communication concerning the later $77,807.52 distribution went somewhat further, adding that an untimely completion of pre-distribution requirements "**may** be subject to forfeiture pursuant to the Plan." *See* Ex. F at 2 (emphasis added). But even that notice did not advise Mr. Vuppu that the distribution had been deemed unclaimed, identify the applicable six-month forfeiture period, or state when his entitlement would be permanently extinguished.

28. Absent effective forfeiture under Section 7.8, Mr. Vuppu timely completed the remaining condition to payment, i.e., designation of a Distribution Service Provider. Sections 347(b) and 1143 of the Bankruptcy Code provide a statutory period of up to five years after confirmation to perform an act required as a condition to participation in a Plan distribution. *See* 11 U.S.C. §§ 347(b), 1143. Mr. Vuppu completed the Distribution Service Provider designation and onboarding process on June 17, 2026, well within that period. *See In re Sterling Fin. Servs. of Fla.-1, Inc.*, 374 B.R. 327, 331 (Bankr. S.D. Fla. 2007) (where debtor failed to establish compliance with the plan's required forfeiture procedure, court was "unpersuaded that claim forfeiture has occurred pursuant to the terms of the confirmed plan" and held that creditors had five years from confirmation under § 1143 to claim their distributions).

### C. The Individualized Circumstances and Absence of Prejudice Favor Enforcement of the Allowed Claim.

29. The individualized circumstances surrounding Mr. Vuppu's distributions also weigh against forfeiture. Following receipt of the April 4, 2025 communication, Mr. Vuppu specifically asked FTX Customer Support what would happen if he could not complete Step 8 of the Customer Claims Portal by the April 11 deadline. *See* Ex. E at 1. While generally caveating its response with "subject to the terms of the Plan" language and attaching certain links to FAQs, FTX Customer Support directly answered Mr. Vuppu's specific questions as follows: creditors who failed to meet applicable cut-off dates would not receive a distribution on the next Distribution

Date, but "**[l]ate completions will receive distributions in the subsequent months**." *See id.* at 2 (emphasis added). On May 29, when Mr. Vuppu again sought guidance concerning his incomplete Step 8, FTX Customer Support similarly advised that "**distribution for your claim may be delayed to a later date**." *See id.* at 3 (emphasis added).

30. Thus, both FTX's formal communications and Customer Support's direct responses conveyed the same core message: delayed completion of Step 8 could *delay or jeopardize timely receipt* of a distribution, not result in its automatic and irrevocable forfeiture. *See id.* at 2–3. When Mr. Vuppu sought specific guidance concerning the very administrative step now invoked to justify forfeiture, FTX's direct responses conveyed a message of *delay*, not *permanent forfeiture.*

31. Nor would granting relief prejudice the Trust or disrupt administration of the Plan. Mr. Vuppu does not seek allowance of a late claim, enlargement of an existing claim, reopening of the claims process, or alteration of the Plan's distribution framework. His Claim was already allowed, the Disputed Distributions were calculated, and he has now completed the Distribution Service Provider designation process. Reinstatement therefore requires only payment of previously calculated distributions through the Trust's existing distribution mechanism. Further, Mr. Vuppu does not seek a blanket waiver of the Plan's requirements; he seeks an individualized determination based on the specific circumstances presented here.

32. Finally, reinstatement would have no material effect on the Trust's ability to administer the Plan or make distributions to other creditors. As of June 30, 2026, the Trust reported approximately $3.471 billion in cash and cash equivalents and had distributed approximately $10.312 billion to creditors, followed by an additional distribution of approximately $900 million in July 2026. *See FTX Recovery Trust Financial Report Q2 2026* [Docket No. 36154] at 5, 6, 18. Against that backdrop, reinstatement of approximately $1.07 million in previously calculated

distributions on an Allowed Claim presents no meaningful threat to the Trust's distribution process or recoveries of other creditors.

## II. ALTERNATIVELY, ANY DELAY TO DESIGNATE A DISTRIBUTION SERVICE PROVIDER WAS THE RESULT OF EXCUSABLE NEGLECT.

33. If the Court determines that Section 7.8 requires forfeiture, Mr. Vuppu alternatively requests relief under Bankruptcy Rule 9006(b)(1)(B), treating his completion of the Distribution Service Provider designation on June 17, 2026 as timely for the Disputed Distributions. Rule 9006(b)(1)(B) permits the Court to extend an applicable period after it has expired if the failure to act resulted from excusable neglect.

34. Under the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, the excusable-neglect determination is an equitable one which considers all relevant circumstances, including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the movant's reasonable control, and whether the movant acted in good faith. 507 U.S. 380, 395 (1993).

35. Those factors favor relief here. As discussed in Section I, reinstatement would not prejudice the Debtors or the administration of the Plan. The Claim was already allowed, and Mr. Vuppu seeks payment of two identified distributions on that Claim, not allowance of a new or increased claim. Further, any delay in completing the Distribution Service Provider designation process was modest in the context of this years-long bankruptcy case in which distributions remain ongoing. And because that designation process is now complete, reinstatement can be accomplished through the existing distribution process.

36. The circumstances surrounding the delay likewise favor relief. Before the April 11, 2025 record date, Mr. Vuppu raised the precise Step 8 issue with FTX Customer Support and

was told that "[l]ate completions will receive distributions in the subsequent months." Ex. E at 1–2. As detailed above, FTX later reiterated that his distribution "may be delayed to a later date." *Id.* at 3. Mr. Vuppu reasonably understood those repeated responses to mean that delayed completion would postpone his distributions, not permanently extinguish them.

37. Finally, Mr. Vuppu acted in good faith throughout the claims and distribution process. He consistently pursued the distributions, sought FTX's guidance concerning Step 8, and ultimately completed the Distribution Service Provider designation and onboarding process. *See* Exs. C, E. His conduct reflects an ongoing effort to obtain payment and comply with the process, not abandonment or a strategic refusal to satisfy the Plan's requirements. Taken together, the *Pioneer* factors support relief from the deadline.

## NOTICE

38. Notice of this Motion has been provided to: (a) the FTX Recovery Trust; (b) the Office of the United States Trustee for the District of Delaware; (c) the United States Department of Justice; (d) the United States Attorney for the District of Delaware; and (e) if not otherwise listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Movants submit that the applicable notice requirements have been satisfied, and that no further notice is required under the circumstances.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court enter the Proposed Order granting the relief requested herein and grant such other relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 5, 2026
Wilmington, Delaware

Respectfully Submitted,

*<u>/s/ Sameen Rizvi</u>*
L. Katherine Good (No. 5101)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: kgood@potteranderson.com
srizvi@potteranderson.com

and

Amina Hassan (*pro hac vice* pending)
Erin E. Diers (*pro hac vice* pending)
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: amina.hassan@hugheshubbard.com
erin.diers@hugheshubbard.com

*Attorneys for the Movants*