**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>**Hearing: November 19, 2026 at 1:00 p.m. (ET)**<br>**Objection deadline: November 12, 2026 at 4:00 p.m. (ET)**<br>**Re: D.I. 36919** |

2026 NOV 10 A 9:45
US BANKRUPTCY COURT DISTRICT OF DELAWARE

**LIMITED OBJECTION OF DAOCHI CAI TO MOTION OF THE FTX RECOVERY TRUST FOR ENTRY OF AN ORDER FURTHER EXTENDING THE CLAIMS OBJECTION DEADLINE AND THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE [D.I. 36919]**

Daochi Cai ("Objector"), appearing pro se solely on Objector's own behalf, respectfully submits this limited objection to the Motion of the FTX Recovery Trust for Entry of an Order Further Extending the Claims Objection Deadline and the Administrative Claims Objection Deadline [D.I. 36919] (the "Motion"). Objector requests a shorter, reviewable extension supported by differentiated evidence or, alternatively, protective conditions on any extension granted.

**Preliminary Statement**

1. Objector is an FTX customer creditor whose claim currently remains marked Disputed/TBD. Unique Customer Code: 01320654. The requested extension affects the period during which Objector's claim may remain unresolved. This objection seeks fair administration and preservation of rights, without requesting priority over other creditors.

2. The Court should not treat additional time to investigate claims as permission to convert an unresolved distribution obstacle into forfeiture. Where the Trust prevents access to a distribution service provider ("DSP") because of residence, the resulting inability to onboard should not, without judicial review, extinguish an otherwise

payable distribution. The concern is particularly acute where forfeited amounts return to Plan Assets and may benefit other beneficiaries.

3. Objector recognizes the Trust's substantial work, the need to protect against invalid claims, and the Court's prior approval of extensions. The issue is whether another undifferentiated twelve months is justified without reporting, measurable review, and protection against loss attributable to the Trust's own restrictions. Rule 9006(b)(1)(A) permits an extension for cause; it does not prescribe a one-year duration. Objector does not contend that the Motion postpones every distribution until 2028, automatically allows any claim, or itself imposes a forfeiture.

**Background**

4. The Motion requests extension of both objection deadlines from January 4, 2027 through January 4, 2028. It identifies approximately 13,800 unresolved claims, including nearly 12,800 customer claims, and acknowledges that only some portion will require substantive objections. It also describes complex litigation and substantial reconciliation progress. Motion at 1, paragraphs 7-11, 13 and 17. These facts support continued work; they do not identify how much time is needed for each customer-claim category.

5. The Trust's current DSP guidance lists China among jurisdictions whose residents cannot select a DSP through the portal. The same guidance describes payment from the Trust to DSPs in U.S. dollars. Its Distributions Dashboard FAQs, updated September 13, 2026, describe six-month onboarding consequences for Allowed

Claims and distribution-specific forfeiture. These are distinct from the status of claims that remain Disputed. [1] [2]

6. On November 3, 2025, the Trust withdrew its restricted-jurisdiction motion [D.I. 31148] without prejudice and expressly committed to a renewed motion and notice if it seeks that relief again. D.I. 33439 at 1. In a subsequent pleading, the Trust maintained that affected claims remain Disputed, with reserves preserved, while foreign-law issues are assessed. D.I. 33678, paragraphs 4-5. That pleading also recounts the Court's recognition of possible distribution delay. Objector addresses that position rather than treating withdrawal as an order requiring immediate payment.

7. The confirmed Second Amended Joint Chapter 11 Plan of Reorganization (D.I. 26404, Exhibit A; the "Plan") already contains reversion and compliance provisions, including sections 7.8 and 7.14. This objection challenges neither their existence nor confirmation. It requests disclosure concerning their application to jurisdictional restrictions and confirmation that the extension does not prejudge any dispute over that application. The Court retains authority over Plan implementation and distribution disputes. Plan section 12.1(e), (h) and (q); 11 U.S.C. section 1142(b).

---

[1] FTX, General Information on Distribution Service Providers (updated Nov. 2, 2026; jurisdiction list as of Oct. 30, 2026; accessed Nov. 9, 2026), https://support.ftx.com/hc/en-us/articles/33190623459092-General-Information-on-Distribution-Service-Providers.

[2] FTX, Distributions Dashboard FAQs (updated Sept. 13, 2026; accessed Nov. 9, 2026), https://support.ftx.com/hc/en-us/articles/34522100742804-Distributions-Dashboard-FAQs. The warning concerns Allowed Claims and identified distributions; it does not establish a forfeiture of Objector's Disputed Claim.

## Argument

**A. Blocked access and reversion create an allocation concern warranting judicial oversight**

8. The relevant structure combines four features: residence-based access restrictions; a stated onboarding clock; a request for another year of claims review; and reversion of forfeited distributions to Plan Assets under sections 7.8 and 7.14. Reversion can increase assets available for other Plan purposes and beneficiaries, subject to the governing waterfall. It does not establish that any trustee personally profits or that every reverted dollar necessarily reaches another customer.

9. Nonetheless, the Trust administers both the condition for access and the consequence of failure to satisfy that condition, while administering the resulting allocation among beneficiaries. That tension warrants independent judicial supervision. No finding of bad faith is necessary to require transparent criteria, accurate notices, and preservation of the affected entitlement. Objector does not allege that the Trust has already forfeited Objector's distribution or diverted any particular amount.

10. Plan section 2.1.208 defines an Unclaimed Distribution by reference to an Allowed Claim and the holder's conduct, including written notice of intent to accept and action to facilitate payment. The Court should examine those elements before equating blocked onboarding with an unclaimed distribution. A documented request for payment and willingness to complete lawful requirements are materially different from abandonment. Objector does not contend that a letter excuses unrelated KYC or tax defaults.

11. For claims still Disputed, the Trust should explain whether it contends any distribution or forfeiture clock has arisen at all. For a claim later Allowed, it should

identify the relevant distribution, notice, start date, and any lawful onboarding route actually available. Objector requests clarification that the extension alone changes neither existing reserve obligations nor forfeiture standards. Any disputed request to restrain conduct or determine a particular entitlement should proceed through the applicable procedure described in paragraph 26.

**B. A website policy cannot substitute for the promised motion and notice when renewed substantive relief is sought**

12. D.I. 33439 states that renewed relief will require the Trust to "file a motion and provide notice in accordance with the applicable rules." That express commitment supplies a concrete procedural basis for oversight. A continued operational hold is different from a final determination that a geographic group loses its distributions. The extension order should preserve that distinction.

13. The FAQ and DSP pages establish published restrictions and warnings; they do not by themselves prove the absence of every relevant notice or order. If the Trust proposes to apply those policies to extinguish rights because of residence or blocked onboarding, it should identify the precise Plan provision, order, notices, and opportunity to contest on which it relies. To the extent it renews the substance of the withdrawn relief, it should proceed by motion with appropriate service and an opportunity to be heard under Rule 9014, Rule 2002 where applicable, and the governing case orders.

14. Routine implementation expressly authorized by the Plan need not require a new motion at every step. But a material change in distribution rights cannot be accomplished merely by updating a website. Section 1127(b)'s limits on postconfirmation modification must be respected; additional notice alone cannot authorize an otherwise impermissible modification. The requested order should

therefore state that extending objection deadlines neither approves a new geographic exclusion nor expands existing forfeiture authority.

**C. Equal treatment supports class-specific disclosure and review**

15. Section 1123(a)(4) requires equal treatment of claims within a particular class absent the holder's agreement to less favorable treatment. Classes 5A and 5B are separate classes: the former concerns Dotcom customer entitlements and the latter U.S. customer entitlements. The proper comparison is between similarly situated claims within the same applicable class, not between those classes as a combined group. Convenience-class claims must likewise be assessed within their own class. Plan sections 4.3.6-4.3.7.

16. Equal treatment does not guarantee identical payment dates, eliminate genuine legal impediments, or make a Disputed Claim payable. A concern arises if holders within the same class face the same forfeiture consequence while some are prevented from satisfying the onboarding requirement. Objector's specific Plan class and the reason for the Disputed status are not established in this record. Objector therefore seeks class-specific disclosure, without asking the Court to find a section 1123(a)(4) violation on the present record or reopen confirmation.

17. Class-specific reporting and identification of the legal basis for any distinction are appropriate first steps. The Trust should identify the basis and expected duration of any geographic distinction and explain why less prejudicial measures would not work. Withdrawal of D.I. 31148 does not erase existing Plan authority to administer claims; it does mean that the withdrawn proposal itself cannot be treated as an approved basis for permanent exclusion. Objector reserves any claim-specific challenge for an appropriate evidentiary record.

**D. Any reliance on Chinese law should address the specific cash distribution and be subject to judicial determination**

18. Chinese law should be addressed carefully and on the current text. Notice Yin Fa [2026] No. 42, dated February 6, 2026, superseded Notice Yin Fa [2021] No. 237. It regulates virtual-currency activities, overseas services, payment intermediaries, and certain conduct of individuals as well as institutions. Objector does not suggest that all relevant restrictions apply only to businesses or that a creditor's willingness to accept risk immunizes the Trust. [3]

19. The narrower question is whether a particular U.S.-dollar distribution under this confirmed liquidation Plan, through a specified lawful payment route, constitutes prohibited activity. Receipt of a bankruptcy recovery should not simply be equated with operating an exchange or purchasing cryptocurrency. The Trust should identify the legal provisions and payment facts supporting any claimed prohibition, distinguish its own obligations from the recipient's later use of funds, and explain which lawful alternatives it has considered. A recipient's compliance undertaking may address downstream conduct, but cannot override a prohibition applicable to the payer.

20. Foreign law is a question for the Court under Civil Rule 44.1, made applicable by Bankruptcy Rule 9017. Objector gives notice of that issue and requests an appropriate briefing process if the Trust relies on Chinese law to support continued exclusion or forfeiture. Objector seeks a nonprivileged explanation and supporting legal authorities, not compelled disclosure of privileged advice. Pending determination,

[3] People's Bank of China and seven other authorities, Notice on Further Preventing and Handling Risks Related to Virtual Currencies and Other Matters, Yin Fa [2026] No. 42 (Feb. 6, 2026), paragraphs I(1), III(6), VI(18)-(19) and final effectiveness provision. Chinese official republication: https://www.hunan.gov.cn/zqt/zcsd/202602/t20260209_33913154.html. English title is a working translation.

preservation of rights and reserves is a narrower remedy than either mandatory payment or permanent loss.

**E. The nearly 12,800 customer claims should be broken down before the Court grants a full additional year**

21. The Motion's aggregate figures do not distinguish claims with a developed substantive objection from claims awaiting review, information, or a jurisdictional decision. Its acknowledgment that only some portion will require objections is particularly significant. Motion paragraph 8. A collection of complex disputes can justify substantial time for those disputes without establishing why every other unresolved customer claim requires the same period. Objector does not assume that most claims are simple or that disclosure will establish any predetermined result.

22. A nonprivileged aggregate report should assign each customer claim once to the first applicable category: (a) objection pending; (b) no pending objection, but an identified substantive issue and an anticipated objection; (c) remaining claims with review incomplete; or (d) other unresolved claims, with reasons stated. Counts must reconcile to the total without duplication. Separate flags should identify outstanding claimant information, compliance requirements, and jurisdictional or DSP restrictions, distinguishing geography-only holds from claims with additional issues. Flags may overlap and must not be added to the primary-category totals. The report should provide asserted amounts, Plan-class breakdowns, aging, recent completion rates, remaining work, and estimated milestones.

23. Geographic holds also require an aggregate account of threatened or completed forfeitures, notices, and reserve treatment. The report should explain how much of the requested year is needed to investigate and file new objections, as distinct from litigating objections already filed. A declaration from a knowledgeable administrator

and periodic updates would permit a meaningful cause determination without requiring disclosure of privileged strategy or public identification of individual creditors.

24. A practical alternative is an initial ninety-day extension beyond January 4, 2027, computed under Rule 9006(a), followed by review on that record. Longer periods could then be granted for demonstrated categories or claims. The Court could instead allow the requested year but impose the same reporting and preservation conditions. Either course addresses the Trust's concern about premature mass objections while giving content to the requirement of cause and its assertion that no stakeholder will be prejudiced.

## Conclusion and Requested Relief

25. Objector respectfully requests that the Court decline an unconditional twelve-month extension and enter the accompanying proposed order, or equivalent protective conditions, providing for:

(a) An initial ninety-day extension through April 5, 2027, without prejudice to a timely, supported request for additional time; alternatively, differentiated extensions or the requested extension subject to the following conditions.

(b) A sworn aggregate report within thirty days of entry, covering the categories and measures in paragraphs 22-23, with updates every ninety days while the extended period remains open.

(c) Written clarification within thirty days of whether any forfeiture clock applies to claims remaining Disputed, and the events, notices, and available onboarding route asserted to trigger a clock after allowance.

(d) Confirmation that this extension leaves unchanged all reserve, notice, and distribution obligations imposed by the Plan and existing orders, and does not itself authorize any forfeiture, reversion, or cancellation.

(e) Preservation of Objector's right to challenge any asserted counting of a period of blocked access against a later-Allowed Claim and to seek an opportunity to comply with a lawful route, through the applicable procedures. The extension should not decide the merits of those issues.

(f) A statement that the extension approves no new geographic exclusion or expanded forfeiture rule, and that any renewed relief of the type withdrawn in D.I. 33439 requires the promised motion and notice.

(g) A status conference approximately ninety days after entry. No claim shall become Allowed merely because a required report is late.

26. Objector seeks conditions on the extension and preservation of existing rights, without a new injunction or Plan modification. Any claim-specific relief should proceed by an appropriate motion or adversary proceeding, with required notice, including under Rule 7001 where applicable. Objector requests prompt scheduling if needed and reserves the right to seek interim protection. Existing Plan entitlements and lawful payment restrictions remain unchanged.

Under Local Rule 9013-1(h), Objector consents to this Court's entry of final orders or judgments on the Motion [D.I. 36919] and this Limited Objection if Article III would otherwise prevent their entry absent party consent. This consent does not extend to any separate or future proceeding. Objector retains all substantive objections and applicable appellate rights.

Dated: November 9, 2026
Respectfully submitted,

DAOCHI CAI

Daochi Cai, pro se
Unique Customer Code: 01320654
Email: iam.ro00@gmail.com
Mailing: Shanghai, China

## CERTIFICATE OF SERVICE

I, DAOCHI CAI, hereby certify that on November 9, 2026, I caused a true and correct copy of the foregoing Limited Objection and accompanying Proposed Order to be served via electronic mail upon:

**Landis Rath & Cobb LLP**

919 Market Street, Suite 1800, Wilmington, DE 19801
Adam G. Landis — landis@lrclaw.com
Kimberly A. Brown — brown@lrclaw.com
Matthew R. Pierce — pierce@lrclaw.com

**Sullivan & Cromwell LLP**

125 Broad Street, New York, NY 10004
Andrew G. Dietderich — dietdericha@sullcrom.com
James L. Bromley — bromleyj@sullcrom.com
Brian D. Glueckstein — gluecksteinb@sullcrom.com
Alexa J. Kranzley — kranzleya@sullcrom.com

**Courtesy copy by electronic mail to:**

Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Benjamin A. Hackman - Benjamin.A.Hackman@usdoj.gov
Linda Richenderfer - Linda.Richenderfer@usdoj.gov

Dated: November 9, 2026

DAOCHI CAI

Daochi Cai, pro se
Unique Customer Code: 01320654
Email: iam.ro00@gmail.com
Mailing: Shanghai, China

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>**Hearing: November 19, 2026 at 1:00 p.m. (ET)**<br>**Objection deadline: November 12, 2026 at 4:00 p.m. (ET)**<br>**Re: D.I. 36919** |

**PROPOSED ORDER GRANTING A LIMITED EXTENSION OF CLAIMS OBJECTION DEADLINES SUBJECT TO REPORTING AND RESERVATION OF RIGHTS**

Upon consideration of the FTX Recovery Trust's Motion [D.I. 36919] (the "Motion") and Daochi Cai's Limited Objection; after notice and an opportunity to be heard; and the Court having determined that a limited extension with the following conditions is appropriate under Bankruptcy Rule 9006(b)(1), the confirmed Plan, and 11 U.S.C. section 1142; IT IS HEREBY ORDERED THAT:

1. The Motion is granted in part on an interim basis. The Claims Objection Deadline and the Administrative Claims Objection Deadline are extended through April 5, 2027, reflecting ninety days beyond January 4, 2027 as computed under Rule 9006(a), without prejudice to a timely request for further extension supported by cause.

2. Within thirty days after entry of this Order, the Trust shall file a knowledgeable administrator's declaration reconciling unresolved customer claims to the Motion's total. Each claim shall be counted once in the first applicable category: (a) objection pending; (b) no pending objection, but an identified substantive issue and an anticipated objection; (c) remaining claims with review incomplete; or (d) other unresolved claims, with reasons stated. Separate flags shall identify outstanding information, compliance requirements, and jurisdictional or DSP restrictions,

distinguishing geography-only holds from claims with additional issues. Flags may overlap and shall not be added to the primary totals. The report shall provide counts, asserted amounts, Plan-class breakdowns, aging, recent completion rates, remaining work, and milestones. Non-customer and administrative claims shall be reported separately, with the time requested for each group explained.

3. The report shall also state, in aggregate, any threatened or completed forfeitures associated with jurisdictional or DSP restrictions, the amounts involved, the notice process, and the treatment of the associated reserves or Plan Assets. It shall distinguish time needed to investigate and file new objections from time needed to litigate pending objections. No privileged legal advice or protected personal identifying information is required to be disclosed. The Trust shall file updates every ninety days while an extended objection period remains open, unless otherwise ordered.

4. Within thirty days after entry, the Trust shall state on the docket whether it contends that any forfeiture clock runs while a claim remains Disputed and identify the Plan provisions, orders, triggering events, and notices on which it relies. For affected claims later Allowed, it shall explain the asserted start date and the lawful onboarding route made available to the holder. The Trust shall make this clarification reasonably accessible to affected creditors.

5. This extension leaves unchanged all reserve, notice, and distribution obligations imposed by the Plan and existing orders. It does not determine any individual claim's allowance, reserve amount, eligibility for distribution, or susceptibility to forfeiture. All rights to seek enforcement or clarification of those existing obligations through the applicable procedures are preserved.

6. The extension does not determine whether or when a forfeiture period applies to any holder, including whether a period of jurisdictionally blocked onboarding may be counted against a claim later Allowed. Objector's rights to challenge that application and seek an opportunity to comply with a lawful route are preserved for an appropriate proceeding. This Order imposes no new injunction, changes no Plan deadline governing distributions, and excuses no independent KYC, tax, sanctions, or other lawful requirement.

7. This Order extends objection deadlines subject to reporting and review. It does not approve a new geographic exclusion, expand forfeiture authority, or deem any claim Allowed. If the Trust seeks renewed relief of the kind withdrawn in D.I. 33439, it shall file a motion and provide notice under the applicable rules and orders. Any request for a new injunction, Plan modification, or other relief requiring a separate procedure shall be addressed through that procedure and is not granted by this Order.

8. The Court shall schedule a status conference for a date approximately ninety days after entry to review progress and the need for further relief. Objector may request a prompt schedule for any appropriate claim-specific motion or adversary proceeding. All parties' rights to seek available interim relief or modification of these reporting conditions through the applicable procedures and on appropriate notice are preserved.

9. This Order does not require any unlawful payment, change Plan priorities or recovery entitlements, excuse unrelated compliance failures, or prevent timely substantive objections. Nothing herein requires disclosure of privileged information. The Court retains jurisdiction to interpret and enforce this Order.

Dated: ____________________, 2026
Wilmington, Delaware

____________________________________
The Honorable Karen B. Owens
Chief United States Bankruptcy Judge