**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

2026 NOV 10 A 9:45

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br>**Hearing: November 19, 2026 at 1:00 p.m. (ET)**<br>**Objection Deadline: November 12, 2026 at 4:00 p.m. (ET)**<br>**Related Docket No.: 36919** |

## LIMITED OBJECTION OF XIAODONG WANG TO THE MOTION OF THE FTX RECOVERY TRUST FOR ENTRY OF AN ORDER FURTHER EXTENDING THE CLAIMS OBJECTION DEADLINE AND THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE [D.I. 36919]

### I. PRELIMINARY STATEMENT AND SCOPE

1. Xiaodong Wang (the "Objector"), a customer creditor residing in China, appears pro se solely on his own behalf and objects to the duration and conditions of the twelve-month extension requested in D.I. 36919 (the "Motion") insofar as it extends the Claims Objection Deadline applicable to customer claims. He asks the Court to consider a shorter extension or, if the requested period is warranted, proportionate safeguards for progress information, creditor action guidance, and preservation of substantive rights. He does not separately oppose the Administrative Claims Objection Deadline.

2. The Objector acknowledges the Trust's reported progress and the need to investigate genuinely disputed claims. He does not contend that workload or complexity can never establish cause, or that completing pre-distribution requirements automatically makes a claim Allowed. He does not oppose reasonable additional time supported by the remaining work. His concern is whether the duration and accompanying information and review arrangements adequately account for the burdens on affected creditors.

3. This Objection does not ask the Court to reconsider the prior extension order, allow the Objector's claim, determine foreign law, award additional interest, or alter the confirmed Plan. It asks the Court to address the duration and conditions of the renewed extension while preserving those separate issues.

## II. RELEVANT BACKGROUND

4. The Motion states that D.I. 33890, entered November 24, 2025, extended the relevant deadlines through January 4, 2027. It now seeks twelve additional months, through January 4, 2028, without prejudice to further extensions. Motion paragraphs 7, 13. The Objector's earlier objection, dated November 6, 2025 and directed to D.I. 33444, identified his claim as Class 7A and raised concerns about prolonged uncertainty, communication, and serial extensions. His FTX.com Unique Customer Code is 00366223.

5. The Trust reports approximately 13,800 unresolved claims, including nearly 12,800 customer claims, over 950 non-customer claims, and 110 administrative claims. It also reports approximately 11,500 claims resolved since the prior extension and two distributions totaling approximately $3.1 billion. Motion paragraphs 8, 10, 17. These are the Trust's figures, not independent calculations by the Objector.

6. On June 30, 2026, the Objector sought account-specific information about his Disputed, unpaid claim, including whether any documents or corrective action were required and whether jurisdictional review was the impediment. At 19:44 PDT, FTX Customer Support provided general possible reasons for Disputed status and referred to January 4, 2027 and D.I. 33890. That response did not identify which possible reason applied to the Objector.

7. At 20:58 PDT, FTX Customer Support stated that it was "unable to access specific claim details, including the reason why your claim is marked as Disputed." It said the Trust or its professionals would contact the Objector if further information was required. After the Objector

requested escalation to personnel with access to claim-specific information, the 21:38 PDT response said no further details were available and that some disputed claims might become eligible for a future distribution. Those replies did not identify a specific corrective action or confirm that the inquiry had been escalated. FTX Customer Support emails to Objector, June 30, 2026, 20:58 and 21:38 PDT.

8. The Objector relies on these exchanges to show his efforts to obtain actionable information and the limitations of the responses he received. He does not treat them as proof that every requirement was satisfied, that no other issue exists, or that Chinese residency is the sole reason for his claim's status. The correspondence does not itself establish the claim's status on any later date.

## III. GROUNDS FOR TAILORING THE EXTENSION

### A. Duration, prejudice, and the remaining customer-claim work

9. Rule 9006(b)(1)(A) permits the Court, for cause, to extend a period when the request is made before that period, including a previously extended period, expires. The Objector recognizes that authority and the extension mechanism described in Motion paragraph 4, citing Plan sections 8.1 and 2.1.32. The existence of that authority does not answer the separate question of the appropriate length and conditions of this extension.

10. The Motion supplies aggregate figures and describes complex litigation, reconciliation, and intercreditor issues. Motion paragraphs 8-10, 17. It does not explain, by customer-claim category, why another twelve months is needed, what tasks remain, or what intermediate targets could evaluate progress. Nor does it distinguish country-level distribution review from individual verification or amount disputes. The Objector requests a concise category-level explanation of the remaining work and opportunities to resolve administrative matters alongside complex

disputes, using existing processes where practicable. He does not assume that his own claim is simple or that an agreed amount resolves every eligibility issue.

11. The Objector addresses the statement in Motion paragraph 16 that the extension will not prejudice any stakeholder. The funds he deposited with FTX represent hard-earned personal savings accumulated through his work. Continued nonpayment therefore has personal financial significance beyond the administrative status of his claim. His experience also illustrates an information burden not answered by aggregate statistics: he sought corrective-action guidance, was told support could not access the reason for Disputed status, and received no identified next step. Further time under those arrangements prolongs uncertainty and limits his ability to assist in resolution. No finding of bad faith is necessary to consider those burdens.

12. Elapsed delay is substantial. FTX announced that initial distributions to holders of Allowed Convenience Claims commenced on February 18, 2025. FTX, "FTX Commences Initial Distributions to Convenience Class and Sets Next Distribution" (Feb. 18, 2025), published via PR Newswire. As of November 7, 2026, nearly twenty-one months have elapsed since that distribution began, while the Objector remains unpaid. This comparison measures the period without recovery; it does not assume that his claim was already Allowed or legally payable on the first distribution date. The time already elapsed should inform the assessment of another year of uncertainty.

13. The sale alternative involves a concrete discount in the Objector's case. The pricing presently available to him for a sale of his Class 7A claim is approximately 90% of his claim's principal amount. He has not accepted that pricing and has not sold his claim. He also regards the available purchase terms as unfavorable; a headline percentage does not capture the contractual burdens and risks of a transfer. He offers this as his own experience, not as a market-wide

valuation or a completed loss, and does not ask the Court to adjudicate a purchase contract through this Motion.

14. The Objector also understands from reports among affected Chinese creditors that, during uncertainty surrounding the initially proposed jurisdiction procedures and possible loss of distributions, some sale opportunities were discussed at prices as low as approximately 50% of claimed principal. These are reports he has not independently verified, not established transaction data or a quantified damages claim. His primary point does not depend on that reported figure: exchanging a claim for discounted liquidity can impose a real economic sacrifice, and a sale opportunity is not the same as receiving a Plan distribution.

15. The Objector has retained his claim in good-faith reliance on the integrity of the United States judicial process and on impartial, court-supervised resolution of his rights under the Plan. He should not have to choose between waiting without meaningful milestones and accepting a discounted transfer on terms he regards as unfavorable without those consequences being considered. His decision not to sell should not be treated as consent to further open-ended delay or as evidence that delay causes no prejudice. He seeks neither priority over similarly situated creditors nor special treatment based on nationality. He asks for proportionate safeguards and transparent, timely administration of his rights under the Plan, without presuming that his claim must prevail.

16. The Objector accepts that forcing premature objections or paying unsupported claims could also harm creditors, as the Trust argues in Motion paragraph 16. A shorter extension, or additional time accompanied by proportionate information and review arrangements, may address those concerns while reducing uncertainty. Dated official updates would also help creditors distinguish actual review progress from third-party predictions about waiting times when evaluating a sale. This is not a request to regulate secondary-market prices or determine

market-wide losses. The Court may tailor the arrangements to the remaining work, using existing data and channels where practicable to control expense.

17. The other cases cited in Motion paragraphs 18-19 show that successive extensions have been granted; the Objector does not ask this Court to disregard them. They do not, by themselves, explain the time needed for the particular remaining customer claims here or what interim information would be useful. The requested duration and any proportionate safeguards should be considered against the remaining work in this case.

**B. Jurisdictional review: cash recovery, notice, and transparent criteria**

18. Cash distributions require a specific explanation. At the October 23, 2025 hearing, Trust counsel confirmed that the Plan provides for cash distributions, while arguing that concerns remained because the underlying claims arose from cryptocurrency trading. Transcript of Hearing, In re FTX Trading Ltd., et al., Case No. 22-11068 (KBO), Oct. 23, 2025 ("Oct. 23 Tr."), 19:13-20:7. The Objector seeks a U.S.-dollar bankruptcy distribution, not delivery or trading of cryptocurrency. That distinction warrants an explanation of the particular legal or operational impediment and available lawful payment alternatives; it does not, by itself, establish that all compliance concerns are resolved.

19. A compliant bank-payment route deserves concrete evaluation. Celsius documented a cash alternative when cryptocurrency distribution could not be made, including where no distribution agent was available, and described wire transfers subject to eligibility and banking requirements. In re Celsius Network LLC, No. 22-10964 (MG), D.I. 7718, pp. 2, 4 (Bankr. S.D.N.Y. Sept. 27, 2024). That material establishes a payment mechanism, not that every Chinese resident was paid. Where a Chinese-resident creditor lawfully maintains an overseas bank account in that creditor's own name, the Trust should explain whether a verified USD wire to that account is feasible and lawful, and identify any specific impediment if not. Bank-account

location is distinct from residence; this proposal does not involve misdescribing residence, using a nominee, or bypassing KYC, sanctions, tax, or other applicable requirements. The Objector asks that a jurisdictional update address this alternative at an appropriate nonprivileged level where practicable; an unavailable provider and a legal prohibition are distinct issues.

20. Solicitation and notice concerns. The Objector participated in the Plan voting process. He does not recall receiving a clear warning during that process or Steps 1-7 that residence in China itself could result in an unresolved, potentially prolonged payment hold under a later jurisdictional procedure. He does not assert that no general compliance, eligibility, or timing risks appeared anywhere in the solicitation materials. He requests identification of the Plan provisions and disclosures relied upon for any such treatment, without reopening confirmation through this Motion. An extension of time should not itself establish that creditors accepted a new residency-based limitation.

21. Chief Judge Owens's comparative observation. At the October 23, 2025 hearing, Chief Judge Karen B. Owens, presiding in this FTX case, stated: "For instance, I'm fairly certain that Judge Shannon is administering a case in which claimants who reside in Iran are receiving distributions with no issues." Oct. 23 Tr. 22:20-22. Judge Shannon was the judge in the other case she referenced, not the speaker. Trust counsel responded that FTX's products and regulatory exposure differ. Id. 23:18-24:1. The Objector relies on Judge Owens's qualified observation to request an explanation of material FTX-specific obstacles and progress on lawful alternatives; he does not treat it as an order requiring FTX to pay or independently establish the outcome of the unnamed case.

22. Preserving recovery while review continues. Chief Judge Owens cautioned that eliminating a distribution on a valid claim for this reason should be "a matter of last resort" and warned against premature or unnecessary elimination of recoveries. Oct. 23 Tr. 28:4-14. She also

acknowledged distribution delays and preferred to address ultimate jurisdictional disposition near the final distribution. Id. 30:6-20. The Court mentioned selling claims or updating residency information as possible ways creditors could address the issues. Id. 30:22-31:3. The Objector respectfully asks the Court now to consider the discount and transfer burdens he describes, rather than treating the mere availability of a sale as eliminating prejudice. He requests interim information and review milestones, not a ruling on the jurisdictional merits through this Motion.

23. Changing classifications require understandable criteria. The Court asked why the Trust could not obtain legal advice and make ordinary-course distributions where permissible; counsel confirmed that jurisdictions from the original potential list had continued to be cleared. Oct. 23 Tr. 26:1-22. A potential restriction, an unresolved legal review, an unavailable distribution provider, and a court-determined prohibition are not interchangeable descriptions. Changes may reflect legitimate progress. The Objector asks that any jurisdictional update explain the classifications, principal nonprivileged reasons for material changes, and next review steps, to the extent reasonably available. He does not assert that every change is arbitrary or request disclosure of protected legal advice.

24. A deadline extension should not resolve jurisdictional merits. The Court directed the Trust to withdraw the then-pending jurisdictional motion without prejudice and later refile a separate motion with the final proposed list and procedures when appropriate. Oct. 23 Tr. 57:7-16. Extending time to file claim objections is not that separate merits process. The Objector requests express language that this extension neither determines a claim invalid because of Chinese residency, approves a particular jurisdictional restriction, authorizes permanent forfeiture or reversion, nor changes the Plan's substantive treatment.

## IV. PROPOSED SAFEGUARDS FOR THE COURT'S CONSIDERATION

25. The Objector's priorities are understandable progress information, useful guidance on any action presently required from a creditor, and preservation of substantive rights. He asks the Court to select proportionate measures serving those purposes. The timings and mechanisms below are suggestions, not cumulative prerequisites to any extension or obligations asserted to exist under the Plan. Their scope and implementation may be adjusted to the Trust's workload and existing processes. The Objector does not seek a new administrative system or a merits ruling without appropriate notice.

26. Duration and differentiated review. The Objector asks the Court to consider a shorter extension, such as approximately ninety days beyond January 4, 2027, with the exact date fixed by the Court, or another period supported by the remaining work. Ninety days is an illustrative alternative, not a legal maximum or an indispensable condition. If the Court finds that twelve months is warranted, he still requests consideration of the limited measures below. A brief explanation of the remaining claim categories and work would assist in assessing the duration and any later extension. Existing processes should, where practicable, permit resolvable administrative matters to advance alongside complex disputes, without presuming allowance, overlooking compliance issues, or altering Plan priorities.

27. Proportionate progress information. The Objector requests concise updates at reasonable intervals set by the Court, preferably through existing reports supplemented only as needed. Useful information would include the principal unresolved customer-claim categories, approximate counts where readily available, progress, remaining tasks, and next steps. Jurisdictional review could be separately summarized at a nonprivileged level, distinguishing legal-review issues from payment-channel obstacles and addressing material classification changes and the status of lawful alternatives described in Section III.B where practicable. An

initial update approximately thirty days after entry of the order and updates approximately every sixty days thereafter are illustrative options only; the Court may adjust their timing, frequency, and content. No disclosure of personal data or protected advice, duplicate reporting, or new reporting system is requested.

28. Useful creditor action guidance. Through an existing authenticated portal or designated contact route, the Objector requests a response to his already-raised inquiry within a reasonable period set by the Court, stating whether any presently known document or corrective action is required from him. Where practicable, the response could identify the available nonprivileged review category and a next status-check point. If no particular issue has yet been identified, it may instead say that review remains pending and no action is presently requested; that would not confirm that all requirements are satisfied. Comparable guidance could be provided to similarly situated creditors through existing processes where practicable. This request does not require a new portal, an individualized legal opinion, disclosure of protected information, or a premature claim objection.

29. Preservation of substantive rights. The Objector requests clarification that the order extends only the applicable deadline and does not determine claim allowance, approve any particular jurisdictional restriction, authorize forfeiture or reversion of distributions, modify the Plan, or postpone distributions otherwise due under the Plan. Any proposed jurisdiction-wide restriction or substantive change should be addressed through otherwise applicable, properly noticed procedures, not decided by this deadline order. Creditors should retain whatever rights they otherwise have to respond to claim objections or seek appropriate relief. This clarification would not itself establish that any particular payment is due.

30. A review point and existing procedural rights. The Objector asks the Court to identify a reasonable future point for assessing progress, through a written update or an existing status

conference as the Court considers appropriate. Approximately ninety days after entry of the order is one possible interval, not a request for a mandatory separate hearing. The extension should not restrict whatever rights a creditor otherwise has, after using the designated inquiry route and making reasonable follow-up efforts, to seek appropriate procedural directions under applicable rules, notice, and service requirements. This preserves existing avenues only; it does not create a new compel-action mechanism, an automatic hearing, or an entitlement to relief. The Court may address related concerns together to avoid repetitive filings.

## V. PRESERVATION OF SEPARATE ISSUES AND CONSENT

31. The Objector does not concede that any residency-based restriction is authorized by the Plan or applicable law. Questions concerning disclosure at solicitation, equal treatment, changing eligibility criteria, catch-up distributions, and any entitlement to interest are not presented for final adjudication by this limited Objection. The Objector preserves any rights otherwise available to raise those matters in the proper proceeding, subject to applicable rules, orders, and deadlines. This reservation does not create rights, toll deadlines, or reopen final determinations.

32. Solely for disposition of D.I. 36919, and pursuant to Local Rule 9013-1(h), the Objector consents to entry of a final order by this Court if it is determined that, absent consent, the Court could not enter that order consistent with Article III of the United States Constitution. This procedural consent is not consent to the requested extension or to any determination of the Objector's claim.

## VI. CONCLUSION

33. For these reasons, the Objector respectfully asks the Court not to grant the requested twelve-month extension on the present generalized showing without considering proportionate safeguards. He requests a shorter period if appropriate or, if the full period is warranted, such measures in Section IV as the Court finds suitable to provide useful progress information and creditor action guidance and to preserve substantive rights. He leaves the precise timing, frequency, and form of review to the Court and does not insist on a new procedural mechanism. The Objector requests an opportunity to be heard on this Objection at the hearing on the Motion.

Respectfully submitted,

Dated: November 7, 2026

Signature: Xiaodong Wang

Xiaodong Wang, pro se
Yard 6, Jiuxianqiao Road, Chaoyang District
Beijing, China 100000
Email: go4ld4@gmail.com
FTX.com Unique Customer Code: 00366223

## CERTIFICATE OF SERVICE

In re FTX Trading Ltd., et al. | Case No. 22-11068 (KBO)
Related Docket No. 36919

I, Xiaodong Wang, certify that on November 8, 2026 at 10:23 a.m. Beijing time (UTC+08:00), corresponding to November 7, 2026 at 9:23 p.m. Eastern Standard Time (UTC-05:00), I sent from go4ld4@gmail.com an email attaching a true and correct copy of the foregoing twelve-page Limited Objection to D.I. 36919, as the PDF file FTX36919_Objection_Wang_v12.pdf, to the following recipients:

**Sullivan & Cromwell LLP - Counsel for the FTX Recovery Trust**

Andrew G. Dietderich - dietdericha@sullcrom.com

James L. Bromley - bromleyj@sullcrom.com

Brian D. Glueckstein - gluecksteinb@sullcrom.com

Alexa J. Kranzley - kranzleya@sullcrom.com

**Landis Rath & Cobb LLP - Counsel for the FTX Recovery Trust**

Adam G. Landis - landis@lrclaw.com

Kimberly A. Brown - brown@lrclaw.com

Matthew R. Pierce - pierce@lrclaw.com

Matthew B. McGuire - mcguire@lrclaw.com

**Office of the United States Trustee**

Benjamin A. Hackman - benjamin.a.hackman@usdoj.gov

David Gerardi - david.gerardi@usdoj.gov

I certify that the foregoing accurately records my email transmission. This certificate does not represent that any recipient has acknowledged receipt or consented to service by email, or that the Objection has already been filed with the Court.

Dated: November 8, 2026

Signature: Xiaodong Wang

Xiaodong Wang, pro se
Email: go4ld4@gmail.com
Yard 6, Jiuxianqiao Road, Chaoyang District, Beijing, China 100000
FTX.com Unique Customer Code: 00366223