**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

RECEIVED
2026 NOV 10 A 9:45
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>**Related Docket No.: 36919**<br>**Hearing Date: November 19, 2026 at 1:00 p.m. (ET)**<br>**Objection Deadline: November 12, 2026 at 4:00 p.m. (ET)** |

**LIMITED OBJECTION OF CUSTOMER CREDITOR (FTX.COM UNIQUE CUSTOMER CODE 1224366) TO FTX RECOVERY TRUST'S MOTION TO EXTEND CLAIMS OBJECTION DEADLINES (D.I. 36919)**

I am a customer creditor identified by FTX.com Unique Customer Code 1224366. I respectfully object in part to the FTX Recovery Trust's (the "Trust") Motion for Entry of an Order Further Extending the Claims Objection Deadline and the Administrative Claims Objection Deadline [D.I. 36919] (the "Extension Motion"), insofar as it asks the Court to extend by a uniform twelve months the deadline to object to customer claims. In the alternative, I ask that any extension be limited to a narrowly defined and time-limited period, with proportionate transparency and reporting safeguards, as described below.

## Preliminary Statement

1. I am an individual customer creditor residing in China, and I am representing myself. I hold a customer claim in these Chapter 11 Cases, identified by FTX.com Unique Customer Code 1224366, and I am a party in interest. *See* 11 U.S.C. § 1109(b). I object individually to the extension of the deadline to object to

customer claims ("Customer Claims") requested in the Extension Motion. I do not separately object to the extension of the Administrative Claims Objection Deadline.

2. The Extension Motion asks for another year—from January 4, 2027 to January 4, 2028—and asks the Court to preserve the Trust's right to seek still more time. Extension Motion ¶¶ 7, 13. I do not oppose reasonable time for genuine disputes, and I am not suggesting that the Trust has acted in bad faith. My concern is narrower. The Extension Motion relies on aggregate figures and asks for one uniform period, and I respectfully submit that the Trust should explain more specifically why every remaining Customer Claim needs the same additional twelve months.

3. I therefore ask the Court to deny the uniform year-long extension as presently supported, or to set a shorter period, and to attach proportionate safeguards to any additional time: brief periodic reporting, a channel through which creditors can learn what action, if any, is required of them, and confirmation that the order does not approve jurisdictional restrictions, cancel distributions or alter anyone's substantive rights under the Plan. I am not asking the Court to allow my claim automatically, to order immediate payment, or to rule on any question of foreign law.

## **Background**

4. The facts below are taken from the Extension Motion, which I cite by paragraph number.

### A. The Plan, the Prior Extension and the Extension Motion

5. On November 11 and 14, 2022, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On October 7, 2024, the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd.*

*and Its Debtor Affiliates* [D.I. 26404-1] (the "Plan"), and the Effective Date occurred on January 3, 2025, when the Trust was established. Extension Motion ¶¶ 1–3.

6. Under Plan section 8.1, objections to Claims (other than Administrative Claims) must be filed on or before the Claims Objection Deadline. The initial deadline was no later than one year after the Effective Date, or January 3, 2026, Plan § 2.1.32, and the Court may grant further extensions "upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002." Extension Motion ¶ 4 (quoting Plan § 8.1).

7. On November 24, 2025, after a hearing, the Court granted the Trust's prior motion [D.I. 33444] (the "Prior Extension Motion") by order [D.I. 33890] (the "Prior Extension Order"), extending the Claims Objection Deadline through January 4, 2027 without prejudice to further extensions. *Id.* ¶ 7. The Trust quotes the Court as observing that the Trust had "made progress in the claims reconciliation process, [but] the work is far from complete," that the extension was "necessary to maximize value by ensuring that creditor recoveries are not unnecessarily diluted with illegitimate claims," and that "[n]othing in the record indicates that the Trust has been dilatory with its duty to reconcile claims or has otherwise acted in bad faith." *Id.* ¶¶ 7, 16.

8. On November 5, 2026, the Trust filed the Extension Motion, asking to extend both the Claims Objection Deadline and the Administrative Claims Objection Deadline by twelve months, through and including January 4, 2028, without prejudice to further extensions. *Id.* ¶ 13. The hearing is set for November 19, 2026, and objections are due November 12, 2026. This Objection is submitted within that time.

**B. The Trust's Reported Progress and Its Stated Grounds for Further Time**

9. The Trust describes the reconciliation process as "extraordinarily intricate, time-consuming, and resource-intensive." Extension Motion ¶ 8. It states that the claims pool initially comprised more than 682,000 Claims and Administrative Claims asserting more than $447 billion. *Id.* It reports that approximately 13,800 Claims—including nearly 12,800 Customer Claims, over 950 Non-Customer Claims and 110 Administrative Claims—remain under active review, "some portion of which will require substantive objections to be filed." *Id.*

10. The Trust reports that since the Prior Extension Order it has resolved approximately 11,500 Claims and Administrative Claims, filed six additional omnibus objections (204 in total), and made two distributions totaling approximately $3.1 billion to tens of thousands of holders of Allowed Claims. *Id.* ¶¶ 10, 17. It states that the remaining Claims "include dozens of complex claims requiring factual development and involve billions of dollars," that certain others involve "intricate reconciliation issues and intercreditor disputes," and that it is "prosecuting and defending dozens of litigations." *Id.* ¶¶ 10, 17.

11. The Trust says it needs twelve more months to (i) complete its review, (ii) complete its diligence on whether to object, (iii) negotiate resolutions, and (iv) litigate disputes that cannot be resolved consensually. It also says the extension is not sought for delay, will not prejudice any stakeholder, and is consistent with the routine practice of courts in this jurisdiction. *Id.* ¶¶ 15–16, 18–19.

## Argument

### I. The Trust Must Show Cause for the Specific Extension It Requests

12. Section 105(a) of the Bankruptcy Code allows the Court to issue orders "necessary or appropriate to carry out the provisions of" the Code, and Bankruptcy Rule 9006(b)(1) allows the Court, "for cause," to extend a court-ordered deadline if the request is made before the deadline expires. 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9006(b)(1)(A); Extension Motion ¶ 14. Plan section 8.1 likewise leaves further extensions to the Court on motion. I do not dispute that the Extension Motion is timely or that the Court has the authority to grant relief.

13. The question, as I see it, is whether the record supports the particular relief requested: a further, uniform twelve-month extension for all remaining Customer Claims, with additional extensions preserved. The Court found cause earlier on the record before it at that time. I respectfully submit that this finding does not carry forward automatically, and that the Trust's own report of substantial progress since the Prior Extension Order—including approximately 11,500 Claims resolved—is a change in circumstances that bears directly on how much more time is needed.

### II. The Extension Motion Does Not Explain Why All Remaining Customer Claims Need the Same Additional Period

#### A. Aggregate figures do not support a uniform period.

14. The Trust reports substantial progress and remaining matters of differing complexity. Extension Motion ¶¶ 8–10, 17. But aggregate figures do not explain why all remaining customer claims need the same additional period. By the Trust's own count, nearly 12,800 of the approximately 13,800 remaining Claims are

Customer Claims, while the factual development and "billions of dollars" it describes attach to "dozens of complex claims." *Id.* ¶¶ 8, 17. As a creditor, I cannot tell from the Extension Motion how many of the remaining Customer Claims are among those complex claims, how many the Trust expects to require substantive objections, or how many it expects to resolve without objection.

15. The Trust's own pace points the same way. It resolved approximately 11,500 Claims in the year since the Prior Extension Order. *Id.* ¶¶ 10, 17. That does not explain why the thousands of remaining Customer Claims that are not among the "dozens" of complex matters could not be handled on a shorter or staged timetable. In my view, administrative reconciliation and country-level review should, where practicable, proceed alongside unrelated complex litigation rather than wait for it.

**B. Time to file objections is distinct from time to litigate.**

16. I ask that the Trust be required to distinguish the time needed to investigate and file new objections from the time needed to litigate pending disputes. Paragraph 4 of the Extension Motion, quoting Plan section 8.1, concerns filing objections; paragraph 15 also invokes litigation time. I understand that these activities may share resources. But pending litigation does not, without further explanation, establish why objections to other customer claims require another twelve months to be filed.

17. Narrower tools exist. Because Plan section 8.1 allows the Trust to seek further extensions on motion, the Trust can ask for additional time for specific complex claims or categories of claims on a particularized showing. The Trust's concern that invalid claims might be paid if the deadline lapses, Extension Motion ¶

16, can be met by a shorter initial period or targeted relief, without imposing a uniform twelve-month delay on every remaining Customer Claim.

### C. That extensions are "customary" is not a showing of cause.

18. The Trust cites other chapter 11 cases in which claims objection deadlines were extended several times, some for cumulative periods of three to five years. Extension Motion ¶¶ 18–19. I accept that extensions are common in large cases. But each of those extensions was entered on its own record, and the cumulative durations reflect successive orders, not a single uniform request. The Extension Motion does not say whether those cases involved customer claims subject to jurisdictional distribution issues like the ones raised here. In my respectful view, customary practice is context for the Court's discretion; it is not a substitute for the showing Rule 9006(b)(1) requires.

## III. The Assertion That No Stakeholder Will Be Prejudiced Deserves a Closer Look

19. The Trust asserts that the extension "will not prejudice any stakeholder." Extension Motion ¶ 16. As a customer creditor, I respectfully ask the Court to look at that statement closely. I recognize and do not dispute the Trust's legitimate interest in preventing illegitimate claims from diluting recoveries; that interest supports time for genuine disputes, which I do not oppose. But it does not follow that customer creditors bear no burden from another year of uncertainty.

20. Prolonged nonpayment and uncertainty can restrict creditors' access to funds and can pressure some creditors toward selling their claims at a discount. I raise these burdens only for the Court's consideration. I do not assume bad faith on the

Trust's part, and I do not claim an entitlement to immediate payment. I submit that these burdens weigh in favor of a shorter period and the interim safeguards I request below.

## IV. Cash Distributions and Adequate Notice Call for Interim Transparency

21. The recovery I am seeking is a U.S.-dollar bankruptcy distribution, not cryptocurrency trading. At the October 23, 2025 hearing, Trust counsel acknowledged cash distributions but cited concerns arising from the claims' cryptocurrency origins. Hearing Transcript, Oct. 23, 2025 ("Tr."), 19:13–20:7. I respectfully ask the Trust to identify the specific legal or operational obstacles it faces and to evaluate lawful bank-payment alternatives. I understand that an unavailable payment provider is not itself a legal prohibition, and I recognize that cash payment alone does not resolve every compliance issue.

22. At the same hearing, creditors questioned whether later jurisdictional procedures matched the treatment disclosed when they voted. Tr. 32:13–33:24. I recognize that those statements are creditors' concerns, not judicial findings, and not a substitute for reviewing the disclosures themselves. For that reason, I ask the Trust to identify the Plan provisions and disclosures that support holds based on a creditor's residence. A vote on the Plan should not be treated as consent to a new, undisclosed restriction, and an extension of the objection deadline should not decide whether such a restriction was procedurally proper.

23. Judge Owens described eliminating recovery on a valid claim as a last resort, while acknowledging delays arising from jurisdictional issues. Tr. 28:4–14; 30:6–20. I take that to mean that an ultimate decision may be deferred. But deferring a decision does not remove the need for reasonable interim information and review.

24. I do not ask the Court to resolve these questions on the Extension Motion. My point is narrower: an extension of the objection deadline should not operate, without explanation, to push them off further, and creditors affected by jurisdictional procedures have a legitimate need for concise information about where their claims stand. The Extension Motion proposes no reporting of any kind.

## V. Any Extension Should Be Shorter and Subject to Proportionate Safeguards

25. Rule 9006(b)(1) is permissive, and the Court may grant less than the Trust requests. I respectfully suggest that a shorter period selected by the Court—for example, six months—with the Trust free to seek further time on a showing of cause for specific claims or categories, would give the Trust room to resolve genuine disputes while keeping the process under periodic review.

26. I ask that any additional time carry proportionate safeguards: concise, nonprivileged updates on major categories, remaining tasks and next review points; an existing channel (such as the website maintained by the Debtors' claims and noticing agent) explaining any action required from creditors; and confirmation that the order does not approve jurisdictional restrictions, cancel distributions or alter substantive Plan rights. These measures impose little burden, require no disclosure of privileged material, and leave timing and reporting frequency to the Court, using existing procedures where possible.

27. Finally, an extension should not itself postpone a distribution otherwise payable under the Plan. The Trust itself describes distributions continuing during reconciliation. Extension Motion ¶ 10. I therefore ask that claims resolved during the extension follow the applicable Plan distribution procedures, without

waiting solely for the extended objection deadline to expire. This clarification would neither deem any claim Allowed nor dispense with any distribution requirement.

## Conclusion and Requested Relief

28. For the reasons stated above, I respectfully request that the Court:

(a) deny the requested uniform twelve-month extension of the deadline to object to Customer Claims as presently supported, or, alternatively, limit any extension to a shorter, time-limited period selected by the Court;

(b) as a condition of any extension, require (i) concise, nonprivileged updates on major categories of remaining claims, remaining tasks and next review points, and (ii) an existing channel explaining any action required from creditors, with timing and frequency left to the Court;

(c) confirm that any order does not approve jurisdictional restrictions, cancel distributions or alter substantive Plan rights;

(d) clarify that the extension does not itself postpone any distribution otherwise payable under the Plan, and that claims resolved during the extension follow applicable Plan distribution procedures, without deeming any claim Allowed; and

(e) grant such other and further relief as the Court deems just and proper.

29. I am not requesting automatic allowance of any claim, immediate payment, or a final ruling on foreign law. My other rights remain subject to applicable rules and deadlines, and I reserve the right to supplement this Objection and to be heard at the hearing to the extent the Court permits. Solely for D.I. 36919, I consent

under Local Rule 9013-1(h) to entry of a final order by the Court to the extent consent is necessary under Article III of the United States Constitution; this is not consent to the extension or to denial of my claim.

Dated: November 9, 2026

Respectfully submitted,

Signature: Peiyi Li

Customer creditor (pro se)
FTX.com Unique Customer Code: 1224366
Address: Foshan, China
Email: abc1550030776@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, I sent or caused to be sent a true and correct copy of my foregoing Limited Objection (FTX.com Unique Customer Code 1224366) to the FTX Recovery Trust's Motion for Entry of an Order Further Extending the Claims Objection Deadline and the Administrative Claims Objection Deadline (D.I. 36919) by electronic mail to the following recipients:

**Counsel for the FTX Recovery Trust – Sullivan & Cromwell LLP**

Andrew G. Dietderich – dietdericha@sullcrom.com
James L. Bromley – bromleyj@sullcrom.com
Brian D. Glueckstein – gluecksteinb@sullcrom.com
Alexa J. Kranzley – kranzleya@sullcrom.com

**Delaware Counsel for the FTX Recovery Trust – Landis Rath & Cobb LLP**

Adam G. Landis – landis@lrclaw.com
Kimberly A. Brown – brown@lrclaw.com
Matthew R. Pierce – pierce@lrclaw.com
Matthew B. McGuire – mcguire@lrclaw.com

**Office of the United States Trustee – District of Delaware**

Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
David Gerardi – david.gerardi@usdoj.gov

I certify that the foregoing accurately records the email transmission actually completed. This certificate does not represent that any recipient has acknowledged receipt or consented to email service, or that the Objection has already been filed with the Court.

Dated: November 9, 2026

Peiyi Li

Signature:
Customer creditor (pro se)
FTX.com Unique Customer Code: 1224366
Address: Foshan, China
Email: abc1550030776@gmail.com