Ji Shengkun
916 Sims Ave, Singapore

Clerk of the Court
United States Bankruptcy Court
District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

REC'D
2026 NOV 10 A 9:45
US BANKR...
DISTRICT OF ...

**Re: In re FTX Trading Ltd., et al.**
Chapter 11, Case No. 22-11068 (KBO)
Related Docket No. 36919
Proof of Claim No. 51901

Dear Clerk of the Court:

I am an individual creditor in the above-captioned bankruptcy proceedings, holding Proof of Claim No. 51901 in the asserted amount of $4,540,980. I am appearing pro se.

Enclosed for filing is my Limited Objection to the FTX Recovery Trust's Motion to Further Extend the Claims Objection Deadline and Request for Procedural Safeguards, relating to Docket No. 36919.

I respectfully request that the enclosed Limited Objection be filed in the above-captioned bankruptcy case and entered on the Court's docket.

Please note that I am submitting this document solely in my individual capacity as a creditor and am not representing any other person or entity.

Thank you for your assistance.

Respectfully submitted,

Ji Shengkun

**Ji Shengkun**
Pro Se Creditor
Proof of Claim No. 51901

Enclosure: Limited Objection to Docket No. 36919

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al., | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | Related D.I. 36919 |

**LIMITED OBJECTION OF JI SHENGKUN, AN INDIVIDUAL CREDITOR APPEARING PRO SE, TO THE FTX RECOVERY TRUST'S MOTION TO FURTHER EXTEND THE CLAIMS OBJECTION DEADLINE AND REQUEST FOR PROCEDURAL SAFEGUARDS**

Ji Shengkun ("Objector"), an individual creditor holding Proof of Claim No. 51901 in the asserted amount of $4,540,980, appears pro se and submits this limited objection to the FTX Recovery Trust's motion to further extend the claims objection deadline and administrative claims objection deadline [D.I. 36919] (the "Motion"). Objector speaks solely for himself and respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. I am an individual creditor in this bankruptcy case. Nearly four years have passed since FTX commenced its chapter 11 cases in November 2022. I have received no distribution, although many other creditors have received distributions.

2. I recognize the scale and complexity of these cases and do not categorically oppose a reasonable extension. I do not ask this Court to determine my ultimate entitlement to payment in this proceeding.

3. For a creditor still waiting, however, another extension is not a cost-free administrative event.

4. My concerns are threefold: the lack of timely notice and meaningful communication; the absence of a defined process ensuring that an individual unresolved matter receives continuing review; and the economic consequences of waiting, compounded by uncertainty about professional fees and reserves.

5. My experience raises a specific question: when the Trust withholds distributions based on a third-party ownership dispute and cites a Plan provision contemplating instructions from this Court, how can the affected creditor learn whether that step has been taken, what happens next, and when the decision will be reviewed?

6. I do not accuse the Trust of deliberate delay or assert that professional fees are necessarily improper. Without defined procedures and intelligible reporting, however, an individual creditor may remain unable to evaluate progress or the effect of continuing delay.

7. The Motion seeks another twelve-month extension, through January 4, 2028, and reserves the ability to request additional extensions.

8. I ask not for a guaranteed distribution date, but for a clear, time-bound, and appropriately court-supervised process accompanying any further extension.

## II. PERSONAL EXPERIENCE

9. My customer Proof of Claim No. 51901, in the asserted amount of $4,540,980, remains designated "Disputed," and I have not received the distributions paid to certain other allowed customer creditors.

10. I had preliminary discussions with Attestor concerning a possible price for selling an FTX claim. In my understanding, no sale or transfer was completed, and I received no purchase price from Attestor.

11. I dispute that these preliminary discussions conveyed ownership of my claim or the right to its distributions to Attestor.

12. In February 2026, I learned through an email communication from FTX that Attestor had asserted a dispute concerning ownership of the claim. As I understand the information provided, Attestor had sent a relevant notice in 2024.

13. Before February 2026, I did not know that Attestor had made that assertion to FTX or that it might affect my distribution. I had believed the lack of distribution related to the proposed Restricted Jurisdictions procedures.

14. Consequently, a third-party assertion potentially affecting a multimillion-dollar distribution existed for a substantial period before I learned of it or had an opportunity to explain that I believed no sale had been completed.

15. I did not receive timely and clear notice that would have allowed me earlier to provide relevant communications or request review.

16. In responding to an inquiry, FTX referred to litigation concerning claim ownership and invoked section 7.4.2 of the confirmed Plan as a basis for withholding distribution.

17. As quoted in the response, that provision contemplates withholding in specified circumstances involving pending litigation concerning an executed agreement to sell an allowed claim, in order to seek specific instructions from the Bankruptcy Court before distribution.

18. The reference raises questions beyond the mere existence of a third-party allegation: whether the conditions for applying section 7.4.2 have been evaluated and whether specific instructions from this Court have been sought.

19. The response did not adequately explain to me whether the Trust had assessed the facts I described concerning the incomplete transaction, whether it had sought such instructions, or what the next procedural step would be.

20. FTX further stated that once the ownership issues are resolved, the Trust would be in a position to determine whether the claim may be allowed and eligible for distribution.

21. That statement did not explain what constitutes resolution, whether the Trust expects to await final judgment in another court, whether it intends to take affirmative action, or when the withholding decision will be reviewed.

22. I understand that an ownership dispute may warrant investigation and temporary protection against payment to the wrong person.

23. But an allegation by a third party is not itself a final adjudication of ownership. The reason for an initial hold does not answer how the hold will be reviewed over time.

24. I do not ask this Court to decide the Attestor contract dispute or claim ownership in connection with this Motion, or to order immediate payment based solely on my account.

25. I ask that affected creditors have notice, an opportunity to submit their account and evidence, an explanation of the asserted Plan basis, and a defined route for review or appropriate judicial consideration.

26. I seek written answers to the following questions:

(a) What is the present status of my claim and distribution?

(b) Has the Trust considered my position that no sale was completed and no purchase price received?

(c) What facts does the Trust rely upon in applying Plan section 7.4.2?

(d) Has the Trust considered evidence beyond Attestor's assertion?

(e) Has the Trust sought instructions from this Court, and, if not, what step is contemplated?

(f) What documents may I submit for reconsideration?

(g) When will the next substantive review occur?

(h) What review or escalation path exists if I receive no meaningful response?

27. I do not demand a guaranteed date for resolution. Even if the outcome cannot be predicted, the Trust should be able to describe the next procedural step and the date of its next meaningful update.

28. Without a defined path, a measure intended to address a disputed ownership claim may leave the affected creditor waiting indefinitely without an intelligible process.

## III. ECONOMIC EFFECT OF FURTHER DELAY

29. The Motion reports approximately 11,500 claims resolved since the prior extension, but approximately 13,800 claims still outstanding, with asserted amounts approaching $25 billion.

30. I do not dispute that these figures reflect substantial work. They do not tell an individual creditor why his claim remains unresolved, what is being done about it, or when he can expect an answer.

31. Creditors who have received distributions can possess and use those funds, including to meet obligations or make investments.

32. Creditors still awaiting payment cannot use the corresponding funds and may incur liquidity costs and foregone opportunities.

33. Even if similarly classified creditors ultimately receive comparable nominal recovery percentages, differences in the time of actual receipt may have material economic consequences.

34. I recognize that the confirmed Plan may provide for interest treatment of later-allowed disputed claims. I do not claim that every delayed distribution necessarily produces an uncompensated interest loss, and I do not seek recalculation of interest here.

35. Nor do I assert that the requested objection-deadline extension itself caused every withholding or economic loss. I ask the Court to consider the existing burden on unresolved creditors when evaluating whether another extension should be accompanied by meaningful safeguards.

36. Prolonged waiting is not merely an inconvenience; it may impose continuing economic costs while leaving creditors unable to obtain a definite next review date.

## IV. PROFESSIONAL FEES AND FINANCIAL TRANSPARENCY

37. I am also concerned about continuing legal, advisory, and administrative expenses and their potential implications for creditors who have not yet received distributions.

38. These cases have involved substantial professional work. Such work may be necessary, but another year may entail additional professional fees and administrative costs.

39. Knowing how many claims have been resolved does not by itself tell me what additional costs are projected, how those costs will be funded, or whether they may affect assets available for future distributions.

40. From the information presently available to me, I cannot readily determine the arrangements for reserves relating to unresolved or disputed claims or how continuing expenses relate to those reserves.

41. I do not allege that the Trust lacks sufficient funds or that particular professionals have charged improper fees. I seek a comprehensible explanation of the relevant expense and reserve arrangements.

42. Accordingly, I respectfully request that the Trust identify, to the extent reasonably available:

(a) Material professional and administrative expenses incurred during the preceding twelve months;

(b) Projected material expenses for the requested extension period and their principal purposes;

(c) The sources from which those expenses will be paid and any potential effect on future distributable amounts;

(d) The general arrangements for reserves associated with unresolved or disputed claims; and

(e) Expected claims-resolution work during the extension period and how its progress can be evaluated against continuing expense.

43. If this information is already available in filed reports or public disclosures, identifying those documents would address my concern without requiring duplicate reporting.

44. I do not ask this Court to adjudicate the reasonableness of any particular professional fee in this proceeding. I ask for enough clarity to understand the financial consequences of continued delay.

## V. OTHER EXAMPLES OF PROCEDURAL UNCERTAINTY

45. The absence of a clear response and review timetable may affect creditors beyond those facing third-party ownership claims.

46. The Trust previously moved for Restricted Jurisdiction Procedures [D.I. 31148], involving jurisdictions including China. That motion was not approved and was later withdrawn [D.I. 33439].

47. Nevertheless, the Trust's published distribution-service-provider information has continued to identify China as a jurisdiction in which a distribution provider could not be selected, leaving affected creditors facing potential practical obstacles.

48. I do not represent those creditors or seek a ruling on their distribution eligibility. I raise the example only to illustrate why a creditor should be able to ask what restriction currently applies, on what basis, what steps remain, and when an answer will be given.

49. Whether a delay arises from a third-party claim, claims review, or another unresolved issue, an affected creditor should not be left without a meaningful notice, communication, and review process.

## VI. RIGHT TO BE HEARD AND REQUEST FOR OVERSIGHT

50. I am not an attorney. As an individual creditor, however, I understand that 11 U.S.C. § 1109(b) permits a party in interest, including a creditor, to raise issues and be heard in a chapter 11 case.

51. I submit this limited objection to exercise that right and explain how a further extension may affect me.

52. Section 105(d) of the Bankruptcy Code provides for status conferences and appropriate case-management measures, subject to applicable law.

53. Federal Rule of Bankruptcy Procedure 9006(b)(1) permits an extension of applicable periods upon the required showing of cause.

54. I do not contend that these provisions themselves create a statutory right to a response within thirty days or compel the Court to adopt every proposal below.

55. I ask only that the Court consider reasonable notice, communication, review, and transparency measures in connection with further extension, or convene an appropriate status conference to consider the existing process.

## VII. REQUESTED PROCEDURAL SAFEGUARDS

56. I do not ask the Court to deny an otherwise justified extension merely because claims remain outstanding.

57. I respectfully request that the Court consider the following principal protections for affected individual creditors:

(a) Timely notice. When the Trust decides to withhold or restrict distribution because of a third-party ownership assertion, provide notice of the basic nature and effect of the dispute and available next steps, ordinarily within thirty calendar days, subject to reasonable exceptions.

(b) Trackable inquiries. Provide a written inquiry channel and acknowledge sufficiently identified inquiries within five business days.

(c) Substantive response. Ordinarily respond within thirty calendar days with the claim status, principal outstanding issues, requested documents, next steps, and next update date.

(d) Procedural roadmap. Within sixty days, provide a reasonable outline of next steps or, if a final resolution date cannot be estimated, explain why and specify the next review date.

(e) Periodic updates. Provide meaningful status updates at least every ninety days while a properly submitted inquiry remains unresolved, subject to reasonable exceptions.

(f) Escalation. Identify how a creditor may seek further review after nonresponse or prolonged inactivity, without limiting existing judicial remedies.

(g) Third-party holds. Where Plan section 7.4.2 or a similar provision is invoked, explain, to the extent appropriate, the basis for its application, what materials may be submitted, whether instructions have been sought from this Court, and the next contemplated procedural step.

58. I also request supplementary oversight measures:

(a) Periodic aggregate reports concerning unresolved claims, aging, obstacles, and actual progress;

(b) Reasonably available summaries of professional expenses, administrative costs, and disputed-claim reserves relevant to the extension;

(c) Identification of already-public filings containing that information; and

(d) A status conference, if appropriate, concerning prolonged unresolved claims and the effectiveness of creditor communication.

59. Reasonable identity-verification, confidentiality, privilege, and litigation-related exceptions should apply.

60. I do not seek modification of the confirmed Plan, automatic allowance of a disputed claim, immediate release of withheld distributions, or a determination of interest or damages.

61. Alternatively, if the Court concludes that some proposed measures are beyond the proper scope of this Motion, I ask it to direct the Trust to propose a notice, communication, and review protocol and to consider that protocol at a status conference.

## VIII. CONCLUSION

62. I recognize the complexity of these cases and that reasonable additional time may be necessary.

63. But for an individual creditor who has waited nearly four years without a distribution, continued uncertainty has practical and economic consequences.

64. I particularly ask the Court to consider that I learned only in February 2026 of an ownership assertion made to FTX substantially earlier, without a timely opportunity to explain why I believed no sale had been completed.

65. FTX's response invoked Plan section 7.4.2 and referred to seeking instructions from this Court, but did not give me a clear account of whether that step had been taken or when the matter would next be reviewed.

66. Continuing professional expenses and uncertainty regarding reserves also make a further extension consequential for creditors who remain unpaid.

67. I respectfully ask the Court to consider those burdens and, to the extent permitted by law, require clear notice, meaningful responses, periodic review, and appropriate transparency—or convene a status conference to address such safeguards.

68. I am not asking the Court to guarantee when I will be paid or to resolve every underlying legal dispute. I ask for a formal process that tells me why payment remains withheld, what happens next, when I can expect a meaningful response, and how I may seek review if the matter remains inactive.

WHEREFORE, Objector respectfully requests the procedural relief described above and such other and further relief as the Court deems just and proper.

Dated: Nov 9th, 2026

Respectfully submitted,

Ji Shengkun
______________________________

Ji Shengkun, Pro Se Creditor

Proof of Claim No. 51901

Address: 916 Sims Ave, Singapore

Email: will@kryptos.fund

**CERTIFICATE OF SERVICE**

I, Ji Shengkun, hereby certify that on Nov 9th, 2026, I caused a copy of the LIMITED OBJECTION OF JI SHENGKUN, AN INDIVIDUAL CREDITOR APPEARING PRO SE, TO THE FTX RECOVERY TRUST'S MOTION TO FURTHER EXTEND THE CLAIMS OBJECTION DEADLINE AND REQUEST FOR PROCEDURAL SAFEGUARDS to be served via both electronic mail and physical mail upon the following parties listed below.

Sullivan & Cromwell LLP
- James L. Bromley – bromleyj@sullcrom.com
- Alexa J. Kranzley – kranzleya@sullcrom.com
- Andrew G. Dietderich – dietdericha@sullcrom.com
- Brian D. Glueckstein – gluecksteinb@sullcrom.com

Landis Rath & Cobb LLP
- Adam G. Landis – landis@lrclaw.com
- Kimberly A. Brown – brown@lrclaw.com
- Matthew R. Pierce – pierce@lrclaw.com

Office of the United States Trustee
- Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov
- Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov
- David Gerardi – david.gerardi@usdoj.gov

I certify under penalty of perjury that the foregoing is true and correct.

Dated: Nov 9th, 2026
Singapore

Ji Shengkun
______________________________
Ji Shengkun