**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

2026 NOV 10 A 9:45
US BANKR... DISTRICT OF ...

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered)<br><br>**Hearing Date: November 19, 2026 at 1:00 p.m. (ET)**<br>**Obj. Deadline: November 12, 2026 at 4:00 p.m. (ET)**<br><br>**Ref. Nos. 30991, 33444, 33890 & 36919** |

**LIMITED OBJECTION OF XUZHOU YIN TO THE MOTION OF THE FTX RECOVERY TRUST**
**FOR ENTRY OF AN ORDER FURTHER EXTENDING THE CLAIMS OBJECTION DEADLINE**
**AND THE ADMINISTRATIVE CLAIMS OBJECTION DEADLINE (D.I. 36919)**

Creditor **Xuzhou Yin** (Claim ID 1323523, pro se) respectfully submits this limited objection to the *Motion of the FTX Recovery Trust for Entry of an Order Further Extending the Claims Objection Deadline and the Administrative Claims Objection Deadline* [D.I. 36919] (the "Second Extension Motion"), filed by the FTX Recovery Trust (the "Trust") on November 5, 2026. The Creditor requests that the Court deny the Second Extension Motion or, in the alternative, limit any extension to a defined and shorter period subject to the transparency, reporting and distribution safeguards set forth below.

## Preliminary Statement

One year ago, this Court granted the Trust's first extension [D.I. 33890] on the ground that, while the Trust had "made progress in the claims reconciliation process, the work is far from complete." The Trust now asks for a further twelve months, through January 4, 2028, expressly "without prejudice to seek further extensions." That would convert the one-year objection period contemplated by the Plan into a period of at least three years with no defined endpoint.

The Trust's own figures show that no such period is needed. The claims pool has been reduced from more than 682,000 claims to approximately 13,800, a resolution rate of 98%. In the twelve months since the Extension Order, the Trust reconciled approximately 11,500 claims and made two distributions totaling approximately $3.1 billion. At the Trust's own demonstrated pace, the remaining claims can be reconciled in far less than twelve months.

The Trust asserts that the extension "will not prejudice any stakeholder" (Motion ¶ 16). That is not true for customers whose claims remain designated "disputed." Over the past year, holders of Allowed Claims received $3.1 billion. During the same period, the Creditor and a large number of similarly situated customers received nothing, and were given no explanation of why their claims are disputed. Every day the objection period is extended, that asymmetry is extended with it.

For creditors resident in Mainland China the problem is more acute. In 2025 the Trust withdrew its motion for Restricted Jurisdiction Procedures [D.I. 31148], relief the Trust itself recognized required Court approval. Since then, the Trust has nonetheless, through its Customer Portal, prevented Mainland China residents from selecting any Distribution Service Provider, and has introduced a rule under which holders who do not onboard with a provider within six months "may forfeit" their distributions. The Trust thus imposes a forfeiture clock on creditors while seeking an open-ended extension for itself. The Court should not grant that relief unconditionally.

## **Background**

### A. Procedural History

1. On November 11 and 14, 2022, FTX Trading Ltd. and its affiliated debtors filed voluntary petitions under chapter 11. On October 7, 2024, the Court confirmed the Second Amended Joint Chapter 11 Plan of Reorganization [D.I. 26404-1] (the "Plan"). The Effective Date occurred on January 3, 2025, and the FTX Recovery Trust was established.

2. Plan § 2.1.32 set the Claims Objection Deadline at one year after the Effective Date, i.e., January 3, 2026. On November 24, 2025, the Court granted the Trust's first extension motion [D.I. 33444] and extended both the Claims Objection Deadline and the Administrative Claims Objection Deadline through January 4, 2027 [D.I. 33890] (the

"Extension Order"). On November 5, 2026, the Trust filed the Second Extension Motion seeking a further twelve-month extension through January 4, 2028.

### B. The Trust's Reported Progress

3. According to the Second Extension Motion (¶¶ 8, 10, 17), the claims pool initially comprised more than 682,000 claims asserting over $447 billion. Approximately 13,800 claims remain under review, consisting of nearly 12,800 Customer Claims, over 950 Non-Customer Claims and approximately 110 Administrative Claims. Since the Extension Order, the Trust has resolved approximately 11,500 claims, filed six additional omnibus objections, resolved over one hundred contested matters, and made two distributions totaling approximately $3.1 billion. The Trust has filed 204 omnibus claims objections to date.

### C. The Restricted Jurisdiction Issue

4. On July 2, 2025, the Trust filed its Motion for Restricted Jurisdiction Procedures [D.I. 31148], proposing special procedures for distributions to claimants in 49 jurisdictions, including China. More than 300 Chinese creditors objected. On November 3, 2025, the Trust withdrew the motion [D.I. 33439] "without prejudice," stating that if it sought to renew the relief it would "file a motion and provide notice in accordance with the applicable rules." No such motion has since been filed.

5. Nevertheless, according to information published on the Trust's Customer Portal: (a) the Distribution Service Provider page, as updated in October 2026, lists Mainland China and Macau as jurisdictions "not eligible for distributions," and residents of those jurisdictions cannot select BitGo, Kraken or Payoneer in the Portal; and (b) the Distributions Dashboard FAQ, as updated on September 13, 2026, states that holders who do not onboard with a Distribution Service Provider within six months of the July 31, 2026 distribution date "may forfeit the right to receive distributions on their allowed claims," without explaining how that rule applies to holders who are not permitted to select any provider.

### D. The Creditor

6. The Creditor holds Customer Claim ID 1323523. Since the Effective Date, the claim has been designated "disputed." The Creditor has completed KYC verification. The Creditor

has never received any explanation of the basis for the disputed designation, has never been asked to provide additional documentation, and has never received any distribution. As a resident of Mainland China, the Creditor cannot select any Distribution Service Provider in the Customer Portal. Nothing has changed since the Creditor filed a limited objection to the first extension motion on November 11, 2025.

## Argument

### I. The Trust Has Not Shown Cause Under Bankruptcy Rule 9006(b)(1) for a Twelve-Month Extension Without Prejudice to Further Extensions

7. Bankruptcy Rule 9006(b)(1) permits the Court to extend a deadline "for cause shown." The burden rests on the movant, and the cause shown must be commensurate with the extension requested. The question is not whether work remains, but whether the Trust has demonstrated that the remaining work requires twelve months and a reservation of the right to seek yet further extensions. The Motion does not make that showing.

8. The Motion provides only aggregate figures. It does not distinguish between the Customer Claims the Trust actually intends to object to on substantive grounds and those that simply have not yet been processed. Customer Claims are standardized account-balance claims verifiable against the Debtors' own records; they are not fact-intensive disputes. Through 204 omnibus objections and the reconciliation of 11,500 claims in the past year, the Trust has demonstrated its capacity to process such claims in volume.

9. The "dozens of complex claims requiring factual development and involv[ing] billions of dollars" and the "intercreditor disputes" cited in paragraph 17 concern a small number of Non-Customer Claims. The existence of a handful of complex matters does not justify holding 12,800 Customer Claims in abeyance for a further year. The Trust may seek targeted relief as to those specific claims without suspending the status of every customer.

10. At a minimum, before fixing the duration of any extension, the Court should require the Trust to disclose, as to the remaining Customer Claims, how many it intends to object to, how many await documentation from claimants, and how many are designated disputed for reasons unrelated to the merits of the claim, including the claimant's jurisdiction of residence.

## II. The Extension Is Not Without Prejudice to Stakeholders

11. Under section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects. The purpose of a claims objection deadline is to give that deemed allowance a terminal point. An open-ended extension suspends disputed claimants indefinitely: neither objected to nor allowed, neither paid nor able to seek relief.

12. The prejudice is concrete. Since the Extension Order, holders of Allowed Claims have received approximately $3.1 billion. Customers in disputed status received nothing during the same period, and have no timeline. The Motion's assertion that the extension protects "all stakeholders" (¶ 16) does not account for the disputed claimants who are still waiting.

13. For Mainland China creditors, the six-month forfeiture rule described above converts the prejudice from delay into loss. The creditor cannot select a provider because of his jurisdiction; failure to select a provider is defined as a ground for possible forfeiture; and the Trust now asks for twelve more months in which the claim may remain disputed. The combination leaves the creditor unable either to progress or to exit.

14. The Creditor does not allege bad faith, and the Court made no such finding last year. But one structural fact warrants the Court's attention: under the Plan, forfeited distributions revert to the estate for redistribution to other creditors. The more that creditors in blocked jurisdictions forfeit, the more the estate administered by the Trust, and its other beneficiaries, gain. Where such a structural conflict exists, conditioning any extension on judicial oversight, rather than granting a blanket authorization, is appropriate.

## III. The Cited Precedents Are Distinguishable, and the Premise of Last Year's Extension No Longer Holds

15. The cases cited in paragraphs 18 and 19 of the Motion (Cred, Mallinckrodt, Newage and others) involved successive extensions directed at residual pools of litigated, contested claims. Here, approximately 93% of the remaining claims are Customer Claims whose amounts can be verified from the Debtors' own ledgers. The two situations are not comparable.

16. Last year the Court granted an extension on the finding that the work was "far from complete." This year the Trust itself reports that 98% of claims have been resolved. The

premise has changed, and last year's conclusion should not carry forward automatically. The Court also observed that the extension was "necessary to maximize value by ensuring that creditor recoveries are not unnecessarily diluted with illegitimate claims." That rationale supports substantive review of questionable claims; it does not support indefinitely parking standardized Customer Claims.

## IV. The Differential Treatment of Mainland China Creditors Has No Court-Approved Basis

17. The Trust itself took the position that special restrictions on distributions to claimants in restricted jurisdictions required Court approval, which is why it filed D.I. 31148 in July 2025. After withdrawing that motion, the Trust did not return to the Court. Instead, through updates to its FAQ and Distribution Service Provider page, it achieved substantially the same result as the withdrawn motion: Mainland China creditors are prevented from receiving distributions. This was done without the notice required by Bankruptcy Rule 2002, without a hearing, and without any opportunity for affected creditors to be heard.

18. Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim within a class. Mainland China customers are in the same class as all other customers, yet in practice are excluded from distributions by reason of residence. The Plan mechanism intended to address this issue, the Restricted Jurisdiction Procedures, was withdrawn by the Trust itself. The present differential treatment therefore rests on no Court-approved basis.

19. There is no legal impediment to distributing to Mainland China creditors. China is not subject to OFAC sanctions. Upon information and belief, and as publicly reported since July 2026, Coinbase, a U.S.-regulated, publicly listed exchange, has accepted Mainland China resident identity cards for KYC verification and provides on-chain digital-asset services to such users. This demonstrates that the unavailability of a compliant Distribution Service Provider for Mainland China residents reflects a commercial choice by the Trust and its three existing providers, not a legal impossibility. The Trust can engage a compliant provider willing to serve the jurisdiction, or, following KYC and sanctions screening, permit on-chain stablecoin distributions to self-custodied wallets.

20. Nor does Chinese law justify withholding distributions. The relevant PRC regulatory notices prohibit institutions from conducting virtual-currency business activities; they do not prohibit individuals from receiving property returned to them from a foreign bankruptcy estate. In any event, any risk arising under Chinese law is borne by the creditor, not by the Trust, and cannot serve as a basis for the Trust to decline to perform its distribution obligations under the Plan.

## V. Any Extension Should Be Conditioned

21. Under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006, the Court may condition any extension it grants. The Creditor respectfully requests that any extension be subject to at least the following conditions:

(a) **Duration.** Any extension should be limited to six months, through July 4, 2027, with any further extension conditioned on a specific, itemized showing of cause.

(b) **Customer Claims carve-out.** Within 90 days of the order, the Trust shall, as to each Customer Claim still designated disputed, either file an objection or notify the claimant in writing of the specific reason for the designation and the documentation required to resolve it. Any Customer Claim as to which no action is taken within that period shall be deemed allowed.

(c) **Quarterly reporting.** The Trust shall file quarterly reports with the Court disclosing, by category (including distributions withheld by reason of jurisdiction), the number, amount and status of disputed claims.

(d) **Jurisdiction-based restrictions require Court approval.** Absent an order of this Court entered after notice and a hearing, the Trust shall not prevent any claimant who has passed KYC and sanctions screening from selecting a Distribution Service Provider or receiving distributions by reason of the claimant's jurisdiction of residence.

(e) **Tolling of the forfeiture period.** For holders who are unable to onboard because no Distribution Service Provider is available in their jurisdiction, the six-month period shall be tolled until the Trust makes an executable distribution pathway available to them.

(f) **Direct communication channel.** The Trust shall provide disputed claimants with a ticketing and document-upload channel and respond within a commercially reasonable time.

**Reservation of Rights and Request to Appear**

The Creditor reserves all rights to supplement or amend this objection prior to the hearing and to be heard at the hearing. The Creditor resides in Beijing, China, and respectfully requests leave to appear remotely at the hearing scheduled for November 19, 2026.

**Conclusion and Requested Relief**

WHEREFORE, the Creditor respectfully requests that the Court (a) deny the Second Extension Motion; or, in the alternative, (b) limit any extension to six months and impose the conditions set forth in paragraph 21 above; and (c) grant such other and further relief as the Court deems just and proper.

Dated: November 11, 2026
Respectfully submitted,

**Xuzhou Yin** (pro se creditor)
Claim ID: **1323523**
Email: **13126585051@163.com**
Mailing: Building 14, Jintaili, Hujialou Subdistrict, Chaoyang District, Beijing, China

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2026, I caused a true and correct copy of the foregoing Limited Objection of Xuzhou Yin to the Motion of the FTX Recovery Trust for Entry of an Order Further Extending the Claims Objection Deadline and the Administrative Claims Objection Deadline (D.I. 36919) to be served via electronic mail upon the following recipients:

**Counsel for the FTX Recovery Trust – Sullivan & Cromwell LLP**

Andrew G. Dietderich – dietdericha@sullcrom.com

James L. Bromley – bromleyj@sullcrom.com

Brian D. Glueckstein – gluecksteinb@sullcrom.com

Alexa J. Kranzley – kranzleya@sullcrom.com

**Delaware Counsel for the Trust – Landis Rath & Cobb LLP**

Adam G. Landis – landis@lrclaw.com

Kimberly A. Brown – brown@lrclaw.com

Matthew R. Pierce – pierce@lrclaw.com

Matthew B. McGuire – mcguire@lrclaw.com

**Office of the United States Trustee – District of Delaware**

Juliet M. Sarkessian – juliet.m.sarkessian@usdoj.gov

Benjamin A. Hackman – benjamin.a.hackman@usdoj.gov

David Gerardi – david.gerardi@usdoj.gov

**Xuzhou Yin** (pro se)

Claim ID: **1323523**

Email: **13126585051@163.com**

Mailing: Building 14, Jintaili, Hujialou Subdistrict, Chaoyang District, Beijing, China